James E. Cecchi, Esq.
CARELLA, BYRNE, CECCHI
BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973) 994-1700
jcecchi@carellabyrne.com

*Attorneys for Forty-Nine Plaintiffs Aceto,*
*Aguiar, Babb, Balogh, Bauman, Bove, Boykin,*
*Brown, Chiuchiarelli, B. Collins, H. Collins,*
*Cornejo Oraheta, Cross, Daines, De La Hoz,*
*Deluca, Dwyer, Finkelstein, Filter, Freifeld,*
*Good, Halim, M. Hernandez, Z. Hernandez,*
*Hopper, Ishii, Kielbasa, Kouyate, Kurtz,*
*Kyndberg, Mason, C. Miller, J. Miller,*
*Michaelson, Moody, Morgan, Morales,*
*Mukherjee, G. Philbrook, K. Philbrook, Rabadi,*
*Rodgers, Siano, Stuck, Styron, Sutters, Walker,*
*Webb, and Yamaichi*

[Additional counsel appear on signature page]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: APPLE INC. SMARTPHONE ANTITRUST LITIGATION<br><br>*This Document Relates to:*<br><br>DIRECT PURCHASER ACTIONS | Civil Action No. 2:24-md-03113<br><br>(JXN)(LDW) MDL 3113 |

## MEMORANDUM IN SUPPORT OF APPOINTMENT OF THE MAJORITY GROUP'S LEADERSHIP SLATE FOR <u>DIRECT iPHONE PURCHASER PLAINTIFFS</u>

# TABLE OF CONTENTS

**Title** **Page**

TABLE OF AUTHORITIES ..................................................................................iii

I.   INTRODUCTION ............................................................................... 1

II.  BACKGROUND ................................................................................. 6

III. ARGUMENT ...................................................................................... 8

A) Proposed Counsel Filed Detailed and Comprehensive Complaints.............. 10

B) Proposed Co-Lead Interim Counsel, Executive Committee Counsel and
Steering Committee Counsel Are Highly Experienced In Class Action and
Complex Litigation ................................................................................ 11

Proposed Co-Lead Interim Counsel: ......................................................... 12

1.  Steve W. Berman of Hagens Berman Sobel Shapiro, LLP...................... 12

2.  Dena Sharp of Girard Sharp LLP ................................................... 14

3.  Christopher A. Seeger of Seeger Weiss, LLP ................................... 17

4.  James E. Cecchi of Carella Byrne Cecchi Brody & Agnello, PC............ 19

Proposed Executive Committee: ............................................................. 21

1.  Karin B. Swope of Cotchett, Pitre & McCarthy, LLP .......................... 21

2.  Linda P. Nussbaum of Nussbaum Law Group, PC.............................. 22

3.  Joseph H. Meltzer of Kessler Topaz Meltzer & Check, LLP ................. 24

4.  Hae Sung Nam of Kaplan Fox & Kilsheimer LLP ............................... 26

5.  Peter A. Barile III of Lowey Dannenberg, PC.................................... 27

6.  Daniel J. Nordin of Gustafson Gluek PLLC ...................................... 29

i

7.  Mark J. Dearman of Robbins Geller Rudman & Dowd LLP ...................29

Proposed Steering Committee: ...............................................................31

1.  Alison E. Chase of Keller Rohrback LLP ...............................................31

2.  Jeff Ostrow of Kopelowitz Ostrow P.A. ..................................................32

3.  Michelle C. Clerkin of Spiro Harrison & Nelson LLC............................33

4.  Joseph M. Vanek of Sperling & Slater, LLC ..........................................34

5.  Roberta D. Liebenberg of Fine, Kaplan and Black, R.P.C. .....................35

The Majority Group is the Right Size for a Case of This Magnitude ................36

C) Proposed Counsel Will Commit The Necessary Resources
To Vigorously Prosecute This Action .............................................................38

IV. THE MAJORITY GROUP WILL WORK EFFICIENTLY TO CONTROL COSTS
AND COMMUNICATE WITH ALL COUNSEL....................................................38

V.  CONCLUSION...................................................................................................39

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                              **Page(s)**

*In Re: Apple Inc. Smartphone Antitrust Litig.*,
2024 WL 2884408 (J.P.M.L. June 7, 2024) ........................................7

*Bernhard v. TD Bank, N.A.*,
2009 WL 3233541 (D.N.J. Oct. 5, 2009) ............................................9

*Garbaccio v. St. Joseph's Hosp. & Med. Ctr. & Subsidiaries*,
2017 WL 1196458 (D.N.J. Mar. 13, 2017) .........................................9

*In re Insulin Pricing Litig.*,
2017 WL 4122437 (D.N.J. Sept. 18, 2017)......................................8, 9

*In re Urethane Antitrust Litig.*,
768 F.3d 1245 (10th Cir. 2014) .........................................................35

*Waudby v. Verizon Wireless Servs, Inc.*,
248 F.R.D. 173 (D.N.J. 2008).............................................................8

**Rules**

Fed. R. Civ. P. 23 ...............................................................*passim*

Fed. R. Civ. P. 23(g)(1) ...............................................................8, 9

Fed. R. Civ. P. 23(g)(2) ..................................................................8

Fed. R. Civ. P. 23(g)(3) ..................................................................8

Fed. R. Civ. P. 23(g)(4) ..................................................................9

**Other Authorities**

MANUAL FOR COMPLEX LITIGATION (FOURTH) ...............................8, 9, 10

*Report of the Third Circuit Task Force, Selection of Class Counsel*
208 F.R.D. 340 (2002) ......................................................................9

Pursuant to the Court's Case Management Order Number 1 ("CMO-1" or "Order"), ECF 7, at ¶ 5, Plaintiffs Barbara Aceto, Eraldo Aguiar, Sarah Babb, Connie Balogh, George Bauman, Denise Bove, Angela Boykin, Jarell Brown, Jennifer B. Chiuchiarelli, Deborah Collins, Bridget Collins, Hunter Collins, Patricia Yaneth Cornejo Oraheta, Amy Cross, Tory Daines, Alfredo De La Hoz, Ana Deluca, Richard Dwyer, Enrique Finkelstein, Marisa Filter, David Freifeld, Jack Townsend Good, Aimen Halim, Mauricio Hernandez, Zaneth Hernandez, Richard K. Hopper, Kiyomi Ishii, Michele Kielbasa, Moussa Kouyate, Stacy Kurtz, Kendra Kyndberg, Robert Mason, Christopher Miller, John Miller, Robert Michaelson, Timothy Moody, Jerry Morgan, Henry Morales, Ayan Mukherjee, Gene Philbrook, Kerry Philbrook, Sharon Rabadi, Brian Rodgers, Deanna Siano, Tamara Stuck, Tahisha Styron, Milicient Sutters, Christopher Walker, Dane Webb, and April H. Yamaichi respectfully submit this memorandum in support of the appointment of their proposed leadership slate for the Direct iPhone Purchaser Plaintiff ("DPP") class.

## I.     <u>INTRODUCTION</u>

This is one of the largest and potentially most impactful Multidistrict Litigations ("MDL") since *In re National Prescription Opiate Litig. (*"Opioids"*)*, MDL No. 2804, No. 1:17-md-2804 (N.D. Ohio). If the Department of Justice ("DOJ") and the private class plaintiffs prevail, millions of U.S. consumers will benefit from billions of dollars in savings from competition in the U.S. high performance smartphone market that Apple

currently suppresses and blocks. Just as the *Opioids* MDL brought transformative change to the pharmaceutical industry, this MDL can revolutionize a billion dollar industry and product—the high performance smartphone—that millions of Americans use every day.

The stakes are—admittedly—quite high. Apple will fund and litigate this MDL to the hilt given the revenues and market power it stands to lose. The private class plaintiffs should be represented by a team with enough experience, skill, manpower, and funding to go toe-to-toe with Apple. The group of lawyers that have come together to submit this application on behalf of the DPP class are such a team (the "Majority Group").

As explained in detail below, the Majority Group's proposed leadership slate includes (1) Co-Lead Counsel with (collectively) decades of effective, efficient, and successful leadership of the most complex and impactful antitrust, class, and MDL matters, (2) a Plaintiffs' Executive Committee with ample experience and judgment to lead the briefing, discovery, and expert committees that will be needed in this case, and (3) a Steering Committee, which will give the Majority Group additional manpower, resources, and flexibility to prosecute this case.

The Majority Group is aware that another group of leadership applicants intends to propose a smaller leadership structure that would place the fate of this ground-breaking case in the hands of just a few law firms. Respectfully, we believe that approach is unrealistic and will not best serve the class members. The Majority Group submits that the complexity, size, and stakes of this case requires a multi-layered leadership structure

2

like the one we have proposed, which balances the need, on the one hand, for strong leadership with the need, on the other, to draw on the skills, resources, and manpower of multiple law firms so that the litigation team can be scaled up and down as needed. The Majority Group's structure has strong precedent. A similar, multi-layered approach has been taken in other complex national litigations, including *Opioids* and *In re Apple Inc. Device Performance Litig.* ("*Apple Device Performance*"), MDL 2837 (N.D. Cal.), to name just two. Notably, although the quantum of work and the potential quantum of damages at stake here is at least equal to what was involved in those cases, the Majority Group's proposed 16 firm structure is smaller than the 22 firm structure in *Opioids* and the 23 firm structure in *Apple Device Performance*.

With these precedents in mind, we propose a leadership team consisting of four Co-Lead Counsel, seven Executive Committee members, and five Steering Committee members (collectively "Proposed Counsel"). The anticipated roles of these groups will follow the normal parameters of Rule 23. To avoid duplication of effort and to control costs, Co-Lead Counsel will direct and be in charge of all litigation decisions and will assign tasks ranging from briefing to depositions, to document review, to the development of expert testimony to members of the proposed Executive Committee and Steering Committee. Only work assigned and approved by Co-Lead Counsel will be eligible for a portion of class counsel fees, if Plaintiffs are successful. Finally, as is our practice in all matters under Rule 23, Co-Lead Counsel will develop a billing and

timekeeping protocol that will be agreed to by all counsel.  Contemporaneous time will be collected and audited on a monthly basis by an auditor hired by Co-Lead Counsel. Again, this is the most efficient and common procedure in cases of this magnitude.

The 16 lawyers comprising our proposed team are among the leading Plaintiffs' lawyers in the United States. The lawyers who have agreed to work together here have achieved overwhelming successes not only in the antitrust space, but in every type of consumer protection case imaginable. Simply put, they have been architects of some of the most impactful consumer lawsuits in history in the antitrust field, as well as other consumer protection cases (*e.g.*, emissions fraud, addictive consumer products, and securities cases). One example that illustrates both the Majority Group's achievements and proven ability to work together is *In re: Mercedes-Benz Emissions Litig.*,  No. 16-cv-881 (D.N.J.), where three members of the Majority Group (Steve Berman, James Cecchi, and Christopher Seeger) served as co-lead counsel and secured one of the largest class action settlements ($700 million) ever in this judicial District. The Special Master, former District Court Judge, the Hon. Dennis M. Cavanaugh (Ret.), praised class counsel for doing "an excellent job on behalf of their clients in this case," noting that he had "never worked with such professional, decent counsel." *Id.*, Dkt. No. 342 at 18-19. The Majority Group's other successes are many. *See infra* § III.B (attorney biographies). The diversity of experience and resources this team brings to this case is unmatched. Our

proposed slate of lawyers is also diverse as to gender and ethnicity, and reflect the class that we seek to represent.

The overwhelming support that the Majority Group has among the law firms that filed claims in this MDL is the best indication of our ability to successfully and professionally litigate this case. Put simply, the nationally recognized lawyers who timely filed this antitrust case have voted by virtue of their overwhelming support for the Majority Group's leadership proposal. The Majority Group does not take that support lightly and is honored that so many lawyers have expressed confidence in our collective ability to lead this case.

One final note on inclusiveness and collegiality. The Court is aware that a group of attorneys asserting claims only on behalf of Apple Watch purchasers have filed a motion to serve as interim lead counsel on behalf of the Apple Watch class. The Majority Group supports that motion. The Apple Watch claims raise sufficiently distinct issues such that those claims deserve their own track and their own leadership team. We have worked closely with the nationally recognized lawyers prosecuting those claims—George Zelcs from Korein Tillery, David Frederick from Kellogg Hansen, and Steven Molo from MoloLamken—to agree to coordinate our work to the fullest extent possible while respecting the distinctions inherent in the Apple Watch case. The type of leadership which enabled this cooperation is a hallmark of our team and a pivotal

characteristic needed to lead and control this massive MDL. It is one of the many characteristics unique to our team.

## II.   __BACKGROUND__

Private Plaintiffs, like the DOJ, assert that Apple unlawfully monopolizes the high-performance smartphone market by locking consumers into its ecosystem. Rather than compete exclusively on the merits to win business, Apple imposes a web of restraints, making it unnecessarily difficult and expensive to switch from Apple iPhones to any other brand of smartphone.

While Apple's "lock-in" tactics vary, all involve suppressing innovative cross-platform technologies that would facilitate device switching and enhance competition in the high-performance smartphone market. The suppressed technologies include super apps and cloud-streaming apps. These are forms of "middleware" that could, if available to iPhone users, make it easier to switch from an iPhone to a competing device. Apple has further locked in its users by eliminating any cross-platform functionality for a core suite of iPhone apps and accessory products, including messaging apps, smartwatches, and digital wallets.

Apple's strategy has been massively successful (for Apple). Having effectively locked-in its user base, Apple has neutralized competition from would-be rivals to secure and maintain a durable monopoly in the high-performance smartphone market. With a stranglehold over a market that generates hundreds of billions in revenues every year,

Apple's smartphone business yields historic returns, with consumers suffering the anticompetitive effects, including substantial overcharges, reduced output, and diminished market alternatives. In a competitive market, absent Apple's anticompetitive conduct, smartphones would be both less expensive and more innovative.

Members of the Majority Group filed the first Private Plaintiff cases against Apple alleging monopolization of smartphone markets. *See Collins, et al. v. Apple Inc*., No. 3:24-cv-01796 (N.D. Cal.) and *Goldfus v. Apple Inc.*, No. 2:24-cv-04108 (D.N.J.). After dozens of additional Private Plaintiff cases were filed, members of the Majority Group requested that the JPML transfer and consolidate the Private Plaintiff actions in this Court, where the DOJ's smartphone monopolization case against Apple is currently pending. The JPML granted the application, reasoning that centralization was "particularly merited" in this case because it is "highly complex and will involve time-consuming fact and expert discovery." *See In Re: Apple Inc. Smartphone Antitrust Litig.*, 2024 WL 2884408, at *1 (J.P.M.L. June 7, 2024).

Members of the Majority Group have been coordinating efficiently on case management issues ever since, including with Apple, to submit proposed CMO-1, which the Court entered July 25, 2024. Dkt. No. 7. Among other threshold procedural matters, CMO-1 sets August 8, 2024 as the deadline for motions seeking appointment of Interim Class Counsel.

## III.  <u>ARGUMENT</u>

In complex cases such as this one, it is well-established that the Court may appoint counsel to coordinate the prosecution of the litigation. Rule 23 specifically provides that a court "may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3). The Advisory Committee Notes to Rule 23(g)(2)(A) explain that the rule "authorizes [a] court to designate interim counsel during the pre-certification period if necessary to protect the interests of the putative class." The MANUAL FOR COMPLEX LITIGATION (FOURTH) elaborates:

> If . . . there are a number of overlapping, duplicative, or competing suits pending in other courts, and some or all of those suits may be consolidated, a number of lawyers may compete for class counsel appointment. *In such cases, designation of interim counsel clarifies responsibility for protecting the interests of the class during precertification activities*, such as making and responding to motions, conducting any necessary discovery, moving for class certification and negotiating settlement.

*Id.* § 21.11 (emphasis added).

"Although neither the federal rules nor the Advisory Committee Notes expressly state, it is generally accepted that the considerations set out in Rule 23(g)(1)([A]), which govern the appointment of class counsel once a class is certified, apply equally to the designation of interim class counsel before certification." *In re Insulin Pricing Litig.*, 2017 WL 4122437, at *1 (D.N.J. Sept. 18, 2017); *Waudby v. Verizon Wireless Servs, Inc.*, 248 F.R.D. 173, 175-76 (D.N.J. 2008).

8

These factors are: (i) [t]he work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class. *Insulin Pricing*, 2017 WL 4122437, at * 1; *Bernhard v. TD Bank, N.A.*, 2009 WL 3233541, at *5 (D.N.J. Oct. 5, 2009) (citing Fed. R. Civ. P. 23(g)(1)(A)). The Court must decide if the candidate for class counsel is adequate under Rule 23(g)(1) and (4), and if there is more than one candidate, appoint the one who is best able to represent the interests of the class. Fed. R. Civ. P. 23(g)(2).

In addition to those factors, "the Court may also consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class and may, if it deems it necessary, direct the proposed class counsel to provide information on any subject pertinent to the appointment." *Garbaccio v. St. Joseph's Hosp. and Med. Ctr. and Subsidiaries*, 2017 WL 1196458, at *2 (D.N.J. Mar. 13, 2017); *see also Third Circuit Task Force Report, Selection of Class Counsel*, 208 F.R.D. 340, 419-20 (2002) (listing other relevant considerations to appointment of lead counsel). Here, the Majority Group is the product of private ordering, which is a common means of selecting class counsel, and which is encouraged in the organization of class counsel. *See* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.272 ("The lawyers agree who should be lead class counsel and the court approves the selection after a review to ensure

9

that the counsel selected is adequate to represent the class under Rule 23(g)."); §10.22 ("In some cases the attorneys coordinate their activities without the court's assistance, and such efforts should be encouraged."). The Majority Group's leadership application reflects the considered consensus of all counsel for Plaintiffs in 28 related class actions. The Majority Group respectfully submits that they are best able to represent the proposed class under Rule 23.

### A)     Proposed Counsel Filed Detailed and Comprehensive Complaints

Since the private class action lawsuits comprising this MDL were largely, if not exclusively, based on the investigation and complaint filed by the DOJ, no contender for leadership can legitimately claim to have independently identified or investigated potential claims in this action.

That being said, however, the Majority Group includes counsel with extensive antitrust litigation experience generally, and most importantly experience litigating complex cases against Apple in particular. *See generally infra* at § III.B (collecting cases). For example, Steve Berman and his firm (Hagens Berman) have secured more than $800 million in settlements from antitrust and other litigation against Apple. Mr. Berman has gained further Apple-specific expertise—including on the smartphone market at issue in this litigation—through pending antitrust lawsuits challenging restraints Apple imposes on the resale of iPhones, as well as restraints Apple imposes to dominate markets ancillary to the smartphone, including digital wallets and cloud

storage. Kaplan Fox & Kilshemer LLP ("Kaplan Fox") and Cotchett, Pitre & McCarthy, LLP ("CPM") were appointed co-lead in a class action litigation against Apple which alleged that Apple distributed software updates to iOS which slowed processor speeds and concealed a battery or battery-integration defect in various iPhones (*In re: Apple Inc. Device Performance Litig.*, No. 18-md-02827-EJD (N.D. Cal.)). Lead counsel secured $310 million for iPhone purchasers. *See also In re MacBook Keyboard Litig.*, No. 18-2813 (N.D. Cal.) (following multistate certification, Girard Sharp secured a $50 million settlement for purchasers of MacBook laptops fitted with allegedly defective ultrathin "butterfly" keyboards). Of equal importance, we have already demonstrated a commitment to working together in a collegial, efficient, and professional manner to further the interests of our clients. This voluntary coordination demonstrates that the Majority Group is best equipped to lead this important MDL.

### B) Proposed Co-Lead Interim Counsel, Executive Committee Counsel and Steering Committee Counsel Are Highly Experienced In Class Action and Complex Litigation

The cases in which Proposed Counsel have served individually and collectively as lead or co-lead counsel in similarly large and complex class actions are legion and detailed in each proposed counsel's resume. A sampling of those cases is described below and supplemented by a firm resume attached to this submission.

**Proposed Co-Lead Interim Counsel:**

**1.      Steve W. Berman of Hagens Berman Sobol Shapiro, LLP**

Steve Berman is the managing partner of Hagens Berman, one of the nation's preeminent plaintiffs' rights class-action firms, with nearly three decades of experience litigating complex antitrust class actions and MDLs, including through trial. Since its founding, the firm's total recoveries are valued at more than $320 billion for class members and clients.

Mr. Berman has spearheaded antitrust litigation against the NCAA for college athletes, pioneering the payment of athletes for their likenesses and recently for their performance. This is but one example of Mr. Berman's groundbreaking antitrust litigation practice. Among other victories, Hagens Berman prevailed against the NCAA in a 10-day bench trial challenging the NCAA's cap on college athlete scholarships, with Mr. Berman serving as lead trial counsel. The U.S. Supreme Court affirmed the verdict and injunction in a unanimous 9-0 decision, cementing monumental changes to college sports. As a result of follow-on litigation, a proposed settlement has been reached that will pay $2.79 billion in past damages (a 63% recovery for most of the class) and forward-looking revenue sharing that is conservatively estimated to be worth over $22 billion over the next ten years. The case has revolutionized college sports.

Mr. Berman also served as lead counsel in a series of recent cases that have brought about transformative change in the real estate industry, including *Moehrl v.*

*National Association of Realtors*. The cases have resulted in sweeping conduct changes through settlements with the National Association of Realtors and large real estate brokerages. It is estimated that these conduct changes will save Americans billions of dollars a year through lowered real estate commissions.

Mr. Berman and his Hagens Berman colleagues are the undisputed leaders in Big Tech antitrust litigation, having successfully challenged an array of anticompetitive practices by Apple, Google, Amazon, and others. Victories include $616 million in settlements in *Apple E-books Antitrust Litig.*, earning class members twice their losses suffered in a historic antitrust victory. Currently, Hagens Berman has an unprecedented number of cases against Apple and other Big Tech firms, including: *Floyd v. Amazon.com and Apple Inc.*, No. 22-cv-1599 (W.D. Wash.) (challenging agreement to restrict competition in sale of iPhones and iPads); *Affinity Credit Union v. Apple Inc.*, No. 22-cv-4174 (N.D. Cal.) (challenging Apple's monopolization of digital wallets market); *Gamboa v. Apple Inc.*, 24-cv-1270 (N.D. Cal.) (challenging Apple's monopolization of cloud-storage market); *DeCoster v. Amazon.com, Inc.*, No. 21-cv-0693 (W.D. Wash.) and *Frame-Wilson v. Amazon.com, Inc.*, No. 20-cv-0424 (W.D. Wash.) (challenging Amazon pricing restraint affecting billions in commerce); and *In re Amazon.com, Inc., eBook Antitrust Litig.*, No. 21-cv-0351 (S.D.N.Y.) (challenging price-fixing of eBooks).

Through these cases, Mr. Berman has developed unparalleled expertise applying antitrust laws to cutting-edge technology markets, including the smartphone market at issue in this MDL. Mr. Berman and his Hagens Berman colleagues have spent years analyzing the economic and antitrust issues that will arise in this case, including Apple's market power, its downstream effect on consumers and prices, and all of the defenses Apple is likely to assert (or has already asserted in the DOJ's parallel action).

Mr. Berman also reached a $100 million settlement with Apple and a $90 million settlement with Google in cases on behalf of iOS and Android app developers. In both, the firm's settlements achieved monumental changes to respective app store policies. Developers represented in both cases will pay a reduced 15% service fee (a 50% decrease) for an extended period, while benefiting from a range of injunctive relief that will enable them to better monetize their apps. Mr. Berman also secured a $95 million settlement for consumers asserting that Apple systemically breaches its AppleCare agreements.

Mr. Berman's firm resume is attached as Ex. A, and additional information about Mr. Berman and his firm is available at www.hbsslaw.com.

### 2.    Dena Sharp of Girard Sharp LLP

Founded in 1995, Girard Sharp LLP is a boutique law firm representing the plaintiffs in class actions and other complex litigation. The firm has repeatedly been

appointed to leadership positions by federal and state courts in a variety of substantive legal contexts.

Dena Sharp is a seasoned antitrust lawyer who takes class actions and other complex cases from inception through trial. She has secured favorable results through trial verdicts and settlements in courts across the country, including in complex antitrust MDLs. These results and her reputation for collaborative leadership earned her recognition by *Best Lawyers in America* as the 2023 "Lawyer of the Year" in San Francisco for Plaintiffs' Mass Tort / Class Action Litigation, and the prestigious "California Lawyer Attorney of the Year" award from the Daily Journal in 2024.

As co-lead counsel, Ms. Sharp has led notoriously complex "pay-for-delay" pharmaceutical antitrust cases, including *In re Xyrem Antitrust Litig.*, No. 20-md-02966-RS (N.D. Cal.), *In re Lidoderm Antitrust Litig.*, No. 14-md-02521 (N.D. Cal.), and *In re Restasis Antitrust Litig.*, No. 1:18-md-02819 (E.D.N.Y.). Ms. Sharp navigated *Lidoderm* and *Restasis* to favorable resolutions ($104.75 million and $30 million, respectively), and *Xyrem* is set for trial. Ms. Sharp is a member of the end-payer steering committee in *In re Generic Pharms. Pricing Antitrust Litig.*, No. 2:16-md-02724-CMR (E.D. Pa.), where the plaintiffs allege price-fixing and market allocation throughout the generic pharmaceuticals industry. Class certification in the *Generics* MDL is pending.

Also experienced in technology and monopolization MDLs, Ms. Sharp filed one of the earliest class actions in the Google digital advertising antitrust litigation, *In re*

*Google Digital Advertising Antitrust Litig.*, No. 1:21-md-03010-PKC (S.D.N.Y.). Plaintiffs there allege that Google has monopolized and abused its dominance in the market for digital display advertising. Ms. Sharp was also responsible for developing on behalf of the direct purchaser class in *In re Capacitors Antitrust Litig.*, No. 3:17-md-02801-JD (N.D. Cal.), the case against U.S. defendant KEMET, which ultimately agreed to pay $62 million—over 12% of non-trebled damages. The case culminated in two different trial proceedings with final settlements in the second trial pre-verdict, and total settlements exceeding $604 million.

Ms. Sharp has also been recognized for her innovative work in *In re JUUL Labs, Inc. Mktg., Sales Prac., & Prods. Liab. Litig.*, No. 3:19-md-02913-WHO (N.D. Cal.), an MDL concerning the vaping epidemic that affected countless American youth. Ms. Sharp served as co-lead counsel in the MDL, and as co-lead trial counsel in a jury trial against Altria (formerly Philip Morris), which agreed after the plaintiff rested to pay a $235 million settlement. Ms. Sharp took the lead in crafting a cutting-edge RICO claim, and obtaining certification of nationwide consumer class of e-cigarette buyers. In the end, the *JUUL* litigation delivered nearly $2 billion in recoveries for the plaintiffs, including over $300 million for class members.

Ms. Sharp's firm resume is attached as Ex. B, and additional information about Ms. Sharp and her firm is available at www.girardsharp.com.

### 3.    Christopher A. Seeger of Seeger Weiss, LLP

Seeger Weiss is one of the nation's preeminent trial law firms, with an established track record of more than 25 years leading some of the most complex, groundbreaking, and high-profile federal and state litigations in the U.S. The firm has led or been part of the team that has negotiated approximately $100 billion in settlements.

Seeger Weiss is proud to call this District home to its main office. The firm has been privileged to lead or participate in leadership for many matters in this District, including class actions and antitrust matters such as *Copaxone Antitrust Litig.* (Liaison Counsel for the Direct Purchaser Class), *Liquid Aluminum Sulfate Antitrust Litig.* (Plaintiffs' Steering Committee), *Mercedes-Benz Emissions Litig.* (Co-Counsel for Class), *FieldTurf Artificial Turf Mktg. & Sales Litig.* (Co-Lead for Class), *Valeant Securities Litig.* (Liaison Counsel for Class), and *American Medical Collection Agency Customer Data Security Breach* (Co-Lead Counsel for the "Quest Track"). The firm also has spearheaded negotiations that have produced more than $590 million in settlements in *Proton-Pump Inhibitor Prods. Liab. Litig. (No. II)*, No. 17-md-2789 (D.N.J.). Seeger Weiss' national experience likewise includes leadership in multiple complex class actions and antitrust matters, including Chris Seeger's work as co-counsel to some of the largest class opt outs in the *Broiler Chicken, Turkey, Cattle and Beef*, and *Pork* antitrust cases pending in the Northern District of Illinois and District of Minnesota, a member of the Executive Committee in the *Polyurethane Foam Antitrust Litig.* in the Northern

17

District of Illinois, and a member of the Steering Committee for the *Volkswagen "Clean Diesel"* class action in the Northern District of California.

Chris Seeger is widely recognized as a highly innovative and accomplished plaintiff attorney. His innovative work in the *NFL Players Concussion Litig.* broke new ground by using FRCP 23 to confirm a $1 billion-plus uncapped settlement for retired NFL players and their families. Most recently, as lead counsel appointed by Judge Joy Flowers Conti in *Philips Recalled CPAP, Bi-Level Pap*, and *Mechanical Ventilator Litig.*, Mr. Seeger was the lead negotiator for a settlement resolving plaintiffs' personal injury claims for $1.075 billion, as well as agreements for an uncapped class action settlement worth at least $479 million (resolving economic loss claims of users and payers impacted by the recall of more than 10 million devices), and an additional agreement resolving medical monitoring claims for $25 million.

Mr. Seeger also was appointed co-lead counsel in the *3M Combat Arms Earplug Litig.*, where, after more than four years of litigation, Mr. Seeger secured a landmark settlement worth over $6 billion, successfully resolving the largest mass tort in American history. Mr. Seeger's track record of leading and resolving major cases and obtaining billions in compensation for injured parties also includes a $21 billion-plus settlement with Volkswagen and Audi over the "clean diesel" scandal—the largest consumer auto industry class action settlement in U.S. history, more than $50 billion in settlements in *Opioids*, and a $4.85 billion global settlement with Merck on behalf of patients who

suffered heart attacks and strokes while taking Vioxx. Mr. Seeger's ability to move parties toward consensus allowed him to unite hundreds of thousands of cases filed by individual farmers in four districts into a class action that provided a $1.5 billion settlement for farmers impacted by Syngenta GMO seed contamination—the largest agricultural settlement in U.S. history.

Mr. Seeger's firm resume is attached as Ex. C, and additional information about Mr. Seeger and his firm is available at www.seegerweiss.com.

### 4.  James E. Cecchi of Carella Byrne Cecchi Brody & Agnello, P.C.

Mr. Cecchi and his firm Carella Byrne have served as lead counsel, co-lead counsel and as committee members in some of the most important class actions in New Jersey and the nation over the last 10 years. In that time period, Mr. Cecchi has earned a reputation as a skilled and professional advocate who is respected by both the plaintiffs' bar and—importantly—the defense bar. Examples of important class cases where Mr. Cecchi served in a leadership capacity include, but are not limited to:

- *In re: Liquid Aluminum Sulfate Antitrust Litig.*, MDL No. 2687 (D.N.J.) (Hon. Jose L. Linares) (Direct purchaser Antitrust case on behalf of municipalities and paper mills regarding price-fixing claims arising from the sale of chemicals utilized in water treatment and paper production; James Cecchi appointed as Lead Counsel along with a 10-member Steering Committee. The case resolved by way of settlements exceeding $100,000,000.)

- *In re National Prescription Opiate Litig.*, MDL No. 2804 (N.D. Ohio) (Hon. Dan A. Polster) (James Cecchi appointed to Plaintiffs' Executive Committee relating to marketing of opioid drugs; settlements in excess of $50,000,000,000 now being distributed to cities and towns across the United States to abate the Opioid epidemic.)

19

- *In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, MDL No. 2672 (N.D. Cal.) (Hon. Charles R. Breyer) (James Cecchi appointed to Steering Committee and as Settlement Class Counsel; settlement in excess of $15,000,000,000 for consumer fraud and warranty claims arising from the use of a defeat device to evade U.S. emissions regulations.)

- *In re: Takata Airbag Prods. Liab. Litig.*, MDL No. 2599 (S.D. Fla.) (Hon. Frederico A. Moreno) (James Cecchi appointed to six-firm Steering Committee and as Settlement Class Counsel; settlement in excess of $1,500,000,000 for consumer fraud and warranty claims arising from use of defective and dangerous airbags; the case is ongoing as it pertains to second-wave defendants, including Mercedes Benz USA.)

- *In re: Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, MDL No. 2904 (D.N.J.) (Hon. Madeline Cox Arleo) (Multi-defendant data breach where James Cecchi is sole Lead Counsel, overseeing 3 tracks including 22 counsel in leadership roles.)

- *In re: Samsung Customer Data Sec. Breach Litig.*, MDL 3055 (D.N.J.) (Hon. Christine P. O'Hearn) (James Cecchi appointed sole Lead Counsel.)

- *In re: Mercedes-Benz Emissions Litig.*, Civil Action No. 16-881 (D.N.J.) (Hon. Kevin McNulty) (James Cecchi appointed as Co-Lead Counsel for Plaintiffs and the Class in a case arising out of the alleged use of a defeat device to evade U.S. emissions regulations; settlement with value in excess of $800,000,000 granted final approval in July 2021.)

- *In Re Effexor XR Antitrust Litig.*, Civil Action No. 11-5661 (D.N.J.) (claims on behalf of indirect purchasers of brand-name drug alleging that manufacturer obtained patent by fraud and enforced patent by sham litigation to maintain illegal monopoly of brand-name drug; James Cecchi appointed as Chair of Plaintiffs' Indirect Purchaser Executive Committee. After 13 years of litigation, settlement of $25.5 million is pending final approval.)

Mr. Cecchi's firm resume is attached as Ex. D, and additional information about

Mr. Cecchi and his firm is available at www.carellabyrne.com.

20

**Proposed Executive Committee:**

The members of the proposed Executive Committee are each some of the most experienced and respected plaintiffs' lawyers in the nation—with a vast reservoir of successful antitrust victories including some of the largest ever.

### 1.    Karin B. Swope of Cotchett, Pitre & McCarthy, LLP

Cotchett, Pitre & McCarthy ("CPM") has been one of the nation's leading plaintiffs' law firms practicing complex litigation, including major antitrust cases, for the last 50 years and has recovered substantial damages and settlements for economically harmed plaintiffs. CPM has served in leadership roles on several complex class actions, including: *Apple Device Performance Litig.*, No. 18-MD-2827 (N.D. Cal.) (appointed lead counsel resulting in settlement of $310 million); *In re Automotive Parts Antitrust Litig.*, No. 2:12-md-02311 (E.D. Mich.) (appointed co-lead counsel for end-payor plaintiffs, resulting in more than $1.2 billion in settlements to date); *Precision Assocs., Inc. v. Panalpina World Transp. (Holding) Ltd.*, No. 1:08-cv-00042 (E.D.N.Y.) (appointed co-lead counsel, resulting in $450 million in settlements); *In re Transpacific Passenger Air Transp. Antitrust Litig.*, No. 3:07-cv-05634 (N.D. Cal.) (appointed as co-lead counsel, resulting in settlements of more than $148 million); *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-02420 (N.D. Cal.) (appointed co-lead counsel, resulting in $113 million in settlements on behalf of the classes); and *In re Broiler Chicken Antitrust Litig.*, No. 1:16-cv-08637 (N.D. Ill.) (appointed co-lead counsel,

resulting in more than $104 million in settlements on behalf of the commercial indirect class).

Karin Swope is a partner at CPM with over 30 years' experience litigating highly complex antitrust, consumer fraud and other class actions before federal district courts across the country. She has litigated against Big Tech companies, including serving as lead counsel or on the executive committees in the *Apple Device Performance*, No. 18-MD-2827 (N.D. Cal.); *Google RTB Consumer Privacy Litig.*, No. 21-cv-02155 (N.D. Cal.) and *In re Zoom Video Communications, Inc. Privacy Litig.*, No. 20-cv-02155 (N.D. Cal.). She has prosecuted highly complex antitrust and consumer actions in *Google Play Consumer Antitrust Litig.*, No. 20-cv-05761 (N.D. Cal.); *In re Bank of America Unemployment Benefits Litig.* No. 21-md-2992 (S.D. Cal.) and *Yardi Rental Antitrust Litig.*, No. 24-cv-063117 (Ca. Sup. Ct., Alameda Cnty.).

Ms. Swope's firm resume is attached as Ex. E, and additional information about Ms. Swope and her firm is available at www.cpmlegal.com.

### 2.    Linda P. Nussbaum of Nussbaum Law Group, P.C.

Nussbaum Law Group, P.C. ("NLG") is a litigation firm specializing in precedent-setting class litigation. Linda Nussbaum, the firm's founder, has been at the forefront of landmark fair competition and other complex class cases for over 40 years.

Ms. Nussbaum has been appointed to leadership positions in several antitrust class actions in the District of New Jersey.  In 2003, she was appointed one of two Co-Lead

Class Counsel in *In re Remeron Antitrust Litig.*, No. 03-cv-0085 (D.N.J.). When that case settled for $75 million, Judge Hochberg commented: "[W]e sitting here don't get to see such fine lawyering, and it's really wonderful for me both to have tough issues and smart lawyers. On behalf of the entire federal judiciary, I want to thank you for the kind of lawyering we wish everybody would do." In 2012, Judge Linares appointed Ms. Nussbaum as one of two Co-Lead Counsel in *Castro, et al. v. Sanofi Pasteur, Inc.*, No. 11-cv-07178 (D.N.J.). That case settled for $61.5 million. She was also appointed Co-Lead Counsel in *In re Bank of Nova Scotia Spoofing Litig.*, No. 20-cv-11059 (D.N.J.) and served with Mr. Cecchi on the Plaintiffs' Steering Committee in *In re Liquid Aluminum Sulfate Antitrust Litig.*, No. 16-md-02687 (D.N.J.).

Currently, Ms. Nussbaum is serving as Co-Lead Counsel for the LabCorp Track in *In re American Med. Collection Agency, Inc., Customer Data Sec. Breach Litig.*, No. 19-md-02904 (D.N.J.) pending before Judge Arleo and is one of two Co-Leads representing direct purchasers in *In re Vascepa Direct Purchaser Antitrust Litig.*, No. 21-cv-12747 (D.N.J.). In November 2023, she was appointed one of three Interim Co-Leads in *In re Fragrance Direct Purchaser Antitrust Litig.*, No. 23-2174 (D.N.J.).

Outside this District, Ms. Nussbaum serves as Co-Lead Class Counsel for a certified Rule 23(b)(2) class of merchants who accept credit cards in a long-running antitrust litigation challenging supra-competitive merchant fees brought against Visa, Mastercard and the major national banks in *In re Payment Card Interchange Fee and*

*Merch. Discount Antitrust Litig.*, No. 05-md-01720 (E.D.N.Y.). She is also Co-Lead Counsel for direct purchasers in two antitrust litigations against brand drug manufacturers in *In re Actos Direct Purchaser Antitrust Litig.*, No. 13-cv-09244 (S.D.N.Y.) and *KPH Health Servs, Inc. v. Mylan N.V. et al.*, No. 20-cv-02065 (D. Kan.).

Ms. Nussbaum's firm resume is attached as Ex. F, and additional information about Ms. Nussbaum and her firm is available at www.nussbaumlawgroup.com.

### 3.    Joseph H. Meltzer of Kessler Topaz Meltzer & Check, LLP

Since 1987, Kessler Topaz Meltzer & Check, LLP ("KTMC") has specialized in the prosecution of complex class actions, including antitrust actions, and has grown into one of the largest and most successful firms in the field. KTMC has the resources necessary to litigate complex cases with nearly 100 attorneys, an in-house investigative department, experienced support staff, and offices on both coasts. KTMC was named Class Action Firm of the Year by the National Law Journal as part of the 2024 Elite Trial Lawyers awards, and the Legal Intelligencer has awarded KTMC with its Class Action Litigation Firm of The Year award in multiple years, including in 2024. KTMC was further recognized as one of the top antitrust law firms in the country in the 2022 Antitrust Annual Report.

Joseph Meltzer, a partner of KTMC, manages the Firm's Antitrust Practice Group and concentrates his practice in the areas of antitrust, pharmaceutical pricing and fiduciary litigation. Mr. Meltzer has also lectured on issues related to antitrust litigation.

Further, Mr. Meltzer has served as a special assistant attorney general for the states of Montana, Utah, and Alaska, successfully prosecuting claims arising out of the marketing, promotion, and sale of certain atypical antipsychotic drugs.

Mr. Meltzer, and attorneys at KTMC, have successfully represented purchasers in numerous antitrust cases, including the following:

- *In re: Zetia Antitrust Litig.*, MDL No. 2836 (E.D. Va.): KTMC was counsel for direct purchasers alleging that a brand drug company and generic drug company entered into an unlawful pay-for-delay agreement. A global settlement was reached (including the indirect purchaser class and several large retailers), prior to jury selection, for over $600 million.

- *In re Ranbaxy Generic Drug Application Antitrust Litig.*, No. MDL No. 2878 (D. Mass.): In a case brought under federal RICO and antitrust laws, KTMC was counsel for direct purchasers alleging that a generic drug company delayed competition by deceiving the FDA with respect to generic drug applications. Prior to trial, the parties agreed to a $340 million settlement.

- *In re Zinc Antitrust Litig.*, No. 2:14-cv-03728 (S.D.N.Y.): Mr. Meltzer served as interim co-lead counsel on behalf of a class of direct purchasers of zinc against Glencore, one of the world's largest multinational trading houses. Plaintiffs defeated a motion to dismiss and engaged in substantial discovery when the case resolved for $9.8 million.

- *In re: Loestrin Fe 24 Antitrust Litig.*, MDL No. 2472 (D.R.I.): Mr. Meltzer was co-lead counsel for direct purchasers challenging the allegedly unlawful delayed entry of generic versions of three drugs. After extensive fact and expert discovery, two rounds of summary judgment, the certification of a class, and pre-trial submissions, the case settled for $120 million.

- *Vista Healthplan, Inc. v. Cephalon, Inc.*, No. 2:06-cv-1833 (E.D. Pa.): Mr. Meltzer served as co-lead counsel for end payors alleging that defendants participated in an unlawful "reverse payment" scheme involving the wakefulness

promoting drug Provigil. The litigation spanned over 12 years and ultimately settled for $65.8 million on behalf of certain end payors.

- *In re: Flonase Antitrust Litig.*, No. 2:08-cv-3149 (E.D. Pa.): Mr. Meltzer served as lead counsel for direct purchasers, alleging that GlaxoSmithKline engaged in "sham" petitioning of a government agency. Direct purchasers defeated two motions for summary judgment and succeeded in having a class certified. Shortly before trial, the action settled for $150 million.

Mr. Meltzer and attorneys at KTMC currently serve in leadership positions in the following antitrust cases: *In re: Vascepa Antitrust Litig.*, No. 3:21-cv-12061 (D.N.J.), *In re: Copaxone Antitrust Litig.*, No. 2:22-cv-01232 (D.N.J.) and *In re: Passenger Vehicle Replacement Tires Antitrust Litig.*, MDL No. 3107 (N.D. Ohio).

Mr. Meltzer's firm resume is attached as Ex. G, and additional information about Mr. Meltzer and his firm is available at www.ktmc.com.

### 4.     Hae Sung Nam of Kaplan Fox & Kilsheimer LLP

Founded in 1954, Kaplan Fox is one of the most established plaintiffs' litigation practices in the country. Kaplan Fox has been appointed by courts around the country to lead, co-lead or be part of a steering committee in highly complex litigation matters. *See, e.g.*, *In re Concrete & Cement Additives Antitrust Litig.*, No. 23-cv-10875 (S.D.N.Y.); *Dinosaur Fin. Grp. LLC, et al. v. S&P Global, Inc., et al.*, No. 22-cv-1860 (S.D.N.Y.); *In re Google Play Consumer Antitrust Litig.*, No. 20-cv-5761 (N.D. Cal.); *In re Juul Labs, Inc. Antitrust Litig.*, No. 20-cv-2345 (N.D. Cal.); *In re Caustic Soda Antitrust Litig.*, 19-cv-00385 (W.D.N.Y.); *In re: Surescripts Antitrust Litig.*, No. 19-cv-06627

(N.D. Ill.); *Apple Device Performance*, No. 18-md-02827-EJD (N.D. Cal.); *In re Generic Pharms. Pricing Antitrust Litig.*, No. 16-md-2724 (E.D. Pa.); *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, No. 14-md-02542 (S.D.N.Y); *In re Cast Iron Soil Pipe and Fittings Antitrust Litig.*, No. 14-md-2509 (E.D. Tenn.).

Hae Sung Nam has been representing consumers, employees, and investors in complex class actions and multi-district litigation throughout the country for over 25 years and has substantial experience in antitrust matters. Ms. Nam was appointed co-lead counsel in *In re Google Play Consumer Antitrust Litig.*, No. 20-cv-5761 (N.D. Cal.) and has played a key role in the firm's antitrust matters, including *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, No. 14-md-02542 (S.D.N.Y), *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, No. 05-md-01720 (E.D.N.Y), *In re Flat Glass Antitrust Litig.*, No. 03-cv-2920 (W.D. Pa.), and *In re High Fructose Corn Syrup Antitrust Litig.*, MDL No. 1087 (C.D. Ill.).

Ms. Nam's firm resume is attached as Ex. H, and additional information about Ms. Nam and her firm is available at www.kaplanfox.com.

### 5.   Peter A. Barile III of Lowey Dannenberg, P.C.

Founded more than 50 years ago, Lowey Dannenberg P.C. ("Lowey") is one of the premier firms in the United States that represents antitrust plaintiffs in class actions and multidistrict litigation, regularly serving as lead or co-lead counsel in the most important and complex antitrust class actions against the world's largest corporations,

including Apple. In just the past decade, Lowey has recovered more than $1.8 billion for its clients as lead or co-lead counsel in class and individual actions. For its work as co-lead counsel in *In re GSE Bonds Antitrust Litig*., 2020 WL 3250593, at *4 (S.D.N.Y. Jun. 16, 2020) (settlement of $386.5 million achieved), the American Antitrust Institute recognized Lowey with the 2020 Outstanding Antitrust Litigation Achievement in Private Law Practice Award.  This year Lowey was ranked as the #1 Law Firm based on Antitrust Settlements in ISS Securities Class Action Services' *Top Plaintiff Law Firms of 2023*.

Peter Barile has more than 20 years of experience as an antitrust litigator, representing class action plaintiffs, as well as individual clients, on both sides of the docket in a variety of industries. As lead, co-lead, or class counsel, he has played an integral role in dozens of major national antitrust class actions, including representing individuals against Apple and other high-tech firms. *See, e.g.*, *In re High-Tech Employees Antitrust Litig.*, No. 5:11-cv-02509 (N.D. Cal.) (national antitrust conspiracy litigation class certified against Apple and other Silicon Valley giants; more than $400 million in settlements achieved). For his work as co-lead counsel in the *ISDAfix Antitrust Litigation* against 15 multinational banks, in which more than $500 million in settlements were achieved, he and co-counsel were awarded the 2018 American Antitrust Institute Outstanding Antitrust Litigation Achievement in Private Law Practice

Award. Mr. Barile is the Chairman of the Antitrust and Trade Regulation Section of the Connecticut Bar Association.

Mr. Barile's firm resume is attached as Ex. I, and additional information about Mr. Barile and his firm is available at www.lowey.com.

### 6.  Daniel J. Nordin of Gustafson Gluek PLLC

Dan Nordin is a partner at Gustafson Gluek. He has represented plaintiffs in many antitrust class actions that have recovered millions of dollars for class members. *See, e.g.*, *In re Packaged Seafood Prods. Antitrust Litig.*, No. 3:15-md-02670 (S.D. Cal.); *Jones v. Varsity Brands*, No. 2:20-cv-02892 (W.D. Tenn.); *In re Dealer Mgmt. Sys. Antitrust Litig.*, No. 1:18-cv-00864 (N.D. Ill.); *In re Blue Cross Blue Shield Antitrust Litig*, No. 2:13-cv-20000 (N.D. Ala.); *The Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, No. 2:10-cv-14360 (E.D. Mich.). Mr. Nordin is also currently representing plaintiffs against in claims against Google based on Google's alleged unlawful monopolization of the online display advertising market.

Mr. Nordin's firm resume is attached as Ex. J, and additional information about Mr. Nordin and his firm is available at www.gustafsongluek.com.

### 7.  Mark J. Dearman of Robbins Geller Rudman & Dowd LLP

Mark Dearman is a Partner at Robbins Geller Rudman & Dowd LLP ("Robbins Geller"), one of the nation's largest plaintiffs' side multidistrict litigation, aggregate litigation, and class action law firms. Robbins Geller has recovered well over $50 billion

for aggrieved class members, achieving numerous record-setting class recoveries, including the largest private antitrust recovery in history. *See In re Payment Card Interchange Fee & Merch. Discount Antitrust Litig.*, MDL No. 1720 (E.D.N.Y.) ($5.7 billion).

Over the last 30 years, Mr. Dearman has dedicated his professional life to handling complex class actions and MDLs, received numerous awards for his work, and is a speaker at conferences concerning class action practice. While at Robbins Geller, he has successfully prosecuted many antitrust schemes, consumer frauds, and mass torts, including:

- *In re Nat'l Prescription Opiate Litig.*, MDL No. 2804-DAP (N.D. Ohio) (Polster, J.) (total recovery to date on behalf of governmental entities is of approximately $60 billion).

- *In re McKinsey & Co., Inc. Nat'l Prescription Opiate Consultant Litig.*, No. 3:21-md-02996-CRB (SK) (N.D. Cal.) (Breyer, J.) (total recovery for governmental entities and third party payors of approximately $230 million).

- *In re Juul Labs, Inc., Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 3:19-md-02913-WHO (N.D. Cal.) (Orrick, J.) (multi-district litigation that secured a $255 million settlement with JUUL Labs, Inc., $235 million class action settlement with Altria defendants, and significant settlements on behalf of government entities and personal injury plaintiffs).

- *In re Liquid Aluminum Sulfate Antitrust Litig.*, No. 16-md-2687-MCA-MAH (D.N.J.) (Linares, J.) (total recovery on behalf of direct purchasers of approximately $100 million).

- *In re Apple Inc. Device Performance Litig.*, No. 5:18-md-2827-EJD (N.D. Cal.) (Davila, J.) (Chair of Executive Committee; total recovery on behalf of a class of consumers of $310 million).

- *In re EpiPen Mktg., Sales Practices & Antitrust Litig.*, No. 2:17-md-02785-DDC-TJJ (D. Kan.) (Crabtree, J.) (Co-Lead Counsel; $609 million recovery in certified class action alleging antitrust claims involving effort to delay the generic EpiPen).

Mr. Dearman's firm resume is attached as Ex. K, and additional information about Mr. Dearman and his firm is available at www.rgrd.com.

**Proposed Steering Committee:**

**1.      Alison E. Chase of Keller Rohrback LLP**

Keller Rohrbrack ("KR") has had a prominent role in many cases with significant national impact, possessing both the human and financial resources to litigate major complex cases. KR's recent cases of note include the $725 million settlement in *In re: Facebook, Inc. Consumer Privacy User Profile Litig.* (the largest ever secured in a data privacy class action), and the $255 million class settlement in *In re: JUUL Labs, Inc. Mktg., Sales Practices, & Prods. Liab. Litigation.*

Alison Elizabeth Chase is a partner with KR and a member of the firm's executive committee. Ms. Chase's experience encompasses major antitrust, financial industry, and consumer protection litigation, including class actions and mass torts across the country. Her antitrust experience includes litigation relating to prescription drug pricing, including *In re: EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices and Antitrust Litig.* (MDL 2785), for which KR was honored by the American Antitrust Institute for its work. Ms. Chase currently represents health plan payors, insurers, and consumers in several ongoing litigations concerning alleged anti-competitive conduct in

31

the markets for multiple sclerosis therapies and other prescription drugs. Ms. Chase was appointed co-lead counsel to the settlement class in *In re So Cal Gas Leak Cases* (Cal. JCCP 4861), a coordinated proceeding arising from the largest natural gas leak in U.S. history, and has also been appointed class counsel in other consumer protection litigation relating to consumer financial products and novel FinTech.

Ms. Chase's firm resume is attached as Ex. L, and additional information about Ms. Chase and her firm is available at www.kellerrohrback.com.

### 2.    Jeff Ostrow of Kopelowitz Ostrow P.A.

Jeff Ostrow has been practicing for 27 years and is the Managing Partner of Kopelowitz Ostrow P.A. ("KO"), a 28-attorney South Florida-based firm founded in 1996. Serving as Lead Class Counsel, Liaison Counsel, Coordinating Counsel, or Settlement Class Counsel, he has successfully litigated and settled cases resulting in the recovery of well over a billion dollars, while making monumental practice changes across a variety of industries. KO has broad antitrust experience. Notable recent large antitrust class actions include *In re Disposable Contact Lens Antitrust Litig.*, No. 3:15-md-2626 (M.D. Fla.), an MDL which recovered more than $88 million for consumers and where KO served as Liaison Counsel, and *In Re: Farm-Raised Salmon & Salmon Prods. Antitrust Litig.*, No. 1:19-cv-21551 (S.D. Fla.), which recovered $75 million to direct purchasers and where KO also served as Liaison Counsel. Mr. Ostrow will

leverage KO's substantial experience and resources to assist Lead Counsel in this litigation.

Mr. Ostrow's firm resume is attached as Ex. M, and additional information about Mr. Ostrow and his firm is available at www.kolawyers.com.

### 3. Michelle C. Clerkin of Spiro Harrison & Nelson LLC

Spiro Harrison & Nelson LLC ("SHN") is a boutique law firm with deep complex litigation experience. SHN attorneys have represented both plaintiffs and defendants in a variety of litigation matters involving antitrust law, securities fraud, intellectual property, and business disputes, among others.

SHN attorneys have represented clients in high stakes antitrust litigation matters on both the plaintiff and defense side, including in class actions involving monopolization, price-fixing, market allocation, and other anticompetitive practices. SHN attorneys are currently members of litigation teams representing direct and indirect purchaser plaintiffs in antitrust class actions pending across the country, including: *In re Passenger Vehicle Replacement Tires Antitrust Litig.*, No. 5:24-md-03107 (N.D. Ohio); *In re Eyewear Antitrust Litig.*, No. 1:24-cv-04826 (S.D.N.Y.); *Lambrix, et al. v. Tesla, Inc.*, No. 3:23-cv-01145 (N.D. Cal.); and *In re: Generic Pharms. Pricing Antitrust Litig.*, No. 2:16-md-02724 (E.D. Pa.).

Michelle C. Clerkin leads SHN's Antitrust & Unfair Trade Practices Group. Ms. Clerkin has 14 years of experience representing direct and indirect purchaser plaintiffs

in several notable antitrust class actions. Ms. Clerkin has served on litigation teams in antitrust matters spanning the consumer product, technology, financial, and pharmaceutical industries, among others.

Ms. Clerkin brings leadership experience to this case, having been appointed by federal courts to serve on Plaintiffs' Steering Committees in *In re Passenger Vehicle Replacement Tires Antitrust Litig.*, No. 5:24-md-03107 (N.D. Ohio); *In re Chicago Board Options Exchange Volatility Index Manipulation Antitrust Litig.*, No. 1:18-cv-04171 (N.D. Ill.); and *In re Juul Labs, Inc. Antitrust Litig.*, No. 3:20-cv-02345 (N.D. Cal.). Ms. Clerkin also has experience working cooperatively and effectively with other antitrust law firms, including law firms seeking leadership appointments in this case.

Ms. Clerkin's firm resume is attached as Ex. N, and additional information about Ms. Clerkin and her firm is available at www.shnlegal.com.

### 4.    Joseph M. Vanek of Sperling & Slater, LLC

Mr. Vanek and his firm Sperling & Slater have served as lead counsel, co-lead counsel and as committee members in some of the most important class actions throughout the nation over the last 30 years. In that time period, Mr. Vanek has earned a reputation as a skilled and professional advocate, as underscored by him being named by Lawdragon in 2023 and 2024 as one of its 500 Leading Litigators in America. In 2022 Mr. Vanek also an Honoree for the Antitrust Enforcement Award for Outstanding

34

Antitrust Achievement in Private Law Practice, which was awarded by the American Antitrust Institute.

Mr. Vanek's firm resume, including a list of a few of the cases he has worked on, is attached as Ex. O, and additional information about Mr. Vanek and his firm is available at https://sperling-law.com.

### 5. Roberta D. Liebenberg of Fine, Kaplan and Black, R.P.C.

Roberta D. Liebenberg, Fine Kaplan and Black's senior partner, has a proven, successful track record in effectively and efficiently leading antitrust class actions and other complex litigation for both plaintiffs and Fortune 500 defendants throughout the United States. Ms. Liebenberg was appointed by Judge Cynthia Rufe as Lead Counsel for the End-Payer Class in *In re Generic Pharms. Pricing Antitrust Litig.*, MDL No. 2724 (E.D. Pa.), the largest antitrust price-fixing case now pending in the country. As Lead Counsel for the End-Payer Class, Ms. Liebenberg coordinates with lead counsel for direct purchasers and with 46 State Attorneys General across the country.

Ms. Liebenberg also has extensive trial experience involving complex MDLs. For example, she served as one of the trial counsel for the class in *In re Urethane Antitrust Litig.*, MDL No. 1616 (D. Kan.) where, after a four-week trial, the jury returned a verdict of $400 million against the Dow Chemical Company. After trebling, the Court entered a judgment in excess of $1 billion. This was the largest judgment ever awarded in a price-fixing case and it was later unanimously affirmed by the Tenth Circuit. *In re*

*Urethane Antitrust Litig.*, 768 F.3d 1245 (10th Cir. 2014). While the case was pending on appeal in the United States Supreme Court, Dow agreed to a settlement for $835 million, which when added to prior settlements in the case resulted in a class recovery of $974 million, more than 2.4 times the damages found by the jury.

Ms. Liebenberg's firm resume is attached as Ex. P, and additional information about Ms. Liebenberg and her firm is available at www.finekaplan.com.

**The Majority Group is the Right Size for a Case of This Magnitude**

The Majority Group is appropriately structured given the realities of this case and the history of most recent large MDLs throughout the country.

First, the realities of this case. It is not an exaggeration to suggest that this case—like the Microsoft antitrust case over 20 years ago—is an existential one for the Defendant. The claims in the DOJ case and the Private Plaintiff case challenge the very core of Apple's business, a business that has generated tens of billions of dollars in revenue for Apple. The Defendant will, obviously, defend itself vigorously to the end. It has retained two of the leading national law firms to undertake that defense—Kirkland & Ellis and Gibson Dunn.

The claims in the Private Plaintiff action also seek a massive quantum of damages. The overcharges we seek returned to the class are massive and will be in the billions, just like *Opioids*. To undertake the work necessary to prosecute this case effectively will require a focused and diverse group of highly talented attorneys from all over the country

36

who are willing to undertake this challenge. Given the size and complexity of the case, our proposal is, respectfully, just right. There are numerous recent precedents in this District and beyond where similar structures were adopted and worked efficiently to prosecute similarly complex cases. *See, e.g.*, *Opioids*, MDL No. 2804, No. 1:17-md-2804 (N.D. Ohio), Dkt. Nos. 34, 37 (appointing 3 lead counsel, 16 attorney executive committee, 3 liaison counsel); *Apple Device Performance*, MDL 2827, No. 18-md-02827 (N.D. Cal.), Dkt. No. 99 (appointing 2 lead counsel, 23 attorney executive committee, 14 attorney steering committee); *In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, MDL No. 2904, No. 19-md-02904 (D.N.J.), Dkt. No. 115 (appointing 1 lead counsel, 9 co-lead counsel in 3 separate tracks, 9 attorney steering committee in 3 separate tracks, 1 bankrupty liaison counsel and 2 bankruptcy attorney steering committee); *In re Evenflo Co., Inc. Mktg., Sales Pracs. & Prods. Liab. Litig.*, MDL No. 2938, No. 20-md-2938 (D. Mass.), Dkt. No. 50 (appointing 3 lead counsel, 1 liaison counsel, 3 attorney executive committee); *In re Suboxone (Buprenorphine/Naloxone) Film Prods. Liab. Litig.*, MDL3092, No. 1:24-md-03092 (N.D. Ohio), Dkt. No. 35 (appointing 4 interim co-lead class counsel, executive committee, and steering committee for at least 15 consolidated civil actions); *In re: Realpage, Inc.*, *Rental Software Antitrust Litig. (No. II)*, MDL 3071, No. 3:23-md-3071 (M.D. Tenn.), Dkt. No. 278 (appointing 3 interim co-lead class counsel, executive committee, and liaison counsel in consolidated antitrust case); *see also In re Eur. Gov't*

37

*Bonds*, No. 1:19-cv-02601 (S.D.N.Y.), Dkt. Nos. 35, 200 (appointing 4 co-lead interim class counsel for 2 consolidated antitrust actions).

### C)   Proposed Counsel Will Commit The Necessary Resources To Vigorously Prosecute This Action

In addition to their ample experience and qualifications, the firms at which Proposed Counsel work are well capitalized, and are fully capable and prepared to staff and finance this action. Indeed, Proposed Counsel's firms also regularly advance the costs of class actions and are prepared to do so in this case. None of the proposed Majority Group utilizes litigation funding.

## IV.   THE MAJORITY GROUP WILL WORK EFFICIENTLY TO CONTROL COSTS AND COMMUNICATE WITH ALL COUNSEL

To address the Court's concerns about controlling costs and duplication of efforts of counsel, as noted above, the proposed Co-Lead Counsel will pre-approve all assignments that the Executive and Steering Committees make to eliminate duplication of effort. Only approved work will be eligible to be considered for a portion of class counsel fees should Plaintiffs succeed. Additionally, the proposed Co-Leads will implement rules for things like attendance at depositions and transcript review, and attendance at court conferences to further reduce waste. The proposed Co-Leads also intend to submit a case management order for the Court's approval that will set forth these cost-mitigating and billing protocols, among other things. The Majority Group as

38

a whole is committed to litigating this case as efficiently as possible. As is inherent in contingency work, it behooves plaintiffs' counsel to litigate as leanly as possible.

In terms of billing, all firms performing work in this matter will be required to submit monthly time and expense reports. The proposed Co-Lead Counsel will submit a draft time and expense report in connection with the aforementioned case management order for the Court's consideration and approval. We anticipate retaining an independent auditor to audit the billing from the outset.

To address the Court's concerns about including counsel who are not part of the Majority Group and communicating with counsel, as we have stated, inclusion is one of the touchstones of our group. We welcome anyone who wants to participate in the litigation by performing work to join us. If the Court grants our application and appoints the Majority Group slate, we will inform all counsel of the opportunities to involve themselves in the various substantive areas of litigation, including, but not limited to, research and briefing, offensive and defensive discovery, expert discovery, and document review. The Majority Group will make use of the latest technology to ensure that communication channels are open and that we provide regular updates to all plaintiffs' counsel.

## V.   CONCLUSION

For the foregoing reasons, we respectfully ask Your Honor to appoint the Majority Group as interim leadership on behalf of Direct iPhone Purchaser Plaintiffs.

DATED: August 8, 2024                    Respectfully Submitted,


                                         BY: _James E. Cecchi_____
Steven W. Berman                         James E. Cecchi
**HAGENS BERMAN SOBOL**                  **CARELLA BYRNE CECCHI**
**SHAPIRO, LLP**                         **BRODY & AGNELLO, PC**
1301 Second Avenue                       5 Becker Farm Road
Suite 2000                               Roseland, NJ 07068
Seattle, WA 98101                        Tel: 973-994-1700
Tel: 206-623-7292                        Email: jcecchi@carellabyrne.com
Email: steve@hbsslaw.com


Dena Sharp                               Christopher A. Seeger
**GIRARD SHARP LLP**                     **SEEGER WEISS, LLP**
601 California Street, Suite 1400        55 Challenger Road
San Francisco, CA 94108                  Ridgefield Park, NJ 07660
Tel: 415-981-4800                        Tel: 973-639-9100
Email: dsharp@girardsharp.com            Email: cseeger@seegerweiss.com

                                         *Proposed Co-Lead Interim Counsel*


Linda P. Nussbaum                        Karin B. Swope
**NUSSBAUM LAW GROUP, PC**               **COTCHETT, PITRE &**
1133 Avenue of the Americas,             **MCCARTHY, LLP**
31st Floor                               999 N. Northlake Way, Suite 215
New York, NY 10036                       Seattle, WA 98103
Tel: 917-438-9189                        Tel: 206 802-1272
Email: lnussbaum@nussbaumpc.com          Email: kswope@cpmlegal.com


Joseph H. Meltzer                        Hae Sung Nam
**KESSLER TOPAZ MELTZER**                **KAPLAN FOX**
**& CHECK, LLP**                         **& KILSHEIMER LLP**
280 King of Prussia Road                 800 Third Avenue
Radnor, PA 19087                         38th Floor

40

Tel: 610-667-7706
Email: jmeltzer@ktmc.com

Peter A. Barile III
**LOWEY DANNENBERG, PC**
44 South Broadway, Suite 1100
White Plains, NY 10601
Tel: 914-997-0500
Email: pbarile@lowey.com

New York, NY 10022
Tel: 212-687-1980
Email:  hnam@kaplanfox.com

Daniel J. Nordin
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 S. Sixth Street, Suite 2600
Minneapolis, MN 55402
Tel: 612-333-8844
dnordin@gustafsongluek.com

Mark J. Dearman
**ROBBINS GELLER RUDMAN
& DOWD LLP**
225 NE Mizner Boulevard, Suite 720
Boca Raton, FL 33432
Telephone: 561-750-3000
Email: mdearman@rgrdlaw.com

*Proposed Executive Committee*

Jeff Ostrow
**KOPELOWITZ OSTROW PA**
One West Las Olas Blvd., Suite 500
Fort Lauderdale, FL 33301
Tel: 954-332-4200
Email: ostrow@kolawyers.com

Joseph M. Vanek
**SPERLING & SLATER, LLC**
55 W. Monroe Street, 32nd Floor
Chicago, IL 60603
Tel: 312-641-3200
Email: jvanek@sperling-law.com

Alison E. Chase
**KELLER ROHRBACK LLP**
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Tel: 805-456-1496
Email: achase@kellerrohrback.com

Michelle C. Clerkin
**SPIRO HARRISON &
NELSON LLC**
40 Exchange Place, Suite 1404
New York, NY 10005
Telephone: 646-880-8850
Email: mclerkin@shnlegal.com

Roberta D. Liebenberg
**FINE KAPLAN &**
**BLACK, R.P.C.**
One South Broad Street
23rd Floor
Philadelphia, PA 19107
Tel: 215-567-6565
Email: rliebenberg@finekaplan.com

*Proposed Steering Committee*