# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: APPLE INC. SMARTPHONE ANTITRUST LITIGATION<br><br>*This Document Relates to:*<br>*All Direct Purchaser Plaintiff Actions* | Case No. 24-MD-3113 (JXN-LDW) |

## MEMORANDUM OF LAW IN SUPPORT OF HAUSFELD LLP'S & SUSMAN GODFREY LLP'S MOTION TO APPOINT INTERIM CLASS COUNSEL FOR THE DIRECT PURCHASER PLAINTIFFS

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ............................................................................... ii

TABLE OF AUTHORITIES...................................................................... iv

I.  INTRODUCTION ...................................................................................1

II.  BACKGROUND....................................................................................4

III.  LEGAL STANDARD..............................................................................6

IV.  ARGUMENT ........................................................................................8

A.  The Court Should Appoint Hausfeld and Susman as Interim Co-Lead Class
    Counsel for the Direct Purchaser Plaintiffs. ....................................................8

   1.  Factor 1: The Proposed Co-Leads have done significant work identifying
       and investigating the claims. ..............................................................8

   2.  Factor 2: The Proposed Co-Leads have extensive relevant experience
       prosecuting complex antitrust class actions, including monopolization and
       technology platform cases. ................................................................11

       a.  Hausfeld's team of lawyers is nationally recognized for its extensive
           experience and success in complex antitrust cases. ...........................12

       b.  Susman Godfrey is the go-to firm for the highest-stakes trials in the
           country, including in matters involving antitrust and complex
           technologies. ............................................................................19

   3.  Factor 3: The Proposed Co-Leads have extensive knowledge and
       experience regarding the law and facts that will apply to Apple's conduct.
       .............................................................................................26

4.  Factor 4: The Proposed Co-Leads can and will devote significant time and resources to this litigation, while maintaining an efficient leadership structure that will best serve the interests of the class. ..............................28

5.  The Proposed Co-Leads and Their Associated and Proposed New Jersey Counsel Have Extensive Experience in this District and in the Third Circuit. ...................................................................................................31

    a.  Lite DePalma Greenberg & Afanador ....................................................32

    b.  Critchley, Kinum & Luria.......................................................................35

6.  The Proposed Structure is Supported by Accomplished Antitrust and Class Action Firms.................................................................................................38

V.  CONCLUSION ................................................................................................40

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Air Cargo Shipping Services Antitrust Litigation*,
  No. 06-md-1775 (E.D.N.Y.) ................................................................17

*In re: American Medical Collection Agency, Inc. Customer Data
  Security Breach Litigation*,
  Docket No. 19-md-2904 (D.N.J.) ........................................................33

*In re Animation Workers Antitrust Litigation*,
  14-cv-04062-LHK (N.D. Cal.) .......................................................20, 21

*In re Apple Inc. Smartphone Antitrust Litigation*,
  Case No. 2:24-md-03113 (D.N.J.) .........................................................7

*In re Automotive Parts Antitrust Litigation*,
  No. 12-md-02311 (E.D. Mich.) .....................................................20, 29

*In re AXA Equitable Life Ins. Co. COI Litigation*,
  No. 16-CV-740 (JMF), 2020 WL 4694172 (S.D.N.Y. Aug. 13,
  2020) ..................................................................................................25

*BCR Carpentry LLC v. FCA US LLC*,
  3:21-cv-19364-GC-DEA (D.N.J.) .........................................................34

*Biondolillo v. Roche Holding AG*,
  No. CV 17-04056, 2017 WL 4220332 (D.N.J. Sept. 22, 2017) ..........32

*In re Blue Cross Blue Shield Antitrust Litigation*,
  No. 13-mdl-2496 (N.D. Ala.) .........................................14, 15, 16, 29

*In re Blue Cross Blue Shield Antitrust Litigation*
  (Subscribers), No. 13-cv-20000 (N.D. Ala.) ......................................34

*In re Broiler Chicken Antitrust Litigation*
  (Direct Purchasers), No. 18-cv-8637 (N.D. Ill.) ................................34

*Brown et al v Google LLC*,
  Case No. 20-03664 (N.D. Cal.) .............................................................21

*Care One Management, LLC, et al. v. United Healthcare Workers*
  *East, SEIU 1199, et al.*,
  No. 12-6371 (D.N.J.) ..............................................37

*Christine Riefa CRL v. Apple Inc., et al.*,
  Case No. 1602/7/7/23 (CAT)....................................10

*Cornish-Adebiyi v. Caesars Entertainment, Inc.*,
  No. 23-cv-2536 (D.N.J.) ..........................................33

*In re Corrugated Container Antitrust Litigation*,
  M.D.L. No. 310 (S.D. Tex.)......................................20

*Dial Corp. v. News Corp.*,
  165 F. Supp. 3d 25 (S.D.N.Y. 2016) .......................28

*Durso v. Samsung Elecs. Am., Inc.*,
  Nos. 12–5352, 12–5412, 12–5440, 2013 WL 4084640 (D.N.J.
  Aug. 7, 2013) ............................................................7

*In re Emisphere Technologies, Inc. et al., Securities Litigation*,
  Case No. 2:23-cv-20898-SDW-AME (D.N.J.)..........34

*In re Farm-Raised Salmon and Salmon Products Antitrust Litigation*,
  Case No. 1:19-cv-21551 (S.D. Fla.) ......................15

*FieldTurf Artificial Turf Marketing and Sales Practices Litigation*,
  No. 3:17-md-02779 (D.N.J.)....................................36

*In re Foreign Exchange Benchmark Rates Antitrust Litigation*,
  13-cv-7789 (S.D.N.Y.) .................................18, 29, 31

*In re Fragrance Direct Purchaser Antitrust Litigation*,
  2:23-cv-03249 (D.N.J.)............................................32

*In re: Fragrance Indirect Purchaser Antitrust Litigation*,
  2:23-cv-03249 (D.N.J.)............................................33

*Goldfus v. Apple Inc.*,
  Case No. 2:24-cv-04108 (D.N.J.) ..........................5, 8

*In re Google Play Developer Antitrust Litigation*,
  No. 3:20-cv-05792 (N.D. Cal.)...................17, 18, 27, 31

*Gregg v. Cooley LLP*,
No. L-002332-17 (N.J. Sup. Ct.) ..........................................................................37

*Hartig Drug Company Inc. v. Senju Pharmaceutical Co., LTD, et al.*,
1:14-cv-00719 (D. Del.)........................................................................................17

*Helena World Chronicle, LLC v. Google LLC*,
Case No. 1:23-cv-03677 (D.D.C.) ........................................................................15

*In re HIV Antitrust Litigation*,
3:19-cv-02573 (N.D. Cal.).............................................................................15, 28

*Hu v. BMW of N. Am. LLC*,
No. 18-4363 (D.N.J.) ...........................................................................................38

*In re Insurance Brokerage Antitrust Litigation*,
MDL No. 1663, No. 04-5184(FSH) (D.N.J.) ......................................................34

*Iqvia Inc. v. Veeva Sys. Inc.*,
No. CV 17-177-JXN-JSA (D.N.J.).................................................................32, 37

*Kent v. Apple Inc., et al.*,
Case No. 1403/7/7/21 (CAT)................................................................................10

*U.S. ex rel. Kester v. Novartis*,
No. 11-cv-8196 (S.D.N.Y.)...................................................................................31

*In re LIBOR-Based Financial Instruments Antitrust Litigation*,
No. 11-md-2262 (S.D.N.Y.) ........................................................................*passim*

*In re Liquid Aluminum Sulfate Antitrust Litigation*,
No. 16-md-2687(JLL)(JAD) (D.N.J.)............................................................34, 36

*U.S. ex rel. Martinez v. Apria Healthcare Group*,
No. 17-cv-1059 (S.D.N.Y.)...................................................................................31

*Mendez v. Avis Budget Group, Inc.*,
Docket No. 2:2011-cv-06537 (D.N.J.) .................................................................34

*Merck Sharp & Dohme v. Bristol Myers Squibb*,
No. 16-2122 (D.N.J.) ...........................................................................................37

*In re Microsoft Corp. Antitrust Litigation*,
    MDL No. 1332 (D. Md. June 6, 2003) ............................................................27

*Moehrl, et al. v. National Association of Realtors, et al.*,
    No. 19-cv-01610 (N.D. Ill.) .............................................................................20

*In re Motorola Securities Litigation*,
    Civ. No. 03-C-287 (N.D. Ill.) ..........................................................................33

*In re Municipal Derivatives Antitrust Litigation*,
    Case No. 1:08-md-01950 (S.D.N.Y.) .........................................................16, 30

*In re Mylan Pharmaceuticals*,
    Nos. 15-8180, 16-35, 17-6714 (D.N.J) ............................................................38

*Mylan Pharmaceuticals v. GlaxoSmith Kline Beecham*,
    No. 10-4809 (D.N.J.) .......................................................................................37

*Nasdaq v. MIAX*,
    Civil Action No. 3:17-06664-ZNQ-DEA (D.N.J.) ...........................................32

*Nasdaq, Inc. v. Miami International Holding*,
    No. 17-6664 (D.N.J.) .......................................................................................37

*In re National Opioid Prescription Litigation*,
    No. 1:17-md-2804 (N.D. Ohio) ........................................................................36

*In re New Jersey Tax Sale Certificates Antitrust Litigation*,
    750 Fed. Appx. 73 (3d Cir. 2018)....................................................................34

*In re NFL's "Sunday Ticket" Antitrust Litigation*,
    Case No. 2:15-ml-02668 (C.D. Cal.)..........................................................*passim*

*O'Bannon, et al. v. National Collegiate Athletic Association, et al.*,
    7 F. Supp. 3d 955 (N.D. Cal. Aug. 8, 2014).....................................................14

*O'Bannon, et al. v. National Collegiate Athletic Association, et al.*,
    Case No. 09-cv-01967 (N.D. Cal.) ....................................................3, 13, 14, 28

*U.S. ex rel. Poehling v. UnitedHealth Group, Inc.*,
    No. 16-cv-08697 (C.D. Cal.) ............................................................................31

*Polly v. Apple Inc.*,
  Case No. 2:24-cv-07849 (D.N.J.) ..................................................................5

*In re: Polyurethane Foam Antitrust Litigation*,
  MDL No. 2196 (N.D. Ohio) ......................................................................35

*In re Processed Egg Prod. Antitrust Litigation*,
  No. 08–md–02002 (E.D. Pa.) ..............................................................20, 34

*In re Qualcomm Antitrust Litigation*,
  No. 17-md-02773 (LHK) (N.D. Cal.) ........................................................21

*In re Rail Freight Fuel Surcharge Antitrust Litigation I & II*,
  MDL No. 1869, Misc. No. 1:07-md-00489, MDL No. 2925, Misc.
  No. 1:20-md-0008 (D.D.C.)........................................................................30

*Reginald Newton v. Tenet Healthcare Corp. (Tenet Healthcare
  Securities Litigation)*,
  No. 2:02-cv-8462-RSWL (C.D. Cal.)........................................................33

*In re Robinhood Outage Litigation*,
  No. 20-cv-01626-JD, 2020 WL 7330596 (N.D. Cal. July 14, 2020) .................12

*Saba Cap. Master Fund, Ltd. v. BlackRock Mun. Income Fund, Inc.*,
  2024 WL 43344 (S.D.N.Y. Jan. 4, 2024), *aff'd*, 2024 WL 3174971
  (2d Cir. June 26, 2024) ............................................................................26

*Saba Capital CEF Opportunities I, Ltd v. Nuveen Floating Rate
  Income Fund*,
  2022 WL 493554 (S.D.N.Y. Feb. 17, 2022), *aff'd*, 88 F.4th 103 (2d
  Cir. 2023) .................................................................................................26

*In re Samsung Customer Data Security Breach Litigation*,
  No. 23-md-3055 (D.N.J.)...........................................................................34

*In re Thalomid and Revlimid Antitrust Litigation*,
  Case No. 2:14-cv-06997 (D.N.J.) ........................................................17, 28

*United States, et al. v. Apple, Inc.*,
  Case No. 2:24-cv-04055 (JXN)(LDW) (D.N.J.) ..........................................5, 31

*In re Vanguard Chester Funds Litigation*,
  625 F. Supp. 3d 362 (E.D. Pa. 2022)...........................................................7, 31

*Vascepa Antitrust Litigation Indirect Purchaser Plaintiffs*,
   Case No. 21-12061 (ZNQ)(LHG) (D.N.J.) ......................................................33

*In re Vitamin C Antitrust Litig.*,
   No. 1:06-mdl-1738 (E.D.N.Y) ................................................................17, 20, 30

*Waymo LLC v. Uber Techs., Inc.*,
   Case No. 17-cv-939-WHA (N.D. Cal.) ........................................................19, 21

*White v. NCAA*,
   2006 WL 8066803 (C.D. Cal. Oct. 19, 2006) ....................................................28

**Statutes**

N.Y. Ins. Law § 4226 ................................................................................................25

**Other Authorities**

Federal Rule of Civil Procedure 23(g) .................................................................*passim*

Federal Rule of Civil Procedure 50 ..........................................................................3

*Manual for Complex Litig. (Fourth)* ("*Manual*") § 10.221 (2004) ......................6, 7

## I.   INTRODUCTION

Plaintiffs Shoshi Goldfus and Ira Polly respectfully move for the appointment of Hausfeld LLP ("Hausfeld") and Susman Godfrey LLP ("Susman") as Interim Co-Lead Class Counsel (the "Proposed Co-Leads") for the putative class of Apple iPhone direct purchasers. Apple is represented by two titans of the defense bar. The class should similarly be represented by two titans of the plaintiffs' bar with a demonstrated track record of working, both independently and together, to win the highest-profile, highest-stakes antitrust cases in the country.

For three simple reasons, Hausfeld and Susman are the right choice for the class. ***First***, Hausfeld and Susman offer an ***efficient and lean leadership structure***, comprised of two firms with a deep bench of lawyers, significant resources, and big-ticket antitrust experience needed to prosecute this case. While complex, this single-defendant case is not one where the interests of the class will be served by the inefficiencies that come from a sprawling, multi-firm, multi-layered leadership structure. Instead, an elite, efficient team of highly accomplished, tech-savvy antitrust trial lawyers will be best suited to nimbly respond to whatever factual and legal roadblocks Apple's able counsel tries to erect. A lean, efficient structure also will be most effective in coordinating with the DOJ and working with opposing counsel and the Court to move the case along. Hausfeld and Susman provide the "combined resources and expertise" needed to win this case, without the "excessive

staffing" that often results from "law firms who have cut a deal" and who are "simply in the case as part of a negotiating process for everyone to get a piece of the pie." *Third Circuit Task Force Report Selection of Class Counsel*, 208 F.R.D. 340, 417 (2002).

**Second**, Hausfeld and Susman bring **unparalleled antitrust, class action, and technology expertise**. Hausfeld and Susman are independently formidable competitors who have led antitrust class actions—collectively having served as lead or co-lead counsel in over 50 antitrust class actions across the U.S., including in the District of New Jersey. The firms have secured many of the largest class action and antitrust verdicts and settlements in history, with over $9 billion recovered just in antitrust cases in the past fifteen years alone.[1] Both teams are comprised of lawyers who have represented and counseled clients on the defense side as well—including one who spent over 20 years as a leading defense antitrust lawyer and another who represents individual companies in some of the largest antitrust cases in America. Hausfeld and Susman likewise have unparalleled expertise in litigation involving technology platforms. Hausfeld and Susman attorneys have been at the forefront of such cases, starting with litigation against Microsoft over two decades ago and continuing with platform monopolists like (and including) Apple today.

---

[1] *See* Huntington Bank and UC Law San Francisco Center for Litigation and Courts, 2022 Antitrust Annual Report.

It is not surprising that Hausfeld now stands alone as the only plaintiffs' firm with *Chambers* Tier 1 antitrust rankings in the United States and Europe, as well as being the global claimant-side leader in the technology antitrust practice. Similarly, Susman—recognized by *Chambers* as one of "The Elite" firms for commercial litigation, and among the top firms for plaintiffs' antitrust litigation—has prosecuted many of the highest-profile antitrust cases in the country, and regularly goes toe-to-toe with Apple and other tech giants in technologically complex matters.

***Third***, Hausfeld and Susman provide a deep, diverse bench of ***trial-tested lawyers with a successful history of collaboration and the resources to see the largest cases in the country through to the end***. Not only have the firms' lawyers litigated antitrust class actions through trial,[2] but have done so together as co-lead counsel. In complex cases requiring exceptional fortitude and commitments of talent and financial resources, they have worked together seamlessly, as in *LIBOR*[3]—an

---

[2] As discussed below, the firms' Rule of Reason trials include two of the most consequential antitrust cases of the past decade and were developed independently, without underlying government action: *O'Bannon, et al. v. National Collegiate Athletic Association, et al.*, Case No. 09-cv-01967 (N.D. Cal.) ("*O'Bannon*"), a 2014 Hausfeld bench trial that broke down longstanding NCAA barriers precluding payments to college athletes; and *In re NFL's "Sunday Ticket" Antitrust Litig.*, Case No. 2:15-ml-02668 (C.D. Cal.) ("*Sunday Ticket*"), a June 2024 trial against the National Football League and its member teams, involving the two firms as co-lead counsel. *Sunday Ticket* resulted in the largest antitrust jury award in history. The verdict has been overturned by the trial judge pursuant to Fed. R. Civ. P. 50, but with a recognition that plaintiffs had presented evidence sufficient "to support a reasonable jury's finding of an unreasonable restraint of trade at each step of the rule of reason." Order Granting Defs. Motion for Judgment as a Matter of Law at 12, ECF. No. 1513 (Aug. 1, 2024), and is soon to be the subject of appeal.
[3] *In re LIBOR-Based Financial Instruments Antitrust Litig.*, No. 11-md-2262 (S.D.N.Y.) ("*LIBOR*").

antitrust litigation against sixteen of the world's largest financial institutions—in which the two firms have served as co-lead counsel for the over-the-counter class since 2011, have obtained the *only* class certification in the case, have pursued numerous interlocutory appeals successfully, and have secured $781 million in settlements to date. In their plaintiffs' work, these firms have proven that they have the resources to take on the largest and most entrenched defendants. And, to ensure coordination with the Court and the local practice, Hausfeld and Susman are joined in this case by New Jersey counsel Lite DePalma Greenberg & Afanador, LLC and Critchley, Kinum, & Luria, LLC, each of which has extensive trial experience in New Jersey courts.

Efficiency. Expertise. Efficacy. No other leadership team will better serve the class across these essential metrics. To best serve the interests of the class, the Court should appoint Hausfeld and Susman as Interim Co-Lead Class Counsel.

## II.  BACKGROUND

On March 21, 2024, the United States Department of Justice, along with fourteen states and the District of Columbia, brought antitrust claims against Apple in the District Court of New Jersey for monopolizing the smartphone and

performance smartphone markets in the United States.[4] *United States, et al. v. Apple, Inc.*, Case No. 2:24-cv-04055 (JXN)(LDW).

This litigation began ***the next day***, when Hausfeld filed the first private class action complaint on behalf of Shoshi Goldfus and a proposed class of direct purchasers of iPhones.[5] *Goldfus v. Apple Inc.*, Case No. 2:24-cv-04108 (JXN)(LDW) (D.N.J.) ("*Goldfus*"). Dozens of complaints followed, including that filed by Susman Godfrey on behalf of Ira Polly. *Polly v. Apple Inc.*, Case No. 2:24-cv-07849 (JXN)(LDW) (D.N.J.). The cases, which share factual and legal similarities and expand upon the DOJ's case, allege that Apple has monopolized the smartphone and performance smartphone markets by harming competition through imposing contractual restrictions, fees, and taxes on app creation and distribution. *See Goldfus* Compl. ¶¶ 70-77. Plaintiffs Goldfus and Polly allege that Apple uses APIs, arbitrary and predatory enforcement of guidelines, and other critical access points in the smartphone ecosystem to control the behavior and innovation of third parties and maintain total control over customers' devices. *Id.* at ¶¶ 55-56; 100-113. Ultimately, these actions allege that Apple has monopolized the smartphone and performance smartphone markets in the United States and has harmed consumers.

---

[4] Since the filing of the DOJ's complaint, four additional states have since joined. *See* First Amended Complaint, ECF No. 51.

[5] *Goldfus v. Apple Inc.*, Case No. 2:24-cv-04108 (JXN)(LDW) (D.N.J.). The Judicial Panel on Multidistrict Litigation consolidated actions in the District Court of New Jersey before Judge Julien Xavier Neals. *See* Transfer Order, ECF No. 116, Case No. 2:24-md-3113 (J.P.M.L. 2024).

*See, e.g.*, *id.* at ¶ 150. Plaintiffs' complaints build on the DOJ's allegations and seek additional relief, including damages, for a proposed class of direct purchasers. *See, e.g.*, *id.* at ¶¶ 62-68.

Long before these cases were filed, proposed class counsel had been investigating and preparing challenges, in the U.S. and Europe, to various anticompetitive activities undertaken by Apple. It is no accident that Goldfus was able to file an action only ***one day*** after the Department of Justice, and that Goldfus's complaint included substantial material independent of the DOJ's pleading. And with the benefit of that experience and running start, Hausfeld and Susman have continued to advance their research and analysis of the conduct at issue and consulted with economic experts in preparation for litigation. Federal Rule of Civil Procedure 23(g) requires appointment of counsel ***best*** able to represent the interests of the class. Based on their experience, resources, and track record, Hausfeld and Susman are those counsel.

### III. LEGAL STANDARD

Rule 23(g) authorizes courts to designate interim class counsel before determining whether to certify the class, *see* Fed. R. Civ. P. 23(g)(3), as a key organizational tool to facilitate "efficiency and economy without jeopardizing fairness to the parties." *See Manual for Complex Litig. (Fourth)* ("*Manual*") § 10.221 (2004); *see also generally*, *id.* §§ 10.224, 21.272. The "designation of

interim [class] counsel clarifies responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement." *Id.* § 21.11.

Because interim class counsel is responsible for acting on behalf of the class throughout the entire litigation, the Court must appoint counsel who are qualified to represent the class fairly and adequately through trial, if necessary. *See* Fed. R. Civ. P. 23(g)(4); Case Management Order 3-4, ECF No. 7, *In re Apple Inc. Smartphone Antitrust Litig.*, Case No. 2:24-md-03113 (JXN)(LDW) (D.N.J.). To that end, Rule 23(g) identifies four factors the Court should consider in appointing class counsel, which also apply to interim appointments: (i) the work counsel has done to identify or investigate the claims; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to the representation. Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv); *In re Vanguard Chester Funds Litig.*, 625 F. Supp. 3d 362, 365 (E.D. Pa. 2022); *Durso v. Samsung Elecs. Am., Inc.,* Nos. 12–5352, 12–5412, 12–5440, 2013 WL 4084640, at *3 (D.N.J. Aug.7, 2013).

## IV.   ARGUMENT

### A.   The Court Should Appoint Hausfeld and Susman as Interim Co-Lead Class Counsel for the Direct Purchaser Plaintiffs.

Each of the Rule 23(g) factors favors the appointment of Hausfeld and Susman as Proposed Interim Co-Lead Counsel. Fed. R. Civ. P. 23(g)(1)(A)(i-iv).

### 1.   <u>Factor 1</u>: The Proposed Co-Leads have done significant work identifying and investigating the claims.

The first Rule 23(g) factor—"the work counsel has done to identify or investigate the claims"— uniquely favors and distinguishes the Proposed Co-Leads from the rest of the pack of lawyers who filed "follow-on" complaints. While subsequent complaints mimic the DOJ's allegations or those of the *Goldfus* complaint, it was the *Goldfus* complaint that expanded considerably on the DOJ's allegations (*see, e.g.*, *Goldfus* Complaint ¶¶ 62–68). Hausfeld was able to file so quickly after the DOJ by building upon prior investigations conducted against Apple and the team's platform technology antitrust expertise. The Proposed Co-Leads are continuing to apply that expertise in further legal and factual research, as well as consultations with economists, relating to the claims and geared toward submission of a refined consolidated amended complaint and opposition to an anticipated motion to dismiss by Apple (should the Proposed Co-Leads be appointed).

The Proposed Co-Leads' antitrust leadership in the digital markets space, in platform technology litigation, and in European litigation specifically against Apple not only reflects relevant groundwork and investigation of Apple's conduct, but also

market-leading value to the class concerning legal and factual issues likely to arise here. For example, New York University Law School has collaborated with Hausfeld—uniquely among plaintiffs' firms—on two "Antitrust and 21st Century Bigness: Dealing with Tech Platforms in a Globalized World" conferences bringing together leading scholars, lawyers, and enforcers (including the architect of President Biden's antitrust policy, Tim Wu, and the DOJ Antitrust Division's second in command, Principal Deputy Assistant Attorney General Doha Mekki) who addressed potential competition claims that could be brought against leading technology platform and digital market firms like Apple.[6]

Importantly, this leading work concerning global technology platforms extends worldwide. Dr. Thomas Höppner, a partner in Hausfeld-Germany, has been recognized as "probably the antitrust and regulatory lawyer who has by far the best grasp of the issues and regulation of Big-Tech, both in fact and in law, in all of Europe."[7] Dr. Höppner has represented claimants before the European Commission in its investigations related to abuse of dominance by Alphabet, Apple, Amazon, and

---

[6] *See* https://www.law.nyu.edu/conferences/2023-Bigness-Antitrust-Conference.

[7]    https://www.hausfeld.com/en-us/who-we-are/prof-dr-thomas-hoppner/;   *see   also,   e.g.,* Thomas Höppner, *et al.*, *Taking a Bite at the Apple: Ensuring a Level-Playing-Field for Competition on App Stores* (May 13, 2019) (available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3394773);   Thomas Höppner   &   Philip Westerhoff, *Privacy by Default, Abuse by Design: EU Competition Concerns About Apple's New App Tracking Policy*, HAUSFELD COMPETITION BULL. (Spring 2021) (available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3853981); and *Global giant Apple: the evil side of the love brand* (Nov. 1, 2022), https://machtwas.de/podcast-thomas-hoeppner-2/.

Microsoft, and regulators there have turned to his expertise when crafting reforms in digital markets. Having pioneered competition damages claims in Europe, Hausfeld also has led some of the most high-profile and complex competition cases brought there, including two proposed class actions against Apple in the United Kingdom's Competition Appeals Tribunal ("CAT"). *See Kent v. Apple Inc., et al.*, Case No. 1403/7/7/21 (CAT); *Christine Riefa CRL v. Apple Inc., et al.*, Case No. 1602/7/7/23 (CAT). Likewise, Hausfeld attorneys from offices across Germany are representing a group of industry associations against Apple in a case before the highest competition authority in Germany. *See* Bundeskartellamt [German Federal Cartel Office], Determination of Apple's Status as Addressee of Section 19a(1) GWB, B9-67/21 (Apr. 3, 2023).

This deep experience with Apple's conduct worldwide includes restrictions at issue in this case that have already been successfully challenged in Europe, resulting in Apple removing or taking steps toward removing certain restrictions–*e.g.*, by granting third-party developers access to the NFC chip in iPhones in Europe[8] and by agreeing to replace SMS (Short Messaging Service) with RCS (Rich Communication Services) worldwide, thereby reducing the disparity in the experience when an iPhone exchanges messages with an Android rather than another

---

[8] Press Release, *Commission Accepts Commitments by Apple Opening Access to 'Tap and Go' Technology on iPhones*, EUROPEAN COMMISSION: EUROPA (July 11, 2024), https://ec.europa.eu/commission/presscorner/detail/en/ip_24_3706.

iPhone.[9] Although Apple resisted such changes, hypothesizing various negative consequences for consumers, the changes have improved consumers' iPhone experiences without jeopardizing their privacy and security, while also increasing competition opportunities in Europe. Hausfeld is uniquely positioned to leverage its deep bench and cross-border experience with such challenges and with monitoring Apple's conduct to achieve positive change for the proposed class of direct purchasers here.

2.   <u>Factor 2</u>: **The Proposed Co-Leads have extensive relevant experience prosecuting complex antitrust class actions, including monopolization and technology platform cases.**

The Proposed Co-Leads would bring together two market-leading firms and specific individual attorneys with over a century's worth of experience successfully litigating the particular "types of claims asserted in the action," Fed. R. Civ. P. 23(g)(1)(A)(ii).

It is a deliberately diverse group in every respect, combining wisdom from trying lawsuits for decades with the perspectives of younger lawyers (almost all of whom clerked for an Article III Judge); combining seasoned antitrust lawyers with lawyers with a heavy technology and computer background, and mixing class-action

---

[9] Juli Clover, *RCS in iOS 18: What You Need to Know About Apple's Android Messaging Upgrade*, MACRUMORS (July 9, 2024), https://www.macrumors.com/guide/rcs/#:~:text=RCS%20is%20a%20replacement%20for%20SMS%20%28Short%20Messaging,to%20people%20who%20don%27t%20have%20iPhones%20for%20iMessage.

lawyers with lawyers who have spent decades representing individual companies on both the plaintiff and defense side. *See Standards and Best Practices for Large and Mass-Tort MDLs* at 46, 58 (1st ed., Dec. 19, 2014) ("Best Practice 3C: The judge's primary responsibility in the selection process is to ensure that the lawyers appointed to leadership positions are capable and experienced and that they will responsibly and fairly represent all plaintiffs, keeping in mind the benefits of diversity of experience, skills, and backgrounds."); *see also In re Robinhood Outage Litig.*, No. 20-cv-01626-JD, 2020 WL 7330596, at *2 (N.D. Cal. July 14, 2020) ("concern[] about a lack of diversity in the proposed lead counsel" led to court declining to appoint interim lead counsel).

The Proposed Co-Leads' firm resumes and biographies of the primary attorneys proposed to work on this case are submitted as Exhibits C & E of the DePalma Declaration accompanying this motion, along with lists of firm and individual appointments. *Id.* Exs. B & D; *see also* CMO at 3-4, ECF No. 7. Certain relevant attributes of the firms' teams and members (for simplicity, in descending order of seniority) are briefly summarized below.

### a.    Hausfeld's team of lawyers is nationally recognized for its extensive experience and success in complex antitrust cases.

As stated succinctly by Global Competition Review, reflective of numerous close observers of the legal market, "the lawyers at Hausfeld have established

themselves as one of—if not the—top plaintiffs' antitrust firm in the US." *See generally* Ex. C Hausfeld LLP Firm Resume, pp. 7-12. The firm and its attorneys have served as lead or co-lead counsel in over 30 major antitrust class action cases. Hausfeld has been involved in some of the most challenging and complex antitrust cases, winning landmark trials, achieving precedent-setting legal victories, and recovering billions of dollars on behalf of classes they represent.

**Michael Hausfeld.** Recognized as "one of the best lawyers in America, especially with regard to antitrust cases," Mr. Hausfeld "consistently brings in the biggest judgments *in the history of law*." (emphasis added). An "innovative and well-respected leader of the antitrust bar," "what sets him apart is his creativity and strategic sense," which he brings to bear in landmark cases again and again. Mr. Hausfeld has a proven track record of leading the hardest competition cases to a successful outcome—including those where, as here, conduct had gone unchallenged by others for years—and that is a trait shared by his partners, as discussed below. For example, in the *O'Bannon*[10] case, Mr. Hausfeld led the *first* challenge alleging that the agreement among the NCAA, its member schools, and their commercial partners prohibiting current and former Division I men's basketball and football players from receiving compensation for the use of their names, images,

---

[10] *O'Bannon, et al. v. National Collegiate Athletic Association, et al.*, Case No. 09-cv-01967 (N.D. Cal.) ("*O'Bannon*").

and likenesses constituted a violation of federal antitrust laws. Following a three-week trial in California, Judge Claudia Wilken found that the NCAA "exercises market power, fixes prices, and restrains competition" and that its agreements had violated antitrust laws. *O'Bannon, et al. v. National Collegiate Athletic Association, et al.*, 7 F. Supp. 3d 955, 973 (N.D. Cal. Aug. 8, 2014) Significantly, the *O'Bannon* case paved the way for succeeding cases challenging the NCAA's practices and providing student athletes countless NIL opportunities that are commonplace today.

**Michael Lehmann.** Mr. Lehmann has been practicing in the fields of antitrust law and business litigation for nearly 47 years and has participated in numerous trials. He has served on behalf of the Hausfeld firm and his prior firm as lead or co-lead counsel in dozens of antitrust class actions; has a Martindale-Hubbell AV Preeminent rating; has been recognized by Chambers, Best Lawyers, Lawdragon, Super Lawyers, Legal 500, and Who's Who Legal, among other organizations; and has won awards for both his legal scholarship and participation in ground-breaking antitrust class actions. He played a major role in the successful trial of *O'Bannon* and assumed significant drafting responsibilities in the latter phases of the *Blue Cross Blue Shield Antitrust Litigation* ("*BCBS*")[11] discussed below. His most recent achievements include litigating and participating in settlements in the *Farm-Raised*

---

[11] *In re Blue Cross Blue Shield Antitrust Litig.*, No. 13-mdl-2496 (N.D. Ala.) ("*BCBS*").

*Salmon And Salmon Products Antitrust Litigation*[12] and *In re HIV Antitrust Litigation.*[13] He is also among the Hausfeld counsel working on *Helena World Chronicle, LLC v. Google LLC*,[14] a cutting-edge antitrust class action brought by online publishers against Google's practices including those involving artificial intelligence.

**Scott Martin.** A co-chair of Hausfeld's antitrust practice, Scott Martin has been lauded by clients in *Chambers* for his "cutting-edge experience in antitrust litigation" and "great wisdom" honed by years as an antitrust defense litigator and counselor. On both the defense and plaintiff side (his principal focus for the past decade), he has been identified as a leading antitrust litigator by every significant rating publication (*Chambers, Best Lawyers, Lawdragon*, etc.), and is a veteran of jury trials in unilateral conduct antitrust cases on *both* sides of the "v." He currently serves as OTC class counsel alongside Susman Godfrey lawyers in *LIBOR* and as co-lead class counsel in the *Sunday Ticket* litigation, and he took the lead role in the critical standard-of-review briefing in the *BCBS* litigation. In the technology antitrust space, he has ongoing litigation involving monopolization claims against Google and Meta Platforms (formerly known as Facebook). Mr. Martin is the co-

---

[12] *In re Farm-Raised Salmon and Salmon Products Antitrust Litig.*, Case No. 1:19-cv-21551 (S.D. Fla.) ("*Salmon*").

[13] *In re HIV Antitrust Litig.*, 3:19-cv-02573 (N.D. Cal.) ("*HIV Antitrust*").

[14] *Helena World Chronicle, LLC v. Google LLC*, Case No. 1:23-cv-03677 (D.D.C.).

editor of the multi-volume *Antitrust Adviser* treatise (now in its fifth edition), and currently serves as International Officer of the American Bar Association ("ABA") Antitrust Law Section.

**Megan Jones.** Megan Jones, co-chair of Hausfeld's antitrust practice, is nationally recognized for her prowess in antitrust cases, with *Chambers* stating that she "runs these cases like no one else. She knows top to bottom and leads by example. She digs in on depositions and brief writing, oral argument and settlements."[15] She is a creative negotiator, as in *In re Municipal Derivatives Antitrust Litigation*, where she was able to work cooperatively with select State Attorneys General to broker a unique joint settlement to resolve all claims. She is also a skilled litigator, as in *BCBS*, where she managed the day-to-day litigation and seamlessly coordinated the effort of over 50 law firms. After leading discovery efforts that led to the production of key documents and deposing over 20 out of the over 100 witnesses herself in *BCBS*, the case settled for $2.67 billion settlement— *among the largest ever in a private antitrust case without government involvement*— which also included significant injunctive relief that continues to provide important structural remedies in the healthcare market for millions of Americans. The district court recognized Ms. Jones' key role in the settlement by designating her for oversight and compliance work for a 5-year term.

---

[15] https://chambers.com/lawyer/megan-e-jones-usa-5:1397785

**Melinda Coolidge.** As the managing partner of Hausfeld, Melinda Coolidge has been recognized as "*one of the best lawyers in the plaintiffs' bar*" and has litigated a number of antitrust class actions with excellent results, including through trial. For example, working alongside Susman lawyers, Ms. Coolidge served on the *Vitamin C* trial team, where they secured a trebled jury verdict of $162 million against Chinese vitamin C manufacturer defendants, which was later upheld on appeal by a unanimous U.S. Supreme Court. Following her cartel work on *Vitamin C*[16] and *In re Air Cargo Antitrust Litigation*[17] (in which Hausfeld was co-lead counsel), which involved more than 30 defendants and over $1 billion in settlements, Ms. Coolidge has overseen numerous successful monopolization cases (*Thalomid,*[18] *Zymar,*[19] *Google Play*[20]) through expansive discovery. She has collaborated with plaintiffs' attorneys across the country operating as a "virtual firm," as in the *Google Play* litigation in which Hausfeld was co-lead counsel for a nationwide class of app developers, ultimately achieving a $90 million settlement for the class, along with significant injunctive relief.

---

[16] *In re Vitamin C Antitrust Litig.*, No. 1:06-mdl-1738 (E.D.N.Y) ("Vitamin C").

[17] *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-md-1775 (E.D.N.Y.) ("*Air Cargo*").

[18] *In re Thalomid & Revlimid Antitrust Litig.*, 2:14-cv-06997 (D.N.J.) ("*Thalomid*").

[19] *Hartig Drug Co. Inc. v. Senju Pharm. Co., LTD, et al.*, 1:14-cv-00719 (D. Del.) ("*Zymar*").

[20] *In re Google Play Developer Antitrust Litig.*, No. 3:20-cv-05792 (N.D. Cal.) ("*Google Play*").

Hausfeld's team also includes a deep bench of younger partners and counsel (as well as associates) steeped in private antitrust litigation as well as public enforcement. Among these:

**Katie Beran** is a New Jersey native who has been recognized as one of the top forty young lawyers in the country by the ABA, currently serves as Special Counsel to the New Jersey Attorney General's office in two complex environmental matters, and recently served as lead counsel for the City of Philadelphia in impact litigation regarding ghost guns, which settled favorably in less than a year. Ms. Beran's most recent antitrust work in *Google Play* included overseeing the review and analysis of more than 5.7 million documents in less than eighteen months, and coordinating with co-lead counsel for the consumer class, large app developer plaintiff Epic Games, and the Attorneys General of thirty-six states and the District of Columbia.

**Sarah LaFreniere's** practice has focused on monopolization cases, and she collaborates with antitrust scholars and practitioners as managing editor of Hausfeld's award-winning *Competition Bulletin*. For her work in *Forex*,[21] she was recognized as a Rising Star in Competition Law by *Law360* and received the Outstanding Antitrust Litigation Achievement by a Young Lawyer award from the *American Antitrust Institute*.

---

[21] *See In re Foreign Exchange Benchmark Rates Antitrust Litig.*, 13-cv-7789 (S.D.N.Y.) ("*Forex*").

**Nicholas Murphy** spent more than 13 years as a DOJ trial attorney and an Assistant United States Attorney and has first- and second-chaired numerous trials to successful verdicts. He has been recognized with multiple awards, including an Outstanding Service Commendation from the Attorney General for his advocacy on behalf of vulnerable populations while in the Civil Rights Division.

**Daniel Weick** served as Special Litigation Counsel in the New York State Office of the Attorney General's Antitrust Bureau, following years at a leading Silicon Valley-based defense firm, and holds a graduate degree in economic policy management.

### b. Susman Godfrey is the go-to firm for the highest-stakes trials in the country, including in matters involving antitrust and complex technologies.

"Pick your metric—money, U.S. Supreme Court clerks, bet-the-company cases, percentage of partners in trial annually," Susman Godfrey "runs circles around everyone else."[22] The most sophisticated purchasers of litigation services rely on Susman Godfrey for all kinds of trials: *Uber*, *Zillow*, *Chevron*, *General Electric*, *NBCUniversal*, *Texas Instruments*, and *Walmart* to name a few. For nearly 40 years, Susman Godfrey has been winning trials on both sides of the docket, with plaintiffs' verdicts totaling billions of dollars.

---

[22] Katrina Dewey, *Don't Mess with Texas*, Lawdragon, Dec. 3, 2017, available at http://www.lawdragon.com/2017/12/03/dont-mess-texas-susman-godfrey-became-americas-leading-trial-firm/.

*Storied Antitrust Experience.* The firm has followed in the footsteps of its founder, Steve Susman, who won the *Corrugated Container*[23] antitrust class action, then the largest class action verdict in history. Over the last decade, Susman has been appointed lead or co-lead counsel in no less than 20 antitrust class actions, resulting in nearly $4 billion in recoveries for the classes—including in the Third Circuit. *See, e.g.*, *In re Processed Egg Prod. Antitrust Litig.*, No. 08–md–02002 (E.D. Pa. 2012) (Susman appointed co-lead counsel in nationwide class of egg purchasers asserting that egg producers conspired to raise prices by reducing output). In addition to the firm's fruitful partnerships with Hausfeld in the *Sunday Ticket*, *LIBOR*, and *Vitamin C* matters, Susman has recovered over $1.2 billion for the class as co-lead counsel in the *In re Automotive Parts Antitrust Litigation*,[24] a complex series of antitrust cases brought against dozens of automobile suppliers who engaged in price-fixing and bid-rigging in the multi-billion-dollar automotive parts industry; over $900 million as co-lead counsel in *Moehrl v. National Association of Realtors (NAR)*,[25] an antitrust class action against the country's largest real estate service companies and the NAR; and over $168 million as co-lead counsel in the *In re Animation*

---

[23] *In re Corrugated Container Antitrust Litig.*, M.D.L. No. 310 (S.D. Tex.)
[24] *In re Automotive Parts Antitrust Litig.*, No. 12-md-02311 (E.D. Mich.) ("*Auto Parts*")
[25] *Moehrl, et al. v. National Assoc. of Realtors, et al.*, No. 19-cv-01610 (N.D. Ill.).

*Workers Antitrust Litigation*,[26] an antitrust action on behalf of a class of animation industry employees against Disney, Pixar, Lucas Films, DreamWorks, and Sony.

In antitrust cases involving complex and emerging technologies, like this one, Susman has been a pioneer. From the mid-1990s into the early aughts, Susman pursued antitrust and monopolization claims against Microsoft on behalf of Caldera, Be Incorporated, Novell, Timeline, and Gateway, resulting in nearly $1 billion in publicly reported recoveries for Susman's clients. Susman, likewise, has been at the forefront of David-vs-Goliath suits against the country's dominant tech giants, including Apple. Over the past decade, Susman has litigated 11 technologically complex patent disputes with Apple. Earlier this year, Susman's groundbreaking data privacy class action led Google to change its disclosures to settle the matter.[27] And in 2018, Susman was lead trial counsel in Uber's case against Google's Waymo, coined by the press as "Silicon Valley's Biggest Showdown,"[28] in a trial that involved complicated technology, patents, and trade-secret claims. Susman also serves as co-lead counsel in the *Qualcomm Antitrust Litigation*,[29] a $4.8 billion antitrust action on behalf of 250 million cell phone consumers, and obtained

---

[26] *In re Animation Workers Antitrust Litig.*, 14-cv-04062-LHK (N.D. Cal.).

[27] *Brown et al v Google LLC*, Case No. 20-03664 (N.D. Cal.) ("*Google*").

[28] *Waymo LLC v. Uber Techs., Inc.*, Case No. 17-cv-939-WHA (N.D. Cal.) ("*Google/Waymo*").

[29] In re *Qualcomm Antitrust Litig.,* No. 17-md-02773 (LHK) (N.D. Cal.).

certification of what Qualcomm has since described as the "biggest class action in history."[30]

All stages of this action will benefit from Susman Godfrey's expertise in complex, technology-driven litigation. Certification of the large class at issue, for example, will benefit from Susman Godfrey's strategic approach to developing water-tight evidentiary records, as it did in *LIBOR* to obtain certification. And should the case proceed to trial, counsel's track record is formidable.

***Unparalleled Talent***. The Susman partners presently working on this matter include Bill Carmody, Shawn Rabin, Cory Buland, Mark Musico, and Elisha Barron—all of whom have extensive antitrust, class action, and technology experience, and regularly take the country's highest-stakes cases through trial. They will be joined by top-flight associate talent from the country's elite law schools, all of whom have completed federal judicial clerkships.

**Bill Carmody** breaks the mold. He is a nationally recognized trial lawyer who tries bet-the-company cases for plaintiffs and defendants in state and federal courts throughout the country. Carmody has led some of the largest and most successful class actions in history, including in the fields of antitrust and complex technologies. He was the lead trial lawyer in the *Sunday Ticket* litigation that led to the largest

---

[30] *See* Law360, *Qualcomm Fights Cert. Of "Biggest Class Action in History,"* available at https://www.law360.com/articles/1092211 (last visited Aug. 8, 2024).

antitrust jury verdict ever. He was co-lead counsel in the *Google* data privacy litigation that resulted in a historic settlement that required Google to purge user data. And, he led the efforts in the *Libor* antitrust cases that took many banks to the brink of trial and has already resulted in settlements of over $781 million. Carmody is renowned in Silicon Valley for leading the "tech trial of the century." In February 2018, Uber was defending itself against trade-secret claims by Google/Waymo, seeking roughly $2 billion. Just months before trial, Uber decided it "was important to have someone in the leading position who was a pure trial lawyer—someone whose core skill was persuading a lay jury in a complex business case."[31] So it tapped Bill Carmody. Four days after Carmody gave public and sealed opening statements, and after Carmody and his team crossed the plaintiff's witnesses, Uber walked away with a settlement that was worth a fraction of what Google/Waymo sought. For his storied career, Carmody has been recognized by *Chambers* as one of a handful of the most elite trial lawyers in the country, honored by *Law360* as one of its 10 Titans of the Plaintiffs Bar, named to the *National Law Journal*'s list of Elite Trial Lawyers, and is routinely included in *Benchmark's Top 100 Trial Lawyers*.

**Shawn Rabin** is nationally recognized for his trial successes in complex cases—including antitrust cases. In the last year, Rabin was the lead trial lawyer in

---

[31] Christine Simmons, Attorney of the Year Finalist: Bill Carmody, N.Y.L.J., Oct. 5, 2018, at https://www.susmangodfrey.com/wp-content/uploads/2018/10/SG-Carmody-Video.pdf.

a breach of contract and trademark case that resulted in an almost $1 billion award to Rabin's client. In the antitrust arena, Rabin represents the world's largest retailer in antitrust litigation involving the sale of broiler chicken and has represented various insurance companies in antitrust claims involving the sale of various pharmaceuticals. Along with Carmody, Rabin also represented Uber in its high-stakes trial against Google/Waymo. Rabin has also tried complex patent cases, including a jury trial on behalf of C2 Communications against the nation's largest telecommunications carriers for infringing a voice over internet protocol (VoIP) patent; the case settled after the third day of trial, following the close of C2's case-in-chief and Rabin's direct examination of the patent's owner and C2's damages expert. In recognition of his successes, he has been named a leading litigator by *Chambers*, *Lawdragon*, and *Benchmark Litigation*, and a Plaintiffs' Lawyer Trailblazer by the *National Law Journal*.

**Cory Buland** regularly guides some of the nation's leading companies to success in bet-the-company litigation. With Carmody and Rabin, Buland litigated two of the highest-profile cases in Silicon Valley in recent years—first representing Uber against Google Waymo and, then, representing WeWork founder, Adam Neumann, against SoftBank after SoftBank withdrew its offer to buy up to $3 billion in WeWork stock from Mr. Neumann and other shareholders; the lawsuit is one of the largest individual claims to be litigated this century, and its settlement was

reported by media outlets around the world. Buland is currently litigating complex claims over the development and technology of ByteDance, the parent company of TikTok, which produces some of the most popular mobile applications in the world. And he frequently works in collaboration with lawyers from attorneys general offices and the Department of Justice investigating and prosecuting false claims act cases. Buland was named one of the nation's Top 500 Leading Litigators by *Lawdragon*, and was included on Benchmark Litigation's 40 and Under Hotlist.

**Mark Musico**, applying lessons he learned clerking for Justice Ruth Bader Ginsburg, has broken ground on novel legal issues and generated billions in value for his clients, ranging from consumer class plaintiffs to the country's leading lights in finance, technology, and industry. As a result of his success, he has been recognized by *Chambers*, *Lawdragon*, and the *National Law Journal*. He recently secured a $307.5 million settlement for a class of elderly insureds against AXA Equitable, after winning certification of the first-ever nationwide class of plaintiffs asserting claims under N.Y. Ins. Law § 4226 for misleading misrepresentations about the terms of their life insurance policies.[32] Musico has also secured several victories for prominent hedge fund, Saba Capital, including two recent wins at the

---

[32] *In re AXA Equitable Life Ins. Co. COI Litig.*, No. 16-CV-740 (JMF), 2020 WL 4694172 (S.D.N.Y. Aug. 13, 2020).

Second Circuit on issues of first impression under the Investment Company Act.[33]

He is a member and former Co-Chair of the firm's Diversity Committee.

**Elisha Barron** litigates high-stakes cases across the country and has secured over $1 billion in jury verdicts and settlements for her clients—including a $706.2 million jury verdict for her client HouseCanary, following a 6+ week jury trial involving claims of trade secret misappropriation, fraud, and breach of contract against an affiliate of Quicken Loans. She successfully partnered with the Government in a landmark False Claims Act Case against Novartis Pharmaceuticals to secure a $450 million settlement, one of the largest recoveries ever for a case of its kind. And Barron was part of the SG team that obtained an extraordinary result for the class in the *Animators Antitrust Litigation*. Her successes have been recognized by the *National Law Journal*, *Lawdragon*, *Benchmark Litigation*, and the *New York Law Journal*.

> 3. <u>Factor 3</u>: **The Proposed Co-Leads have extensive knowledge and experience regarding the law and facts that will apply to Apple's conduct.**

Rule 23(g)(1)(A)(iii) requires that the Court consider "counsel's knowledge of the applicable law"–which here encompass specific legal doctrines, factual analyses of conduct within a relevant market, and economic modeling of competitive

---

[33] *Saba Cap. Master Fund, Ltd. v. BlackRock Mun. Income Fund, Inc.*, 2024 WL 43344 (S.D.N.Y. Jan. 4, 2024), *aff'd*, 2024 WL 3174971 (2d Cir. June 26, 2024); *Saba Capital CEF Opportunities I, Ltd v. Nuveen Floating Rate Income Fund*, 2022 WL 493554 (S.D.N.Y. Feb. 17, 2022), *aff'd*, 88 F.4th 103 (2d Cir. 2023).

impact and classwide injury in a monopolization case. Simply put, while dozens of law firms have filed cases in this MDL against Apple, none can match the Proposed Co-Leads' knowledge specific to such actions and their experience litigating monopolization class actions.

This experience reflects analytical muscle built over time and exercised again and again to the present day. It extends directly to technology platform cases and includes litigation stemming from government action as well as independent proprietary investigations. Notably, Michael Hausfeld helped create the modern practice of private class action follow-on cases to such government actions when he filed class action cases in 2000 after a district court ruling (later affirmed in part by the D.C. Circuit) against Microsoft for bundling Internet Explorer with the Windows operating system. *See In re Microsoft Corp. Antitrust Litig.*, MDL No. 1332 (D. Md. June 6, 2003). Those private plaintiffs class actions achieved a landmark settlement on behalf of 550,000 direct purchasers compensating them for their out-of-pocket damages. Most recently, as discussed above, Melinda Coolidge and Katie Beran represented app developers in *Google Play* who alleged that Google monopolized the markets for the distribution of Android OS apps and in-app products. Similarly, Susman has handled some of the largest tech-based cases in the country, including the "Tech Trial of the Century" where Google faced off against Uber, one of the largest privacy class actions in the nation's history where Susman represented the

class challenging Google's use of the Incognito browser, and representing the class of purchases in the Qualcomm antitrust case.

The Proposed Co-Leads also have litigated cases, including through trial, under the rule of reason standard, demonstrating how a business practice results in an anticompetitive effect, responding to defendants' proffered procompetitive justifications for the conduct, and rebutting those justifications by demonstrating less restrictive means to achieve those ends. *See generally* Areeda and Hovenkamp, Antitrust Law: An Analysis of Antitrust Principles and Their Application, ¶ 651e3; *see also, e.g., Sunday Ticket* (Susman and Hausfeld: jury trial); *O'Bannon* (Hausfeld: bench trial); *HIV Antitrust* (Hausfeld: $240 million settlement); *Thalomid and Revlimid* (Hausfeld: $34 million settlement); *Dial Corp. v. News Corp.*, 165 F. Supp. 3d 25 (S.D.N.Y. 2016) (Susman: $244 million settlement); *White v. NCAA*, 2006 WL 8066803 (C.D. Cal. Oct. 19, 2006) (Susman: $218 million settlement).

> **4.**   <u>Factor 4</u>**: The Proposed Co-Leads can and will devote significant time and resources to this litigation, while maintaining an efficient leadership structure that will best serve the interests of the class.**

This case will be hard-fought. The Proposed Co-Leads have demonstrated time and again that they have the financial and human resources, as well as the creativity and fortitude, to litigate such a case zealously to conclusion, length and challenges notwithstanding. But the Proposed Co-Leads will do so using a lean leadership structure that will facilitate collaboration among their firms, foster

coordination with the DOJ and cooperation with opposing counsel, and allow counsel to operate nimbly and effectively to serve the interests of the class.

Across their firms, the Proposed Co-Leads employ over 300 lawyers worldwide, with offices in major metropolitan areas, on both coasts and overseas. They have the resources and are prepared to sustain the case, including by retaining top-tier economic and industry experts to establish class certification, liability, and damages; employing the best e-discovery experts, vendors, and platforms to examine voluminous documents and data; and investing millions of dollars and tens of thousands of hours over the long haul—because they have done it before, time and again. *See, e.g.*, *BCBS* (as co-lead counsel, Hausfeld litigated against 36 separate defendants for nine years before final approval of a global $2.67 billion settlement); *Forex* (as co-lead Counsel, Hausfeld litigated for ten years and built a custom database to host the financial data of sixteen of the world's largest banks and recovered $2.3 billion for class members); *LIBOR* (Hausfeld and Susman have achieved $781 million in settlements over 12 years to date); *Sunday Ticket* (Hausfeld and Susman, with co-counsel, have litigated against the NFL and its 32 teams since 2015); *Auto Parts* (Susman, as co-lead counsel in price-fixing litigation pending since 2011, has recovered over $1.2 billion for class members in 41 coordinated class actions against more than 160 defendants).

As substantial an opponent as Apple may be, however, it is but one defendant. This is not a cartel action where multiple counsel are often needed to take "ownership" of discovery from individual cartelists. This is a monopolization case where it will be essential to stay focused, efficient, and concentrated on the key legal and economic facts, all in seamless collaboration with the Department of Justice. The proposed appointment of just two co-leads will ensure efficient allocation of resources and use of counsel in a way that leads to a successful but expeditious resolution to the extent practicable. The Proposed Co-Leads have a proven track record of collaboration through the years—including in *Sunday Ticket*, *Rail Freight*,[34] *LIBOR*, *Vitamin C*, and *In re Municipal Derivatives Antitrust Litigation*.[35] The deep benches of the Proposed Co-Leads ensure that all necessary resources are available to zealously represent the interest of the class—but without a continuous stream of work flowing to a large co-lead structure or executive committee team, and without the potential for dozens of lawyers who "read and review" filings, attend co-lead counsel calls, and otherwise churn. Hausfeld and Susman's efficient, lean leadership structure is aligned with the best interest of the proposed class and will

---

[34] *In re Rail Freight Fuel Surcharge Antitrust Litig. I & II*, MDL No. 1869, Misc. No. 1:07-md-00489, MDL No. 2925, Misc. No. 1:20-md-0008 (D.D.C.).
[35] *In re Municipal Derivatives Antitrust Litig.*, Case No. 1:08-md-01950 (S.D.N.Y.).

facilitate resolving this ligation as cost-effectively as possible, without unnecessary expense or time-bloat.

This Court, moreover, has already indicated that to proceed efficiently, this MDL should be coordinated with the case filed by the Department of Justice and the states Attorneys General. *See United States, et al v. Apple Inc.*, 2:24-cv-04055 (JXN)(LDW) (D.N.J. July 17, 2024) (Pre-Motion Hearing). The Proposed Co-Leads' lean leadership structure will best serve that goal. The Proposed Co-Leads, moreover, have extensive experience working cooperatively alongside government investigators to efficiently prosecute cases. That was true of Melinda Coolidge and Katie Beran with state attorneys general in *Google Play*; it was true of Michael Hausfeld and Sarah LaFreniere with the DOJ in *Forex*; it was true of Bill Carmody with the DOJ in matters against United Healthcare, Novartis Pharmaceuticals, and Apria Healthcare[36]; and it will be true here.

### 5. The Proposed Co-Leads and Their Associated and Proposed New Jersey Counsel Have Extensive Experience in this District and in the Third Circuit.

The Court should also consider that the Proposed Co-Leads and the New Jersey counsel with whom they will work closely have extensive experience practicing complex antitrust cases in this district and in the Third Circuit. *See In re*

---

[36] *U.S. ex rel. Poehling v. UnitedHealth Group, Inc.*, No. 16-cv-08697 (C.D. Cal.); *U.S. ex rel. Kester v. Novartis*, No. 11-cv-8196 (S.D.N.Y.); *U.S. ex rel. Martinez v. Apria Healthcare Grp.*, No. 17-cv-1059 (S.D.N.Y.).

*Vanguard Chester Funds Litig.*, 625 F. Supp. 3d 362, 366 (E.D. Pa. 2022); *Biondolillo v. Roche Holding AG*, No. CV 17-04056, 2017 WL 4220332, at *2 (D.N.J. Sept. 22, 2017) (finding proposed lead counsel's experience litigating class actions in the relevant area of law specifically in the D.N.J. highly persuasive for purposes of demonstrating adequacy).

As noted, Hausfeld is currently co-lead counsel in another MDL antitrust class action centralized in this district, *In re Fragrance Direct Purchaser Antitrust Litigation*, No. 2:23-cv-03249 (D.N.J.). As this Court is aware, Susman represents Veeva Systems in a long-running, complex antitrust and trade secret dispute pending before this Court, *Iqvia Inc. v. Veeva Sys. Inc.*, No. CV 17-177-JXN-JSA (D.N.J.), and represents Nasdaq in this district in connection with patent infringement and antitrust claims, *Nasdaq v. MIAX*, Civil Action No. 3:17-06664-ZNQ-DEA (D.N.J.).

The Proposed Co-Leads are supported by Lite DePalma and Michael Critchley of Critchley, Kinum & Luria. Both law firms are New Jersey-based powerhouses with deep experience litigating in this District.

### a.    Lite DePalma Greenberg & Afanador

Lite DePalma Greenberg & Afanador, LLC ("LDGA") is a New Jersey-based firm with a long-history of service to this State, its counties, and its municipalities. LDGA has served as Co-Lead Counsel for the State of New Jersey, Division of Investment, as Lead Plaintiff in two prominent class actions that have resulted in

significant recoveries: *Reginald Newton v. Tenet Healthcare Corp., (Tenet Healthcare Securities Litigation)*, No. 2:02-cv-8462-RSWL (C.D. Cal.) ($281.5 million settlement); *In re Motorola Securities Litig.*, Civ. No. 03-C-287 (N.D. Ill.) ($193 million settlement reached three business days before trial). The firm also currently represents Newark, Jersey City, Hoboken, Paterson, and Roseland, as well as Cumberland County.

LDGA's commitment to this State extends to its federal bar. Victor A. Afanador, the firm's chair of litigation and trial practice, is the Immediate Past President of the Association of the Federal Bar of the State of New Jersey. LDGA's former partner, Allyn Z. Lite, also served as the Clerk of the United States District Court for the District of New Jersey and is the current author of the New Jersey Federal Practice Rules.

The firm's deep ties to this State are further reflected in its plaintiff class action litigation practice. LDGA's attorneys currently serve in leadership positions in the following cases in this District: *In re: Fragrance Indirect Purchaser Antitrust Litigation*, 2:23-cv-03249 (D.N.J.) (liaison counsel for indirect purchaser plaintiff class); *Cornish-Adebiyi v. Caesars Entertainment, Inc.*, No. 23-cv-2536 (D.N.J.) (liaison counsel in antirust matter concerning pricing algorithms and casino hotel room pricing); *Vascepa Antitrust Litigation Indirect Purchaser Plaintiffs*, Docket No. 21-12061 (ZNQ)(LHG) (D.N.J.) (executive committee); *In re: American*

*Medical Collection Agency, Inc. Customer Data Security Breach Litigation*, Docket No. 19-md-2904 (D.N.J.) (co-lead counsel); *In re Samsung Customer Data Security Breach Litig.*, No. 23-md-3055 (D.N.J.) (liaison counsel); *In re Emisphere Technologies, Inc. et al., Securities Litigation*, Case No. 2:23-cv-20898-SDW-AME (liaison counsel); *Mendez v. Avis Budget Group, Inc.*, Docket No. 2:2011-cv-06537 (D.N.J.) (co-lead counsel, recently settled for $45 million); and *BCR Carpentry LLC v. FCA US LLC*, 3:21-cv-19364-GC-DEA (D.N.J.) (liaison counsel).

LDGA in turn has achieved excellent results for its antitrust class action plaintiffs in this District, including: *In re New Jersey Tax Sale Certificates Antitrust Litigation*, 750 Fed. Appx. 73 (3d Cir. 2018) (affirming settlements with nearly 20 defendants worth over $10 million); *In re Insurance Brokerage Antitrust Litigation*, MDL No. 1663, No. 04-5184(FSH) (D.N.J.) (settlements totaling over $200 million); and *In re Liquid Aluminum Sulfate Antitrust Litigation*, No. 16-md-2687 (JLL)(JAD) (D.N.J.) (settlements totaling over $65 million). Outside of this District, LDGA has served in leadership or other significant roles in several plaintiff class action antitrust matters that have also achieved excellent results including: *In re: Processed Eggs Products Antitrust Litigation*, No. 08-md-2002 (E.D. Pa.) (LDGA attorneys served as liaison counsel and co-lead counsel with Hausfeld and Susman, jointly achieving $130 million settlement); *In re Blue Cross Blue Shield Antitrust Litigation* (Subscribers), No. 13-cv-20000 (N.D. Ala.) (trial plan committee, $2.67

billion settlement); *In re Broiler Chicken Antitrust Litigation* (Direct Purchasers), No. 18-cv-8637 (N.D. Ill.) (deposition and trial teams, $284 million settlement); and *In re: Polyurethane Foam Antitrust Litigation*, MDL No. 2196 (N.D. Ohio) (executive committee, $147,000,000 settlement).

### b.   Critchley, Kinum & Luria

CKL was founded approximately 40 years ago as a boutique litigation firm. CKL devotes a substantial portion of its practice to representing institutions and individuals in complex civil and criminal matters in Federal and State Court throughout the Country. Members of CKL are trial attorneys with significant experience handling complex matters at all stages of litigation, up to and including trial.

CKL was recently named by US News and World Reports as a Tier 1 law firm among the Best Law Firms in New Jersey and has been recognized in various legal publications as "stunning trial lawyer[s]" with a "colossal reputation" handling "the most complex cases."

Michael Critchley Sr. has tried approximately 100 cases to verdict in both Federal and State Courts. CKL has also successfully collaborated with many of the leading law firms in the country in numerous, high stakes complex litigation matters in New Jersey.

CKL attorneys are members of several of the leading professional trial organizations in the country and have received numerous recognitions for professional excellence. For example, Michael Critchley Sr. is a member of the American College of Trial Lawyers, the American Board of Criminal Lawyers, and is the past president and founder of the Seton Hall University Law School Inn of Court. Michael Critchley Sr. also received numerous recognitions and honors related to his professional accomplishments including an AV rating by Martindale Hubbell and being named as a Top 100 *SuperLawyer* in New Jersey.

CKL regularly represents individuals and institutions in high stakes litigation. The following is small sample of recent complex matters:

*In re National Opioid Prescription Litigation*, No. 1:17-md-2804 (N.D. Ohio) – CKL represented several municipalities and county governments in litigation concerning the opioid crisis.

*Liquid Aluminum Sulfate Antitrust Litigation*, No. 16-2687 (D.N.J.) – CKL served on the steering committee in this case alleging price fixing among chemical suppliers.

*FieldTurf Artificial Turf Marketing and Sales Practices Litigation*, No. 3:17-md-02779 (D.N.J.) – CKL serves on the Executive Committee in this pending litigation alleging fraudulent marketing of turf fields.

*Nasdaq, Inc. v. Miami International Holding*, No. 17-6664 (D.N.J.) – CKL represents large stock exchange in this pending litigation alleging theft of trade secrets.

*IQVIA v. Veeva Systems*, No. 17-177 (JXN) (D.N.J.) – CKL represents Plaintiff, a multi-national, publicly traded health- care information and technology company in case alleging theft of trade secrets.

*Care One Management, LLC, et al. v. United Healthcare Workers East, SEIU 1199, et al.*, No. 12-6371 (D.N.J.) – CKL currently represents plaintiff Care One in a Civil Rico matter presently pending in Federal District Court for the District of New Jersey related to the use of extortion and other tactics as a "corporate campaign" employed by labor unions.

*Gregg v. Cooley LLP*, No. L-002332-17 (N.J. Sup. Ct.) – CKL serves as co-counsel representing a large international law firm in a malpractice action involving a pharmaceutical company.

*Merck Sharp & Dohme v. Bristol Myers Squibb*, No. 16-2122 (D.N.J.) – CKL served as co-counsel for Defendant/Counter-Claimant Bristol Myers Squibb in patent infringement case related to anti-PD-1 immunotherapy treatment for cancer.

*Mylan Pharmaceuticals v. GlaxoSmith Kline Beecham*, No. 10-4809 (D.N.J.) – CKL served as co-counsel for Plaintiff Mylan Pharmaceuticals and secured a $106 million verdict in a breach of contract case in Federal District Court in New Jersey.

*In re Mylan Pharmaceuticals*, Nos. 15-8180, 16-35, 17-6714 (D.N.J) – CKL represented Mylan as co-counsel in numerous patent matters pending in the Federal District Court for the District of New Jersey.  These cases involved Abbreviated New Drug applications for United States generic drug approval for existing approved drugs.

*Hu v. BMW of N. Am. LLC*, No. 18-4363 (D.N.J.) – CKL served as co-counsel to defendant Bosch in this case involving allegations of RICO violations, along with various state law fraudulent concealment claims and claims for violations of various state law consumer protection laws.

### 6.    The Proposed Structure is Supported by Accomplished Antitrust and Class Action Firms.

Notably, the application by the Proposed Co-Leads is expressly supported by additional firms with extensive antitrust and class action experience, including Barrack Rodos & Bacine,[37] Connolly Wells & Gray, LLP, Bonsignore LLC, and Roberts Law Firm. Frequent collaborators with other members of the antitrust bar, the Proposed Co-Leads understand how to strategically enlist additional plaintiffs' counsel to take on special projects and discrete tasks to the benefit of the class.

---

[37] Barrack Rodos & Bacine has worked closely with both the Hausfeld and Susman firms in the past and has secured some of the largest class action recoveries in the history of American jurisprudence, with total recoveries exceeding $15 billion, including several class action settlements securing recoveries in excess of $1 billion. Specializing in complex securities, antitrust and consumer class actions, BRB possesses extensive litigation and trial experience, and has received numerous judicial accolades. See: www.barrack.com.

### a. Quality and Efficiency Controls

The Proposed Co-Leads will seek the assistance of these and other attorneys in accordance with the proposed billing protocol appended to the accompanying DePalma declaration as Exhibit A. Informed by decades of complex antitrust work, the billing guidelines ensure the Proposed Co-Leads can always maintain quality control and avoid duplicative efforts. The protocol also has strict billing requirements, including explicitly preventing attorneys from billing time to unnecessary tasks and appearances and capping the hourly rate and time spent on document review in order to maximize the value of legal services offered to the class.

### b. Team Cohesion and Communication

The Proposed Co-Leads will ensure that all plaintiffs' counsel are regularly informed of the status of the litigation, and will seek input on specific issues as appropriate while preserving efficiency. As the proposed order indicates, Proposed Co-Leads will send regular status updates to plaintiffs' counsel which serves to both keep counsel informed and avoid the need for excessive "read and review" time.

In short, with the appointment of the Proposed Co-Leads, the direct purchaser class will hit the ground running in this Court with deep benches of attorneys experienced in the relevant substantive law and the specific procedures and practices in this district.

## V.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter the attached Proposed Order appointing the Proposed Co-Leads to leadership for the direct purchaser class of Apple iPhone purchasers.

Dated: August 8, 2024                        Respectfully submitted,

LITE DEPALMA GREENBERG
 & AFANADOR, LLC

*/s/ Joseph J. DePalma*
Joseph J. DePalma
570 Broad Street, Suite 1201
Newark, NJ 07102
Tel: (973) 623-3000
jdepalma@litedepalma.com

LITE DEPALMA GREENBERG
& AFANADOR, LLC
Mindee J. Reuben
Steven J. Greenfogel*
1515 Market Street, Suite 1200
Philadelphia, PA 19102
Tel: (215) 854-4060
mreuben@litedepalma.com
sgreenfogel@litedepalma.com

*Counsel for Plaintiff Ira Polly and the
Proposed Class*

**HAUSFELD LLP**
Michael D. Hausfeld*
Melinda R. Coolidge*
Sarah R. LaFreniere*
Nicholas Murphy*
Theodore DiSalvo*
881 16th Street, NW Suite 300
Washington, DC 20006
Tel: (202) 540-7200
mhausfeld@hausfeld.com
mcoolidge@hausfeld.com
slafreniere@hausfeld.com
nmurphy@hausfeld.com
tdisalvo@hausfeld.com

Katie R. Beran
325 Chestnut Street
Suite 900
Philadelphia, PA 19106
Tel: (215) 985-3270
kberan@hausfeld.com

Scott Martin*
Daniel P. Weick*
33 Whitehall Street
14th Floor
New York, NY 10004
Tel: (646) 357-1100
smartin@hausfeld.com
dweick@hausfeld.com

Michael P. Lehman*
Megan E. Jones*
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Tel: (415) 633-1908
mlehman@hausfeld.com
mjones@hausfeld.com

*Counsel for Plaintiffs Goldfus and Polly and their respective Proposed Classes*

**SUSMAN GODFREY LLP**
William Christpher Carmody**
Shawn J. Rabin**
Cory Buland**
Mark Musico**
Elisha Barron**
One Manhattan West, 50th Floor
New York, NY 10001-8602
Tel: (212) 336-8330
bcarmody@susmangodfrey.com
srabin@susmangodfrey.com
cbuland@susmangodfrey.com
mmusico@susmangodfrey.com
ebarron@susmangodfrey.com

*Counsel for Plaintiff Polly and the Proposed Class*

**CRITCHLEY, KINUM & LURIA, LLC**
Michael Critchley
75 Livingston Avenue
Roseland, New Jersey 07068
Tel: (973) 422-9200
mcritchley@critchleylaw.com

*Counsel for Plaintiff Goldfus and the Proposed Class*
*\* admitted pro hac vice*
*\*\*pro hac vice forthcoming*

42