# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: APPLE INC. SMARTPHONE ANTITRUST LITIGATION | Civil Action No. 24-md-3113 (JXN)(LDW) MDL No. 3113 |
| *This Document Relates to:* | |
| Civil Action No. 24-md-3113 (JXN)(LDW) | |

## PLAINTIFF JOSEPH GIAMANCO'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR APPOINTMENT OF INTERIM LEAD COUNSEL FOR THE APPLE WATCH DIRECT PURCHASER CLASS

Thomas R. Curtin
Kathleen N. Fennelly
MCELROY, DEUTSCH,
MULVANEY & CARPENTER, LLP
1300 Mount Kemble Avenue
Morristown, NJ 07962
Tel: (973) 993-8100
tcurtin@mdmc-law.com

David C. Frederick
Aaron M. Panner
Scott K. Attaway
Ariela Migdal
Alex A. Parkinson
KELLOGG, HANSEN, TODD
FIGEL & FREDERICK, P.L.L.C.
1615 M Street NW, Suite 400
Washington, DC 20036
Tel.: (202) 326-7900

Carol O'Keefe
Andrew Ellis
KOREIN TILLERY LLC
505 N. 7th Street, Suite 3600
St. Louis, MO 63101
Tel.: (314) 241-4844

George A. Zelcs
Marc A. Wallenstein
David Walchak
KOREIN TILLERY LLC
205 N. Michigan Avenue, Suite 1950
Chicago, IL 60601
Tel.: (312) 641-9750

Steven F. Molo
Jonathan Barbee
MOLOLAMKEN LLP
430 Park Avenue
New York, NY 10022
Tel.: (212) 607-8160

Jordan A. Rice
Eric A. Posner
MOLOLAMKEN LLP
300 N. LaSalle Street
Chicago, IL 60654
Tel.: (312) 450-6700

Jennifer Fischell
Kayvon Ghayoumi
MOLOLAMKEN LLP
600 New Hampshire Avenue, N.W.
Washington, DC 20037
Tel.: (202) 556-2000

*Attorneys for Plaintiff Joseph Giamanco and Proposed Apple Watch Direct Purchaser Class*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................ 1

ARGUMENT ..................................................................................................................... 3

   I.     Separate Counsel Is Warranted for the Apple Watch Plaintiffs ....................................... 4

     A. The Apple Watch and iPhone Claims Are Distinct ................................................... 4

     B. The Apple Watch and iPhone Claims Are at Odds ................................................... 6

     C. The Apple Watch and iPhone Claims Require Separate Counsel .................................... 7

   II.    Proposed Lead Apple Watch Counsel Should Represent the Apple Watch Direct
          Purchaser Class ........................................................................................... 9

     A. Counsel's Work Identifying and Investigating the Apple Watch Claims ...................... 10

     B. The Other Factors Support Appointing Proposed Lead Apple Watch Counsel ............. 12

        1. Proposed Lead Apple Watch Counsel's Experience and Knowledge of the
           Applicable Law ................................................................................... 12

           a.   Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C. ............................... 13

           b.   Korein Tillery LLC ................................................................ 18

           c.   MoloLamken LLP .................................................................. 23

           d.   McElroy, Deutsch, Mulvaney & Carpenter, LLP ................................... 28

        2. Proposed Lead Apple Watch Counsel Has the Necessary Resources to Effectively
          Litigate the Apple Watch Claims ................................................................ 29

     C.  Proposed Lead Apple Watch Counsel Is Committed To Controlling Costs
       and Working Collaboratively with All Parties in This MDL ....................................... 29

CONCLUSION.................................................................................................................. 30

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alexander v. Gino's, Inc.*,
    621 F.2d 71 (3d Cir. 1980)....................................................................................9

*In re Apple Inc. Smartphone Antitrust Litig.*,
    2024 WL 2884408 (J.P.M.L. June 7, 2024)...........................................................5

*In re Cmty. Bank of N. Virginia Mortg. Lending Pracs. Litig.*,
    795 F.3d 380 (3d Cir. 2015)..........................................................................4, 8, 9

*Dewey v. Volkswagen Aktiengesellschaft*,
    681 F.3d 170 (3d Cir. 2012)....................................................................................8

*Durso v. Samsung Elecs. Am., Inc.*,
    2013 WL 4084640 (D.N.J. Aug. 7, 2013) ............................................................11

*Garbaccio v. St. Joseph's Hosp. & Med. Ctr. & Subsidiaries*,
    2017 WL 1196458 (D.N.J. Mar. 13, 2017), *R&R adopted*, 2017 WL 1181575
    (D.N.J. Mar. 29, 2017)...........................................................................................9

*In re Literary Works in Elec. Databases Copyright Litig.*,
    654 F.3d 242 (2d Cir. 2011)....................................................................................9

*Miller Indus. Towing Equip. Inc. v. NRC Indus.*,
    659 F. Supp. 3d 451 (D.N.J. 2023) .........................................................................7

*Potzner v. Tommie Copper Inc.*,
    2016 WL 304746 (S.D.N.Y. Jan. 4, 2016) ...........................................................12

*In re Vanguard Chester Funds Litig.*,
    625 F. Supp. 3d 362 (E.D. Pa. 2022) ....................................................................10

*Watkins-Fields v. SSS Educ., Inc.*,
    2024 WL 3200942 (D.N.J. June 27, 2024) .............................................................3

**Statutes**

15 U.S.C. § 1.................................................................................................................5

15 U.S.C. § 2.................................................................................................................5

**Other Authorities**

1 Newberg and Rubenstein on Class Actions § 3:75................................................4, 8

Federal Rule of Civil Procedure 23 ................................................................... *passim*

Pursuant to Federal Rule of Civil Procedure 23(g)(3) and this Court's Case Management Order Number 1, Dkt. 7, Plaintiff Joseph Giamanco submits this motion to appoint Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C., Korein Tillery LLC, and MoloLamken LLP as interim lead counsel for the proposed class of Apple Watch direct purchasers, and McElroy, Deutsch, Mulvaney & Carpenter, LLP as liaison counsel (together, "Proposed Lead Apple Watch Counsel").

## **INTRODUCTION**

Plaintiff Joseph Giamanco alleges Apple monopolized and entered into illegal horizontal agreements to restrain competition in the market for smartwatches that connect to the iPhone. *See* Complaint ¶¶ 179-203, *Giamanco v. Apple Inc.*, No. 24-cv-7238 (D.N.J.) ("Giamanco Compl."). As a result of this conduct, Apple has charged supracompetitive prices for its Apple Watch, harming Mr. Giamanco and similarly situated consumers (the "Apple Watch Direct Purchaser Class"). *Id.* ¶¶ 5, 27, 131, 170.

Mr. Giamanco's complaint is the only one in this multi-district litigation that asserts claims solely on behalf of Apple Watch direct purchasers and focuses in depth on Apple's anticompetitive conduct in the smartwatch market. All other MDL plaintiffs bring claims exclusively or primarily on behalf of iPhone purchasers and focus on Apple's conduct in the smartphone market.[1] The Apple Watch claims differ from the iPhone claims. They involve different products, different markets, different liability theories, and different damages. The two sets of claims, moreover,

---

[1] A handful of iPhone-purchaser plaintiffs include limited claims on behalf of Apple Watch purchasers in their complaints, but none advances the smartwatch monopolization and horizontal agreement claims brought by Mr. Giamanco. These cases are: *Chiuchiarelli v. Apple Inc.*, No. 24-cv-7290 (D.N.J.); *Herrerias v. Apple Inc.*, No. 24-cv-7194 (D.N.J.); *Kane v. Apple Inc.*, No. 24-cv-7196 (D.N.J.); *Leonard v. Apple Inc.*, No. 24-cv-7253 (D.N.J.); *Maxa v. Apple Inc.*, No. 24-cv-7190 (D.N.J.); and *Schwartz v. Apple Inc.*, No. 24-cv-7195 (D.N.J.).

involve legal and factual theories that are at odds, necessitating separate counsel for the iPhone purchaser class and the Apple Watch Direct Purchaser Class.

Each of the Rule 23(g) factors supports appointing Proposed Lead Apple Watch Counsel as interim counsel for the Apple Watch Direct Purchaser Class. Proposed Lead Apple Watch Counsel are the only firms to have developed and advanced claims exclusively on behalf of Apple Watch purchasers, are highly experienced in antitrust class action litigation, and have the resources and commitment to zealously litigate this case on behalf of the class.

Proposed Lead Apple Watch Counsel have extensive experience working collaboratively with other counsel in the context of MDLs, class actions, and other complex, multi-plaintiff litigation. In this case, Proposed Lead Apple Watch Counsel have already begun successful cooperation with the Majority Group, who have submitted a motion to lead the iPhone purchaser class. Ex. A, Declaration of George A. Zelcs ("Zelcs Decl.") ¶ 6. Proposed Lead Apple Watch Counsel and the Majority Group have agreed that (1) Apple Watch and iPhone purchasers require separate representation, and (2) coordinated discovery will benefit both sets of plaintiffs and will serve the interests of judicial economy. Zelcs Decl. ¶¶ 7-9.

Proposed Lead Apple Watch Counsel support the Majority Group's appointment as interim lead counsel for iPhone direct purchasers and understand that the Majority Group supports this motion to appoint Proposed Lead Apple Watch Counsel as interim counsel for the Apple Watch Direct Purchaser Class. Zelcs Decl. ¶ 10-11. Together, these leadership teams stand ready to litigate the iPhone and Apple Watch claims efficiently, eliminating duplicative discovery and unnecessary administrative burden, while maintaining the separate representation necessary to protect the classes' unique interests.

**ARGUMENT**

Federal Rule of Civil Procedure 23(g)(3) authorizes the Court to appoint interim lead counsel "to act on behalf of a putative class" before deciding whether to certify the class. In deciding whether to appoint counsel, "the Court applies the same factors it applies to appointing class counsel." *Watkins-Fields v. SSS Educ., Inc.*, 2024 WL 3200942, at *2 (D.N.J. June 27, 2024) (Neals, J.) (internal quotation marks omitted). These factors are:

> (1) the work counsel has done in identifying or investigating potential claims in the action;
>
> (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
> (3) counsel's knowledge of the applicable law; and
>
> (4) the resources counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A); *see also Watkins-Fields*, 2024 WL 3200942, at *2 (same). Each of these factors favors appointment of Proposed Lead Apple Watch Counsel to manage this litigation on behalf of the Apple Watch Direct Purchaser Class.

In addition to the above factors, the Court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). That includes ensuring that one set of counsel does not represent two classes with diverging interests. Consequently, before turning to the 23(g)(1)(A) factors, Proposed Lead Apple Watch Counsel explain in Part I why separate counsel for Apple Watch plaintiffs is warranted. Then, in Part II, Proposed Lead Apple Watch Counsel (1) explain why they are best suited to serve as interim counsel for the Apple Watch Direct Purchaser Class, and (2) describe the efforts they will take to control costs and litigate these claims collaboratively and efficiently with counsel for other parties in this MDL.

## I.     Separate Counsel Is Warranted for the Apple Watch Plaintiffs

Class counsel cannot "fairly and adequately" represent the interests of class members consistent with Rule 23(g) if the class members they seek to represent have interests that are "inherently opposed" or "if there is significant risk that the dual representation will materially limit [counsel's] representation of one client." 1 Newberg and Rubenstein on Class Actions § 3:75; *see also In re Cmty. Bank of N. Virginia Mortg. Lending Pracs. Litig.*, 795 F.3d 380, 393 (3d Cir. 2015) (explaining that a "corollary principle" of the adequacy requirement for named plaintiffs is that "class counsel may not . . . represent an entire class if subgroups within the class have interests that are significantly antagonistic to one another").

Here, differences between the Apple Watch and iPhone purchaser claims mean that the claims are, in important respects, "significantly antagonistic," and any lawyer who seeks to represent these classes simultaneously and in the same proceeding could be "materially limit[ed]" in representation of one or the other. Separate counsel should be appointed to represent the Apple Watch Direct Purchaser Class and any class of iPhone purchasers.

### A. The Apple Watch and iPhone Claims Are Distinct

The Apple Watch is a smartwatch that connects to the iPhone, providing users with health and fitness tracking, access to notifications and messaging, and other features. The Apple Watch has been an enormous success for Apple, earning Apple $23.8 billion in revenue last year. Giamanco Compl. ¶ 4.

Mr. Giamanco alleges that Apple engaged in a years-long campaign to seal off competition in relevant smartwatch markets through anticompetitive conduct and horizontal agreements. Apple prevented smartwatch competitors from offering iPhone owners comparable features to the Apple Watch and disrupted the functioning of non-Apple smartwatches, making it harder for owners of

those competing smartwatches to use texting, wallet, and other features. Giamanco Compl. ¶¶ 2-4. As a result of this anticompetitive conduct, Apple acquired a monopoly share of relevant smartwatch markets—nearly 80% of iPhone owners with a smartwatch have an Apple Watch—and has been able to charge supracompetitive prices for the Apple Watch. *Id.* ¶¶ 5, 127-131.

Based on these allegations, Mr. Giamanco brings Sherman Act Section 1 and 2 claims on behalf of himself and similarly situated *Apple Watch* direct purchasers. 15 U.S.C. §§ 1, 2. All other plaintiffs in this MDL bring claims primarily or exclusively on behalf of *iPhone* purchasers.[2] In contrast to the Apple Watch claims, the iPhone claims allege that Apple cemented its dominance in the market for *smartphones*—not *smartwatches*—by locking users into Apple's iPhone ecosystem. Much of the conduct alleged for the iPhone claims, moreover, is of little relevance to the Apple Watch claims. *See, e.g.*, Complaint ¶¶ 77-89, *Goldfus v. Apple Inc.*, No. 24-cv-4108 (D.N.J.) ("Goldfus Compl.") (allegations about "super apps").

The Judicial Panel on Multi-District Litigation centralized Mr. Giamanco's Apple Watch claims with the iPhone purchaser claims for pretrial purposes because, in its view, the claims shared areas of "factual overlap and common discovery." *In re Apple Inc. Smartphone Antitrust Litig.*, 2024 WL 2884408, at *2 (J.P.M.L. June 7, 2024). But centralization for discovery purposes does not, on its own, justify or even permit unified *representation* of the centralized claims. While the Apple Watch and iPhone claims involve some overlapping facts related to Apple's efforts to degrade the functionality of competing smartwatches, the claims differ with respect to the consequences of that conduct and the purpose it served in the marketplace. Indeed, the Panel recognized in centralizing these claims that they might involve "separate issues" with respect to "markets and pricing for iPhones and Apple Watches." *Id.*

---

[2] *See* Note 1, *supra*.

**B. The Apple Watch and iPhone Claims Are at Odds**

The Apple Watch and iPhone plaintiffs advance different—and inconsistent—accounts of Apple's anticompetitive conduct and the resulting injuries. According to the Apple Watch plaintiffs, Apple engaged in anticompetitive conduct to monopolize relevant smartwatch markets, restrict output of iOS-connected smartwatches, and charge supracompetitive prices for the Apple Watch.[3] If the Apple Watch plaintiffs are successful in proving those allegations, that will tend to undermine the iPhone plaintiffs' claims. Under the iPhone plaintiffs' theory, the more Watches Apple sold, the more it would anchor users to the iPhone and expand its smartphone monopoly.[4] But if Apple charged supracompetitive prices for Apple Watches, as the Apple Watch plaintiffs allege, it would sell *fewer* Apple Watches, *fewer* customers would be chained to the iPhone, and its grip on any monopoly in the smartphone market would be to that extent weakened.

Likewise, some of the conduct the Apple Watch plaintiffs allege, such as limiting the ability of third-party smartwatches to connect to the iPhone, may have driven some customers away from the iPhone, *harming* a core theory of the iPhone plaintiffs' case. Apple has recognized this in its motion to dismiss the Department of Justice's First Amended Complaint pending before this Court. There, Apple argues that "[t]he theory that someone will feel forced to buy another iPhone because her third-party smartwatch cannot access certain iPhone features is implausible, if

---

[3] *See* Giamanco Compl. ¶ 127 ("Apple's conduct is a highly effective anticompetitive scheme to acquire and maintain a monopoly in the market for iOS-connected smartwatches—restricting supply, harming competition, and enabling Apple to charge supracompetitive prices for its Apple Watch as a result.").

[4] *See, e.g.*, Goldfus Compl. ¶ 114 (Apple uses the Apple Watch "to prevent iPhone customers from choosing other phones."); Complaint ¶ 86, *Chiuchiarelli v. Apple Inc.*, No. 24-cv-7290 (D.N.J.) ("Chiuchiarelli Compl."); Goldfus Complaint ¶ 118 ("Apple recognizes that driving users to purchase an Apple Watch, rather than a third-party cross-platform smartwatch, helps drive iPhone sales and reinforce the moat around its smartphone monopoly."); Chiuchiarelli Compl. ¶ 90 (same).

not plainly backward; someone unhappy with Apple's limitations is *more* likely to switch to an Android [smartphone]." Apple Mot. to Dismiss at 30, *United States v. Apple, Inc.*, No. 24-cv-4055, Dkt. 86-1 (D.N.J. Aug. 1, 2024). If Apple is correct, the iPhone claims suffer, but the Apple Watch claims do not. The Apple Watch claims are premised on Apple exercising market power over smartwatch buyers who already have and wish to continue using an iPhone. Whether some subset of customers might prize a non-Apple smartwatch above remaining iPhone users is not decisive for the Apple Watch plaintiffs' theory of liability.

The tension between the iPhone and Apple Watch classes is also visible with respect to the classes' attempted monopolization claims. *See, e.g.*, Giamanco Compl. ¶¶ 187-95; Goldfus Compl. ¶¶ 238-45, 255-62. An attempted monopolization claim requires a plaintiff to prove "that the defendant engaged in predatory or anticompetitive conduct with a specific intent to monopolize." *Miller Indus. Towing Equip. Inc. v. NRC Indus.*, 659 F. Supp. 3d 451, 467 (D.N.J. 2023). For purposes of their attempted monopolization claims, the Apple Watch and iPhone plaintiffs must prove that Apple engaged in the same smartwatch-related conduct with the specific intent to monopolize ***two different*** product markets. But proof of specific intent to monopolize the smartwatch market weakens a claim that Apple intended to monopolize the iPhone market. As explained above, the Apple Watch plaintiffs allege conduct that would have resulted in ***fewer*** Apple Watch users and ***fewer*** iPhone users. That undermines the iPhone plaintiffs' claim that Apple sought to monopolize the iPhone market.

### C.  The Apple Watch and iPhone Claims Require Separate Counsel

The Majority Group, proposed lead counsel for the iPhone class, agree with Proposed Lead Apple Watch Counsel that the Apple Watch claims require separate counsel. For the reasons described above, the iPhone and Apple Watch plaintiffs' legal theories are "inherently opposed,"

such that joint representation of either class could "materially limit the lawyer's representation of" the other. 1 Newberg and Rubenstein on Class Actions § 3:75.

Any counsel that represents the Apple Watch purchasers will argue that Apple charged **supracompetitive** prices for its smartwatches. But that cuts against the iPhone plaintiffs' theory that Apple used widespread distribution of the Apple Watch to monopolize the smartphone market. As explained above, the higher the price of the Apple Watch, the fewer customers Apple could anchor to the iPhone, contrary to what the iPhone plaintiffs seek to prove. Similarly, counsel for the Apple Watch plaintiffs will seek to prove that Apple degraded competitor smartwatches' ability to connect to the iPhone. But that may cause a subset of users to abandon the iPhone, again contrary to what the iPhone plaintiffs seek to prove. These problems cannot be avoided by careful pleading and argumentation; they are fundamental conflicts arising out of core case theories. *Cf. In re Cmty. Bank*, 795 F.3d at 394 (concluding there was no fundamental conflict between class members only because the class members were pursuing damages under "the same theories of liability, and the differences among them will not . . . pit one group's interests against another"). In light of the distinct interests of the Apple Watch plaintiffs and iPhone plaintiffs, one set of interim counsel cannot "fairly and adequately" represent them all. Fed. R. Civ. P. 23(g)(4).

Other factors support appointing separate interim counsel for the iPhone and Apple Watch classes. The Third Circuit has recognized that a "conflict concerning the allocation of remedies amongst class members with competing interests can be fundamental" and render representation inadequate. *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 184 (3d Cir. 2012). Here, the Apple Watch and iPhone plaintiffs suffered distinct damages premised on distinct conduct. The same counsel could not negotiate a global settlement on behalf of the different plaintiff classes without having to make improper allocation decisions between the classes. Thus, if the parties

reached a global settlement while the same counsel represented both the iPhone and Apple Watch plaintiffs, that settlement would face significant risks at the approval stage and on appeal. *See In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 254 (2d Cir. 2011) (vacating settlement because class members with distinct legal claims and entitlement to damages required separate representation). It is more efficient—and better serves the interests of Apple Watch plaintiffs—to appoint separate counsel now. *See In re Cmty. Bank*, 795 F.3d at 393-94 (explaining "it may be wise to appoint separate counsel even before a serious conflict fully emerges").

A single set of counsel representing both the Apple Watch and iPhone claims also presents practical problems. While the Apple Watch claims involve significant damages, the iPhone claims involve far more in potential damages. *See, e.g.*, Chiuchiarelli Compl. ¶ 25. If a single set of counsel pursued both the Apple Watch and iPhone claims simultaneously, the attorneys would be tempted to expend their finite resources—for example, expert fees, attorney time, and discovery resources—on the iPhone claims at the expense of the Apple Watch claims. Separate counsel will protect the unique interests of the Apple Watch plaintiffs.

## II. Proposed Lead Apple Watch Counsel Should Represent the Apple Watch Direct Purchaser Class

Given that the Apple Watch Direct Purchaser Class requires separate counsel, the next question is why Proposed Lead Apple Watch Counsel is best suited to serve that role. As outlined below, each of the factors the Court must consider under Rule 23(g) strongly favors appointment of Proposed Lead Apple Watch Counsel to represent the Apple Watch Direct Purchaser Class.[5]

---

[5] Regardless of whether separate counsel is strictly required, it is well within this Court's discretion to appoint separate counsel. *See Garbaccio v. St. Joseph's Hosp. & Med. Ctr. & Subsidiaries*, 2017 WL 1196458, at *2 (D.N.J. Mar. 13, 2017) ("discretion to appoint more than one firm"), *R&R adopted*, 2017 WL 1181575 (D.N.J. Mar. 29, 2017); *cf. Alexander v. Gino's, Inc.*, 621 F.2d 71, 75 (3d Cir. 1980) ("considerable discretion" to utilize subclasses led by separate counsel).

**A. Counsel's Work Identifying and Investigating the Apple Watch Claims**

The first factor courts consider when appointing interim lead counsel is "the work counsel has done in identifying or investigating potential claims in the action." Fed. R. Civ. P. 23(g)(1)(A). This factor strongly favors appointment of Proposed Lead Apple Watch Counsel to represent the Apple Watch Direct Purchaser Class. In weighing this factor, courts consider whether counsel was the first to file the relevant claims and whether counsel *fully developed* the relevant legal theories. *See In re Vanguard Chester Funds Litig.*, 625 F. Supp. 3d 362, 367 (E.D. Pa. 2022) ("When the firm that was first to investigate and first to file also included additional theories of relief providing a more comprehensive protection for plaintiffs and the class, that firm has set itself apart in terms of the first factor of identifying or investigating potential claims.").

Proposed Lead Apple Watch Counsel was the first and thus far the only counsel to (1) bring claims exclusively on behalf of Apple Watch purchasers, and (2) identify and bring monopolization and horizontal conspiracy claims on behalf of Apple Watch purchasers. While a handful of the iPhone plaintiffs also bring limited claims on behalf of Apple Watch purchasers, those plaintiffs overwhelmingly focus on their iPhone claims—and where they address the Apple Watch claims, they do so in far less detail than in the complaint Proposed Lead Apple Watch Counsel prepared and filed.[6] As the only counsel to focus exclusively on Apple Watch claims and develop monopolization and horizontal conspiracy claims on behalf of Apple Watch purchasers, Proposed Lead Apple Watch Counsel has "set itself apart in terms of the first factor." *Vanguard Chester Funds*, 625 F. Supp. 3d at 367.

Another relevant consideration for the first Rule 23(g)(1)(A) factor is the work proposed interim counsel has put toward "interviewing class members, researching the claims and engaging

---

[6] *See* Note 1, *supra*.

10

experts." *Durso v. Samsung Elecs. Am., Inc.*, 2013 WL 4084640, at *3 (D.N.J. Aug. 7, 2013). Proposed Lead Apple Watch Counsel began investigating the Apple Watch claims in January 2024, approximately four months before filing Mr. Giamanco's complaint. Zelcs Decl. ¶ 3. This investigation was extensive, and included conversations with class members, experts, and relevant third parties. *Id.* ¶¶ 3-4. These discussions were also fruitful. Proposed Lead Apple Watch Counsel has, for example, already engaged a leading technical expert and interviewed multiple potential economic experts who may support this litigation. *Id.* ¶ 4.

The complaint filed on Mr. Giamanco's behalf reflects Proposed Lead Apple Watch Counsel's extensive factual research. It includes allegations raised by no other party in this litigation, detailing, for instance, Apple's use of iOS updates to disrupt the functioning of smartwatch competitors, Giamanco Compl. ¶¶ 45-47; Apple's targeting of smartwatch competitors on the App Store, *id.* ¶¶ 120-26; and Apple's efforts to undermine competition from major smartwatch competitors, including early competitors such as Pebble and Motorola and later competitors such as Google's Fitbit and Samsung's Galaxy Watch. *Id.* ¶¶ 29-43, 45-46, 58-62, 67-69, 76-77, 85-86, 90-91, 94-100. The other complaints, including the Department of Justice's complaint, do not mention these competitors *at all*, let alone discuss them in comparable detail.[7]

In total, Proposed Lead Apple Watch Counsel's complaint on Mr. Giamanco's behalf contains 74 pages and 209 paragraphs of detailed allegations solely directed to Apple's anticompetitive conduct in the smartwatch market. Where other plaintiffs assert Apple Watch claims at all, they do so only in passing. *See, e.g.*, Chiuchiarelli Compl. ¶¶ 86-94. The unmatched detail of Proposed Lead Apple Watch Counsel's allegations with respect to the Apple Watch

---

[7] *See generally* First Am. Compl., *U.S. v. Apple Inc.*, No. 24-cv-4055 (D.N.J.); Goldfus Compl.; Chiuchiarelli Compl.

claims further supports their appointment as interim counsel. *See Potzner v. Tommie Copper Inc.*, 2016 WL 304746, at *1 (S.D.N.Y. Jan. 4, 2016) (appointing interim lead counsel in part because, "[a]s reflected in the detailed 86–page complaint . . . , [chosen counsel] have done more work than [other prospective counsel] to investigate and identify potential claims in this action").

Given that Proposed Lead Apple Watch Counsel are the only counsel to focus exclusively and in depth on Apple Watch claims, the first 23(g)(1)(A) factor strongly supports their appointment as interim lead counsel for the Apple Watch Direct Purchaser Class. In contrast, all other counsel focus exclusively or primarily on iPhone claims, making them a poor choice to represent the Apple Watch plaintiffs.

## B.  The Other Factors Support Appointing Proposed Lead Apple Watch Counsel

The remaining factors the Court must consider are proposed lead counsel's "experience in handling class actions, other complex litigation, and the types of claims asserted in the action," counsel's "knowledge of the applicable law," and "the resources counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). These factors strongly favor the appointment of Proposed Lead Apple Watch Counsel. Proposed Lead Apple Watch Counsel's experience and knowledge are described in detail below, as are the substantial resources they will bring to bear to ensure this litigation is conducted as effectively and efficiently as possible.

### 1.  Proposed Lead Apple Watch Counsel's Experience and Knowledge of the Applicable Law

The firms comprising Proposed Lead Apple Watch Counsel each independently bring a wealth of experience in antitrust and class action litigation generally, and antitrust class action litigation in particular. The experience of each firm and the litigation team that will work on this case is outlined below, and in more detail in the resumes included with this motion. *See generally* App'x.

12

### a. Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C.

Kellogg Hansen is a preeminent trial and appellate firm whose partners have been lead counsel in more than 100 federal and state trials and appeals and have argued hundreds of appeals in the federal circuit courts and more than 70 cases before the Supreme Court of the United States. A substantial number of its attorneys, including Mr. Frederick, Mr. Panner, and Ms. Migdal, clerked for Justices of the U.S. Supreme Court. Notable alumni include prominent members of the federal judiciary and other high-ranking federal officials.

Kellogg Hansen arguably is the nation's premier antitrust litigation firm. The firm's cases have reshaped the substantive and procedural law of antitrust over the last two decades. *See Verizon Commc'ns Inc. v. Law Offs. of Curtis V. Trinko, LLP*, 540 U.S. 398 (2004); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Pacific Bell Tel. Co. v. linkLine Commc'ns, Inc.*, 555 U.S. 438 (2009); *American Express Co. v. Italian Colors Rest.*, 570 U.S. 228 (2013); *Ohio v. American Express Co.*, 585 U.S. 529 (2018); *Apple Inc. v. Pepper*, 587 U.S. 273 (2019). Kellogg Hansen won two of the largest antitrust verdicts in United States history (*Conwood Co., L.P. v. U.S. Tobacco Co.* and *In re Urethane Antitrust Litigation*), both resulting in judgments in excess of $1 billion and successfully defended on appeal.

Kellogg Hansen attorneys, including Mr. Panner, have represented individual plaintiffs and a class of direct purchasers in litigation against two providers of automobile dealership managements systems, defeating motions for summary judgment, winning class certification, and earning "Litigators of the Week" honors from prominent antitrust publication *Global Competition Review*.[8] In the *Urethane MDL*, Judge Lungstrum stated that the Kellogg Hansen trial team

---

[8] *See* Pallavi Guniganti, *Litigators of the Week: Michael Nemelka, Aaron Panner and Derek Ho*, Glob. Competition Review (July 20, 2017); *In re Dealer Mgmt. Sys. Antitrust Litig.*, 2024 WL

"achieved an incredible result for the class, . . . and . . . won what is reported to be one of the largest verdicts of its kind in United States history." Mem. & Op. at 15, *In re Urethane Antitrust Litig.*, No. 2:04-md-01616 (D. Kan. July 29, 2016), Dkt. 3273. In *Dial Corp.*, Judge Pauley called the efforts of Kellogg Hansen as co-lead counsel, together with four other law firms, "a paradigm for smooth and efficient claims administration." Order, *Dial Corp. v. News Corp.*, No. 1:13-cv-06802 (S.D.N.Y. Nov. 20, 2017), Dkt. 617. In addition to representing plaintiffs, Kellogg Hansen has represented antitrust defendants including Meta, AT&T, Verizon, and Cisco.

Kellogg Hansen has extensive experience successfully representing plaintiffs in complex litigation. Along with co-counsel Korein Tillery, Kellogg Hansen, including lead counsel David Frederick and Scott Attaway, recovered more than $5.1 billion for the National Credit Union Administration, an independent federal agency, in mortgage-backed securities claims arising out of the 2008 financial crisis against multiple defendants including the top Wall Street securities underwriter banks.[9] Kellogg Hansen, including lead counsel Mr. Frederick and Ms. Migdal, secured more than $3 billion dollars on behalf of the State of Florida in litigation arising from the opioid crisis. Kellogg Hansen, including lead counsel Mr. Frederick and Ms. Migdal, defended on appeal one of the largest jury verdicts in history, more than $2 billion, in the *Johnson & Johnson, et al. v. Ingham* talc litigation. 141 S. Ct. 2716 (June 1, 2021) (Mem.) (denying petition for certiorari).

Kellogg Hansen has won multiple verdicts resulting in judgments in excess of $1 billion, obtained settlements in the hundreds of millions of dollars for numerous clients, and successfully

---

3509668 (N.D. Ill. July 22, 2024) (class certification); *In re Dealer Mgmt. Sys. Antitrust Litig.*, 680 F. Supp. 3d 919 (N.D. Ill. 2023) (summary judgment).

[9] *See* Nat'l Credit Union Admin., *Legal Recoveries from the Corporate Crisis* (Nov. 19, 2020), https://ncua.gov/support-services/corporate-system-resolution/legal-recoveries-corporate-crisis.

defended clients against similarly large damages claims. Kellogg Hansen attorneys are known as trial-ready litigators who are not afraid of complexity and have the experience to successfully try high-stakes and high-profile litigation. Kellogg Hansen's team in this litigation will be led by partners David C. Frederick and Aaron M. Panner, of counsel Scott K. Attaway and Ariela Migdal, and associate Alex A. Parkinson.

**David C. Frederick** has argued more than 100 appeals, including 60 in the United States Supreme Court. Between 2005 and 2018, he won or successfully settled cases in the Supreme Court thirteen years in a row, including *Apple Inc. v. Pepper*, *Tyson Foods, Inc. v. Bouaphakeo*, *Tibble v. Edison International*, *Jesinoski v. Countrywide Home Loans, Inc.*, *Amgen Inc. v. Connecticut Retirement Plans & Trust Funds*, *Matrixx Initiatives, Inc. v. Siracusano*, *Merck & Co. v. Reynolds*, *Wyeth v. Levine*, and *Altria Group, Inc. v. Good*. Mr. Frederick argued and, along with Mr. Panner and others, represented (and continues to represent) the plaintiffs in *Apple Inc. v. Pepper*, the seminal antitrust case resulting in the Supreme Court's upholding iPhone owners' right to sue to recover excessive commissions as direct purchasers of iPhone apps. While at the Department of Justice, Mr. Frederick was one of two counsel arguing for the Government in the landmark *United States v. Microsoft* antitrust case. Mr. Frederick was lead counsel representing the State of Florida in its suit against major pharmaceutical companies for their role in causing the opioid addiction crisis. This case settled following a jury trial and resulted in billions of dollars to fund treatment and prevention programs throughout Florida. He was lead counsel in litigation on behalf of the National Credit Union Administration that recovered more than $5.1 billion in securities claims arising out of the 2008 financial crisis against a range of Wall Street banks.[10] A former law clerk to Justice Byron White and Judge Joseph Sneed, he graduated from the University

---

[10] *See* Note 9, *supra*.

of Texas School of Law (J.D., with honors); the University of Oxford (D.Phil.), where he was a Rhodes Scholar; and the University of Pittsburgh (B.A., *summa cum laude*), where he was a Truman Scholar. He served in the Department of Justice as Assistant to the Solicitor General (1996-2001) and as Counselor to the Inspector General (1995-1996). Mr. Frederick is the author of the book, *Supreme Court and Appellate Advocacy* (Thomson Reuters, 2003, 3d ed. 2019).

*Aaron M. Panner* specializes in antitrust law and U.S. Supreme Court and appellate litigation. He has represented leading companies and individuals in high-stakes litigation in district courts and courts of appeals across the county and has argued six cases before the U.S. Supreme Court. Mr. Panner was centrally involved in five of the most significant Supreme Court antitrust victories of the past twenty years, prevailing each time – *Trinko*, *Twombly*, *linkLine* (which he argued), *American Express*, and *Pepper*. Mr. Panner has secured victories in appellate decisions involving (among others) alleged price fixing (*In re Text Messaging Antitrust Litig.*, 782 F.3d 867 (7th Cir. 2015)), alleged anticompetitive conduct (*New York v. Meta Platforms, Inc.*, 66 F.4th 288 (D.C. Cir. 2023); *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429 (7th Cir. 2020)), class certification standards (*Kleen Prods. LLC v. International Paper Co.* 831 F.3d 919 (7th Cir. 2016)), federal jurisdiction (*Verizon Maryland, Inc. v. Global Naps, Inc.*, 377 F.3d 355 (4th Cir. 2004)), standards for patent infringement (*Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915 (2014)), patent exhaustion (*Helferich Patent Licensing, LLC v. New York Times Co.*, 778 F.3d 1293 (Fed. Cir. 2015)), and other intellectual property issues. Earlier this year, he served as first-chair trial counsel in an antitrust case involving Section 1 and Section 2 claims – *Dexon Computer, Inc. v. Cisco Systems, Inc.* (E.D. Tex.) – which settled after the close of evidence on favorable terms. Mr. Panner has published several articles on antitrust law and serves on the Editorial Advisory Board of Competition Policy International's *Antitrust Chronicle.* He served as

16

a law clerk to Justice Stephen G. Breyer and Judge Michael Boudin, and graduated from Harvard Law School and Yale University.

**Scott K. Attaway** is Of Counsel at Kellogg Hansen and has litigated complex antitrust and consumer actions at the United States Supreme Court, the federal Courts of Appeals, and trial courts. Along with Mr. Frederick, he has co-led extensive trial litigation in cases on behalf of the National Credit Union Administration against mortgage-backed securities trustees Deutsche Bank, HSBC, U.S. Bank, and Wells Fargo, and against major Wall Street banks serving as mortgage-backed securities underwriters in which the NCUA has recovered more than $5 billion thus far. Mr. Attaway was centrally involved in securing victories in appellate decisions for plaintiffs involving mortgage-backed securities (*CMFG Life Ins. Co. v. RBS Sec., Inc.*, 799 F.3d 729 (7th Cir. 2015)), off-label drug marketing fraud (*Kaiser Found. Health Plan, Inc. v. Pfizer, Inc.* (*In re Neurontin*), 712 F.3d 21 (1st Cir. 2013)), farmers who lost crops due to a defective pesticide (*Indian Brand Farms, Inc. v. Novartis Crop Prot. Inc.*, 617 F.3d 207 (3d Cir. 2010); *Bates v. Dow Agrosciences LLC*, 544 U.S. 431 (2005)), a musician who lost her arm due to a defective drug (*Wyeth v. Levine*, 555 U.S. 555 (2009)), state boundaries and jurisdiction over submerged lands (*New Jersey v. Delaware*, 552 U.S. 597 (2008)), and federal removal jurisdiction (*Kircher v. Putnam Funds Tr.*, 547 U.S. 633 (2006)). Mr. Attaway served as a law clerk to Judge Douglas H. Ginsburg and to Judge Catherine C. Blake. Mr. Attaway graduated *summa cum laude* from Boston University School of Law and from Berklee College of Music.

**Ariela Migdal** is Of Counsel at Kellogg Hansen and litigates antitrust, consumer, and other complex cases, including MDLs and class actions, at the trial and appellate level. Along with lead counsel Mr. Frederick, she represented the State of Florida in its suit against major pharmaceutical companies for their role in causing the opioid addiction crisis. The case settled following a jury

17

trial and resulted in billions of dollars to fund treatment and prevention programs throughout Florida. Ms. Migdal presented a key expert to the jury, argued motions including on summary judgment, drafted pleadings and critical briefing including at the motion-to-dismiss and summary-judgment stages, and conducted fact and expert depositions. Ms. Migdal, along with lead counsel Mr. Frederick, defended on appeal one of the largest jury verdicts in history, more than $2 billion, in the *Ingham v. Johnson & Johnson* talc litigation. No. 20-1223 (cert denied June 1, 2021). Ms. Migdal graduated from New York University School of Law and Harvard College, and served as a law clerk for Justice Stephen G. Breyer and Judge Harry T. Edwards.

**Alex A. Parkinson** is an Associate at Kellogg Hansen who litigates complex cases, focusing on antitrust litigation. Mr. Parkinson served as a law clerk to Chief Judge Merrick B. Garland and Judge Robert D. Sack and graduated from the University of Chicago School of Law – where he was Editor-in-Chief of the Law Review – and Harvard College. Mr. Parkinson has published several law review articles concerning class action litigation.

### b.  Korein Tillery LLC

Korein Tillery LLC is one of the nation's most successful plaintiffs' complex litigation firms. Representing a broad array of clients in high-stakes lawsuits, the firm has delivered over $18 billion in verdicts and settlements in the last two decades, and the National Law Journal has named Korein Tillery to its "Plaintiffs' Hot List" seven times. Among its notable cases, the firm (and co-counsel Kellogg Hansen) recovered more than $5.1 billion for the National Credit Union Administration, an independent federal agency, in claims arising out of the financial crisis. Last year, the firm obtained a $185 million settlement for minor league baseball players in one of the largest wage-and-hour settlements in history. *See Senne v. Office of the Comm'r of Baseball*, No. 14-cv-608-JCS (N.D. Cal.). In his approval order, Judge Spero commended the "professionalism"

18

of class counsel and wrote, "The significant relief they have obtained under the Settlement Agreement is, in no small part, due to their expertise and dedication." *Id.*, ECF No. 1190 at 12.

Korein Tillery frequently represents class action plaintiffs in antitrust litigation, including litigation in this district. In just the last few years, the firm and its lawyers have been appointed lead or co-lead counsel for plaintiffs in a number of large antitrust class actions, including *Our Own Candle Co. v. Givaudan S.A. et al.*, No. 23-cv-2174 (D.N.J.) (alleging price fixing by an international cartel of fragrance manufacturers); *In re Passenger Vehicle Replacement Tires Antitrust Litigation*, No. 24-md-3107 (N.D. Ohio) (alleging an antitrust conspiracy among some of the world's largest tire companies); and *In re Google Digital Advertising Antitrust Litigation*, No. 21-md-3010 (S.D.N.Y.) (bringing antitrust claims on behalf of digital publishers challenging Google's conduct in the digital advertising market).

Korein Tillery also has substantial experience litigating technology-based claims against large Silicon Valley companies. The firm currently represents consumer plaintiffs alleging that Google monopolized the market for Android app distribution, *In re Google Play Store Antitrust Litigation*, 21-md-2981 (N.D. Cal.); a certified class of more than 400 Missouri municipalities against Netflix and Hulu in claims arising out of the streaming services' use of the public right-of-way, *City of Creve Couer*, No. 18SL-CC02819 (Mo. Cir. Ct.); and a certified class of Android device users alleging that the Android operating system surreptitiously used their personal cellular data, *Csupo v. Alphabet Inc.*, No. 19-cv-352557 (Cal. Sup. Ct.).

Korein Tillery's litigation team in this case will include partners George A. Zelcs, Carol O'Keefe, and Marc Wallenstein, and associates Andrew Ellis and David Walchak.

***George A. Zelcs*** focuses his practice on complex commercial litigation including antitrust, consumer fraud, securities, qui tam/whistleblower, and pharmaceutical litigation in state and

federal courts. Mr. Zelcs has conducted bench and jury trials throughout the United States, including *Price et al. vs. Philip Morris USA, Inc.*, No. 001-0112 (Third Judicial Circuit, Illinois), a consumer fraud class action that resulted in a $10.1 billion dollar judgment. He frequently serves as lead counsel in complex, multi-party litigations. He currently serves on the leadership team representing digital publishers in *In re Google Digital Advertising Antitrust Litigation*, and previously represented the NCUA in its RMBS litigation. Mr. Zelcs also played an instrumental role in developing and litigating *In re Foreign Exchange Benchmark Rates Antitrust Litigation*, 13-cv-7789 (S.D.N.Y), a case that resulted in $2.3 billion in court-approved settlements. Mr. Zelcs completed his undergraduate degree at Indiana University in 1976 and received his law degree at Chicago-Kent College of Law. He serves on the Chicago-Kent Board of Overseers and as a Trustee for the Chicago-Kent Institute on the Supreme Court of the United States. In addition to serving as co-lead counsel for the publisher class in *In re Google Digital Advertising Antitrust Litigation*, Mr. Zelcs has been appointed co-lead counsel in *In re Motor Fuel Temperatures Sales Practices Litigation*, No. 07-md-1840 (D. Kan.), and *Axiom Investment Advisors LLC v. Barclay Bank Plc*, No. 15-cv-9323 (S.D.N.Y.).

**Carol O'Keefe** is a partner whose story of returning to the legal profession is recounted in the national bestseller, "That's What She Said: What Men and Women Need to Know About Working Together," by former USA Today Editor-in-Chief, Joanne Lipman. Ms. O'Keefe focuses on complex litigation, including representing antitrust plaintiffs in foreign exchange, commodity futures, and digital economy class actions. Ms. O'Keefe currently plays a leading role in representing digital publisher plaintiffs in *In re Google Digital Advertising Antitrust Litigation* and consumers in *In re Google Play Store Antitrust Litigation*. In these cases, Ms. O'Keefe has worked closely with economic and technology experts and taken numerous depositions of software

engineers and product managers. Prior to joining Korein Tillery, Ms. O'Keefe was an associate at Harter Secrest & Emery LLP, where she focused on complex litigation, including antitrust, securities, employment discrimination, and civil rights, and worked as an Adjunct Lecturer at the State University of New York at Brockport, where she designed and taught courses in modern constitutional law and education law. Ms. O'Keefe received her B.A. from Yale College *summa cum laude* in 1983 after three years of study, and she received her J.D. from Harvard Law School *cum laude* in 1986. She then served as a law clerk for Judge Michael A. Telesca (W.D.N.Y.).

*Marc Wallenstein* is a former federal prosecutor and has tried numerous cases to verdict. As an appellate advocate, Mr. Wallenstein is undefeated before the United States Court of Appeals for the Ninth Circuit, having won all ten of the appeals in which he served as lead counsel. Mr. Wallenstein currently leads two parallel class action lawsuits against Google on behalf of users of Android mobile phones in California and nationwide. He recently won class certification on behalf of the California class of approximately 13 million Android users, *Csupo v. Google*, No. 19-cv-352557 (Cal. Super. Ct.), and won an appeal before the Ninth Circuit on behalf of Android users nationwide, reversing the district court's dismissal of the complaint, *Taylor v. Google*, No. 22-16654 (9th Cir. Feb. 28, 2024). Mr. Wallenstein previously served as trial counsel for thousands of minor league baseball players who won the right to be paid minimum wage by Major League Baseball, achieving a landmark $185 million settlement on the eve of trial. *Senne v. Office of the Comm'r of Baseball*, No. 14-cv-608-JCS (N.D. Cal.). Before joining Korein Tillery, Mr. Wallenstein served for six years as Assistant U.S. Attorney in the District of Hawaii. Mr. Wallenstein successfully prosecuted the first terrorism case ever brought against an active duty member of the U.S. military and obtained record fines in numerous environmental cases. Prior to his time at the Department of Justice, Mr. Wallenstein served for

three years as a Prosecutor at the Office of the Chief Prosecutor of Military Commissions, U.S. Department of Defense. There he prosecuted violations of the law of war committed by enemy alien belligerents before a military commission in Guantanamo Bay, Cuba. Mr. Wallenstein served as an appellate and pretrial motions attorney on a range of cases, including the prosecution of Khalid Shaikh Mohammed and four others accused of perpetrating the attacks of September 11, 2001. Mr. Wallenstein is a graduate of Harvard College and Yale Law School, and previously served as a law clerk in the Southern District of New York and the Ninth Circuit Court of Appeals. In his spare time, he teaches a course in Trial Practice at Yale Law School.

**Andrew Ellis** is an associate in Korein Tillery's St. Louis office. Prior to joining Korein Tillery, Mr. Ellis worked as an associate at Jones Day. Mr. Ellis received his B.A. *magna cum laude* from the University of Missouri and his J.D. from Harvard Law School. During his time at Korein Tillery, Mr. Ellis has primarily worked on class action litigation related to digital platforms, including representing publisher plaintiffs in *In re Google Digital Advertising Antitrust Litigation*.

**David Walchak** is an associate in Korein Tillery's Chicago office, primarily working on antitrust class action litigation. Mr. Walchak took fact and expert depositions in *In re Google Play Store Antitrust Litigation*, and is currently part of the team representing a proposed class of purchasers bringing Sherman Act claims against leading hotel companies for information sharing in the luxury hotel market. *Segal v. Amadeus IT Group, S.A.*, No. 24-cv-1783 (N.D. Ill.). Prior to joining Korein Tillery, Mr. Walchak worked as a law clerk to Judge Susan L. Carney (2d Cir.) and Judge Roslynn R. Mauskopf (E.D.N.Y.), and as a litigation associate at Munger, Tolles & Olson. Mr. Walchak received his B.A. from Amherst College and his J.D. from Yale Law School.

### c. MoloLamken LLP

MoloLamken focuses exclusively on complex disputes and investigations for clients throughout the world. We represent plaintiffs and defendants before juries, judges, arbitral forums, and appellate courts, including the Supreme Court of the United States. Our founders, Steven Molo and Jeffrey Lamken, developed national reputations based on courtroom successes at large, full-service firms where they held leadership positions. We were formed on the premise that complex disputes are most effectively handled by smaller teams of talented, seasoned lawyers focused on results. We provide experienced advocacy at every step of the representation. All our associates have clerked for at least one, but more often two, judges before joining the firm, and many partners gained extensive courtroom experience in government. We are diverse and inclusive. More than forty percent of our lawyers come from backgrounds traditionally underrepresented in the legal profession. Four of the six members of our team mentioned below are from diverse backgrounds.

The firm and many of our lawyers are recognized in *Chambers and Partners*, *Legal 500*, *Super Lawyers*, *Benchmark Litigation*, *Lawdragon*, *Best Lawyers in America*, *Euromoney*, *Leading Attorneys*, *Washingtonian Magazine*, *U.S. News and World Reports*, and *Vault.com*. We are perennially short-listed for industry awards based on results. Among our recent recognitions, we were named the *National Law Journal*'s 2019 and 2020, Elite Trial Lawyers, Business Torts – Firm of the Year. *Benchmark Litigation* named MoloLamken a Top Litigation Boutique in 2023. And the firm was named to the *National Law Journal*'s Appellate Hot List in 2023. Our wins for plaintiffs over the last several years have been valued in excess of $7 billion. A hallmark of our work is collaboration. We often work with best-in-class substantive specialists to compliment the firm's advocacy skills. Substantially more than half of our matters involve collaboration with another firm—at the request of the client or of the firm.

We have deep experience prosecuting and defending class actions, including antitrust cases. We currently serve as part of the leadership for the direct purchaser class in an antitrust case against the world's largest provider of credit scores. *See In re FICO Antitrust Litig. Related Cases*, 2021 WL 4478042 (N.D. Ill. Sept. 30, 2021). In appointing MoloLamken, the presiding judge singled out the firm's "sterling reputation." *Id.* at *6. We served as lead counsel for objectors in the landmark case *In re NFL Players' Concussion Injury Litigation*, No. 12-md-2323 (E.D. Pa.), increasing the value of the settlement by more than $120 million. *Id.*, Dkt. 7366-1. We also recently won a $40 million jury verdict on behalf of a class in a federal securities fraud case after settling with other defendants for $14 million. *Gruber v. Gilbertson*, No. 16-cv-9727 (S.D.N.Y. 2022).

In addition to our experience in trial court matters, we have achieved significant victories for class-action plaintiffs on appeal.[11] We have also served as counsel in cases before the U.S. Supreme Court regarding the scope of Federal Rule of Civil Procedure 23 and antitrust law. *See Frank v. Gaos*, No. 17-961 (U.S.) (counsel for plaintiff class); *Apple v. Pepper*, No. 17-204 (U.S.) (counsel for amici Herbert Hovenkamp and other antitrust scholars).

On the defense side, we recently represented the nation's largest owner of residential real estate brokerage brands against multi-billion-dollar antitrust conspiracy claims. *See Burnett v. National Association of Realtors*, 19-cv-332 (W.D. Mo.) (MoloLamken's client reached a settlement before trial for $81 million; the jury then returned a $1.8 billion verdict against the remaining defendants before trebling). We also represent a defendant in a series of multi-billion-

---

[11] *See, e.g.*, *Shash v. Biogen, Inc.*, 84 F.4th 1 (1st Cir. 2023) (reversal in part of dismissal of securities fraud class action relating to misleading statements regarding clinical trial results for Alzheimer's drug); *Christine Asia Co. Ltd. v. Ma*, 718 F. App'x 20 (2d Cir. 2017) (reversal of dismissal of securities fraud claims against Alibaba group); *In re Vivendi, S.A. Litig.*, 838 F.3d 223 (2d Cir. 2016) (defense of nearly $50 million jury verdict in securities fraud suit).

dollar antitrust class and direct actions against chicken producers. *See In re Broiler Chicken Antitrust Litig.*, No. 16-cv-8637 (N.D. Ill.).

**Steven Molo** is one of nation's leading courtroom advocates—acting for both plaintiffs and defendants in class and non-class cases. *Chambers and Partners*, which ranks him in band one commercial litigation in New York, calls him "fantastic in the courtroom," a "fabulous courtroom litigator who lights up the room with his presence," "very bright, imaginative, and creative in his approach to problems," and "one of the most talented lawyers in [New York] city." He's one of 34 individuals named to their National Trial Lawyers listing; they say, "he's amazing in court," "a very creative trial lawyer with lots of charisma," who "brings a lot of credibility to a case."

*Benchmark Litigation*—which named him one of the top 100 Trial Lawyers in America— calls him "revered," "an outstanding advocate and fearless in court," who "delivers the goods." Legal 500 includes Mr. Molo on its elite list of Leading Trial Lawyers and calls him "a force to be reckoned with," "a rockstar litigator; a great lawyer," with "terrific knowledge of the courts and the law," who "really excels in the courtroom." It says he is "smart, creative, responsive, knowledgeable, and engaging; he has an excellent mix of traits that set him apart from his peers." For the past fourteen years he has been named to *Lawdragon*'s list of the 500 Leading Lawyers in America.

Mr. Molo has had extensive experience in class actions and antitrust cases. He leads MoloLamken's efforts in *FICO Antitrust Litigation*. *See* p. 24, *supra*. He also led MoloLamken in *NFL Players' Concussion Injury Litigation*, *Gruber*, and *Burnett*. *See* p. 24, *supra*. He argued *Marion HealthCare, LLC. v. Becton Dickinson & Co.*, 952 F.3d 832 (7th Cir. 2020), which

clarified the standard for direct-purchaser claims under *Illinois Brick*. In addition, Mr. Molo has represented clients in a wide variety of other high-stakes cases.[12] App'x 22-54, 57-61.

*Eric Posner* is counsel to MoloLamken and the Kirkland & Ellis Distinguished Service Professor of Law at the University of Chicago Law School and the Arthur and Esther Kane Research Chair. Mr. Posner is one of the nation's foremost experts on antitrust law and one of the most-cited living legal scholars. App'x 55. He recently served as Counsel to the Assistant Attorney General for the Antitrust Division of the Justice Department. *Id.* Mr. Posner is a prolific writer and has authored more than a dozen books and a hundred articles. He has also testified before Congress and the FTC regarding antitrust policy. Early in his career, he served as a law clerk to Judge Stephen F. Williams (D.C. Cir.). App'x 62, 71-99.

*Jordan Rice* is a partner in MoloLamken's Chicago office. According to *Chicago Lawyer*, clients have praised Mr. Rice's ability "to describe arcane nuances of the law" and "quickly and elegantly resolve[]" difficult legal questions. Mr. Rice has extensive experience in complex

---

[12] *See, e.g.*, *In re Revlon, Inc.*, No. 22-br-10760 (S.D.N.Y. Bankr.) (counsel for debtor-defendant in $880 million adversary proceeding; resulted in dismissal followed by settlement); *Red Tree Invs., LLC v. Petroleos de Venezuela, S.A.*, Nos. 19-cv-2519, 19-cv-2523 (S.D.N.Y.) (obtained judgments worth $280 million, with interest still accruing); *Contrarian Cap. Mgmt. v. Bolivarian Republic of Venezuela*, Nos. 19-cv-11018 *et al.* (S.D.N.Y.) (obtained judgments totaling approximately $600 million, with interest still accruing); *Representaciones e Investigaciones Medicas S.A. de C.V. v. Espinosa Abdala*, 655112/2016 (N.Y. Sup. Ct.) (plaintiff's counsel for global pharmaceutical company prosecuting $4 billion fraud and contract claims; resulted in settlement); *U.S. Bank v. DLJ Mortg. Cap., Inc.*, No. 65163/2013 (N.Y. Sup. Ct.) (plaintiff's counsel in this and other RMBS suits in which MoloLamken recovered over $1.4 billion); *In re Bank of N.Y. Mellon*, No. 150973/2016 (N.Y. Sup. Ct.) (represented investors in RMBS trusts in proceedings to determine distribution of a $9 billion settlement among classes of bondholders); *United States v. Silver*, No. 15-cr-93 (S.D.N.Y.) (defense counsel for former Speaker of the New York Assembly in a federal criminal jury trial on public-corruption charges); *see also* App'x 57-61.

litigation, including antitrust and class-action matters.[13] Prior to joining MoloLamken LLP, Mr. Rice served as a law clerk to Judge Amy J. St. Eve (N.D. Ill.), and Judge Albert Diaz (4th Cir). App'x 63-64.

***Jennifer Fischell*** is a partner in MoloLamken's D.C. and New York offices. Ms. Fischell's practice focuses on complex trial and appellate cases, including class actions, antitrust matters, and cases addressing telecommunications technologies.[14] Ms. Fischell served as a law clerk to Justice Elena Kagan of the U.S. Supreme Court, Judge Raymond Kethledge (6th Cir.), and Judge Ronnie Abrams (S.D.N.Y.). App'x 65-67.

***Jonathan Barbee*** is counsel to MoloLamken in its New York office. With a degree in electrical engineering, Mr. Barbee focuses on complex litigation involving high-tech companies.[15] He also has experience working with MDL litigation.[16] Mr. Barbee served as a law clerk to Judge Joseph A. Greenaway, Jr. (3d Cir.) and Judge Barbara S. Jones (S.D.N.Y.). App'x 68-69.

***Kayvon Ghayoumi*** is an associate in MoloLamken's Washington, D.C. office. Drawing on his technical background—Mr. Ghayoumi has a degree in chemistry—Mr. Ghayoumi has focused on high-stakes cases involving complex technology, including telecommunications technology.[17]

---

[13] *See, e.g.*, *Broiler Chicken Antitrust Litig.*, No. 16-cv-8637 (N.D. Ill.) (multi-billion-dollar antitrust class action); *Frank*, No. 17-961 (U.S.) (merits-stage case regarding scope of Rule 23); *Martinez v. ZoomInfo Technologies, Inc.*, No. 22-35305 (9th Cir.) (privacy class action).

[14] *See, e.g.*, *Marion HealthCare*, 952 F.3d 832 (successful appeal of dismissal of antitrust claims); *VirnetX Inc. v. Apple Inc.*, 792 F. App'x 796 (Fed. Cir. 2019) (telecom technology); *Ericsson Inc. v. Samsung Electronics Co., Ltd.*, No. 21-1565 (Fed. Cir.) (telecom technology).

[15] *See, e.g.*, *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, No. 10-cv-910 (E.D. Va.) (telecom technology); *Cal. Institute of Tech. v. Broadcom Ltd.*, No. 16-cv-3714 (C.D. Cal.) (same); *Netflix, Inc. v. DivX, LLC*, Nos. 22-1203, -1204 (Fed. Cir.) (video streaming technology); *Express Mobile, Inc. v. Amazon.com, Inc.*, No. 20-cv-8339 (N.D. Cal.) (website design technology).

[16] *Cnty. Bd. of Arlington Cnty. v. Mallinckrodt PLC*, No. 21-op-45078 (N.D. Ohio) (opioids MDL).

[17] *See Finesse Wireless LLC v. AT&T Mobility LLC*, No. 24-1039 (Fed. Cir.); *Telefonaktiebolaget LM Ericsson v. Lenovo (United States), Inc.*, No. 24-1515 (Fed. Cir.).

Prior to joining MoloLamken, Mr. Ghayoumi served as a law clerk to Judge Richard G. Taranto (Fed. Cir.). App'x 70.

### d. McElroy, Deutsch, Mulvaney & Carpenter, LLP

McElroy, Deutsch, Mulvaney & Carpenter, LLP is proposed liaison counsel in this action. McElroy, Deutsch, Mulvaney & Carpenter, LLP's litigation team will be led by partners Thomas R. Curtin and Kathleen N. Fennelly.

*Thomas R. Curtin* has practiced exclusively in New Jersey State Courts and the United States District Court for New Jersey in his 55 years as a member of the Bar. During that time, he has served as lead or local counsel in more than 60 cases in the District of New Jersey, and served as Chair of the Lawyers Advisory Committee for the District since 2009. Mr. Curtin was the President of the New Jersey State Bar Association from 1993 to 1994, and has served as the State Delegate from New Jersey to the American Bar Association and as a member of the Board of Governors of the American Bar Association. For his work in the District of New Jersey, Mr. Curtin has received the Association of the Federal Bar of New Jersey's Inaugural Simandle Award, the Lawyers Advisory Committee's Donald Robinson Meritorious Service Award, the Association of the Federal Bar of New Jersey's William J. Brenan, Jr. Award, the Association of the Federal Bar of New Jersey's Professionalism Award, the Judge John F. Gerry Award for Service to the Federal Court, and the New Jersey State Bar Foundation's Medal of Honor Award.

*Kathleen N. Fennelly* was admitted to the Bar of the State of New Jersey and the Federal District Court for the District of New Jersey in 1987. She is also admitted to practice before the United States Supreme Court, the United States Court of Appeals for the Third Circuit, and the United States Tax Court. She is a member of the American Bar Association, the Morris County Professionalism Committee and the Association of the Federal Bar of New Jersey. Ms. Fennelly

is currently the Past President of the New Jersey State Bar Foundation and was also the President of the Morris County Bar Association. She has received the Morris County Bar Association Civil Trial Practitioner Award, and the Morris County Bar Association Professionalism Award.

      **2.**   **Proposed Lead Apple Watch Counsel Has the Necessary Resources to Effectively Litigate the Apple Watch Claims**

Proposed Lead Apple Watch Counsel are well-versed in what it takes to prosecute large antitrust class action cases effectively and have the resources to do so. Proposed Lead Apple Watch Counsel will self-fund this case, strictly aligning their interests with the interests of Mr. Giamanco and the Apple Watch Direct Purchaser Class. Zelcs Decl. ¶ 12. Proposed Lead Apple Watch Counsel can and will dedicate the resources necessary to litigate these claims on behalf the Apple Watch Direct Purchaser Class zealously and efficiently throughout the lifecycle of this litigation.

   **C.**  **Proposed Lead Apple Watch Counsel Is Committed To Controlling Costs and Working Collaboratively with All Parties in This MDL**

Proposed Lead Apple Watch Counsel is committed to litigating these claims effectively and *efficiently*. Korein Tillery has the capability to run end-to-end e-discovery on its own internal servers, significantly reducing the cost and administrative burden associated with hosting and managing large document productions. Zelcs Decl. ¶ 13. To further control costs, Proposed Lead Apple Watch Counsel will closely monitor billings from attorneys and retained experts. Proposed Lead Apple Watch Counsel will require monthly reports of any billings—and more frequent reports if necessary—along with detailed time entries describing the work performed.

Proposed Lead Apple Watch Counsel will also conduct weekly check-ins with counsel for the iPhone plaintiffs, to ensure work is being conducted efficiently and without duplication of efforts. Having litigated a number of cases with counsel comprising the Majority Group, and having discussed their shared commitment to litigating the Apple Watch and iPhone claims in

close coordination, Proposed Lead Apple Watch Counsel is confident that these leadership teams will be able to efficiently litigate the Apple Watch and iPhone claims in a collaborative manner. Zelcs Decl. ¶¶ 6-9. And Proposed Lead Apple Watch Counsel is fully committed to the same cooperation with any other counsel the Court may appoint to represent the iPhone plaintiffs on an interim basis.

Finally, to ensure open lines of communication with all parties in this MDL, Proposed Lead Apple Watch Counsel will maintain recurring meetings every other week with counsel not appointed to the leadership structure. Proposed Lead Apple Watch Counsel will invite other counsel's input during these meetings and make itself available to discuss the litigation at any time outside these regularly scheduled meetings. Proposed Lead Apple Watch Counsel has substantial experience in managing multi-party and multi-district class action cases, and will insist on managing this case in collegial and cooperative manner with all parties in this MDL. In Proposed Lead Apple Watch Counsel's experience, maintaining such collegial relationships is the best way to ensure positive outcomes for all parties involved.

## **CONCLUSION**

The Apple Watch Direct Purchaser Class requires its own interim lead counsel. Given their deep experience, significant resources, and demonstrated dedication to advancing the Apple Watch claims, Proposed Lead Apple Watch Counsel submit they are best suited to serve that role. Proposed Lead Apple Watch Counsel therefore respectfully request that the Court enter an order appointing Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C., Korein Tillery LLC, and MoloLamken LLP as interim lead counsel for the proposed class of Apple Watch direct purchasers, and appointing McElroy, Deutsch, Mulvaney & Carpenter, LLP liaison counsel to the class. A Proposed Order is attached hereto as Exhibit B.

Dated: August 8, 2024

By: */s/ Thomas R. Curtin* _____

Thomas R. Curtin
MCELROY, DEUTSCH,
MULVANEY & CARPENTER, LLP
1300 Mount Kemble Avenue
Morristown, NJ 07962
Tel: (973) 993-8100
tcurtin@mdmc-law.com

*Attorney for Plaintiff Joseph Giamanco and*
*Proposed Apple Watch Direct Purchaser*
*Class*