**JAVERBAUM WURGAFT HICKS**
**KAHN WIKSTROM & SININS, P.C.**
1000 Haddonfield-Berlin Road, Suite 203
Voorhees, NJ 08043
Phone: 856.596.4100
BY: Stanley O. King
Attorney ID No.: 034131996
**Interim Liaison Counsel for Indirect iPhone Purchasers**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE: APPLE INC. SMARTPHONE ANTITRUST LITIGATION<br><br>*This Document Relates to:*<br><br>All Indirect iPhone Purchaser Cases | Civil Action No. 2:24-md-03113 (JXN)(LDW) |

**INDIRECT IPHONE PURCHASER PLAINTIFFS'**
**MEMORANDUM OF LAW IN SUPPORT OF**
**<u>APPOINTMENT OF AN EXECUTIVE COMMITTEE</u>**

Pursuant to the Court's Order dated October 17, 2024 (ECF No. 34), Interim Co-Lead Counsel Berger Montague PC, Lockridge Grindal Nauen PLLP, Schneider Wallace Cottrell Konecky LLP, and Spector Roseman & Kodroff, P.C. (collectively "Interim Co-Lead Counsel") submit this memorandum of law in support of their motion to appoint an executive committee of Cohen Milstein Sellers & Toll PLLC ("CMST"), Freed Kanner London & Millen LLC ("FKLM"), Israel David LLC ("Israel"), Preti, Flaherty,

Beliveau & Pachios, Chartered, LLP ("Preti"), and Reinhardt Wendorf & Blanchfield ("RWB") (collectively the "Executive Committee").

## I. INTRODUCTION

On October 17, 2024, the Court appointed Interim Co-Lead Counsel for the Indirect iPhone Purchasers ("IIPs") in this litigation and ordered IIPs to "submit supplementary briefing to provide the Court with further details regarding the necessity for, along with the duties and responsibilities of, the proposed executive committee." *In re Apple Inc. Smartphone Antitrust Litig.*, 2024 U.S. Dist. LEXIS 188896, *28 (D.N.J. Oct. 17, 2024).

The Executive Committee proposed by Co-Lead Counsel has the support of all IIPs and their counsel as the result of counsel's efforts to reach a consensus agreement about the best leadership structure for the IIP class. As explained below, appointment of the Executive Committee is an efficient approach to meet the vast needs of this indirect purchaser litigation, which concerns tens of millions of class members and the laws of over thirty states. The Executive Committee will perform work only at the request of, and subject to the direction of, Co-Lead Counsel pursuant to the time and billing protocols. *See* ECF No. 18-4. Additionally, Co-Lead Counsel will utilize the resources of the Executive Committee in a targeted way. Executive Committee firms will be assigned to specific projects directed at key initiatives as this litigation proceeds.

Consequently, the appointment of the IIP Executive Committee will promote the efficient prosecution of the case and benefit the IIP class.

## II. BACKGROUND

Co-Lead Counsel propose to work with an Executive Committee consisting of CMST, FKLM, Israel, Preti, and RWB. Each of CMST, FKLM, Israel, Preti, and RWB have attorneys whom Interim Co-Lead Counsel have identified as capable of making valuable contributions to the proposed IIP class. *See* ECF No. 18-1 at 25-26 (Daniel H. Silverman, CMST); 27-28 (Kimberly Justice, FLKM); 33 (Israel David, Israel) 32 (Michael S. Smith, Preti); 30 (Garrett Blanchfield, RWB).

Co-Lead Counsel have noted their intention to "assign such work to particular attorneys or firms among the Proposed Interim Co-Lead Counsel or the Executive Committee, or to additional indirect purchaser plaintiffs' counsel as appropriate given the needs of the case at that time." ECF No. 18-1 at 37. This approach, which has been adopted and successfully implemented in many significant antitrust cases, *see, e.g.*, ECF No. 18-1 at 9-10, 17, 21, 30-31 (identifying antitrust cases in which courts appointed executive committees in addition to lead counsel), is consistent with Co-Lead Counsel's plan to efficiently manage this litigation.

Rule 23(g)(1)(B) provides Interim Co-Lead Counsel the ability to delegate

tasks to other attorneys to help serve the needs of class action litigation. *Lindquist v. NCB Mgmt. Servs.*, 2023 U.S. Dist. LEXIS 100386, *10 (E.D. Pa. June 5, 2023) (ordering lead counsel to include executive committee in "use of specific, task-oriented, work assignments"). Interim Co-Lead Counsel propose to employ the Executive Committee firms for targeted tasks that match their strengths with the needs of the case. For instance, Executive Committee members will likely have significant responsibility for the following tasks, subject to the oversight of Co-Lead Counsel:

- **Plaintiff discovery.** Document collection and production, preparing for and defending depositions, and assisting in trial strategy for testimony of IIP for potentially dozens of class representatives.

- **Third-party discovery.** Subpoenas to third-party retailers who sell iPhones to IIP class members, including phone carriers like AT&T, Verizon, and T-Mobile, and retailers like Best Buy and Walmart. This may involve meet and confers regarding the production of structured sales data and other documents, and depositions.

- **Government liaison.** Outreach to, and communication and coordination with, government antitrust enforcers (the U.S. Department of Justice and state attorneys general).

- **Briefing and legal research.** There may be discrete research or briefing assignments related to motion practice, such as a motion to dismiss or class certification.

- **Work with experts.** Work with economic and potentially other experts in developing their expert reports and testimony.

The proposed Executive Committee (like all IIP counsel) will be subject to the time and billing protocol developed by Interim Co-Lead Counsel, to ensure

efficacy and avoid duplication of efforts. *See* ECF No. 18-4.

## III. ARGUMENT

Co-Lead Counsel have the resources to litigate this action without the assistance of other lawyers. However, given the needs of the case, empowering Interim Co-Lead Counsel with the authority to utilize a formal Executive Committee will promote the efficient litigation of this case.

Courts appoint executive committees when class action litigation, as here, concerns millions of potential class members and numerous state laws. *See In re Lipitor Antitrust Litig.*, No. 312CV2389PGSDEA, 2020 WL 5642175, at *2, *4 (D.N.J. Sept. 22, 2020) (interim co-lead counsel and six-member executive committee appointed in case involving indirect purchasers and state laws); *see also Owens v. MGM Resorts Int'l*, 2024 U.S. Dist. LEXIS 191355, *21-22 (D. Nev. Oct. 21, 2024) ("[S]teering committee will provide support to interim co-counsel, maximize efficiency of the litigation, and supply added diversity in leadership" in case "involving plaintiffs from numerous states and millions of potential class members."); *In re Data Breach Sec. Litig. Against Caesars Ent., Inc.*, 2024 U.S. Dist. LEXIS 104130, *24 (D. Nev. June 12, 2024) (appointing steering committee citing "multiplicity of suits, complexity of claims, and diversity of the plaintiffs").

Courts also appoint executive committees to accomplish discrete tasks

delegated to them by lead counsel, as it is typical in complex litigation such as this for there to be many tasks needing attention at any given time. Indeed, the Manual for Complex Litigation encourages the appointment of committees for this very reason: "The court or lead counsel may task committees with preparing briefs or conducting portions of the discovery program if one lawyer cannot do so adequately." Manual for Complex Litigation (Fourth) § 10.221 (2004)). There is no lost efficiency when this occurs; deploying additional attorney resources, either within Co-Lead Counsel firms or at Executive Committee firms, does not change the fact that at times, the case will be busier and additional attorney work is needed.

Although, as the Court observed (ECF No. 34 at 7-8), the Manual also notes that "Committees are most commonly needed when group members' interests and positions are sufficiently dissimilar" (§ 10.221), that is neither a mandate nor a prerequisite.[1] Even in cases without such concerns, there is utility of an experienced executive committee working at the direction of lead counsel.

    A. <u>Co-Lead Counsel Will Use the Executive Committee to Maximize the Benefit to The Class.</u>

        1. <u>Co-Lead Counsel Will Deploy Executive Committee Resources</u>

---

[1] While some courts have cited this provision of the Manual to reject an executive committee in class action litigation, they have usually done that where the litigation is "straightforward." *See, e.g.*, *In re Amazon Return Pol'y Litig.*, 2024 U.S. Dist. LEXIS 30916, *11 (W.D. Wash Feb. 22, 2024).

to Specific Projects.

Co-Lead Counsel have outlined above the specific tasks they would assign the Executive Committee. Pursuant to the Manual, numerous courts in this Circuit have appointed executive committees to accomplish assigned tasks when it would be efficient. *See* § 10.221 ("The court or lead counsel may task committees with preparing briefs or conducting portions of the discovery program..."); *In re Lipitor Antitrust Litig.*, 2020 WL 5642175 at *4 (appointing executive committee member specifically to "advis[e] on California consumer issues"); *Lindquist v. NCB Mgmt. Servs., Inc.*, No. CV 23-1236, 2023 WL 3914287, at *3 (E.D. Pa. June 5, 2023) (appointing four members to steering committee and ordering that co-lead counsel may "direct[]" and "delegate specific tasks to the Plaintiffs' Steering Committee in a manner to ensure that pretrial preparation for Plaintiffs…is conducted efficiently and effectively"); *In re Shop-Vac Mktg. & Sales Pracs. Litig.*, No. 4:12-MD-2380, 2013 WL 183855, at *4 (M.D. Pa. Jan. 17, 2013) (appointing seven firms to executive committee authorized to "perform any other function assigned by interim class counsel").

Here, Co-Lead Counsel will utilize the Executive Committee in exactly this way, delegating tasks at various stages of the litigation where it would be efficient. For example, as described in more detail above, Executive Committee personnel will work with Co-Lead Counsel on projects such as plaintiff

discovery, third-party discovery, liaising with government enforcers, legal research and briefing, and development of expert testimony.

In fact, Co-Lead Counsel have already leveraged the proposed Executive Committee firms to assist with certain projects related to the forthcoming consolidated complaint, including work with potential class representatives and discrete research assignments. This work will benefit the class and has been performed efficiently and effectively.

2. <u>The Needs of this Litigation Favor Appointment of an Executive Committee for IIPs.</u>

This class action litigation concerns dozens of states' laws and tens of millions of potential class members. Due to the complexity and scope of this class action, appointment of an Executive Committee is prudent.

Most iPhones are purchased indirectly, through telecommunications carriers such as AT&T or at retail outlets such as Best Buy. IIPs will ultimately need to prove that they paid supracompetitive prices for the iPhones they purchased from those third parties. The potential for third-party discovery involving downstream distribution, through third-party sellers to IIP class members, is an additional layer of complexity involved only in the IIPs' case.

Additionally, because state antitrust laws provide the only damages remedies for indirect purchases, there are over thirty states' laws implicated in this antitrust litigation. *See Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977).

That means there may be dozens of class representatives and legal issues briefed under the law of over thirty states, necessitating additional work unique to the IIPs' case. Courts have concluded that such litigation can support the appointment of an executive committee. *See Mack v. LLR, Inc.*, 2018 U.S. Dist. LEXIS 229666, *15 (C.D. Cal. Jan. 31, 2018) (noting the claims concerned laws of California, Texas, New Jersey, Ohio, and Oregon and agreeing that "the proposed Executive Committee members here all serve an important role in navigating any differences due to jurisdiction, location, and law").

### 3. Executive Committee Appointments Will Provide Additional Perspectives.

The Manual also instructs that "[i]ncluding plaintiffs' attorneys with different perspectives and experience in lead or liaison counsel or as committee members can be helpful." § 22.62; *see also In re Lipitor Antitrust Litig.*, 2020 WL 5739151 at *4 ("More diversity and a fresh approach may broaden the perspective of the Interim Co-Lead Counsel," noting that the "four Interim Lead Counsel" and "six-member executive committee" provided a "diverse and broader management structure"). The Executive Committee includes geographically diverse firms, firms of different sizes, and varied practice backgrounds to provide additional perspectives in this important litigation.

Each of the Executive Committee firms are accomplished, and the attorneys with primary responsibility for this litigation at each firm have

strengths and experience that will supplement the leadership team working on behalf of the proposed class. *See* ECF No. 18-1 at 25-26 (Daniel Silverman, CMST); 27-28 (Kimberly Justice, FLKM); 30 (Garrett Blanchfield, RWB); 32 (Michael Smith, Preti); 33 (Israel David, Israel).

The members of the proposed Executive Committee will provide Interim Co-Lead Counsel with input from a diverse group of attorneys with "a broad range of experiences, background, and perspectives to their tasks." *See* James F. Humphreys Complex Litigation Center, George Washington Law School, *Inclusivity and Excellence: Guidelines and Best Practices for Judges Appointing Lawyers to Leadership Positions in MDL and Class-Action Litigation* (Mar. 15, 2021). This is particularly important where, as here, there are many class members "and the class is likely to be diverse itself." *See Granata v. Pratt & Whitney*, No. 3:21-CV-01657 (SVN), 2022 WL 732271, at *5 (D. Conn. Mar. 11, 2022).

## IV.   CONCLUSION

The Court should appoint CMST, FKLM, RWB, Preti, and Israel as the Executive Committee to help prosecute this litigation.

Dated: October 31, 2024

Respectfully submitted,

**JAVERBAUM WURGAFT HICKS KAHN WIKSTROM & SININS, P.C.**

BY: /s/ *Stanley O. King*
**STANLEY O. KING, ESQ.**
231 S. Broad Street
Woodbury, NJ 08096
Tel: 856.845.3001
Fax: 856.845.3079
Stanley O. King
Attorney ID No. 03413-1996

*Proposed Liaison Counsel for Plaintiffs*

/s/ *Michael Dell'Angelo*
Michael Dell'Angelo (*pro hac vice*)
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
mdellangelo@bm.net

/s/ *Heidi M. Silton*
Heidi M. Silton
Jessica N. Servais
Joseph C. Bourne
**LOCKRIDGE GRINDAL NAUEN PLLP**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Tel: (612) 339-6900
hmsilton@locklaw.com
jnservais@locklaw.com
jcbourne@locklaw.com

/s/ Matthew S. Weiler
Matthew S. Weiler (to file *pro hac vice*)
Todd M. Schneider (to file *pro hac vice*)
Jason H. Kim (to file *pro hac vice*)
Mahzad K. Hite (to file *pro hac vice*)
Raymond S. Levine (to file *pro hac vice*)
**SCHNEIDER WALLACE COTTRELL KONECKY LLP**
2000 Powell Street, Suite 1400
Emeryville, CA 94608
Tel: (415) 421-7100
mweiler@schneiderwallace.com

/s/ William G. Caldes
William G. Caldes (SBN 00062-1995)
Jeffrey L. Spector (SBN 03375-2007)
Cary Zhang (SBN 37948-2021)
**SPECTOR ROSEMAN & KODROFF, P.C.**
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Tel: (215) 496-0300
bcaldes@srkattorneys.com
jspector@srkattorneys.com
czhang@srkattorneys.com

*Proposed Interim Co-Lead Counsel*