James E. Cecchi, Esq.
CARELLA, BYRNE, CECCHI
BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973) 994-1700
jcecchi@carellabyrne.com

[Additional counsel appear on signature page]

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE: APPLE INC. SMARTPHONE ANTITRUST LITIGATION<br><br>*This Document Relates to:*<br><br>DIRECT PURCHASER ACTIONS | Civil Action No. 2:24-md-03113<br><br>(JXN)(LDW) MDL 3113 |

**DIRECT IPHONE PURCHASER GROUP 1'S**
**SUPPLEMENTAL LEADERSHIP SUBMISSION**

# TABLE OF CONTENTS

**TITLE** **PAGE**

TABLE OF AUTHORITIES ...................................................................................................... ii

I. INTRODUCTION .............................................................................................................1

II. BACKGROUND ...............................................................................................................3

III. ARGUMENT ....................................................................................................................4

    A. Executive Committees Are Appropriate in large MDLs ........................................5

    B. The Particular Demands of This Case Warrant an Executive Committee ............6

    C. The Members of DIP Group 1 Will Have Specific Responsibilities .....................8

# TABLE OF AUTHORITIES

**Cases**                                                                                                                     **Page(s)**

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
   240 F.R.D. 56 (E.D.N.Y. 2006) .................................................................................................5

*In re Apple Inc. Device Performance Litig.*,
   2018 WL 11360203 (N.D. Cal. May 15, 2018) ......................................................................6, 9

*In re Juul Labs, Inc., Mktg., Sales Practices, and Prods. Liab. Litig.*,
   No. 3:19-md-02931-WHO (N.D. Cal.), ECF No. 381 ................................................................3

*In re Lipitor Antitrust Litig.*,
   2020 WL 5642175 (D.N.J. Sept. 22, 2020) ................................................................................6

*In re Meta Pixel Healthcare Litig.*,
   2022 WL 18399978 (N.D. Cal. Dec. 21, 2022) ......................................................................5, 6

*Owens v. MGM Resorts Int'l*,
   2024 WL 4544787 (D. Nev. Oct. 21, 2024) ...............................................................................5

**Other Authorities**

Manual for Complex Litigation (Fourth) (2004) .......................................................4, 5, 7, 8

William B. Rubenstein, *3 Newberg & Rubenstein on Class Actions*, (6th ed. 2024) ..................5, 8

**I.     INTRODUCTION**

Consistent with this Court's Order (ECF No. 34) and Magistrate Judge Wettre's Text Order (ECF No. 42), the Direct iPhone Purchaser Group 1 ("DIP Group 1") respectfully submits this supplemental memorandum providing a revised leadership proposal and supporting the appointment of an executive committee.

There is no question that there are many talented lawyers before the Court, many of whom have successfully litigated antitrust and consumer cases across the country. But success is not synonymous with leadership, particularly in a large national MDL. Leadership is defined by building consensus and inspiring lawyers to sublimate ego for the greater good of the whole. It is only through leadership that a diverse multi-firm group of lawyers can function as a unified whole and maximize benefits for the class.

DIP Group 1 has consistently demonstrated our leadership from the inception of the case and, in fact, built consensus across every firm. It was our intention to submit a single consensus proposal to the Court. After organizing that consensus proposal, and without any prefatory discussions, one firm chose a different path, defected from the consensus proposal, and brought other lawyers into the case for the sole purpose of buttressing their chances of appointment. That is the opposite of consensus building and leadership. It is telling that not one of the firms that supports DIP Group 1's proposal chose to support them.

Despite the significant work that went into building our original consensus proposal, and despite the unfortunate delay caused by competing applications, we are still willing to lead and to build consensus. As will be detailed below, we have revised our proposal in a manner that integrates into the case leadership every single firm from DIP Group 2. We do so because we believe that achieving consensus now is in the Plaintiffs' best interests and reflects the kind of leadership the MDL deserves.

1

It is imperative that we begin interfacing with the Government plaintiffs and move the private DIP case forward efficiently.

Our new proposal adds most of DIP Group 2's firms while maintaining an efficient structure. For Co-Lead Counsel, we propose adding Susman Godfrey to form a five-firm group consisting of James Cecchi of Carella Byrne, Chris Seeger of Seeger Weiss, Steve Berman of Hagens Berman, Dena Sharp of Girard Sharp, and Shawn Rabin from Susman Godfrey. In addition, we propose drawing on the experience of two esteemed counsel and their local firms from Group 2: Michael Critchley Sr. of Critchley, Kinum & Luria as Trial Counsel, and either Joseph DePalma or Bruce Greenberg of Lite DePalma Greenberg & Afanador as Liaison Counsel. Mr. Critchley is a renowned trial attorney, and his addition would complement the skills of the other experienced trial lawyers in Group 1. The addition of Mr. DePalma or Mr. Greenberg as Liaison Counsel is also sensible, given their firm's decades-long track record in class cases in this district (as well as Mr. Greenberg's appellate skills).

Our Executive Committee, as revised, would add an attorney from the Hausfeld firm to DIP Group 1's proposed structure. As reflected below, appointment of an Executive Committee is warranted because it will ensure that Co-Lead Counsel have access to the legal talent and substantial resources this case will likely require, while promoting efficiency, economy, and cooperation, and reducing the risk of fractious or redundant litigation efforts.

Finally, the lawyers who were initially proposed to sit on Group 1's proposed Plaintiffs' Steering Committee have each agreed to withdraw their applications in the interest of streamlining Group 1's proposal and achieving consensus. We propose that the Court afford Co-Lead Counsel the authority to draw upon these firms for particular non-duplicative, discrete projects, should the case warrant it, under the direction and oversight of Co-Lead Counsel.

To ensure efficiency and avoid duplication we would propose a timekeeping protocol that tracks protocols entered in other multidistrict cases. It includes common-sense controls including: (1) periodic submission of time and expenses (to be audited by a CPA or third party neutral in coordination with Co-Lead Counsel); (2) detailed recording requirements, including sufficiently detailed descriptions of work performed; (3) a prohibition on unauthorized, duplicative, or excessive time, or time unnecessarily spent by a senior attorney; and (4) appropriate limitation on travel reimbursements. *See, e.g.*, Amended Case Management Order No. 5: Common Benefit Order—Timekeeping and Expenses Protocol, *In re Juul Labs, Inc., Mktg., Sales Practices, and Prods. Liab. Litig.*, No. 3:19-md-02931-WHO (N.D. Cal.), ECF No. 381. Separately, as set forth in Exhibit A, and consistent with this Court's October 17 Order, our proposal assigns each executive committee member to a substantive committee tailored to their experience, with specific Co-Lead Counsel assigned to oversee work performed by the committees to avoid inefficiencies that may result from siloing.

In summary, our revised structure, which notably includes a role for each of the four firms from Group 2, would consist of 13 firms. This is a manageable and appropriate structure for a case of this magnitude and size. We hope that the Group 2 firms will agree to this proposal and that it will meet with the Court's approval, leading to a positive outcome for all involved.

## II.   BACKGROUND

On August 8, 2024, we, along with a separate group of direct iPhone purchasers ("DIP Group 2"), moved for appointment as interim Co-Lead Counsel. ECF Nos. 17, 19. Separately, two groups of lawyers moved for appointment as interim class counsel on behalf of indirect iPhone purchasers ("IIP Group"), and on behalf of direct purchasers of Apple watches ("DAWP Group"). ECF Nos. 18, 20. On October 17, 2024, this Court appointed the IIP Group and DAWP as interim class counsel for their respective classes, but encouraged DIP Groups 1 and 2 to meet and confer and propose a modified

3

leadership structure that is inclusive of attorneys from the respective groups. ECF No. 35. The Court then set an in-person case management conference for October 30, 2024 before Magistrate Judge Leda D. Wettre to seek to resolve the leadership issue without further briefing. ECF No. 36. Since the Court's October 17 Order, up to and through the October 30th case management conference, DIP Groups 1 and 2 have had many discussions to resolve their differences, but have been unable to reach consensus.

As to the proposals before the Court, DIP Group 1 notes that, from the moment the MDL was formed through today, members of DIP Group 1 undertook the time-consuming and essential task of attempting to achieve through private ordering a consensus-based leadership proposal that enjoyed the support of all Plaintiffs' Counsel. While DIP Group 1 believed we had reached an agreement consisting of a five-firm co-lead structure with an Executive Committee and a Steering Committee that would be presented to the Court on a consensus basis, ultimately one previous member of DIP Group 1 instead formed DIP Group 2 and proceeded separately. DIP Group 1 notes that its proposal still enjoys the support of nearly all Plaintiffs' Counsel in the MDL, including the recently appointed IIP and DAWP Groups.

III. ARGUMENT

Appointment of an Executive Committee in addition to Co-Lead and Liaison counsel is warranted here. This case is massive in magnitude, centering on one of the world's most popular products, produced and sold by one of the world's most well-capitalized companies. The case involves highly specialized technological ecosystems, and raises specialized and difficult antitrust law issues. It also includes four parallel private and government cases that need coordination. *See* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 10.21 (2004) ("Greater demands on counsel also arise from the following: [1] the amounts of money or importance of issues at stake; and [2] the difficulties of having to communicate and establish effective working relationships with numerous attorneys"). Managing

4

this case will require a deep bench with specialized experience relevant to the issues that can be flexibly applied as the case progresses. As discussed below, proposed Co-Lead Counsel will ensure that work is performed efficiently and economically by applying proven tools regularly used by lead counsel in various MDLs to efficiently handle similarly complex cases—adoption of a time and expense protocol with strict guidelines regarding compensable time and expenses, and formation of substantive committees at the outset of the case to ensure each member of the leadership group is able to contribute in areas tailored to their respective strengths.

### A. Executive Committees Are Appropriate in Large MDLs

While the MANUAL FOR COMPLEX LITIGATION notes that committees are often needed when group members' interests and positions are "dissimilar," the "most important" consideration is "efficiency and economy" without jeopardizing fairness to the parties. MANUAL FOR COMPLEX LITIGATION (FOURTH) § 10.221 (2004). As a result, in the most significant cases around the country, which "demand a deep bench and substantial resources," and which involve "many discrete topics that may be parceled out," committees serve the interests of ensuring that the class receives robust and tailored representation with an eye toward efficiency and economy. *In re Meta Pixel Healthcare Litig.*, 2022 WL 18399978, at *3 (N.D. Cal. Dec. 21, 2022) (approving three firm executive committee). Committees "provide support to interim co-counsel, maximize efficiency of the litigation, and supply added diversity in leadership." *Owens v. MGM Resorts Int'l*, 2024 WL 4544787 (D. Nev. Oct. 21, 2024); *In re Air Cargo Shipping Servs. Antitrust Litig.*, 240 F.R.D. 56, 57 (E.D.N.Y. 2006) (describing appointment of interim lead counsel as "essential for efficient case management"); MANUAL FOR COMPLEX LITIGATION (FOURTH) § 10.22 (counsel so designated "assume a responsibility to the court and an obligation to act fairly, efficiently, and economically in the interests of all parties and parties' counsel."); *see also* William B. Rubenstein, *3 Newberg & Rubenstein on Class Actions*, § 10.9 (6th ed.

5

2024) ("In larger cases, particularly multidistrict litigations, a court may need a more elaborate leadership structure for both the plaintiff and defendant side of the case. Cases may include lead counsel, liaison counsel, trial counsel, steering committees, coordinating committees, management committees, executive committees, etc.").

For these reasons, courts routinely approve of committee structures in large antitrust cases and MDLs, even those involving one or only a handful of defendants. *See, e.g.*, *In re Lipitor Antitrust Litig.*, 2020 WL 5642175 (D.N.J. Sept. 22, 2020) (six member executive committee); *In re Apple Inc. Device Performance Litig.*, 2018 WL 11360203, at *1-2 (N.D. Cal. May 15, 2018) ("the Court is persuaded to adopt the proposed [Executive Committee] structure based on counsels' representations that it will be in the best interests of the plaintiffs and provide the requisite cost savings"). For a case that is of sufficient magnitude, a committee may be appropriate even if its group members have similar interests so that the committee can flexibly respond to the needs of the case. *See Meta Pixel Healthcare Litig.*, 2022 WL 18399978, at *3 (appointing executive committee even though the "cases raise similar claims and remain single-defendant matters"). In these instances, the burden falls on lead counsel to ensure efficiency and "delegate appropriately and carefully monitor and approve time records to avoid duplication of work product or unnecessary billing." *Id.*

### B. The Particular Demands of This Case Warrant an Executive Committee

Proposed Co-Lead Counsel for DIP Group 1 do not always or reflexively support appointment of an executive committee. It depends on the needs of the case. In this case, there is a need. At least three considerations have led proposed Co-Lead Counsel to this conclusion.

First, this is a historic case of truly massive proportions. It concerns the alleged monopolization of a product that has come to define modern life—the smartphone—and one of the most well-resourced defendants in the world. This case poses an existential threat to Apple, and Apple can be expected to

deploy an enormous war chest and an army of lawyers to defend these claims. While the proposed Co-Leads for Group 1 are well-resourced firms, given the nature and stakes of this case, the proposed class will benefit from an even deeper pool of resources that can be drawn from as needs arise in the litigation. *See* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 10.21 (2004) ("[C]omplex litigation places greater demands on counsel in their dual roles as advocates and officers of the court. The complexity of legal and factual issues makes judges especially dependent on the assistance of counsel."). The proposed Executive Committee serves this purpose, ensuring that, whatever twists and turns the litigation takes, the proposed class will have the resources, expertise, and person-power to match Apple. While the resources of the Executive Committee are valuable to the proposed class, as addressed above, proposed Co-Lead Counsel commits to use them judiciously and only as needed to maximize efficiencies.

Second, this case is multifaceted, involving four parallel actions, and involves a web of distinct but interrelated alleged anticompetitive conduct. Plaintiffs, for example, assert that Apple imposed several technological restraints that impede cross-platform competition, including restrictions on "super apps," cloud streaming games, messaging apps, smartwatches, and digital wallets. Mastering the operation of these diverse restrictions and the underlying technologies is a significant undertaking that underlies every other litigation effort in the case. And Plaintiffs start at a disadvantage given Apple's operating knowledge of its own technologies. That the Court convened a technology tutorial before deciding Apple's motion to dismiss the government action confirms deep technological understanding that will be needed to prosecute Plaintiffs' claims. Having an Executive Committee in place helps ensure the requisite resources are available to the class.

Third, coordination with the government enforcers and the two other private plaintiff groups participating in this MDL will also be required. The Court benefits from effective case coordination, as do all parties. But as Co-Lead Counsel know from experience, effective case coordination—particularly

7

with the government—takes time and dedicated resources. An Executive Committee can assist with these efforts to help ensure that this litigation is efficiently prosecuted.

### C. The Members of DIP Group 1 Will Have Specific Responsibilities

Each member of DIP Group 1 will have specific, discrete and non-duplicative responsibilities, subject to the needs of the class and the case. Plaintiffs' Co-Lead Counsel will be responsible for managing the case and presenting positions on substantive and procedural issues to the Court in the case. MANUAL FOR COMPLEX LITIGATION (FOURTH) § 10.222 (2004). Trial counsel will oversee the trial team. *Id*.; *see also* William B. Rubenstein, *3 Newberg & Rubenstein on Class Actions*, § 10.9 (6th ed. 2024) ("Trial Counsel will be specially appointed, particularly if Lead Counsel is busy coordinating a series of simultaneous activities; in that circumstance, having an appointed counsel focused on trial can facilitate efficient trial preparation."). Liaison counsel will ensure the case proceeds following local practice and serve as a vehicle for communication between the Court and all counsel. *Id*. As is common in multidistrict litigations like this one, as is set out in Exhibit A, each member of the proposed executive committee will be assigned to a distinct substantive committee, overseen by a member of Proposed Co-Lead Counsel. The committees will be assigned to non-duplicative categories of work: (1) law and briefing; (2) science and technology; (3) experts; (4) discovery (including discovery coordination); (5) trial; and (6) settlement.[1] *See* William B. Rubenstein, *3 Newberg & Rubenstein on Class Actions* , § 10.9 (6th ed. 2024) ("Similarly, committees may be appointed to oversee discovery or other discrete projects").

---

[1] Separately, to ensure the next generation of MDL lawyers has an opportunity to develop, committee members will be required to include young, diverse lawyers who will be assigned non-duplicative and appropriate tasks under the supervision of seasoned lawyers with MDL experience, all subject to the proposed time and expense protocol.

8

Co-Lead Counsel will thus ensure the Executive Committee works efficiently and cost-effectively. *See Apple Device Performance Litig.*, 2018 WL 11360203, at *1 (approving Executive Committee with similar framework).

DATED: November 8, 2024

Respectfully submitted,

By: *James E. Cecchi*
James E. Cecchi
**CARELLA BYRNE CECCHI BRODY & AGNELLO, PC**
5 Becker Farm Road
Roseland, NJ 07068
Tel: 973-994-1700
Email: jcecchi@carellabyrne.com

Steven W. Berman
**HAGENS BERMAN SOBOL SHAPIRO, LLP**
1301 Second Avenue
Suite 2000
Seattle, WA 98101
Tel: 206-623-7292
Email: steve@hbsslaw.com

Dena Sharp
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Tel: 415-981-4800
Email: dsharp@girardsharp.com

Christopher A. Seeger
**SEEGER WEISS, LLP**
55 Challenger Road
Ridgefield Park, NJ 07660
Tel: 973-639-9100
Email: cseeger@seegerweiss.com

*Proposed Co-Lead Interim Counsel*

Linda P. Nussbaum
**NUSSBAUM LAW GROUP, PC**
1133 Avenue of the Americas,
31st Floor
New York, NY 10036
Tel: 917-438-9189
Email: lnussbaum@nussbaumpc.com

Karin B. Swope
**COTCHETT, PITRE & MCCARTHY, LLP**
999 N. Northlake Way, Suite 215
Seattle, WA 98103
Tel: 206 802-1272
Email: kswope@cpmlegal.com

Joseph H. Meltzer
**KESSLER TOPAZ MELTZER & CHECK, LLP**
280 King of Prussia Road
Radnor, PA 19087
Tel: 610-667-7706
Email: jmeltzer@ktmc.com

Hae Sung Nam
**KAPLAN FOX & KILSHEIMER LLP**
800 Third Avenue
38th Floor
New York, NY 10022
Tel: 212-687-1980
Email: hnam@kaplanfox.com

Peter A. Barile III
**LOWEY DANNENBERG, PC**
44 South Broadway, Suite 1100
White Plains, NY 10601
Tel: 914-997-0500
Email: pbarile@lowey.com

Daniel J. Nordin
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 S. Sixth Street, Suite 2600
Minneapolis, MN 55402
Tel: 612-333-8844
dnordin@gustafsongluek.com

Mark J. Dearman
**ROBBINS GELLER RUDMAN & DOWD LLP**
225 NE Mizner Boulevard, Suite 720
Boca Raton, FL 33432
Telephone: 561-750-3000
Email: mdearman@rgrdlaw.com

*Proposed Executive Committee*