# CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO, P.C.

### COUNSELLORS AT LAW

---

| | | | | |
|---|---|---|---|---|
| JAN ALAN BRODY<br>JOHN M. AGNELLO<br>CHARLES M. CARELLA<br>JAMES E. CECCHI<br><br>CHARLES C. CARELLA<br>1933 – 2023 | DONALD F. MICELI<br>CARL R. WOODWARD, III<br>MELISSA E. FLAX<br>DAVID G. GILFILLAN<br>G. GLENNON TROUBLEFIELD<br>BRIAN H. FENLON<br>CAROLINE F. BARTLETT<br>ZACHARY S. BOWER+<br>DONALD A. ECKLUND<br>CHRISTOPHER H. WESTRICK*<br>STEPHEN R. DANEK<br>MICHAEL A. INNES<br>MEGAN A. NATALE<br>KEVIN G. COOPER | **5 BECKER FARM ROAD**<br>**ROSELAND, N.J. 07068-1739**<br>PHONE (973) 994-1700<br>FAX (973) 994-1744<br>www.carellabyrne.com | PETER G. STEWART<br>FRANCIS C. HAND<br>JAMES A. O'BRIEN, III<br>JOHN G. ESMERADO<br>STEVEN G. TYSON<br>MATTHEW J. CERES<br>ZACHARY A. JACOBS***<br>JASON H. ALPERSTEIN<br><br>OF COUNSEL<br><br>*CERTIFIED BY THE SUPREME COURT OF<br>NEW JERSEY AS A CIVIL TRIAL ATTORNEY<br>***MEMBER IL BAR ONLY<br>+MEMBER FL BAR ONLY | RAYMOND J. LILLIE<br>GREGORY G. MAROTTA<br>MARYSSA P. GEIST<br>JORDAN M. STEELE<br>BRITTNEY M. MASTRANGELO<br>GRANT Y. LEE***<br>MAYBOL HALL<br>WILLIAM J. MANORY |

August 22, 2025

**By ECF**

Hon. Julien Xavier Neals, U.S.D.J.
U.S. District Court
Martin Luther King Bldg.
& U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07102

   Re: *In re: Apple Inc. Smartphone Antitrust Litigation*,
     <u>Civil Action No. 2:24-md-03113</u>

Dear Judge Neals:

  My colleagues and I variously represent Direct Purchaser Plaintiffs ("DPP"), Indirect Purchaser Plaintiffs ("IPP"), and Direct Apple Watch Plaintiffs ("DAWP") in the above-referenced action. On the following six pages are the positions of each track in response to Defendant Apple, Inc.'s ("Apple") Pre-Motion Letter of August 15, 2025.

  We thank Your Honor for your continued attention to this matter.

         Respectfully submitted,

         CARELLA, BYRNE, CECCHI,
         BRODY & AGNELLO, P.C.

         */s/ James E. Cecchi*
         JAMES E. CECCHI

cc: Counsel of Record

**Direct Purchaser Plaintiffs' Position**

Apple claims not to repeat arguments that it made and lost in its motion to dismiss the complaint filed by the Department of Justice and various states (collectively, "Regulators"). That is not true. Its very first argument is that the Direct Purchaser Plaintiffs ("DPPs") fail to plead adequately a relevant market. However, the DPPs pled the ***exact same relevant markets*** as the Regulators: Smartphones and Performance Smartphones sold in the United States. ECF 87 ¶¶ 207-21. This Court held that this market definition was adequately pled, as were allegations that Apple willfully acquired and maintained monopoly power within that market. *United States v. Apple, Inc.*, 2025 WL 1829127, at **5-11 (D.N.J. June 30, 2025). That ruling is the law of the case and should not be revisited here. *See Atkinson v. Luitpold Pharmaceuticals, Inc.*, 2020 WL 4518022, at *5 (E.D. Pa. Aug. 6, 2020) (noting that this doctrine applied to claims previously adjudicated by the same court in a related case).[1]

Apple's other main argument is that the DPPs lack antitrust standing and Article III injury because many of the "pillars" of misconduct alleged in their complaint concern iPhone app developers rather than iPhone customers.

To begin with, that is simply not true. The DPP complaint, using language parallel to the Regulators' complaint, alleges that: (a) the suppression of super apps harms Apple smartphone users; (b) the suppression of cloud streaming games "harms users by denying them the ability to play high-compute games"; (c) Apple knowingly degrades "quality, privacy, and security" for messaging app users, (d) "Apple has denied users access to high performing smartwatches"; and (e) "Apple has denied users access to digital wallets that would have provided a wide variety of enhanced features." ECF 87 ¶ 10.

It is true that the DPP complaint alleges that some of these practices can also harm app developers, but that does not mean iPhone consumers lack antitrust or Article III standing. Such an argument completely ignores the United States Supreme Court's ruling in *Apple, Inc. v. Pepper*, 587 U.S. 273 (2019), which goes unmentioned in Apple's letter.

In that case, consumers filed an antitrust class action against Apple, alleging that it monopolized and attempted to monopolize the market for iPhone apps. Apple contended, as it does here, that the consumers lacked standing and antitrust injury because the real victims of the alleged conduct were app developers.

The Supreme Court rejected "Apple's theory" as "contradict[ing] statutory text and precedent." 587 U.S. at 281. The Court noted that iPhone users were not consumers at the bottom of a vertical distribution chain who were attempting to sue manufacturers at the top of the chain. "There is no intermediary in the distribution chain between Apple and the consumer. The iPhone owners purchase apps directly from the retailer Apple, who is the alleged antitrust violator. The

---

[1] Here, Apple relies heavily on the Third Circuit's decision in *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430 (3d Cir. 1997). The court there found that the plaintiffs' proposed market definition was the product of franchisees' contractual obligations with the franchisor rather than a distinct market for antitrust analysis. That is not the situation here. *Queen City* has been distinguished on this ground. *In re Mercedes-Benz Anti-Trust Litig.*, 157 F. Supp. 2d 355, 361-62 (D.N.J. 2001).

iPhone owners pay the alleged overcharge directly to Apple." *Id*. at 281. The Court further noted that iPhone consumers and iPhone developers are ***injured in different ways and have different theories of harm***. The consumers can sue Apple under a monopoly theory for overcharges, while the developers can sue Apple under a monopsony theory for lost profits. *Id*. at 287. As the Supreme Court said, "[b]asic antitrust law tells us that the mere fact that an antitrust violation produces two different classes of victims hardly entails that their injuries are duplicative of one another." *Id*. at 297 (internal quotations omitted). That is true here.

Apple's final argument against the DPPs is that their claim under California's Unfair Competition Law ("UCL") is derivative of their federal antitrust claims and does not allege "unfair" conduct. Apple is flatly wrong on both counts. In *Epic Games v. Apple, Inc*., 67 F. 4th 946 (9th Cir. 2023), another case Apple fails to cite, the court said that there is no precedent holding "that, when a federal antitrust claim suffers from a proof deficiency, rather than a categorical legal bar, the conduct underlying the antitrust claim cannot be deemed unfair pursuant to the UCL." *Id*. at 1001.

A business practice may be deemed unfair, and therefore illegal under the UCL, "even if not specifically proscribed by some other law." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). This unfairness prong is "intentionally framed in its broad, sweeping language, precisely to enable judicial tribunals to deal with the innumerable 'new schemes which the fertility of man's invention would contrive.'" *Id. See Epic*, 67 F.4th at 1000. With respect to consumer claims, California courts typically utilize a balancing test, which "weigh[s] the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Progressive W. Ins. Co. v. Super. Ct.*, 135 Cal. App. 4th 263, 285 (2005) (citation omitted). *See Epic*, 67 F. 4th at 1000. The DPPs readily satisfy this extremely liberal standard.[2]

---

[2] Apple also contends that DPPs fail to allege an inadequate legal remedy, citing *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). *Sonner* has "minimal application at the pleading stage," *Rabin v. Google LLC*, 725 F. Supp. 3d 1028, 1032 (N.D. Cal. 2024), and does not impose a magic-words requirement. DPPs allege the need for equitable relief, including restitution and an injunction, to fully remedy Apple's misconduct because "Apple has been unjustly enriched" and "[t]he illegal conduct alleged herein is continuing and there is no indication that Apple will not continue such activity into the future." ECF 87 ¶ 293-94; *see also Weizman v. Talkspace, Inc.*, 705 F. Supp. 3d 984, 990 and n.3 (N.D. Cal. 2023) (parties asserting UCL claim do not need to "explain in great detail why [their] legal remedies are insufficient").

**Indirect Purchaser Plaintiffs' Position**

1. **IPPs Adequately Plead Relevant Markets**

Like DPPs, IPPs allege the same relevant markets as the Regulators. ECF 85 ¶¶ 15, 204. As such, IPPs incorporate by reference DPPs' arguments that the Court has already resolved this issue. IPPs further note that defining a relevant market requires a fact-intensive analysis that is typically inappropriate for resolution at the motion to dismiss stage. *Lifewatch Servs. Inc. v. Highmark Inc.*, 902 F.3d 323, 337 (3d Cir. 2018).

IPPs do not seek damages for purchases in any "aftermarket," or for monopolization of a separate downstream market, but allege that Apple maintained its iPhone monopoly by making the iPhone incompatible with applications that could operate on the iPhone. These allegations demonstrate monopolization of the relevant market. *See United States v. Microsoft*, 253 F.3d 34, 54, 60 (D.C. Cir. 2001) (Microsoft, like Apple here, manipulated the "middleware" market to protect its operating system monopoly).

2. **IPPs Establish Antitrust and Article III Standing[3]**

Apple lobs identical standing arguments at both DPPs and IPPs. In the interest of efficiency, IPPs incorporate DPPs' discussion by reference. IPPs further note that "the existence of an 'antitrust injury' is not typically resolved through motions to dismiss." *Brader v. Allegheny Gen. Hosp.*, 64 F.3d 869, 876 (3d Cir. 1995).

Apple claims that IPPs lack antitrust and Article III standing because the conduct at issue is primarily aimed at developers.[4] As discussed by DPPs, such an argument completely ignores the United States Supreme Court's ruling in *Pepper*, 587 U.S. 273 (2019).[5] In addition to *Pepper*, this Court can look to the states for guidance on this issue. States that have enacted *Illinois Brick* repealer laws have found that predatory monopolies that "lock in" consumers to dominant technologies may be liable for claims that consumers pay inflated prices for the incumbent technology—most notably in state law decisions arising out of Microsoft's operating system monopoly. *See, e.g.*, *Olson v. Microsoft Corp.*, 2001 ML 652, 23 (Dist. Ct. Mont. Feb. 15, 2001) (indirect purchasers have standing under Montana law to pursue damages claims for Microsoft's

---

[3] While most of its arguments are flawed, one of the few things about which Apple is correct is that antitrust standing "entails a more demanding" standard than Article III standing. ECF 95 at 2. Because, as discussed *infra*, IPPs have antitrust standing, they have Article III standing as well.

[4] Apple attempts to shield its exclusionary conduct in developer-related markets, claiming it is protected by the refusal to deal doctrine. ECF 95 at 3 n.1. But this Court has already concluded that the refusal to deal doctrine is inapplicable to the Regulator's exclusionary conduct allegations, which are strikingly similar to IPPs'. *See Apple*, 2025 WL 1829127, at *11-12. There is no reason for the Court to revisit its well-reasoned analysis.

[5] Apple also argues IPPs' causal chain is too far from its alleged anticompetitive conduct. Yet, courts have found antitrust standing in cases that involved far more complex chains of causation. *See, e.g.*, *In re Auto. Parts Antitrust Litig.*, 50 F. Supp. 3d 836, 855 (E.D. Mich. 2014); *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1154 (N.D. Cal. 2009).

conduct that "increased the price of its Windows operating systems above the competitive price"); *Sherwood v. Microsoft Corp.*, 2003 WL 21780975, at *25 (Tenn. Ct. App. July 31, 2003) (allowing damages claims for Tennessee indirect purchasers); *Comes v. Microsoft Corp.*, 646 N.W.2d 440, 447 (Iowa 2002) (allowing damages claims for Iowa indirect purchasers).

Last, Apple contends that IPPs lack standing because their "theory of the case relies on…quantify[ing] damages in a hypothetical world." ECF 95 at 4. But antitrust plaintiffs routinely rely on expert evidence of what would have occurred in the hypothetical but-for world. *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 292 (3d Cir. 2012) ("[A]n expert may construct a reasonable offense-free world" to determine "what, hypothetically, would have happened 'but for' the defendant's unlawful activities."); *Castro v. Sanofi Pasteur Inc.*, 134 F. Supp. 3d 820, 848 (D.N.J. 2015) ("Experts may attempt to create a but-for world devoid of the anticompetitive conduct.").[6]

### 3. IPPs' State Law Claims Are Adequately Pled

Apple also makes conclusory arguments about "numerous problems" concerning IPPs' "various" state law claims. ECF 95 at 5. But Apple only discusses one claim under Alabama law. Further, Apple's argument regarding IPPs' Alabama law claim ignores that plaintiffs "have sufficiently pled intrastate activity where [as here] they allege nationwide antitrust violations, the antitrust impact of which was felt within each state." *Blue Cross & Blue Shield of Vt. v. Teva Pharm. Indus., Ltd.*, 712 F. Supp. 3d 499, 548 (D. Vt. 2024); *Sherwood*, 2003 WL 21780975, at *25 (rejecting Microsoft's argument that interstate monopolization lacked intrastate effects).

Likewise, Apple ignores case law sustaining multi-state and nationwide unjust enrichment claims at the pleadings stage. *See In re Generic Pharms. Pricing Antitrust Litig.*, 368 F. Supp. 3d 814, 849-51 (E.D. Pa. 2019); *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.*, 336 F. Supp. 3d 1256, 1346 (D. Kan. 2018); *Benson v. Newell Brands, Inc.*, 2020 WL 1863296, at *5 (N.D. Ill. Apr. 14, 2020). Similarly, Apple's assertion that there is no cause of action for common law monopolization under California law (ECF 95 at 5) is simply wrong. *See In re Cipro Cases I & II*, 61 Cal. 4th 116, 117 (2015) (acknowledging "the common law prohibition against monopolies").[7] IPPs are confident that any other purported "deficiencies" that Apple asserts pervade IPPs' properly pled state claims are similarly baseless.

---

[6] Apple's suggestion that carrier discounts eliminate IPPs' injury misunderstands IPPs' allegations and is wholly speculative. ECF 95 at 4 n.2. IPPs allege that Apple's restrictions artificially elevate iPhone base prices and preserve supracompetitive margins exceeding 30 percent. ECF 85 ¶ 37. Discounts from carriers do not cure supracompetitive pricing. *See, e.g.*, *In re Nexium Antitrust Litig.*, 777 F.3d 9, 27-28 (1st Cir. 2015) (discussing well-established overcharge methodology even if plaintiff "offsets an overcharge through later savings attributable to the same or related transaction"). Further, Apple has no support for its claim that reduced demand for iPhones would lead to higher carrier prices. Indeed, to the extent that wireless carriers do discount iPhones to indirect purchasers, in a but-for world, these discounts would be based on lower headline iPhone prices. This would imply even lower iPhone prices for indirect purchasers, not higher.

[7] Apple cites *In re Intel Corp. Microprocessor Antitrust Litig.*, 496 F. Supp. 2d 404, 419 (D. Del. 2007), but *Intel* was decided before the California Supreme Court's *Cipro* decision.

**Direct Apple Watch Plaintiffs' Position**

Watch Plaintiffs allege Apple exploited its dominant position as to the iPhone to monopolize the market for smartwatches that connect to the iPhone. Dkt. 86 ¶¶1-3. Apple's anticompetitive acts have harmed consumers and stifled competition. By forcing third parties to agree to its Developer Program License Agreement (DPLA), Apple blocks competitors from offering basic features and prevents third parties from developing fully functional smartwatch apps. *Id.* ¶¶38-113. Apple also redesigns the iPhone operating system (iOS) to degrade other smartwatches, harming iPhone users with non-Apple smartwatches. *Id.* ¶¶131-87. Apple's strategy has worked. Since Apple entered the market, several competitors exited and others declined to enter. *Id.* ¶189. This has enabled Apple to charge supracompetitive prices for Apple Watches. *Id.* ¶¶192-94.

### A. Market Definition

Watch Plaintiffs adequately plead a product market for iOS-connected smartwatches or, alternatively, for smartwatches. Dkt. 86 ¶¶197-220. Apple attacks the iOS-connected smartwatch market as a "disfavored" single-brand market, and cites inapposite cases. Ltr.2. But Apple ignores the allegations of iOS-connected smartwatch brand competitors including Garmin and others (like Pebble) that Apple forced out of the market, and it ignores the alternative market. Dkt. 86 ¶189. Regardless, the Supreme Court has long held "one brand of a product can constitute a [relevant] market" when paired with allegations like those made here. *Eastman Kodak Co. v. Image Tech. Servs.*, 504 U.S. 451, 482 (1992); *see also United States v. Microsoft Corp.*, 253 F.3d 34, 52-54 (D.C. Cir. 2001) (affirming market for "Intel-compatible PC operating systems" that excluded Apple MacOS and middleware, where Microsoft Windows had a 95% share). Whether one brand is a market can be determined "only after a factual inquiry into the 'commercial realities'"—which requires discovery. *Kodak*, 504 U.S. at 482. So, "courts typically decline to dismiss antitrust claims based on failure to plead the relevant market." *Apple*, 2025 WL 1829127, at *6.

### B. Anticompetitive Conduct

Apple acquired and maintains its monopoly over smartwatches through anticompetitive contracts and technological restrictions and degradations. Dkt. 86 ¶¶38-187. Apple requires third-party app developers, including competitor smartwatch manufacturers, to enter the DPLA—which requires functional and technical limits on apps, and broad control by Apple, *id.* ¶¶38-130—in order to list apps on the Apple App Store. *Id.* ¶40. Apple can compel third-party developers to enter the DPLA because, without App Store access, developers cannot offer apps that connect smartwatches to the iPhone at all. *Id.* ¶¶47-48. Apple also engaged in exclusionary practices by degrading competitor smartwatches' connectivity with the iPhone. *Id.* ¶¶131-87.

As in its failed opposition to DOJ's motion to dismiss, Apple argues that an exclusionary-conduct claim should be evaluated with a "refusal-to-deal framework [that only] applies to narrow situations." *Chase Mfg., Inc. v. Johns Manville Corp.*, 84 F.4th 1157, 1173 (10th Cir. 2023); *see* Ltr.5-6. But Apple ignores the many allegations to which that framework does not apply. For example, the DPLA prohibits developers from offering or marketing certain functionalities for rival smartwatches. Dkt. 86 ¶¶53-130. Blocking third parties from providing inputs to competitors is textbook exclusive dealing. *See, e.g., Lorain Journal Co. v. United States*, 342 U.S. 143 (1951); *United States v. Dentsply Int'l, Inc.*, 399 F.3d 181, 185-87 (3d Cir. 2005). And refusal-to-deal

does not apply to conduct that imposes restrictions on third parties or consumers. *Apple*, 2025 WL 1829127, at *11-12; *see, e.g.*, Dkt. 86 ¶¶41, 45, 97-99. Finally, the refusal-to-deal doctrine does not apply to allegations that Apple "affirmatively interfer[es] with [rivals'] business activities in the marketplace." *Novell, Inc. v. Microsoft Corp.*, 731 F.3d 1064, 1076 (10th Cir. 2013); *Apple*, 2025 WL 1829127, at *11-12; *see, e.g.*, Dkt. 86 ¶¶58-63, 68-80. Apple's degradations are similar to those in *Microsoft*, 253 F.3d at 64, where Microsoft used technological means to undermine companies offering alternative browsers on Windows. "Refusal to deal doctrine ... doesn't seek to displace" a *Microsoft*-type §2 claim. *Novell*, 731 F.3d at 1076.

In any event, a refusal to deal can be a §2 violation. *See Verizon Commc'ns Inc. v. L. Offs. of Curtis V. Trinko, LLP*, 540 U.S. 398, 408 (2004). A defendant's unilateral termination of a prior voluntary course of dealing and sacrifice of short-term profits can make a refusal to deal impermissible. *See id.* at 409; *see, e.g.*, *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 463 (7th Cir. 2020); *Duke Energy Carolinas, LLC v. NTE Carolinas II, LLC*, 111 F.4th 337, 364-66 (4th Cir. 2024). Watch Plaintiffs allege that here: Apple initially allowed rival smartwatches to connect to the iPhone, then subsequently degraded connectivity once rivals gained market share. *See, e.g.*, Dkt. 86 ¶¶31, 126, 158. None of Apple's cases involved that conduct.

Apple's challenge to Watch Plaintiffs' Section 1 and Cartwright Act claims also fails. Watch Plaintiffs adequately plead a rule-of-reason case, as explained above. And, as Apple acknowledges, Ltr.6, horizontal agreements to restrain trade—like the DPLA to which Apple and rival smartwatch makers are parties, Dkt. 86 ¶45—are *per se* illegal. Whether or not Apple could have achieved its business goals through unilateral conduct, it chose to require competitors to enter a contract restricting their ability to offer competing smartwatch features.

C.   **Standing**

Apple's challenge to Watch Plaintiffs' antitrust and Article III standing, Ltr.6, is misplaced. Watch Plaintiffs allege causation by describing how Apple's restrictions undermine competition. Dkt. 86 ¶¶44, 243. Watch Plaintiffs allege that, because of Apple's anticompetitive practices, they have paid supracompetitive prices. *Id.* ¶¶192-94, 243. That is more than sufficient. *See Osborn v. Visa Inc.*, 797 F.3d 1057, 1064-65, 1069 (D.C. Cir. 2015). And Apple has maintained its monopoly by excluding rivals. *See, e.g.*, *Blue Shield of Va. v. McCready*, 457 U.S. 465, 471, 482-83 (1982). The *Trinko* concurrence that Apple invokes is not binding and inapposite; it involved a "derivative" injury to plaintiffs who bought from the victim (AT&T), not the defendant (Verizon). 540 U.S. at 417. Watch Plaintiffs, by contrast, bought directly from Apple.

D.   **UCL Claim**

Watch Plaintiffs' UCL claim does not rise or fall with their other claims. Ltr.4-6. *Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 375 (2001), "d[id] not hold that ... an 'unfair' business act or practice must violate an antitrust law." *See also, e.g.*, *Epic Games, Inc. v. Apple Inc.*, 559 F. Supp. 3d 898, 1055-56 (N.D. Cal. 2021) (violation of UCL's "unfair" prong despite no antitrust violation). Watch Plaintiffs allege separately actionable "unfair" conduct. *See, e.g.*, Dkt. 86 ¶294. And *Sonner*, which addressed amendment right before trial, does not establish a heightened pleading standard. 971 F.3d at 841-44. But Watch Plaintiffs satisfied any such standard by praying for "appropriate" relief "available" under the UCL. Dkt. 86 ¶301.

Dated: August 22, 2025                              Respectfully Submitted,

                                                    /s/ James E. Cecchi

| | |
|---|---|
| William Christopher Carmody | James E. Cecchi |
| Shawn J. Rabin | CARELLA BYRNE CECCHI |
| SUSMAN GODFREY LLP | BRODY & AGNELLO, PC |
| One Manhattan West, 50th Floor | 5 Becker Farm Road |
| New York, NY 10001-8602 | Roseland, NJ 07068 |
| Tel: (212) 336-8330 | Tel: 973-994-1700 |
| Email: bcarmody@susmangodfrey.com | Email: jcecchi@carellabyrne.com |
| Email: srabin@susmangodfrey.com | |
| | |
| Christopher A. Seeger | Steven W. Berman |
| SEEGER WEISS, LLP | HAGENS BERMAN SOBOL SHAPIRO, LLP |
| 55 Challenger Road | 1301 Second Avenue |
| Ridgefield Park, NJ 07660 | Suite 2000 |
| Tel: 973-639-9100 | Seattle, WA 98101 |
| Email: cseeger@seegerweiss.com | Tel: 206-623-7292 |
| | Email: steve@hbsslaw.com |
| | |
| Dena Sharp | Melinda R. Coolidge |
| GIRARD SHARP LLP | HAUSFELD LLP |
| 601 California Street, Suite 1400 | 888 16th Street, NW Suite 300 |
| San Francisco, CA 94108 | Washington, DC 20006 |
| Tel: 415-981-4800 | Tel: (202) 540-7200 |
| Email: dsharp@girardsharp.com | Email: mcoolidge@hausfeld.com |

*Co-Lead Interim Class Counsel for Direct Purchasers' Track*

| | |
|---|---|
| Joseph J. DePalma | Michael Critchley Sr. |
| LITE DEPALMA GREENBERG & AFANADOR, LLC | CRITCHLEY, KINUM & LURIA, LLC |
| 570 Broad Street, Suite 1201 | 75 Livingston Avenue |
| Newark, NJ 07102 | Roseland, New Jersey 07068 |
| Tel: (973) 623-3000 | Tel: (973) 422-9200 |
| Email: jdepalma@litedepalma.com | Email: mcritchley@critchleylaw.com |

*Liaison Counsel for Direct Purchasers' Track*    *Trial Counsel/Direct Purchasers' Track*

/s/ Stanley O. King
Stanley O. King, Esq.
JAVERBAUM WURGAFT HICKS
KAHN WIKSTROM & SININS, P.C.
231 S. Broad Street
Woodbury, NJ 08096
Tel: 856.845.3001
Fax: 856.845.3079
Stanley O. King
Attorney ID No. 03413-1996

*Liaison Counsel for Indirect iPhone Purchaser Plaintiffs*

| | |
|---|---|
| Michael Dell'Angelo<br>Candice J. Enders<br>BERGER MONTAGUE PC<br>1818 Market Street, Suite 3600<br>Philadelphia, PA 19103<br>Tel: (215) 875-3000<br>mdellangelo@bm.net<br>cenders@bm.net | Heidi M. Silton<br>Jessica N. Servais<br>Joseph C. Bourne<br>LOCKRIDGE GRINDAL NAUEN PLLP<br>100 Washington Avenue South, Suite 2200<br>Minneapolis, MN 55401<br>Tel: (612) 339-6900<br>hmsilton@locklaw.com<br>jnservais@locklaw.com<br>jcbourne@locklaw.com |
| Matthew S. Weiler<br>Todd M. Schneider<br>Jason H. Kim<br>Mahzad K. Hite<br>Raymond S. Levine<br>SCHNEIDER WALLACE COTTRELL KONECKY LLP<br>2000 Powell Street, Suite 1400<br>Emeryville, CA 94608<br>Tel: (415) 421-7100<br>mweiler@schneiderwallace.com | William G. Caldes<br>Jeffrey L. Spector<br>Rachel E. Kopp<br>SPECTOR ROSEMAN & KODROFF, P.C.<br>2001 Market Street, Suite 3420<br>Philadelphia, PA 19103<br>Tel: (215) 496-0300<br>bcaldes@srkattorneys.com<br>jspector@srkattorneys.com<br>rkopp@srkattorneys.com |

*Interim Co-Lead Counsel for Indirect iPhone Purchaser Plaintiffs*

| | |
|---|---|
| David C. Frederick<br>Aaron M. Panner<br>Alex A. Parkinson<br>Scott K. Attaway<br>Ariela Migdal<br>Katherine V. Tondrowski<br>KELLOGG, HANSEN, TODD<br>FIGEL & FREDERICK, P.L.L.C.<br>1615 M Street NW, Suite 400<br>Washington, DC 20036<br>Tel.: (202) 326-7900 | /s/ *Thomas R. Curtin*<br>Thomas R. Curtin<br>Kathleen N. Fennelly<br>MCELROY, DEUTSCH,<br>MULVANEY & CARPENTER, LLP<br>1300 Mount Kemble Avenue<br>Morristown, NJ 07962<br>Tel: (973) 993-8100<br>tcurtin@mdmc-law.com<br><br>*Liaison Counsel for the Proposed Apple Watch Direct Purchaser Class* |
| George A. Zelcs<br>Daniel Epstein<br>David Walchak<br>KOREIN TILLERY LLC<br>205 N. Michigan Avenue, Suite 1950<br>Chicago, IL 60601<br>Tel.: (312) 641-9750 | Steven F. Molo<br>Lauren F. Dayton<br>MOLOLAMKEN LLP<br>430 Park Avenue<br>New York, NY 10022<br>Tel.: (212) 607-8160 |
| Stephen M. Tillery<br>Carol O'Keefe<br>KOREIN TILLERY LLC<br>505 N. 7th Street, Suite 3600<br>St. Louis, MO 63101<br>Tel.: (314) 241-4844 | Eric A. Posner<br>MOLOLAMKEN LLP<br>300 N. LaSalle Street<br>Chicago, IL 60601<br>Tel.: (312) 450-6700<br><br>Kayvon M. Ghayoumi<br>Caroline A. Veniero<br>MOLOLAMKEN LLP<br>600 New Hampshire Avenue, N.W.<br>Washington, DC 20037<br>Tel.: (202) 556-2000 |

*Attorneys for Plaintiff Joseph Giamanco and Interim Co-Lead Counsel for the Proposed Apple Watch Direct Purchaser Class*