**WALSH PIZZI O'REILLY FALANGA**

**THREE GATEWAY CENTER**
100 Mulberry Street, 15th Floor
Newark, NJ 07102

T: 973.757.1100
F: 973.757.1090

**WALSH.LAW**

Liza M. Walsh
Direct Dial: (973) 757-1100
lwalsh@walsh.law

September 5, 2025

**VIA ECF**
Honorable Julien X. Neals, U.S.D.J.
Honorable Leda Dunn Wettre, U.S.M.J.
United States District Court
Martin Luther King Federal Building
50 Walnut Street
Newark, New Jersey 07102

Re:   *In re Apple Inc. Smartphone Antitrust Litigation*, No. 2:24-md-03113-JXN-LDW

Dear Judge Neals and Judge Wettre:

This firm, together with Gibson, Dunn & Crutcher LLP, represents Defendant Apple Inc. ("Apple") in the above-referenced action. We write jointly on behalf of Apple and all Plaintiffs in response to the Court's August 15, 2025 text order (ECF No. 93) to submit this joint agenda in advance of the initial case management conference currently set for September 16, 2025.

**Joint Agenda**:

  I.   Apple's Anticipated Motion to Dismiss
       a. Schedule
       b. Page Limits and Structure
  II.  Case Schedule
  III. Discovery Coordination
       a. Discovery Coordination Agreements
       b. Supplemental Watch Case Discovery
  IV.  Discovery Confidentiality Order
       a. Data Security
  V.   ESI Protocol
       a. Redactions for Certain Unannounced Non-iPhone Hardware Products
       b. Collection and Production of Hyperlinked Documents
       c. Logging Communications with Outside Counsel
       d. Confidentiality Metadata Field

After extensive meet-and-confer discussions, the parties have reached agreement on a number of issues, including almost all provisions of a proposed Discovery Confidentiality Order and ESI Protocol based on the Discovery Confidentiality Order and ESI Protocol entered in *United States v. Apple Inc.*, No. 2:24-cv-04055 ("Government Action"), ECF No. 235 (Discovery Confidentiality Order) and No. 264 (ESI Protocol), with limited modifications. Despite the

Honorable Julien X. Neals, U.S.D.J.
Honorable Leda Dunn Wettre, U.S.M.J.
September 5, 2025
Page 2

parties' best efforts, a few topics remain in dispute while the parties continue to meet and confer on other issues. Below, the parties identify disagreements where the Court's direction would assist in resolution, and also update the Court on agreements they have reached.

## I. Apple's Anticipated Motion to Dismiss

### A. Schedule

Subject to the Court's approval, the parties have agreed upon the following briefing schedule for Apple's anticipated motion to dismiss:

1. Apple's motion to dismiss will be filed by October 6, 2025;
2. Plaintiffs' opposition brief(s) will be filed by November 20, 2025; and
3. Apple's reply brief in support of its motion to dismiss will be filed by December 19, 2025.

### B. Page Limits and Structure

Subject to the Court's approval, the parties have agreed upon the following page limits and structure for Apple's anticipated motion to dismiss:

1. Apple will file one consolidated brief in support of a motion to dismiss all three consolidated amended class action complaints filed by the three Plaintiff groups (Direct iPhone Purchasers, Indirect iPhone Purchasers, and Watch Purchaser) of not more than **90 pages** in 14-point proportional font.
2. Plaintiffs may file one or more briefs in opposition, totaling not more than **90 pages** in 14-point proportional font, which Plaintiffs may divide among the three plaintiff groups at their discretion.
3. Apple will file one consolidated reply brief in support of its motion to dismiss of not more than **45 pages** in 14-point proportional font.

## II. Case Schedule

The parties have agreed on the following dates to govern fact discovery in this action and coordinate to the maximum extent possible with the Government Action, which they will submit in a stipulation for the Court's approval:

- <u>Mutual exchange of initial disclosures</u>: September 23, 2025
- <u>Initial productions</u>: Apple to make rolling productions of documents produced to the Government, including documents produced during the Government's pre-suit investigation, as soon as feasible following entry of the Discovery Confidentiality Order in this action
- <u>Deadline to amend pleadings or add parties</u>: 14 days after Apple's motion(s) to dismiss under Fed. R. Civ. P. 12 is decided
- <u>Substantial completion of productions responsive to requests served at least 60 days in

Honorable Julien X. Neals, U.S.D.J.
Honorable Leda Dunn Wettre, U.S.M.J.
September 5, 2025
Page 3

- advance of deadline: The same as the deadline applicable in the Government Action, subject to any changes to that schedule ordered by the Court to accommodate the volume and demands of discovery in the two actions
- Earliest date to serve contention interrogatories: 30 days before the close of fact discovery unless otherwise permitted by the Court
- Close of fact discovery: The same as the deadline applicable in the Government Action, subject to any changes to that schedule ordered by the Court to accommodate the volume and demands of discovery in the two actions
- Last day to respond to contention interrogatories: 14 days after the close of fact discovery; if a response to a contention interrogatory or portion thereof calls for expert opinions to be addressed in expert discovery, the parties may respond to that contention interrogatory or portion thereof 14 days after the close of expert discovery

The parties will continue to meet and confer regarding a schedule governing expert discovery, class certification, and other deadlines and will submit a proposal for those deadlines for the Court's consideration. Plaintiffs request that the Court order the parties to propose schedules to each other for all remaining deadlines by September 18, 2025, and to submit an agreed-upon schedule and/or any disputes related to such schedule to the Court by October 9, 2025, to avoid unnecessary delay.

One final scheduling issue to note is that Plaintiff Kyle T. Whiteside has filed a motion to remand in the matter *Whiteside, et al. v. Apple Inc.*, No. 2:24-cv-9658, seeking to remand his claims to California state court. The Indirect iPhone Purchaser Plaintiffs will address the issues raised in the *Whiteside* motion in a short letter filed prior to the September 16 conference, and will be prepared to address the issues raised with the Court on September 16. Apple maintains that there is no need for further submissions given that the motion is fully briefed.

### III. Discovery Coordination

 A. Discovery Coordination Agreements

The parties are negotiating protocols to coordinate discovery between this action and the Government Action and have agreed to the following:

1. The parties agree to seek to coordinate discovery in this action with discovery in the Government Action to the extent possible.
2. Following entry of the Discovery Confidentiality Order in this action, Apple will make rolling productions to Plaintiffs of documents that may be relevant in this action that were produced to the U.S. Department of Justice in response to civil investigation demands as part of its investigation leading to the filing of the Government Action.
    - Plaintiffs' Position: Plaintiffs request that the Court order Apple to complete those rolling productions no later than 7 days after the entry of the Discovery Confidentiality Order to avoid unnecessary delay.

Honorable Julien X. Neals, U.S.D.J.
Honorable Leda Dunn Wettre, U.S.M.J.
September 5, 2025
Page 4

- - o Apple's Response: Apple agrees to complete the rolling productions as soon as practicable consistent with its document vendors' review and processing.
  3. Promptly after the Discovery Confidentiality Order is entered in this action, Apple will provide to Plaintiffs all interrogatories and requests for production served on Apple in the Government Action, responses and objections to the same, and all related meet and confer correspondence.
  4. Promptly after the Discovery Confidentiality Order is entered in this action, Apple will invite Plaintiffs and the plaintiffs in the Government Action to participate in joint negotiations regarding Apple custodians and search terms to use for purposes of document review in both actions.
  5. Document productions made by Apple in either action will be treated as produced in both actions.
  6. After Apple provides Plaintiffs all interrogatories and requests for production served on Apple in the Government Action, responses and objections to the same, and all related meet and confer correspondence, Apple and Plaintiffs will meet and confer regarding coordination of subsequent discovery requests from Plaintiffs to Apple to avoid unnecessary duplication. The parties will propose discovery coordination protocols to each other to address coordinating document requests, interrogatories, and fact depositions between this action and the Government Action by September 18, 2025, and will submit agreed-upon protocols and/or any disputes related to such protocols to the Court by October 9, 2025.

**B. Supplemental Watch Case Discovery**

- Watch Plaintiffs' Position: Watch Plaintiffs support efforts to streamline pre-trial proceedings and have joined in joint negotiation of an ESI protocol, protective order, and case schedule. Watch Plaintiffs also will need incremental discovery supporting their unique case. For the Government and the iPhone MDL Plaintiffs, Apple's conduct with respect to the Apple Watch is just one small part of a story about how Apple monopolized the smartphone market. The Government's amended complaint devotes less than four pages to its core Apple Watch-related allegations. 24-cv-4055, Dkt. 51 at ¶¶ 94-103. Watch Plaintiffs' entire complaint is focused solely on Apple's anticompetitive dominance of the iOS-connected smartwatch market—a market not even alleged in the other actions. MDL Dkt. 86. This will include at the outset document requests and interrogatories specific to the Watch case. Consistent with the joint meet-and-confer and dispute-submission schedule set out above in Part III, in which all Plaintiffs will receive the government's discovery served thus far after entry of the Discovery Confidentiality Order, we look forward to resolving those issues amicably with Apple.[1]

- Apple's Position: Watch Plaintiff does not raise any dispute for the Court to resolve. Apple agrees that it will meet and confer with all MDL Plaintiff groups, including Watch Plaintiff,

---

[1] Watch Plaintiffs are uniquely situated and raise the above issue in that light. The above should not be interpreted to imply anything about the iPhone MDL Plaintiffs' positions on the issue.

Honorable Julien X. Neals, U.S.D.J.
Honorable Leda Dunn Wettre, U.S.M.J.
September 5, 2025
Page 5

> to address reasonable and proportional discovery requests as part of overall discovery coordination. The Court can address any issue Watch Plaintiff eventually identifies with Apple's discovery responses if and when such an issue arises.

## IV. Discovery Confidentiality Order

A draft of the parties' Proposed Discovery Confidentiality Order containing the parties' competing proposals is attached to this letter as Exhibit A.

Apple objects to the extensive argument Plaintiffs have insisted on including in this joint submission, and to which Apple has been forced to respond in kind, contrary to the Court's August 15, 2025 text order directing the parties to set forth disputed issues "briefly." Apple requests that the Court defer any decision on the disputed issues below until the parties have the opportunity to submit individual letter briefs at the Court's convenience.

Plaintiffs believe that the arguments below are appropriately brief, while giving the court sufficient context to resolve the disputes at the September 16 conference without burdening the court with additional briefing.

### A. Data Security – Section L

- Plaintiffs' Position: Private Plaintiffs take data security seriously. Since the start of negotiations, Plaintiffs have offered to abide by the data security provision to which Apple agreed in the related governmental enforcement action, United States v. Apple Inc., Case No. 2:24-cv-04055 (JXN) (LDW) (see Dkt. 235) ("Receiving Party shall comply with applicable security, privacy, data protection, or breach notification laws, rules, or regulations, policies or directives."). But Apple demands yet more burdensome protections for purposes of these actions brought by Private Plaintiffs. While this Court's model Confidentiality Order[2] prescribes no obligations whatsoever on parties regarding any of Apple's data security concerns, Plaintiffs have further offered to implement a range of uncommon data-security measures in an effort to reach a workable compromise with Apple. In pertinent part, Plaintiffs' proposed Confidentiality Order provides:

   > Receiving Party shall implement an information security management system ("ISMS") to safeguard Protected Materials, including reasonable and appropriate administrative, physical, and technical safeguards, and network security and encryption technologies, governed by written policies and procedures designed to protect against any reasonably anticipated threats or hazards to the security of such Protected Material and to protect against unauthorized access to Protected Material. To the extent a party or person does not have an ISMS, they may comply with this provision by having the Protected Material managed by and/or stored with eDiscovery vendors, claims administrators, or other platforms that

---

[2] See L. Civ. R. Appendix S.

Honorable Julien X. Neals, U.S.D.J.
Honorable Leda Dunn Wettre, U.S.M.J.
September 5, 2025
Page 6

maintain such an ISMS.

See Plts' Proposed PO, ¶ 40. This language is borrowed almost verbatim from the data security requirements of the Sedona Conference's Model Protective Order,[3] which reflects the reasoned judgment of discovery specialists from across the country. Plaintiffs have gone even further to mandate that receiving parties "implement multi-factor authentication to prevent unauthorized access to Protected Material" and encrypt outgoing emails using opportunistic transport lawyer security ("TSL encryption"). See *id.* Plaintiffs have also agreed to robust protocols for responding to any data breach. See *id.* ¶ 40(a)-(d).

Apple has rejected this compromise and is insisting that private Plaintiffs (and their consultants) implement exceedingly detailed cybersecurity frameworks (namely the ISO 27001, NIST's 800-53 standard, or CIS's Critical Security Controls) to receive any designated material. These cybersecurity regimes consist of hundreds of pages of detailed data-management controls.[4] They are used by data-management and healthcare companies but are not widely adopted in private legal practice (or other) professions. Courts have routinely rejected Apple's efforts to impose these very same cybersecurity frameworks on adversaries, finding them both unnecessary and unworkable in the context of a litigation. *See Gamboa v. Apple*, 24-cv-1270 (N.D. Cal.), Dkt. No. 42 (Nov. 26, 2024 Order) ("Apple has not demonstrated that compliance with one or more of the strict, standard protocols listed in its proposed provision is necessary here"); *Affinity v. Apple*, 22-cv-004174 (N.D. Cal.), Dkt. No. 73 (Mar. 29, 2024 Order) ("The Court finds that Plaintiffs' proposed language is more than sufficient."); *Societe Du Figaro v. Apple*, 22-cv-4437 (N.D. Cal.), Dkt. Nos. 59 & 63 (Letter briefing and January 22, 2023 Minute Order) (substantially same). Apple claims that private Plaintiffs could alternatively comply with another "widely recognized industry or government cybersecurity framework" but Apple has been unable to identify, despite multiple requests from Plaintiffs, any cybersecurity framework that Apple believes qualifies under this ambiguous standard, much less one that could be reasonably implemented and enforced.

Apple's proposed cybersecurity frameworks are particularly impractical because they would apply not just to production volumes, but to everyday correspondence among Plaintiffs' counsel (and their consultants) discussing any designated discovery material. This would hamstring Plaintiffs' ability to litigate this case—precluding effective coordination across firms and cases, not to mention with economic and other consultants who will need to access discovery materials to do their work.

Plaintiffs' proposed Order goes above and beyond to address Apple's data-security concerns. It is more than adequate and, equally important, it is workable in the context of

---

[3] See Sedona Conference Int'l Principles: Discovery, Disclosure & Data Protection In Civil Litig., Sedona Conf., (Transitional ed. Jan. 2017), Ex. C ("Model U.S. Federal Court Protective Order") at 53, available at: https://tinyurl.com/y25ehr67.
[4] See, e.g., NIST 800-53 Protocols, available at: https://nvlpubs.nist.gov/nistpubs/SpecialPublications/NIST.SP.800-53r5.pdf

Honorable Julien X. Neals, U.S.D.J.
Honorable Leda Dunn Wettre, U.S.M.J.
September 5, 2025
Page 7

- Apple's Position: Apple proposes robust data-security provisions to safeguard confidential business information and sensitive data of parties and non-parties alike. Cybercriminal groups and hostile foreign powers are targeting American law firms with cyberattacks every day.[5] There have been several instances, including in antitrust cases brought by sophisticated counsel, where systems hosting highly confidential and competitively sensitive information produced in litigation were breached by malicious actors. Apple's proposal requires specific, court- and expert-endorsed safeguards: recognized industry standards for data security; multi-factor authentication for accessing protected materials; and clear protocols for responding to data breaches, including prompt notice to affected parties and investigation.

    In particular, Apple proposes that the parties and their vendors comply with one of three recognized cybersecurity frameworks, or abide by a catchall provision, which alternatively allows compliance with the most recently published version of another widely recognized industry or government cybersecurity framework. These are industry-standard benchmarks with which many vendors and law firms already comply. Indeed, in a recent case brought by Plaintiffs' counsel, a court approved Apple's proposed frameworks, recognizing that the "proposal safeguards protected material via industry-standard requirements." Order on Joint Statement of Disputes Regarding a Protective Order at 3, *Floyd v. Amazon.com et al.*, No. 2:22-cv-1599 (W.D. Wa. Dec. 15, 2023) (ECF No. 77). And in another case, Plaintiffs' counsel recognized that two of these frameworks—the "NIST Cybersecurity Framework Version 1.1" and the "Center for Internet Security's Critical Security Controls"—are "established standards in reasonable cybersecurity readiness." *Soape v. Progress Software Corp.*, No. 1:23-cv-12476 (D. Mass. Oct. 23, 2023) (ECF No. 1 ¶ 107). Moreover, Plaintiffs here acknowledge that these ISMS policies "are used by data-management and healthcare companies," companies who handle highly confidential and/or sensitive data—the same kind of data at issue in this case. This case seeks to include a broad range of products and issues, which will result in the production of highly confidential information from Apple (*see, e.g.*, *infra* discussion regarding unannounced non-iPhone hardware products) as well as from non-parties, including consumers. This data is not only related to competitively sensitive product information but personally sensitive customer data. The circumstances warrant implementation of a

---

[5] *See* Charlotte Johnstone, *UK and French Intelligence Agencies Issue Cybersecurity Warning to Law Firms*, Law.com (July 4, 2023) *available at* https://tinyurl.com/ybn7zhn2 (describing threats to law firms as "attacks for profit, espionage and destabilisation operations" by criminals and hostile states); Becky Bracken, *It's Open Season on Law Firms for Ransomware & Cyberattacks*, DARK Reading (June 26, 2023) *available at* https://tinyurl.com/2bemnkmp (noting that the "recent swell of cyberattacks does not seem to be enough to convince law firms to shore up cybersecurity"); Xiumei Dong, *Law Firm Data Breaches Continue To Rise*, Law360 (Feb. 6, 2023), *available at* https://tinyurl.com/2p9bev5a (identifying "more than 100 law firms that reported data breaches to authorities across 17 states in 2022, exceeding the 88 breaches and 46 breaches reported in 2021 and 2020, respectively"); *see also Why Cybersecurity Should Be Top of Mind in 2022*, JDSupra (Jan. 27, 2022), tinyurl.com/mtsfz284; *Cost of a Data Breach Report 2022*, IBM Security at 5 (2025), *available at*, tinyurl.com/2s3nmj65 ("Reaching an all-time high, the cost of a data breach averaged USD 4.35 million in 2022.").

Honorable Julien X. Neals, U.S.D.J.
Honorable Leda Dunn Wettre, U.S.M.J.
September 5, 2025
Page 8

recognized, industry standard, cybersecurity framework. And Plaintiffs' complaint that they cannot rely on the "catchall" language because Apple has not supplied them with yet more choices (beyond the three already enumerated in the provision itself) is misplaced: the purpose of the catchall is to allow Plaintiffs the freedom to find and propose alternative solutions. Apple has already written its three proposed alternatives into the ESI Protocol itself.

Though Plaintiffs gesture at the data security provisions adopted in the ESI Protocol in the Government Action, the situations are different. Government Plaintiffs represented to Apple they are bound by data security laws and regulations applicable to government actors that meet or exceed the requirements Apple seeks here. Based on that representation, Apple agreed to a data security provision that confirmed the Government Plaintiffs will abide by the laws and regulations that apply to them. Those laws and regulations do not apply to private plaintiffs such as the Plaintiffs here and cannot substitute for the adoption of industry-standard data security frameworks.

Plaintiffs' supposed "practical" objections regarding the protection of correspondence are also misplaced. First, Plaintiffs do not explain which aspect of Apple's proposed data security provisions would "hamstring Plaintiffs' ability to litigate this case." Second, the highly confidential information of Apple, non-parties, the Government, and Apple customers, must be protected in all circumstances. Plaintiffs should not be allowed to undermine Apple's and non-parties' security to enhance their personal convenience. Nor is Apple's proposal burdensome. Apple proposes that anyone receiving confidential information implement multi-factor authentication (MFA) for access; this is a common and simple mechanism implemented across corporate America[6] and is being implemented across the federal judiciary "to enhance system security for CM/ECF and PACER," because "MFA provides an added layer of security to accounts by helping protect against cyberattacks that steal passwords, significantly reducing the risk of unauthorized access."[7]

Additionally, in the event of an actual or suspected data breach of protected information, Apple proposes that the party incurring a breach meet and confer with the producing party to discuss the nature of the breach and "submit to reasonable discovery" concerning the breach. These provisions ensure that the parties can determine the scope of any breach and identify appropriate next steps. None imposes significant burden on the parties. Taken together, they provide strong protections from real and serious dangers.

### V. ESI Protocol

A draft of the parties' Proposed ESI Protocol containing the parties' competing proposals is attached to this letter as Exhibit B.

---

[6] *See, e.g.,* Eric Griffith, *Multi-Factor Authentication: Who Has It and How to Set It Up*, PCMag (Jan. 19, 2022), tinyurl.com/ez86rmt2

[7] *Multifactor Authentication Coming Soon*, PACER (May 2, 2025), https://pacer.uscourts.gov/announcements/2025/05/02/multifactor-authentication-coming-soon

Honorable Julien X. Neals, U.S.D.J.
Honorable Leda Dunn Wettre, U.S.M.J.
September 5, 2025
Page 9

**A. Redactions for Certain Unannounced Non-iPhone Hardware Products – Section V.6**

- Plaintiffs' Position: Apple has requested an ESI protocol that would allow it to redact "information about unannounced, non-iPhone hardware products that are still in active development." It tries to support that request by arguing that the information is (1) necessarily irrelevant and (2) commercially sensitive. The Court should reject both arguments and prohibit Apple's proposed redactions.

    First, Apple is incorrect about the alleged irrelevance of unannounced hardware products. Plaintiffs allege in their complaints that Apple exploits the iPhone's integration into hardware products to expand and protect its monopolies. Information about the interoperability between Apple's iPhones and Apple's other hardware products—including Apple's unannounced hardware products—is relevant to those allegations and Plaintiffs' effort to enjoin Apple's anticompetitive conduct going forward. For example, discussion of an unannounced product's use of messaging APIs or Bluetooth connectivity with the iPhone or Apple Watch would be relevant to Plaintiffs' claims, but could nevertheless be redacted under Apple's proposal. While parties will sometimes stipulate to allow redaction of unrelated highly confidential information, Apple's proposed language allows it to redact from relevant documents any information about unannounced future products without any limitation, even where the redacted information is relevant. For instance, in *In re: Fragrance Direct Purchaser Antitrust Litigation*, which Apple cites below, the parties stipulated to allow redactions of "trade secrets…unrelated to fragrance products" in a price-fixing case limited to the fragrance product market. Apple's proposed redaction of information about unannounced hardware products is thus impermissible even if there were otherwise reasons to justify its redaction of irrelevant, commercially sensitive information.

    Second, commercial sensitivity is not a permissible basis to redact irrelevant information from relevant documents absent exceptional circumstances that are not present in this case. "Rule 34 of the Federal Rules of Civil Procedure—which governs the production of documents—provides for the production of entire 'documents,' rather than specific phrases, pictures, paragraphs, sentences, or words contained within a document." *Columbus Life Ins. Co. v. Wilmington Trust, N.A.*, 344 F.R.D. 207, 216 (D.N.J. 2023). Courts in this district have interpreted that language to prohibit the redaction of alleged irrelevant and confidential information from relevant documents where, as here, the information is subject to a protective order that allows for Attorneys Eyes Only designations and the receiving parties can be trusted to abide by that order. *See id*. at 216–17. Removing these redactions for the cross-production should be trivially easy where the redactions have been made digitally and coded by justification.

- Apple's Position: Apple believes this issue is not ripe for the Court's decision. The parties are still exchanging proposals and should continue to meet and confer in an attempt to reach compromise. Deferring decision on this issue now risks no prejudice to Plaintiffs because Apple can begin to produce documents before this issue is resolved based on the

redactions agreed to in the Government Action. To the extent Plaintiffs have specific issues with any redactions received, Apple will meet and confer with Plaintiffs and bring a concrete dispute to the Court should the Parties be unable to reach resolution.

In any event, it makes no sense to have different rules in this case, on the one hand, and the Government Action, on the other, with respect to what may and may not be redacted in identical documents. It not only will significantly burden Apple to create two separate versions of documents to be produced but also will unnecessarily complicate proceedings as plaintiffs in both actions seek to rely on the same material. Contrary to Plaintiff's offhand suggestion, it would not be "trivial" to create two separate versions of documents redacted of unannounced hardware product information; it would require conducting the redaction review process and processing the associated documents twice, and doing so would inevitably create complex database issues between the two actions.

Moreover, Apple operates in an intensely competitive environment and is engaged in ongoing, confidential, internal development of new products, some of which are announced only after extensive development and some of which are never announced. Plaintiffs in many litigations—including the plaintiffs in the Government Action—routinely agree to allow Apple to redact non-privileged information about a very narrow subset of unannounced hardware products that are not at issue in the litigation. The same should be permitted here. Moreover, in other litigation in this District, the court has approved an ESI Protocol that allowed for the parties to redact "trade secrets, pricing, profits, and non-public financial information," which were unrelated to the products at issue in that case. *In re: Fragrance Direct Purchaser Antitrust Litigation*, No. 2:23-cv-16127 (D.N.J. May 12, 2025), ECF No. 135, at 18.

Plaintiffs cannot claim that they will be prejudiced by not having access to information about non-iPhone and non-Watch products that are not publicly announced, let alone available for purchase. Plaintiffs claim that "discussion of an unannounced product's use of messaging APIs or Bluetooth connectivity with the iPhone or Apple Watch would be relevant to Plaintiffs' claims," but they identify no theory connecting such speculative, forward looking engineering discussions to the historical conduct actually alleged in the Complaint. Apple's highly confidential deliberations about ***potential***, ***unreleased*** hardware products that may have some potential to connect to iPhone or Apple Watch ***in the future*** have no conceivable bearing on the switching-costs allegations tied to ***existing or past versions*** of iPhone or Apple Watch. The case Plaintiffs chose to plead concerns alleged actual conduct, not hypothetical future actions. Plaintiffs are not entitled to Apple's most competitively sensitive material merely because it might conceivably align with claims they have not brought. If Apple later releases a new product that Plaintiffs believe is genuinely germane, the product will no longer be unannounced, and Plaintiffs may, at that time and subject to the ordinary limits of discovery, seek whatever additional information they contend is relevant.

Apple seeks to apply the same protocol in the MDL as the Government Action, with the

commitment that it will not redact non-privileged information about iPhone hardware, Apple Watch Hardware, or future iterations of currently public hardware products that connect to iPhone.

### B. Collection and Production of Hyperlinked Documents – Section V.7

- Plaintiffs' Position:  Plaintiffs have largely accepted the structure of the linked documents protocol already agreed to by Apple and the government plaintiffs, which creates a process for individually requesting the production of linked documents as needed. This dispute is about a single narrow adjustment that Plaintiffs have proposed: requiring production of a linked document without an independent review as to the relevance of the linked document. Plaintiffs' proposed adjustment strikes a reasonable balance between Plaintiffs' discovery rights to relevant documents while minimizing unwarranted burdens on Apple.

  Apple's proposed language requires production of a linked document only "if it appears on the face of the produced document that the linked document is relevant." That is, Apple will not even review a linked document itself for relevance. Instead, Apple proposes to review only the *already-produced document* for some additional sign that the linked document is independently relevant.

  Apple's proposal fails to minimize burdens of individualized document review, while inviting time-consuming peripheral litigation about the relevance of linked documents. Under Apple's proposal, relevant linked documents will be excluded if there is not some clue in the already-produced document to their relevance, and irrelevant documents will be produced if it appears from the face of the already-produced document that they are relevant. Plaintiffs' proposal eliminates this chokepoint, allowing discovery to proceed more efficiently. There is no need for an additional relevance review when the documents are already linked to a relevant document, and where their production is already limited to reasonable, individualized follow-up requests by the receiving party.

- Apple's Position:  As with the above issue, Apple believes this issue is not ripe for the Court's decision, the parties should continue to meet and confer about it, and Plaintiffs will not be prejudiced by deferring decision on this issue because Apple can begin producing documents before this issue is resolved.

  In the Government Action, Apple and the plaintiffs agreed after months-long negotiation, including litigation before the Court, to a complex protocol for collecting and producing hyperlinked documents.  Government Action ECF No. 264.  As part of that agreement, despite clear caselaw that establishes that linked documents are not considered document family members (*see, e.g.*, Order Regarding Disputes over ESI Protocol, *In re: Insulin Pricing Litigation*, No. 23-md-3080 (D.N.J. May 28, 2024), ECF No. 186, at 13–15), Apple has already agreed to  (1) consider in good faith all requests to manually search for potentially relevant linked documents, (2) conduct manual, reasonable searches for the contemporaneous versions of linked documents (3) produce the relevant, non-privileged

11

linked documents it identifies, and (4) provide a cross-reference log that identifies by bates number the document containing the hyperlink and the corresponding linked document.

Plaintiffs seek to unjustifiably undermine the results of the prior negotiations and litigation with the Government to "requir[e] production of a linked document without an independent review as to the relevance of the linked document," and require that Apple always produce the linked document regardless of whether the linked document is at all relevant to the action. Plaintiffs' theory is that linked documents are like attachments to emails, which typically are produced with their parent emails without regard to relevance. But Plaintiffs' theory is wrong: "hyperlinks are not the same as traditional attachments." *In re: Insulin Pricing Litigation*, ECF No. 186, at 14; *see also In re Meta Pixel Healthcare Litig.*, 2023 WL 4361131, at *1 (N.D. Cal. June 2, 2023) ("[H]yperlinked documents are not treated as conventional attachments for purposes of preserving a 'family' relationship in production."); *Nichols v. Noom Inc.*, 2021 WL 948646, at *4 (S.D.N.Y. March 11, 2021) ("To start, the Court does not agree that a hyperlinked document is an attachment. While the Court appreciates that hyperlinked internal documents could be akin to attachments, this is not necessarily so."); *Porter v. Equinox Holdings*, 2022 WL 887242, at *2 (Cal. Sup. Ct. Mar. 17, 2022) (rejecting argument that hyperlinks are attachments, explaining that hyperlinks "present unique challenges that make them different from email attachments"). Moreover, retrieving and producing hyperlinked documents—unlike attachments—is a manual process. Broadening the obligation to find and produce such documents without regard to relevance will unnecessarily and disproportionately burden Apple, forcing it to conduct onerous, manual searches beyond what is required in the Government Action. *See* Fed. R. Civ. P. 26(b) (discovery must be "relevant" and "proportional to the needs of the case"); *In re Diisocyanates Antitrust Litig.*, 2021 WL 4295729, at *6 (W.D. Pa. Aug. 23, 2021) (the principles of reasonableness and proportionality "do[] not require perfection"); The Sedona Conference, TAR Case Law Primer, 2d Ed., 24 Sedona Conf. J. 1, 32 (2023) ("reasonableness, rather than perfection, is the standard in discovery") (collecting cases).

Apple is committed to responding to requests for linked documents in good faith. That is what the ESI Protocol in the Government Action requires, and the same should apply here.

### C. Logging Communications with Outside Counsel – Section VI.1.B

- <u>Plaintiffs' Position</u>: Rule 26(b)(5)(A) requires a party withholding documents under a claim of privilege to substantiate that claim in a privilege log. Plaintiffs have already agreed to deviate from that rule by allowing Apple to exclude from its privilege log any responsive communications with outside counsel that occurred after Apple's receipt of the first civil investigative demand on January 6, 2020. Apple would like an even broader exception that would allow it to exclude all communications with outside counsel, no matter when they occurred or what they were regarding, including documents not relating to any litigation.

The Court should deny Apple's proposed departure from the Federal Rules. "The party asserting the attorney-client privilege bears the burden to show that it applies." *La. Mun.*

*Police Emps. Ret. Sys. v. Sealed Air Corp.*, 253 F.R.D. 300, 305 (D.N.J. 2008). Rule 26(b)(5)(A) enforces that burden by requiring a party asserting the attorney-client privilege to provide its opponents the information they need to assess that assertion and, if necessary, to challenge it.

Apple's proposal, in contrast, would force Plaintiffs to take Apple's word that it can satisfy its burden of proof for any and all communications with outside counsel that it chooses to withhold. That blank check is unacceptable, especially given Apple's history of abusing privilege designations to withhold responsive, nonprivileged communications in antitrust cases by "integrat[ing] the presence of legal personnel into documentation of business decisionmaking that…did not involve the provision of legal advice." *Epic Games, Inc. v. Apple, Inc.*, 781 F. Supp. 3d 943, 996 (N.D. Cal. 2025) (sanctioning Apple for its "abuse of attorney-client privilege designations to delay proceedings and obscure its decision-making process" where Apple "asserted privilege over more than a third of responsive documents" before it ultimately "withdrew approximately 42.1% of its privilege claims" after they were challenged). There, among other things, the court imposing sanctions noted that Apple's in-house counsel instructed employees to label non-privileged documents as "Prepared at the Request of External Counsel." *Id.* Apple should be required to log all pre-January 6, 2020 communications with outside counsel that it chooses to withhold as privileged, so that Plaintiffs and the Court can meaningfully assess whether Apple's privilege assertions are justified.

- <u>Apple's Position</u>:  Once again, Apple believes this issue is not ripe for the Court's decision and the parties should continue to meet and confer.  As before, deferring decision on this issue will not prevent Apple from beginning to produce documents.

  As the parties agreed in the Government Action, Apple should not be required to log communications exchanged between Apple and outside counsel. Plaintiffs seek to undo that agreement and create significant inefficiencies in the overlapping discovery between this action and the Government Action by requiring Apple to log all such communications before January 6, 2020—the date the Government initiated its investigation into Apple—effectively requiring Apple to produce two separate privilege logs.

  Apple has previously litigated some issues that relate to the claims in this action and as a result there will likely be a considerable volume of plainly privileged communications between Apple and its counsel.  Requiring Apple to log such communications in the period before January 6, 2020, would provide Plaintiffs no meaningful benefit and would impose a significant, unnecessary burden on Apple.  *See, e.g.*, *In re Imperial Corp. of Am. v. Shields*, 174 F.R.D. 475, 478–79 (S.D. Cal. 1997) (noting that in a case with "hundreds of thousands, if not millions, of documents" where most would be "protected by the attorney-client privilege or work product[,] [t]o force the creation of a document-by-document privilege log of documents of that magnitude is unreasonable and overly burdensome.").

Finally, the Court should reject Plaintiffs' attempt to invoke *Epic Games, Inc. v. Apple Inc.*, 781 F. Supp. 3d 943 (N.D. Cal. 2025), which has no relevance whatsoever to this dispute. The *Epic* case is currently on appeal regarding the Ninth Circuit's attorney-client privilege standards. And as Plaintiffs acknowledge in their reference to the case, *Epic* addressed allegedly dual-purpose communications that primarily involved "internal counsel." *Id.* at 996. The court's order does not support Plaintiffs' request for logging every outside counsel communication—communications frequently exempt from logging.

The plaintiffs in the Government Action, in full view of the same circumstances Plaintiffs emphasize, have agreed to limit the logging of communications between Apple and its Outside Counsel. The same approach should apply here.

### D. Confidentiality Metadata Field – Appendix A

- Plaintiffs' Position: Plaintiffs acknowledge the importance of protecting sensitive information from inadvertent disclosure and therefore agreed to Apple's request for multi-level confidentiality designations in the protective order. Apple, however, is refusing to provide confidentiality metadata with its document productions, despite this being standard practice in complex litigation. Confidentiality metadata consists of coding that accompanies produced documents, enabling parties to efficiently identify and categorize documents according to their designated confidentiality levels. Without this metadata, counsel must manually review each document to visually confirm the presence and level of any confidentiality designation before categorizing the materials individually. This manual process significantly increases both the administrative burden on the parties and the risk of inadvertent disclosure.

  Apple's refusal to provide standard confidentiality metadata is inconsistent with its stated interest in preventing inadvertent disclosures. When Plaintiffs inquired on August 22 regarding the basis for Apple's position, no substantive explanation was provided. Instead, on September 2, Apple responded that it would only produce confidentiality metadata if Plaintiffs could secure an agreement with the Government whereby the Government would produce confidentiality metadata for the Government's documents in the Government Action. Apple's position strategically conflates separate matters, as the Government's document production obligations in that proceeding are properly addressed between Apple and the Government.

  Plaintiffs respectfully submit that the production of confidentiality metadata serves the parties' mutual interests in maintaining appropriate confidentiality protections while facilitating efficient case management.

- Apple's Position: Apple believes this issue is not ripe for the Court's decision and the parties should continue to meet and confer. Deferring decision on this issue will not prevent Apple from beginning to produce documents.

Honorable Julien X. Neals, U.S.D.J.
Honorable Leda Dunn Wettre, U.S.M.J.
September 5, 2025
Page 15

Apple takes no position on adding a confidentiality metadata field, but it does take the position that the metadata fields already required in the Government Action should govern here.  The two cases substantially overlap, and all agree they must be coordinated.  Two different metadata schemes would be inefficient and burdensome, either forcing Apple to produce two separate sets of metadata in the two actions or forcing Apple to provide the Government Action plaintiffs with metadata that the Government Action plaintiffs need not provide in return.  If Plaintiffs want to receive this additional field in Apple's productions, they should first secure the Government Action plaintiffs' agreement to adopt it.

Respectfully submitted,

*s/Liza M. Walsh*

Liza M. Walsh

cc:    All Counsel of Record (via ECF)