

THREE GATEWAY CENTER
100 Mulberry Street, 15th Floor
Newark, NJ 07102

T: 973.757.1100
F: 973.757.1090

**WALSH.LAW**

Liza M. Walsh
Direct Dial: (973) 757-1100
lwalsh@walsh.law

September 30, 2025

**VIA ECF**
Honorable Leda Dunn Wettre, U.S.M.J.
United States District Court
Martin Luther King Federal Building
50 Walnut Street
Newark, New Jersey 07102

Re:   *In re Apple Inc. Smartphone Antitrust Litigation*, No. 2:24-md-03113-JXN-LDW

Dear Judge Wettre:

    This firm, together with Gibson, Dunn & Crutcher LLP, represents Defendant Apple Inc. ("Apple") in the above-referenced action. We write in response to Plaintiffs' letter regarding the data security provisions of the proposed Discovery Confidentiality Order. Dkt. No. 116 ("Letter").

    This dispute comes before the Court after extensive meet and confer conversations, which resulted in agreement on every provision of the Discovery Confidentiality Order except with regards to data security. The impasse is a result of Plaintiffs' refusal to adopt one of Apple's three proposed, industry-standard information security management systems (ISMS). Plaintiffs insist that their undefined ISMS satisfies their obligation to protect the data in this case, but they have not provided any further information regarding their proposed data security measures to Apple for consideration or compromise. This case will involve the production of an unusually large volume of highly sensitive information, including trade secrets and other sensitive business information from Apple and other of the most widely recognized technology companies in the world as non-parties to this dispute, as well as potentially significant amounts of consumer information, produced to an unusually large variety of law firms, consultants, and discovery vendors. All these parties—like everyone—are under constant and ever-increasing threat of cyberattack. Apple requests that specific data security measures that have been tried and proven by industry leaders be implemented. The security of this large volume of highly sensitive information from Apple and non-parties should not be left up to recipients to determine what data security measures are sufficient.

    The Court requested from Plaintiffs "an explanation of any insurmountable barriers to implementation of defendant's proposals regarding data security measures." Dkt. No. 114. Yet, Plaintiffs fail to explain how the privacy controls, implementation costs, and other measures associated with Apple's proposed ISMS—measures countless American businesses and government entities comply with every day—are "insurmountable." Instead, they describe certification burdens Apple has not requested and make baseless arguments that Plaintiffs cannot comply with any of the three industry-standard ISMS options Apple proposed or find equivalent

Honorable Leda Dunn Wettre, U.S.M.J.
September 30, 2025
Page 2

alternatives—even though one of the lead plaintiff firms here (Hagens Berman) is already adhering to one of Apple's suggested ISMS.

**I.** **The Information Security Management Systems (ISMS) Proposed by Apple Are Appropriate and Do Not Create Insurmountable Barriers**

Apple proposes that the parties and their vendors comply with one of three recognized cybersecurity frameworks (ISO 27001, CIS's Critical Security Controls, NIST 800-53), or the most recently published version of another widely recognized industry or government cybersecurity framework. Apple's proposal is necessary to address the current cybersecurity threat environment and protect the sensitive consumer data and information that Apple and third parties will produce in this action.

Organized criminal groups and hostile state actors are perpetrating data security attacks with growing frequency. The New Jersey Office of Homeland Security and Preparedness Director has noted that "Cyber threats are constantly evolving and, on the rise, not only in New Jersey but throughout the nation and the world."[1] Law firms and their vendors are among the most targeted businesses for cyberattacks. In 2023, the American Bar Association (ABA) conducted a survey in which 29% of the respondents said that their law firm had experienced a data breach.[2] Moreover, the ABA was itself the victim of a data breach in March 2023.[3] So too, the federal judiciary was the victim of a "sweeping hack" in August 2025,[4] and on September 25, 2025, the District of New Jersey updated its procedures for storage and service of sealed documents in recognition of the fact "that federal courts nationwide have been subject to recent, escalating cyberattacks."[5] Threats to Apple and third-party documents and data are present, persistent, and palpable.

Because the multiple complaints put at issue Apple's most guarded materials—e.g., internal executive emails and Board presentations (Watch Purchaser Complaint ¶ 59, Government Action First Amended Complaint ¶¶ 60–71), product design (Watch Purchaser Complaint ¶ 162; Direct iPhone Purchaser Complaint ¶ 81), source code (Direct iPhone Purchaser Complaint ¶¶ 85, 206), and lists and specifications of "private" APIs (*id.* ¶¶ 48–51, 114; Indirect iPhone Purchaser Complaint ¶¶ 75, 79), etc.—discovery will likely include trade secrets, technical security designs, and confidential contracts. It will also sweep in highly sensitive non-party information (banks, developers, carriers, and automakers), including carrier promotion and pricing terms, digital wallet and NFC integrations, and CarPlay integration plans (Government Action First Amended Complaint ¶¶ 113, 118–121, 125), creating a heightened cybersecurity target and increased risk if

---

[1] Maria Prato, *Governor Murphy Signs Legislation Enhancing Cyber Security Protections,* New Jersey Office of Homeland Security and Preparedness (March 17, 2023),
https://www.njohsp.gov/Home/Components/News/News/578/555.
[2] John Simek, *2023 Cybersecurity TechReport*, American Bar Association (December 18, 2023),
https://www.americanbar.org/groups/law_practice/resources/tech-report/2023/2023-cybersecurity-techreport/.
[3] Sara Merken, *ABA Says Hackers Took Lawyers' Data in March Attack*, Reuters (April 21, 2023),
https://tinyurl.com/59pvfpz8.
[4] John Sakellardiadis, *Hack of Federal Court Filing System Exploited Security Flaws Known Since 2020*, Politico (August 12, 2025), https://www.politico.com/news/2025/08/12/federal-courts-hack-security-flaw-00506392.
[5] *In re Procedures for Access to and Service of Sealed Documents*, Standing Order 2025-05 (D.N.J. Sept, 25, 2025), https://www.njd.uscourts.gov/sites/njd/files/StandingOrderreSealingECF.pdf.

Honorable Leda Dunn Wettre, U.S.M.J.
September 30, 2025
Page 3

those materials are exposed. Indeed, Plaintiffs do not dispute that cybersecurity measures that "go[] above and beyond" (Dkt. No. 100 at 6) are warranted for this litigation.

To address these undisputed risks, Apple proposes that the parties and their vendors comply with *one* of three recognized cybersecurity frameworks, or abide by a catchall provision, which alternatively allows compliance with the most recently published version of another widely recognized industry or government cybersecurity framework. These are industry-standard frameworks with costs that pale in comparison to the difficulty and expense in attempting to remedy a data breach, which is more likely with a less secure ISMS.

Many vendors and law firms already comply with these frameworks. In *Floyd v. Amazon*, a recent case brought by Plaintiffs' counsel, Hagens Berman, the court approved Apple's proposed frameworks, recognizing that the "proposal safeguards protected material via industry-standard requirements." Order on Joint Statement of Disputes Regarding a Protective Order at 3, *Floyd v. Amazon.com et al.*, No. 2:22-cv-1599 (W.D. Wa. Dec. 15, 2023) (Dkt. No. 77). Because one of Plaintiffs' firms is complying with Apple's proposed ISMS framework in *Floyd*, they cannot simultaneously claim barriers to doing so here are "insurmountable." In light of authorities like the ABA,[6] Plaintiffs admit that NIST and other ISMS are "industry standard in the software and data management/transfer industry" (industries in which Apple operates). Letter at 5, n.14. *See also* Dkt. No. 100 at 6 (Plaintiffs recognizing that the ISMS proposed by Apple are "used by data-management and healthcare companies."); *Soape v. Progress Software Corp.*, No. 1:23-cv-12476 (D. Mass. Oct. 23, 2023) (Dkt. No. 1 ¶ 107) (Hagens Berman asserting that the "NIST Cybersecurity Framework Version 1.1" and the "Center for Internet Security's Critical Security Controls" are "established standards in reasonable cybersecurity readiness."). They assert, however, that Plaintiffs could not comply with such requirements in these cases. Their arguments do not hold water.

### A. Plaintiffs identify no insurmountable barriers to CIS's Critical Security Controls

Plaintiffs do not explain why the CIS's Critical Security Controls are not a viable option for them. Even nine years ago, before the cyber threat environment had evolved to what it is today, the CIS framework was recognized by the California Attorney General as establishing "a *minimum* level of information security that all organizations that collect or maintain personal information should meet" and that "[t]he failure to implement all the Controls that apply to an organization's environment constitutes a lack of reasonable security."[7] The CIS framework, which is "updated frequently to address emerging threats and technologies," has also been lauded as "cost-effective

---

[6] *ABA's Cybersecurity Handbook: A Resource for Attorneys, Law Firms, and Business Professionals*, Third Edition ("Numerous security frameworks have been developed and recognized as models for developing an organization's security program . . . One of the most well-known security frameworks is the NIST Cybersecurity Framework. . . . The Cybersecurity Framework references several generally accepted domestic and international security standards that constitute best practice for cybersecurity . . . Other security frameworks are often used as a methodology to implement reasonable security in an organization. Two of the more commonly used are (1) the ISO/IEC 27001 framework . . . and (2) the Critical Security Controls for Effective Cyber Defense, which was created by the Center for Internet Security.").

[7] Kamala Harris, *California Data Breach Report* (February 2016), https://oag.ca.gov/sites/all/files/agweb/pdfs/dbr/2016-data-breach-report.pdf (emphasis added).

for mid-level or small organizations," because "the framework requires minimal resources,"[8] and "a set of critical security controls, [which] offers a practical and cost-effective starting point," for "small and medium-sized businesses."[9]

Plaintiffs do not object to the cost or the time to implement the CIS framework. Instead, they only say that the CIS framework involves "200 granular controls and sub-controls" and that "[y]ou need . . . technical knowledge and experience to implement, deploy, and maintain CIS benchmarks." Letter at 4. But technical knowledge is plainly not an "insurmountable" barrier. Plaintiffs' failure to identify any reason they cannot comply with the CIS option is reason alone to reject their arguments.

### B. Plaintiffs identify no insurmountable barriers to ISO 27001 compliance

Apple's proposal also includes ISO 27001 as an option. ISO 27001 is an internationally recognized standard[10] for information security management systems, offering a systematic approach to the management of sensitive company information. It is widely adopted in the technology industry, including by companies such as Apple, Microsoft, Google Cloud, AWS, Salesforce, Dropbox, and others.[11] And it is used by many leading e-discovery vendors, such as Consilio, ProSearch, Relativity, Haystack, and Everest Discovery.[12]

Plaintiffs fail to explain why compliance with ISO 27001 is unobtainable. Their letter solely points to and complains about costs associated with ISO 27001 ***certification***, a distinct

---

[8] Laiba Siddiqui, *CIS Critical Security Controls: The Complete Guide*, Splunk: A Cisco Company (October 11, 2024), https://www.splunk.com/en_us/blog/learn/cis-critical-security-controls.html.

[9] *Understanding the 18 CIS Critical Security Controls: Your Roadmap for Cyber Security Excellence* (September 17, 2024), https://www.cybermaxx.com/resources/understanding-the-18-cis-critical-security-controls-your-roadmap-for-cybersecurity-excellence/.

[10] *See, e.g., Information Security Accreditation*, United Kingdom Government Actuary Department (May 19, 2022) https://www.gov.uk/government/news/information-security-accreditation ("The ISO/IEC 27001 certification is the international standard for information security management")

[11] *Apple internet services security certifications*, Apple (last accessed: September 26, 2025), https://support.apple.com/en-afri/guide/certifications/apc34d2c0468b/web; *ISO/IEC 27001:2022*, Microsoft (May 26, 2023), https://learn.microsoft.com/en-us/azure/compliance/offerings/offering-iso-27001; *ISO/IEC- 27001*, Google Cloud (last accessed: September 26, 2025), https://cloud.google.com/security/compliance/iso-27001; *ISO/IEC 27001:2022*, AWS (last accessed: September 26, 2025), https://aws.amazon.com/compliance/iso-27001-faqs/; *General Compliance, Salesforce* (last accessed: September 26, 2025), https://compliance.salesforce.com/en/services/general; *ISO Certifications*, Dropbox (last accessed: September 26, 2025), https://www.dropbox.com/business/trust/compliance/certifications-compliance.

[12] *eDiscovery Services*, Consilio (last accessed: September 29, 2025), https://www.consilio.com/solutions/ediscovery-services; *Renewal of ISO 27001 Certification Announced by ProSearch*, eDiscovery Today (August 31, 2022), https://ediscoverytoday.com/2022/08/31/renewal-of-iso-27001-certification-announced-by-prosearch/; *The Relativity-Microsoft Partnership for Security in the e-Discovery Cloud [Video]*, Relativity Blog, https://www.relativity.com/blog/the-relativity-microsoft-partnership-for-ediscovery-cloud-security/ ("ISO 27001 compliance Relativity has earned for our information security practices and operations"); *HaystackID® Completes Flawless ISO/IEC 27001 Audit*, PR Newswire (March 14, 2023), https://www.prnewswire.com/news-releases/haystackid-completes-flawless-isoiec-27001-audit-301770920.html; *Everest Discovery Achieves ISO 27001 Recertification*, Global Newswire (May 16, 2023), https://www.globenewswire.com/news-release/2023/05/16/2670030/0/en/Everest-Discovery-Achieves-ISO-27001-Recertification.html.

Honorable Leda Dunn Wettre, U.S.M.J.
September 30, 2025
Page 5

requirement that is not part of Apple's proposal. *See* Dkt. No. 100-1 at 28 (Apple's proposal that the parties "*comply* with at least one of the [ISMS]") (emphasis added). For instance, though Plaintiffs assert that "[i]ndustry experts describe ISO 27001 *compliance* as a 'complex and time-consuming process,'" (Letter at 3 (emphasis added)), they support that claim by quoting an article describing ISO 27001 *certification* as a "complex and time-consuming process." *Id.* at 3 n.3 (citing an article titled "The 7 biggest challenges of ISO 27001 *certification*") (emphasis added). Similarly, while Plaintiffs assert that ISO 27001 compliance "can range from tens of thousands to hundreds of thousands of dollars," they again support that assertion by citing an article about the cost of ISO 27001 *certification,* and the amount Plaintiffs quote as the cost of ISO 27001 compliance comes from a section of the article labeled "Certification Process and Maintenance: Investment Considerations." *Id.* at 3, n.4. Similarly, when Plaintiffs insist ISO 27001 will take a lot of time to implement, they cite only an article describing certification, not compliance—indeed, the article they cite is titled, "How Long Does It Take to Get ISO *Certified*." *Id.* at 3, n.5.

Plaintiffs' certification-related arguments miss the mark because "there are significant differences between [ISO 27001 compliance and certification] in terms of validation, audit processes, third-party involvement, and business benefits."[13] Compliance only requires following and adhering to the controls of the security framework and does not require the extra step and expense of external verification by an auditor, and an entity can be compliant without being certified.[14] Moreover, compliance rather than certification is "more flexible," "cost-effective," and "faster to achieve," such that it "can be achieved rather quickly with internal resources."[15]

Because Plaintiffs' letter identifies no purported obstacle to ISO 27001 *compliance*, which is all Apple asks, Plaintiffs have failed to show any "insurmountable barrier" to adopting this ISMS.

### C. Plaintiffs identify no insurmountable barriers to NIST 800-53 compliance

Plaintiffs also do not identify any insurmountable barriers to complying with NIST 800-53 as a third option. Plaintiffs' only source of information about the alleged burden of implementing NIST 800-53 is a single marketing article from a company called Secureframe, which sells tools and services aimed at simplifying NIST 800-53 compliance for those who may find it burdensome.[16] And even that article acknowledges that "with the right strategy and the right tools, you can significantly streamline the process, reduce costs, and unlock the benefits of compliance faster,"[17] suggesting that the timeline and cost projections Plaintiffs assert are a maximum illustration used to make the case for tools that can help lower costs, not a minimum necessary floor for compliance.

---

[13] Ronja Isaksson, *ISO 27001 Compliance vs. Certification*, Cyberday (April 1, 2025), https://www.cyberday.ai/blog/iso-27001-compliance-vs-certification.
[14] *Id.*
[15] *Id.*
[16] *NIST 800-53 Compliance Costs: How to Save Time and Money with Automation*, Secureframe (accessed September 24, 2025) https://secureframe.com/hub/nist-800-53/cost-and-time-savings ("If you're looking for a way to simplify federal compliance and lift the burden from your team, schedule a demo to see the power of Secureframe's automation in action.").
[17] *Id.*

Honorable Leda Dunn Wettre, U.S.M.J.
September 30, 2025
Page 6

### D. It is irrelevant that Plaintiffs have not identified a fourth alternative under Apple's proposed "catchall" option

In addition to the three specific ISMS options Apple proposed, Apple also included a "catchall" alternative allowing Plaintiffs to identify other options. Plaintiffs paradoxically complain that they cannot rely on the "catchall" language because Apple has not supplied them with more choices beyond the three ISMS options Apple enumerated. That is nonsensical. The purpose of the "catchall" is to allow Plaintiffs the freedom to find and propose alternative solutions. While Plaintiffs have not yet done so, they would be permitted to do so under the "catchall" Apple proposes. And in any case, Apple has already provided three ISMS choices for Plaintiffs, and as explained above, Plaintiffs have not identified any significant barriers for compliance with those ISMS options.

## II. Apple's proposed Security Frameworks will not limit participation in the litigation

Plaintiffs assert, without citation or support, that "many of the relevant law firms and other entities that would otherwise be eligible to receive protected materials would not be able to comply" with any one of the three proposed security frameworks. Letter at 5. But Plaintiffs' submissions to date undermine those categorical assertions.

### A. Lead Counsel for the Plaintiff Groups are sophisticated with significant resources

As part of the application process to be appointed lead counsel in this MDL, each lead counsel group was required to demonstrate, among other factors, that they had sufficient resources to commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A). In each of their submissions, the lead counsel groups made that showing. *See* Dkt. No. 17 (Direct iPhone Purchaser Counsel explaining that their law firms "are well capitalized, and are fully capable and prepared to staff and finance this action. Indeed, [they] regularly advance the costs of class actions and are prepared to do so in this case."); Dkt. No. 18-1 (Indirect iPhone Purchaser Counsel presenting itself as having "the resources and expertise" necessary to conduct this MDL); Dkt. No. 19-1 (Direct iPhone Purchaser Counsel asserting that "[t]hey have the resources and are prepared to sustain the case, including by retaining top-tier economic and industry experts to establish class certification, liability, and damages; employing the best e-discovery experts, vendors, and platforms to examine voluminous documents and data; and investing millions of dollars and tens of thousands of hours over the long haul—because they have done it before, time and again."); Dkt. No. 20-1 (Watch Purchaser Counsel asserting they have "the capability to run end-to-end e-discovery on [their] own internal servers," and also have committed to "dedicate the resources necessary to litigate their claims."). Plaintiffs' counsel's own prior representations to the Court establish they have the resources and expertise necessary to comply with an ISMS like CIS, which the California Attorney General has described as the most cost-effective security framework to provide "a minimum level of information security."[18]

---

[18] Kamala Harris, *California Data Breach Report* (February 2016), https://oag.ca.gov/sites/all/files/agweb/pdfs/dbr/2016-data-breach-report.pdf.

### B. Hagens Berman demonstrates that compliance with a proposed security framework is achievable with little disruption

Hagens Berman's experience further undermines Plaintiffs' claims about implementation time and cost. For example, while Plaintiffs' letter asserts that it would take "several months to a year" to implement some of the above security frameworks (Letter at 4), Hagens Berman admits that it took their firm just eight weeks to implement one of the security frameworks proposed by Apple (they did not specify which one). Dkt. No. 116-1 ("Harrington Decl.") ¶ 3. Then, after that initial setup, it took only fifty additional hours to assist in the implementation of the same protocols with one of Hagens Berman's retained consultants. *Id*. If Plaintiffs had agreed at the outset to one of Apple's proposed security frameworks, they would likely already have completed implementation by now.

Relatedly, though Plaintiffs claim that implementing one of the security frameworks Apple proposes could cost over $100,000, Hagens Berman reports that it has spent only $42,000 total on (1) the implementation of one of those security frameworks within its own law firm, (2) the implementation of the security framework for its retained consultant, and (3) the maintenance of the security framework for **both** its firm and its retained consultant—far less than $100,000. *Id.* at ¶ 4. And Hagens Berman's preexisting implementation and maintenance of that protocol demonstrates it has the technological know-how to implement the same or another framework here as well as assist its co-counsel, experts, and consultants in implementing it.

### C. Other recipients of confidential information can and should comply with Apple's proposal

All groups and individuals who handle the confidential information of Apple and non-parties should be required to uphold the bare minimum of data security standards established by the CIS framework or one of the other cybersecurity options in Apple's proposal. Whether they are one of the "top-tier economic and industry experts to establish class certification, liability, and damages" that Plaintiffs committed to retain (Dkt. No. 19-1) or a copy services vendor (Letter at 6), all recipients of confidential information are at risk of a data breach. Cyber criminals commonly focus on finding "weak links in the security defenses of big corporate victims," and will attack companies "via third-party companies . . . such as software providers, customer service helplines and those providing other technological solutions."[19] In 2023 about 15% of cyberattacks originated via a third party and in 2024 that doubled to about 30%.[20] "Research from Google Threat Intelligence Group found that state-sponsored actors were also increasingly using [third parties to breach a company's data security]."[21] These (often highly sophisticated) expert and consultant groups Plaintiffs mention should not be permitted to create a weak link in the security of the significant amount of confidential information that will be produced in this litigation.

Moreover, though Plaintiffs now claim they "are unaware of any means by which such

---

[19] Kieran Smith, *Hackers Target Supply Chains' Weak Links in Growing Threat to Companies*, Financial Times (September 21, 2025) https://www.ft.com/content/dd59b848-67c2-4622-a1e4-555b77196197.
[20] *Id.*
[21] *Id.*

experts and consultants could implement Apple's requirements," Hagens Berman admits that is not true—it attested that it took only 50 hours to assist a consulting firm in implementing one of the security frameworks Apple proposes. Harrington Decl. ¶ 3. Even if Plaintiffs retain individual experts or consultants unaffiliated with a firm to provide IT support in implementing a security protocol, Plaintiffs can provide those experts or consultants with an ISMS-compliant managed device[22] to access Protected Material.

Finally, contrary to Plaintiffs' assertion, Apple does not consider the Court a Receiving Party under the Discovery Confidentiality Order such that the Court would need to comply with the data security provisions. Apple understands and appreciates that the federal judiciary recognizes the significant importance of protecting litigants' information and is taking steps to increase data security measures, including by implementing multi-factor authentication (MFA). In any case, it is not likely that the full volume of sensitive information produced in discovery will be filed with the Court, as opposed to only portions of discovery particularly relevant to the dispute—reducing the risk arising from materials filed with the Court.

### III.     Plaintiffs' Proposed Data Security Measures Are Insufficient

#### A. The Sedona Conference data security proposals are inadequate

The cornerstone of Plaintiffs' data security proposal is an eight-year-old Sedona Conference model which does not account for the rapidly evolving cybersecurity landscape and does not protect against breaches of security via "weak links." The Sedona Principles on which Plaintiffs rely so heavily was adopted in 2017; in the 8 years since then, cybersecurity threats have evolved significantly. Attacks are now more prevalent, more sophisticated, and more invasive than ever before. One article published in 2021, evaluating the evolution in cybersecurity threats since 2017, found that "[a]lmost all cybercrime metrics have increased dramatically [from 2017 to 2021]—money lost increased by 393% and the overall number of complaints increased by 191%, while reports of phishing . . .were up by a whopping 1,178%."[23] Needless to say the threat environment has only grown more serious in the years since that article was published in 2021.

In addition to being outdated, Plaintiffs' proposal leaves gaping security holes. First, while Plaintiffs' proposal requires that "Protected Material [must be] managed by and/or stored with eDiscovery vendors, claims administrators, or other platforms that maintain such an ISMS" (Letter at 7), they offer absolutely no explanation for what information security management system such vendors would maintain or what that system would require. This provides Apple and non-parties no assurance with regards to how their confidential information will be handled. Apple proposes

---

[22] Gloria Bakerian, *Implementing Mobile Device Management for Law Firms: It's Essential for Security and Efficiency*, Professional Computer Concepts (May 11, 2025) https://www.calpcc.com/mobile-device-management-for-law-firms/ (a managed device is a computer loaded with "software that allows [a company's] IT team—or managed service provider—to remotely manage, secure, and support mobile devices used across [the] organization"); *see also What is Device Management*, Microsoft (March 3, 2025), https://learn.microsoft.com/en-us/intune/intune-service/fundamentals/what-is-device-management.

[23] *See* Forbes, *Cybercriminals Stole $6.9 Billion In 2021, Using Social Engineering To Break Into Remote Workplaces*, (March 22, 2022), https://www.forbes.com/sites/zacharysmith/2022/03/22/cybercriminals-stole-69-billion-in-2021-using-social-engineering-to-break-into-remote-workplaces.

Honorable Leda Dunn Wettre, U.S.M.J.
September 30, 2025
Page 9

use of well-defined and proven systems to confront the problem. Neither Apple nor third parties should be required to hand sensitive data over to an unknown, potentially inadequate security management system.

Moreover, Plaintiffs' proposals do not require any sort of data security framework when handling confidential information obtained *from* eDiscovery platforms, such as information downloaded locally onto an attorney's computer. Given the large number of attorneys and law firms involved in this litigation, as well as the experts and consultants who will also have access to confidential information, not requiring these groups and individuals to properly secure confidential information creates a clear weak link for inviting cyberattacks.[24]

It is immaterial that the Sedona Principles model was developed with litigation in mind rather than developed for industry. Apple and non-parties should be able to trust that their sensitive information is secured, regardless of the slow pace at which lawyers and law firms have adjusted to the cyber threat environment we live in. In fact, precisely because the legal profession has lagged behind industry in adopting robust data security measures, law firms have increasingly been targeted by cyber criminals.[25] The generally poor state of cybersecurity in the law is more reason, not less, to impose robust data security protocols in a litigation like this that will involve an unusually large volume of highly sensitive information from a large number of major companies.

### B. Multi-Factor Authentication should be required for all access to confidential information

Apple proposes, and Plaintiffs agree, that anyone receiving confidential information implement MFA for access; this is a common and simple mechanism implemented across corporate America.[26] In fact, the federal judiciary itself is currently implementing MFA "to enhance system security for CM/ECF and PACER," because "MFA provides an added layer of security to accounts by helping protect against cyberattacks that steal passwords, significantly reducing the risk of unauthorized access."[27] In particular, Apple's proposal states: "The Parties shall implement multi-factor authentication for any access to Protected Materials and implement encryption of all Protected Materials in transit outside of network(s) covered by the Party's ISMS

---

[24] *See supra* at II.C (discussion on "weak links").

[25] *See* Charlotte Johnstone, *UK and French Intelligence Agencies Issue Cybersecurity Warning to Law Firms*, Law.com (July 4, 2023) https://tinyurl.com/ybn7zhn2 (describing threats to law firms as "attacks for profit, espionage and destabilisation operations" by criminals and hostile states); Becky Bracken, *It's Open Season on Law Firms for Ransomware & Cyberattacks*, DARK Reading (June 26, 2023) https://tinyurl.com/2bemnkmp (noting that the "recent swell of cyberattacks does not seem to be enough to convince law firms to shore up cybersecurity"); Xiumei Dong, *Law Firm Data Breaches Continue To Rise*, Law360 (Feb. 6, 2023), https://tinyurl.com/2p9bev5a (identifying "more than 100 law firms that reported data breaches to authorities across 17 states in 2022, exceeding the 88 breaches and 46 breaches reported in 2021 and 2020, respectively"); *see also Why Cybersecurity Should Be Top of Mind in 2022*, JDSupra (Jan. 27, 2022), tinyurl.com/mtsfz284; *Cost of a Data Breach Report 2022*, IBM Security at 5 (2025), tinyurl.com/2s3nmj65 ("Reaching an all-time high, the cost of a data breach averaged USD 4.35 million in 2022.").

[26] *See, e.g.,* Eric Griffith, *Multi-Factor Authentication: Who Has It and How to Set It Up*, PCMag (Jan. 19, 2022), tinyurl.com/ez86rmt2.

[27] *Multifactor Authentication Coming Soon*, PACER (May 2, 2025), https://pacer.uscourts.gov/announcements/2025/05/02/multifactor-authentication-coming-soon.

Honorable Leda Dunn Wettre, U.S.M.J.
September 30, 2025
Page 10

(and at rest, where reasonably practical)." Dkt. No. 100-1 at 28.

Agreeing that MFA should be implemented, Plaintiffs adopt Apple's language except they delete the phrase "for any access to Protected Material." If Plaintiffs agree MFA is a valuable security precaution—as they could hardly deny—there is no reason to delete the term requiring MFA for accessing Protected Material. Plaintiffs' deletion should be rejected for adding ambiguity about when MFA is required.

### C. All data breaches must be treated seriously

Apple also proposes data breach provisions to facilitate prompt mitigation and remediation in the event of an actual or suspected breach. While Plaintiffs mostly agree, they strike some key terms such as the requirement to meet and confer and to allow reasonable discovery in the event of a potential breach. The hallmark of Apple's proposal, to which Plaintiffs agree, is that "[i]f Receiving Party is aware of a Data Breach, the Parties shall meet and confer in good faith regarding any adjustments that should be made to the discovery process and discovery schedule in this action." Dkt. No. 100-1 at 29-30. But Plaintiffs seek to strike from the proposal the list of *suggested topics* on which the parties should meet and confer including: "(1) additional security measures to protect Protected Material; (2) a stay or extension of discovery pending investigation of a Data Breach and/or implementation of additional security measures; and (3) a sworn assurance that Protected Materials will be handled in the future only by entities not impacted by the Data Breach." *Id.* at 28. These commonsense items should be retained, as they provide helpful guidance for *what* the parties should discuss in the event of a data breach.

The Court should also reject Plaintiffs' proposal to strike the requirement that "the Receiving Party shall submit to reasonable discovery concerning the Data Breach," and that the Receiving Party "provide any information that is reasonably requested by Producing Party and that relates to any such Data Breach, including . . . underlying vulnerabilities or flaws that led to the Data Breach." Discovery in the event of a data breach is necessary to discern what notice is required, who must be informed, and what remediation is needed.

Plaintiffs are unable to show any undue burden (let alone an insurmountable barrier) caused by these provisions because they all center around threshold requirements for meeting and conferring and reasonable requests. Apple's proposal specifies that, when a data breach occurs, the parties agree to first meet and confer about the appropriate remediation and future mitigation, which will depend on the extent and severity of the breach. And through meeting and conferring, the parties will have the opportunity to discuss the scope of the breach, the importance of the information exposed, and the reasonableness, potential burden, and effectiveness of various responses. The court recognized as much in *Floyd v. Amazon.com Inc., et al.*, observing:

> To the extent that Plaintiff contends that formal discovery may not be appropriate after a data breach, again, Plaintiff will have an opportunity to discuss that matter with Defendants [Amazon and Apple] in determining a reasonable course of action if and when the need arises. Defendants' proposal allows the parties to craft an

Honorable Leda Dunn Wettre, U.S.M.J.
September 30, 2025
Page 11

> appropriate response based on the particular circumstances of a data breach, and Plaintiff has not shown that the proposal is burdensome or unworkable.

2023 WL 701667, *2 (W.D. Wa. Dec. 15, 2023) (internal citation omitted). The same should apply here.

### IV. Apple's Proposals Should Be Adopted in Full to Ensure Effectiveness

Requiring all parties to adopt at least what is viewed as "a minimum level of information security that all organizations that collect or maintain personal information should meet"[28] at the outset of document production is the most efficient path forward. Plaintiffs' statement that "Apple can still seek more stringent protections for discrete categories of discovery in the future," (Letter at 9) is misses the point. This is a threshold issue that must be addressed before any productions are made. In fact, Apple is currently preparing to produce to Plaintiffs a substantial volume of highly confidential material that was previously produced to the Government. Moreover, if Plaintiffs are unwilling now to adopt these security frameworks, there is nothing to suggest that they would be willing to adopt them later.

While Plaintiffs gesture at the data security provisions adopted in the Discovery Confidentiality Order in the Government Action to excuse a lower standard of protection in these cases, Apple only agreed to that data security provision because Apple confirmed that Government Plaintiffs will abide by the laws and regulations that apply to them specifically—and impose appropriate, substantial protections for information they receive including by complying with industry-standard security practices. Plaintiffs and their law firms and vendors are not government agencies and do not bear those responsibilities, underscoring the need for additional protections here.

\* \* \*

The Court asked Plaintiffs to explain what "insurmountable barrier" exists to the implementation of Apple's data security proposals. Plaintiffs failed to do so and instead reiterated their proposal which gives neither the Court nor Apple any details about their proposed ISMS and what kinds of protections it would provide. Apple's proposed data security frameworks are reasonably attainable for all who wish to have access to confidential information in this lawsuit, and in fact, have been implemented by one of Plaintiffs' law firms in another case. This litigation will involve the production of highly confidential information from Apple and a significant number of non-parties. Each of these companies, and their customers, should have their information protected by requiring all involved to maintain adequate data security measures. Apple respectfully requests that the Court adopt its proposal.

---

[28] *Supra* I.A.

Honorable Leda Dunn Wettre, U.S.M.J.
September 30, 2025
Page 12

                                                  Respectfully submitted,

                                                  *s/ Liza M. Walsh*

                                                  Liza M. Walsh

cc:    All Counsel of Record (via ECF)