**JAVERBAUM WURGAFT HICKS
KAHN WIKSTROM & SININS, P.C.**
1000 Haddonfield-Berlin Road, Suite 203
Voorhees, NJ 08043
Phone: 856.596.4100
BY: Stanley O. King
Attorney ID No.: 034131996
**Attorney for Indirect Purchaser Plaintiffs**


## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| IN RE: APPLE INC. SMARTPHONE ANTITRUST LITIGATION | Case No. 2:24-md-03113-JXN-LDW<br><br>MDL No. 3113<br><br>**Return Date: January 5, 2026**<br><br>Hon. Julien X. Neals, U.S.D.J.<br>Hon. Leda D. Wettre, U.S.M.J.<br><br>*Oral Argument Requested*<br>*Document filed electronically* |


**MEMORANDUM IN OPPOSITION TO APPLE INC.'S
MOTION TO DISMISS CONSOLIDATED COMPLAINT
OF INDIRECT IPHONE PURCHASERS**

# <u>TABLE OF CONTENTS</u>

INTRODUCTION ............................................................................................................1

ARGUMENT ..................................................................................................................2

I.      IIPs Plead Market Power in the Well-Defined Domestic Smartphone and Performance Smartphone Product Markets ..................................................2

II.     IIPs Have Both Antitrust and Article III Standing ...................................3

  A.    IIPs Have Antitrust Standing ....................................................................3

  B.    IIPs Have Article III Standing ..................................................................6

  C.    IIPs Can Bring Claims on Behalf of All States Alleged .........................8

  D.    IIPs Have Antitrust Standing to Bring State Law Antitrust Claims ...... 10

III.    Apple's Remaining Attacks on IIPs' State Law Claims Fail ................. 12

  A.    IIPs State a Claim Under California's UCL ......................................... 12

    1.    IIPs Plead Violations of Both Prongs of the UCL ................................ 13

    2.    IIPs Plead Restitution Under the UCL ................................................. 14

    3.    Nationwide Relief Under the UCL Is Proper ....................................... 15

  B.    IIPs Plausibly Allege Unjust Enrichment .............................................. 18

  C.    The vast majority of IIPs' state antitrust claims survive dismissal ........ 20

    1.    IIPs can bring claims under Montana, Puerto Rico, Arkansas, Florida, Missouri, and South Carolina law ........................................................ 20

    2.    IIPs Provided Notice ........................................................................... 22

    3.    IIPs Sufficiently Allege Intrastate Effects in New York and Tennessee 23

    4.    IIPs Sufficiently Allege Monopolization in Violation of New York and Kansas Law ........................................................................................ 24

    5.    State Procedural Rules Barring Class Actions Do Not Apply .............. 25

    6.    California recognizes common-law monopolization ............................ 26

D.    IIPs' state consumer protection claims survive dismissal......................26

1.    IIPs sufficiently allege deceptive conduct ...............................................26

2.    IIPs State Claims Under New Hampshire and Missouri Law ..............28

E.    Statute of Limitations Issues Are Premature .........................................29

CONCLUSION ......................................................................................................30

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Aggrenox Antitrust Litig.*,
  94 F. Supp. 3d 224 (D. Conn. 2015)....................................................................23

*Allstate Ins. Co. v. Hague*,
  449 U.S. 302 (1981)........................................................................................17

*In re Asacol Antitrust Litig.*,
  2016 WL 4083333 (D. Mass. July 20, 2016) ...................................................30

*Associated General Contractors of California, Inc. v. California State
  Council of Carpenters*,
  459 U.S. 519 (1983).................................................................................4, 5, 6

*AT&T Mobility LLC v. AU Optronics Corp.*,
  707 F.3d 1106 (9th Cir. 2013) ........................................................................17

*In re Auto. Parts Antitrust Litig.*,
  50 F. Supp. 3d 836 (E.D. Mich. 2014) ..........................................................6, 7

*Barry's Cut Rate Stores Inc. v. Visa, Inc.*,
  2019 WL 7584728 (E.D.N.Y. Nov. 20, 2019) ...................................................7

*In re Broiler Chicken Antitrust Litig.*,
  290 F. Supp. 3d 772 (N.D. Ill. 2017).............................................................4, 7

*Caterpillar Inc. v. Williams*,
  482 U.S. 386 (1987)......................................................................................2, 5

*In re Cattle & Beef Antitrust Litig.*,
  687 F. Supp. 828 (D. Minn. 2023)....................................................................6

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
  973 P.2d 527 (Cal. 1999) ...............................................................................14

*Chinitz v. Intero Real Est. Servs.*,
  2020 WL 7391299 (N.D. Cal. July 22, 2020) ..................................................17

*In re Cipro Cases I & II*,
   61 Cal. 4th 116 (2015) ........................................................................................26

*City of Pittsburgh v. W. Penn Power Co.*,
   147 F.3d 256 (3d Cir. 1998) ..................................................................................2

*Cont'l Ore Co. v. Union Carbide & Carbon Corp.*,
   370 U.S. 690 (1962)................................................................................................3

*In re Copaxone Antitrust Litig.*,
   2025 WL 2771874 (D.N.J. Aug. 7, 2025) ...............................................................8

*Costar Grp., Inc. v. Com. Real Est. Exch., Inc.*,
   141 F.4th 1075 (9th Cir. 2025), *superseded on other grounds by*
   *CoStar Grp., Inc. v. Com. Real Est. Exch., Inc.*, 150 F.4th 1056
   (9th Cir. 2025)......................................................................................................13

*Coyle v. Hornell Brewing Co.*,
   2010 WL 2539386 (D.N.J. June 15, 2010)............................................................15

*In re Dairy Farmers of Am., Inc. Cheese Antirust Litig.*,
   2015 WL 3988488 (N.D. Ill. Jun. 29, 2015)...........................................................6

*Duke v. Browning-Ferris Indus. of Tenn., Inc.*,
   2006 WL 1491547 (Tenn. Ct. App. May 31, 2006) ..............................................30

*In re Effexor Antitrust Litig.*,
   357 F. Supp. 3d 363 (D.N.J. 2018).......................................................................25

*Ehret v. Uber Techs., Inc.*,
   68 F. Supp. 3d 1121 (N.D. Cal. 2014)...................................................................17

*In re Flash Memory Antitrust Litig.*,
   643 F. Supp. 2d 1133 (N.D. Cal. 2009)...................................................................4

*In re Fragrance Direct Purchaser Antitrust Litig.*,
   2025 WL 579639 (D.N.J. Feb. 21, 2025)................................................................9

*Freeman Indus. LLC v. Eastman Chem. Co.*,
   172 S.W.3d 512 (Tenn. 2005) ..............................................................................24

*Friedman v. AARP, Inc.*,
   855 F.3d 1047 (9th Cir. 2017) ..............................................................................14

*Friends of the Wild Swan v. Dep't of Nat. Res. & Conservation*,
   127 P.3d 394 (Mont. 2005)....................................................................11

*FTC v. Motion Picture Advert. Serv. Co.*,
   344 U.S. 392 (1953)..............................................................................27

*Gamboa v. Apple Inc.*,
   2025 WL 1684890 (N.D. Cal. June 16, 2025)..............................13, 14

*In re Generic Pharms. Pricing Antitrust Litig.*,
   338 F. Supp. 3d 404 (E.D. Pa. 2018).............................................*passim*

*Gibbons v. Gibbons*,
   432 A.2d 80 (N.J. 1981) .......................................................................30

*Gibbons v. J. Nuckolls, Inc.*,
   216 S.W.3d 667 (Mo. 2007) .................................................................29

*Goadby v. Phila. Elec. Co.*,
   639 F.2d 117 (3d Cir. 1981) .................................................................15

*H-Quotient, Inc. v. Knight Trading Grp., Inc.*,
   2005 WL 323750 (S.D.N.Y. Feb. 9, 2005) ..........................................23

*Harper v. LG Elecs. USA, Inc.*,
   595 F. Supp. 2d 486 (D.N.J. 2009)........................................................16

*Imperial Irrigation Dist. v. Cal. Indep. Sys. Operator Corp.*,
   2016 WL 4087302 (S.D. Cal. Aug. 1, 2016)........................................14

*In re K-Dur Antitrust Litig.*,
   338 F. Supp. 2d 517 (D.N.J. 2004)................................................15, 29

*LaChance v. U.S. Smokeless Tobacco Co.*,
   156 N.H. 88 (N.H. 2007) ......................................................................28

*Larson v. Valente*,
   456 U.S. 228 (1982)................................................................................7

*In re Liquid Aluminum Sulfate Antitrust Litig.*,
   2017 WL 3131977 (D.N.J. July 20, 2017) .............................................9

*In re Lorazepam & Clorazepate Antitrust Litig.*,
   531 F. Supp. 2d 82 (D.D.C. 2008), *remanded on other grounds by*
   631 F.3d 537 (D.C. Cir. 2011)..................................................................11

*Lorix v. Crompton Corp.*,
   736 N.W.2d 619 (Minn. 2007) ...................................................10, 11

*Maio v. Aetna, Inc.*,
   221 F.3d 472 (3d Cir. 2000) ......................................................13

*Mielo v. Steak*,
   897 F.3d 467 (3d Cir. 2018) ......................................................8

*Montana Camo, Inc. v. Cabela's, Inc.*,
   2010 WL 11606442 (D. Mont. Jan. 5, 2010) ...................................11

*Neale v. Volvo Cars of N. Am., LLC*,
   794 F.3d 353 (3d Cir. 2015) ................................................8, 9, 10

*In re Nexium Antitrust Litig.*,
   968 F. Supp. 2d 367 (D. Mass. 2013)........................................8

*Olson v. Microsoft Corp.*,
   2001 WL 36083237 (Mont. Dist. Feb. 15, 2001) .............................21

*In re Packaged Ice Antitrust Litig.*,
   779 F. Supp. 2d 642 (E.D. Mich. 2011) ........................................18

*Parkinson v. Hyundai Motor Am.*,
   258 F.R.D. 580 (C.D. Cal. 2008).................................................17

*In re Pork Antitrust Litig.*,
   495 F. Supp. 3d 753 (D. Minn. 2020)...........................................20

*Pressure Vessels P.R. v. Empire Gas P.R.*,
   137 D.P.R. 497 (P.R. 1994) ..............................................12, 21, 22

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
   148 F.3d 283 (3d Cir. 1998) .......................................................9

*Quelimane Co. v. Stewart Title Guar. Co.*,
   19 Cal. 4th 26 (Cal. 1998).........................................................26

*R.C. v. Walgreen Co.*,
  733 F. Supp. 3d 876 (C.D. Cal. 2024) ................................................................20

*In re Restasis Antitrust Litig.*,
  355 F. Supp. 3d 145 (E.D.N.Y. 2018) ................................................................22

*Rivera-Muñiz v. Horizon Lines Inc.*,
  737 F. Supp. 2d 57 (D.P.R. 2010) ................................................................21, 22

*Rutledge v. Hewlett-Packard Co.*,
  238 Cal. App. 4th 1164 (Cal. App. 2015) (relying on *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224 (Cal. App. 2001))........................16

*Schmidt v. Skolas*,
  770 F.3d 241 (3d Cir. 2014) ................................................................29

*Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*,
  559 U.S. 393 (2010)................................................................22, 25

*Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*,
  737 F. Supp. 2d 380 (E.D. Pa. 2010) ................................................................25

*Sherwood v. Microsoft Corp.*,
  2003 WL 21780975 (Tenn. Ct. App. July 31, 2003)........................................30

*Snowdy v. Mercedes-Benz USA, LLC*,
  2024 WL 1366446 (D.N.J. Apr. 1, 2024)..................................................10, 16

*Sonner v. Premier Nutrition Corp.*,
  971 F.3d 834 (9th Cir. 2020) ................................................................14

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016)................................................................7

*Stromberg v. Qualcomm Inc.*,
  14 F.4th 1059 (9th Cir. 2021) ................................................................15, 16

*In re Suboxone Antitrust Litig.*,
  64 F. Supp. 3d 665 (E.D. Pa. 2014)................................................................6, 28

*In re Tobacco II Cases*,
  207 P.3d 20 (Cal. 2009) ................................................................14

*Toll Bros. v. Twp. of Readington*,
  555 F.3d 131 (3d Cir. 2009) ...................................................................7

*Tucson v. City of Seattle*,
  91 F.4th 1318 (9th Cir. 2024) ...............................................................7

*United States v. Apple, Inc.*,
  2025 WL 1829127 (D.N.J. June 30, 2025)........................................2, 3

*United States v. Apple, Inc.*,
  No. 24-CV-4055 (D.N.J. June 11, 2024), ECF No. 51 .......................3

*United States v. Live Nation Ent., Inc.*,
  2025 WL 835961 (S.D.N.Y. Mar. 14, 2025)........................................5

*United States v. Microsoft*,
  253 F.3d 34 (D.C. Cir. 2001)................................................................3

*In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*,
  2022 WL 1013945 (D.N.J. Apr. 5, 2022)..............................................9

*In re Vascepa Antitrust Litig.*,
  2023 WL 2182046 (D.N.J. Feb. 23, 2023) ...................................21, 25

*In re Visa Debit Card Antitrust Litig.*,
  2025 WL 3019893 (S.D.N.Y. Oct. 28, 2025)......................................29

*In re Warfarin Sodium Antitrust Litig.*,
  214 F.3d 395 (3d Cir. 2000) .................................................................5

*In re Zantac (Ranitidine) Prods. Liab. Litig.*,
  2022 WL 16729170 (11th Cir. Nov. 7, 2022) ....................................10

**Statutes**

9 V.S.A. § 2453(a) ....................................................................................12

Minnesota's Antitrust Law of 1971, Minn. Stat. §§ 325D.49 *et seq.*......................10

Montana's Unfair Trade Practices and Consumer Protection Act,
  Mont. Code §§ 30-14-201 *et seq.* .......................................................11

N.H. Stat. Ann. § 358-A:2 ......................................................................28

N.Y. Gen. Bus. Law §§ 340 *et seq.*..........................................................................23

California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200
*et seq.* ...........................................................................................................12

Puerto Rico Antitrust Act, 10 L.P.R.A. §§ 257 *et seq.*.......................................12, 21

Tenn. Code Ann. §§ 47-25-101 *et seq.* ..................................................................23

**Other Authorities**

"Designed by Apple in California" Chronicles 20 Years of Apple
Design (Nov. 15, 2016),
https://www.apple.com/newsroom/2016/11/designed-by-apple-in-
california-chronicles-20-years-of-apple-design/ ..............................................12

Federal Rule of Civil Procedure 23 ............................................................8, 22, 25

Rule 8(d)(2).........................................................................................................19

## **INTRODUCTION**

Apple's motion to dismiss Indirect iPhone Purchasers' (IIPs) Consolidated Complaint rehashes many of the arguments it pursued in the Government action— which the Court has already rejected. Apple's lead argument is that the IIPs have failed to plausibly allege a relevant antitrust market. *See* Def's Mem. at 14-24, ECF No. 132-1. Apple supports this argument by mischaracterizing IIPs' market allegations, which are fundamentally the same as those of the Government (and the Direct iPhone Purchasers, or DIPs). IIPs, DIPs, and the Government all plead that Apple has unlawfully monopolized the markets for smartphones and performance smartphones sold in the U.S. And they all plead that Apple has imposed a "lock in" strategy that creates barriers for consumers to switch from iPhones to competing smartphones and allows Apple to charge supracompetitive iPhone prices. *See* App'x 1 (crosswalk between allegations of IIPs, Government, and DIPs).

Apple's remaining arguments fare no better. IIPs have antitrust standing because they paid supracompetitive prices for their iPhones as the result of Apple's anticompetitive scheme in the smartphone markets. And IIPs have stated claims under the various state laws that allow them to recover as indirect purchasers. For the reasons below, the Court should deny Apple's motion to dismiss.

1

# **ARGUMENT**

## I.   **IIPs Plead Market Power in the Well-Defined Domestic Smartphone and Performance Smartphone Product Markets**

Market definition is a factual issue that is rarely suited for adjudication on a motion to dismiss. *See United States v. Apple, Inc.*, 2025 WL 1829127, at *6 (D.N.J. June 30, 2025). IIPs allege the same claims and theories of harm as the Government—which the Court has already held were "sufficient to establish a *prima facie* case" of "monopoly power *in the smartphone and performance smartphone markets*." *Id.* at *14 (emphasis added). The Court need go no further in deciding this issue at the pleading stage. To the extent the Court chooses to, however, IIPs incorporate by reference Argument Section I of DIPs' opposition brief concerning relevant market. *See also* App'x 1 (matching DIP cites to IIP's cites).[1]

---

[1] To sidestep the Court's prior decision, Apple claims inconsistency between IIPs' theory of harm and the Government's, suggesting that IIPs allege a tying or monopoly-leveraging theory. *See* Def's Mem. at 21-22. Not so. The fact that IIPs use the term "aftermarket" in their Complaint is of no moment. IIPs are the "master of the[ir] complaint" and the Court should defer to IIPs as to what theories they advance here. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 398-99 (1987). Moreover, courts "view the complaint as a whole and . . . base rulings not upon the presence of mere words but, rather, upon the presence of a factual situation which is or is not justiciable." *City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 (3d Cir. 1998); *see also Apple*, 2025 WL 1829127, at *13 n.10. IIPs do not allege claims requiring the proof of a relevant single-brand "aftermarket" (such as tying or bundling). The term simply refers to technologies that are complementary to the iPhone, and thus subject to enhancing "lock in" effects on the iPhone—the only product that is at issue in the IIP case. The Government makes substantively identical allegations about Apple's conduct in the so-called "aftermarkets," although it instead

2

IIPs write separately to emphasize that IIPs allege that Apple protects its monopoly power in the smartphone and performance smartphone markets by degrading the use of apps, peripheral devices, and services that could facilitate switching from the iPhone to a rival smartphone. These allegations concerning "technological barricades" to switching plausibly allege anticompetitive conduct in the smartphone markets. *See Apple*, 2025 WL 1829127, at \*13 & n.10 (citing *Cont'l Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962)). IIPs need not allege that Apple has market power in any compartmentalized "aftermarkets" because the harm to IIPs flows from Apple's monopoly power *in the smartphone markets*. Apple's technological barriers make it more difficult for consumers to *switch*, and thus impair competition *in the smartphone markets*. *See United States v. Microsoft*, 253 F.3d 34, 53-54 (D.C. Cir. 2001) (actions targeting middleware unlawful because they helped Microsoft maintain its monopoly in the Operating System market, without requiring definition of a relevant "middleware market").

## II.    IIPs Have Both Antitrust and Article III Standing

### A.    IIPs Have Antitrust Standing

IIPs seek injunctive relief under the Sherman Act and damages pursuant to

---

uses the language of "technologies" that "reinforce[] the moat around its smartphone monopoly." *See, e.g.*, First Am. Compl. ¶ 59, *United States v. Apple, Inc.*, No. 24-CV-4055 (JXN-LDW) (D.N.J. June 11, 2024), ECF No. 51.

various state laws. As such, the five-factor antitrust standing analysis enumerated in *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 535-38 (1983) ("*AGC*")—which focuses on Sherman Act damages claims—has limited application. *In re Generic Pharms. Pricing Antitrust Litig.*, 338 F. Supp. 3d 404, 455-56 (E.D. Pa. 2018) ("*Generics*") (articulating *AGC* standard). Specifically, the fourth and fifth *AGC* factors addressing more direct victims and duplicative recovery are inapplicable to IIPs' Sherman Act injunctive relief claim, *see id.* at 456-57, and damages claims under state laws, *see In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1156 (N.D. Cal. 2009).

Only the first and second *AGC* factors concerning antitrust injury, causal connection, and intent to cause harm apply to IIPs' injunctive relief claim. *See Generics*, 338 F. Supp. 3d at 456-57. The first, second, and third *AGC* factors apply to IIPs' state law damages claims only to the extent the state's highest court has adopted *AGC*. *See Flash Memory*, 643 F. Supp. 2d at 1151-52. Absent state law to the contrary, federal courts presume that "any state with an *Illinois Brick* repealer would reject application of *AGC*." *In re Broiler Chicken Antitrust Litig.*, 290 F. Supp. 3d 772, 816 (N.D. Ill. 2017). Here, as Apple concedes, not every relevant state has adopted *AGC*. *See* Def's Mem. at 46-47; App'x 2 (providing detailed analysis of *AGC*'s application to state law).

In the interests of efficiency, IIPs adopt and incorporate the arguments in

4

Argument Section II.A-C of the DIPs' brief addressing the first three *AGC* factors. IIPs also note a few more points. ***First,*** IIPs adequately plead antitrust injury as consumers of a finished product at the end of the distribution chain who bear the brunt of Apple's overcharges. IIPs' Compl., ¶¶ 244-247, ECF No. 109. "It is difficult to imagine a more formidable demonstration of antitrust injury." *In re Warfarin Sodium Antitrust Litig.*, 214 F.3d 395, 401 (3d Cir. 2000) (reversing dismissal on *AGC* for purchasers of brand drug). ***Second,*** IIPs also adequately plead Apple's intent to cause overcharges by locking iPhone users into its ecosystem. IIP Compl., ¶¶ 6-7, 23, 73, 92, 94, 97, 99, 104, 112-13, 124-25, 131-32, 137, 141, 148, 154. Apple does not even challenge that such intent is adequately pled. ***Third,*** like the Government and DIPs, IIPs allege that Apple engaged in a monopolistic scheme to erect barriers to users switching from an iPhone to a different smartphone, thereby reducing competition in the smartphone market and allowing Apple to charge inflated prices for iPhones. *Id.*, ¶¶ 1-19, 23-34, 88, 90. This is sufficient to establish causal connection.[2] *United States v. Live Nation Ent., Inc.*, 2025 WL 835961, at *5 (S.D.N.Y. Mar. 14, 2025) ("[W]here a defendant unlawfully maintains its monopoly

---

[2] Apple's mischaracterization of IIPs' claims as a series of protracted marketplace hypotheticals (*see, e.g.,* Def's Mem. at 36-38, 40-43) is nothing more than an improper attempt to impose its own hypothetical theories on IIPs' well-pled allegations, which contravenes the bedrock principle that "the *plaintiff*"—not the *defendant*—"is the master of the complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 398-99 (1987) (emphasis added).

over a product through a course of exclusionary conduct focusing on that product, consumers of that product alleging that they were overcharged suffer a cognizable injury."). **Fourth,** the *AGC* factor concerning directness of injury is analyzed more generously under state laws allowing indirect claims.[3] The directness factor is readily met here where: (1) a single layer of commerce—Apple's sales to wireless carriers and retailers—separates Apple and IIPs who purchased a finished product; and (2) wireless carriers and retailers passed on all or virtually all of the overcharge due to Apple's minimum-retail-price strategy, as straight-forward of an exercise in tracing overcharge as there can be. *See* IIP Compl., ¶ 246; *see, e.g.*, *In re Auto. Parts Antitrust Litig.*, 50 F. Supp. 3d 836, 855 (E.D. Mich. 2014) (finding directness satisfied in a more complex distribution chain where plaintiffs bought or leased cars and not price-fixed components). **Fifth**, Apple relies on inapposite case law concerning elongated causal chains from the purchased products to claim IIP's injuries are too remote. *See* Def's Mem. at 46 (citing *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 2015 WL 3988488 (N.D. Ill. Jun. 29, 2015); *In re Cattle & Beef Antitrust Litig.*, 687 F. Supp. 828 (D. Minn. 2023)).

### B.    IIPs Have Article III Standing

Article III standing requires only (1) injury in fact, (2) traceability, and

---

[3] *In re Suboxone Antitrust Litig.*, 64 F. Supp. 3d 665, 698 (E.D. Pa. 2014).

(3) redressability. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Apple challenges only the last two elements, but its arguments do not withstand scrutiny.

***Traceability*.** IIPs specifically allege that "Apple's financial benefit resulting from its unlawful and inequitable acts is traceable to overpayments for iPhones by Plaintiffs." IIP Compl., ¶ 284. IIPs also explain that wireless carriers and retail outlets passed on all or virtually all the overcharge to IIPs, which is unsurprising given Apple's minimum-retail-price strategy. *Id.*, ¶ 246. The traceability requirement is thus satisfied. *See Broilers*, 290 F. Supp. 3d at 809-10 ("Here, [p]laintiffs plausibly allege an injury in fact by alleging that they paid inflated prices, which can be fairly traced to [d]efendants' price-fixing scheme."); *Auto. Parts*, 50 F. Supp. 3d at 851.

***Redressability*.** IIPs plead that Apple's monopolistic conduct is ongoing, and that compensatory and injunctive relief would redress their injuries. IIP Compl., ¶¶ 156, 179, 242, 249-250, 266-280. When IIPs' allegations are viewed as a whole and in the light most favorable to them, these allegations meet the "relatively modest" burden to demonstrate redressability. *Tucson v. City of Seattle*, 91 F.4th 1318, 1325 (9th Cir. 2024) (citation omitted). Redressability does not require "mathematical certainty" or a complete redress of all injury. *Toll Bros. v. Twp. of Readington*, 555 F.3d 131, 143 (3d Cir. 2009); *Barry's Cut Rate Stores Inc. v. Visa, Inc.*, 2019 WL 7584728, at *14 (E.D.N.Y. Nov. 20, 2019) (citing *Larson v. Valente*, 456 U.S. 228, 244 n.15 (1982)). Indeed, redressability is readily met in indirect

purchaser antitrust cases. *See, e.g.*, *In re Nexium Antitrust Litig.*, 968 F. Supp. 2d 367, 404 (D. Mass. 2013). Apple's arguments about "just-so theories" once again ignore IIPs' claim of a cohesive monopolistic scheme. Def's Mem. at 53-55.

### C.    IIPs Can Bring Claims on Behalf of All States Alleged

Apple further asserts that IIPs lack Article III standing to bring claims under state laws where they do not reside or did not purchase an iPhone. Def's Mem. at 55-57. This argument conflates Article III standing with Rule 23's requirements for class certification and is not a basis for dismissal of "non-resident" claims. In a class action, Article III's standing requirement is satisfied if the *class representatives* have suffered an injury-in-fact that is traceable to the defendant's conduct and redressable by a favorable court judgment or order. *Mielo v. Steak 'n Shake Operations, Inc.*, 897 F.3d 467, 478 (3d Cir. 2018); *see also Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 359 (3d Cir. 2015) ("In the context of a class action, Article III must be satisfied 'by at least one named plaintiff.'") (citation omitted).

Here, each named plaintiff alleges a concrete, economic injury caused by Apple's anticompetitive scheme. This satisfies Article III. The fact that they seek relief under other states' substantively similar statutes does not undermine standing. *See In re Copaxone Antitrust Litig.*, 2025 WL 2771874, at *6-8 (D.N.J. Aug. 7, 2025) (holding, with respect to "whether the named plaintiffs must have standing to bring claims on behalf of yet unnamed plaintiffs who reside in other states," that "this

8

question is best decided as an issue connected to class certification.").

Whether IIPs may assert claims under other states' laws is a question for class certification. Once a named plaintiff demonstrates an individual injury traceable to the defendant's conduct, questions about the applicability of other states' laws go to typicality, adequacy, predominance, and choice of law, *not* constitutional standing. *See Neale*, 794 F.3d at 367-68; *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 310-11 (3d Cir. 1998).

Following *Neale*, district courts within the Third Circuit have rejected efforts to dismiss nonresident plaintiffs' claims on "standing" grounds. *See In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*, 2022 WL 1013945, at *4-5 (D.N.J. Apr. 5, 2022) (for standing purposes, there is no difference between putative class members and named class members where the class is not certified); *Generics*, 368 F. Supp. 3d at 829-31, 838 (declining to strike nonresident state law claims); *In re Liquid Aluminum Sulfate Antitrust Litig.*, 2017 WL 3131977, at *19 (D.N.J. July 20, 2017) (rejecting defendants' argument that named indirect purchaser plaintiffs lacked standing to bring state law claims under the law of states in which they did not reside on a motion to dismiss); *see also* App'x 7.A.[4]

---

[4] Even the authority cited by Apple for this proposition is equivocal at best, as the court recognized this is "a live issue" in the Third Circuit, with "disagreement amongst district courts in this Circuit." *In re Fragrance Direct Purchaser Antitrust Litig.*, 2025 WL 579639, at *17 (D.N.J. Feb. 21, 2025) (citation omitted). While

Moreover, *every* Circuit that has addressed this issue has concluded that it concerns class certification, not Article III standing. *See, e.g.*, *In re Zantac (Ranitidine) Prods. Liab. Litig.*, 2022 WL 16729170, at *5-6 (11th Cir. Nov. 7, 2022) (agreeing with the First, Second, Fourth, and Seventh Circuits); App'x 7.B.; *see also* App'x 7.C. The Third Circuit's reasoning in *Neale* and its progeny follows the same logic. The Court should reject Apple's challenge.

### D.    IIPs Have Antitrust Standing to Bring State Law Antitrust Claims

IIPs also satisfy the standing requirements under Minnesota, Montana, and Puerto Rico's antitrust laws.[5] IIPs' allegations that Apple's monopolization of the smartphone and performance smartphone markets reduced competition and caused them to pay supracompetitive prices for their iPhones fall within the "prudential limits" set by Minnesota's Antitrust Law of 1971, Minn. Stat. §§ 325D.49 *et seq.* *Lorix v. Crompton Corp.*, 736 N.W.2d 619, 631 (Minn. 2007) (concluding that "[s]tanding under Minnesota antitrust law must be defined by some prudential limits

---

Apple claims "*a small minority* of cases have declined to dismiss claims on this basis," Def's Mem. at 56 (emphasis added), the very case it cites most for this proposition notes "*a fairly even split* of authority among the cases that have previously been confronted with this issue, and . . . no binding Third Circuit precedent directly on point," *Snowdy v. Mercedes-Benz USA, LLC*, 2024 WL 1366446, at *5 (D.N.J. Apr. 1, 2024) (emphasis added).

[5] IIPs concede that their Arkansas *antitrust* claim (Count IX) should be dismissed. But their Arkansas *consumer protection* claim (Count VIII) should not.

informed by foreseeability, proximate cause, remoteness, and relation of the injury to the purposes the antitrust law"); *see id.* (plaintiff "well within" antitrust standing limits in Minnesota, where she alleged she was an "end user of a consumer good whose price was inflated by anticompetitive conduct earlier in the chain of manufacture"); *see also In re Lorazepam & Clorazepate Antitrust Litig.*, 531 F. Supp. 2d 82, 90-91 (D.D.C. 2008), *remanded on other grounds by* 631 F.3d 537 (D.C. Cir. 2011) (third party payors alleging supracompetitive prices for prescription drugs had standing to sue under Minnesota statute).

IIPs' allegations also satisfy the antimonopoly provision of Montana's Unfair Trade Practices and Consumer Protection Act ("UTPA"), Mont. Code §§ 30-14-201 *et seq.*, the express purpose of which is "to protect the public from monopolies and unfair competition." *Montana Camo, Inc. v. Cabela's, Inc.*, 2010 WL 11606442, at *2 (D. Mont. Jan. 5, 2010) ("[E]very court discussing § 30-14-205 equates Montana's UTPA with the federal Sherman Act."); *see also* Mont. Code § 30-14-222 (private right of action for damages for any person injured by violation of Montana's statute).[6]

Finally, the causal connection between Apple's anticompetitive conduct and

---

[6] While the Montana Supreme Court has not ruled on this issue, the Court can look to the intent of the UTPA, which seeks to redress precisely the anticompetitive conduct suffered by consumers such as IIPs. *See Friends of the Wild Swan v. Dep't of Nat. Res. & Conservation*, 127 P.3d 394, 397 (Mont. 2005) (objective in statutory interpretation is to ascertain the legislature's intent, starting with the statute's text).

the injury suffered is sufficient to grant IIPs standing under the Puerto Rico Antitrust Act, 10 L.P.R.A. §§ 257 *et seq. See* Section I.B, *supra*; *Pressure Vessels P.R. v. Empire Gas P.R.*, 137 D.P.R. 497, 520 (P.R. 1994) (English translation) ("[I]t is not necessary … for the complaining party to prove anything more than a factual causal link between the harm suffered and the violation of the statute").

Because IIPs have standing under the laws of each of the state statutes under which they seek damages,[7] Apple's Motion to Dismiss should be denied.

## III. Apple's Remaining Attacks on IIPs' State Law Claims Fail

### A. IIPs State a Claim Under California's UCL

Apple argues for dismissal of IIPs' claim, brought on behalf of a Nationwide Class, under California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.* ("UCL"). Def's Mem. at 78-81. But the UCL claim has sound application to a Nationwide Class, given that Apple's iPhones are famously "[d]esigned by Apple in California,"[8] and IIPs allege the "lock in" scheme at issue was similarly "designed and implemented in California." IIP Compl., ¶ 344. Apple asserts that IIPs seek

---

[7] Contrary to Apple's claim, Def's Mem. at 45 n.8, IIPs *do* cite the specific portion of Vermont's Consumer Fraud Act prohibiting Apple's conduct and incorporate the remainder of the statute to encompass the remedies available to IIPs. *See* 9 V.S.A. § 2453(a) ("Unfair methods of competition in commerce and unfair or deceptive acts or practices in commerce are hereby declared unlawful."); IIP Compl., ¶¶ 732, 742.

[8] Press Release, "Designed by Apple in California" Chronicles 20 Years of Apple Design (Nov. 15, 2016), https://www.apple.com/newsroom/2016/11/designed-by-apple-in-california-chronicles-20-years-of-apple-design/.

improper relief, and that application of the UCL would impair other states' interests in applying their own antitrust laws. These arguments lack merit.

### 1. IIPs Plead Violations of Both Prongs of the UCL

Apple argues that since IIPs fail to state claims for antitrust violations, they also fail to state a UCL claim.[9] Def's Mem. at 78-79. IIPs disagree with the premise. IIPs have plausibly alleged Apple's violations of federal antitrust law. And because they have done so, they have also stated a claim under the UCL's "unlawful" prong, which "borrows" violations of other laws and makes them actionable under the UCL. *See, e.g.*, *Gamboa v. Apple Inc.*, 2025 WL 1684890, at *5 (N.D. Cal. June 16, 2025) (upholding UCL claim under the "unlawful" prong because plaintiffs sufficiently alleged Sherman Act violation); *Costar Grp., Inc. v. Com. Real Est. Exch., Inc.*, 141 F.4th 1075, 1086 (9th Cir. 2025), *superseded on other grounds by CoStar Grp., Inc. v. Com. Real Est. Exch., Inc.*, 150 F.4th 1056, 1063 (9th Cir. 2025) ("[B]ecause [IIPs'] claims under the UCL depend on the same underlying conduct as its §§ 1 and 2 claims, it also will have stated a claim under both the 'unfair' and 'unlawful' prongs of the UCL.").

---

[9] Apple incorrectly asserts that all Plaintiffs "bring claims under the 'unlawful' prong of the UCL," but that only the DIPs and DAWPs allege "unfair" claims. Def's Mem. at 78. In fact, IIPs allege that "Apple's conduct was *unfair*, unconscionable, or deceptive and substantially affected California trade and commerce." IIP Compl., ¶ 339 (emphasis added). To the extent necessary, IIPs "clarify [these] allegations" through their briefing. *Maio v. Aetna, Inc.*, 221 F.3d 472, 485 n.12 (3d Cir. 2000).

Independently, IIPs also allege that Apple violated the UCL's "unfair" prong, which does not require a violation of antitrust or other laws. *See Imperial Irrigation Dist. v. Cal. Indep. Sys. Operator Corp.*, 2016 WL 4087302, at *12-13 (S.D. Cal. Aug. 1, 2016) (declining to dismiss UCL claims for failure to allege an antitrust violation where conduct violated "policy or spirit" of antitrust laws); *Gamboa*, 2025 WL 660190, at *12 (N.D. Cal. Feb. 28, 2025) ("Apple argues that Plaintiffs' failure to plausibly allege a Sherman Act claim automatically dooms Plaintiffs' UCL unfair prong claim too. This argument misstates California law."). Dismissal of a UCL claim under the "unfair" prong is warranted "only in rare situations." *Friedman v. AARP, Inc.*, 855 F.3d 1047, 1055 (9th Cir. 2017) (cleaned up). Apple has failed to show that this is one of them.

### 2. IIPs Plead Restitution Under the UCL

IIPs properly seek restitution under the UCL as well, because they allege that they lack an adequate remedy at law. *See* IIP Compl., ¶¶ 346, 349; *In re Tobacco II Cases*, 207 P.3d 20, 29 (Cal. 2009) (plaintiffs can seek restitution under UCL); *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 973 P.2d 527, 539 (Cal. 1999) (same).

Apple's reliance on *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020), is misplaced. There, the plaintiffs could have sought damages under California's Consumer Legal Remedies Act. *See id.* at 838. Here, IIPs do not have such a claim. Nor do they seek treble damages under California law. More

importantly, plaintiffs may plead alternative theories of recovery, including equitable relief. For that reason, courts in this district have permitted claims for restitution to proceed at the pleading stage in parallel to claims for damages. *See Coyle v. Hornell Brewing Co.*, 2010 WL 2539386, at *5 (D.N.J. June 15, 2010) ("It is true that restitution for unjust enrichment is an equitable remedy that is unavailable when a plaintiff has an adequate remedy at law. However, it is equally true that plaintiffs are permitted to plead alternative theories of recovery.") (citing *Goadby v. Phila. Elec. Co.*, 639 F.2d 117, 122 (3d Cir. 1981)); *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 544 (D.N.J. 2004) ("Plaintiffs, however, are clearly permitted to plead alternative theories of recovery.") (collecting cases). IIPs allege that they lack an adequate remedy at law for Apple's conduct, and at this stage of the proceedings, Apple has not shown otherwise.

### 3.  Nationwide Relief Under the UCL Is Proper

Finally, Apple asserts that any UCL claim should be limited to California residents under *Stromberg v. Qualcomm Inc.*, 14 F.4th 1059, 1074 (9th Cir. 2021). Def's Mem. at 81. That case is inapposite, however, because it concerns conflicts between states that follow *Illinois Brick* and California's Cartwright Act – an *Illinois Brick* repealer statute. The UCL is not an *Illinois Brick* repealer statute; it is a consumer protection statute focused on unlawful, unfair, and deceptive business practices. Unlike an antitrust claim, such as a claim under the Cartwright Act, IIPs'

UCL claim does not seek treble damages or otherwise seek antitrust remedies.

Although *Stromberg* found a conflict in applying the Cartwright Act to non-repealer states that do not allow indirect purchasers to recover on their antitrust claims, that is fundamentally different than IIPs' UCL claim here. Moreover, the Ninth Circuit's decision in *Stromberg* was at a much more advanced stage of the proceedings, after the district court had certified a nationwide class under California's Cartwright Act. 14 F.4th at 1063. By contrast, this case is just at the pleading stage, when it is notoriously difficult to make a fact-intensive choice-of-law determination. *See, e.g.*, *Harper v. LG Elecs. USA, Inc.*, 595 F. Supp. 2d 486, 491 (D.N.J. 2009). Notably, Apple has not even presented a choice-of-law argument: Which state's choice-of-law rules apply? What is the test? What is the proper analysis? Instead, Apple simply quotes a single sentence from *Stromberg*—without mentioning that the Ninth Circuit vacated the district court's decision and ordered it to "reconduct[] its choice of law analysis starting at step one." *Stromberg*, 14 F.4th at 1074. Thus, Apple has not carried its burden.[10] The Court should reject Apple's choice-of-law challenge as premature. *See Snowdy*, 2024 WL 1366446, at *11

---

[10] *See Rutledge v. Hewlett-Packard Co.*, 238 Cal. App. 4th 1164, 1187-88 (Cal. App. 2015) (because the wrongful conduct emanated from HP's California headquarters, "California ha[d] sufficient contacts to the claims of the class members to meet constitutional standards," so "the burden was on HP to demonstrate that the interests of other state's laws were greater than California's interests") (relying on *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 244 (Cal. App. 2001)).

("Because the choice-of-law issue has not been fully briefed by the parties, the Court finds that it is premature to engage in a choice-of-law inquiry at this stage.").

Apple has not even shown a conflict of laws; restitution is a widely available remedy throughout the United States under state law. And even if there were a conflict, it would be proper to apply the UCL extraterritorially given California's strong interest in applying its laws to regulate a California corporation's misconduct occurring in California. *See* IIP Compl., ¶¶ 342-45; *AT&T Mobility LLC v. AU Optronics Corp.*, 707 F.3d 1106, 1113 (9th Cir. 2013) ("[A]nticompetitive conduct by a defendant within a state that is related to a plaintiff's alleged injuries and is not 'slight and casual' establishes a 'significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair.'") (footnote omitted) (quoting *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 312-13 (1981)).[11] No states, even those that follow *Illinois Brick*, favor protecting monopolists by barring citizens from asserting consumer protection claims. *See*

---

[11] California's UCL is commonly used for nationwide claims. *See, e.g.*, *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 598 (C.D. Cal. 2008) (explaining that "extraterritorial application of the UCL is not barred where the alleged wrongful conduct occurred in California," and certifying a nationwide class); *Chinitz v. Intero Real Est. Servs.*, 2020 WL 7391299, at *15 (N.D. Cal. July 22, 2020) (certifying nationwide class under UCL where wrongful conduct occurred in California); *Ehret v. Uber Techs., Inc.*, 68 F. Supp. 3d 1121, 1130-32 (N.D. Cal. 2014) (collecting cases and denying motion to dismiss UCL claims for nationwide class where misconduct emanated from California).

Section III.D, *infra*.

### B.    IIPs Plausibly Allege Unjust Enrichment

IIPs adequately plead unjust enrichment under the laws of all jurisdictions that have common elements of the claim. *See* IIP Compl., ¶¶ 281-89. Because they conferred on Apple an "economic benefit—profits from unlawful overcharges and monopoly profits—to the economic detriment of Plaintiffs and Class Members" who purchased new iPhones, *id.*, ¶ 285, IIPs adequately plead the elements of unjust enrichment. *See Generics*, 368 F. Supp. 3d at 849-50 (allowing unjust enrichment claims to proceed). Apple's assorted challenges fail.

*First*, Apple contends it lacks "fair notice" because IIPs' unjust enrichment claims constitute "improper compound pleading." Def's Mem. at 87 (capitalization altered). Yet courts have recognized the commonality of unjust enrichment elements in other indirect purchaser antitrust class actions. *See* App'x 5.A. In addition to pleading two common elements—that IIPs conferred on Apple an economic benefit, and that it would be inequitable for Apple to retain it, *see* IIP Compl., ¶¶ 285-87— IIPs explicitly say that they are proceeding under all states but Ohio, *see id.* at 112 n.31, so their claims are neither undifferentiated nor poorly pled.[12]

---

[12] Apple's reliance on *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 667 (E.D. Mich. 2011), is misplaced because that complaint "fail[ed] to identify any specific state unjust enrichment law." *Id*. Contrary to Apple's contention that it is

*Second*, Apple invokes *Illinois Brick* in an effort to federalize state equitable remedies and force federal policy on common law. *See* Def's Mem. at 88. But *Illinois Brick* has no application to unjust enrichment, as dozens of courts have confirmed. *See* App'x 5.B.

*Third*, Apple asserts that no unjust enrichment claim may proceed, since IIPs cannot plead an "inadequate" remedy at law. Def's Mem. at 88. Again, as noted above with respect to IIPs' UCL claim, this ignores that IIPs' claims are brought in the alternative. *See Generics*, 368 F. Supp. 3d at 851 (declining to "dismiss . . . unjust enrichment claims based on Defendant's argument regarding an adequate legal remedy" in light of "Rule 8(d)(2)'s permissiveness of alternative pleading").

*Fourth*, although Apple asserts that the unjust enrichment claims are "duplicative," Def's Mem. at 88-89, they are not. They rely on a distinct theory of recovery. *See Generics*, 368 F. Supp. 3d at 850 ("[T]he very nature of such claims requires a focus on the gains of the defendants, not the losses of the plaintiffs.") (cleaned up). Pleading alternative remedies is allowed under Rule 8(d)(2). *See id.* at 850-51 (allowing unjust enrichment as alternative relief).

*Fifth*, Apple argues that IIPs cannot maintain "standalone" claims for unjust enrichment under the laws of California and Mississippi. Def's Mem. at 89. Not so.

---

"impossible" to discern which U.S. territories are the basis of these claims, IIPs allege one territory—Puerto Rico—in the Nationwide Class.

*See R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 899-900 (C.D. Cal. 2024) (denying motion to dismiss unjust enrichment claim); *In re Pork Antitrust Litig.*, 495 F. Supp. 3d 753, 792 (D. Minn. 2020) ("Unjust enrichment has also been found to be an independent cause of action in Mississippi.").

*Finally*, Apple asserts that IIPs did not confer a "direct benefit" for purposes of 18 states' laws. Def's Mem. at 89. But a "direct benefit" does not require *privity*. The purchase of a product at an inflated price directly benefits the manufacturer even if it is sold at retail; the same anticompetitive conditions that lead to the supracompetitive price paid by IIPs also result in Apple receiving supracompetitive prices from retailers and carriers who distribute iPhones to IIPs. *See Generics*, 368 F. Supp. 3d at 850-51 ("[I]n the unjust enrichment context, the term direct refers to a benefit that is not incidental, and not to a requirement that there be privity between the parties."). "[T]he mere fact that there [is] no direct contact between a defendant and the plaintiff does not preclude a finding that the defendant received a direct benefit from that plaintiff." *Id.* (first alteration in original). Defendants' authorities are inapposite for the same reason. *See* App'x 5.A.

### C.    The vast majority of IIPs' state antitrust claims survive dismissal

#### 1.    IIPs can bring claims under Montana, Puerto Rico, Arkansas, Florida, Missouri, and South Carolina law

Apple's contention that six jurisdictions totally bar claims by indirect purchasers does not withstand scrutiny. *See* Def's Mem. at 81. The antitrust statutes

of Montana and Puerto Rico permit indirect purchaser claims. And even if the *antitrust* statutes of Arkansas, Florida, Missouri, and South Carolina bar such claims, those states' *consumer protection* statutes do not.

**Montana**. This state does not follow *Illinois Brick*. *See Olson v. Microsoft Corp.*, 2001 WL 36083237, at §1.B (Mont. Dist. Feb. 15, 2001) ("There is nothing in the statute which limits or restricts an injured person to a direct purchaser."); *see also In re Vascepa Antitrust Litig.*, 2023 WL 2182046, at *11 (D.N.J. Feb. 23, 2023) ("find[ing] *Olson* persuasive" and denying motion to dismiss). Because Apple's cited authorities largely overlook *Olson*, they are unpersuasive. Def's App'x A3-2.

**Puerto Rico**. The Puerto Rico Supreme Court adopted a "liberal standing theory" for the Puerto Rico Antitrust Act ("PRAA"), consistent with how the PRAA was interpreted in 1964, prior to *Illinois Brick. Pressure Vessels*, 137 D.P.R. at 520 ("[T]he plaintiff need not establish anything beyond a factual causal relation between the injury and the violation to meet the 'by reason of' requirement; that is, it suffices that the plaintiff has been injured as a result of the statutory violation."). Thus, "Puerto Rico explicitly rejects" any "special standing requirements" and "it is *immaterial* whether Plaintiffs are direct or indirect purchasers." *Rivera-Muñiz v. Horizon Lines Inc.*, 737 F. Supp. 2d 57, 61 (D.P.R. 2010) (emphasis added). The cases that Apple relies on endorse a view of Puerto Rico law that is inconsistent with *Pressure Vessels* and therefore erroneous. *See* Def. App'x A3-2. Indeed, a line of

21

well-reasoned decisions heed *Pressure Vessels* and *Rivera-Muñiz* and the sovereignty of Puerto Rican law. *See* App'x 3.A.

**Arkansas, Florida, Missouri, and South Carolina**. Although the Arkansas Unfair Practices Act only allows the state attorney general to bring indirect purchaser claims, the Arkansas *Deceptive Trade Practices Act*—under which IIPs bring their claims—contains no such limitation. *See* App'x 3.A. Similarly, even if Florida, Missouri, and South Carolina's antitrust statutes bar indirect purchaser claims, those states' consumer protection statutes do not. *See id.*[13]

### 2. IIPs Provided Notice

Apple next asserts that IIPs' claims under Arizona, Colorado, Hawaii, Nevada, and Utah law fail because IIPs do not allege that they notified the relevant state attorney general. Def's Mem. at 82. But IIPs explicitly allege that they would provide notice to the Nevada attorney general. IIP Compl., ¶ 529. Further, IIPs have notified these attorneys general. *See* Decl. of Joseph C. Bourne, ¶¶ 3-13. And Apple's argument fails twice over as matter of law.[14]

---

[13] IIPs concede that the Arkansas, Florida, Missouri, and South Carolina *antitrust* claims (Counts IX, XVI, XXVII, and XLIX) should be dismissed. But the *consumer protection* claims for those states (Counts VIII, XV, XXVIII, and L) should not.

[14] Under *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010), the state notice provisions do not apply in federal court because they are procedural rules that conflict with Federal Rule of Civil Procedure 23. *See In re Restasis Antitrust Litig.*, 355 F. Supp. 3d 145, 156 (E.D.N.Y. 2018); App'x 3.B.

### 3. IIPs Sufficiently Allege Intrastate Effects in New York and Tennessee

Apple contends IIPs failed to allege "particularized in-state conduct or effects" in New York and Tennessee because New York requires anticompetitive effects to be limited to New York and Tennessee requires in-state "monopolistic activities." Def's Mem. at 82.[15] Not so.

Neither statute "contains so categorical a limitation by its plain text." *In re Aggrenox Antitrust Litig.*, 94 F. Supp. 3d 224, 253 (D. Conn. 2015) (rejecting similar argument regarding antitrust statutes of New York and Tennessee, among others).[16] First, Apple quotes *H-Quotient* for the proposition that the effects must be felt only in New York (a rule that would bar virtually any antitrust claim by New York residents), but the language it relies on is just "dicta about the possibility of state antitrust laws . . . being preempted by federal antitrust law," an argument Apple does "not make." *Aggrenox*, 94 F. Supp. 3d at 253; Def's Mem. at 82-83 (quoting *H-Quotient, Inc. v. Knight Trading Grp., Inc.*, 2005 WL 323750, at *5 (S.D.N.Y. Feb. 9, 2005)).

---

Moreover, they are "not a basis for dismissal" because "they do not alter the substantive elements of Plaintiffs' claims and are not a pleading requirement for the Complaint[]." *Generics*, 368 F. Supp. 3d at 835.

[15] IIPs concede that the Alabama claim (Count VI) should be dismissed.

[16] N.Y. Gen. Bus. Law §§ 340 *et seq.*; Tenn. Code Ann. §§ 47-25-101 *et seq.*

Second, Apple suggests that Tennessee's statute reaches only in-state monopolistic activities. Def's Mem. at 83 (citing *Freeman Indus. LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 524 (Tenn. 2005)). But the Tennessee Supreme Court has explicitly "reject[ed] any standard" based on where the "anticompetitive conduct" happened and has adopted a "substantial *effects*" standard because the statute's purpose is to "protect the state's trade or commerce *affected by* the anticompetitive conduct." *Freeman*, 172 S.W.3d at 522-23 (emphases added). Apple's misreadings should be rejected. *See* App'x 3.C.

IIPs allege that Apple's conduct inflated iPhone prices "throughout" these states such that it "substantially affected New York trade and commerce" and "substantially affected Tennessee's trade and commerce to a substantial degree." IIP Compl., ¶¶ 585, 587, 714, 717. Alleging price inflation throughout a state is sufficient to plausibly allege intrastate effects. *See* App'x 3.C.

### 4. IIPs Sufficiently Allege Monopolization in Violation of New York and Kansas Law

Apple asserts that Kansas and New York law "proscribe only concerted action," but that IIPs allege "only" that it engaged in unilateral monopolization. Def's Mem. at 83. But IIPs allege concerted action to "lock in" consumers, which include numerous contractual restrictions. *See, e.g.*, IIP Compl., ¶¶ 2, 10, 29-30, 75, 77, 79, 103, 118, 133, 137, 177, 226. And New York and Kansas's statutes apply to monopolization accompanied by concerted action. *See* App'x 3.D.

24

Apple's cases do not involve this type of concerted action and are, therefore, distinguishable. *See In re Effexor Antitrust Litig.*, 357 F. Supp. 3d 363, 395 (D.N.J. 2018) (dismissing claims to the extent they were based on "unilateral conduct," but not dismissing them to the extent they were based on "concerted action"); *Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*, 737 F. Supp. 2d 380, 399 (E.D. Pa. 2010) (no agreement allegations).

### 5.  State Procedural Rules Barring Class Actions Do Not Apply

Apple argues that three antitrust claims—under Illinois, Montana, and South Carolina law—fail because these statutes "do not authorize putative class claims." Def's Mem. at 83. Under *Shady Grove*, however, such state law class action bans are preempted. 559 U.S. at 398-99. Writing for the plurality, Justice Scalia explained that "Rule 23 provides a one-size-fits-all formula for deciding the class-action question," so "it governs"—contrary state laws "notwithstanding." *Id.* District courts, including in this district, have found so with respect to these same state laws. *See* App'x 3.E.

Apple's cases to the contrary rely on Justice Stevens' *Shady Grove* partial concurrence, applying state procedural rules in diversity cases. *See* Def's Mem. at 83. But the Third Circuit "has demonstrated its preference for the reasoning of the Scalia plurality." *Vascepa*, 2023 WL 2182046, at *5 (analyzing Third Circuit precedent). The concurrence is not controlling. *See* App'x 3.E. And in any event,

numerous courts have held that these class action bars are preempted under *both* Justice Scalia's and Justice Stevens' opinions. *See* App'x 3.E.

### 6. California recognizes common-law monopolization

Contrary to Apple's contention that the California common-law claim is "non-existent," Def's Mem. at 84, it very much exists. For nearly 120 years, California courts have found monopolization contrary to public policy and actionable under the common law and, thus, have struck down employment restrictions and other restrictions based on monopoly power. *See* App'x 3.F. More recently, the California Supreme Court held that reverse-payment settlements are actionable under the Cartwright Act, as well as "unfair competition and *common law monopoly* claims." *In re Cipro Cases I & II*, 61 Cal. 4th 116, 163 (2015) (emphasis added). Apple's authorities ignore this result from California's highest court.[17] The Court should allow this claim to proceed.

### D.    IIPs' state consumer protection claims survive dismissal

### 1.  IIPs sufficiently allege deceptive conduct

Apple contends that 13 state statutes require IIPs to allege "deceptive

---

[17] Apple asserts that the "common law permitted no private right of action for damages." Def's Mem. at 85 (citing *Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26, 37 (Cal. 1998)). In *Quelimane*, however, the California Supreme Court was merely discussing a piece of what the *Court of Appeal* had decided, which it ultimately reversed. 19 Cal. 4th at 60.

conduct," "beyond a mere cause of action for antitrust damages." Def's Mem. at 85-86. With respect to ten of those statutes, that is false. Seven[18] are modeled after the FTC Act, prohibiting "unfair methods of competition," *i.e.*, antitrust violations, *in addition to* "deceptive acts." *See FTC v. Motion Picture Advert. Serv. Co.*, 344 U.S. 392, 394-95 (1953) (explaining that the FTC Act "condemn[s] as 'unfair methods of competition' existing violations of [the Sherman and Clayton Acts]."); *see also* App'x 4.A. For those seven states, an antitrust violation suffices.

Three other statutes—those of Arkansas, New Mexico, and Oregon—do not absolutely require deceptive conduct, either. *See id.*

That leaves just three statutes—those of New Jersey, New York, and South Dakota—that require deceptive conduct. But New York courts have held that antitrust violations constitute deceptive acts. *See id.* And *deceptive* antitrust violations are actionable under the New Jersey and South Dakota statutes. *See id.* IIPs sufficiently plead such deceptive conduct. They allege that Apple "wraps itself in a cloak of privacy [and] security" rationales, but that those are just fig leaves. IIP Compl., ¶ 35. In truth, "Apple imposes certain restrictions to benefit its bottom line by thwarting direct and disruptive competition[.]" *Id.*, ¶ 87; *see, e.g., id.*, ¶ 162 ("Apple once removed 11 of the 17 most downloaded apps that helped parents limit

---

[18] The states are Illinois, Florida, Pennsylvania, Rhode Island, Vermont, West Virginia, and Wisconsin.

their children's time on Apple devices," and though it claimed that "these apps could violate user privacy and security," its true motivation was stifling competition with its own parental-control app and preserving its "lock in" scheme); *id.*, ¶¶ 180-87 (alleging that Apple's privacy and security justifications are "pretextual"). In other words, Apple employs deception to perpetuate its monopolistic "lock in" scheme.

### 2. IIPs State Claims Under New Hampshire and Missouri Law

Apple also contends that IIPs fail to allege "any unfair method of competition . . . within [the] state" of New Hampshire. N.H. Stat. Ann. § 358-A:2; *see* Def's Mem. at 86. But IIPs allege that IIPs who purchased iPhones in New Hampshire— including New Hampshire resident Kori Lodi—were injured because of Apple's nationwide monopolistic scheme. IIP Compl., ¶¶ 66, 538-45. That is enough. *See LaChance v. U.S. Smokeless Tobacco Co.*, 156 N.H. 88, 95-96 (N.H. 2007) (explaining that the NHCPA "generally is given broad sweep," and that its defining "trade and commerce" to "include any trade or commerce *directly or indirectly* affecting the people of this state" is "further evidence of the broad sweep the legislature intended" (cleaned up)); *see also* App'x 4.B. (applying *LaChance*).

Finally, Apple argues that the Missouri claim is an "end-run around *Illinois Brick*." Def's Mem. at 86-87 (citing *In re Suboxone Antitrust Litig.*, 64 F. Supp. 3d 665, 702 (E.D. Pa. 2014)). But the Missouri Supreme Court has held that the MMPA's "broad language of 'any person who has suffered any ascertainable loss'

28

contemplates that other parties, *besides the direct purchaser or contracting party*, . . . are included among those eligible to receive restitution." *Gibbons v. J. Nuckolls, Inc.*, 216 S.W.3d 667, 669 (Mo. 2007) (emphasis added) (citation omitted). Thus, nearly every court that has considered the issue has concluded that indirect purchasers can recover. *See* App'x 4.C.

### E.    Statute of Limitations Issues Are Premature

Apple's attempt to limit the time period for IIPs' recovery under 11 state law claims is premature at best. Statute of limitations defenses may not be raised at the pleading stage unless it is "apparent on the face of the complaint" that the *entire claim* was untimely. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). Accordingly, determining "[w]hat the applicable period for the calculation of damages may be does not need to be decided on this motion to dismiss." *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 551 (D.N.J. 2004); *see also In re Visa Debit Card Antitrust Litig.*, 2025 WL 3019893, at *9 (S.D.N.Y. Oct. 28, 2025) (holding arguments "seek[ing] to limit the recovery available under the various state laws…should be addressed on motions for summary judgment and class certification"). Because there is no basis to dismiss the claims entirely, the Court should not consider Apple's arguments at this early stage.

IIPs not only dispute Apple's timing, but also the substance of its arguments. *See* App'x 6 (addressing Def's App'x 6). For instance, Apple asserts that under New

Jersey law, IIPs cannot recover damages accruing before the state amended its antitrust law to permit indirect purchaser claims. *See* Def's Mem. at 90. This argument ignores New Jersey Supreme Court precedent supporting retroactive application of New Jersey's repeal of *Illinois Brick*. *See Gibbons v. Gibbons*, 432 A.2d 80, 85 (N.J. 1981) (applying an amendment retroactively because it "reflect[ed] the Legislature's attempt to improve a statutory scheme already in existence"). And Apple's arguments regarding Tennessee law overlook that "[Tennessee] state courts appear[ed] to treat monopolization claims as viable" under the previous iteration of the state's antitrust statute. *In re Asacol Antitrust Litig.*, 2016 WL 4083333, at *15 (D. Mass. July 20, 2016) (citing *Sherwood v. Microsoft Corp.*, 2003 WL 21780975, at *30 (Tenn. Ct. App. July 31, 2003) (allowing a monopolization claim to go forward without considering the issue of unilateral conduct)); *Duke v. Browning-Ferris Indus. of Tenn., Inc.*, 2006 WL 1491547, at *1 (Tenn. Ct. App. May 31, 2006) (similar)). The class periods applicable to IIPs' state law damages claims should be determined at the class certification stage of the proceedings, not on a motion to dismiss, and certainly not on the basis of Apple's erroneous legal interpretations.

## CONCLUSION

For the foregoing reasons, Apple's Motion to Dismiss should be denied.

DATED: November 20, 2025          Respectfully submitted,

/s/ *Stanley O. King*
**STANLEY O. KING, ESQ.**

**JAVERBAUM WURGAFT HICKS KAHN WIKSTROM & SININS, P.C.**
Attorney ID No. 03413-1996
1000 Haddonfield-Berlin Road
Suite 203
Voorhees, NJ 08043
Tel: (856) 596-4100
sking@lawjw.com

Michael Dell'Angelo
Candice J. Enders
J. Taylor Hollinger
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
mdellangelo@bergermontague.com
cenders@bergermontague.com
thollinger@bergermontague.com

Heidi M. Silton
Jessica N. Servais
Joseph C. Bourne
Michael J.K.M. Kinane
**LOCKRIDGE GRINDALNAUEN PLLP**
100 Washington Avenue South,
Suite 2200
Minneapolis, MN 55401
Tel: (612) 339-6900
hmsilton@locklaw.com
jnservais@locklaw.com
jcbourne@locklaw.com
mjkmkinane@locklaw.com

Matthew S. Weiler
Todd M. Schneider
Raymond S. Levine
Suneel Jain
**SCHNEIDER WALLACE COTTRELL KIM LLP**
2000 Powell Street, Suite 1400
Emeryville, CA 94608
Tel: (415) 421-7100
mweiler@schneiderwallace.com
tschneider@schneiderwallace.com
rlevine@schneiderwallace.com
sjain@schneiderwallace.com

William G. Caldes
Jeffrey L. Spector
Rachel Kopp
**SPECTOR ROSEMAN & KODROFF, P.C.**
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Tel: (215) 496-0300
bcaldes@srkattorneys.com
jspector@srkattorneys.com
rkopp@srkattorneys.com

*Interim Co-Lead Counsel for Indirect iPhone Purchaser Plaintiffs*