# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: APPLE INC. SMARTPHONE ANTITRUST LITIGATION | Case No. 2:24-md-03113-JXN-LDW<br><br>MDL No. 3113<br><br>Hon. Julien X. Neals, U.S.D.J.<br>Hon. Leda D. Wettre, U.S.M.J. |

## STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA

ABIGAIL A. SLATER
*Assistant Attorney General*

DINA KALLAY
*Deputy Assistant Attorney General*

MARK H. HAMER
*Deputy Assistant Attorney General*

DAVID B. LAWRENCE
*Policy Director*

ALICE A. WANG
*Counsel to the Assistant Attorney General*

DANIEL E. HAAR
STRATTON C. STRAND
ANDREW N. DeLANEY
*Attorneys*

U.S. Department of Justice
Antitrust Division
950 Pennsylvania Avenue, NW
Washington, DC 20530
Telephone: (914) 256-0514
E-mail: andrew.delaney@usdoj.gov

*Attorneys for the United States of America*

# TABLE OF CONTENTS

INTEREST OF THE UNITED STATES ...................................................................................... 1

BACKGROUND .......................................................................................................................... 2

ARGUMENT ................................................................................................................................. 3

    I.   Legal principles ............................................................................................................... 3

    II.  All contracts are concerted action .................................................................................. 5

    III. The label "hybrid" does not determine the applicability of the per se rule ................... 5

CONCLUSION .............................................................................................................................. 8

# TABLE OF AUTHORITIES

**Cases**

*American Needle, Inc. v. NFL*,
  560 U.S. 183 (2010) .................................................................................................... 3

*AT&T Corp. v. JMC Telecom, LLC*,
  470 F.3d 525 (3d Cir. 2006) ........................................................................................ 7

*Aya Healthcare Services, Inc. v. AMN Healthcare, Inc.*,
  9 F.4th 1102 (9th Cir. 2021) ....................................................................................... 6

*Big Apple BMW, Inc. v. BMW of North America, Inc.*,
  974 F.2d 1358 (3d Cir. 1992) ...................................................................................... 7

*Board of Trade of City of Chicago v. United States*,
  246 U.S. 231 (1918) .................................................................................................... 5

*Brown Shoe Co. v. United States*,
  370 U.S. 294 (1962) .................................................................................................... 4

*Business Electronics. Corp. v. Sharp Electronics Corp.*,
  485 U.S. 717 (1988) .................................................................................................... 4

*California Dental Ass'n v. F.T.C.*,
  526 U.S. 756 (1999) .................................................................................................... 4

*Deslandes v. McDonald's USA, LLC*,
  81 F.4th 699 (7th Cir. 2023) .................................................................................. 4, 6

*Epic Games, Inc. v. Apple, Inc.*,
  67 F.4th 946 (9th Cir. 2023) ....................................................................................... 5

*Fashion Originators' Guild of America v. FTC*,
  312 U.S. 457 (1941) .................................................................................................... 6

*General Leaseways, Inc. v. National Truck Leasing Ass'n.*,
  744 F.2d 588 (7th Cir. 1984) ...................................................................................... 4

*Gibson v. Cendyn Grp.*,
  148 F.4th 1069 (9th Cir. 2025) ........................................................................... 2, 3, 5

*Hobart Bros. v. Malcolm T. Gilliland, Inc.*,
  471 F.2d 894 (5th Cir. 1973) ...................................................................................... 7

*Illinois Corporate Travel, Inc. v. American Airlines, Inc.*,
  889 F.2d 751 (7th Cir. 1989) .................................................................................................. 7

*In re Insurance Brokerage Antitrust Litigation*,
  618 F.3d 300 (3d Cir. 2010) ............................................................................................... 4, 7

*Klor's, Inc. v. Broadway-Hale Stores, Inc.*,
  359 U.S. 207 (1959) ............................................................................................................. 6

*NCAA v. Alston*,
  594 U.S. 69 (2021) ............................................................................................................... 4

*NCAA v. Board of Regents of University of Oklahoma*,
  468 U.S. 85 (1984) ........................................................................................................... 4, 5

*Northwest Wholesale Stationers, Inc. v. Pacific Stationery & Printing Co.*,
  472 U.S. 284 (1985) ............................................................................................................. 5

*NYNEX Corp. v. Discon, Inc.*,
  525 U.S. 128 (1998) ............................................................................................................. 6

*Ohio v. American Express Co.*,
  585 U.S. 529 (2018) ......................................................................................................... 3, 4

*Palmer v. BRG of Georgia, Inc.*,
  498 U.S. 46 (1990) ........................................................................................................... 4, 6

*Pitchford v. PEPI, Inc.*,
  531 F.2d 92 (3d Cir. 1975) .................................................................................................. 7

*Red Diamond Supply, Inc. v. Liquid Carbonic Corp.*,
  637 F.2d 1001 (5th Cir. 1981) ............................................................................................. 7

*Rothery Storage & Van Co. v. Atlas Van Lines, Inc.*,
  792 F.2d 210 (D.C. Cir. 1986) ............................................................................................. 4

*Standard Oil Co. of New Jersey v. United States*,
  221 U.S. 1 (1911) ................................................................................................................. 4

*Texaco Inc. v. Dagher*,
  547 U.S. 1 (2006) ................................................................................................................. 4

*Toledo Mack Sales & Service, Inc. v. Mack Trucks, Inc.*,
  530 F.3d 204 (3d Cir. 2008) ........................................................................................ 3, 4, 5

*United States v. Agri Stats, Inc.*,
  2024 WL 2728450 (D. Minn. May 28, 2024) ............................................................... 1

*United States v. Aiyer*,
  33 F.4th 97 (2d Cir. 2022) ........................................................................................... 1

*United States v. American Airlines Group Inc.*,
  121 F.4th 209 (1st Cir. 2024) ...................................................................................... 1

*United States v. Apple, Inc.*,
  791 F.3d 290 (2d Cir. 2015) .................................................................................... 1, 6

*United States v. Brewbaker*,
  87 F.4th 563 (4th Cir. 2023) ............................................................................... 2, 3, 5

*United States v. Fischback & Moore, Inc.*,
  750 F.2d 1183 (3d Cir. 1984) ...................................................................................... 4

*United States v. General Motors Corp.*,
  384 U.S. 127 (1966) ..................................................................................................... 6

*United States v. Lischewski*,
  860 F. App'x 512 (9th Cir. 2021) ................................................................................ 1

*United States v. Paramount Pictures*,
  334 U.S. 131 (1948) ..................................................................................................... 6

*United States v. Socony-Vacuum Oil Co.*,
  310 U.S. 150 (1940) .................................................................................................. 4, 6

*United States v. Visa U.S.A., Inc.*,
  344 F.3d 229 (2d Cir. 2003) ........................................................................................ 1

*Winn-Dixie Stores, Inc. v. Eastern Mushroom Marketing Cooperative, Inc.*,
  89 F.4th 430 (3d Cir. 2023) ......................................................................................... 7

**Statutes**

15 U.S.C. § 1 ................................................................................................................ 1, 3, 5

28 U.S.C. § 517 .................................................................................................................. 1

**INTEREST OF THE UNITED STATES**

The United States has a strong interest in the correct application of the antitrust laws. The United States enforces Section 1 of the Sherman Act, 15 U.S.C. § 1, both under the per se rule, *see*, *e.g.*, *United States v. Aiyer*, 33 F.4th 97 (2d Cir. 2022); *United States v. Lischewski*, 860 F. App'x 512 (9th Cir. 2021); *United States v. Apple, Inc.*, 791 F.3d 290 (2d Cir. 2015), and under the rule of reason, *see*, *e.g.*, *United States v. Am. Airlines Grp. Inc.*, 121 F.4th 209 (1st Cir. 2024); *United States v. Visa U.S.A., Inc.*, 344 F.3d 229 (2d Cir. 2003); *United States v. Agri Stats, Inc.*, No. 23-CV-3009, 2024 WL 2728450 (D. Minn. May 28, 2024). The United States also files amicus briefs and statements of interest in private civil actions that implicate important Section 1 principles. *See*, *e.g.*, Br. for the United States as Amicus Curiae in Supp. of Pls.-Appellants, *Gibson v. Cendyn Grp., LLC*, No. 24-3576, Dkt. 28.1 (9th Cir. Oct. 24, 2024), at https://www.justice.gov/atr/media/1376121/dl (concerted action); Br. for the United States and Federal Trade Commission as Amicus Curiae in Supp. of Pls.-Appellants, *Deslandes v. McDonald's USA, LLC*, Nos. 22-2333, 22-2334, Dkt. 51 (7th Cir. Nov. 18, 2022), at https://www.justice.gov/atr/case-document/file/1552391/dl?inline (applicability of per se rule); Br. for the United States as Amicus Curiae in Supp. of Panel Rehearing, *Winn-Dixie Stores, Inc. v. E. Mushroom Mktg. Coop., Inc.*, No. 22-2289, Dkt. 58 (3d Cir. Nov. 20, 2023), at https://www.justice.gov/d9/2023-11/418349.pdf (same); Statement of Interest of the United States, *In re Multiplan Health Insurance Provider Litig.*, No. 1:24-cv-06795, Dkt. 382 (N.D. Ill. Mar. 27, 2025), at https://www.justice.gov/atr/media/1394631/dl?inline (concerted action).

The United States files this statement under 28 U.S.C. § 517 to address two aspects of Apple's motion to dismiss the Direct Apple Watch Purchaser Plaintiffs' (Watch Plaintiffs) Section 1 claim: Apple's arguments that the challenged agreements (1) are not concerted action

1

under *Gibson v. Cendyn Grp.*, 148 F.4th 1069 (9th Cir. 2025); and (2) in any event, *United States v. Brewbaker*, 87 F.4th 563 (4th Cir. 2023), requires them to be assessed under the rule of reason if they are so-called "hybrid" restraints. The United States takes no position on whether the restraints are vertical, on the other issues raised by Apple's motion, or on the motion's ultimate disposition. This statement has no bearing on the United States' monopolization case against Apple, *United States v. Apple, Inc.*, No. 2:24-cv-04055, which asserts only claims under Section 2 of the Sherman Act.

## BACKGROUND

As relevant here, Watch Plaintiffs allege that "Apple forces all iOS app developers, including its competitors in the iOS-connected smartwatch market, to enter into its Developer Program License Agreement (DPLA) as a condition of distributing iOS apps." Dkt 86 at 91-92 (¶ 271). Watch Plaintiffs challenge under Section 1 the provisions of the DPLA contracts that "restrict[] the signatories' access to private APIs [Application Programming Interfaces]" and require the signatories "to use public APIs 'in the manner prescribed by Apple'"; as well as "the provisions of the App Review Guidelines," which are incorporated into the DPLAs. *Id.* at 15 (¶ 48), 92 (¶ 272). Specifically, Watch Plaintiffs claim that Apple's agreements with its smartwatch competitors are per se illegal, because the relevant DPLA provisions constitute agreements that those competitors "will limit the capabilities of their iOS-connected smartwatches at Apple's discretion, regardless of the technical ability to provide those capabilities to iPhone owners." *Id.* at 92 (¶ 273). In addition, Watch Plaintiffs claim that Apple's agreements with its smartwatch competitors and other app developers are illegal under the rule of reason. *Id.* at 92 (¶ 274).

Apple moves to dismiss the Section 1 claim, arguing that the amended complaint fails to plead concerted action. Dkt. 123-1 at 73-75. Specifically, Apple argues that the DPLAs do not "'restrain trade *in the relevant market*'" and therefore "cannot give rise to a Section 1 claim." *Id.* at 74 (quoting *Gibson*, 148 F.4th at 1082). Apple argues in the alternative that, even if the DPLAs are concerted action, the amended complaint does not state a per se claim because the DPLAs (1) are vertical restraints, *id.* at 75-76; or (2) at most "create[] a 'hybrid' relationship," *id.* at 76-77 (citing and quoting *Brewbaker*, 87 F.4th at 573-83 & 583 n.14).

**ARGUMENT**

This Court should decline Apple's invitation to rely on *Gibson* and *Brewbaker*. Such reliance would be erroneous.

**I.    Legal principles**

Section 1 of the Sherman Act bars "every contract, combination . . . or conspiracy, in restraint of [interstate or foreign] trade or commerce." 15 U.S.C. § 1. Given the background law against which the Sherman Act was enacted, courts have long "understood § 1 to outlaw only *unreasonable* restraints." *Ohio v. Am. Express Co.*, 585 U.S. 529, 540 (2018) (citation omitted). A Section 1 claim, then, has two primary elements: "First, the plaintiff must show that the defendant was a party to a 'contract, combination . . . or conspiracy'"—terms referred to collectively as "concerted action." *Toledo Mack Sales & Serv., Inc. v. Mack Trucks, Inc.*, 530 F.3d 204, 218 (3d Cir. 2008). "Second, the plaintiff must show that the conspiracy to which the defendant was a party imposed an unreasonable restraint on trade." *Id.*; *accord, e.g., Am. Needle, Inc. v. NFL*, 560 U.S. 183, 186 (2010).

Restraints are categorized as "horizontal" or "vertical." Horizontal restraints are "agreement[s] among competitors on the way in which they will compete with one another."

3

*NCAA v. Bd. of Regents of Univ. of Okla.*, 468 U.S. 85, 99 (1984); *see also Am. Express*, 585 U.S. 529, 543 n.7 (2018) ("[H]orizontal restraints involve agreements between competitors not to compete in some way."); *Rothery Storage & Van Co. v. Atlas Van Lines, Inc.*, 792 F.2d 210, 229 (D.C. Cir. 1986) (Bork, J.) ("[H]orizontal restraints . . . eliminate some degree of rivalry between persons or firms who are actual or potential competitors."). On the other hand, when "firms at different levels of distribution" agree on matters over which they do not compete, those agreements are "vertical." *Bus. Elecs. Corp. v. Sharp Elecs. Corp.*, 485 U.S. 717, 730 & n.4 (1988); *see also Brown Shoe Co. v. United States*, 370 U.S. 294, 323 (1962).

Restraints "can be unreasonable in one of two ways." *Am. Express*, 585 U.S. at 540. Some restraints are unreasonable per se based on their inherently anticompetitive "nature and character." *Standard Oil Co. of N.J. v. United States*, 221 U.S. 1, 64–65 (1911); *see also, e.g., NCAA v. Alston*, 594 U.S. 69, 89 (2021). These per se unlawful restraints include horizontal agreements to fix prices, *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 218 (1940);[1] rig bids, *United States v. Fischback & Moore, Inc.*, 750 F.2d 1183, 1192 (3d Cir. 1984); or allocate markets, *Palmer v. BRG of Ga., Inc.*, 498 U.S. 46, 49–50 (1990) (per curiam).[2] Restraints that are not unreasonable per se are evaluated under the "rule of reason," a "fact-specific assessment" of "the restraint's actual effect on competition." *Am. Express*, 585 U.S. at 541 (cleaned up); *accord Toledo Mack*, 530 F.3d at 220. "[N]early every . . . vertical restraint . . . should be assessed under the rule of reason." *Am. Express*, 585 U.S. at 541.

---

[1] A horizontal "agreement on output also equates to a price-fixing agreement." *California Dental Ass'n v. F.T.C.*, 526 U.S. 756, 777 (1999) (quoting *General Leaseways, Inc. v. National Truck Leasing Ass'n.*, 744 F.2d 588, 594–595 (7th Cir. 1984)).

[2] Such restraints may escape per se treatment if the defendant establishes a defense, such as the ancillary-restraints defense. *See, e.g., Texaco Inc. v. Dagher*, 547 U.S. 1, 7 (2006); *Deslandes v. McDonald's USA, LLC*, 81 F.4th 699, 705 (7th Cir. 2023); *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 345 (3d Cir. 2010). Apple does not appear to invoke any such defenses.

4

## II. All contracts are concerted action

By its terms, Section 1 applies to "every contract . . . in restraint of . . . trade." 15 U.S.C. § 1. And the Supreme Court long has recognized that every contract restrains trade. *See Bd. of Trade of Chi. v. United States*, 246 U.S. 231, 238 (1918) ("Every agreement concerning trade . . . restrains."); *Nw. Wholesale Stationers, Inc. v. Pac. Stationery & Printing Co.*, 472 U.S. 284, 289 (1985) ("[E]very commercial agreement restrains trade."); *Bd. of Regents*, 468 U.S. at 98 ("[E]very contract is a restraint of trade."). Every contract, then, is concerted action; whether a contract violates Section 1 depends on whether the contract unreasonably restrains trade. *Toledo Mack*, 530 F.3d at 218. As the Ninth Circuit explained in holding that the DPLAs—the very DPLAs at issue here—qualified as concerted action, to hold otherwise would "plainly contradict" the statutory text and "read the word 'contract' out of the statute." *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 982 (9th Cir. 2023) (cleaned up). *Gibson* did not address the DPLAs, and it did not purport to overturn—nor, as a panel decision, could it have overturned—*Epic Games*. *See Gibson*, 148 F.4th at 1076-88.

## III. The label "hybrid" does not determine the applicability of the per se rule

Relying on *Brewbaker*, Apple suggests that the per se rule cannot apply if the parties to a contract have a "'hybrid' relationship"—*i.e.*, a "relationship with horizontal and vertical elements." Dkt. 123-1 at 76 (citing and quoting *Brewbaker*, 87 F.4th at 573–83 & 583 n.14); *see also Brewbaker*, 87 F.4th at 576 n.9 (opining that only "agreements between entities who are *only* related as competitors" can qualify for condemnation under an established per se rule). But *Brewbaker* is wrong, as is Apple's argument.

The Supreme Court has repeatedly treated as horizontal—and thus potentially subject to per se condemnation—agreements among competitors over how they will compete, even when

5

the parties also have a vertical relationship. In *Palmer*, for example, the Supreme Court held an agreement "unlawful on its face" under the per se rule against horizontal market allocations even though one of the parties not only competed with, but also (vertically) licensed materials from, the other. 498 U.S. at 47, 49–50. Similarly, in *Socony-Vacuum*, the Court held that a conspiracy, whose members included competing oil refiners and their vertically related customers, was horizontal price fixing and hence per se unlawful. 310 U.S. at 166–69 & n.4, 218; *see NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128, 133 (1998) (citing *Socony-Vacuum* as an example of a horizontal price-fixing case).[3] Courts of Appeals, including the Third Circuit, have done so as well. *See, e.g.*, *Deslandes v. McDonald's USA, LLC*, 81 F.4th 699, 703 (7th Cir. 2023) (Easterbrook, J.) (applying per se rule to a "horizontal restraint" through which McDonald's and its vertically-related franchisees agreed not to compete for labor); *Aya Healthcare Services, Inc. v. AMN Healthcare, Inc.*, 9 F.4th 1102, 1109 (9th Cir. 2021) (holding that agreement not to compete for labor was a "horizontal" restraint, even though parties were in a "subcontractor-subcontractee relationship"); *United States v. Apple, Inc.*, 791 F.3d 290, 316-21 (2d Cir. 2015) (holding that agreement was horizontal and per se unlawful even though participants were (1) Apple and (2) book publishers that competed with each other but were

---

[3] *See also, e.g.*, *United States v. Gen. Motors Corp.*, 384 U.S. 127, 129, 145 (1966) (group boycott among competing car dealers, as well as a vertically related car manufacturer, was per se unlawful); *Klor's, Inc. v. Broadway-Hale Stores, Inc.*, 359 U.S. 207, 208–09, 211–13 (1959) (group boycott among competing manufacturers and distributors, as well as a vertically related retailer, was per se unlawful); *United States v. Paramount Pictures*, 334 U.S. 131, 140–42 (1948) (holding, in case involving defendants that competed but also had vertical distribution relationships, that "all the defendants" were part of a "horizontal" "price-fixing conspirac[y]"); *Fashion Originators' Guild of Am. v. FTC*, 312 U.S. 457, 461 (1941) (group boycott among competing garment retailers, their vertically related suppliers (competing garment manufacturers), and the manufacturers' vertically related suppliers (competing textile producers) was per se unlawful); *see NYNEX*, 525 U.S. at 135 ("[P]recedent"—including *Klor's* and *Fashion Originators' Guild*—"limits the *per se* rule in the boycott context to cases involving horizontal agreements among direct competitors.").

6

vertically related to Apple); *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 336–37, 344 (3d Cir. 2010) (holding that plaintiffs pleaded a per se unlawful bid-rigging conspiracy among insurers, even though "the conspiracy was instigated, coordinated, and policed" by a vertically related broker); *Big Apple BMW, Inc. v. BMW of North America, Inc.*, 974 F.2d 1358, 1376, 1380 (3d Cir. 1992) (stating that plaintiffs had "present[ed] a horizontal boycott case" by offering evidence that a car distributor "and its dealers acted in concert" to prevent the plaintiffs from becoming dealers).[4] As these cases show, when the parties to an agreement are related both as competitors and as supplier-customers, the orientation of the agreement depends on the nature of the restraint it imposes: If the restraint concerns the parties' competition, the agreement is horizontal. *See, e.g.*, *Apple*, 791 F.3d at 297 ("[T]he Sherman Act outlaws *agreements* that unreasonably restrain trade and therefore requires evaluating the nature of the restraint, rather than the identity of each party who joins in to impose it, in determining whether the per se rule is properly invoked.").[5]

---

[4] *Winn-Dixie Stores, Inc. v. E. Mushroom Mktg. Coop., Inc.*, 89 F.4th 430 (3d Cir. 2023), is inapposite. *Winn-Dixie* held only that quick-look condemnation was not appropriate for the "unique" scheme there at issue, cautioning that "we have no occasion to address" whether the per se rule should apply. *Id.* at 435, 442 & n.7.

[5] Courts have applied the same analysis in the context of dual-distribution relationships. Dual distribution occurs where a manufacturer both sells its products through distributors (and thus has a vertical relationship with those distributors) and distributes the products itself (and thus competes with its distributors). *See Ill. Corporate Travel, Inc. v. Am. Airlines, Inc.*, 889 F.2d 751, 753 (7th Cir. 1989). Consistent with *Bd. of Regents*' definition of horizontality, the dual-distribution cases treat restraints between dual-distributing manufacturers and their dealers as horizontal when the parties agree on the way they will compete with one another at the distribution level, *see, e.g.*, *Pitchford v. PEPI, Inc.*, 531 F.2d 92, 101, 104 (3d Cir. 1975); *Hobart Bros. v. Malcolm T. Gilliland, Inc.*, 471 F.2d 894, 899 (5th Cir. 1973), and as vertical when the parties agree on the terms of their supply relationship, *see, e.g.*, *AT&T Corp. v. JMC Telecom, LLC*, 470 F.3d 525, 531 (3d Cir. 2006); *Red Diamond Supply, Inc. v. Liquid Carbonic Corp.*, 637 F.2d 1001, 1004 (5th Cir. 1981).

Here, the amended complaint alleges that Apple and the DPLA signatories—competitor smartwatch makers and other third-party app developers—are vertically related: Apple provides digital certificates that allow the signatories access to the App Store and app distribution. Dkt. 86 at 12 (¶ 40). The amended complaint alleges that Apple and some of the DPLA signatories also are horizontally related: They compete in the market for iOS-connected smartwatches. *Id.* at 91-92 (¶¶ 271-73). To determine the orientation of the DPLAs between Apple and its competitor smartwatch makers, this Court should determine whether the DPLAs concern the way those parties compete. If so, the DPLAs are horizontal; if not, they are vertical.

## CONCLUSION

The United States asks that this Court assess the concerted-action and horizontality issues under the principles described herein.

Respectfully submitted,

ABIGAIL A. SLATER
*Assistant Attorney General*

DINA KALLAY
*Deputy Assistant Attorney General*

MARK H. HAMER
*Deputy Assistant Attorney General*

DAVID B. LAWRENCE
*Policy Director*

ALICE A. WANG
*Counsel to the Assistant Attorney General*

DANIEL E. HAAR
STRATTON C. STRAND
ANDREW N. DeLANEY
*Attorneys*

Dated: December 16, 2025

*/s/ Andrew DeLaney*
ANDREW N. DeLANEY

*Attorneys for the United States of America*

## CERTIFICATE OF SERVICE

I hereby certify that on December 16, 2025, I electronically filed the foregoing brief by using the CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the CM/ECF system.

                                                              */s/ Andrew DeLaney*
                                                              ANDREW N. DeLANEY