# McElroy Deutsch

1300 Mount Kemble Avenue
P.O. Box 2075
Morristown, NJ 07962-2075
**T:** 973.993.8100 | **F:** 973.425.0161
**MDMC-LAW.COM**

THOMAS R. CURTIN
Direct Dial: (973) 401-7117
tcurtin@mdmclaw.com

February 6, 2026

<u>**Via ECF**</u>

Honorable Julien Xavier Neals, U.S.D.J.
United States District court
Martin Luther King Bldg. & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07102

  Re: In Re: Apple Inc. Smartphone Antitrust Litigation
     Civil Action No. 24-md-03113 (JXN)(LDW)

Dear Judge Neals:

  We represent plaintiff Joseph Giamanco in this multi-district litigation, along with attorneys from Korein Tillery LLC, MoloLamken LLP, and Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C

  Watch Plaintiffs write in response to Apple's letter of January 22, 2026, Dkt. 153, submitting the inapposite decision in *AliveCor, Inc. v. Apple Inc.*, No. 24-1392, 2026 WL 61304 (9th Cir. Jan. 8, 2026). That case involved Apple's decision to cease providing one type of data to developers that Apple had replaced with a better kind that it *did* share with developers. The Court held such a unilateral refusal to make available to competitors something that it no longer made available *at all* was a lawful refusal to deal. This case is nothing like *AliveCor*. Direct Apple Watch Purchasers allege Apple engaged in a multifaceted scheme to monopolize smartwatch markets using *contractual and technological restrictions* that *affirmatively interfere* with third-party dealing and consumer use. The stark differences between the cases illustrate why the refusal-to-deal framework does not apply here.

  AliveCor developed a replacement watchband for the Apple Watch; used with an AliveCor app, it had a feature called SmartRhythm that allowed users to detect episodes of irregular heart rhythm known as Afib. *Id.* at *3. That feature was developed using a particular algorithm (called "HRPO") for calculating a wearer's heart rate. *Id.* App developers had access to HRPO-generated data through an API. *Id.* at *2. Apple subsequently installed a superior algorithm ("HRNN"), after which it ceased providing the inferior HRPO-generated data, and then removed HRPO from the

NEW JERSEY NEW YORK PENNSYLVANIA CONNECTICUT MASSACHUSETTS COLORADO DELAWARE FLORIDA RHODE ISLAND

#13684147v1<MDMDOCS>

# McElroy Deutsch

Honorable Julien Xavier Neals, U.S.D.J.
United States District court
Martin Luther King Bldg. & U.S. Courthouse

February 6, 2026
Page 2

Apple Watch altogether. *Id.* at *3. Apple provided AliveCor access to superior HRNN-generated data, but AliveCor's SmartRhythm feature ceased working because it only functioned with the no-longer-available HRPO-generated data. *Id.* Around the same time, Apple developed its own feature for detecting Afib. *Id.* AliveCor sued Apple for monopolization based on Apple's decision to cease providing the HRPO-generated data. *Id.*

The Ninth Circuit affirmed the district court's grant of summary judgment. *Id.* at *4, *10. AliveCor's central theory was that "Apple was obligated to provide its HRPO data to its competitors, both before and after it stopped generating HRPO data." *Id.* at *7. According to the Ninth Circuit, requiring Apple to continue providing data from the old algorithm that it no longer used "implicate[s] the same concerns regarding incentives to innovate and judicial competency that the Supreme Court articulated in *Trinko*"; furthermore, AliveCor failed "to establish an exception from [the] general rule" that a purely unilateral refusal to deal with a rival is generally lawful.[1] *Id.*

Although some of Watch Plaintiffs' allegations implicate Apple's APIs, the resemblance to *AliveCor* ends there. Not only did AliveCor not challenge Apple's product change (the incorporation of HRNN data), it did not allege that Apple placed *any* restriction on consumers[2] or non-competitor third parties.[3] Nor were AliveCor's claims based on any contractual restrictions. AliveCor challenged only Apple's purely unilateral decision to discontinue access to data from the inferior old algorithm. By contrast, Watch Plaintiffs allege a comprehensive scheme of overlapping contractual and technological restraints – not one of which was at issue in *AliveCor* – that have the purpose and effect of locking competing smartwatch producers out of the market, and that have no legitimate procompetitive justification. *See* Watch Plaintiffs' Motion to Dismiss Opp. (Dkt. 141) at 25-38 (explaining the nature of Apple's anticompetitive conduct and detailing why the refusal-to-deal doctrine does not shield Apple from liability). This Court has already

---

[1] "AliveCor d[id] not argue that the *Aspen Skiing* exception applies here." *AliveCor*, 2026 WL 61304, at *9; *see also id.* at *10 ("Because AliveCor . . . d[id] not argue that *Aspen Skiing* applie[d], AliveCor has failed to show that Apple had a duty to [deal]."). Watch Plaintiffs, by contrast, explained why even under a refusal-to-deal framework, they meet the *Aspen Skiing* exception. Watch Plaintiffs' Motion to Dismiss Opp. (Dkt. 141) at 37.

[2] *Compare AliveCor*, 2026 WL 61304 (9th Cir. Jan. 8, 2026), *with, e.g.*, Dkt. 141 at 25-26, 31 ("Apple's restraints also interfere with how iPhone owners use *their own phones* to prevent them from using their preferred smartwatches.").

[3] *Compare AliveCor*, 2026 WL 61304 (9th Cir. Jan. 8, 2026), *with, e.g.*, Dkt. 141 at 31-34 ("Apple's Comprehensive Scheme Is Directed at Third Parties").

McElroy, Deutsch, Mulvaney & Carpenter, LLP
COLORADO   · CONNECTICUT   · DELAWARE   · FLORIDA   · MASSACHUSETTS   · NEW JERSEY   · NEW YORK   · PENNSYLVANIA   · RHODE ISLAND

5003939
#13684147v1<MDMDOCS>

# McElroy Deutsch

Honorable Julien Xavier Neals, U.S.D.J.
United States District court
Martin Luther King Bldg. & U.S. Courthouse

February 6, 2026
Page 3

rejected Apple's attempt to recast such "restrictions on developers and smartphone users" as a refusal to deal. *United States v. Apple, Inc.*, No. 2:24-cv-4055, 2025 WL 1829127, at *12 (D.N.J. June 30, 2025).

Further, unlike *AliveCor*, Watch Plaintiffs challenge Apple's conduct blocking developers from developing "*their own* APIs," "*their own* feature-enabling code," "*their own* functionalities," and "*their own* alternatives," and blocking consumers from "enjoying full messaging capabilities with *their own* phone number," and from using *their own* discretion to decide which apps to install on *their own* devices. Watch Plaintiffs' Am. Compl. (Dkt. 86) at 17, 19 (first and fifth quotes, emphasis added); Dkt. 141 at 26, 32 (remaining quotes, emphasis added); *see, e.g.*, Dkt. 86 at 12, 18-20 (describing how Apple blocked Beeper Mini from enabling end-to-end encrypted messaging without the need of private APIs, and how Apple forbids consumers from "sideloading" apps onto their devices). That is not a mere refusal to deal; it is unlawful anticompetitive interference. *See* Dkt. 141 at 15-28 (discussing Apple's exclusionary conduct as a whole; *LePage's Inc. v. 3M*, 324 F.3d 141, 162 (3d Cir. 2003) (requiring courts to assess monopolists' alleged conduct "as a whole," rather than piecemeal); *Apple*, 2025 WL 1829127, at *13 n.10; *see also Duke Energy Carolinas, LLC v. NTE Carolinas II, LLC*, 111 F.4th 337, 354-55 (4th Cir. 2024), *cert. denied sub nom. Duke Energy Carolinas v. NTE Carolinas II, LLC*, No. 24-917, 2026 WL 79821 (U.S. Jan. 12, 2026). *AliveCor* – which expressly held that the plaintiff alleged *nothing but* a unilateral refusal to deal – accordingly has no relevance to this case. Applying the correct standard, the Court should deny Apple's motion.

Respectfully Submitted,

/s/ *Thomas R. Curtin*
Thomas R. Curtin
MCELROY, DEUTSCH,
MULVANEY & CARPENTER, LLP
1300 Mount Kemble Avenue
Morristown, NJ 07962
Tel: (973) 993-8100
tcurtin@mdmc-law.com

cc:   All counsel (w/enc.) (by ECF)

McElroy, Deutsch, Mulvaney & Carpenter, LLP
COLORADO   · CONNECTICUT   · DELAWARE   · FLORIDA   · MASSACHUSETTS   · NEW JERSEY   · NEW YORK   · PENNSYLVANIA   · RHODE ISLAND

5003939
#13684147v1&lt;MDMDOCS&gt;