# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: APPLE INC. SMARTPHONE ANTITRUST LITIGATION | Case No. 24-md-3113-JXN-LDW |
| | MDL No. 3113 |
| This Document Relates to: | Hon. Julien X. Neals, U.S.D.J. |
| | Hon. Leda D. Wettre, U.S.M.J. |
| All Direct Purchaser Actions and All Indirect Purchaser Actions | |

**DIRECT IPHONE PURCHASER PLAINTIFFS' AND INDIRECT IPHONE PURCHASER PLAINTIFFS' MEMORANDUM IN SUPPORT OF CROSS-MOTION FOR ISSUANCE OF LETTER OF REQUEST UNDER THE HAGUE CONVENTION TO SAMSUNG ELECTRONICS CO., LTD. IN THE REPUBLIC OF KOREA**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................................

INTRODUCTION ..............................................................................................................................

BACKGROUND ...............................................................................................................................

LEGAL STANDARD..........................................................................................................................

ARGUMENT....................................................................................................................................

    A.     The Requested Evidence Satisfies the First Comity Factor......................................

        i.     The Requested Documents Are Directly Relevant to iPhone Plaintiffs' ...... Antitrust Claims ...........................................................................................

        ii.    The Evidence is Uniquely Important Because Samsung is Apple's Closest Competitor ...................................................................................................

    B.     iPhone Plaintiffs' Request Is Reasonably Specific and Tailored..............................

    C.     The Information Originated Abroad and No Alternative Means Exist.....................

    D.     Issuance Promotes U.S. Interests and Does Not Undermine South Korea's Interests .................................................................................................................

CONCLUSION..................................................................................................................................

## TABLE OF AUTHORITIES

*Arcelik A.S. v. E.I. DuPont de Nemours & Co.*,
    856 F. App'x 392 (3d Cir. 2021) .......................................................................

*AstraZeneca LP v. Breath Ltd.*,
    2011 WL 1421800 (D.N.J. Mar. 31, 2011)...........................................................

*Dartell v. Tibet Pharms., Inc.*,
    2017 WL 11476313 (D.N.J. Jan. 12, 2017)...........................................................

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
    278 F.R.D. 51 (E.D.N.Y. 2010) .........................................................................

*In re Auto. Refinishing Paint Antitrust Litig.*,
    358 F.3d 288 (3d Cir. 2004)...............................................................................

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
    2014 WL 5462496 (N.D. Cal. Oct. 23, 2014).........................................................

*In re Mercedes-Benz Emissions Litig.*,
    2020 WL 487288 (D.N.J. Jan. 30, 2020)...............................................................

*Liqwd, Inc. v. L'Oréal USA, Inc.*,
    2018 WL 11189616 (D. Del. Nov. 16, 2018) ........................................................

*Netherby Ltd. v. Jones Apparel Grp., Inc.*,
    2005 WL 1214345 (S.D.N.Y. May 18, 2005) ......................................................

*Pronova BioPharma Norge AS v. Teva Pharms. USA, Inc.*,
    708 F. Supp. 2d 450 (D. Del. 2010).....................................................................

*Smart RF Inc. v. AT&T Mobility LLC*,
    2025 WL 2412347 (E.D. Tex. Aug. 20, 2025) .....................................................

*Société Nationale Industrielle Aérospatiale v. U.S. Dist. Court for the S. Dist. of Iowa*,
    482 U.S. 522 (1987).........................................................................................

*Strauss v. Credit Lyonnais, S.A.*,
    249 F.R.D. 429 (E.D.N.Y. 2008).........................................................................

*Trueposition, Inc. v. LM Ericsson Tel. Co.*,
    2012 WL 707012 (E.D. Pa. Mar. 6, 2012).............................................................

*Tulip Computs. Int'l B.V. v. Dell Comput. Corp.*,
  254 F. Supp. 2d 469 (D. Del. 2003)......................................................................................

*United States v. Apple, Inc.*,
  No. 24-cv-4055 (D.N.J.) ....................................................................................................

**INTRODUCTION**

Samsung is the largest smartphone manufacturer in the world and Apple's closest competitor in the U.S. smartphone and performance smartphone markets. Evidence held by Samsung Electronics Co., Ltd. in the Republic of Korea ("Samsung Korea") lies at the heart of the antitrust claims in this MDL—and it is unavailable through any other means. Direct iPhone Purchaser Plaintiffs and Indirect iPhone Purchaser Plaintiffs (collectively, "iPhone Plaintiffs"), therefore, respectfully cross-move for a Letter of Request to Samsung Korea under the Hague Convention.

Samsung's experience competing against the iPhone—including the constraints Apple has imposed on the ability of Samsung devices to interoperate with the iPhone, the effects of those constraints on smartphone competition, and Samsung's internal strategic, competitive, and commercial assessments of the iPhone and the smartphone marketplace—lies at the center of iPhone Plaintiffs' antitrust claims, and that evidence is not available through domestic discovery: Samsung Electronics America, Inc. ("SEA"), Samsung Korea's U.S. subsidiary, has expressly disclaimed possession, custody, or control over documents held by its Korean parent and stated that it "will not comply" with any of iPhone Plaintiffs' Requests for Production.

The comity factors independently support issuance. iPhone Plaintiffs' requests are tailored to the smartphone-monopolization claims at the heart of this MDL. The requests seek information uniquely held by Samsung Korea and central to proving Apple's anticompetitive conduct and its effects on consumers. The Court should grant the cross-motion.

## BACKGROUND

The Court entered the Discovery Confidentiality Order on October 7, 2025. Dkt. 124. Apple began re-producing documents from the Government investigation to iPhone Plaintiffs in earnest in mid-December 2025, Dkt. 152 at 2, and by mid-January 2026 had produced approximately 85% of those documents, *id*.

iPhone Plaintiffs jointly served a subpoena on SEA on January 9, 2026, before Watch Plaintiffs served theirs on January 29, 2026 and Apple served its own on or around January 30, 2026. *See* Declaration of Zachary S. Bower in support of Direct iPhone Purchaser Plaintiffs' and Indirect iPhone Purchaser Plaintiffs' Cross-Motion for Issuance of Letter of Request Under the Hague Convention to Samsung Electronics Co., LTD. In the Republic of Korea ("Bower Decl."), Ex. B (iPhone Plaintiffs' Subpoena to SEA); *see also* Dkt. 178-4; Dkt. 180-1 at 2. The 28 Requests for Production seek documents and data concerning Samsung's smartphone, wearables, and digital-wallet businesses; the conduct and markets at issue in this MDL; the interoperability of Samsung's products with the iPhone and iOS; and Samsung's competition with Apple. *See* Bower Decl., Ex. B.

On February 25, 2026, SEA served its objections and responses. Bower Decl., Ex. C (SEA's Objections and Responses to iPhone Plaintiffs' Subpoena). SEA issued a general objection to any request for documents "not in SEA's possession, custody or control," explaining that "SEA does not have physical possession of documents held by other entities" and "objects to purported requests for documents maintained by other entities to which SEA does not have a legal right of access." *Id.* Gen. Obj. ¶ 3. SEA invoked the parent-subsidiary control doctrine, citing, among other authorities, *Smart RF Inc. v. AT&T Mobility LLC*, 2025 WL 2412347, at *2 (E.D. Tex. Aug. 20, 2025), for the proposition that "SEA cannot obtain the [r]equested [m]aterials from [its parent

entity] on demand 'because a subsidiary by definition does not control the parent.'" *Id.* SEA further made clear that "[t]o the extent SEA agrees to produce any documents or information, that agreement is made solely on behalf of SEA—the only proper entity to which the Subpoena is directed—and not on behalf of any other entity." *Id.* As to each of iPhone Plaintiffs' 28 individual document Requests, SEA likewise objected that the Request "calls for documents that are not in SEA's possession, custody, or control" and stated that "SEA will not comply with this Request as written." *Id.*, Resps. to Reqs. Nos. 1–28.

iPhone Plaintiffs met and conferred with counsel for SEA on April 24, 2026. During that meeting, counsel for SEA reaffirmed that SEA would not produce documents held by Samsung Electronics Co., Ltd. ("Samsung Korea"), SEA's parent entity, because SEA has no control over Samsung Korea. Bower Decl., ¶¶ 5–6. Counsel for SEA further represented that SEA does not maintain transaction-level pricing, sales, or distribution data for Samsung's smartphone or smartwatch businesses worldwide, or cost data on a United States or worldwide basis. *Id.*, ¶ 7. Nor does SEA maintain Samsung's agreements or related negotiation documents with wireless carriers outside the United States, and such data and documents are held by Samsung Korea. *Id.*, ¶ 8.

On April 7, 2026, Apple moved for the issuance of a Letter of Request under the Hague Evidence Convention to Samsung Korea. Dkt. 178; *United States v. Apple, Inc.*, No. 24-cv-4055 (D.N.J.), Dkt. 413 (same motion filed in the Government Action). On April 20, 2026, Watch Plaintiffs filed a cross-motion for the issuance of their own Letter of Request under the Hague Evidence Convention to Samsung Korea. Dkt. 180. iPhone Plaintiffs now likewise cross-move for a Letter of Request to Samsung Korea, as set forth in the proposed order and Letter of Request submitted with this motion.

## LEGAL STANDARD

The Hague Convention provides a mechanism to "facilitate the gathering of evidence" from sources abroad. *Société Nationale Industrielle Aérospatiale v. U.S. Dist. Court for the S. Dist. of Iowa*, 482 U.S. 522, 541 (1987); *see In re Auto. Refinishing Paint Antitrust Litig.*, 358 F.3d 288, 300 (3d Cir. 2004). "When discovery is sought from a non-party in a foreign jurisdiction, application of the Hague [Evidence] Convention . . . is virtually compulsory" because it "provides the only means of compelling discovery." *Liqwd, Inc. v. L'Oréal USA, Inc.*, 2018 WL 11189616, at *2, *6 (D. Del. Nov. 16, 2018) (quoting *Tulip Computs. Int'l B.V. v. Dell Comput. Corp.*, 254 F. Supp. 2d 469, 474 (D. Del. 2003)). "Letters of Request are one method of taking evidence pursuant to the Convention." *Pronova BioPharma Norge AS v. Teva Pharms. USA, Inc.*, 708 F. Supp. 2d 450, 452 (D. Del. 2010). "Courts routinely issue such letters where the movant makes a reasonable showing that the evidence sought may be material or may lead to the discovery of material evidence." *Netherby Ltd. v. Jones Apparel Grp., Inc.*, 2005 WL 1214345, at *1 (S.D.N.Y. May 18, 2005). The United States and the Republic of Korea are both signatories. U.S. Dep't of State, *South Korea (Republic of Korea) Judicial Assistance Information*, https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/KoreaRepublicof.html (last visited April 30, 2026).

To decide whether to issue a Letter of Request under the Hague Convention, this Court applies five comity factors:

> (1) the importance to the . . . litigation of the documents or other information requested; (2) the degree of specificity of the request; (3) whether the information originated in the United States; (4) the availability of alternative means of securing the information; and (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located.

4

*Arcelik A.S. v. E.I. DuPont de Nemours & Co.*, 856 F. App'x 392, 397 (3d Cir. 2021) (citing *Société Nationale,* 482 U.S. at 544 n.28); *see also In re Mercedes-Benz Emissions Litig.*, 2020 WL 487288, at *6 (D.N.J. Jan. 30, 2020).

The party seeking a Letter of Request bears the burden of persuasion, but "the burden . . . is not great," because "the 'Convention procedures are available whenever they will facilitate the gathering of evidence by the means authorized in the Convention.'" *Dartell v. Tibet Pharms., Inc.*, 2017 WL 11476313, at *1 (D.N.J. Jan. 12, 2017) (quoting *Société Nationale,* 482 U.S. at 541).

## ARGUMENT

All five comity factors favor issuance. The requested evidence is important to the litigation, the requests are specifically tailored, the evidence is held only abroad, no alternative means exist, and issuance vindicates the United States's interest in enforcing its antitrust laws without undermining South Korea's interests.

### A.     The Requested Evidence Satisfies the First Comity Factor

The first comity factor—importance of the requested documents to the litigation—strongly supports iPhone Plaintiffs' request.

### i.     The Requested Documents Are Directly Relevant to iPhone Plaintiffs' Antitrust Claims

This factor "weighs in favor of disclosure where the evidence sought is directly relevant to the claims in the litigation," *AstraZeneca LP v. Breath Ltd.*, 2011 WL 1421800, at *13 (D.N.J. Mar. 31, 2011), and is not cumulative of other evidence, *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2014 WL 5462496, at *5 (N.D. Cal. Oct. 23, 2014). iPhone Plaintiffs' requests target evidence directly relevant to their claims and not duplicative of evidence available from any other source. iPhone Plaintiffs allege that Apple has willfully monopolized, and attempted to monopolize, the U.S. markets for performance smartphones and smartphones. Apple has done so,

in part, by imposing contractual restrictions and technical impediments on the apps and technologies—super apps, cloud-streaming apps, cross-platform messaging, smartwatches, and digital wallets—that would otherwise help rival platforms attract iPhone users and erode Apple's monopoly power. *See, e.g.,* DPP Compl. (Dkt. 87) ¶¶ 1–17, 73–153; IPP Compl. (Dkt. 109) ¶¶ 1–19, 86–155. Apple's exclusionary conduct has harmed competition and consumers, including by inflating the prices that direct and indirect purchasers pay for iPhones. *See, e.g.,* DPP Compl. ¶¶ 14–16, 163–174, 250–51; IPP Compl. ¶¶ 19, 166–178.

iPhone Plaintiffs' proposed Letter of Request seeks documents directly probative of Apple's anticompetitive conduct, the resulting harm to competition, and Apple's market and monopoly power, including documents concerning:

- Samsung's policies, agreements, and reports concerning the technologies and apps central to iPhone Plaintiffs' interoperability claims, including (i) the Samsung Galaxy Store (app review guidelines, model developer and license agreements, developer and consumer terms and conditions, technical-support offerings to developers, app-review tools, and reports concerning the Galaxy Store and apps distributed on it); (ii) Samsung Pay and other digital wallets; (iii) Samsung Gaming Hub and smartphone games; (iv) smartphone messaging apps and the adoption of RCS messaging by users of Samsung smartphones; and (v) Samsung's policies and reports concerning Super Apps and Mini-Programs, see, e.g., DPP Compl. § VI.A.–B.; IPP Compl. § VII.A.–B.

- Samsung's competitive position in, and the performance of its smartphone and wearables businesses in, the U.S. smartphone market and adjacent markets—directly probative of Samsung's competitive constraint on Apple, Apple's monopoly power, and the effects of Apple's exclusionary conduct on a rival platform—including lists of Samsung smartphone and wearable models produced or sold from 2020 to 2025 (with specifications and prices), reports concerning

Samsung's smartphone and wearables businesses, financial statements and audit reports relating to those businesses, and worldwide sales reports for all Samsung smartphone and wearable models from 2020 to 2025;

- transaction-level pricing, sales, distribution, and cost data for Samsung's smartphones and smartwatches, on both a United States and worldwide basis;

- Samsung's contracts with wireless carriers and retailers concerning Samsung's smartphones and smartwatches, and documents relating to the negotiation, performance, and promotional terms of those agreements;

- Samsung's market research related to smartphones and wearables, reports concerning consumer switching between Apple and Samsung smartphones, and reports concerning all Super Apps, Cloud Streaming Apps, Messaging Apps, Companion Apps, and Digital Wallets downloaded by users of Samsung smartphones from 2020 to 2025;

- Documents Samsung produced to the U.S. Government, U.S. courts, or other litigants in the parallel Apple antitrust matters (including *United States v. Apple*, the Government investigation, this MDL, *United States v. Google*, *In re Apple iPhone Antitrust Litigation*, and *Epic Games v. Apple*), emails with third parties regarding government antitrust litigation against Apple, and reports analyzing Apple's policies from 2020 to 2025.

See Bower Decl., Ex. A (Ex. 1).

### ii.    The Evidence is Uniquely Important Because Samsung is Apple's Closest Competitor

Samsung is Apple's closest competitor in the U.S. smartphone and performance smartphone markets, and one of only a few meaningful smartphone competitors in the United States. See, e.g., DPP Compl. ¶¶ 26, 164, 198, 201, 231; IPP Compl. ¶¶ 41, 167, 194, 198, 224. That makes Samsung Korea's evidence uniquely important to iPhone Plaintiffs' claims. iPhone

Plaintiffs allege that Apple's conduct has degraded the experience of using a Samsung device alongside the iPhone—undermining cross-platform messaging, smartwatch interoperability, and digital-wallet functionality—thereby raising switching friction, locking iPhone users into the Apple ecosystem, and dulling Samsung's competitive constraint on Apple. *See, e.g.*, DPP Compl. (Dkt. 87) ¶¶ 1–17, 73–153, 163–174, 250–51; IPP Compl. ¶¶ 9–17, 86–155, 166–178, 223. Samsung Korea's documents on those effects are direct evidence of Apple's anticompetitive conduct. See Bower Decl., Ex. A (Ex. 1). Samsung Korea's transaction-level pricing, sales, distribution, and cost data for Samsung's smartphone and smartwatch businesses—together with its agreements and related negotiation documents with U.S. wireless carriers—are equally central to that proof, on both a United States and worldwide basis. SEA does not maintain that data, and it can be obtained only from Samsung Korea. iPhone Plaintiffs will use it to demonstrate antitrust impact and to calculate damages.

Apple itself agrees. It has told this Court that "Samsung is uniquely and obviously relevant to this case" and that the evidence Apple seeks from Samsung Korea is likely relevant to market definition, the challenged conduct, and Apple's monopoly power. Dkt. 178-1 at 7–10. That evidence is equally relevant to iPhone Plaintiffs' claims. Privacy and security comparisons between Apple's and Samsung's devices, for example, are directly important because Apple routinely invokes privacy and security to justify its compatibility and interoperability restrictions. *See, e.g.*, DPP Compl. § VIII; IPP Compl. § IX. So too are agreements between Samsung and Apple or Google concerning smartphones, smartphone operating systems, and related apps and services, which bear on the structure of competition in the smartphone markets and the cumulative effects of Apple's restrictions.

8

**B.    iPhone Plaintiffs' Request Is Reasonably Specific and Tailored**

The second factor—whether the request is reasonably specific and tailored—also favors issuance. Courts find this factor satisfied where the documents that a party seeks are "sufficiently focused on the vital issues" in the case, including both claims and potential defenses. *Strauss v. Credit Lyonnais, S.A.*, 249 F.R.D. 429, 441 (E.D.N.Y. 2008). As explained above, iPhone Plaintiffs' requests are tied to their antitrust theories and limited to categories of information uniquely held by Samsung Korea. Even if the Court were to conclude that iPhone Plaintiffs' requests to Samsung Korea are "somewhat burdensome," the Third Circuit has said that, alone, "does not counsel against granting discovery through letters of request." *Arcelik*, 856 F. App'x at 399 (noting that, in assessing the burdensome nature of a request in *Société Nationale*, 482 U.S. at 545–46, the Supreme Court was comparing Hague Convention discovery to "domestic discovery rules").

**C.    The Information Originated Abroad and No Alternative Means Exist**

The third and fourth comity factors—whether the information originated in the United States and whether alternative means exist—likewise favor issuance. *See Arcelik,* 856 F. App'x at 399. Where information sought from a domestic affiliate is held solely abroad, courts may conclude that no other means is available. *See Id.* The lack of alternative means can outweigh the fact that the information originated abroad. *See, e.g., id.* (no error in district court's conclusion that inability to access the information except through a letter of request "overc[a]me" its foreign origin).

SEA has made unambiguously clear it will not produce documents Samsung Korea holds. SEA's general objections disclaim possession, custody, or control over those documents and invoke the parent-subsidiary control doctrine to argue that, as a subsidiary, SEA "cannot obtain

9

the [r]equested [m]aterials from [its parent entity] on demand." Bower Decl., Ex. C, Gen. Obj. ¶ 3. SEA repeated that objection to all 28 Requests and declared as to each that "SEA will not comply with this Request as written." *Id.*, Resps. to Reqs. Nos. 1–28. SEA's counsel confirmed that position at the meet and confer, including by representing that SEA does not maintain Samsung's United States or worldwide cost data, or transaction-level pricing, sales, or distribution data outside the United States. *Id.*, ¶ 7. Nor does SEA maintain Samsung's agreements or related negotiation documents with wireless carriers outside the United States. *Id.*, ¶ 8. iPhone Plaintiffs thus have no alternative means to obtain evidence from Samsung of Apple's anticompetitive conduct, its effects on smartphone competition, or antitrust impact and damages. *Id.*, ¶ 9.

**D.    Issuance Promotes U.S. Interests and Does Not Undermine South Korea's Interests**

The fifth factor—"the most important" in the analysis—weighs decisively in favor of issuance. *Strauss*, 249 F.R.D. at 443. "The United States has a strong interest in fully and fairly adjudicating Sherman Act suits before the federal judiciary in an efficient and timely fashion." *Trueposition, Inc. v. LM Ericsson Tel. Co.*, 2012 WL 707012, at *6 (E.D. Pa. Mar. 6, 2012). That interest "in enforcement of antitrust laws [is] 'only realized if the parties have access to relevant discovery.'" *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944-SC, 2014 WL 5462496, at *6 (N.D. Cal. Oct. 23, 2014) (citing *In re Air Cargo Shipping Servs. Antitrust Litig.*, 278 F.R.D. 51, 54 (E.D.N.Y. 2010)).

A Letter of Request will not undermine South Korea's interests. South Korea is a member of the Hague Convention. *See* p. 4, *supra.* The Convention facilitates orderly evidence-gathering while respecting foreign sovereignty. *See Société Nationale,* 482 U.S. at 538. If South Korean authorities believe the Letter of Request should be narrowed to comply with South Korean law, they may narrow it under the Convention. *See Arcelik,* 856 F. App'x at 400. Courts regularly

10

conclude those Convention safeguards adequately protect foreign sovereignty. *See, e.g., Tulip Computs.,* 254 F. Supp. 2d at 474–75.

**CONCLUSION**

iPhone Plaintiffs respectfully request that the Court grant the cross-motion and issue the proposed Letter of Request attached as Exhibit A. After execution, iPhone Plaintiffs request that the Clerk authenticate the Court's signature under seal and return the original executed letter, together with two certified copies, to iPhone Plaintiffs' counsel, Zachary S. Bower, for delivery to the proper authority in the Republic of Korea. iPhone Plaintiffs will prepare certified Korean translations of the Letter and related exhibits for submission to the appropriate Korean authorities.

Dated: May 14, 2026

*Respectfully submitted,*

*/s/ Joseph J. DePalma*
Joseph J. DePalma
**LITE DEPALMA GREENBERG
& AFANADOR, LLC**
570 Broad Street, Suite 1201
Newark, NJ 07102
Tel.: (973) 623-3000
jdepalma@litedepalma.com

*Liaison Counsel for Direct iPhone Purchaser Plaintiffs*

*/s/ James E. Cecchi*
James E. Cecchi
**CARELLA, BYRNE, CECCHI,
BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, NJ 07068
Tel.: (973) 994-1700
jcecchi@carellabyrne.com

*/s/ Dena Sharp*
Dena Sharp
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Tel.: (415) 981-4800
dsharp@girardsharp.com

11

*/s/ William Christopher Carmody*
William Christopher Carmody
Shawn J. Rabin
**SUSMAN GODFREY LLP**
One Manhattan West, 50th Floor
New York, NY 10001-8602
Tel.: (212) 336-8330
bcarmody@susmangodfrey.com
srabin@susmangodfrey.com

*/s/ Christopher A. Seeger*
Christopher A. Seeger
**SEEGER WEISS, LLP**
55 Challenger Road
Ridgefield Park, NJ 07660
Tel.: (973) 639-9100
cseeger@seegerweiss.com

*/s/ Steven W. Berman*
Steven W. Berman
**HAGENS BERMAN SOBOL
SHAPIRO, LLP**
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Tel.: (206) 623-7292
steve@hbsslaw.com

*/s/ Melinda R. Coolidge*
Melinda R. Coolidge
**HAUSFELD LLP**
888 16th Street, NW, Suite 300
Washington, DC 20006
Tel.: (202) 540-7200
mcoolidge@hausfeld.com

*Interim Co-Lead Counsel for Direct iPhone Purchaser Plaintiffs*

*/s/ Stanley O. King*
Stanley O. King
**JAVERBAUM WURGAFT HICKS
KAHN WIKSTROM & SININS, P.C.**
231 S. Broad Street
Woodbury, NJ 08096
Tel.: (856) 845-3001
Attorney ID No. 03413-1996

*Liaison Counsel for
Indirect iPhone Purchaser Plaintiffs*

*/s/ Michael Dell'Angelo*
Michael Dell'Angelo
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel.: (215) 875-3000
mdellangelo@bergermontague.com

*/s/ Heidi M. Silton*
Heidi M. Silton
**LOCKRIDGE GRINDAL
NAUEN PLLP**
100 Washington Avenue South,
Suite 2200
Minneapolis, MN 55401
Tel.: (612) 339-6900
hmsilton@locklaw.com

12

*/s/ Todd M. Schneider*
Todd M. Schneider
**SCHNEIDER WALLACE COTTRELL KIM LLP**
2000 Powell Street, Suite 1400
Emeryville, CA 94608
Tel: (415) 421-7100
tschneider@schneiderwallace.com

*/s/ Jeffrey L. Spector*
Jeffrey L. Spector
**SPECTOR ROSEMAN & KODROFF, P.C.**
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Tel: (215) 496-0300
jspector@srkattorneys.com

*Interim Co-Lead Counsel for Indirect iPhone Purchaser Plaintiffs*

13