**WALSH PIZZI O'REILLY FALANGA**

**THREE GATEWAY CENTER**
100 Mulberry Street, 15th Floor
Newark, NJ 07102

T: 973.757.1100
F: 973.757.1090

**WALSH.LAW**

Liza M. Walsh
Direct Dial: (973) 757-1100
lwalsh@walsh.law

July 9, 2026

**VIA ECF AND EMAIL**
Honorable Ronald Hedges, U.S.M.J. (Ret.)
r_hedges@live.com

Re:    *In re: Apple Inc. Smartphone Antitrust Litigation*
       **Civil Action No. 2:24-md-03113-JXN-LDW (MDL 3113)**

Dear Judge Hedges:

This firm, together with Gibson, Dunn & Crutcher LLP, represents Defendant Apple Inc. ("Apple").  Apple respectfully seeks reconsideration of the portion of the July 7, 2026 Order (the "Order") requiring Apple to, in thirty days, review roughly 19.4 million documents.  Contrary to the Special Master protocol and basic principles of fairness, Apple was not given an opportunity to brief its arguments or submit evidence in support of them.  As a result, the Order was issued in the absence of any evidentiary record, including the RFPs at issue, the search term proposals, the documents that Apple has already produced or reviewed, or the burden on Apple.  The Order demands a document review that is disproportionate to the needs of the case and impossible to complete within thirty days regardless of party resources.  Apple respectfully submits that the Order should be reconsidered or, at a minimum, stayed pending appeal.

**The Order was issued without affording Apple an opportunity to present argument or evidence.**  The Order resolved the search term issue based only on a May 13 joint status letter to Judge Wettre that, among other things, noted the parties' continued negotiations over approximately 57 disputed search terms in advance of a conference initially scheduled for May 27. As ordered, that joint status letter was "in the form of an executive summary," with disputes described "briefly" so the parties could seek the Court's instruction on how "the dispute should be presented for adjudication."  Dkt. 142 ¶ 21.  Accordingly, the Special Master Appointment Order prescribes a *separate* procedure to ensure the parties are heard in full and any ruling rests on a developed record.  Dkt. 208 ¶¶ 4–6 (providing that "the parties shall submit letter briefs on the dispute" in which "the parties have reached impasse").  That procedure requires at least a letter brief, as well as the possibility of "full briefing."  Dkt. 208 ¶ 5(e).

Because the Order was based on an (outdated) status letter, and the briefing procedure dictated by the Special Master Appointment Order never happened here, the record had no information about the multiple developments since May 13, the RFPs at issue, the proposed search terms, or the number of hits from those proposed terms.  Apple's request at the hearing "to actually brief the issues and give [the Special Master] a sense of what the proportionality and the burden is" was denied.  Tr. 20:17–22; 21:8–11.  The lack of record and opportunity to be heard alone warrants reconsideration.  *See, e.g.*, *In re Effexor XR Antitrust Litig.*, 2019 WL 13535677, at *7 (D.N.J.

Hon. Ronald Hedges, U.S.M.J. (Ret.), Special Master
July 9, 2026
Page 2

May 23, 2019) ("Given the self-limiting nature of the letter applications submitted, the Court finds that issues have not been adequately briefed. As such, that the parties will be given the opportunity to thoroughly brief the issues of relevance, proportionality, importance, burden, expense, etc., so the disputed discovery requests can be properly considered in light of the requirements of Rule 26."); *Families for Freedom v. U.S. Customs & Border Protection*, 2011 WL 4599592, at *3 (S.D.N.Y. Sept. 30, 2011) (granting reconsideration in part "in the interests of both correcting material error and preventing clear injustice" where it was not "clear" that defendants had "the opportunity" to present argument in any "formal briefing").

**The Order also errs on the merits for multiple reasons.** *First*, a central premise of the Order is that the Government Action is "irrelevant . . . as far as this class action goes." Tr. 8:20–21. That premise runs contrary to the entire purpose of centralizing the MDL Action in this district: to take advantage of "common discovery" with the Government Action. MDL No. 3113, Dkt. 116. As Plaintiffs acknowledge, "private plaintiffs' complaints overlap in substantial part with those raised in the Government Action." Dkt. 61 at 4. The Government is litigating its parallel case on Apple's review of nearly 11 million documents, and the responsive, non-privileged documents from this review have been produced to Plaintiffs. Plaintiffs offer no basis for needing roughly 19.4 million *more* documents reviewed, which includes a second review of many documents Apple *already* reviewed. And for at least 57 RFPs that are identical or materially identical to those in the Government Action, Plaintiffs demand new search terms. Lo Decl. ¶ 24. Take iPhone RFP 15/Watch RFP 15: these are copied verbatim from the Government Action RFPs, but Plaintiffs demand *fifteen* additional searches for their requests (adding over 3.2 million documents to Apple's review burden), despite having identified no difference between their RFPs and the Government's warranting expansion. Lo Decl. ¶¶ 21, 24.[1] Reviewing the results of Plaintiffs' overbroad and unnecessary search terms, particularly in light of the extensive discovery already completed in the overlapping Government Action, would erase the efficiencies of coordinated discovery.

*Second*, the Order did not apply the analysis Rule 26 requires. The scope of discovery must consider whether the "burden or expense of the proposed discovery outweighs the likely benefit," whether the discovery sought is "unreasonably cumulative or duplicative," and whether the discovery can be obtained in a "less burdensome" or "less expensive" manner. Fed. R. Civ. P. 26(b)(1)–(2). The parties had no opportunity to submit any evidence relevant to these factors. *Supra* 1–2. Nevertheless, the Order rules against Apple, based on the assumption that Apple's size and resources made any burden or proportionality objection untenable. Tr. 8:17–9:3. The laser focus on Apple's resources as dispositive—and the resulting disregard of the many other Rule 26 factors—violates Rule 26(b)(1). *See, e.g.*, *Penn Eng'g & Mfg. Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *4 (E.D. Pa. Sept. 3, 2021); *Williams v. BASF Catalysts, LLC*, 2017 WL 3317295, at *4 (D.N.J. Aug. 3, 2017).

*Third*, applying the correct standard under Rule 26, Plaintiffs' proposed terms are not "'proportional to the needs of the case,'" and "'the burden or expense of the proposed discovery outweighs its likely benefit.'" *In re Frasers Grp. PLC*, 2024 WL 139488, at *5 (D.N.J. Jan. 12,

---

[1] As another example, Watch Plaintiff's RFP 57.1 is identical to the Government's RFP 57, and Watch Plaintiff has conceded that the agreed-on Government search term is sufficient for Watch RFP 57.1. Yet Watch Plaintiff insists that Apple re-review about 1.5 million documents from Apple's prior review of Government Search Term 57 without identifying any differences in scope for Watch RFP 57.1 that would warrant this duplicative review. Lo Decl. ¶ 25.

Hon. Ronald Hedges, U.S.M.J. (Ret.), Special Master
July 9, 2026
Page 3

2024) (quoting Fed. R. Civ. P. 26(b)(1)).  Plaintiffs' proposed search terms are not reasonably calibrated to the RFPs, require review of roughly 19.4 million additional documents, and would impose a massive undue burden on Apple, as the following examples show:

- **iPhone RFP 15/Watch RFP 15**:  These requests seek "documents related to any efforts to increase, protect, or preserve Apple's market share, sales, or profitability for Smartphones or any Identified Product or Service."  But Plaintiffs' proposed terms for these RFPs— which would require Apple to review over 3.2 million documents—do not mention "market share, sales, or profitability," or attempt to capture "efforts to increase, protect, or preserve" those metrics.  Nor are the proposed terms linked to any identified product or service. Instead, Plaintiffs propose broad terms, such as "range," "promo*," "co-op," "advertise," "storefront," "full line," and "end of life," paired with more than a hundred carrier and retailer names.  As a result, they sweep in millions of documents about advertisement of Apple products that are irrelevant to Plaintiffs' allegations.  Lo Decl. ¶ 21.

- **iPhone RFP 100**:  RFP 100 seeks "[a]ll documents related to any effort or decision by Apple to prevent or limit any third-party developer's ability or permission to provide end-to-end encryption for messages between Apple Messages and Android users."  But Plaintiffs' proposed search term—returning approximately 1.9 million documents— requires no connection to encryption, Android, or any effort to limit any permissions. Instead, the terms broadly sweep in documents that merely mention other messaging services like Signal or WhatsApp, even when those mentions have nothing to do with Android or encryption, much less Apple's alleged efforts to impede either.  Lo Decl. ¶ 22.

- **Watch RFP 8.4**:  RFP 8.4 seeks "[a]ll Documents relating to Your Phone Number Sharing Restrictions," a defined term describing technical limitations on using one phone number to send and receive messages on multiple devices.  But Plaintiffs' proposed search term— returning over 96,500 documents—does not limit hits to the alleged phone number sharing restrictions underlying the RFP.  For example, the proposal would capture any document that uses the term "Garmin" or "Vivoactive" near "Verizon" or "Connected Devices" regardless of whether that document related to any so-called "Phone Number Sharing Restrictions."  Lo Decl. ¶ 23.

*Fourth*, the Order's timeline for production is impossible to meet.  To complete the review of 19.4 million documents in thirty days, Apple would need to employ approximately 16,000 contract reviewers.  Leech Decl. ¶ 11.  There are not enough qualified contract reviewers available in the United States to complete this review in thirty days.[2]  Leech Decl. ¶ 11.  Moreover, disputes remain between the parties regarding issues of responsiveness, which must be resolved prior to any large scale review.  And this review is only one step in the process: Apple also must train reviewers, confirm responsiveness and privilege calls, complete quality checks, and process productions. Leech Decl. ¶ 13; Barela Decl. ¶¶ 12–16.

Apple cannot meet that timeline even if it cuts corners.  Apple's review process is multi-layered, with quality-control checks at each stage.  Lo Decl. ¶¶ 28–39.  This process seeks to ensure that

---

[2] Even the use of technology assisted review ("TAR") would not allow Apple to review this population of approximately 19.4 million documents in thirty days.  Although the use of TAR could reduce review time and reduce the total number of documents reviewed by a human being, there is still significant time required to train the TAR model, review results, and process the documents for production.  Lo Decl. ¶ 38.

Hon. Ronald Hedges, U.S.M.J. (Ret.), Special Master
July 9, 2026
Page 4

privileged and otherwise protected materials receive proper treatment and that non-responsive materials are not produced. *Id.* If Apple were forced to forgo these safeguards, the thirty-day deadline would still be impossible, and Apple's protected materials would likely be inadvertently produced, irreparably prejudicing Apple. *Id.* ¶ 40; *cf. Prudential Ins. Co. of Am. v. Massaro*, 2000 WL 1176541, at *17–*18 (D.N.J. Aug. 11, 2000) (finding that disclosure of privileged information would inflict irreparable injury because "[i]n any situation in which confidential information is at stake, once it is made public the *status quo ante* cannot be restored").

The discovery order in *In re OpenAI, Inc., Copyright Infringement Litig.*, Case No. 25-MD-3143 (S.D.N.Y.) cited by the Special Master is inapposite. *See* Tr. 10:1–13. *OpenAI* involved an order to produce a data sample of 20 million consumer chat logs, from a single non-custodial data source, where processing was "completed (or nearly completed)" already, so the "burden of production [wa]s minimal." *In re OpenAI, Inc.,* 2025 WL 3468036, at *2, *4 (S.D.N.Y. Dec. 2, 2025). These were not unprocessed, individual documents that required first-level review. *See id.* In this action, Apple is also separately producing structured data that will exceed hundreds of millions of entries and has already produced more than 100 billion separate data points. Lo Decl. ¶ 12. Apple has thus already exceeded the data production ordered in *OpenAI*—apart from the completely separate 19.4 million documents it has now been ordered to review.

**If reconsideration is denied, Apple requests the Order be stayed pending Apple's appeal.** The Appointment Order permits a party appealing a Special Master ruling to request that the ruling "not take effect until the appeal . . . has been resolved." Dkt. 208 ¶ 18. Courts consider likelihood of success, irreparable injury, prejudice to other parties, and the public interest. *Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 658 (3d Cir. 1991). Those factors are assessed on a sliding scale, and a movant need only show "a reasonable chance, or probability, of winning" on appeal. *In re Revel AC, Inc.*, 802 F.3d 558, 568–70 (3d Cir. 2015). All four factors strongly favor a stay here.

First, Apple is likely to succeed on appeal. As explained above, Apple had no opportunity to submit evidence on the burden or proportionality of Plaintiffs' proposal, and that proposal plainly fails Rule 26's requirements. *See* Dkt. 208 ¶¶ 15, 17–18; *supra* 1–3. Second, Apple will suffer irreparable harm absent a stay. Reviewing approximately 19.4 million additional documents in thirty days is not feasible and risks the loss of privilege and quality-control protections. *Supra* 3–4; Lo Decl. ¶¶ 28–40; Barela Decl. ¶ 10–16; Leech Decl. ¶¶ 11–13; Keeling Decl. ¶ 19. Apple "would have to produce the disputed discovery . . . prior to the [district] court's decision on the motion for review, and thus [Apple] would be effectively deprived of its ability to seek review of the" Order. *Canchola v. Allstate Ins. Co.*, 2025 WL 1377817, at *3 (C.D. Cal. Apr. 17, 2025). Third, a stay will not prejudice Plaintiffs, who asked in the May 13 joint status letter only for the Court to "order Apple to continue negotiating search terms in time to meet [discovery deadlines]." Dkt. 192 at 23. Finally, the public interest favors a stay because compelling expedited review and production of nearly 20 million documents, without any record on burden or proportionality, does not serve the just, efficient, and proportional discovery the rules require. *See* Fed. R. Civ. P. 26(b)(1); *see also, e.g., Canchola*, 2025 WL 1377817, at *3. In the alternative, Apple at a minimum requests an administrative stay to allow it to seek a stay from Judge Neals.

Hon. Ronald Hedges, U.S.M.J. (Ret.), Special Master
July 9, 2026
Page 5

Respectfully submitted,

*s/Liza M. Walsh*

Liza M. Walsh

cc:    All Counsel of Record (via ECF)