

**THREE GATEWAY CENTER**
100 Mulberry Street, 15th Floor
Newark, NJ 07102

T: 973.757.1100
F: 973.757.1090
**WALSH.LAW**

Liza M. Walsh
Direct Dial: (973) 757-1100
lwalsh@walsh.law

July 9, 2026

**VIA ECF AND EMAIL**
Honorable Ronald J. Hedges, U.S.M.J. (Ret.)
r_hedges@live.com

Re:     *In re: Apple Inc. Smartphone Antitrust Litigation*
        **Civil Action No. 2:24-md-03113-JXN-LDW (MDL 3113)**

Dear Judge Hedges:

This firm, together with Gibson, Dunn & Crutcher LLP, represents Defendant Apple Inc. ("Apple") in the above-referenced matter. All parties in this litigation have primarily produced documents in "imaged" format,[1] reserving native production for a limited set of file types. Apple respectfully seeks reconsideration of the portion of the July 7, 2026 Order (the "Order") requiring Apple to produce and reproduce all documents in this action in native format. Dkt. 223-1.

To date, Apple has produced over 33 million Bates-stamped pages to Plaintiffs, and Plaintiffs have only identified to Apple 22 specific documents with processing or imaging issues. Rose Decl. ¶¶ 13-14. Many of the issues Plaintiffs identified appear in documents reproduced from the Government Action and the pre-litigation investigation in the same processed form used in the coordinated litigation—not in a new MDL-specific production. Apple investigated each example, remedied any genuine issue, and reminded its reviewers to check for such issues going forward. Nonetheless, despite having jointly proposed to the Court an ESI protocol requiring imaged productions (Dkt. 100-2 at 9), Plaintiffs demanded that all documents be reproduced in native format, a remedy vastly out of proportion to the few, specific issues they identified. The Order granting Plaintiffs' request was entered without an opportunity for briefing or argument pursuant to the Special Master Appointment Order (Dkt. 208), including without briefing on the burden, proportionality, privilege, confidentiality, redaction, security, and case-management consequences of wholesale native production. Apple respectfully submits that the Order should be reconsidered or, at a minimum, stayed pending its appeal.

**The Order issued without affording Apple an opportunity to present argument or evidence.** The Special Master Appointment Order prescribes a procedure ensuring the parties are heard in full and any ruling rests on a developed record. Dkt. 208 ¶¶ 4–6.  That procedure never happened here.  Instead, the Special Master decided the issue based only on a May 13 joint status letter to Judge Wettre. As ordered, that letter was "in the form of an executive summary," with disputes

---

[1] Imaged documents are electronic documents converted to image files (such as TIFF or PDF), stamped with Bates numbers and confidentiality designations, redacted as necessary, and produced together with searchable text and metadata.  "Native" production, by contrast, means producing each document in its original electronic form—for example, producing an email as a working file the recipient can open and interact with directly.

Honorable Ronald J. Hedges, Special Master
July 9, 2026
Page 2

described "briefly" so the parties could seek the Court's instruction on how "the dispute should be presented for adjudication." Dkt. 142 ¶ 21. As a result, the Special Master had only limited information about the scope, burden, and practical consequences of wholesale native production here. The Special Master asked whether Plaintiffs had identified "specific examples" of the problem, and Plaintiffs said they had. Tr. 10:14–11:7. Without further discussion—much less briefing with supporting evidence—Apple was ordered to produce everything in native. *Id.* 11:16–24. The ruling was made without complete information about whether native production was proportional, whether the existing productions were reasonably usable, what privilege, redaction, confidentiality, security, and coordination problems native production would create, or Apple promptly remedying Plaintiffs' examples. When Apple explained the May 13 letter was not intended to present merits arguments and requested "an ability to actually brief the issues," the request was denied. *Id.* 20:1–23, 21:8–11. The lack of record and opportunity to be heard alone warrants reconsideration. *See, e.g., In re Effexor XR Antitrust Litig.*, No. 11-5479, 2019 WL 13535677, at *6 (D.N.J. May 23, 2019) (ordering the parties to "thoroughly brief" burden and proportionality, including by affidavit, where a dispute presented by joint letter "ha[d] not been adequately briefed"); Dkt. 208 ¶ 4 (providing for letter briefs on discovery disputes).

**The Order rests on legal error.** *First*, the Order does not consider evidence of the "burden or expense of the proposed discovery," whether it "outweighs the likely benefit," or whether the same information can be obtained in a "less burdensome" or "less expensive" manner, as Rule 26(b) requires. Fed. R. Civ. P. 26(b)(1)–(2). Apple had no opportunity to submit evidence on the burden of producing all documents in native format, its alleged benefit, or other discovery already provided. The ruling was given after an observation in connection with a dispute over search terms that "given the size of Apple," no burden or proportionality argument could be made. Tr. 8:17–9:03. Rule 26(b)(1) requires burden to be weighed against the discovery already provided and the likely benefit of additional discovery—not solely a party's perceived resources. *See, e.g., Penn Eng'g & Mfg. Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *4 (E.D. Pa. Sept. 3, 2021); *Williams v. BASF Catalysts, LLC*, 2017 WL 3317295, at *4 (D.N.J. Aug. 3, 2017).

*Second*, applying the correct standards under Rules 26 and 34, Plaintiffs' proposal to remedy discrete legibility issues by requiring wholesale native reproduction is not "proportional to the needs of the case," and the burden and expense "outweighs its likely benefit." *In re Frasers Grp. PLC*, 2024 WL 139488, at *5 (D.N.J. Jan. 12, 2024) (citing Fed. R. Civ. P. 26(b)(1)). Rule 34 confirms the point. A producing party "need not produce the same electronically stored information in more than one form." Fed. R. Civ. P. 34(b)(2)(E)(ii)–(iii). Courts applying Rule 34 have repeatedly held that ESI need not be produced in native format where the producing party provides a reasonably usable image, PDF, or TIFF production with searchable text, load files, and metadata. *See In re Insulin Pricing Litig.*, 2024 WL 2808083, at *10 (D.N.J. May 28, 2024) (ESI "need not necessarily be in its native format" to be reasonably usable); *F.D.I.C. v. Bowden*, 2014 WL 2548137, at *5 (S.D. Ga. June 6, 2014) ("even if native files are requested," TIFF files with load files and selected metadata suffice where reasonably usable); *Bah v. Sampson Bladen Oil Co.*, 2024 WL 3678337, at *6 (E.D.N.C. Aug. 5, 2024) (Rule 34 "does not require that ESI be produced in the form the requesting party prefers").

**The existing process is sufficient**. Apple produces documents in both the MDL and the coordinated Government Action in processed, imaged form (TIFF) with load files, metadata, Bates numbers, and confidentiality designations—the same format courts routinely recognize as

Honorable Ronald J. Hedges, Special Master
July 9, 2026
Page 3

reasonably usable under Rule 34, and the same format the parties agreed to in the ESI Protocol submitted to the Court. *See Aguilar v. Immig. & Customs Enf't Div. of U.S. Dep't of Homeland Sec.*, 255 F.R.D. 350, 356–57 (S.D.N.Y. 2008) (searchable PDF or TIFF with selected metadata satisfies Rule 34 because the production is "electronically searchable and paired with essential metadata"); *Zhulinska v. Niyazov L. Grp., P.C.*, 2021 WL 5281115, at *6–7 (E.D.N.Y. Nov. 12, 2021) (defendants were permitted to convert electronic documents to searchable TIFF). In accordance with the agreed-upon ESI Protocol, Apple also produces certain file types in native form on a limited basis—for example, spreadsheets and presentations—where an imaged version would not preserve functionality reasonably necessary for use. When Plaintiffs have identified specific production issues, Apple has investigated them and addressed them on a document-specific basis. Rose Decl. ¶¶ 4, 6, 8, 12, 15.

The processing issues Plaintiffs have identified involve manageable technical rendering errors in a subset of imaged documents—for example, "black boxes" that appear when a cell's background color is corrupted to black during conversion; jumbled or "spillover" text where a table's column widths do not reflow correctly; text cut off at the edge of the page; and documents that may be difficult to read when rendered at a standard production resolution. Rose Decl. ¶¶ 4-5, 12. These errors cannot be detected automatically and can be identified only through manual review of individual documents. Apple has accordingly taken concrete measures: it has retrained reviewers to flag display or formatting issues before production, it produces replacement images for any issues Plaintiffs identify, and it produces in native form the document categories sometimes prone to rendering issues, such as spreadsheets and presentations. Notably, many of the issues Plaintiffs identified appear in documents reproduced from the Government Action in the same processed form used in the coordinated litigation; Plaintiffs' examples do not justify creating a separate native-production regime for the MDL alone.

Plaintiffs identified just 22 documents with processing issues that made portions difficult to read. Rose Decl. ¶ 14. Apple has committed to remedying issues when identified. Nothing in the record supports the kind of systemic production defect that justifies reproducing Apple's entire document set in native form.

**Reproducing the entire document set in native form would also impose a substantial and unnecessary production burden**. Imaged productions are the standard format in complex litigation—and native productions the exception—because imaging facilitates the redaction, labeling, and review-platform workflows that large-scale discovery requires. (Dkt. 227-1 (Barela Decl. ¶ 7)). Consider privilege redactions: Imaged productions allow redactions to be applied within the review platform as part of the ordinary production workflow; native files cannot be redacted that way. Every document requiring a privilege or protected-material redaction would require a separate, off-platform redaction workflow, one document at a time—including where excerpts of Apple's proprietary source code appear in emails and other documents, which both the Government Action ESI Protocol and the MDL parties' prior agreement negotiations entitle Apple to redact. *See* Gov't Action Dkt. 264 at 12; MDL Dkt. No. 100-2 at 12. Recreating that redaction set outside the normal workflow, across a production of this size (Dkt. 226), is a manual and labor-intensive undertaking that yields no corresponding benefit to Plaintiffs.

The burden does not end with redactions. Apple would be required to reprocess millions of documents it has already produced in both the Government Action and the MDL, multiplying the

Honorable Ronald J. Hedges, Special Master
July 9, 2026
Page 4

cost and delay of a production that is substantially complete in the Government Action—just to chase a small set of issues that Apple has committed to remedying when identified. And for redacted documents, Apple would have to conduct manual re-redaction of each document, significantly slowing production. None of that burden is warranted where targeted remediation is already working.

**Wholesale native production will frustrate coordination with the Government Action**. The Case Management Order directs Apple to make rolling productions to Plaintiffs of materials produced in the Government Investigation and Government Action, and separately provides that "[t]he parties shall endeavor to avoid unnecessarily duplicative discovery between this case and the Government Action to the extent feasible." Dkt. 142 ¶ A.2, § X. Consistent with that directive, Apple has been producing millions of documents across the coordinated proceedings in the same processed, imaged format. Rose Decl. ¶ 13. The Order would disrupt that discovery coordination by creating different versions of documents in the two actions. For example, unlike imaged documents, native files produced in the MDL would bear no page-level Bates stamping, complicating the digital presentation of documents such as lengthy email threads during coordinated depositions. Inevitable confusion and wasted time would result.

**Wholesale native production also introduces serious data-security and preservations risks that are much less likely with imaged production.** Producing email files in native means all recipients of the produced document essentially receive the email itself, as if they were an addressee—unlike with an imaged document, an inadvertent click can alter it, forward it, or even reply to the original participants in the thread. Apple's documents contain live hyperlinks to internal resources—meaning an inadvertent click could expose Apple internal information and infrastructure, even if wholly irrelevant to this Action. Imaged production strips this active content and helps neutralize such risks. That is yet another reason why this District's standard ESI protocol, the Government Action ESI Protocol, and the ESI Protocol the parties agreed should govern here defaults to imaged productions. Gov't Action Dkt. 264 at 10-11; MDL Dkt. No. 100-2 at 9-10.

**If reconsideration is denied, Apple requests the Order be stayed pending Apple's appeal.** The Appointment Order permits a party appealing a Special Master ruling to request that the ruling "not take effect until the appeal . . . has been resolved." Dkt. 208 ¶ 18. Courts consider likelihood of success, irreparable injury, prejudice to other parties, and the public interest. *Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 658 (3d Cir. 1991). Those factors are assessed on a sliding scale, and a movant need only show "a reasonable chance, or probability, of winning" on appeal. *In re Revel AC, Inc.*, 802 F.3d 558, 568–70 (3d Cir. 2015). Those factors favor a stay. Apple is likely to succeed because the Order was entered without briefing or evidence, exceeds the discrete problem Plaintiffs identified, and requires a disproportionate production format that Rule 34 does not mandate. Apple will be irreparably harmed absent a stay: wholesale native production would force disclosure in a format that creates privilege, redaction, confidentiality, security, and record-management risks that cannot be undone after appeal. Plaintiffs will not be prejudiced: they already have Apple's processed productions and Apple will continue remediating documents they identify as having genuine legibility or processing issues. The public interest favors proportional discovery, orderly review of the Order under Rule 53, protection of privileged and confidential information, and a clear record for coordinated proceedings.

Honorable Ronald J. Hedges, Special Master
July 9, 2026
Page 5

Respectfully submitted,

*s/Liza M. Walsh*

Liza M. Walsh

cc:     All Counsel of Record (via ECF)