# THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| IN RE: APPLE INC. SMARTPHONE ANTITRUST LITIGATION | Case No. 2:24-md-03113-JXN-LDW<br>MDL No. 3113<br><br>Hon. Julien X. Neals, U.S.D.J.<br>Hon. Leda D. Wettre, U.S.M.J. |

## DECLARATION OF JOSEPH R. ROSE
## IN SUPPORT OF APPLE INC.'S LETTER BRIEF

DECLARATION OF JOSEPH R. ROSE
CASE NO. 2:24-MD-03113-JXN-LDW

I, Joseph R. Rose, hereby declare as follows:

1.     I am a partner at the law firm of Gibson, Dunn & Crutcher LLP ("Gibson Dunn"), counsel for Defendant Apple Inc. ("Apple") in the above-captioned action.  I submit this declaration in support of Apple's letter brief seeking reconsideration of the portion of the Special Master's July 7, 2026 Order (the "Order") requiring Apple to produce and re-produce all documents in this Action in native format, or in the alternative a stay of the Order pending its appeal.  The facts set forth in this declaration are based on my personal knowledge, my involvement in this matter, and my review of correspondence, files, and records maintained by Gibson Dunn in the ordinary course of its representation of Apple.  If called as a witness, I could and would testify competently to the facts stated herein.

2.     In preparing this declaration, I have reviewed the Order and the correspondence and records described below.

3.     On February 4, 2026, at 11:35 a.m. ET, MDL Plaintiffs sent an email to Apple's counsel, transmitted by Daniel Epstein of Korein Tillery, regarding various discovery topics in the Government and MDL Actions, including a question regarding why Apple had included privilege redactions on two documents.

4.     On February 11, 2026, my colleague Tony Bedel responded by email, explaining that the black boxes on the two documents Plaintiffs had identified were not intentional redactions but document processing errors, which Apple would

correct with replacement images. Later that day, Mr. Epstein replied, asking whether the issue was limited to the documents Plaintiffs had identified or was a "broader problem." On February 12, 2026, Mr. Bedel responded that Apple was not aware of other documents with these issues and that Apple was happy to review any additional issues Plaintiffs identified.

5.    On February 13, 2026, at 6:04 p.m. ET, Mr. Epstein sent a further email asserting that document processing errors were "a broader problem across Apple's productions" and that Plaintiffs had "found hundreds in just an hour." The email alleged categories of purported errors—including text cut off during imaging, black boxes obscuring text, overlapping text, illegible images, and missing extracted text. Plaintiffs requested that Apple resolve the purported errors by producing native versions of the affected documents pursuant to the ESI protocol. However, despite claiming that these issues affected hundreds of documents, Plaintiffs provided a list of only seven documents for which they had identified issues.

6.    On February 20, 2026, my colleague Jacqueline Sesia transmitted a letter on Apple's behalf to Plaintiffs' counsel. In that letter Apple reiterated that, as it had explained on February 11, 2026, the black boxes Plaintiffs had identified in certain documents were not redactions but document processing errors, which Apple had promptly investigated and would correct through replacement images and an overlay.

DECLARATION OF JOSEPH R. ROSE
CASE NO. 2:24-MD-03113-JXN-LDW

7.    On February 24, 2026, MDL Plaintiffs replied by letter, transmitted by Mr. Epstein.  The letter requested that Apple (1) identify all documents produced with errors, (2) describe the process used to do so, and (3) resolve the errors by producing native versions.  Plaintiffs asserted, based on the corrected version of one document, that documents using color to convey information should be produced in native format.

8.    Apple responded by letter dated March 1, 2026.  The letter explained that Apple had confirmed with its processing vendor and contract reviewer team that the technical errors Plaintiffs had flagged cannot be identified automatically and can only be identified through manual review of individual documents.  Apple explained that it continues to work to identify and correct such errors before production and that if Plaintiffs identify additional errors, Apple will review and replace those documents as appropriate.  Apple also agreed to provide color replacements in response to reasonable requests, while noting its entitlement under the Proposed ESI Protocol to redact proprietary source code.

9.    On March 6, 2026, the parties met and conferred regarding these discovery issues.  Plaintiffs stated that a single document, produced on March 5, 2026, was illegible, which Apple agreed to investigate.

10.    On May 13, 2026, the parties filed a joint status letter with the Court (Dkt. 192) in which the parties discussed these discovery issues "in the form of an

4

executive summary," with disputes described "briefly" so the parties could seek the Court's instruction on how "the dispute should be presented for adjudication." Dkt. 142 ¶ 21.

11.    On May 29, 2026, at 5:04 p.m. ET, MDL Plaintiffs sent a letter to Apple's counsel, transmitted by Mr. Epstein, regarding purported issues with Apple's document productions.  In the letter, Plaintiffs identified a single document with alleged legibility issues and requested that Apple "identify and replace all such documents with native files."

12.    Apple responded by letter dated June 15, 2026, which my colleague Katherine Warren Martin transmitted to Plaintiffs' counsel at 12:01 a.m. ET on June 16, 2026.  With respect to imaging, Apple agreed that the resolution at which the one document Plaintiffs identified had been imaged rendered portions of it illegible, and committed to reproduce that document at a higher resolution.  Apple explained again that resolution related issues of this kind are not identifiable by reviewers in the ordinary course of document review; and that the appropriate and efficient course is for Plaintiffs to identify specific documents they contend are illegible, which Apple will promptly review and, where warranted, reproduce.

13.    To date, Apple has produced over 33 million Bates-stamped pages to MDL Plaintiffs, including the documents from the Government's pre-suit investigation, the documents produced originally to the Government in response to

the RFPs in the Government Action, and documents produced in response to the RFPs in the MDL.

14.    To date, Plaintiffs have identified 22 documents with document processing or imaging issues.

15.    Apple has provided replacement copies for 16 of these documents to address Plaintiffs' concerns.

16.    In the remaining 6 documents, the "illegible" portions were excerpts of Apple source code.  Those documents were not reproduced because Apple is entitled to redact such information in any event.  Dkt. No. 100-2 at ¶ V.6 ("The Parties may redact information that is … Highly Confidential Source Code[.]").

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED:  July 9, 2026                          GIBSON, DUNN & CRUTCHER LLP

                                              By: *s/ Joseph R. Rose*
                                              Joseph R. Rose
                                              One Embarcadero Center, Suite 2600
                                              San Francisco, CA 94111-3715
                                              Telephone: (415) 393-8277

                                              *Attorney for Defendant Apple Inc.*

DECLARATION OF JOSEPH R. ROSE
CASE NO. 2:24-MD-03113-JXN-LDW