CONFIDENTIAL / FILED UNDER SEAL

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: APPLE INC. SMARTPHONE ANTITRUST LITIGATION | Case No. 2:24-md-03113-JXN-LDW<br><br>MDL No. 3113<br><br><br>Hon. Julien X. Neals, U.S.D.J.<br>Hon. Leda D. Wettre, U.S.M.J.<br>Hon. Ronald J. Hedges, Special Master (U.S.M.J. Ret.) |

## DECLARATION OF ROBERT D. KEELING IN SUPPORT OF APPLE INC.'S LETTER BRIEF FOR RECONSIDERATION OF SPECIAL MASTER ORDER

CONFIDENTIAL / FILED UNDER SEAL

**I hereby declare as follows:**

## I.  Introduction

1.  I am an attorney licensed to practice in the State of Virginia and the District of Columbia, and have been admitted *pro hac vice* to practice before this Court pursuant to Case Management Order #1 (Dkt. 7).  I am a partner and member of the Executive Committee at the law firm Redgrave LLP, counsel of record and eDiscovery counsel leading privilege review for Defendant Apple Inc. in this case. I submit this declaration in support of Apple's letter brief seeking reconsideration of the portion of the Special Master's July 7, 2026 Order, Dkt. 223-1, requiring Apple to search for documents using the search terms MDL Plaintiffs included in their June 18, 2026 proposal and produce all responsive, non-privileged documents, or in the alternative a stay of the Order pending its appeal.

2.  In making this declaration, I do not intend to—and I am not authorized to—waive any applicable privilege or protection from discovery, including the attorney-client privilege and the work product protection.

3.  As explained in Section III below, the review the Special Master has ordered—review of the approximately 19.4 million additional documents returned by Plaintiffs' proposed search terms, including the privilege review necessary to protect Apple's privileged information—cannot be completed in one month.

## II.  Personal Background

4.  My practice focuses on electronic discovery and data analytics.  Before

CONFIDENTIAL / FILED UNDER SEAL

joining Redgrave, I was co-founder and co-head of the eDiscovery and Data Analytics Group at Sidley Austin LLP. I have served on the Steering Committee of The Sedona Conference's Working Group 1 on Electronic Document Retention and Production and currently serve as the chair of the Electronic Discovery Reference Model's ("EDRM") Global Advisory Council. I am ranked by Chambers USA and Chambers Global for eDiscovery and Information Governance.

5. I am an Adjunct Professor at George Mason University Law School, where I teach a course on eDiscovery, and I have lectured on eDiscovery and technology issues at Harvard Law School, Vanderbilt Law School, Fordham University School of Law, and American University Washington College of Law. I am a frequent writer and speaker on eDiscovery topics.

6. In my practice, I regularly advise clients on issues related to the preservation, collection, processing, review, analysis, and production of Electronically Stored Information ("ESI"), including document reviews to identify responsive documents and to identify and protect privileged information. I am regularly consulted on how to conduct effective document review and privilege review in complex, large-scale matters.

7. I am familiar with the ESI, document-review, and privilege-review processes at issue in this matter, including the privilege review and privilege-logging processes described below and the resources they require.

2

DECLARATION OF ROBERT D. KEELING
CASE NO. 2:24-MD-03113-JXN-LDW

CONFIDENTIAL / FILED UNDER SEAL

### III.    Reviewing a Population of Approximately 19.4 Million Documents for Privilege in One Month Is Not Possible

8.      I understand that the Special Master ordered Apple to apply MDL Plaintiffs' June 18, 2026 proposed search terms and to complete review and production of responsive, non-privileged documents no later than 30 days from the date of the Special Master's Discovery Order No. 1 (Dkt. 223-1) (the "Order").

9.      Based on information provided by Apple's eDiscovery vendor in this matter, I understand that the application of MDL Plaintiffs' proposed search terms generates a review population of approximately 19,370,191 documents.  This figure and the review capacity figures described below are further addressed in the accompanying Declaration of Clayton Leech of Consilio.

10.     Consistent with accepted best practices, Apple's review process is multi-layered.  After documents are reviewed and coded in first-pass and second-pass / quality-control review (as described in the Declaration of Clayton Leech), Apple's outside counsel conduct separate pre-production reviews.  This is because even with experienced attorneys, detailed review protocols, thorough training, and ongoing oversight, review-team mistakes are inevitable in any large-scale document review.  These errors typically stem from the inherent difficulty of identifying and classifying privilege consistently across hundreds of thousands of documents, let alone millions.  These issues are magnified where, as here, an enormous review population would have to be reviewed on a drastically compressed schedule.

DECLARATION OF ROBERT D. KEELING
CASE NO. 2:24-MD-03113-JXN-LDW

CONFIDENTIAL / FILED UNDER SEAL

11.     As a general matter, Apple's quality-control reviews involve various necessary and independent reviews to ensure that Apple's privilege, confidentiality, and other sensitive and proprietary information is properly protected, whether it is redacted or withheld.  At the same time, the quality-control review also seeks to ensure that redacted or withheld documents indeed contain protected, privileged, or confidential information.  These quality-control reviews also include reviewing threads and duplicate documents to identify and resolve inconsistencies in coding before production.

12.     Redgrave performs quality-control reviews that are consistent with best practices and essential to protecting Apple's privileged and proprietary information. While Redgrave's privilege quality-control process uses a combination of sophisticated analytics, TAR, and AI, each of these processes ultimately relies on a manual review performed by qualified and trained attorney reviewers and requires substantial time.  These quality-control processes require time in addition to work that is described in the accompanying Declaration of Clayton Leech of Consilio.

13.     The amount of secondary privilege review is dependent on the responsiveness rate of the search terms.  The lower the rate of responsiveness, the lower the amount required for secondary privilege review; a higher rate of responsiveness would lead to a higher amount of required secondary privilege review.

DECLARATION OF ROBERT D. KEELING
CASE NO. 2:24-MD-03113-JXN-LDW

CONFIDENTIAL / FILED UNDER SEAL

14.    Based on the rate at which documents required further privilege analysis in *United States v. Apple Inc.*, Case No. 2:24-cv-04055 (D.N.J.), approximately 1.55 million documents of the additional 19,370,191 documents would require further privilege review.

15.    Privilege review proceeds far more slowly than general responsiveness review. Each document must be examined individually to assess the participants, the presence and nature of legal advice, and the applicability of the attorney-client privilege and work product protection—analysis that cannot be performed at the pace of a responsiveness review. Privilege treatments of this kind are difficult even for seasoned attorneys, as many require surgical redactions to separate business advice from legal advice. Based on Redgrave's experience performing privilege and quality-control review, that review proceeds at a rate of approximately 750 to 900 documents per reviewer per week, compared with the responsiveness review rates (as described in the Declaration of Clayton Leech of Consilio).

16.    Even for large document reviews conducted on an expedited basis, the average number of contract attorney reviewers Redgrave advises for quality-control review is between 40 and 70 reviewers. In my experience, considerable challenges and inefficiencies arise when attempting to retain more contract attorney reviewers to perform quality control. As team size grows, significantly more oversight, coordination, communication, and day-to-day management are required. Document

DECLARATION OF ROBERT D. KEELING
CASE NO. 2:24-MD-03113-JXN-LDW

CONFIDENTIAL / FILED UNDER SEAL

reviews employing more than about 70 quality-control reviewers tend to have an increased risk of mistakes, such as coding and privilege errors and inconsistencies, also leading to a higher volume of clawbacks for inadvertently produced privileged documents.

17.    Using this average number of reviewers, it would take between 24 and 51 weeks to complete quality-control privilege review based on a review population of 1.55 million documents requiring further privilege review.

18.    Moreover, Redgrave's privilege and pre-production reviews of any given set of documents cannot begin until the contract attorney first-pass and quality-control review are complete.  Although Redgrave's review can proceed on a rolling basis as portions of the review population complete initial review, quality-control review of a document cannot be conducted in parallel with (or in advance of) the contract attorney review of that document because the quality-control review is intended to serve as a check on that earlier review. Forgoing the multi-step initial review typically does not expedite the timeline because it just adds more documents to the outside counsel review population.  If Redgrave's quality-control reviews do not occur, there is a significant risk of prejudice to Apple and the inadvertent production of Apple's protected materials.

19.    For the reasons stated above, completing the privilege review necessary to protect Apple's attorney-client privileged and work product protected material

DECLARATION OF ROBERT D. KEELING
CASE NO. 2:24-MD-03113-JXN-LDW

CONFIDENTIAL / FILED UNDER SEAL

cannot be accomplished in one month.  No achievable number of qualified reviewers could complete the task in that time frame, and any attempt to do so would require abandoning the safeguards that protect against the inadvertent production of privileged material.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED:  July 9, 2026                          REDGRAVE LLP

By: _____
Robert D. Keeling
*Attorney for Apple Inc.*

7