McElroy Deutsch

1300 Mount Kemble Avenue
P.O. Box 2075
Morristown, NJ 07962-2075
T: 973.993.8100 | F: 973.425.0161
MDMC-LAW.COM

THOMAS R. CURTIN
Direct Dial: (973) 401-7117
tcurtin@mdmclaw.com

July 28, 2026

**VIA ECF**

**CONFIDENTIAL – FILED UNDER SEAL**

Honorable Leda Dunn Wettre, U.S.M.J.
U.S. District Court for the District of New Jersey
50 Walnut Street
Newark, New Jersey 07102

Re: *In re Apple Inc. Smartphone Antitrust Litigation*, 2:24-md-03113-JXN-LDW
Watch Plaintiffs' Letter Brief Regarding Expedited Joint Notice of Impasse, Dkt. 243

Dear Judge Wettre,

Pursuant to ¶5 of the Court's Special Master Appointment Order, and the Court's order directing the parties to file letter briefs, Dkt. 247, Direct Apple Watch Purchaser Plaintiffs ("Watch Plaintiffs") respectfully submit this letter brief regarding the issues raised in the expedited joint notice of impasse, Dkt. 243.

Federal Rule of Civil Procedure 26(b)(1) permits discovery into "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." The "scope of relevance in discovery is not limited to the matters set forth in the operative complaint, but instead to 'any party's claim or defense.'" *SLB Enter., LLC v. AGI Corp.*, No. 11-mc-259, 2011 WL 6134542, at *2 (E.D. Pa. Dec. 8, 2011); *see* Fed. R. Civ. P. 26(b)(1); *id.*, advisory committee's note to 2000 amendment ("[I]nformation not directly pertinent to the incident in suit could be relevant to the claims or defenses raised in a given action," including "other incidents of the same type").

To assess proportionality, Rule 26 requires balancing the "importance of the issues," "amount in controversy," "parties' relative access to relevant information," "parties' resources," "importance of discovery in resolving the issues," and whether "burden" of the proposed discovery outweighs its "likely benefit." *MSP Recovery Claims, Series LLC v. Celgene Corp.*, No. 21-cv-20451, 2024 WL 1327990, at *2 (D.N.J. Mar. 28, 2024) (finding factors weigh in favor of discovery and compelling custodial productions). Watch Plaintiffs bear the initial burden to "'show that the information sought is relevant.'" *Kelly v. City of Patterson*, No. 19-cv-17911, 2021 WL 2821175, at *2 (D.N.J. July 7, 2021) (granting plaintiff's motion to compel document production). Then, Apple "'bears the burden of showing specifically how the request is burdensome.'" *Id.*

Across all issues raised here, every factor favors Watch Plaintiffs. The amount in controversy, parties' relative access to information, parties' resources, and importance of the issues all weigh in favor of the discovery sought. Apple is one of the largest companies in the world; it self-evidently has more access to relevant information; and the stakes are massive—Watch Plaintiffs' case concerns Apple's monopolization of a multi-billion-dollar smartwatch market. The scope of proportional discovery against defendants in antitrust cases is typically "enormous." *Pfizer Inc. v. Johnson & Johnson*, No. 17-cv-4180, 2018 WL 1071932, at *2 (E.D. Pa. Feb. 27, 2018). This case is no exception.

## I. <u>Interoperability Scope</u> (RFPs 8, 8.1, 8.2, 8.3, 17.1, 47, 51.4(b), and 70)

Interoperability is the ability for one device and its apps to connect to, remain connected to, exchange data with, and deliver core functions with another device. Interoperability between iPhones and smartwatches is at the heart of Watch Plaintiffs' case. The complaint describes Apple's scheme to degrade other smartwatches through restrictions on interoperability with the iPhone. *See, e.g.*, Dkt. 86 (Am. Compl.) ¶¶40-43, 45-50 (contractually imposed restrictions), ¶¶53-68 (messaging restrictions), ¶¶96-107 (notification restrictions), ¶¶108-13 (digital wallet restrictions), ¶¶156-63, 175-82 (connectivity restrictions), ¶¶153-55 (health data restrictions), ¶¶135-44, 183-87 (watch-to-app restrictions). Watch Plaintiffs propounded requests about the interoperability of smartwatches and comparable devices with the iPhone, including RFPs 8, 8.1, 8.2, 8.3, 17.1, 47, 51.4(b), and 70. Request 8.1, for example, seeks in part documents "relating to the interoperability of Third-Party Smartwatches with iOS or the iPhone." Ex. B at 18.

Apple does not dispute that interoperability-related documents are relevant, but will only produce such documents if they reflect a "***difference*** in the functions available (or unavailable) to Apple devices versus third party devices." Ex. C at 7 (emphasis added). In other words, Apple refuses to produce interoperability-related documents if they discuss ways in which Apple treats third-party devices the same as it treats Apple Watches. One example of when Apple does that: In Europe (but not in the US), users of third-party smartwatches can receive and react to notifications

sent from an iPhone the same way Apple Watch users can. Another example: In Europe (but not in the US), third-party smartwatches can access iPhone information about local Wi-Fi networks, and easily connect to those networks, the same way the Apple Watch can.[1]

Documents discussing interoperability non-differences are relevant to Watch Plaintiffs' claims. For example, documents showing that Apple withdrew features from Apple Watch, or declined to implement them because local laws would require Apple to also make those features available to third parties show that Apple preferred to deprive its own customers of a feature rather than make it available to competitors. *See, e.g.*, *The Digital Markets Act's Impacts on EU Users*, Apple (Sept. 24, 2025), https://www.apple.com/newsroom/2025/09/the-digital-markets-acts-impacts-on-eu-users/ (Apple describing how it removed iPhone mirroring from the EU to avoid the requirements of the EU's Digital Markets Act). Similarly, documents discussing the pro-competitive or privacy-neutral effects of recent orders by foreign authorities like the European Commission that require feature parity (*i.e.*, non-differences) would also support Watch Plaintiffs' claims. Apple has decided to make some features interoperable in some places and not others; how Apple makes that decision matters, even if the result is a non-difference, because it bears on whether the decision was for pro- or anti-competitive reasons.

Documents about interoperability non-differences are also relevant to rebutting Apple's defenses. *See* Fed. R. Civ. P. 26(b)(1). Apple will likely argue that its interoperability restrictions arose from security or privacy concerns, or technical feasibility limitations, rather than anticompetitive conduct. *See United States v. Apple Inc.*, No. 2:24-cv-4055, Dkt. 295 at 1 (pointing to "privacy and security" on the first page). Documents reflecting that Apple feasibly permits interoperability for some features—because it does not sell a competing product, or when ordered to under the DMA—undermine those arguments. *See AbbVie Inc. v. Boehringer Ingelheim Int'l GmbH*, No. 17-cv-01065, 2019 WL 498797, at *4 (D. Del. Feb. 8, 2019) (compelling production of documents that "relate to [a] defense."). For example, in the US, Apple restricts third-party smartwatches from using Near Field Communication (NFC) for contactless transactions like the Apple Watch can, but recently made that feature available in the EU in response to an EC investigation.[2] Apple's recent implementation shows that type of interoperability is feasible, but Apple believes it should not be required to produce documents discussing NFC interoperability in the EU, because it now reflects a non-difference. That makes no sense.

Apple claims that producing responsive documents relating to interoperability non-differences would be too burdensome. But Apple cannot meet its " 'burden of showing specifically how the request is burdensome.' " *Kelly*, 2021 WL 2821175, at *2. Apple has already agreed that reviewers will examine documents that hit on agreed-upon search terms to decide whether they reflect interoperability differences. Marking as responsive documents that reflect non-differences will generate no additional review. Watch Plaintiffs' approach is less burdensome, as reviewers need only identify documents discussing interoperability, without having to decide whether they concern a situation in which Apple allows or restricts the comparable feature in Apple Watch. But in any event, any burden would be justified by the centrality of this issue to Watch Plaintiffs' claims. "[A]ntitrust litigation often involves complex legal issues and voluminous facts, most of

---

[1] *Factsheet*, European Commission, https://digital-markets-act.ec.europa.eu/factsheet-how-dma-making-smartphones-better-interoperability-and-data-portability-case-studies-2026-05-11_en (May 11, 2026).

[2] *Commission accepts commitments by Apple opening access to 'tap and go' technology on iPhones*, European Commission, https://ec.europa.eu/commission/presscorner/detail/en/ip_24_3706 (July 10, 2024).

which are usually in the possession of the defendant." *Penn Galvanizing Co. v. Lukens Steel Co.*, 65 F.R.D. 80, 81 (E.D. Pa. 1974).

## II. <u>Specific Interoperability Issues</u> (RFPs 68-70 and 122)

RFPs 68-70 and 122 also seek documents relating to interoperability. RFPs 68 and 69 seek (1) consumer comments and complaints that relate to interoperability, privacy, security, price, value, and comparability of smartwatches and that relate to the Apple Watch or third-party smartwatches, including (2) Apple's internal communications about those comments and complaints. Ex. B at 42. RFP 70 seeks interoperability complaints about third-party smartwatches not just from consumers, but also from smartwatch makers, app developers, reporters, and media outlets. *Id.* RFP 122 seeks documents related to interoperability that were submitted through Apple's Feedback Assistant. Ex. N at 14.

For RFPs 68-70, Apple objects to producing documents regarding any interoperability issue that the Amended Complaint does not "expressly" mention. Ex. A at 1-2. As to RFP 122, Apple objects to producing any documents submitted through Feedback Assistant other than those that "relate to interoperability issues involving third-party smartwatches and/or Apple Watch interoperability with iPhone/iOS," or "the Alleged Conduct" specifically. Ex. E at 4-5.

Apple agrees that documents are relevant if they involve the particular phone-watch interoperability issues identified in the operative complaint. But Apple contends it should not be required to produce documents describing similar interoperability issues not specifically identified in the amended complaint. That is not the standard under Rule 26. *See* p. 1, *supra*. The claims and defenses, not the matters set forth in the operative complaint, set "the scope of relevance in discovery." *SLB Enter., LLC*, 2011 WL 6134542, at *2 (compelling production); *see generally* p. 1, *supra.* Device-iPhone interoperability issues, and especially smartwatch-iPhone interoperability issues, are relevant to Watch Plaintiffs' ***claims***. If Apple restricts smartwatch-iPhone interoperability through technical (or other) means not yet known to Watch Plaintiffs, that evidence is relevant to Watch Plaintiffs' claims. *See, e.g.*, *Black-Meadows v. Deptford Twp.*, No. 20-cv-6951, 2022 WL 16695191, at *3-4 (D.N.J. Nov. 3, 2022) (scope of discovery is not limited to the "same type" of misconduct alleged, and the needs of the case "favor disclosure . . . where Plaintiffs would otherwise be limited in developing facts.").

And Apple has not carried its "'burden of showing specifically how the request is burdensome,'" *Kelly*, 2021 WL 2821175, at *2, nor can it. Indeed, Apple's proposal is ***more*** burdensome. It would require document reviewers to compare each Apple document that hits on search terms against the Amended Complaint to determine whether the document refers to an expressly mentioned interoperability issue. Watch Plaintiffs' proposal, by contrast, simply requires producing any otherwise responsive document that discusses device-iPhone interoperability.

## III. <u>Sister Apps</u> (RFPs 13, 14, 17.1, 18.1, 30, 38, 43, 55, and 58)

Consumers use smartwatches with apps "designed to enhance the way the smartwatch works." Am. Compl. ¶¶34, 47. Those include both "companion apps" and "sister apps." Companion apps are required to pair a smartwatch with a smartphone, like Garmin Connect. *Id.* ¶34. Sister apps can be installed on a smartwatch or can interact with a smartwatch. *Id.* ¶¶34-36. An example is the Strava fitness app, which is downloaded on a phone, but once linked to a user's Garmin Connect account, can sync activity from a Garmin smartwatch to a phone. *Garmin and Strava*, Strava Support, https://support.strava.com/en-us/articles/15401903-garmin-and-strava.

Sister apps are important to the iOS-connected smartwatch market. *See, e.g.*, Ex. F (Williams Dep.) at 65:12-66:3 (third-party apps are a "market driver[ ]"); *id.* at 52:4-53:2 (describing "cool third-party apps" as a feature Apple Watch users find compelling); Ex. G (Pruden CID Dep.) at 236:25-241:11 (produced as CIDDEPO0000000119) (describing internal Apple Watch group that discusses market implications of changes to popular sister apps). Sister apps are also important to Apple's anticompetitive scheme. Apple controls the availability and functionality of sister apps to restrict rival smartwatch performance. Am. Compl. ¶¶34-45, 53-67, 96-113, 118-30.

RFPs 13, 14, 17.1, 18.1, 30, 38, 43, 55, and 58 seek documents related to smartwatch "Sister Apps" either directly or through other definitions, such as "Identified Product or Service." As a compromise, Watch Plaintiffs proposed: (1) to limit "sister apps" to certain RFPs, defining the term as any app that can be downloaded on or interact with a smartwatch, and (2) that Apple not exclude otherwise responsive documents that hit on search terms solely because they relate to a sister app. Ex. H at 2-3.[3] Apple objects to Watch Plaintiffs' definition of "sister app" on burden and administrability grounds. Apple claims that its reviewers "cannot be expected to reliably know which third-party apps can interact with Third-Party Smartwatches" and demands Watch Plaintiffs provide a list of sister apps. Ex. I at 6-7. Apple should be compelled to produce responsive documents under Watch Plaintiffs' definition.

Watch Plaintiffs' approach imposes no meaningful incremental burden on Apple. Watch Plaintiffs have not asked Apple to run additional searches. Rather, Watch Plaintiffs propose that, if a document hits on an agreed-upon search term and is otherwise responsive to one of the nine identified RFPs, Apple will not exclude it during its responsiveness review solely because it relates to a sister app rather than some other relevant app or device. Apple's reviewers are already examining these documents for responsiveness; Watch Plaintiffs merely ask that Apple not withhold these relevant documents from production.

Apple's demand for a discrete list of apps flips the burden: Apple is the party required to show how the request is unduly burdensome. *Kelly*, 2021 WL 2821175, at *2. Watch Plaintiffs' definition of sister apps is clear and workable. The App Store already identifies whether an app can be downloaded onto an Apple Watch. *App Store for Watch – Apps*, https://apps.apple.com/us/watch/apps-and-games. And Apple's employees recognize the importance of sister apps for the smartwatch market, *see* p. 4, *supra*, so Apple should be able to recognize them. Watch Plaintiffs asked Apple whether it internally categorizes apps by whether they connect to or interact with a smartwatch, Ex. H at 2, but Apple did not respond, Ex. I at 6-7. Watch Plaintiffs' proposal is thus their best attempt to address Apple's concerns with their limited knowledge.

Finally, Apple's proposed alternative—limiting discovery to a finite list of named apps—is inadequate. Watch Plaintiffs allege an anticompetitive scheme in which Apple uses contracts of adhesion to restrict sister apps that would enhance competition for iOS-connected smartwatches. Am. Compl. ¶¶34-45, 53-67, 96-113, 118-30. The apps that Apple delayed, squelched, and kneecapped using the Developer Program License Agreement and other restrictions are the ones

[3] An iPhone app is not a sister app merely because it pushes notifications to an iPhone and the iPhone then forwards those notifications to the third-party smartwatch. Ex. H at 2.

Watch Plaintiffs ***don't*** know about. Limiting discovery to a handful of "specific" apps would allow Apple to withhold relevant documents that reflect the full scope of its conduct.

## IV. Smartwatch App Agreements (RFPs 51.1 and 51.2)

As limited, RFPs 51.1 and 51.2 seek (1) certain enumerated Agreements, policies, and guidelines regarding smartwatch apps, and (2) policies and guidelines that specifically mention Apple Watch, third-party smartwatches or smartwatch makers, certain enumerated functionalities and apps, and related smartwatch technologies like iOS, WatchOS, and Beeper Mini. Ex. J at 2. Apple refuses to produce agreements, policies, and guidelines that cover smartwatch-related functionalities and apps, claiming that Watch Plaintiffs' definition of "Sister Apps" (one of the categories of smartwatch-related apps) is impossible to apply, and that these documents would require Apple to produce a "substantial volume" of irrelevant documents. Ex. I at 15.

Those agreements are relevant to Watch Plaintiffs' claims. Apple requires third-party app developers to enter into agreements that cement and maintain Apple's monopoly over iOS-connected smartwatches. The Developer Program License Agreement ("DPLA") restricts developers from accessing protocols needed to enable full smartwatch-iPhone interoperability. Am. Compl. ¶¶40-43, 45-50. Both the DPLA and a user agreement—the iOS License Agreement—lock users into the App Store, where they are hampered by Apple's DPLA restrictions. *Id.* ¶¶40-43. The DPLA itself also incorporates Apple's App Review Guidelines, which allow "Apple to remove an iPhone app listing for merely mentioning a competing smartwatch in App Store metadata." *Id.* ¶125. The SeaNav marine navigation sister app, for example, was rejected from the App Store because its description stated that it connected to the Pebble Smartwatch. *Id.* ¶127. Other apps have had "to remove images of Pebble devices in screenshots of their app, as well as any mentions of Pebble in app metadata." *Id.* Apple's agreements about these apps are critical.

Apple's objection that the "definition of 'Sister Apps' is impossible to apply," Ex. I at 15, lacks merit. *See* pp. 3-5, *supra*. And while Apple asserts undue burden, it has not "'show[n] specifically how the request is burdensome.'" *Kelly*, 2021 WL 2821175, at *2; Ex. J at 2 (asking Apple to quantify this burden); Ex. K at 2-3 (refusing to do so); Ex. I at 15 (same). This Court should compel Apple to produce these responsive documents.

## V. Third-Party Agreements and Communications (RFP 71)

Watch Plaintiffs also seek "Communications or Agreements with third parties relating to Smartwatches." Ex. B at 42 (RFP 71). In response to Apple's objections based on burden and relevance, Ex. L at 7-8, Watch Plaintiffs proposed narrowing the request to agreements and communications with third parties relating to Smartwatches to the extent they relate to the Alleged Conduct or interoperability, Ex. M at 2. Apple maintains its objection, but has not explained how or why Watch Plaintiffs' proposal would sweep in irrelevant categories of agreements. Nor could it. These documents are self-evidently relevant. And, as with the other disputed RFPs, Apple has not even attempted to quantify its burden.

## VI. Interoperability Submissions (RFPs 121, 122, 129)

RFPs 121 and 122 seek information about interoperability requests that Apple has received through a portal set up to comply with the EU's Digital Markets Act, and through its Feedback Assistant platform. Ex. N at 14; *see Requesting interoperability with iOS and iPadOS in the*

*European Union,* Apple, https://developer.apple.com/support/ios-interoperability; *Send us your feedback and report bugs*, Apple, https://developer.apple.com/feedback-assistant. RFP 129 seeks documents about differences in iOS-connected Smartwatch functionality in the European Union versus in the United States and documents related to Apple's decisions regarding whether to make functions available in only one, both, or neither of those places. Ex. N at 16.

Apple objects to producing (a) requests submitted through the DMA portal or otherwise relating to EU compliance, (b) documents concerning functionalities Apple changed in the EU to comply with the DMA, and (c) Feedback Assistant submissions that do not relate to US issues, all on the basis that those documents are irrelevant and not proportional.[4] Apple also objects in light of unidentified "foreign-law confidentiality restrictions," and that RFP 121 is overbroad because it extends to iPadOS and the iPad. *See* Ex. E at 3-4.

These RFPs request relevant documents. Watch Plaintiffs allege, in the alternative, a worldwide market for iOS-connected smartwatches. Am. Compl. ¶¶222, 255, 262. Apple's monopolistic conduct in the European Union is therefore directly relevant to Watch Plaintiffs' claims and Apple's defenses.

Moreover, the documents Watch Plaintiffs seek are relevant to showing that Apple can permit interoperability when ordered to, as in the EU. As a court explained to Apple in antitrust litigation over the App Store two years ago:

> In Europe, Apple is doing some of the very things it refuses to do in the U.S. because of privacy, security and other concerns, and it is doing them with some apparent success. Plaintiffs say this may show that Apple's pro-competitive justifications for its complete control over app distribution are not as important as Apple says they are. ***This is a good theory of relevance.***

*In re Apple iPhone Antitrust Litig.*, No. 11-cv-6714 (N.D. Cal. Aug. 19, 2024), Dkt. 919 at 4-5 (emphasis added). Other courts have ordered defendants to produce documents related to foreign conduct that are relevant and proportional to domestic antitrust claims. *See, e.g.*, *FTC v. Amazon.com, Inc.*, No. 23-cv-1495, 2024 WL 5238834, at *4-5 (W.D. Wash. Dec. 27, 2024) (ordering production of documents about "actions [taken] in response to competition investigations" by foreign regulators).

For similar reasons, Apple's responses to interoperability requests in the EU are relevant to Apple's anticipated defenses. Apple asserts in this case that "protecting the security, privacy, and operability of iPhone" and "increasing Apple Watch sales" justify its conduct. Dkt. 132-1 at 64. Apple's responses to these requests, which sometimes contain explanations of why Apple grants or denies a particular request, are likely to be probative of whether those assertions hold up.[5] Apple's other objections are no more compelling. Apple admits it "has yet to determine whether [European confidentiality] restrictions would apply" to its DMA interoperability-request

---

[4] Apple also refuses to produce Feedback Assistant submissions related to interoperability issues not specifically alleged in Watch Plaintiffs' complaint. *See* Ex. E at 4-5. Watch Plaintiffs address why interoperability issues not specifically alleged in Watch Plaintiffs' complaint are relevant in Section II, *supra*.

[5] The requests are also relevant to show which functions smartwatch users value. *See* Am. Compl. ¶¶9, 92, 142 (alleging consumer preferences and complaints). For example, if a developer requested to interoperate a health-related function with iOS, that suggests a consumer preference to use smartwatches to track their health that way.

portal. Ex. E at 4. And RFP 121 is not overbroad; Watch Plaintiffs' complaint addresses interoperability with iPad and iPadOS. *See* Am. Compl. ¶¶41, 45, 75-76, 119.

## VII. <u>Requests for Production Regarding Non-Watch Smart Products</u> (RFPs 130-136)

Apple restricts third-party smartwatches' access to Application Programming Interfaces (APIs) for core functions like messaging, location sharing, and fitness tracking. *See, e.g.*, Am. Compl. ¶¶45-60. APIs are software protocols that apps need to communicate between two devices, like a smartphone and a smartwatch. Am. Compl. ¶¶ 45-60. Watch Plaintiffs allege that Apple allows iOS-connected devices to access iPhone APIs when Apple does not have a competing product, but that once Apple releases its own product—like Apple Watch—it limits competitor products from connecting with the iPhone. *Id.* ¶¶27-31.

Consistent with those allegations, Watch Plaintiffs seek discovery demonstrating that Apple does ***not*** limit access to iPhone APIs for products that do not compete with an Apple device. Examples include smart locks, cars that connect to iPhones through Apple's CarPlay, and devices that work with Apple's HomeKit, including smart lighting, refrigerators, thermostats, and security cameras. *See, e.g.*, Ex. N at 18 (RFP 135) (seeking documents "related to connectivity between iPhones and smart devices (including, but not limited to, smart refrigerators, smart thermostats, smart locks, and smart vacuums) . . ."). Apple's willingness to share certain APIs when it does not compete in that market is relevant to an assessment of Apple's reasons for refusing to share APIs with third-party smartwatches. *See* Am. Compl. ¶¶48-112.

Similarly, Apple may not restrict access to messaging APIs for cars with CarPlay, which allows users to connect to their iPhone. When a user receives a text message while in the car, CarPlay may allow Siri to read it and dictate a reply, even though the third-party car's Bluetooth/USB connection presumably handles the data. By contrast, Apple deprives third-party smartwatches of access to the APIs to send a reply text through the messages app, supposedly for security reasons. These differences in how Apple treats users connecting devices that do not compete with Apple's products versus those that do are relevant to Watch Plaintiffs' claims. *See* Am. Compl. ¶¶42-63.

For similar reasons, Watch Plaintiffs are entitled to documents that undermine Apple's likely defense that privacy or security concerns justify restricting APIs and background execution for competing watches. *See United States v. Apple Inc.*, No. 24-cv-4055, Dkt. 295 at 1 (citing "privacy and security"). That "privacy and security" are no barrier to sharing APIs with smart cars, locks, and thermostats reveals that those concerns are pretextual when cited as a reason to restrict connectivity with competing smartwatches. Apple has not quantified any burden of production, as required, *see* p. 1, *supra*, or explained why this discovery is not proportional.[6]

---

[6] The parties met and conferred about RFPs 130-136 on May 4, 2026. Watch Plaintiffs sent Apple a letter on those RFPs, among others, on May 8, 2026. Apple responded five weeks later, on June 26, 2026, but did not provide any substantive position on RFPs 130-136. *See* Ex. E at 11. To date, Apple has not provided a substantive response, but agrees the parties are at impasse. Dkt. 247 at 2.

Respectfully Submitted,

/s/ *Thomas R. Curtin*
Thomas R. Curtin
MCELROY, DEUTSCH,
MULVANEY & CARPENTER, LLP
1300 Mount Kemble Avenue
Morristown, NJ 07962
Tel: (973) 993-8100
tcurtin@mdmc-law.com

cc: All counsel (by ECF)