# Exhibit A

## CONFIDENTIAL - FILED UNDER SEAL

GIBSON DUNN

Katherine Warren Martin
Associate Attorney
kwarren@gibsondunn.com

CONFIDENTIAL

May 6, 2026

VIA EMAIL

Lauren Dayton
MoloLamken LLP
LDayton@MoloLamken.com

Re: *In re Apple Inc. Smartphone Antitrust Litigation*, No. 2:24-md-03113

Dear Counsel,

We are in receipt of your March 20, 2026, letter regarding Apple's March 11, 2026 letter and other outstanding issues regarding Watch Plaintiff's RFP. We have responded to the various issues your letter addresses below.

**Watch RFPs 68-70**:
**RFP 68:** All consumers comments regarding the Apple Watch, whether stored as Documents or structured data.

**RFP 69:** All Communications from iPhone customers to Apple relating to Third-Party Smartwatches, and all Documents and Communications relating to those Communications, including, but not limited to customer complaints, compliments, questions, comments, or suggestions.

**RFP 70:** All Documents relating to criticisms or complaints from consumers, Third-Party Smartwatch Makers, Developers of Third-Party Smartwatch Apps, reporters, or media outlets relating to the interoperability of the Apple Watch with the iPhone and the interoperability of Third-Party Smartwatches with the iPhone.

Plaintiffs' Letter Statement

*In the spirit of compromise, Watch Plaintiffs agree to limit these RFPs to documents relating to: interoperability (not only those interoperability issues described in the Second Amended Complaint); privacy or security; price or value; and other smartwatches. As to RFP 69 specifically, Watch Plaintiffs requested both communications from customers and internal Apple communications related to those customer communications. Your March 11 letter was ambiguous as to whether Apple would produce nonprivileged Apple communications related to those customer communications, please confirm.*

Apple Response

Apple maintains its objections to RFPs 68–70 to the extent they seek all consumer comments or communications about Apple Watch or Third-Party Smartwatches without limitation to consumer comments or communications relevant to Watch Plaintiff's allegations. Apple also maintains its objections to RFP 70 to the extent it seeks "all Documents relating to criticisms or complaints" from a broad range of

sources, which exceeds proportional discovery. Watch Plaintiff continues to seek documents in response to RFPs 68–70 that are not relevant to his allegations, including expressly demanding that Apple produce documents related to "interoperability" beyond "those interoperability issues described in" Watch Plaintiff's Complaint. (Please confirm that your reference to the "Second Amended Complaint" was intended to refer to the Direct Apple Watch Purchaser Plaintiff's [sic] First Amended Class Action Complaint, Dkt. No. 86; there is no Second Amended Complaint in this action of which Apple is aware.) Plaintiff's repeated attempt to demand production of documents related to issues he expressly did not allege is improper and unjustified. Watch Plaintiff has not shown, or attempted to show, that discovery into interoperability issues he did not allege is relevant or proportional to the needs of the case. *See Castellani v. City of Atl. City,* 102 F. Supp. 3d 657, 663 (D.N.J. 2015) (holding "[t]he scope of discovery is not limitless; rather, the scope of relevant discovery is "circumscribe[d]" by "[t]he complaint and its claims[,]" and "[i]t is against these claims that discoverability is determined as to each discovery request[.]") (citation omitted). Apple is willing to confer further about these Requests if Watch Plaintiff narrows them to relate to his allegations.

With respect to RFP 69, the Request seeks communications *from iPhone customers* to Apple relating to Third-Party Smartwatches, rather than Apple's internal communications generally, and so Apple will not be producing such internal communications. Any request for Apple's internal communications regarding customer feedback would be overly broad, unduly burdensome, and not proportional to the needs of the case, and would effectively mirror the "criticisms or complaints" materials sought in RFP 70. Subject to and without waiving its objections, Apple will agree to conduct a targeted collection for non-privileged documents sufficient to show customer communications responsive to RFP 69.

**<u>Watch RFP 72</u>**: All Documents related to the App review of any Identified Product or Service, including, but not limited to, any App, Companion App, or Sister App for any Smartwatch.

<u>Plaintiffs' Letter Statement</u>

*Apple previously asked that Watch Plaintiffs narrow RFP 72 to specific Apps or features. We propose, for the purpose of RFP 72 alone, to the request to Apps that interoperated (or were proposed to interoperate) with smartwatches, and that also fall under the following categories:*

- *Smartwatch companion apps*
- *The top 10 free and top 10 paid smartwatch apps (as measured by top grossing, downloads, active installs, and app launches), according to Apple's internal records, for each year of the class period*
- *The Tesla app*
- *Apps within the following App Store categories:*
    - *Health & Fitness*
    - *Music*
    - *Social Networking*
    - *Productivity*
    - *Finance*
    - *Weather*
    - *Photo & Video*
    - *Travel*
    - *Entertainment*
    - *Navigations*
    - *Utilities*

- *Lifestyle*
- *Reference*

<u>Apple Response</u>

Apple appreciates Plaintiff's proposal and the effort to narrow this request with respect to the first three categories identified. However, Plaintiff's additional limiting proposal to apps falling within 13 App Store categories remains exceedingly broad and not meaningful. Among other things, it would encompass a substantial portion of the App Store: in 2024 alone, there were more than 1.9 million apps available on the App Store,[1] and Plaintiffs' request for 13 out of the 27 categories Apple makes available to developers[2]—particularly given that apps may be assigned to multiple categories—would still sweep in hundreds of thousands of apps and therefore does not meaningfully narrow the scope of the request. Plaintiff also does not provide any temporal limitation, and it is therefore unclear whether he seeks documents related to apps currently available, historically available, or both. Separately, Plaintiff does not explain how these categories are relevant to the Alleged Conduct.

That said, in an effort to move this discussion forward, Apple is willing to produce non-privileged documents responsive to this Request with respect to the first three categories proposed by Plaintiffs (i.e., "Smartwatch companion apps"; "top 10 free and top 10 paid smartwatch apps"; "The Tesla app") subject to further discussion regarding the parameters of these categories, including identifying the particular apps to be included. Apple does not agree to Plaintiff's proposed limitation to 13 App Store categories, which remains unworkable and overbroad for the reasons described above. Apple requests Plaintiffs further narrow that aspect of their Request so that it may be evaluated in a manner that is reasonable and proportional.

**<u>Watch RFP 85</u>**: All Documents relating to Apple's use of Privacy Warning Screens relating to Third-Party Smartwatches and Third-Party Smartwatch Apps, including, but not limited to, Documents relating to Apple's decision to use or require (or not to use or require) a Privacy Warning Screen, Apple's decisions regarding which Privacy Warning Screens should appear for users of the Apple Watch, the frequency with which Privacy Warning Screens are presented to users of distinct Apps and how those frequencies are determined, internal Communications regarding Privacy Warning Screens' effects on Third-Party Smartwatches and Third-Party Smartwatch Apps, and Communications with Third-Party Smartwatch Makers and Developers of Third-Party Smartwatch Apps regarding Privacy Warning Screens.

<u>Plaintiffs' Letter Statement</u>

*We appreciate Apple's agreement to produce non-privileged responsive documents. For other RFPs (like RFP 80), your letter noted that Apple would produce documents related to the topics following the word "including" in that request. Your letter did not include that language for RFP 85 – please confirm that Apple plans to produce those documents (assuming they exist and can be located through a reasonable search) as well.*

---

[1] *See* Apple, *2024 App Store Transparency Report*, accessible at https://www.apple.com/legal/more-resources/docs/2024-App-Store-Transparency-Report.pdf.

[2] *See* Apple, *App Store Developer: Choosing a category*, accessible at https://developer.apple.com/app-store/categories/.

Apple Response

Apple confirms that it agrees to produce non-privileged documents related to Apple's use of Privacy Warning Screens on iPhone relating to Third-Party Smartwatches, including documents related to the topics following the word "including" in this Request, to the extent such documents exist and can be located through a reasonable search.

**Watch RFP 86**: All Documents related to Apple's decision to display heart rate variability in the Health App based upon the Standard Deviation of Normal-to-Normal interval (SDNN) method, or any other method of displaying heart rate variability in the Health App that is employed by Apple, as well as Apple's decision not to display other measures of heart rate variability, including, but not limited to the Root Mean Square of Successive Differences (RMSSD) method.

Plaintiffs' Letter Statement

*We appreciate Apple's agreement to produce non-privileged responsive documents related to Apple's decision to export and display heart rate variability calculated using SDNN in the Health App, as well as, any decisions regarding whether or not to export and display heart rate variability in the Health App using RMSSD. Can you please confirm whether Apple used or considered any other methods of displaying heart rate variability, as originally requested in our RFP?*

Apple Response

Apple confirms that it agrees to conduct a custodial search for other methods that have been considered, if any, in relation to this Request to the extent such documents exist and can be located through a reasonable search.

Sincerely,

GIBSON, DUNN & CRUTCHER LLP

# Exhibit B

## CONFIDENTIAL - FILED UNDER SEAL

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

IN RE: APPLE INC. SMARTPHONE ANTITRUST LITIGATION

*This Document Relates to:*

Civil Action No. 24-md-03113 (JXN)(LDW)
Civil Action No. 24-cv-7238 (JXN)(LDW)

Civil Action No. 24-md-03113 (JXN)(LDW)
MDL No. 3113

**DIRECT APPLE WATCH PURCHASER PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS TO DEFENDANT APPLE INC.**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, the Direct Apple Watch Purchaser Plaintiffs ("DAWP Plaintiffs"), by and through their counsel, hereby request that Defendant Apple Inc. produce the Documents described below. As required by Rule 34, Apple Inc.'s responses and Documents shall be served on and produced electronically to counsel for DAWP Plaintiffs, and any hard-copy Documents and things shall be produced at the offices of Korein Tillery, 205 N. Michigan Ave., Suite 1950, Chicago, IL 60601, within thirty days of service thereof.

**DEFINITIONS**

1. The use of the singular includes the plural and vice versa.

2. The use of a verb in any tense shall be construed as the use of the verb in all other tenses, as necessary, to bring within the scope of the Requests all responses that might otherwise be construed to be beyond their scope.

3. "Agreement" means any oral, written, or implied contract, arrangement, understanding, or plan, or term thereof, whether formal or informal, between two or more persons, together with all modifications or amendments.

4. "All," "any," and "each" shall be construed as encompassing "any and all."

5. "Alleged Conduct" shall mean all conduct alleged in the Direct Apple Watch Purchaser Complaint and any component thereof.

31. **"Enterprise customer"** means business or corporate customers, including government and public sector customers.

32. **"Entitlement"** means any permissions or other grants of authority made by or on behalf of Apple—including to itself—authorizing an App or service to use or invoke an API, or otherwise access one or more functions, resources, or operations of iOS, or to access or use one or more hardware components of the iPhone.

33. **"Framework"** means a set of reusable functionalities and associated resources for application development, including a hierarchical directory that encapsulates shared resources, such as dynamic shared libraries, nib files, image files, localized strings, header files, and reference documentation in a single package. Apple's UIKit and Core Data are examples of Frameworks.

34. **"Identified Product or Service"** means each product or service within on or more of the following categories:

a. Cloud Streamed Games;

b. Messaging Systems;

c. Digital Wallets or Payment Apps;

d. Platform Apps or Mini Programs; and

e. Smartwatches **and Smartwatch Companion or Sister Apps**.

35. **"Implementation"** means any software code that implements any part of an API, Library, application, operating system, or any other software artifact. Implementation includes all representations of a code, including Source Code, intermediary code, binary code, or any other form of code.

36. "Including," whether capitalized or not, means "including, but not limited to," and shall not be interpreted to imply any limitation.

63. "Third-Party Smartwatch Apps" means Third-Party Smartwatch Companion Apps, Third-Party Smartwatch Sister Apps, and all other Apps developed by any entity other than Apple that interact or interoperate with Third-Party Smartwatches, including, but not limited to, iPhone Apps and Apps configured for installation on Smartwatches.

64. "Third-Party Smartwatch Companion App" means any App required for the interoperability of a Third-Party Smartwatch, such as Garmin Connect, Wear OS, Samsung Galaxy Fit (Gear Fit), and Samsung Galaxy Watch (Gear S).

65. "Third-Party Smartwatch Maker" is any entity that has developed, produced, manufactured, or sold a Third-Party Smartwatch, including, but not limited to, Pebble, Garmin, Fitbit, Google, and Samsung.

66. "Third-Party Smartwatch Sister App" means any App that is not essential to Smartwatch pairing, but is designed to enhance the way a Smartwatch works with a Smartphone.

67. "This Case" means *In re Apple Inc. Smartphone Antitrust Litigation*, No. 24-md-03113-JXN-LDW (D.N.J.), and all cases centralized or consolidated therewith.

68. **"Threat Model"** means, with respect to the privacy and security of hardware, operating systems, software, data center, server, or service, any formal or informal assessments, analyses, reports, summaries, assumptions, studies, or other understandings about attacker characteristics, goals, capabilities, limitations, or assets. Threat Models also include Documents and information reflecting assumptions (including the bases for such assumptions) and understandings about the security posture of a system, hardware, or software, including possible threats, vulnerabilities, potential mitigations, and tradeoffs.

69. "WatchOS" means the operating system for the Apple Watch.

70. "You," "Yours," "Apple Inc.," "Apple," "Company," or "Defendant" means Apple Inc. and its predecessor and successor entities, officers, directors, parents, subsidiaries (whether direct or

9. Unless otherwise specified, Requests seeking Documents concerning markets, sales, or business operations should be construed as seeking Documents concerning U.S. marketing, sales, or business operations. Request seeking Documents concerning all other topics—including, but not limited to engineering and design changes—should be construed as seeking Documents from any location without geographic restriction.

10. All productions should be made in compliance with the terms of the Stipulation and Order Governing Electronically Stored Information and Hard Copy Documents and the Discovery Confidentiality Order entered in *In re Apple Inc. Smartphone Antitrust Litigation*, No. 24-md-3113 (D.N.J.).

## **REQUESTS FOR PRODUCTION**

**REQUEST NO. 1**

All Communications between Apple (including its outside counsel) and any third party (including the third party's counsel) related to the Government Action or the Investigation, including all Documents produced to Apple by persons other than the Government Plaintiffs in the Government Action.

**REQUEST NO. 1.1**

All Communications between Apple (including its outside counsel) and the Government Plaintiffs (including the Government Plaintiffs' counsel) related to the Action or the Investigation, including all Documents produced to Apple by the Government Plaintiffs and all Documents produced to the Government Plaintiffs by Apple in the Government Action.

**REQUEST NO. 1.2**

All Communications between Apple (including its outside counsel) and the Government Plaintiffs (including the Government Plaintiffs' counsel) related to any civil or criminal investigation regarding the iPhone, such as Civil Investigative Demands Nos. 30193, 30356, and 31300, including all Documents produced to the Government Plaintiffs by Apple in said investigation.

**REQUEST NO. 1.3**

All Communications between Apple and any government entity, official, employee, or executive branch representative (whether or not formally employed by the government) other than the Government Plaintiffs related to any actual or potential antitrust investigation regarding the iPhone, including all Communications between Apple and Brazil's Administrative Council for Economic Defense ("CADE") related to Apple's restrictions on NFC technology.

**REQUEST NO. 1.4**

All Communications between Apple (including its outside counsel) and any third party (including the third party's counsel) related to This Case, including all Documents produced to Apple by persons other than Plaintiffs in This Case.

**REQUEST NO. 1.5**

All Communications between Apple (including its outside counsel) and the Direct Apple iPhone Purchaser Plaintiffs (including the Direct Apple iPhone Purchaser Plaintiffs' counsel) or the Indirect iPhone Purchaser Plaintiffs (including the Indirect iPhone Purchaser Plaintiffs' counsel) related to This Case, including all Documents produced to Apple by those plaintiffs and all Documents produced to those plaintiffs by Apple.

**REQUEST NO. 2**

All Documents referenced in or relied upon in any pleading, discovery response, brief, or other filing by Apple in the Government Action, including all Documents identified in Apple's Federal Rule of Civil Procedure 26(a)(1) Initial Disclosures, and all Documents, data, or information that Apple or any Apple expert intends to offer as evidence at trial or otherwise in the Government Action, including any that Apple or its experts could use, will use, or has used to support any testimony or opinion.

**REQUEST NO. 8**

All Documents related to actual or potential differences in functionality or ease of use with the iPhone—including any differences in Developers' access to Entitlements, APIs, data, background processes, or differences due to App Review Guidelines—for:

a. Apple's Messaging Systems versus non-Apple Messaging Systems;
b. Apple Pay and Apple Wallet versus non-Apple Digital Wallets and Payment Apps;
c. Roblox or similar Apps versus any other potential or actual Platform Apps, Mini Programs, or Cloud Streamed Games;
d. Native iOS Apps that provide cloud-streamed services (such as Netflix) versus potential or actual Cloud Streamed Games;
e. Apple Watch versus non-Apple Smartwatches, including the connection to the Smartphone, access to LTE-phone number pairing, or access to APIs, such as those related to App notifications or the ability to perform other functionality available to the Apple Watch; and
f. Platform Apps available outside the U.S. and in the U.S., including the WeChat App available to iPhone users in the U.S. versus in China.

**REQUEST NO. 8.1**

All Documents relating to the interoperability of Third-Party Smartwatches with iOS or the iPhone, and to the operations and approval or disapproval of Third-Party Smartwatch Apps, including, but not limited to:

a. the Apple Notification Center Service;
b. Background Execution by Third-Party Smartwatches and Third-Party Smartwatch Apps;
c. Third-Party Smartwatches' and Third-Party Smartwatch Apps' access to and use of APIs relating to messaging, notifications, phone calls, and Digital Wallets;
d. Third-Party Smartwatches' use of Bluetooth and Bluetooth pairing;
e. the effect of low-power mode on Third-Party Smartwatches and Third-Party Smartwatch Apps; and
f. the effect of Phone Number Sharing Restrictions on Third-Party Smartwatches and Third-Party Smartwatch Apps.

**REQUEST NO. 8.2**

All Documents related to any decision on whether to limit the interoperability of Third-Party Smartwatches with the iPhone (or the Apple Watch with Third Party Smartphones); the reasons for any such decision; and the actual or potential impact of any such decision on iPhone sales, iPhone switching, or consumer perception or demand. This includes any decision on whether to:

a. Limit or reduce limits on the ability of Third-Party Smartwatches to respond to notifications;

b. Limit or reduce limits on the ability of Third-Party Smartwatches to maintain a consistent Bluetooth connection with the iPhone when Bluetooth is manually disabled on the iPhone;

c. Limit or reduce limits on the ability of Third-Party Smartwatches' access to and use of APIs relating to messaging, notifications, phone calls, and Digital Wallets;

d. Limit or reduce limits on the ability of Third-Party Smartwatches to maintain a consistent connection with, to continue to operate in the background of, or to continue to share data with the iPhone when the iPhone is in Low Power Mode; and

e. Limit or reduce limits on the ability of Third-Party Smartwatches to connect to a cellular network using a phone number associated with an iPhone.

**REQUEST NO. 8.3**

All Documents relating to Background Execution by Apple Watch, Apple Watch Apps, Third-Party Smartwatches, and Third-Party Smartwatch Apps, including, but not limited to: limits or the absence of limits on the time duration for Background Execution, limits or the absence of limits on the data that can be processed during Background Execution, the effect of closing an App or Third-Party Smartwatch App on Background Execution, and Background Execution performance by Third-Party Smartwatches and Apple Watches.

**REQUEST NO. 12.1**

All Documents after January 1, 2010 related to any person who previously provided or attempted to provide a Smartwatch, Smartwatch Operating System, or an Identified Product or Service but ceased doing so.

**REQUEST NO. 13**

All Documents related to single-homing, multi-homing, or usage of a "preferred" or "primary" product or service, by users, Developers, or any other group, related to Smartphones or any Identified Product or Service.

**REQUEST NO. 14**

All Documents related to Apple's plans, strategies, objectives, research, development, investments, roadmaps, marketing, and features for the iPhone, Apple's App Store, or any Identified Product or Service. For avoidance of doubt, this includes all Documents related to Apple's product development expenses, including expenses related to privacy and security, for the iPhone, Apple's App Store, and any Identified Products or Services.

**REQUEST NO. 15**

All Documents related to any efforts to increase, protect, or preserve Apple's market share, sales, or profitability for Smartphones or any Identified Product or Service, including possible or actual responses from other market participants.

**REQUEST NO. 16**

All Documents related to any actual or potential pricing power, market power, monopoly power, bargaining leverage, or negotiating leverage that Apple has or may have (including presently, in the past, or in the future) relating to Smartphones or any Identified Product or Service, including with respect to consumers, Enterprise customers, App Developers, wireless carriers, iPhone retailers, hardware or accessory manufacturers, financial institutions, and automotive manufacturers.

**REQUEST NO. 17**

All Documents related to how the features, functionality, availability, and interoperability of Smartphones or any Identified Product or Service may affect users' Smartphone purchasing decisions, including Documents related to user satisfaction, Smartphone switching, consumer perceptions and attitudes, preferences, usage, purchase intentions, and all other relevant metrics, key performance indicators, and measures.

**REQUEST NO. 17.1**

All Documents related to how the features, functionality, availability, and interoperability of Smartphones or any Identified Product or Service may affect users' Smartwatch purchasing decisions,

including Documents related to user satisfaction, Smartphone or Smartwatch switching, consumer perceptions and attitudes, preferences, usage, purchase intentions, and all other relevant metrics, key performance indicators, and measures.

**REQUEST NO. 18**

All Documents related to any factors affecting consumer demand for a Smartphone, such as the Smartphone's price, features, or quality (including quantity, price, and quality of available Apps, hardware accessories, or other complementary products and services); usage of any Identified Product or Service; and all Documents related to metrics, key performance indicators, and measures related to consumer demand for a Smartphone.

**REQUEST NO 18.1**

All Documents related to any factors affecting consumer demand for a Smartwatch, such as the Smartwatch's price, features, or quality (including quantity, price, and quality of available Apps, hardware accessories, or other complementary products and services); usage of any Smartphone or Identified Product or Service; and all Documents related to metrics, key performance indicators, and measures related to consumer demand for a Smartwatch.

**REQUEST NO. 18.2**

All Documents related to the cross-elasticity of demand for the Apple Watch, including any Documents concerning the responsiveness of demand to changes in price among the Apple Watch and all other Smartwatches.

**REQUEST NO. 19**

All Documents related to any factors affecting the ability or incentive for Developers or third parties to create Apps or accessories compatible with a particular Smartphone, such as the size and characteristics of the installed base of users of a particular Smartphone or type of Smartphone, the costs, fees, or commissions charged by the Smartphone provider, features offered by the Smartphone, technological restrictions imposed by the Smartphone provider or operating system, and any other terms of dealing.

**REQUEST NO. 19.1**

All Documents related to any factors affecting the ability or incentive for Developers or third parties to create Apps or accessories compatible with a particular Smartwatch, such as the size and

Apple Watch, including, but not limited to, Apple bands, charging devices, cases, stands, and Apple Fitness+ subscriptions, for use with the Apple Watch for each year throughout the Period.

**REQUEST NO. 26.2**

Documents sufficient to show actual and projected revenue, costs, expenses, gross profit net profit, unit volume, and price, by month and year, attributed to U.S. sales of AirPods and Beats headphone and earbud products for each year throughout the Period.

**REQUEST NO. 27**

All Documents and data related to any Smartphone's usable life, the length of time over which consumers use it, the number and type of consumers that use it, its quality and value at any point in time, and all related metrics or key performance indicators.

**REQUEST NO. 28**

All Documents related to the value of a user to Apple, including customer lifetime value, entry point analyses, revenue per user, subsequent hardware purchases, and any revenue or benefit that Apple has received or anticipates receiving from a customer or third party due to a customer's purchase or use of any Apple products, services, or subscriptions. For avoidance of doubt, this includes Documents related to Apple's assumptions or analyses about user behavior related to any such analysis, as well as all metrics, key performance indicators, and other measures related to any such analysis.

**REQUEST NO. 29**

From 2007 to the present, all contracts between Apple, U.S. wireless carriers, or any other retailers relating to the iPhone, and all Communications from 2015 onwards related to the negotiations of those contracts or to carrier or retailer sales or promotions.

**REQUEST NO. 29.1**

All contracts between Apple, U.S. wireless carriers, or any other retailers relating to the Apple Watch, and all Communications related to the negotiations of those contracts or to carrier or retailer sales or promotions.

**REQUEST NO. 30**

All reports or analyses related to Smartphones or any Identified Product or Service authored by third parties including IDC, Strategy Analytics, Counterpoint, Gartner, IHS Markit, Canalys, Kantar Group, Comlink (Opensignal), App Annie (data.ai), any U.S. wireless carrier, Meta, or Google.

other messages presented to users by a Smartphone's operating system or mobile applications;

b. the number of steps required, load times, or other frictions for users to set up, use, or purchase a Smartphone, mobile application, or Identified Product or Service;

c. performance standards to which Apple has held its own Apps, products, and services;

d. Apple's assessments of the user experience (e.g., usability, friction, latency, setup process, permission flows) for Apple and non-Apple Apps, products, or services on iPhones or non-Apple smartphones; and

e. anonymized data regarding the actual performance of any Smartphones or Identified Products and Services.

**REQUEST NO. 38**

All Documents related to consumer views about the privacy, security, user experience, or quality of Smartphones, including how consumers' views:

a. are affected by Smartphone manufacturers' product decisions and marketing strategies and campaigns;

b. are affected by the product decisions and marketing strategies and campaigns related to any Identified Product or Service;

c. compare to actual differences in Smartphone privacy, security, and quality; and

d. affect Smartphone demand, purchase intentions, switching, and consumer satisfaction.

**REQUEST NO. 39**

All Documents related to user switching between Smartphones or any models thereof (i.e., switching between an iPhone and a non-Apple Smartphone, switching from one iPhone to another iPhone, or switching from one non-Apple Smartphone to another non-Apple Smartphone), including:

a. the ease or difficulty of switching,

b. the costs of switching,

c. the relationship between the cost or difficulty and likelihood of switching,

d. stickiness,

e. customer loyalty or churn,

f. tools and support services available for switching,

g. the duration of time between switching (e.g., how long a user has used an iPhone before switching to a non-Apple Smartphone),

h. consumer views about switching,

i. the availability and performance of complementary products and services, including any changes thereto, and

j. Documents related to the Data Transfer Project or other products, services, initiatives, or partnerships that facilitate switching from iPhones to non-Apple Smartphones.

ability, consideration of whether to provide this ability to third-party Messaging Systems, and any potential effects of doing so.

**REQUEST NO. 42**

All Documents after January 1, 2010 related to aspects of Apple Messages that differentiate, or plans for aspects of Apple Messages that could differentiate, messaging among iPhone users from messaging with non-iPhone users, including green and blue chat bubbles.

**REQUEST NO. 43**

All Documents after January 1, 2012 related to the consideration, adoption, or development of cross-platform standards relating to an Identified Product or Service. This includes all Documents relating to the consideration, adoption, or development of SMS, MMS, RCS, or messaging alternatives, including Documents related to whether or how to adopt RCS on the iPhone, whether or how third parties adopt RCS, and the use or potential use of SMS, MMS, or RCS by non-Apple Messaging Systems on the iPhone or non-Apple Smartphones. This also includes all Documents related to the development or potential development of cross-platform standards, protocols, or capabilities relating to video calls.

**REQUEST NO. 44**

All Documents related to Apple's Actionable Notifications API, the Apple Notification Center Service (ANCS) API, or any software that enables a Smartwatch to access Smartphone notifications or functionality, including:

a. potential and actual development costs and challenges (past, current, or future);
b. requirements, design, or features, including roadmaps;
c. the availability of similar capabilities on Android or other Smartphone operating systems;
d. potential design for non-Apple Smartwatches or barriers thereto; and
e. potential or actual features available to non-Apple Smartwatches.

**REQUEST NO. 45**

All Documents related to the development and Implementation of new features for the Actionable Notifications API, the ANCS API, or any software that enables a Smartwatch to access Smartphone notifications or functionality, including:

a. the Company's assessment of whether to implement any new features;
b. Communications between the Company and any third parties concerning or requesting the Implementation of new features;
c. the date that development of any feature began, and the date that the feature was first implemented or provided; and
d. total development costs incurred by the Company to date, and the total costs projected for any continuing development of the new feature.

**REQUEST NO. 46**

All Documents related to the Company's assessment of whether to expand the functionality of or access to the Actionable Notifications API, ANCS API, or any software that enables a Smartwatch to access Smartphone notifications or functionality, so that non-Apple Smartwatches can respond to messages, App notifications, or utilize other APIs or functionalities available to the Apple Watch.

**REQUEST NO. 47**

All Documents related to the ability of non-Apple devices to connect or interact with the iPhone, including, but not limited to their ability to receive incoming message notifications, reply to incoming messages, compose new messages, access messages, and mark messages as read.

**REQUEST NO. 48**

All Documents after January 1, 2017 related to the decision whether to offer or allow cloud-streamed applications on the iPhone (including both Cloud Streamed Games and other cloud-based services), including the reasons for any such decision.

**REQUEST NO. 49**

All Documents related to Apple's plans for the Games App announced at WWDC 2025, including Apple's strategic objectives, assessments of other gaming Apps or services, integration with other Apple Apps such as Apple's App Store, Apple Arcade, or Game Center, actual or potential effects on Developers or consumers related to game discovery, distribution, usage, or monetization, and analyses related to alternative methods of distributing games, including Cloud Streamed Games.

**REQUEST NO. 50**

All Documents related to Apple's App Store Review Guidelines affecting any Identified Product or Service, including:

a. Drafting, adoption, application, interpretation, or enforcement of Apple's App Store Review Guidelines;
b. Agreements between Apple and any Developer related to changes or exceptions to the Apple App Store Review Guidelines, including any Agreements that were later formalized into an App Store Review Guideline or exception thereto, including Apple's 2011 Agreement with Meta related to the Facebook App;
c. Changes, considered changes, or reinterpretations of any Apple App Store Review Guideline; and
d. The actual or potential effect of any changes, considered changes, or reinterpretations of any Apple App Store Review Guideline on the iPhone or any Identified Product or Service.

**REQUEST NO. 50.1**

All Documents relating to decisions not to approve for listing on the App Store, delay approval for listing on the App Store, or place restrictions on the approval for listing on the App Store, Third-

Party Smartwatch Companion Apps and Third-Party Smartwatch Sister Apps designed to be used with Third-Party Smartwatches, including, but not limited to Fitbit, Samsung, Google, Garmin, Motorola, and Pebble Smartwatches.

**REQUEST NO. 51**

All Documents after January 1, 2010 related to changes or considered changes to the Apple Developer Program License Agreement relating to iOS or WatchOS in the United States.

**REQUEST NO. 51.1**

All Agreements, policies, and guidelines, in effect during the Period, relating to Third-Party Smartwatch Apps, including, but not limited to, the DPLA, the App Review Guidelines, the iOS and iPadOS Software License Agreement, Apple Inc. Certification Authority Certificate Policy, Apple Inc. Certification Authority Certification Practice Statement Apple Application Integration, Apple Inc. Certification Practice Statement Worldwide Developer Relations, Apple Inc. Certification Practice Statement Developer ID, Apple Inc. Certification Practice State Software Update, Apple Inc. Certification Authority Certification Practice Statement Apple Timestamp, and all predecessors and successors to the DPLA, the App Review Guidelines, the iOS and iPadOS Software License Agreement, Apple Inc. Certification Authority Certificate Policy, Apple Inc. Certification Authority Certification Practice Statement Apple Application Integration, Apple Inc. Certification Practice Statement Worldwide Developer Relations, Apple Inc. Certification Practice Statement Developer ID, Apple Inc. Certification Practice State Software Update, Apple Inc. Certification Authority Certification Practice Statement Apple Timestamp, and other such Agreements, policies, and guidelines.

**REQUEST NO. 51.2**

All Agreements, policies, and guidelines relating to iOS updates and WatchOS updates that concern the functionality of the Apple Watch, Third-Party Smartwatch Apps, or Third-Party Smartwatches, including, but not limited to, all predecessor and successor policies and guidelines.

**REQUEST NO. 51.3**

All Documents relating to the application of the Agreements, policies, and guidelines referenced in Request Nos. 51.1 and 51.2 (including, but not limited to, the DPLA and App Review Guidelines) to Third-Party Smartwatches or Third-Party Smartwatch Apps, and to Apple Watches and Apple Watch Apps, including, but not limited to, all:

a. modifications or exceptions to said Agreements, policies, and guidelines;

b. internal Communications; and

c. Communications with Third-Party Smartwatch Makers and Developers of Third-Party Smartwatch Apps.

**REQUEST NO. 51.4**

All Documents relating to iOS updates that affect the functioning or interoperability of Third-Party Smartwatches or Third-Party Smartwatch Apps with the iPhone, including, but not limited to:

a. Documents relating to Apple's knowledge that such software updates might, would, or did affect the functioning or interoperability of Third-Party Smartwatches or Third-Party Smartwatch Apps;

b. Documents relating to Apple's decisions to release or not release software updates that might, would, or did affect the functioning or interoperability of Third-Party Smartwatches or Third-Party Smartwatch Apps, and its decisions regarding the timing or such releases of software updates; and

c. internal and external Communications (including with Third-Party Smartwatch Makers and Developers of Third-Party Smartwatch Apps) regarding software updates' potential, expected, or actual effects on the functioning or interoperability of Third-Party Smartwatches or Third-Party Smartwatch Apps, including, but not limited to, email, tickets

submitted by Third-Party Smartwatch Makers and Developers of Third-Party Smartwatch Apps, and all other Communications.

**REQUEST NO. 52**

All Documents, analyses, or data after January 1, 2017 relating to TestFlight Beta tests for Cloud Streamed Games, including all data related to testers, installs, sessions, crash logs, crash reports, feedback, bugs, and battery and hardware performance differences.

**REQUEST NO. 53**

All Documents after January 1, 2011 related to Platform Apps' or Mini Programs' potential or actual use; benefits, risks, revenue potential, and differences relative to native Apps; and Apple's potential or actual treatment of Platform Apps or Mini Programs.

**REQUEST NO. 54**

All Documents related to any mobile app's access to or use of (or inability to access or use) any iPhone features or capabilities related to connections to other devices or servers, including near-field Communication ("NFC"), host card emulation ("HCE"), ultra-wide band ("UWB") technology, or any related APIs, for any purpose, including Documents related to the number, nature, popularity, and usage of mobile Apps that access or use NFC, HCE, or UWB.

**REQUEST NO. 55**

For each Identified Product or Service, all Documents related to any potential or actual limitation or prohibition on the availability or functionality of any non-Apple product, feature, or service, including:

a. Documents related to any authorizations, allowances, denials, or limitations on access to APIs, Entitlements, functionalities, features, and data sets related to any Identified Product or Service;
b. Documents related to any authorizations, allowances, denials, or limitations on access to APIs, SDKs, Frameworks, Libraries, any other software artifacts related to any Identified Product or Service; and
c. Documents related to mechanisms, technical or otherwise, to implement or enforce limitations or prohibitions on the availability or functionality of any product, feature, or service, including references to the Source Code that implements each such means or mechanism.

alternative means of achieving any purported innovation or benefit other than the Alleged Conduct; and (d) any potential or actual business or technical reason for the Alleged Conduct

**REQUEST NO. 57.2**

All Documents related to (a) any purported procompetitive justification for the Alleged Conduct; (b) any purported innovation or benefit to Apple Watch users, Third-Party Smartwatch users, Third-Party Smartwatch Makers, Third-Party Smartwatch App Developers, or iPhone users, including, but not limited to any purported innovation or benefit related to privacy, security, fraudulent or deceptive activities, or user experience or human-computer interaction; (c) any alternative means of achieving any purported innovation or benefit other than the Alleged Conduct; and (d) any potential or actual business or technical reason for the Alleged Conduct.

**REQUEST NO. 58**

For the iPhone and each Apple or non-Apple Identified Product and Service, all Documents related to Apple's adoption or Implementation of privacy or security policies or practices for information stored, transmitted, or received by iOS, the iPhone, Apple, or third parties, including nutrition labels and privacy manifest files.

**REQUEST NO. 59**

All studies, analyses, investigations, and reports related to fraudulent, malicious, misleading, or deceptive activity, code, content, information, or patterns within or related to the iPhone, iOS, or any Identified Product or Service, including any threat assessment or Threat Model, in whatever form it may exist.

**REQUEST NO. 60**

All Documents related to Apple's ability to access or use data or metadata from the iPhone or from any Identified Product or Service that is not as available or accessible to third-party Developers, including the reasons for any such differences and any benefits to Apple therefrom.

**REQUEST NO. 61**

Each database or data set, as well as any associated Data Dictionaries and documentation, relating to Apple Smartphones or any Identified Product or Service after January 1, 2009, containing information derived from users in the United States, Australia, Canada, China, France, Germany, India, Japan, Mexico, Brazil, Russia, South Korea, and United Kingdom, excluding enterprise users, that contains information relating to user:

Service, the DPLA, the App Review Guidelines, approval of Apps in the App Store, WatchOS updates, or iOS updates.

**REQUEST NO. 67**

All Documents relating to Apple's internal policies, practices, and guidelines relating to U.S. antitrust laws.

**REQUEST NO. 68**

All consumers comments regarding the Apple Watch, whether stored as Documents or structured data.

**REQUEST NO. 69**

All Communications from iPhone customers to Apple relating to Third-Party Smartwatches, and all Documents and Communications relating to those Communications, including, but not limited to customer complaints, compliments, questions, comments, or suggestions.

**REQUEST NO. 70**

All Documents relating to criticisms or complaints from consumers, Third-Party Smartwatch Makers, Developers of Third-Party Smartwatch Apps, reporters, or media outlets relating to the interoperability of the Apple Watch with the iPhone and the interoperability of Third-Party Smartwatches with the iPhone.

**REQUEST NO. 71**

All Communications or Agreements with third parties relating to Smartwatches, including, but not limited to Communications or Agreements with representatives or employees of Amazfit, AT&T, Citizen, Core Devices LLC, Fitbit, Fossil, Garmin, Google, HMD America, HMD Global, Meta, MijoConnected, Motorola, Pebble, Samsung, T-Mobile, TracFone, Verizon, and Withings and all Documents and Communications relating to those Communications or Agreements.

**REQUEST NO. 72**

All Documents related to the App review of any Identified Product or Service, including, but not limited to, any App, Companion App, or Sister App for any Smartwatch.

**REQUEST NO. 73**

All Documents relating to incentive programs for Developers of Third-Party Smartwatch Apps, including any eligibility restrictions prohibiting Developers of Third-Party Smartwatch Apps from directing consumers to make out-of-app transactions, and any restrictions prohibiting App Developers from directing consumers to Third-Party Smartwatch Apps.

**REQUEST NO. 74**

All Documents related to any threat to user security or privacy due to the inability to send encrypted messages between iPhones and Third-Party Smartphones or Third-Party Smartwatches.

**REQUEST NO. 75**

All Documents related to any effort or decision by Apple to prevent or limit any third-party Developer's ability or permission to provide or enable end-to-end encryption for messages sent from Third-Party Smartwatches.

**REQUEST NO. 76**

All Documents related to any threat to user security or privacy due to the inability to send encrypted messages from Third-Party Smartwatches.

**REQUEST NO. 77**

All Documents related to coding bugs affecting Apps and iOS updates related to Third-Party Smartwatches, including, but not limited to, bug reports and bug tickets.

Dated: October 15, 2025

Respectfully submitted,

/s/ *David C. Frederick*

David C. Frederick
Aaron M. Panner
Alex A. Parkinson
Scott K. Attaway
Ariela Migdal
Katherine V. Tondrowski
KELLOGG, HANSEN, TODD
FIGEL & FREDERICK, P.L.L.C.
1615 M Street NW, Suite 400
Washington, DC 20036
Tel.: (202) 326-7900
dfrederick@kellogghansen.com
apanner@kellogghansen.com
aparkinson@kellogghansen.com
sattaway@kellogghansen.com
amigdal@kellogghansen.com
ktondrowski@kellogghansen.com

George A. Zelcs
Daniel A. Epstein
Marc A. Wallenstein
David Walchak
KOREIN TILLERY LLC
205 N. Michigan Avenue, Suite 1950
Chicago, IL 60601
Tel.: (312) 641-9750
gzelcs@koreintillery.com
mwallenstein@koreintillery.com
dwalchak@koreintillery.com

Carol O'Keefe
Andrew Ellis
KOREIN TILLERY LLC
505 N. 7th Street, Suite 3600
St. Louis, MO 63101
Tel.: (314) 241-4844
cokeefe@koreintillery.com
aellis@koreintillery.com

Thomas R. Curtin
Kathleen N. Fennelly
MCELROY, DEUTSCH,
MULVANEY & CARPENTER, LLP
1300 Mount Kemble Avenue
Morristown, NJ 07962
Tel: (973) 993-8100
tcurtin@mdmc-law.com
kfennelly@mdmc-law.com

Steven F. Molo
Jonathan E. Barbee
MOLOLAMKEN LLP
430 Park Avenue
New York, NY 10022
Tel.: (212) 607-8160
smolo@mololamken.com
jbarbee@mololamken.com

Lauren F. Dayton
Eric A. Posner
MOLOLAMKEN LLP
300 N. LaSalle Street
Chicago, IL 60601
Tel.: (312) 450-6700
ldayton@mololamken.com
eposner@mololamken.com

Jennifer Fischell
Kayvon Ghayoumi
MOLOLAMKEN LLP
600 New Hampshire Avenue, N.W.
Washington, DC 20037
Tel.: (202) 556-2000
jfischell@mololamken.com
kghayoumi@mololamken.com

*Attorneys for Plaintiff Joseph Giamanco and the Proposed Direct Apple Watch Purchaser Class*

# Exhibit C

## CONFIDENTIAL - FILED UNDER SEAL

GIBSON DUNN

Katherine Warren Martin
Associate Attorney
T: +1 415.393.8270
M: +1 415.705.9213
kwarren@gibsondunn.com

January 20, 2026

VIA EMAIL

Frazar Thomas
Seeger Weiss LLP
FThomas@SeegerWeiss.com

Re: *In re Apple Inc. Smartphone Antitrust Litigation*, No. 2:24-md-03113

Dear Counsel:

We are in receipt of your January 9, 2026 letter addressing the parties' meet-and-confer call on January 7, 2026. We have responded to the various issues your letter addresses below.

**DOJ Negotiations**

In advance of the call, Apple shared with Plaintiffs a document summarizing the negotiated position on RFPs 19-40 in the DOJ Matter. On January 13 Apple shared similar materials summarizing the negotiated position on the remaining RFPs.

**Ongoing CID Productions**

Plaintiff Letter Statement

*At the beginning of our conversation, Apple informed us that, while it is maintaining its objections to producing TikTok and Beats-related documents from the CID, it has now agreed to re-produce the entire CID production to Private Plaintiffs. You also highlighted that these would include relevance redactions for unannounced Apple products, with the understanding that whether these relevance redactions are proper remains a live issue. We asked Apple to confirm how it is tracking those redactions (whether in a log or otherwise) and you agreed to get back to us.*

Apple Response

As indicated in Apple's January 8, 2026 letter to Plaintiffs regarding the parties' December 23 meet-and-confer, in the interests of cooperation and to avoid unnecessary disagreements, Apple will produce to MDL Plaintiffs all the documents Apple previously produced to the Government during the Government's pre-suit investigation, although Apple maintains its position that certain of those documents are not relevant to any of MDL Plaintiffs' claims or allegations and MDL Plaintiffs were not entitled to receive those documents in discovery. As indicated on the parties' January 7 meet-and-confer call, in re-reproducing the documents Apple previously produced to

the Government during the Government's pre-suit investigation, Apple will apply redactions for unannounced Apple products. These redactions will be apparent on the face of the document with a "Redacted" redaction mark, which will indicate redactions for unreleased products.

**<u>"Collaborative Work Environment" Definition</u>**

<u>Plaintiff Letter Statement</u>

*Apple limited this term to mean* [redacted]*. Plaintiffs asked Apple to identify the digital environments in which Apple employees work collaboratively, so that Plaintiffs can properly evaluate the scope of the environments from which documents will be produced. Apple responded that it did not have a full understanding of the many work environments in which its employees collaborate, and so the onus was on Plaintiffs to make more targeted requests. Plaintiffs proposed that if Apple provides a list of the environments in which its employees work collaboratively, we would be able to narrow our requests from there. Apple agreed to consider this.*

*With respect to the ticketing application Plaintiffs mentioned, Apple agreed to consider searching that environment in response to specific RFPs on a case-by-case basis. Plaintiffs are considering this position.*

<u>Apple Response</u>

As Apple noted on the call, it would be overly burdensome to generate a list of all potential collaborative workspaces used by all Apple employees in the sense that Plaintiffs are apparently using that term. Apple did not say that there are "many work environments in which its employees collaborate." As Apple previously indicated, the key collaborative tools that Apple does use on a consistent basis are [redacted]. Instead, the issue is that Plaintiffs' definition attempts to encompass almost any tool accessible by multiple users, even when those tools might be used for bug tracking and other functions that are not actually collaborative in nature. Apple has over 160,000 employees working across a range of teams with different functions and focuses including engineering, design, and marketing, for Apple's various products and services. It would be a significant burden to confirm all potential tools and platforms these teams may use. However, as the parties proceed through meeting and conferring on Plaintiffs' RFPs and discuss document collections, Apple will address targeted questions regarding the location of potentially relevant documents.

**<u>"Identified Products and Services" Definition</u>**

<u>Plaintiff Letter Statement</u>

*Apple stated that it believed its position was that the term "Identified Products and Services" includes "smartwatches and smartwatch apps," and that it would get back to us to confirm. We interpret "smartwatch apps" to include smartwatch companion apps and smartwatch sister apps. Please let us know if you agree that "Identified Products and Services" includes smartwatches, smartwatch companion apps, and smartwatch sister apps.*

Apple Response

Apple confirms its understanding that the term "Identified Products and Services" includes smartwatches. Apple understands "smartwatches" to include third-party smartwatches. Regarding whether the term "Identified Products and Services" includes "smartwatch apps," Watch Plaintiffs failed to define the terms "smartwatch app," "smartwatch companion app," and "smartwatch sister app" in their First Set of RFPs to Apple. Accordingly, please define those terms, and Apple will consider the issue in that context.

**Apple's Agreements with Government Plaintiffs**

Plaintiff Letter Statement

*Apple's summary of its compromise position with the government plaintiffs shows that, in many instances, Apple agreed to search for and produce responsive, nonprivileged documents in response to RFPs. We explained on the call that we understood this to mean that Apple has agreed to produce all responsive documents it finds during its custodial searches, without narrowing the requests. Apple believed that this was the case, but said it would get back to us to confirm. Contingent on this understanding, we said that we accepted Apple's agreement with the Government Plaintiffs with regard to those RFPs. We also clarified that this did not mean we accepted the proposed search terms and custodians regarding these RFPs (and, where applicable, the sources for targeted collections), which we would separately negotiate. Apple said that it understood, and agreed that we would likely need to separately negotiate these.*

*While we did not discuss this during the meet and confer, we recognize that on December 23, 2025, Apple provided us with a summary of the state of custodial negotiations with the Government Plaintiffs. Please confirm for us that this list is current.*

Apple Response

Apple confirms that, where Apple has agreed in its compromise position with the Government Plaintiffs to produce responsive, nonprivileged documents, subject to a reasonable search – and where Apple does not identify any other specific limitation to its response – it is not otherwise narrowing those requests. As Apple explained in its January 8 letter, Apple will make clear in its summary of its agreements with the Government Plaintiffs whether its agreement to produce responsive documents was based on an agreed upon clarification or narrowing of the RFP.

On January 12, 2026, Apple agreed to designate three additional individuals – Matt Fischer, John Geleynse, and Ron Okamoto – as document custodians in the Government Action, per Luke McGuire's (Apple counsel) email of 9:32 am PT. MDL Plaintiffs were copied on this communication. On January 12, 2016, Apple also provided employment information to MDL Plaintiffs for two additional Apple employees: (1) Adrian Perica, who is a proposed custodian in the Government Action and (2) Aroon Pahwa, who is an agreed-to custodian in the Government Action.

**Child RFPs**

Plaintiff Letter Statement

*You stated that several "child" RFPs were subsumed within the scope of "parent" RFPs that Apple had already agreed to produce to the Government Plaintiffs, and thus Apple would search for and produce documents responsive to those child RFPs.*

*Based on our discussions, we understand that to be the case for RFPs 7(A), 9(A), 15(A)-(C), 16(A), and 18(A) (of the Child RFPs we have already discussed). Please confirm.*

Apple Response

Apple addresses its position as to the "child" RFPs discussed on the parties' meet-and-confer call below. With respect to iPhone RFPs 7(A), 9(A), 15(A)-(C), 16(A), and 18(A), and based on Plaintiffs' explanations of what the "child" RFPs were intended to capture, Apple confirms its view that those RFPs are subsumed within the scope of their parent RFPs.

**Apple's Letters About Meet and Confer Sessions**

Plaintiff Letter Statement

*We asked you to confirm that firms that are not yet compliant with the DCO, and which have, with your consent, been participating in these meet and confer sessions, may view the letters that you send regarding these sessions, so long as they agree to comply with the confidentiality protocol that MDL Plaintiffs proposed to the court until those firms become compliant with the DCO. We noted that it is burdensome to resolve these issues piecemeal, and that it would be helpful for that to be the default approach for documents related to MDL Plaintiffs meet-and-confer sessions with Apple on MDL Plaintiffs' RFPs (like with the materials for the Government Action meet-and-confer sessions, as to which Apple has already agreed). We understand from a subsequent call regarding a joint letter to the Court that Apple consents as to the letters that Apple sends regarding these meet and confer sessions, but please confirm that in writing and also confirm your position regarding Apple's consent as the default for materials related to meet-and-confer sessions on MDL Plaintiffs' RFPs to Apple.*

Apple Response

As Apple confirmed by email on January 13 2026, Apple agrees to allow all Plaintiffs' firms to review Apple's meet & confer summary letters, subject to Plaintiffs' agreement to adopt the data security provision of MDL Plaintiffs' proposed DCO to protect the security of those materials and only for the interval while MDL Plaintiffs work to comply with the data security provision of the DCO entered in the MDL (Dkt. 124); once MDL Plaintiffs are in compliance with the data security provision of the DCO and thereafter, MDL Plaintiffs will maintain the security of those materials subject to the data security provisions of the DCO.

**Watch RFP 1.4**

Plaintiff Letter Statement

*We asked Apple what "sufficient to show" means in your RFP response in light of your comment in your December 23, 2025 letter stating that you would "meet and confer with MDL Plaintiffs regarding the meaning of 'sufficient to show' as used in Apple's R&Os to nonoverlapping RFPs." Specifically, we asked whether Apple would produce communications with any third party about the MDL that are not regarding third-party subpoenas. You said that you would get back to us.*

Apple Response

Regarding Apple's use of the phrase "sufficient to show," Apple addressed that issue in its letter to Plaintiffs dated December 23, 2025. Regarding Watch RFP 1.4, Apple will agree to continue sharing, as it already has, substantive correspondence with third parties concerning the MDL.

**RFP 5**

Plaintiff Letter Statement

*We asked if Apple was refusing to produce board materials if they were otherwise responsive and found using search terms. Apple said that, generally, it did not understand that to be the case, and that it intends to produce materials presented to the board. We also asked if there were any materials responsive to RFP 5 that were not covered by the categories of documents that Apple had explicitly agreed to or declined to produce in response to RFP 5. You said that you believed Apple's response was intended to cover everything conceivably relevant, but that you would get back to us.*

Apple Response

Apple's agreement with the Government Plaintiffs regarding RFP 5 in the Government Action accurately captures the full scope of Apple's agreed production. Apple is not intending to exclude any board-related documents other than those explicitly identified in the summary of Apple's agreement with the Government Plaintiffs regarding RFP 5 in the Government Action.

**Watch RFP 5.1**

Plaintiff Letter Statement

*We asked you to confirm whether "competitor Third-Party Smartwatch Makers" are encompassed by "Identified Product or Service" in RFP 5. We confirmed that, to the extent a company is a competitor Third-Party Smartwatch Maker, but also offers other products or services, documents discussing that competitor in some capacity other than as a Third-Party Smartwatch Maker (e.g., Samsung refrigerators), would not be responsive to RFP 5.1. You said that you believed, with that clarification, Apple would agree, but that you would get back to us.*

Apple Response

To the extent RFP 5.1 seeks documents regarding Third-Party Smartwatch Makers in their capacity as Smartwatch Makers, such documents would already be responsive to RFP 5 because they would concern Smartwatches. Based on MDL Plaintiffs' above clarification, Apple understands that the parties agree that RFP 5.1 does not call for, and Apple will not produce, documents discussing a Third-Party Smartwatch Maker in some context other than that related to a Smartwatch – such as Samsung acting in its capacity as a maker of refrigerators. With this clarification, Apple believes that what Watch Plaintiff seeks via RFP 5.1 is already subsumed within RFP 5.

**RFP 6 and 25**

Plaintiff Letter Statement

*We asked about Apple's agreement with the Government Plaintiffs to produce documents in response to RFP 25 in return for dropping RFP 6's separate request for documents relating to EC investigations. We asked to confirm that Apple understood RFP 6, which includes specific requests for plans Apple has "considered making" or "analyzed," to be wholly subsumed into RFP 25, which requests documents "related to the actual or potential effects of ending or altering any aspect of the Alleged Conduct." Apple explained that it believed any document discussing or analyzing a potential change would necessarily involve some discussion of the potential effects of that change, and so those documents would be responsive to RFP 25. However, you agreed to come back with a more definitive answer.*

Apple Response

Apple's position is that "plans or changes" Apple has "considered" or "analyzed" with respect to the Alleged Conduct would necessarily involve a discussion of the "actual or potential effects of ending or altering" any aspect of the Alleged Conduct. As such, any responsive, non-privileged documents responsive to RFP 6's request for plans Apple has "considered making" or "analyzed" will already be produced in response to RFP 25. Regarding Apple's general position with respect to RFPs 6 and 25, Apple articulated its position in its January 8 letter to Plaintiffs. If MDL Plaintiffs have further questions, please let us know.

**Watch RFP 7.1**

Plaintiff Letter Statement

*We stated that the delta between RFP 7 and 7.1 was material related to Apple's efforts around iMessage interoperability with Third-Party Smartwatches and Third-Party Smartwatch Apps, and asked whether you agree that that material is either subsumed within RFP 7 or that you will conduct a reasonable search for it. You said that you would get back to us with a definitive answer.*

GIBSON DUNN



Apple Response

Apple confirms its understanding that the definition of "Identified Product or Service" encompasses smartwatches, including Third-Party Smartwatches. As such, RFP 7 would encompass documents relevant to "efforts or requests by third parties to access, send, or receive iMessages on Third-Party Smartwatches" and "any changes [Apple] made to iMessage in response to those efforts or requests." To the extent Plaintiffs believe that this does not cover all documents sought by RFP 7.1, please clarify what additional materials Plaintiffs are seeking.

**Watch RFPs 8.1-8.4**

Plaintiff Letter Statement

*We discussed whether these child RFPs are subsumed in RFP 8. You stated that you understand them to be subsumed to the extent they are asking for categories of documents relating to interoperability differences between an Apple product and non-Apple product, but that you would get back to us with a clearer position as to each. You confirmed that Apple understands the list of examples in RFP 8(e) to be illustrative, not exhaustive.*

*You clarified that Apple does not intend to produce documents where there is no interoperability difference (i.e., Apple does not permit either its own products or other products to interoperate as to some function). We expressed concern that excluding those documents would omit documents where Apple employees were discussing, for example, Apple declining to offer a feature on Apple products because a regulator would require Apple to make the same function available on non-Apple products. You stated those cases would be covered by other RFPs. We said we would get back to you with Watch Plaintiffs' position in light of your explanation. Watch Plaintiffs' position is that all documents related to the interoperability of Third-Party Smartwatches or related decision-making must be produced, including when there is no interoperability difference between the pertinent Apple and non-Apple products.*

Apple Response

As Apple reiterated in its January 8 letter to Plaintiffs, Apple views Watch RFPs 8.1–8.4 as increasingly special cases of documents already encompassed by RFP 8.

Plaintiffs' position that Apple should produce "all documents related to the interoperability of Third-Party Smartwatches or related decision-making" is overbroad to the extent Plaintiffs are using "interoperability" to generically mean "function," even where there is no difference in the functions available (or unavailable) to Apple devices versus third party devices. This would encompass a significant amount of irrelevant documents, and would place a substantial burden on Apple. What Plaintiffs are asking for would include any document or communication related to any APIs, software, or hardware involved in allowing iPhone to connect and function with Third-Party Smartwatches. That is overbroad and reaches far beyond what is necessary or relevant to Plaintiffs' claims. Apple has already agreed to produce documents related to "actual or potential differences in functionality or ease of use with the iPhone" in response to RFP 8. Plaintiffs' example of "Apple declining to offer a feature on Apple products because a regulator would

require Apple to make the same function available on non-Apple products" is already encompassed under what Apple has agreed to produce in response to RFP 8 as it would relate to "potential differences in functionality." Similarly, such a document would fall under the scope of what Apple has agreed to produce in response to RFP 25. If there are additional relevant documents called for by RFP 8 and 8.1-8.4, which Plaintiffs believe fall outside what Apple has agreed to produce please clarify what additional relevant materials Plaintiffs are seeking.

**Watch RFP 10.1–10.5**

Plaintiff Letter Statement

*You were not prepared to discuss these RFPs during our January 7 meet-and-confer, and asked to defer these to our next session.*

Apple Response

Apple's position is that Watch RFPs 10.1–10.5 are encompassed within RFP 10.

**iPhone RFPs 15(A)-(C)**

iPhone Plaintiffs asked Apple to confirm that, to the extent there are unexecuted plans or unexecuted discussions responsive to iPhone RFPs 15(A)–(C), that those documents would be produced in response to RFP 15. Apple confirms its position that RFPs 15(A)–(C) are encompassed within RFP 15 and that documents responsive to RFP 15 would include unexecuted plans or unexecuted discussions. Additionally, Apple confirms that the "market entry" portion of the iPhone Request 15(A) would be encompassed by RFP 15.

**iPhone RFP 16(A)**

iPhone Plaintiffs asked Apple to confirm that the communications exchanged with any of the parties enumerated in iPhone RFP 16(A) would be subsumed within a collection of documents responsive to RFP 16. As Apple explained on the call, Apple has not added a counterparty restriction to its response to RFP 16 so documents responsive to iPhone RFP 16(A) would be encompassed by RFP 16.

**Watch RFP 17.1**

Plaintiff Letter Statement

*We stated that the delta between RFPs 17 and 17.1 was that the former related to "Smartphone purchasing decisions" and the latter related to "Smartwatch purchasing decisions," and asked you to confirm that you will conduct a reasonable search for the latter. You said that you would get back to us.*

Apple Response

Apple will treat Watch RFP 17.1 separately from RFP 17 and, in response to Watch RFP 17.1, will search for and produce all documents that are identified by a reasonable search and deemed responsive and not privileged.

**RFP 18**

iPhone Plaintiffs asked Apple to confirm that the "factors affecting consumer demand" would include documents discussing the price of the iPhone relative to other smartphones, as opposed to just documents discussing the absolute price of the iPhone. In its agreement with the Government Plaintiffs, Apple agreed to produce all responsive, non-privileged documents subject to a reasonable search; Apple confirms that it will not otherwise withhold responsive documents discussing the price of the iPhone relative to other smartphones.

**Watch RFPs 18.1, 18.2, 17.1**

Plaintiff Letter Statement

*You stated that you understood that Apple's current position as negotiated with the Government as to RFP 18 would subsume Watch Plaintiffs' 18.1 and 18.2, but agreed to confirm this definitively. We noted that Apple's written responses to Watch Plaintiffs' RFPs 18, 18.1, and 18.2 stated that Apple would produce "Documents sufficient to show studies, analyses, or reports," but did not mention employee communications, communications with third parties, meeting minutes, etc. We asked that, if Apple agrees that 18.1 and 18.2 are subsumed by RFP 18, that Apple state in writing that it will search for all responsive documents, rather than just "Documents sufficient to show studies, analyses, or reports."*

*We have the same question as to RFP 17.1 (to the extent that, during the meet and confer, we referred to RFP 19.1 rather than RFP 17.1, we clarify that this question about whether Apple will search for, for example, employee communications, is as to RFP 17.1 and RFP 18.1).*

Apple Response

Apple confirms that the agreement reached with the Government with respect to RFP 18 will apply to, and subsume, Watch RFPs 18.1 and 18.2. As with RFP 18, Apple agrees to produce, in response to Watch RFPs 18.1 and 18.2, all non-privileged, responsive documents subject to a reasonable search.

Apple has addressed Plaintiffs' question as to RFP 17.1 above.

**RFP 19**

iPhone Plaintiffs asked Apple to confirm that it is no longer limiting its production to documents about native apps. As reflected in Apple's agreement with the Government Plaintiffs, Apple will produce all non-privileged, responsive documents subject to a reasonable search and is not limiting this request to "apps compatible with iPhone."

**iPhone RFP 19.1**

Plaintiff Letter Statement

*We asked whether, in light of Apple's position that it would search for documents responsive to RFP 19, it would search for the same "accessories and watches for the Smartwatches" where Apple has agreed to search for "accessories and watches for the Smartphones" in the Government Action. You agreed to get back to us with your position.*

Apple Response

Apple confirms that the agreement reached with the Government with respect to RFP 19 will apply to, and subsume, Watch RFP 19.1. As with RFP 19, Apple agrees to produce, in response Watch RFP 19.1, all non-privileged, responsive documents subject to a reasonable search.

**RFP 20**

iPhone Plaintiffs asked Apple to confirm that, even if the parties have agreed that certain RFPs would be subject to a targeted collection, if Apple comes across documents responsive to those RFPs in its review of documents that result from search terms, Apple would still produce those documents. As Apple explained on the call, during Apple's review of documents gathered from search terms Apple will consider whether those documents are responsive to any RFP.

**RFP 23**

Plaintiff Letter Statement

*We asked whether your compromise agreement with the Government Plaintiffs meant that Apple was not agreeing to produce underlying communications or drafts relating to the documents listed in this RFP. We expressed concern that such a position could exclude drafts with highly probative margin comments. Apple said that it would check whether non-final versions would be included in the search it intends to execute.*

Apple Response

Apple's position is that, in addition to the production described in its agreement with the Government Plaintiffs, if Apple comes across drafts of reports produced in response to RFP 23 in its custodial searches, Apple will plan to produce those reports.

**Watch RFP 24.1**

Plaintiff Letter Statement

*We noted that our request uses the term "all changes" and your response agrees to search for and produce documents sufficient to show "significant changes." We asked what the delta was between "all changes" and "significant changes." You said that you would get back to us.*

GIBSON DUNN



Apple Response

With respect to RFP 24.1, Apple is amending its response to conform with the agreement reached with the Government Plaintiffs with respect to RFP 24. Apple will produce non-privileged, technical specifications for all versions of Apple Watch, WatchOS, or iOS and will produce public documentation showing which model was sold in which country from 2019 to 2025 and documentation showing which model was sold in which country from 2014 to 2019, to the extent such documents exist and can be located by a reasonable search.

**Watch RFP 25.1**

Plaintiff Letter Statement

*We asked whether Apple was willing to extend its agreement with the Government as to RFP 25 to Watch Plaintiffs, i.e., whether Apple would agree to search for the same category of documents except as to the allegations in Watch Plaintiffs' complaint. You said you would get back to us. You asked if Watch Plaintiffs would be willing to limit the last clause of RFP 25.1 to refer to Apple Watch products rather than all Apple products. Watch Plaintiffs said we would get back to you, and we can now confirm that we are able to limit the last clause of RFP 25.1 to refer to Apple Watch products.*

Apple Response

Apple agrees that the same agreement reached with the Government Plaintiffs with respect to RFP 25 will apply to RFP 25.1 with the limitation that the last clause of RFP 25.1 will be read to refer to Apple Watch products, not all Apple products, as Watch Plaintiffs have agreed.

**RFP 29**

Plaintiff Letter Statement

*We asked whether Apple would agree to produce either examples of its contracts with smaller retailers, or form contracts that it typically uses with smaller retailers. Apple maintained its burden objection with regard to producing sample contracts, but agreed to go back and inquire about whether it could produce form contracts. In its summary of its agreement with the government regarding RFP 29, Apple wrote that it agreed to produce nonprivileged communications between Apple and the U.S. carriers and* [redacted]*. When we asked about underlying communications with the other listed retailers (*[redacted]*), Apple said it may have agreed to produce these communications as well, but that it would get back to us.*

Apple Response

Apple's agreement with the Government Plaintiffs with respect to RFP 29 is that Apple will produce final executed contracts for all U.S. carriers and for [redacted]); non-privileged communications between Apple and U.S. carriers from January 1, 2015 to June 20, 2025 related to iPhone agreement negotiations and promotion; and non-privileged communications with [redacted] from January 1, 2015 to June 20,

2025 related to iPhone agreement negotiations and promotions. Apple has not agreed to produce the same communications with [redacted], and there would be significant additional burden in identifying these documents. Regarding producing examples of Apple's contracts with smaller retailers or form contracts typically used with smaller retailers, Apple is considering this request but notes that the contracts Apple has already agreed to produce cover retailers who make up a significant majority of non-Apple iPhone sales.

**Watch RFP 29.1 and iPhone RFP 29(A)**

Plaintiff Letter Statement

*We also noted that Apple's agreement with the Government as to RFP 29 did not seem to require Apple to search for internal communications about the contract negotiations, which we ask for in RFP 29.1 and 29(A). You said you were unsure, and would get back to us. We emphasized that regardless of Apple's agreement with the Government, we maintain our request for those documents.*

Apple Response

Apple's agreement with the Government Plaintiffs regarding RFP 29 in the Government Action does not require Apple to search for or produce internal communications about the contract negotiations referred to in RFP 29. Searching for and producing internal communications related to the contract negotiations referred to in RFP 29 would be overly burdensome and not proportional to the needs of this case.

**iPhone RFP 30**

Plaintiff Letter Statement

*We asked you to confirm whether Apple's agreement to search for documents responsive to RFP 30 meant that you understood the list of entities in RFP 30 to be illustrative or exclusive. You confirmed that you understood it to be illustrative.*

Apple Response

As we confirmed on the call, relevant documents will include the third parties listed in RFP 30, but are not limited to those third parties.

Sincerely,

GIBSON, DUNN & CRUTCHER LLP

Katherine Warren Martin

# Exhibit D

## CONFIDENTIAL - FILED UNDER SEAL

GIBSON DUNN

Katherine Warren Martin
Associate Attorney
T: +1 415.393.8270
M: +1 415.705.9213
kwarren@gibsondunn.com

April 20, 2026

VIA EMAIL

Lauren Dayton
MoloLamken LLP
LDayton@MoloLamken.com

Re: *In re Apple Inc. Smartphone Antitrust Litigation*, No. 2:24-md-03113

Dear Counsel,

We are in receipt of your February 20, 2026, and February 27, 2026 letters addressing the outstanding items raised during the meet and confers regarding Watch Plaintiff's RFPs 1 through 46. Following three meet-and-confer sessions on February 23, 26, and March 4, 2026 regarding these items, Watch Plaintiff indicated he would provide follow-up on certain issues, which we received on March 10, 2026. We previously responded to many of the issues your letters address in our April 14, 2026 letter and indicated that Apple would follow up regarding certain remaining items. This letter provides that follow-up.

**Watch RFP 1.1**: All Communications between Apple (including its outside counsel) and the Government Plaintiffs (including the Government Plaintiffs' counsel) related to the Action or the Investigation, including all Documents produced to Apple by the Government Plaintiffs and all Documents produced to the Government Plaintiffs by Apple in the Government Action.

Plaintiff February 20 Letter Statement

*As reflected in MDL Plaintiffs' December 18, 2025 letter, Apple confirmed during the December 17, 2025 meet and confer that Apple would produce pari passu to MDL Plaintiffs all of the documents that Apple produces to the Government Plaintiffs in the Government Action. In the MDL Plaintiffs' December 18, 2025 letter, we noted that Apple said its initial understanding was that it would produce all communications between Apple and the Government, but that Apple had agreed to confirm. We believe that Apple's subsequent correspondence has not included a response to this question. If we have overlooked your response, please direct us to it. If you have not yet responded, please do so promptly.*

Plaintiff March 10 Letter Statement

*We confirmed that Watch Plaintiffs do not accept the proposed limitation that Apple suggested and, as reflected in the RFP that we issued, are seeking all Documents, including Communications, exchanged between Apple and the Government related to the Government Action and the Government's investigation, not just Documents related to discovery. During the February 26 and March 4 meet and confers, you said you would get back to us.*

Apple Response

Apple is continuing to assess what Apple can reasonably collect, review, and produce without undue burden disproportionate to the needs of the case.

**Watch RFP 1.3**: All Communications between Apple and any government entity, official, employee, or executive branch representative (whether or not formally employed by the government) other than the Government Plaintiffs related to any actual or potential antitrust investigation regarding the iPhone, including all Communications between Apple and Brazil's Administrative Council for Economic Defense ("CADE") related to Apple's restrictions on NFC technology.

Plaintiff February 20 Letter Statement

*During the December 17, 2025 meet and confer (as reflected in MDL Plaintiffs' December 18, 2025 letter), MDL Plaintiffs asked Apple to confirm whether the term "government entities" in Apple's response includes all of the government entities and actors that we included in our RFP ("government entity, official, employee, or executive branch representative (whether or not formally employed by the government) other than the Government Plaintiffs"). You agreed to let us know. We believe that Apple's subsequent correspondence has not included a response to this question. If we have overlooked your response, please direct us to it. If you have not yet responded, please do so promptly. Watch Plaintiffs agreed to provide a list of international government investigations that Watch Plaintiffs believe should be included in this RFP. Watch Plaintiffs provide that list here:*

| | ***Regulator*** | ***Topic*** | ***Approx. Date*** |
|---|---|---|---|
| *1* | *Brazilian Council of Economic Defense* | *Apps* | *Dec. 2025* |
| *2* | *Columbian Superintendent of Industry and Commerce* | *Apps* | *Aug. 2025* |
| *3* | *European Commission* | *Apps* | *March 2024* |
| *4* | *European Commission* | *Interoperability* | *March 2025* |
| *5* | *European Commission* | *NFC Access* | *June 2020* |
| *6* | *French Autorité de la Concurrence* | *App Tracking Transparency* | *March 2025* |
| *7* | *German Bundeskartellamt* | *App Tracking Transparency* | *June 2022* |
| *8* | *Italian Autorità Garante della Concorrenza e del Mercato* | *App Tracking Transparency* | *2025* |
| *9* | *Italian Autorità Garante della Concorrenza e del Mercato* | *App Tracking Transparency* | *May 2023* |
| *10* | *Netherlands Authority for Consumers & Markets* | *Apps* | *Aug. 2021* |
| *11* | *Poland UOKiK* | *App Tracking Transparency* | *Nov. 2025* |

| | | | |
|---|---|---|---|
| *12* | *Romanian Competition Council* | *App Tracking Transparency* | *Oct. 2023* |
| *13* | *Russia Federal Antimonopoly Service* | *Apps* | *Aug. 2020* |
| *14* | *Korea Communications Commission* | *Apps* | *Oct. 2023* |
| *15* | *Korea Communications Commission* | *Location Data* | *June 2024* |
| *16* | *UK Competition & Markets Authority* | *Apps* | *Oct. 2025* |

<u>Plaintiff March 10 Letter Statement</u>

*You asked us to supplement our list of international investigations with a description of why each listed investigation is relevant. In Appendix A, below, we identify certain aspects of the identified investigations that are relevant to the MDL, but note that they are illustrative and there may be more relevant aspects that are not listed but that we may raise in the future if necessary. At the March 4 meet and confer, we asked that Apple consider identifying a subset of investigations that you would agree to be relevant, proportional, and not unduly burdensome to produce. You stated that you would consider that and would get back to us.*

*[Plaintiff's Appendix A]*

| | ***Regulator*** | ***Relevance*** | ***Approx. Date*** |
|---|---|---|---|
| *1* | *Brazilian Council of Economic Defense* | *Scare screens and steering toward alternatives in the App Store.* | *Dec-25* |
| *2* | *Columbian Superintendent of Industry and Commerce* | *Sideloading and efforts to degrade consumer options for non-Apple smartwatches and apps.* | *Aug-25* |
| *3* | *European Commission* | *Steering and metadata restrictions making it harder to find compatible apps for non-Apple watches.* | *Mar-24* |
| *4* | *European Commission* | *Third-party device interoperability with iOS and iPhone across a host of relevant features.* | *Mar-25* |
| *5* | *European Commission* | *Apple abuse of market dominance and limitations on third-party access to NFC.* | *Jun-20* |
| *6* | *French Autorité de la Concurrence* | *Abuse of market dominance, degradation of competitor smartwatches through phone updates, Bluetooth accessibility restrictions, synchronization windows, customization options, and privacy changes.* | *Mar-25* |
| *7* | *German Bundeskartellamt* | *Scare screens, unequal permissions and tracking, and consumer misperceptions regarding competitor smartwatch quality and reasons for performance limitations.* | *Jun-22* |

| | | | |
|---|---|---|---|
| *8* | *Italian Autorità Garante della Concorrenza e del Mercato* | *Scare screens, unequal privacy policies, permissions and tracking, and consumer misperceptions regarding competitor smartwatch quality and reasons for performance limitations.* | *2025* |
| *9* | *Italian Autorità Garante della Concorrenza e del Mercato* | *Self-preferencing regarding privacy rules and data provision.* | *May-23* |
| *10* | *Netherlands Authority for Consumers & Markets* | *Abuse of market dominance to restrict competing apps or knowledge of competing apps.* | *Aug-21* |
| *11* | *Poland UOKiK* | *Scare screens and misleading customers about privacy protections.* | *Nov-25* |
| *12* | *Romanian Competition Council* | *Abuse of market dominance, sideloading, app tracking, and limitations on competitor apps.* | *Oct-23* |
| *13* | *Russia Federal Antimonopoly Service* | *Abuse of market dominance to restrict competitor apps.* | *Aug-20* |
| *14* | *Korea Communications Commission* | *Abuse of market dominance and intentional delay of app review for competitors.* | *Oct-23* |
| *15* | *Korea Communications Commission* | *Privacy, location tracking, and user permissions.* | *Jun-24* |
| *16* | *UK Competition & Markets Authority* | *Market power, sideloading, app review delays, accessing competitors' sensitive information, users' ability to find competitor apps, and interoperability and third-party access to features and functions.* | *Oct-25* |

Apple Response

Watch Plaintiff has asked Apple to clarify how it understands the term "government entities." Apple directs Watch Plaintiff to page 5 of Apple's December 23, 2025 letter, in which Apple addressed this point. Apple will include within the meaning of "government entities" government employees or representatives acting within their official capacities. Apple would not withhold responsive, non-privileged communications between Apple and a government employee or representative via the government representative's personal email account, if the communications are within the scope of the individual's work on behalf of the government, rather than personal or non-official in nature and if Apple was aware that the individual involved was communicating with Apple in their capacity as a government representative.

Foreign investigation communications and materials are not relevant merely because they may concern topics that Watch Plaintiff contends are relevant in this case. Although Apple has asked Watch Plaintiff to explain why such investigation materials are themselves relevant—rather than documents bearing on the underlying topics—he has not responded to that request. Watch Plaintiff may contend that some subject matter addressed in a foreign investigation is relevant. But Watch Plaintiff's numerous other Requests already cover the subjects actually at issue in his Complaint. The potential relevance of the topic of an investigation does not explain why materials *from* an investigation involving different facts and

different laws would be relevant. *See Cole's Wexford Hotel, Inc. v. Highmark Inc.*, 209 F. Supp. 3d 810, 812–13, 822–24, 833 (W.D. Pa. 2016) (under Rule 26(b)(1), discovery must be "relevant to a party's claims or defenses and proportional to the needs of the case"; discovery is not relevant "simply because there is a possibility that the information may be relevant to the general subject matter of the action"); *In re Broiler Chicken Antitrust Litig.*, No. 16 C 8637, 2020 WL 1046784, at *2 (N.D. Ill. Mar. 4, 2020) ("[R]eflexive production of documents previously provided to governmental entities is not appropriate. Rather, documents are discoverable only if they are relevant to a claim or defense in the case." (citation omitted)); *see, e.g.*, *In re Outpatient Med. Ctr. Emp. Antitrust Litig.*, No. 21 C 305, 2023 WL 4181198, at *5–6 (N.D. Ill. June 26, 2023) (holding request for all documents produced to DOJ was "facially overbroad"). Nor has Watch Plaintiff explained why his request for such materials is proportional, and not unduly burdensome. It is not.

Watch Plaintiff's request for communications from 17 foreign investigations is also unnecessary because Apple has already agreed to produce documents related to several investigations brought by the European Commission and from a number of U.S. litigations in response to Watch RFP 3. It is unclear why communications from additional investigations—addressing overlapping subjects but under inapplicable legal standards—would be relevant or necessary. Producing investigation and litigation documents in response to RFP 3 already poses significant complexities, given the need to navigate foreign law issues and restrictions and protective order obligations in other courts. Producing communications in response to the additional 17 foreign investigations Watch Plaintiff has identified would be extremely burdensome. It would require Apple to address issues specific to enforcement bodies in at least 12 jurisdictions, navigate foreign-language collection and review issues, and coordinate with local counsel in multiple countries to identify, collect, and produce responsive materials. That process would place an undue burden on Apple that is disproportionate to the needs of the case.

Watch Plaintiff's table does not change that conclusion. As noted above, the table does not explain why materials from these individual foreign investigations are themselves relevant, as opposed to discovery directed to the underlying subjects which Apple is already undertaking in response to other Requests. In addition, in some instances, the table does not clearly identify the particular investigation at issue or how the handful of words in the "Relevance" column correspond to that investigation. Further, the investigations identified in Watch Plaintiff's table arise from foreign proceedings, before non-U.S. regulators, applying non-U.S. legal standards, and often based on alleged conduct not at issue in this case. Watch Plaintiff has offered nothing justifying his request for Apple to undertake the significant burden of collecting and producing this set of materials. *See Atkinson v. Luitpold Pharms., Inc.*, 414 F. Supp. 3d 742, 744 (E.D. Pa. 2019) (the moving party "bears the initial burden to prove that the requested discovery falls within the scope of discovery as defined by Rule 26(b)(1)," and although discovery is broad, it "is not unlimited" and "should be tailored to the issues involved in the particular case" (citations omitted)); *Airwair Int'l Ltd. v. Zoetop Bus. Co.*, Ltd., No. 20-cv-07696, 2021 WL 6091263, at *2 (N.D. Cal. Dec. 23, 2021) (denying foreign third-party discovery where the requesting party failed to carry its burden of establishing "relevance, or proportionality, or necessity or importance to the litigation," and had not adequately explained why the information could not be obtained from a party to the litigation or other alternative sources).

**<u>Watch RFP 6</u>**: All Documents related to any plans or changes Apple has made, considered making, or analyzed related to the iPhone or any Identified Product or Service in response to any actual or potential legal, judicial, or regulatory requirement, proceeding, or investigation in any jurisdiction worldwide, including the nature, costs, revenue impacts, and other actual or potential effects of those changes.

<u>Plaintiff February 20 Letter Statement</u>

*Watch Plaintiffs seek clarification regarding Apple's January 8 and January 20, 2026 letters from K. Martin to F. Thomas, and Apple's agreement with the Government. Apple's January 20 letter says that "documents responsive to RFP 6's request for plans Apple has 'considered making' or 'analyzed' will already be produced in response to RFP 25," but its January 8 letter said that "Apple's position is not that RFP 6 is fully subsumed into RFP 25." What categories of documents that would be responsive to RFP 6 does Apple think would not be responsive to RFP 25? Further, with respect to the terms of Apple's agreement with the Government, what categories of documents is the Government foregoing by agreeing to drop the request for documents responsive to RFP 6 related to the EC investigations? Would those documents not be produced among the documents that Apple is agreeing to produce in response to RFP 25?*

<u>Apple Response</u>

*First*, Apple's January 8 and January 20 letters are consistent. In its January 20 letter, Apple addressed a question Plaintiffs raised on the January 7 meet and confer and explained that documents reflecting plans or changes Apple "considered making" or "analyzed" with respect to the Alleged Conduct would necessarily discuss the actual or potential effects of altering the Alleged Conduct and therefore would be responsive to RFP 25. The January 8 letter explained that RFP 6 is not fully subsumed by RFP 25 because RFP 6 is broader than RFP 25, but RFP 6's broader scope is unduly burdensome. Specifically, documents concerning Apple's response to legal or regulatory developments that are not related to the Alleged Conduct would be responsive to RFP 6 but not RFP 25.

Plaintiffs' request for those documents is overbroad and would require Apple to produce documents unrelated to Watch Plaintiff's allegations such as—for example—Apple's business plans related to tariffs imposed on iPhone imports or the impact of local regulations on Apple's supply chain. Collecting, reviewing, and producing that significant body of irrelevant material would pose a significant undue burden and is necessarily disproportional to the needs of the case. RFP 25, in contrast, focuses on potential or actual changes related to the conduct alleged in the Government Litigation. That Request is reasonably limited and drafted to identify materials relevant to the litigation.

*Second*, with respect to Plaintiffs' question about Apple's agreement with the Government regarding RFP 6: that agreement arose from the parties' overlapping negotiations concerning RFPs 3, 6, and 25. RFP 6 has a broader scope than RFPs 3 and 25, and collecting materials responsive to RFP 6 related to the European Commission would have imposed a significant additional burden, including the need to potentially identify and collect from additional Europe-based custodians. To address that issue, Apple agreed to produce non-privileged documents since January 1, 2010 responsive to RFP 25 on a *worldwide* basis, that could be identified through a reasonable search of documents in the possession of Apple's otherwise agreed custodians. In exchange, the Government Plaintiffs agreed to withdraw their broader request under RFP 6 for documents related to EC investigations. It would have been a substantial additional

burden to add EU-based custodians to capture additional, irrelevant, EC-related materials in response to RFP 6.

That compromise was designed to reduce undue burden on Apple from collecting and producing EC-related materials that would be irrelevant and disproportional to the needs of the case and to avoid the significant additional burden of identifying additional EC-specific custodians. That compromise did not exclude any category of documents, beyond documents that are exclusively responsive to RFP 6, such as documents relating to Apple's response to irrelevant legal and regulatory changes that have no bearing on the Alleged Conduct.

**Watch RFPs 8.1–8.3**

**8.1:** All Documents relating to the interoperability of Third-Party Smartwatches with iOS or the iPhone, and to the operations and approval or disapproval of Third-Party Smartwatch Apps, including, but not limited to: a. the Apple Notification Center Service; b. Background Execution by Third-Party Smartwatches and Third-Party Smartwatch Apps; c. Third-Party Smartwatches' and Third-Party Smartwatch Apps' access to and use of APIs relating to messaging, notifications, phone calls, and Digital Wallets; d. Third-Party Smartwatches' use of Bluetooth and Bluetooth pairing; e. the effect of low-power mode on Third-Party Smartwatches and Third-Party Smartwatch Apps; and f. the effect of Phone Number Sharing Restrictions on Third-Party Smartwatches and Third-Party Smartwatch Apps.

**8.2:** All Documents related to any decision on whether to limit the interoperability of Third-Party Smartwatches with the iPhone (or the Apple Watch with Third Party Smartphones); the reasons for any such decision; and the actual or potential impact of any such decision on iPhone sales, iPhone switching, or consumer perception or demand. This includes any decision on whether to: a. Limit or reduce limits on the ability of Third-Party Smartwatches to respond to notifications; b. Limit or reduce limits on the ability of Third-Party Smartwatches to maintain a consistent Bluetooth connection with the iPhone when Bluetooth is manually disabled on the iPhone; c. Limit or reduce limits on the ability of Third-Party Smartwatches' access to and use of APIs relating to messaging, notifications, phone calls, and Digital Wallets; d. Limit or reduce limits on the ability of Third-Party Smartwatches to maintain a consistent connection with, to continue to operate in the background of, or to continue to share data with the iPhone when the iPhone is in Low Power Mode; and e. Limit or reduce limits on the ability of Third-Party Smartwatches to connect to a cellular network using a phone number associated with an iPhone.

**8.3:** All Documents relating to Background Execution by Apple Watch, Apple Watch Apps, Third-Party Smartwatches, and Third-Party Smartwatch Apps, including, but not limited to: limits or the absence of limits on the time duration for Background Execution, limits or the absence of limits on the data that can be processed during Background Execution, the effect of closing an App or Third-Party Smartwatch App on Background Execution, and Background Execution performance by Third-Party Smartwatches and Apple Watches.

<u>Plaintiff February 20 Letter Statement</u>

*In its January 8 and 20, 2026 letters from K. Martin to F. Thomas, Apple provided its view that RFPs 8.1-8.4 are "encompassed by RFP 8," but that they are overbroad to the extent they call for production of documents that do not relate to interoperability differences between Apple and third-party*

*devices. Apple asked Watch Plaintiffs to identify materials that we think should be produced under RFPs 8.1-8.4 but fall outside of what Apple has agreed to produce. Watch Plaintiffs position remains that all documents related to the interoperability of Third-Party Smartwatches or related decision-making must be produced, including when there is no interoperability difference between the pertinent Apple and non-Apple products. Nevertheless, in the spirit of compromise, Watch Plaintiffs are willing to discuss a narrowing of such documents that would include (1) documents related to interoperability non-differences that are relevant to Apple's reasonably anticipated defenses, and (2) documents sufficient to show the timeline of interoperability non-differences for relevant functions. Please let us know your position.*

<u>Plaintiff March 10 Letter Statement</u>

*In its January 8 and 20, 2026, letters from K. Martin to F. Thomas, Apple provided its view that RFPs 8.1-8.4 are "encompassed by RFP 8," but that they are overbroad to the extent they call for production of documents that do not relate to interoperability differences between Apple and third-party devices. During our meet and confer on February 23, you asked whether we would consider: (i) revising this request to replace the word "interoperability" with terms like "having a function that Apple offers"; and (ii) limiting the interoperability non-differences (we also used the term "functions") to those that Watch Plaintiffs articulate, either as enumerated in the RFP (making those lists exhaustive, with respect to non-differences, rather than exemplary), or otherwise. Regarding "interoperability," we have considered it further and think that term fairly describes a relevant topic alleged in the Amended Complaint and decline to swap that term for another.*

*During our March 4 meet and confer, we asked Apple to consider whether it would be willing to produce documents if we limited RFP 8.3 to the enumerated items in that RFP (rather than "including, but not limited to" those items). We agreed, at your request, to consider whether to limit RFP 8.3 to only interoperability differences.*

*Regarding your request that we limit the scope of these RFPs to the items enumerated in them (or that Watch Plaintiffs articulate), we do not agree. There are background execution aspects that Apple may not consider part of the enumerated topics (e.g., daemons, trigger mechanisms, listening modes, resource allocation algorithms, and interactions with features like Low Power Mode, as well as documents related to decision-making, impact, and complaints connected to background execution) but that are relevant and should be produced, and there may be technological features or interoperability differences or non-differences that are known only to Apple that are unknown to us. To the extent any limitations are warranted, search terms are a more appropriate tool for focusing searches related to these requests.*

*Additionally, regarding non-differences, we conveyed in our February 20 letter that Watch Plaintiffs' position remains that all documents related to the interoperability of Third-Party Smartwatches or related decision-making must be produced, including when there is no interoperability difference between the pertinent Apple and non-Apple products. In the spirit of compromise, however, we also stated that we were "willing to discuss a narrowing of such documents that would include (1) documents related to interoperability non-differences that are relevant to Apple's reasonably anticipated defenses, and (2) documents sufficient to show the timeline of interoperability non-differences for relevant functions." We have not received a response.*

*With respect to RFPs 8.1-8.3, the above are Watch Plaintiffs' final positions. If Apple does not agree to them, then we are at an impasse.*

Apple Response

Watch Plaintiff alleges that Apple has monopolized a purported market for iOS-connected smartwatches through conduct that, he claims, "disrupt[s] and degrade[s] competing smartwatches." Watch Compl. ¶ 3. In other words, Watch Plaintiff alleges that Apple has created differences in how "the iPhone operating system," *id.*, operates with Apple Watch and with smartwatches sold by Apple's competitors. The documents relevant to those allegations are documents related to *differences* in how Apple Watch and smartwatches sold by Apple's competitors operate with the "iPhone operating system."

Nonetheless, Watch Plaintiff continues to demand the production of documents concerning "interoperability *non-differences*." That phrase is unintelligible. Apple told Watch Plaintiff it did not understand that phrase during the parties' February 23 meet and confer. Watch Plaintiff indicated he would provide further explanation as to what he understands that phrase to mean. Watch Plaintiff has not done so. Apple still does not know what Watch Plaintiff expects Apple to search for.

Given Watch Plaintiff's failure to define "interoperability non-differences," Apple cannot assess what types of "interoperability non-differences" would be relevant to Apple's reasonably anticipated defenses. Apple also does not understand what Watch Plaintiff means by a "timeline of interoperability non-differences for relevant functions." Watch Plaintiff has never explained what he means by "relevant functions," nor by "timeline," a term used in Watch Plaintiff's February 20 letter. Apple should not be required to guess at the scope of the Request.

Apple is willing to meet and confer further at least to attempt to understand what Watch Plaintiff is asking for.

Finally, Watch Plaintiff's letter appears to suggest that he expects Apple to produce documents regarding a capacious set of topics specifically not alleged in the Complaint or mentioned in Watch Plaintiff's Requests, which he has never before mentioned to us. Watch Plaintiff's letter appears to identify some of these brand-new issues in parentheticals which are apparently not exhaustive, meaning he continues to demand the production of documents related to topics he has not revealed to us. At a minimum, it would be productive to meet and confer so we can learn what Watch Plaintiff believes the Request calls for and understand why he believes Apple should produce documents related to issues expressly not alleged in the Complaint.

For these reasons, Apple does not believe the parties are at an impasse because we still do not know what you believe we are at an impasse about. Apple remains willing to confer with Watch Plaintiff about these Requests.

**Watch RFPs 11, 11.1**:

**11:** All Documents related to any actual or potential barriers to entry, expansion, or repositioning related to Smartphones, mobile operating systems, or any Identified Product or Service, including all Documents related to network effects, economies of scale, and economies of scope.

**11.1:** All Documents relating to past, current, and anticipated future requirements to enter and barriers to entry into, or growth of, the market for (1) iOS-Connected Smartwatches and (2) all Smartwatches, including, but not limited to, analysis by Apple, Third-Party consultants, financial or business services firms, or accounting firms.

Plaintiff February 20 Letter Statement

*During the December 23, 2025 meet and confer, Apple stated that it agreed with the Government Plaintiffs to produce, in response to this RFP, documents related to smartphones worldwide, including the United States, and, in response to this RFP, documents related to the identified products and services within the United States only. Apple also stated that it would not limit its collection to documents located in the United States, but rather that it would limit collection of documents, for this RFP, to those related to barriers to entry in the United States.*

*Watch Plaintiffs have considered Apple's proposal and do not agree. Watch Plaintiffs allege, in the alternative, worldwide smartwatch and smartphone markets. Further, documents related to barriers to entry (or the relative lack of barriers to entry), expansion, repositioning, and growth in foreign smartwatch markets are relevant to Watch Plaintiffs' case for the same reason that documents related to foreign smartphone markets worldwide are relevant to the Government Plaintiffs' case – and Apple has agreed to search for those documents. See, e.g., Amend. Compl.¶¶ 156, 189, 234 (alleging barriers to enter smartwatch markets). Please let us know your position.*

Plaintiff March 10 Letter Statement

*We provided our position that worldwide conduct is within the scope of our request for Documents related to actual or potential barriers to entry, expansion, or repositioning. First, and as previously explained, Watch Plaintiffs and Phone Plaintiffs allege in the alternative a worldwide market. See Direct Apple Watch Purchasers' Amend. Compl. ¶¶ 222, 255, 262. Actual or potential barriers to entry, expansion, or repositioning outside of the United States are obviously relevant to a worldwide market. Second, a worldwide scope is appropriate because expansion, repositioning, or barriers to entering the relevant markets in other countries—where Apple is unable to engage in some of the conduct that it engages in within the United States—informs whether that conduct here is anticompetitive. As we noted during the meet and confer, as one example, in some countries, Apple permits sideloading because those countries require Apple to permit it. Documents related to barriers to entry into the relevant markets where sideloading is permitted are useful counterfactuals regarding the impact on competition and other relevant issues, like privacy.*

*As Plaintiffs have consistently maintained, limitations on alternative methods of App distribution, including sideloading, are relevant to all MDL Plaintiffs' allegations, because MDL Plaintiffs allege that Apple restricts alternate methods of app distribution in order to enforce its restrictive rules and maintain its market power. See, e.g., Direct iPhone Purchasers' Amend. Compl. ¶¶ 11-14, 47-61, 74, 89, 93, 104-105, 166, 171; Indirect iPhone Purchasers' Amend. Compl. ¶¶ 27, 31-33, 74-80, 87, 100, 108-111, 171, 176; Direct Apple Watch Purchasers' Amend. Compl. ¶¶ 38-45.*

*You asserted during our February 26 meet and confer that sideloading is not relevant to Watch Plaintiffs' allegations. But Watch Plaintiffs' complaint explains why it is relevant. Because Apple's contractual and other restrictions prohibit sideloading, app developers are effectively prohibited from*

GIBSON DUNN



*offering apps that would allow iPhone users to access features that Apple currently limits only to Apple Watches—for example, iMessage. Beeper Mini is an example of an app, which, if sideloading were permitted, iPhone users could have eventually used with non-Apple smartwatches to avoid Apple's anticompetitive restrictions. See, e.g., Direct Apple Watch Purchasers' Amend. Compl. ¶¶ 41, 60-63. You asserted that Beeper Mini was not smartwatch specific. But it is no huge leap to say that an app developed for smartphone messaging could be offered for smartwatch messaging—particularly since it was developed by an individual running a smartwatch company. In any event, our allegations are not limited to Beeper Mini. [Fn. 3. And, of course, Apple's restrictions on Beeper Mini are also relevant to all MDL Plaintiffs' allegations regarding Apple's scheme to restrict competition in the market for Performance Smartphones or Smartphones.] Watch Plaintiffs allege other restrictions that limit the kinds of apps that would allow iPhone owners to use the same functions on third-party smartwatches that Apple currently restricts only to the Apple Watch.*

*Of course, as we have noted, Apple has agreed to produce similar Documents in the Government Action. You said you would get back to us on this RFP.*

Apple Response

Subject to and without waiving its objections, Apple will agree to produce non-privileged documents in response to RFPs 11 and 11.1 related to Smartwatches worldwide.

**Watch RFPs 25, 25.1**:

**25:** All Documents since January 1, 2010 related to the actual or potential effects of ending or altering any aspect of the conduct alleged in the Government Litigation, including allowing alternative app stores or App downloads from websites on the iPhone, modifying App Review Guidelines, or giving third parties access to the APIs or features currently or previously reserved for Apple products or services.

**25.1:** All Documents since January 1, 2010 related to the actual or potential effects of ending or altering any aspect of the Alleged Conduct, including modifying the DPLA, modifying App Review Guidelines, or giving third parties access to the APIs or features currently or previously reserved for Apple products or services.

Plaintiff February 27 Letter Statement

*Watch Plaintiffs understand that Apple's agreement with the Government with respect to RFP 25 was contingent on the Government foregoing pursuit of certain materials responsive to RFP 6. In Watch Plaintiffs' Feb. 20, 2026 letter from L. Dayton to J. Lo and C. Sullivan, we posed certain questions about that agreement and the scope of RFPs 6 and 25. Because Apple's answers to those questions may influence Watch Plaintiffs' positions on RFPs 25 and 25.1, we will follow up on these RFPs after receiving your response to our questions regarding RFP 6.*

Plaintiff March 10 Letter Statement

*You confirmed that you were working on your response to our questions posed in our February 20, 2026, letter about RFP 6, which we had previously requested to inform our discussions of RFP 25. We look forward to your response.*

Apple Response

Apple refers Watch Plaintiff to its response above regarding RFP 6.

**Watch RFP 34**: All Documents related to the use or potential use of Apps or app stores directly downloaded from the internet or non-Apple app stores on the iPhone in any geography, including technical assessments, use by Enterprise customers, any comparisons to Android or other operating systems, and any actual or potential effect on: a. Apple's revenues and profitability; b. User and Developer behavior, spending, revenue, and profitability; c. The number, quality, and features of Apps available for use on the iPhone; d. Consumer demand, purchase intentions, and Smartphone switching; e. Privacy or security for users or Developers, including threat assessments or Threat Models; and f. Potential alternatives to app stores, including web stores and progressive web Apps.

Plaintiff February 27 Letter Statement

*In the January 23, 2026 letter from K. Martin to F. Thomas, Apple explained that it "has limited the scope of production for this request to the United States because this case concerns alleged conduct and effects within the United States." Watch Plaintiffs disagree with this limitation for a number of reasons, including because Watch Plaintiffs pleaded, in the alternative, worldwide markets for iOS-connected smartwatches, smartwatches overall, iOS smartphones, and smartphones overall, and because Apple's conduct in foreign jurisdictions (e.g., in places where sideloading is enabled) may provide important bases of comparison and insights into Apple's intent, views, and practices. Watch Plaintiffs reject Apple's position that Watch Plaintiffs must identify the specific documents that might be responsive to this request that Watch Plaintiffs want, as suggested in the January 23, 2026 letter. We would like to discuss this RFP at the next meet and confer.*

Apple Response

Apple maintains its objections to Watch Plaintiff's demand for worldwide discovery in response to this Request. Apple is willing to discuss this proposal further during the parties' next meet and confer.

Sincerely,

GIBSON, DUNN & CRUTCHER LLP

# Exhibit E

## CONFIDENTIAL - FILED UNDER SEAL

GIBSON DUNN

Connor S. Sullivan
Partner
T: +1 212.351.2459
M: +1 216.956.8955
Cssullivan@gibsondunn.com

Jason Lo
T: +1 213.229.7153
M: +1 213.247.1672
JLo@gibsondunn.com

CONFIDENTIAL

June 26, 2026

VIA EMAIL

Lauren Dayton
MoloLamken LLP
LDayton@MoloLamken.com

Re: *In re Apple Inc. Smartphone Antitrust Litigation*, No. 2:24-md-03113

Dear Counsel,

We write regarding the parties' meet and confer discussions on April 24 and May 4, 2026, about RFPs 120-136 in Watch Plaintiff's Second Set of Requests for Production.

**Watch 120**: Documents sufficient to show, for each named Plaintiff representing Direct Apple Watch Purchaser Plaintiffs: (a) the user data that Apple has collected for that Plaintiff; (b) the directory services identifier associated with that user data; (c) personally identifying information associated with that directory services identifier; and (d) the Apple ID established for that user, along with the associated email address, phone number, first name, last name, date of birth, physical address (if entered), and any other identifying information.

*Plaintiff's Letter Statement*

*In response to your questions, we stated "directory services identifier" refers to what we understand to be an internal Apple term for a method of identifying AppleID accounts, and it is a central code that Apple uses to identify users in different databases. We further explained that "user data" refers to user data Apple has collected about Mr. Giamanco for purpose of this litigation.*

*You noted that this Watch RFP is similar to Phone Plaintiffs' RFP 105. We agreed to consider how Watch RFP 120 relates to Phone RFP 105. We are considering Apple's request that Mr. Giamanco provide the information listed in subpart (d). We note here that we joined Phone Plaintiffs' related question in their letter dated May 5, 2026, which asked Apple to confirm that, by providing the information Apple requested as to Phone RFP 105, named plaintiffs would not waive any rights or grant Apple access to data that it would not otherwise have in its own system.*

*Please provide Apple's response by May 15, 2026.*

Apple's Response

Apple requests that MDL Plaintiffs provide further clarity on the nature of their privacy concerns regarding this Request, as well as how they interpret the scope of this Request, so that Apple can fully assess MDL Plaintiffs' question. In particular on the April 24 meet and confer call, Watch Plaintiff asked whether providing Apple with the requested Apple IDs (i.e., the email addresses associated with named

Plaintiffs' Apple Accounts) would waive named Plaintiffs' rights under Apple's privacy policy. To allow Apple to assess that concern, we ask that MDL Plaintiffs identify the specific privacy rights they believe would be implicated by providing basic identifying information about themselves in a lawsuit they filed against Apple.

In any event, Apple understands MDL Plaintiffs' general concern to be whether providing Apple IDs or other identifying information would authorize Apple personnel to bypass Apple's ordinary privacy controls or access user information beyond what is necessary to respond to MDL Plaintiffs' discovery requests. It would not. Apple's internal privacy controls generally restrict employee access to user information. Apple is requesting this information to facilitate the accurate identification of MDL Plaintiffs' accounts so it can respond to MDL Plaintiffs' RFPs (including iPhone RFP 105 and Watch RFP 120). Once MDL Plaintiffs provide the requested identifying information, Apple is prepared to continue meeting and conferring with MDL Plaintiffs regarding the appropriate scope of its response.

To the extent MDL Plaintiffs seek information about the kinds and categories of data that Apple collects from each named Plaintiff, Apple refers MDL Plaintiffs to Apple's privacy policies and to its publicly available file guides, which contain, among other things, descriptions of data maintained on user accounts and devices.[1] In addition, Apple refers Plaintiff to the May 14–15 deposition of Tim O'Neil, during which Mr. O'Neil testified at length about data systems containing user account and device information, as well as unique account identifiers that exist in some of those datasets with different hashing to protect user privacy and prevent the datasets from being joined together without authorization. *See*, *e.g*., T. O'Neil Dep. Tr. at 41:1–6 (testifying that "there is a system that would convert . . . the anonymized versions [of unique account identifiers], to a non-anonymized [unique account identifier], but it would have to go through a specific system in order to do the conversion"); *id*. at 141:19–23 (explaining that the systems that control de-anonymization of unique account identifiers are "designed for consumer privacy specifically"); *id*. at 250:4–8 (testifying that "various . . . Apple systems use [a] hashed anonymized ID"). Apple's response to iPhone RFP 105 in its June 8, 2026 letter addresses this same issue and applies equally here.

We note that in a June 12 letter regarding Apple's discovery requests to Watch Plaintiff, Watch Plaintiff declined Apple's proposal to defer the App Store purchase records portion of Apple's Requests 127 and 129 if Watch Plaintiff would provide his Apple ID and other identifying information. Please advise whether Watch Plaintiff continues to press his Request 120, and if so, whether he will provide his Apple ID and identifying information so that Apple can respond to that Request.

**Watch 121**: All Documents relating to app developers' requests for interoperability with hardware and software features built into iOS, iPadOS, iPhone, and/or iPad. This includes, but is not limited to, Documents related to requests under Article 6(7) of the EU Digital Markets Act (DMA), Apple's evaluations of such requests, Apple's responses to such requests, developers' appeals, reviews of developers' appeals, and conciliation.

*Plaintiff's Letter Statement*

*In response to your vagueness objections, we explained that "requests for interoperability," "appeals," "reviews of developers' appeals," and "conciliation" refer to the process required by*

[1] *See, e.g*., https://www.apple.com/legal/privacy/en-ww/; https://www.apple.com/legal/privacy/data/en/apple-id/; https://www.apple.com/privacy/; http://privacy.apple.com/file-guides.

*European Commission's Decision of 19 March 2025 – Final Measures in DMA.100204.*[2] *We noted that there is an Apple webpage addressing this issue and that we mean the "requests for interoperability" is meant to refer to the same "requests for interoperability" described on that Apple webpage (we note here too that we intend the same meaning as what the DMA.100204 decision calls "interoperability requests" and "requests for interoperability"). We noted that Apple portal is for requesting interoperability with iOS as required in the European Union under the DMA.100204 decision, but that RFP 121 includes similar requests that Apple accepts through any means, not just that website portal.*

*You stated that your position is that the information called for by this request is irrelevant. You said that Apple objects to interoperability requests sent through an EU portal related to apps and app activity in the EU. We explained that interoperability requests by developers—whether in the EU or the U.S.—provide evidence of the technology and functionality that app developers could or would like to provide in the absence of Apple's restrictions. Apple's responses and any changes that it made in response to those interoperability requests are relevant to show whether Apple can implement less-restrictive means to pursue its objectives. And, as we have noted before, Watch Plaintiffs allege in the alternative a worldwide market. Dkt. 86 ¶¶222, 255, 262.*

*We note here that we understand Apple's Feedback Assistant platform to be one way in which U.S.-based developers can submit interoperability requests. This Apple website also appears to accept interoperability requests not limited to the EU (it is unclear to us whether it routes through Feedback Assistant, or is separate). Apple may also collect U.S.-oriented interoperability requests submitted through Apple Support or other webpages or portals and all of those would be responsive to Watch Plaintiffs' requests. It is Apple's obligation to identify where in its files responsive Documents are located.*

*In light of Apple's objection that this request seeks Documents subject to foreign-law confidentiality restrictions, we asked which foreign-law restrictions are implicated. You said that you would get back to us, but that it would be burdensome to undertake the analysis. We ask here that, if Apple intends to stand on that objection, that it identify the foreign-law confidentiality restrictions that are the basis for its objection and provide some explanation for why Apple believes those restrictions would limit or prevent the production of non-privilege responsive Documents.*

*We understand based on our discussion that Apple's view is that the Documents requested by RFP 121 are categorically irrelevant. We disagree, and believe that we are at impasse. Please confirm that we are at impasse by May 15, 2026.*

<u>Apple's Response</u>

During our call, counsel for Watch Plaintiff repeatedly referred to, and appeared to be consulting, a specific portal/process created for app developers to submit requests for interoperability in the European Union. We surmise that to be "Requesting interoperability with iOS and iPadOS in the European Union," https://developer.apple.com/support/ios-interoperability/#requests. Please confirm if that understanding is correct.

Apple understands Watch Plaintiff to contend that the terms "requests for interoperability," "appeals," "reviews of developers' appeals," and "conciliation" refer to the DMA-related process described

[2] *Watch Plaintiff's Footnote*: European Commission, DMA.100204, Decision of 19 March 2025 – Final Measures, https://ec.europa.eu/competition/digital_markets_act/cases/202523/DMA_100203_1655.pdf.

in the European Commission's Final Measures and on Apple's related developer support materials. But Watch Plaintiff also asserts that RFP 121 reaches "similar requests" that Apple purportedly accepts "through any means," not just through that EU portal. To the extent Watch Plaintiff contends there are non-EU channels or processes that fall within RFP 121—whether through Feedback Assistant, Apple Support, or other webpages/portals—Watch Plaintiff should identify with reasonable specificity those channels of which it is aware, and what categories of requests they believe are submitted through those channels.

To the extent RFP 121 targets the EU DMA portal and related EU submissions, documents related to that European Union process (and EU-only app activity) are not relevant to Watch Plaintiff's U.S. law claims premised on alleged conduct in the United States. Moreover, the Request as drafted is overbroad, unduly burdensome, and not proportional to the needs of the case because it seeks all documents relating to developers' interoperability requests concerning "iOS, iPadOS, iPhone, and/or iPad," going well beyond the scope of the Complaint.

With respect to Watch Plaintiff's request that Apple identify foreign-law confidentiality restrictions at this stage: Apple has yet to determine whether any such restrictions would apply to any particular category of materials because the practical question depends on what, specifically, Watch Plaintiff contends is within scope and what production is contemplated. Apple will evaluate any such issues as necessary and will raise any concrete restrictions in a targeted, useful way rather than engaging in a hypothetical, abstract analysis untethered to a defined set of documents.

Subject to and without waiving its objections, Apple is willing to conduct a custodial search of non-privileged documents regarding app developer requests for interoperability that relate to Apple Watch or Third-Party Smartwatches for applications distributed via the U.S. App Store, and excluding interoperability requests submitted through the EU DMA interoperability portal or otherwise directed to compliance with EU requirements, to the extent those documents exist and can be located through a reasonable search.

**Watch 122:** All Documents related to interoperability requests, questions, and feedback submitted through Apple's Feedback Assistant.

*Plaintiff's Letter Statement*

*We confirm here that we are not requesting all Documents submitted through Apple's Feedback Assistant, only those "related to interoperability requests, questions, and feedback." You said that you think this request is overbroad and you would make a proposal in writing.*

*We asked you to send that proposal within a week. You declined to commit to a specific date. Please provide Apple's position by May 15, 2026.*

Apple's Response

During our call, counsel for Watch Plaintiff appeared to be referring to the web-based Feedback Assistant portal. We surmise that portal to be https://feedbackassistant.apple.com/. Please correct us if that understanding is incorrect.

Watch Plaintiff purports to clarify he is not seeking all documents submitted through Feedback Assistant, but only those "related to interoperability requests, questions, and feedback." That is no narrowing at all—anything submitted through the Feedback Assistant portal could qualify as "feedback,"

much of which could have nothing to do with this case. This Request as drafted facially seeks material that has no relationship to Watch Plaintiff's allegations.

Nonetheless, in the interest of compromise and advancing discovery, Apple will agree to conduct a targeted collection of non-privileged documents sufficient to show Feedback Assistant submissions in the United States that (i) relate to interoperability issues involving third-party smartwatches and/or Apple Watch interoperability with iPhone/iOS, and (ii) relate to the Alleged Conduct, during the relevant time period, to the extent such documents exist and can be located by a reasonable search.

**Watch 123:** All Documents related to Apple's move from Apple Wireless Direct Link (AWDL) to Wi-Fi Aware. This includes, but is not limited to, Documents related to any impacts the move would or did have on privacy, security, interoperability, or competition.

*Plaintiff's Letter Statement*

*In response to your questions about relevance, we explained that Apple previously used AWDL and is now moving to Wi-Fi Aware, driven by the DMA, and we understand that Wi-Fi Aware permits easy connections between iOS and non-Apple devices. This is an example of how interoperability issues can be overcome. Whether that change led to changes in competition, or in users' privacy or security, goes directly to Watch Plaintiffs' claims and Apple's anticipated defenses. You asked what the word "impacts" means. We explained that we intended the plain and ordinary meaning: "effects."*

*Please provide Apple's position by May 15, 2026. Please include in your response whether Apple takes the position that these Documents are categorically irrelevant.*

Apple's Response

Apple maintains its objections to RFP 123. As drafted, this Request seeks a broad range of materials related in any way to the adoption of Wi-Fi Aware, necessarily encompassing materials with no relevance to this action. Even the "impacts" of that move on "privacy, security, interoperability, or competition" are not relevant to this action, much less proportional to the needs of the case. The assertion that a "move" to Wi-Fi Aware may facilitate connections between iOS and non-Apple devices does not justify production of all documents concerning such a "move." Such documents, for example, would encompass potential debugging tests which have no possible link to the Complaint. Nor can Watch Plaintiff justify this Request by pointing to "anticipated defenses"; as Apple has explained, the fact that Watch Plaintiff alleges Apple's commitment to user privacy and security is pretextual does not authorize Watch Plaintiff to demand production of any document that refers to user privacy or security in any context.

Although Apple disputes that the Request as drafted is relevant or proportional, in the interest of compromise Apple is willing to conduct a custodial search of non-privileged documents sufficient to show its assessment of the effects of the AWDL-to-Wi-Fi Aware transition on interoperability, privacy, and security as between iPhone/iOS and third-party smartwatches (or Apple Watch), to the extent such documents exist and can be located through a reasonable search.

**Watch 124**: All Documents relating to how Smartwatches or smartwatch apps establish Wi-Fi connections with iPhones/iOS. This includes, but is not limited to, documents concerning: high-bandwidth peer-to-peer Wi-Fi connections; the Apple Wireless Direct Link (AWDL) protocol; the Wi-Fi Alliance's Neighbor Awareness Networking (NAN) protocol; the Wi-Fi Aware protocol; the Wi-Fi Aware Framework.

<u>*Plaintiff's Letter Statement*</u>

*In response to your question about the term "smartwatch apps," we explained that we are seeking information about any app that can be on a smartwatch. That would include smartwatch-specific apps, companion apps, and sister apps for both Apple and non-Apple smartwatches. We explained that we are seeking Documents about how smartwatches or their apps establish Wi-Fi connections with iPhones, and that we included both "iPhones" and "iOS" to make clear that we want Documents related to those connections, regardless of how they are accomplished from a technical perspective. The same is true for smartwatches and smartwatch apps. To the extent that smartwatch apps themselves do not establish Wi-Fi connections with iPhones or iOS, that part of the request is moot. When you asked what we meant by "establish Wi-Fi connections," we explained that we intended the plain and ordinary meaning, i.e., connect over or using Wi-Fi.*

*We explained that we do not think RFP 124 is duplicative of RFPs 8, 8.1, or 8.4. None of those RFPs explicitly seek information specific to wireless connection protocols; they identify Bluetooth and cellular connections.*

*Please provide Apple's position by May 15, 2026.*

<u>Apple's Response</u>

Apple maintains its objections to RFP 124. The assertion that "smartwatch apps" means "any app that can be on a smartwatch" underscores why this Request as drafted is unmanageably overbroad: "any app that can be on a smartwatch" includes a large volume of apps that are unrelated to the allegations in Watch Plaintiff's Amended Complaint.

Apple also maintains its position that RFP 124 overlaps substantially with Watch Plaintiff's First Set of Requests: RFP 8 seeks documents concerning differences in functionality and ease of use between Apple Watch and non-Apple smartwatches, including the "connection to the Smartphone" and access to APIs; Watch RFP 8.1 seeks documents relating to interoperability of third-party smartwatches with iOS/iPhone, including Bluetooth pairing and related connectivity topics; and Watch RFP 8.4 seeks documents relating to Phone Number Sharing Restrictions. To the extent Watch Plaintiff contends Wi-Fi is part of smartwatch interoperability/connectivity with iPhone/iOS, those Requests already cover the core subject matter and Apple has agreed to produce documents sufficient to show those interoperability and connectivity issues.

RFP 124 also seeks documents concerning a list of WiFi protocols. To the extent documents concerning those protocols address connectivity between Smartwatches and iPhone, they are also already addressed by Apple's existing commitments to produce in response to other Requests. However, in the interest of avoiding unnecessary disputes, subject to and without waiving its objections, Apple will conduct a custodial search to identify and produce documents showing substantive comparisons of the listed items related to connectivity between Smartwatches and iPhone or iOS. Apple will not produce every document that refers to any of those items, which would impose an undue burden disproportionate to the needs of the case with no relevance to Watch Plaintiff's allegations.

<u>**Watch 125:**</u> All Documents and Communications concerning, referring, responding, or relating to any efforts, proposals, initiatives, discussions, inquiries, advocacy, or expressions of interest by the GSMA to encourage, request, recommend, propose, or facilitate Apple's adoption, implementation, support, or enhancement of any messaging protocol, standard, or technical specification designed to enable or improve interoperability, feature parity, encryption (including end-to-end encryption), privacy, security, media

quality, group messaging functionality, typing indicators, read receipts, or other messaging capabilities between: (a) devices running iOS and devices running Android; or (b) Apple's iMessage service and messaging services utilizing Rich Communication Services (RCS) or any successor protocol.

*Plaintiff's Letter Statement*

*The parties discussed two vagueness objections. First, you asked what "expressions of interest" means. We explained the plain and ordinary meaning applies, and that the term largely overlaps with the plain and ordinary meaning of "inquiry." Second, you objected to "designed to enable or improve interoperability," and we explained that "designed" could be replaced with "intended" or "with the purpose of enabling."*

*You then objected as to relevance, arguing that not everything related to messaging is related to allegations in the amended complaint. We asked whether Apple's position is that there might be Documents and Communications responsive to RFP 125 that are not discoverable because they are not related to Watch Plaintiffs' amended complaint. We understand that Apple's position is that there are various aspects of group messaging functionality that are not relevant to Watch Plaintiffs' claims and suggested narrowing the request to focus only on aspects related to third-party smartwatches. We agreed to provide a response.*

*We confirm here that we are* ***not*** *willing to limit this RFP to only smartwatch-related Documents. This RFP is already more limited than "everything related to messaging"; it calls for Documents relating to attempts by the GSMA to encourage Apple's adoption, implementation, or support of any messaging protocol or platform.*

*You further noted that Apple proposed search terms for the first set of RFPs (specifically Watch RFPs 42 and 76, and Phone RFP 100) that might address RFP 125. We asked whether Apple would be amenable to expanding those search terms if RFP 125 were subsumed into the prior RFPs. You agreed to consider our proposal. We also ask here that Apple confirm that the current custodian list includes those custodians that would have the Documents responsive to this RFP.*

*Please provide Apple's position, including any proposed search terms and a response about whether the current custodians are the correct ones for this request, by May 15, 2026.*

Apple's Response

Apple maintains its objections to RFP 125, which as drafted seeks a wide range of materials that have no relationship to the allegations of Watch Plaintiff's Amended Complaint.

That said, relevant, non-privileged GSMA-related documents responsive to RFP 125 are covered by Apple's existing agreements to produce in response to Watch RFPs 42, 74, and 76 and iPhone RFP 100, and by the search terms Apple has already proposed. Apple does not believe additional search terms are necessary. Apple's May 12, 2026 search term and custodian counterproposal includes custodians who cover relevant, non-privileged documents responsive to this Request.

**Watch 126**: All Documents and Communications concerning, referring, responding, or relating to any efforts, proposals, initiatives, discussions, inquiries, advocacy, or expressions of interest by the CSA to encourage, request, recommend, propose, or facilitate Apple's adoption, implementation, support, or enhancement of any protocol, standard, or technical specification designed to enable or improve interoperability, feature parity, encryption (including end-to-end encryption), privacy, security, media quality, messaging functionality, or other capabilities between: (a) devices running iOS and devices running

on an operating system other than iOS; or (b) Apple's iMessage service and messaging services utilizing Rich Communication Services (RCS) or any successor protocol.

*Plaintiff's Letter Statement*

*You proposed consolidating RFPs 125 and 126. We are not opposed to doing so but asked whether the current custodians are the correct ones to identify any responsive documents. You agreed to consider whether there are any existing search term proposals Apple can use or modify to address RFP 126. We agreed to consider such search terms if Apple proposes them.*

*Please provide Apple's position, including any proposed search terms and a response about whether the current custodians are the correct ones for this request, by May 15, 2026.*

Apple's Response

Apple maintains its objections to RFP 126, which, like RFP 125, seeks production of a large set of materials that are unrelated to Watch Plaintiff's allegations.

As with RFP 125, Apple believes that any relevant, non-privileged CSA-related documents are already captured by Apple's agreements to produce in response to other Requests—including Watch RFPs 41, 42, and 101 and iPhone RFP 82. Apple further believes that Apple's existing custodians and the search terms Apple has already proposed provide appropriate coverage for these CSA-related documents.

**Watch 127**: All slides Apple referenced or relied on for the "Technology Tutorial" it provided on Nov. 6, 2024 in United States of America, et al. v. Apple Inc., Case No. 2:24-cv-04055 (D.N.J. Nov. 6, 2024).

*Plaintiff's Letter Statement*

*Apple previously agreed to produce a copy of the slides that it presented to the Court in the Government Action on November 6, 2024.*

Apple's Response

Apple agrees to produce the Technology Tutorial slides presented on November 6, 2024 in the Government Action.

**Watch 128:** All Documents related to app review, rejection, rejection challenges or appeals, and how rejections are communicated to developers.

*Plaintiff's Letter Statement*

*We explained that this request includes Documents like developer app reviews, rejection challenges, appeals, as well as Documents related to how Apple communicates rejections. Prior requests were centered on app review challenges and rejections only. We proposed limiting RFP 128 to those apps that we previously identified as to RFP 72 in our March 20, 2026 letter. You agreed to consider that proposal.*

*Please provide Apple's position by May 15, 2026.*

Apple's Response

Based on Plaintiff's further clarification regarding the scope of this Request, Apple confirms that it agrees Watch RFP 128 is subsumed under Watch RFP 72 and any documents Apple agrees to produce in response to Watch RFP 72 will include non-privileged documents related to app review, rejections,

rejection challenges or appeals, and how rejections are communicated to developers. Specifically, consistent with Apple's position on RFP 72 as outlined in its May 6 letter, Apple is willing to produce non-privileged documents responsive to this Request with respect to "Smartwatch companion apps"; "top 10 free and top 10 paid smartwatch apps"; and "The Tesla app" subject to further discussion regarding the parameters of these categories. The parties can address any further issues related to the scope of RFPs 72 and 128 together.

**Watch 129**: All Documents related to differences in iOS-connected Smartwatch functionality in the European Union versus in the United States. Such Documents include without limit those related to Apple's decisions regarding whether to make functions available in only one, both, or neither of those places.

*Plaintiff's Letter Statement*

*Regarding Apple's vagueness objection, you asked what Watch Plaintiffs imagine would be a decision that would have been made about making a feature available in multiple geographies versus a decision to make a feature available in one geography. Using the example of the sideloading function, we explained that this was a function that was not available in the EU prior to the EC's decision. At the same time, Apple has not activated the function in the U.S. In this example, we would be seeking documents relating to the differences in the availability of sideloading in the EU and the U.S.*

*You also asserted that RFP 129 is duplicative of other RFPs. We explained that, depending on the geographic scope of RFPs 8.1, 8.2, or 51.4, RFP 129 is not obviously subsumed under the former requests, and that RFP 25 is narrower than RFP 129 because it is limited only to the Alleged Conduct. We further explained that because Apple agreed as to RFP 10.1 to produce documents "sufficient to show competition among Apple and non-Apple Smartwatches in the United States," we do not think RFP 129 is duplicative of that RFP either.*

*You suggested that any production in response to RFP 129 could be a go-get, rather than a custodial search. We agreed to consider your proposal, but asked that Apple provide with its proposal an explanation of why it believes a go-get would be appropriate for this request.*

*We also explained that a document need not include the words "United States" to be responsive to this request: this request calls for all documents relating to "differences in iOS-connected Smartwatch functionality in the European Union versus in the United States," whether it explicitly refers to the European Union or the United States or explicitly references a difference. You stated that you disagree and believe that it must be clear from context that the document is related to a difference between how something is treated in the EU and the U.S. for a document to be responsive. You later stated that any production by Apple would be limited to documents related to differences alleged in Watch Plaintiffs' Amended Complaint.*

*As we stated during the meet and confer, discovery is not so limited. Rule 26 permits discovery of "matter that is relevant to any party's claim or defense ..." Fed. R. Civ. P. 26(b)(1). The 2015 Committee Notes to Rule 26 (referring to the 2000 amendment) cited "other incidents of the same type, or involving the same product" as an example of additional material that satisfies that standard. Other interoperability issues that are similar in nature and involve the same products alleged in Watch Plaintiffs' amended complaint are clearly within the scope of Rule 26 discovery. They are relevant to Watch Plaintiffs' antitrust claims, which are of course rooted in Watch Plaintiffs' theory that Apple, through contractual and*

*technological restrictions, prevents third-party smartwatch makers from offering smartwatches that interoperate fully with the iPhone, and prevents third-party app developers from marketing apps that allow iPhones and third-party devices to interoperate fully.*

*Although we believe that the full scope of this request is both relevant and proportional, in the interest of moving discovery forward, Watch Plaintiffs are willing to limit this request as follows:*

> All Documents related to differences in iOS-connected Smartwatch functionality in the European Union versus in the United States, as to the iOS-connected Smartwatch functionalities provided below (each an "Identified Functionality"). Such Documents include without limitation those related to Apple's decisions regarding whether to make an Identified Functionality available in only one of those places, and those related to any decision by Apple to remove an Identified Functionality on the Apple Watch in the EU in anticipation of, or in response to the European Commission's Decision of 19 March 2025 (Final Measures) in DMA.100203 where that Decision would require Apple to treat an Identified Functionality differently in the EU.[3]
>
> For the purposes of RFP 129 only, "Identified Functionality" means:
>
> - Any functionality described in the European Commission's Decision of 19 March 2025 (Final Measures) in DMA.100203;
> - RCS/SMS/MMS messaging by third-party apps;
> - Ability for third-party apps to be set by users as the default dialer for outgoing cellular calls (including through access to related APIs);
> - Ability to connect to wearable ecosystem (e.g., through APIs that would allow apps on a third-party device to connect directly to apps on the iPhone);
> - iMessage or OTT messaging;
>     - Ability for (i) apps on smartwatches to sync with apps on an iPhone; and (ii) smartwatches to send/receive messages when away from the iPhone; sustain a seamless message thread; send/receive multimedia messages (photos/videos); send/receive group messages; and access typing icon/read receipts;
> - Ability to connect through the following Apple frameworks:
>     - "Nearby Interaction" framework
>     - "ProximityReader" framework
>     - "DeviceDiscoveryExtension" framework
> - Automatic Wi-Fi network syncing;
> - Background execution, including but not limited to Bluetooth State Restoration;
> - NFC Controller in Reader/Writer mode, including but not limited to, access to the Core NFC framework;
> - Number twinning; and/or
> - Synchronization of system settings (e.g., syncing "do not disturb" mode).

*This revised request includes any Documents related the differences in Identified Functionalities between the two jurisdictions, regardless of whether the document on its face references the U.S. or the EU explicitly.*

---

[3] *Watch Plaintiff's Footnote*: European Commission, DMA.100203, Decision of 19 March 2025 – Final Measures, https://ec.europa.eu/competition/digital_markets_act/cases/202523/DMA_100203_1655.pdf.

*Watch Plaintiffs confirm that this revised request seeks all documents related to the differences in Identified Functionalities, not all documents related to the Identified Functionalities for which there are differences.*

*This proposed limitation is in the interest of moving discovery forward, and is without prejudice to Watch Plaintiffs adding other functionalities identified in discovery.*

*Please provide Apple's response to our proposal by May 15, 2026.*

Apple's Response
Apple maintains its objections to RFP 129.

Apple continues to disagree with Watch Plaintiff's assertion that a document could be responsive to this Request without including any comparison between EU and U.S. functionality. A document that addresses EU-only functionality or EU-only implementation—without reflecting a difference compared to the United States—is not responsive to a request seeking "differences … in the European Union versus in the United States," and, in any event, is not relevant to Plaintiff's U.S. law claims based on alleged U.S. conduct.

Watch Plaintiff's "Identified Functionality" proposal continues to include a significant volume of materials that are not related to the allegations in Watch Plaintiff's Amended Complaint and disproportional to the needs of the litigation. Independent of the responsiveness limitations addressed above, to the extent any portion of the proposal seeks documents concerning functionalities Apple has enabled, modified, or removed in the European Union to comply with European Union regulatory requirements, those functionalities are outside the scope of this litigation, and Apple will not produce documents directed at them. Apple's implementation of functionalities to comply with the Digital Markets Act reflects compliance with a foreign regulatory regime and assessing such functionalities would require a jurisdiction-specific inquiry into European Union regulatory requirements that is disproportionate to the needs of a case concerning alleged conduct in the United States. The U.S. subject matter relevant to Watch Plaintiff's allegations—the interoperability of third-party smartwatches with the iPhone and iOS, iOS updates affecting that interoperability, and competition among smartwatches in the United States—is already addressed by Apple's existing agreements to produce documents in response to other Requests, including RFP Nos. 8.1, 8.2, and 51.4, and Apple's agreement, in response to RFP No. 10.1, to produce documents sufficient to show competition among Apple and non-Apple Smartwatches in the United States. Apple does not agree to produce documents in response to RFP 129 beyond what those existing agreements encompass.

**Watch 130–136**: Apple is continuing to evaluate Watch Plaintiff's proposals and stated relevance theories with respect to RFP Nos. 130, 131, 132, 133, 134, 135, and 136, and will provide its substantive position upon completion of that evaluation. Apple reserves all objections in the interim.

Sincerely,

GIBSON, DUNN & CRUTCHER LLP

# Exhibit F

## CONFIDENTIAL - FILED UNDER SEAL

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, et al.,<br>Plaintiffs,<br>vs.<br>APPLE INC.,<br>Defendant. | No. 2:24:cv-04055 (JXN)(LDW) |
| And Related Actions. | |

HIGHLY CONFIDENTIAL
VIDEOTAPED DEPOSITION OF JEFFREY WILLIAMS
Palo Alto, California
Tuesday, June 16, 2026
Volume I

Reported by:
CATHERINE A. NOLASCO, RMR, CRR, BS
CSR No. 8239
Job No. CS 8251449

PAGES 1 - 267

interacting with a touchscreen was actually okay on a very small device, so ...

Q Before the Apple Watch was released, were there other smartwatch brands publicly available?

A There were a lot of Fitbits that weren't smartwatch. I'm trying to think of -- I think there was one called the Pebble, and I don't remember much else out there at that time.

Q Were there Garmin smartwatches out there?

A Garmin certainly had watches. I don't know how smart they were.

Q What about the notifications was compelling to consumers?

MS. ALLON: Object to the form.

THE WITNESS: You know, people -- many people find different things compelling. I like the idea of being able to just glance at a notification without pulling out my phone. So I find that personally compelling, and I think many others did as well.

BY MS. ARGHAVANI:

Q In your opinion, what made the Apple Watch unique among those other smartwatch brands, when it was first released?

A What made it unique?



Well, I -- you'd have to go back in history and do the summary, but at the time, it was an incredibly compelling set of features and kind of an amazing piece of technology reduced to something very small and wearable and beautiful, and everything from the aspect of the design, of how the -- the different bands were interchangeable so that you could make a fashion kind of adjustment with an Apple Watch, and smartwatches at that time were -- whatever existed were -- were less beautiful, in my opinion, all the way through to the set of features, the -- the -- you know, everything from the accuracy of the heart rate monitor and the photoplethysmograph all the way through to other features, so ...

Q What other features?

A "What other features" meaning ...?

Q Oh, sorry.

What other features did users find unique about the Apple Watch when it was first released?

MS. ALLON: Object to the form. Foundation.

THE WITNESS: I would have to go back in terms of unique versus what was out there in the market -- go back and look from ten years ago as



what was in the market and what was unique, and I can't -- I can't recall those.

BY MS. ARGHAVANI:

Q Well, what other features did -- what other features did new Apple Watch users find compelling when the Apple Watch was first released?

MS. ALLON: Object to the form. Foundation.

THE WITNESS: I mean, there's a long list of features on the Apple Watch.

The one I hear most often, that was part of -- one example is -- is Find My Phone. People loved to be able to -- when they lose their phone, it's under a couch cushion, be able to push a button.

One is all of the running kind of capabilities of the Apple Watch, that you can go for a run, and you still have access.

I -- I personally use it with cool third-party apps. In retirement, I'm taking up this frustrating game called golf, and I use this app that tells me how far I am from the pin on my smartwatch, my Apple Watch. And it's really, really cool.

So I think there are as many different



views of what's really compelling as there -- there are people out there.

BY MS. ARGHAVANI:

Q Now, in developing the Apple Watch, did Apple base its smartwatch on the other smartwatches in the market in any way?

MS. ALLON: Object to the form.

THE WITNESS: Did we base it on the other smartwatches.

No, that's not really how we develop products.

BY MS. ARGHAVANI:

Q Can you give a general overview of how you develop products, then?

MS. ALLON: Object to the form.

THE WITNESS: There are many different ways, but we, in general, look at what could be an incredible kind of product/experience, what are the technologies that are available, how could those things come together, and what would make a fantastic product or service.

And we -- we don't offer -- I mean, this was a new category for us, and so Apple only does that every X amount of years. And we just felt like there was something compelling and different and

Page 62

MS. ALLON: Object to the form.
THE WITNESS: As I've said, I don't recognize it. I believe that it -- it looks like something that would have been presented to the Apple board of directors.
BY MS. ARGHAVANI:
Q Do you have any reason to believe that you didn't present these slides?
A No, or some portion of them. Usually there was more than one presenter, but ...
Q This slide deck is labeled "Product Roadmaps." Correct?
A It is.
Q And on the bottom left-hand corner, there's a date of December 8th, 2016, correct?
A Correct.
Q Now, let's turn to the page that is Bates-stamped ending in -5588, which is the next page. This slide deck is labeled "WATCH Roadmap," correct?
A It is.
Q And it shows the watch's features in 2017, correct?
A It does.
Q And it shows the features in 2018?

Page 63

A It shows features projected or on the roadmap for 2018.
Q And it shows projected features for 2019 plus, correct?
A Correct.
Q I'll direct your attention to 2018.
The slide states that the 2018 Watch would have "3rd party fitness and health device connectivity," correct?
MS. ALLON: Object to the form.
THE WITNESS: I do see that bullet.
BY MS. ARGHAVANI:
Q What third-party fitness and health devices does this refer to?
A There are -- people loving using their Apple Watch with the, you know, running activities and stuff like that. And there was work under way to have third-party makers of exercise equipment have connectivity, where if you're running on a Technogym treadmill, your watch could connect to the treadmill, and so you would see on the screen your heart rate and things like that. So I believe that's what this is referring to.
Q This presentation also states that the 2018 Watch [redacted]

Page 64

MS. ALLON: Object to the form.
THE WITNESS: It certainly lists that as an opportunity for 2018, or it's on the roadmap.
BY MS. ARGHAVANI:
Q The 2018 Watch didn't [redacted]
A It did not.
Q Let's turn to the page Bates-stamped ending in -5597. This slide is titled "Watch risks, Market and technology factors," correct?
A Correct.
Q And there are four risk factors listed here?
A Correct.
Q One of the risks is listed as "[redacted]."
Did I read that correctly?
A Correct.
Q And the presentation states that "[redacted]."
Is that correct?
A Correct.
Q Now, the second risk factor reads: "[redacted]." Correct?

Page 65

A It does read that.
Q And the presentation states that "[redacted]."
Did I read that correctly?
A You did.
[redacted]

Page 66

[redacted]

Page 67

[redacted]

Did I read that correctly?

A Correct.

Q [redacted]

Page 68

Did I read that correctly?

A Correct.

Q [redacted]

MS. ALLON: Object to the form.

THE WITNESS: [redacted]

Page 69

[redacted]

BY MS. ARGHAVANI:

Q [redacted]

MS. ALLON: Object to the form.

THE WITNESS: [redacted]

BY MS. ARGHAVANI:

Q [redacted]

MS. ALLON: Object to the form.

THE WITNESS: [redacted]

# Exhibit G

## CONFIDENTIAL - FILED UNDER SEAL

**In the Matter Of:**

*Civil Investigation of Apple, Inc.*

*SHAAN PRUDEN*

*May 27, 2022*

LEXITAS™

UNITED STATES DEPARTMENT OF JUSTICE
ANTITRUST DIVISION

-------------------------------------------X

In the Matter of:

Civil Investigation of APPLE, INC.
(Monopolization)

CID No. 30770

-------------------------------------------X

VIDEOTAPED DEPOSITION OF SHAAN PRUDEN

DATE: May 27, 2022

TIME: 12:05 p.m. Eastern

PLACE: ***REMOTE***

BEFORE: Rebecca Schaumloffel, RPR, CCR-NJ

JOB NO: 2022-843848

S. PRUDEN

06:23PM APLAPPDOJ2-01113240. It's a three-page document. It's an email from Shaan Pruden to Katie Simpson Lopez dated December 11, 2017, with the subject line "Re: Business Insider: Activity app Strava is about to become more like a social network."

06:25PM A. Yes.

06:25PM Q. Do you recognize Exhibit 13?

06:25PM A. I don't recall this particular conversation.

06:25PM Q. Do you have any reason to believe it's not an email that you sent?

06:25PM A. No.

06:25PM Q. Turning first to the initial email in the thread which begins at the bottom of the first page, who sent the initial email in this thread?

06:25PM A. Nikki Rothberg? That one?

06:26PM Q. Yes. Who is Nikki Rothberg?

06:26PM A. She was working on Apple Watch, and I think she was in PR. She's no longer at the company.

06:26PM Q. And who did Nikki Rothberg send

S. PRUDEN

the email to?

A. A mailing group called Apple Watch apps cross-functional.

Q. Are you part of that group?

A. I must have been at the time.

Q. What is Nikki Rothberg's email about?

A. A Business Insider article about the Strava app making changes in their strategy.

Q. And was that Business Insider article regarding Strava about Strava becoming more like a social network?

A. Um-hum. That's what the title says.

Q. Looking at the first paragraph of Nikki Rothberg's email, did she summarize her analysis of the article?

MR. SRINIVASAN: Objection; form.

A. It looks like it.

Q. And she wrote: "BI reports Strava is about to become 'much more than an app for simply recording activities' including

S. PRUDEN

allowing users to post pictures, share articles and being able to find the best ride or coffee while traveling, for example. They include comments from CEO James Quarles that 'we're starting to think about other ways in which businesses can enhance the community experience and participate to make Strava more fun and more interesting' and he also points out 'one of our greatest strengths as a company is that we're so independent and agnostic when it comes to devices.'"

That's what Nikki Rothberg wrote, right?

A. I see that.

Q. And then below that she appears to have copied the full text of the Business Insider article; is that right?

A. Um-hum.

Q. And looking to the next email up in the chain, it begins in the middle of that first page of Exhibit 13, who -- who sent the second email in the thread?

A. That looks like me.

Q. And what did you write in your

S. PRUDEN

reply to the Nikki Rothberg email?

A. That it might be a good time to talk to them about differentiating on our platform.

Q. So you write: "Might be good to use this as an excuse to have the 'Apple First, Apple Best' conversation with their product people."

A. Um-hum.

Q. Correct?

A. Um-hum. Yes, sorry.

Q. What did you mean by that when you referred to having that Apple First, Apple Best conversation?

A. That it's, you know, fine and dandy to have an app that runs everywhere and does different things, but we would prefer if they take advantage of things on our platform.

Q. Is the Apple First, Apple Best conversation one that you've had a -- with a lot of developers?

MR. SRINIVASAN: Objection; form.

S. PRUDEN

A. In this time frame, we probably were still using that as an internal moniker for asking for differentiation on our platform.

Q. What is the message that you try to convey -- or tried convey in that conversation when you had it with developers?

A. That we believe the best app they can build on our platform is taking advantage of our latest technology and that that's our customers' value as well.

Q. And then after that, in the next sentence, you wrote: "Platform agnostic does not endear them to us or our counterparts in marketing."

Did I read that right?

A. Um-hum.

Q. What did you mean by that?

A. When we tell a story to customers in our marketing, we'd like to be able to explain why it's so amazing on our platform and takes advantage of all of our latest technology.

Q. What does platform agnostic have

S. PRUDEN

to do with what you just said?

A. I don't know what James Quarles meant by "platform agnostic," but my understanding is that they will do the lowest common denominator and have exactly the same features on every platform.

Q. And when you said "does not endear them to us," who were you referring to when you said "us"?

A. I don't recall.

Q. Could you have been referring to you and your partnership management team?

A. Could be. I don't recall.

Q. Sitting here today, do you agree with your previous statement that being platform agnostic does not endear a developer to you and your team at Apple?

A. If we have limited resources and we're going to spend time with a developer to help them make their product great, we would lean more heavily into people that are willing to do things that take advantage of our latest and greatest technology.

MR. RABKIN: I'm going to ask

# Exhibit H

## CONFIDENTIAL - FILED UNDER SEAL

MoloLamken

Lauren F. Dayton
MoloLamken LLP
300 North LaSalle Street
Chicago, IL 60654
T: 312.450.6707
ldayton@mololamken.com
www.mololamken.com

May 22, 2026

**VIA EMAIL**

Connor Sullivan
Jason Lo
Gibson, Dunn & Crutcher LLP
cssullivan@gibsondunn.com
jlo@gibsondunn.com

Re: *In re Apple Inc. Smartphone Antitrust Litigation*, No. 2:24-md-03113
Watch Plaintiffs' First Set of RFPs

Connor and Jason,

We are in receipt of your letters dated April 20 and May 5 and 12, 2026. We also met and conferred with you regarding Watch Plaintiffs' First Set of RFPs on April 30, 2026. We write regarding those RFPs.

**Interoperability RFPs**

We have reached impasse on the issue of whether documents reflecting situations where Apple allows both its devices and non-Apple devices to interoperate (as opposed to those where Apple prevents non-Apple devices from interoperating with Apple devices to the same extent) are responsive to requests for documents about "interoperability." This affects RFPs 8, 8.1, 8.2, 8.3, 17.1, 47, 51.4(b), and 70. We intend to move to compel.

**Scope-of-complaint RFPs**

We have reached impasse on the issue of whether conduct that is similar to or in the same nature as the conduct alleged in Watch Plaintiffs' complaint, and which affects the same and similarly situated devices, is relevant to Watch Plaintiffs' claims. This issue affects RFPs 68, 69, 70, and 84 from Watch Plaintiffs' First Set of RFPs. We intend to move to compel.

**RFPs for which Apple has failed for months to provide a substantive response**

Apple has refused to give us a substantive response to RFPs 1.1 and 77 for months. For RFP 1.1, Apple has not provided a position since it asked for time to consider Watch Plaintiffs' request during a December 23, 2025 meet and confer, despite Watch Plaintiffs' repeated requests, in letters and during meet and confers, that Apple provide a position. In an email sent on April 23, 2026, Apple said that could "address that issue [of RFP 1.1] further during the parties' next meet

and confer," but when asked during that meet and confer a week later (on April 30), had no update to offer.

For RFP 77, the parties discussed this RFP during a meet and confer on January 27, 2026. Watch Plaintiffs then proposed a narrowed version of the request on February 6, nearly three months ago. Apple acknowledged on March 11 that it owed Watch Plaintiffs a response. Watch Plaintiffs asked for a response again on April 10, but Apple has not provided one. Watch Plaintiffs have more than satisfied their obligation to meet and confer under New Jersey Local Civil Rule 37.1(a)(1). We intend to move to compel on these RFPs.

**"Sister App" in "Identified Products and Services"**

In response to your April 14, 2026 letter, which stated that Apple would not include "Smartwatch Sister Apps" in the definition of "Identified Products and Services," and proposed that any further discussions take place in the context of specific requests, the parties met and conferred on this request on April 30, 2026. During that meet and confer, we asked you whether Apple categorizes apps by whether they interact with a smartwatch. You asked us to define what we mean by "interact with" and to "identify the functionality of the apps" that we want Apple to look into.

"Sister apps" are, in contrast to "companion apps," not required for pairing a smartwatch with a smartphone, but are apps that otherwise can be used on a smartwatch or on a smartphone in conjunction with a smartwatch. Specifically, a sister app is an app that can be installed on a smartwatch or that can interact with a smartwatch. For example, the Strava iPhone app is a sister app to the Garmin smartwatch because, even though there is no Strava app that can be installed directly on a Garmin smartwatch, when a Garmin user logs an activity on a Garmin smartwatch, the activity can be synced to the iPhone Strava app. The iPhone AllTrails app is another example of a sister app. While there is no AllTrails app for Garmin smartwatches, data logged on a Garmin smartwatch can be synced to the AllTrails iPhone app, and trails from the AllTrails app can be transmitted to Garmin smartwatches. These examples are intended to be illustrative, not limiting. To be clear, however, an iPhone app is not a sister app merely because the iPhone app pushes notifications to the iPhone and the iPhone forwards those notifications to iOS-connected smartwatches.

We understand from the public-facing App Store that Apple categorizes apps by whether they can be downloaded onto an Apple Watch. Does Apple categorize apps by whether they connect to or interact with a smartwatch based on the examples that we provided above?

Subject to further revision in light of Apple's response to the above, and in an effort to reduce the burden on the Court of resolving numerous disputes, Watch Plaintiffs propose the following compromise: Watch Plaintiffs will agree to limit the definition of "Identified Products and Services" as follows: (1) "Identified Products and Services" includes the term "sister apps" only for the following RFPs: 13, 14, 17.1, 18.1, 30, 38, 43, 55 and 58; (2) the term "sister apps," whether as part of the definition of "Identified Products and Services" for the RFPs identified here,

or as used in the defined term “Third-Party Smartwatch Apps” or as a standalone term in an RFP, refers to any app that can be downloaded on or connect to a smartwatch; and (3) for those RFPs that include the term “sister app,” the search terms need not explicitly include all of the apps that fall within the definition of a “sister app,” so long as Apple agrees that, during its responsiveness review, it will not exclude a document that is otherwise responsive to this request on the basis that it relates to a sister app instead of some other Identified Product or Service.[1]

**Watch RFP 1.3**

As Watch Plaintiffs have explained to Apple several times, RFP 1.3 seeks information relevant to their claims because the investigations that Watch Plaintiffs have identified involved regulators investigating, and in some cases concluding, that the same conduct Watch Plaintiffs allege in their complaint amounts to anticompetitive conduct. That conduct by Apple—a global company with operations in 175 countries and regions, and sales across the world—and the information that Apple provided in response to the regulators' inquiries is relevant both to Plaintiffs' claims and to Apple's anticipated defenses, that security, privacy, and technical limitations require the restrictions it imposes on third-party smartwatches.

As Watch Plaintiffs have reminded Apple repeatedly, Watch Plaintiffs allege an alternative, worldwide relevant market, Dkt. 86 ¶¶ 222, 255 (“In the alternative, the markets for iOS-connected smartwatches, smartwatches overall, iOS smartphones, and smartphones overall are worldwide.”). Apple did not challenge that aspect of market definition in its motion to dismiss. Dkt. 123-1 at 40-43. And contrary to Apple's suggestion, its agreement to produce ***some*** materials relevant to some European Commission investigations is not a substitute for the other investigations that Watch Plaintiffs have identified. To the extent that Apple produced exactly the same documents in multiple investigations, that will only reduce the overall number of documents that Apple must re-produce.

Watch Plaintiffs believe they are entitled to the full scope of this request, but in the interest of moving discovery forward, they will accept the following in satisfaction of RFP 1.3: (1) formal submissions[2] from the foreign competition investigations listed in the chart that Watch Plaintiffs provided most recently in their March 10, 2026 letter; and (2) all documents that Apple provided to the European Commission in conjunction with the investigations for which Apple has already agreed to produce formal submissions, including any communications between Apple and the European Commission, and including those over which Watch Plaintiffs understand the parties have an ongoing dispute as to whether Apple can now assert privilege. Watch Plaintiffs are willing

[1] Watch Plaintiffs note that we intend the definition of “sister apps” that we offer in this letter to supersede any definition that we have previously provided.

[2] We intend “formal submissions” to have the same meaning that Apple agreed to with the Government Plaintiffs as to Government RFP 3.

to consider a targeted collection for these documents, rather than a custodial search, at least as to the formal submissions and responses, and the documents produced to the European Commission.

Watch Plaintiffs are always willing to meet and confer. But if Apple's position remains that these documents are categorically irrelevant, Watch Plaintiffs believe the parties have reached impasse.

**Watch RFP 5, 5.1**

During our meet and confer on April 30, 2026, you stated that Apple would allow certain MDL counsel to review (via screenshare) the board of director meeting minutes, as Apple had offered to the Government Plaintiffs. We have reached out to schedule that session. Once we have done so, we will consider our dispute over the scope of this RFP (not the search terms), to be resolved.

**Watch RFPs 6, 25, and 34**

During our meet and confer on April 30, 2026, you stated that Apple would extend to Watch Plaintiffs an agreement equivalent to the one that it offered to the Government Plaintiffs in satisfaction of their corresponding RFPs, which Watch Plaintiffs understand to mean: Apple will produce non-privileged documents since January 1, 2010 responsive to RFP 25.1 <u>on a worldwide basis</u>, that could be identified through a reasonable search of documents in the possession of Apple's otherwise agreed custodians. For RFP 34, Apple agreed to produce documents that are responsive to (a) through (e), and agreed that the search terms for RFP 25 will cover the issues in RFP 34.

Watch Plaintiffs accept that proposal, with the following caveats: Watch Plaintiffs note that while the conduct in their complaint overlaps with some of the allegations in the Government Plaintiffs' complaint, there are significant differences and Watch Plaintiffs do not agree that the search terms Apple proposed to the Government Plaintiffs are sufficient for RFP 25.1. Watch Plaintiffs further note that it is Apple's obligation to identify the custodians who are likely to possess responsive documents, and Watch Plaintiffs do not agree to categorically limit custodians to the United States if non-U.S. custodians possess responsive documents.

**Watch RFP 10**

On February 20, 2026, Watch Plaintiffs agreed to the same substantive scope as the Government Plaintiffs did in their corresponding RFP. Since then, Apple has provided more information about its review process, and confirmed that it is conducting an additional responsiveness review (in addition to reviewing for privilege) after running search terms. Please confirm that, during that responsiveness review, Apple is not imposing any geographic limitations.

**Watch RFP 35**

In a letter dated April 14, 2026, Apple offered "to conduct a targeted collection for the same categories of documents described above as they relate to iPad for this Request if Watch Plaintiff agrees that doing so would resolve any outstanding disputes related to this Request." Watch Plaintiffs confirm here that they accept that offer, and that they view RFP 35 as resolved.

**Watch RFP 51**

In reviewing our past correspondence, Watch Plaintiffs realized that the parties had not reached a final resolution as to RFP 51. We confirm here that Watch Plaintiffs agree to the same substantive scope of RFP 51 as the Government Plaintiffs previously agreed to. Watch Plaintiffs note that there are still open disputes or questions as to Watch RFPs 51.1, 51.2, 51.3, and 51.4.

**Watch RFP 51.1 and RFP 51.2**

In a letter dated May 12, 2026, Apple proposed to produce in response to these RFPs the enumerated agreements and any agreements that refer to smartwatches or third-party smartwatches or smartwatch makers, but not agreements that cover the "functionalities and apps" enumerated in RFP 72.

While Watch Plaintiffs appreciate Apple making a proposal, that proposal does not address the heart of what these requests seek: "All Agreements, policies, and guidelines, in effect during the Period, relating to ***Third-Party Smartwatch Apps*** . . ." and "All Agreements, policies, and guidelines relating to iOS updates and WatchOS updates that concern the functionality of the Apple Watch, ***Third-Party Smartwatch Apps***, or Third-Party Smartwatches." Apple proposes to produce agreements that refer to smartwatches or third-party smartwatches or smartwatch makers, but not ***smartwatch apps*** (except enumerated policies).

Apple's May 12 response does not respond to Watch Plaintiffs' request in their April 10, 2026 letter, which was that if their approach is objectionable to Apple, please quantify the burden and provide an alternative solution for identifying and producing responsive agreements, policies, and guidelines that apply to the enumerated items, including ***Third-Party Smartwatch Apps***, and that would comport with Apple's internal record-keeping systems. Please provide this answer in your response. We are available to meet and confer.

**Watch RFP 72**

Thank you for providing a counterproposal. We would like to find a way to address the core of what Watch Plaintiffs are seeking while addressing Apple's burden concerns. Therefore, without prejudice to our prior proposals, we propose that Apple produce the following in satisfaction of RFP 72: (1) all App review documents for Smartwatch companion apps and the Tesla app; (2) all App Review documents for apps identified through search terms designed to identify those apps for which the review involved one or more of the following issues identified in the amended complaint: (i) use of SMS, RCS, OTT, or any other messaging protocol, *see, e.g.*,

Dkt. 86 ¶¶ 64-80; (ii) use of or access to NFC technology or hardware, *see, e.g.*, Dkt. 86 ¶¶ 108-13; (iii) use of or access to APIs, entitlements, frameworks, or other software interfaces that allow the app to complete background execution tasks, *see, e.g.*, Dkt. 86 ¶¶ 132-48; (iv) transmission and syncing of health or fitness information, *see, e.g.*, Dkt. 86 ¶¶ 143-44, ¶¶ 153-55; or (v) reference to Third-Party Smartwatches, *see, e.g.*, Dkt. 86 ¶¶ 119-27. We are available to meet and confer.

**Watch RFP 83**

In reviewing our past correspondence, Watch Plaintiffs realized that the parties had not reached a final resolution as to RFP 83. We believe that Apple's proposal in its original responses and objections was that it was willing to meet and confer regarding this RFP. Given that Apple has already agreed to produce all App Review materials related to third-party smartwatch companion apps (in response to RFP 72), Watch Plaintiffs hope that Apple will agree to produce all App Store metadata for those apps. Watch Plaintiffs are willing to consider a targeted collection for this request, if Apple confirms such a collection will identify the responsive documents.

* * *

Watch Plaintiffs further note that they are, for now, willing to defer further discussion of RFPs 4, 9.1, 10.1-10.5, 66, 81, and 82. For RFPs 9.1 and 10.1-10.5, this is because of Apple's representations that those child RFPs are subsumed within the parent RFPs. Watch Plaintiffs note that any search terms for RFPs 9 and 10 must be reasonably calculated to identify the information requested in RFPs 9.1 and 10.1-10.5.

Watch Plaintiffs would like to resolve the disputes on these RFPs as soon as possible. Please provide Apple's position on our proposals in this letter no later than Friday, May 29.

Best regards,

/s/ Lauren F. Dayton
Lauren F. Dayton

# Exhibit I

## CONFIDENTIAL - FILED UNDER SEAL

GIBSON DUNN

Brian Anderson
Associate Attorney
M: +1 949.451.3901
BAnderson@gibsondunn.com

June 29, 2026

VIA EMAIL

Lauren Dayton
MoloLamken LLP
LDayton@MoloLamken.com

Re: *In re Apple Inc. Smartphone Antitrust Litigation*, No. 2:24-md-03113

Dear Counsel,

We are in receipt of your May 22, 2026 letter addressing Apple's April 20 and May 5 and 12, 2026 letters regarding the April 2026 meet and confers on Watch Plaintiff's First Set of Requests for Production. We have responded to the issues in your letter below. We also write to memorialize the parties' April 30, 2026 meet and confer regarding outstanding issues with respect to Watch Plaintiff's First Set of Requests for Production. Nothing in this letter waives Apple's objections, all of which are expressly preserved.

**Interoperability RFPs (Watch RFPs 8, 8.1, 8.2, 8.3, 17.1, 47, 51.4(b), and 70)**

**RFP 8.1:** All Documents relating to the interoperability of Third-Party Smartwatches with iOS or the iPhone, and to the operations and approval or disapproval of Third-Party Smartwatch Apps, including, but not limited to: (a) the Apple Notification Center Service; (b) Background Execution by Third-Party Smartwatches and Third-Party Smartwatch Apps; (c) Third-Party Smartwatches' and Third-Party Smartwatch Apps' access to and use of APIs relating to messaging, notifications, phone calls, and Digital Wallets; (d) Third-Party Smartwatches' use of Bluetooth and Bluetooth pairing; (e) the effect of low-power mode on Third-Party Smartwatches and Third-Party Smartwatch Apps; and (f) the effect of Phone Number Sharing Restrictions on Third-Party Smartwatches and Third-Party Smartwatch Apps.

**RFP 8.2:** All Documents related to any decision on whether to limit the interoperability of Third-Party Smartwatches with the iPhone (or the Apple Watch with Third-Party Smartphones); the reasons for any such decision; and the actual or potential impact of any such decision on iPhone sales, iPhone switching, or consumer perception or demand, including any decision on whether to limit or reduce limits on the abilities of Third-Party Smartwatches with respect to notifications, Bluetooth connection, APIs, Low Power Mode, and cellular connectivity using a phone number associated with an iPhone.

**RFP 8.3:** All Documents relating to Background Execution by Apple Watch, Apple Watch Apps, Third-Party Smartwatches, and Third-Party Smartwatch Apps, including, but not limited to: limits or the absence of limits on the time duration for Background Execution, limits or the absence of limits on the data that can be processed during Background Execution, the effect of closing an App or Third-Party Smartwatch App

GIBSON DUNN



on Background Execution, and Background Execution performance by Third-Party Smartwatches and Apple Watches.

**RFP 17.1:** All Documents related to how the features, functionality, availability, and interoperability of Smartphones or any Identified Product or Service may affect users' Smartwatch purchasing decisions, including Documents related to user satisfaction, Smartphone or Smartwatch switching, consumer perceptions and attitudes, preferences, usage, purchase intentions, and all other relevant metrics, key performance indicators, and measures.

**RFP 47:** All Documents related to the ability of non-Apple devices to connect or interact with the iPhone, including, but not limited to their ability to receive incoming message notifications, reply to incoming messages, compose new messages, access messages, and mark messages as read.

**RFP 51.4(b) (as narrowed by Watch Plaintiff)**: Documents relating to Apple's decisions to release or not release software updates that Apple was aware might, would, or did affect the functioning or interoperability of Third-Party Smartwatches or Third-Party Smartwatch Apps, and its decisions regarding the timing of such releases of software updates in light of Apple's awareness.

**RFP 70:** All Documents relating to criticisms or complaints from consumers, Third-Party Smartwatch Makers, Developers of Third-Party Smartwatch Apps, reporters, or media outlets relating to the interoperability of the Apple Watch with the iPhone and the interoperability of Third-Party Smartwatches with the iPhone.

Plaintiff's Letter Statement

*We have reached impasse on the issue of whether documents reflecting situations where Apple allows both its devices and non-Apple devices to interoperate (as opposed to those where Apple prevents non-Apple devices from interoperating with Apple devices to the same extent) are responsive to requests for documents about "interoperability." This affects RFPs 8, 8.1, 8.2, 8.3, 17.1, 47, 51.4(b), and 70. We intend to move to compel.*

Apple Response

As Apple has explained across multiple letters and again at the April 30 meet and confer, Apple maintains its objections to these exceptionally broad and burdensome Requests as drafted. Watch Plaintiff alleges that Apple restricts, limits, or treats differently Third-Party Smartwatches as compared to Apple Watch. Documents concerning Third-Party Smartwatch interoperability with iPhone or iOS that do not relate to any alleged restriction, limitation, or differential treatment as compared to Apple Watch are not relevant to those allegations. Watch Plaintiff has never articulated—in his May 22 letter or otherwise—any explanation for why those materials would be relevant or proportional to the needs of the case.

**Scope-of-complaint RFPs (Watch RFPs 68, 69, 70, and 84)**

**RFP 68:** All consumer comments regarding the Apple Watch, whether stored as Documents or structured data.

**RFP 69:** All Communications from iPhone customers to Apple relating to Third-Party Smartwatches, and all Documents and Communications relating to those Communications, including, but not limited to customer complaints, compliments, questions, comments, or suggestions.

**RFP 70:** All Documents relating to criticisms or complaints from consumers, Third-Party Smartwatch Makers, Developers of Third-Party Smartwatch Apps, reporters, or media outlets relating to the interoperability of the Apple Watch with the iPhone and the interoperability of Third-Party Smartwatches with the iPhone.

**RFP 84:** All Documents related to requests by third parties to access iPhone protocols used by AirPods for third-party connected devices and any response by Apple to such requests.

Plaintiff's Letter Statement

*We have reached impasse on the issue of whether conduct that is similar to or in the same nature as the conduct alleged in Watch Plaintiffs' complaint, and which affects the same and similarly situated devices, is relevant to Watch Plaintiffs' claims. This issue affects RFPs 68, 69, 70, and 84 from Watch Plaintiffs' First Set of RFPs. We intend to move to compel.*

Apple Response

As a threshold matter, Apple does not agree that the parties' dispute over RFPs 68, 69, 70, and 84 can be resolved on a blanket basis. Each of these Requests raises different relevance questions and Watch Plaintiff's framing that these Requests all seek material related to conduct that is "similar to or in the same nature as the conduct alleged in Watch Plaintiffs' complaint" ignores much of the discussion the parties have had about these Requests in the past. As Apple has previously explained, Watch Plaintiff cannot define the scope of discovery by reference to consumer comments, customer communications, criticisms, or third-party access requests that bear no relationship to the conduct he has alleged; as drafted, these Requests are facially overbroad, unduly burdensome, and disproportional to the needs of the case.

With respect to RFPs 68–70, the parties are at impasse on Watch Plaintiff's demand for documents relating to interoperability issues that he did not allege in his Amended Complaint. Discovery into interoperability issues Watch Plaintiff did not allege is neither relevant nor proportional to the needs of the case, especially in light of the very broad discovery Apple is already providing Watch Plaintiff, and Apple maintains its objections to these Requests on that basis.

However, in the interest of compromise and avoiding unnecessary disputes, Apple is willing to agree to a narrower version of these Requests consistent with the proposal in Watch Plaintiff's March 20, 2026 letter: Apple will agree to produce documents relating to (1) consumer comments concerning the privacy and security of Apple Watch or Third-Party Smartwatches, (2) consumer comments concerning the

GIBSON DUNN



price of Apple Watch or Third-Party Smartwatches, and (3) consumer comments that compare Apple Watch and Third-Party Smartwatches.

As to RFP 69, as Apple explained in its May 6, 2026 letter, Apple will conduct a targeted collection of non-privileged documents sufficient to show customer communications responsive to RFP 69, but will not search for or produce internal communications regarding customer feedback, which would be overbroad, unduly burdensome, disproportional, and duplicative of RFP 70.

The parties are not at impasse on RFP 84. Apple agrees to produce relevant, non-privileged documents responsive to this Request. As to search terms, that issue remains subject to the parties' ongoing negotiations, where the parties are close to agreement. Apple will continue to address this Request through that process and disagrees with Watch Plaintiff's characterization that the parties are at an impasse.

**Definition of "Sister App" (Watch RFPs 13, 14, 17.1, 18.1, 30, 38, 43, 55, and 58)**

**RFP 13:** All Documents related to single-homing, multi-homing, or usage of a "preferred" or "primary" product or service, by users, Developers, or any other group, related to Smartphones or any Identified Product or Service.

**RFP 14:** All Documents related to Apple's plans, strategies, objectives, research, development, investments, roadmaps, marketing, and features for the iPhone, Apple's App Store, or any Identified Product or Service. For avoidance of doubt, this includes all Documents related to Apple's product development expenses, including expenses related to privacy and security, for the iPhone, Apple's App Store, and any Identified Products or Services.

**RFP 17.1:** All Documents related to how the features, functionality, availability, and interoperability of Smartphones or any Identified Product or Service may affect users' Smartwatch purchasing decisions, including Documents related to user satisfaction, Smartphone or Smartwatch switching, consumer perceptions and attitudes, preferences, usage, purchase intentions, and all other relevant metrics, key performance indicators, and measures.

**RFP 18.1:** All Documents related to any factors affecting consumer demand for a Smartwatch, such as the Smartwatch's price, features, or quality (including quantity, price, and quality of available Apps, hardware accessories, or other complementary products and services); usage of any Smartphone or Identified Product or Service; and all Documents related to metrics, key performance indicators, and measures related to consumer demand for a Smartwatch.

**RFP 30:** All reports or analyses related to Smartphones or any Identified Product or Service authored by third parties including IDC, Strategy Analytics, Counterpoint, Gartner, IHS Markit, Canalys, Kantar Group, Comlink (Opensignal), App Annie (data.ai), any U.S. wireless carrier, Meta, or Google.

**RFP 38:** All Documents related to consumer views about the privacy, security, user experience, or quality of Smartphones, including how consumers' views: a. are affected by Smartphone manufacturers' product decisions and marketing strategies and campaigns; b. are affected by the product decisions and marketing strategies and campaigns related to any Identified Product or Service; c. compare to actual differences in

GIBSON DUNN



Smartphone privacy, security, and quality; and d. affect Smartphone demand, purchase intentions, switching, and consumer satisfaction.

**RFP 43:** All Documents after January 1, 2012 related to the consideration, adoption, or development of cross-platform standards relating to an Identified Product or Service. This includes all Documents relating to the consideration, adoption, or development of SMS, MMS, RCS, or messaging alternatives, including Documents related to whether or how to adopt RCS on the iPhone, whether or how third parties adopt RCS, and the use or potential use of SMS, MMS, or RCS by non-Apple Messaging Systems on the iPhone or non-Apple Smartphones. This also includes all Documents related to the development or potential development of cross-platform standards, protocols, or capabilities relating to video calls.

**RFP 55:** For each Identified Product or Service, all Documents related to any potential or actual limitation or prohibition on the availability or functionality of any non-Apple product, feature, or service, including: a. Documents related to any authorizations, allowances, denials, or limitations on access to APIs, Entitlements, functionalities, features, and data sets related to any Identified Product or Service; b. Documents related to any authorizations, allowances, denials, or limitations on access to APIs, SDKs, Frameworks, Libraries, any other software artifacts related to any Identified Product or Service; and c. Documents related to mechanisms, technical or otherwise, to implement or enforce limitations or prohibitions on the availability or functionality of any product, feature, or service, including references to the Source Code that implements each such means or mechanism.

**RFP 58:** For the iPhone and each Apple or non-Apple Identified Product and Service, all Documents related to Apple's adoption or Implementation of privacy or security policies or practices for information stored, transmitted, or received by iOS, the iPhone, Apple, or third parties, including nutrition labels and privacy manifest files.

Plaintiff's Letter Statement

*In response to your April 14, 2026 letter, which stated that Apple would not include "Smartwatch Sister Apps" in the definition of "Identified Products and Services," and proposed that any further discussions take place in the context of specific requests, the parties met and conferred on this request on April 30, 2026. During that meet and confer, we asked you whether Apple categorizes apps by whether they interact with a smartwatch. You asked us to define what we mean by "interact with" and to "identify the functionality of the apps" that we want Apple to look into.*

*"Sister apps" are, in contrast to "companion apps," not required for pairing a smartwatch with a smartphone, but are apps that otherwise can be used on a smartwatch or on a smartphone in conjunction with a smartwatch. Specifically, a sister app is an app that can be installed on a smartwatch or that can interact with a smartwatch. For example, the Strava iPhone app is a sister app to the Garmin smartwatch because, even though there is no Strava app that can be installed directly on a Garmin smartwatch, when a Garmin user logs an activity on a Garmin smartwatch, the activity can be synced to the iPhone Strava app. The iPhone AllTrails app is another example of a sister app. While there is no AllTrails app for Garmin smartwatches, data logged on a Garmin smartwatch can be synced to the AllTrails iPhone app, and trails from the AllTrails app can be transmitted to Garmin smartwatches. These examples are intended to be illustrative, not limiting. To be clear, however, an iPhone app is not a sister app merely because the iPhone*

GIBSON DUNN



*app pushes notifications to the iPhone and the iPhone forwards those notifications to iOS-connected smartwatches.*

*We understand from the public-facing App Store that Apple categorizes apps by whether they can be downloaded onto an Apple Watch. Does Apple categorize apps by whether they connect to or interact with a smartwatch based on the examples that we provided above?*

*Subject to further revision in light of Apple's response to the above, and in an effort to reduce the burden on the Court of resolving numerous disputes, Watch Plaintiffs propose the following compromise: Watch Plaintiffs will agree to limit the definition of "Identified Products and Services" as follows: (1) "Identified Products and Services" includes the term "sister apps" only for the following RFPs: 13, 14, 17.1, 18.1, 30, 38, 43, 55 and 58; (2) the term "sister apps," whether as part of the definition of "Identified Products and Services" for the RFPs identified here, or as used in the defined term "Third-Party Smartwatch Apps" or as a standalone term in an RFP, refers to any app that can be downloaded on or connect to a smartwatch; and (3) for those RFPs that include the term "sister app," the search terms need not explicitly include all of the apps that fall within the definition of a "sister app," so long as Apple agrees that, during its responsiveness review, it will not exclude a document that is otherwise responsive to this request on the basis that it relates to a sister app instead of some other Identified Product or Service.*[1]

*[1] Watch Plaintiffs note that we intend the definition of "sister apps" that we offer in this letter to supersede any definition that we have previously provided.*

<u>Apple Response</u>

Your letter proposes a definition of "Sister Apps" and a compromise limiting that term to certain Requests. The proposed definition remains incomprehensible and, to the extent it can be understood at all, far too broad to be administrable. The proposed definition of "sister apps" reaches three groups of apps, each unworkable for a different reason: all WatchOS apps; all iOS apps—other than Companion Apps—that can in some way "interact" with a third-party Smartwatch or its apps; and all apps available on a third-party Smartwatch itself. The first group is vastly overbroad: Apple Watch, for example, can run apps like Yelp, Outlook, various music streaming apps, productivity apps, and games that are not identifiably "Smartwatch" apps, yet each would qualify as a "sister app" under Plaintiff's proposed definition. Similarly, Plaintiff's separate proposed category of apps that can "interact" with a Smartwatch is equally unbounded and expansive. Apple's reviewers cannot be expected to reliably know which third-party apps can interact with Third-Party Smartwatches, which in any case will depend on the design and integration decisions of third-party developers and may change over time as developers update their products and apps. Finally, the third group is not reasonably identifiable by Apple because apps available on a third-party smartwatch's own operating system are not designed for Apple's software or distributed directly through the Apple App Store. Apple therefore has minimal information or knowledge regarding such apps.

Your proposal that Apple deem documents responsive purely "on the basis that" the document in question relates to the unbounded and expansive categories that Watch Plaintiff labels Sister Apps would require Apple to produce *every* document that mentions any app in an undefined but expansive universe of apps. That would impose an undue burden disproportionate to the needs of the case and guarantee that Apple produced a large volume of materials with no relevance to Watch Plaintiff's allegations. Given these defects, Apple renews its prior request that Watch Plaintiff identify a specific list of the apps he contends

are "Sister Apps." If Plaintiff provides such a list, Apple will consider agreeing to respond to these Requests with respect to that limited set.

**Watch RFPs 1.1 and 77**

**RFP 1.1:** All Communications between Apple (including its outside counsel) and the Government Plaintiffs (including the Government Plaintiffs' counsel) related to the Action or the Investigation, including all Documents produced to Apple by the Government Plaintiffs and all Documents produced to the Government Plaintiffs by Apple in the Government Action.

**RFP 77:** All Documents related to coding bugs affecting Apps and iOS updates related to Third-Party Smartwatches, including, but not limited to, bug reports and bug tickets.

Plaintiff's Letter Statement

*Apple has refused to give us a substantive response to RFPs 1.1 and 77 for months. For RFP 1.1, Apple has not provided a position since it asked for time to consider Watch Plaintiffs' request during a December 23, 2025 meet and confer, despite Watch Plaintiffs' repeated requests, in letters and during meet and confers, that Apple provide a position. In an email sent on April 23, 2026, Apple said that it could "address that issue [of RFP 1.1] further during the parties' next meet and confer," but when asked during that meet and confer a week later (on April 30), had no update to offer.*

*For RFP 77, the parties discussed this RFP during a meet and confer on January 27, 2026. Watch Plaintiffs then proposed a narrowed version of the request on February 6, nearly three months ago. Apple acknowledged on March 11 that it owed Watch Plaintiffs a response. Watch Plaintiffs asked for a response again on April 10, but Apple has not provided one. Watch Plaintiffs have more than satisfied their obligation to meet and confer under New Jersey Local Civil Rule 37.1(a)(1). We intend to move to compel on these RFPs.*

Apple Response

With respect to RFP 1.1, Apple declines to produce additional communications with Government Plaintiffs and maintains its objections that the Request seeks information that is neither relevant to Watch Plaintiff's claims nor proportional to the needs of the case.

Apple has already produced the materials from its interactions with the Government Plaintiffs that bear on the merits of this litigation. In addition to documents produced to the Government during the Government Investigation and the transcripts of all depositions taken in connection with the Government Investigation, Apple has produced substantive communications with the Government Plaintiffs during the Government Investigation, including white papers Apple provided to the Government Plaintiffs. Apple has likewise provided Watch Plaintiff with substantive communications with the Government Plaintiffs from the Government Action—including negotiations over discovery protocols, requests for production, search terms, and custodians—from before the MDL Discovery Confidentiality Order was in place (Dkt. 124). And since the entry of the MDL Discovery Confidentiality Order, MDL Plaintiffs have been included on discovery correspondence with the Government Plaintiffs in the Government Action, which has brought Watch Plaintiff up to speed on the ongoing discovery negotiations. Against that backdrop, collecting, reviewing, and producing further materials from six years of communications with the Government Plaintiffs would be unduly burdensome and disproportionate to the needs of the case, given the low

probative value, if any, of whatever remains. Apple therefore stands on its objections with respect to RFP 1.1.

Your letter suggests that Watch Plaintiff provided a "narrowed version" of RFP 77 on February 6, 2026. In Watch Plaintiff's February 6, 2026 letter, Watch Plaintiff wrote: "We propose to limit to this request as follows: All Documents related to coding bugs: (1) associated with the incidents identified in the Watch Plaintiffs' Amended Complaint, including but not limited to ¶¶131-187; or (2) affecting Listed Products (as defined below) or Identified Apps (that list is forthcoming) . . . ." *February 6, 2026 Letter from L. Dayton re Summary of Meet and Confers on January 26, 27, and 29, 2026*. Watch Plaintiff has never provided a list of Identified Apps. Watch Plaintiff now asserts he has "more than satisfied [his] obligation to meet and confer" and "intend[s] to move to compel" regarding this request. Because you have never identified any apps as to which you request the production of documents in response to this Request, should we understand that you are no longer seeking the production of documents related to coding bugs affecting any apps?

Regardless, Watch Plaintiff's purportedly "narrowed" proposal remains unworkably overbroad and disproportionate to the needs of the case. It seeks the production of all documents related to coding bugs affecting any products from fifteen different brands: any "smartwatch or wearable device or platform made by Amazfit, Citizen, Core Devices LLC, Fitbit, Fossil, Garmin, Google, HMD America, HMD Global, MijoConnected, Motorola, Pebble, Polar, Samsung, and Withings," including multiple brands that each produce multiple product lines. It also seeks all documents related to coding bugs concerning any "incidents" identified in Watch Plaintiff's Complaint, ***including but not limited to*** the following which appear over a span of 56 paragraphs:

- iOS 13 allegedly reducing background execution time for third-party apps (¶¶ 135–136);
- iOS 14 allegedly introducing further reductions in background execution time for third-party apps (¶¶ 137–144);
- iOS 13's Low Power Mode allegedly limiting background execution for third-party smartwatch apps (¶¶ 145–148);
- iOS 13 allegedly requiring users to display notification previews on their iPhone in order to receive notifications on competitor smartwatches (¶¶ 149–152);
- Apple allegedly restricting the display of Heart Rate Variability in the Health app to HRV measurements taken using Apple Watch's method, refusing to support HRV measurements taken using methods of competitor watches (¶¶ 153–155);
- The iPhone 7 and iOS 10 allegedly introducing issues that prevented Moto 360, Fossil, and other Wear OS watches from pairing with the iPhone for several weeks (¶¶ 158–159);
- iOS 11 allegedly introducing issues that caused Garmin watches to disconnect from iPhones and experience syncing difficulties (¶ 160);
- iOS 14 allegedly introducing changes that caused Garmin watches to disconnect when out of Bluetooth range and not automatically reconnect (¶ 161);
- iOS 16 allegedly introducing changes that prevented users from receiving notifications on Garmin watches (¶ 161);
- iOS 17 allegedly introducing changes that prevented users from reconnecting Garmin watches to their iPhone (¶ 161);
- Beginning with iOS 13, Apple allegedly presenting intrusive and misleading "scare screens" to encourage iPhone users to stop sharing their location with competitor smartwatches (¶¶ 164–169);

GIBSON DUNN



- iOS 14 allegedly using prompts encouraging users to limit third-party smartwatch and other companion apps to receiving only "approximate location" data (¶ 171);
- Apple allegedly designing the iPhone Control Center Bluetooth toggle to maintain the Apple Watch's Bluetooth connection when switched off while disconnecting competitor smartwatches (¶¶ 175–182); and
- Apple allegedly requiring third-party smartwatch companion apps to remain open in the background to maintain their connection to the iPhone (¶¶ 183–187).

Watch Plaintiff's proposal is not a reasonably narrowed request.

In the spirit of compromise—in addition to producing bug-related documents concerning third-party smartwatches that may be identified in Apple's reasonable search of custodial documents—Apple will agree to conduct a reasonable, targeted search for bug reports relating to the fifteen manufacturers Plaintiff identified as makers of "Listed Products." Running these searches will necessarily be a burdensome process because, while [redacted]. Exporting bug reports and associated attachments is also burdensome and time-consuming for Apple. However, to the extent Apple is able to identify bug reports related to the makers of the "Listed Products" without undue burden, Apple will continue meeting and conferring with Watch Plaintiff to select a reasonable number of responsive entries for potential production.

It would be even more burdensome to also search for "incidents" as Plaintiff proposes, much less the long list of them that Plaintiff's proposal incorporates by reference. And because those incidents purportedly relate to the same "Listed Products" as the ones for which Apple is willing to perform a search, it would be unnecessarily duplicative to also run separate searches for the incidents themselves. Apple will not undertake that separate, burdensome search.

**Watch RFP 1.3**

**RFP 1.3:** All Communications between Apple and any government entity, official, employee, or executive branch representative (whether or not formally employed by the government) other than the Government Plaintiffs related to any actual or potential antitrust investigation regarding the iPhone, including all Communications between Apple and Brazil's Administrative Council for Economic Defense ("CADE") related to Apple's restrictions on NFC technology.

Plaintiff's Letter Statement

*As Watch Plaintiffs have explained to Apple several times, RFP 1.3 seeks information relevant to their claims because the investigations that Watch Plaintiffs have identified involved regulators investigating, and in some cases concluding, that the same conduct Watch Plaintiffs allege in their complaint amounts to anticompetitive conduct. That conduct by Apple—a global company with operations in 175 countries and regions, and sales across the world—and the information that Apple provided in response to the regulators' inquiries is relevant both to Plaintiffs' claims and to Apple's anticipated defenses, that security, privacy, and technical limitations require the restrictions it imposes on third-party smartwatches.*

*As Watch Plaintiffs have reminded Apple repeatedly, Watch Plaintiffs allege an alternative, worldwide relevant market, Dkt. 86 ¶¶ 222, 255 ("In the alternative, the markets for iOS-connected smartwatches, smartwatches overall, iOS smartphones, and smartphones overall are worldwide."). Apple*

*did not challenge that aspect of market definition in its motion to dismiss. Dkt. 123-1 at 40-43. And contrary to Apple's suggestion, its agreement to produce some materials relevant to some European Commission investigations is not a substitute for the other investigations that Watch Plaintiffs have identified. To the extent that Apple produced exactly the same documents in multiple investigations, that will only reduce the overall number of documents that Apple must re-produce.*

*Watch Plaintiffs believe they are entitled to the full scope of this request, but in the interest of moving discovery forward, they will accept the following in satisfaction of RFP 1.3: (1) formal submissions*[2] *from the foreign competition investigations listed in the chart that Watch Plaintiffs provided most recently in their March 10, 2026 letter; and (2) all documents that Apple provided to the European Commission in conjunction with the investigations for which Apple has already agreed to produce formal submissions, including any communications between Apple and the European Commission, and including those over which Watch Plaintiffs understand the parties have an ongoing dispute as to whether Apple can now assert privilege. Watch Plaintiffs are willing to consider a targeted collection for these documents, rather than a custodial search, at least as to the formal submissions and responses, and the documents produced to the European Commission.*

*Watch Plaintiffs are always willing to meet and confer. But if Apple's position remains that these documents are categorically irrelevant, Watch Plaintiffs believe the parties have reached impasse.*

[2] *We intend "formal submissions" to have the same meaning that Apple agreed to with the Government Plaintiffs as to Government RFP 3.*

<u>Apple Response</u>

Watch Plaintiff has made no serious effort to explain why collecting documents from the 17 foreign investigations he identified would be proportional to the needs of the case. Watch Plaintiff has not engaged or responded to Apple's concerns that documents from these investigations may be subject to foreign law restrictions that Apple's U.S. attorneys cannot evaluate without the assistance of foreign lawyers or that documents from these cases may be in foreign languages and require translation. It is irrelevant here that Apple is a "global company" or that Watch Plaintiff has alleged an alternative worldwide Smartwatch market. The conduct alleged in the Amended Complaint is conduct undertaken in the U.S. related to the alleged U.S. smartwatch market in alleged violation of the U.S. antitrust laws. Whether there is a worldwide Smartwatch market will not make whether certain conduct violates the antitrust law of Brazil relevant to this case, much less make documents related to Brazilian antitrust investigations proportional to the needs of the case. That is especially true given that—as Apple has repeatedly reminded Watch Plaintiff—Watch Plaintiff has sought and will receive discovery related to the topics purportedly at issue in the foreign investigations he has identified. Materials from or about foreign investigations under foreign law themselves are not relevant and producing them would not be proportional to the needs of the case.

Apple similarly cannot accept or agree to Watch Plaintiff's new request that Apple produce cloned discovery of all materials provided to the European Commission in the investigations from which Apple has agreed to produce formal submissions in this action. First, Request 1.3 does not even request documents produced in the investigations Watch Plaintiff has identified; it requests communications from those investigations. Regardless, Watch Plaintiff has provided no explanation or justification for why cloned discovery of all documents produced in the relevant investigations would be relevant, proportional, or not unduly burdensome. *See Allegheny Cnty. Emps.' Ret. Sys. v. Energy Transfer LP*, 2022 WL 17339035, at *4–5 (E.D. Pa. Nov. 30, 2022) (denying blanket requests for cloned discovery where plaintiffs failed to

GIBSON DUNN



"connect the dots" between a discrete subset of investigation materials and their claims); *Eisai Inc. v. Sanofi-Aventis U.S., LLC*, 2011 WL 5416334, at *6, 9 (D.N.J. Nov. 7, 2011) (denying requests for documents produced in prior investigations where the requests were not sufficiently tied to the claims and production would be unduly burdensome). For the reasons we have explained, documents produced to the European Commission are not relevant or proportional to the needs of this case. And Watch Plaintiff's new demand for cloned discovery would be especially burdensome because, as Apple has repeatedly explained, Apple was compelled to produce a large volume of U.S. privileged documents to the European Commission under imminent threat of substantial fines. Apple would therefore have to re-review and re-log all documents from these productions, imposing a substantial and wholly disproportionate burden on Apple. Apple therefore stands on its previous objections with regard to RFP 1.3.

**Watch RFPs 5 and 5.1**

**RFP 5:** All Documents shared with, or presented to, Apple's board of directors, or any committee or subcommittee thereof, related to Smartphones or any Identified Product or Service, including all minutes, recordings, summaries of reports or meetings, whether formal or informal, of any meetings of any Apple board of directors, or any committee or subcommittee thereof from January 1, 2007, onward.

**RFP 5.1:** All Documents shared with, or presented to, Apple's CEO, board of directors, or any committee or subcommittee thereof, related to competitor Third-Party Smartwatch Makers, including all minutes, recordings, summaries of reports or meetings, whether formal or informal, of any meetings of any Apple board of directors, or any committee or subcommittee thereof from January 1, 2010, onward.

Plaintiff's Letter Statement

*During our meet and confer on April 30, 2026, you stated that Apple would allow certain MDL counsel to review (via screenshare) the board of director meeting minutes, as Apple had offered to the Government Plaintiffs. We have reached out to schedule that session. Once we have done so, we will consider our dispute over the scope of this RFP (not the search terms), to be resolved.*

Apple Response

We are in receipt of your June 8, 2026 letter regarding RFP 5.1 and will respond to that letter separately. Apple notes, however, that on May 27, 2026, Apple allowed a limited set of counsel for MDL Plaintiffs to view a small sample of Board of Directors meeting minutes via screen share, consistent with what was offered to Government Plaintiffs.

**Watch RFPs 6, 25, 25.1, and 34**

**RFP 6:** All Documents related to any plans or changes Apple has made, considered making, or analyzed related to the iPhone or any Identified Product or Service in response to any actual or potential legal, judicial, or regulatory requirement, proceeding, or investigation in any jurisdiction worldwide, including the nature, costs, revenue impacts, and other actual or potential effects of those changes.

**RFP 25:** All Documents since January 1, 2010 related to the actual or potential effects of ending or altering any aspect of the conduct alleged in the Government Litigation, including allowing alternative app stores or App downloads from websites on the iPhone, modifying App Review Guidelines, or giving third parties access to the APIs or features currently or previously reserved for Apple products or services.

**RFP 25.1:** All Documents since January 1, 2010 related to the actual or potential effects of ending or altering any aspect of the Alleged Conduct, including modifying the DPLA, modifying App Review Guidelines, or giving third parties access to the APIs or features currently or previously reserved for Apple products or services.

**RFP 34**: All Documents related to the use or potential use of Apps or app stores directly downloaded from the internet or non-Apple app stores on the iPhone in any geography, including technical assessments, use by Enterprise customers, any comparisons to Android or other operating systems, and any actual or potential effect on: (a) Apple's revenues and profitability; (b) User and Developer behavior, spending, revenue, and profitability; (c) The number, quality, and features of Apps available for use on the iPhone; (d) Consumer demand, purchase intentions, and Smartphone switching; (e) Privacy or security for users or Developers, including threat assessments or Threat Models; and (f) Potential alternatives to app stores, including web stores and progressive web Apps.

Plaintiff's Letter Statement

*During our meet and confer on April 30, 2026, you stated that Apple would extend to Watch Plaintiffs an agreement equivalent to the one that it offered to the Government Plaintiffs in satisfaction of their corresponding RFPs, which Watch Plaintiffs understand to mean: Apple will produce non-privileged documents since January 1, 2010 responsive to RFP 25.1 on a worldwide basis, that could be identified through a reasonable search of documents in the possession of Apple's otherwise agreed custodians. For RFP 34, Apple agreed to produce documents that are responsive to (a) through (e), and agreed that the search terms for RFP 25 will cover the issues in RFP 34.*

*Watch Plaintiffs accept that proposal, with the following caveats: Watch Plaintiffs note that while the conduct in their complaint overlaps with some of the allegations in the Government Plaintiffs' complaint, there are significant differences and Watch Plaintiffs do not agree that the search terms Apple proposed to the Government Plaintiffs are sufficient for RFP 25.1. Watch Plaintiffs further note that it is Apple's obligation to identify the custodians who are likely to possess responsive documents, and Watch Plaintiffs do not agree to categorically limit custodians to the United States if non-U.S. custodians possess responsive documents.*

Apple Response

Your letter states that Watch Plaintiff accepts Apple's proposal regarding RFPs 6 and 25.1, subject to certain "caveats" concerning search terms and custodians. As discussed at the April 30 meet and confer, Apple confirms that, subject to and without waiving its objections, it is willing to extend to Watch Plaintiff the same offer that Apple made to the Government Plaintiffs as to the parallel Requests in the Government Action.

Consistent with Apple's January 8, 2026 letter, Apple will produce non-privileged documents responsive to Watch RFP 6 as that Request relates to the specific investigations or litigations identified in Watch RFP 3, excluding Lopez and the European Commission investigations, provided that Watch Plaintiff agrees to forgo documents responsive to Watch RFP 6 related to the European Commission investigations.

Separately, and consistent with Apple's January 20, 2026 letter, Apple will produce non-privileged documents since January 1, 2010 responsive to Watch RFP 25.1 on a worldwide basis, subject to the limitation that the final clause of Watch RFP 25.1—"giving third parties access to the APIs or features

currently or previously reserved for Apple products or services"—is understood to refer to Apple Watch products and services, rather than all Apple products or services.

With respect to Watch RFP 34, consistent with Apple's previously agreed-to position with Government Plaintiffs, Apple will produce all non-privileged documents responsive to (a) through (e) located after a reasonable search, limited to the United States.

With respect to Watch Plaintiff's "caveats," Apple and Watch Plaintiff (and the iPhone Plaintiffs) have addressed search terms for purposes of Apple's responses to Plaintiffs' document requests at length in separate negotiations. With respect to custodians, Apple has identified custodians likely to possess responsive documents consistent with its obligations and does not agree to any categorical limitation or expansion of custodians at this stage. Apple considers the parties' disputes regarding Watch RFPs 6, 25.1, and 34 to be resolved on the terms set forth above.

**Watch RFP 10**

**RFP 10:** All Documents after January 1, 2010 related to competition affecting Smartphones or Identified Products or Services offered by Apple or any firm, including: (a) Relative quality or features; (b) Entry, expansion, exit, scale, and repositioning; (c) Market segmentation by geography, type of consumer, Smartphone type, features, sales channel, or price band; (d) Competitive positioning; (e) Sales volumes, revenue, profitability, or market share; and (f) Nascent threats, disintermediation, and commoditization.

Plaintiff's Letter Statement

*On February 20, 2026, Watch Plaintiffs agreed to the same substantive scope as the Government Plaintiffs did in their corresponding RFP. Since then, Apple has provided more information about its review process, and confirmed that it is conducting an additional responsiveness review (in addition to reviewing for privilege) after running search terms. Please confirm that, during that responsiveness review, Apple is not imposing any geographic limitations.*

Apple Response

Apple confirms that it is not imposing geographic limitations during its responsiveness review for this Request.

**Watch RFP 35**

**RFP 35:** Documents sufficient to show differences between iPhone, Mac, iPad, Apple Watch, and Apple TV with respect to (1) App distribution, (2) web browsers or middleware, (3) privacy, or (4) security.

Plaintiff's Letter Statement

*In a letter dated April 14, 2026, Apple offered "to conduct a targeted collection for the same categories of documents described above as they relate to iPad for this Request if Watch Plaintiff agrees that doing so would resolve any outstanding disputes related to this Request." Watch Plaintiffs confirm here that they accept that offer, and that they view RFP 35 as resolved.*

Apple Response

Your letter confirms acceptance of Apple's offer regarding Watch RFP 35, and Apple agrees that this Request is resolved.

**Watch RFP 51**

**RFP 51:** All Documents after January 1, 2010 related to changes or considered changes to the Apple Developer Program License Agreement relating to iOS or WatchOS in the United States.

Plaintiff's Letter Statement

*In reviewing our past correspondence, Watch Plaintiffs realized that the parties had not reached a final resolution as to RFP 51. We confirm here that Watch Plaintiffs agree to the same substantive scope of RFP 51 as the Government Plaintiffs previously agreed to. Watch Plaintiffs note that there are still open disputes or questions as to Watch RFPs 51.1, 51.2, 51.3, and 51.4.*

Apple Response

Your letter confirms that Watch Plaintiff agrees to the same substantive scope for Watch RFP 51 as the Government Plaintiffs previously agreed to. Apple acknowledges that confirmation and considers this Request resolved on that basis.

**Watch RFPs 51.1 and 51.2**

**RFP 51.1:** All Agreements, policies, and guidelines, in effect during the Period, relating to Third-Party Smartwatch Apps, including, but not limited to, the DPLA, the App Review Guidelines, the iOS and iPadOS Software License Agreement, Apple Inc. Certification Authority Certificate Policy, Apple Inc. Certification Authority Certification Practice Statement Apple Application Integration, Apple Inc. Certification Practice Statement Worldwide Developer Relations, Apple Inc. Certification Practice Statement Developer ID, Apple Inc. Certification Practice State Software Update, Apple Inc. Certification Authority Certification Practice Statement Apple Timestamp, and all predecessors and successors to the DPLA, the App Review Guidelines, the iOS and iPadOS Software License Agreement, Apple Inc. Certification Authority Certificate Policy, Apple Inc. Certification Authority Certification Practice Statement Apple Application Integration, Apple Inc. Certification Practice Statement Worldwide Developer Relations, Apple Inc. Certification Practice Statement Developer ID, Apple Inc. Certification Practice State Software Update, Apple Inc. Certification Authority Certification Practice Statement Apple Timestamp, and other such Agreements, policies, and guidelines.

**RFP 51.2:** All Agreements, policies, and guidelines relating to iOS updates and WatchOS updates that concern the functionality of the Apple Watch, Third-Party Smartwatch Apps, or Third-Party Smartwatches, including, but not limited to, all predecessor and successor policies and guidelines.

Plaintiff's Letter Statement

*In a letter dated May 12, 2026, Apple proposed to produce in response to these RFPs the enumerated agreements and any agreements that refer to smartwatches or third-party smartwatches or smartwatch makers, but not agreements that cover the "functionalities and apps" enumerated in RFP 72.*

*While Watch Plaintiffs appreciate Apple making a proposal, that proposal does not address the heart of what these requests seek: "All Agreements, policies, and guidelines, in effect during the Period, relating to Third-Party Smartwatch Apps ..." and "All Agreements, policies, and guidelines relating to iOS updates and WatchOS updates that concern the functionality of the Apple Watch, Third-Party Smartwatch*

*Apps, or Third-Party Smartwatches." Apple proposes to produce agreements that refer to smartwatches or third-party smartwatches or smartwatch makers, but not smartwatch apps (except enumerated policies).*

*Apple's May 12 response does not respond to Watch Plaintiffs' request in their April 10, 2026 letter, which was that if their approach is objectionable to Apple, please quantify the burden and provide an alternative solution for identifying and producing responsive agreements, policies, and guidelines that apply to the enumerated items, including Third-Party Smartwatch Apps, and that would comport with Apple's internal record-keeping systems. Please provide this answer in your response. We are available to meet and confer.*

<u>Apple Response</u>

Your letter states that Apple's May 12 proposal "does not respond to Watch Plaintiff's request in their April 10, 2026 letter" that Apple quantify the burden and provide an alternative solution for identifying responsive agreements, policies, and guidelines. Apple disagrees with that characterization. Apple's May 12, 2026 proposal was itself a concrete alternative: Apple offered to produce the specifically enumerated agreements and any agreements that refer to smartwatches or third-party smartwatches or smartwatch makers. That proposal reflects an administrable approach that is proportional to the needs of this case and does not impose undue burden on Apple.

Apple does not agree to expand its production to all agreements, policies, and guidelines that cover the "functionalities and apps" enumerated in RFP 72. This includes "Smartwatch Apps" which Apple understands to include both Companion Apps and "Sister Apps" as Plaintiff has defined that term. As noted above, Plaintiff's proposed definition of "Sister Apps" is impossible to apply. Plaintiff's proposed expansion would require Apple to produce a substantial volume of agreements, policies, and guidelines with no relevance to Watch Plaintiff's allegations. Nor is Apple required to "quantify the burden" of producing documents which Watch Plaintiff has made no attempt to argue are relevant.

Apple's May 12 proposal is a reasonable approach to responding to this Request and Apple will agree to undertake that collection and production.

**<u>Watch RFP 72</u>**

**RFP 72:** All Documents related to the App review of any Identified Product or Service, including, but not limited to, any App, Companion App, or Sister App for any Smartwatch.

<u>Plaintiff's Letter Statement</u>

*Thank you for providing a counterproposal. We would like to find a way to address the core of what Watch Plaintiffs are seeking while addressing Apple's burden concerns. Therefore, without prejudice to our prior proposals, we propose that Apple produce the following in satisfaction of RFP 72: (1) all App review documents for Smartwatch companion apps and the Tesla app; (2) all App Review documents for apps identified through search terms designed to identify those apps for which the review involved one or more of the following issues identified in the amended complaint: (i) use of SMS, RCS, OTT, or any other messaging protocol, see, e.g., Dkt. 86 ¶¶64-80; (ii) use of or access to NFC technology or hardware, see, e.g., Dkt. 86 ¶¶108-13; (iii) use of or access to APIs, entitlements, frameworks, or other software interfaces that allow the app to complete background execution tasks, see, e.g., Dkt. 86 ¶¶132-48; (iv) transmission*

*and syncing of health or fitness information, see, e.g., Dkt. 86 ¶¶143-44, ¶¶153-55; or (v) reference to Third-Party Smartwatches, see, e.g., Dkt. 86 ¶¶119-27. We are available to meet and confer.*

Apple Response

With respect to category (1), Apple maintains its offer to produce non-privileged App Review documents with respect to Smartwatch companion apps, the top 10 free and top 10 paid smartwatch apps, and the Tesla app, subject to further discussion regarding the parameters of these categories. Apple is actively working to identify the specific apps that fall within the "top 10" categories based on Apple's transaction data and expects to propose a specific list of apps to Watch Plaintiff soon. Apple believes that identifying specific apps by name is more administrable, appropriately burdensome, and proportional to the needs of the case. A search-term methodology applied across App Review files would impose undue burden and would be disproportional to the needs of the case. To the extent this Request seeks App Review documents for "Sister Apps," Apple's objections to that unbounded and unadministrable category as Watch Plaintiff has sought to define it apply equally here.

With respect to category (2), Apple understands Watch Plaintiff to be proposing that the parties agree on search terms to identify App Review documents relating to the identified topics. Apple does not agree to a search-term methodology for this Request. Apple instead proposes a targeted collection of non-privileged App Review documents relating to the topics Watch Plaintiff has identified if Watch Plaintiff can (1) provide a narrowed list of apps, and (2) provide a narrowed list of APIs or entitlements that Watch Plaintiff is interested in, to the extent such documents exist and can be located through a reasonable search. Several of the five identified categories are broad enough to sweep in a substantial portion of the App Store. Search terms designed to capture App Review documents touching on those topics would likely sweep in a large number of apps with no relevance to Watch Plaintiff's allegations. That approach would not meaningfully narrow the scope of the Request and would impose an undue burden disproportional to the needs of the case. A targeted collection is a more administrable and proportional means of identifying the responsive materials and Apple will undertake that approach to respond to this Request. Apple further notes that App Review documents may contain third-party confidential information, which, while not a basis on its own to withhold documents, is a significant factor in evaluating the burden of reviewing and producing such materials at scale.

Apple is available to further meet and confer on these issues.

**Watch RFP 83**

**RFP 83:** Documents sufficient to show all current and historical App Store metadata for all Third-Party Smartwatch Companion Apps, including, but not limited to Apps developed or distributed by Amazfit, Citizen, Core Devices LLC, Fitbit, Fossil, Google, Garmin, MijoConnected, Motorola, Pebble, Samsung, Withings, as well as the following Apps: AllTrails, Google Fit, Komoot, MyFitnessPal, Peloton, SeaNav US, Spotify, Strava.

Plaintiff's Letter Statement

*In reviewing our past correspondence, Watch Plaintiffs realized that the parties had not reached a final resolution as to RFP 83. We believe that Apple's proposal in its original responses and objections was that it was willing to meet and confer regarding this RFP. Given that Apple has already agreed to produce all App Review materials related to third-party smartwatch companion apps (in response to RFP 72), Watch Plaintiffs hope that Apple will agree to produce all App Store metadata for those apps. Watch*

GIBSON DUNN



*Plaintiffs are willing to consider a targeted collection for this request, if Apple confirms such a collection will identify the responsive documents.*

Apple Response

Your letter asks Apple to produce App Store metadata for third-party smartwatch companion apps, noting that Apple has already offered to produce App Review materials for those apps in response to RFP 72. Apple notes that [redacted]; Apple's agreement to produce App Review materials has no relationship to Watch Plaintiff's request for App Store metadata. However, in the spirit of cooperation, Apple will agree to produce, for Third-Party Smartwatch Companion Apps offered by the entities identified in this Request, and for the specific apps identified in this Request, App Store metadata associated with all versions of those apps published in the U.S. App Store, to the extent such metadata exists in the ordinary course of business.

Sincerely,

Brian Anderson

GIBSON, DUNN & CRUTCHER LLP

# Exhibit J

## CONFIDENTIAL - FILED UNDER SEAL

MOLOLAMKEN

Lauren F. Dayton
MoloLamken LLP
300 North LaSalle Street
Chicago, IL 60654
T: 312.450.6707
ldayton@mololamken.com
www.mololamken.com

April 10, 2026

**VIA EMAIL**

Connor Sullivan
Jason Lo
Gibson, Dunn & Crutcher LLP
cssulivan@gibsondunn.com
jlo@gibsondunn.com

Re: *In re Apple Inc. Smartphone Antitrust Litigation*, No. 2:24-md-03113
Watch Plaintiffs' RFPs

Connor and Jason,

We write regarding certain outstanding issues as to Watch Plaintiffs' requests for production.

Below are our responses on:

- **RFP 47**: Apple proposed that Watch Plaintiffs accept the same agreement that Apple entered into with the Government as to the Government's related RFP. We understand that that agreement requires Apple to produce only documents regarding the ability of non-Apple devices to receive message notifications, reply to messages, compose messages, access messages, and mark messages as read. We previously disagreed with such a proposal and explained (including in our January 20 letter) that Watch Plaintiffs' allegations were broader and included other ways in which non-Apple smartwatches connect with or interact with the iPhone beyond just messaging. Apple previously asked Watch Plaintiffs to limit this request to ways in which interactions between iPhone and non-Apple smartwatches are different from interaction between the iPhone and Apple smartwatches. We maintain our position that documents related to the ability of non-Apple devices to connect or interact with the iPhone—whether they are different from or the same as the Apple Watch's ability to connect with or interaction with the iPhone—are relevant and proportional to the needs of the case. Indeed, this goes to the very core of Watch Plaintiffs' allegations. As we have previously met and conferred about this RFP on January 13, 2026, and exchanged letters dated January 20, 2026, February 2, 2026, and March 4, 2026, we believe that we are at impasse.

- **RFP 51.1 and 51.2**: Watch Plaintiffs believe that a targeted collection of agreements, policies, and guidelines would be a reasonable approach to identifying and producing relevant and proportional agreements, policies, and guidelines. In the spirit of cooperation, Watch Plaintiffs are willing to narrow the scope of the targeted search as follows. First, as to *agreements*: only those agreements specifically enumerated in RFP 51.1. Second, as to *policies and guidelines*: only policies and guidelines that specifically mention smartwatches like the Apple Watch (whether referred to as "Apple Watch" or just "Watch"), third-party smartwatches or smartwatch makers, functionalities and apps that we enumerated in our agreement to RFP 72, and related smartwatch technologies like iOS, WatchOS, and Beeper Mini.

  If such an approach is objectionable to Apple, please quantify the burden and provide an alternative solution for identifying and producing responsive agreements, policies, and guidelines, that would comport with Apple's internal record-keeping systems.

- **RFP 51.4**: We previously agreed to limit RFP 51.4(b) to documents relating to Apple's decisions to release or not release software updates that ***Apple was aware*** might, would, or did affect the functionality or interoperability of Third-Party Smartwatches or Third-Party Smartwatch Apps, and its decisions regarding the timing of such releases of software updates ***in light of Apple's awareness***. By letter dated February 2, Apple proposed to limit RFP 51.4(b) further to include documents reflecting decisions ***only to the extent those decisions differed from how Apple treated its own products***, *e.g.*, (i) concerning differential access for third-party smartwatches or their companion apps on iOS/WatchOS, or (ii) reflecting differential treatment as compared to Apple Watch or Apple's own smartwatch-related functionality. Consistent with our position on RFP 47 above, and with others, we do not agree to that limitation. As Watch Plaintiffs have previously explained, Apple's decision ***not*** to impose restrictions on third-party smartwatches where those restrictions might affect the Apple Watch are highly relevant to Watch Plaintiffs' allegations. For example, Apple's decision not to release software updates that would affect both the Apple Watch and third-party smartwatches (which would reflect the same, not differential treatment), are important context to understand Apple's decision to release software updates that would affect third-party smartwatches but not the Apple Watch (differential treatment). Stated conversely, Apple's decision to release certain software updates for both third-party smartwatches and Apple Watch could also have a relevant anticompetitive impact on third-party smartwatch rivals. Please confirm whether we are at an impasse on this issue.

- **RFP 91**: As we proposed in our March 10, 2026 letter, we propose negotiating this RFP jointly with the Phone Plaintiffs, who have served a similar RFP. We will coordinate with Phone Plaintiffs and continue to consider this issue.

- **RFP 92**: Watch Plaintiffs agree with the understanding of this request that Apple articulated in its March 31, 2026 letter, as "seek[ing] actual trainings, guidelines, policies, and protocols—not the underlying discussions or negotiations about those materials—and that plainly unrelated general workplace trainings are not at issue." In view of and subject to Apple's agreement "to conduct a targeted collection for non-privileged responsive trainings, guidelines, policies, and protocols provided to Worldwide Developer Relations or the App Review Board that describe the process or standards for App Review and appeals related to the Alleged Conduct," we view our dispute as to this request as resolved.

Watch Plaintiffs confirm here that, subject to further negotiation regarding custodians and search terms, they are willing to accept the same response that Apple and the Government ultimately agreed on as to RFPs 48-49 and 52-53.

For the following RFPs for which we had understood there to be an outstanding dispute, Apple proposed search terms in the spreadsheet that you sent on March 13, 2026. We appreciate Apple sending search terms and we agree that, as to the following RFPs, the outstanding disputes can be resolved through the negotiation of those search terms and custodians against whom the terms will be run. (For the avoidance of doubt, we are not necessarily agreeing to the Government's search terms or the search terms Apple proposed, to the extent those are different, but we agree that any disputes between Apple and Watch Plaintiffs can be addressed through the search term and custodian negotiation process):

RFP 7.1, 8.1, 8.2, 12.1, 40.4, 50.1, 51.3, 54, 70, 71, 73, 85, 88, 89, 90, 94

For the following RFPs, Apple proposed search terms, but there are still outstanding questions that we asked or proposals that we made to which we need a response before we can proceed with discussing search terms. Or, for some of these RFPs, we believe a targeted search would be more appropriate than a custodial search given the nature of the information requested. We are of course available to meet and confer:

- **RFP 1.1** – We would appreciate a response to the questions that we first raised in MDL Plaintiffs' December 18 letter, re-raised in our February 20 letter, discussed on during our meet-and-confers on February 26 and March 4, and raised in our March 10 letter, about whether Apple will produce documents from outside counsel and whether Apple will produce documents, including communications, exchanged between Apple and the Government related to the Government Action and the Government Investigation, not just documents relate to discovery. We have been waiting for a response for more than 3 months now.

- **RFP 1.3** – We would appreciate a response to our request that Apple identify a subset of investigations that it believes would be relevant, proportional, and not unduly burdensome from among those we sent as first in our February 20 letter, and again in our March 10 letter. We do not believe this RFP is conducive to a custodial search.

- **RFPs 5, 5.1** – Please respond to the question in our February 20 letter (7 weeks ago) about whether Apple will produce to Watch Plaintiffs sample board minutes, as you told us you would do for the Government. If Apple has already produced these sample board minutes to Watch Plaintiffs, please confirm.
- **RFP 6** – Please respond to the questions posed in our February 20 letter about Apple's conflicting positions about whether the documents responsive to RFP 6 would already be produced in response to RFP 25. We are waiting for Apple's response.
- **RFPs 8.3, 8.4** – Apple did not provide search terms for these RFPs. Please respond to the proposals that we made regarding these RFPs in our March 10 letter, or confirm that we are at impasse.
- **RFPs 11, 11.1** – We responded most recently regarding these RFPs in our March 10 letter (4 weeks ago). We do not think the dispute about the geographic scope of responsive documents can be resolved through search terms. We are waiting for Apple's response.
- **RFPs 25, 25.1** – We are waiting for a response to the questions posed in our February 20 letter about RFP 6, which we stated would inform our discussions of RFP 25. It has been 7 weeks, please provide a response.
- **RFP 29.1** – Please confirm that Apple is willing to provide documents consistent with the proposal that we made in our February 27 letter (sent 6 weeks ago). We believe that a targeted collection may be appropriate for this request, but we are willing to discuss.
- **RFP 34** – Please confirm that we are at impasse on this issue.
- **RFP 86** – We would appreciate a response to the question that we asked in our March 20 letter about whether Apple used or considered any other methods of displaying heart rate variability besides the two listed in RFP 86.

We list below the other RFPs for which we are still waiting on your response:

- **RFP 35** – since our February 27 letter (6 weeks)
- **RFP 40.4** – since our January 23 letter (11 weeks)
- **RFP 69, 72** – since our March 20 letter (3 weeks)
- **RFP 77** – since our February 6 letter (9 weeks)

Last, we do not agree to Apple's March 30, 2026 proposal to allow Apple to apply its designation that a document is "nonresponsive" to the Government's RFPs to Watch Plaintiffs' corresponding RFPs. Watch Plaintiffs' RFPs and search terms are different from the Government's, and those differences mean that some documents that were not responsive to the Government's RFPs may be response to Watch Plaintiffs'. We certainly cannot know, categorically, that they will not be. We invite Apple to identify the total number of Documents that Apple found non-responsive to the Government RFPs that would be subject to re-review under Watch Plaintiffs' RFPs.

Please let us know as soon as possible when you will respond to these outstanding RFPs. We are available to meet and confer.

Best regards,

/s/ Lauren Dayton
Lauren Dayton

# Exhibit K

## CONFIDENTIAL - FILED UNDER SEAL

GIBSON DUNN

Brian Anderson
Associate Attorney
M: +1 949.451.3901
BAnderson@gibsondunn.com

May 12, 2026

VIA EMAIL

Lauren Dayton
MoloLamken LLP
LDayton@MoloLamken.com

Re: *In re Apple Inc. Smartphone Antitrust Litigation*, No. 2:24-md-03113

Dear Counsel,

We are in receipt of your April 10, 2026 letter addressing outstanding issues regarding Watch Plaintiffs' RFPs. We have responded to the various issues your letter addresses below, other than the search term issues raised in your letter, which we will respond to separately.

**RFP 47**: All Documents related to the ability of non-Apple devices to connect or interact with the iPhone, including, but not limited to their ability to receive incoming message notifications, reply to incoming messages, compose new messages, access messages, and mark messages as read.

Plaintiff Letter Statement

*Apple proposed that Watch Plaintiffs accept the same agreement that Apple entered into with the Government as to the Government's related RFP. We understand that that agreement requires Apple to produce only documents regarding the ability of non-Apple devices to receive message notifications, reply to messages, compose messages, access messages, and mark messages as read. We previously disagreed with such a proposal and explained (including in our January 20 letter) that Watch Plaintiffs' allegations were broader and included other ways in which non-Apple smartwatches connect with or interact with the iPhone beyond just messaging. Apple previously asked Watch Plaintiffs to limit this request to ways in which interactions between iPhone and non-Apple smartwatches are different from interaction between the iPhone and Apple smartwatches. We maintain our position that documents related to the ability of non-Apple devices to connect or interact with the iPhone—whether they are different from or the same as the Apple Watch's ability to connect with or interaction with the iPhone—are relevant and proportional to the needs of the case. Indeed, this goes to the very core of Watch Plaintiffs' allegations. As we have previously met and conferred about this RFP on January 13, 2026, and exchanged letters dated January 20, 2026, February 2, 2026, and March 4, 2026, we believe that we are at impasse.*

Apple Response

Apple maintains the position set forth in its February 2, 2026 letter. As Apple previously explained, Watch Plaintiff's interpretation of RFP 47 is unbounded and would encompass a substantial volume of irrelevant material and impose an undue burden on Apple disproportionate to the needs of the litigation.

Apple remains willing to consider a reasonable narrowing of this Request tied to specific allegations in the operative complaints and focused on specific categories of non-Apple devices and specific types of interactions at issue (e.g., alleged lack of messaging-related interoperability). Apple continues to believe this Request should be limited to third-party device connections to iPhone that are different from Apple device connections to iPhone. If Watch Plaintiff is unwilling to accept any such limitation, Apple agrees that the parties are at impasse on this issue.

**Watch RFP 51.1**: All Agreements, policies, and guidelines, in effect during the Period, relating to Third-Party Smartwatch Apps, including, but not limited to, the DPLA, the App Review Guidelines, the iOS and iPadOS Software License Agreement, Apple Inc. Certification Authority Certificate Policy, Apple Inc. Certification Authority Certification Practice Statement Apple Application Integration, Apple Inc. Certification Practice Statement Worldwide Developer Relations, Apple Inc. Certification Practice Statement Developer ID, Apple Inc. Certification Practice State Software Update, Apple Inc. Certification Authority Certification Practice Statement Apple Timestamp, and all predecessors and successors to the DPLA, the App Review Guidelines, the iOS and iPadOS Software License Agreement, Apple Inc. Certification Authority Certificate Policy, Apple Inc. Certification Authority Certification Practice Statement Apple Application Integration, Apple Inc. Certification Practice Statement Worldwide Developer Relations, Apple Inc. Certification Practice Statement Developer ID, Apple Inc. Certification Practice State Software Update, Apple Inc. Certification Authority Certification Practice Statement Apple Timestamp, and other such Agreements, policies, and guidelines.

**Watch RFP 51.2**: All Agreements, policies, and guidelines relating to iOS updates and WatchOS updates that concern the functionality of the Apple Watch, Third-Party Smartwatch Apps, or Third-Party Smartwatches, including, but not limited to, all predecessor and successor policies and guidelines.

Plaintiff Letter Statement

*Watch Plaintiffs believe that a targeted collection of agreements, policies, and guidelines would be a reasonable approach to identifying and producing relevant and proportional agreements, policies, and guidelines. In the spirit of cooperation, Watch Plaintiffs are willing to narrow the scope of the targeted search as follows. First, as to agreements: only those agreements specifically enumerated in RFP 51.1. Second, as to policies and guidelines: only policies and guidelines that specifically mention smartwatches like the Apple Watch (whether referred to as "Apple Watch" or just "Watch"), third-party smartwatches or smartwatch makers, functionalities and apps that we enumerated in our agreement to RFP 72, and related smartwatch technologies like iOS, WatchOS, and Beeper Mini.*

*If such an approach is objectionable to Apple, please quantify the burden and provide an alternative solution for identifying and producing responsive agreements, policies, and guidelines, that would comport with Apple's internal record-keeping systems.*

Apple Response

Subject to and without waiving its objections, Apple will agree to conduct a targeted collection for non-privileged responsive agreements as enumerated on the face of Watch RFP 51.1, and for policies and guidelines that refer to smartwatches and third-party smartwatches or smartwatch makers, to the extent such materials exist and can be located through a reasonable search. However, for reasons stated in Apple's

letter dated May 6, 2026. Apple believes Watch Plaintiff's proposal for Watch RFP 72 is overbroad. Accordingly, Apple does not agree to produce policies and guidelines that cover the "functionalities and apps that [Watch Plaintiff] enumerated in" his proposal for Watch RFP 72. Apple remains willing to meet and confer further regarding a reasonable narrowing of this Request.

**Watch RFP 51.4**: All Documents relating to iOS updates that affect the functioning or interoperability of Third-Party Smartwatches or Third-Party Smartwatch Apps with the iPhone, including, but not limited to:
a. Documents relating to Apple's knowledge that such software updates might, would, or did affect the functioning or interoperability of Third-Party Smartwatches or Third-Party Smartwatch Apps;
b. Documents relating to Apple's decisions to release or not release software updates that might, would, or did affect the functioning or interoperability of Third-Party Smartwatches or Third-Party Smartwatch Apps, and its decisions regarding the timing or such releases of software updates; and
c. internal and external Communications (including with Third-Party Smartwatch Makers and Developers of Third-Party Smartwatch Apps) regarding software updates' potential, expected, or actual effects on the functioning or interoperability of Third-Party Smartwatches or Third-Party Smartwatch Apps, including, but not limited to, email, tickets submitted by Third-Party Smartwatch Makers and Developers of Third-Party Smartwatch Apps, and all other Communications.

Plaintiff Letter Statement

*We previously agreed to limit RFP 51.4(b) to documents relating to Apple's decisions to release or not release software updates that Apple was aware might, would, or did affect the functionality or interoperability of Third-Party Smartwatches or Third-Party Smartwatch Apps, and its decisions regarding the timing of such releases of software updates in light of Apple's awareness. By letter dated February 2, Apple proposed to limit RFP 51.4(b) further to include documents reflecting decisions only to the extent those decisions differed from how Apple treated its own products, e.g., (i) concerning differential access for third-party smartwatches or their companion apps on iOS/WatchOS, or (ii) reflecting differential treatment as compared to Apple Watch or Apple's own smartwatch-related functionality. Consistent with our position on RFP 47 above, and with others, we do not agree to that limitation. As Watch Plaintiffs have previously explained, Apple's decision not to impose restrictions on third-party smartwatches where those restrictions might affect the Apple Watch are highly relevant to Watch Plaintiffs' allegations. For example, Apple's decision not to release software updates that would affect both the Apple Watch and third-party smartwatches (which would reflect the same, not differential treatment), are important context to understand Apple's decision to release software updates that would affect third-party smartwatches but not the Apple Watch (differential treatment). Stated conversely, Apple's decision to release certain software updates for both third-party smartwatches and Apple Watch could also have a relevant anticompetitive impact on third-party smartwatch rivals. Please confirm whether we are at an impasse on this issue.*

Apple Response

Apple maintains the position set forth in its February 2, 2026 letter, where Apple offered to respond to this Request by conducting a targeted collection rather than full custodial collection and producing non-privileged, responsive documents identified through a reasonable search. Watch Plaintiff's April 10 letter does not cure Apple's concerns. In particular, Watch Plaintiff's proposed formulation sweeps in documents relating to software updates that "Apple was aware might, would, or did affect" the general functionality of Third-Party Smartwatches or Third-Party Smartwatch Apps, including where Apple's decisions apply

generally and do not reflect differential treatment or are not alleged as a basis for potential liability. Further, Watch Plaintiff's current focus on potential software updates that were never released does not clearly fall within the scope of RFP 51.4. The preamble to RFP 51.4 seeks documents "relating to iOS updates that affect the functioning or interoperability of Third-Party Smartwatches or Third-Party Smartwatch Apps." Software updates that were never released cannot "affect the functioning or interoperability" of any Third-Party Smartwatches or Apps and thus do not clearly fall under this Request. Nor are such documents relevant to Watch Plaintiff's allegations. Watch Plaintiff has alleged that Apple interfered with the functioning of Third-Party Smartwatches and Apps through software updates that *were* released. Watch Plaintiff has no allegations related to theoretical updates that Apple never released or implemented.

Notwithstanding Apple's foregoing objections, on March 13, 2026, Apple provided a search term proposal for RFP 51.4 which Apple believes satisfies Watch Plaintiff's objectives with respect to this RFP, to the extent those objectives are relevant and proportional to the needs of the case. Apple has received Watch Plaintiff's counter-proposed term for RFP 51.4 which would expand the scope of Apple's search to include documents related to software updates—or never released software updates—that did not have, or would not have had, a differential effect on Third-Party Smartwatches or Third-Party Smartwatch Apps and which Watch Plaintiff claims are relevant for "context." This expansion would pull in approximately 4.4 million additional documents, including families—significantly more than the total number of documents produced in the entire investigation phase of this case. Some of these additional hits are likely due to overbroad terms—such as the generic term "update" paired with "Apple Watch" which will pull in large numbers of documents related to watchOS updates or Apple Watch developments outside the scope of the Request. Some of these overbreadth problems may be addressed through search term revisions, but not all. Watch Plaintiff's vague explanation that the additional documents he seeks related to non-differential treatment would provide "context" for situations where there *was* alleged differential treatment does not meaningfully explain the purported relevance of such documents, nor does it come close to justifying the monumental burden Watch Plaintiff is seeking to impose on Apple. If Watch Plaintiff is unwilling to consider a reasonable limitation, Apple agrees that the parties are at impasse on this issue.

**Watch RFP 91**: Documents sufficient to show Your Document retention policies including, but not limited to, Your policies and procedures for retaining physical Documents, email, and any instant messages, group chats, one-to-one chats, ephemeral messages, Document comments, internal wiki entries, and any other non-email messaging, information, or Communication tool used by Your employees.

Plaintiff Letter Statement

*As we proposed in our March 10, 2026 letter, we propose negotiating this RFP jointly with the Phone Plaintiffs, who have served a similar RFP. We will coordinate with Phone Plaintiffs and continue to consider this issue.*

Apple Response

Watch Plaintiff has provided no new information for Apple to consider. Accordingly, Apple maintains the position set forth in its March 31, 2026 letter, which explains that requests probing an opposing party's document retention policies are routinely treated as improper "discovery on discovery" absent a concrete, particularized showing of a material deficiency, and Watch Plaintiff has made no such

showing here. *See Ford Motor Co. v. Edgewood Props., Inc.*, 257 F.R.D. 418, 420–21, 428 (D.N.J. 2009); *Romero v. Allstate Ins. Co.*, 271 F.R.D. 96, 107–11 (E.D. Pa. 2010).

**Watch RFP 92**: All trainings, guidelines, policies, and protocols provided to Apple's Developer Relations Department or App Review Board.

Plaintiff Letter Statement

*Watch Plaintiffs agree with the understanding of this request that Apple articulated in its March 31, 2026 letter, as "seek[ing] actual trainings, guidelines, policies, and protocols—not the underlying discussions or negotiations about those materials—and that plainly unrelated general workplace trainings are not at issue." In view of and subject to Apple's agreement "to conduct a targeted collection for non-privileged responsive trainings, guidelines, policies, and protocols provided to Worldwide Developer Relations or the App Review Board that describe the process or standards for App Review and appeals related to the Alleged Conduct," we view our dispute as to this request as resolved.*

Apple Response

Apple agrees that its dispute with Watch Plaintiff as to this Request is resolved.

**Remaining RFPs**

Plaintiff Letter Statement

*For the following RFPs, Apple proposed search terms, but there are still outstanding questions that we asked or proposals that we made to which we need a response before we can proceed with discussing search terms. Or, for some of these RFPs, we believe a targeted search would be more appropriate than a custodial search given the nature of the information requested. We are of course available to meet and confer:*

- *RFP 1.1 – We would appreciate a response to the questions that we first raised in MDL Plaintiffs' December 18 letter, re-raised in our February 20 letter, discussed on during our meet-and-confers on February 26 and March 4, and raised in our March 10 letter, about whether Apple will produce documents from outside counsel and whether Apple will produce documents, including communications, exchanged between Apple and the Government related to the Government Action and the Government Investigation, not just documents relate to discovery. We have been waiting for a response for more than 3 months now.*
- *RFP 1.3 – We would appreciate a response to our request that Apple identify a subset of investigations that it believes would be relevant, proportional, and not unduly burdensome from among those we sent as first in our February 20 letter, and again in our March 10 letter. We do not believe this RFP is conducive to a custodial search.*
- *RFPs 5, 5.1 – Please respond to the question in our February 20 letter (7 weeks ago) about whether Apple will produce to Watch Plaintiffs sample board minutes, as you told us you would do for the Government. If Apple has already produced these sample board minutes to Watch Plaintiffs, please confirm.*

- *RFP 6 – Please respond to the questions posed in our February 20 letter about Apple's conflicting positions about whether the documents responsive to RFP 6 would already be produced in response to RFP 25. We are waiting for Apple's response.*
- *RFPs 8.3, 8.4 – Apple did not provide search terms for these RFPs. Please respond to the proposals that we made regarding these RFPs in our March 10 letter, or confirm that we are at impasse.*
- *RFPs 11, 11.1 – We responded most recently regarding these RFPs in our March 10 letter (4 weeks ago). We do not think the dispute about the geographic scope of responsive documents can be resolved through search terms. We are waiting for Apple's response.*
- *RFPs 25, 25.1 – We are waiting for a response to the questions posed in our February 20 letter about RFP 6, which we stated would inform our discussions of RFP 25. It has been 7 weeks, please provide a response.*
- *RFP 29.1 – Please confirm that Apple is willing to provide documents consistent with the proposal that we made in our February 27 letter (sent 6 weeks ago). We believe that a targeted collection may be appropriate for this request, but we are willing to discuss.*
- *RFP 34 – Please confirm that we are at impasse on this issue.*
- *RFP 86 – We would appreciate a response to the question that we asked in our March 20 letter about whether Apple used or considered any other methods of displaying heart rate variability besides the two listed in RFP 86.*

*We list below the other RFPs for which we are still waiting on your response:*

- *RFP 35 – since our February 27 letter (6 weeks)*
- *RFP 40.4 – since our January 23 letter (11 weeks)*
- *RFP 69, 72 – since our March 20 letter (3 weeks)*
- *RFP 77 – since our February 6 letter (9 weeks)*

<u>Apple Response</u>

Apple has now responded to all of Watch Plaintiff's positions on the following enumerated RFPs in letters as specified below.

- Apple's April 14, 2026 Letter to Watch Plaintiff: Watch RFPs 5, 5.1, 8.4, 29.1, 35, 40.4
- Apple's April 20, 2026 Letter to Watch Plaintiff: Watch RFPs 1.1, 1.3, 6, 8.3, 11, 11.1, 25, 25.1, 34
- Apple's May 6, 2026 Letter to Watch Plaintiff: Watch RFPs 69, 72, 86

As for Watch RFP 77, Apple is continuing to assess the availability and accessibility of the data described in the Request, as narrowed by Watch Plaintiff's February 6, 2026 letter to Apple.

GIBSON DUNN



Sincerely,

/s/ Brian Anderson

GIBSON, DUNN & CRUTCHER LLP

# Exhibit L

## CONFIDENTIAL - FILED UNDER SEAL

GIBSON DUNN

Connor S. Sullivan
Partner
T: +1 212.351.2459
M: +1 216.956.8955
cssullivan@gibsondunn.com

March 11, 2026

VIA EMAIL

Lauren Dayton
MoloLamken LLP
LDayton@MoloLamken.com

Re: *In re Apple Inc. Smartphone Antitrust Litigation*, No. 2:24-md-03113

Dear Counsel,

We are in receipt of your February 6, 2026, letter addressing the parties' meet-and-confer calls on January 26, 2026, January 27, 2026, and January 29, 2026. We have responded to the various issues your letter addresses below.

**Watch RFPs 64 & 65:**
All Documents produced, provided, filed under seal, or served, by any party or non-party, in connection with the Government Action, including, but not limited to, all Documents provided by You to the DOJ in connection with its Investigation into its allegations that Apple has engaged in anticompetitive conduct relating to Smartphone or Smartwatch markets.

All Documents produced to or served on any party in This Case, including, but not limited to, Documents produced or served by non-parties, and Documents responsive to requests for production served on You by any party in This Case, as if such requests had been served on the date of these Requests by DAWP Plaintiffs.

Plaintiff Letter Statement

*We agreed that these requests are resolved by the Case Management Order's provision requiring Apple to "promptly make rolling productions to Plaintiffs' counsel . . . of materials in its possession, custody, or control that have been produced in the Government Investigation, Government Action, and MDL Action, regardless of whether those materials were initially produced by Apple, the Government, or third parties." Please confirm that Apple interprets that provision as an ongoing obligation, and does not interpret the words "have been produced" to mean that Apple is only ordered to produce the Government Investigation, Government Action, and MDL Action documents that had been produced as of the date of the Case Management Order's entry.*

Apple Response

Apple agrees that it will continue to make rolling productions of materials in its possession, custody, or control that have been produced in the Government Investigation, Government Action, and MDL Action, regardless of whether those materials were initially produced by Apple, the Government, or third parties.

**Watch RFP 66**: Documents sufficient to show the identities of Apple personnel, their titles, and the length of time they served in that role, including, but not limited to, organizational charts as to Apple personnel who were or are involved in the design and development of the Apple Watch, marketing of the Apple Watch, or business operations related to the Apple Watch, as well as any Apple personnel with responsibility with respect to any of the following as they relate to the Apple Watch, Third-Party Smartwatches, or Third-Party Smartwatch Apps: iMessage, notifications, actionable notifications, notification customizations, Privacy Warning Screens, Phone Number Sharing Restrictions, Background Execution, Bluetooth connectivity, Control Center, HealthKit, Apple Notification Center Service, the DPLA, the App Review Guidelines, approval of Apps in the App Store, WatchOS updates, or iOS updates.

Plaintiff Letter Statement

*You expressed Apple's view that this request is overbroad because it includes issues that you do not believe are at issue in the litigation, and that the Documents the request asks for would include the identities, titles, and time of service of at least some individuals who would not be relevant to the litigation. You asked, therefore, if we would consider asking for documents that relate to a smaller list of roles, departments, or topics. We expressed our view that the request is reasonably designed and proportionally tailored to elicit discoverable information relevant to the claims or defenses, but that we would be willing to consider narrowing the request if Apple would identify the roles, departments, and topics that it believes would be irrelevant—which, we explained, Apple is in the best position to do. You responded that you did not think that would be a manageable process, and suggested that we should instead obtain the requested information from the Government Investigation documents. We explained that we are doing our best to obtain this information from the documents we have received (none of which were pursuant to Watch Plaintiff requests), but that we do not possess the CID that defined the contours of the Government Investigation, or the search and production parameters used to provide documents for the Government Investigation, which precludes us from knowing what types of documents the Government did and did not request, and what types of documents relevant to the Watch case Apple may not have produced. We explained that is one reason such a process would be insufficient to identify the titles and times of service of Apple employees relevant to the Watch case.*

*You then expressed concern that our request would include all Apple employees as custodians. We explained that the request does not ask for that—it asks for documents sufficient to show Apple employees, their titles, and time in service, so that (among other things) we can determine which individuals would be appropriate custodians. We asked why it would be a problem to provide this information and you explained that in the "normal course" of civil litigation it might be appropriate, but that you do not think it is appropriate here because we possess the Government Investigation documents that, in your view, can help us obtain custodian information. You explained that you think we should review the Government Investigation documents and if we think there is anything missing, we should come back to Apple with a draft motion to compel production of documents covering the missing information, at which point you would agree to review the documents yourselves and, if you agree that documents are missing, you would provide them. We expressed our view that such a process would be more unmanageable than the one we proposed, and that Apple is wrongly assuming that because we may be able to identify certain relevant individuals from the Government Investigation documents, that we do not need and are not entitled to obtain documents identifying other individuals that are relevant but who cannot be identified from the Government Investigation documents. You responded by providing an example: we could review the documents and if we did not see anything on the topic of notifications, then we would know that no documents touch on that topic and could request them. We provided a counterexample illustrating why that would not work: Apple and Government may have agreed to search terms and to produce the top 100 documents based on a*

*relevance metric, and that yield may include some documents touching on a relevant topic, but there could have been 100,000 documents past that first set within which there is relevant and highly probative information, and we would have no way of knowing.*

*You then said that you understood the request to be aimed at identifying custodians and that you questioned the relevance of the requested information outside of that purpose. We explained that identifying custodians was not the request's only purpose, and that there are certainly Apple employee identities, titles, and time in service that are discoverable, independent of whether that information is used to identify custodians. We then agreed to advance the discussion in writing.*

*Our view remains that our request is reasonably designed and proportionally tailored to elicit discoverable information relevant to the claims or defenses, and that you should agree to produce the material requested. Further, to the extent you object on the basis of overbreadth, Rule 34(b)(2)(C) places the burden on you to specify the portion you contend is overbroad and to provide the rest. To the extent you are willing to specify the roles, departments, or topics that you believe are objectionable, we remain willing to consider narrowing the request.*

<u>Apple Response</u>

Apple maintains its objections to RFP 66. Apple remains willing to meet and confer regarding any specifically tailored request identifying particular roles, teams, or subject areas where Watch Plaintiff believes additional personnel information is necessary.

This Request seeks information about every current or former Apple employee who had any involvement in "design and development," "marketing," or "business operations related to the Apple Watch" over the product's entire lifespan, which now exceeds a decade, as well as any Apple employee with "responsibility with respect to" more than a dozen enumerated technologies and features, each defined broadly. Apple has over 160,000 current full-time employees and many more former employees. Apple does not maintain org charts in the ordinary course of business, nor does it maintain a centralized database or document cataloging every employee who has worked on Apple Watch since its inception. Apple does not currently know how many employees have worked on these technologies in the period at issue in Watch Plaintiff's request, but the number could be in the tens of thousands. Identifying all these individuals would be an unduly burdensome and overwhelming process to no clear end. Even if Apple could undertake that burdensome effort, it would yield a document of little probative value. Many such employees will have no knowledge relevant to Watch Plaintiff's claims. Nor is it clear how Watch Plaintiff would use a list of thousands of names paired with often generic titles like "software engineer" or "project manager."

Watch Plaintiff has not identified any reason why this information is relevant to his claims or how he would make use of a list of a significant number of names of Apple employees. To the extent Watch Plaintiff believes this information is relevant to his claims, please provide further explanation as to that relevance so Apple can evaluate this request with that context.

Watch Plaintiff may, perhaps, assert the list he seeks would be useful to him in connection with negotiating custodians. But this Request is not an appropriate tool for custodial negotiations, either. The parties should address custodians in the context of Apple's forthcoming custodian proposal. If Watch Plaintiff has a good-faith belief that the custodians Apple proposes are insufficient in some way with respect to his claims, tell us, and we will investigate.

Watch Plaintiff argues that Apple should specify which "roles, departments, or topics" of all those he requests are irrelevant. This argument misapprehends both Apple's objection and the parties' respective obligations. Apple's objection is not that discrete portions of the Request are overbroad while the remainder is appropriate. The Request as a whole—seeking a comprehensive roster of Apple employees with responsibilities on a wide variety of topics over more than a decade—has no relationship to any legitimate discovery purpose. There is no non-objectionable "remainder" to produce. Asking Apple to itemize every department or role that falls outside the bounds of proportional discovery would require Apple to undertake the very burden Watch Plaintiff seeks to impose: cataloging Apple's organizational structure in exhaustive detail. Rule 34 does not require a responding party to perform that exercise in order to sustain an objection to an overbroad request. Indeed, the Advisory Committee Notes for Rule 34 make clear that "[t]he producing party does not need to provide a detailed description or log of all documents withheld, but does need to alert the other parties to the fact that documents have been withheld and thereby facilitate an informed discussion of the objection." Fed. R. Civ. P. 34, Advisory Committee Notes. Apple has done exactly that and is actively meeting and conferring with Watch Plaintiff to understand if there is any relevant subset of materials responsive to this request that Apple could produce. This is all Rule 34 requires.

To clarify our discussion on January 26, Apple does not agree that Watch Plaintiff's request would be reasonable or proportional in "the normal course." When we referred to "the normal course" during our discussion on January 26, we were referring to the fact that a plaintiff serving requests for production usually has received few or no documents from the defendant and might have little or no information about the defendant's internal structure. Apple maintains that Watch Plaintiff's request would be overbroad and disproportional even in such a case. However, the request is particularly inappropriate here as Watch Plaintiff has already received millions of documents providing significant insight into the individuals and roles inside Apple who have corresponded about topics related to Watch Plaintiff's claims over the course of years. Watch Plaintiff has also received all information Apple has shared with the Government Plaintiffs in connection with custodial negotiations in the Government Action about the roles and tenures of a significant number of Apple personnel. Watch Plaintiff therefore has significant information from which to identify any substantive gaps in information. If Watch Plaintiff identifies areas in which he requires additional information to prove his case, Apple is of course willing to discuss those specific areas, potentially relevant personnel—including potential custodians—and to assist him in preparing a narrowly tailored request for supplemental information about specific teams, projects, or issues where that information would be, in some way Watch Plaintiff has not yet articulated, relevant to his claims. That approach is far more reasonable, proportional to the needs of the litigation, and tailored to Watch Plaintiff's claims than requiring Apple to compile an exhaustive roster of every employee who ever had responsibilities for any of the broad range of topics identified in the Request.

**<u>Watch RFP 67</u>**: All Documents relating to Apple's internal policies, practices, and guidelines relating to U.S. antitrust laws.

<u>Plaintiff Letter Statement</u>

*You explained that, in this response, "sufficient to show" indicates a targeted collection, and thus you are offering to make a targeted collection of Apple's formal internal policies or guidelines relating to U.S. antitrust compliance. We asked what you meant by "formal," and you explained that you were attempting to exclude, for example, emails discussing minutiae related to antitrust compliance, like scheduling trainings on the topic. We explained that we are not interested in such minutiae, but asked whether Apple had any "informal" policies or practices regarding U.S. antitrust laws—including, for example, any instructing employees on ways to communicate to avoid creating material probative of*

*antitrust violations—and, if so, whether those would be included or excluded. You said that you would look into whether such informal policies or practices exist and, if so, how to address them.*

Apple Response

Apple is not aware of any policies, formal or informal, instructing employees on ways to communicate to avoid creating material probative of antitrust violations.

Apple will agree to conduct a targeted collection of formal internal policies relating to U.S. antitrust compliance. Apple interprets "formal" to mean established policies or guidelines, as opposed to ad hoc emails or administrative communications that do not reflect substantive policy.

**Watch RFP 68**: All consumers comments regarding the Apple Watch, whether stored as Documents or structured data.

Plaintiff Letter Statement

*You expressed your view that this request is overbroad because it may include consumer comments regarding the Apple Watch that do not relate directly to issues we described in Watch Plaintiffs' complaint, and that to the extent they relate to Apple's defenses, any obligation would ultimately be satisfied once Apple disclosed the documents it intended to rely on at trial. We explained that the scope of discovery exceeds the documents that Apple intends to rely on at trial and that if Apple will identify topics that it thinks should be excluded, we would consider them. You responded that you do not believe it is Apple's burden to identify the portions of the request that are the basis of its overbreadth objection. We disagree and think that it is your burden, pursuant to Rule 34(b)(2)(C).*

*Our position remains that this request is reasonably designed and proportionally tailored to elicit discoverable information relevant to the claims or defenses, that you should agree to produce the material requested, and that to the extent you are willing to specify the material that you believe is objectionable, we remain willing to consider narrowing the request.*

Apple Response

Watch Plaintiff's Request is overbroad and unduly burdensome because it seeks "[a]ll consumer comments regarding the Apple Watch" regardless of their topic. Rule 26 limits the scope of discovery to relevant information proportional to the needs of the case. Watch Plaintiff has identified what information is relevant by pleading allegations in his Amended Complaint. Watch Plaintiff disregards his own allegations by demanding that Apple produce every comment it has ever received about Apple Watch. Nor is it appropriate to suggest that a party can draft an overbroad request, only to put the burden on the opposing party to define the appropriate contours of discovery. After all, Rule 34(b)(2)(C) does not require Apple to draft Watch Plaintiff's Request for him. Apple has stated the basis of its objection with specificity and has proposed a reasonable scope tied to Watch Plaintiff's own allegations. That scope is proportional and aligned with Rules 26 and 34.

Moreover, Watch Plaintiff cannot justify sweeping in every consumer comment concerning Apple Watch simply because Apple may defend itself by arguing that consumers prefer Apple Watch. A requesting party may not use discovery to conduct a "fishing expedition" grounded only in speculation that further materials might uncover favorable evidence. *See Schneck v. IBM*, 1993 WL 765638, *2 (D.N.J. July 27, 1993) (quoting *Marshall v. Westinghouse*, 576 F.2d 588, 591 (5th Cir. 1978)).

Accordingly, Apple will agree to conduct a targeted collection and produce non-privileged responsive documents related to customer comments related to features of Apple Watch included in the Watch Plaintiff's Consolidated Complaint to the extent such documents exist and can be located through a reasonable search. To the extent Apple seeks to introduce customer comments related to Apple Watch features not mentioned in the Watch Plaintiff's Consolidated Complaint as part of Apple's defense, Apple will agree to produce those in connection with RFP 2.

**Watch RFP 69**: All Communications from iPhone customers to Apple relating to Third-Party Smartwatches, and all Documents and Communications relating to those Communications, including, but not limited to customer complaints, compliments, questions, comments, or suggestions.

Plaintiff Letter Statement

*You expressed your view that this request is overbroad because it may include iPhone customer Communications that are not relevant to Watch Plaintiffs' claims. We disagreed and noted that, even assuming for the sake of argument that were true, the proper scope of discovery would also include material that is relevant to Apple's defenses. You responded that such material would be covered by Apple's obligation to produce material it intends to rely on at trial. We explained that the scope of documents relevant to a defense exceeds that of documents the defendant relies on. You said that you would consider our position.*

*Our view remains that this request is reasonably designed and proportionally tailored to elicit discoverable information relevant to the claims or defenses, but that if you are willing to specify the material that you believe is objectionable, we are willing to consider narrowing the request.*

Apple Response

Watch Plaintiff's Request is overbroad and unduly burdensome because it seeks "[a]ll Communications from iPhone customers to Apple relating to Third-Party Smartwatches" (and all Documents and Communications related to them), regardless of topic. Rule 26 limits the scope of discovery to relevant information proportional to the needs of the case. Watch Plaintiff has identified what information is relevant by pleading allegations in his Amended Complaint. Watch Plaintiff disregards his own allegations by demanding production of every communication related to any non-Apple smartwatch, including communications that do not relate to anything alleged in the Watch Plaintiff's Consolidated Complaint. Nor can Watch Plaintiff justify that request because Apple might argue that users dislike some features of non-Apple smartwatches.

Accordingly, Apple will agree to conduct a targeted collection and produce non-privileged responsive documents related to communications from iPhone customers to Apple which relate to interoperability aspects of Third-Party Smartwatches specifically identified in Watch Plaintiff's Consolidated Complaint to the extent such documents exist and can be located through a reasonable search. To the extent Watch Plaintiff seeks documents relating to Apple's potential defenses, Apple will produce those documents in connection with RFP 2.

**Watch RFP 70**: All Documents relating to criticisms or complaints from consumers, Third-Party Smartwatch Makers, Developers of Third-Party Smartwatch Apps, reporters, or media outlets relating to

the interoperability of the Apple Watch with the iPhone and the interoperability of Third-Party Smartwatches with the iPhone.

Plaintiff Letter Statement

*You asked what the words "criticisms" and "complaints" meant in our request. We explained that we meant them to be interpreted based on their ordinary usage. You said that you would consider your response in light of that clarification.*

*You also asked if we would consider limiting the request to criticisms or complaints relating to differences between the interoperability of, on one hand, iPhones and Apple Watches and, on the other hand, iPhones and Third-Party Smartwatches. We said that we would consider it, but that there were a number of important reasons why that would exclude relevant material—including but not limited to material that would help us determine timelines related to interoperability issues, and material relevant to reasonably anticipated defenses. You said that you would consider our position and get back to us.*

*Our position is that this request is reasonably designed and proportionally tailored to elicit discoverable information relevant to the claims or defenses and that you should produce the requested information. If you propose portions of the requested material that you think are objectionable, however, we are willing to consider narrowing the request.*

Apple Response

This Request is overbroad and unduly burdensome for the same reasons as Watch Plaintiff's Requests 68 and 69. Watch Plaintiff has defined the scope of relevant information with his allegations. He cannot dramatically expand that scope to include all documents in Apple's possession by gesturing at the fact that Apple will defend itself. Nor can he insist on the production of documents unrelated to his allegations on the basis of preparing "timelines." Apple made a good-faith offer to narrow this Request by asking Watch Plaintiff to accept production of criticisms or complaints concerning interoperability *differences* between (1) iPhone and Apple Watch and (2) iPhone and Third-Party Smartwatches—already a significant expansion beyond the scope of Watch Plaintiff's actual allegations. Watch Plaintiff would not accept even that eminently reasonable limitation.

Apple will only agree to produce non-privileged documents that relate to alleged interoperability differences between Apple Watch and Third-Party Smartwatches specifically identified in Watch Plaintiff's Consolidated Complaint to the extent such documents exist and can be located through a reasonable search. To the extent Apple seeks to introduce evidence of criticisms or complaints from consumers, developers, or manufacturers regarding alleged interoperability issues unrelated to anything specifically alleged in Watch Plaintiff's Consolidated Complaint, Apple will produce those documents in connection with RFP 2.

**Watch RFP 71**: All Communications or Agreements with third parties relating to Smartwatches, including, but not limited to Communications or Agreements with representatives or employees of Amazfit, AT&T, Citizen, Core Devices LLC, Fitbit, Fossil, Garmin, Google, HMD America, HMD Global, Meta, MijoConnected, Motorola, Pebble, Samsung, T-Mobile, TracFone, Verizon, and Withings and all Documents and Communications relating to those Communications or Agreements.

Plaintiff Letter Statement

*RFP 71 seeks all Communications or Agreements with third parties relating to Smartwatches. You asked if the list of third parties we provided in our RFP was exhaustive and we confirmed that it was a non-exhaustive list. We confirm here that the list is non-exhaustive and identifies third parties that either made*

*smartwatches or provided services related to smartwatches, and in some cases also developed pertinent apps. You asked that we narrow the "Agreement" component of RFP 71 to "Agreements that relate to smartwatches that relate to alleged conduct in the Complaint." We responded that we would get back to you and conveyed a belief that agreed-upon search terms would achieve a similar goal. You stated burden and overbreadth objections to the "Communication" component of this request. We asked whether Apple would still be making a burden objection if we limited it to the entities listed in RFP 71. You said you would consider that proposal. You further stated that you believed such a search would still yield irrelevant documents. The existence of some irrelevant documents in a search's yield does not necessarily invalidate the search, and this one is reasonably designed and proportionally tailored to elicit discoverable information relevant to the claims or defenses. Moreover – and as with our position on the "Agreement" component – we are willing to consider narrowing the request by curating search terms and custodians.*

<u>Apple Response</u>

Apple does not agree with Watch Plaintiff's assertion that RFP 71, as drafted, seeks relevant information proportional to the needs of the case. RFP 71 seeks "all Communications or Agreements with third parties relating to Smartwatches," without any limitation to the Alleged Conduct. As drafted, this Request would cover all communications with a vast universe of third parties with whom Apple has ever corresponded on topics related to Smartwatches with no connection to the Alleged Conduct—for example, third parties engaged on product design, hardware components, software development, testing, or other routine commercial or technical matters unrelated to the Alleged Conduct—as well as all internal Apple communications "related" to those third-party communications. In that form, RFP 71 is overbroad, unduly burdensome, and not proportional to the needs of the case.

Apple's productions in response to RFPs 29, 29.1, 50, 51.1, and 51.2 encompass agreements, including those between Apple and the third parties specifically identified in RFP 71, to the extent such agreements relate to the Alleged Conduct. To the extent Watch Plaintiff believes this Request warrants the production of additional agreements with the specified third parties not captured by the aforementioned RFPs, Apple is willing to meet and confer regarding any specific requests. Apple agrees to produce non-privileged documents related to Apple's communications with the third parties enumerated in RFP 71 to the extent such documents exist and can be located through a reasonable search. This proposal reflects Apple's good-faith effort to respond to Watch Plaintiff's Request while avoiding the disproportionate burden imposed by RFP 71 as drafted.

**<u>Watch RFP 72</u>**: All Documents related to the App review of any Identified Product or Service, including, but not limited to, any App, Companion App, or Sister App for any Smartwatch.

<u>Plaintiff Letter Statement</u>

*RFP 72 seeks all Documents related to the App review of any Identified Product or Service like any App, Companion App, or Sister App for any Smartwatch. You raised confidentiality concerns like financial information from the developer and potential privacy issues in how the App operates in the context of App review. We asked if your position was that Apple is not obligated to produce third party confidential information. You answered: no. You asked that we narrow it to specific Apps or features. We said that we would consider proposing a list by name or category. A proposal is forthcoming.*

<u>Apple Response</u>

Apple will respond to Watch Plaintiff when he provides a position, including meeting and conferring as appropriate. During our conversation on January 27, we told you that while Apple is not asserting third-party confidentiality as a basis on its own to withhold documents from production for this

GIBSON DUNN



Request, the presence of third-party confidential information and Apple's third-party confidentiality obligations are a significant factor in evaluating the burden of reviewing and producing documents that are likely to include such information, including both whether such documents are relevant and whether reviewing and producing them is proportional to the needs of the case. Apple will appropriately consider those factors in connection with negotiating the appropriate scope of discovery.

**Watch RFP 73**: All Documents relating to incentive programs for Developers of Third-Party Smartwatch Apps, including any eligibility restrictions prohibiting Developers of Third-Party Smartwatch Apps from directing consumers to make out-of-app transactions, and any restrictions prohibiting App Developers from directing consumers to Third-Party Smartwatch Apps.

Plaintiff Letter Statement

*RFP 73 seeks all Documents relating to incentive programs for Developers of Third-Party Smartwatch Apps, including any eligibility restrictions prohibiting Developers of Third-Party Smartwatch Apps from directing consumers to make out-of-app transactions, and any restrictions prohibiting App Developers from directing consumers to Third-Party Smartwatch Apps. Your objection included "sufficient to show" language. We asked what that meant here and you answered that you would get back to us. We also asked Apple to confirm that it will search for related Documents from items we listed after the word "including" in RFP 73, and you said you would get back to us.*

Apple Response

Without waiving its objections, Apple will agree to produce non-privileged documents to the extent such documents exist and can be located through a reasonable search. In addition, Apple will search for responsive documents relating to the categories of materials identified after the word "including" in RFP 73 to the extent such documents exist and can be located through a reasonable search.

**Watch RFP 74**: All Documents related to any threat to user security or privacy due to the inability to send encrypted messages between iPhones and Third-Party Smartphones or Third-Party Smartwatches.

Plaintiff Letter Statement

*RFP 74 seeks all Documents related to any threat to user security or privacy due to the inability to send encrypted messages between iPhones and Third-Party Smartphones or Third-Party Smartwatches. We asked about the "sufficient to show" component of your objection. You answered that it referred to a non-custodial production – that Apple would gather any kind of analysis from specific people or specific sources. Your response to RFP 74 said that Apple was willing to provide "Documents sufficient to show its analyses regarding potential security or privacy risks." We asked if that would exclude communications and you answered that your counter was not intended to categorically exclude anything. We said we would consider your proposal and get back to you. Our position is that this request is reasonably designed and proportionally tailored to elicit discoverable information and that you should produce all of the requested information, including all relevant documents and communications, not just Apple's analyses. If you intend to maintain your objection as to burden and proportionality, please explain in concrete terms what the burden would be (number of documents, number of custodians, etc.) and what you've done to arrive at that information.*

Apple Response

Without waiving its objections, Apple will agree to produce non-privileged responsive documents to the extent such documents exist and can be located through a reasonable search.

**Watch RFP 75**: All Documents related to any effort or decision by Apple to prevent or limit any third-party Developer's ability or permission to provide or enable end-to-end encryption for messages sent from Third-Party Smartwatches.

Plaintiff Letter Statement

*RFP 75 seeks all Documents related to any effort or decision by Apple to prevent or limit any Third-Party Developer's ability or permission to provide or enable end-to-end encryption for messages sent from Third-Party Smartwatches. We asked about the "sufficient to show" component of your objection and you answered that, similar to your response to RFP 74, "sufficient to show" referred to a targeted, rather than a custodial collection. We also stated that your response was limited to "analyses Apple prepared" and omitted other Document types like communications. We noted that we could not accept that position and that we need all relevant, non-privileged Documents responsive to this request. You stated that you would get back to us.*

Apple Response

Without waiving its objections, Apple will agree to produce non-privileged responsive documents to the extent such documents exist and can be located through a reasonable search.

**Watch RFP 76**: All Documents related to any threat to user security or privacy due to the inability to send encrypted messages from Third-Party Smartwatches.

Plaintiff Letter Statement

*RFP 76 seeks all Documents related to any threat to user security or privacy due to the inability to send encrypted messages from Third-Party Smartwatches. You asked about the difference between RFP 76 and RFP 74, and we clarified that RFP 76 would cover the inability to send encrypted messages from Third-Party Smartwatches to, for example, Android phones or an Apple Watch, including in a group text situation (e.g., a user with an iPhone and a Garmin smartwatch is sending texts to another user with an Apple Watch or to another user with an Android phone). You stated that Apple would get back to us on RFP 76. Additionally, we ask that you confirm whether the use of "sufficient to show," in your response to RFP 76 is the same as the phrase was used as in RFP 74.*

Apple Response

Based on Watch Plaintiff's explanation above and during the January 27 meet and confer, we understand that RFP 76 differs from RFP 74 in that RFP 76 is intended to further capture, to the extent such documents exist, documents relating to scenarios in which an iPhone user seeks to send encrypted messages from a third-party smartwatch to other devices, including Android phones or Apple Watches. Apple further understands that Watch Plaintiff is not seeking documents relating to messaging exclusively involving third-party smartwatches paired with non-iPhone devices.

Subject to this clarification, Apple will agree to produce non-privileged responsive documents to the extent such documents exist and can be located through a reasonable search.

**Watch RFP 77:** All Documents related to coding bugs affecting Apps and iOS updates related to Third-Party Smartwatches, including, but not limited to, bug reports and bug tickets.

<u>Plaintiff Letter Statement</u>

*RFP 77 seeks all Documents related to coding bugs affecting Apps and iOS updates relating to Third-Party Smartwatches, including, but not limited to, bug reports and bug tickets. We asked if Apple would be willing to provide categories or data fields about how bug tickets are stored to aid us in narrowing the request. You responded by asking us to identify specific apps or specific bugs, contending that our request seeks an immense volume of irrelevant Documents. We responded by asking what you have done to determine the responsive volume of Documents and you answered that you were making a preliminary point of relevance objection. We then asked if you would rest on the same objection if we were to narrow the Apps portion of our request to a discrete list of Apps that we would identify. You answered that you may still object because, for example, there could be bugs that impact a Third-Party Smartwatch App that without specifically naming the App. We propose to limit to this request as follows:*

*All Documents related to coding bugs: (1) associated with the incidents identified in the Watch Plaintiffs' Amended Complaint, including but not limited to ¶¶131-187; or (2) affecting Listed Products (as defined below) or Identified Apps (that list is forthcoming) including, but not limited to, bug reports and bug tickets identifying (or, through Apple's records, associated with) a Listed Product or Identified App. Watch Plaintiffs reserve the right to amend this request if they become aware of other relevant third-party smartwatches or apps, or other incidents similar to those described in the Amended Complaint. "Listed Products" means a smartwatch or wearable device or platform made by Amazfit, Citizen, Core Devices LLC, Fitbit, Fossil, Garmin, Google, HMD America, HMD Global, MijoConnected, Motorola, Pebble, Polar, Samsung, and Withings.*

*This narrowed request is intended to capture bug reports and bug tickets that explicitly reference the Listed Products or Identified Apps, or bug reports and bug tickets that Apple has identified as being associated with those Listed Products or Identified Apps through, for example, how Apple stores the reports and tickets.*

<u>Apple Response</u>

Without waiving its objections and reserving all rights, Apple is assessing the availability and accessibility of the data described in Watch Plaintiff's Request as narrowed above and will follow up with Watch Plaintiff regarding this Request.

**<u>Watch RFP 78</u>**: Documents sufficient to show how Apple tracks, logs, and monitors changes to software code related to the Apple Watch and Third-Party Smartwatches, including, but not limited to, Jira logs and other project management documentation.

<u>Plaintiff Letter Statement</u>

*Apple's objections include a vagueness objection to "changes" and "project management documentation." We clarified that by "changes" we mean: additions or deletions to software code. And by "project management documentation," we mean: documentation that is created in or by a project management tool like Jira – the one that we named in the request. We asked if you had any further questions about those terms; you did not posit any.*

*You asked what it means to track and log, and we clarified that we are looking for documents sufficient to show how Apple records changes to software code that affect the Apple Watch and Third-Party Smartwatches. You asked whether this would include situations where Apple employees discuss coding changes via messaging channels like* [redacted]*. We confirmed that if* [redacted] *conversations were the only place*

*where documentation of those coding changes existed, then yes, we would want documents sufficient to demonstrate that. You indicated that actual software code changes are identified in a type of repository.*

*You additionally asked how this request is relevant to our allegations. We answered that it is relevant, among other things, to allegations that Apple made software changes to negatively impact Third-Party Smartwatches and that this request is tailored to avoid asking for all the changes to software code. See, e.g., Amend. Compl., ECF 86 ¶¶131-187. You asked us to consider limiting our request to the functionalities described in the complaint. We agreed to consider that request, although we noted that although we have specific allegations about particular instances of Apple's changes to its code disrupting or degrading competitor smartwatches, it is impossible for us to identify all of the ways in which Apple may have changed its code to accomplish that. We also reiterated that we are not asking for documents sufficient to show all of Apple's code or all of the changes to Apple's code, but rather documents sufficient to show how Apple tracks, logs, and monitors changes to software code related to the Apple Watch and Third-Party Smartwatches.*

*We confirm here that we are not willing to limit this request to particular functionalities. This request is reasonably designed and proportionally tailored to elicit discoverable information and Apple should produce the requested information. As we stated during the meet and confer, if you can identify certain sources that you believe contain only irrelevant information, we are willing to consider that.*

Apple Response

Watch Plaintiff's Request, as drafted, is overbroad and unduly burdensome. This Request should be limited to the topics put at issue in Watch Plaintiff's Consolidated Complaint.

Apple nevertheless will agree, as a compromise and without waiving its objections, to conduct a targeted collection of non-privileged, non-source code documents related to how Apple tracks, logs, and monitors changes to software code related to the Apple Watch and Third-Party Smartwatches, to the extent such documents exist and can be located through a reasonable search.

**Watch RFP 80**: All Documents related to the limitations on, or requirements, procedures, or steps required to enable, the display of health and fitness data collected from a Third-Party Smartwatch in Apple's iPhone Health App or Apple's iPhone Fitness App, including, but not limited to the syncing of data collected from a Third-Party Smartwatch to these Apps, the use of Third-Party Smartwatch data with Apple's movement rings, and Apple's priority system for setting the Health App's data sources.

Plaintiff Letter Statement

*RFP 80 seeks Documents related to the display of health and fitness data collected from a Third-Party Smartwatch in Apple's iPhone Health App or Apple's iPhone Fitness App. We first asked what "sufficient to show" means in the context of Apple's response and you responded that Apple was proposing a targeted collection as opposed to a custodial collection. We responded by asking you to perform a custodial collection.*

*You asked us what some phrases in this RFP meant and we offered responses but agreed to confirm in writing. We confirm here that: the phrase "steps required to enable" refers to the steps that a developer or a user would be required to take to enable the display of health and fitness data collected by a third-party; and the phrases "requirements" and "procedures" refer to requirements or procedures for developers or users to display health and fitness data. In response to your question about whether it was relevant to the allegations, we answered that it was relevant to ¶143 as just one example. For other*

*examples of relevant allegations, see the section of the Amended Complaint entitled "Apple has degraded the delivery of health data from third-party smartwatches and the companion and sister apps that support them." Amend. Compl. ¶¶153-155. You also asked whether there are allegations about the use of Third-Party Smartwatch data with Apple's movement rings in Watch Plaintiffs' Amended Complaint. Although the term "movement rings" does not appear in the Amended Complaint, the request is calculated to discover information directly relevant to Watch Plaintiffs' allegations about delivery of health data from third-party smartwatches versus Apple Watches—e.g., t ¶¶ 47, 124, 133, 141-43, 153-155, 185, 229.*

Apple Response

In the interest of compromise and without waiving its objections, Apple will agree to produce non-privileged documents related to the limitations on, or requirements, procedures, or steps required to enable, the display of health and fitness data collected from a Third-Party Smartwatch in Apple's iPhone Health App or Apple's iPhone Fitness App, including documents related to the topics following the word "including" in this Request, to the extent such documents exist and can be located through a reasonable search.

**Watch RFP 84**: All Documents related to requests by third parties to access iPhone protocols used by AirPods for third-party connected devices and any response by Apple to such requests.

Plaintiff Letter Statement

*RFP 84 requests Documents relating to requests by third parties to access iPhone protocols used by AirPods for Third-Party connected devices. You asked how this is relevant to our allegations. We answered that it is relevant to the allegations that third-parties may seek API access to Apple's products and relevant to your justification defenses, e.g., about privacy and security issues in the connection between third-party devices, from a comparator/control group standpoint. You stated that you would get back to us on this.*

Apple Response

This Request is facially overbroad, unduly burdensome, and disproportional to the needs of the litigation. Watch Plaintiff cannot justify this Request on the basis that he alleges that third party devices may seek access to iOS APIs. Watch Plaintiff alleges specific instances of third-party iOS API access in Watch Plaintiff's Consolidated Complaint. Those allegations do not justify discovery into all documents related to iOS APIs. Nor, as already discussed above, does the fact that Apple will defend itself against Watch Plaintiff's claims justify discovery into an accessory as to which Watch Plaintiff does not allege Apple has engaged in anticompetitive conduct. Apple is available to meet and confer further regarding this Request if Watch Plaintiff is able to articulate an adequate connection between the information it seeks and Watch Plaintiff's allegations.

**Watch RFP 85**: All Documents relating to Apple's use of Privacy Warning Screens relating to Third-Party Smartwatches and Third-Party Smartwatch Apps, including, but not limited to, Documents relating to Apple's decision to use or require (or not to use or require) a Privacy Warning Screen, Apple's decisions regarding which Privacy Warning Screens should appear for users of the Apple Watch, the frequency with which Privacy Warning Screens are presented to users of distinct Apps and how those frequencies are determined, internal Communications regarding Privacy Warning Screens' effects on Third-Party Smartwatches and Third-Party Smartwatch Apps, and Communications with Third-Party Smartwatch Makers and Developers of Third-Party Smartwatch Apps regarding Privacy Warning Screens.

Plaintiff Letter Statement

*Watch Plaintiffs request Documents relating to Apple's use of Privacy Warning Screens relating to Third-Party Smartwatches and their apps. You asked us to define the terms "use," "require" and "decision." We explained that these three terms' definitions accord with their ordinary usage.*

*We explained that what Apple's proposal to produce "documents sufficient to show Apple's use of privacy warning screens" would be insufficient, that this request is directly relevant to our allegations (we note here, for example, the allegations at Amended Complaint ¶¶164-174, referring to Privacy Warning Screens as "scare screens"). And that we were happy to discuss another proposal or to hear why, in Apple's view, this request would be unduly burdensome or not proportional. You agreed to consider our comments and get back to us.*

Apple Response

Without waiving its objections, Apple will agree to produce non-privileged documents related to Apple's use of Privacy Warning Screens on iPhone relating to Third-Party Smartwatches to the extent such documents exist and can be located through a reasonable search.

**Watch RFP 86**: All Documents related to Apple's decision to display heart rate variability in the Health App based upon the Standard Deviation of Normal-to-Normal interval (SDNN) method, or any other method of displaying heart rate variability in the Health App that is employed by Apple, as well as Apple's decision not to display other measures of heart rate variability, including, but not limited to the Root Mean Square of Successive Differences (RMSSD) method.

Plaintiff Letter Statement

*Watch Plaintiffs request All Documents related to Apple's decision to display heart rate variability in the Health App based on the Standard Deviation of Normal-to-Normal interval (SDNN) method as opposed to another method like the Root Mean Square of Successive Differences (RMSSD). We first asked you why your response changed the word "display" to "exported." You answered that the term "exported" accurately describes what the health app interaction with smartwatches is, and was not intended to hide information, and that you will get back to us.*

*We additionally asked about your use of the phrase "sufficient to show" in your response. You stated that you were proposing a targeted collection but would be willing to consider a custodial collection.*

*We asked to confirm that Apple was agreeing to search for the two heart rate methods that we identified (SDNN and RMSSD). You said that was your understanding, but that you could confirm to be perfectly clear.*

Apple Response

Apple confirms that its use of the term "exported" was intended to describe accurately the interaction between a smartwatch and the iOS Health app—data displayed in the Health app from a data source like a smartwatch must be exported from the data source before it can be displayed. Apple will not withhold any documents based on its use of the word "exported" in its response to Watch Plaintiff's Request.

Without waiving its objections, Apple will agree to conduct a custodial search, rather than a targeted search, for this Request.

Apple will agree to produce non-privileged documents related to Apple's decision to export and display heart rate variability calculated using SDNN in the Health App, as well as, any decisions regarding whether or not to export and display heart rate variability in the Health App using RMSSD, to the extent such documents exist and can be located through a reasonable search.

**Watch RFP 87**: All Documents related to Apple's decision to have the Bluetooth toggle button in the iPhone Control Center disconnect non-Apple devices, including, but not limited to Third-Party Smartwatches, as well as the decision to have the button not disconnect the Apple Watch or other Apple products connected to the iPhone in part or in full via Bluetooth.

Plaintiff Letter Statement

*RFP 87 seeks Documents related to Apple's decision to have the Bluetooth toggle button in the iPhone Control Center disconnect non-Apple devices, as well as the decision to have the button not disconnect the Apple Watch.*

*We first asked what you meant by using "sufficient to show," and you answered that your initial proposal was to respond to this request on a targeted basis, but that you were open to discussing a custodial search. We responded we would confirm in our letter, but that a custodial search would be better for this RFP because it was trying to identify the decision to establish differential treatment. We noted that it seems unlikely that many Apple employees were involved in this decision. We confirm here that we believe a custodial search is appropriate.*

*You asked us what we meant by "decision." We stated that it referred to the decision to disconnect as to the third-party devices and/or the decision not to do that as to Apple devices, because we do not know the exact source for the difference in how Apple Watches and third-party devices respond to the Bluetooth toggle button. You additionally asked us what we mean by the word "disconnect." We referred you to the allegations that Apple creates problems that cause competitor smartwatches to lose connection from paired iPhones and constrain the information competitor smartwatches can provide their users. See, e.g., Amend. Compl. ¶¶ 3, 131, 156, 160, 161, and 175-87.*

Apple Response

Without waiving its objections, Apple will produce non-privileged documents relating to Apple's decision, if any, to have the Bluetooth toggle button in the iPhone Control Center disconnect non-Apple devices, including, but not limited to Third-Party Smartwatches, as well as the decision, if any, to have the button not disconnect the Apple Watch or other Apple products connected to the iPhone in part or in full via Bluetooth to the extent such documents exist and can be located through a reasonable search.

Sincerely,

GIBSON, DUNN & CRUTCHER LLP

# Exhibit M

## CONFIDENTIAL - FILED UNDER SEAL

MOLOLAMKEN

Matthew E. Gold
MoloLamken LLP
300 North LaSalle Street
Chicago, IL 60654
T: (312) 450-6711
M: (312) 339-8259
mgold@mololamken.com
www.mololamken.com

May 15, 2026

**VIA EMAIL**

Connor S. Sullivan
Jason Lo
cssullivan@gibsondunn.com
jlo@gibsondunn.com

Re: *In re Apple Inc. Smartphone Antitrust Litigation*, 2:24-md-03113
Watch Plaintiffs' RFPs

Connor and Jason,

As we await your complete response to our proposed search terms, we write to flag a potential issue affecting our understandings as to Watch RFPs 8.1, 50.1, 70, 71, and 88. For this list of RFPs, we had understood, as reflected in our April 10 letter, that the outstanding disputes on these RFPs would be resolved through the negotiation of search terms and custodians. Apple has since informed us that its documents responsive to these search terms will be subject to further responsiveness review (beyond a mere privilege review). We therefore seek clarification about the scope of what Apple understands to be covered by the below requests.

- **RFP 8.1 and 88**: Will Apple produce documents responsive to search terms that indicate both interoperability non-differences and interoperability differences between how iPhone interoperates with Apple Watch and how iPhone interoperates with third-party smartwatches?

- **RFP 50.1**: To address Apple's concerns with the breadth of apps implicated by this request, Watch Plaintiffs have offered to use search terms that limit implicated apps to specified Third-Party Smartwatch Companion Apps and Sister Apps designed to be used with Third Party Smartwatches. With this assurance, please confirm that Apple will produce all non-privileged documents responsive to Watch Request 50.1.

- **RFP 70**: On March 11, Apple wrote "Apple will only agree to produce non-privileged documents that relate to alleged interoperability differences between Apple Watch and Third-Party Smartwatches *specifically identified in Watch Plaintiff's Consolidated Complaint* to the extent such documents exist and can be located through a reasonable search." We responded on March 20 that we would

"agree to limit these RFPs to documents relating to: interoperability *(not only those interoperability issues described in the* [*Consolidated*] *Complaint); privacy or security; price or value; and other smartwatches*." But on May 6, Apple reiterated that it "maintains its objections" and wrote that "Watch Plaintiff has not shown, or attempted to show, that discovery into interoperability issues he did not allege is relevant or proportional to the needs of the case." We understand that we are at impasse as to RFP 70 following your May 6 letter.

- **RFP 71**: Like the above RFP 70, Apple's scope appears to be limited to "alleged conduct," while ours refers to *all* interoperability generally. Please confirm that Apple accepts our broader understanding of scope—applying to interoperability generally—and that it will produce all non-privileged documents responsive to our search terms. Additionally, Apple agreed to produce only communications or agreements with the third parties named in RFP 71. Please confirm that Apple intends to expand that to include any third party that we identified in our most recent proposed search terms.

Please respond by May 19, 2026, so that we may understand whether we are at impasse.

Sincerely,

/s/ Matthew E. Gold
Matthew E. Gold

# Exhibit N

## CONFIDENTIAL - FILED UNDER SEAL

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE: APPLE INC. SMARTPHONE ANTITRUST LITIGATION<br><br>*This Document Relates To:*<br><br>*Giamanco v. Apple Inc.*, 24-cv-7238-JXN-LDW | Case No. 2:24-md-3113-JXN-LDW<br><br>MDL 3113<br><br>Hon. Julien X. Neals, U.S.D.J.<br>Hon. Leda D. Wettre, U.S.M.J. |

**DIRECT APPLE WATCH PURCHASER PLAINTIFFS' SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS TO DEFENDANT APPLE INC.**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, the Direct Apple Watch Purchaser Plaintiffs ("Watch Plaintiffs"), by and through their counsel, hereby request that Defendant Apple Inc. produce the Documents described below. As required by Rule 34, Apple Inc.'s responses and Documents shall be served on and produced electronically to counsel for Watch Plaintiffs, and any hard-copy Documents and things shall be produced at the offices of Korein Tillery, 205 N. Michigan Ave., Suite 1950, Chicago, IL 60601, within thirty days of service.

**DEFINITIONS**

1. To the extent a term is not defined below, Watch Plaintiffs incorporate by reference all definitions in Watch Plaintiffs' First Set of Requests for Production of Documents and Things to Defendant Apple Inc. as if set forth fully herein.

2. The term "Background Execution" means the execution of a task, performance of a function, or processing of data by an App on a Smartphone or Smartwatch when the App is operating in the background or in a suspended state, as opposed to operating in the foreground.

**WATCH REQUEST NO. 119**

All Documents concerning testing or evaluation of Third-Party Smartwatches.

**WATCH REQUEST NO. 120**

Documents sufficient to show, for each named Plaintiff representing Direct Apple Watch Purchaser Plaintiffs:

a. the user data that Apple has collected for that Plaintiff;

b. the directory services identifier associated with that user data;

c. personally identifying information associated with that directory services identifier; and

d. the Apple ID established for that user, along with the associated email address, phone number, first name, last name, date of birth, physical address (if entered), and any other identifying information.

**WATCH REQUEST NO. 121**

All Documents relating to app developers' requests for interoperability with hardware and software features built into iOS, iPadOS, iPhone, and/or iPad. This includes, but is not limited to, Documents related to requests under Article 6(7) of the EU Digital Markets Act (DMA), Apple's evaluations of such requests, Apple's responses to such requests, developers' appeals, reviews of developers' appeals, and conciliation.

**WATCH REQUEST NO. 122**

All Documents related to interoperability requests, questions, and feedback submitted through Apple's Feedback Assistant.

**WATCH REQUEST NO. 126**

All Documents and Communications concerning, referring, responding, or relating to any efforts, proposals, initiatives, discussions, inquiries, advocacy, or expressions of interest by the CSA to encourage, request, recommend, propose, or facilitate Apple's adoption, implementation, support, or enhancement of any protocol, standard, or technical specification designed to enable or improve interoperability, feature parity, encryption (including end-to-end encryption), privacy, security, media quality, messaging functionality, or other capabilities between: (a) devices running iOS and devices running on an operating system other than iOS; or (b) Apple's iMessage service and messaging services utilizing Rich Communication Services (RCS) or any successor protocol.

**WATCH REQUEST NO. 127**

All slides Apple referenced or relied on for the "Technology Tutorial" it provided on Nov. 6, 2024 in *United States of America, et al. v. Apple Inc.*, Case No. 2:24-cv-04055 (D.N.J. Nov. 6, 2024).

**WATCH REQUEST NO. 128**

All Documents related to app review, rejection, rejection challenges or appeals, and how rejections are communicated to developers.

**WATCH REQUEST NO. 129**

All Documents related to differences in iOS-connected Smartwatch functionality in the European Union versus in the United States. Such Documents include without limit those related to Apple's decisions regarding whether to make functions available in only one, both, or neither of those places.

**WATCH REQUEST NO. 130**

All Documents related to decisions by Apple to provide, create, share, limit, or restrict access to APIs or Siri for third-party devices using Apple's HomeKit, including but not limited to devices using the Matter and Aliro standards and devices with MFi certification.

**WATCH REQUEST NO. 131**

All Documents related to decisions by Apple to provide, create, share, limit, or restrict access to APIs or Siri for use with Apple CarPlay.

**WATCH REQUEST NO. 132**

Documents sufficient to show the requirements for certification under the MFi Program, Matter, Aliro, or any other relevant certification or related program or standard, for third-party devices and/or vehicles to work with Apple HomeKit or Apple CarPlay, and how those requirements have changed over time.

**WATCH REQUEST NO. 133**

All Documents related to privacy or security with respect to the certification requirements under the MFi Program, Matter, Aliro, or any other relevant certification or related program or standard, for third-party devices and/or vehicles to work with Apple HomeKit or Apple CarPlay.

**WATCH REQUEST NO. 134**

All Documents related to Wi-fi, Bluetooth, and any other wireless connection or means of exchanging information between an iPhone and a third-party device and/or vehicle connected to that iPhone through Apple HomeKit (including devices using the Matter and Aliro standards and

devices with MFi certification) or Apple CarPlay, including but not limited documents related to identifying, connecting, and pairing the device and/or vehicle to the iPhone; preserving or severing the connection with the device and/or vehicle when the iPhone Bluetooth is turned off in Settings or toggled off in the Control Panel; and exchanging information between the iPhone and the third-party device and/or vehicle if an Apple app (e.g. Apple Home or Apple Music) or a third-party app (e.g. ecobee or Spotify) is closed or force quit via swiping up in the App Switcher page.

**WATCH REQUEST NO. 135**

All Documents related to connectivity between iPhones and smart devices (including, but not limited to, smart refrigerators, smart thermostats, smart locks, and smart vacuums) outside Apple HomeKit via companion apps or other means, including but not limited to access to APIs, access to Siri, background execution, security risks, and connectivity and pairing via Wi-Fi, Bluetooth, or any other means.

**WATCH REQUEST NO. 136**

All Documents related to connectivity between iPhones and vehicles (including, but not limited to, vehicle entertainment systems) outside Apple CarPlay via companion apps or other means, including but not limited to access to APIs, access to Siri, background execution, security risks, and connectivity and pairing via Wi-Fi, Bluetooth, or any other means.

Dated: February 24, 2026

Respectfully submitted,

By: /s/ *David Walchak*
David Walchak

Thomas R. Curtin
tcurtin@mdmc-law.com
Kathleen N. Fennelly
kfennelly@mdmc-law.com
**MCELROY, DEUTSCH,**
**MULVANEY & CARPENTER, LLP**
1300 Mount Kemble Avenue
Morristown, NJ 07962
Tel.: (973) 993-8100

Steven F. Molo smolo@mololamken.com
Lauren F. Dayton
ldayton@mololamken.com
Eric Posner eposner@mololamken.com
Matthew E. Gold mgold@mololamken.com
**MOLOLAMKEN LLP**
300 North LaSalle Street Chicago, IL 60654
Tel.: (312) 450-6700

Kayvon M. Ghayoumi
kghayoumi@mololamken.com Caroline A.
Veniero cveniero@mololamken.com
**MOLOLAMKEN LLP**
600 New Hampshire Ave, N.W.
Washington, D.C. 20037
Tel.: (202) 556-2000

David C. Frederick
dfrederick@kellogghansen.com
Aaron M. Panner
apanner@kellogghansen.com
Alex A. Parkinson
aparkinson@kellogghansen.com
Scott K. Attaway
sattaway@kellogghansen.com
Ariela M. Migdal
amigdal@kellogghansen.com
Katherine V. Tondrowski
ktondrowski@kellogghansen.com
Rund M. Khayyat
rkhayyat@kellogghansen.com
**KELLOGG, HANSEN, TODD,**
**FIGEL & FREDERICK, P.L.L.C.**
1615 M Street, NW, Suite 400
Washington, D.C. 20036
Tel.: (202) 326-7900

Stephen M. Tillery
stillery@koreintillery.com
Carol O'Keefe
cokeefe@koreintillery.com
**KOREIN TILLERY LLC**
505 N 7th Street, Suite 3600
St. Louis, MO 63101
Tel.: (312) 241-4844

George A. Zelcs
gzelcs@koreintillery.com
Daniel A. Epstein
depstein@koreintillery.com
David Walchak
dwalchak@koreintillery.com
**KOREIN TILLERY LLC**
205 North Michigan, Suite 1950
Chicago, IL 60601
Tel.: (312) 641-9750

# Exhibit O

## CONFIDENTIAL - FILED UNDER SEAL

MOLOLAMKEN

Matthew E. Gold
MoloLamken LLP
300 North LaSalle Street
Chicago, IL 60654
mgold@mololamken.com
www.mololamken.com

March 10, 2026

BY EMAIL

Jason Lo
Connor Sullivan
Gibson, Dunn & Crutcher LLP
jlo@gibsondunn.com
cssullivan@gibsondunn.com

Re: *In re Apple Inc. Smartphone Antitrust Litigation*, No. 2:24-md-03113 – Outstanding Items - Watch Plaintiffs' RFP Meet and Confers

Dear Jason and Connor,

Direct Apple Watch Purchaser writes following our February 26, and March 4, 2026, meet and confers, which served as a follow up to our February 23, 2026, meet and confer concerning our February 20 and February 27 summary letters. We discussed RFPs 1.1, 1.3, 2.1, 5/5.1, 7.1, 8.3-8.4, 11/11.1, 12/12.1, 17, 20.1, 25, 25.1, 27, 28, 33, 35, 40.4, and the definition of "sister app." This letter discusses each in turn.[1] While we write principally on behalf of Direct Apple Watch Purchaser, we also write on behalf of all MDL Plaintiffs with regard to the shared RFPs 5, 11, 12, 17, 25, 27, 28, 33, and 35.

**Definition of "Identified Products and Services" (specifically "Sister App")***

Watch Plaintiffs confirm here that the term "smartwatch app" used in "Identified Products and Services" includes all apps that can be downloaded onto a smartwatch. "Companion apps" are apps that are essential to pair a smartwatch with the iPhone, like the Watch App for Apple Watch or Garmin Connect for Garmin watches. "Smartwatch sister apps" are apps that are designed to enhance the way a smartwatch works, or how a smartwatch works with a smartphone, but that are not essential to pairing a smartwatch with a smartphone. We are available to meet and confer.

**Watch RFP 1.1***

We confirmed that Watch Plaintiffs do not accept the proposed limitation that Apple suggested and, as reflected in the RFP that we issued, are seeking all Documents, including Communications, exchanged between Apple and the Government related to the Government

[1] We have denoted those terms or RFPs for which we understand there to be open issues with an asterisk.

MOLOLAMKEN

Matthew E. Gold
MoloLamken LLP
300 North LaSalle Street
Chicago, IL 60654
mgold@mololamken.com
www.mololamken.com

Action and the Government's investigation, not just Documents related to discovery. During the February 26 and March 4 meet and confers, you said you would get back to us.

**Watch RFP 1.3***

You asked us to supplement our list of international investigations with a description of why each listed investigation is relevant. In Appendix A, below, we identify certain aspects of the identified investigations that are relevant to the MDL, but note that they are illustrative and there may be more relevant aspects that are not listed but that we may raise in the future if necessary.

At the March 4 meet and confer, we asked that Apple consider identifying a subset of investigations that you would agree to be relevant, proportional, and not unduly burdensome to produce. You stated that you would consider that and would get back to us.

**Watch RFP 2.1**

We reached a resolution on RFP 2.1 based on our shared understanding that Apple will not withhold production of a document on the basis that your expert has not relied on it, if that Document is otherwise responsive to another RFP.

**RFP 5 and Watch RFP 5.1***

You asked what Watch Plaintiffs meant by meeting minutes from the time-period relevant to Watches' Complaint. Watch Plaintiffs intend to only seek minutes from a time-period relevant to the allegations in the Amended Complaint. MDL Plaintiffs suggested that it would be productive to reconvene on this RFP once you produce the minutes that Apple has agreed to produce to the Government as part of the Government Action. You said that you will consider that approach.

**Watch RFP 7.1***

You asked us to clarify our definition of "Apps" as part of this RFP. We clarified that our definition of "Apps" in RFP 7.1 is not limited to smartwatch apps as it includes all apps, including smartphone apps. You said you would get back to us at the February 26 and March 4 meet and confers.

**Watch RFPs 8.1-8.4***

In its January 8 and 20, 2026, letters from K. Martin to F. Thomas, Apple provided its view that RFPs 8.1-8.4 are "encompassed by RFP 8," but that they are overbroad to the extent they call for production of documents that do not relate to interoperability differences between Apple and third-party devices. During our meet and confer on February 23, you asked whether we would consider:

ML MOLOLAMKEN

Matthew E. Gold
MoloLamken LLP
300 North LaSalle Street
Chicago, IL 60654
mgold@mololamken.com
www.mololamken.com

(i) revising this request to replace the word "interoperability" with terms like "having a function that Apple offers"; and (ii) limiting the interoperability non-differences (we also used the term "functions") to those that Watch Plaintiffs articulate, either as enumerated in the RFP (making those lists exhaustive, with respect to non-differences, rather than exemplary), or otherwise. Regarding "interoperability," we have considered it further and think that term fairly describes a relevant topic alleged in the Amended Complaint and decline to swap that term for another.

During our March 4 meet and confer, we asked Apple to consider whether it would be willing to produce documents if we limited RFP 8.3 to the enumerated items in that RFP (rather than "including, but not limited to" those items). We agreed, at your request, to consider whether to limit RFP 8.3 to only interoperability differences.

Regarding your request that we limit the scope of these RFPs to the items enumerated in them (or that Watch Plaintiffs articulate), we do not agree. There are background execution aspects that Apple may not consider part of the enumerated topics (*e.g.*, daemons, trigger mechanisms, listening modes, resource allocation algorithms, and interactions with features like Low Power Mode, as well as documents related to decision-making, impact, and complaints connected to background execution) but that are relevant and should be produced, and there may be technological features or interoperability differences or non-differences that are known only to Apple that are unknown to us. To the extent any limitations are warranted, search terms are a more appropriate tool for focusing searches related to these requests.

Additionally, regarding non-differences, we conveyed in our February 20 letter that Watch Plaintiffs' position remains that all documents related to the interoperability of Third-Party Smartwatches or related decision-making must be produced, including when there is no interoperability difference between the pertinent Apple and non-Apple products. In the spirit of compromise, however, we also stated that we were "willing to discuss a narrowing of such documents that would include (1) documents related to interoperability non-differences that are relevant to Apple's reasonably anticipated defenses, and (2) documents sufficient to show the timeline of interoperability non-differences for relevant functions." We have not received a response.

With respect to RFPs 8.1-8.3, the above are Watch Plaintiffs' final positions. If Apple does not agree to them, then we are at an impasse.

As to RFP 8.4, we noted during the March 4 meet and confer that, as defined, Your Phone Number Sharing Restrictions inherently relates to how Apple treats non-Apple products differently, as to a particular set of restrictions, and so Apple's objections to RFPs 8.1, 8.2, and 8.3 would not seem to apply. You agreed to consider our position on RFP 8.4.

MOLOLAMKEN

Matthew E. Gold
MoloLamken LLP
300 North LaSalle Street
Chicago, IL 60654
mgold@mololamken.com
www.mololamken.com

**RFP 11 and Watch RFP 11.1***

We provided our position that worldwide conduct is within the scope of our request for Documents related to actual or potential barriers to entry, expansion, or repositioning. First, and as previously explained, Watch Plaintiffs and Phone Plaintiffs allege in the alternative a worldwide market. *See* Direct Apple Watch Purchasers' Amend. Compl. ¶¶222, 255, 262. Actual or potential barriers to entry, expansion, or repositioning outside of the United States are obviously relevant to a worldwide market. Second, a worldwide scope is appropriate because expansion, repositioning, or barriers to entering the relevant markets in other countries—where Apple is unable to engage in some of the conduct that it engages in within the United States—informs whether that conduct here is anticompetitive. As we noted during the meet and confer, as one example, in some countries, Apple permits sideloading because those countries require Apple to permit it. Documents related to barriers to entry into the relevant markets where sideloading is permitted are useful counterfactuals regarding the impact on competition and other relevant issues, like privacy.

As Plaintiffs have consistently maintained, limitations on alternative methods of App distribution, including sideloading, are relevant to all MDL Plaintiffs' allegations, because MDL Plaintiffs allege that Apple restricts alternate methods of app distribution in order to enforce its restrictive rules and maintain its market power. *See, e.g.*, Direct iPhone Purchasers' Amend. Compl. ¶¶11-14, 47-61, 74, 89, 93, 104-105, 166, 171; Indirect iPhone Purchasers' Amend. Compl. ¶¶27, 31-33, 74-80, 87, 100, 108-111, 171, 176; Direct Apple Watch Purchasers' Amend. Compl. ¶¶38-45.

You asserted during our February 26 meet and confer that sideloading is not relevant to Watch Plaintiffs' allegations. But Watch Plaintiffs' complaint explains why it is relevant. Because Apple's contractual and other restrictions prohibit sideloading, app developers are effectively prohibited from offering apps that would allow iPhone users to access features that Apple currently limits only to Apple Watches—for example, iMessage. Beeper Mini is an example of an app, which, if sideloading were permitted, iPhone users could have eventually used with non-Apple smartwatches to avoid Apple's anticompetitive restrictions. *See, e.g.*, Direct Apple Watch Purchasers' Amend. Compl. ¶¶41, 60-63. You asserted that Beeper Mini was not smartwatch specific. But it is no huge leap to say that an app developed for smart***phone*** messaging could be offered for smart***watch*** messaging—particularly since it was developed by an individual running a smartwatch company. In any event, our allegations are not limited to Beeper Mini.[2] Watch Plaintiffs allege other restrictions that limit the kinds of apps that would allow iPhone owners to use the same functions on third-party smartwatches that Apple currently restricts only to the Apple Watch.

---

[2] And, of course, Apple's restrictions on Beeper Mini are also relevant to all MDL Plaintiffs' allegations regarding Apple's scheme to restrict competition in the market for Performance Smartphones or Smartphones.

ML MOLOLAMKEN

Matthew E. Gold
MoloLamken LLP
300 North LaSalle Street
Chicago, IL 60654
mgold@mololamken.com
www.mololamken.com

Of course, as we have noted, Apple has agreed to produce similar Documents in the Government Action. You said you would get back to us on this RFP.

**RFP 12 and Watch RFP 12.1***

You said at the February 23, February 26, and March 4 meet and confers that you would get back to us in writing about whether Apple views RFP 12's reference to "Mobile Operating System" to fully encompass RFP 12.1's "Smartwatch Operating System," and whether Apple views RFP 12.1 as fully subsumed within RFP 12. We asked for an ETA on that response at the March 4 meet and confer, and you were unable to provide such an estimate.

**RFP 17**

You indicated that you believed that we had already reached a resolution on RFP 17. You confirmed your understanding that smartwatches are included within the definition of "Identified Product or Service" as applied to RFP 17.

**RFP 25 and Watch RFP 25.1***

You confirmed that you were working on your response to our questions posed in our February 20, 2026, letter about RFP 6, which we had previously requested to inform our discussions of RFP 25. We look forward to your response.

**RFPs 27, 28, and 33**

In our February 27 letter, we denoted these RFPs as data RFPs or partial data RFPs. During our March 4 meet and confer, you told us that Apple understood these to be document requests, not data requests. MDL Plaintiffs confirm here that they accept the same response that Apple and the Government ultimately agreed on, that is, that Apple will produce all non-privileged, responsive documents subject to a reasonable search.

**Watch RFP 29.1***

You confirmed that you will respond to us in writing about our specific proposal in our February 27 letter. We noted that Watch Plaintiffs are willing to consider a similar proposal from Apple.

**RFP 35***

During our March 4 meet and confer, we asked whether Apple had an update on where the targeted collection that Apple had agreed to with the Government would be coming from. You

MOLOLAMKEN

Matthew E. Gold
MoloLamken LLP
300 North LaSalle Street
Chicago, IL 60654
mgold@mololamken.com
www.mololamken.com

could not provide one. We noted that Apple said it was evaluating potential sources six weeks ago in its January 23 letter. You said that you would get back to us.

Watch Plaintiffs asked whether Apple's position as to this RFP had changed given that Apple is demanding similar, and in some cases, broader information from Mr. Giamanco. *See, e.g.*, Apple's RFPs to Mr. Giamanco 108, 109, 110, 111, and 117. You stated that Apple's requests to Mr. Giamanco did not impact Apple's position on this RFP, because the burden and proportionality are much heavier on Apple than on Mr. Giamanco. You asked us to explain why Apple TV is relevant. We explained that documents showing differences in privacy or security between the Apple Watch and iPads or Apple TVs would be relevant to reasonably anticipated defenses regarding the privacy or security justifications of certain decisions.

At your request, MDL Plaintiffs agreed to consider dropping Apple TV from this request. At our request, you agreed to consider whether Apple would produce responsive documents to the remainder of this request (including iPads), MDL Plaintiffs dropped Apple TV from this request. We will get back to one another.

**Watch RFP 40.4***

During our March 4 meet and confer, we asked if Apple had a response to our position and you could not provide one. We noted it has been over a month (now 6 weeks) since Apple agreed to provide a response in its January 23 letter. We asked when Apple would be able to provide a response, and you refused to give a date or an estimate.

* * *

Watch Plaintiffs look forward to further meeting and conferring to work through the RFPs that remain outstanding. If we have omitted an open issue that was raised during our prior meet and confers, or in our prior letters, that omission is inadvertent, and we are not waiving the right to raise the issue once we become aware of it.

Sincerely,

Matthew E. Gold

ML MOLOLAMKEN

Matthew E. Gold
MoloLamken LLP
300 North LaSalle Street
Chicago, IL 60654
mgold@mololamken.com
www.mololamken.com

# Appendix A

MOLOLAMKEN

Matthew E. Gold
MoloLamken LLP
300 North LaSalle Street
Chicago, IL 60654
mgold@mololamken.com
www.mololamken.com

| | Regulator | Relevance | Approx. Date |
|---|---|---|---|
| 1 | Brazilian Council of Economic Defense | Scare screens and steering toward alternatives in the App Store. | Dec-25 |
| 2 | Columbian Superintendent of Industry and Commerce | Sideloading and efforts to degrade consumer options for non-Apple smartwatches and apps. | Aug-25 |
| 3 | European Commission | Steering and metadata restrictions making it harder to find compatible apps for non-Apple watches. | Mar-24 |
| 4 | European Commission | Third-party device interoperability with iOS and iPhone across a host of relevant features. | Mar-25 |
| 5 | European Commission | Apple abuse of market dominance and limitations on third-party access to NFC. | Jun-20 |
| 6 | French Autorité de la Concurrence | Abuse of market dominance, degradation of competitor smartwatches through phone updates, Bluetooth accessibility restrictions, synchronization windows, customization options, and privacy changes. | Mar-25 |
| 7 | German Bundeskartellamt | Scare screens, unequal permissions and tracking, and consumer misperceptions regarding competitor smartwatch quality and reasons for performance limitations. | Jun-22 |
| 8 | Italian Autorità Garante della Concorrenza e del Mercato | Scare screens, unequal privacy policies, permissions and tracking, and consumer misperceptions regarding competitor smartwatch quality and reasons for performance limitations. | 2025 |
| 9 | Italian Autorità Garante della Concorrenza e del Mercato | Self-preferencing regarding privacy rules and data provision. | May-23 |
| 10 | Netherlands Authority for Consumers & Markets | Abuse of market dominance to restrict competing apps or knowledge of competing apps. | Aug-21 |
| 11 | Poland UOKiK | Scare screens and misleading customers about privacy protections. | Nov-25 |
| 12 | Romanian Competition Council | Abuse of market dominance, sideloading, app tracking, and limitations on competitor apps. | Oct-23 |

MOLOLAMKEN

Matthew E. Gold
MoloLamken LLP
300 North LaSalle Street
Chicago, IL 60654
mgold@mololamken.com
www.mololamken.com

| | | | |
|---|---|---|---|
| 13 | Russia Federal Antimonopoly Service | Abuse of market dominance to restrict competitor apps. | Aug-20 |
| 14 | Korea Communications Commission | Abuse of market dominance and intentional delay of app review for competitors. | Oct-23 |
| 15 | Korea Communications Commission | Privacy, location tracking, and user permissions. | Jun-24 |
| 16 | UK Competition & Markets Authority | Market power, sideloading, app review delays, accessing competitors' sensitive information, users' ability to find competitor apps, and interoperability and third-party access to features and functions. | Oct-25 |

# Exhibit P

## CONFIDENTIAL - FILED UNDER SEAL

**APPLE'S RESPONSE TO THE**
**EUROPEAN COMMISSION'S REQUEST FOR INFORMATION (RFI) 3 OF**
**7 October 2024**

**Case**

**DMA.100203 – Apple – Operating systems – iOS – Article 6(7) – SP – Features for Connected Physical Devices**

24 October 2024

- Whether those new features impact or change existing functionality; and
- The timeline of the specification and test plan release relative to software development cycles.

8.5. [redacted]

8.6. [redacted]

***9. Slide Deck, slide 9: Apple explains that WiFi Aware version 4.0 "added the secure device pairing required for 3rd party use cases" in order to form a long-term device relationship between iOS and connected physical devices after pairing two devices for the first time.***

***a. Please describe the secure device pairing mechanism that was added to WiFi Aware version 4.0.***

9.1. Apple provides a description of the secure device pairing mechanism that was added to WiFi Aware version 4.0 below. It sets out both the initial pairing flow and the flow for subsequent connections.

*Pairing*

9.2. [redacted]

- [redacted]
  - [redacted]
  - [redacted]
  - [redacted]
- [redacted]
  - [redacted]
  - [redacted]

• [redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

---

[6] The Wi-Fi Aware 4.0 Specification document (see **Annex DMA.100203 - PO RFI 3 - Q6**) uses the terms "Wi-Fi Aware" and "NAN" interchangeably (p. 14). This responses follows this usage for ease of reference.

17. ***Please provide a detailed technical response to explain the differences between the implementation of AirDrop in the "Everyone" mode compared to "Contacts Only" mode (e.g., the involvement of iCloud).***

17.1. Apple submitted the response on 12 October 2024.

18. ***Please provide a detailed technical response to explain the certificate generation process for certificates used during AirDrop (i) in the "Everyone" mode and (ii) in "Contacts Only" mode. This should include (but should not be limited to) where the public and private key pair is generated and stored (on-device, in the cloud, etc.), where the4 certificate is generated and signed (on-device, in the cloud, etc.), the root certificate authority involved (if any), and the contents of the fields in the certificate.***

18.1. Apple submitted the response on 12 October 2024.

19. ***Please state whether verification of the certificate used during AirDrop involves a connection to Apple's servers or happens locally on-device.***

19.1. Apple submitted the response on 12 October 2024.

20. ***Please state whether Apple supports identity federation with any third party for any of its products and/or services. In the affirmative, please explain how the identity federation is implemented.***

20.1. Apple submitted the response on 12 October 2024.

21. ***Please explain whether Apple considers it technically feasible to implement an identity federation in order to support "Contacts Only" mode for AirDrop document exchanges across an Apple and non-Apple device.***

21.1. Apple submitted the response on 12 October 2024.

22. ***Please explain the security measures Apple implements when sharing AirDrop files with an iOS device that is not signed into an Apple ID and that subsequently self-signed its certificate.***

22.1. Apple submitted the response on 12 October 2024.

23. ***Slide Deck, slide 18: Please provide a detailed technical response how AirDrop transfers "continue over the internet when devices move out of range", in particular whether files are directly transferred between devices, or uploaded to and subsequently downloaded from Apple servers.***

23.1. Apple submitted the response on 12 October 2024.

**<u>2.4 Notifications</u>**

***24. Please provide step-by-step screen shots of the entire user-facing journey that end users need to go through in order to grant the necessary permissions to receive notifications on Apple's connected physical devices.***

24.1. Notification forwarding is active by default after pairing an Apple Watch.[8]

***25. Please provide step-by-step screen shots of the entire user-facing journey which Apple envisages that end users will need to go through in order to grant the necessary permissions to receive notifications on third-party connected physical devices, including possible data processing prompts such as Apple's App Tracking Transparency prompt.***

25.1. As explained in response to Section 2.1 of RFI 4 as submitted on 21 October 2024, [redacted]

26. ***RFI 1 Response, para 5.2: Apple provides that "[i]nstead of appearing both on the iPhone and on the Apple Watch, notifications appear only on the device that's most likely to have the user's current focus." Please explain how third-party devices could implement this functionality under Apple's Notification Interop Solution under Consideration.***

26.1. Alert coordination between iOS and the Apple Watch is limited to Bluetooth range. If the Apple Watch is alerted and in Bluetooth range, then iOS will be quiet. If the Apple Watch chooses not to alert and is in Bluetooth range, then iOS will. If the devices are not within Bluetooth range, iOS and the Apple Watch do not coordinate alerts and all registered devices will receive the notification. Conceptually, the goal of alert coordination is to avoid distracting the user with multiple alerts and sounds for the same notification event. If there are no other devices in Bluetooth proximity, there is no need for alert coordination.

26.2. [redacted]

[8] Vision Pro does not participate in notification forwarding from iOS, and only receives notifications for apps installed on it.