LITE DEPALMA GREENBERG & AFANADOR

570 Broad Street / Suite 1201 / Newark, NJ 07102
P: 973.623.3000 / F: 973.623.0858 / litedepalma.com

Newark ▪ Philadelphia ▪ Morristown

July 28, 2026

**VIA ECF**

Honorable Leda Dunn Wettre, U.S.M.J.
U.S. District Court for the District of New Jersey
50 Walnut Street
Newark, New Jersey 07102

Re: *In re Apple Inc. Smartphone Antitrust Litigation*, 2:24-md-03113-JXN-LDW
Phone Plaintiffs' Letter Brief Regarding Joint Notice of Impasse Regarding Scope of Phone Plaintiffs' First Set of Requests for Production (Non-Expedited Issues)

Dear Judge Wettre,

Pursuant to ¶5 of the Court's Special Master Appointment Order, and the Court's order directing the parties to file letter briefs, Dkt. 248, the Direct and Indirect iPhone Purchaser Plaintiffs ("Phone Plaintiffs") respectfully submit this letter brief regarding the issues raised in their Joint Notice of Impasse Regarding Scope of Phone Plaintiffs' First Set of Requests for Production (Non-Expedited Issues), Dkt. 245.

## I. Contracts and Communications with Carriers and Retailers (RFPs 29, 29(A))

RFP 29 seeks all contracts between Apple and retailers related to the iPhone, and all communications from 2015 onward related to the negotiation of those contracts or to retailer sales or promotions. These documents are highly relevant for Phone Plaintiffs to calculate damages, demonstrate pass-through, show market power, and prove commonality and adequacy at class certification. Indeed, Apple does not dispute the relevance of these documents.[1] Ex. 1 at 3. Accordingly, Apple has agreed to produce the requested contracts and communications with carrier-retailers such as Verizon and AT&T, but a dispute remains with respect to Apple's production of contracts and communications with non-carrier retailers.

[1] Apple agrees these documents are relevant to the Indirect iPhone Purchaser Plaintiffs. Other MDL plaintiffs maintain that these documents are relevant to their claims as well. Given Apple's admission that these documents are relevant to the Indirect iPhone Purchaser Plaintiffs, any argument over relevance as to the Direct iPhone Purchaser Plaintiffs and Direct Apple Watch Plaintiffs is moot.

A. Production of Contracts with Non-Carrier Retailers Is Proportionate

Apple insists on limiting production of contracts with non-carrier retailers to only the [redacted]. For the remaining non-carrier retailers, Apple has offered to produce a selection of contracts as well as an exemplar or form contract used with smaller retailers. Apple refuses to produce all non-carrier contracts solely on an unsubstantiated claim that it is unduly burdensome to locate its own business agreements with these retailers. Apple's claim of burden and its proposed compromise are insufficient.

Every FRCP 26(b)(2)(C) factor favors production of Apple's contracts with all of its non-carrier retailers as the burden does not outweigh the benefit given the importance of Apple's contracts with non-carrier retailers to proving damages, pass-through, market power, and commonality and adequacy at class certification.[2] *See also* ECF 256 at 1 (Watch Plaintiffs' Letter Brief discussing other Rule 26 factors).

Apple has not satisfied its burden of showing that the cost of Phone Plaintiffs' requested discovery outweighs its likely benefit. *See Gutierrez v. Johnson & Johnson, Inc.*, 2002 WL 34717245, at *3 (D.N.J. Aug. 13, 2002) ("The party resisting production of discovery bears the burden of establishing lack of relevancy or undue burden."). For example, Apple has not shown how many non-carrier retailers it contracts with beyond the [redacted] Nor has it provided any information about how those contracts are stored—beyond confirming that [redacted]—or anything else that would let Phone Plaintiffs assess the extent of the burden of a targeted collection of the requested contracts. Instead, it offers the circular position that it would be burdensome for Apple to even determine how much of a burden this discovery would entail. *See* Ex. 1 at 3 ("Apple does not know the exact number of such non-carrier retailers at this time and understands that it would be a meaningful burden to determine that number."). Even if Apple had adequately demonstrated some level of burden, Apple's disorganization is a burden of its own making, and Phone Plaintiffs should not be punished for it. *See Wesley v. Muhammad*, 2008 WL 4386871, at *5 (S.D.N.Y. Sept. 17, 2008) ("[T]hat an institution may shield itself from discovery by utilizing a system of recordkeeping which conceals rather than discloses relevant materials" is simply "incorrect."); *Rhone-Poulenc Rorer, Inc. v. Home Indem. Co.*, 1991 WL 111040, at *2 (E.D. Pa. June 17, 1991) ("[A]n unwieldy record-keeping system… is simply not an adequate excuse to frustrate discovery.").

Finally, Apple's compromise offer—a "selection" of contracts plus a form contract used with smaller retailers—misses the mark for two reasons. First, Apple has not described how it

---

[2] Apple claims that its contracts with non-carrier retailers beyond the [redacted] do not account for a significant percentage of Phone Plaintiffs' case. But those contracts likely account for at least tens of millions of dollars in damages based on percentages Apple has provided, and, in any event, they are relevant evidence of market power.

would choose the "selection" or number of contracts to produce. Second, and of critical importance, Apple cannot confirm that any such selection or its form contract would be representative of its contracts with retailers. Ex. 2 at 2. Without that assurance, Apple's offer does not address the needs of Phone Plaintiffs and would allow Apple to cherry pick the contracts that best support its defense.

Phone Plaintiffs request that this Court order Apple to conduct a targeted collection of and produce all contracts it has entered with all non-carrier retailers from 2007 to the present.

B. Production of Communications with Non-Carrier Retailers Is Proportionate

Phone Plaintiffs have also requested Apple's communications with non-carrier retailers about contract negotiations and retailer sales and promotions. These communications are highly relevant not only because they will shed light on the meaning and enforcement of Apple's contracts with non-carrier retailers, but also because they will reveal whether Apple has wielded its market power to force retailers to accept undesirable contract terms.

Apple has agreed to produce communications responsive to that request, in theory, but it has refused to identify the relevant employees who might have those responsive communications, much less to add those employees as custodians. Apple claims yet another burden of its own making—that it cannot readily produce communications with retailers because Apple does not know which of its own employees were the relevant points of contact with these retailers. As discussed above, Apple's own disorganization does not excuse it from satisfying its discovery obligations. Moreover, Apple has made no effort to remedy the problem. Apple has not identified any additional custodians who might have these documents, has not provided organizational charts to aid Phone Plaintiffs' identification of the relevant custodians, and it has rejected all but one of the additional custodians Indirect iPhone Purchaser Plaintiffs proposed for purposes of obtaining responsive communications with non-carrier retailers. Apple's counteroffer—that it will treat relevant communications between Apple and non-carrier retailers as responsive during its review of documents in response to other RFPs—does not solve the problem because it does not include Apple employees responsible for negotiating contracts and promotions with Apple's non-carrier retailers.

Phone Plaintiffs request that this Court order Apple to identify relevant custodians and to search the appropriate files of those custodians for all responsive communications.

## II. Potential Waiver of Privilege over Documents Produced to the European Commission

Upon further consideration, Phone Plaintiffs withdraw their notice of impasse that Apple has waived its privilege over documents produced to the European Commission as set forth in the Joint Notice of Impasse Regarding Scope of Phone Plaintiffs' First Set of Requests for Production

(Non-Expedited Issues). *See* ECF No. 248. As such, there is no issue for the Court to resolve. Without waiving, and expressly preserving, any right to challenge Apple's claim of privilege or protection for any document Apple has withheld or redacted in this litigation, Phone Plaintiffs do not seek Court intervention as to this categorical waiver of privilege on the basis of production pursuant to request by the European Commission.

Respectfully submitted,

*/s/ Joseph J. DePalma*

Joseph J. DePalma

JJD:cd
cc: All Counsel of Record (via ECF)
Hon. Ronald J. Hedges (ret.)
Hon. Jose L. Linares (ret.)
Hon. Peter F. Barisco, Jr. (ret.)

# Exhibit 1

GIBSON DUNN

Katherine Warren Martin
Associate Attorney
T: +1 415.393.8270
M: +1 415.705.9213
kwarren@gibsondunn.com

CONFIDENTIAL

April 2, 2026

VIA EMAIL

Frazar Thomas
Seeger Weiss LLP
FThomas@SeegerWeiss.com

Re: *In re Apple Inc. Smartphone Antitrust Litigation*, No. 2:24-md-03113

Dear Counsel,

We are in receipt of your March 4, 2026 letter addressing the Apple and iPhone Plaintiffs meet-and-confer call on February 27, 2026 regarding iPhone Plaintiffs' First Set of RFPs. We have responded to the various issues your letter addresses below.

**Document Sources for Collection**

Plaintiffs' Letter Statement

*Based on its positions during the meet and confer regarding Apple's RFPs to the Phone Purchaser Plaintiffs immediately preceding, we asked whether Apple planned on preserving and searching search queries, browsing history, and text messages. Apple said it would get back to us.*

Apple Response

Based on our current understanding of Plaintiffs' claims and defenses, Apple is not aware of a reasonable basis to think that the search queries and browsing history of Apple's custodians would be relevant to the case, and Plaintiffs have not articulated any reason why they would be relevant. Also, as Plaintiffs are aware, the proposed ESI Order contemplates the preservation and production of text messages. *See* Dkt. 100-2 at, *e.g.,* § I.2 (defining "ESI" as "including, but not limited to, … text messages…"). Apple is preserving text messages and plans to produce responsive, non-privileged text messages where appropriate, and expects the same from Plaintiffs.

**Narrowing Compromises**

Plaintiffs' Letter Statement

*We discussed generally certain RFPs in which Apple has asked us to propose a narrower set of specific apps, devices, or other category to streamline its search (for example, RFPs 47, 54, 90, and 91). We asked Apple if it still planned to produce documents broadly responsive to these*

*RFPs, even when they do not mention the specific apps or devices in the compromise lists, if it otherwise encounters those documents in its searches. You agreed to get back to us.*

Apple Response

Apple has requested that Plaintiffs provide narrowing proposals in response to a number of requests that are overly broad because the Requests as drafted seek irrelevant materials, and are unduly burdensome because they seek an excessively large volume of materials. Take RFP 47 as an example: RFP 47 seeks all documents related to the ability of non-Apple devices to connect or interact with iPhone. That Request as drafted encompasses irrelevant materials because Plaintiffs' Complaints do not (remotely) put at issue every non-Apple device's connection to or interaction with iPhone. That Request is also unduly burdensome because it seeks a potentially enormous volume of materials. Apple has proposed that Plaintiffs narrow that Request appropriately by identifying a list of non-Apple devices whose connections to or interactions with iPhone are relevant to Plaintiffs' claims so that the parties may have a more focused discussion. That narrowing will also, hopefully, help to avoid the Request's undue burden.

Regarding Plaintiffs' inquiry into whether Apple would produce documents that are responsive to the original, non-narrowed request if Apple encounters them during document review, Apple's position is that Plaintiffs are not entitled to irrelevant materials. Requiring Apple to produce every document responsive to the Request as drafted would defeat the purpose of the narrowing proposal by requiring Apple to produce documents related to irrelevant non-Apple devices' connection to or interaction with iPhone. However, Apple will evaluate Plaintiffs' specific narrowing proposals once received and will meet and confer with Plaintiffs as appropriate on this topic.

**RFP 29:** From 2007 to the present, all contracts between Apple, U.S. wireless carriers, or any other retailers relating to the iPhone, and all communications from 2015 onwards related to the negotiations of those contracts or to carrier or retailer sales or promotions.

Plaintiffs' Letter Statement

*This RFP seeks all of Apple's contracts with retailers and wireless carriers, along with underlying communications. With respect to Apple's compromise with the Government Plaintiffs to produce retailer contracts for only* [redacted] *and communications with* [redacted]*, Apple confirmed that its compromise with the Government Plaintiffs to produce communications with* [redacted] *is not based on those documents being substantively different or less burdensome to collect than those with other retailers, and this compromise was instead based on the Government Plaintiffs' own proposal. Plaintiffs asked Apple to disclose the number of retailers with whom Apple has contracts and information on how those contracts are stored, so that we could more fully evaluate Apple's burden objection. Apple agreed to consider these requests.*

Apple Response

Apple understands RFP 29 seeks certain contracts with U.S. wireless carriers and non-carrier retailers related to iPhone, communications with U.S. wireless carriers and non-carrier

retailers related to iPhone agreement negotiations and promotions, and internal communications related to U.S. wireless carrier and non-carrier retailer iPhone agreement negotiations and promotions.

Apple does not understand, and the Direct iPhone Purchasers have not offered any explanation, why any of these materials are relevant to the Direct iPhone Purchasers' allegations. Apple notes that Apple has asked the Direct iPhone Purchaser Plaintiffs whether they seek to represent direct iPhone purchasers who purchase iPhone for purposes of resale, such as the resellers identified in Plaintiffs' March 4 letter. If not, there is no apparent reason why any of these materials are possibly relevant to Direct iPhone Purchasers.

Unlike Direct iPhone Purchasers, Indirect iPhone Purchasers have articulated an argument that these materials have some relevance to their allegations.

In response to RFP 29, Apple has already agreed to produce final executed contracts between Apple and U.S. wireless carriers related to iPhone from January 1, 2015 to June 20, 2025. Direct Apple sales and sales from U.S. wireless carriers represent [redacted] of all U.S. iPhone sales during the relevant period. Non-carrier retailers represent a [redacted] of indirect sales—[redacted] Apple has already agreed to produce final executed contracts with [redacted] non-carrier retailers—[redacted]—that account for [redacted] of those non-carrier retailer sales over the relevant period. Identifying non-carrier retailer contracts is burdensome. [redacted] Apple understands these contracts cannot be collected en mass for all non-carrier retailers and instead must be identified and collected separately for each non-carrier retailer. Identifying non-carrier retailer contracts for smaller non-carrier retailers, representing a [redacted] of U.S. iPhone sales during the relevant period, would be even more burdensome. There are a significant number of relatively minor non-carrier retailers that have worked with Apple over the relevant time period. Apple does not know the exact number of such non-carrier retailers at this time and understands that it would be a meaningful burden to determine that number. Collecting, reviewing, and producing additional contracts for minor non-carrier retailers would place a significant additional burden on Apple that would be disproportionate to the needs of the case given that the contracts Apple has already agreed to produce account for [redacted] Apple iPhone sales.

Apple has also already agreed to produce non-privileged communications between Apple and U.S. wireless carriers from January 1, 2015 to June 20, 2025 related to iPhone agreement negotiations and promotions. Collecting, reviewing, and producing similar communications related to non-carrier retailers is significantly more burdensome. Identifying the relevant communications requires identifying the specific internal and external points of contact responsible for negotiating those agreements. Because those points of contact at Apple change frequently, determining the appropriate point of contact to search—and doing so across a number of non-carrier retailers, including the set of [redacted] non-carrier retailers noted above, over an extended period—would substantially increase the burden of collection and review. To reduce that burden,

GIBSON DUNN



Apple has agreed to include communications with one non-carrier retailer, [redacted]. That approach is reasonable, appropriately limits the burden to Apple, and is proportionate to the needs of the litigation.

Additionally, at this time Apple will rely on the search term for RFP 29 from the DOJ litigation and withdraws Apple's search term for RFP 29 to the extent it differs from the search term in the DOJ litigation for the reasons articulated above.

**RFP 35:** Documents sufficient to show differences between iPhone, Mac, iPad, Apple Watch, and Apple TV with respect to (1) App distribution, (2) web browsers or middleware, (3) privacy, or (4) security.

Plaintiffs' Letter Statement

*This RFP seeks documents sufficient to show the differences between the iPhone, Mac, Apple Watch, iPad, and Apple TV. In its compromise with the Government Plaintiffs, Apple agreed to search for documents relating to the Watch and Mac only, though it also agreed to produce documents discussing the iPad and Apple TV to the extent it located those documents during its search. Plaintiffs explained our position that documents discussing the iPad and Apple TV are relevant because they touch on Apple's decision to pursue a similar App distribution model to the iPhone's in other systems. Apple maintained its position.*

Apple Response

On our February 27 call, we asked iPhone Plaintiffs' counsel to explain the potential relevance of iPad and Apple TV. Counsel was not able to clearly articulate the relevance of these product lines. Apple does not believe Apple TV bears a meaningful relationship to the Alleged Conduct or to the issues allegedly implicated by RFP 35.

While Apple maintains its objection that documents related to iPad with respect to the categories enumerated in RFP 35 are not relevant or proportionate to the needs of this case, in the interest of compromise, subject to and without waiving its objections, Apple will agree to conduct a targeted collection for non-privileged, responsive documents related to iPad for this Request if iPhone Plaintiffs agree that doing so would resolve any outstanding disputes related to this Request.

**RFPs 84–87:**

Plaintiffs' Letter Statement

*These RFPs seek documents relating to Developer Relations, the App Review Board, and Executive Review Board.*

*Apple confirmed it understands Plaintiffs' use of these terms, but will follow up in writing regarding Developer Relations.*

*For RPF 86, requesting agenda and minutes for the Executive Review Board, Plaintiffs explained that we are considering Apple's request to narrow this RFP, but asked Apple to provide the number of times the board has met and the topics it typically discusses. Apple agreed to consider this Request.*

*For RFP 87, which seeks policy and training documents for Developer Relations and App Review Board, Plaintiffs proposed that this request be limited to documents describing the process or standards of App reviews and appeals, as well as related subject like ethical and performance standards, conflict of interest guidelines, privacy and security guidelines, and regulatory and antitrust compliance guidelines. Apple agreed to consider this request.*

Apple Response

Regarding Plaintiffs' use of the term "Developer Relations," Apple understands that term to refer to Worldwide Developer Relations.

As to RFP 86, which asks for "all agenda for and minutes of any meeting of the Executive Review Board," Apple maintains its objections that the request is overly broad, unduly burdensome, and not proportional to the needs of the case. The Executive Review Board meets regularly and discusses a wide range of issues related to App Review and the App Store. As Apple explained during the February 27 meet-and-confer, Plaintiffs' Complaint does not put at issue every app review process, decision, or determination. Apple will evaluate Plaintiffs' narrowing proposal regarding RFP 86 once received and is willing to meet and confer regarding that proposal as appropriate.

As to RFP 87, subject to and without waiving its objections, Apple will agree to conduct a targeted collection for non-privileged trainings, guidelines, policies, and protocols provided to Worldwide Developer Relations or the App Review Board that describe the process or standards for App Review and related appeals relevant to the Alleged Conduct, to the extent such documents exist and can be located through a reasonable search.

**RFP 3:** All pleadings, written discovery responses, document productions, declarations, presentations (including any white papers or other analysis or advocacy), and expert reports served, filed, or produced by Apple, all expert reports served on Apple, all discovery requests served on Apple to the extent not included in Apple's responses, and transcripts of all depositions, hearings, and trials for Apple employees and experts, in any proceeding in which Apple is a party where the allegations relate to any Alleged Conduct in the Complaint, including *Epic Games v. Apple; In re Apple iPhone Antitrust Litigation; Cameron v. Apple; Alivecor v. Apple; Lopez v. Apple; Dr. Rachael Kent v. Apple; Dr. Sean Ennis v. Apple*; and European Commission investigations.

Plaintiffs' Letter Statement

*We closed with a discussion regarding the documents Apple has agreed to produce from EC investigations.*

*We first asked Apple to confirm which EC investigations it has agreed to produce documents from. Apple agreed to get back to us with this information.*

*We also asked about Apple's position that it will redact or withhold documents based on the EC's Access to File rules and its restrictions on producing documents from ongoing investigations. Apple understands both of these restrictions to be ones that it does not have the power to waive. Apple also clarified that it has yet determined whether any documents it has otherwise agreed to produce would be impacted by these rules. Plaintiffs asked that Apple log any withholdings based on these restrictions; Apple agreed to consider this request, but noted that these privilege log entries may themselves violate the EC rules.*

*We also discussed the 9/26/2024 EC Decision requiring Apple to produce privileged documents, which Apple informed us in its last letter is not a public decision. Apple clarified that while this decision is not public, Apple does not believe that it is protected from disclosure. We asked Apple to produce it so that we could evaluate its claim that this production of documents was compelled. Apple demurred.*

*As we explained on the call, Apple has disclosed that it has produced a large volume of privileged documents, which are likely responsive to other discovery requests, to the European Commission.*[1] *While we understand Apple's position that it has not waived the privilege because this production was compelled, this exception to the waiver rule is highly contingent on the facts of the allegedly compelled production. In order to preserve its privilege, Apple must have done more than simply objected to the production, and instead must have taken meaningful, forceful steps to protect its privilege. In order to evaluate whether Apple sufficiently resisted the European Commission's order to produce its privileged documents, Plaintiffs must be able to evaluate the specific steps Apple took to resist the production and the European Commission's response. Ultimately, that may be through examining the Commission's order, or it may be through an evaluation of other related correspondence with the Commission, but Plaintiffs must be able to evaluate Apple's claim that this production was compelled, and we cannot do that without actually seeing the underlying documentation surrounding the production.*

<u>Apple Response</u>

As Apple explained during the parties' meet-and-confer on March 6, the European Commission applies a different and narrower privilege standard than is applicable under U.S. law, including by not recognizing privilege relating to attorney-client communications with and work product of in-house counsel. This was the case with the productions in response to the European Commission's decision dated September 16, 2024. Citing Article 30(3) of Regulation (EU) 2022/1925 and Article 31(1) of Regulation (EU) 2022/1925, the European Commission claimed the right to impose "periodic penalty payments" not exceeding 5% of Apple's average daily worldwide turnover in the preceding financial year per day. The EC accordingly demanded that

[1] Plaintiffs' Footnote: *We asked whether Apple would note in its privilege log whether any documents had been produced to the European Commission, but Apple did not agree to do so.*

"[s]hould Apple fail to supply . . . the requested information within the [imposed period], it shall incur daily periodic penalty payments of EUR 500 000."

While Apple engaged in multiple discussions with the European Commission seeking to limit the production, the European Commission maintained its positions on both privilege and the threat of sanctions. Apple was therefore compelled in that circumstance to produce U.S. privileged work product and attorney-client communications reflecting or relating to legal advice from its in-house attorneys. In making that production, Apple made clear to the European Commission that the compulsory production of documents covered by U.S. privileges and protections violated the principle of comity and that Apple was only making such production due to the threat of imminent penalties. Accordingly Apple has never voluntarily waived privilege and work product protections bestowed by U.S. law as a result of these compelled productions and has preserved such protections for purposes of this and other litigation under U.S. law.

Subject to and without waiving its objections, Apple has agreed to conduct a targeted collection to the extent permitted by EU laws and produce non-privileged documents related to formal submissions to the European Commission from DMA investigations (anti-steering, choice screen, alternative app distribution, and Messages) and specifications (connected devices and process) that relate to the Identified Products and Services, to the extent such documents exist and can be located through a reasonable search. Apple disclosed these investigations to Plaintiffs on December 23, 2025 in the summaries of negotiations reached with the Government regarding RFP Nos. 1-18. Apple remains willing to meet and confer if Plaintiffs have any further questions related to this Request.

Sincerely,

GIBSON, DUNN & CRUTCHER LLP

Katherine Warren Martin

# Exhibit 2

SEEGERWEISS LLP
NEW YORK • NEW JERSEY • PHILADELPHIA

June 19, 2026

**Via Email**

Connor Sullivan
Gibson Dunn
cssullivan@gibsondunn.com

***Re: In re Apple Inc. Smartphone Antitrust Litigation, No. 2:24-md-03113***

Connor,

Thank you for meeting and conferring with us on June 10. Below is our summary of the discussion, which I'm sending to you on behalf of the Direct and Indirect Phone Purchaser Plaintiffs ("Plaintiffs"). We look forward to reconvening to continue our discussion.

**RFP 86: ERB Minutes[1]**

At the beginning of our conversation, Plaintiffs asked if Apple will be limiting its production of ERB Minutes to only formal minutes or if this will also include informal notes. Apple claimed any notes that hit on the search terms will be produced regardless of what label is on the top of the document. Apple also told Plaintiffs that if there are ERB notes relevant to the alleged conduct, they will also be produced. We accept Apple's offer of production and look forward to negotiating the collection of these documents during our search term negotiations.

**Global vs. U.S. Productions (RFPs 10, 11, 15, 16, 31, 34, 79, and 96)**

Apple has agreed to produce documents related to the U.S. markets only for these RFPs and maintains that global markets are not relevant. Plaintiffs explained our position that documents describing activity outside of the United States are relevant because, among other things, Apple implemented certain elements of the challenged conduct in the United States after observing consumer patterns abroad, and because Apple has suspended or modified certain elements of the challenged abroad, and the details of those changes and their effects are relevant

[1] As always, these brief descriptions are not intended to limit the scope of the RFP.

to demonstrating the causal impact of the challenged conduct and the potential effects of Plaintiffs' requested injunctive relief.

After discussion, the parties confirmed that we are at impasse on this issue.

**RFP 29: Contracts and Communications with Retailers and Carriers**

Apple has offered to produce a form contract and a nonrepresentative selection of executed contracts for non-carrier retailers. As part of this proposal, Apple confirmed that agreeing to an initial review of this more limited production would not prejudice Plaintiffs from following up with requests for additional contracts with non-carrier retailers. However, Apple would not confirm that its form contract and its curated sample of certain non-carrier retailer contracts would be representative of all—or even any—other non-carrier retailer contracts.

As a result, Plaintiffs cannot accept Apple's offer. These contracts and communications are simply too crucial to Plaintiffs' claims. These documents are highly relevant not just to class certification but to demonstrating Apple's market power. While these documents are sufficiently crucial to Plaintiffs' claims to justify a high burden of production, Apple has failed to shed any light on the extent of the burden of producing these documents. To date, Apple has maintained that collecting these contracts is unduly burdensome because [redacted] But this minimal burden—especially when it is the result of Apple's own decisions about document storage—does not justify failing to produce highly relevant documents.

With regards to communications between Apple and these counterparties, Apple has agreed to run search terms over documents of Apple's existing custodians for the time period beginning January 1, 2015. As part of Apple's proposal, we understand Apple intends to modify its search terms and definitions to capture these documents. Nevertheless, and as we explained during our June 10 call, Plaintiffs are concerned that the existing custodians and proposed time period do not sufficiently include individuals relevant to Apple's relationships with carriers and non-carrier retailers. As Apple itself has pointed out several times during our discussions, the points of contact between Apple and the retailers regarding these contracts changed frequently, and are not included in the list of existing custodians. While Plaintiffs accept Apple's offer to produce responsive documents from the existing custodians, we believe additional search terms, definitions, and custodians are necessary to capture the breadth of responsive documents.

Additionally, Plaintiffs request that Apple add as custodians all distribution lists and email boxes associated with each carrier and non-carrier retailer, such as US Carrier BD ([redacted]) and VZW Account Team ([redacted]).

Plaintiffs remain willing to discuss other alternative methods of identifying repositories of responsive documents.

**RFP 1, and 1(A)-(E): Communications with Third Parties**

This RFP has never been limited to communications with the DOJ and the FTC, and Apple has agreed to produce responsive documents without any substantive limitations. Nevertheless, in its proposed search terms, Apple has limited its search only to email communications with FTC and DOJ email addresses, which is only a subset of potentially responsive materials. Plaintiffs have asked multiple times for Apple to broaden its search to include communications with other government representatives, especially in light of a recent Truth Social post by President Trump describing communications with Tim Cook.

On the call, Apple was uncooperative in discussing the scope of materials responsive to this RFP and any investigation it has undertaken to determine whether it may have documents responsive to this RFP. Apple refused to represent that no one at Apple has communicated about this case with government representatives outside of the DOJ or FTC, refused to produce communications with government representatives outside of the DOJ or FTC, and would not confirm whether it has even investigated if a broader custodial search would yield additional documents. Apple simply maintained its position that it does not believe there is any external evidence to support broadening the scope of its review.

As we noted on the call, Plaintiffs draw a different inference from the President's post, which is strong evidence of communications between President Trump and Tim Cook about sensitive, important topics, including "3 or 4 BIG HELPS" and "a fairly large problem that only [Mr. Trump], as President, could fix." *See* https://truthsocial.com/@realDonaldTrump/posts/116442276577696798. Specifically, the President's post is strong indicia of responsive communications between Tim Cook and Mr. Trump, which justifies broadening the scope of documents that Apple will agree to search for and review in response to this RFP. Apple's unwillingness to do so raises concerns about the scope of its search, not only in this narrow instance but generally, and suggests that Apple is maintaining an artificially narrow standard for

identifying likely sources of responsive documents. For this reason, at a minimum, Plaintiffs maintain that Apple should broaden the search for documents responsive to RFP 1 to include communications with government officials beyond those with FTC or DOJ email addresses.

Apple disagrees. The parties confirmed that we are at impasse on this issue.

**RFPs 96 and 97: Documents regarding Apple's decision to charge fees for in-app transactions**

Apple originally provided search terms for these RFPs but rescinded them and asked to meet and confer. During the meet and confer, Apple explained that it does not believe these requests are relevant. Plaintiffs explained that Apple controls the market for App distribution on the iPhone and leverages its control to impose restrictions on developers of apps and wallets that threaten its market power. These documents are relevant because they demonstrate Apple's pricing power over these developers.

As we have clarified in the past, this request is narrowly targeted to documents regarding Apple's decision to set fees for transactions on the iPhone. And Apple's own proposed search strings return only 4,116 potentially responsive documents including families. Given this minimal review burden, the relevance of these documents justifies their production.

**RFPs 87 and 99: App Review policies and documents regarding pace of innovation**

We understand both sides are in agreement on RFP 87 after Apple's latest letter to us.

**RFP 105: Data from Named Plaintiffs**

Apple confirmed that it does not interpret this RFP, or Plaintiffs' agreement to provide their Apple IDs for purposes of identifying their data, as granting Apple any kind of consent to access user data that it does not otherwise have to access to in the ordinary course. Plaintiffs are still considering Apple's offer of production.

**RFPs 106 and 89: Audit documents**

Apple has stated they are still investigating whether responsive documents exist for RFP 106. Apple also confirmed that it has agreed to conduct a targeted collection of non-privileged documents which describe audits of the process of app reviews and appeals as responsive to RFP 89.

Sincerely,

*/s Frazar Thomas*

Frazar Thomas