WALSH PIZZI O'REILLY FALANGA

THREE GATEWAY CENTER
100 Mulberry Street, 15th Floor
Newark, NJ 07102
T: 973.757.1100
F: 973.757.1090
WALSH.LAW

Liza M. Walsh
Direct Dial: (973) 757-1100
lwalsh@walsh.law

**VIA ECF**

August 4, 2026

Honorable Leda Dunn Wettre, U.S.M.J.
U.S. District Court for the District of New Jersey
Martin Luther King Jr. Bldg. & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07102

**Re:** ***In re: Apple Inc. Smartphone Antitrust Litigation***
**Civil Action No. 2:24-md-03113-JXN-LDW (MDL 3113)**

**Apple's Response Regarding iPhone Non-Expedited Issues**

Dear Judge Wettre:

This firm, together with Gibson, Dunn & Crutcher LLP, represents Defendant Apple Inc. ("Apple"). Apple respectfully submits this letter in response to iPhone Plaintiffs' letter (Dkt. 258).

## I. Contracts and Communications with Carriers and Non-Carrier Retailers (RFPs 29, 29(A))

RFP 29 seeks production of contracts with every iPhone reseller from 2007 to the present and all communications from 2015 onward related to the negotiations of those contracts or to carrier or retailer sales or promotions. Apple has already agreed to produce almost all those materials. The only remaining dispute is a [redacted]—contracts and communications with small non-carrier retailers—that will add no evidentiary value to the record while imposing significant burden on Apple. Those demands are disproportionate to the needs of the case.[1]

### A. Production of Contracts with Non-Carrier Retailers

iPhone is sold by Apple and by retailers. This request concerns sales made by Apple to retailers. Retailers fall into two categories: the U.S. wireless carriers (like AT&T or Verizon); and non-carrier retailers (like [redacted]). Apple has agreed to produce: (1) final contracts with all wireless carriers; (2) final contracts with the [redacted] non-carrier retailers—[redacted]; (3) a selection of contracts with additional smaller

[1] These requests are not relevant for any claim or allegation made by Direct iPhone Purchaser Plaintiffs' claims, who have not clarified whether their putative class includes resellers. *See* Dkt. 258 at 1 n.1. But even if relevant, these requests are not proportional—an independent reason to deny iPhone Plaintiffs' demand for these materials.

non-carrier retailers; and (4) exemplar or form contracts that reflect Apple's standard contract terms.

That production covers [redacted] of contracts with iPhone resellers. Carrier retailers account for [redacted] of all U.S. iPhone reseller sales, with non-carrier retailers representing [redacted] And the [redacted] non-carrier retailers named above account for approximately [redacted] of all non-carrier retail iPhone sales. In other words, by producing all wireless carrier contracts and contracts with these [redacted] non-carrier retailers, Apple will produce contracts covering approximately [redacted] of all U.S. iPhone retailer sales. And Apple has gone further, agreeing to collect a sample of contracts from retailers in the [redacted] as well as form or exemplar contracts to illustrate standard terms.

Nonetheless, iPhone Plaintiffs are demanding an order compelling Apple to produce every remaining contract in that [redacted] beyond the sample and form contracts Apple is already producing. That [redacted] includes numerous *tiny* retailers such as local independent technology stores or micro-regional chains with a handful of locations. But collecting those remaining contracts would impose undue burden disproportionate to any evidentiary value. [redacted], and Apple [redacted]. Apple would need to [redacted]. iPhone Plaintiffs' sprawling temporal scope further compounds that burden. They seek nearly *twenty* years of contracts, including agreements that predate the class period by well over a decade. Older contracts are far more burdensome to locate because Apple retains much less institutional knowledge about contracts executed long ago. And simultaneously, older contracts are at best minimally relevant to the allegations here, where the putative classes go back only to 2020. Rule 26 does not require Apple to exhaustively "'examine every scrap of paper in its potentially voluminous files.'" *LifeScan, Inc. v. Smith*, 2022 WL 20853087, at *11 (D.N.J. July 29, 2022). A [redacted] of sales does not justify the burdensome manual collection iPhone Plaintiffs seek, particularly before there is any evidence suggesting that these contracts will differ materially from those Apple has agreed to produce. The burden of iPhone Plaintiffs' demand otherwise far outweighs any minimal relevance these contracts could have. To the extent any exhaustive search for non-carrier retailer contracts goes forward (and it should not), that search should be limited to cover iPhone sales that could have occurred during the proposed class period.

The dollar value iPhone Plaintiffs attach to the remaining contracts is beside the point. Dkt. 258 at 2 n.2. As explained above, Apple's proposal will provide them with contracts covering [redacted] of all U.S. iPhone reseller sales, and that remaining [redacted] will cover sales largely outside of the proposed class period. And Apple is producing all carrier contracts, major non-carrier retailer contracts, *and* exemplar and form contracts for other non-carrier retailers. If the selection of contracts Apple produces from other non-carrier retailers differed in a material way, iPhone Plaintiffs can easily identify that. Nor can iPhone Plaintiffs credibly analogize the burden of finding 20-year-old contracts [redacted] to the vastly different situation of a defendant whose recordkeeping systems "'conceal[] rather than disclose[]'" relevant materials. Dkt. 258 at 2 (quoting *Wesley v. Muhammad*, 2008 WL 4386871, at *5 (S.D.N.Y. Sept. 17, 2008)). The fact that [redacted] is ordinary business reality, not concealment. Finally, iPhone Plaintiffs cannot seriously argue that Apple's compromise offer is

an exercise in "cherry pick[ing]." Dkt. 258 at 3. As noted above, Apple will produce exemplar and form contracts for non-carrier retailers, which will allow iPhone Plaintiffs to gauge whether material differences between the contracts actually exist.

B. Production of Communications with Non-Carrier Retailers

Apple has agreed to produce: (1) non-privileged communications with U.S. wireless carriers and [redacted] related to iPhone sales or promotions; and (2) non-privileged responsive documents that hit on the search terms iPhone Plaintiffs proposed to identify communications related to iPhone sales or promotions run across all of Apple's agreed custodians. iPhone Plaintiffs nevertheless demand more, asking the Court to order Apple to effectively identify every employee who served as a point of contact with any non-carrier retailer since 2015 and search their files for responsive communications with all non-carrier retailers. Dkt. 258 at 3.

iPhone Plaintiffs come nowhere close to justifying their demand under Rule 26. Apple has already identified more than fifty custodians, including the senior personnel *responsible* for sales, including the carrier and channel sales functions. Relevant communications would inevitably be shared and discussed with those supervisory custodians. Searching their files for communications relevant to these issues—using search terms iPhone Plaintiffs proposed on June 18, 2026 and Apple accepted—is more than sufficient to capture any evidentiary value iPhone Plaintiffs hope to extract. The Court should not require more. Courts "have consistently placed a noticeably heavy burden on the propounder to demonstrate that the custodial choices" of a defendant "were deficient or lacking," because a "producing party has 'the best knowledge as to how documents have been preserved and maintained.'" *LifeScan, Inc. v. Smith*, 2022 WL 22895630, at *9 (D.N.J. July 21, 2022). Apple's internal points of contact with non-carrier retailers changed frequently over the relevant period. Identifying all individuals who negotiated contracts or discussed promotions with smaller retailers would require identifying dozens—and potentially hundreds—of Apple employees across a decade of personnel turnover. That burden is not proportional to the needs of the case. *See id.* at *11 (denying motion to compel additional custodians where the requesting party failed to show that the existing search was inadequate or that the proposed custodians would possess unique, nonduplicative information).

iPhone Plaintiffs complain that Apple "rejected all but one" of their proposed additional custodians, Dkt. 258 at 3, but that ignores the parties' extended negotiations: Apple evaluated each additional proposed custodian against the more than fifty custodians already offered for these RFPs, explained to iPhone Plaintiffs that the declined individuals were duplicative of the existing custodians, and nonetheless offered to add a custodian specifically to provide additional coverage for the contracts and communications with non-carrier retailers at issue here. In other words, Apple *already has* "identif[ied] relevant custodians" and agreed to search their files as iPhone Plaintiffs demand. *Id.* iPhone Plaintiffs simply want more. But Rule 26 does not require comprehensive production; it requires *proportional* production. *See* Fed. R. Civ. P. 26(d)(1). iPhone Plaintiffs' demand would require Apple to undertake a disproportionately laborious search for employees who may have *also* had such communications over more than a decade and collect and search their files—likely only to identify the same communications as those in the files of the dozens of custodians Apple has already agreed to search. iPhone Plaintiffs' request for duplicative custodians has no basis, and the Court should reject it.

* * *

Rule 26(b)(2)(C)(i) requires the Court to limit discovery that is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). Apple has agreed to produce retailer contracts that cover approximately [redacted] of all U.S. iPhone retailer sales and to run iPhone Plaintiffs' search terms for communications across more than *fifty* relevant custodians; iPhone Plaintiffs' further demands should be rejected. *See Major Tours, Inc. v. Colorel*, 2009 WL 3446761, at *4 (D.N.J. Oct. 20, 2009) (denying additional discovery where defendants "already produced tens of thousands of relevant documents" and "the requested electronic discovery is likely to be of marginal benefit and cumulative of documents already produced").

## II. Apple's Privilege Over Documents Produced to the European Commission

iPhone Plaintiffs withdrew their contention that Apple waived attorney-client privilege and work-product protection over documents produced to the European Commission ("EC") and acknowledged that "there is no issue for the Court to resolve." Dkt. 258 at 3–4. For the record, however, no waiver occurred: the EC compelled Apple's production subject to threat of significant daily fines for noncompliance; and Apple objected in writing at every stage, uploaded the U.S.-privileged materials separately and under protest, and expressly preserved its rights under U.S. law. *See In re Vitamin Antitrust Litig.*, 2002 WL 35021999, at *30–31 (D.D.C. Jan. 23, 2002) (finding submission to foreign government did not waive privilege because it was compelled under demand citing statutory authority and threatening fine for noncompliance); *see also Brown v. NCL (Bahamas), Ltd.*, 155 F. Supp. 3d 1335 (S.D. Fla. 2015) (observing that many courts "agree and hold that *compelled* disclosure to a government agency does not necessarily waive work-product protection").

**Requested Relief**

Apple respectfully requests that the Court adopt Apple's proposed targeted production covering all wireless carrier contracts, the [redacted] non-carrier retailers, a selection of additional executed contracts and exemplar contracts with smaller non-carrier retailers, and search-term results across agreed custodians.

Respectfully submitted,

*s/Liza M. Walsh*
Liza M. Walsh

cc: All Counsel of Record (via ECF)