LITE DEPALMA GREENBERG & AFANADOR

570 Broad Street / Suite 1201 / Newark, NJ 07102
P: 973.623.3000 / F: 973.623.0858 / litedepalma.com

Newark ▮ Philadelphia ▮ Morristown

September 2, 2026

**VIA ECF**
Honorable Leda Dunn Wettre, U.S.M.J.
U.S. District Court for the District of New Jersey
50 Walnut Street
Newark, New Jersey 07102

**Re:** ***In re Apple Inc. Smartphone Antitrust Litigation*, Civil Action No. 2:24-md-03113-JXN-LDW**

Dear Judge Wettre:

The parties in the above-referenced matter submit this joint status letter, as directed by the Court's July 14, 2026, Order Scheduling Case Management Conferences. ECF 234. The parties can discuss these topics in more detail in writing and/or at the September 16, 2026, Joint Status Conference, at the Court's request.

**I. Deposition Protocol**

**Plaintiffs Position:** The parties have been negotiating a deposition protocol since February. At the most-recent status conference, the Court directed the parties to submit a proposed protocol that memorialized the Court's rulings and the parties' agreements, and that highlighted any disputed provisions (Jun. 23 Hrg. Tr. 8:21-9:23). On June 26, the Court issued an order regarding deposition caps and instructed the parties to incorporate those limits into a jointly proposed deposition protocol covering both the Government and MDL Actions. ECF 215. MDL Plaintiffs submitted a proposed deposition protocol to Apple on July 20, Apple submitted its counterproposal on August 26, and the parties met and conferred on August 31.

The parties have not been able to reach agreement, including because Apple is proposing changes to provisions to which it previously agreed in joint submissions to the Court. For example, the parties agreed in their April 13, 2026 Joint Status Letter that "[i]f review of any document takes more than three minutes, then any counsel may ask for the clock to be stopped, and the witness may continue to review the document." ECF 179. Apple reneged on that agreement in its August 26 counterproposal, proposing instead a vague and heightened standard that would allow the examining attorney to ask for the clock to be stopped only if "the examining attorney reasonably believes that a witness has engaged in a pattern of needlessly delaying and obstructing the deposition in reviewing documents." Accordingly, MDL Plaintiffs request the opportunity to present the Court with a proposed deposition protocol memorializing, verbatim, the parties'

agreements and the Court's orders regarding deposition protocol issues. Such a protocol would progress the litigation, and the parties could continue to meet and confer to establish a supplemental deposition protocol regarding remaining issues.

Apple's position, as MDL Plaintiffs understand it, is that the parties should continue to meet and confer about Apple's proposed additions to the deposition protocol in Apple's August 26 counterproposal, including to incorporate agreements from the Government Action. MDL Plaintiffs are happy to continue to meet and confer with Apple about its proposed additions, but they are unwilling to renegotiate the provisions to which the parties already agreed in written submissions to the Court.

MDL Plaintiffs are also opposed to Apple's request, on the false basis of time-sensitivity, that the Court order deposition protocol provisions that the parties have never discussed (specifically, the provision related to preparation of witnesses on non-consecutive days). First, this is not time sensitive—as Apple acknowledges, depositions in the MDL cannot begin until November. Second, MDL Plaintiffs made a proposal to Apple that they believe accurately reflects the Court's guidance. Rather than meet and confer, Apple now improperly asks the Court to adopt its proposal before the parties have even conferred substantively, let alone reached impasse or briefed the issue. Third, Apple's proposal is inconsistent with New Jersey Court Rule 4:14-3(f), which provides: "Once the deponent has been sworn, there shall be no communication between the deponent and counsel during the course of the deposition while testimony is being taken except with regard to the assertion of a claim of privilege, a right to confidentiality or a limitation pursuant to a previously entered court order."

MDL Plaintiffs proposed the following language to Apple, which they provide only so the Court does not receive asymmetric information from the parties: "**Witness Preparation**: New Jersey Court Rule 4:14-3(f) applies to all depositions, subject to agreement by the Parties otherwise for specific depositions. For bifurcated depositions, counsel may prepare the witness on their subsequently produced custodial files, but counsel remains prohibited from preparing the witness on testimony already given in the first part of the deposition."

**Apple Response:** Following the June 23 status conference, the Court entered an order in both the Government Action and the MDL, ordering the parties to submit a "comprehensive, jointly proposed deposition protocol covering the actions." Dkt. 215, at 2; Government Action, Dkt. 463, at 2. MDL Plaintiffs' July 20 proposal—which itself was circulated nearly four weeks after the June 23 conference—did not comprehensively address depositions in both actions. Apple therefore did not "rewrite" an agreed protocol or "renege" on prior agreements. Rather, consistent with the Court's directive, Apple proposed provisions addressing issues necessary to establish a single, workable protocol governing depositions across both coordinated actions.

The parties have only begun to confer about that comprehensive proposal. Apple believes the parties should continue conferring to reach agreement on as many provisions as possible and

then, if necessary, ask the Court to resolve any outstanding disagreements, especially regarding provisions that apply to depositions in both actions. Apple respectfully requests that the Court order the MDL and Government Action parties to continue to meet and confer and agree on a comprehensive deposition protocol that applies to both actions. The ongoing negotiations have not delayed any deposition, and Apple welcomes the Court's guidance regarding a deadline for the parties either to reach agreement or submit any remaining disputes for resolution. Apple has not "reneged" on anything; Apple has made proposals and asked the parties to meet and confer about them, and will abide by all agreements while they do so.

Setting aside the parties' broader disagreements about the scope and sequencing of the protocol, Apple respectfully submits that one time-sensitive issue in particular warrants the Court's guidance: the preparation of Apple witnesses whose depositions are "decoupled"—that is, noticed by both the Government Plaintiffs and the MDL Plaintiffs (whether MDL Plaintiffs have already noticed or are expected to) but not conducted on sequential business days. A number of Apple witness depositions in the coming weeks are expected to proceed on non-sequential days, and the Court's guidance is needed on this issue as the parties move deeper into the deposition phase of these coordinated actions. Apple has proposed the following protocol language to the MDL Plaintiffs to govern the preparation of witnesses for non-sequential-day depositions:

> (a) Preparation for Non-Sequential Days. The parties should attempt in good faith to schedule depositions of Apple witnesses on sequential days. For any Rule 30(b)(1) deposition of an Apple witness noticed by both the Government Plaintiffs and the MDL Plaintiffs that does not proceed on sequential business days, Apple's counsel may prepare its deponents for the later-scheduled deposition as follows:
>
> > (i) Apple may provide its deponents with the transcript of their earlier deposition for their review in advance of a later deposition, but Apple may not discuss with the deponent the deponent's testimony in the earlier deposition.
> >
> > (ii) Apple may prepare its deponents to testify in the later deposition concerning topics and themes relevant to both cases, provided that preparation does not involve discussion of the deponent's testimony in the earlier deposition (including testimony about an exhibit marked in the earlier deposition).
> >
> > (iii) Apple may prepare its deponents without limitation to testify in the later deposition concerning matters uniquely relevant to claims or defenses in the MDL cases and any topic not addressed in the first deposition, even if that preparation concerns a document used in the earlier deposition. For example, Apple may prepare its deponents to testify on topics like monetary damages relevant to the MDL, even if that preparation involves the re-review of a document that was used for other purposes in the deponent's earlier deposition.

(iv) Apple may otherwise prepare its deponents without limitation to testify in the later deposition using documents which were not introduced as exhibits in the earlier deposition.

(b) Permitted Questioning in Non-Sequential Depositions. During the later deposition, the examining attorney may ask the deponent—without objection from Apple's counsel—the following yes-or-no questions: (i) whether the deponent reviewed their earlier deposition testimony and, if so, whether counsel substantively discussed their earlier testimony with them; and (ii) whether the deponent reviewed any documents that were introduced as exhibits in their earlier deposition and, if so, whether the discussion of such documents was limited to topics not addressed in the earlier deposition.

(c) Objections. For the avoidance of doubt, Apple's counsel will retain the right to object on privilege grounds, including attorney-client and work product privileges, to questions concerning the substance of the deponent's preparation for the later deposition, including but not limited to privilege objections to questions concerning which documents the deponent reviewed and what topics were discussed (including in connection with exhibits used in the earlier deposition) in preparation for the deposition.

Apple respectfully requests that the Court confirm whether the foregoing approach is consistent with the Court's expectations regarding the appropriate guardrails on the preparation of Apple witnesses for decoupled, non-sequential-day depositions.

## II. Schedule

**Apple Position:** Apple respectfully requests a four-month extension of the MDL fact-discovery deadline, from January 29 to May 28, 2027, with corresponding adjustments to the remaining MDL case schedule. MDL Plaintiffs request the same four-month extension. That extension is necessary in light of the significant and unanticipated expansion of MDL document discovery reflected in the Special Masters' orders, the resulting shift in the substantial-completion timeline, and the substantial fact discovery in the MDL that remains thereafter. *See, e.g.*, MDL Dkt. Nos. 223-1, 262-1, 272-1, 290-1. In the Government Action, Apple is concurrently requesting that any extension granted in the MDL be applied there as well to preserve coordination between both actions.

MDL Plaintiffs have demanded extremely expansive discovery in this case, including over 300 requests for production. Apple circulated search terms on March 13 and repeatedly exchanged proposals, corrections to syntax, hit-count reports, and counterproposals with MDL Plaintiffs through June. *See* MDL Dkt. No. 275 ¶¶ 9–10. But Plaintiffs continued to insist on broad requests: Even for requests that duplicated those served by Government Plaintiffs, for example, MDL Plaintiffs insisted that Apple use broader search terms than those agreed-upon in the Government Action. Without an agreement on search terms, Apple reviewed and produced documents using its

search-term proposal. Apple substantially completed production of those documents—approximately 4.8 million documents—by June 15, consistent with the Amended Scheduling Order. *See* MDL Dkt. No. 175 ¶ 1; MDL Dkt. No. 192 at 24–25; MDL Dkt. No. 275 ¶ 11; June 23, 2026 Hr'g Tr. at 25:1–26:4.

The Special Masters' subsequent orders materially expanded Apple's production obligations and shifted substantial completion by approximately four months. On July 7, Special Master Hedges ordered Apple to apply MDL Plaintiffs' proposed search terms and produce all responsive, non-privileged documents. MDL Dkt. No. 223-1; see MDL Dkt. No. 232-1 ¶ 26. Those terms returned approximately *19.4 million* documents—far more than the universe in the Government Action. Apple sought reconsideration of that order because, among other reasons, it was not possible to complete review and production on the 30-day timetable Special Master Hedges ordered. MDL Dkt. Nos. 226–228. Special Master Hedges subsequently entered an order requiring Apple to apply a TAR model and substantially complete production of documents by October 21. MDL Dkt. No. 272-1 ¶¶ 1, 9 ("TAR Order").

The TAR Order has in effect established a new substantial-completion deadline four months after the June 15 deadline set by the operative Amended Scheduling Order. *See* MDL Dkt. No. 175 ¶ 1. That process cannot be expedited: Under the TAR Order, Apple is required to validate its TAR model through a process that will run at least into late September. *See* MDL Dkt. No. 272-1 ¶¶ 2–4. And it has had the practical effect of delaying other discovery in the MDL. The Court's prior rulings require Apple to substantially complete production of an Apple employee's custodial documents at least fourteen days before his or her deposition. But MDL Plaintiffs have made clear that they interpret the TAR Order as permitting them to raise potential disputes about the alleged adequacy of Apple's TAR model throughout the production cycle.[1] And if that is correct, then Apple cannot know whether it has produced all documents from a particular custodian until validation is complete and any resulting disputes are resolved. And partially because they are reserving for themselves the right to challenge the scope of production in the TAR process, MDL Plaintiffs have not yet agreed to participate in depositions currently scheduled in the weeks after October 21. So although Apple is proceeding with some depositions in the Government Action—even though it will subject those witnesses to the burden of sitting twice, once to be examined by the Government Plaintiffs and again later by MDL Plaintiffs—most must proceed after the TAR model has been validated and productions are completed. *See* MDL Dkt. No. 142 at 19; Apr. 27,

---

[1] MDL Plaintiffs' footnote questioning the "validity" of Apple's TAR model and claiming that Apple should not be permitted to "retrain" its model to correct any issues "behind closed doors" betrays their intent to use the Special Master's Order to extend the discovery timeline indefinitely. To begin with, all TAR reviews include a recall rate that measures what percentage of the responsive documents in a data set have been found. Here, Special Master Hedges ordered Apple to achieve a 75% recall rate, which is industry standard. The recall rate is never 100%. Thus, the mere fact that MDL Plaintiffs can identify some instances where they disagree with the algorithm's coding does not indicate that the algorithm has failed, but rather is expected with use of TAR.

2026 Hr'g Tr. at 16:20–23, 20:5–17; June 23, 2026 Hr'g Tr. at 15:1–18:8 (indicating that witnesses generally should not sit multiple times while requiring Apple to substantially complete a deponent's custodial productions two weeks prior to their deposition).

As a result, the Special Master's decision to compel Apple to use MDL Plaintiffs' entire set of search terms—and implement a detailed TAR process to do so—has had the practical effect of adding many months of work to discovery in this case. But that is not the only expansion of discovery. For example, on August 26, Special Master Hedges also ordered Apple to produce hundreds of thousands of additional documents previously produced to the European Commission. *See* MDL Dkt. No. 293. Because these documents are not necessarily associated with a particular document custodian's file, Apple does not yet know whether MDL Plaintiffs will contend that some or all of those documents are associated with custodians they seek to depose, which could further affect when Apple can substantially complete custodial productions in advance of those depositions.

For their part, MDL Plaintiffs are significantly behind schedule on their own obligations. To date, MDL Plaintiffs have made only very limited productions in response to Apple's document requests. Those productions remain ongoing as Indirect Purchaser Plaintiffs produced over 1,800 pages as recently as August 28, 2026. And on September 1, the Indirect Purchaser Plaintiffs told Apple they intend to seek to amend their Complaint to add additional named plaintiffs to this litigation. Without taking a position now on whether that amendment is permissible or what impact it would have on the litigation as a whole, adding new plaintiffs would only expand MDL Plaintiffs' own discovery obligations. Meanwhile, MDL Plaintiffs continue to drag out negotiations on Apple's document requests and corresponding search terms: Plaintiffs have refused to adopt a search term proposal that would have required review of fewer than 164,000 documents for all 24 named plaintiffs. And they have engaged in a tactic of deliberately providing overly narrow search terms, only to then concede that slightly broader terms are appropriate each time Apple declares an impasse and attempts to bring the dispute to the Court's attention. Moreover, MDL Plaintiffs have either provided incomplete responses or simply refused to respond substantively to Apple's interrogatories. While Apple continues to negotiate its discovery requests in good faith, disputes may reach impasse over MDL Plaintiffs' deficient responses, which may result in additional proceedings and rulings with which MDL Plaintiffs will need time to comply—all of which gates Apple's ability to depose all 24 named MDL Plaintiffs.[2]

Apple is working diligently to comply with the TAR process and, based on the information currently available, remains on track to meet the October 21 deadline.[3] Even with an October 21

---

[2] On August 11, 2026, Apple requested that MDL Plaintiffs provide periods when the named plaintiffs are unavailable for deposition so the parties can begin working on deposition scheduling. MDL Plaintiffs declined to provide specific windows of unavailability.

[3] Notably, the parties must meet and confer weekly regarding any disputes arising from the TAR validation samples that Apple has already begun producing. MDL Dkt. No. 272-1 ¶ 8. If Plaintiffs

substantial completion deadline for production of the additional documents under the TAR Order, however, coordinated MDL depositions of Apple witnesses generally cannot begin until November under the fourteen-day rule. Accounting for the dozens of third-party and named-plaintiff depositions that the parties must also take, the current January 29 cutoff would require the parties to depose more than half-a-dozen witnesses per week. That includes on average five Apple witnesses per week—many of whom, being deposed for the first time, would sit for two consecutive days. Extending fact discovery through May 28 would permit depositions to proceed at a demanding but manageable pace, including one to two Apple witness depositions per week, while preserving room to address any minor validation disputes or model adjustments.

The requested four-month extension is therefore tailored to and arises because of the changed discovery schedule. It corresponds to the approximately four-month shift in substantial completion reflected in the Special Masters' orders and provides the time necessary to complete the resulting deposition and other fact discovery at a workable pace. It also preserves, where feasible, the coordinated and consecutive deposition structure the Court has encouraged and is consistent with Apple's separate position in the Government Action that coordination should be maintained. Accordingly, Apple respectfully requests that the Court extend the MDL fact-discovery deadline through May 28, 2027, and make corresponding adjustments to the remaining MDL pretrial deadlines.

**Plaintiffs Position:** MDL Plaintiffs agree that an extension of the current schedule is needed. But Apple's one-sided history omits significant details and ignores relevant context.

At the outset, in early 2025, Apple refused MDL Plaintiffs' request to provide the documents it had produced to the government, and MDL Plaintiffs did not receive those documents for approximately another year, delaying their ability to catch up in time with the government's case. Apple then insisted on months of meeting and conferring before it would agree to produce documents responsive to MDL Plaintiffs' unique document requests[4] beyond what the government

---

lodge extensive objections, that may result in new impasses that require the Court's intervention. Any disputes that result in the Court ordering Apple to materially change the TAR model or review a significant additional number of documents would likely delay Apple's ability to substantially complete document productions, and, in turn, the timing of Apple witness depositions. Apple's requested four-month extension to the case schedule is based on its good-faith efforts to finish document review on the current schedule; if that schedule is delayed, an additional extension may be necessary. Similarly, MDL Plaintiffs' ongoing demands that Apple add numerous additional custodians—on top of the fifty-nine custodians to which Apple has already agreed, see, e.g., Dkt. 294—also imperil the parties' ability to complete discovery even on the timeline to which they now stipulate.

[4] Apple mischaracterizes the Special Master's requirement that it produce documents responsive to MDL Plaintiffs' requests as an "unanticipated expansion." Document discovery responsive to MDL Plaintiffs' distinct requests, relevant to their distinct claims and damages, is not an expansion.

had requested. Yet even after those meet and confers, Apple proposed essentially the same search terms and custodians to MDL Plaintiffs as it had to the Government, prompting months of further meet and confers and disputes that are still ongoing.

As a result, the Court may recall that in mid-May, MDL Plaintiffs sought judicial intervention because the parties were at impasse on MDL Plaintiffs' discovery requests. After the matter was referred to him, Special Master Hedges sought to keep discovery on track by issuing an order on July 7 compelling Apple to use MDL Plaintiffs' search terms and produce documents within 30 days—*i.e.*, by the first week of August. Apple sought reconsideration of the Special Master's July 7 Order. ECF 226–227.

Apple's suggestion that the Special Master then sua sponte "entered an order requiring Apple to apply a TAR model" is inaccurate. Rather, Apple unilaterally announced on July 21, without prior negotiation (as required by the ESI Protocol) and in contravention of the July 7 order that was still in effect, that Apple would be using a "TAR 1.0" machine learning model on top of the search terms and that, using this model, Apple would not substantially complete production until October 4, 2026 —75 days from July 21. In response to this, Special Master Hedges convened a hearing on July 29 to inquire into Apple's wholly new "TAR 1.0" proposal. MDL Plaintiffs raised their concerns about the proposal—including, most importantly, the complete lack of information for MDL Plaintiffs to evaluate the validity of the model.

Following discussions about MDL Plaintiffs' need to assess the validity of the model,[5] Special Master Hedges entered an order on August 7 (ECF 272-1) setting forth a protocol for MDL Plaintiffs to test and raise disputes concerning Apple's proposed TAR model. The protocol includes the requirement that Apple provide a total of four sequential test batches through late September (because Apple said it needed to run test batches through a "QC" process before providing them to MDL Plaintiffs for review, which Apple could do at a rate of only 25,000 documents every 10 days). The August 7 Order instructs Apple to substantially complete its production by October 21, 2026. If Apple meets this deadline, the earliest depositions for which MDL Plaintiffs are likely to have substantially complete custodial files in time to depose Apple witnesses in 2-day coordinated depositions with the Government Plaintiffs are those currently noticed for mid-November or later.

---

MDL Plaintiffs served these requests on October 15, 2025, and have been negotiating their scope with Apple since December. There is nothing unanticipated about the need to provide documents responsive to those requests and search terms, beyond the discovery served in the Government Action. The shift in the substantial-completion timeline and any impact on fact discovery deadlines is attributable to Apple's delay in responding to MDL Plaintiffs' RFPs.

[5] One of the most important concerns MDL Plaintiffs have is whether Apple properly trained its TAR model to identify documents that should be produced with sufficient Precision and Recall. Precision and Recall are standard statistics used to measure whether a TAR model will identify documents that should be produced with a reasonably robust level of accuracy—*i.e.*, not leaving too many responsive documents in the unproduced pile.

And that assumes no hiccups and no major disputes arising from MDL Plaintiffs' evaluation of the model through the test batches—all of which could have been avoided had Apple complied with the ESI protocol and actually negotiated a TAR protocol with MDL Plaintiffs back in the Spring instead of unilaterally implementing TAR 1.0 in mid-July.[6]

Apple also states that MDL Plaintiffs "have refused to provide substantive answers to Apple's interrogatories" and "have refused to adopt a search term proposal that would have required review of fewer than 164,000 documents for all 24 named plaintiffs." Besides the fact that these issues are not before the Court or a Special Master and have not reached impasse, these statements are inaccurate and incomplete. Apple served its first interrogatory on January 5 and a second on July 21. In response to the first, MDL Plaintiffs have provided substantive answers corroborated by documentary productions about purchase and transaction information and, in some instances, are still negotiating the scope of Apple's first interrogatory. As to the second, MDL Plaintiffs served timely objections and offered to meet and confer, which the parties did immediately (less than a week after serving responses) at Apple's request. Apple sent MDL Plaintiffs a letter on related issues on August 28, to which MDL Plaintiffs are responding. MDL Plaintiffs' ongoing response to Apple's July 21 interrogatory cannot be cited as a reason for delay. Apple's latest search term proposal to iPhone Plaintiffs resulted in a hit count of over a million documents for iPhone Purchaser Plaintiffs alone. Apple sent a counter-proposal for search terms to Watch Plaintiffs today, September 2, 2026, which Watch Plaintiffs are evaluating. MDL Plaintiffs disagree that their document productions to date have been limited or that they are "behind"; plaintiffs have produced relevant receipts, responsive emails and texts, and social media posts. MDL Plaintiffs further disagree that the search terms they have proposed to Apple and on which they based document productions were overly narrow.

MDL Plaintiffs set forth all of the above to underscore that they have been trying to keep to the current schedule, but as they foreshadowed at the last status conference, these major disputes over Apple's production have prejudiced MDL Plaintiffs' ability to prepare for and take depositions. (As noted above, the parties also are still without a deposition protocol.). For these reasons only, MDL Plaintiffs agree that a four-month extension is appropriate.

---

[6] As noted below, Apple provided its first TAR testing sample of approximately 25,000 documents to MDL Plaintiffs on August 21, 2026. MDL Plaintiffs' review of that sample is ongoing, but what MDL Plaintiffs are finding casts serious doubt on the validity of the TAR model. In accordance with the August 7 Order, MDL Plaintiffs have met and conferred and will continue to meet and confer with Apple as those issues are uncovered and, if needed, bring any disputes to Special Master Hedges. We simply note here that we strongly disagree with any suggestion by Apple that the issues we are finding with the TAR model that Apple designed without input from MDL Plaintiffs can be solved by Apple doing some "retraining" of the model behind closed doors, necessitating further rounds of testing by MDL Plaintiffs.

**III. Potentially Inconsistent Special Master Rulings**

**Apple Position:** Some of the recent impasse issues referred to the Special Masters have resulted in overlapping and inconsistent rulings. Special Master Bariso recently issued a ruling on Watch Plaintiff's expedited issues, which requested, in part, materials related to developer interoperability requests brought as part of a procedure mandated by the European Commission following its DMA investigations regarding Apple. *See* Dkt. 284. In his fifteen-page reasoned decision, Special Master Bariso determined that "[r]equiring Apple to produce the complete regulatory file concerning EU DMA evaluations, appeals, and compliance materials, which are governed by non-U.S. law and arise from a Europe-specific regulatory process, is neither relevant nor proportional to this antitrust action." *Id.* at 13. In contrast, Special Master Hedges recently resolved Watch Plaintiff's non-expedited issues, which also requested various materials related to the European Commission's DMA investigations, including, with regard to two DMA investigations, all formal and informal submissions Apple has made to the European Commission; all communications Apple has had with the European Commission; and all documents Apple produced to the European Commission. See Dkt. 293. Special Master Hedges signed a form of order drafted by Watch Plaintiff requiring Apple to produce all of these documents, regardless of relevance to Watch Plaintiff's claims. *Id.* These types of inconsistent rulings will result in confusion, delay (including from reconsideration motions and appeals), inefficiency, repeated litigation of overlapping issues, and a lack of finality for the parties. If helpful to the Court, Apple would like the opportunity to discuss processes for avoiding or minimizing the potentially inconsistent rulings made by the Special Masters.

**Plaintiff Response:** Apple states that Special Masters Bariso and Hedges issued orders inconsistent with one another, (ECF 284, 293), and asks to "discuss processes for avoiding or minimizing the potentially inconsistent rulings made by the Special Masters." The disputes referred to Special Master Bariso and Special Master Hedges covered different requests for different categories of documents. The dispute referred to Special Master Bariso involved materials related to interoperability requests that developers submitted to Apple as part of a procedure mandated by the European Commission, whereas the request referred to Special Master Hedges sought all documents that Apple submitted to, or exchanged with, the European Commission in connection with certain investigations. To the extent there is any inconsistency between the Special Masters' respective orders, there already exist "processes for avoiding or minimizing" it: parties may point out duplicative requests in their initial briefing to the Court, may update the Court when relevant orders are entered, or may move to reconsider or appeal orders. Indeed, Watch Plaintiffs have filed a motion to clarify and/or reconsider Special Master Bariso's August 18 order. *See* ECF 303, 304. If Watch Plaintiffs' motion is granted, the issue Apple identifies will be mooted. For all these reasons, the discussion that Apple requests is unnecessary and premature.

## IV. Discovery Impasses

The parties provide the following update on the discovery disputes for which the parties have reached an impasse and that the Court either set for hearing or referred to a special master.

### A. May 2026 Joint Status Letter Issues

Prior to the entry of the Special Master Appointment Order, Dkt 208, on May 13, 2026, the parties submitted a joint status letter to the Court raising issues at which the parties were at or near impasse. Following the entry of the Special Master Appointment Order, on June 26, 2026 the Court referred to Special Master Hedges "disputes concerning (a) whether Apple should be excused from logging communications with outside counsel in a privilege log, (b) document processing and imaging errors, and (c) Plaintiffs' requests for production to Apple, as reflected in Sections II, IV, and V of the parties' joint status letter. Dkt. 214. On July 2, 2026, Special Master Hedges held a hearing on each of these issues. The below provides an update on the status of each dispute.

**(a) Privilege Logging Exception**. At the July 2 hearing, Special Master Hedges ordered the parties to continue to meet and confer and submit a proposed order reflecting any agreement. The parties came to an agreement which was signed by Special Master Hedges and filed with the Court on July 7, 2026. Dkt. 223-2.

**(b) Document processing and imaging errors**. At the July 2 hearing, Special Master Hedges issued an oral ruling ordering Apple to produce to MDL Plaintiffs native format versions of all documents Apple has produced or will produce in this Action. That order was signed and filed with the Court on July 7, 2026. Dkt. 223-1. Apple filed a motion for reconsideration of this order with Judge Hedges on July 9, 2026, Dkt. 228, to which MDL Plaintiffs responded on July 13, 2026, Dkt. 233. Prior to Judge Hedges resolving the motion for reconsideration, Apple and MDL Plaintiffs met and conferred and resolved the dispute by submitting a joint proposed order amending the July 7 Order. That proposed order was signed by Special Master Hedges and filed on August 4, 2026. Dkt. 262-1.

**(c) Plaintiffs' requests for production**. At the July 2 hearing, Special Master Hedges issued an oral ruling ordering Apple to produce documents according to the search terms proposed by MDL Plaintiffs no later than 30 days from the date of the written Special Master Order. That order was signed and filed with the Court on July 7, 2026. ECF 223-1. On July 9, 2026, Apple sought reconsideration of that Order. ECF 226–227. Special Master Hedges subsequently held a hearing on July 17, 2026, to discuss the motion for reconsideration. At that time, Special Master Hedges ordered the parties to continue to meet and confer, but in the event the parties could not reach resolution, he set an evidentiary hearing for July 29, 2026, to resolve the dispute. As part of the meet and confer process, on July 21, Apple proposed to substantially complete production within 75 days and to use

a TAR model in addition to search terms. However, the parties were ultimately unable to reach a resolution, and during the July 29 conference with Special Master Hedges, the parties discussed Apple's TAR plus search terms proposal, including MDL Plaintiffs' concerns about the proposal. On August 7, 2026, Special Master Hedges entered an order (ECF 272-1) setting forth a protocol for MDL Plaintiffs to test Apple's proposed TAR model and to raise disputes over such model with Special Master Hedges. The protocol includes the requirement that Apple provide a total of four sequential test batches of ~25,000 documents each through late September. Apple provided the first test batch on August 21, 2026, and the second test batch on August 31, 2026. The parties held their first meet and confer concerning the testing process on August 28, 2026. The August 7, 2026 order provides that Apple is to substantially complete its production based on the TAR model by October 21, 2026.

**B. Phone Plaintiffs' Expedited Issues (Dkt. No. 246)**

On July 17, 2026, iPhone Purchaser Plaintiffs and Apple filed a notice of impasse on two issues to be argued on an expedited schedule: the production of documents solely discussing non-US geographies in response to Phone RFPs 11, 31, 34, and 79; and the production of documents related to Apple's agreement with Google to make Google the default search engine on Safari in response to Phone RFPs 102 and 103. The parties submitted additional briefing on July 28, 2026 (ECF 259) and August 4, 2026 (ECF 264).

On August 19, 2026, iPhone Purchaser Plaintiffs and Apple appeared before the Court to argue the issues raised in these letters. The Court asked the parties to further meet and confer, and, if necessary, submit a schedule for further briefing on any remaining issues. As of September 2, iPhone Purchaser Plaintiffs are considering ways to narrow their requests.

**C. Phone Plaintiffs' Non-Expedited Issues (Dkt. No. 245)**

On July 17, 2026, iPhone Purchaser Plaintiffs and Apple filed a notice of impasse on two issues to be argued on a non-expedited schedule: the production of contracts and communications with non-carrier retailers in response to Phone RFP 29 and 29(A); and the production of documents related to Apple's potential waiver of privilege over documents produced to the European Commission. The parties submitted additional briefing on July 28, 2026 (ECF 258) and August 4, 2026 (ECF 263). In iPhone Purchaser Plaintiffs' July 28 briefing, they withdrew their notice of impasse with respect to Apple's potential waiver of privilege over documents produced to the European Commission.

On August 26, 2026, Special Master Linares issued an order denying without prejudice iPhone Purchaser Plaintiffs' motion with respect to the production of contracts and communications with carriers and retailers in response to Phone RFP 29 and 29(A). The order did not address the dispute regarding the European Commission documents and deemed it moot.

**D. Watch Plaintiffs' Expedited Issues (Dkt. No. 243)**

On July 17, 2026, Watch Plaintiffs and Apple filed a notice of impasse seeking expedited resolution of disputes related to the appropriate scope of discovery for six topics covering 28 requests for production for which custodial searches apply. ECF 243.

The parties submitted letter briefs on July 28 (ECF 256) and August 4 (ECF 266). Special Master Bariso issued a decision on August 18, overruling certain of Apple's objections, sustaining others, and ordering the parties to continue to meet and confer or reach an agreed solution as to one issue. ECF 284. On September 1, Watch Plaintiffs filed a motion to reconsider Judge Bariso's August 18 order. ECF 303, 304.

**E. Watch Plaintiffs' Non-Expedited Issues (Dkt. No. 244)**

On July 17, 2026, Watch Plaintiffs and Apple filed a joint notice of impasse on three non-expedited discovery disputes concerning: (1) formal submissions and certain other documents Apple provided to and exchanged with foreign regulators as part of their investigations into Apple (Watch Plaintiffs' RFP 1.3); (2) the scope of App Review documents Apple will collect and produce regarding apps tied to Watch Plaintiffs' allegations concerning messaging protocols, NFC payment technology, access to APIs, and other topics (RFPs 72 and 128); and (3) communications between Apple and the Government Plaintiffs (RFP 1.1). ECF 244. The parties submitted letter briefs on July 28 (ECF 257) and August 4 (ECF 265). On August 10, 2026, Special Master Hedges sent the parties a list of 6 supplemental questions and requested a response by August 11, which the parties provided.

On August 13, 2026, Special Master Hedges held a conference on these issues. On August 26, 2026, Special Master Judge Hedges entered an order deciding several of the issues. ECF 293. On the foreign government investigation documents, Special Master Hedges ordered Apple to produce, by August 27, 2026, all formal submissions related to "Identified Products and Services" from two specified European Commission ("EC") Digital Markets Act Investigations, and, by September 24, 2026, all documents, including informal communications, exchanged with the EC in those investigations, as well as formal submissions in the EC Near-Field-Communication Investigation. Special Master Hedges also ordered Apple to brief, by August 27, its position that certain documents produced to the EC remain privileged, with Watch Plaintiffs to respond two weeks later. Special Master Hedges reserved decision on Watch Plaintiffs' remaining requests regarding other foreign government investigations pending Watch Plaintiffs' review of the EC materials. On August 26, 2026, Special Master Hedges entered an order deciding several of the issues. ECF 293.

On App Review, Special Master Hedges ordered Apple to propose a list of apps for full App Review file production, and he directed the parties to continue negotiating the scope of that

production, with any unresolved disputes to be submitted to the Special Master. The parties continue to negotiate the scope of production of app review files.

On the Apple-Government communications issue, Special Master Hedges ordered Apple to submit a letter brief by August 27, 2026, explaining its position that settlement communications with the Government Action plaintiffs should not be discoverable, with Watch Plaintiffs to respond two weeks later. Apple filed its brief on August 27, 2026. ECF 298. Special Master Hedges subsequently informed the parties on August 28 that the dispute with regards to settlement communications was not within the scope of Judge Wettre's referral order and instructed the parties to submit any further dispute on that issue according to the procedures set forth in the Special Master Appointment Order.

**V. <u>Centralization of Subpoena Enforcement</u>**

On May 26, 2026, MDL Plaintiffs informed Apple and the Government that they intended to seek the Court's approval for entry of an Order on Centralized Enforcement of Subpoenas in the MDL. Since then, Apple has informed MDL Plaintiffs that it believes such enforcement should be permissive rather than exclusive. The Government has informed the parties that it supports the centralization of subpoena enforcement in the MDL action and thus does not oppose MDL Plaintiffs' motion, and that should this issue arise in the Government action, the United States and the States expect they would generally advance justifications for the transfer of subpoena enforcement to the District of New Jersey.

On August 21, 2026, MDL Plaintiffs sent Apple a draft joint notice of impasse regarding centralization of subpoena enforcement. The parties exchanged edits and, on September 1, 2026, agreed to a final version. MDL Plaintiffs filed that joint notice of impasse on September 2, 2026.

Respectfully submitted,

Joseph J. DePalma

JJD:emp

cc: All Counsel of Record (via ECF)