**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE: APPLE INC. SMARTPHONE ANTITRUST LITIGATION | Civil Action No.: 24-md-3113 (JXN)(LDW)<br><br>**OPINION AND ORDER OF THE SPECIAL DISCOVERY MASTER RE: CARRIER/NON-CARRIER DISCOVERY DISPUTE** |

**LINARES, J.**

This matter having come before the Special Master by way of the Direct and Indirect Purchaser Plaintiffs' ("Plaintiffs") letter motion seeking to compel the production of certain documents. (ECF No. 258 ("Mov. Br.")). Defendant Apple Inc. has timely submitted an opposition to Plaintiffs' application ("ECF No. 263 ("Opp. Br.")).[1] The Special Master has the authority to hear the subject dispute pursuant to the Court's general Special Master referral Order (ECF No. 208) and specific dispute referral Order (ECF No. 248). The Special Master has considered the Parties' submissions and decides this matter without oral argument pursuant to

[1] The Parties had also previously raised a privilege waiver dispute in their original submission requesting leave to file this application. (ECF No. 245). The Parties have since resolved that dispute and have withdrawn their request to be heard on it. (*See* Mov. Br. at 4; Opp. Br. at 4). Accordingly, this Opinion and Order will not address this dispute and deems it **MOOT**.

Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Special Master **DENIES** Plaintiffs' letter motion to compel.

## I. BACKGROUND

The Special Master presumes the parties' familiarity with the factual background and procedural posture of this matter. Accordingly, the Special Master will only recite facts relevant to the dispute.

This dispute stems from Plaintiffs' Request for Production ("RFP") 29, which "seeks all contracts between [Defendant] and retailers related to iPhones, and all communications from 2015 onward related to the negotiation of those contracts or to retailer sales or promotions." (Mov. Br. at 1). Plaintiffs claim that this information is "highly relevant" for them to be able "to calculate damages, demonstrate pass-through, show market power, and prove commonality and adequacy at class certification." (Id.). In responding to RFP 29, Defendant "agreed to produce the requested contracts and communications with carrier-retailers such as Verizon and AT&T," but refused to produce similar discovery for "non-carrier retailers." (Id.).

As a concession, Defendant is willing to produce this discovery for its [redacted] non-carrier retailers.[2] (Mov. Br. at 2; Opp. Br. at 1). Additionally, Defendant has agreed to produce a "selection of contacts with additional smaller retailers" and "exemplar or form contracts that reflect [Defendant's] standard contract terms." (Opp. Br. at 1-2). Plaintiffs object to this proposal arguing that Rule 26(b)(2)(C) requires Defendant to produce all of the contracts from the non-carrier retailers. (*See generally* Mov. Br. at 1-3).

Plaintiffs argue that the demanded discovery is relevant and proportionate. (Mov. Br. at 1-2). As to the contracts with non-retailers, Plaintiffs claim that Defendant has not shown that

---

[2] [redacted]

the burden of making a complete production outweighs the likely benefit. (Mov. Br. at 2 (citing *Gutierrez v. Johnson & Johnson, Inc.*, 2002 WL 34717245, at *3 (D.N.J. Aug. 13, 2002)). Plaintiffs claim that, for example, Defendant has not explained how many non-carrier retailers Defendant has contracts with to support Defendant's claim of undue burden. (Id.). Plaintiffs also ask the Special Master to reject Defendant's "circular position" that determining how many non-carrier retailers in and of itself is burdensome. (Id.).

Additionally, Plaintiffs argue that Defendant's compromise on the contract production is flawed because Defendant has not explained the method it would use to select the smaller subset of non-carrier contracts it would produce. (Mov. Br. at 3). Similarly, Plaintiffs aver that Defendant has not provided any assurances that the exemplars it proposed would be "representative of its contracts with retailers." (Id.). Hence, Plaintiffs submit that "[w]ithout that assurance, [Defendant's] offer does not address the needs of [Plaintiffs] and would allow [Defendant] to cherry pick the contracts that best support its defense." (Id.).

Finally, Plaintiffs submit that the sought-after discovery, specifically the communications with non-carrier retailers, is proportional to the needs of the case. (Id.). Plaintiffs explain that "[t]hese communications are highly relevant not only because they will shed light on the meaning and enforcement of [Defendant's] contracts with non-carrier retailers, but also because they will reveal whether [Defendant] has wielded its market power to force retailers to accept undesirable contract terms." (Id.).

The dispute concerning the communications is slightly more nuanced in that Defendant has not necessarily objected to production of the communications with the non-retailers. (Id.). Instead, Defendant argues that Plaintiffs' request for "all communications from 2015 onward related to the negotiation of those contracts or to retailer sales or promotions" is in essence a

request to identify every employee who ever served as a point of contact with any non-carrier retailer in the last decade, a monumental and disproportionate task that it is not even certain can be accomplished. Defendant argues that it has already identified more than 50 custodians, including senior personnel responsible for sales, and that searching those files for responsive communications using the search terms that the parties have already agreed to, is sufficient. Plaintiffs submit that, at a minimum, Defendant must be compelled to identify additional document custodians of non-carrier communications and be required to search those custodians for same. (Id.).

First, Defendant does not disagree that the documents sought are relevant. (*See generally* Opp. Br.). Instead, Defendant asserts that Plaintiffs' demand for *all* contracts and *all* communications with every non-carrier retailer is not proportional to the needs of this case. (Id. at 1-2). Defendant explains that its carrier contracts "account for more than [redacted] of all U.S. iPhone reseller sales, with non-carrier retailers representing [redacted]." (Id. at 2). Defendant further explains that the [redacted] non-carrier retailers "account for approximately [redacted] of all non-carrier retail iPhone sales." (Id.). Hence, Defendant claims that it has essentially agreed to produce contracts with [redacted] of its retailers and that Plaintiffs' demand is looking to add an immense burden of man hours and costs for what amounts to [redacted] of its retailer contracts. (Id.). Defendant submits that this is a disproportionate demand noting that "Rule 26 does not require [Defendant] to exhaustively 'examine every scrap of paper in its potentially voluminous file.'" (Id. (quoting *LifeScan, Inc. v. Smith*, 2022 WL 20853087, at *11 (D.N.J. July 29, 2022)).

Moreover, Defendant explains that it is not completely refusing to provide this discovery. Instead, as to this remaining [redacted] of contracts, Defendant has offered what it believes is a reasonable compromise. (Id.). That is, it "will produce exemplar and form contracts for non-

carrier retailers, which will allow [. . .] Plaintiffs to gauge whether material differences between contracts actually exist." (Id. at 2-3). Hence, Defendant submits that Plaintiffs' application to compel *all* non-carrier retailer contracts should be denied.

As to the communications, Defendant notes that it "has agreed to produce (1) non-privileged communications with U.S. wireless carriers and [redacted] related to iPhone sales or promotions; and (2) non-privileged responsive documents that hit on [agreed upon] search terms … to identify communications related to iPhone sales or promotions run across all of [Defendant's] agreed custodians." (Id. at 3). Defendant says this more than satisfies its discovery obligations and claims that "[i]dentifying all individuals who negotiated contracts or discussed promotions with smaller retailers would require identifying dozens – and potentially hundreds – of [its] employees across a decade of personnel turnover[,]" which would not be "proportional to the needs of the case." (Id.). As such, Defendant submits that Plaintiffs' application must be denied because Defendant has complied with its discovery obligations under the Federal Rules of Civil Procedure.

## II. DISCUSSION

Federal Rule of Civil Procedure 26 defines the bounds of relevant discovery. Pursuant to subparagraph (b)(1), "parties may obtain discovery regarding any matter, not privileged that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1). The Federal Rules of Civil Procedure "allow broad and liberal discovery." *Pacitti v. Macy's*, 193 F.3d 766, 777 (3d Cir. 1999). Courts have interpreted the federal rules to mean that discovery encompasses "any matter that bears on or reasonably could lead to other matters that could bear on any issue that is or may be in the case." *Kopacz v. Del. River and Bay Auth.*, 225 F.R.D. 494, 496 (D.N.J. 2004).

In interpreting Rule 26(b)(1), district courts must remain mindful that relevance is a broader inquiry at the discovery stage than at the trial stage. *Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*, 135 F.R.D. 101, 104 (D.N.J. 1990). Accordingly, Rule 26(b) (1) provides that "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action."

"When a party fails to make disclosure of discovery, the opposing party may file a motion to compel. When a motion to compel is filed and asks the court to overrule certain objections, the objecting party must specifically show how each discovery request is objectionable." *Kannaday v. Ball*, 2013 WL 1367055 at *2 (D. Kan. 2013). "Although the scope of discovery under the Federal Rules is broad, this right is not unlimited and may be circumscribed." *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999). While relevant information need not be admissible at trial, the party seeking discovery must "show that the information sought is relevant to the subject matter of the action and may lead to admissible evidence." *Caver v. City of Trenton*, 192 F.R.D. 154, 159 (D.N.J. 2000). This is because the sole purpose of discovery is to add support for trial on the parties' respective claims and defenses in the given action. Thus, conversely, discovery is not a fishing expedition for all possible information. *Smith v. Lyons, Doughty & Velduius, P.C.*, 2008 WL 2885887, at *5 (D.N.J. July 23, 2008).

Indeed, Federal Rule of Civil Procedure 26 sets out the parameters for when the Court must limit discovery:

> (C) When Required. On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C).

In reviewing the Parties' submissions, the Special Master concludes that Defendant has in fact satisfied its discovery obligations as to both the non-retailer contracts and communications from 2015 onward related to the negotiation of those contracts or to retailer sales or promotions. Plaintiffs do not dispute that Defendant has provided a significant subset of retailer and non-wireless retailer contracts. (*See generally* Mov. Br.). Instead, Plaintiffs argue that they are entitled to each and every one of these contracts. (Id.). However, Plaintiffs fail to explain how receipt of the additional contracts they seek is not "cumulative or duplicative." Rather, Defendant's proposed production of the contracts as explained above (which, according to Defendant, accounts for [redacted] of its contracts with retailers) has afforded Plaintiffs "ample opportunity to obtain the information by discovery in the action." *See* Fed. R. Civ. P. 26(b)(2)(C)(ii). Accordingly, at this time, the Special Master will not order any production beyond what Defendant has already agreed to produce.

This ruling is made without prejudice and with one caveat. To the extent Defendant's productions reveal *material* differences or discrepancies, Plaintiffs may re-raise the dispute. If Plaintiffs elect to do so, Plaintiffs must identify, with specificity, the exact discrepancy or

discrepancies they have found and the legitimate evidentiary reason they believe all remaining contracts must be produced so as to not prejudice their prosecution of this action.

The Special Master reaches the same conclusion regarding Plaintiffs' application to compel production of all communications between Defendant and non-wireless retailers. As Defendant correctly notes, and as set forth *infra*, civil discovery is not designed to unveil every piece of information. Instead, it is designed to assist the parties in obtaining relevant information that may be useful at trial to prove a claim or defense. *Caver*, 192 F.R.D. at 159. Having *all* evidence does not advance this goal, so long as sufficient evidence has been provided to achieve it.

Here, Defendant has agreed to produce ample communications with its non-wireless retailers. Defendant has searched and has, or will, produce communications from a total of 50 custodians, some of whom served in supervisory roles, using agreed-upon search terms. To the extent Plaintiffs are going to find useful information, it is likely to be in those productions. Hence, in light of what Defendant has already agreed to search for and produce, requiring Defendant to identify additional custodians and search for communications that span more than a decade does not appear to be proportional to the needs of the case, at this point in time.

This ruling is also without prejudice and with the same caveat noted above.

## III. ORDER

**IT IS** on this 26th day of August, 2026,

**ORDERED** that Plaintiffs' Motion to Compel Production of Defendant's Contracts and Communications With Non-Wireless Retailers (ECF No. 258) is hereby **DENIED WITHOUT PREJUDICE**; and it is further

**ORDERED** that, to the extent it already has not, Defendant will make all productions it has agreed and stipulated to as outlined in its Opposition (ECF No. 263) consistent with all previously entered discovery schedules and any agreements by and between the Parties.

**SO ORDERED**.

/s/ *Jose L. Linares*
Hon. Jose L. Linares, U.S.D.J. (ret.)