WALSH PIZZI O'REILLY FALANGA

**THREE GATEWAY CENTER**
100 Mulberry Street, 15th Floor
Newark, NJ 07102
T: 973.757.1100
F: 973.757.1090
**WALSH.LAW**

Liza M. Walsh
Direct Dial: (973) 757-1100
lwalsh@walsh.law

**VIA ECF** September 9, 2026

**Re:** ***In re: Apple Inc. Smartphone Antitrust Litigation***
**Civil Action No. 2:24-md-03113-JXN-LDW (MDL 3113)**

Dear Judge Hedges:

This firm, together with Gibson, Dunn & Crutcher LLP, represents Defendant Apple Inc. ("Apple"). Your Honor's August 26, 2026 Order, Dkt. 293, directed Apple to produce all non-privileged documents Apple provided to or exchanged with the European Commission ("EC") in relation to two investigations (the "EC DMA Investigations"). *See* Dkt. 293 ¶ 2. The discovery compelled by that ruling is irrelevant, disproportionate, inconsistent with Federal Rule of Civil Procedure 26, and departs from your Honor's oral determination at the August 13 hearing. Apple respectfully requests that Your Honor reconsider and vacate the Order. Alternatively, Apple respectfully seeks modification to require only production of documents that are relevant to this action and responsive to Plaintiff's RFPs.[1]

## I. Procedural History

On August 7, Judge Wettre referred to Your Honor the underlying dispute, in which Watch Plaintiff sought (i) all non-privileged documents, including informal communications, that Apple had provided to the EC in two DMA Investigations ("EC Investigation Materials"); and (ii) formal submissions in 14 additional foreign investigations. Dkt. 257 at 1–2 & Ex. H at 3–4. Apple had previously agreed to produce certain formal submissions from the EC DMA Investigations—not at issue in Watch Plaintiff's motion—at the request of the DOJ. Apple objected to Watch Plaintiff's additional requests because they sought foreign regulatory files untethered to his claims and imposed substantial burdens on Apple involving collection, foreign languages, and privilege. Dkt. 265 at 1–4.

On August 10, Your Honor asked the parties by email how many documents would be implicated if Apple were required "to produce all materials related to only the EC investigation that fall within the scope of the RPCs in issue." Walsh Dec. Ex. 1. Apple responded: "Running the parties' agreed-upon search terms for the MDL document requests against the EC Investigation Materials produces a total of 221,000 documents." *Id.* When Your Honor asked how long producing that volume would take, Apple asked for six weeks—explaining it would run search terms and review documents for responsiveness "just like any other set of documents." Aug. 13, 2026 Hr'g Tr. at

[1] In the course of resolving the referred disputes, Your Honor concluded that any dispute concerning the discoverability of documents that had been designated as privileged under U.S. law and produced to the EC under protest was not before Your Honor. Walsh Decl. Ex. 2. Apple agrees with that determination. Apple also does not challenge Your Honor's Order insofar as it directs Apple to produce formal submissions from several DMA Investigations, much of which Apple has already produced.

7:3–22. Watch Plaintiff did not object. Your Honor then directed Apple to produce EC Investigation Materials within six weeks. *Id.* at 8:7–24.

After the August 13 hearing but before Your Honor entered a written order, Special Master Bariso resolved another dispute over Watch Plaintiff's request for other foreign regulatory materials—"'the broader universe' of EU DMA requests, evaluations, appeals, and compliance materials." Dkt. 284 at 13. Special Master Bariso's August 18 Order found that "[r]equiring Apple to produce the complete regulatory file concerning EU DMA evaluations, appeals, and compliance materials, which are governed by non-U.S. law and arise from a Europe-specific regulatory process, is neither relevant nor proportional to this antitrust action." *Id.* Apple cited this order in correspondence with Your Honor, but the order remained sealed on the docket until September 4, 2026.

On August 21, the parties submitted competing forms of order to Your Honor. *See* Walsh Decl. Exs. 3, 4. Apple's form of order reflected the process the parties discussed with Your Honor: running the parties' search terms across the EC Investigation Materials and reviewing for responsiveness. Walsh Decl. Ex. 4. Watch Plaintiff's form of order proposed that Apple produce *all* non-privileged documents from the EC Investigation Materials—with no attempt to identify documents in that universe relevant to this action. Walsh Decl. Ex. 3. Your Honor entered Watch Plaintiff's form of order as the August 26 Order. Dkt. 293. That Order expanded the volume of documents involved, with no prior discussion, by nearly fourfold (to approximately 850,000 documents).

## II. Legal Standard

Reconsideration is appropriate when a court "'overlooked' pertinent facts or controlling case law," *In re Lord Abbett Mut. Funds Fee Litig.*, 417 F. Supp. 2d 624, 627 (D.N.J. 2005), or to "correct a clear error or manifest injustice," *Leja v. Schmidt Mfg., Inc.*, 743 F. Supp. 2d 444, 456 (D.N.J. 2010).

## III. The EC Investigation Materials Are Not Relevant or Proportional

Rule 26(b)(1) permits discovery only of non-privileged matters relevant to any party's claim or defense and proportional to the needs of the case. The scope of discovery is "'circumscribe[d]' by '[t]he complaint and its claims.'" *Castellani v. City of Atlantic City*, 102 F. Supp. 3d 657, 663 (D.N.J. 2015) (alterations in original); *see* Fed. R. Civ. P. 26(b)(1). And even if discovery may be relevant, "the importance of the discovery in resolving the issues" must be considered—including whether "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). The Order makes no such findings here. It compels Apple to produce *all* non-privileged EC Investigation Materials without any analysis of whether those materials are relevant or proportional. Because the Order either overlooked this analysis or departs from it in clear error, the Order should be reconsidered or modified.

### A. Apple Should Not Be Required To Produce Any EC Investigation Materials

*First*, the Order makes no finding—and could not correctly find—that the EC Investigation Materials are relevant. The Amended Complaint alleges that Apple restricted third-party smartwatch interoperability with iPhone in alleged U.S. markets. *See, e.g.*, Dkt. 86 ¶¶ 200, 220–22. But the EC DMA Investigations concern Apple's foreign activities in Europe and compliance with the DMA. *See* Dkt. 293 ¶ 1. It is not enough for Watch Plaintiff to simply assert that a

foreign investigation touched a topic notionally connected to Apple's iPhone business. Dkt. 265 at 2; *Cole's Wexford Hotel, Inc. v. Highmark Inc.*, 209 F. Supp. 3d 810, 812 (W.D. Pa. 2016) (explaining "discovery requests are not relevant simply because there is a possibility that the information may be relevant to the general subject matter of the action"); *Blueprint Capital Advisors, LLC v. New Jersey*, 2025 WL 1766120, at *4–5 (D.N.J. June 26, 2025) (denying motion to compel where the requesting party identified no connection between the documents sought and the theories actually pleaded). As Special Master Bariso explained in resolving a similar dispute about foreign regulatory materials, governing law requires Watch Plaintiff to establish "why documents concerning foreign activities are relevant to U.S. claims or defenses, and the Court must conduct a careful analysis to determine if the foreign documents actually would be relevant." Dkt. 284 at 11–13 (citing and discussing, *e.g.*, *Mylan Pharms., Inc. v. Teva Pharms. Indus., Ltd.*, 2026 WL 982946, at *12, *21 (D.N.J. Apr. 13, 2026); *In re Apple iPhone Antitrust Litig.*, No. 4:11-cv-06714 (N.D. Cal. Aug. 19, 2024), Dkt. 919, at 4–6; *Epic Games, Inc. v. Apple Inc.*, 2020 WL 7779017, at *1 (N.D. Cal. Dec. 31, 2020)).

The Order reflects no such analysis. Rather than identify EC Investigation Materials related to the pleaded claims, the Order compels Apple to produce *all* non-privileged materials submitted to the EC with no discussion of why those 850,000 documents are, in their entirety, relevant. *See* Dkt. 293 ¶ 2. As Apple explained in its August 4 letter to the Court, Dkt. 265 at 3, and again in its August 21 letter to Your Honor, Dkt. 289 at 1, the EC Investigation Materials include documents not even relevant *to those EC investigations*—investigations themselves not aligned with the claims here—because Apple was not permitted to review some of those documents for relevance before producing them. *See, e.g.*, *Allegheny Cnty. Emps.' Ret. Sys. v. Energy Transfer LP*, 2022 WL 17339035, at *3 (E.D. Pa. Nov. 30, 2022) (explaining that "similarities or overlap alone are insufficient" to compel "'piggyback' discovery requests for all discovery produced in prior litigation or investigations" and "'the specific categories of documents sought'" each "'must be relevant to [the party's] claims and defenses'"). Indeed, approximately 600,000 documents from the EC Investigation Materials do not even hit on the search terms the parties agreed on to capture relevant materials in this action. That alone warrants reconsideration of the Order.

*Second*, the Order makes no finding, and could not properly find, that producing approximately 850,000 documents is "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Importantly, Apple agreed to produce documents reflecting planned or actual changes it made in Europe in response to the DMA. Dkt. 284 at 13. As Special Master Bariso observed, that means Apple will produce "documents [relevant] 'to any party's claim or defense and proportional to the needs of the case.'" *Id*. Watch Plaintiff has never specified what significance the additional, foreign materials captured by the Order have to "resolving the issues" beyond what Apple has already agreed to produce. Fed. R. Civ. P. 26(b)(1). Courts routinely reject demands for entire regulatory files where, as here, the issues that were investigated do not align precisely with the claims in a particular case. *See, e.g.*, *Mass. Sch. of L. at Andover, Inc. v. Am. Bar Ass'n*, 107 F.3d 1026, 1034 (3d Cir. 1997) (affirming denial of a request for all documents produced to DOJ as an "'end run around'" the discovery framework); *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 297 F.R.D. 99, 110–12 (S.D.N.Y. 2013) (denying request for all documents produced to government agencies and limiting discovery to materials that are "relevant to this case and which conform to the limits of Rule 26(b)"); *see also Novartis Pharms. Corp. v. Abbott Lab'ys*, 203 F.R.D. 159, 163–64 (D. Del. 2001) (denying motion to compel production of entire foreign regulatory files where "core" filings had been produced and further production would be

"duplicative and cumulative" and "burdensome").[2] Apple therefore respectfully requests that Your Honor hold that Apple need not produce any additional EC Investigation Materials.

**B. At a Minimum, The Order Should Only Address Substantively Responsive Materials**

If the Order is not vacated, it should at a minimum be modified to adopt the terms of Apple's proposed form of order. Your Honor ruled at the August 13 hearing after correspondence with the parties and colloquy at the hearing focused on a much smaller subset of EC Investigation Materials: approximately 221,000 documents that Apple would review for responsiveness. Apple's six-week estimate for the time needed to comply—the six weeks Your Honor imposed—was calibrated to that universe. Aug. 13, 2026 Hr'g Tr. at 7:3–19. While Apple does not concede that the search-term population is relevant or proportional, that approach would impose at least some "guardrails" for discovery and avoid the disproportionate burden of requiring production of *all* EC Investigation Materials. *See* Dkt. 284 at 13 ("Watch Plaintiffs' request for EU DMA requests, evaluations, appeals, and compliance materials exceeds the 'guardrails' of the Amended Complaint"). The Order instead compels Apple to produce *all* non-privileged materials without any responsiveness review, Dkt. 293 ¶ 2a—a large universe of documents neither the parties nor Your Honor discussed before entry of the Order. The adoption of Watch Plaintiff's form of order was thus an oversight or clear error: There has been no showing (or finding) that the great bulk of compelled materials have any "importance . . . in resolving the issues" in this case, Fed. R. Civ. P. 26(b)(1), or that producing them *en masse* is proportional compared to the parties' standard application of search terms and review for responsiveness, *see, e.g.*, *Fraternal Ord. of Police Pennsylvania Lodge v. Twp. of Springfield*, 668 F. Supp. 3d 375, 398 (E.D. Pa. 2023) (discovery disproportional in part because it was irrelevant).

**IV. Requested Relief**

Apple respectfully requests that Your Honor reconsider the Order and hold that Apple need not produce any documents from the EC DMA Investigations beyond the formal submissions Apple already agreed to produce. In the alternative, Apple respectfully requests that Your Honor modify the Order to permit Apple to apply the search terms from this case and conduct a responsiveness review on the non-privileged documents produced in the EC DMA Investigations. Regardless of Your Honor's decision, Apple further requests that Your Honor issue written "findings of fact and conclusions of law" under the Special Master Appointment Order, Dkt. 208 ¶ 9, in order to create a clear record for any appeal. *See, e.g.*, *Washington v. Link*, 750 F. App'x 84, 87 (3d Cir. 2018) (vacating and remanding order because lower court "did not explain the reasons" for its decision, which were not "readily apparent from the record").

---

[2] In impasse briefing, Dkt. 257 at 2, Watch Plaintiff cited inapposite cases involving global price-fixing conspiracies where foreign materials concerned the same conspiracy alleged domestically. *See In re Plastics Additives Antitrust Litig.*, 2004 WL 2743591, at *14 (E.D. Pa. Nov. 29, 2004); *In re Auto. Refinishing Paint Antitrust Litig.*, 2004 WL 7200711, at *3–6 (E.D. Pa. Oct. 29, 2004). The EC DMA Investigations arise under a European regulatory regime that imposes obligations on certain companies under far different circumstances than U.S. antitrust law and irrespective of the elements Watch Plaintiff must prove here, such as defining the market, proving monopoly power, and establishing Apple's challenged conduct had substantial anticompetitive effects.

Respectfully submitted,

s/*Liza M. Walsh*
Liza M. Walsh

cc: All Counsel of Record (via ECF)