**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE APPLE INC. SMARTPHONE ANTITRUST LITIGATION | Case No. 2:24-md-03113 (JXN) (LDW) |

# STIPULATED SUPPLEMENTAL PROTECTIVE ORDER GOVERNING DEVICE TRANSACTION AND REGISTRATION DATA

WHEREAS the Court entered the Discovery Confidentiality Order in *In re Apple Inc. Smartphone Antitrust Litigation* on October 7, 2025 (Dkt. No. 124) (the "DCO");

WHEREAS Direct Apple Watch Purchaser Plaintiff, Direct iPhone Purchaser Plaintiffs, and Indirect iPhone Purchaser Plaintiffs (collectively, "MDL Plaintiffs") and Defendant Apple Inc. ("Apple") (collectively, the "Parties") have reached agreement on the parameters pursuant to which Apple will produce certain data relating to device purchasers and registrants (the "Device Data Agreement").

WHEREAS the Device Data Agreement contemplates production of data that includes personally identifying information ("PII") about which Apple has expressed significant concerns relating to the protection of consumer privacy and data security;

WHEREAS the Parties' Device Data Agreement requires certain fields containing PII from Apple's device transaction and registration data systems to be produced on standalone, disconnected machines hosted in Secure Rooms with access limited to Authorized Individuals;

WHEREAS the DCO provides that nothing within it limits a Party from seeking additional or different confidentiality protections for particular Protected Material (DCO ¶ 7), and that by stipulating to the DCO the Parties did not waive the right to argue that certain material requires additional or different confidentiality protections;

WHEREFORE, IT IS HEREBY ORDERED:

Pursuant to Federal Rule of Civil Procedure 26(c), the Court finds good cause for the following Stipulated Supplemental Protective Order Governing Device Transaction and Registration Data ("Supplemental Protective Order").

**1. GENERAL PROVISIONS**

(a) Relationship to the DCO. The definitions, terms, and provisions of the DCO are incorporated herein by reference as though fully set forth herein. In the event of a conflict between any provision of this Supplemental Protective Order and any provision of the DCO, this Supplemental Protective Order controls with respect to such conflict.

(b) Highest Tier of Protection. Protected Material designated "HIGHLY CONFIDENTIAL – PURCHASER/REGISTRANT DATA" shall be subject to all of the protections and restrictions afforded to "Highly Confidential" information under the DCO, as well as the additional protections and restrictions described herein. For the avoidance of doubt, the DCO's provisions governing Protected Material subpoenaed or sought in other proceedings (DCO ¶¶ 32–33), inadvertent disclosure of privileged materials (DCO ¶ 43), miscellaneous provisions (DCO ¶¶ 44–49), and procedures upon termination of this Action (DCO ¶¶ 51–55) apply to "HIGHLY CONFIDENTIAL – PURCHASER/REGISTRANT DATA" Information or Items. To the extent there are differences between the protections and restrictions provided by the DCO for

"Highly Confidential" information and the protections and restrictions provided herein, the more restrictive protection shall apply.

(c) Limited Subject Matter. This Supplemental Protective Order governs only the handling, storage, security, and use of "HIGHLY CONFIDENTIAL – PURCHASER/REGISTRANT DATA" Information or Items. Except with respect to "HIGHLY CONFIDENTIAL – PURCHASER/REGISTRANT DATA" Information or Items, nothing in this Supplemental Protective Order addresses or determines the scope, size, content, or timing of any production of Litigation Material, which shall be governed by the Parties' separate written agreements or further order of the Court.

(d) Designations With Care. The Parties acknowledge that this Supplemental Protective Order does not confer blanket protections on all disclosures during discovery. Designations under this Supplemental Protective Order shall be made with care and shall not be made absent a good faith belief that the designated material satisfies the criteria set forth below. If it comes to the attention of a Producing Party that designated material does not qualify for protection at all, or does not qualify for the level of protection initially asserted, the Producing Party must promptly notify all other Parties that it is withdrawing or changing the designation. The Receiving Party may challenge any designation under this Supplemental Protective Order; if such a challenge is raised, the parties should meet and confer in good faith to resolve the dispute.

**2. ADDITIONAL DEFINITIONS**

Capitalized terms used but not defined in this Supplemental Protective Order have the meanings given in the DCO. In addition, the following definitions apply to this Supplemental Protective Order:

(a) Authorized Individual. An individual permitted to access "HIGHLY CONFIDENTIAL – PURCHASER/REGISTRANT DATA" Information or Items, a Secure Computer, or a Secure Room pursuant to Section 5(e) of this Supplemental Protective Order.

(b) Data Breach. Unauthorized access, use, or disclosure of "HIGHLY CONFIDENTIAL – PURCHASER/REGISTRANT DATA" material in electronic form or of devices containing "HIGHLY CONFIDENTIAL – PURCHASER/REGISTRANT DATA" material in electronic form.

(c) "HIGHLY CONFIDENTIAL – PURCHASER/REGISTRANT DATA" Information or Items. All data that Apple designates for production on a Secure Computer under Production I of the Parties' Device Data Agreement or any future similar agreement between the Parties.

(d) Secure Computer. A standalone, air-gapped computer that meets the requirements of Section 5(c) of this Supplemental Protective Order and that is the only location on which a Receiving Party may store or access "HIGHLY CONFIDENTIAL – PURCHASER/REGISTRANT DATA" Information or Items in electronic form.

(e) Secure Room. A room that meets the requirements of Section 5(c) of this Supplemental Protective Order to house one or more Secure Computers.

(f) Secure Printer. A laser printer with commercially reasonable printing speeds made available by the Producing Party for on-site printing from a Secure Computer in the Secure Room pursuant to Section 5(d)(iv) of this Supplemental Protective Order.

(g) Protected Material. As used in this Supplemental Protective Order, and in the DCO as applied to this Supplemental Protective Order, "Protected Material" includes

Litigation Material designated "HIGHLY CONFIDENTIAL – PURCHASER/REGISTRANT DATA."

3. **SCOPE**

(a) Except as provided in Section 5(d)(iv)–(vi), the protections conferred by this Supplemental Protective Order cover not only Litigation Material governed by this Supplemental Protective Order as addressed herein, but also any information copied or extracted therefrom, as well as all copies, excerpts, summaries, or compilations thereof, plus testimony, conversations, or presentations by Parties or their counsel in court or in other settings that might reveal Protected Material.

(b) Nothing in this Supplemental Protective Order shall prevent or restrict the Producing Party's own disclosure or use of its own Protected Material for any purpose except for use of the Protected Material in this Action.

(c) Nothing in this Supplemental Protective Order shall be construed to prejudice any Party's right to use any Protected Material in court or in any court filing with the consent of the Producing Party or by order of the Court.

(d) This Supplemental Protective Order is without prejudice to the right of any Party to seek further or additional protection of any Litigation Material or to modify this Supplemental Protective Order in any way, including, without limitation, an order that certain matter not be produced at all.

4. **DURATION**

Even after the termination of this case, the confidentiality obligations imposed by this Supplemental Protective Order shall remain in effect until a Producing Party agrees otherwise in writing or a court order otherwise directs.

**5. ACCESS TO AND USE OF PROTECTED MATERIAL**

(a) Use and Final Disposition. Notwithstanding DCO ¶ 31, a Receiving Party may use Information or Items designated "HIGHLY CONFIDENTIAL – PURCHASER/REGISTRANT DATA" only for prosecuting, defending, attempting to settle this Action, or (with consent of the Producing Party) effectuating a settlement of this Action, and not for the conduct of the Government Action or for any other purpose. Such Information or Items may be disclosed only to the categories of persons and under the conditions described in this Supplemental Protective Order. When this Action has been terminated, a Receiving Party must comply with DCO ¶¶ 52–55 with respect to "HIGHLY CONFIDENTIAL – PURCHASER/REGISTRANT DATA" Information or Items, including wiping all data from any computer or backup drive that has held such Information or Items, especially given the risk that local indices and other artefacts of such Information or Items might otherwise remain. The method of wiping, destruction, or return must be approved in advance by the Producing Party. The parties stipulate that the "HIGHLY CONFIDENTIAL – PURCHASER/REGISTRANT DATA" Information or Items produced by Apple in this Action are authentic within the meaning of Federal Rule of Evidence 901 as true and correct copies of data that Apple maintains in the ordinary course of its business with a complete, unbroken, and secure chain of custody from the time they were collected from Apple's data repositories until the time of their disclosure in this Action.

(b) Class Certification. If class certification as to a Receiving Party is denied with prejudice, that Receiving Party shall, following resolution of any appeals, delete, destroy, or return all "HIGHLY CONFIDENTIAL – PURCHASER/REGISTRANT DATA" Information or Items in its possession, custody, or control, without prejudice to a reproduction in the event that a subsequent motion for class certification is permitted, including after any appeals. However, if

Apple believes that "HIGHLY CONFIDENTIAL – PURCHASER/REGISTRANT DATA" Information or Items are not needed for a pending appeal, the parties shall meet and confer before seeking judicial intervention. Apple reserves its right to request that the Court order the Receiving Party delete, destroy, or return such Information or Items. The method of destruction or return must be approved by the Producing Party.

(c) Secure Storage, No Export or Copying. "HIGHLY CONFIDENTIAL – PURCHASER/REGISTRANT DATA" Information or Items may be stored, maintained, and accessed by a Receiving Party only on a Secure Computer housed in a Secure Room, and each Secure Computer and Secure Room shall meet the following requirements:

(i) The Producing Party shall provide two Secure Computers for each plaintiff class (Direct Apple Watch Purchaser Plaintiff, Direct iPhone Purchaser Plaintiffs, and Indirect iPhone Purchaser Plaintiffs). Each Secure Computer shall be a standalone computer with no operable internet access and no network access to any other computer or device. Each Secure Computer shall have no software other than Microsoft Excel, Stata, SAS, RStudio, and tools approved pursuant to Section 5(d)(ii).

(ii) The Parties shall meet and confer to agree on a set of tools to be loaded onto each Secure Computer. The Producing Party shall then deliver to the Secure Room the Secure Computers onto which have been loaded the agreed tools together with the "HIGHLY CONFIDENTIAL – PURCHASER/REGISTRANT DATA" Information or Items.

(iii) Each Secure Computer shall have no access ports other than those necessary to connect a keyboard and mouse. All other access ports, including without limitation USB and ethernet ports, shall be fully disabled at the BIOS level, and the BIOS settings shall be password protected. The BIOS password shall be held by the Producing Party.

(iv) Each Secure Computer shall contain no hardware capable of wirelessly connecting to another device. Motherboards or components with WiFi or Bluetooth hardware are prohibited, even if the WiFi or Bluetooth functionality is turned off.

(v) Each Secure Computer shall encrypt all drives using industry-standard full-drive encryption software (for example, BitLocker or an equivalent product).

(vi) Each Secure Computer shall require multi-factor authentication for all electronic access to "HIGHLY CONFIDENTIAL – PURCHASER/REGISTRANT DATA" Information or Items. Such multi-factor authentication shall utilize a YubiKey or an equivalent hardware product.

(vii) Once loaded with "HIGHLY CONFIDENTIAL – PURCHASER/REGISTRANT DATA" Information or Items, each Secure Computer shall be stored at all times in a Secure Room. The Secure Room shall be physically locked except when an Authorized Individual is entering or exiting, shall have no wired internet access or network access to other computers, and entry shall be limited to Authorized Individuals. Apple understands that it is not possible to block WiFi signals otherwise present in the building from entering the Secure Room inside MDL Plaintiffs' experts' offices. Apple agrees that it is sufficient that, as otherwise provided in this Supplemental Protective Order, no devices with WiFi internet connectivity shall be allowed into the Secure Room, e.g., (1) the air-gapped computer provided by Apple shall have no internet capabilities (Section 5(c)(i)), (2) no unapproved or internet-capable devices may be brought into the Secure Room (Section 5(d)(vii)), and (3) the expert work product allowed to be removed from the Secure Room shall not contain PII and shall be printed on paper or via handwritten notes (Section 5(d)(iv)).

(viii) No data other than "HIGHLY CONFIDENTIAL – PURCHASER/REGISTRANT DATA" Information or Items, the Receiving Party's own work product derived therefrom and created in the Secure Room, and software tools installed pursuant to Section 5(d)(ii), shall be loaded onto or stored on any Secure Computer. Without limiting the foregoing, no other structured data produced by any Party or Non-Party in this Action shall be loaded onto a Secure Computer, and no "HIGHLY CONFIDENTIAL – PURCHASER/REGISTRANT DATA" Information or Items shall be loaded onto or combined with any system holding other data.

(ix) The Secure Computer shall be equipped with a redundant internal storage for use as a backup in the unlikely event the Secure Computer experiences a hardware or system failure. The Receiving Party shall not copy, remove, or otherwise transfer any portion of the "HIGHLY CONFIDENTIAL – PURCHASER/REGISTRANT DATA" Information or Items onto any recordable media or recordable device, except solely for the purpose of transferring a backup of the work product that exists on the Secure Computer pursuant to the procedure set forth in Section 5(d)(viii). Any such storage drive containing a backup of the Receiving Party's work product shall be a new device (i.e., not previously used to store any different data), shall be encrypted in accordance with Section 5(c)(v), and shall remain in the Secure Room at all times without any internet or network access (or connection to any other device with internet or network access). The Producing Party shall maintain a master copy of the "HIGHLY CONFIDENTIAL – PURCHASER/REGISTRANT DATA" Information or Items so that the data may be reloaded onto a replacement Secure Computer in the event of such a failure.

(x) Any material stored on a Secure Computer that is required to be disclosed in connection with service of an expert report (excluding HIGHLY CONFIDENTIAL –

PURCHASER/REGISTRANT DATA Information or Items) may be extracted from the Secure Computer under the supervision of representatives of the Producing Party. HIGHLY CONFIDENTIAL – PURCHASER/REGISTRANT DATA Information or Items may not be reproduced in such material but may be referred to in a way that allows cross-referencing by other parties already in possession of the produced data.

(d) Delivery, Software Tools, Notes, and Devices. The following additional conditions apply to each Secure Computer and Secure Room:

(i) Representatives of the Producing Party, which may include, at the Producing Party's option, a technical consultant and an attorney, shall deliver by hand each Secure Computer to the Secure Room pursuant to Section 5(c)(ii). Those representatives may inspect the Secure Room to confirm that it complies with the requirements of this Supplemental Protective Order.

(ii) One month before the anticipated delivery of a Secure Computer, the parties shall meet and confer to discuss what commercially available tools should be pre-installed on the Secure Computer. After receipt of a Secure Computer, a Receiving Party may request in writing that additional commercially available tools be installed. The Producing Party shall have the opportunity to inspect any proposed tool prior to its installation, and shall not unreasonably withhold consent to tools that are not capable of exporting or transmitting data from the Secure Computer. Any tool approved after the initial loading shall be installed only by, or under the observation of, representatives of the Producing Party using a method agreed by the Parties that does not permit data to be extracted from the Secure Computer. No tool may be used for any unauthorized copying or transmitting of "HIGHLY CONFIDENTIAL – PURCHASER/REGISTRANT DATA" Information or Items.

(iii) The Receiving Party may take notes on paper relating to "HIGHLY CONFIDENTIAL – PURCHASER/REGISTRANT DATA" Information or Items on the Secure Computer but may not copy or include any portions or sections of the data into the notes. No "HIGHLY CONFIDENTIAL – PURCHASER/REGISTRANT DATA" Information or Items may be removed from the Secure Room by any means, including without limitation by transcribing data into handwritten or printed materials and removing those materials from the Secure Room.

(iv) The Receiving Party's experts may print their work product (not including HIGHLY CONFIDENTIAL – PURCHASER/REGISTRANT DATA Information or Items) existing on a Secure Computer, using a dedicated, Secure Printer provided by the Producing Party. Authorized Individuals may remove from the Secure Room a maximum of 300 pages of printed material per putative class (900 pages collectively). However, the Receiving Party may request an increase in the number of pages to be printed, and Apple will not unreasonably withhold agreement for such an increase. The Parties agree to meet and confer in an effort to resolve a dispute regarding page limits before seeking judicial intervention.

(v) Except as provided in Section 5(d)(vi), any work product taken outside of a Secure Room, via handwritten notes or by printed material, must be confined to aggregated, anonymized values (which do not contain any information which could identify a particular purchaser), including: (i) descriptions of data anomalies; (ii) discussions of particular examples of the data using anonymizing language; (iii) aggregate summary statistics; (iv) explanations of the types of analyses run in the Secure Room; and (v) observations of frequent or recurring values observed in the data.

(vi) If a Party reasonably expects to disclose HIGHLY CONFIDENTIAL – PURCHASER/REGISTRANT DATA Information or Items at any

deposition, in any expert report, or to the Court, the Party seeking to make the disclosure shall provide advance notice to the Producing Party of its intent to disclose, and the Producing Party will provide the Receiving Party up to 50 pages of HIGHLY CONFIDENTIAL – PURCHASER/REGISTRANT DATA Information or Items, which shall be designated Highly Confidential after printing, for use as a deposition exhibit. Each Receiving Party may make such a request for up to 50 pages of such material. All Parties will jointly seek sealing of such material to the extent it is used or disclosed in Court or in Court filings. The Producing Party shall bring printed copies of HIGHLY CONFIDENTIAL – PURCHASER/REGISTRANT DATA Information or Items for access and use at the deposition, or if with respect to provision to the Court, by providing it to the Court under the maximum security protections made available by the Court. The Producing Party shall provide the Receiving Party with the printed copies sufficiently in advance of the beginning of the deposition or provision to the Court to allow Receiving Party to review the copies and identify exhibits. The Producing Party may require that, in addition to Outside Counsel, only individuals who have signed Exhibit A to this Order are present for portions of depositions that involve discussion of HIGHLY CONFIDENTIAL – PURCHASER/REGISTRANT DATA Information or Items. Copies of HIGHLY CONFIDENTIAL – PURCHASER/REGISTRANT DATA Information or Items that are marked as deposition exhibits shall not be provided to the Court Reporter or attached to deposition transcripts; rather, the deposition record will identify the exhibit by its exhibit number. Following the deposition, all paper copies of HIGHLY CONFIDENTIAL – PURCHASER/REGISTRANT DATA Information or Items brought to the deposition shall remain with the Producing Party's Outside Counsel for secure storage or destruction in a timely manner. If a Party reasonably expects to disclose HIGHLY CONFIDENTIAL – PURCHASER/REGISTRANT DATA Information or

Items at any hearing, conference, or other proceeding, the Party seeking to make the disclosure shall comply with procedures established in paragraph 37 of the Discovery Confidentiality Order entered in this Action. Dkt. No. 124. HIGHLY CONFIDENTIAL – PURCHASER/REGISTRANT DATA Information or Items disclosed at any hearing, conference, or proceeding shall be designated "Highly Confidential," and the party making the disclosure shall seek sealing of the information so disclosed.

(vii) Except with the express consent of the Producing Party, or as provided in Section 5(c)(ix) or 5(d)(iv), no recordable media or recordable devices, including without limitation sound recorders, computers, laptops, cellular telephones, cameras, flash drives, headphones, printers, peripheral equipment, CDs, DVDs, or drives of any kind, shall be permitted into a Secure Room.

(viii) An access port configured to access storage on a Secure Computer may be activated solely for the purpose of (1) transferring information to the Producing Party, but may be activated only under the observation and monitoring of representatives of the Producing Party, which may include, at the Producing Party's option, a technical consultant and an attorney; or (2) transferring a backup of the Receiving Party's work product from the Secure Computer's redundant internal storage in accordance with Section 5(c)(ix). In either case, the port may be activated only in person and under the observation and monitoring of representatives of the Producing Party, which may include, at the Producing Party's option, a technical consultant and an attorney.

(e) Restricted Access. Notwithstanding DCO ¶ 24, and unless otherwise ordered by the Court or permitted in writing by the Producing Party, a Receiving Party may allow access to any information or item designated "HIGHLY CONFIDENTIAL –

PURCHASER/REGISTRANT DATA," any Secure Computer containing such information or item, and any Secure Room housing such Secure Computer, only to the following individuals: (i) Outside Counsel (as defined in DCO ¶ 2(q)) for the Receiving Party; and (ii) consulting or testifying experts retained by the Receiving Party whose firms have been identified to the Producing Party and approved by the Producing Party in writing for purposes of such access and who have signed Exhibit A to this Supplemental Protective Order, entitled "Acknowledgment and Agreement To Be Bound by Supplemental Protective Order." Producing Party will not unreasonably withhold approval of the aforementioned consulting or testifying experts' firms. However, Receiving Parties must keep a log of all persons who access any Secure Computer as discussed in Section 5(f).

(f) Access Log. The Receiving Party shall maintain a record of every individual who has entered a Secure Room or inspected any portion of the "HIGHLY CONFIDENTIAL – PURCHASER/REGISTRANT DATA" Information or Items, including the date and time of each such access. A copy of the record shall be provided to the Producing Party upon its request made after the Producing Party discloses an expert witness who has accessed a Secure Computer or upon any Data Breach in any way affecting a Secure Computer.

(g) No Contact with Individuals Using Information in Purchaser/Registrant Data. The Receiving Party shall not use any "HIGHLY CONFIDENTIAL – PURCHASER/REGISTRANT DATA" Information or Items to contact, or to attempt to contact, any individual identified therein, except with leave of Court or with the written consent of the Producing Party.

(h) Legal Advice Based on Protected Material. Nothing in this Supplemental Protective Order shall be construed to prevent counsel from advising their clients with respect to

this Action based in whole or in part upon "HIGHLY CONFIDENTIAL – PURCHASER/REGISTRANT DATA" Information or Items, provided counsel does not disclose the "HIGHLY CONFIDENTIAL – PURCHASER/REGISTRANT DATA" Information or Items except as provided in this Supplemental Protective Order.

(i) Limitations. Nothing in this Supplemental Protective Order shall restrict in any way a Producing Party's use or disclosure of its own Protected Material, except for use of the Protected Material in this litigation. Nothing in this Supplemental Protective Order shall restrict in any way the use or disclosure of Litigation Material by a Receiving Party: (i) that is or has become publicly known through no fault of the Receiving Party; (ii) that is lawfully acquired by or known to the Receiving Party independent of the Producing Party; (iii) previously produced, disclosed and/or provided by the Producing Party to the Receiving Party or a non-party without an obligation of confidentiality and not by inadvertence or mistake; (iv) with the consent of the Producing Party; or (v) pursuant to order of the Court.

## 6. DESIGNATING PROTECTED MATERIAL

(a) Available Designation. In addition to the designations available under DCO ¶ 12, the Producing Party may designate Litigation Material as "HIGHLY CONFIDENTIAL – PURCHASER/REGISTRANT DATA," provided that the Litigation Material constitutes information concerning the identities, contact information, payment information, or other private information regarding who purchased or registered Apple devices, disclosure of which to another Party or Non-Party the Producing Party believes would create a substantial risk of serious harm to consumer privacy. Such designations shall be made in the manner provided in DCO ¶¶ 15–16, using the legend "HIGHLY CONFIDENTIAL – PURCHASER/REGISTRANT DATA." For the

avoidance of doubt, all data uploaded by the Producing Party onto a Secure Computer is designated "HIGHLY CONFIDENTIAL – PURCHASER/REGISTRANT DATA" by default.

(b) Depositions and Testimony. Notwithstanding DCO ¶ 14, to the extent "HIGHLY CONFIDENTIAL – PURCHASER/REGISTRANT DATA" Information is the subject of deposition or other testimony, such testimony shall be deemed "Highly Confidential" under the DCO without the need for further designation, and may not be re-designated to a lower tier.

**7. APPLICATION TO ALL PARTIES**

The Parties acknowledge that although Defendant Apple Inc. will be the Producing Party under this Supplemental Protective Order, all Parties and their experts are required to access and treat HIGHLY CONFIDENTIAL – PURCHASER/REGISTRANT DATA Information or Items in accordance with the same restrictions, protections, and procedures set forth in this Supplemental Protective Order when such Information or Items are accessed, analyzed, or used for the purpose described in the Parties' Device Data Agreement.

For the avoidance of doubt, Apple may engage external contractors to assist with preparing the Secure Computers, Secure Printers, and other protocols discussed herein, but those external contractors may not access, analyze, or use HIGHLY CONFIDENTIAL – PURCHASER/REGISTRANT DATA Information or Items for purposes of preparing an expert report or otherwise litigating the case except in accordance with the restrictions described herein.

**8. DATA SECURITY**

(a) DCO ¶ 40, including its Data Breach notification, remediation, and meet-and-confer provisions, applies in full to "HIGHLY CONFIDENTIAL – PURCHASER/REGISTRANT DATA" Information or Items.

(b) Any representative of Apple who observes, monitors, inspects, or supervises activity in a Secure Room under this Supplemental Protective Order (including under Sections 5(d)(i)–(ii) and 5(d)(viii)) shall not record the substance of any Party's work product. That representative shall not disclose any information learned through that role about any Party's work product, analyses, tools, or methodologies to any attorney, expert, or other person working on this Action for Apple, other than as strictly necessary to confirm compliance with this Supplemental Protective Order.

## 9. INADVERTENT FAILURE TO DESIGNATE PROPERLY

If timely corrected, an inadvertent failure to designate qualified information or items does not, standing alone, waive the Producing Party's right to secure protection under this Supplemental Protective Order for such material. Upon timely correction of a designation, the Receiving Party must make reasonable efforts to assure that the material is treated in accordance with the provisions of this Supplemental Protective Order.

## 10. INADVERTENT DISCLOSURE NOT AUTHORIZED BY THIS SUPPLEMENTAL PROTECTIVE ORDER

(a) In the event of a disclosure (other than a Data Breach) of any "HIGHLY CONFIDENTIAL – PURCHASER/REGISTRANT DATA" material produced pursuant to this Supplemental Protective Order to any person or persons not authorized to receive such disclosure under the Supplemental Protective Order, the Receiving Party responsible for having made such disclosure shall immediately notify counsel for the Producing Party and provide to such counsel all known relevant information concerning the nature and circumstances of the disclosure. The Receiving Party shall also promptly take all reasonable measures to retrieve the improperly

disclosed Litigation Material and to ensure that no further or greater unauthorized disclosure and/or use thereof is made.

(b) Unauthorized or inadvertent disclosure does not change the status of Litigation Material or waive the right to hold the disclosed document or information as Protected Material.

**IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.**

Dated: November 4, 2026


Joseph R. Rose (*pro hac vice*)
Julian W. Kleinbrodt (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
(415) 393-8200
jrose@gibsondunn.com
jkleinbrodt@gibsondunn.com

Cynthia E. Richman (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, DC 20036-4504
(202) 955-8234
crichman@gibsondunn.com

Daniel G. Swanson (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
(213) 229-7000
dswanson@gibsondunn.com

Connor S. Sullivan (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
(212) 351-4000
cssullivan@gibsondunn.com

/s/ *Liza M. Walsh*

Liza M. Walsh
Douglas E. Arpert
Jessica K. Formichella
Lauren R. Malakoff
WALSH PIZZI O'REILLY FALANGA LLP
Three Gateway Center
100 Mulberry Street, 15th Floor
Newark, NJ 07102
(973) 757-1100
lwalsh@walsh.law
darpert@walsh.law
jformichella@walsh.law
lmalakoff@walsh.law

Craig S. Primis, P.C. (*pro hac vice*)
K. Winn Allen, P.C. (*pro hac vice*)
Tracie Bryant, P.C. (*pro hac vice*)
Kirkland & Ellis LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
Tel.: (202) 389-5000
craig.primis@kirkland.com
winn.allen@kirkland.com
tracie.bryant@kirkland.com

Devora W. Allon, P.C. (*pro hac vice*)
Alexia R. Brancato, P.C. (*pro hac vice*)
Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY 10022
Tel.: (212) 446-5967
devora.allon@kirkland.com
alexia.brancato@kirkland.com


*Attorneys for Defendant Apple Inc.*

Dated: November 4, 2026

By: *___/s/ Raj Mathur____________*

Raj Mathur
SUSMAN GODFREY LLP
One Manhattan West, Floor 50
New York, NY 10001
Tel: (212) 336-8330
rmathur@susmangodfrey.com
*Counsel for Direct iPhone Purchaser Plaintiffs*

Dated: November 4, 2026

By: *___/s/ Daniel H. Silverman___________*

Daniel H. Silverman
COHEN MILSTEIN SELLERS & TOLL, LLP
769 Centre Street, Suite 207
Boston, MA 02130
Tel: (202) 408-4600
dsilverman@cohenmilstein.com
*Counsel for Indirect iPhone Purchaser Plaintiffs*

Dated: November 4, 2026

By: *___/s/ Scott K. Attaway______________*

Scott K. Attaway
KELLOGG, HANSEN, TODD, FIGEL &
FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Tel: (202) 326-7900
sattaway@kellogghansen.com
*Counsel for Direct Apple Watch Purchaser Plaintiffs*

**PURSUANT TO STIPULATION, IT IS SO ORDERED.**

DATED: November 10, 2026

Leda Dunn Wettre

HON. LEDA DUNN WETTRE
United States Magistrate Judge

**EXHIBIT A**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE APPLE INC. SMARTPHONE ANTITRUST LITIGATION | Case No. 2:24-md-03113 (JXN) (LDW) |

**ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND BY SUPPLEMENTAL PROTECTIVE ORDER**

I, ________________________, am employed by ________________________ as ________________________.

I hereby certify that:

1. I have read the Protective Order entered in the above-captioned action, and understand its terms.

2. I agree to be bound by the terms of the Protective Order entered in the above-captioned action. I agree to use the information provided to me only as explicitly permitted by the Protective Order.

3. I understand that my failure to abide by the terms of the Protective Order entered in the above-captioned action may subject me, without limitation, to civil and criminal penalties for contempt of Court.

4. I submit to the jurisdiction of the United States District Court for the District of New Jersey solely for the purpose of enforcing the terms of the Protective Order entered in the above-captioned action and freely and knowingly waive any right I may otherwise have to object to the jurisdiction of said Court.

______________________________ ______________________________
SIGNATURE DATE