WALSH PIZZI O'REILLY

THREE GATEWAY CENTER
100 Mulberry Street, 15th Floor
Newark, NJ 07102
T: 973.757.1100
F: 973.757.1090
WALSH.LAW

Liza M. Walsh
Direct Dial: (973) 757-1101
LWalsh@walsh.law

**VIA ECF** November 10, 2026

Honorable Leda Dunn Wettre, U.S.M.J.
U.S. District Court for the District of New Jersey
Martin Luther King Jr. Bldg. & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07102

**Re: *In re: Apple Inc. Smartphone Antitrust Litigation*, No. 24-md-03113-JXN-LDW (MDL 3113) – Apple's Letter Brief Regarding Apple's RFP 129 Watch Plaintiff (Dkt. 402)**

Dear Judge Wettre:

This firm, together with Gibson, Dunn & Crutcher LLP, represents Defendant Apple Inc. ("Apple") in the above-captioned matter. Apple respectfully submits this letter brief pursuant to the Court's November 3, 2026 Order (Dkt. 420) regarding Apple's Request for Production ("RFP") No. 129 to Direct Apple Watch Purchaser Plaintiff ("Watch Plaintiff").

RFP 129 seeks Watch Plaintiff's history of app, in-app, and subscription purchases and acquisitions (including free downloads). That information is relevant because, among other reasons, Watch Plaintiff's market definition theory, and in turn, Apple's alleged monopoly power and purported ability to overcharge for Apple Watch, depends on his assertion that iPhone users are locked into iOS by, in part, the apps they use. Yet Watch Plaintiff, who requested the same information for millions of absent class members, and who chose to file this lawsuit and base his claims in part on the alleged effect of apps on smartphone switching, refuses to produce anything beyond five categories of apps he has selected. Rule 26 does not permit Watch Plaintiff to selectively ignore his own allegations to limit discovery, and his remaining objections are baseless. The Court should order Watch Plaintiff to produce the requested information.

## I. Relevant Background

Watch Plaintiff alleges that "[t]he desire to continue using apps" keeps smartphone users "on the same mobile operating system once they have begun," an effect "exacerbated by Apple's [alleged] efforts to tie its products together and lock its customers into the Apple ecosystem[.]" Dkt. 86 ("Watch Compl.") ¶ 203; *see also id.* ¶¶ 241–42. This lock-in effect, the theory goes, makes it so that "iPhone users cannot simply switch to an Android smartphone in order to purchase or use a non-Apple smartwatch" to get around Apple's alleged restrictions on third-party smartwatches. *Id.* ¶ 217. And that supposed inability to easily switch smartphones is what makes "the market for iOS-connected smartwatches" a "distinct" and "relevant product market" in which Apple can freely "impose[] its smartwatch restrictions," thereby enabling it to "charge Plaintiff and the members of the putative class supracompetitive prices for Apple Watches." *Id.* ¶¶ 212–13, 217, 243; *see also id.* ¶¶ 240–42 (alleging Apple's "catalog of millions of apps" contributes to its alleged monopoly power in the smartphone market). Watch Plaintiff further alleges that Apple imposes

restrictions on "virtually all iPhone apps" that "harm iPhone users." *Id.* ¶¶ 38–40, 42. Those restrictions supposedly have "substantial anticompetitive effects," including "reduced quality, innovation, and output in the . . . market for iOS sister apps for smartwatches." *Id.* ¶ 258. They are also among the reasons that Watch Plaintiff gives for why he "plans to buy another Apple Watch" even though he would "prefer to own a Garmin smartwatch." *Id.* ¶ 9.

Apple served RFP 129 to test Watch Plaintiff's theories. RFP 129 seeks documents and communications relating to Watch Plaintiff's "complete history of digital software purchases or acquisitions" on various devices. Ex. 1. Apple narrowed it to documents and communications relating to Watch Plaintiff's purchase or acquisition of Apps, In-App Purchases, subscriptions, and other downloadable content that he used or accessed on a Smartphone, Smartwatch, or tablet, and that he purchased or acquired on either (a) a Smartphone, Smartwatch, or tablet, or (b) a PC/Mac device through an App Marketplace or webstore.

Watch Plaintiff seeks the same information from Apple on behalf of millions of absent class members: his own RFPs request that Apple produce "[e]ach database or data set" reflecting "purchase, activation, deactivation, or usage" of both Apple and third-party "apps, subscriptions, products, or services" across the vast majority of Apple's user base. Ex. 2, RFP 61. But in response to RFP 129, Watch Plaintiff objects on relevance, burden, and privacy grounds, and seeks to limit the scope of *his* discovery obligations to documents sufficient to show his download or use of Smartwatch Companion Apps, Sister Apps, messaging Apps, health and fitness tracking Apps, and digital payment Apps on his Apple Watch and iPhone.[1]

## II. Watch Plaintiff's App and Purchase History Is Relevant to the Claims He Pleaded

Discovery extends to "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). The pleadings "set the guardrails for discoverable information." *LifeScan, Inc. v. Smith*, 2024 WL 4913270, at *8 (D.N.J. Feb. 1, 2024). RFP 129 satisfies this standard.

Watch Plaintiff's market definition theory depends in part on his allegations about apps. As explained above, Watch Plaintiff alleges that apps are a material part of what prevents "iPhone users [from] simply switch[ing] to an Android smartphone in order to purchase or use a non-Apple smartwatch," which, in turn, makes "the market for iOS-connected smartwatches" a "distinct" and "relevant product market" in which Apple purportedly has a monopoly and charges supracompetitive Apple Watch prices. Watch Compl. ¶¶ 212–13, 217, 243. In other words, Watch Plaintiff alleges that iPhone users cannot easily switch to an Android smartphone in part because of the apps that they use, and that, as a result, smartwatches that connect to iPhone do not compete with smartwatches that connect to Android. Whether that and other premises underlying Watch Plaintiff's market definition theory are true is plainly discoverable—Apple is "entitled to explore" data from Watch Plaintiff that bears on the "factual issues at the heart of [his] antitrust theory of liability." *In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, 325 F.R.D. 551, 558 (E.D. Pa. 2016) ("*In re Suboxone*"); *see also McTyere v. Apple Inc.*, No. 1:21-cv-01133, ECF No. 60 at 5-9 (W.D.N.Y. Dec. 20, 2023) ("Apple is entitled to test [plaintiff's] allegations through discovery" and is not "limited in discovery" related to its defenses "by [plaintiff's]

---

[1] "Companion App" is defined as apps "specifically designed to allow a smartwatch to pair with the iPhone." Watch Compl. ¶ 34. "Sister App" refers to a discrete list of apps used in connection with Watch Plaintiff's RFPs to Apple. *See* Dkt. 284 at 9. Neither term is used by Apple.

theory."); *Andino v. Apple Inc.*, 2024 WL 200997, at *2 (E.D. Cal. Jan. 17, 2024) (similar). As such, Apple is entitled to challenge Watch Plaintiff's expressly alleged premise: that iPhone users "would not switch to Android smartphones just to access Android-only smartwatches" because they are "locked into using iPhone devices," in part by their "desire to continue using apps" that they have been using on iPhone. Watch Compl. ¶¶ 203, 216–17. Records regarding Watch Plaintiff's real-world use of apps, subscriptions, and other digital content—which he claims are part of what blocks him from switching to Android—provide evidence of whether that premise holds because they will show whether he faces the switching costs on which his smartwatch market theory depends. For instance, the records Apple seeks may show that the apps and subscriptions Watch Plaintiff actually uses are available on Android, have substitutes, or could otherwise be accessed, all of which would cast doubt on his market definition theory. Watch Plaintiff has already conceded as much for Strava—an app he uses that has a subscription that "can be purchased and used on an iPhone and a Samsung phone alike." Thus, by his own account, Strava would not "lock" him to the iPhone. Apple is entitled to learn how many of his apps fit that description, and a list limited to five narrow categories will prevent that inquiry. *See In re Generic Pharms. Pricing Antitrust Litig.*, 571 F. Supp. 3d 406, 409–10 (E.D. Pa. 2021).

Likewise, Watch Plaintiff alleges that Apple imposes restrictions on "virtually all iPhone apps" that both "harm iPhone users" and lead to worse sister apps, which he claims is part of the reason he continues to purchase the Apple Watch despite his desire to switch to Garmin. Watch Compl. ¶¶ 9, 38, 42, 258. Apple is entitled to test those allegations. *See In re Suboxone*, 325 F.R.D. 551, 558; *McTyere*, No. 1:21-cv-01133, ECF No. 60 at 5–9; *Andino*, 2024 WL 200997, at *2. For instance, Apple should be permitted to explore whether the apps he uses on his iPhone and Apple Watch would be better, worse, the same, or unavailable on a Garmin device, and whether his app use suggests that Apple's app restrictions have, for example, made his iPhone more secure—thus undermining his claim that the app restrictions "harm iPhone users." Watch Compl. ¶¶ 38, 42.

## III. Watch Plaintiff's Categorical Limitation Does Not Cure the Problem

Watch Plaintiff admits that apps outside of the five categories he selected are relevant, but contends that they are of minimal relevance to his claims. But a responding party may not "dictate the scope of discovery," let alone withhold admittedly relevant evidence, "based on [his] own view of the parties' respective theories of the case." *Penn Eng'g & Mfg. Corp. v. Peninsula Components, Inc.*, 2023 WL 4139375, at *4 (E.D. Pa. June 22, 2023). Nor can Watch Plaintiff "strictly confine[]" discovery to the "specific examples alleged in [his Complaint]." Dkt. 284 at 7.

Watch Plaintiff's app allegations are not limited to his five categories. *See supra* § I–II. He pleads that "[t]he desire to continue using apps," without qualification, is what allegedly keeps iPhone users on iOS and creates the conditions that allow for the existence of the alleged iOS-connected smartwatch market. Watch Compl. ¶¶ 203, 216–17. He also alleges that Apple's "catalog of millions of apps" and the "difficulties or perceived difficulties related to the transfer of . . . apps" are part of what gives Apple "monopoly power in the smartphone market" and keeps consumers "locked into" iPhone. *Id.* ¶¶ 240–41. Moreover, his Complaint refers to navigation, podcast, banking, social media, news, and music apps. *Id.* ¶¶ 46, 96–98, 129. None of those genres falls within his five categories, but records of them and other apps would show whether the apps he actually uses are available in one form or another on both platforms and whether they actually

impacted his ability to switch smartphones. That evidence supports Apple's defense that iPhone users are not locked in and that Watch Plaintiff's smartwatch market definition fails as a result.

## IV. Watch Plaintiff's Remaining Objections Fail

Watch Plaintiff's burden and privacy objections fail.

On burden, Watch Plaintiff has vaguely asserted that it would be burdensome to comply with Apple's request, but he has never explained how the efforts he would have to undertake—pulling his own download and purchase records, receipts, and confirmations and running straightforward custodial searches—are burdensome. That claim rings hollow given his demands on Apple, which have included collecting and reviewing tens of millions of documents and extracting millions of rows of data (among other things). In any event, these are the kinds of documents that should be accessible as they presumably underlie the allegations he made at the start of the case. And to the extent he faces any real burden, he could (but has refused to) mitigate it by providing Apple with his Apple ID(s)—which would allow Apple to get the requested information for Apple devices on its own, leaving only software purchases and acquisitions on non-Apple devices for him to produce. At end, a party resisting discovery "must support the undue-burden assertion with specific proof of that burden." *MSP Recovery Claims, Series LLC v. Celgene Corp.*, 2024 WL 1327990, at *5 n.3 (D.N.J. Mar. 28, 2024). Watch Plaintiff has not done so.

Watch Plaintiff also objects that RFP 129 invades his digital life. But as explained above, he has requested, for millions of unnamed class members and millions of iPhone users globally, "[e]ach database or data set" reflecting "purchase, activation, deactivation, or usage" of both Apple and third-party "apps, subscriptions, products, or services." Ex. 2, RFP 61. In other words, he seeks the same information that Apple has requested in RFP 129. But unlike the millions of absent class members whose data he seeks (the production of which Apple has narrowed to protect consumer privacy), he filed this case seeking treble damages for claims premised in part on the notion that apps make it harder to switch smartphones. *See supra* §§ I–II. In doing so, he put his purchase, acquisition, and use of apps, subscriptions, and other digital content at issue. He "cannot now use purported privacy concerns to prevent [Apple] from obtaining relevant discovery." *Blount v. Stanley Eng'g Fastening*, 2020 WL 5038522, at *6 (W.D. Ky. Aug. 26, 2020).

## V. Requested Relief

Apple respectfully requests that the Court overrule Watch Plaintiff's objections and order him to produce documents and communications relating to his purchase or acquisition of Apps, In-App Purchases, subscriptions, and other downloadable content that he used or accessed on a Smartphone, Smartwatch, or tablet, and that he purchased or acquired on either (a) a Smartphone, Smartwatch, or tablet, or (b) a PC/Mac device through an App Marketplace or webstore. Alternatively, and for the reasons set out in Apple's forthcoming response to Plaintiffs' Letter Brief regarding Apple's Second Collective Interrogatory, Apple requests that the Court order Watch Plaintiff to (1) respond to Apple's Second Collective Interrogatory as written and (2) produce the information requested above as to non-Apple devices only.

Respectfully submitted,
*s/Liza M. Walsh*
Liza M. Walsh