# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE: APPLE INC. SMARTPHONE ANTITRUST LITIGATION | Case No. 2:24-md-3113(JXN)(LDW)<br>MDL 3113<br>Hon. Julien X. Neals, U.S.D.J.<br>Hon. Leda D. Wettre, U.S.M.J. |

**DEFENDANT'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS DIRECTED TO APPLE WATCH PURCHASER PLAINTIFF**

Pursuant to Federal Rule of Civil Procedure 34, Defendant Apple Inc. ("Apple") submits its First Set of Requests for Production of Documents (collectively, the "Requests"; individually, a "Request") to Apple Watch Purchaser Plaintiff. Each Request is subject to the Definitions and Instructions below.

**DEFINITIONS**

Unless otherwise defined, all words and phrases used herein shall be accorded their usual meaning and shall be interpreted in their common, ordinary sense. All terms otherwise undefined herein are used consistent with their use in the Consolidated Complaint (as defined below), without waiver or admission concerning the accuracy of any such usage. As used in the below Requests and the Definitions and Instructions, the words set forth below shall be defined as follows:

1. "Alleged Conduct" shall mean all (and any component of) the conduct alleged to be unlawful in the Consolidated Complaint. Alleged Conduct includes but is not limited to:

a. Any alleged contractual restrictions Apple has placed on non-Apple Smartwatch manufacturers;

b. Any alleged restrictions Apple has placed on third-party device makers' access to iOS features and development tools, including APIs and SDKs;

c. Any alleged actions Apple has taken to push iPhone and iOS updates that disrupt the functioning of Smartwatches;

d. Any alleged restrictions Apple has imposed on access to Messaging APIs for third-party Smartwatch manufacturers;

e. Any alleged restrictions Apple has placed on phone number sharing for non-Apple Smartwatches;

f. Any alleged restrictions Apple has imposed on access to Notification APIs for non-Apple Smartwatches;

g. Any alleged restrictions Apple has imposed on Wallet APIs for non-Apple Smartwatches;

h. Any alleged restrictions Apple has imposed regarding background app refresh and low power mode for non-Apple Smartwatches;

i. Any alleged restrictions Apple has imposed on Bluetooth pairing for non-Apple Smartwatches;

j. Any alleged restrictions or penalties Apple has imposed on app developers who mention third-party devices in their App Store app listings or otherwise design Apps that support or are compatible with non-Apple Smartwatches.

2. "Alleged Smartphone Market" or "Alleged Smartphone Markets" shall mean the "market for iOS smartphones," "market for smartphones," and "performance smartphone market" as defined in Paragraphs 198, 202, 205 of the Consolidated Complaint.

3. "Alleged Smartwatch Market" or "Alleged Smartwatch Markets" shall mean the "iOS-connected smartwatch" and "market for smartwatches," as defined in Paragraph 197 of the Consolidated Complaint.

4. "API" shall mean an application programming interface and shall be defined as in the Consolidated Complaint, including without limitation in Paragraph 46 of the Consolidated Complaint.

5. "Apple" shall mean Apple Inc.

6. "App" or "Application" shall mean a native software application offered on Smartphones, tablets, smart TVs, Wearables, gaming consoles, MacBook laptops, Macintosh desktop computers, or Windows-based laptops and stand-alone personal computers that performs specific tasks at the user's request, including without limitation as set out in Paragraph 33 of the Consolidated Complaint.

7. "App Marketplace" shall mean any online storefront where Apps are offered for download or purchase, including the Apple App Store, Amazon Appstore, Amazon Underground, Android Market, Aptoide, Blackberry World, Chrome Web Store, Epic Games Store, GetJar, Google Play Store, Microsoft Store, Origin, Samsung Galaxy Store, Steam, Windows Phone Store, Altstore, TutuApp, and online storefronts distributing games and digital content for Xbox, PlayStation, and Nintendo.

8. "App Review" shall mean Apple's or any other Person's processes of reviewing Apps or App updates for potential inclusion on App Marketplaces.

9. "Communication" shall mean any exchange or transmission of words or ideas to another Person or entity, whether accomplished Person to Person, by telephone, in writing, via electronic mail or text message, via social media, or through any other medium, and shall include discussions, conversations, negotiations, conferences, meetings, speeches, memoranda, letters, correspondence, notes, blogs, postings, statements, and questions.

10. "Consolidated Complaint" shall mean the Direct Apple Watch Purchaser Plaintiff's First Amended Class Action Complaint filed in the consolidated multidistrict proceeding against Apple in the United States District Court for the District of New Jersey on July 30, 2025 (Case No. 2:24-md-03113, Dkt. No. 86), or any future amended complaints.

11. "Digital Wallet" shall mean an Application that allows users to store, manage, and use digital representations of payment credentials, personal identification, transit passes, movie tickets, car keys, or other personal information for in-person or online uses.

12. "Document" shall have the full meaning ascribed to it under Rule 34 and Rule 45 of the Federal Rules of Civil Procedure and shall include Communications; memoranda; records; Reports; books; records and summaries of personal conversations or interviews; diaries; presentations; slide decks; graphs; charts; spreadsheets; diagrams; tables; photographs; recordings; tapes; microfilms; minutes; records and summaries of meetings or conferences; press releases; blog posts; stenographic handwritten or any other notes; work papers; checks, front and back; check vouchers, check stubs, or receipts; tape data sheets or data processing cards or discs; or any other written, recorded, transcribed, punched, taped, filmed, or graphic matter, however produced or reproduced; and any paper or writing of whatever description, including information contained in any computer although not yet printed out. The term "Document" further includes all copies where the copy is not identical to the original.

13. "In-App Purchase" shall mean the purchase of a product, feature, service, or functionality for a fee that occurs within a mobile App.

14. "Including," "included," "includes," and "include" shall not be construed as limiting any Request, and shall mean the same as "including, but not limited to."

15. "Person" shall mean any natural individual, partnership, corporation, company, association, organization, joint venture, government, agency, or entity.

16. "Plaintiff," "You," and "Your" shall mean Joseph Giamanco and anyone acting on his behalf including present or former agents, representatives, attorneys, investigators, accountants, and any and all Persons acting or purporting to act on behalf of them.

17. "Report" shall mean any reports, research, papers, memoranda, presentations, reviews, statistical compilations, or other analyses.

18. "SDK" shall mean Apple's Software Development Kit.

19. "Smartphone" shall mean a mobile device that combines the functions of cell phones with those of a mobile computer, including by enabling a user to make phone calls, send emails and text messages, and use Apps, as defined in Paragraph 201 of the Consolidated Complaint. Smartphones generally include Apple iPhone devices using the iOS mobile operating system, as well as competing Smartphones primarily using the Android mobile operating system, as referenced in Paragraph 198 of the Consolidated Complaint.

20. "Smartwatch" shall be defined as in the Consolidated Complaint, including in Paragraph 23 of the Consolidated Complaint.

21. "Messaging APIs" shall be defined as in the Consolidated Complaint, including in Paragraphs 53 through 95 of the Consolidated Complaint.

22. "Notification APIs" shall be defined as in the Consolidated Complaint, including in Paragraphs 96 through 107 of the Consolidated Complaint.

23. "Wallet APIs" shall be defined as in the Consolidated Complaint, including in Paragraphs 108 through 113 of the Consolidated Complaint.

24. "Wearable" or "Wearables" shall mean wearable devices with an interactive display and accompanying Apps that let users perform a variety of functions and shall include any "Smartwatch" as defined above.

25. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these Requests all Documents, Communications, materials, or responses that might otherwise be construed to be outside of its scope.

26. The terms "any," "each," and "all" are mutually interchangeable and are meant to encompass each other.

27. The terms "concerning," "reflecting," "regarding," "relating to," and "related to" mean in whole or in part, concerning, reflecting, regarding, related to, relating to, in connection with, involving, supporting, addressing, analyzing, constituting, containing, commenting on, discussing, describing, identifying, referring to, reporting on, stating, dealing with, or in any way pertaining or bearing a logical connection to.

28. The use of the singular form of any word includes the plural and vice versa as necessary to bring within the scope of the Request all responses that might otherwise be construed to be outside of its scope.

29. The use of the feminine form of any word includes the masculine form and vice versa as necessary to bring within the scope of the Request all responses that might otherwise be construed to be outside of its scope.

30. The past tense shall be construed to include the present tense and vice versa as necessary to bring within the scope of the Request all responses that might otherwise be construed to be outside of its scope.

## INSTRUCTIONS

1. For purposes of interpreting or construing the scope of these Requests, the terms used shall be given the most expansive and inclusive interpretation, unless specifically limited in the Request.

2. All Documents and Communications requested herein must be produced in their entirety, with all attachments and enclosures.

3. Plaintiff is instructed to respond individually to each Request, to the extent that Plaintiff possesses any unique, non-duplicative Documents or information responsive to the Request.

4. In responding to these Requests, You shall produce all Documents and Communications in Your possession, custody, or control, and all Documents and Communications reasonably available to You, including those in the possession, custody, or control of any Person acting on Your behalf.

5. These Requests shall not be deemed to call for identical MD5 hash duplicates of Documents and Communications. "Identical" means precisely the same in all respects; for example, a Document or Communication with handwritten notes or editing marks shall not be deemed identical to one without such notes or marks. Additionally, for Documents or

Communications with attachments, the hash value shall be generated based on the parent/child document grouping. Otherwise identical Documents or Communications with unique family members are not identical, and both must be produced. You shall produce as a separate Document or Communication any Document and Communication that contains any notation, addition, insertion, or marking of any kind that renders it not entirely identical to a version of that Document or Communication without such marks.

6. In responding to any Request calling for the production of data, logs, application usage history, or other information generated by or stored on a Smartphone or other devices, You shall search for and produce responsive information contained in all available backups of such devices (whether stored locally, such as on a computer, or in the cloud, such as via iCloud, Google Drive, or Samsung Cloud). You are instructed to produce such information even if it is no longer present on Your current active device, and, if necessary to retrieve responsive information, You shall restore such backups to a device or utilize forensic tools to access the data.

7. If there are no Documents or Communications responsive to a category in these Requests, You shall so state in writing.

8. If You object to a portion of any Request, You shall state the basis for Your objection with specificity and respond to all parts of the Request to which You do not object.

9. If You encounter any ambiguity in the Requests, in a definition, or in an instruction relevant to the Requests, explain what You find to be ambiguous and what construction You used in providing Your response. If You contend that You do not understand the definition of any term or phrase used in a Request, You shall explain in detail what it is that You do not understand about the term or phrase at issue, and You shall respond to that part of the Request that You do understand.

10. If any requested Document or Communication is withheld on the basis of any claim of privilege, You must set forth the information necessary for Apple to ascertain whether the privilege properly applies, including all information identified in Paragraph VI.3 of the Proposed Stipulation and Order Governing Electronically Stored Information and Hard Copy Documents, ECF No. 100-2, and any other applicable orders.

11. If any portion of any Document or Communication responsive to these Requests is withheld under claim of privilege, all non-privileged portions must be produced with the portion(s) claimed to be privileged redacted and logged in a privilege log pursuant to the preceding instructions.

12. These Requests are continuing and require further and supplemental production if additional Documents or Communications are received, generated, or discovered after the time of the original production. If after responding to these Requests, You obtain or become aware of any additional Documents or Communications that are directly or indirectly responsive to any part of any of these Requests, You shall promptly produce any additional responsive Documents or Communications.

13. Apple serves these Requests without prejudice to its right to serve additional requests for production of Documents and Communications or other requests.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

**REQUEST FOR PRODUCTION NO. 1:**

All Documents, data, and Communications relating to Your allegations relating to Apple's policies and practices regarding access to SDKs and APIs, including Apple's alleged use of API restrictions to harm or hamstring competition in various markets such as the Alleged Smartwatch Markets and Alleged Smartphone Markets.

**REQUEST FOR PRODUCTION NO. 2:**

All Documents, data, and Communications relating to Your allegations relating to the App Store, including allegations that Apple exercises its control over the App Store in a manner that harms Smartwatch competition.

**REQUEST FOR PRODUCTION NO. 3:**

All Documents, data, and Communications relating to Your allegations in Paragraph 1 of the Consolidated Complaint that Apple has used "anticompetitive acts and agreements to degrade user experience, block innovation, hamper app developers, and stifle competition with its smartwatch."

**REQUEST FOR PRODUCTION NO. 4:**

All Documents, data, and Communications relating to Your allegations that Apple uses, or will use, a "tech monopolist's playbook" as alleged in Paragraphs 2, 30, and 173 of the Consolidated Complaint.

**REQUEST FOR PRODUCTION NO. 5:**

All Documents, data, and Communications relating to Your allegations in Paragraph 3 of the Consolidated Complaint that Apple "creates an unending barrage of problems that cause

competitor smartwatches to disconnect from paired iPhones and constrain the information competitor smartwatches can provide their users."

**REQUEST FOR PRODUCTION NO. 6:**

All Documents, data, and Communications relating to Your allegations in Paragraph 5 of the Consolidated Complaint that "competitor smartwatches are disappearing."

**REQUEST FOR PRODUCTION NO. 7:**

All Documents, data, and Communications relating to Your allegations in Paragraph 6 of the Consolidated Complaint that "Apple's monopolistic abuses have also been enormously profitable."

**REQUEST FOR PRODUCTION NO. 8:**

All Documents, data, and Communications relating to Your allegations in Paragraph 7 of the Consolidated Complaint that "Apple's years-long campaign to limit smartwatch competition has harmed Apple iPhone users."

**REQUEST FOR PRODUCTION NO. 9:**

All Documents, data, and Communications relating to Your allegations in Paragraph 24 of the Consolidated Complaint that "[u]sers who purchase Android smartphones . . . can choose from a number of competing smartwatches that connect to their Android devices while providing all of the functionality users expect from a smartwatch."

**REQUEST FOR PRODUCTION NO. 10:**

All Documents, data, and Communications relating to Your allegations in Paragraph 25 of the Consolidated Complaint that "Apple has for many years limited, disrupted, and degraded the capabilities of competitor smartwatches that connect to iOS, the iPhone operating system."

**REQUEST FOR PRODUCTION NO. 11:**

All Documents, data, and Communications relating to Your allegations in Paragraphs 27 through 31 of the Consolidated Complaints that Apple restricts, limits, or degrades the functionality of non-Apple "iPhone-enhancing accessories" aside from Smartwatches.

**REQUEST FOR PRODUCTION NO. 12:**

All Documents, data, and Communications relating to Your allegations in Paragraph 32 of the Consolidated Complaint that Apple used "contractual and technical means" to "monopolize the iOS-connected smartwatch market."

**REQUEST FOR PRODUCTION NO. 13:**

All Documents, data, and Communications relating to Your allegations in Paragraph 42 of the Consolidated Complaint that Apple uses DPLA to "prevent competitor smartwatches from connecting to the iPhone like the Apple Watch does"; "constrain competitor smartwatches from offering iPhone users critical functions"; "enforce anticompetitive App Review Guidelines"; "prevent third-party developers in their App Store listings from identifying their apps as designed for or compatible with a competitor smartwatch."

**REQUEST FOR PRODUCTION NO. 14:**

All Documents, data, and Communications relating to Your allegations in Paragraph 49 of the Consolidated Complaint that Apple "selectively limit[s] the functionality of competitor smartwatches when paired to an iPhone."

**REQUEST FOR PRODUCTION NO. 15:**

All Documents, data, and Communications relating to Your allegations in Paragraphs 50 and 51 that using "API restrictions to harm competition in smartphone-related markets is a longstanding Apple strategy."

**REQUEST FOR PRODUCTION NO. 16:**

All Documents, data, and Communications relating to Your allegations concerning Messaging APIs, including Paragraphs 53 through 95 of the Consolidated Complaint.

**REQUEST FOR PRODUCTION NO. 17:**

All Documents, data, and Communications relating to Your allegations in Paragraph 60 through 62 of the Consolidated Complaint concerning Beeper Mini, including relating to Your allegation that Apple's "assertions" that "Beeper Mini posed security concerns" were "baseless."

**REQUEST FOR PRODUCTION NO. 18:**

All Documents, data, and Communications relating to Your allegations in Paragraph 63 of the Consolidated Complaint that "Apple's restrictions on access to iMessage serve no procompetitive purpose."

**REQUEST FOR PRODUCTION NO. 19:**

All Documents, data, and Communications relating to Your allegations in Paragraph 66 of the Consolidated Complaint that "competitor smartwatches cannot send or reply to text messages received on the iPhone."

**REQUEST FOR PRODUCTION NO. 20:**

All Documents, data, and Communications relating to Your allegations in Paragraph 67 of the Consolidated Complaint that there is "no procompetitive justification for these restrictions."

**REQUEST FOR PRODUCTION NO. 21:**

All Documents, data, and Communications relating to Your allegations in Paragraph 67 of the Consolidated Complaint that "Android devices operate smoothly and securely without restricting third-party apps from using APIs to provide full-service SMS messaging."

**REQUEST FOR PRODUCTION NO. 22:**

All Documents, data, and Communications relating to Your allegations in Paragraph 73 of the Consolidated Complaint that "iPhone users frequently do not know how to turn off iMessage" and that "Apple engineered iMessage to 'claim' the phone number associated with the iPhone in such a way that text messages to that number would be delivered to iMessage (and thus the iPhone) only."

**REQUEST FOR PRODUCTION NO. 23:**

All Documents, data, and Communications relating to Your allegations in Paragraph 79 of the Consolidated Complaint that "Apple's messaging restrictions prevent competing smartwatch makers from providing users with cellular-enabled smartwatches."

**REQUEST FOR PRODUCTION NO. 24:**

All Documents, data, and Communications relating to Your allegations in Paragraph 80 of the Consolidated Complaint that "[t]here is no procompetitive justification for Apple's restrictions on messaging from a shared phone number."

**REQUEST FOR PRODUCTION NO. 25:**

All Documents, data, and Communications relating to Your allegations in Paragraphs 82 through 95 of the Consolidated Complaint that "Apple's messaging restrictions harmed competition from [Fitbit, Garmin, Samsung, and Google]."

**REQUEST FOR PRODUCTION NO. 26:**

All Documents, data, and Communications relating to Your allegations concerning Notification APIs, including Paragraphs 96 through 107 of the Consolidated Complaint.

**REQUEST FOR PRODUCTION NO. 27:**

All Documents, data, and Communications relating to Your allegations in Paragraph 96 of the Consolidated Complaint that Apple "utiliz[es] the DPLA to strategically prevent competitors from accessing the APIs that would allow their smartwatch users the same type of control over notifications available to Apple Watch users."

**REQUEST FOR PRODUCTION NO. 28:**

All Documents, data, and Communications relating to Your allegations in Paragraph 98 of the Consolidated Complaint that "Competitor smartwatches are unable to tailor app or message notifications" and that "[c]ompetitor smartwatch users regularly complain that they receive iPhone notifications on their smartwatches even while they are staring at their iPhone."

**REQUEST FOR PRODUCTION NO. 29:**

All Documents, data, and Communications relating to Your allegations in Paragraph 101 of the Consolidated Complaint that "[t]he Android operating system enables users to tailor the delivery of notifications to their smartwatch, including based on whether the smartphone is locked or unlocked."

**REQUEST FOR PRODUCTION NO. 30:**

All Documents, data, and Communications relating to Your allegations in Paragraph 103 of the Consolidated Complaint that "Apple . . . restricts access to APIs that allow users to act on notifications they receive."

**REQUEST FOR PRODUCTION NO. 31:**

All Documents, data, and Communications relating to Your allegations in Paragraph 107 of the Consolidated Complaint that "[t]here is no procompetitive justification for Apple's decision to restrict the ability of third-party smartwatch users to tailor or take action on notifications,"; that

"Apple's decision to limit notification APIs . . . provides no conceivable benefit beyond coercing [iPhone users] to purchase Apple Watches instead of competing smartwatches"; and that "Apple could enable these functionalities with no additional engineering effort."

**REQUEST FOR PRODUCTION NO. 32:**

All Documents, data, and Communications relating to Your allegations concerning Wallet APIs, including Paragraphs 108 through 113 of the Consolidated Complaint.

**REQUEST FOR PRODUCTION NO. 33:**

All Documents, data, and Communications relating to Your allegations in Paragraph 113 of the Consolidated Complaint that "[t]here is no procompetitive justification for this API restriction."

**REQUEST FOR PRODUCTION NO. 34:**

All Documents, data, and Communications relating to Your allegations in Paragraph 115 of the Consolidated Complaint that "Apple has historically used its ability to approve or reject third-party apps under the App Review Guidelines to delay the launch of smartwatch competitors' companion apps, preventing them from competing for iPhone users."

**REQUEST FOR PRODUCTION NO. 35:**

All Documents, data, and Communications relating to Your allegations in Paragraph 116 of the Consolidated Complaint that "Apple refused to approve the Pebble Time iOS app ahead of the launch of the Pebble Time smartwatch . . . despite the absence of problems with the Pebble Time app."

**REQUEST FOR PRODUCTION NO. 36:**

All Documents, data, and Communications relating to Your allegations in Paragraph 118 of the Consolidated Complaint that "Apple has . . . used the App Review Guidelines to limit

support for competitor smartwatches by iOS sister apps, and to limit the discoverability of those . . . sister apps."

**REQUEST FOR PRODUCTION NO. 37:**

All Documents, data, and Communications relating to Your allegations in Paragraph 122 of the Consolidated Complaint that "Guideline 2.3.10 substantially limits the incentive of developers to build sister apps that work closely with competitor smartwatches" and causes them to have "little hope of being found by users of the competitor smartwatch for which their app is designed."

**REQUEST FOR PRODUCTION NO. 38:**

All Documents, data, and Communications relating to Your allegations in Paragraph 123 of the Consolidated Complaint that "there is no legitimate procompetitive justification for these restrictions."

**REQUEST FOR PRODUCTION NO. 39:**

All Documents, data, and Communications relating to Your allegations in Paragraph 124 of the Consolidated Complaint that "Apple's restrictions on App Store listings harm consumers."

**REQUEST FOR PRODUCTION NO. 40:**

All Documents, data, and Communications relating to Your allegations in Paragraphs 125 and 126 of the Consolidated Complaint that Apple "has enforced" the "App Store policy" to "remove an iPhone app listing for merely mentioning a competing smartwatch in App Store metadata."

**REQUEST FOR PRODUCTION NO. 41:**

All Documents, data, and Communications relating to Your allegations in Paragraph 131 of the Consolidated Complaint that "Apple frequently updates and redesigns iOS in ways that disrupt and degrade the performance of competitor smartwatches."

**REQUEST FOR PRODUCTION NO. 42:**

All Documents, data, and Communications relating to Your allegations in Paragraph 132 of the Consolidated Complaint that "Apple has progressively degraded competitor smartwatches' ability to deliver information."

**REQUEST FOR PRODUCTION NO. 43:**

All Documents, data, and Communications relating to Your allegations in Paragraph 135 of the Consolidated Complaint that "Apple has hamstrung its smartwatch competitors by placing increasingly onerous restrictions on the amount of time smartwatches can spend processing data in the background," including by allegedly "slash[ing] the time available for background execution by 83%" in 2019" and "impos[ing] further restrictions on background execution time since."

**REQUEST FOR PRODUCTION NO. 44:**

All Documents, data, and Communications relating to Your allegations in Paragraph 137 of the Consolidated Complaint that "beginning with iOS 14, the operating system's algorithms became substantially more aggressive in stopping background execution for apps."

**REQUEST FOR PRODUCTION NO. 45:**

All Documents, data, and Communications relating to Your allegations in Paragraph 138 of the Consolidated Complaint that "ten seconds (or even 30 seconds) is not sufficient time to adequately transfer and keep updated all of the information consumers exchange between their smartwatches and smartphones."

**REQUEST FOR PRODUCTION NO. 46:**

All Documents, data, and Communications relating to Your allegations in Paragraph 143 of the Consolidated Complaint that "Apple's limits on background execution have . . . caused competing smartwatch makers to eliminate certain categories of information from background execution altogether."

**REQUEST FOR PRODUCTION NO. 47:**

All Documents, data, and Communications relating to Your allegations in Paragraph 144 of the Consolidated Complaint that "Apple's restrictions on background execution serve no procompetitive purpose"; that the alleged limits on "background execution" are not "technologically necessary"; and that "Android OS does not impose comparably strict limits on background execution."

**REQUEST FOR PRODUCTION NO. 48:**

All Documents, data, and Communications relating to Your allegations in Paragraphs 146 through 148 of the Consolidated Complaint relating to the "Low Power Mode" feature, including that it "significantly degrades the performance of competitor smartwatches"; that there are "no procompetitive justifications for Low Power Mode automatically inhibiting the smooth functioning of competitor smartwatches"; and that "Apple benefits from this [alleged] restriction."

**REQUEST FOR PRODUCTION NO. 49:**

All Documents, data, and Communications relating to Your allegations in Paragraph 149 of the Consolidated Complaint that Apple "diminished privacy for competitor smartwatches."

**REQUEST FOR PRODUCTION NO. 50:**

All Documents, data, and Communications relating to Your allegations in Paragraph 154 of the Consolidated Complaint regarding "HRV measurements," including that Apple "has

intentionally refused to support HRV measurements taken using the more reliable method employed by competitor smartwatch makers such as Fitbit and Garmin."

**REQUEST FOR PRODUCTION NO. 51:**

All Documents, data, and Communications relating to Your allegations in Paragraph 155 of the Consolidated Complaint that "[t]here is no procompetitive justification for Apple's differential treatment of its Apple Watch and third-party smartwatches within its Health app."

**REQUEST FOR PRODUCTION NO. 52:**

All Documents, data, and Communications relating to Your allegations in Paragraphs 156 and 178 of the Consolidated Complaint that Apple "design[s] iOS in various ways that cause competitor smartwatches to disconnect from the iPhone," including by "design[ing] iOS to ensure that competitor smartwatches' Bluetooth connections are consistently severed by iPhone users."

**REQUEST FOR PRODUCTION NO. 53:**

All Documents, data, and Communications relating to Your allegations in Paragraphs 157 through 162 of the Consolidated Complaint that "Apple knowingly causes compatibility problems with iOS-connected third-party smartwatches through iOS software updates and intentionally delays resolving them to advantage the Apple Watch over its competitors."

**REQUEST FOR PRODUCTION NO. 54:**

All Documents, data, and Communications relating to Your allegations in Paragraph 162 of the Consolidated Complaint that "Apple . . . refuses to share sufficient information about its iOS updates" and that "[t]here is no technical or otherwise legitimate reason for Apple's conduct."

**REQUEST FOR PRODUCTION NO. 55:**

All Documents, data, and Communications relating to Your allegations in Paragraph 163 of the Consolidated Complaint that "the third-party smartwatches that connect to both iPhones and Android suffer no similar problems with Android operating system updates."

**REQUEST FOR PRODUCTION NO. 56:**

All Documents, data, and Communications relating to Your allegations in Paragraphs 164 through 172 of the Consolidated Complaint that "Apple encourages iPhone users to stop sharing their location with competitor smartwatches," including any allegations regarding any allegedly "intrusive and misleading" "scare screens."

**REQUEST FOR PRODUCTION NO. 57:**

All Documents, data, and Communications relating to Your allegations in Paragraph 182 of the Consolidated Complaint that "Apple could provide the same Bluetooth functionality to competing smartwatches as it provides to the Apple Watch, but chooses not to."

**REQUEST FOR PRODUCTION NO. 58:**

All Documents, data, and Communications relating to Your allegations in Paragraph 188 of the Consolidated Complaint, including that when "[c]onsidered as a whole, Apple's conduct is a highly effective anticompetitive scheme to acquire and maintain a monopoly in the market for iOS-connected smartwatches," and that the alleged conduct "forc[es] out rivals," "preclud[es] new entrants," "restrict[s] supply," "harm[s] competition," and "enabl[es] Apple to charge supracompetitive prices" for Apple Watch.

**REQUEST FOR PRODUCTION NO. 59:**

All Documents, data, and Communications relating to Your allegations in Paragraphs 189 and 190 of the Consolidated Complaint that "Apple has substantially foreclosed competition" in the Alleged Smartwatch Markets.

**REQUEST FOR PRODUCTION NO. 60:**

All Documents, data, and Communications relating to Your allegations in Paragraph 189 of the Consolidated Complaint that Google, Meta, and Samsung "have either exited or chosen never to enter the market for iOS-connected smartwatches" "as a result of Apple's conduct."

**REQUEST FOR PRODUCTION NO. 61:**

All Documents, data, and Communications relating to Your allegations in Paragraph 189 of the Consolidated Complaint that Pebble was "forced out of business" and Motorola "temporarily exited the market" "as a result of Apple's conduct."

**REQUEST FOR PRODUCTION NO. 62:**

All Documents, data, and Communications relating to Your allegations in Paragraph 191 of the Consolidated Complaint that "[e]ven if there were legitimate business objectives for certain of the restrictions and technical limitations imposed on competitor smartwatches, those objectives could be achieved by less restrictive means."

**REQUEST FOR PRODUCTION NO. 63:**

All Documents, data, and Communications relating to Your allegations in Paragraph 192 of the Consolidated Complaint that "Apple has been able to increase prices and charge supracompetitive prices for the Apple Watch without losing market share."

**REQUEST FOR PRODUCTION NO. 64:**

All Documents, data, and Communications relating to Your allegations in Paragraph 196 of the Consolidated Complaint that "Apple's restrictions on competitor smartwatches . . . harm all smartphone and smartwatch users."

**REQUEST FOR PRODUCTION NO. 65:**

All Documents, data, and Communications relating to Your Alleged Smartphone Markets definitions and any market shares of any participants in the Alleged Smartphone Markets or any relevant aftermarkets, including any analyses, reports, studies, surveys, or data You relied upon in defining the Alleged Smartphone Markets or any relevant aftermarkets, or in calculating or assessing market shares or monopoly power within those markets.

**REQUEST FOR PRODUCTION NO. 66:**

All Documents, data, and Communications relating to Your Alleged Smartwatch Markets definitions and any market shares of any participants in the Alleged Smartwatch Markets, including any analyses, reports, studies, surveys, or data You relied upon in defining the Alleged Smartwatch Markets or in calculating or assessing market shares or monopoly power within those markets.

**REQUEST FOR PRODUCTION NO. 67:**

All Documents, data, and Communications relating to Your allegations in Paragraph 202 of the Consolidated Complaint that "iOS smartphones are a relevant product market."

**REQUEST FOR PRODUCTION NO. 68:**

All Documents, data, and Communications relating to Your allegations that iOS Smartphones and Android Smartphones are not "reasonably interchangeable," including Your allegations in Paragraph 202 of the Consolidated Complaint that "iOS smartphone users do not

consider iOS and Android smartphones reasonably interchangeable and generally do not consider purchasing Android smartphones when it comes time to replace their iPhone."

**REQUEST FOR PRODUCTION NO. 69:**

All Documents, data, and Communications relating to Your allegations in Paragraph 203 of the Consolidated Complaint that "[t]he desire to continue using apps; to preserve data such as messages, photos, and videos; and to continue using a device that one has learned and grown accustomed to means that users generally continue using smartphones on the same mobile operating system once they have begun."

**REQUEST FOR PRODUCTION NO. 70:**

All Documents, data, and Communications relating to Your allegations in Paragraph 203 of the Consolidated Complaint concerning "Apple's [alleged] efforts to tie its products together and lock its customers into the Apple ecosystem."

**REQUEST FOR PRODUCTION NO. 71:**

All Documents, data, and Communications relating to Your allegations in Paragraph 204 of the Consolidated Complaint that "switching between iOS and Android phones is uncommon."

**REQUEST FOR PRODUCTION NO. 72:**

All Documents, data, and Communications relating to Your allegations in Paragraphs 210 and 211 of the Consolidated Complaint that Smartwatches are "not reasonably interchangeable" with "smartphones, wrist-worn health and fitness trackers, or wristwatches."

**REQUEST FOR PRODUCTION NO. 73:**

All Documents, data, and Communications relating to Your allegations in Paragraph 216 of the Consolidated Complaint that Apple "could impose a small but significant non-transitory

increase in price . . . in the market for iOS-connected smartwatches and not lose sufficient volume to make the price increase unprofitable."

**REQUEST FOR PRODUCTION NO. 74:**

All Documents, data, and Communications relating to Your allegations in Paragraph 217 of the Consolidated Complaint that any iPhone buyers are "locked into using iPhone devices."

**REQUEST FOR PRODUCTION NO. 75:**

All Documents, data, and Communications relating to Your allegations in Paragraph 217 of the Consolidated Complaint that "[w]hen non-smartwatch users purchase an iPhone . . . they typically do not consider the costs and difficulties that will be associated with purchasing a non-Apple smartwatch with their device."

**REQUEST FOR PRODUCTION NO. 76:**

All Documents, data, and Communications relating to Your allegations in Paragraph 217 of the Consolidated Complaint that there are "significant costs in switching away from iPhones."

**REQUEST FOR PRODUCTION NO. 77:**

All Documents, data, and Communications relating to Your allegations in Paragraph 217 of the Consolidated Complaint that "iPhone users cannot simply switch to an Android smartphone in order to purchase or use a non-Apple smartwatch after Apple imposes its smartwatch restrictions."

**REQUEST FOR PRODUCTION NO. 78:**

All Documents, data, and Communications relating to Your allegations that the United States is the relevant geographic scope for any alleged market, including the Alleged Smartphone Markets and the Alleged Smartwatch Market.

**REQUEST FOR PRODUCTION NO. 79:**

All Documents, data, and Communications relating to the market shares of Apple or any competitors in the Alleged Smartwatch Markets (e.g., Samsung, Google, Pebble, Motorola, Fossil, and Meta).

**REQUEST FOR PRODUCTION NO. 80:**

All Documents, data, and Communications relating to Your allegations in Paragraphs 223 through 234 of the Consolidated Complaint that Apple "has monopoly power in" the Alleged Smartwatch Markets.

**REQUEST FOR PRODUCTION NO. 81:**

All Documents, data, and Communications relating to Your allegations in Paragraph 227 of the Consolidated Complaint that any alleged price increases for Apple Watch "have not reflected increasing Apple Watch quality."

**REQUEST FOR PRODUCTION NO. 82:**

All Documents, data, and Communications relating to Your allegations in Paragraph 230 through 232 of the Consolidated Complaint that "Apple competitors," including Amazfit and Garmin, "have released smartwatches that compare favorably to the Apple Watch . . . but sell for [] substantially lower price[s]."

**REQUEST FOR PRODUCTION NO. 83:**

All Documents, data, and Communications comparing, evaluating, or analyzing the price, affordability, or "value for money" of Apple Watches versus Smartwatches offered by other manufacturers, including the "out-of-pocket" or "net" acquisition cost to You after accounting for any carrier subsidies, device installment plans, trade-in credits, or wireless service contracts.

**REQUEST FOR PRODUCTION NO. 84:**

All Documents, data, and Communications relating to Your allegations in Paragraph 233 of the Consolidated Complaint that "Apple has enjoyed increasing gross profit margins throughout this period."

**REQUEST FOR PRODUCTION NO. 85:**

All Documents, data, and Communications relating to Your allegations regarding any barriers to entry the Alleged Smartwatch Markets.

**REQUEST FOR PRODUCTION NO. 86:**

All Documents, data, and Communications relating to the market shares of Apple or any competitors in the Alleged Smartphone Markets or in any relevant aftermarkets.

**REQUEST FOR PRODUCTION NO. 87:**

All Documents, data, and Communications relating to Your allegations in Paragraph 236 of the Consolidated Complaint that "Apple has monopoly power in the market for smartphones."

**REQUEST FOR PRODUCTION NO. 88:**

All Documents, data, and Communications relating to Your allegations in Paragraphs 238 and 240 of the Consolidated Complaint that neither "[c]ompeting smartphones" nor "new entrants" can "discipline Apple's exercise of monopoly power in the smartphone market."

**REQUEST FOR PRODUCTION NO. 89:**

All Documents, data, and Communications relating to Your allegations in Paragraph 240 of the Consolidated Complaint that "[m]any sophisticated technology companies have tried and failed to enter the smartphone business."

**REQUEST FOR PRODUCTION NO. 90:**

All Documents, data, and Communications relating to Your allegations in Paragraph 240 of the Consolidated Complaint that "iPhone benefits from substantial network effects."

**REQUEST FOR PRODUCTION NO. 91:**

All Documents, data, and Communications relating to Your allegations in Paragraphs 241 and 242 of the Consolidated Complaint that "once consumers have purchased an iPhone, they are locked into that device and the Apple ecosystem" such that they are allegedly "unlikely to switch to a competing device due to difficulties or perceived difficulties related to the transfer of photos and videos, text messages, and apps" and "feel constrained to continue purchasing iPhones."

**REQUEST FOR PRODUCTION NO. 92:**

All Documents, data, and Communications relating to the alleged monetary or nonmonetary injury allegedly suffered by You due to the Alleged Conduct, whether directly or indirectly, both for Your individual claims and on behalf of any putative class, including any and all claimed injuries and all damages calculations, estimates, or methodologies (including any calculations, estimates or methodologies regarding the pass-through of alleged overcharges) and all other relief that You seek individually and on behalf of the putative class.

**REQUEST FOR PRODUCTION NO. 93:**

All Documents, data, and Communications relating to Your allegations in Paragraph 294 of the Consolidated Complaint that the Alleged Conduct is "immoral, unethical, oppressive, unscrupulous, offends public policy, and is substantially injurious to consumers."

**REQUEST FOR PRODUCTION NO. 94:**

All Documents, data, and Communications relating to Your allegations regarding Apple's motivations and intent with respect to the Alleged Conduct, including Your allegations that the

Alleged Conduct is motivated by Apple's intent (a) to deter consumers from buying non-Apple Smartwatches; (b) to inhibit the development of non-Apple Smartwatches; or (c) to harm or prevent competition in the Alleged Smartphone Markets, the Alleged Smartwatch Markets, or in any relevant aftermarkets.

**REQUEST FOR PRODUCTION NO. 95:**

All Documents, data, and Communications relating to any evaluations or assessments of privacy, security, safety, or user experience of iPhone, Apple Watch, or App Store or of other Smartphones, Smartwatches, or App Marketplaces.

**REQUEST FOR PRODUCTION NO. 96:**

All Documents, data, and Communications relating to Your allegations that Apple's justifications for its policies or practices are pretextual, including any justifications related to privacy, security, safety, or user experience.

**REQUEST FOR PRODUCTION NO. 97:**

All Documents, data, and Communications relating to Your allegations that Apple's Alleged Conduct harms consumers.

**REQUEST FOR PRODUCTION NO. 98:**

All Documents, data, and Communications relating to the effects that Apple's Alleged Conduct has on consumers' or Your decisions in purchasing an Apple Watch or iPhone, including Apple's alleged restrictions on Messaging APIs, Notification APIs, and Wallet APIs, Apple's App Review Guidelines, and Apple's alleged use of software or hardware design changes to disrupt or degrade the performance of competitor Smartwatches.

**REQUEST FOR PRODUCTION NO. 99:**

All Documents, data, and Communications, including any studies, Reports, or other analyses, relating to customers' Smartwatch purchases or purchasing decisions in the United States.

**REQUEST FOR PRODUCTION NO. 100:**

All Documents, data, and Communications, including any studies, Reports, or other analyses, relating to customer satisfaction with Apple Watch or non-Apple Smartwatches or to customers' decisions to switch or not switch between Apple Watch and non-Apple Smartwatches.

**REQUEST FOR PRODUCTION NO. 101:**

All Documents, data, and Communications, including any studies, Reports, or other analyses, relating to customers' decisions to buy an Apple Watch or non-Apple Smartwatches based on their compatibility with the "Apple ecosystem."

**REQUEST FOR PRODUCTION NO. 102:**

All Documents, data, and Communications relating to competition for and among iOS-connected Smartwatches, or Smartwatches, including Your allegations that Apple's Alleged Conduct harms competition in the Alleged Smartwatch Markets.

**REQUEST FOR PRODUCTION NO. 103:**

All Documents, data, and Communications relating to the price of Apple Watch and the price of Smartwatches offered by other manufacturers, including Samsung, Google, Pebble, Motorola, Fossil, and Meta.

**REQUEST FOR PRODUCTION NO. 104:**

All Documents, data, and Communications relating to concerns about the use of non-Apple Smartwatches connected to non-iPhone Smartphones, including regarding privacy, security, reliability, or interoperability between non-Apple Smartwatches and non-iPhone Smartphones.

**REQUEST FOR PRODUCTION NO. 105:**

All Documents, data, or Communications relating to the value You place on digital security or digital privacy, including the extent to which any such value factors into the devices You purchase and the Apps, features, and services you use.

**REQUEST FOR PRODUCTION NO. 106:**

All Documents, data, or Communications relating to the risk of cyberattacks or cyber-threats with respect to Apple Watches or Smartwatches, including the effect of encryption of data and communications on such risks.

**REQUEST FOR PRODUCTION NO. 107:**

All Documents, data, or Communications relating to Your exposure to any cyber-threats, security risks, or malicious activity affecting your personal devices or accounts, demonstrating the frequency and nature of the digital threats You face, including (a) attempted or successful intrusions, including notifications of "suspicious login attempts," "unrecognized devices," or password reset requests You did not initiate; (b) social engineering or phishing attempts targeted at You, such as malicious text messages, fraudulent emails, or scam calls soliciting Your personal data; and (c) Your installation of third-party security tools (e.g., antivirus software, spam filter, or identity theft monitoring services) to mitigate these risks.

**REQUEST FOR PRODUCTION NO. 108:**

All Documents relating to Your purchase, acquisition, ownership, or lease of any Smartphones (including both iPhone and non-Apple devices). This request includes any transactional records (such as receipts, invoices, order confirmation, wireless service agreements, carrier installment plans, purchase agreements, financing agreements, or order histories) or any other Documents reflecting, for each device:

1. the date of acquisition
2. the specific price paid (if any);
3. the method and source of the payment (including credit cards, rewards cards, third-party financing, or cash);
4. any goods or services purchased in connection with or bundled with the device (including any warranties, extended coverage or insurance, streaming or content services, or subscription services);
5. the financial terms of the sale, including the value of any discounts, rebates, or incentives applied before or after the purchase (such as trade-in credits, carrier subsidies, loyalty rewards program points, cashback earnings, employer/student discounts, credit card merchant offers, any other promotional offers applied or other non-cash consideration);
6. the manner in which You acquired the device (e.g., direct purchase from the device's manufacturer, purchase from a third-party retailer, purchase from a wireless carrier, purchase on a peer-to-peer marketplace, purchase on a business-to-consumer marketplace, purchase from an individual, receipt as a gift, trade-in, etc.);
7. the identity of the vendor or seller from whom it was purchased;

8. whether the device was new, used, or refurbished at the time of acquisition; and
9. whether You still own the device, and if not, the manner and date of disposition of the device.

**REQUEST FOR PRODUCTION NO. 109:**

All Documents relating to Your purchase, acquisition, ownership, or lease of any non-iPhone Apple products, including iPad, Mac (e.g., MacBook Air, MacBook Pro, iMac, Mac mini), Apple Watch, AirPods (including AirPods Pro and AirPods Max), HomePod, Apple TV, or AirTags. This Request includes transactional records (such as receipts, invoices, order confirmation, wireless service agreements, carrier installment plans, purchase agreements, financing agreements, or order histories) or any other Documents reflecting, for each device:

1. the date of acquisition
2. the specific price paid (if any);
3. the method and source of the payment (including credit cards, rewards cards, third-party financing, or cash);
4. any goods or services purchased in connection with or bundled with the device (including any warranties, extended coverage or insurance, streaming or content services, or subscription services);
5. the financial terms of the sale, including the value of any discounts, rebates, or incentives applied before or after the purchase (such as trade-in credits, carrier subsidies, loyalty rewards program points, cashback earnings, employer/student discounts, credit card merchant offers, any other promotional offers applied or other non-cash consideration);

6. the manner in which You acquired the device (e.g., direct purchase from the device's manufacturer, purchase from a third-party retailer, purchase from a wireless carrier, purchase on a peer-to-peer marketplace, purchase on a business-to-consumer marketplace, purchase from an individual, receipt as a gift, trade-in, etc.);
7. the identity of the vendor or seller from whom it was purchased;
8. whether the device was new, used, or refurbished at the time of acquisition; and
9. whether You still own the device, and if not, the manner and date of disposition of the device.

**REQUEST FOR PRODUCTION NO. 110:**

All Documents related to Your purchase, acquisition, ownership, or lease of any non-Apple computing or gaming devices (excluding Smartphones), including (a) Android-based tablets; (b) personal computers (Windows, Chrome OS, or Linux); and (c) dedicated gaming consoles (e.g., Nintendo, PlayStation, Xbox, or Steam Deck). This Request specifically includes transactional records (such as receipts, invoices, order confirmation, wireless service agreements, carrier installment plans, purchase agreements, financing agreements, or order histories) or any other Documents reflecting, for each device:

1. the date of acquisition
2. the specific price paid (if any);
3. the method and source of the payment (including credit cards, rewards cards, third-party financing, or cash);
4. any goods or services purchased in connection with or bundled with the device (including any warranties, extended coverage or insurance, streaming or content services, or subscription services);

5. the financial terms of the sale, including the value of any discounts, rebates, or incentives applied before or after the purchase (such as trade-in credits, carrier subsidies, loyalty rewards program points, cashback earnings, employer/student discounts, credit card merchant offers, any other promotional offers applied or other non-cash consideration);
6. the manner in which You acquired the device (e.g., direct purchase from the device's manufacturer, purchase from a third-party retailer, purchase from a wireless carrier, purchase on a peer-to-peer marketplace, purchase on a business-to-consumer marketplace, purchase from an individual, receipt as a gift, trade-in, etc.);
7. the identity of the vendor or seller from whom it was purchased;
8. whether the device was new, used, or refurbished at the time of acquisition; and
9. whether You still own the device, and if not, the manner and date of disposition of the device.

**REQUEST FOR PRODUCTION NO. 111:**

All Documents related to Your purchase, acquisition, ownership, or lease of any non-Apple Smartwatches or Wearables. This Request specifically includes transactional records (such as receipts, invoices, order confirmation, wireless service agreements, carrier installment plans, purchase agreements, financing agreements, or order histories) or any other Documents reflecting, for each device:

1. the date of acquisition
2. the specific price paid (if any);
3. the method and source of the payment (including credit cards, rewards cards, third-party financing, or cash);

4. any goods or services purchased in connection with or bundled with the device (including any warranties, extended coverage or insurance, streaming or content services, or subscription services);
5. the financial terms of the sale, including the value of any discounts, rebates, or incentives applied before or after the purchase (such as trade-in credits, carrier subsidies, loyalty rewards program points, cashback earnings, employer/student discounts, credit card merchant offers, any other promotional offers applied or other non-cash consideration);
6. the manner in which You acquired the device (e.g., direct purchase from the device's manufacturer, purchase from a third-party retailer, purchase from a wireless carrier, purchase on a peer-to-peer marketplace, purchase on a business-to-consumer marketplace, purchase from an individual, receipt as a gift, trade-in, etc.);
7. the identity of the vendor or seller from whom it was purchased;
8. whether the device was new, used, or refurbished at the time of acquisition; and
9. whether You still own the device, and if not, the manner and date of disposition of the device.

**REQUEST FOR PRODUCTION NO. 112:**

All Documents, data, and Communications relating to Your decision to purchase or use any Apple devices, including the factors that influenced Your decision and Your reasons for selecting Apple products over competitor devices.

**REQUEST FOR PRODUCTION NO. 113:**

All Documents, data, and Communications related to Your consideration of whether to purchase or use any non-Apple Smartwatch, including the Garmin Smartwatch referenced in

Paragraph 9 of the Consolidated Complaint which Plaintiff states he "would prefer to own," including Your preference for certain features, prices, discounts, and other relevant factors for each non-Apple Smartwatch You considered purchasing or decided to purchase.

**REQUEST FOR PRODUCTION NO. 114:**

All Documents, data, and Communications relating to Your consideration of, or any attempt to, switch from an iPhone to a non-Apple Smartphone (or vice versa), including (a) the perceived monetary or non-monetary switching costs and frictions or benefits associated with such a switch, including any financial, technological, and behavioral obstacles to switching; and (b) any experiences You have had or attempts You have made to switch, including any financial, technological, and behavioral obstacles to switching that You encountered during the process.

**REQUEST FOR PRODUCTION NO. 115:**

All Documents, data, and Communications related to Your consideration of whether to purchase or Your decision to purchase or use any non-Apple Smartphone, including your preference for certain features, prices, discounts, and other relevant factors for each non-Apple Smartphone You considered purchasing or decided to purchase.

**REQUEST FOR PRODUCTION NO. 116:**

All Documents, data, and Communications related to Your consideration of, or any attempt You have made to, switch from an Apple Watch to a non-Apple Smartwatch (or vice versa), including (a) the perceived monetary or non-monetary switching costs and frictions or benefits associated with such a switch, including any financial, technological, and behavioral obstacles to switching; (b) any experiences You have had or attempts You have made to switch, including any financial, technological, and behavioral obstacles You encountered (such as feature or service

incompatibilities); or (c) Apps or functionalities that would or would not have been available on the device You switched (or considered switching) to.

**REQUEST FOR PRODUCTION NO. 117:**

All Documents, data, and Communications relating to Your use, consideration, or comparison of Digital Wallet or tap-to-pay services, including (a) all Digital Wallet or tap-to-pay services You have ever used, downloaded, or considered using (including Apple Wallet, Google Pay, Samsung Wallet, or any financial institution's payment App); (b) Your decisions to use or not use a particular service, including any comparisons You relied on regarding features, security, bank/card availability or rewards; and (c) screenshots showing all credit cards, debit cards, loyalty cards, and transit passes currently or previously provisioned to the Digital Wallet.

**REQUEST FOR PRODUCTION NO. 118:**

All Documents, data, and Communications related to consumer awareness, including Your awareness, of Apple's alleged restrictions at the time they purchase iPhone or Apple Watch, including awareness of (a) Apple's Guidelines; (b) Apple's App Review process; (c) limitations on Apps and third-party devices, including Smartwatches, compatible with iPhone; (d) restrictions on third-party developer and third-party Smartwatch manufacturers' access to APIs and data; and (e) interoperability limitations between iPhone and third-party Smartwatches.

**REQUEST FOR PRODUCTION NO. 119:**

All Documents, data, and Communications relating to any instance in which You sought, attempted, or desired to download an Application or unlock digital content or features that were unavailable, blocked, or removed from the App Store, including (a) any search queries or browsing history reflecting attempts to find Apps not hosted on the App Store; (b) complaints or feedback by You to Apple, any App developers, or on social media regarding the inability to access specific

Apps or content through the App Store; and (c) Your use of "jailbreaking" software to bypass the App Store distribution.

**REQUEST FOR PRODUCTION NO. 120:**

All Documents, data, Communications relating to Your detailed device and Application usage history on any Smartphone You owned or controlled, whether such data is retrieved from the device's current active memory or from any local or cloud-based backups (including iCloud, iTunes/Finder, Google Drive, Samsung Cloud, or similar archival services). This Request encompasses all available data and analytics logs from the "Screen Time" feature on iOS devices, the "Digital Wellbeing" feature on Android devices, or any other similar features. This includes all information contained within the "See All App & Website Activity" (or equivalent) detailed view, including "Screen Time," "Most Used" Applications, "Pickups," and "Notifications."

**REQUEST FOR PRODUCTION NO. 121:**

All Documents, data, and Communications relating to Your detailed device and Application usage history on any Smartwatch You owned or controlled, whether such data is retrieved from the device's current active memory or from any local or cloud-based backups (including iCloud, iTunes/Finder, Google Drive, Samsung Cloud, or similar archival services). This Request encompasses all available data and analytics logs from the "Screen Time" feature on iOS devices, the "Digital Wellbeing" feature on Android devices, or any other similar features.

**REQUEST FOR PRODUCTION NO. 122:**

All Documents related to any terms, conditions, or agreements entered into between You and Apple.

**REQUEST FOR PRODUCTION NO. 123:**

All Documents and Communications between You and any actual or potential member of the proposed class whom You seek to represent regarding this litigation as well as any non-privileged Communications with any other Person regarding this litigation.

**REQUEST FOR PRODUCTION NO. 124:**

All Documents, data, and Communications relating to any analysis You have conducted or relied upon to compare Apple Watch to any non-Apple Smartwatches, including any comparison of features, functionality, operating systems, available Apps, cellular network options, and price (including any financing options).

**REQUEST FOR PRODUCTION NO. 125:**

All Documents, data, and Communications relating to any analysis You have conducted or relied upon to compare iPhone to any non-Apple Smartphones, including any comparison of features, functionality, operating systems, available Apps, cellular network options, and price (including any financing options).

**REQUEST FOR PRODUCTION NO. 126:**

All Communications between You and Apple, including any records of Your visits to Apple stores, Communications with AppleCare specialists and/or Genius Bar specialists, and Communications with Apple support staff, and any Documents relating to such Communications.

**REQUEST FOR PRODUCTION NO. 127:**

Documents sufficient to show all Apps You have ever downloaded or otherwise used on Your Apple devices, including Your iPhone or Apple Watch.

**REQUEST FOR PRODUCTION NO. 128:**

All Documents and Communications relating to Your understanding that iPhone Apps must be downloaded from the App Store, including where You complained about or discussed the unavailability of a certain App on the App Store prior to purchasing your Apple Watch.

**REQUEST FOR PRODUCTION NO. 129:**

All Documents, data, and Communications relating to Your complete history of digital software purchases or acquisitions, including Apps, In-App Purchases, subscriptions, and any other downloadable content, regardless of whether such items were obtained via an App Marketplace, direct web download, or side loading. This request encompasses all software installed, purchased, or acquired on any device used by You (including Smartphones, tablets, Wearables, portable media players, smart TVs, gaming consoles) and shall include the name of the item, the cost (if any), and the date of acquisition.

**REQUEST FOR PRODUCTION NO. 130:**

All Documents, data, and Communications relating to all Apps You attempted to or intended to download, but ultimately did not download on Your Apple devices, including Your iPhone or Apple Watch.

**REQUEST FOR PRODUCTION NO. 131:**

All Documents and Communications relating to any user manuals or warranty documents You received for any iPhone, Apple Watch, or any other Apple products You purchased or acquired.

**REQUEST FOR PRODUCTION NO. 132:**

All Documents and Communications relating to Your views, reactions, or comments to any change in Apple's App Store policies.

**REQUEST FOR PRODUCTION NO. 133:**

All Documents, data, and Communications relating to Your calculations or comparisons of the combined cost of iPhone or Apple Watch, including any data plans, necessary accessories, and subscription services for those devices.

**REQUEST FOR PRODUCTION NO. 134:**

All Documents, data, and Communications exchanged with any foreign competition or antitrust regulators, agencies, or organizations that relate to any of Your allegations.

**REQUEST FOR PRODUCTION NO. 135:**

All Documents, data, and Communications exchanged with any State Government, the Federal Government, or any agency thereof, that relate to any of Your allegations.

**REQUEST FOR PRODUCTION NO. 136:**

All Documents, data, and Communications referenced in, relating to, or that You reviewed, referred to, identified, or relied on in drafting the Consolidated Complaint, to the extent such Documents have not already been produced.

**REQUEST FOR PRODUCTION NO. 137:**

All Documents, data, and Communications exchanged between You and any third party relating to any investigation by a State Government, the Federal Government, any agency thereof, or any foreign regulator concerning the Alleged Conduct.

**REQUEST FOR PRODUCTION NO. 138:**

All Documents, data, and Communications exchanged between You and any third party concerning the Alleged Conduct, specifically including Communications with any lobbying firms, public relations agencies, strategy consultants, or communications firms, as well as any

competitors of Apple (such as Microsoft Corporation) or any representatives, affiliates, or members of the Coalition for App Fairness (including Epic Games, Spotify, and Match Group).

**REQUEST FOR PRODUCTION NO. 139:**

All Documents, data, and Communications referenced in, relating to, or that You reviewed, referred to, identified, or relied on in preparing any of Your responses to interrogatories or requests for admission in this litigation, to the extent such Documents have not already been produced.

**REQUEST FOR PRODUCTION NO. 140:**

All Documents, data, and Communications, to the extent not already produced, that You intend to rely on or otherwise expect to use in any hearing, deposition, motion, or trial in this litigation.

**REQUEST FOR PRODUCTION NO. 141:**

All non-privileged Documents You reviewed or relied upon in connection with the preparation of the Consolidated Complaint.

**REQUEST FOR PRODUCTION NO. 142:**

All non-privileged Documents provided to You by any person or entity (including any investigators, consultants, or other third parties) in connection with the preparation of the Consolidated Complaint.

**REQUEST FOR PRODUCTION NO. 143:**

All non-privileged Documents sufficient to show the identity of any Person who assisted, advised, or consulted with You in the preparation, investigation, or drafting of the Consolidated Complaint, including any investigators, consultants or other third parties.

**REQUEST FOR PRODUCTION NO. 144:**

All non-privileged Communications with any Person who assisted in the preparation of the Consolidated Complaint, and any Documents relating to such Communications.

**REQUEST FOR PRODUCTION NO. 145:**

All Documents relating to all agreements between and/or among You and Your counsel pertaining to this litigation or any of Your allegations.

**REQUEST FOR PRODUCTION NO. 146:**

All Communications with Your counsel regarding the allegations in Your Consolidated Complaint that predate the formation of an attorney-client relationship, and any Documents relating to such Communications.

**REQUEST FOR PRODUCTION NO. 147:**

All non-privileged Communications between You and any plaintiffs (or counsel for any such Plaintiff) named in the Direct iPhone Purchaser Plaintiffs' Consolidated Class Action Complaint, Dkt. No. 87, and Indirect iPhone Purchaser Plaintiffs' Corrected Consolidated Class Action Complaint, Dkt. No. 109, regarding this litigation, and any Documents relating to such Communications.

**REQUEST FOR PRODUCTION NO. 148:**

All Communications with any plaintiff (or counsel of any plaintiff) in the action *United States v. Apple Inc.*, 2:24-cv-04055 (D.N.J.), and any Documents relating to such Communications.

**REQUEST FOR PRODUCTION NO. 149:**

All Documents and Communications relating to Your use of or experience with any Apple services or features, including iMessage, FaceTime, iCloud, AirDrop, Apple Wallet, or CarPlay.

**REQUEST FOR PRODUCTION NO. 150:**

All Documents relating to any agreement with any Person relating to the funding of this litigation.

Dated: January 5, 2026

Respectfully submitted,

*/s/ Liza M. Walsh*

Liza M. Walsh
Douglas E. Arpert
WALSH PIZZI O'REILLY FALANGA LLP
Three Gateway Center
100 Mulberry Street, 15th Floor
Newark, NJ 07102
Tel.: (973) 757-1100
Email: LWalsh@walsh.law
DArpert@walsh.law

Craig S. Primis, P.C. (*pro hac vice*)
Matthew J. Reilly, P.C. (*pro hac vice*)
K. Winn Allen, P.C. (*pro hac vice*)
Luke P. McGuire (*pro hac vice*)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
Tel.: (202) 389-5000
Email: craig.primis@kirkland.com
matt.reilly@kirkland.com
winn.allen@kirkland.com
luke.mcguire@kirkland.com

Connor S. Sullivan (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Tel: (212) 351-4000
Email: cssullivan@gibsondunn.com

Devora W. Allon, P.C. (*pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Tel.: (212) 446-5967
Email: devora.allon@kirkland.com

Cynthia E. Richman (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036
Tel.: (202) 955-8500
Email: crichman@gibsondunn.com

Daniel G. Swanson (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Tel.: (213) 219-7000
Email: dswanson@gibsondunn.com

Joseph R. Rose (*pro hac vice*)
Julian W. Kleinbrodt (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Tel.: (415) 393-8200
Email: jrose@gibsondunn.com
jkleinbrodt@gibsondunn.com

*Counsel for Defendant Apple Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 5th day of January, 2026, counsel of record have been served by electronic mail, pursuant to agreement of the parties, with a true and correct copy of the foregoing.

/s/ *Nick Barba*
Nick Barba

# EXHIBIT 2

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE: APPLE INC. SMARTPHONE ANTITRUST LITIGATION<br><br>*This Document Relates to:*<br><br>Civil Action No. 24-md-03113 (JXN)(LDW)<br>Civil Action No. 24-cv-7238 (JXN)(LDW) | Civil Action No. 24-md-03113 (JXN)(LDW)<br>MDL No. 3113 |

**DIRECT APPLE WATCH PURCHASER PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS TO DEFENDANT APPLE INC.**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, the Direct Apple Watch Purchaser Plaintiffs ("DAWP Plaintiffs"), by and through their counsel, hereby request that Defendant Apple Inc. produce the Documents described below. As required by Rule 34, Apple Inc.'s responses and Documents shall be served on and produced electronically to counsel for DAWP Plaintiffs, and any hard-copy Documents and things shall be produced at the offices of Korein Tillery, 205 N. Michigan Ave., Suite 1950, Chicago, IL 60601, within thirty days of service thereof.

**DEFINITIONS**

1. The use of the singular includes the plural and vice versa.

2. The use of a verb in any tense shall be construed as the use of the verb in all other tenses, as necessary, to bring within the scope of the Requests all responses that might otherwise be construed to be beyond their scope.

3. "Agreement" means any oral, written, or implied contract, arrangement, understanding, or plan, or term thereof, whether formal or informal, between two or more persons, together with all modifications or amendments.

4. "All," "any," and "each" shall be construed as encompassing "any and all."

5. "Alleged Conduct" shall mean all conduct alleged in the Direct Apple Watch Purchaser Complaint and any component thereof.

6. The terms "and" and "or" are to be construed either disjunctively or conjunctively, whichever is appropriate in each instance so as to bring within the scope of each of these Requests any information that might otherwise be considered beyond that scope.

7. "Application Programming Interfaces" or "APIs" means application programming interfaces.

8. "App" means a software program or programs designed to run on a computing device.

9. "App Review Guidelines" means Your App Review Guidelines, all predecessor and successor guidelines, and all attachments, schedules, and exhibits to the App Review Guidelines.

10. "App Store" means the digital store that Apple operates to offer iOS Apps for digital distribution.

11. "App Switcher" refers to the display page on iOS typically accessed by swiping up from the bottom of the iOS device to the middle of the screen, allowing the user to swipe left or right to access Apps open in the background.

12. "Apple Watch" means any Smartwatch developed by Apple, including, but not limited to, the first generation Apple Watch, Apple Watch Series 1, Apple Watch Series 2, Apple Watch Series 3, Apple Watch Series 4, Apple Watch Series 5, Apple Watch SE (first generation), Apple Watch Series 6, Apple Watch Series 7, Apple Watch Series 8, Apple Watch SE (second generation), Apple Watch Ultra, Apple Watch Series 9, Apple Watch Ultra 2, and Apple Watch Series 10.

13. "Direct Apple Watch Purchaser Complaint" shall refer to the amended complaint filed by Joseph Giamanco in *In re Apple Inc. Smartphone Antitrust Litigation*, No. 24-md-3113 (D.N.J.).

14. "Background Execution" means the execution of a task, performance of a function, or processing of data by an App on a Smartphone or Smartwatch when the App is operating in the background or in a suspended state, as opposed to in the foreground.

15. **"Cloud Streamed Game"** means any native or web-based mobile application that allows a Smartphone user to play video games that are run on a remote server, data center, or service and streamed to the user's Smartphone. Examples of Cloud Streamed Game services include Microsoft xCloud Gamepass, NVIDIA GeForce NOW, Amazon Luna, Google Stadia, and Roblox.

16. **"Collaborative Work Environment"** means a platform used to create, edit, review, approve, store, organize, share, and access Documents and information by and among authorized users, potentially in diverse locations and with different devices. Even when based on a common technology platform, Collaborative Work Environments are often configured as separate and closed environments, each one of which is open to a select group of users with layered access control rules (reader vs. author vs. editor). Collaborative Work Environments include iCloud, Google Drive, Box, Microsoft OneDrive, Quip, eRooms, Document management systems (e.g., iManage), intranets, web content management systems ("CMS") (e.g., Drupal), wikis, and blogs.

17. "Communication" means any transmission of information, ideas, facts, data, proposals, or any other matter by one or more persons or between two or more persons by any means, including, but not limited to, telephone conversations, emails, online messages, or other forms of electronic correspondence, letters, written memoranda, and face-to-face conversations.

18. The terms "concern," "concerning," "reflect," "reflecting," "relate," "relating to," "refer," "referring to," "regard," and "regarding" mean, without limitation, constituting, comprising, containing, embodying, reflecting, referring to, identifying, stating, dealing with, for use in, commenting on, responding to, describing, analyzing, or in any way pertaining to, or in any way being relevant, in whole or in part, to the particular subject matter identified.

19. "Copies" means all copies of any Documents that are not identical in every respect to the Documents being produced.

20. **"Data Dictionary"** means documentation of the organization and structure of the databases or data sets that is sufficient to allow their reasonable use by the Plaintiffs, including, for each table of information: (a) the name of the table; (b) a general description of the information contained; (c) the size in both number of records and megabytes; (d) a list of fields available for each record; (e) the format, including variable type and length, of each field; (f) a definition for each field as it is used by the Company, including the meanings of all codes that can appear as field values; (g) the fields that are primary keys for the purpose of identifying a unique observation; (h) the fields that are foreign keys for the purpose of joining tables; and (i) an indication of which fields are populated. A database schema is an example of a Data Dictionary.

21. **"Digital Wallet"** means a mobile payment platform, payment App, or other mobile application, or combination of mobile applications, that allows users to make payments or use other credentials, such as to unlock doors, operate vehicles, access public transit, enter event venues, or present proof of identity or other personal credentials. Apple Wallet, Samsung Wallet, Google Wallet, PayPal, and Venmo are examples of Digital Wallets.

22. "DOJ" means the United States Department of Justice.

23. "Government Action" means *United States of America v. Apple, Inc.*, No. 2:24-cv-4055-JXN-LDW (D.N.J.).

24. **"Government Plaintiffs"** means, collectively, the named plaintiffs in *United States et al. v. Apple Inc.*, No. 2:24-cv-04055, pending in the United States District Court for the District of New Jersey.

25. "Draft" means any earlier, preliminary, preparatory, or tentative version of all or part of a Document, whether or not such a draft was superseded by a later draft and whether or not the terms of the draft are the same as or different from the terms of the final Document.

26. "Developer" means any person or entity who develops or publishes an App or other software.

27. "Document" is to be given the broadest meaning contemplated by Federal Rule of Civil Procedure 34(a)(1)(A) and includes, without limitation, any electronically or physically stored information or Communications, including, but not limited to, written, recorded, printed, or graphic matter, whether produced, reproduced, or stored on paper, cards, film, audio or video tapes, computer storage device, Source Code, software code, and other types of code, or any other media of any kind, whether sent or received or neither, including, but not limited to, originals, copies (with or without notes or changes), drafts, appendices, schedules, exhibits, attachments, and things similar to the foregoing however denominated by You, in the possession, custody or control of You, or of any officer, agent, employee, representative, counsel, or other person acting or purporting to act for or on behalf of You or in concert with You.

28. "DPLA" means the Apple Developer Program License Agreement, all predecessors and successors to the Apple Developer Program License Agreement, and all attachments, schedules, and exhibits to the Apple Developer Program License Agreement.

29. "Electronically stored information" or "ESI" is defined to be synonymous with the broadest possible meaning of the term "electronically stored information," as used in Federal Rule of Civil Procedure 26 and 34.

30. **"Employee Messaging Application"** refers to any electronic method used by the Company and its employees to communicate with each other or entities outside the Company for business purposes. "Employee Messaging Application" includes platforms, whether for ephemeral or non-ephemeral messaging, for email, chats, instant messages, text messages, and other methods of group and individual Communication (e.g., Microsoft Teams, Slack). "Employee Messaging Application" may overlap with "Collaborative Work Environment."

31. **"Enterprise customer"** means business or corporate customers, including government and public sector customers.

32. **"Entitlement"** means any permissions or other grants of authority made by or on behalf of Apple—including to itself—authorizing an App or service to use or invoke an API, or otherwise access one or more functions, resources, or operations of iOS, or to access or use one or more hardware components of the iPhone.

33. **"Framework"** means a set of reusable functionalities and associated resources for application development, including a hierarchical directory that encapsulates shared resources, such as dynamic shared libraries, nib files, image files, localized strings, header files, and reference documentation in a single package. Apple's UIKit and Core Data are examples of Frameworks.

34. **"Identified Product or Service"** means each product or service within on or more of the following categories:

a. Cloud Streamed Games;

b. Messaging Systems;

c. Digital Wallets or Payment Apps;

d. Platform Apps or Mini Programs; and

e. Smartwatches **and Smartwatch Companion or Sister Apps**.

35. **"Implementation"** means any software code that implements any part of an API, Library, application, operating system, or any other software artifact. Implementation includes all representations of a code, including Source Code, intermediary code, binary code, or any other form of code.

36. "Including," whether capitalized or not, means "including, but not limited to," and shall not be interpreted to imply any limitation.

37. **"Investigation"** means the Government Plaintiffs' pre-Complaint investigation into Apple's conduct in the Government Action.

38. "iOS" means the operating system used by the iPhone.

39. "iOS-Connected Smartwatch" means any Smartwatch configured to interoperate with an iPhone.

40. "iOS update" means an update to the iOS operating system developed by Apple for iPhone and other mobile devices.

41. "iPhone" means any smartphone developed by Apple, including, but not limited to, the first generation iPhone, iPhone 3G, iPhone 3GS, iPhone 4, iPhone 4s, iPhone 5, iPhone 5c, iPhone 5s, iPhone 6, iPhone 6 Plus, iPhone SE (first generation), iPhone 7, iPhone 7 Plus, iPhone 8, iPhone 8 Plus, iPhone X, iPhone XR, iPhone XS, iPhone XS Max, iPhone 11 Pro, iPhone 11 Pro Max, iPhone SE (second generation), iPhone 12, iPhone Mini, iPhone 12 Pro, iPhone 12 Pro Max, iPhone 13, iPhone 13 Mini, iPhone 13 Pro, iPhone 13 Pro Max, iPhone SE (third generation), iPhone 14, iPhone 14 Plus, iPhone 14 Pro, iPhone 14 Pro Max, iPhone 15, iPhone 15 Plus, iPhone 15 Pro, iPhone 15 Pro Max, iPhone 16, iPhone 16e, iPhone 16 Plus, iPhone 16 Pro, iPhone 16 Pro Max, iPhone 17, iPhone 17 Pro, iPhone 17 Pro Max, and iPhone Air.

42. "**Library**" means any collection of Implementations for APIs or other functions.

43. "**Messaging System**" means any application or service that can send and receive private digital messages (other than e-mail). Messaging Systems can use internet-based Communications protocols (e.g., over-the-top ("OTT") or internet protocol ("IP")), telecommunications protocols (e.g., RCS, SMS, or MMS), or a combination of protocols. Apple Messages, iMessage, Google Messages, WhatsApp, Facebook Messenger, Signal, Telegram, and WeChat are examples of Messaging Systems. A Messaging System may also provide other functionality such as video-calling, audio-calling, or file sharing.

44. **"Mobile Application"** (commonly referred to as an "application," "App," or "mobile App") means a software program designed for use on a Smartphone or other hardware or accessory, such as a Smartwatch. Examples of mobile applications include those in categories such as web browsing, productivity, games, social networking, or entertainment. A mobile application can be a native App or a web App.

45. **"Mini Program"** means a program that is run within a Platform App. Mini Programs may be developed in their own programming languages, often using web technologies such as HTML, CSS, and Javascript.

46. **"Operating system"** means the software that coordinates and manages the hardware and software on a compute or mobile device, including connections to other hardware or accessories, such as Smartwatches. iOS is an example of a mobile operating system.

47. **"Payment App"** means a mobile application, mobile payment platform, or digital financial service that enables users to make payments to or otherwise engage in financial transactions with third parties, including in-person payments at merchants using point-of-sale equipment capable of communicating with a Smartphone or Smartwatch (e.g., tap-to-pay or QR codes). Apple Pay, Google Pay, PayPal, and Venmo are examples of Payment Apps.

48. "Person" means any natural person (alive or deceased), any firm, corporation, proprietorship, joint venture, trust or estate, business, association, partnership, or any other form of legal entity, unless the context indicates otherwise.

49. "Phone Number Sharing Restrictions" means Your technical requirements and policies that result in users of cellular-enabled Third-Party Smartwatches having to turn off iMessage on their iOS device in order to send and reply to text messages from their Third-Party Smartwatch using the cell phone number associated with their iOS device.

50. **"Plans"** includes proposals, recommendations, or considerations, whether finalized or adopted.

51. **"Platform App"** means a mobile App that provides a platform for other Apps and software, including Mini Programs. Platform Apps include, but are not limited to, super Apps.

52. "Privacy Warning Screen" means any notification, window, alert, or display that notifies a user of a function performed or to be performed by a Third-Party Smartwatch or Third-Party Smartwatch App, including, but not limited to, notifications to users that the Third-Party Smartwatch or Third-Party Smartwatch App has accessed, is accessing, or will access the user's data (e.g., location, calendar, contacts, health information, files, focus settings, HomeKit, media, photos, Bluetooth, microphone, camera, local network, etc.).

53. "Possession" means all information or Documents within Your knowledge, possession, custody, or control, including, but not limited to, any employee, consultant, aide, or other representative (including, but not limited to, attorneys and accountants) and any other person acting or purporting to act on Your behalf or in concert with You, and includes any temporary placing of possession, custody, or control in any third party by any of the foregoing persons.

54. "Relevant Markets" means the relevant product and geographic markets alleged in the Direct Apple Watch Purchaser Complaint, or any amended complaint filed in *Giamanco v. Apple Inc.*, including, but not limited to the market for iOS-connected smartwatches, the market for smartwatches, the market for iOS smartphones, the market for smartphones generally.

55. "Smartphone" means any mobile device that combines the functions of cell phones with those of a mobile computer, including the iPhone and any Third-Party Smartphone. Smartphone does not include Smartwatch.

56. "Smartwatch" means any wrist-worn device that tells time while extending and improving the capabilities of Smartphones, including, in many instances, by allowing users to collect

health and fitness data that is synced to a Smartphone, view and act on messages and notifications received by the Smartphone, track and share location information, exercise control over a Smartphone and Smartphone Apps, access and use a mobile wallet, and take advantage of an App ecosystem for additional functionalities.

57. **"Software Development Kit"** or **"SDK"** means a set of libraries, Frameworks, Implementations, APIs, documentation, and other resources for use in developing software or applications for a specific platform or operating system. Apple's iOS SDK is an example of an SDK.

58. **"Source Code"** is the human-readable computer code written by Developers (or generated by AI or other helper tools) that adheres to the syntax and semantics of a programming language. Source Code implements the algorithms and functionality for all computer programs and any other binary or executable code, including Libraries, Frameworks, and operating system kernels.

59. **"Source Code Repository"** means a collection of files or archives containing Source Code, as well as any associated Source Code history, metadata, version control information, documentation, configuration files, data files, multimedia sources, and scripts, wherever they are stored.

60. **"Technical Documentation"** means all Documents (whether public or private) relating to the design, use, function, Implementation, or operation of any API, Library, application, SDK, Framework, operating system, or any other software artifact. Technical Documentation includes, for example, all Documents describing the appearance, functions, features, user interfaces, user experience, or interoperation with iOS of any API, Library, application, SDK, Framework, or other software artifact.

61. "Third-Party Smartphone" means any Smartphone other than the iPhone.

62. "Third-Party Smartwatch" means any Smartwatch made by a Third-Party Smartwatch Maker other than Apple.

63. "Third-Party Smartwatch Apps" means Third-Party Smartwatch Companion Apps, Third-Party Smartwatch Sister Apps, and all other Apps developed by any entity other than Apple that interact or interoperate with Third-Party Smartwatches, including, but not limited to, iPhone Apps and Apps configured for installation on Smartwatches.

64. "Third-Party Smartwatch Companion App" means any App required for the interoperability of a Third-Party Smartwatch, such as Garmin Connect, Wear OS, Samsung Galaxy Fit (Gear Fit), and Samsung Galaxy Watch (Gear S).

65. "Third-Party Smartwatch Maker" is any entity that has developed, produced, manufactured, or sold a Third-Party Smartwatch, including, but not limited to, Pebble, Garmin, Fitbit, Google, and Samsung.

66. "Third-Party Smartwatch Sister App" means any App that is not essential to Smartwatch pairing, but is designed to enhance the way a Smartwatch works with a Smartphone.

67. "This Case" means *In re Apple Inc. Smartphone Antitrust Litigation*, No. 24-md-03113-JXN-LDW (D.N.J.), and all cases centralized or consolidated therewith.

68. **"Threat Model"** means, with respect to the privacy and security of hardware, operating systems, software, data center, server, or service, any formal or informal assessments, analyses, reports, summaries, assumptions, studies, or other understandings about attacker characteristics, goals, capabilities, limitations, or assets. Threat Models also include Documents and information reflecting assumptions (including the bases for such assumptions) and understandings about the security posture of a system, hardware, or software, including possible threats, vulnerabilities, potential mitigations, and tradeoffs.

69. "WatchOS" means the operating system for the Apple Watch.

70. "You," "Yours," "Apple Inc.," "Apple," "Company," or "Defendant" means Apple Inc. and its predecessor and successor entities, officers, directors, parents, subsidiaries (whether direct or

indirect), affiliates, employees, agents, attorneys, representatives, independent contractors, or other persons acting or authorized to act on its behalf.

**INSTRUCTIONS**

1. Each Document Request shall be answered pursuant to Federal Rules of Civil Procedure 26 and 34 and any applicable Local Rules and shall be supplemented as required by Federal Rule of Civil Procedure 26(e). Any Documents created or discovered after the date of these Requests are subject to Your continuing obligation to supplement Your production(s) under Federal Rule of Civil Procedure 26(e).

2. Each Request seeks non-privileged Documents, wherever their location, that are in the actual or constructive possession, custody, or control of You or Your present or former employees, attorneys, advisors, accountants, bookkeepers, agents, or representatives. A Document is deemed in Your actual or constructive possession, custody, or control if it is in Your physical custody or if it is in the physical custody of any other person and You (a) own such Documents in whole or in part; (b) have a right, by control, contract, statute, order, or otherwise to use, inspect, examine, or copy such Documents on any terms; (c) have an understanding, express or implied, that You may use, inspect, examine, or copy such Documents upon any terms; or (d) have, as a practical matter, been able to use, inspect, examine, or copy such Documents when You sought to do so.

3. The terms defined above and in the individual Requests for production and inspection are to be construed broadly to the fullest extent of their meaning in a good faith effort to comply with the Federal Rules of Civil Procedure. If, in responding to any of these Requests, You encounter any ambiguity in construing either the Request or a definition or instruction relevant to it, You shall set forth the matter deemed ambiguous and the construction used in responding to the Request.

4. If You contend that the information sought is not in Your control, indicate the entities who have such control.

5. If any Document is withheld, in whole or in part, for any reason, including, but not limited to, any claim of privilege of any kind, work-product protection, trade secret, or confidentiality, You shall provide with respect to each such Document all information required to be furnished by Federal Rule of Civil Procedure 26(b)(5) or any other court order in This Case.

6. If any portion of any Document is responsive to any Request, the entire Document must be produced. If any requested Document cannot be produced in full, produce the Document to the extent possible, specifying each reason for Your inability to produce the remainder, and stating whatever information, knowledge, or belief You have concerning the portion not produced.

7. If any Document requested was formerly in Your possession, custody, or control and has been lost, destroyed, or otherwise disposed of, You shall furnish a list identifying each such Document, setting forth the following information with respect to each Document.

a. The title of the Document and the nature and subject matter of its contents;

b. The identity or identities of the person or persons who prepared or authored the Document; the custodian or custodians of the Document; if applicable, the person or persons to whom the Document was sent or was intended to be sent; and, if applicable, the recipient or recipients, or intended recipient or recipients, of the Document.

c. The date on which the Document was prepared;

d. The date on which the Document was transmitted, if applicable; and

e. The date on which the Document was lost, destroyed, or otherwise disposed of; the manner, conditions of, reasons for, and circumstances surrounding such loss, destruction, or other disposition; and the persons requesting and performing the destruction or other disposition.

8. Unless otherwise specified, the relevant time period is June 9, 2008, until the end of fact discovery (the "Period").

9. Unless otherwise specified, Requests seeking Documents concerning markets, sales, or business operations should be construed as seeking Documents concerning U.S. marketing, sales, or business operations. Request seeking Documents concerning all other topics—including, but not limited to engineering and design changes—should be construed as seeking Documents from any location without geographic restriction.

10. All productions should be made in compliance with the terms of the Stipulation and Order Governing Electronically Stored Information and Hard Copy Documents and the Discovery Confidentiality Order entered in *In re Apple Inc. Smartphone Antitrust Litigation*, No. 24-md-3113 (D.N.J.).

## REQUESTS FOR PRODUCTION

**REQUEST NO. 1**

All Communications between Apple (including its outside counsel) and any third party (including the third party's counsel) related to the Government Action or the Investigation, including all Documents produced to Apple by persons other than the Government Plaintiffs in the Government Action.

**REQUEST NO. 1.1**

All Communications between Apple (including its outside counsel) and the Government Plaintiffs (including the Government Plaintiffs' counsel) related to the Action or the Investigation, including all Documents produced to Apple by the Government Plaintiffs and all Documents produced to the Government Plaintiffs by Apple in the Government Action.

**REQUEST NO. 1.2**

All Communications between Apple (including its outside counsel) and the Government Plaintiffs (including the Government Plaintiffs' counsel) related to any civil or criminal investigation regarding the iPhone, such as Civil Investigative Demands Nos. 30193, 30356, and 31300, including all Documents produced to the Government Plaintiffs by Apple in said investigation.

**REQUEST NO. 1.3**

All Communications between Apple and any government entity, official, employee, or executive branch representative (whether or not formally employed by the government) other than the Government Plaintiffs related to any actual or potential antitrust investigation regarding the iPhone, including all Communications between Apple and Brazil's Administrative Council for Economic Defense ("CADE") related to Apple's restrictions on NFC technology.

**REQUEST NO. 1.4**

All Communications between Apple (including its outside counsel) and any third party (including the third party's counsel) related to This Case, including all Documents produced to Apple by persons other than Plaintiffs in This Case.

**REQUEST NO. 1.5**

All Communications between Apple (including its outside counsel) and the Direct Apple iPhone Purchaser Plaintiffs (including the Direct Apple iPhone Purchaser Plaintiffs' counsel) or the Indirect iPhone Purchaser Plaintiffs (including the Indirect iPhone Purchaser Plaintiffs' counsel) related to This Case, including all Documents produced to Apple by those plaintiffs and all Documents produced to those plaintiffs by Apple.

**REQUEST NO. 2**

All Documents referenced in or relied upon in any pleading, discovery response, brief, or other filing by Apple in the Government Action, including all Documents identified in Apple's Federal Rule of Civil Procedure 26(a)(1) Initial Disclosures, and all Documents, data, or information that Apple or any Apple expert intends to offer as evidence at trial or otherwise in the Government Action, including any that Apple or its experts could use, will use, or has used to support any testimony or opinion.

**REQUEST NO. 2.1**

All Documents identified in, used for, relied on, or considered by You or Your retained experts in drafting Your initial disclosures, interrogatories, requests for admission, expert reports, or any pleading in This Case.

**REQUEST NO. 3**

All pleadings, written discovery responses, Document productions, declarations, presentations (including any white papers or other analysis or advocacy), and expert reports served, filed, or produced by Apple, all expert reports served on Apple, all discovery requests served on Apple to the extent not included in Apple's responses, and transcripts of all depositions, hearings, and trials for Apple employees and experts, in any proceeding in which Apple is a party where the allegations relate to any conduct alleged in the Government Litigation, including *Epic Games v. Apple*; *In re Apple iPhone Antitrust Litigation*; *Cameron v. Apple*; *Alivecor v. Apple*; *Lopez v. Apple*; *Dr. Rachael Kent v. Apple*; *Dr. Sean Ennis v. Apple*; and European Commission investigations.

**REQUEST NO. 3.1**

All pleadings, written discovery responses, Document productions, declarations, presentations (including any white papers or other analysis or advocacy), and expert reports served, filed, or produced by Apple, all expert reports served on Apple, all discovery requests served on Apple to the extent not included in Apple's responses, and transcripts of all depositions, hearings, and trials for Apple employees and experts, in any proceeding in which Apple is a party where the allegations relate to any Alleged Conduct in the Direct Apple Watch Purchaser Complaint.

**REQUEST NO. 4**

All Documents related to Apple's formal or informal policies, practices, training, or guidance for Apple personnel, including Documents related to:

a. Enabling, disabling, or modifying settings regarding Document retention systems;
b. Avoiding using certain words, terms, or phrases in internal or external Communications and Documents;
c. Communicating in person, by phone, or by videoconference rather than in writing;
d. Labeling Documents "attorney-client privileged" or similar in business discussions; or
e. Including attorneys in Communications or Documents, or including inauthentic or pretextual requests for lawyers to advise.

**REQUEST NO. 5**

All Documents shared with, or presented to, Apple's board of directors, or any committee or subcommittee thereof, related to Smartphones or any Identified Product or Service, including all minutes, recordings, summaries of reports or meetings, whether formal or informal, of any meetings of any Apple board of directors, or any committee or subcommittee thereof from January 1, 2007, onward.

**REQUEST NO. 5.1**

All Documents shared with, or presented to, Apple's CEO, board of directors, or any committee or subcommittee thereof, related to competitor Third-Party Smartwatch Makers, including all minutes, recordings, summaries of reports or meetings, whether formal or informal, of any meetings of any Apple board of directors, or any committee or subcommittee thereof from January 1, 2010, onward.

**REQUEST NO. 6**

All Documents related to any plans or changes Apple has made, considered making, or analyzed related to the iPhone or any Identified Product or Service in response to any actual or potential legal, judicial, or regulatory requirement, proceeding, or investigation in any jurisdiction worldwide, including the nature, costs, revenue impacts, and other actual or potential effects of those changes.

**REQUEST NO. 7**

All Documents related to any consideration by Apple of developing, releasing, enabling, allowing, blocking, improving, or degrading a version of any Identified Product or Service that is interoperable with or usable with non-Apple Smartphones. For avoidance of doubt, this includes Project Fennel, Project Antwerp, Project Leatherback, Beeper Mini, and J129.

**REQUEST NO. 7.1**

All Documents relating to efforts or requests by third parties to access, send, or receive iMessages on Third-Party Smartwatches, Third-Party Smartwatch Apps, and Apps, and any changes You made to iMessage in response to those efforts or requests, including all Documents and Communications related to Beeper, Beeper Mini, Eric Migicovsky, James Gill, Amazfit, AT&T, Citizen, Core Devices LLC, Fitbit, Fossil, Garmin, Google, HMD America, HMD Global, Meta, MijoConnected, Motorola, Pebble, Samsung, T-Mobile, TracFone, Verizon, and Withings.

**REQUEST NO. 8**

All Documents related to actual or potential differences in functionality or ease of use with the iPhone—including any differences in Developers' access to Entitlements, APIs, data, background processes, or differences due to App Review Guidelines—for:

a. Apple's Messaging Systems versus non-Apple Messaging Systems;
b. Apple Pay and Apple Wallet versus non-Apple Digital Wallets and Payment Apps;
c. Roblox or similar Apps versus any other potential or actual Platform Apps, Mini Programs, or Cloud Streamed Games;
d. Native iOS Apps that provide cloud-streamed services (such as Netflix) versus potential or actual Cloud Streamed Games;
e. Apple Watch versus non-Apple Smartwatches, including the connection to the Smartphone, access to LTE-phone number pairing, or access to APIs, such as those related to App notifications or the ability to perform other functionality available to the Apple Watch; and
f. Platform Apps available outside the U.S. and in the U.S., including the WeChat App available to iPhone users in the U.S. versus in China.

**REQUEST NO. 8.1**

All Documents relating to the interoperability of Third-Party Smartwatches with iOS or the iPhone, and to the operations and approval or disapproval of Third-Party Smartwatch Apps, including, but not limited to:

a. the Apple Notification Center Service;
b. Background Execution by Third-Party Smartwatches and Third-Party Smartwatch Apps;
c. Third-Party Smartwatches' and Third-Party Smartwatch Apps' access to and use of APIs relating to messaging, notifications, phone calls, and Digital Wallets;
d. Third-Party Smartwatches' use of Bluetooth and Bluetooth pairing;
e. the effect of low-power mode on Third-Party Smartwatches and Third-Party Smartwatch Apps; and
f. the effect of Phone Number Sharing Restrictions on Third-Party Smartwatches and Third-Party Smartwatch Apps.

**REQUEST NO. 8.2**

All Documents related to any decision on whether to limit the interoperability of Third-Party Smartwatches with the iPhone (or the Apple Watch with Third Party Smartphones); the reasons for any such decision; and the actual or potential impact of any such decision on iPhone sales, iPhone switching, or consumer perception or demand. This includes any decision on whether to:

a. Limit or reduce limits on the ability of Third-Party Smartwatches to respond to notifications;

b. Limit or reduce limits on the ability of Third-Party Smartwatches to maintain a consistent Bluetooth connection with the iPhone when Bluetooth is manually disabled on the iPhone;

c. Limit or reduce limits on the ability of Third-Party Smartwatches' access to and use of APIs relating to messaging, notifications, phone calls, and Digital Wallets;

d. Limit or reduce limits on the ability of Third-Party Smartwatches to maintain a consistent connection with, to continue to operate in the background of, or to continue to share data with the iPhone when the iPhone is in Low Power Mode; and

e. Limit or reduce limits on the ability of Third-Party Smartwatches to connect to a cellular network using a phone number associated with an iPhone.

**REQUEST NO. 8.3**

All Documents relating to Background Execution by Apple Watch, Apple Watch Apps, Third-Party Smartwatches, and Third-Party Smartwatch Apps, including, but not limited to: limits or the absence of limits on the time duration for Background Execution, limits or the absence of limits on the data that can be processed during Background Execution, the effect of closing an App or Third-Party Smartwatch App on Background Execution, and Background Execution performance by Third-Party Smartwatches and Apple Watches.

**REQUEST NO. 8.4**

All Documents relating to Your Phone Number Sharing Restrictions.

**REQUEST NO. 9**

All Documents related to price, terms of sale (including rebates, fees, promotions, discounts, and financing), licensing terms or conditions, pricing plans, pricing strategies, costs, or profitability of Smartphones or any Identified Product or Service.

**REQUEST NO. 9.1**

All Documents related to any process, method, manner, policy, practice, strategy, or procedure that Apple proposed, considered or used to set, raise, lower, change, or maintain the prices charged for the Apple Watch, including all Documents showing how, in setting the price for the Apple Watch (or determining adjustments to prices such as discounts), Apple considered or factored in the price of any other product or service.

**REQUEST NO. 10**

All Documents after January 1, 2010 related to competition affecting Smartphones or Identified Products or Services offered by Apple or any firm, including:

a. Relative quality or features, including technology, performance, privacy, security, user experience, brand strength, customizability, ability to integrate with or interoperate with other hardware or software, network effects, and cost;
b. Entry, expansion, exit, scale, and repositioning;
c. Market segmentation by geography, type of consumer, Smartphone type, Smartphone features, sales channel, or Smartphone price or price band;
d. Competitive positioning;
e. Sales volumes, revenue, profitability, or market share; and
f. Nascent threats, disintermediation, and commoditization.

**REQUEST NO. 10.1**

All Documents after January 1, 2010 related to competition affecting Smartwatches offered by Apple or any firm, including:

a. Relative quality or features, including technology, performance, privacy, security, user experience, brand strength, customizability, ability to integrate with or interoperate with other hardware or software, network effects, and cost;

b. Entry, expansion, exit, scale, and repositioning;

c. Market segmentation by geography, type of consumer, Smartwatch type, Smartwatch features, sales channel, or Smartwatch price or price band;

d. Competitive positioning;

e. Sales volumes, revenue, profitability, or market share; and

f. Nascent threats, disintermediation, and commoditization.

**REQUEST NO. 10.2**

All Documents relating to the features of, or competition or potential competition from, existing or potential Third-Party Smartwatches or Third-Party Smartwatch Apps, including, but not limited to, analysis by Apple, third-party consultants, financial or business services firms, or accounting firms.

**REQUEST NO. 10.3**

All Documents relating to market analysis of the iOS-Connected Smartwatch market and the Smartwatch market, including, but not limited to, marketing strategy; Smartwatch pricing; Smartwatch features; consumer preferences relating to Smartwatch pricing and features; and differences in features, pricing, marketing strategy, and consumer preferences relating to Apple Watch Series Smartwatches, Apple Watch Ultra Smartwatches, and Apple Watch SE Smartwatches.

**REQUEST NO. 10.4**

All Documents relating to past, present or anticipated future impact that pricing, Smartwatch features, and Smartwatch competitors have in the iOS-Connected Smartwatch market and the Smartwatch market, including, but not limited to:

a. consumer switching among Smartwatches;

b. consumer switching among Smartphones;

c. the functional or economic substitutability of Smartwatches, the relative features, costs, or benefits of Smartwatches;

d. factors affecting Smartwatch purchase decisions,

e. competitive intelligence;

f. price competition; and

g. the cross-price elasticity of demand (i.e., the responsiveness of demand to changes in price) among Smartwatch products.

**REQUEST NO. 10.5**

All Documents relating to past, current, and anticipated future market share of Apple and Third-Party Smartwatch Makers in the iOS-Connected Smartwatch market and the Smartwatch market.

**REQUEST NO. 11**

All Documents related to any actual or potential barriers to entry, expansion, or repositioning related to Smartphones, mobile operating systems, or any Identified Product or Service, including all Documents related to network effects, economies of scale, and economies of scope.

**REQUEST NO. 11.1**

All Documents relating to past, current, and anticipated future requirements to enter and barriers to entry into, or growth of, the market for (1) iOS-Connected Smartwatches and (2) all Smartwatches, including, but not limited to, analysis by Apple, third-party consultants, financial or business services firms, or accounting firms.

**REQUEST NO. 12**

All Documents after January 1, 2010 related to any person who previously provided or attempted to provide a Smartphone, mobile operating system, or an Identified Product or Service but ceased doing so.

**REQUEST NO. 12.1**

All Documents after January 1, 2010 related to any person who previously provided or attempted to provide a Smartwatch, Smartwatch Operating System, or an Identified Product or Service but ceased doing so.

**REQUEST NO. 13**

All Documents related to single-homing, multi-homing, or usage of a "preferred" or "primary" product or service, by users, Developers, or any other group, related to Smartphones or any Identified Product or Service.

**REQUEST NO. 14**

All Documents related to Apple's plans, strategies, objectives, research, development, investments, roadmaps, marketing, and features for the iPhone, Apple's App Store, or any Identified Product or Service. For avoidance of doubt, this includes all Documents related to Apple's product development expenses, including expenses related to privacy and security, for the iPhone, Apple's App Store, and any Identified Products or Services.

**REQUEST NO. 15**

All Documents related to any efforts to increase, protect, or preserve Apple's market share, sales, or profitability for Smartphones or any Identified Product or Service, including possible or actual responses from other market participants.

**REQUEST NO. 16**

All Documents related to any actual or potential pricing power, market power, monopoly power, bargaining leverage, or negotiating leverage that Apple has or may have (including presently, in the past, or in the future) relating to Smartphones or any Identified Product or Service, including with respect to consumers, Enterprise customers, App Developers, wireless carriers, iPhone retailers, hardware or accessory manufacturers, financial institutions, and automotive manufacturers.

**REQUEST NO. 17**

All Documents related to how the features, functionality, availability, and interoperability of Smartphones or any Identified Product or Service may affect users' Smartphone purchasing decisions, including Documents related to user satisfaction, Smartphone switching, consumer perceptions and attitudes, preferences, usage, purchase intentions, and all other relevant metrics, key performance indicators, and measures.

**REQUEST NO. 17.1**

All Documents related to how the features, functionality, availability, and interoperability of Smartphones or any Identified Product or Service may affect users' Smartwatch purchasing decisions,

including Documents related to user satisfaction, Smartphone or Smartwatch switching, consumer perceptions and attitudes, preferences, usage, purchase intentions, and all other relevant metrics, key performance indicators, and measures.

**REQUEST NO. 18**

All Documents related to any factors affecting consumer demand for a Smartphone, such as the Smartphone's price, features, or quality (including quantity, price, and quality of available Apps, hardware accessories, or other complementary products and services); usage of any Identified Product or Service; and all Documents related to metrics, key performance indicators, and measures related to consumer demand for a Smartphone.

**REQUEST NO 18.1**

All Documents related to any factors affecting consumer demand for a Smartwatch, such as the Smartwatch's price, features, or quality (including quantity, price, and quality of available Apps, hardware accessories, or other complementary products and services); usage of any Smartphone or Identified Product or Service; and all Documents related to metrics, key performance indicators, and measures related to consumer demand for a Smartwatch.

**REQUEST NO. 18.2**

All Documents related to the cross-elasticity of demand for the Apple Watch, including any Documents concerning the responsiveness of demand to changes in price among the Apple Watch and all other Smartwatches.

**REQUEST NO. 19**

All Documents related to any factors affecting the ability or incentive for Developers or third parties to create Apps or accessories compatible with a particular Smartphone, such as the size and characteristics of the installed base of users of a particular Smartphone or type of Smartphone, the costs, fees, or commissions charged by the Smartphone provider, features offered by the Smartphone, technological restrictions imposed by the Smartphone provider or operating system, and any other terms of dealing.

**REQUEST NO. 19.1**

All Documents related to any factors affecting the ability or incentive for Developers or third parties to create Apps or accessories compatible with a particular Smartwatch, such as the size and

characteristics of the installed base of users of a particular Smartwatch or type of Smartwatch, the costs, fees, or commissions charged by the Smartwatch provider, features offered by the Smartwatch or the Smartphone to which it is connected, technological restrictions imposed by the Smartwatch provider or operating system or the Smartphone provider or operating system to which the Smartwatch is connected, and any other terms of dealing.

**REQUEST NO. 20**

Documents sufficient to show Apple's plans, strategies, and analysis relating to the sale of used or refurbished iPhones and non-Apple Smartphones, including acquisition strategies for any re-seller, Smartphone trade-in values, incentives or credits offered to the person trading in the device, and the countries where used or refurbished Smartphones are sourced and sold.

**REQUEST NO. 21**

All Documents related to actual or potential purchases of iPhones outside of the United States for resale or use in the United States, including Documents related to actions Apple takes or asks third parties to take to limit, prevent, or punish such purchases and resale.

**REQUEST NO. 22**

For each model of iPhone sold in the United States as compared to models sold outside of the United States, Documents sufficient to show all differences in:

a. technical specifications, hardware, software, and configuration;
b. prioritization for release and shipments;
c. sales channels and terms of sale;
d. upgrade and switching rates;
e. competitive positioning and market share;
f. pricing (including discounts, promotions, etc.);
g. costs; and
h. profitability.

**REQUEST NO. 23**

All Documents related to the following reports and all similar reports:

a. Products & Services Profitability;
b. Services Revenue Review;
c. P&L Dashboard;
d. Quarterly LRF – Corporate FP&A;
e. Pan-Geo Performance Summary;
f. Hardware Roadmaps – U.S. Pricing and Costs;
g. Hardware margin roadmaps;

h. Net Effective Price Tracker – iPhone NEP;
i. All LOB Market Segmentation – WW Sales Finance;
j. All LOB Country Profile – WW Sales Finance; and
k. iOS System Report.

**REQUEST NO. 24**

Documents sufficient to show the release of each version of the iPhone or iOS, including the date of release for each geography and all changes made.

**REQUEST NO. 24.1**

Documents sufficient to show the release of each version of the Apple Watch, WatchOS, or iOS, including the date of release for each geography and all changes made.

**REQUEST NO. 25**

All Documents since January 1, 2010 related to the actual or potential effects of ending or altering any aspect of the conduct alleged in the Government Litigation, including allowing alternative app stores or App downloads from websites on the iPhone, modifying App Review Guidelines, or giving third parties access to the APIs or features currently or previously reserved for Apple products or services.

**REQUEST NO. 25.1**

All Documents since January 1, 2010 related to the actual or potential effects of ending or altering any aspect of the Alleged Conduct, including modifying the DPLA, modifying App Review Guidelines, or giving third parties access to the APIs or features currently or previously reserved for Apple products or services.

**REQUEST NO. 26**

Documents and data sufficient to show, on a quarterly and annual basis since January 1, 2010, the revenue, expenses, costs, margins, and profitability of each Apple product or service. For avoidance of doubt, this includes Documents sufficient to show Apple's methodologies for recognition of and allocation of revenue, costs, expenses, margins, and profitability, including any accounting policies and procedures manuals.

**REQUEST NO. 26.1**

Documents sufficient to show actual and projected revenue, costs, expenses, gross profit net profit, unit volume, and price, by month and year, attributed to U.S. sales of Apple accessories for the

Apple Watch, including, but not limited to, Apple bands, charging devices, cases, stands, and Apple Fitness+ subscriptions, for use with the Apple Watch for each year throughout the Period.

**REQUEST NO. 26.2**

Documents sufficient to show actual and projected revenue, costs, expenses, gross profit net profit, unit volume, and price, by month and year, attributed to U.S. sales of AirPods and Beats headphone and earbud products for each year throughout the Period.

**REQUEST NO. 27**

All Documents and data related to any Smartphone's usable life, the length of time over which consumers use it, the number and type of consumers that use it, its quality and value at any point in time, and all related metrics or key performance indicators.

**REQUEST NO. 28**

All Documents related to the value of a user to Apple, including customer lifetime value, entry point analyses, revenue per user, subsequent hardware purchases, and any revenue or benefit that Apple has received or anticipates receiving from a customer or third party due to a customer's purchase or use of any Apple products, services, or subscriptions. For avoidance of doubt, this includes Documents related to Apple's assumptions or analyses about user behavior related to any such analysis, as well as all metrics, key performance indicators, and other measures related to any such analysis.

**REQUEST NO. 29**

From 2007 to the present, all contracts between Apple, U.S. wireless carriers, or any other retailers relating to the iPhone, and all Communications from 2015 onwards related to the negotiations of those contracts or to carrier or retailer sales or promotions.

**REQUEST NO. 29.1**

All contracts between Apple, U.S. wireless carriers, or any other retailers relating to the Apple Watch, and all Communications related to the negotiations of those contracts or to carrier or retailer sales or promotions.

**REQUEST NO. 30**

All reports or analyses related to Smartphones or any Identified Product or Service authored by third parties including IDC, Strategy Analytics, Counterpoint, Gartner, IHS Markit, Canalys, Kantar Group, Comlink (Opensignal), App Annie (data.ai), any U.S. wireless carrier, Meta, or Google.

**REQUEST NO. 31**

All Documents after January 1, 2010 related to Smartphone customer segments, groups, or sub-groups, including:

a. Previous Smartphone ownership, including upgraders, switchers, and "boomerangs";
b. Use of other Apple products or services;
c. Wireless carriers;
d. Country or geography;
e. Demographic characteristics; and
f. Social graphs.

**REQUEST NO. 31.1**

All Documents after January 1, 2010 related to Smartwatch customer segments, groups, or sub-groups, including:

a. Previous Smartwatch ownership, including upgraders, switchers, and "boomerangs";

b. Use of other Apple products or services;

c. Wireless carriers;

d. Country or geography;

e. Demographic characteristics; and

f. Social graphs.

**REQUEST NO. 32**

All Documents related to the social dynamics, stigma, or peer pressures in choice of Smartphone or Identified Product or Service in any customer segment, including all Documents related to Apple's efforts to increase usage by particular consumer segments, use of the iPhone or any Identified Product or Service by younger customers, family members, or peers, and any effect on future demand for Apple Smartphones or other Apple products and services.

**REQUEST NO. 33**

Documents sufficient to show the level of iPhone App development activity in the United States over time related to:

a. User accounts;
b. Developer accounts;
c. Apps;
d. Subscriptions;

e. Engagement;
f. Searches;
g. Downloads;
h. Updates;
i. Paid transactions;
j. Refunds;
k. Complaints;
l. Fraud;
m. Submissions, approvals, rejections, and removals from the Apple App Store; and
n. Documents discussing the appropriate metrics, key performance indicators, and measures for the above.

**REQUEST NO. 34**

All Documents related to the use or potential use of Apps or app stores directly downloaded from the internet or non-Apple app stores on the iPhone in any geography, including technical assessments, use by Enterprise customers, any comparisons to Android or other operating systems, and any actual or potential effect on:

a. Apple's revenues and profitability;
b. User and Developer behavior, spending, revenue, and profitability;
c. The number, quality, and features of Apps available for use on the iPhone;
d. Consumer demand, purchase intentions, and Smartphone switching;
e. Privacy or security for users or Developers, including threat assessments or Threat Models; and
f. Potential alternatives to app stores, including web stores and progressive web Apps.

**REQUEST NO. 35**

Documents sufficient to show differences between iPhone, Mac, iPad, Apple Watch, and Apple TV with respect to (1) App distribution, (2) web browsers or middleware, (3) privacy, or (4) security.

**REQUEST NO. 36**

All Documents related to payment methods actually or potentially available for use on the iPhone, including related to payment processors, in-app payments, payments using virtual currencies, and payments made on web browsers or web Apps. For avoidance of doubt, this includes any payment methods on the iPhone that Apple has disallowed in whole or in part, at any point in time.

**REQUEST NO. 37**

All Documents related to the design, development, marketing, or sale of any Smartphone or Identified Product or Service, concerning:

a. user habits, user inertia, user-interface features, user-facing permission flows, user-facing defaults, user-facing choice screens, user-facing notifications, and

other messages presented to users by a Smartphone's operating system or mobile applications;

b. the number of steps required, load times, or other frictions for users to set up, use, or purchase a Smartphone, mobile application, or Identified Product or Service;

c. performance standards to which Apple has held its own Apps, products, and services;

d. Apple's assessments of the user experience (e.g., usability, friction, latency, setup process, permission flows) for Apple and non-Apple Apps, products, or services on iPhones or non-Apple smartphones; and

e. anonymized data regarding the actual performance of any Smartphones or Identified Products and Services.

**REQUEST NO. 38**

All Documents related to consumer views about the privacy, security, user experience, or quality of Smartphones, including how consumers' views:

a. are affected by Smartphone manufacturers' product decisions and marketing strategies and campaigns;

b. are affected by the product decisions and marketing strategies and campaigns related to any Identified Product or Service;

c. compare to actual differences in Smartphone privacy, security, and quality; and

d. affect Smartphone demand, purchase intentions, switching, and consumer satisfaction.

**REQUEST NO. 39**

All Documents related to user switching between Smartphones or any models thereof (i.e., switching between an iPhone and a non-Apple Smartphone, switching from one iPhone to another iPhone, or switching from one non-Apple Smartphone to another non-Apple Smartphone), including:

a. the ease or difficulty of switching,

b. the costs of switching,

c. the relationship between the cost or difficulty and likelihood of switching,

d. stickiness,

e. customer loyalty or churn,

f. tools and support services available for switching,

g. the duration of time between switching (e.g., how long a user has used an iPhone before switching to a non-Apple Smartphone),

h. consumer views about switching,

i. the availability and performance of complementary products and services, including any changes thereto, and

j. Documents related to the Data Transfer Project or other products, services, initiatives, or partnerships that facilitate switching from iPhones to non-Apple Smartphones.

**REQUEST NO. 39.1**

All Documents related to user switching between Smartwatches or any models thereof (i.e., switching between an Apple Watch and a non-Apple Smartwatch, switching from one Apple Watch to another Apple Watch, or switching from one non-Apple Smartwatch to another non-Apple Smartwatch), including:

a. the ease or difficulty of switching,

b. the costs of switching,

c. the relationship between the cost or difficulty and likelihood of switching,

d. stickiness,

e. customer loyalty or churn,

f. tools and support services available for switching,

g. the duration of time between switching (e.g., how long a user has used an Apple Watch before switching to a non-Apple Smartwatch),

h. consumer views about switching,

i. the availability and performance of complementary products and services, including any changes thereto, and

j. Documents related to the Data Transfer Project or other products, services, initiatives, or partnerships that facilitate switching from Apple Watches to non-Apple Smartwatches.

**REQUEST NO. 40**

All Documents related to how consumers' ownership or use of one or more Apple products or services affects consumers' decisions regarding the purchase or use of additional products or services from Apple or other firms.

**REQUEST NO. 40.1**

All Documents relating to market analysis of the relationship between Smartphone and Smartwatch purchasing, including, but not limited to, how ownership of one device affects purchasing decisions with respect to the other device.

**REQUEST NO. 40.2**

All Documents concerning the estimated or actual numbers and percentages of:

a. iPhone customers who purchase a Smartwatch (and vice versa);

b. iPhone customers who purchase an Apple Watch (and vice versa);

c. Smartphone customers who purchase a Smartwatch (and vice versa);

d. Smartphone customers who purchase an Apple Watch (and vice versa);

e. users of Third-Party Smartphones who purchase a Third-Party Smartwatch (and vice versa); and

f. users of Third-Party Smartphones who purchase an Apple Watch (and vice versa).

**REQUEST NO. 40.3**

All Documents relating to past, current, and anticipated future impact of Smartwatch sales on Smartphone sales, and of Smartphone sales on Smartwatch sales.

**REQUEST NO. 40.4**

Documents sufficient to show the number and percentage of iPhone customers that purchase AirPods or Beats headphones or earbud products (and vice versa) and the number and percentage of Smartphone customers that purchase Bluetooth headphones (and vice versa) for each year throughout the Period.

**REQUEST NO. 41**

All Documents after January 1, 2010 related to the inability of non-Apple Messaging Systems to access the iPhone's carrier messaging capabilities, including requests from third parties for this

ability, consideration of whether to provide this ability to third-party Messaging Systems, and any potential effects of doing so.

**REQUEST NO. 42**

All Documents after January 1, 2010 related to aspects of Apple Messages that differentiate, or plans for aspects of Apple Messages that could differentiate, messaging among iPhone users from messaging with non-iPhone users, including green and blue chat bubbles.

**REQUEST NO. 43**

All Documents after January 1, 2012 related to the consideration, adoption, or development of cross-platform standards relating to an Identified Product or Service. This includes all Documents relating to the consideration, adoption, or development of SMS, MMS, RCS, or messaging alternatives, including Documents related to whether or how to adopt RCS on the iPhone, whether or how third parties adopt RCS, and the use or potential use of SMS, MMS, or RCS by non-Apple Messaging Systems on the iPhone or non-Apple Smartphones. This also includes all Documents related to the development or potential development of cross-platform standards, protocols, or capabilities relating to video calls.

**REQUEST NO. 44**

All Documents related to Apple's Actionable Notifications API, the Apple Notification Center Service (ANCS) API, or any software that enables a Smartwatch to access Smartphone notifications or functionality, including:

a. potential and actual development costs and challenges (past, current, or future);
b. requirements, design, or features, including roadmaps;
c. the availability of similar capabilities on Android or other Smartphone operating systems;
d. potential design for non-Apple Smartwatches or barriers thereto; and
e. potential or actual features available to non-Apple Smartwatches.

**REQUEST NO. 45**

All Documents related to the development and Implementation of new features for the Actionable Notifications API, the ANCS API, or any software that enables a Smartwatch to access Smartphone notifications or functionality, including:

a. the Company's assessment of whether to implement any new features;
b. Communications between the Company and any third parties concerning or requesting the Implementation of new features;
c. the date that development of any feature began, and the date that the feature was first implemented or provided; and
d. total development costs incurred by the Company to date, and the total costs projected for any continuing development of the new feature.

**REQUEST NO. 46**

All Documents related to the Company's assessment of whether to expand the functionality of or access to the Actionable Notifications API, ANCS API, or any software that enables a Smartwatch to access Smartphone notifications or functionality, so that non-Apple Smartwatches can respond to messages, App notifications, or utilize other APIs or functionalities available to the Apple Watch.

**REQUEST NO. 47**

All Documents related to the ability of non-Apple devices to connect or interact with the iPhone, including, but not limited to their ability to receive incoming message notifications, reply to incoming messages, compose new messages, access messages, and mark messages as read.

**REQUEST NO. 48**

All Documents after January 1, 2017 related to the decision whether to offer or allow cloud-streamed applications on the iPhone (including both Cloud Streamed Games and other cloud-based services), including the reasons for any such decision.

**REQUEST NO. 49**

All Documents related to Apple's plans for the Games App announced at WWDC 2025, including Apple's strategic objectives, assessments of other gaming Apps or services, integration with other Apple Apps such as Apple's App Store, Apple Arcade, or Game Center, actual or potential effects on Developers or consumers related to game discovery, distribution, usage, or monetization, and analyses related to alternative methods of distributing games, including Cloud Streamed Games.

**REQUEST NO. 50**

All Documents related to Apple's App Store Review Guidelines affecting any Identified Product or Service, including:

a. Drafting, adoption, application, interpretation, or enforcement of Apple's App Store Review Guidelines;
b. Agreements between Apple and any Developer related to changes or exceptions to the Apple App Store Review Guidelines, including any Agreements that were later formalized into an App Store Review Guideline or exception thereto, including Apple's 2011 Agreement with Meta related to the Facebook App;
c. Changes, considered changes, or reinterpretations of any Apple App Store Review Guideline; and
d. The actual or potential effect of any changes, considered changes, or reinterpretations of any Apple App Store Review Guideline on the iPhone or any Identified Product or Service.

**REQUEST NO. 50.1**

All Documents relating to decisions not to approve for listing on the App Store, delay approval for listing on the App Store, or place restrictions on the approval for listing on the App Store, Third-

Party Smartwatch Companion Apps and Third-Party Smartwatch Sister Apps designed to be used with Third-Party Smartwatches, including, but not limited to Fitbit, Samsung, Google, Garmin, Motorola, and Pebble Smartwatches.

**REQUEST NO. 51**

All Documents after January 1, 2010 related to changes or considered changes to the Apple Developer Program License Agreement relating to iOS or WatchOS in the United States.

**REQUEST NO. 51.1**

All Agreements, policies, and guidelines, in effect during the Period, relating to Third-Party Smartwatch Apps, including, but not limited to, the DPLA, the App Review Guidelines, the iOS and iPadOS Software License Agreement, Apple Inc. Certification Authority Certificate Policy, Apple Inc. Certification Authority Certification Practice Statement Apple Application Integration, Apple Inc. Certification Practice Statement Worldwide Developer Relations, Apple Inc. Certification Practice Statement Developer ID, Apple Inc. Certification Practice State Software Update, Apple Inc. Certification Authority Certification Practice Statement Apple Timestamp, and all predecessors and successors to the DPLA, the App Review Guidelines, the iOS and iPadOS Software License Agreement, Apple Inc. Certification Authority Certificate Policy, Apple Inc. Certification Authority Certification Practice Statement Apple Application Integration, Apple Inc. Certification Practice Statement Worldwide Developer Relations, Apple Inc. Certification Practice Statement Developer ID, Apple Inc. Certification Practice State Software Update, Apple Inc. Certification Authority Certification Practice Statement Apple Timestamp, and other such Agreements, policies, and guidelines.

**REQUEST NO. 51.2**

All Agreements, policies, and guidelines relating to iOS updates and WatchOS updates that concern the functionality of the Apple Watch, Third-Party Smartwatch Apps, or Third-Party Smartwatches, including, but not limited to, all predecessor and successor policies and guidelines.

**REQUEST NO. 51.3**

All Documents relating to the application of the Agreements, policies, and guidelines referenced in Request Nos. 51.1 and 51.2 (including, but not limited to, the DPLA and App Review Guidelines) to Third-Party Smartwatches or Third-Party Smartwatch Apps, and to Apple Watches and Apple Watch Apps, including, but not limited to, all:

a. modifications or exceptions to said Agreements, policies, and guidelines;

b. internal Communications; and

c. Communications with Third-Party Smartwatch Makers and Developers of Third-Party Smartwatch Apps.

**REQUEST NO. 51.4**

All Documents relating to iOS updates that affect the functioning or interoperability of Third-Party Smartwatches or Third-Party Smartwatch Apps with the iPhone, including, but not limited to:

a. Documents relating to Apple's knowledge that such software updates might, would, or did affect the functioning or interoperability of Third-Party Smartwatches or Third-Party Smartwatch Apps;

b. Documents relating to Apple's decisions to release or not release software updates that might, would, or did affect the functioning or interoperability of Third-Party Smartwatches or Third-Party Smartwatch Apps, and its decisions regarding the timing or such releases of software updates; and

c. internal and external Communications (including with Third-Party Smartwatch Makers and Developers of Third-Party Smartwatch Apps) regarding software updates' potential, expected, or actual effects on the functioning or interoperability of Third-Party Smartwatches or Third-Party Smartwatch Apps, including, but not limited to, email, tickets

submitted by Third-Party Smartwatch Makers and Developers of Third-Party Smartwatch Apps, and all other Communications.

**REQUEST NO. 52**

All Documents, analyses, or data after January 1, 2017 relating to TestFlight Beta tests for Cloud Streamed Games, including all data related to testers, installs, sessions, crash logs, crash reports, feedback, bugs, and battery and hardware performance differences.

**REQUEST NO. 53**

All Documents after January 1, 2011 related to Platform Apps' or Mini Programs' potential or actual use; benefits, risks, revenue potential, and differences relative to native Apps; and Apple's potential or actual treatment of Platform Apps or Mini Programs.

**REQUEST NO. 54**

All Documents related to any mobile app's access to or use of (or inability to access or use) any iPhone features or capabilities related to connections to other devices or servers, including near-field Communication ("NFC"), host card emulation ("HCE"), ultra-wide band ("UWB") technology, or any related APIs, for any purpose, including Documents related to the number, nature, popularity, and usage of mobile Apps that access or use NFC, HCE, or UWB.

**REQUEST NO. 55**

For each Identified Product or Service, all Documents related to any potential or actual limitation or prohibition on the availability or functionality of any non-Apple product, feature, or service, including:

a. Documents related to any authorizations, allowances, denials, or limitations on access to APIs, Entitlements, functionalities, features, and data sets related to any Identified Product or Service;
b. Documents related to any authorizations, allowances, denials, or limitations on access to APIs, SDKs, Frameworks, Libraries, any other software artifacts related to any Identified Product or Service; and
c. Documents related to mechanisms, technical or otherwise, to implement or enforce limitations or prohibitions on the availability or functionality of any product, feature, or service, including references to the Source Code that implements each such means or mechanism.

**REQUEST NO. 55.1**

All Documents relating to Your decision whether or not to share, disclose, or permit access to any API, Entitlement, or comparable means of connection and interoperation between a Smartwatch with an iPhone with any Third-Party Smartwatch or Third-Party Smartwatch App.

**REQUEST NO. 56**

For each Identified Product or Service, all Documents related to:

a. any APIs, Entitlements, signatures (other than cryptographic keys), or other permissions, restrictions, or limitations on third party Developers, including all Implementations, Technical Documentation, Source Code Repositories, Frameworks, Libraries, and SDKs provided or authorized by Apple;
b. any in-line documentation contained in any API or Source Code provided or authorized by Apple;
c. any free-form text related to any API or Source Code provided or authorized by Apple;
d. any Apple SDKs available to Developers of any Identified Product or Service;
e. any text or other indicators (including any links, pointers, citations, or references) that refer to the Source Code relating to any Apple-provided API or Entitlement or related documentation; and
f. all Apple Source Code Repositories referenced in or otherwise related to any SDKs, Entitlements, APIs, Frameworks, Libraries, or any other software artifacts referenced in subpart (b), above.

**REQUEST NO. 57**

All Documents related to (a) any purported procompetitive justification for the Alleged Conduct; (b) any purported innovation or benefit to Smartphone users, Developers, carriers, or others from the Alleged Conduct, including any purported innovation or benefit related to privacy, security, fraudulent or deceptive activities, or user experience or human-computer interaction; (c) any alternative means of achieving any purported innovation or benefit other than the conduct alleged in the Government Litigation; and (d) any potential or actual business or technical reason for the conduct alleged in the Government Litigation.

**REQUEST NO. 57.1**

All Documents related to (a) any purported procompetitive justification for the Alleged Conduct; (b) any purported innovation or benefit to Smartphone users, Developers, carriers, or others from the Alleged Conduct, including any purported innovation or benefit related to privacy, security, fraudulent or deceptive activities, or user experience or human-computer interaction; (c) any

alternative means of achieving any purported innovation or benefit other than the Alleged Conduct; and (d) any potential or actual business or technical reason for the Alleged Conduct

**REQUEST NO. 57.2**

All Documents related to (a) any purported procompetitive justification for the Alleged Conduct; (b) any purported innovation or benefit to Apple Watch users, Third-Party Smartwatch users, Third-Party Smartwatch Makers, Third-Party Smartwatch App Developers, or iPhone users, including, but not limited to any purported innovation or benefit related to privacy, security, fraudulent or deceptive activities, or user experience or human-computer interaction; (c) any alternative means of achieving any purported innovation or benefit other than the Alleged Conduct; and (d) any potential or actual business or technical reason for the Alleged Conduct.

**REQUEST NO. 58**

For the iPhone and each Apple or non-Apple Identified Product and Service, all Documents related to Apple's adoption or Implementation of privacy or security policies or practices for information stored, transmitted, or received by iOS, the iPhone, Apple, or third parties, including nutrition labels and privacy manifest files.

**REQUEST NO. 59**

All studies, analyses, investigations, and reports related to fraudulent, malicious, misleading, or deceptive activity, code, content, information, or patterns within or related to the iPhone, iOS, or any Identified Product or Service, including any threat assessment or Threat Model, in whatever form it may exist.

**REQUEST NO. 60**

All Documents related to Apple's ability to access or use data or metadata from the iPhone or from any Identified Product or Service that is not as available or accessible to third-party Developers, including the reasons for any such differences and any benefits to Apple therefrom.

**REQUEST NO. 61**

Each database or data set, as well as any associated Data Dictionaries and documentation, relating to Apple Smartphones or any Identified Product or Service after January 1, 2009, containing information derived from users in the United States, Australia, Canada, China, France, Germany, India, Japan, Mexico, Brazil, Russia, South Korea, and United Kingdom, excluding enterprise users, that contains information relating to user:

a. characteristics;
b. relationships between or among the Company's other users (including Family Sharing);
c. specific devices used (e.g., iPhone model, year, and storage);
d. ownership, activation, deactivation, or usage of the Company's devices;
e. ownership, activation, deactivation, or usage of third-party devices;
f. switching to, from, or among devices;
g. purchase, activation, deactivation, or usage of the Company's Apps, subscriptions, products, or services;
h. purchase, activation, deactivation, or usage of third-party Apps, subscriptions, products, or services; and
i. unique identifiers sufficient to link the user across data sets produced in response to these Requests.

**REQUEST NO. 61.1**

Documents sufficient to show the number and dates of downloads of Third-Party Smartwatch Companion Apps from the App Store, the Apple IDs associated with such downloads, and whether such Apple IDs have ever been associated with an Apple Watch for each year throughout the Period.

**REQUEST NO. 61.2**

Documents sufficient to show all Apps on the App Store during the Period that are or were Third-Party Smartwatch Companion Apps and all Apps on the App Store during the Period that are or were Third-Party Smartwatch Sister Apps.

**REQUEST NO. 62**

Monthly iPhone and Apple Watch sales data worldwide, as well as any associated Data Dictionaries and documentation, for all models after January 1, 2010, including:

a. The country and state where the iPhone or Apple Watch was purchased;
b. The country and state where the iPhone or Apple Watch was activated, if different than the country and state of purchase;
c. All fields necessary to identify the model and specifications, including serial number, IMEI, ICCID, MAC address, brand, model, and storage capacity;
d. All fields necessary to identify the wholesale customer or retailer and sales channel, including the wireless carrier brand through which devices are sold to consumers; and
e. All fields related to units sold, price, incentives, revenues, costs, discounts, rebates, returns, margins, and profitability maintained in the ordinary course of business.

**REQUEST NO. 63**

Each database or data set, as well as any associated Data Dictionaries and documentation, relating to studies, reports, and analyses of consumers, Developers, or other groups related to Smartphones or any Identified Product or Service. These include surveys, polls, focus groups, market research, market segmentations, online anthropologies, A/B testing or other experiments, and choice modelling. They exclude databases and data related to purely cosmetic hardware changes.

**REQUEST NO. 64**

All Documents produced, provided, filed under seal, or served, by any party or non-party, in connection with the Government Action, including, but not limited to, all Documents provided by You to the DOJ in connection with its Investigation into its allegations that Apple has engaged in anti-competitive conduct relating to Smartphone or Smartwatch markets.

**REQUEST NO. 65**

All Documents produced to or served on any party in This Case, including, but not limited to, Documents produced or served by non-parties, and Documents responsive to requests for production served on You by any party in This Case, as if such requests had been served on the date of these Requests by DAWP Plaintiffs.

**REQUEST NO. 66**

Documents sufficient to show the identities of Apple personnel, their titles, and the length of time they served in that role, including, but not limited to, organizational charts as to Apple personnel who were or are involved in the design and development of the Apple Watch, marketing of the Apple Watch, or business operations related to the Apple Watch, as well as any Apple personnel with responsibility with respect to any of the following as they relate to the Apple Watch, Third-Party Smartwatches, or Third-Party Smartwatch Apps: iMessage, notifications, actionable notifications, notification customizations, Privacy Warning Screens, Phone Number Sharing Restrictions, Background Execution, Bluetooth connectivity, Control Center, HealthKit, Apple Notification Center

Service, the DPLA, the App Review Guidelines, approval of Apps in the App Store, WatchOS updates, or iOS updates.

**REQUEST NO. 67**

All Documents relating to Apple's internal policies, practices, and guidelines relating to U.S. antitrust laws.

**REQUEST NO. 68**

All consumers comments regarding the Apple Watch, whether stored as Documents or structured data.

**REQUEST NO. 69**

All Communications from iPhone customers to Apple relating to Third-Party Smartwatches, and all Documents and Communications relating to those Communications, including, but not limited to customer complaints, compliments, questions, comments, or suggestions.

**REQUEST NO. 70**

All Documents relating to criticisms or complaints from consumers, Third-Party Smartwatch Makers, Developers of Third-Party Smartwatch Apps, reporters, or media outlets relating to the interoperability of the Apple Watch with the iPhone and the interoperability of Third-Party Smartwatches with the iPhone.

**REQUEST NO. 71**

All Communications or Agreements with third parties relating to Smartwatches, including, but not limited to Communications or Agreements with representatives or employees of Amazfit, AT&T, Citizen, Core Devices LLC, Fitbit, Fossil, Garmin, Google, HMD America, HMD Global, Meta, MijoConnected, Motorola, Pebble, Samsung, T-Mobile, TracFone, Verizon, and Withings and all Documents and Communications relating to those Communications or Agreements.

**REQUEST NO. 72**

All Documents related to the App review of any Identified Product or Service, including, but not limited to, any App, Companion App, or Sister App for any Smartwatch.

**REQUEST NO. 73**

All Documents relating to incentive programs for Developers of Third-Party Smartwatch Apps, including any eligibility restrictions prohibiting Developers of Third-Party Smartwatch Apps from directing consumers to make out-of-app transactions, and any restrictions prohibiting App Developers from directing consumers to Third-Party Smartwatch Apps.

**REQUEST NO. 74**

All Documents related to any threat to user security or privacy due to the inability to send encrypted messages between iPhones and Third-Party Smartphones or Third-Party Smartwatches.

**REQUEST NO. 75**

All Documents related to any effort or decision by Apple to prevent or limit any third-party Developer's ability or permission to provide or enable end-to-end encryption for messages sent from Third-Party Smartwatches.

**REQUEST NO. 76**

All Documents related to any threat to user security or privacy due to the inability to send encrypted messages from Third-Party Smartwatches.

**REQUEST NO. 77**

All Documents related to coding bugs affecting Apps and iOS updates related to Third-Party Smartwatches, including, but not limited to, bug reports and bug tickets.

**REQUEST NO. 78**

Documents sufficient to show how Apple tracks, logs, and monitors changes to software code related to the Apple Watch and Third-Party Smartwatches, including, but not limited to, Jira logs and other project management documentation.

**REQUEST NO. 79**

Documents sufficient to show the Smartwatches included as data sources in the iPhone Health App, the Apple IDs that listed these Smartwatches as data sources, when these data sources were added or removed for each Apple ID, and changes made in priority among the data sources within the Health App.

**REQUEST NO. 80**

All Documents related to the limitations on, or requirements, procedures, or steps required to enable, the display of health and fitness data collected from a Third-Party Smartwatch in Apple's iPhone Health App or Apple's iPhone Fitness App, including, but not limited to the syncing of data collected from a Third-Party Smartwatch to these Apps, the use of Third-Party Smartwatch data with Apple's movement rings, and Apple's priority system for setting the Health App's data sources.

**REQUEST NO. 81**

All Documents related to "Project Everest" and/or plans to acquire, obtain, or emulate technology developed by Masimo Corporation, or its employees or executives, for use in Apple products.

**REQUEST NO. 82**

All Documents related to "Project Rover" and Apple's plans to work with, acquire, acquire technology from, or hire employees from third-party companies to help develop technology for the Apple Watch.

**REQUEST NO. 83**

Documents sufficient to show all current and historical App Store metadata for all Third-Party Smartwatch Companion Apps, including, but not limited to Apps developed or distributed by Amazfit, Citizen, Core Devices LLC, Fitbit, Fossil, Google, Garmin, MijoConnected, Motorola, Pebble, Samsung, Withings, as well as the following Apps: AllTrails, Google Fit, Komoot, MyFitnessPal, Peloton, SeaNav US, Spotify, Strava.

**REQUEST NO. 84**

All Documents related to requests by third parties to access iPhone protocols used by AirPods for third-party connected devices and any response by Apple to such requests.

**REQUEST NO. 85**

All Documents relating to Apple's use of Privacy Warning Screens relating to Third-Party Smartwatches and Third-Party Smartwatch Apps, including, but not limited to, Documents relating to Apple's decision to use or require (or not to use or require) a Privacy Warning Screen, Apple's decisions regarding which Privacy Warning Screens should appear for users of the Apple Watch, the frequency with which Privacy Warning Screens are presented to users of distinct Apps and how those frequencies are determined, internal Communications regarding Privacy Warning Screens' effects on Third-Party Smartwatches and Third-Party Smartwatch Apps, and Communications with Third-Party Smartwatch Makers and Developers of Third-Party Smartwatch Apps regarding Privacy Warning Screens.

**REQUEST NO. 86**

All Documents related to Apple's decision to display heart rate variability in the Health App based upon the Standard Deviation of Normal-to-Normal interval (SDNN) method, or any other method of displaying heart rate variability in the Health App that is employed by Apple, as well as

Apple's decision not to display other measures of heart rate variability, including, but not limited to the Root Mean Square of Successive Differences (RMSSD) method.

**REQUEST NO. 87**

All Documents related to Apple's decision to have the Bluetooth toggle button in the iPhone Control Center disconnect non-Apple devices, including, but not limited to Third-Party Smartwatches, as well as the decision to have the button not disconnect the Apple Watch or other Apple products connected to the iPhone in part or in full via Bluetooth.

**REQUEST NO. 88**

All Documents related to the effect of the iPhone's Low Power Mode on the Apple Watch or Third-Party Smartwatches or the effect of the Apple Watch's Low Power Mode on the Apple Watch or the iPhone.

**REQUEST NO. 89**

All Documents related to the fact that Third-Party Smartwatch Companion Apps appear in the App Switcher display on iOS devices or that the Apple Watch companion App ("Watch") does not appear in the App Switcher display on iOS devices, including but not limited the effect or risk of customers accidentally closing or otherwise force quitting Third-Party Smartwatch Apps or the Apple Watch companion App.

**REQUEST NO. 90**

All Documents related to Apple's decision to preinstall the Apple Watch companion App ("Watch") on iPhones.

**REQUEST NO. 91**

Documents sufficient to show Your Document retention policies including, but not limited to, Your policies and procedures for retaining physical Documents, email, and any instant messages,

group chats, one-to-one chats, ephemeral messages, Document comments, internal wiki entries, and any other non-email messaging, information, or Communication tool used by Your employees.

**REQUEST NO. 92**

All trainings, guidelines, policies, and protocols provided to Apple's Developer Relations Department or App Review Board.

**REQUEST NO. 93**

All Documents regarding Apple's influence on antitrust articles, scholarly or otherwise, that are intended for publication and that discuss iPhones, Smartphones, Smartphone Apps, Smartwatches, Smartwatch Apps, or app stores, including:

a. Documents regarding Apple's funding, solicitation, or editing of said articles;

b. Documents regarding Communications between Apple and any academics or other commentators who write or contribute to said articles; or

c. Documents sufficient to show any financial relationship between Apple and academics or other commentators who write or contribute to said articles.

**REQUEST NO. 94**

All Documents discussing any differences between premium, flagship, or high-end Smartwatches and entry-level Smartwatches, including any differences in characteristics, uses, production, customer base, and pricing.

Dated: October 15, 2025

Respectfully submitted,

/s/ *David C. Frederick*

David C. Frederick
Aaron M. Panner
Alex A. Parkinson
Scott K. Attaway
Ariela Migdal
Katherine V. Tondrowski
KELLOGG, HANSEN, TODD
FIGEL & FREDERICK, P.L.L.C.
1615 M Street NW, Suite 400
Washington, DC 20036
Tel.: (202) 326-7900
dfrederick@kellogghansen.com
apanner@kellogghansen.com
aparkinson@kellogghansen.com
sattaway@kellogghansen.com
amigdal@kellogghansen.com
ktondrowski@kellogghansen.com

George A. Zelcs
Daniel A. Epstein
Marc A. Wallenstein
David Walchak
KOREIN TILLERY LLC
205 N. Michigan Avenue, Suite 1950
Chicago, IL 60601
Tel.: (312) 641-9750
gzelcs@koreintillery.com
mwallenstein@koreintillery.com
dwalchak@koreintillery.com

Carol O'Keefe
Andrew Ellis
KOREIN TILLERY LLC
505 N. 7th Street, Suite 3600
St. Louis, MO 63101
Tel.: (314) 241-4844
cokeefe@koreintillery.com
aellis@koreintillery.com

Thomas R. Curtin
Kathleen N. Fennelly
MCELROY, DEUTSCH,
MULVANEY & CARPENTER, LLP
1300 Mount Kemble Avenue
Morristown, NJ 07962
Tel: (973) 993-8100
tcurtin@mdmc-law.com
kfennelly@mdmc-law.com

Steven F. Molo
Jonathan E. Barbee
MOLOLAMKEN LLP
430 Park Avenue
New York, NY 10022
Tel.: (212) 607-8160
smolo@mololamken.com
jbarbee@mololamken.com

Lauren F. Dayton
Eric A. Posner
MOLOLAMKEN LLP
300 N. LaSalle Street
Chicago, IL 60601
Tel.: (312) 450-6700
ldayton@mololamken.com
eposner@mololamken.com

Jennifer Fischell
Kayvon Ghayoumi
MOLOLAMKEN LLP
600 New Hampshire Avenue, N.W.
Washington, DC 20037
Tel.: (202) 556-2000
jfischell@mololamken.com
kghayoumi@mololamken.com

*Attorneys for Plaintiff Joseph Giamanco and the Proposed Direct Apple Watch Purchaser Class*

## CERTIFICATE OF SERVICE

I, Katherine V. Tondrowski, hereby certify that on October 15, 2025, I served a copy of Direct Apple Watch Purchaser Plaintiffs' First Set of Requests for Production of Documents and Things to all counsel of record via email.

*/s/ Katherine V. Tondrowski*_____
Katherine V. Tondrowski