WALSH PIZZI O'REILLY

THREE GATEWAY CENTER
100 Mulberry Street, 15th Floor
Newark, NJ 07102
T: 973.757.1100
F: 973.757.1090
WALSH.LAW

Liza M. Walsh
Direct Dial: (973) 757-1101
LWalsh@walsh.law

**VIA ECF** November 10, 2026

Honorable Leda Dunn Wettre, U.S.M.J.
U.S. District Court for the District of New Jersey
Martin Luther King Jr. Bldg. & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07102

**Re: *In re: Apple Inc. Smartphone Antitrust Litigation*, No. 24-md-03113-JXN-LDW (MDL 3113) – Apple's Letter Brief Regarding Apple's Discovery Requests to iPhone Plaintiffs: RFPs 125 and 132 to DPPs // RFPs 117 and 129 to IPPs (Dkt. 403)**

Dear Judge Wettre:

This firm, together with Gibson, Dunn & Crutcher LLP, represents Defendant Apple Inc. ("Apple") in the above-captioned matter. Apple respectfully submits this letter brief pursuant to the Court's November 3, 2026 Order (Dkt. 420) regarding Apple's Requests for Production Nos. 125 and 132 to Direct Purchaser Plaintiffs ("DPPs"), and Nos. 117 and 129 to Indirect Purchaser Plaintiffs ("IPPs") (collectively, the "Requests").

The Requests seek discovery on Plaintiffs' purchase and acquisition of apps and other digital content. This discovery is relevant to Plaintiffs' claims that Apple has foreclosed smartphone competition through a "playbook" of stymieing the growth of various cross-platform apps and other digital technologies. Yet Plaintiffs, who requested the same information for millions of absent class members, and who chose to file this lawsuit and base their claims in part on broad allegations about apps, refuse to produce anything beyond five categories of products and services their complaints call "examples" of Apple's conduct. Rule 26 does not permit Plaintiffs to selectively ignore their own allegations to limit discovery, and their remaining objections are baseless. The Court should order Plaintiffs to produce the requested information.

## I. Relevant Background

Plaintiffs challenge a supposed "anticompetitive and exclusionary course of conduct" consisting of "contractual rules and restrictions." Dkt. 87 ("DPP Compl.") ¶ 80; Dkt. 109 ("IPP Compl.") ¶ 91. The Complaints say these alleged rules and restrictions target "super apps, cloud streaming apps, messaging apps, smartwatches, and digital wallets," *id.*, but that this list is "hardly exhaustive" of "Apple's overall strategy of using its power over app distribution and app creation to selectively block threatening innovations," DPP Compl. ¶ 154; IPP Compl. ¶ 156. Rather, this alleged conduct reflects a purported "playbook for a much broader range of third-party apps and services" that "function as middleware, facilitate switching, reduce the need for expensive hardware, or disintermediate Apple's iPhone by enabling the development of cross-platform technologies" that would threaten Apple's alleged smartphone monopoly. DPP Compl. ¶ 156; IPP Compl. ¶ 157.

Apple served the Requests to test those allegations. Among them, RFP 132 to DPPs and RFP 129 to IPPs seek Plaintiffs' "complete history of digital software purchases or acquisitions" (including free downloads) on various devices, Exs. 1–2, which Apple narrowed to apps, in-app purchases, and subscriptions a plaintiff (1) used or accessed on a smartphone, smartwatch, or tablet and (2) purchased or acquired on either a smartphone, smartwatch, or tablet, or a PC/Mac device through an app marketplace or webstore. RFP 125 to DPPs and RFP 117 to IPPs seek, in the portion at issue, documents about "the [apps] on [Plaintiffs'] Smartwatches," including "[d]ocuments sufficient to identify" all apps Plaintiffs downloaded or used on their smartwatches, as well as documents related to apps Plaintiffs attempted to download or use but were unable to, and apps Plaintiffs uninstalled (and their reasons for doing so). *Id.*

Plaintiffs seek the same information from Apple on behalf of millions of absent class members: their own RFPs request that Apple produce "[e]ach database or data set" reflecting "purchase, activation, deactivation, or usage" of both Apple and third-party "apps, subscriptions, products, or services" across the vast majority of Apple's user base. Ex. 3, RFP 61. Despite that, Plaintiffs object on privacy, relevance, and burden grounds, and seek to limit the scope of *their* discovery obligations to cloud-streaming games, messaging, digital wallets and payments, platform apps or mini-programs, and smartwatch apps. Plaintiffs alternatively contend that anything acquired on a non-Apple device or PC/Mac is irrelevant and that Apple should retrieve the Apple-side records itself using Plaintiffs' Apple IDs (which Plaintiffs have refused to provide absent Apple's agreement to unreasonable restrictions). *See generally* Dkt. 405.

## II. Plaintiffs' App and Purchase Histories Are Relevant to the Claims They Pleaded

Discovery extends to "any nonprivileged matter that is relevant to any party's claim or defense," Fed. R. Civ. P. 26(b)(1), and the pleadings "set the guardrails for discoverable information." *LifeScan, Inc. v. Smith*, 2024 WL 4913270, at *8 (D.N.J. Feb. 1, 2024). The discovery here is relevant for two reasons.

First, Plaintiffs allege that Apple has engaged in an "anticompetitive and exclusionary course of conduct" aimed at stifling a "broad[] range of third-party apps and services" that would supposedly increase smartphone competition by making it easier for consumers to leave iPhone. DPP Compl. ¶¶ 80, 156; IPP Compl. ¶¶ 91, 157. Plaintiffs have not abandoned those allegations. In fact, DPPs reiterated in their opposition to Apple's motion to dismiss that the five categories are "illustrations" of Apple's conduct and asserted, without qualification, that "[t]hird-party apps threaten Apple's [alleged] dominance in the smartphone markets by decreasing user dependence on the iPhone." Dkt. 139 at 5–6. As such, Apple is entitled to determine which kinds of apps and services each plaintiff used to test whether they would "facilitate switching, reduce the need for expensive hardware, or disintermediate Apple's iPhone." DPP Compl. ¶ 156; IPP Compl. ¶ 157. Whether Plaintiffs encountered any of these alleged restrictions—and, if so, which ones—also is plainly relevant. For one thing, Plaintiffs must demonstrate that they suffered an injury "attributable to an anti-competitive aspect of the practice under scrutiny." *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334 (1990). And Apple is "entitled to explore" data from Plaintiffs that bears on the "factual issues at the heart of [their] antitrust theory of liability." *In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, 325 F.R.D. 551, 558 (E.D. Pa. 2016).

Second, Plaintiffs allege that "high switching costs and frictions" are among the barriers that protect Apple's supposed smartphone monopoly. *See* DPP Compl. ¶ 230; IPP Compl. ¶ 223. One

of the frictions Plaintiffs identify for an iPhone user who wants to switch is the "need to . . . purchase new apps, or transfer or buy new subscriptions." DPP Compl. ¶ 230; IPP Compl. ¶ 223. That need, among other alleged factors, supposedly "increase[s] the 'stickiness' of the iPhone" and makes "users more beholden" (i.e., "locked in") to Apple. DPP Compl. ¶¶ 225, 230; *see also* IPP Compl. ¶¶ 219, 223. And it is those switching costs that purportedly permit Apple to impose "monopolistic overcharges" on iPhones. *See* DPP Compl. ¶¶ 222, 226; IPP Compl. ¶ 85. Apple is entitled to test Plaintiffs' theory against their own records. *See McTyere v. Apple Inc.*, No. 1:21-cv-01133, ECF No. 60 at 5–9 (W.D.N.Y. Dec. 20, 2023) ("Apple is entitled to test [plaintiff's] allegations through discovery" and is not "limited in discovery" related to its defenses "by [plaintiff's] theory."); *Andino v. Apple Inc.*, 2024 WL 200997, at *2 (E.D. Cal. Jan. 17, 2024) (similar). The Requests do so by seeking discovery on Plaintiffs' purchase, use, and acquisition of apps, subscriptions, and other digital content. Under Plaintiffs' own theory, an app or subscription that can be used, substituted, or otherwise accessed on a non-Apple device would contribute less, if at all, to the alleged switching costs. The records Apple seeks may show that the apps and subscriptions Plaintiffs actually use fit that description, which would cast doubt on Plaintiffs' theory that apps, subscriptions, and other digital content contribute materially to the switching costs and lock-in effect their claims are based on.

For these reasons, the documents Apple seeks are relevant to the parties' claims and defenses—as well as the named plaintiffs' adequacy and typicality under Rule 23—and should be produced.

## III. Plaintiffs' Objections Are Meritless

Plaintiffs object that documents about products and services outside of cloud-streaming games, messaging, digital wallets and payments, platform apps or mini-programs, and smartwatch apps are irrelevant and that producing them would be disproportionate. But that objection is belied by DPPs' broad assertion that "[t]hird-party apps threaten Apple's dominance" and Plaintiffs' allegation that the five categories are "examples" of Apple's conduct. Dkt. 139 at 5–6; DPP Compl. ¶ 10; IPP Compl. ¶ 30. Plaintiffs cannot ignore their own allegations, nor "strictly confine[]" discovery to the "specific examples alleged in the [Complaints]." Dkt. 284 at 7.

Plaintiffs' allegations go far beyond the five examples. Rather, the examples are framed as indicative of an alleged "playbook for a much broader range of third-party apps and services" that Apple has supposedly deployed to disrupt technologies that would make switching easier. DPP Compl. ¶ 156; IPP Compl. ¶ 157. The Complaints assert that Apple also has "limited the capabilities of third-party iOS web browsers," "impaired third-party, cross-platform video communications apps," "impeded cross-platform cloud storage apps," and made it "difficult for iPhone users to use superior voice and AI assistants"—all apps and services encompassed within Apple's request but for which Plaintiffs refuse to provide documents. DPP Compl. ¶ 156; IPP Compl. ¶ 157. So too for other implicated aspects of the alleged "iPhone's ecosystem," which they say includes "products, apps, content, accessories, and services that are offered by content creators, newspaper publishers, banks, advertisers, social media companies, airlines, productivity developers, retailers and other merchants, and others" as well as Apple's own subscription services for "news, games, video, music, cloud storage, and fitness" that, Plaintiffs allege, "can also increase switching costs among iPhone users." DPP Compl. ¶¶ 5, 157; IPP Compl. ¶¶ 24, 158. Thus, Plaintiffs' proposed limitation would exclude the very apps and services they identify as components of Apple's alleged conduct. *See* DPP Compl. ¶ 10; IPP Compl. ¶ 30.

Plaintiffs object to the Requests as overly burdensome, but they have not explained how the efforts they would have to undertake—pulling their own download and purchase records, receipts, and confirmations and running straightforward custodial searches—are overly burdensome. That claim rings hollow given their demands on Apple, which have included collecting and reviewing tens of millions of documents and extracting millions of rows of data (among other things). In any event, these are the kinds of documents that should be accessible as they presumably underlie the allegations Plaintiffs made at the start of the case. And to the extent Plaintiffs face any real burden, they could (but have refused to) mitigate it by providing Apple with their Apple IDs—which would allow Apple to get the requested information for Apple devices on its own, leaving only software purchases and acquisitions on non-Apple devices for Plaintiffs to produce. At end, a party resisting discovery "must support the undue-burden assertion with specific proof of that burden." *MSP Recovery Claims, Series LLC v. Celgene Corp.*, 2024 WL 1327990, at *5 n.3 (D.N.J. Mar. 28, 2024). Plaintiffs have not done so.

Plaintiffs have also objected on privacy grounds and maintained that an app-specific modification to the Discovery Confidentiality Order ("DCO") is necessary. But as explained above, Plaintiffs have requested, for millions of unnamed class members and millions of iPhone users globally, "[e]ach database or data set" reflecting "purchase, activation, deactivation, or usage" of both Apple and third-party "apps, subscriptions, products, or services." Ex. 3, RFP 61. In other words, they seek the same information that Apple has requested. And unlike the millions of absent class members whose data they seek (the production of which Apple has narrowed to protect consumer privacy), Plaintiffs filed this case seeking treble damages for claims premised on broad allegations that apps are part of what has enabled Apple to monopolize their alleged market. *See supra* §§ I–II. In doing so, they put their purchase, acquisition, and use of apps, subscriptions, and other digital content at issue. Plaintiffs "cannot now use purported privacy concerns to prevent [Apple] from obtaining relevant discovery." *Blount v. Stanley Eng'g Fastening*, 2020 WL 5038522, at *6 (W.D. Ky. Aug. 26, 2020). Plaintiffs have also failed to explain why the existing DCO is inadequate, let alone shown "with specificity," that they would suffer a "clearly defined and serious injury" absent additional protection. *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994).

## IV. Requested Relief

Apple respectfully requests that the Court order each Plaintiff to produce (1) all documents and communications relating to apps, in-app purchases, subscriptions, and any other downloadable content that Plaintiffs both (a) used or accessed on a smartphone, smartwatch, or tablet, and (b) purchased or acquired on either a smartphone, smartwatch, or tablet, or a PC/Mac device through an app marketplace or webstore; and (2) documents and communications related to the software applications on Plaintiffs' smartwatches, including documents sufficient to identify every app each plaintiff downloaded, used, was unable to download, or uninstalled on a smartwatch. Alternatively, and for the reasons set out in Apple's forthcoming response to Plaintiffs' Letter Brief regarding Apple's Second Collective Interrogatory, Apple requests that the Court order Plaintiffs to (1) respond to Apple's Second Collective Interrogatory as written and (2) produce the information requested above as to non-Apple devices only.

Respectfully submitted,
*s/Liza M. Walsh*
Liza M. Walsh