# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE: APPLE INC. SMARTPHONE ANTITRUST LITIGATION | Case No. 2:24-md-3113(JXN)(LDW)<br>MDL 3113<br>Hon. Julien X. Neals, U.S.D.J.<br>Hon. Leda D. Wettre, U.S.M.J. |

**DEFENDANT'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS DIRECTED TO DIRECT IPHONE PURCHASER PLAINTIFFS**

Pursuant to Federal Rule of Civil Procedure 34, Defendant Apple Inc. ("Apple") submits its First Set of Requests for Production of Documents (collectively, the "Requests"; individually, a "Request") to the putative direct iPhone Purchaser Plaintiff Class (the "Direct iPhone Purchaser Plaintiffs"). Each Request is subject to the Definitions and Instructions below.

**DEFINITIONS**

Unless otherwise defined, all words and phrases used herein shall be accorded their usual meaning and shall be interpreted in their common, ordinary sense. All terms otherwise undefined herein are used consistent with their use in the Consolidated Complaint (as defined below), without waiver or admission concerning the accuracy of any such usage. As used in the below Requests and the Definitions and Instructions, the words set forth below shall be defined as follows:

1. "Alleged Conduct" shall mean all (and any component of) the conduct alleged to be unlawful in the Consolidated Complaint. Alleged Conduct includes but is not limited to:

a. Any alleged restrictions that Apple has placed on third-party developers' ability to offer Apps for download in the Apple App Store or in any other App Marketplace;

b. Any alleged restrictions Apple has placed on third-party developers' access to iPhone features and development tools, including APIs and SDKs;

c. Any alleged restrictions Apple has placed on third-party access to Apple's In-App Purchase or alternatives to In-App Purchase;

d. Any alleged restrictions Apple has placed on products, services, Apps, or technology that allegedly facilitate users' ability to switch between iPhone and non-Apple Smartphones, or vice versa, including those described in the Consolidated Complaint as middleware;

e. Any alleged restrictions Apple has placed on interoperability between Smartphones or policies or practices that allegedly make it harder for consumers to switch between competing Smartphones; and

f. Any alleged restrictions Apple has placed on Super Apps; Cloud Streaming Apps; Messaging Apps; Wearables; and Digital Wallets (e.g., Apple Wallet, Apple Pay, and other payment services).

2. "Alleged Smartphone Market" shall be defined as in the Consolidated Complaint, including without limitation in Paragraphs 215 through 218 of the Consolidated Complaint.

3. "Alleged Performance Smartphone Market" shall be defined as in the Consolidated Complaint, including without limitation in Paragraphs 208 through 214 of the Consolidated Complaint.

4. "API" shall mean an application programming interface and shall be defined as in the Consolidated Complaint, including without limitation Paragraph 201 of the Consolidated Complaint.

5. "Apple" shall mean Apple Inc.

6. "App" or "Application" shall mean a native software application offered on Smartphones, tablets, smart TVs, Wearables, gaming consoles, MacBook laptops, Macintosh desktop computers, or Windows-based laptops and stand-alone personal computers that performs specific tasks at the user's request, including without limitation as set out in Paragraphs 200 through 206 of the Consolidated Complaint.

7. "App Marketplace" shall mean any online storefront where Apps are offered for download or purchase, including the Apple App Store, Amazon Appstore, Amazon Underground, Android Market, Aptoide, Blackberry World, Chrome Web Store, Epic Games Store, GetJar, Google Play Store, Microsoft Store, Origin, Samsung Galaxy Store, Steam, Windows Phone Store, Altstore, TutuApp, and online storefronts distributing games and digital content for Xbox, PlayStation, and Nintendo.

8. "App Review" shall mean Apple's or any other Person's processes of reviewing Apps or App updates for potential inclusion on App Marketplaces.

9. "Cloud Streaming App" shall be defined as in the Consolidated Complaint, including in Paragraphs 10 and 97 through 107 of the Consolidated Complaint.

10. "Communication" shall mean any exchange or transmission of words or ideas to another Person or entity, whether accomplished Person to Person, by telephone, in writing, via electronic mail or text message, via social media, or through any other medium, and shall include

discussions, conversations, negotiations, conferences, meetings, speeches, memoranda, letters, correspondence, notes, blogs, postings, statements, and questions.

11. "Digital Wallet" shall be defined as in the Consolidated Complaint, including in Paragraphs 10 and 137 through 153 of the Consolidated Complaint.

12. "Consolidated Complaint" shall mean the Direct iPhone Purchaser Plaintiffs' Consolidated Class Action Complaint filed in the consolidated multidistrict proceeding against Apple in the United States District Court for the District of New Jersey on July 30, 2025 (Case No. 2:24-md-03113, Dkt. No. 87), or any future amended complaints.

13. "Document" shall have the full meaning ascribed to it under Rule 34 and Rule 45 of the Federal Rules of Civil Procedure and shall include Communications; memoranda; records; Reports; books; records and summaries of personal conversations or interviews; diaries; presentations; slide decks; graphs; charts; spreadsheets; diagrams; tables; photographs; recordings; tapes; microfilms; minutes; records and summaries of meetings or conferences; press releases; blog posts; stenographic handwritten or any other notes; work papers; checks, front and back; check vouchers, check stubs, or receipts; tape data sheets or data processing cards or discs; or any other written, recorded, transcribed, punched, taped, filmed, or graphic matter, however produced or reproduced; and any paper or writing of whatever description, including information contained in any computer although not yet printed out. The term "Document" further includes all copies where the copy is not identical to the original.

14. "In-App Purchase" shall mean the purchase of a product, feature, service, or functionality for a fee that occurs within a mobile App.

15. "Including," "included," "includes," and "include" shall not be construed as limiting any Request, and shall mean the same as "including, but not limited to."

16. "Messaging App" shall be defined as in the Consolidated Complaint, including in Paragraphs 10 and 108 through 123 of the Consolidated Complaint, and shall include without limitation Beeper, BlueChat, Discord, Facebook Messenger, Google Messages, Skype, Microsoft Messaging, Signal, Slack, Snapchat, Teams, Telegram, Texts, Viber, WhatsApp, and Apple's Messages App.

17. "Mini-Program" shall be defined as in the Consolidated Complaint, including in Paragraphs 82 through 96 of the Consolidated Complaint.

18. "Performance Smartphone" shall be defined as in the Consolidated Complaint, including in Paragraphs 207 through 214 of the Consolidated Complaint.

19. "Person" shall mean any natural individual, partnership, corporation, company, association, organization, joint venture, government, agency, or entity.

20. "Plaintiffs," "You," and "Your" shall mean the named Plaintiffs representing the purported iPhone Direct Purchaser Class, specifically Shoshi Goldfus, Deanna Siano, James Collins, and Deborah (Daisy) Collins as well as anyone acting on behalf of the named Plaintiffs including present or former agents, representatives, attorneys, investigators, accountants, and any and all Persons acting or purporting to act on behalf of them.

21. "Report" shall mean any reports, research, papers, memoranda, presentations, reviews, statistical compilations, or other analyses.

22. "SDK" shall mean Apple's Software Development Kit.

23. "Smartphone" shall be defined as in the Consolidated Complaint, including in Paragraphs 215 through 218 of the Consolidated Complaint.

24. "Super App" shall be defined as in the Consolidated Complaint, including in Paragraphs 10 and 82 through 96 of the Consolidated Complaint.

25. “Smartwatch” shall be defined as in the Consolidated Complaint, including in Paragraphs 10 and 124 through 136 of the Consolidated Complaint.

26. “Wearable” or “Wearables” shall mean wearable devices with an interactive display and accompanying Apps that let users perform a variety of functions and shall include any “Smartwatch” as defined above.

27. The connectives “and” and “or” shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these Requests all Documents, Communications, materials, or responses that might otherwise be construed to be outside of its scope.

28. The terms “any,” “each,” and “all” are mutually interchangeable and are meant to encompass each other.

29. The terms “concerning,” “reflecting,” “regarding,” “relating to,” and “related to” mean in whole or in part, concerning, reflecting, regarding, related to, relating to, in connection with, involving, supporting, addressing, analyzing, constituting, containing, commenting on, discussing, describing, identifying, referring to, reporting on, stating, dealing with, or in any way pertaining or bearing a logical connection to.

30. The use of the singular form of any word includes the plural and vice versa as necessary to bring within the scope of the Request all responses that might otherwise be construed to be outside of its scope.

31. The use of the feminine form of any word includes the masculine form and vice versa as necessary to bring within the scope of the Request all responses that might otherwise be construed to be outside of its scope.

32. The past tense shall be construed to include the present tense and vice versa as necessary to bring within the scope of the Request all responses that might otherwise be construed to be outside of its scope.

**INSTRUCTIONS**

1. For purposes of interpreting or construing the scope of these Requests, the terms used shall be given the most expansive and inclusive interpretation, unless specifically limited in the Request.

2. All Documents and Communications requested herein must be produced in their entirety, with all attachments and enclosures.

3. Each Plaintiff is instructed to respond individually to each Request, to the extent that Plaintiff possesses any unique, non-duplicative Documents or information responsive to the Request. If multiple Plaintiffs have the same response to any Request, they shall so state and need not offer separate responses.

4. In responding to these Requests, You shall produce all Documents and Communications in Your possession, custody, or control, and all Documents and Communications reasonably available to You, including those in the possession, custody, or control of any Person acting on Your behalf.

5. These Requests shall not be deemed to call for identical MD5 hash duplicates of Documents and Communications. "Identical" means precisely the same in all respects; for example, a Document or Communication with handwritten notes or editing marks shall not be deemed identical to one without such notes or marks. Additionally, for Documents or Communications with attachments, the hash value shall be generated based on the parent/child document grouping. Otherwise identical Documents or Communications with unique family

members are not identical, and both must be produced. You shall produce as a separate Document or Communication any Document and Communication that contains any notation, addition, insertion, or marking of any kind that renders it not entirely identical to a version of that Document or Communication without such marks.

6. In responding to any Request calling for the production of data, logs, application usage history, or other information generated by or stored on a Smartphone or other devices, You shall search for and produce responsive information contained in all available backups of such devices (whether stored locally, such as on a computer, or in the cloud, such as via iCloud, Google Drive, or Samsung Cloud). You are instructed to produce such information even if it is no longer present on Your current active device, and, if necessary to retrieve responsive information, You shall restore such backups to a device or utilize forensic tools to access the data.

7. If there are no Documents or Communications responsive to a category in these Requests, You shall so state in writing.

8. If You object to a portion of any Request, You shall state the basis for Your objection with specificity and respond to all parts of the Request to which You do not object.

9. If You encounter any ambiguity in the Requests, in a definition, or in an instruction relevant to the Requests, explain what You find to be ambiguous and what construction You used in providing Your response. If You contend that You do not understand the definition of any term or phrase used in a Request, You shall explain in detail what it is that You do not understand about the term or phrase at issue, and You shall respond to that part of the Request that You do understand.

10. If any requested Document or Communication is withheld on the basis of any claim of privilege, You must set forth the information necessary for Apple to ascertain whether the

privilege properly applies, including all information identified in Paragraph VI.3 of the Proposed Stipulation and Order Governing Electronically Stored Information and Hard Copy Documents, ECF No. 100-2, and any other applicable orders.

11. If any portion of any Document or Communication responsive to these Requests is withheld under claim of privilege, all non-privileged portions must be produced with the portion(s) claimed to be privileged redacted and logged in a privilege log pursuant to the preceding instructions.

12. These Requests are continuing and require further and supplemental production if additional Documents or Communications are received, generated, or discovered after the time of the original production. If after responding to these Requests, You obtain or become aware of any additional Documents or Communications that are directly or indirectly responsive to any part of any of these Requests, You shall promptly produce any additional responsive Documents or Communications.

13. Apple serves these Requests without prejudice to its right to serve additional requests for production of Documents and Communications or other requests.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

**REQUEST FOR PRODUCTION NO. 1:**

All Documents, data, and Communications relating to the Alleged Conduct, including Your allegations concerning iPhone, iPad, Apple Watch, App Store, App Review, iOS, WatchOS, iPadOS, In-App Purchase and other Apple products, services, software and Applications.

**REQUEST FOR PRODUCTION NO. 2:**

All Documents, data, and Communications relating to Your allegations regarding Apple's policies and practices regarding access to APIs.

**REQUEST FOR PRODUCTION NO. 3:**

All Documents, data, and Communications relating to Your allegations regarding Super Apps, including Your allegations in Paragraphs 10 and 82 through 96 of the Consolidated Complaint.

**REQUEST FOR PRODUCTION NO. 4:**

All Documents, data, and Communications relating to Your allegations regarding Cloud Streaming Apps, including Your allegations in Paragraphs 10 and 97 through 107 of the Consolidated Complaint.

**REQUEST FOR PRODUCTION NO. 5:**

All Documents, data, and Communications relating to Your allegations regarding Messaging Apps, including Your allegations in Paragraphs 10 and 108 through 123 of the Consolidated Complaint.

**REQUEST FOR PRODUCTION NO. 6:**

All Documents, data, and Communications relating to Your allegations regarding Wearables, including Your allegations in Paragraphs 10 and 124 through 136 of the Consolidated Complaint.

**REQUEST FOR PRODUCTION NO. 7:**

All Documents, data, and Communications relating to Your allegations regarding Digital Wallets, including Your allegations in Paragraphs 10 and 137 through 153 of the Consolidated Complaint.

**REQUEST FOR PRODUCTION NO. 8:**

All Documents, data, and Communications relating to Your allegations regarding Apple's motivations and intent with respect to the Alleged Conduct, including Your allegations that the Alleged Conduct is motivated by Apple's intent to (a) deter users switching from iPhone to a non-iPhone device; (b) inhibit the development of cross-platform or multi-platform Apps or services; and (c) harm or prevent competition in any alleged markets, including the Alleged Smartphone Market, Alleged Performance Smartphone Market, and the relevant aftermarkets.

**REQUEST FOR PRODUCTION NO. 9:**

All Documents, data, and Communications relating to any evaluations or assessments of privacy, security, safety, or user experience of iPhone or the App Store or of other products in the Alleged Smartphone Market, Alleged Performance Smartphone Market, or App Marketplaces.

**REQUEST FOR PRODUCTION NO. 10:**

All Documents, data, and Communications relating to Your allegations that Apple's justifications for its policies or practices are pretextual, including any justifications related to privacy, security, safety, user experience, or intellectual property ownership.

**REQUEST FOR PRODUCTION NO. 11:**

All Documents, data, and Communications relating to Your allegations that You or any putative class members were harmed by Apple's Alleged Conduct.

**REQUEST FOR PRODUCTION NO. 12:**

All Documents, data, and Communications relating to Your allegations in Paragraph 1 of the Consolidated Complaint that "millions of consumers" have "overpaid for iPhones they purchased from Apple, missed out on the innovation and improved user experiences that competition would have made possible, and face ongoing harm."

**REQUEST FOR PRODUCTION NO. 13:**

All Documents, data, and Communications relating to Your allegations in Paragraph 8 of the Consolidated Complaint that "Apple reduces competition in the markets for performance smartphones and smartphones generally" by "delaying, degrading, or outright blocking technologies."

**REQUEST FOR PRODUCTION NO. 14:**

All Documents, data, and Communications relating to Your allegations in Paragraph 10 of the Consolidated Complaint that "Apple repeatedly chooses to make its products worse for consumers to prevent competition from emerging."

**REQUEST FOR PRODUCTION NO. 15:**

All Documents, data, and Communications relating to Your allegations in Paragraph 12 of the Consolidated Complaint that "Apple deploys privacy and security justifications as an elastic shield."

**REQUEST FOR PRODUCTION NO. 16:**

All Documents, data, and Communications relating to Your allegations in Paragraph 14 of the Consolidated Complaint that "Apple inflates the price for buying and using iPhones."

**REQUEST FOR PRODUCTION NO. 17:**

All Documents, data, and Communications relating to Your allegations in Paragraph 25 of the Consolidated Complaint that "Apple's monopolization of the performance smartphone and smartphone markets [] helps it cultivate the 'walled garden' that sustains its broad extraction of monopoly rents."

**REQUEST FOR PRODUCTION NO. 18:**

All Documents, data, and Communications relating to Your allegations in Paragraph 26 of the Consolidated Complaint that "locking up key user groups allows Apple to capture greater spending on iPhone-related products and services, realize higher margins per user as compared to its smartphone rivals, and exercise greater control over developers and other smartphone ecosystem participants."

**REQUEST FOR PRODUCTION NO. 19:**

All Documents, data, and Communications relating to Your allegations in Paragraph 45 of the Consolidated Complaint that Apple's market share in the Alleged Performance Smartphone Market is "over 70 percent"; that Apple's market share in the Alleged Smartphone Market is "over 65 percent"; and that Apple's alleged market shares "likely understate its monopoly power today."

**REQUEST FOR PRODUCTION NO. 20:**

All Documents, data, and Communications relating to Your allegations in Paragraph 46 of the Consolidated Complaint that Apple "willingly sacrifices the short-term benefits it would gain

from improved products and services developed by third parties when necessary to maintain its monopoly."

**REQUEST FOR PRODUCTION NO. 21:**

All Documents, data, and Communications relating to Your allegations in Paragraph 49 of the Consolidated Complaint that developers "cannot avoid Apple's control . . . by making web apps" and that Apple "can [] control the functionality of web apps."

**REQUEST FOR PRODUCTION NO. 22:**

All Documents, data, and Communications relating to Your allegations in Paragraph 50 of the Consolidated Complaint that "alternative app stores" "would benefit developers and users" and that Apple "allows certain enterprise and public sector customers to offer versions of app stores with more curated apps to better protect privacy and security."

**REQUEST FOR PRODUCTION NO. 23:**

All Documents, data, and Communications relating to Your allegations in Paragraph 64 of the Consolidated Complaint that "[w]hen a third-party developer for the iPhone creates a valuable new feature, consumers benefit and consumer demand goes up for Apple's products."

**REQUEST FOR PRODUCTION NO. 24:**

All Documents, data, and Communications relating to Your allegations in Paragraph 53 of the Consolidated Complaint that "if an app includes functionality that Apple does not like, Apple can and does exercise its discretion to simply block the app from the App Store."

**REQUEST FOR PRODUCTION NO. 25:**

All Documents, data, and Communications relating to Your allegations in Paragraph 54 of the Consolidated Complaint that Apple "restricts competitor apps in ways it does not restrict itself."

**REQUEST FOR PRODUCTION NO. 26:**

All Documents, data, and Communications relating to Your allegations in Paragraph 55 of the Consolidated Complaint that "neither app developers nor iPhone users can benefit from lower cost or higher quality means of distributing apps or purchasing and providing digital products and services."

**REQUEST FOR PRODUCTION NO. 27:**

All Documents, data, and Communications relating to Your allegations in Paragraph 60 of the Consolidated Complaint that Apple "pilfers ideas developed by others, claims them as its own and then boots the inventors from its App Store."

**REQUEST FOR PRODUCTION NO. 28:**

All Documents, data, and Communications relating to Your allegations in Paragraph 66 of the Consolidated Complaint that "[u]ntil the September 2020 release of iOS 14, Apple did not allow consumers to select third party web browsers as a default. This was unique to iOS. No other mobile device operating system had a similar limitation."

**REQUEST FOR PRODUCTION NO. 29:**

All Documents, data, and Communications relating to Your allegations in Paragraph 67 of the Consolidated Complaint that "[a]mong many users of Siri, it is regarded as stunningly deficient, compared, for example, to Amazon's Alexa."

**REQUEST FOR PRODUCTION NO. 30:**

All Documents, data, and Communications relating to Your allegations in Paragraph 68 that "[m]arket participants" have noted that "because Apple requires the use of WebKit . . . WebKit has become slower to innovate and adopt industry standards."

**REQUEST FOR PRODUCTION NO. 31:**

All Documents, data, and Communications relating to Your allegations in Paragraph 70 that "Apple frequently takes other companies' innovative features, adds those ideas to Apple's own software products without permission, and then either ejects the original third-party application from the App Store . . . or causes the third-party software developer to close its doors entirely."

**REQUEST FOR PRODUCTION NO. 32:**

All Documents, data, and Communications relating to Your allegations that Apple has voluntarily sacrificed, foregone, or forfeited revenue or profits (whether short-term or long-term) in any alleged markets, including the Alleged Smartphone Market, Alleged Performance Smartphone Market, and the relevant aftermarkets.

**REQUEST FOR PRODUCTION NO. 33:**

All Documents, data, and Communications relating to Your allegations in Paragraphs 75 through 77 of the Consolidated Complaint that Apple "enforce[s] rules and contractual restrictions that stop or delay developers from innovating in ways that threaten Apple's power"; "drives iPhone users away from products and services that compete with or threaten Apple"; and "extract[s] monopoly rents from third parties in a variety of ways, including app fees and revenue-sharing requirements."

**REQUEST FOR PRODUCTION NO. 34:**

All Documents, data, and Communications relating to Your allegations that Apple has slowed or restricted its own innovation or technological advancement, including as alleged in Paragraphs 15 and 78 of the Consolidated Complaint.

**REQUEST FOR PRODUCTION NO. 35:**

All Documents, data, and Communications relating to Your allegations in Paragraph 81 of the Consolidated Complaint that "Apple has intentionally designed the iPhone to unnecessarily limit or degrade interoperability with other platforms."

**REQUEST FOR PRODUCTION NO. 36:**

All Documents, data, and Communications relating to Your allegations in Paragraph 86 of the Consolidated Complaint that "[a]s users interact with a super app, they rely less on the smartphone's proprietary software and more on the app itself" and "[e]ventually . . . become more willing to choose a different smartphone because they can access the same interface, apps, and content they desire on any smartphone where the super app is also present."

**REQUEST FOR PRODUCTION NO. 37:**

All Documents, data, and Communications relating to Your allegations in Paragraph 89 of the Consolidated Complaint that the Alleged Conduct "disincentivized investments in mini program development and caused U.S. companies to abandon or limit support for the technology in the United States."

**REQUEST FOR PRODUCTION NO. 38:**

All Documents, data, and Communications relating to Your allegations in Paragraph 103 of the Consolidated Complaint that "[h]aving to submit individual cloud streaming games for review by Apple increased the cost of releasing games on the iPhone and limited the number of games a developer could make available to iPhone users."

**<u>REQUEST FOR PRODUCTION NO. 39:</u>**

All Documents, data, and Communications relating to Your allegations in Paragraph 105 of the Consolidated Complaint that Apple is "imposing a tariff on apps sold on the Apple App Store through non-Apple payment programs."

**<u>REQUEST FOR PRODUCTION NO. 40:</u>**

All Documents, data, and Communications relating to Your allegations in Paragraph 106 of the Consolidated Complaint that Apple's "rules and restrictions effectively force developers to create a separate iOS-specific version of their app instead of creating a single cloud-based version that is compatible with several operating systems, including iOS."

**<u>REQUEST FOR PRODUCTION NO. 41:</u>**

All Documents, data, and Communications relating to Your allegations in Paragraph 116 of the Consolidated Complaint that "[i]f third-party messaging apps could incorporate these features, they would be more valuable and attractive to users, and the iPhone would be more valuable to Apple in the short term."

**<u>REQUEST FOR PRODUCTION NO. 42:</u>**

All Documents, data, and Communications relating to Your allegations in Paragraph 120 of the Consolidated Complaint that "[t]his social pressure reinforces switching costs and drives users to continue buying iPhones."

**<u>REQUEST FOR PRODUCTION NO. 43:</u>**

All Documents, data, and Communications relating to Your allegations in Paragraph 120 of the Consolidated Complaint that "Apple affirmatively undermines the quality of rival smartphones."

**REQUEST FOR PRODUCTION NO. 44:**

All Documents, data, and Communications relating to Your allegations in Paragraph 123 of the Consolidated Complaint that Apple "blocked a third-party developer from fixing the broken cross-platform messaging experience in Apple Messages and providing end-to-end encryption for messages between Apple Messages and Android users."

**REQUEST FOR PRODUCTION NO. 45:**

All Documents, data, and Communications relating to Your allegations in Paragraph 124 of the Consolidated Complaint that Apple "copied the idea of a smartwatch from third-party developers."

**REQUEST FOR PRODUCTION NO. 46:**

All Documents, data, and Communications relating to Your allegations in Paragraph 127 of the Consolidated Complaint that "as users interact with a smartwatch . . . users rely less on a smartphone's proprietary software and more on the smartwatch itself."

**REQUEST FOR PRODUCTION NO. 47:**

All Documents, data, and Communications relating to Your allegations in Paragraph 131 of the Consolidated Complaint that "Apple uses its control of the iPhone, including its technical and contractual control of critical APIs, to degrade the functionality of third-party cross-platform smartwatches."

**REQUEST FOR PRODUCTION NO. 48:**

All Documents, data, and Communications relating to Your allegations in Paragraph 142 of the Consolidated Complaint that "[c]ross-platform digital wallets would offer an easier, more seamless, and potentially more secure way for users to switch from the iPhone to another smartphone."

**REQUEST FOR PRODUCTION NO. 49:**

All Documents, data, and Communications relating to Your allegations in Paragraph 146 of the Consolidated Complaint that "Apple's fees are a significant expense for issuing banks and cut into funding for features and benefits that banks might otherwise offer smartphone users."

**REQUEST FOR PRODUCTION NO. 50:**

All Documents, data, and Communications relating to Your allegations in Paragraph 149 of the Consolidated Complaint that "Apple further impeded the adoption of digital wallets by restricting others from offering the same ability to authenticate digital payment options on online checkout pages."

**REQUEST FOR PRODUCTION NO. 51:**

All Documents, data, and Communications relating to Your allegations in Paragraph 156 of the Consolidated Complaint that Apple "has impeded cross-platform cloud-storage apps in order to steer iPhone users into iCloud."

**REQUEST FOR PRODUCTION NO. 52:**

All Documents, data, and Communications relating to Your allegations in Paragraph 157 of the Consolidated Complaint that Apple's "subscription services and other ancillary fees are a significant part of Apple's net revenue."

**REQUEST FOR PRODUCTION NO. 53:**

All Documents, data, and Communications relating to Your allegations in Paragraph 158 of the Consolidated Complaint that "Apple takes on outsize importance and control in the creative economy, which may diminish incentives to fund, make, and distribute artistic expression."

**REQUEST FOR PRODUCTION NO. 54:**

All Documents, data, and Communications relating to Your allegations in Paragraph 160 of the Consolidated Complaint that Apple "has also attempted to undermine cross-platform technologies like digital car keys in ways that benefit Apple but harm consumers."

**REQUEST FOR PRODUCTION NO. 55:**

All Documents, data, and Communications relating to Your allegations in Paragraph 161 of the Consolidated Complaint that "Apple's threatened dominance over the automotive industry goes well beyond the Apple Wallet and . . . extends to CarPlay."

**REQUEST FOR PRODUCTION NO. 56:**

All Documents, data, and Communications relating to Your allegations Apple "used anticompetitive techniques" to "build a 'moat' around the iPhone that would ensure monopoly profits" as alleged in Paragraphs 1, 79–80, 128, 131, and 154–162 of the Consolidated Complaint.

**REQUEST FOR PRODUCTION NO. 57:**

All Documents, data, and Communications relating to Your allegations that Apple uses, or will use, a "playbook to maintain its monopoly" as alleged in Paragraphs 154–162, and 175–179 of the Consolidated Complaint.

**REQUEST FOR PRODUCTION NO. 58:**

All Documents, data, and Communications relating to Your allegations in Paragraph 163 of the Consolidated Complaint that "Apple extracts extraordinary profits."

**REQUEST FOR PRODUCTION NO. 59:**

All Documents, data, and Communications relating to Your allegations in Paragraph 163 of the Consolidated Complaint that Apple's Alleged Conduct "leaves all smartphone users worse

off, with fewer choices, higher prices and fees, lower quality smartphones, apps, and accessories, and less innovation from Apple and others."

**REQUEST FOR PRODUCTION NO. 60:**

All Documents, data, and Communications relating to Your allegations in Paragraph 165 of the Consolidated Complaint that Apple has "increased the technical, behavioral, monetary, and other costs of switching from an iPhone to an alternative smartphone."

**REQUEST FOR PRODUCTION NO. 61:**

All Documents, data, and Communications relating to Your allegations in Paragraph 166 of the Consolidated Complaint that Apple has "delayed or suppressed the emergence of cross-platform technologies."

**REQUEST FOR PRODUCTION NO. 62:**

All Documents, data, and Communications relating to Your allegations in Paragraph 167 of the Consolidated Complaint that "third-party digital wallets would reduce Apple's ability to charge banks high fees . . . which ultimately cost consumers through higher prices or other reductions in quality."

**REQUEST FOR PRODUCTION NO. 63:**

All Documents, data, and Communications relating to Your allegations in Paragraph 166 through 167 of the Consolidated Complaint that "tap-to-pay digital wallet products and services do not exist today because of Apple."

**REQUEST FOR PRODUCTION NO. 64:**

All Documents, data, and Communications relating to Your allegations in Paragraph 170 of the Consolidated Complaint that "Apple's documents and conduct show that Apple is motivated

by the anticompetitive purpose of building or maintaining monopoly power in the relevant markets."

**REQUEST FOR PRODUCTION NO. 65:**

All Documents, data, and Communications relating to Your allegations in Paragraph 170 of the Consolidated Complaint that "Apple sacrificed substantial revenues it could have earned from super apps, mini programs, cloud streaming apps, and other third-party apps and accessories" and has "used its control over app distribution and app creation to selectively undermine cross-platform technologies, not because this helps protect users but because it helps protect Apple."

**REQUEST FOR PRODUCTION NO. 66:**

All Documents, data, and Communications relating to Your allegations in Paragraph 172 of the Consolidated Complaint that "Apple's smartphone monopoly gives it many levers to maintain its power even in the face of interventions focused on eliminating or disciplining specific anticompetitive practices."

**REQUEST FOR PRODUCTION NO. 67:**

All Documents, data, and Communications relating to Your allegations in Paragraph 168 of the Consolidated Complaint that "several developers have abandoned plans to develop super apps and cloud-based gaming apps even after making substantial investments in bringing them to market."

**REQUEST FOR PRODUCTION NO. 68:**

All Documents, data, and Communications relating to Your allegations in Paragraph 173 of the Consolidated Complaint that the iPhone prices "have increased drastically" and that "those price increases reflect Apple's acquisition and maintenance of monopoly power, and . . . monies that should have remained in purchasers' pockets but instead went to Apple's coffers."

**REQUEST FOR PRODUCTION NO. 69:**

All Documents, data, and Communications relating to Your allegations in Paragraph 176 of the Consolidated Complaint that Apple's "countless products and services," provide "future avenues for Apple to engage in anticompetitive conduct and the ability to circumvent remedies."

**REQUEST FOR PRODUCTION NO. 70:**

All Documents, data, and Communications relating to Your allegations in Paragraph 177 of the Consolidated Complaint that Apple's conduct "effects the flow of speech."

**REQUEST FOR PRODUCTION NO. 71:**

All Documents, data, and Communications relating to Your allegations in Paragraph 178 of the Consolidated Complaint that Apple has "attempted to use its monopoly to collect user data and stifle innovation in the automotive industry."

**REQUEST FOR PRODUCTION NO. 72:**

All Documents, data, and Communications relating to Your allegations in Paragraph 179 of the Consolidated Complaint that "Apple's monopolization of smartphone markets gives it tremendous power over the lives of millions of Americans."

**REQUEST FOR PRODUCTION NO. 73:**

All Documents, data, and Communications relating to Your allegations in Paragraph 180 of the Consolidated Complaint that there are "no valid, procompetitive benefits of Apple's exclusionary conduct that would outweigh its anticompetitive effects."

**REQUEST FOR PRODUCTION NO. 74:**

All Documents, data, and Communications relating to Your allegations in Paragraph 181 of the Consolidated Complaint that "Apple's control over app distribution and creation on the iPhone is substantially more restrictive than necessary to protect user privacy and security."

**REQUEST FOR PRODUCTION NO. 75:**

All Documents, data, and Communications relating to Your allegations in Paragraphs 182 and 183 of the Consolidated Complaint that "many alternative technologies that Apple's conduct suppresses would enhance users security and privacy" and that "Apple is . . . willing to make the iPhone less secure and less private if it helps maintain its monopoly power."

**REQUEST FOR PRODUCTION NO. 76:**

All Documents, data, and Communications relating to Your allegations in Paragraph 186 of the Consolidated Complaint that Apple "selectively" enforces its rules and contractual restrictions for App distribution and creation.

**REQUEST FOR PRODUCTION NO. 77:**

All Documents, data, and Communications relating to Your allegations in Paragraph 188 of the Consolidated Complaint that Apple "monitors a user's data for its own purposes even when it promises not to do so."

**REQUEST FOR PRODUCTION NO. 78:**

All Documents, data, and Communications relating to Your allegations in Paragraph 203 of the Consolidated Complaint that "[m]ost app developers do not view Android as a substitute for iOS or iOS as a substitute for Android."

**REQUEST FOR PRODUCTION NO. 79:**

All Documents, data, and Communications relating to Your allegations in Paragraph 222 of the Consolidated Complaint that "Apple has monopoly power in the smartphone and performance smartphone markets."

**REQUEST FOR PRODUCTION NO. 80:**

All Documents, data, and Communications relating to Your allegations in Paragraph 225 of the Consolidated Complaint that "any theoretical cross-elasticity of demand between iPhones and other smartphones does not suffice to prevent Apple from imposing monopolistic prices on iPhone purchasers."

**REQUEST FOR PRODUCTION NO. 81:**

All Documents, data, and Communications relating to Your allegations concerning "user multi-homing," including Your allegations in Paragraph 226 of the Consolidated Complaint that "the lack of multi-homing among users necessitates multi-homing among developers."

**REQUEST FOR PRODUCTION NO. 82:**

All Documents, data, and Communications relating to Your allegations in Paragraphs 228 through 235 of the Consolidated Complaint that there are "substantial barriers to entry and expansion" in the Alleged Performance Smartphone and Alleged Smartphone Markets.

**REQUEST FOR PRODUCTION NO. 83:**

All Documents, data, and Communications relating to Your allegations in Paragraph 229 of the Consolidated Complaint that "rival smartphones must . . . overcome the substantial network effects generated by interactions between users, developers, and others who interact with the iPhone."

**REQUEST FOR PRODUCTION NO. 84:**

All Documents, data, and Communications relating to Your allegations in Paragraph 230 of the Consolidated Complaint that "Apple's iPhone platform is protected by . . . strong network and scale effects and high switching costs and frictions."

**REQUEST FOR PRODUCTION NO. 85:**

All Documents, data, and Communications relating to Your allegations in Paragraph 231 of the Consolidated Complaint that "[m]any prominent, well-financed companies have tried and failed to successfully enter the relevant markets [such as Amazon, Microsoft, HTC, and LG]" and "only Samsung and Google remain as meaningful competitors in the U.S. performance smartphone market."

**REQUEST FOR PRODUCTION NO. 86:**

All Documents, data, and Communications relating to Your allegations in Paragraph 232 of the Consolidated Complaint that Apple "can and does profitably forego innovation without fear of losing customers to competitors."

**REQUEST FOR PRODUCTION NO. 87:**

All Documents, data, and Communications relating to Your allegations regarding the existence of any "lock[] in" scheme, including in Paragraph 225 of the Consolidated Complaint that "existing iPhone users get increasingly locked in," and that "the next generation of users will similarly become locked into Apple's ecosystem."

**REQUEST FOR PRODUCTION NO. 88:**

All Documents, data, and Communications relating to Your allegations in Paragraph 233 of the Consolidated Complaint that "Apple's per-unit smartphone profit margins are far more than its next most profitable rival."

**REQUEST FOR PRODUCTION NO. 89:**

All Documents, data, and Communications relating to Your allegations in Paragraph 233 of the Consolidated Complaint that "Apple charges carriers considerably more than its rivals to

buy and resell its smartphones to the public and employs contract clauses that may impede the ability of carriers to promote rival smartphones."

**REQUEST FOR PRODUCTION NO. 90:**

All Documents, data, and Communications relating to Your allegations in Paragraph 264 of the Consolidated Complaint that "Apple's interrelated and interdependent actions have had a cumulative and self-reinforcing effect that has harmed competition and the competitive process."

**REQUEST FOR PRODUCTION NO. 91:**

All Documents, data, and Communications relating to Your allegations in Paragraph 288 of the Consolidated Complaint that "Plaintiffs . . . paid supra-competitive and artificially inflated prices for iPhones" and "lost money or property as a result of Apple's unfair competition."

**REQUEST FOR PRODUCTION NO. 92:**

All Documents, data, and Communications relating to Your allegations in Paragraph 291 of the Consolidated Complaint that Apple's conduct is "immoral, unethical, oppressive, and unscrupulous."

**REQUEST FOR PRODUCTION NO. 93:**

All Documents, data, and Communications relating to Your allegations in Paragraph 293 of the Consolidated Complaint that "Apple has been unjustly enriched."

**REQUEST FOR PRODUCTION NO. 94:**

All Documents, data, and Communications relating to Your allegations in Paragraph 294 of the Consolidated Complaint that "there is no indication that Apple will not continue such activity into the future."

**REQUEST FOR PRODUCTION NO. 95:**

All Documents, data, and Communications relating to the effects that Apple's Alleged Conduct has on consumer behavior, including its effects with respect to Super Apps, Cloud Streaming Apps, Messaging Apps, Wearables, and Digital Wallets.

**REQUEST FOR PRODUCTION NO. 96:**

All Documents, data, and Communications relating to Your definitions and any market shares of any participants in any alleged markets, including any analyses, reports, studies, surveys, or data You relied upon in defining or calculating market shares for any alleged markets, including the Alleged Smartphone Market, Alleged Performance Smartphone Market, and the relevant aftermarkets.

**REQUEST FOR PRODUCTION NO. 97:**

All Documents, data, and Communications relating to Your allegations that two economically distinct alleged markets exist for "Smartphones" and "Performance Smartphones," including all Documents, data, and Communications showing the similarities and differences between the Alleged Smartphone Market and Alleged Performance Smartphone Market.

**REQUEST FOR PRODUCTION NO. 98:**

All Documents, data, and Communications relating to Your allegations of aftermarkets, including Documents regarding the definition of any relevant aftermarket (including for Super Apps, Cloud Streaming Apps, Messaging Apps, Smartwatches, and Digital Wallets), the identity of included products, competitors and market shares, associated foremarkets, geographic market scope and the economic relationship between any such aftermarket and the Alleged Smartphone Market and Alleged Performance Smartphone Market.

**REQUEST FOR PRODUCTION NO. 99:**

All Documents, data, and Communications relating to Your allegations that the United States is the relevant geographic scope for the Alleged Smartphone Market and Alleged Performance Smartphone Market.

**REQUEST FOR PRODUCTION NO. 100:**

All Documents, data, and Communications relating to the market shares of Apple or any other competitors in the Alleged Smartphone Market and Alleged Performance Smartphone Market.

**REQUEST FOR PRODUCTION NO. 101:**

All Documents, data, and Communications, including any studies, Reports, or other analyses, relating to customers' Smartphone or Performance Smartphone purchasing decisions in the United States, customer satisfaction with iPhone or other Smartphone purchases or purchasing decisions, or customers' decisions to switch or not switch between iPhone and other Smartphones or Performance Smartphone devices, and vice versa.

**REQUEST FOR PRODUCTION NO. 102:**

All Documents, data, and Communications relating to Your allegations that Apple's Alleged Conduct affects consumers' purchasing decisions in the Alleged Smartphone Market, Alleged Performance Smartphone Market, and the relevant aftermarkets.

**REQUEST FOR PRODUCTION NO. 103:**

All Documents, data, and Communications relating to competition for and among Smartphones and Performance Smartphones.

**REQUEST FOR PRODUCTION NO. 104:**

All Documents, data, and Communications relating to Your exposure to any cyber-threats, security risks, or malicious activity affecting Your personal devices or accounts, demonstrating the frequency and nature of the digital threats You face. This includes Documents or Communications relating to: (a) attempted or successful intrusions, including notifications of "suspicious login attempts," "unrecognized devices," or password reset requests You did not initiate; (b) social engineering or phishing attempts targeted at You, such as malicious text messages, fraudulent emails, or scam calls soliciting Your personal data; and (c) Your installation or use of third-party security tools (e.g., antivirus software, spam filter, or identity theft monitoring services) to mitigate these risks.

**REQUEST FOR PRODUCTION NO. 105:**

All Documents, data, and Communications relating to the effect of encryption of data and communication on preventing cyberattacks or cyber-threats with respect to Smartphones or Performance Smartphones.

**REQUEST FOR PRODUCTION NO. 106:**

All Documents, data, and Communications comparing, evaluating, or analyzing the price, affordability, or "value for money" of iPhones versus Smartphones offered by other manufacturers (such as Samsung, Google, Huawei, Lenovo, Motorola, or Xiaomi), including the "out-of-pocket" or "net" acquisition cost to You after accounting for any carrier subsidies, device installment plans, trade-in credits, or wireless service contracts.

**REQUEST FOR PRODUCTION NO. 107:**

All Documents, data, and Communications relating to concerns about the use of Smartphones running on the Android operating system or using App Marketplaces other than the App Store, including concerns regarding privacy, security, reliability or interoperability.

**REQUEST FOR PRODUCTION NO. 108:**

All Documents, data, and Communications exchanged with any Plaintiff, a State Government, the Federal Government, or any agency thereof, that relate to any of the allegations included in the Consolidated Complaint.

**REQUEST FOR PRODUCTION NO. 109:**

All Documents, data, and Communications exchanged between You and any third party relating to any investigation by a State Government, the Federal Government, any agency thereof, or any foreign regulator concerning the Alleged Conduct.

**REQUEST FOR PRODUCTION NO. 110:**

All Documents, data, and Communications exchanged between You and any third party concerning the Alleged Conduct, specifically including communications with any lobbying firms, public relations agencies, strategy consultants, or communications firms, as well as any competitors of Apple (such as Microsoft Corporation) or any representatives, affiliates, or members of the Coalition for App Fairness (including Epic Games, Spotify, or Match Group).

**REQUEST FOR PRODUCTION NO. 111:**

All Documents relating to Your purchase, acquisition, ownership, or lease of any Smartphones (including both iPhone and non-Apple devices). This request includes any transactional records (such as receipts, invoices, order confirmation, wireless service agreements,

carrier installment plans, purchase agreements, financing agreements, or order histories) or any other Documents relating to, for each device:

1. the date of acquisition;
2. the specific price paid (if any);
3. the method and source of any payment (including credit cards, rewards cards, third-party financing, gift cards, or cash);
4. any goods or services purchased in connection with or bundled with the device (including any warranties, extended coverage or insurance, streaming or content services, or subscription services);
5. the financial terms of the sale, including the value of any discounts, rebates, or incentives applied before or after the purchase (such as trade-in credits, carrier subsidies, loyalty rewards program points, cashback earnings, employer/student discounts, credit card merchant offers, any other promotional offers or other non-cash consideration);
6. the manner in which You acquired the device (e.g., direct purchase from the device's manufacturer, purchase from a third-party retailer, purchase from a wireless carrier, purchase on a peer-to-peer marketplace, purchase on a business-to-consumer marketplace, purchase from an individual, receipt as a gift, trade-in, etc.);
7. the identity of the vendor or seller from whom it was purchased;
8. whether the device was new, used, or refurbished at the time of acquisition; and
9. whether you still own the device, and if not, the manner and date of disposition of the device.

**REQUEST FOR PRODUCTION NO. 112:**

All Documents relating to Your purchase, acquisition, ownership, or lease of any non-iPhone Apple products, including iPad, Mac (e.g., MacBook Air, MacBook Pro, iMac, Mac mini), Apple Watch, AirPods (including AirPods Pro and AirPods Max), HomePod, Apple TV, or AirTags. This Request includes transactional records (such as receipts, invoices, order confirmation, wireless service agreements, carrier installment plans, purchase agreements, financing agreements, or order histories) or any other Documents relating to, for each device:

1. the date of acquisition;
2. the specific price paid (if any);
3. the method and source of any payment (including credit cards, rewards cards, third-party financing, gift cards, or cash);
4. any goods or services purchased in connection with or bundled with the device (including any warranties, extended coverage or insurance, streaming or content services, or subscription services);
5. the financial terms of the sale, including the value of any discounts, rebates, or incentives applied before or after the purchase (such as trade-in credits, carrier subsidies, loyalty rewards program points, cashback earnings, employer/student discounts, credit card merchant offers, any other promotional offers or other non-cash consideration);
6. the manner in which You acquired the device (e.g., direct purchase from the device's manufacturer, purchase from a third-party retailer, purchase from a wireless carrier, purchase on a peer-to-peer marketplace, purchase on a business-to-consumer marketplace, purchase from an individual, receipt as a gift, trade-in, etc.);

7. the identity of the vendor or seller from whom it was purchased;
8. whether the device was new, used, or refurbished at the time of acquisition; and
9. whether you still own the device, and if not, the manner and date of disposition of the device.

**REQUEST FOR PRODUCTION NO. 113:**

All Documents related to Your purchase, acquisition, ownership, or lease of any non-Apple computing or gaming devices (excluding Smartphones), including: (a) Android-based tablets; (b) personal computers (Windows, Chrome OS, or Linux); and (c) dedicated gaming consoles or devices (e.g., Nintendo, PlayStation, Xbox, or Steam Deck). This Request specifically includes transactional records (such as receipts, invoices, order confirmation, wireless service agreements, carrier installment plans, purchase agreements, financing agreements, or order histories) or any other Documents relating to, for each device:

1. the date of acquisition;
2. the specific price paid (if any);
3. the method and source of any payment (including credit cards, rewards cards, third-party financing, gift cards, or cash);
4. any goods or services purchased in connection with or bundled with the device (including any warranties, extended coverage or insurance, streaming or content services, or subscription services);
5. the financial terms of the sale, including the value of any discounts, rebates, or incentives applied before or after the purchase (such as trade-in credits, carrier subsidies, loyalty rewards program points, cashback earnings, employer/student

discounts, credit card merchant offers, any other promotional offers or other non-cash consideration);

6. the manner in which You acquired the device (e.g., direct purchase from the device's manufacturer, purchase from a third-party retailer, purchase from a wireless carrier, purchase on a peer-to-peer marketplace, purchase on a business-to-consumer marketplace, purchase from an individual, receipt as a gift, trade-in, etc.);
7. the identity of the vendor or seller from whom it was purchased;
8. whether the device was new, used, or refurbished at the time of acquisition; and
9. whether you still own the device, and if not, the manner and date of disposition of the device.

**REQUEST FOR PRODUCTION NO. 114:**

All Documents related to any terms, conditions, or agreements entered into between You and Apple.

**REQUEST FOR PRODUCTION NO. 115:**

All Documents, data, Communications relating to Your consideration, comparison, or selection of any Smartphone or Performance Smartphone (whether or not an Apple device), including (a) the specific product features, functions, or characteristics You prioritized in a purchasing decision; (b) Your opinions on the quality, design, security, or experience of different Smartphones; and (c) any product review, pro-and-con lists, or other comparisons You created or consulted.

**REQUEST FOR PRODUCTION NO. 116:**

All Documents and Communications relating to Your use of or experience with any Apple services or features, including iMessage, FaceTime, iCloud, AirDrop, Apple Wallet, or CarPlay.

**REQUEST FOR PRODUCTION NO. 117:**

All Documents and Communications relating to Your use of or subscription to non-Apple cloud storage services, including Google Photos, Google Drive, Dropbox, Microsoft OneDrive, or Amazon Photos.

**REQUEST FOR PRODUCTION NO. 118:**

All Documents, data, and Communications relating to any instance in which You sought, attempted, or desired to download an application or download or unlock digital content or features that were unavailable, blocked, or removed from the Apple App Store, including (a) any search queries or browsing history relating to attempts to find Apps not hosted on the App Store; (b) complaints or feedback by you to Apple, any App developers, or on social media regarding the inability to access specific apps or content through the App Store; and (c) Your use of "jailbreaking" software to bypass the App Store distribution.

**REQUEST FOR PRODUCTION NO. 119:**

All Documents, data, and Communications relating to Your use, consideration, or comparison of Digital Wallet or tap-to-pay services, including (a) all Digital Wallet or tap-to-pay services You have ever used, downloaded, or considered using (including Apple Wallet, Google Pay, Samsung Wallet, or any financial institution's payment App); (b) Your decisions to use or not use a particular service, including any comparisons You relied on regarding features, security, bank/card availability or rewards; and (c) screenshots showing all credit cards, debit cards, loyalty cards, and transit passes currently or previously provisioned to the Digital Wallet.

**REQUEST FOR PRODUCTION NO. 120:**

All Documents, data, and Communications relating to any instance in which You sought, attempted, or desired to use a Digital Wallet or contactless payment solution other than Apple Pay

for "tap-to-pay" transactions on Your iPhone, including (a) search queries or browsing history regarding the availability of competitor digital wallets on iOS; (b) attempts to configure third-party applications (such as PayPal, Venmo, or banking apps) to function as Your default contactless payment method; and (c) complaints, feedback, or Communications submitted by You expressing dissatisfaction with the requirement to use Apple Pay for NFC transactions.

**REQUEST FOR PRODUCTION NO. 121:**

All Documents, data, and Communications relating to Your use, attempted use, or consideration of any Cloud Streaming Apps (e.g., Xbox Cloud Streaming, NVIDIA GeForce Now, Amazon Luna, Stadia), including (a) all Cloud Streaming App services You have ever used, subscribed to, downloaded, or considered using; the specific games You played, attempted to play, or desired to play on those services; and the devices (e.g., Smartphone, tablet, PC, game console) on which You played or attempted to play them; (b) all of Your purchases of or subscriptions to any Cloud Streaming Apps, including receipts, invoices, subscription confirmations, and credit card statements; (c) Your decisions to subscribe to, purchase, or use (or not use) a particular Cloud Streaming App, including comparisons You relied on regarding game libraries, price, performance, device compatibility; and (d) the performance, satisfaction, or limitations You experienced, including any technical difficulties, feature incompatibilities, or other unsatisfactory performance.

**REQUEST FOR PRODUCTION NO. 122:**

All Documents, data, and Communications relating to Your use, choice, or consideration of any Messaging Apps (e.g., Apple Messages/iMessage, WhatsApp, Signal, Facebook Messenger, Google Messages), including (a) all Messaging Apps You have ever used, downloaded, or considered using, and Your pattern and frequency of usage for each; (b) Your

decisions to use or not use a particular Messaging App, including any comparisons You relied on regarding features, security (such as end-to-end encryption), privacy, or cross-platform availability; (c) any technical challenges, functional limitations, or degraded experience You encountered when messaging between an iPhone and a non-Apple Smartphone, including "green bubbles," "pixelated" videos, "breaking" chats, or any social "stigma" You allegedly experienced in the Paragraph 120 of the Consolidated Complaint; and (d) the frequency and volume of messages You sent or received through non-iMessage protocols (such as RCS, MMS, or SMS).

**REQUEST FOR PRODUCTION NO. 123:**

All Documents, data, and Communications relating to Your use, choice, or consideration of any Smartwatch messaging and communication features, including (a) all Messaging Apps, Notifications, and Cellular function You have ever used, downloaded, or considered using on a Smartwatch, and Your pattern and frequency of usage for each; (b) Your decisions to use or not use a particular Messaging App, Notifications, or Cellular function, including any comparisons You relied on regarding features, security (such as end-to-end encryption), privacy, or cross-platform availability; (c) any technical challenges, functional limitations, or degraded experience You encountered when communicating on a Smartwatch, including any inability to "respond to notifications," loss of "Bluetooth connection," and the requirement to "maintain separate phone numbers" You allegedly experienced in Paragraphs 132 through 143 of the Consolidated Complaint.

**REQUEST FOR PRODUCTION NO. 124:**

All Documents, data, and Communications relating to Your use, attempted use, or consideration of any Super App or Mini-Program, including (a) all Super Apps or Mini-Programs You have ever used, downloaded, or considered using, and the specific features or Mini-Programs

You accessed, attempted to access, or desired to access within them; (b) all of Your purchases of or transactions within any Super App or Mini-Program (such as for games, services, or virtual currency), including receipts, invoices, order confirmations, and credit card statements; (c) Your decisions to download, use, or transact within (or not to use) a particular Super App or Mini-Program, including any comparisons You relied on regarding available features or Mini-Programs; and (d) the performance, satisfaction, or limitations You experienced, including any technical difficulties, feature incompatibilities, or functional limitations on Mini-Program functionality, discoverability, or payment options You attribute to Apple's conduct.

**REQUEST FOR PRODUCTION NO. 125:**

All Documents, data, and Communications relating to Your purchase, acquisition, lease, or consideration of any Smartwatch or other Wearables (including Apple and non-Apple devices), including (a) all Smartwatches or other Wearables You have ever purchased, acquired, owned, leased, paired with a Smartphone, or considered purchasing; (b) all of Your purchases of any Smartwatch or other Wearables, including receipts, invoices, order confirmations, and credit card statements; (c) Your decisions to purchase (or not purchase) a particular Smartwatch or other Wearable, including (i) Your reasons for upgrading to a newer model while remaining with the same brand (e.g., Apple Watch to Apple Watch), including discussions about new features, trade-in incentives, or the ease of the upgrade process; (ii) Your consideration of switching from one brand to another (e.g., Apple Watch to a non-Apple Smartwatch, or vice versa), including any discussion of the perceived benefits, costs, or difficulties associated with such a switch; and (iii) any comparisons You relied on regarding features, price, design, or compatibility; (d) any technical challenges or functional limitations You experienced when attempting to use a non-Apple Wearables device with an iPhone, including any inability to respond to notifications or maintain a

consistent connection; and (e) the software Applications on Your Smartwatches, including: (i) Documents sufficient to identify all Apps You downloaded or used on Your Smartwatches; (ii) Documents relating to any Apps You attempted to download or use on Your Smartwatches but were unable to; and (iii) Documents relating to any Apps You uninstalled from Your Smartwatches, and Your reasons for doing so.

**REQUEST FOR PRODUCTION NO. 126:**

All Documents, data, and Communications relating to Your consideration of, or any attempt to, switch from an iPhone to a non-Apple Smartphone (or vice versa), including (a) the perceived monetary or non-monetary "switching costs and frictions" or benefits associated with such a switch, including any "financial, technological, and behavioral obstacles to switching" as alleged in Paragraph 230 of the Consolidated Complaint; and (b) any experience You have had or attempt You have made to switch, including any "financial, technological, and behavioral obstacles to switching" that You encountered during the process.

**REQUEST FOR PRODUCTION NO. 127:**

All Documents, data, and Communications relating to Your reasons for upgrading to a newer model of Smartphone, or otherwise replacing an existing Smartphone or purchasing a new Smartphone device, while remaining with the same brand (e.g., Apple to Apple), including reasons such as discussions about new features, trade-in incentives, or the ease of the upgrade process.

**REQUEST FOR PRODUCTION NO. 128:**

All Documents, data, and Communications relating to any wireless carrier service plan, device installment plan, or promotional offer You enrolled in, including (a) Contracts, agreements, or terms and conditions for Your wireless service that included any device subsidy, financing, or installment plan associated with Your purchase of a Smartphone, tablet, Smartwatch or other

Wearable device; and (b) any carrier-provided promotional offers, trade-in incentives, or loyalty discounts You received in connection with Your decision to purchase or upgrade a Smartphone, tablet, Smartwatch or other Wearable device.

**REQUEST FOR PRODUCTION NO. 129:**

All Documents, data, and Communications relating to Your purchase of or Your consideration of purchasing a second-hand or refurbished Smartphone (including Apple and non-Apple devices).

**REQUEST FOR PRODUCTION NO. 130:**

All Documents, data, Communications relating to Your decision to purchase or use any Apple devices, including the factors that influenced Your decision and Your reasons for selecting Apple products over competitor devices.

**REQUEST FOR PRODUCTION NO. 131:**

All Documents, data, and Communications relating to Your views, concerns, research, or inquiries regarding the privacy and security features of Smartphones, including how such considerations influenced Your Smartphone purchase decisions.

**REQUEST FOR PRODUCTION NO. 132:**

All Documents, data, and Communications relating to Your complete history of digital software purchases or acquisitions, including Applications, In-App Purchases, subscriptions, and any other downloadable content, regardless of whether such items were obtained via an App Marketplace, direct web download, or side loading. This request encompasses all software installed, purchased, or acquired on any device used by You (including Smartphones, tablets, Wearables, portable media players, smart TVs, gaming consoles) and shall include the name of the item, the cost (if any), and the date of acquisition.

**REQUEST FOR PRODUCTION NO. 133:**

All Documents, data, or Communications relating to the value You place on digital security or digital privacy, including the extent to which any such value factors into the devices You purchase and the Apps, features, and services you use.

**REQUEST FOR PRODUCTION NO. 134:**

All Documents, data, and Communications relating to Your detailed device and Application usage history on any Smartphone You owned or controlled, whether such data is retrieved from the device's current active memory or from any local or cloud-based backups (including iCloud, iTunes/Finder, Google Drive, Samsung Cloud, or similar archival services). This Request encompasses all available data and analytics logs from the "Screen Time" feature on iOS devices, the "Digital Wellbeing" feature on Android devices, or any other similar features. This includes all information contained within the "See All App & Website Activity" (or equivalent) detailed view, including "Screen Time," "Most Used" Applications, "Pickups," and "Notifications."

**REQUEST FOR PRODUCTION NO. 135:**

All Documents, data, and Communications relating to Your detailed device and Application usage history on any Smartwatch You owned or controlled, whether such data is retrieved from the device's current active memory or from any local or cloud-based backups (including iCloud, iTunes/Finder, Google Drive, Samsung Cloud, or similar archival services). This Request encompasses all available data and analytics logs from the "Screen Time" feature on iOS devices, the "Digital Wellbeing" feature on Android devices, or any other similar features.

**REQUEST FOR PRODUCTION NO. 136:**

All Communications between You and Apple, including any records of Your visits to Apple stores, Communications with AppleCare specialists and/or Genius Bar specialists, and Communications with Apple support staff, and any Documents relating to such Communications.

**REQUEST FOR PRODUCTION NO. 137:**

All Documents and Communications relating to Your understanding that iPhone Apps must be downloaded from the App Store, including where You complained about or discussed the unavailability of a certain App on the App Store prior to purchasing Your iPhone.

**REQUEST FOR PRODUCTION NO. 138:**

All Documents and Communications relating to any user manuals or warranty documents You received for any iPhone, Apple Watch, or any other Apple products You purchased or acquired.

**REQUEST FOR PRODUCTION NO. 139:**

All Documents and Communications relating to Your views, reactions, or comments to any change in Apple's App Store policies.

**REQUEST FOR PRODUCTION NO. 140:**

All Documents, data, and Communications relating to Your calculations or comparisons of the combined cost of iPhone, including any data plans, necessary accessories, and subscription services for those devices.

**REQUEST FOR PRODUCTION NO. 141:**

All Documents, data, and Communications referenced in, relating to, or that You reviewed, referred to, identified, or relied on in drafting the Consolidated Complaint, to the extent such Documents have not already been produced.

**REQUEST FOR PRODUCTION NO. 142:**

All Documents, data, and Communications referenced in, relating to, or that You reviewed, identified, or relied on in preparing any of Your responses to interrogatories or requests for admission in this litigation, to the extent such Documents have not already been produced.

**REQUEST FOR PRODUCTION NO. 143:**

All Documents, data, and Communications, to the extent not already produced, that You intend to rely on or otherwise expect to use in any hearing, deposition, motion, or trial in this litigation.

**REQUEST FOR PRODUCTION NO. 144:**

All non-privileged Documents provided to You by any person or entity (including any other plaintiffs, investigators, consultants or other third parties) in connection with the preparation of the Consolidated Complaint.

**REQUEST FOR PRODUCTION NO. 145:**

All non-privileged Documents You reviewed or relied upon in connection with the preparation of the Consolidated Complaint.

**REQUEST FOR PRODUCTION NO. 146:**

All non-privileged Documents sufficient to show the identity of any Person who assisted, advised, or consulted with You in the preparation, investigation, or drafting of the Consolidated Complaint, including any other plaintiffs, any investigators, consultants or other third parties.

**REQUEST FOR PRODUCTION NO. 147:**

All non-privileged Communications with any Person who assisted in the preparation of the Consolidated Complaint, and any Documents relating to such Communications.

**REQUEST FOR PRODUCTION NO. 148:**

All Documents relating to all agreements between and/or among You and Your counsel pertaining to this litigation or any of Your allegations.

**REQUEST FOR PRODUCTION NO. 149:**

All Communications with Your counsel regarding the allegations in the Consolidated Complaint that predate the formation of an attorney-client relationship, and any Documents relating to such Communications.

**REQUEST FOR PRODUCTION NO. 150:**

All non-privileged Communications between You and any actual or potential member of the proposed class whom You seek to represent regarding this litigation, any non-privileged Communications with any other Person regarding this litigation, and any Documents relating to such Communications.

**REQUEST FOR PRODUCTION NO. 151:**

All non-privileged Communications between You and any plaintiffs (or counsel for any such plaintiff) named in the Indirect iPhone Purchaser Plaintiffs' Corrected Consolidated Class Action Complaint, Dkt. No. 109, and Direct Apple Watch Purchaser Plaintiffs' First Amended Class Action Complaint, Dkt. No. 86, regarding this litigation, and any Documents relating to such Communications.

**REQUEST FOR PRODUCTION NO. 152:**

All Communications with any plaintiff (or counsel of any plaintiff) in the action *United States v. Apple Inc.*, 2:24-cv-04055 (D.N.J.), and any Documents relating to such Communications.

**REQUEST FOR PRODUCTION NO. 153:**

All Documents relating to the alleged monetary or nonmonetary harm and/or monetary loss allegedly suffered by You due to the Alleged Conduct, whether directly or indirectly, both for Your individual claims and on behalf of any putative class, including relating to any and all claimed injuries and all damages calculations, estimates, or methodologies (including any calculations, estimates or methodologies regarding the pass-through of alleged overcharges) and all Documents describing all other relief that You seek individually and on behalf of the putative class.

**REQUEST FOR PRODUCTION NO. 154:**

All Documents relating to any agreement with any Person relating to the funding of this litigation.

Dated: January 5, 2026

Respectfully submitted,

*/s/ Liza M. Walsh*

Liza M. Walsh
Douglas E. Arpert
WALSH PIZZI O'REILLY FALANGA LLP
Three Gateway Center
100 Mulberry Street, 15th Floor
Newark, NJ 07102
Tel.: (973) 757-1100
Email: LWalsh@walsh.law
DArpert@walsh.law

Devora W. Allon, P.C. (*pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Tel.: (212) 446-5967
Email: devora.allon@kirkland.com

Craig S. Primis, P.C. (*pro hac vice*)
Matthew J. Reilly, P.C. (*pro hac vice*)
K. Winn Allen, P.C. (*pro hac vice*)
Luke P. McGuire (*pro hac vice*)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
Tel.: (202) 389-5000
Email: craig.primis@kirkland.com
matt.reilly@kirkland.com
winn.allen@kirkland.com
luke.mcguire@kirkland.com

Cynthia E. Richman (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036
Tel.: (202) 955-8500
Email: crichman@gibsondunn.com

Daniel G. Swanson (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Tel.: (213) 219-7000
Email: dswanson@gibsondunn.com

Joseph R. Rose (*pro hac vice*)
Julian W. Kleinbrodt (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Tel.: (415) 393-8200
Email: jrose@gibsondunn.com
jkleinbrodt@gibsondunn.com

Connor S. Sullivan (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Tel: (212) 351-4000
Email: cssullivan@gibsondunn.com

*Counsel for Defendant Apple Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 5th day of January, 2026, counsel of record have been served by electronic mail, pursuant to agreement of the parties, with a true and correct copy of the foregoing.

/s/ *Nick Barba*
Nick Barba

# EXHIBIT 2

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE: APPLE INC. SMARTPHONE ANTITRUST LITIGATION | Case No. 2:24-md-3113(JXN)(LDW)<br>MDL 3113<br>Hon. Julien X. Neals, U.S.D.J.<br>Hon. Leda D. Wettre, U.S.M.J. |

**DEFENDANT'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS DIRECTED TO INDIRECT IPHONE PURCHASER PLAINTIFFS**

Pursuant to Federal Rule of Civil Procedure 34, Defendant Apple Inc. ("Apple") submits its First Set of Requests for Production of Documents (collectively, the "Requests"; individually, a "Request") to the putative indirect iPhone Purchaser Plaintiff Class (the "Indirect iPhone Purchaser Plaintiffs"). Each Request is subject to the Definitions and Instructions below.

**DEFINITIONS**

Unless otherwise defined, all words and phrases used herein shall be accorded their usual meaning and shall be interpreted in their common, ordinary sense. All terms otherwise undefined herein are used consistent with their use in the Consolidated Complaint (as defined below), without waiver or admission concerning the accuracy of any such usage. As used in the below Requests and the Definitions and Instructions, the words set forth below shall be defined as follows:

1. "Alleged Conduct" shall mean all (and any component of) the conduct alleged to be unlawful in the Consolidated Complaint. Alleged Conduct includes but is not limited to:

a. Any alleged restrictions that Apple has placed on third-party developers' ability to offer Apps for download in the Apple App Store or in any other App Marketplace;

b. Any alleged restrictions Apple has placed on third-party developers' access to iPhone features and development tools, including APIs and SDKs;

c. Any alleged restrictions Apple has placed on third-party access to Apple's In-App Purchase or alternatives to In-App Purchase;

d. Any alleged restrictions Apple has placed on products, services, Apps, or technology that allegedly facilitate users' ability to switch between iPhone and non-Apple Smartphones, or vice versa, including those described in the Consolidated Complaint as middleware;

e. Any alleged restrictions Apple has placed on interoperability between Smartphones or policies or practices that allegedly make it harder for consumers to switch between competing Smartphones; and

f. Any alleged restrictions Apple has placed on Super Apps; Cloud Streaming Apps; Messaging Apps; Wearables; and Digital Wallets (e.g., Apple Wallet, Apple Pay, and other payment services).

2. "Alleged Smartphone Market" shall be defined as in the Consolidated Complaint, including without limitation in Paragraphs 209 through 212 of the Consolidated Complaint.

3. "Alleged Performance Smartphone Market" shall be defined as in the Consolidated Complaint, including without limitation in Paragraphs 205 through 208 of the Consolidated Complaint.

4. "API" shall mean an application programming interface and shall be defined as in the Consolidated Complaint, including without limitation Paragraph 198 of the Consolidated Complaint.

5. "Apple" shall mean Apple Inc.

6. "App" or "Application" shall mean a native software application offered on Smartphones, tablets, smart TVs, Wearables, gaming consoles, MacBook laptops, Macintosh desktop computers, or Windows-based laptops and stand-alone personal computers that performs specific tasks at the user's request, including without limitation as set out in Paragraphs 197 through 203 of the Consolidated Complaint.

7. "App Marketplace" shall mean any online storefront where Apps are offered for download or purchase, including the Apple App Store, Amazon Appstore, Amazon Underground, Android Market, Aptoide, Blackberry World, Chrome Web Store, Epic Games Store, GetJar, Google Play Store, Microsoft Store, Origin, Samsung Galaxy Store, Steam, Windows Phone Store, Altstore, TutuApp, and online storefronts distributing games and digital content for Xbox, PlayStation, and Nintendo.

8. "App Review" shall mean Apple's or any other Person's processes of reviewing Apps or App updates for potential inclusion on App Marketplaces.

9. "Cloud Streaming App" shall be defined as in the Consolidated Complaint, including in Paragraphs 30 and 104 through 112 of the Consolidated Complaint.

10. "Communication" shall mean any exchange or transmission of words or ideas to another Person or entity, whether accomplished Person to Person, by telephone, in writing, via electronic mail or text message, via social media, or through any other medium, and shall include

discussions, conversations, negotiations, conferences, meetings, speeches, memoranda, letters, correspondence, notes, blogs, postings, statements, and questions.

11. "Digital Wallet" shall be defined as in the Consolidated Complaint, including in Paragraphs 30 and 137 through 155 of the Consolidated Complaint.

12. "Consolidated Complaint" shall mean the Indirect iPhone Purchaser Plaintiffs' Corrected Consolidated Class Action Complaint filed in the consolidated multidistrict proceeding against Apple in the United States District Court for the District of New Jersey on September 11, 2025 (Case No. 2:24-md-03113, Dkt. No. 109), or any future amended complaints.

13. "Document" shall have the full meaning ascribed to it under Rule 34 and Rule 45 of the Federal Rules of Civil Procedure and shall include Communications; memoranda; records; Reports; books; records and summaries of personal conversations or interviews; diaries; presentations; slide decks; graphs; charts; spreadsheets; diagrams; tables; photographs; recordings; tapes; microfilms; minutes; records and summaries of meetings or conferences; press releases; blog posts; stenographic handwritten or any other notes; work papers; checks, front and back; check vouchers, check stubs, or receipts; tape data sheets or data processing cards or discs; or any other written, recorded, transcribed, punched, taped, filmed, or graphic matter, however produced or reproduced; and any paper or writing of whatever description, including information contained in any computer although not yet printed out. The term "Document" further includes all copies where the copy is not identical to the original.

14. "In-App Purchase" shall mean the purchase of a product, feature, service, or functionality for a fee that occurs within a mobile App.

15. "Including," "included," "includes," and "include" shall not be construed as limiting any Request, and shall mean the same as "including, but not limited to."

16. “Messaging App” shall be defined as in the Consolidated Complaint, including in Paragraphs 30 and 113 through 126 of the Consolidated Complaint, and shall include without limitation Beeper, BlueChat, Discord, Facebook Messenger, Google Messages, Skype, Microsoft Messaging, Signal, Slack, Snapchat, Teams, Telegram, Texts, Viber, WhatsApp, and Apple’s Messages App.

17. “Mini-Program” shall be defined as in the Consolidated Complaint, including in Paragraphs 92 through 103 of the Consolidated Complaint.

18. “Performance Smartphone” shall be defined as in the Consolidated Complaint, including in Paragraphs 205 through 208 of the Consolidated Complaint.

19. “Person” shall mean any natural individual, partnership, corporation, company, association, organization, joint venture, government, agency, or entity.

20. “Plaintiffs,” “You,” and “Your” shall mean the named Plaintiffs representing the purported Indirect iPhone Purchaser Class, specifically Erik Loewen, Sharla Hilburn, Alton Peacock, Jared Schermer, Thomas Bane, Pashen Bennett, Jemiah Duff, Miguel Gomez, Kiana Brown, Kenneth Hill, Jeffrey Burke, Charles Derr, Thomas P. Gorczynski, Susan Marie, David Love, Dana Bein, Joshua Hodges, David McNeal, Ken Leinbach, Nicole Arends, Nancy Cox, Andrea Mathieu, David Burleigh, Kori Lodi, and Joshua Roy as well as anyone acting on behalf of the named Plaintiffs including present or former agents, representatives, attorneys, investigators, accountants, and any and all Persons acting or purporting to act on behalf of them.

21. “Report” shall mean any reports, research, papers, memoranda, presentations, reviews, statistical compilations, or other analyses.

22. “SDK” shall mean Apple’s Software Development Kit.

23. "Smartphone" shall be defined as in the Consolidated Complaint, including in Paragraphs 209 through 212 of the Consolidated Complaint.

24. "Super App" shall be defined as in the Consolidated Complaint, including in Paragraphs 30 and 92 through 103 of the Consolidated Complaint.

25. "Smartwatch" shall be defined as in the Consolidated Complaint, including in Paragraphs 30 and 127 through 136 of the Consolidated Complaint.

26. "Wearable" or "Wearables" shall mean wearable devices with an interactive display and accompanying Apps that let users perform a variety of functions and shall include any "Smartwatch" as defined above.

27. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these Requests all Documents, Communications, materials or responses that might otherwise be construed to be outside of its scope.

28. The terms "any," "each," and "all" are mutually interchangeable and are meant to encompass each other.

29. The terms "concerning," "reflecting," "regarding," "relating to," and "related to" mean in whole or in part, concerning, reflecting, regarding, related to, relating to, in connection with, involving, supporting, addressing, analyzing, constituting, containing, commenting on, discussing, describing, identifying, referring to, reporting on, stating, dealing with, or in any way pertaining or bearing a logical connection to.

30. The use of the singular form of any word includes the plural and vice versa as necessary to bring within the scope of the Request all responses that might otherwise be construed to be outside of its scope.

31. The use of the feminine form of any word includes the masculine form and vice versa as necessary to bring within the scope of the Request all responses that might otherwise be construed to be outside of its scope.

32. The past tense shall be construed to include the present tense and vice versa as necessary to bring within the scope of the Request all responses that might otherwise be construed to be outside of its scope.

**INSTRUCTIONS**

1. For purposes of interpreting or construing the scope of these Requests, the terms used shall be given the most expansive and inclusive interpretation, unless specifically limited in the Request.

2. All Documents and Communications requested herein must be produced in their entirety, with all attachments and enclosures.

3. Each Plaintiff is instructed to respond individually to each Request, to the extent that Plaintiff possesses any unique, non-duplicative Documents or information responsive to the Request. If multiple Plaintiffs have the same response to any Request, they shall so state and need not offer separate responses.

4. In responding to these Requests, You shall produce all Documents and Communications in Your possession, custody, or control, and all Documents and Communications reasonably available to You, including those in the possession, custody, or control of any Person acting on Your behalf.

5. These Requests shall not be deemed to call for identical MD5 hash duplicates of Documents and Communications. "Identical" means precisely the same in all respects; for example, a Document or Communication with handwritten notes or editing marks shall not be

deemed identical to one without such notes or marks. Additionally, for Documents or Communications with attachments, the hash value shall be generated based on the parent/child document grouping. Otherwise identical Documents or Communications with unique family members are not identical, and both must be produced. You shall produce as a separate Document or Communication any Document and Communication that contains any notation, addition, insertion, or marking of any kind that renders it not entirely identical to a version of that Document or Communication without such marks.

6. In responding to any Request calling for the production of data, logs, application usage history, or other information generated by or stored on a Smartphone or other devices, You shall search for and produce responsive information contained in all available backups of such devices (whether stored locally, such as on a computer, or in the cloud, such as via iCloud, Google Drive, or Samsung Cloud). You are instructed to produce such information even if it is no longer present on Your current active device, and, if necessary to retrieve responsive information, You shall restore such backups to a device or utilize forensic tools to access the data.

7. If there are no Documents or Communications responsive to a category in these Requests, You shall so state in writing.

8. If You object to a portion of any Request, You shall state the basis for Your objection with specificity and respond to all parts of the Request to which You do not object.

9. If You encounter any ambiguity in the Requests, in a definition, or in an instruction relevant to the Requests, explain what You find to be ambiguous and what construction You used in providing Your response. If You contend that You do not understand the definition of any term or phrase used in a Request, You shall explain in detail what it is that You do not understand about

the term or phrase at issue, and You shall respond to that part of the Request that You do understand.

10. If any requested Document or Communication is withheld on the basis of any claim of privilege, You must set forth the information necessary for Apple to ascertain whether the privilege properly applies, including all information identified in Paragraph VI.3 of the Proposed Stipulation and Order Governing Electronically Stored Information and Hard Copy Documents, ECF No. 100-2, and any other applicable orders.

11. If any portion of any Document or Communication responsive to these Requests is withheld under claim of privilege, all non-privileged portions must be produced with the portion(s) claimed to be privileged redacted and logged in a privilege log pursuant to the preceding instructions.

12. These Requests are continuing and require further and supplemental production if additional Documents or Communications are received, generated, or discovered after the time of the original production. If after responding to these Requests, You obtain or become aware of any additional Documents or Communications that are directly or indirectly responsive to any part of any of these Requests, You shall promptly produce any additional responsive Documents or Communications.

13. Apple serves these Requests without prejudice to its right to serve additional requests for production of Documents and Communications or other requests.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

**REQUEST FOR PRODUCTION NO. 1:**

All Documents, data, and Communications relating to the Alleged Conduct, including Your allegations concerning iPhone, iPad, Apple Watch, App Store, App Review, iOS, WatchOS, iPadOS, In-App Purchase and other Apple products, services, software and Applications.

**REQUEST FOR PRODUCTION NO. 2:**

All Documents, data, and Communications relating to Your allegations regarding Apple's policies and practices regarding access to APIs.

**REQUEST FOR PRODUCTION NO. 3:**

All Documents, data, and Communications relating to Your allegations regarding Super Apps, including Your allegations in Paragraphs 30 and 92 through 103 of the Consolidated Complaint.

**REQUEST FOR PRODUCTION NO. 4:**

All Documents, data, and Communications relating to Your allegations regarding Cloud Streaming Apps, including Your allegations in Paragraphs 30 and 104 through 112 of the Consolidated Complaint.

**REQUEST FOR PRODUCTION NO. 5:**

All Documents, data, and Communications relating to Your allegations regarding Messaging Apps, including Your allegations in Paragraphs 30 and 113 through 126 of the Consolidated Complaint.

**REQUEST FOR PRODUCTION NO. 6:**

All Documents, data, and Communications relating to Your allegations regarding Wearables, including Your allegations in Paragraphs 30 and 127 through 136 of the Consolidated Complaint.

**REQUEST FOR PRODUCTION NO. 7:**

All Documents, data, and Communications relating to Your allegations regarding Digital Wallets, including Your allegations in Paragraphs 30 and 137 through 155 of the Consolidated Complaint.

**REQUEST FOR PRODUCTION NO. 8:**

All Documents, data, and Communications relating to Your allegations in Paragraph 146 of the Consolidated Complaint that “Apple’s fees are a significant expense for issuing banks and cut into funding for features and benefits that banks might otherwise offer smartphone users.”

**REQUEST FOR PRODUCTION NO. 9:**

All Documents, data, and Communications relating to Your allegations in Paragraph 152 of the Consolidated Complaint that “Apple further impedes the adoption of digital wallets by restricting others from offering the same ability to authenticate digital payment options on online checkout pages.”

**REQUEST FOR PRODUCTION NO. 10:**

All Documents, data, and Communications relating to Your allegations regarding Apple’s motivations and intent with respect to the Alleged Conduct, including Your allegations that the Alleged Conduct is motivated by Apple’s intent to (a) deter users switching from iPhone to a non-iPhone device; (b) inhibit the development of cross-platform or multi-platform Apps or services; and (c) harm or prevent competition in any alleged markets, including the Alleged Smartphone

Market, Alleged Performance Smartphone Market, and the aftermarkets as alleged in Paragraph 85 of the Consolidated Complaint.

**REQUEST FOR PRODUCTION NO. 11:**

All Documents, data, and Communications relating to Your allegations in Paragraph 10 of the Consolidated Complaint that "Apple ensures that no competing technology will emerge with functionality that allows consumers to switch between smartphone platforms."

**REQUEST FOR PRODUCTION NO. 12:**

All Documents, data, and Communications relating to any evaluations or assessments of privacy, security, safety, or user experience of iPhone or the App Store or of other products in the Alleged Smartphone Market, Alleged Performance Smartphone Market, or App Marketplaces.

**REQUEST FOR PRODUCTION NO. 13:**

All Documents, data, and Communications relating to Your allegations that Apple's justifications for its policies or practices are pretextual, including any justifications related to privacy, security, safety, user experience, or intellectual property ownership.

**REQUEST FOR PRODUCTION NO. 14:**

All Documents, data, and Communications relating to Your allegations that You or any putative class members were harmed by Apple's Alleged Conduct.

**REQUEST FOR PRODUCTION NO. 15:**

All Documents, data, and Communications relating to Your allegations in Paragraph 28 of the Consolidated Complaint that "Apple reduces competition in the market for smartphones" by "delaying, degrading, or outright blocking technologies."

**REQUEST FOR PRODUCTION NO. 16:**

All Documents, data, and Communications relating to Your allegations in Paragraph 35 of the Consolidated Complaint that "Apple deploys privacy and security justifications as an elastic shield."

**REQUEST FOR PRODUCTION NO. 17:**

All Documents, data, and Communications relating to Your allegations in Paragraph 43 through 67 of the Consolidated Complaint that Plaintiffs "paid supracompetitive prices for [their] iPhones."

**REQUEST FOR PRODUCTION NO. 18:**

All Documents, data, and Communications relating to Your allegations in Paragraph 40 of the Consolidated Complaint that "Apple's monopolization of the performance smartphone and smartphone markets [] helps it cultivate the 'walled garden' that sustains its broad extraction of monopoly rents."

**REQUEST FOR PRODUCTION NO. 19:**

All Documents, data, and Communications relating to Your allegations in Paragraph 41 of the Consolidated Complaint that "locking up key user groups allows Apple to capture greater spending on iPhone-related products and services, realize higher margins per user as compared to its smartphone rivals, and exercise greater control over developers and other smartphone ecosystem participants."

**REQUEST FOR PRODUCTION NO. 20:**

All Documents, data, and Communications relating to Your allegations in Paragraph 72 of the Consolidated Complaint that Apple's market share in the Alleged Performance Smartphone

Market is "over 70 percent"; that Apple's market share in the Alleged Smartphone Market is "over 65 percent"; and that Apple's alleged market shares "likely understate its monopoly power today."

**REQUEST FOR PRODUCTION NO. 21:**

All Documents, data, and Communications relating to Your allegations in Paragraph 73 of the Consolidated Complaint that Apple "willingly sacrifices the short-term benefits it would gain from improved products and services developed by third parties when necessary to maintain its monopoly."

**REQUEST FOR PRODUCTION NO. 22:**

All Documents, data, and Communications relating to Your allegations in Paragraph 76 of the Consolidated Complaint that developers "cannot avoid Apple's control . . . by making web apps" and that Apple "can [] control the functionality of web apps."

**REQUEST FOR PRODUCTION NO. 23:**

All Documents, data, and Communications relating to Your allegations in Paragraph 77 of the Consolidated Complaint that "alternative app stores" "would benefit developers and users" and that Apple "allows certain enterprise and public sector customers to develop and deploy proprietary, internal use versions of app stores to offer more curated apps to better protect privacy and security."

**REQUEST FOR PRODUCTION NO. 24:**

All Documents, data, and Communications relating to Your allegations that Apple has voluntarily sacrificed, foregone, or forfeited revenue or profits (whether short-term or long-term) in any alleged markets, including the Alleged Smartphone Market, Alleged Performance Smartphone Market, and the aftermarkets as alleged in Paragraph 85 of the Consolidated Complaint.

**REQUEST FOR PRODUCTION NO. 25:**

All Documents, data, and Communications relating to Your allegations in Paragraph 88 of the Consolidated Complaint that Apple "enforce[s] rules and contractual restrictions that stop or delay developers from innovating in ways that threaten Apple's power"; "drives iPhone users away from products and services that compete with or threaten Apple"; and "extract[s] monopoly rents from third parties in a variety of ways, including app fees and revenue-sharing requirements."

**REQUEST FOR PRODUCTION NO. 26:**

All Documents, data, and Communications relating to Your allegations in Paragraph 3 of the Consolidated Complaint that "[p]rices of iPhones have remained stubbornly high, even with the entry of other competitors in the smartphone market."

**REQUEST FOR PRODUCTION NO. 27:**

All Documents, data, and Communications relating to Your allegations that Apple has slowed or restricted its own innovation or technological advancement, including as alleged in Paragraph 89 of the Consolidated Complaint.

**REQUEST FOR PRODUCTION NO. 28:**

All Documents, data, and Communications relating to Your allegations in Paragraph 160 of the Consolidated Complaint that Apple "entrenches its dominance over competitor services and apps by restricting competitor apps in ways it does not restrict itself."

**REQUEST FOR PRODUCTION NO. 29:**

All Documents, data, and Communications relating to Your allegations in Paragraph 161 of the Consolidated Complaint that Apple "frequently takes other companies' innovative features, adds those ideas to Apple's own software products without permission, and then either ejects the

original third-party application from the App Store . . . or causes the third-party software developer to close its doors entirely."

**REQUEST FOR PRODUCTION NO. 30:**

All Documents, data, and Communications relating to Your allegations in Paragraph 162 of the Consolidated Complaint that Apple "has [] simply shut down rival apps when they threaten [its] 'lock in' scheme."

**REQUEST FOR PRODUCTION NO. 31:**

All Documents, data, and Communications relating to Your allegations in Paragraph 111 of the Consolidated Complaint that Apple's "rules and restrictions effectively force developers to create a separate iOS-specific version of their app instead of creating a single cloud-based version that is compatible with several operating systems, including iOS."

**REQUEST FOR PRODUCTION NO. 32:**

All Documents, data, and Communications relating to Your allegations in Paragraph 109 of the Consolidated Complaint that "[h]aving to submit individual cloud-streaming games for review by Apple increased the cost of releasing games on the iPhone and limited the number of games a developer could make available to iPhone users."

**REQUEST FOR PRODUCTION NO. 33:**

All Documents, data, and Communications relating to Your allegations in Paragraph 126 of the Consolidated Complaint that Apple "blocked a third-party developer from fixing the broken cross-platform messaging experience in Apple Messages and providing end-to-end encryption for messages between Apple Messages and Android users."

**REQUEST FOR PRODUCTION NO. 34:**

All Documents, data, and Communications relating to Your allegations in Paragraph 142 of the Consolidated Complaint that "[c]ross-platform digital wallets would offer an easier, more seamless, and potentially more secure way for users to switch from the iPhone to another smartphone."

**REQUEST FOR PRODUCTION NO. 35:**

All Documents, data, and Communications relating to Your allegations in Paragraph 158 of the Consolidated Complaint that Apple's "subscription services and other ancillary fees are a significant part of Apple's net revenue and add substantially to a user's cost of an iPhone."

**REQUEST FOR PRODUCTION NO. 36:**

All Documents, data, and Communications relating to Your allegations in Paragraph 159 of the Consolidated Complaint that "Apple takes on outsize importance and control in the creative economy, which may diminish incentives to fund, make, and distribute artistic expression."

**REQUEST FOR PRODUCTION NO. 37:**

All Documents, data, and Communications relating to Your allegations in Paragraph 164 of the Consolidated Complaint that Apple "has also attempted to undermine cross-platform technologies like digital car keys in ways that benefit Apple but harm consumers."

**REQUEST FOR PRODUCTION NO. 38:**

All Documents, data, and Communications relating to Your allegations in Paragraph 165 of the Consolidated Complaint that "Apple's threatened dominance over the automotive industry goes well beyond the Apple Wallet and Apple's demands on car makers to allow innovative products and services on the iPhone."

**REQUEST FOR PRODUCTION NO. 39:**

All Documents, data, and Communications relating to Your allegations in Paragraph 157 of the Consolidated Complaint that Apple "has impeded cross-platform cloud-storage apps in order to steer iPhone users into iCloud."

**REQUEST FOR PRODUCTION NO. 40:**

All Documents, data, and Communications relating to Your allegations in Paragraph 157 that "[m]arket participants" have noted that "because Apple requires the use of WebKit . . . WebKit has become slower to innovate and adopt industry standards."

**REQUEST FOR PRODUCTION NO. 41:**

All Documents, data, and Communications relating to Your allegations in Paragraph 162 that "Apple once removed 11 of the 17 most downloaded apps that helped parents limit their children's time on Apple devices."

**REQUEST FOR PRODUCTION NO. 42:**

All Documents, data, and Communications relating to Your allegations in Paragraph 166 of the Consolidated Complaint that "Apple extracts extraordinary profits."

**REQUEST FOR PRODUCTION NO. 43:**

All Documents, data, and Communications relating to Your allegations in Paragraph 166 of the Consolidated Complaint that Apple's Alleged Conduct "leaves all smartphone users worse off, with fewer choices; higher prices and fees; lower quality smartphones, apps, and accessories; and less innovation from Apple and others."

**REQUEST FOR PRODUCTION NO. 44:**

All Documents, data, and Communications relating to Your allegations in Paragraph 168 of the Consolidated Complaint that Apple has "increased the technical, behavioral, monetary, and other costs of switching from an iPhone to an alternative smartphone."

**REQUEST FOR PRODUCTION NO. 45:**

All Documents, data, and Communications relating to Your allegations concerning any "'lock in' scheme," including in Paragraph 169 of the Consolidated Complaint that "[t]hrough its 'lock in' scheme, Apple preserves and expands its monopoly power and the resulting overcharges paid by Plaintiffs and the Class on their iPhones."

**REQUEST FOR PRODUCTION NO. 46:**

All Documents, data, and Communications relating to Your allegations in Paragraph 170 of the Consolidated Complaint that "[a]bsent Apple's contractual and technological conduct in the aftermarkets described above, consumer demand for iPhones would weaken" and "the barriers to entry for competition in the smartphone foremarkets would also be reduced."

**REQUEST FOR PRODUCTION NO. 47:**

All Documents, data, and Communications relating to Your allegations in Paragraph 171 of the Consolidated Complaint that Apple has "delayed or suppressed the emergence of cross-platform technologies."

**REQUEST FOR PRODUCTION NO. 48:**

All Documents, data, and Communications relating to Your allegations in Paragraph 172 of the Consolidated Complaint that "tap-to-pay digital wallet products and services do not exist today because of Apple."

**REQUEST FOR PRODUCTION NO. 49:**

All Documents, data, and Communications relating to Your allegations in Paragraph 173 of the Consolidated Complaint that Apple's conduct "has made its own products worse."

**REQUEST FOR PRODUCTION NO. 50:**

All Documents, data, and Communications relating to Your allegations in Paragraph 123 of the Consolidated Complaint that "Apple affirmatively undermines the quality of rival smartphones."

**REQUEST FOR PRODUCTION NO. 51:**

All Documents, data, and Communications relating to Your allegations in Paragraph 175 of the Consolidated Complaint that "Apple's documents and conduct show that Apple is motivated by the anticompetitive purpose of building or maintaining monopoly power in the relevant markets."

**REQUEST FOR PRODUCTION NO. 52:**

All Documents, data, and Communications relating to Your allegations in Paragraph 175 of the Consolidated Complaint that "Apple sacrificed substantial revenues it could have earned from the aftermarkets" and has "used its control over app distribution and app creation to selectively undermine cross-platform technologies, not because this helps protect users but because it helps protect Apple."

**REQUEST FOR PRODUCTION NO. 53:**

All Documents, data, and Communications relating to Your allegations in Paragraph 177 of the Consolidated Complaint that "Apple's smartphone monopoly gives it many levers to maintain its power even in the face of interventions focused on eliminating or disciplining specific anticompetitive practices."

**REQUEST FOR PRODUCTION NO. 54:**

All Documents, data, and Communications relating to Your allegations that Apple uses, or will use, a "playbook to maintain its monopoly," including as alleged in Paragraphs 156 through 165 of the Consolidated Complaint.

**REQUEST FOR PRODUCTION NO. 55:**

All Documents, data, and Communications relating to Your allegations in Paragraph 180 of the Consolidated Complaint that there are "no valid, procompetitive benefits of Apple's exclusionary conduct that would outweigh its anticompetitive effects."

**REQUEST FOR PRODUCTION NO. 56:**

All Documents, data, and Communications relating to Your allegations in Paragraph 180 of the Consolidated Complaint that "Apple conduct has not resulted in lower prices, higher quality-adjusted output, improved innovation, or a better user experience for smartphone users."

**REQUEST FOR PRODUCTION NO. 57:**

All Documents, data, and Communications relating to Your allegations in Paragraph 181 of the Consolidated Complaint that "Apple's control over app distribution and creation on the iPhone is substantially more restrictive than necessary to protect user privacy and security."

**REQUEST FOR PRODUCTION NO. 58:**

All Documents, data, and Communications relating to Your allegations in Paragraphs 182 and 183 of the Consolidated Complaint that "many alternative technologies that Apple's conduct suppresses would enhance user security and privacy" and that "Apple is . . . willing to make the iPhone less secure and less private if it helps maintain its monopoly power."

**REQUEST FOR PRODUCTION NO. 59:**

All Documents, data, and Communications relating to Your allegations in Paragraph 185 of the Consolidated Complaint that "[u]ntil the September 2020 release of iOS 14, Apple did not allow consumers to select third party web browsers as a default. This was unique to iOS. No other mobile device operating system had a similar limitation."

**REQUEST FOR PRODUCTION NO. 60:**

All Documents, data, and Communications relating to Your allegations in Paragraph 186 of the Consolidated Complaint that Apple "selectively" enforces its rules and contractual restrictions for App distribution and creation.

**REQUEST FOR PRODUCTION NO. 61:**

All Documents, data, and Communications relating to Your allegations in Paragraph 200 of the Consolidated Complaint that "Android and iOS are not substitutes in the eyes of app developers."

**REQUEST FOR PRODUCTION NO. 62:**

All Documents, data, and Communications relating to Your allegations in Paragraph 219 of the Consolidated Complaint that "Apple's power over developers . . . strengthens the 'lock in' scheme that results in anticompetitive overcharges on iPhones purchased by end-user consumers."

**REQUEST FOR PRODUCTION NO. 63:**

All Documents, data, and Communications relating to Your allegations concerning "user multi-homing," including Your allegations in Paragraph 219 of the Consolidated Complaint that "the lack of multi-homing among users necessitates multi-homing among developers."

**REQUEST FOR PRODUCTION NO. 64:**

All Documents, data, and Communications relating to Your allegations in Paragraph 221 through Paragraph 224 of the Consolidated Complaint that there are "substantial barriers to entry and expansion" in the Alleged Performance Smartphone Market and Alleged Smartphone Market.

**REQUEST FOR PRODUCTION NO. 65:**

All Documents, data, and Communications relating to Your allegations in Paragraph 223 of the Consolidated Complaint that "Apple's monopoly power is [] protected by strong network and scale effects, including high switching costs and frictions."

**REQUEST FOR PRODUCTION NO. 66:**

All Documents, data, and Communications relating to Your allegations in Paragraph 224 of the Consolidated Complaint that "[m]any prominent, well-financed companies have tried and failed to successfully enter the relevant markets [such as Amazon, Microsoft, HTC, and LG]" and "only Samsung and Google remain as meaningful competitors in the U.S. smartphone market."

**REQUEST FOR PRODUCTION NO. 67:**

All Documents, data, and Communications relating to Your allegations in Paragraph 226 of the Consolidated Complaint that "Apple's ability to consistently demand monopoly prices in each of these aftermarkets is . . . indicative of its market power in the relevant foremarkets for smartphones."

**REQUEST FOR PRODUCTION NO. 68:**

All Documents, data, and Communications relating to Your allegations in Paragraph 227 of the Consolidated Complaint that "Apple's ability to extract overcharges out of aftermarket participants indicates that Apple has monopoly power in the relevant markets."

**REQUEST FOR PRODUCTION NO. 69:**

All Documents, data, and Communications relating to Your allegations in Paragraph 173 of the Consolidated Complaint that "several developers have abandoned plans to develop super apps and cloud-based gaming apps even after making substantial investments in bringing them to market."

**REQUEST FOR PRODUCTION NO. 70:**

All Documents, data, and Communications relating to Your allegations in Paragraph 225 of the Consolidated Complaint that Apple "continuously raises the price of iPhones well above the rate that would be expected given competition" and "can and does profitably forego innovation without fear of losing customers to competitors."

**REQUEST FOR PRODUCTION NO. 71:**

All Documents, data, and Communications relating to Your allegations in Paragraph 216 of the Consolidated Complaint that "Apple has monopoly power in both the performance smartphone market and the broader smartphone market."

**REQUEST FOR PRODUCTION NO. 72:**

All Documents, data, and Communications relating to Your allegations in Paragraph 18 of the Consolidated Complaint that "Apple's margins are twice that of competing smartphone manufacturers."

**REQUEST FOR PRODUCTION NO. 73:**

All Documents, data, and Communications relating to Your allegations in Paragraph 227 of the Consolidated Complaint that Apple is able to "extract overcharges out of aftermarket participants."

**REQUEST FOR PRODUCTION NO. 74:**

All Documents, data, and Communications relating to Your allegations in Paragraph 246 of the Consolidated Complaint that "the direct purchasers (wireless carriers and other retail outlets) passed all or virtually all of the overcharge on to Plaintiffs and Members of the Class" and that "Apple utilizes a minimum advertised price retail strategy on iPhones which ensures that price increases imposed by Apple on direct purchasers are also adopted by wireless carriers and other retail outlets who sell iPhones to Class Members."

**REQUEST FOR PRODUCTION NO. 75:**

All Documents, data, and Communications relating to Your allegations in Paragraph 255 of the Consolidated Complaint that "Apple's interrelated and interdependent actions have had a cumulative and self-reinforcing effect that has harmed competition and the competitive process."

**REQUEST FOR PRODUCTION NO. 76:**

All Documents, data, and Communications relating to Your allegations that Apple has been "unjust[ly]" enriched, including as alleged in Paragraphs 281 through 289 of the Consolidated Complaint.

**REQUEST FOR PRODUCTION NO. 77:**

All Documents, data, and Communications relating to Your allegations in Paragraph 284 of the Consolidated Complaint that "Apple's financial benefit resulting from its unlawful and inequitable acts is traceable to overpayments for iPhones by Plaintiffs and Members of the Nationwide Class."

**<u>REQUEST FOR PRODUCTION NO. 78:</u>**

All Documents, data, and Communications relating to Your allegations in Paragraph 344 of the Consolidated Complaint that "the 'lock in' scheme described . . . was designed and implemented in California."

**<u>REQUEST FOR PRODUCTION NO. 79:</u>**

All Documents, data, and Communications relating to Your allegations in Paragraph 346 of the Consolidated Complaint that "Plaintiffs lack an adequate remedy at law for Apple's conduct."

**<u>REQUEST FOR PRODUCTION NO. 80:</u>**

All Documents, data, and Communications relating to Your allegations in Paragraph 339 of the Consolidated Complaint that "Apple's conduct was unfair, unconscionable, or deceptive."

**<u>REQUEST FOR PRODUCTION NO. 81:</u>**

All Documents, data, and Communications relating to Your allegations in Paragraph 449 of the Consolidated Complaint that the Alleged Conduct was "unfair, immoral, unethical."

**<u>REQUEST FOR PRODUCTION NO. 82:</u>**

All Documents, data, and Communications relating to the effects that Apple's Alleged Conduct has on consumer behavior, including its effects with respect to Super Apps, Cloud Streaming Apps, Messaging Apps, Wearables, and Digital Wallets.

**<u>REQUEST FOR PRODUCTION NO. 83:</u>**

All Documents, data, and Communications relating to Your definitions and any market shares of any participants in any alleged markets, including any analyses, reports, studies, surveys, or data You relied upon in defining or calculating market shares for any alleged markets, including

the Alleged Smartphone Market, Alleged Performance Smartphone Market, and the aftermarkets as alleged in Paragraph 85 of the Consolidated Complaint.

**REQUEST FOR PRODUCTION NO. 84:**

All Documents, data, and Communications relating to Your allegations that two economically distinct alleged markets exist for "Smartphones" and "Performance Smartphones," including all Documents, data, and Communications showing the similarities and differences between the Alleged Smartphone Market and Alleged Performance Smartphone Market.

**REQUEST FOR PRODUCTION NO. 85:**

All Documents, data, and Communications relating to Your allegations of "aftermarkets" as described in Paragraph 85 of the Consolidated Complaint, including Documents regarding the definition of any such alleged aftermarket (including for Super Apps, Cloud Streaming Apps, Messaging Apps, Smartwatches, and Digital Wallets), the identity of included products, competitors and market shares, associated foremarkets, geographic market scope and the alleged economic relationship between any such aftermarket and the Alleged Smartphone Market and the Alleged Performance Smartphone Market.

**REQUEST FOR PRODUCTION NO. 86:**

All Documents, data, and Communications relating to Your allegations in Paragraph 85 of the Consolidated Complaint that "Apple's conduct in these aftermarkets artificially raises the switching cost in the smartphone markets, which creates a vicious cycle that 'locks in' consumers."

**REQUEST FOR PRODUCTION NO. 87:**

All Documents, data, and Communications relating to Your allegations in Paragraph 85 of the Consolidated Complaint that "it is within these aftermarkets—where Apple may or may not also have monopoly power—that Apple's challenged anticompetitive conduct primarily occurs."

**REQUEST FOR PRODUCTION NO. 88:**

All Documents, data, and Communications relating to Your allegations in Paragraph 85 of the Consolidated Complaint that "anticompetitive acts in the various aftermarkets thereby comprise the pillars of Apple's underlying 'lock in' scheme."

**REQUEST FOR PRODUCTION NO. 89:**

All Documents, data, and Communications relating to Your allegations in Paragraph 86 of the Consolidated Complaint that "Apple has likely also inflated other revenue streams throughout these aftermarkets."

**REQUEST FOR PRODUCTION NO. 90:**

All Documents, data, and Communications relating to Your allegations that the United States is the relevant geographic scope for the Alleged Smartphone Market and Alleged Performance Smartphone Market.

**REQUEST FOR PRODUCTION NO. 91:**

All Documents, data, and Communications relating to the market shares of Apple or any competitors in the Alleged Smartphone Market and Alleged Performance Smartphone Market.

**REQUEST FOR PRODUCTION NO. 92:**

All Documents, data, and Communications, including any studies, Reports, or other analyses, relating to customers' Smartphone or Performance Smartphone purchasing decisions in the United States, customer satisfaction with iPhone or other Smartphone purchases or purchasing decisions, or customers' decisions to switch or not switch between iPhone and other Smartphones or Performance Smartphone devices, and vice versa.

**REQUEST FOR PRODUCTION NO. 93:**

All Documents, data, and Communications relating to Your allegations that Apple's Alleged Conduct affects consumers' purchasing decisions in the Alleged Smartphone Market, Alleged Performance Smartphone Market, and the aftermarkets as alleged in Paragraph 85 of the Consolidated Complaint.

**REQUEST FOR PRODUCTION NO. 94:**

All Documents, data, and Communications relating to competition for and among Smartphones and Performance Smartphones.

**REQUEST FOR PRODUCTION NO. 95:**

All Documents, data, and Communications relating to Your exposure to any cyber-threats, security risks, or malicious activity affecting Your personal devices or accounts, demonstrating the frequency and nature of the digital threats You face. This includes Documents or Communications relating to: (a) attempted or successful intrusions, including notifications of "suspicious login attempts," "unrecognized devices," or password reset requests You did not initiate; (b) social engineering or phishing attempts targeted at You, such as malicious text messages, fraudulent emails, or scam calls soliciting Your personal data; and (c) Your installation or use of third-party security tools (e.g., antivirus software, spam filter, or identity theft monitoring services) to mitigate these risks.

**REQUEST FOR PRODUCTION NO. 96:**

All Documents, data, and Communications relating to the effect of encryption of data and communication on preventing cyberattacks or cyber-threats with respect to Smartphones or Performance Smartphones.

**REQUEST FOR PRODUCTION NO. 97:**

All Documents, data, and Communications comparing, evaluating, or analyzing the price, affordability, or "value for money" of iPhones versus Smartphones offered by other manufacturers (such as Samsung, Google, Huawei, Lenovo, Motorola, or Xiaomi), including the "out-of-pocket" or "net" acquisition cost to You after accounting for any carrier subsidies, device installment plans, trade-in credits, or wireless service contracts.

**REQUEST FOR PRODUCTION NO. 98:**

All Documents, data, and Communications relating to concerns about the use of Smartphones running on the Android operating system or using App Marketplaces other than the App Store, including concerns regarding privacy, security, reliability, or interoperability.

**REQUEST FOR PRODUCTION NO. 99:**

All Documents, data, and Communications exchanged with any Plaintiff, a State Government, the Federal Government, or any agency thereof, that relate to any of the allegations included in the Consolidated Complaint.

**REQUEST FOR PRODUCTION NO. 100:**

All Documents, data, and Communications exchanged between You and any third party relating to any investigation by a State Government, the Federal Government, any agency thereof, or any foreign regulator concerning the Alleged Conduct.

**REQUEST FOR PRODUCTION NO. 101:**

All Documents, data, and Communications exchanged between You and any third party concerning the Alleged Conduct, specifically including communications with any lobbying firms, public relations agencies, strategy consultants, or communications firms, as well as any

competitors of Apple (such as Microsoft Corporation) or any representatives, affiliates, or members of the Coalition for App Fairness (including Epic Games, Spotify, or Match Group).

**REQUEST FOR PRODUCTION NO. 102:**

All Documents relating to Your purchase, acquisition, ownership, or lease of any Smartphones (including both iPhone and non-Apple devices). This request includes any transactional records (such as receipts, invoices, order confirmation, wireless service agreements, carrier installment plans, purchase agreements, financing agreements, or order histories) or any other Documents relating to, for each device:

1. the date of acquisition;
2. the specific price paid (if any);
3. the method and source of any payment (including credit cards, rewards cards, third-party financing, gift cards, or cash);
4. any goods or services purchased in connection with or bundled with the device (including any warranties, extended coverage or insurance, streaming or content services, or subscription services);
5. the financial terms of the sale, including the value of any discounts, rebates, or incentives applied before or after the purchase (such as trade-in credits, carrier subsidies, loyalty rewards program points, cashback earnings, employer/student discounts, credit card merchant offers, any other promotional offers or other non-cash consideration);
6. the manner in which You acquired the device (e.g., direct purchase from the device's manufacturer, purchase from a third-party retailer, purchase from a wireless carrier,

purchase on a peer-to-peer marketplace, purchase on a business-to-consumer marketplace, purchase from an individual, receipt as a gift, trade-in, etc.);

7. the identity of the vendor or seller from whom it was purchased;
8. whether the device was new, used, or refurbished at the time of acquisition; and
9. whether you still own the device, and if not, the manner and date of disposition of the device.

**REQUEST FOR PRODUCTION NO. 103:**

All Documents relating to Your purchase, acquisition, ownership, or lease of any non-iPhone Apple products, including iPad, Mac (e.g., MacBook Air, MacBook Pro, iMac, Mac mini), Apple Watch, AirPods (including AirPods Pro and AirPods Max), HomePod, Apple TV, or AirTags. This Request includes transactional records (such as receipts, invoices, order confirmation, wireless service agreements, carrier installment plans, purchase agreements, financing agreements, or order histories) or any other Documents relating to, for each device:

1. the date of acquisition;
2. the specific price paid (if any);
3. the method and source of any payment (including credit cards, rewards cards, third-party financing, gift cards, or cash);
4. any goods or services purchased in connection with or bundled with the device (including any warranties, extended coverage or insurance, streaming or content services, or subscription services);
5. the financial terms of the sale, including the value of any discounts, rebates, or incentives applied before or after the purchase (such as trade-in credits, carrier subsidies, loyalty rewards program points, cashback earnings, employer/student

discounts, credit card merchant offers, any other promotional offers or other non-cash consideration);

6. the manner in which You acquired the device (e.g., direct purchase from the device's manufacturer, purchase from a third-party retailer, purchase from a wireless carrier, purchase on a peer-to-peer marketplace, purchase on a business-to-consumer marketplace, purchase from an individual, receipt as a gift, trade-in, etc.);
7. the identity of the vendor or seller from whom it was purchased;
8. whether the device was new, used, or refurbished at the time of acquisition; and
9. whether you still own the device, and if not, the manner and date of disposition of the device.

**REQUEST FOR PRODUCTION NO. 104:**

All Documents related to Your purchase, acquisition, ownership, or lease of any non-Apple computing or gaming devices (excluding Smartphones), including: (a) Android-based tablets; (b) personal computers (Windows, Chrome OS, or Linux); and (c) dedicated gaming consoles or devices (e.g., Nintendo, PlayStation, Xbox, or Steam Deck). This Request specifically includes transactional records (such as receipts, invoices, order confirmation, wireless service agreements, carrier installment plans, purchase agreements, financing agreements, or order histories) or any other Documents relating to, for each device:

1. the date of acquisition;
2. the specific price paid (if any);
3. the method and source of any payment (including credit cards, rewards cards, third-party financing, gift cards, or cash);

4. any goods or services purchased in connection with or bundled with the device (including any warranties, extended coverage or insurance, streaming or content services, or subscription services);
5. the financial terms of the sale, including the value of any discounts, rebates, or incentives applied before or after the purchase (such as trade-in credits, carrier subsidies, loyalty rewards program points, cashback earnings, employer/student discounts, credit card merchant offers, any other promotional offers or other non-cash consideration);
6. the manner in which You acquired the device (e.g., direct purchase from the device's manufacturer, purchase from a third-party retailer, purchase from a wireless carrier, purchase on a peer-to-peer marketplace, purchase on a business-to-consumer marketplace, purchase from an individual, receipt as a gift, trade-in, etc.);
7. the identity of the vendor or seller from whom it was purchased;
8. whether the device was new, used, or refurbished at the time of acquisition; and
9. whether you still own the device, and if not, the manner and date of disposition of the device.

**REQUEST FOR PRODUCTION NO. 105:**

All Documents related to any terms, conditions, or agreements entered into between You and Apple.

**REQUEST FOR PRODUCTION NO. 106:**

All Documents, data, Communications relating to Your consideration, comparison, or selection of any Smartphone or Performance Smartphone (whether or not an Apple device), including (a) the specific product features, functions, or characteristics You prioritized in a

purchasing decision; (b) Your opinions on the quality, design, security, or experience of different Smartphones; and (c) any product review, pro-and-con lists, or other comparisons You created or consulted.

**REQUEST FOR PRODUCTION NO. 107:**

All Documents and Communications relating to Your use of or experience with any Apple services or features, including iMessage, FaceTime, iCloud, AirDrop, Apple Wallet, or CarPlay.

**REQUEST FOR PRODUCTION NO. 108:**

All Documents and Communications relating to Your use of or subscription to non-Apple cloud storage services, including Google Photos, Google Drive, Dropbox, Microsoft OneDrive, or Amazon Photos.

**REQUEST FOR PRODUCTION NO. 109:**

All Documents, data, and Communications relating to any instance in which You sought, attempted, or desired to download an application or download or unlock digital content or features that were unavailable, blocked, or removed from the Apple App Store, including (a) any search queries or browsing history relating to attempts to find Apps not hosted on the App Store; (b) complaints or feedback by you to Apple, any App developers, or on social media regarding the inability to access specific apps or content through the App Store; and (c) Your use of "jailbreaking" software to bypass the App Store distribution.

**REQUEST FOR PRODUCTION NO. 110:**

All Documents, data, and Communications relating to Your allegations in Paragraph 79 of the Consolidated Complaint that "if an app includes functionality that Apple does not like, Apple can and does exercise its discretion to simply block the app from the App Store."

**REQUEST FOR PRODUCTION NO. 111:**

All Documents, data, and Communications relating to Your use, consideration, or comparison of Digital Wallet or tap-to-pay services, including (a) all Digital Wallet or tap-to-pay services You have ever used, downloaded, or considered using (including Apple Wallet, Google Pay, Samsung Wallet, or any financial institution's payment App); (b) Your decisions to use or not use a particular service, including any comparisons You relied on regarding features, security, bank/card availability or rewards; and (c) screenshots showing all credit cards, debit cards, loyalty cards, and transit passes currently or previously provisioned to the Digital Wallet.

**REQUEST FOR PRODUCTION NO. 112:**

All Documents, data, and Communications relating to any instance in which You sought, attempted, or desired to use a Digital Wallet or contactless payment solution other than Apple Pay for "tap-to-pay" transactions on Your iPhone, including (a) search queries or browsing history regarding the availability of competitor digital wallets on iOS; (b) attempts to configure third-party applications (such as PayPal, Venmo, or banking apps) to function as Your default contactless payment method; and (c) complaints, feedback, or Communications submitted by You expressing dissatisfaction with the requirement to use Apple Pay for NFC transactions.

**REQUEST FOR PRODUCTION NO. 113:**

All Documents, data, and Communications relating to Your use, attempted use, or consideration of any Cloud Streaming Apps (e.g., Xbox Cloud Streaming, NVIDIA GeForce Now, Amazon Luna, Stadia), including (a) all Cloud Streaming App services You have ever used, subscribed to, downloaded, or considered using; the specific games You played, attempted to play, or desired to play on those services; and the devices (e.g., Smartphone, tablet, PC, game console) on which You played or attempted to play them; (b) all of Your purchases of or subscriptions to

any Cloud Streaming Apps, including receipts, invoices, subscription confirmations, and credit card statements; (c) Your decisions to subscribe to, purchase, or use (or not use) a particular Cloud Streaming App, including comparisons You relied on regarding game libraries, price, performance, device compatibility; and (d) the performance, satisfaction, or limitations You experienced, including any technical difficulties, feature incompatibilities, or other unsatisfactory performance.

**REQUEST FOR PRODUCTION NO. 114:**

All Documents, data, and Communications relating to Your use, choice, or consideration of any Messaging Apps (e.g., Apple Messages/iMessage, WhatsApp, Signal, Facebook Messenger, Google Messages), including (a) all Messaging Apps You have ever used, downloaded, or considered using, and Your pattern and frequency of usage for each; (b) Your decisions to use or not use a particular Messaging App, including any comparisons You relied on regarding features, security (such as end-to-end encryption), privacy, or cross-platform availability; (c) any technical challenges, functional limitations, or degraded experience You encountered when messaging between an iPhone and a non-Apple Smartphone, including “green bubbles,” “pixelated” videos, “breaking” chats, or any social “stigma” You allegedly experienced in the Paragraph 123 of the Consolidated Complaint; and (d) the frequency and volume of messages You sent or received through non-iMessage protocols (such as RCS, MMS, or SMS).

**REQUEST FOR PRODUCTION NO. 115:**

All Documents, data, and Communications relating to Your use, choice, or consideration of any Smartwatch messaging and communication features, including (a) all Messaging Apps, Notifications, and Cellular function You have ever used, downloaded, or considered using on a Smartwatch, and Your pattern and frequency of usage for each; (b) Your decisions to use or not

use a particular Messaging App, Notifications, or Cellular function, including any comparisons You relied on regarding features, security (such as end-to-end encryption), privacy, or cross-platform availability; (c) any technical challenges, functional limitations, or degraded experience You encountered when communicating on a Smartwatch, including any inability to "respond to notifications," loss of "Bluetooth connection," and the requirement to "maintain separate phone numbers" You allegedly experienced in Paragraphs 134 through 136 of the Consolidated Complaint.

**REQUEST FOR PRODUCTION NO. 116:**

All Documents, data, and Communications relating to Your use, attempted use, or consideration of any Super App or Mini-Program, including (a) all Super Apps or Mini-Programs You have ever used, downloaded, or considered using, and the specific features or Mini-Programs You accessed, attempted to access, or desired to access within them; (b) all of Your purchases of or transactions within any Super App or Mini-Program (such as for games, services, or virtual currency), including receipts, invoices, order confirmations, and credit card statements; (c) Your decisions to download, use, or transact within (or not to use) a particular Super App or Mini-Program, including any comparisons You relied on regarding available features or Mini-Programs; and (d) the performance, satisfaction, or limitations You experienced, including any technical difficulties, feature incompatibilities, or functional limitations on Mini-Program functionality, discoverability, or payment options You attribute to Apple's conduct.

**REQUEST FOR PRODUCTION NO. 117:**

All Documents, data, and Communications relating to Your purchase, acquisition, lease, or consideration of any Smartwatch or other Wearables (including Apple and non-Apple devices), including (a) all Smartwatches or other Wearables You have ever purchased, acquired, owned,

leased, paired with a Smartphone, or considered purchasing; (b) all of Your purchases of any Smartwatch or other Wearables, including receipts, invoices, order confirmations, and credit card statements; (c) Your decisions to purchase (or not purchase) a particular Smartwatch or other Wearable, including (i) Your reasons for upgrading to a newer model while remaining with the same brand (e.g., Apple Watch to Apple Watch), including discussions about new features, trade-in incentives, or the ease of the upgrade process; (ii) Your consideration of switching from one brand to another (e.g., Apple Watch to a non-Apple Smartwatch, or vice versa), including any discussion of the perceived benefits, costs, or difficulties associated with such a switch; and (iii) any comparisons You relied on regarding features, price, design, or compatibility; (d) any technical challenges or functional limitations You experienced when attempting to use a non-Apple Wearables device with an iPhone, including any inability to respond to notifications or maintain a consistent connection; and (e) the software Applications on Your Smartwatches, including: (i) Documents sufficient to identify all Apps You downloaded or used on Your Smartwatches; (ii) Documents relating to any Apps You attempted to download or use on Your Smartwatches but were unable to; and (iii) Documents relating to any Apps You uninstalled from Your Smartwatches, and Your reasons for doing so.

**REQUEST FOR PRODUCTION NO. 118:**

All Documents, data, and Communications relating to Your allegations in Paragraph 10 of the Consolidated Complaint that "'super app[s]' would threaten Apple's iPhone empire by facilitating switching between smartphones."

**REQUEST FOR PRODUCTION NO. 119:**

All Documents, data, and Communications relating to Your allegations in Paragraph 96 of the Consolidated Complaint that "[a]s users interact with a super app, they rely less on the

smartphone's proprietary software and more on the app itself" and "[e]ventually . . . become more willing to choose a different smartphone because they can access the same interface, apps, and content they desire on any smartphone where the super app is also present."

**REQUEST FOR PRODUCTION NO. 120:**

All Documents, data, and Communications relating to Your allegations in Paragraph 100 of the Consolidated Complaint that the Alleged Conduct "disincentivized investments in mini program development and caused U.S. companies to abandon or limit support for the technology in the United States."

**REQUEST FOR PRODUCTION NO. 121:**

All Documents, data, and Communications relating to Your allegations in Paragraph 127 of the Consolidated Complaint that Apple "copied the idea of a smartwatch from third-party developers."

**REQUEST FOR PRODUCTION NO. 122:**

All Documents, data, and Communications relating to Your allegations in Paragraph 133 of the Consolidated Complaint that "Apple uses its control of the iPhone, including its technical and contractual control of critical APIs, to degrade the functionality of third-party cross-platform smartwatches."

**REQUEST FOR PRODUCTION NO. 123:**

All Documents, data, and Communications relating to Your consideration of, or any attempt to, switch from an iPhone to a non-Apple Smartphone (or vice versa), including (a) the perceived monetary or non-monetary "switching costs and frictions" or benefits associated with such a switch, including any "financial, technological, and behavioral obstacles to switching" as alleged in Paragraph 223 of the Consolidated Complaint; and (b) any experience You have had or

attempt You have made to switch, including any "financial, technological, and behavioral obstacles to switching" that You encountered during the process.

**REQUEST FOR PRODUCTION NO. 124:**

All Documents, data, and Communications relating to Your reasons for upgrading to a newer model of Smartphone, or otherwise replacing an existing Smartphone or purchasing a new Smartphone device, while remaining with the same brand (e.g., Apple to Apple), including reasons such as discussions about new features, trade-in incentives, or the ease of the upgrade process.

**REQUEST FOR PRODUCTION NO. 125:**

All Documents, data, and Communications relating to any wireless carrier service plan, device installment plan, or promotional offer You enrolled in, including (a) Contracts, agreements, or terms and conditions for Your wireless service that included any device subsidy, financing, or installment plan associated with Your purchase of a Smartphone, tablet, Smartwatch or other Wearable device; and (b) any carrier-provided promotional offers, trade-in incentives, or loyalty discounts You received in connection with Your decision to purchase or upgrade a Smartphone, tablet, Smartwatch or other Wearable device.

**REQUEST FOR PRODUCTION NO. 126:**

All Documents, data, and Communications relating to Your purchase of or Your consideration of purchasing a second-hand or refurbished Smartphone (including Apple and non-Apple devices).

**REQUEST FOR PRODUCTION NO. 127:**

All Documents, data, Communications relating to Your decision to purchase or use any Apple devices, including the factors that influenced Your decision and Your reasons for selecting Apple products over competitor devices.

**REQUEST FOR PRODUCTION NO. 128:**

All Documents, data, and Communications relating to Your views, concerns, research, or inquiries regarding the privacy and security features of Smartphones, including how such considerations influenced Your Smartphone purchase decisions.

**REQUEST FOR PRODUCTION NO. 129:**

All Documents, data, and Communications relating to Your complete history of digital software purchases or acquisitions, including Applications, In-App Purchases, subscriptions, and any other downloadable content, regardless of whether such items were obtained via an App Marketplace, direct web download, or side loading. This request encompasses all software installed, purchased, or acquired on any device used by You (including Smartphones, tablets, Wearables, portable media players, smart TVs, gaming consoles) and shall include the name of the item, the cost (if any), and the date of acquisition.

**REQUEST FOR PRODUCTION NO. 130:**

All Documents, data, or Communications relating to the value You place on digital security or digital privacy, including the extent to which any such value factors into the devices You purchase and the Apps, features, and services you use.

**REQUEST FOR PRODUCTION NO. 131:**

All Documents, data, and Communications relating to Your detailed device and Application usage history on any Smartphone You owned or controlled, whether such data is retrieved from the device's current active memory or from any local or cloud-based backups (including iCloud, iTunes/Finder, Google Drive, Samsung Cloud, or similar archival services). This Request encompasses all available data and analytics logs from the "Screen Time" feature on iOS devices, the "Digital Wellbeing" feature on Android devices, or any other similar features.

This includes all information contained within the "See All App & Website Activity" (or equivalent) detailed view, including "Screen Time," "Most Used" Applications, "Pickups," and "Notifications."

**REQUEST FOR PRODUCTION NO. 132:**

All Documents, data, and Communications relating to Your detailed device and Application usage history on any Smartwatch You owned or controlled, whether such data is retrieved from the device's current active memory or from any local or cloud-based backups (including iCloud, iTunes/Finder, Google Drive, Samsung Cloud, or similar archival services). This Request encompasses all available data and analytics logs from the "Screen Time" feature on iOS devices, the "Digital Wellbeing" feature on Android devices, or any other similar features.

**REQUEST FOR PRODUCTION NO. 133:**

All Communications between You and Apple, including any records of Your visits to Apple stores, Communications with AppleCare specialists and/or Genius Bar specialists, and Communications with Apple support staff, and any Documents relating to such Communications.

**REQUEST FOR PRODUCTION NO. 134:**

All Documents and Communications relating to Your understanding that iPhone Apps must be downloaded from the App Store, including where You complained about or discussed the unavailability of a certain App on the App Store prior to purchasing Your iPhone.

**REQUEST FOR PRODUCTION NO. 135:**

All Documents and Communications relating to any user manuals or warranty documents You received for any iPhone, Apple Watch, or any other Apple products You purchased or acquired.

**REQUEST FOR PRODUCTION NO. 136:**

All Documents and Communications relating to Your views, reactions, or comments to any change in Apple's App Store policies.

**REQUEST FOR PRODUCTION NO. 137:**

All Documents, data, and Communications relating to Your calculations or comparisons of the combined cost of iPhone, including any data plans, necessary accessories, and subscription services for those devices.

**REQUEST FOR PRODUCTION NO. 138:**

All Documents, data, and Communications referenced in, relating to, or that You reviewed, referred to, identified, or relied on in drafting the Consolidated Complaint, to the extent such Documents have not already been produced.

**REQUEST FOR PRODUCTION NO. 139:**

All Documents, data, and Communications referenced in, relating to, or that You reviewed, identified or relied on in preparing any of Your responses to interrogatories or requests for admission in this litigation, to the extent such Documents have not already been produced.

**REQUEST FOR PRODUCTION NO. 140:**

All Documents, data, and Communications, to the extent not already produced, that You intend to rely on or otherwise expect to use in any hearing, deposition, motion, or trial in this litigation.

**REQUEST FOR PRODUCTION NO. 141:**

All non-privileged Documents provided to You by any person or entity (including any other Plaintiffs, investigators, consultants or other third parties) in connection with the preparation of the Consolidated Complaint.

**REQUEST FOR PRODUCTION NO. 142:**

All non-privileged Documents You reviewed or relied upon in connection with the preparation of the Consolidated Complaint.

**REQUEST FOR PRODUCTION NO. 143:**

All non-privileged Documents sufficient to show the identity of any Person who assisted, advised, or consulted with You in the preparation, investigation, or drafting of the Consolidated Complaint, including any other Plaintiffs, any investigators, consultants or other third parties.

**REQUEST FOR PRODUCTION NO. 144:**

All non-privileged Communications with any Person who assisted in the preparation of the Consolidated Complaint and any Documents relating to such Communications.

**REQUEST FOR PRODUCTION NO. 145:**

All Documents relating to all agreements between and/or among You and Your counsel pertaining to this litigation or any of Your allegations.

**REQUEST FOR PRODUCTION NO. 146:**

All Communications with Your counsel regarding the allegations in Your Consolidated Complaint that predate the formation of an attorney-client relationship, and any Documents relating to such Communications.

**REQUEST FOR PRODUCTION NO. 147:**

All Documents and Communications between You and any actual or potential member of the proposed class whom You seek to represent regarding this litigation as well as any non-privileged Communications with any other Person regarding this litigation.

**<u>REQUEST FOR PRODUCTION NO. 148:</u>**

All non-privileged Communications between You and any plaintiffs (or counsel for any such Plaintiff) named in the Direct iPhone Purchaser Plaintiffs' Consolidated Class Action Complaint, Dkt. No. 87, and Direct Apple Watch Purchaser Plaintiffs' First Amended Class Action Complaint, Dkt. No. 86, regarding this litigation, and any Documents relating to such Communication.

**<u>REQUEST FOR PRODUCTION NO. 149:</u>**

All Communications with any plaintiff (or counsel of any plaintiff) in the action *United States v. Apple Inc.*, 2:24-cv-04055 (D.N.J.), and any Documents relating to such Communications.

**<u>REQUEST FOR PRODUCTION NO. 150:</u>**

All Documents, data, and Communications relating to the alleged monetary or nonmonetary harm and/or monetary loss allegedly suffered by You due to the Alleged Conduct, whether directly or indirectly, both for Your individual claims and on behalf of any putative class, including relating to any and all claimed injuries and all damages calculations, estimates, or methodologies (including any calculations, estimates or methodologies regarding the pass-through of alleged overcharges) and all Documents describing all other relief that You seek individually and on behalf of the putative class.

**<u>REQUEST FOR PRODUCTION NO. 151:</u>**

All Documents relating to any agreement with any Person relating to the funding of this litigation.

Dated: January 5, 2026

Respectfully submitted,

*/s/ Liza M. Walsh*

Liza M. Walsh
Douglas E. Arpert
WALSH PIZZI O'REILLY FALANGA LLP
Three Gateway Center
100 Mulberry Street, 15th Floor
Newark, NJ 07102
Tel.: (973) 757-1100
Email: LWalsh@walsh.law
DArpert@walsh.law

Devora W. Allon, P.C. (*pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Tel.: (212) 446-5967
Email: devora.allon@kirkland.com

Cynthia E. Richman (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036
Tel.: (202) 955-8500
Email: crichman@gibsondunn.com

Daniel G. Swanson (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Tel.: (213) 219-7000
Email: dswanson@gibsondunn.com

Joseph R. Rose (*pro hac vice*)
Julian W. Kleinbrodt (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Tel.: (415) 393-8200
Email: jrose@gibsondunn.com
jkleinbrodt@gibsondunn.com

Craig S. Primis, P.C. (*pro hac vice*)
Matthew J. Reilly, P.C. (*pro hac vice*)
K. Winn Allen, P.C. (*pro hac vice*)
Luke P. McGuire (*pro hac vice*)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
Tel.: (202) 389-5000
Email: craig.primis@kirkland.com
matt.reilly@kirkland.com
winn.allen@kirkland.com
luke.mcguire@kirkland.com

Connor S. Sullivan (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Tel: (212) 351-4000
Email: cssullivan@gibsondunn.com

*Counsel for Defendant Apple Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of January, 2026, counsel of record have been served by electronic mail, pursuant to agreement of the parties, with a true and correct copy of the foregoing.

/s/ *Nick Barba*
Nick Barba

# EXHIBIT 3

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: APPLE INC. SMARTPHONE ANTITRUST LITIGATION<br>This Document Relates to:<br><br>ALL IPHONE PURCHASER ACTIONS | **Case No. 2:24-md-03113 (JXN) (LDW)**<br><br>**MDL No. 3113** |

## IPHONE PURCHASER PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION TO DEFENDANT APPLE INC.

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and the Local Rules of the United States District Court of New Jersey, Direct iPhone Purchaser Plaintiffs and Indirect iPhone Purchaser Plaintiffs (collectively, "Plaintiffs") hereby serve these Requests for Production on Defendant Apple Inc. ("Apple"). Apple shall respond to these Requests within thirty (30) days pursuant to Rule 34(b)(2)(A).

## DEFINITIONS

Notwithstanding any definition below, each word, term, or phrase used in these requests should be construed broadly to the fullest extent of its meaning in a good-faith effort to comply with the Federal Rules of Civil Procedure.

1. The term "**Alleged Conduct**" means the conduct set forth in the Direct Purchaser Plaintiffs' Consolidated Class Action Complaint, filed at Docket No. 87 in *In re: Apple Inc. Smartphone Antitrust Litigation*, No. 2:24-md-03113; and Corrected Indirect Purchaser Plaintiffs' Consolidated Class Action Complaint, filed at Docket No. 109.

2. The terms "**You**," "**Defendant**," "**Apple**" or "**the Company**" mean Apple Inc., its domestic and foreign parents, predecessors, divisions, subsidiaries, affiliates, partnerships and joint ventures, and all directors, officers, employees, agents, and representatives of the foregoing. The terms "parent," "subsidiary," "affiliate," and "joint venture" refer to any person in which there is partial (25 percent or more) or total ownership or control.

3. The term "**Agreement**" means any understanding, formal or informal, written or unwritten.

4. The terms "**and**" and "**or**" have both conjunctive and disjunctive meanings.

5. The term "**any**" means each and every.

6. The term "**app store**" means a distribution platform for mobile applications. Apple's proprietary "**App Store**" and the Google Play Store are examples of app stores.

7. The term "**App Store Review Guidelines**" means all app store review guidelines developed and maintained by Apple, including any and all iterations of such guidelines, including those that are referred to as "App Review Guidelines," "App Store Review Guidelines," or any other name or title.

8. The term "**Application Programming Interface**" or "**API**" means the interface description, Implementation, and Technical Documentation for any and all mechanisms through which a software application (on a Smartphone or another hardware or accessory, such as a Smartwatch) can communicate or interact with an operating system or another software application, library, or service. For example, an Apple-provided API might facilitate communication or interaction between a mobile application and the operating system of an iPhone to enable the application to access and interact with the near-field communication ("NFC") or Bluetooth controller on the device and can communicate or interact with an operating system or another software application, library, or service.

9. The term "**Cloud Streamed Game**" or "**Streaming Game**" means any native or web-based mobile application that allows a Smartphone user to play video games that are run on a remote server, data center, or service and streamed to the user's Smartphone. Examples of Cloud Streamed Game services include Microsoft xCloud Gamepass, NVIDIA GeForce NOW, Amazon Luna, Google Stadia, and Roblox.

10. The term "**Collaborative Work Environment**" means a platform used to create, edit, review, approve, store, organize, share, and access documents and information by and among authorized users, potentially in diverse locations and with different devices. Even when based on a common technology platform, Collaborative Work Environments are often configured as separate and closed environments, each one of which is open to a select group of users with layered access control rules (reader vs. author vs. editor). Collaborative Work Environments include iCloud, Google Drive, Box, Microsoft OneDrive, Quip, eRooms, document management systems (e.g., iManage), intranets, web content management systems ("CMS") (e.g., Drupal), wikis, and blogs.

11. The term "**Data Dictionary**" means documentation of the organization and structure of the databases or data sets that is sufficient to allow their reasonable use by the Plaintiffs, including, for each table of information: (a) the name of the table; (b) a general description of the information contained; (c) the size in both number of records and megabytes; (d) a list of fields available for each record; (e) the format, including variable type and length, of each field; (f) a definition for each field as it is used by the Company, including the meanings of all codes that can appear as field values; (g) the fields that are primary keys for the purpose of identifying a unique observation; (h) the fields that are foreign keys for the purpose of joining tables; and (i) an indication of which fields are populated. A database schema is an example of a Data Dictionary.

12. The term "**Digital Wallet**" means a mobile payment platform, payment app, or other mobile application, or combination of mobile applications, that allows users to make payments or use other credentials, such as to unlock doors, operate vehicles, access public transit, enter event venues, or present proof of identity or other personal credentials. Apple Wallet, Samsung Wallet, Google Wallet, PayPal, and Venmo are examples of Digital Wallets.

13. The term "**DPLA**" means all developer program license agreements developed and maintained by Apple and that Apple requires app developers to agree to, including any and all iterations of such agreements.

14. The term "**documents**" means all written, printed, or electronically stored communications or information ("ESI") of any kind in the possession, custody, or control of the Company, including information stored on social media accounts like X (formerly known as Twitter) or Facebook, chats, instant messages, text messages, other Employee Messaging Applications, and documents contained in Collaborative Work Environments and other document databases. "**Documents**" includes metadata, formulas, and other embedded information, whether hidden or visible, including comments, protocomments, links to documents, and bibliographic or historical data (including any changelogs) describing or related to any document. Unless otherwise specified, "**documents**" excludes bills of lading, invoices in non-electronic form, purchase orders, customs declarations, and other similar documents of a purely transactional nature; architectural plans and engineering blueprints; and documents solely related to environmental, tax, OSHA, or ERISA issues.

15. The term "**Employee Messaging Application**" refers to any electronic method used by the Company and its employees to communicate with each other or entities outside the Company for business purposes. "Employee Messaging Application" includes platforms, whether for ephemeral or non-ephemeral messaging, email, chats, instant messages, text messages, and other methods of group and individual communication (e.g., Microsoft Teams, Slack). "Employee Messaging Application" may overlap with "Collaborative Work Environment."

16. The term "**Enterprise customer**" means business or corporate customers, including government and public sector customers.

17. The term "**Entitlement**" means any permissions or other grants of authority made by or on behalf of Apple—including to itself—authorizing an app or service to use or invoke an API, or otherwise access one or more functions, resources, or operations of iOS, or to access or use one or more hardware components of the iPhone.

18. The term "**Framework**" means a set of reusable functionalities and associated resources for application development, including a hierarchical directory that encapsulates shared resources, such as dynamic shared libraries, nib files, image files, localized strings, header files, and reference documentation in a single package. Apple's UIKit and Core Data are examples of Frameworks.

19. The term "**Government Litigation**" means *United States et al. v. Apple Inc.*, No. 2:24-cv-04055, pending in the United States District Court for the District of New Jersey.

20. The term "**Government Plaintiffs**" means, collectively, the named plaintiffs in *United States et al. v. Apple Inc.*, No. 2:24-cv-04055, pending in the United States District Court for the District of New Jersey.

21. The term "**Identified Product or Service**" means each product or service within one or more of the following categories:

a. Cloud Streamed Games;
b. Messaging Systems;
c. Digital Wallets or Payment Apps;
d. Platform Apps or Mini Programs; or
e. Smartwatches.

22. The term "**Implementation**" means any software code that implements any part of an API, library, application, operating system, or any other software artifact. Implementation includes all representations of the code, including Source Code, intermediary code, binary code, or any other form of code.

23. The term "**including**" or "**includes**" means including, but not limited to.

24. The term "**iPhone**" or "**iPhones**" means any iPhone or any model of iPhone (regardless of the year that any particular model of iPhone was released or what features were available for that particular model of iPhone).

25. The term "**Investigation**" means the Government Plaintiffs' pre-Complaint investigation into Apple's conduct in the Government Litigation.

26. The term "**Library**" means any collection of implementations for APIs or other functions.

27. The term "**Messaging System**" means any application or service that can send and receive private digital messages (other than e-mail). Messaging Systems can use internet-based communications protocols (e.g., over-the-top (OTT) or internet protocol (IP)), telecommunications protocols (e.g., RCS, SMS, or MMS), or a combination of protocols. Apple Messages, iMessage, Google Messages, WhatsApp, Facebook Messenger, Signal, Telegram, and WeChat are examples of Messaging Systems. A Messaging System may also provide other functionality, such as video-calling, audio-calling, or file sharing.

28. The term "**mobile application**" (commonly referred to as an "**application**," "**app**," or "**mobile app**") means a software program designed for use on a Smartphone or other hardware or accessory, such as a Smartwatch. Examples of mobile applications include those in categories such as web browsing, productivity, games, social networking, or entertainment. A mobile application can be a native app or a web app.

29. The term "**Mini Program**" means a program that is run within a platform app. Mini Programs may be developed in their own programming languages, often using web technologies such as HTML, CSS, and JavaScript.

30. The term "**operating system**" means the software that coordinates and manages the hardware

and software on a computer or mobile device, including connections to other hardware or accessories, such as Smartwatches. iOS is an example of a mobile operating system.

31. The term "**Payment App**" means a mobile application, mobile payment platform, or digital financial service that enables users to make payments to or otherwise engage in financial transactions with third parties, including in-person payments at merchants using point-of-sale equipment capable of communicating with a Smartphone or Smartwatch (e.g., tap-to-pay or QR codes). Apple Pay, Google Pay, PayPal, and Venmo are examples of Payment Apps.

32. The term "**person**" means any natural person, corporate entity, partnership, association, joint venture, government entity, or trust and includes the Company.

33. The term "**Plaintiffs**" means, collectively, the named plaintiffs in the Direct Purchaser Plaintiffs' Consolidated Class Action Complaint, filed at Docket No. 87 in *In re: Apple Inc. Smartphone Antitrust Litigation*, No. 2:24-md-03113; and the Corrected Indirect Purchaser Plaintiffs' Consolidated Class Action Complaint, filed at Docket No. 109, pending in the United States District Court for the District of New Jersey.

34. The term "**plans**" includes proposals, recommendations, or considerations, whether finalized or adopted.

35. The term "**Platform App**" means a mobile app that provides a platform for other apps and software, including Mini Programs. Platform Apps include, but are not limited to, super apps.

36. The term "**Smartphone**" means any handheld mobile device with a touch screen that makes phone calls, transmits data, accesses the internet, contains an operating system, and can run third-party mobile applications. Apple's iPhone and the Samsung Galaxy S series are examples of Smartphones. E-readers, Smartwatches, laptops, and tablets are not Smartphones. The term "Smartphone" includes any operating system included with the device (e.g., iOS for the iPhone).

37. The term "**Smartwatch**" means any mobile device that is intended to be wrist-worn, can interoperate with a Smartphone, and contains an operating system that can process mobile applications (e.g., watchOS for the Apple Watch). The Apple Watch is an example of a Smartwatch.

38. The term "**Software Development Kit**" or "**SDK**" means a set of libraries, frameworks, implementations, APIs, documentation, and other resources for use in developing software or applications for a specific platform or operating system. Apple's iOS SDK is an example of an SDK.

39. The term "**Source Code Repository**" means a collection of files or archives containing Source Code, as well as any associated Source Code history, metadata, version control information, documentation, configuration files, data files, multimedia sources, and scripts, wherever they are stored.

40. The term "**Source Code**" is the human-readable computer code written by developers (or generated by AI or other helper tools) that adheres to the syntax and semantics of a programming language. Source Code implements the algorithms and functionality for all

computer programs and any other binary or executable code, including Libraries, Frameworks, and operating system kernels.

41. The term "**Technical Documentation**" means all documents (whether public or private) relating to the design, use, function, implementation, or operation of any API, Library, application, SDK, Framework, operating system, or any other software artifact. Technical Documentation includes, for example, all documents describing the appearance, functions, features, user interfaces, user experience, or interoperation with iOS of any API, Library, application, SDK, Framework, or other software artifact.

42. The term "**third party**" or "**third parties**" means any person other than Apple.

43. The term "**This Litigation**" means this action, *In re: Apple Inc. Smartphone Antitrust Litigation*, No. 2:24-md-03113, pending in the United States District Court for the District of New Jersey.

44. The term "**Threat Model**" means, with respect to the privacy and security of hardware, operating systems, software, data center, server, or service, any formal or informal assessments, analyses, reports, summaries, assumptions, studies, or other understandings about attacker characteristics, goals, capabilities, limitations, or assets. Threat Models also include documents and information reflecting assumptions (including the bases for such assumptions) and understandings about the security posture of a system, hardware, or software, including possible threats, vulnerabilities, potential mitigations, and tradeoffs.

45. The singular of any term herein includes the plural and vice versa.

46. The definitions provided herein shall apply to the terms defined regardless of capitalization.

## INSTRUCTIONS

1. Each request for production shall be answered in accordance with the Federal Rules of Civil Procedure and shall be continuing to the extent permitted under Rule 26(e). Apple must supplement or amend Apple's responses to these requests as appropriate pursuant to Rule 26(e).

2. Unless otherwise specified, these requests seek all responsive Documents created, modified, sent, or received during the period from January 1, 2014, to the end of fact discovery.

3. Unless otherwise specified, these requests seek responsive documents relating to any geography worldwide.

4. Each request shall apply to Documents or materials in Apple's possession, custody, or control, regardless of whether such Documents or materials are possessed by Apple or Apple's present or former domestic or foreign parents, subsidiaries, divisions, subdivisions, affiliates; Apple's predecessor and successor entities; or by any of Apple's employees, agents, representatives, attorneys, officers, directors, consultants, lobbyists, or any other Person acting or purporting to act on Apple's behalf, including, unless privileged and such privilege has not been waived, Your attorneys, and regardless of where such Documents are located.

5. In producing Documents, Apple must produce a legible copy of each Document requested

together with all non-identical copies and drafts of that Document. All metadata of electronic Documents must also be produced. Apple must retain all of the original Documents for inspection or copying throughout the pendency of this action, any appeal(s), and any related proceedings.

6. Any responsive Document that has been altered, including by the addition of marginal notes, handwritten notes, underlining, highlighting, date stamps, received stamps, or endorsed or filed stamps, and any draft, revision, modification or other version of a responsive Document, is a responsive Document in its own right and must be produced.

7. If any portion of any Document is responsive to any request, then the entire Document must be produced, including all attachments, linked Documents, and enclosures.

8. Pursuant to Federal Rule of Civil Procedure 34(b)(2)(E)(i), Documents must be produced either (a) as they are kept in the usual course of business (in which case, they must be produced in such fashion as to identify the department, branch, or office in whose possession they were located and, where applicable, the natural Person in whose possession they were found, or the server or central file in which they were found); or (b) identified as responsive to a specific request enumerated in these requests, with such specific request identified.

9. Documents and electronically stored information must be produced in accordance with the Stipulation and Order Governing Electronically Stored Information and Hard Copy Documents that will be filed in This Litigation.

10. All Documents must be produced in the file folder, envelope, or other container in which the Documents are kept or maintained. If, for any reason, the container cannot be produced, produce copies of all labels or other identifying marks.

11. Documents attached to each other should not be separated.

12. If identical copies of a Document are in the possession, custody, or control of more than one natural Person or other Document custodian, a copy of that Document must be produced from each such natural person or other Document custodian.

13. The fact that a Document is produced by another person does not relieve Apple of the obligation to produce all of Apple's copies of the same Document, even if Apple's copies are identical to a Document produced or held by another person.

14. If any Document is withheld based on an objection to any request, all Documents covered by that request but not subject to the objection must be produced.

15. To the extent Apple contends that responsive Documents in Apple's possession, custody, or control cannot be produced pursuant to the notice and consent requirements contained in a protective order or agreement, the written response to this request must identify the specific provisions of the protective order or agreement on which Apple is relying and the efforts that Apple has and will undertake to provide notice and obtain consents.

16. If Apple is unable to produce a Document that is responsive to a request, describe the Document, state why it cannot be produced, and, if applicable, state the whereabouts of such

Document when last in Apple's possession.

17. Any Documents that Apple deems to be Confidential or Highly Confidential as defined in the Discovery Confidentiality Order, Case No. 2:24-md-03113 (JXN) (LDW), Docket No. 124 (Oct. 7, 2025), must be produced in accordance with the terms of that Order.

18. Other than redactions of information withheld under a claim of privilege or other legal protection, Documents must be produced in full. If any requested Document cannot be produced in full, or if Apple withholds production of any Document or portion of any Document responsive to the requests based upon any privilege or other legal protection, Apple shall produce the Document to the extent possible and provide a description in accordance with the Stipulation and Order Governing Electronically Stored Information and Hard Copy Documents and the Discovery Confidentiality Order that will be filed in This Litigation.

19. Any reference to a Person that is a business entity and is not otherwise defined includes: that Person's predecessors (including any pre-existing Person that at any time became part of that entity after merger or acquisition), successors, parents, divisions, subsidiaries, affiliates, franchisors and franchisees; each other Person, directly or indirectly owned or controlled by any of them; each partnership or joint venture to which any of them is a party; all present and former directors, officers, employees, agents, attorneys, consultants, controlling shareholders (and any entity owned by any such controlling shareholder) of any of them; and any other Person acting for or on behalf of any of them.

## REQUESTS FOR PRODUCTION

**REQUEST NO. 1**

All communications between Apple (including its outside counsel) and any third party (including the third party's counsel) related to the Government Litigation or the Investigation, including all documents produced to Apple by persons other than the Government Plaintiffs in the Government Litigation.

**REQUEST NO. 1(A)**

All communications between Apple (including its outside counsel) and the Government Plaintiffs (including the Government Plaintiffs' counsel) related to the Government Litigation or the Investigation, including all documents produced to Apple by the Government Plaintiffs and all documents produced to the Government Plaintiffs by Apple in the Government Litigation.

**REQUEST NO. 1(B)**

All communications between Apple (including its outside counsel) and the Government Plaintiffs (including the Government Plaintiffs' counsel) related to any civil or criminal investigation regarding the iPhone, such as Civil Investigative Demands Nos. 30193, 30356, and 31300, including all documents produced to the Government Plaintiffs by Apple in said investigation.

**REQUEST NO. 1(C)**

All communications between Apple and any United States or non-United States government

entity, official, employee, or executive branch representative (whether or not formally employed by the government) other than the Government Plaintiffs related to any actual or potential antitrust investigation regarding the iPhone, including all communications between Apple and Brazil's Administrative Council for Economic Defense (CADE) related to Apple's restrictions on NFC technology.

**REQUEST NO. 1(D)**

All communications between Apple (including its outside counsel) and any third party (including the third party's counsel) related to This Litigation, including all documents produced to Apple by persons other than Plaintiffs in This Litigation.

**REQUEST NO. 1(E)**

All communications between Apple (including its outside counsel) and the Direct iPhone Purchaser Plaintiffs (including the Direct iPhone Purchaser Plaintiffs' counsel) or the Indirect iPhone Purchaser Plaintiffs (including the Indirect iPhone Purchaser Plaintiffs' counsel) or the Direct Apple Watch Purchaser Plaintiffs (including the Direct Apple Watch Purchaser Plaintiffs' counsel) related to This Litigation, including all documents produced to Apple by those plaintiffs.

**REQUEST NO. 2**

All documents referenced in or relied upon in any pleading, discovery response, brief, or other filing by Apple in The Government Litigation, including all documents identified in Apple's Federal Rule of Civil Procedure 26(a)(1) Initial Disclosures, and all documents, data, or information that Apple or any Apple expert intends to offer as evidence at trial or otherwise in the Government Litigation, including any that Apple or its experts could use, will use, or has used to support any testimony or opinion.

**REQUEST NO. 2(A)**

All documents referenced in or relied upon in any pleading, discovery response, brief, or other filing by Apple in This Litigation, including all documents identified in Apple's Federal Rule of Civil Procedure 26(a)(1) Initial Disclosures, and all documents, data, or information that Apple or any Apple expert intends to offer as evidence at trial or otherwise in This Litigation, including any that Apple or its experts could use, will use, or has used to support any testimony or opinion.

**REQUEST NO. 3**

All pleadings, written discovery responses, document productions, declarations, presentations (including any white papers or other analysis or advocacy), and expert reports served, filed, or produced by Apple, all expert reports served on Apple, all discovery requests served on Apple to the extent not included in Apple's responses, and transcripts of all depositions, hearings, and trials for Apple employees and experts, in any proceeding in which Apple is a party where the allegations relate to any Alleged Conduct in the Complaint, including *Epic Games v. Apple*; *In re Apple iPhone Antitrust Litigation*; *Cameron v. Apple*; *Alivecor v. Apple*; *Lopez v. Apple*; *Dr. Rachael Kent v. Apple*; *Dr. Sean Ennis v. Apple*; and European Commission investigations.

**REQUEST NO. 3(A)**

All pleadings, written discovery responses, document productions, declarations, presentations (including any white papers or other analysis or advocacy), and expert reports served, filed, or produced by Apple, all expert reports served on Apple, all discovery requests served on Apple to the extent not included in Apple's responses, and transcripts of all depositions, hearings, and trials for Apple employees and experts, in any proceeding in which Apple is a party where the allegations relate to any Alleged Conduct in the Complaint, including the Government Litigation.

**REQUEST NO. 3(B)**

All pleadings, written discovery responses, document productions, declarations, presentations (including any white papers or other analysis or advocacy), and expert reports served, filed, or produced by Apple, all expert reports served on Apple, all discovery requests served on Apple to the extent not included in Apple's responses, and transcripts of all depositions, hearings, and trials for Apple employees and experts, in any proceeding in which Apple is a party where the allegations relate to any Alleged Conduct in the Complaint, including *Mirage Wine + Spirits, Inc. v. Apple, Inc.* and *X Corp. & X.AI LLC v. Apple, Inc. et al.*

**REQUEST NO. 4**

All documents related to Apple's formal or informal policies, practices, training, or guidance for Apple personnel, including documents related to:

a. Enabling, disabling, or modifying settings regarding document retention systems;
b. Avoiding using certain words, terms, or phrases in internal or external communications and documents;
c. Communicating in person, by phone, or by videoconference rather than in writing;
d. Labeling documents "attorney-client privileged" or similar in business discussions; or
e. Including attorneys in communications or documents, or including inauthentic or pretextual requests for lawyers to advise.

**REQUEST NO. 5**

All documents shared with, or presented to, Apple's board of directors, or any committee or subcommittee thereof, related to Smartphones or any Identified Product or Service, including all minutes, recordings, summaries of reports or meetings, whether formal or informal, of any meetings of any Apple board of directors, or any committee or subcommittee thereof from January 1, 2007, onward.

**REQUEST NO. 6**

All documents related to any plans or changes Apple has made, considered making, or analyzed related to the iPhone or any Identified Product or Service in response to any actual or potential legal, judicial, or regulatory requirement, proceeding, or investigation in any jurisdiction worldwide, including the nature, costs, revenue impacts, and other actual or potential effects of those changes.

**REQUEST NO. 7**

All documents related to any consideration by Apple of developing, releasing, enabling, allowing, blocking, improving, or degrading a version of any Identified Product or Service that is interoperable with or usable with non-Apple Smartphones. For avoidance of doubt, this includes Project Fennel, Project Antwerp, Project Leatherback, Beeper Mini, and J129.

**REQUEST NO. 7(A)**

All documents related to the actual or potential impact on consumer behavior of any development, release, enablement, allowance, blocking, improvement, or degradation of any version of any Identified Product or Service that is or was interoperable or usable with non-Apple Smartphones.

**REQUEST NO. 8**

All documents related to actual or potential differences in functionality or ease of use with the iPhone—including any differences in developers' access to Entitlements, APIs, data, background processes, or differences due to App Review Guidelines—for:

a. Apple's Messaging Systems versus non-Apple Messaging Systems;
b. Apple Pay and Apple Wallet versus non-Apple Digital Wallets and Payment Apps;
c. Roblox or similar apps versus any other potential or actual Platform Apps, Mini Programs, or Cloud Streamed Games;
d. Native iOS apps that provide cloud-streamed services (such as Netflix) versus potential or actual Cloud Streamed Games;
e. Apple Watch versus non-Apple Smartwatches, including the connection to the Smartphone, access to LTE-phone number pairing, or access to APIs, such as those related to app notifications or the ability to perform other functionality available to the Apple Watch; and
f. Platform Apps available outside the U.S. and in the U.S., including the WeChat app available to iPhone users in the U.S. versus in China.

**REQUEST NO. 9**

All documents related to price, terms of sale (including rebates, fees, promotions, discounts, and financing), licensing terms or conditions, pricing plans, pricing strategies, costs, or profitability of Smartphones or any Identified Product or Service.

**REQUEST NO. 9(A)**

All documents related to any process, method, manner, policy, practice, strategy, or procedure that Apple proposed, considered or used to set, raise, lower, change, or maintain the prices charged for the iPhone, including all documents showing how, in setting the price for the iPhone (or determining adjustments to prices such as discounts), Apple considered or factored in the price of any other product or service.

**REQUEST NO. 10**

All documents after January 1, 2010 related to competition affecting Smartphones or Identified

Products or Services offered by Apple or any firm, including:

a. Relative quality or features, including technology, performance, privacy, security, user experience, brand strength, customizability, ability to integrate with or interoperate with other hardware or software, network effects, and cost;
b. Entry, expansion, exit, scale, and repositioning;
c. Market segmentation by geography, type of consumer, Smartphone type, Smartphone features, sales channel, or Smartphone price or price band;
d. Competitive positioning;
e. Sales volumes, revenue, profitability, or market share; and
f. Nascent threats, disintermediation, and commoditization.

**REQUEST NO. 11**

All documents related to any actual or potential barriers to entry, expansion, or repositioning related to Smartphones, mobile operating systems, or any Identified Product or Service, including all documents related to network effects, economies of scale, and economies of scope.

**REQUEST NO. 12**

All documents after January 1, 2010 related to any person who previously provided or attempted to provide a Smartphone, mobile operating system, or an Identified Product or Service but ceased doing so.

**REQUEST NO. 13**

All documents related to single-homing, multi-homing, or usage of a "preferred" or "primary" product or service, by users, developers, or any other group, related to Smartphones or any Identified Product or Service.

**REQUEST NO. 14**

All documents related to Apple's plans, strategies, objectives, research, development, investments, roadmaps, marketing, and features for the iPhone, Apple's App Store, or any Identified Product or Service. For avoidance of doubt, this includes all documents related to Apple's product development expenses, including expenses related to privacy and security, for the iPhone, Apple's App Store, and any Identified Products or Services.

**REQUEST NO. 15**

All documents related to any efforts to increase, protect, or preserve Apple's market share, sales, or profitability for Smartphones or any Identified Product or Service, including possible or actual responses from other market participants.

**REQUEST NO. 15(A)**

All documents related to any efforts to prevent, delay, or otherwise impede market entry of any Smartphone, including possible or actual responses from other market participants.

**REQUEST NO. 15(B)**

All documents related to any consideration of increasing, protecting, or preserving, or any desire to increase, protect, or preserve, Apple's market share, sales, or profitability for Smartphones or any Identified Product or Service, including possible or actual responses from other market participants.

**REQUEST NO. 15(C)**

All documents related to any consideration of preventing, delaying, or otherwise impeding, or any desire to prevent, delay, or otherwise impede, market entry of any Smartphone, including possible or actual responses from other market participants.

**REQUEST NO. 16**

All documents related to any actual or potential pricing power, market power, monopoly power, bargaining leverage, or negotiating leverage that Apple has or may have (including presently, in the past, or in the future) relating to Smartphones or any Identified Product or Service, including with respect to consumers, Enterprise customers, app developers, wireless carriers, iPhone retailers, hardware or accessory manufacturers, financial institutions, and automotive manufacturers.

**REQUEST NO. 16(A)**

All documents related to any actual or potential pricing power, market power, monopoly power, bargaining leverage, or negotiating leverage that Apple has or may have (including presently, in the past, or in the future) relating to Smartphones or any Identified Product or Service, including any documents or communications exchanged with:

a. any public relations firms, lobbying firms, communications agencies, or any other firm or agent acting on your behalf to analyze relevant markets, disseminate information, or influence public discourse or perception;

b. any nonprofit organizations, advocacy groups, policy institutes, trade associations, or academic institutions; or

c. any U.S. federal, state, or local governmental, regulatory, or judicial body (including any attorney general's office or congressional committee), or any foreign or international governmental, regulatory, or judicial body (including the U.K. Competition and Markets Authority, European Commission, Bundeskartellamt, or Australian Competition and Consumer Commission).

**REQUEST NO. 17**

All documents related to how the features, functionality, availability, and interoperability of Smartphones or any Identified Product or Service may affect users' Smartphone purchasing decisions, including documents related to user satisfaction, Smartphone switching, consumer perceptions and attitudes, preferences, usage, purchase intentions, and all other relevant metrics, key performance indicators, and measures.

**REQUEST NO. 18**

All documents related to any factors affecting consumer demand for a Smartphone, such as the Smartphone's price, features, or quality (including quantity, price, and quality of available apps, hardware accessories, or other complementary products and services); usage of any Identified Product or Service; and all documents related to metrics, key performance indicators, and measures related to consumer demand for a Smartphone.

**REQUEST NO. 18(A)**

All documents related to the cross-elasticity of demand for the iPhone, including any documents concerning the responsiveness of demand to changes in price among the iPhone and all other Smartphones.

**REQUEST NO. 19**

All documents related to any factors affecting the ability or incentive for developers or third parties to create apps or accessories compatible with a particular Smartphone, such as the size and characteristics of the installed base of users of a particular Smartphone or type of Smartphone, the costs, fees, or commissions charged by the Smartphone provider, features offered by the Smartphone, technological restrictions imposed by the Smartphone provider or operating system, and any other terms of dealing.

**REQUEST NO. 20**

Documents sufficient to show Apple's plans, strategies, and analysis relating to the sale of used or refurbished iPhones and non-Apple Smartphones, including acquisition strategies for any re-seller, Smartphone trade-in values, incentives or credits offered to the person trading in the device, and the countries where used or refurbished Smartphones are sourced and sold.

**REQUEST NO. 21**

All documents related to actual or potential purchases of iPhones outside of the United States for resale or use in the United States, including documents related to actions Apple takes or asks third parties to take to limit, prevent, or punish such purchases and resale.

**REQUEST NO. 22**

For each model of iPhone sold in the United States as compared to models sold outside of the United States, documents sufficient to show all differences in:

a. technical specifications, hardware, software, and configuration;
b. prioritization for release and shipments;
c. sales channels and terms of sale;
d. upgrade and switching rates;
e. competitive positioning and market share;
f. pricing (including discounts, promotions, etc.);
g. costs; and
h. profitability.

**REQUEST NO. 23**

All documents related to the following reports and all similar reports:

a. Products & Services Profitability;
b. Services Revenue Review;
c. P&L Dashboard;
d. Quarterly LRF – Corporate FP&A;
e. Pan-Geo Performance Summary;
f. Hardware Roadmaps – US Pricing and Costs;
g. Hardware margin roadmaps;
h. Net Effective Price Tracker – iPhone NEP;
i. All LOB Market Segmentation – WW Sales Finance;
j. All LOB Country Profile – WW Sales Finance; and
k. iOS System Report.

**REQUEST NO. 24**

Documents sufficient to show the release of each version of the iPhone or iOS, including the date of release for each geography and all changes made.

**REQUEST NO. 25**

All documents since January 1, 2010 related to the actual or potential effects of ending or altering any aspect of the Alleged Conduct, including allowing alternative app stores or app downloads from websites on the iPhone, modifying App Review Guidelines, or giving third parties access to the APIs or features currently or previously reserved for Apple products or services.

**REQUEST NO. 26**

Documents and data sufficient to show, on a quarterly and annual basis since January 1, 2010, the revenue, expenses, costs, margins, and profitability of each Apple product or service. For avoidance of doubt, this includes documents sufficient to show Apple's methodologies for recognition of and allocation of revenue, costs, expenses, margins, and profitability, including any accounting policies and procedures manuals.

**REQUEST NO. 27**

All documents and data related to any Smartphone's usable life, the length of time over which consumers use it, the number and type of consumers that use it, its quality and value at any point in time, and all related metrics or key performance indicators.

**REQUEST NO. 28**

All documents related to the value of a user to Apple, including customer lifetime value, entry point analyses, revenue per user, subsequent hardware purchases, and any revenue or benefit that Apple has received or anticipates receiving from a customer or third party due to a customer's purchase or use of any Apple products, services, or subscriptions. For avoidance of doubt, this includes documents related to Apple's assumptions or analyses about user behavior related to any such analysis, as well as all metrics, key performance indicators, and other measures related to any such analysis.

**REQUEST NO. 29**

From 2007 to the present, all contracts between Apple, U.S. wireless carriers, or any other retailers relating to the iPhone, and all communications from 2015 onwards related to the negotiations of those contracts or to carrier or retailer sales or promotions.

**REQUEST NO. 29(A)**

From 2007 to the present, all documents related to contracts between Apple and U.S. wireless carriers or any other retailers relating to the sale of iPhones, and all communications from 2014 onwards related to the negotiations of those contracts or to carrier or retailer sales or promotions.

**REQUEST NO. 30**

All reports or analyses related to Smartphones or any Identified Product or Service authored by third parties, including IDC, Strategy Analytics, Counterpoint, Gartner, IHS Markit, Canalys, Kantar Group, Comlink (Opensignal), App Annie (data.ai), any U.S. wireless carrier, Meta, or Google.

**REQUEST NO. 31**

All documents after January 1, 2010 related to Smartphone customer segments, groups, or sub-groups, including:

a. Previous Smartphone ownership, including upgraders, switchers, and "boomerangs";
b. Use of other Apple products or services;
c. Wireless carriers;
d. Country or geography;
e. Demographic characteristics; and
f. Social graphs.

**REQUEST NO. 32**

All documents related to the social dynamics, stigma, or peer pressures in choice of Smartphone or Identified Product or Service in any customer segment, including all documents related to Apple's efforts to increase usage by particular consumer segments, use of the iPhone or any Identified Product or Service by younger customers, family members, or peers, and any effect on future demand for Apple Smartphones or other Apple products and services.

**REQUEST NO. 33**

Documents sufficient to show the level of iPhone app development activity in the United States over time related to:

a. User accounts;
b. Developer accounts;
c. Apps;
d. Subscriptions;
e. Engagement;

f. Searches;
g. Downloads;
h. Updates;
i. Paid transactions;
j. Refunds;
k. Complaints;
l. Fraud;
m. Submissions, approvals, rejections, and removals from the Apple App Store; and
n. Documents discussing the appropriate metrics, key performance indicators, and measures for the above.

**REQUEST NO. 34**

All documents related to the use or potential use of apps or app stores directly downloaded from the internet or non-Apple app stores on the iPhone in any geography, including technical assessments, use by Enterprise customers, any comparisons to Android or other operating systems, and any actual or potential effect on:

a. Apple's revenues and profitability;
b. User and developer behavior, spending, revenue, and profitability;
c. The number, quality, and features of apps available for use on the iPhone;
d. Consumer demand, purchase intentions, and Smartphone switching;
e. Privacy or security for users or developers, including threat assessments or Threat Models; and
f. Potential alternatives to app stores, including web stores and progressive web apps.

**REQUEST NO. 34(A)**

All documents related to the use or potential use of apps or app stores directly downloaded from the internet or non-Apple app stores on the iPhone in any geography, including all documents and data regarding consumer propensity to use web-based apps versus native iPhone apps.

**REQUEST NO. 35**

Documents sufficient to show differences between iPhone, Mac, iPad, Apple Watch, and Apple TV with respect to (1) app distribution, (2) web browsers or middleware, (3) privacy, or (4) security.

**REQUEST NO. 36**

All documents related to payment methods actually or potentially available for use on the iPhone, including related to payment processors, in-app payments, payments using virtual currencies, and payments made on web browsers or web apps. For avoidance of doubt, this includes any payment methods on the iPhone that Apple has disallowed in whole or in part, at any point in time.

**REQUEST NO. 37**

All documents related to the design, development, marketing, or sale of any Smartphone or Identified Product or Service, concerning:

a. user habits, user inertia, user-interface features, user-facing permission flows, user-facing defaults, user-facing choice screens, user-facing notifications, and other messages presented to users by a Smartphone's operating system or mobile applications;
b. the number of steps required, load times, or other frictions for users to set up, use, or purchase a Smartphone, mobile application, or Identified Product or Service;
c. performance standards to which Apple has held its own apps, products, and services;
d. Apple's assessments of the user experience (e.g., usability, friction, latency, setup process, permission flows) for Apple and non-Apple apps, products, or services on iPhones or non-Apple smartphones; and
e. anonymized data regarding the actual performance of any Smartphones or Identified Products and Services.

**REQUEST NO. 38**

All documents related to consumer views about the privacy, security, user experience, or quality of Smartphones, including how consumers' views:

a. are affected by Smartphone manufacturers' product decisions and marketing strategies and campaigns;
b. are affected by the product decisions and marketing strategies and campaigns related to any Identified Product or Service;
c. compare to actual differences in Smartphone privacy, security, and quality; and
d. affect Smartphone demand, purchase intentions, switching, and consumer satisfaction.

**REQUEST NO. 39**

All documents related to user switching between Smartphones or any models thereof (i.e., switching between an iPhone and a non-Apple Smartphone, switching from one iPhone to another iPhone, or switching from one non-Apple Smartphone to another non-Apple Smartphone), including:

a. the ease or difficulty of switching,
b. the costs of switching,
c. the relationship between the cost or difficulty and likelihood of switching,
d. stickiness,
e. customer loyalty or churn,
f. tools and support services available for switching,
g. the duration of time between switching (e.g., how long a user has used an iPhone before switching to a non-Apple Smartphone),
h. consumer views about switching,
i. the availability and performance of complementary products and services, including any changes thereto, and
j. documents related to the Data Transfer Project or other products, services, initiatives, or partnerships that facilitate switching from iPhones to non-Apple smartphones.

**REQUEST NO. 39(A)**

All documents related to user switching between Smartphones or any models thereof (i.e., switching between an iPhone and a non-Apple Smartphone, switching from one iPhone to another iPhone, or switching from one non-Apple Smartphone to another non-Apple Smartphone), including:

a. factors that do or may drive consumers to switch from the iPhone to other products,

b. factors that do or may drive consumers to switch from other products to the iPhone,

c. the projected or actual rate of substitution of any non-Apple Smartphone for the iPhone, including any projections, forecasts, analyses, or reports by Apple, securities analysts, or financial or tech industry reporters,

d. how to reduce consumer switching away from the iPhone, and

e. how to increase "iPhone stickiness," as used in paragraphs 65, 66, 108, and 185 of the complaint filed at ECF 51 in *United States et. al. v. Apple*, 2:24-cv-04055 (D.N.J. Jun. 11, 2024).

**REQUEST NO. 40**

All documents related to how consumers' ownership or use of one or more Apple products or services affects consumers' decisions regarding the purchase or use of additional products or services from Apple or other firms.

**REQUEST NO. 41**

All documents after January 1, 2010 related to the inability of non-Apple Messaging Systems to access the iPhone's carrier messaging capabilities, including requests from third parties for this ability, consideration of whether to provide this ability to third-party Messaging Systems, and any potential effects of doing so.

**REQUEST NO. 42**

All documents after January 1, 2010 related to aspects of Apple Messages that differentiate, or plans for aspects of Apple Messages that could differentiate, messaging among iPhone users from messaging with non-iPhone users, including green and blue chat bubbles.

**REQUEST NO. 42(A)**

All documents after January 1, 2010, related to the actual or potential impact of differentiating messaging among iPhone users from messaging with non-iPhone users (including green and blue chat bubbles) on consumer behavior, consumer purchasing decisions, consumer opinions of non-iPhone Smartphones, sales revenue from iPhones, or Apple's profitability.

**REQUEST NO. 43**

All documents after January 1, 2012 related to the consideration, adoption, or development of cross-platform standards relating to an Identified Product or Service. This includes all documents relating to the consideration, adoption, or development of SMS, MMS, RCS, or messaging

alternatives, including documents related to whether or how to adopt RCS on the iPhone, whether or how third parties adopt RCS, and the use or potential use of SMS, MMS, or RCS by non-Apple Messaging Systems on the iPhone or non-Apple Smartphones. This also includes all documents related to the development or potential development of cross-platform standards, protocols, or capabilities relating to video calls.

**REQUEST NO. 44**

All documents related to Apple's Actionable Notifications API, the Apple Notification Center Service (ANCS) API, or any software that enables a Smartwatch to access Smartphone notifications or functionality, including:

a. potential and actual development costs and challenges (past, current, or future);
b. requirements, design, or features, including roadmaps;
c. the availability of similar capabilities on Android or other Smartphone operating systems;
d. potential design for non-Apple Smartwatches or barriers thereto; and
e. potential or actual features available to non-Apple Smartwatches.

**REQUEST NO. 45**

All documents related to the development and implementation of new features for the Actionable Notifications API, the ANCS API, or any software that enables a Smartwatch to access Smartphone notifications or functionality, including:

a. the Company's assessment of whether to implement any new features;
b. communications between the Company and any third parties concerning or requesting the implementation of new features;
c. the date that development of any feature began, and the date that the feature was first implemented or provided; and
d. total development costs incurred by the Company to date, and the total costs projected for any continuing development of the new feature.

**REQUEST NO. 46**

All documents related to the Company's assessment of whether to expand the functionality of or access to the Actionable Notifications API, ANCS API, or any software that enables a Smartwatch to access Smartphone notifications or functionality, so that non-Apple Smartwatches can respond to messages, app notifications, or utilize other APIs or functionalities available to the Apple Watch.

**REQUEST NO. 47**

All documents related to the ability of non-Apple devices to connect or interact with the iPhone, including but not limited to their ability to receive incoming message notifications, reply to incoming messages, compose new messages, access messages, and mark messages as read.

**REQUEST NO. 48**

All documents after January 1, 2017 related to the decision whether to offer or allow cloud-

streamed applications on the iPhone (including both Cloud Streamed Games and other cloud-based services), including the reasons for any such decision.

**REQUEST NO. 49**

All Documents related to Apple's plans for the Games app announced at WWDC 2025, including Apple's strategic objectives, assessments of other gaming apps or services, integration with other Apple apps such as Apple's App Store, Apple Arcade, or Game Center, actual or potential effects on developers or consumers related to game discovery, distribution, usage, or monetization, and analyses related to alternative methods of distributing games, including Cloud Streamed Game apps.

**REQUEST NO. 50**

All documents related to Apple's App Store Review Guidelines affecting any Identified Product or Service, including:

a. Drafting, adoption, application, interpretation, or enforcement of Apple's App Store Review Guidelines;
b. Agreements between Apple and any developer related to changes or exceptions to the Apple App Store Review Guidelines, including any agreements that were later formalized into an App Store Review Guideline or exception thereto, including Apple's 2011 agreement with Meta related to the Facebook app;
c. Changes, considered changes, or reinterpretations of any Apple App Store Review Guideline; and
d. The actual or potential effect of any changes, considered changes, or reinterpretations of any Apple App Store Review Guideline on the iPhone or any Identified Product or Service.

**REQUEST NO. 51**

All documents after January 1, 2010 related to changes or considered changes to the Apple Developer Program License Agreement relating to iOS or WatchOS in the United States.

**REQUEST NO. 52**

All documents, analyses, or data after January 1, 2017 relating to TestFlight Beta tests for Cloud Streamed Games, including all data related to testers, installs, sessions, crash logs, crash reports, feedback, bugs, and battery and hardware performance differences.

**REQUEST NO. 53**

All documents after January 1, 2011 related to Platform Apps' or Mini Programs' potential or actual use; benefits, risks, revenue potential, and differences relative to native apps; and Apple's potential or actual treatment of Platform Apps or Mini Programs.

**REQUEST NO. 54**

All documents related to any mobile app's access to or use of (or inability to access or use) any iPhone features or capabilities related to connections to other devices or servers, including near-

field communication (NFC), host card emulation (HCE), ultra-wide band (UWB) technology, or any related APIs, for any purpose, including documents related to the number, nature, popularity, and usage of mobile apps that access or use NFC, HCE, or UWB.

**REQUEST NO. 55**

For each Identified Product or Service, all documents related to any potential or actual limitation or prohibition on the availability or functionality of any non-Apple product, feature, or service, including:

a. documents related to any authorizations, allowances, denials, or limitations on access to APIs, Entitlements, functionalities, features, and data sets related to any Identified Product or Service;
b. documents related to any authorizations, allowances, denials, or limitations on access to APIs, SDKs, Frameworks, Libraries, any other software artifacts related to any Identified Product or Service; and
c. documents related to mechanisms, technical or otherwise, to implement or enforce limitations or prohibitions on the availability or functionality of any product, feature, or service, including references to the Source Code that implements each such means or mechanism.

**REQUEST NO. 56**

For each Identified Product or Service, all documents related to:

a. any APIs, Entitlements, signatures (other than cryptographic keys), or other permissions, restrictions, or limitations on third party developers, including all Implementations, Technical Documentation, Source Code Repositories, Frameworks, Libraries, and SDKs provided or authorized by Apple;
b. any in-line documentation contained in any API or Source Code provided or authorized by Apple;
c. any free-form text related to any API or Source Code provided or authorized by Apple;
d. any Apple SDKs available to developers of any Identified Product or Service;
e. any text or other indicators (including any links, pointers, citations, or references) that refer to the Source Code relating to any Apple-provided API or Entitlement or related documentation; and
f. all Apple Source Code Repositories referenced in or otherwise related to any SDKs, Entitlements, APIs, Frameworks, Libraries, or any other software artifacts referenced in subpart (b), above.

**REQUEST NO. 57**

All documents related to (a) any purported procompetitive justification for the Alleged Conduct; (b) any purported innovation or benefit to Smartphone users, developers, carriers, or others from the Alleged Conduct, including any purported innovation or benefit related to privacy, security, fraudulent or deceptive activities, or user experience or human-computer interaction; (c) any alternative means of achieving any purported innovation or benefit other than the Alleged Conduct;

and (d) any potential or actual business or technical reason for the Alleged Conduct.

**REQUEST NO. 58**

For the iPhone and each Apple or non-Apple Identified Product and Service, all documents related to Apple's adoption or implementation of privacy or security policies or practices for information stored, transmitted, or received by iOS, the iPhone, Apple, or third parties, including nutrition labels and privacy manifest files.

**REQUEST NO. 59**

All studies, analyses, investigations, and reports related to fraudulent, malicious, misleading, or deceptive activity, code, content, information, or patterns within or related to the iPhone, iOS, or any Identified Product or Service, including any threat assessment or Threat Model, in whatever form it may exist.

**REQUEST NO. 60**

All documents related to Apple's ability to access or use data or metadata from the iPhone or from any Identified Product or Service that is not as available or accessible to third- party developers, including the reasons for any such differences and any benefits to Apple therefrom.

**REQUEST NO. 61**

Each database or data set, as well as any associated Data Dictionaries and documentation, relating to Apple Smartphones or any Identified Product or Service after January 1, 2009, containing information derived from users in the United States, Australia, Canada, China, France, Germany, India, Japan, Mexico, Brazil, Russia, South Korea, and United Kingdom, excluding enterprise users, that contains information relating to user:

a. characteristics;
b. relationships between or among the Company's other users (including Family Sharing);
c. specific devices used (e.g., iPhone model, year, and storage);
d. ownership, activation, deactivation, or usage of the Company's devices;
e. ownership, activation, deactivation, or usage of third-party devices;
f. switching to, from, or among devices;
g. purchase, activation, deactivation, or usage of the Company's apps, subscriptions, products, or services;
h. purchase, activation, deactivation, or usage of third-party apps, subscriptions, products, or services; and
i. unique identifiers sufficient to link the user across data sets produced in response to these Requests.

**REQUEST NO. 62**

Monthly iPhone and Apple Watch sales data worldwide, as well as any associated Data Dictionaries and documentation, for all models after January 1, 2010, including:

a. The country and state where the iPhone or Apple Watch was purchased;
b. The country and state where the iPhone or Apple Watch was activated, if different than the country and state of purchase;
c. All fields necessary to identify the model and specifications, including serial number, IMEI, ICCID, MAC address, brand, model, and storage capacity;
d. All fields necessary to identify the wholesale customer or retailer and sales channel, including the wireless carrier brand through which devices are sold to consumers; and
e. All fields related to units sold, price, incentives, revenues, costs, discounts, rebates, returns, margins, and profitability maintained in the ordinary course of business.

**REQUEST NO. 63**

Each database or data set, as well as any associated Data Dictionaries and documentation, relating to studies, reports, and analyses of consumers, developers, or other groups related to Smartphones or any Identified Product or Service. These include surveys, polls, focus groups, market research, market segmentations, online anthropologies, A/B testing or other experiments, and choice modelling. They exclude databases and data related to purely cosmetic hardware changes.

**REQUEST NO. 64**

All documents related to any decision on whether to limit the availability or functionality of third-party Digital Wallets on the iPhone; the reason for any such decision; and the actual or potential impact of any such decision on iPhone sales, iPhone switching, or consumer perception or demand. This includes any decision on whether to:

a. Limit access by developers of third-party Digital Wallets or Payment Apps to NFC APIs;
b. Limit use of third-party Digital Wallets or Payment Apps to manage and pay for subscriptions or in-app purchases;
c. Limit the ability of iPhone users to set a third-party Digital Wallet or Payment App as the default payment app;
d. Limit the ability of third-party Digital Wallets or Payment Apps to authenticate digital payment options on online checkout pages; and
e. Limit notifications that cheaper prices for services are available using third-party Digital Wallets or Payment Apps.

**REQUEST NO. 65**

All documents and data related to any decision on whether to limit the availability or functionality of Cloud Streamed Games or Streaming Apps on the iPhone; the reasons for any such decision; and the actual or potential impact of any such decision on iPhone sales, iPhone switching, or consumer perception or demand. This includes any decision whether to:

a. Require developers to submit Cloud Streamed Games, Streaming Apps, or updates to Cloud Streamed Games or Streaming Apps individually for approval;
b. Require Cloud Streamed Games or Streaming Apps to use Apple's proprietary payment system for in-app purchases; and

c. Require developers to create iOS-specific versions of Cloud Streamed Games and Streaming Apps.

**REQUEST NO. 66**

All documents related to any decision on whether to limit the availability or functionality of third-party Messaging Systems on the iPhone; the reasons for any such decision; and the actual or potential impact of any such decision on iPhone sales, iPhone switching, or consumer perception or demand. This includes any decision whether to:

a. Enable third-party Messaging Systems to operate through SMS, MMS, RCS, or messaging alternatives;
b. Enable third-party Messaging Systems to continue operating in the background when the Messaging System is closed;
c. Enable third-party Messaging Systems to access the iPhone camera; and
d. Enable third-party Messaging Systems to send messages that are compatible with iMessage.

**REQUEST NO. 67**

All documents related to any decision on whether to limit the interoperability of third-party Smartwatches with the iPhone (or of the Apple Watch with third-party Smartphones); the reasons for any such decision; and the actual or potential impact of any such decision on iPhone sales, iPhone switching, or consumer perception or demand. This includes any decision on whether to:

a. Limit the ability of third-party Smartwatches to respond to notifications;
b. Limit the ability of third-party Smartwatches to maintain a consistent Bluetooth connection with the iPhone when Bluetooth is manually disabled on the iPhone;
c. Limit the ability of third-party Smartwatches to maintain a consistent connection with, to continue to operate in the background of, or to continue to share data with the iPhone when the iPhone is in Low Power Mode; and
d. Limit the ability of third-party Smartwatches to connect to a cellular network using a phone number associated with an iPhone.

**REQUEST NO. 68**

All documents regarding any decision on whether to limit the availability or functionality of Platform Apps on the iPhone; the reasons for any such decision; and the actual or potential impact of any such decision on iPhone sales, iPhone switching, or consumer perception or demand. This includes any decision to:

a. Disallow Platform Apps on the iPhone; and
b. Require Platform Apps to list Mini Programs using text-only title lists.

**REQUEST NO. 69**

All documents regarding any consideration of changing or decision to change the headphone jack, charging port, or any other element of the iPhone hardware that interacts with other devices, including documents discussing the actual or potential impact of any such change on consumer

behavior.

**REQUEST NO. 70**

All documents regarding consumer steering toward or away from Apple Pay, including:

a. All documents received from, sent to, or prepared for payment card networks or issuing banks regarding consumer steering (including regarding actual or potential efforts to direct, instruct, prompt, incentivize, or otherwise encourage consumers to use Apple Pay, and the decisionmaking behind those efforts).
b. All documents regarding steering consumers to use Apple Pay; and
c. All documents regarding actions by others that actually or potentially steered consumers away from using Apple Pay in favor of other payment methods.

**REQUEST NO. 71**

All consumer comments regarding any Identified Product or Service, whether stored as documents or structured data.

**REQUEST NO. 72**

All documents related to any discount, rebate, or markdown of list price provided to any purchasers of the iPhone, including retailers or other bulk purchasers.

**REQUEST NO. 73**

All documents related to any relationship between the costs of producing, distributing, marketing, promoting, and selling the iPhone, and the price or prices at which the iPhone is sold, including pricing manuals, matrices, guidelines, policies, and/or formulas, and including any breakdowns by customer type.

**REQUEST NO. 74**

All documents or communications related to any analysis, study, survey, report, assessment, paper, identification, explanation, or discussion by you or by any other entity related to any market(s) in which any iPhone competes or has ever competed, including:

a. Documents or communications identifying the market(s) in which any of your iPhone models compete or have ever competed;
b. Documents or communications discussing or otherwise related to the size (by any metric) or any characteristic of any market in which any of your iPhone models compete or have ever competed;
c. Documents or communications identifying, discussing, or otherwise related to any aspect of competition or potential competition in the markets for Smartphones, or otherwise related to any meetings discussing competition or potential competition in (or your competitors or potential competitors in) the markets for Smartphones;
d. Documents or communications identifying or discussing your competitors, or that refer to any entities as your competitors, or from your competitors, in the markets for Smartphones, where the document or communication relates to competition in one or both of those

markets.

**REQUEST NO. 75**

All documents related to the data, publications, and other sources (whether internal or third-party) Apple uses or has used to monitor the United States market (including any geographic subdivisions thereof) for Smartphones.

**REQUEST NO. 76**

All documents related to any analysis, study, survey, report, assessment, paper, identification, explanation, or discussion by Apple concerning actual or proposed iPhone life-cycle management strategies.

**REQUEST NO. 77**

All documents regarding Apple's influence on antitrust articles, scholarly or otherwise, that are intended for publication and that discuss iPhones, Smartphones, Smartphone apps, or app stores, including:

a. Documents regarding Apple's funding, solicitation, or editing of said articles;
b. Documents regarding communications between Apple and any academics or other commentators who write or contribute to said articles; or
c. Documents sufficient to show any financial relationship between Apple and academics or other commentators who write or contribute to said articles.

**REQUEST NO 78**

All documents regarding the "commoditization" of Smartphone hardware as that term is used in paragraph 66 of the complaint filed at ECF 51 in *United States et al. v. Apple*, 2:24-cv-04055 (D.N.J. Jun. 11, 2024).

**REQUEST NO. 79**

All documents and data regarding the actual or potential impact of third-party app availability on the App Store on iPhone sales or switching, iPhone consumer demand, or App Store revenue. This includes any analysis on the potential revenue and profitability impact of complying with the European Union's 2025 Digital Markets Act, or complying with injunctive remedies sought in other App Store-related litigation.

**REQUEST NO. 80**

All documents and data regarding the actual or potential impact of Apple Carplay, or any actual or potential features of Apple Carplay, on iPhone sales or switching, or on iPhone consumer demand.

**REQUEST NO. 81**

All documents related to any decision to release any Apple-developed app, including Apple Music, on a non-Apple platform or operating system, or to license or otherwise permit any Apple-developed app to be used on any non-Apple platform or operating system; the reasons for any such

decision; and the actual or potential impact of any such decision on iPhone sales, iPhone switching, or consumer perception or demand.

**REQUEST NO. 82**

Documents related to financial projections concerning Smartphones, including: projected rates of substitution, production capacity, production volume, costs of goods, profits, market size, market composition, dollar sales, and/or unit sales.

**REQUEST NO. 83**

All documents related to the #GetTheMessage Campaign.

**REQUEST NO. 84**

Documents sufficient to identify every employee who has ever worked for Apple's Developer Relations Department, App Review Board, or Executive Review Board.

**REQUEST NO. 85**

Documents sufficient to show the resignation or termination of any employee who has ever worked for Apple's Developer Relations Department, App Review Board, or Executive Review Board.

**REQUEST NO. 86**

All agenda for or minutes of any meeting of the Executive Review Board.

**REQUEST NO. 87**

All trainings, guidelines, policies, and protocols provided to Apple's Developer Relations Department or App Review Board.

**REQUEST NO. 88**

All documents describing the process for app reviews and appeals.

**REQUEST NO. 89**

All documents related to any audit of the process for app reviews and appeals, or of Apple's Developer Relations Department, App Review Board, or Executive Review Board.

**REQUEST NO. 90**

All documents related to the app review of any Identified Product or Service.

**REQUEST NO. 91**

All documents related to the appeal or escalation of the app review of any Identified Product or Service to Apple's App Review Board or the Executive Review Board.

**REQUEST NO. 92**

All documents related to any app review (including any appeal or escalation to the App Review Board or the Executive Review Board) that resulted in any exception or change to the App Review Guidelines, the DPLA, or any other rule governing apps on the Apple App Store.

**REQUEST NO. 93**

All developer comments regarding any Identified Product or Service, the app review process, the App Review Guidelines, the DPLA, or any other rule governing apps on the Apple App Store.

**REQUEST NO. 94**

All documents since April 2016 regarding Phillip Shoemaker's comments, criticisms, or opinions related to Apple's app review process, App Review Guidelines, DPLA, or any other rule governing apps on the Apple App Store.

**REQUEST NO. 95**

All documents related to the decision, policy, or practice that Apple employees handle app reviews and appeals (as opposed to contractors or other third parties), including all documents related to any consideration of whether to adopt, amend, alter, or change that decision, policy, or practice.

**REQUEST NO. 96**

All documents related to Apple's deliberations and decisionmaking on whether to charge developers and/or banks a fee for certain transactions on the iPhone and how much to charge.

**REQUEST NO. 97**

All documents related to Apple's deliberations and decisionmaking on whether to enter, request, or demand any sharing agreement that requires or would require a developer to share with Apple any revenues from apps on the iPhone.

**REQUEST NO. 98**

Documents sufficient to show the fees that Apple has received from developers, banks, or any other entities for transactions on the iPhone, or any payments that Apple has received under any sharing agreement with a developer, on an annual basis.

**REQUEST NO. 99**

All documents reflecting any belief or assessment as to the appropriate degree or pace of innovation or development for the iPhone, including any belief or assessment that Apple can or should slow down the pace of innovation or spend less on research and development.

**REQUEST NO. 100**

All documents related to any effort or decision by Apple to prevent or limit any third-party developer's ability or permission to provide end-to-end encryption for messages between Apple

Messages and Android users.

**REQUEST NO. 101**

All documents related to any threat to user security or privacy due to the inability to send encrypted messages between iPhones and non-Apple Smartphones.

**REQUEST NO. 102**

All documents related to Google's protections for user security and privacy (including the lack or deficiency of certain protections) compared to the protections of other search engines.

**REQUEST NO. 103**

Documents sufficient to show, on an annual basis, the payments that Apple has received from Google related to Google's search engine serving as the default in the Safari web browser.

**REQUEST NO. 104**

Documents sufficient to identify for each app on the Apple App Store (1) all data the app collects; (2) how it collects that data; and (3) all uses of that data by Apple or the app's developer.

**REQUEST NO. 105**

Documents sufficient to show, for each named Plaintiff: (1) the user data that Apple has collected for that Plaintiff; (2) the directory services identifier associated with that user data; (3) personally identifying information associated with that directory services identifier; and (4) the Apple ID established for that user, along with the associated email address, phone number, first name, last name, date of birth, physical address (if entered), and any other identifying information

**REQUEST NO. 106**

All documents related to any internal or external audit of Apple's protections for user security and privacy.

**REQUEST NO. 107**

All documents related to any deficiency in Apple's protections for user security and privacy that caused or contributed (or may have caused or contributed) to the leak of iPhone users' login credentials as part of the 2025 data breach that resulted in the leak of over 16 billion login credentials for various platforms.

**REQUEST NO. 108**

All documents discussing any differences between premium, flagship, or high-end Smartphones and entry-level Smartphones, including any differences in characteristics, uses, production, customer base, and pricing.

**REQUEST NO. 109**

All documents discussing any differences between any model of the iPhone, the Samsung Galaxy, or the Google Pixel, on the one hand, and any other Smartphone, on the other hand, including any differences in characteristics, uses, production, customer base, and pricing.

**REQUEST NO. 110**

All communications with the U.S. Department of Justice related to Microsoft's alleged monopolization or anticompetitive conduct.

**REQUEST NO. 111**

Documents sufficient to show Apple's policies, procedures, and practices related to document retention, including the retention of hardcopy documents and ESI.

Dated: October 15, 2025

William Christopher Carmody
Shawn J. Rabin
SUSMAN GODFREY LLP
One Manhattan West, 50th Floor
New York, NY 10001-8602
Tel: (212) 336-8330
Email: bcarmody@susmangodfrey.com
Email: srabin@susmangodfrey.com

*/s/ James E. Cecchi*
James E. Cecchi
CARELLA, BYRNE, CECCHI,
BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, NJ 07068
Tel: 973-994-1700
Email: jcecchi@carellabyrne.com

Christopher A. Seeger
SEEGER WEISS, LLP
55 Challenger Road
Ridgefield Park, NJ 07660
Tel: 973-639-9100
Email: cseeger@seegerweiss.com

Steven W. Berman
HAGENS BERMAN SOBOL SHAPIRO, LLP
1301 Second Avenue
Suite 2000
Seattle, WA 98101
Tel: 206-623-7292
Email: steve@hbsslaw.com

Dena Sharp
GIRARD SHARP LLP
601 California Street, Suite 1400
San Francisco, CA 94108
Tel: 415-981-4800
Email: dsharp@girardsharp.com

Melinda R. Coolidge
HAUSFELD LLP
888 16th Street, NW Suite 300
Washington, DC 20006
Tel: (202) 540-7200
Email: mcoolidge@hausfeld.com

*Co-Lead Interim Class Counsel for Direct Purchasers' Track*

Joseph J. DePalma
LITE DEPALMA GREENBERG
& AFANADOR, LLC
570 Broad Street, Suite 1201
Newark, NJ 07102
Tel: (973) 623-3000
Email: jdepalma@litedepalma.com

*Liaison Counsel for Direct Purchasers' Track*

Michael Critchley Sr.
CRITCHLEY, KINUM & LURIA, LLC
75 Livingston Avenue
Roseland, New Jersey 07068
Tel: (973) 422-9200
Email: mcritchley@critchleylaw.com

*Trial Counsel/Direct Purchasers' Track*

Stanley O. King, Esq.
**JAVERBAUM WURGAFT HICKS
KAHN WIKSTROM & SININS P.C.**
231 S. Broad Street
Woodbury, NJ 08096
Tel: 856.845.3001
Stanley O. King,
Attorney ID No. 03413-1996

*Liaison Counsel for
Indirect iPhone Purchaser Plaintiffs*

Michael Dell'Angelo
Candice J. Enders
J. Taylor Hollinger
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
mdellangelo@bergermontague.com
cenders@bergermontague.com
thollinger@bergermontague.com

Heidi M. Silton
Jessica N. Servais
Joseph C. Bourne
Michael J.K.M. Kinane
**LOCKRIDGE GRINDAL
NAUEN PLLP**
100 Washington Avenue South,
Suite 2200
Minneapolis, MN 55401
Tel: (612) 339-6900
hmsilton@locklaw.com
jnservais@locklaw.com
jcbourne@locklaw.com
mjkmkinane@locklaw.com

Matthew S. Weiler
Todd M. Schneider
Raymond S. Levine
Suneel Jain
**SCHNEIDER WALLACE COTTRELL KIM LLP**
2000 Powell Street, Suite 1400
Emeryville, CA 94608
Tel: (415) 421-7100
mweiler@schneiderwallace.com
tschneider@schneiderwallace.com
rlevine@schneiderwallace.com
sjain@schneiderwallace.com

William G. Caldes
Jeffrey L. Spector
Rachel Kopp
**SPECTOR ROSEMAN & KODROFF, P.C.**
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Tel: (215) 496-0300
bcaldes@srkattorneys.com
jspector@srkattorneys.com
rkopp@srkattorneys.com

*Interim Co-Lead Counsel for Indirect iPhone Purchaser Plaintiffs*

Kimberly Justice
Robert Wozniak
**FREED KANNER LONDON & MILLEN LLC**
923 Fayette Street
Conshohocken, PA 19428
Tel: (224) 632-4500
kjustice@fklmlaw.com
rwozniak@fklmlaw.com

Daniel H. Silverman
**COHEN MILSTEIN SELLERS & TOLL PLLC**
769 Centre Street, Suite 207
Boston, MA 02130
Tel: (617) 858-1990
dsilverman@cohenmilstein.com

Michael S. Smith
Elizabeth F. Quinby
**PRETI, FLAHERTY, BELIVEAU & PACHIOS, LLP**
One City Center
Portland, ME 04101
Tel: (207) 791-3246
msmith@preti.com
equinby@preti.com

Garrett Blanchfield
Brant Penney
**REINHARDT WENDORF & BLANCHFIELD**
80 South 8th Street, Suite 900
Minneapolis, MN 55402
Tel: (651) 287-2100
g.blanchfield@rwblawfirm.com
b.penney@rwblawfirm.com

Israel David
**ISRAEL DAVID LLC**
60 Broad Street, Suite 2900
New York, NY 10004
Tel: (212) 350-8851
israel.@davidllc.com

*Interim Executive Committee Counsel for Indirect iPhone Purchaser Plaintiffs*

Charles J. Kocher
**MCOMBER MCOMBER & LUBER, P.C.**
50 Lake Center Drive, Suite 400
Marlton, New Jersey 08053
Tel: (856) 985-9800
cjk@njlegal.com

Alec Blaine Finley
**FINLEY PLLC**
1455 Pennsylvania Avenue, N.W., Suite 400
Washington, D.C. 20004
Tel: (281) 723-7904
bfinley@finley-pllc.com

Stuart G. Gross
**GROSS KLEIN PC**
The Embarcadero
Pier 9, Suite 100
San Francisco, CA 94111
Tel: (415) 671-4628
sgross@grosskleinlaw.com

*Additional Counsel for Indirect iPhone Purchaser Plaintiffs*

**CERTIFICATE OF SERVICE**

I, Katherine Drews, hereby certify that on October 15, 2025, I served a copy of iPhone Purchaser Plaintiffs' First Set of Requests for Production to Defendant Apple Inc. on all counsel of record via email.

*/s/ Katherine Drews*
Katherine Drews