McElroy Deutsch

1300 Mount Kemble Avenue
P.O. Box 2075
Morristown, NJ 07962-2075
T: 973.993.8100 | F: 973.425.0161
MDMC-LAW.COM

THOMAS R. CURTIN
Direct Dial: (973) 401-7117
tcurtin@mdmc-law.com

November 10, 2026

**VIA ECF**

Honorable Leda Dunn Wettre, U.S.M.J.
U.S. District Court for the District of New Jersey
50 Walnut Street
Newark, New Jersey 07102

Re: *In re Apple Inc. Smartphone Antitrust Litigation*, 2:24-md-03113-JXN-LDW
Plaintiffs' Letter Brief In Support Of Their Motion For A Protective Order Regarding Apple's Rog 2

Dear Judge Wettre,

Pursuant to ¶ 5(c) of the Special Master Appointment Order (Dkt. No. 208) and with leave from the Court (Dkt. No. 420), Direct iPhone Purchaser Plaintiffs, Indirect iPhone Purchaser Plaintiffs, and Direct Apple Watch Purchaser Plaintiffs ("Watch Plaintiffs") (collectively, "Plaintiffs") respectfully submit this letter brief in support of their motion for a protective order regarding Defendant Apple Inc.'s ("Apple") Collective Interrogatory No. 2 ("Rog 2") served on Plaintiffs. Plaintiffs request oral argument.

* * *

Apple's Rog 2 requests all Apple IDs that the named Plaintiffs "have access to, created, have used, or that [are] authorized to use one of [their] payment methods." Ex. A at 7. An Apple ID is each Apple user's login to access a vast array of digital products and services on Apple devices. Apple requested the named Plaintiffs' Apple IDs so that it could locate their data and information within the data produced in this case. Plaintiffs agree to provide the named Plaintiffs' Apple IDs for this purpose, but they seek additional necessary protections.

Each Apple ID is connected to sensitive personal information, such as app download history, financial data, health information, web browsing history, and location tracking. Apple issued discovery requests for some of this information, and the parties negotiated those requests. Plaintiffs therefore seek a protective order preventing Apple from using their Apple IDs to circumvent those negotiated limitations and to protect against potential privacy invasions.

Rog 2 also is not limited to the named Plaintiffs' personal Apple IDs. It sweeps in Apple IDs that the named Plaintiffs may have created for family members, such as their children, or that a partner independently created with the same credit card information. And it includes Apple IDs that the named Plaintiffs may have created or used solely because they were required to use an Apple product for their jobs. Plaintiffs thus also seek an order clarifying that they need not provide Apple IDs (1) of non-parties, or (2) used by the named Plaintiffs solely for business purposes.

## I. BACKGROUND

An Apple ID is the means to "sign in to a single Apple Account to use all Apple services."[1] Apple tracks information about consumers using Apple IDs: "When you create an Apple Account [with an Apple ID], . . . [Apple] may collect a variety of information, including:" "transactions facilitated by Apple, including purchases on Apple platforms," "browsing history," "search history," "Location Information," and "Data relating to the health status of an individual."[2]

In January 2026, Apple issued discovery requests seeking information about the named Plaintiffs' digital downloads, purchases, and uses of Apple devices and services. The parties began negotiating the scope of these requests. In July 2026, Apple served Rog 2, which reads:

> Identify each and every Apple ID that You have access to, created, have used, or that is authorized to use one of Your payment methods, and provide for each such Apple ID all account details including the associated email address, phone number, first name, last name, date of birth, physical address (if entered), and any other identifying information associated with the Apple IDs.

Ex. A at 7. Plaintiffs objected on the grounds that Rog 2 was vague, overbroad, unduly burdensome, and not proportional to the needs of the case. During negotiations, Apple represented

---

[1] Apple Inc., *Where can I use my Apple Account?* (Oct. 8, 2024), https://perma.cc/HB3K-5MPK.
[2] Apple Inc., *Apple Privacy Policy* (July 30, 2025), https://perma.cc/DU89-QD3M; *see also*, *e.g.*, Apple Inc., *See your purchases and subscriptions in the App Store on iPhone*, https://perma.cc/BRG9-YSYA (last visited Nov. 9, 2026) (App Store tracks app purchases and certain subscriptions); Apple Inc., *See your Apple Pay transaction history* (Sept. 14, 2026), https://perma.cc/LY4W-VY78 (Apple Pay tracks transaction history).

that it seeks the named Plaintiffs' Apple IDs so that it can find their purchases in the data Apple expected to produce in the case. Ex. B at 3; Ex. C at 2. Apple also represented that, even with an Apple ID, it cannot view the named Plaintiffs' iMessages and iCloud data, including health information stored there, due to encryption. Ex. B at 3-4; Ex. C at 2. Plaintiffs expressed concerns about the potential for undue invasion of their privacy. Ex. D.

Plaintiffs agreed to provide the Apple IDs that the named Plaintiffs created or used during the relevant discovery period for personal use, if Apple stipulated that: (1) Plaintiffs could satisfy certain existing discovery obligations by authorizing Apple to use the named Plaintiffs' Apple IDs to find specified requested material (*e.g.*, certain app downloads) as Apple previously proposed, *see*, *e.g.*, Ex. E at 2-3; (2) Apple inform Plaintiffs if it uses the Apple IDs to review information for use in this litigation (including information requested in discovery); (3) Apple not use the Apple IDs to review sensitive personal, financial, and health information; and (4) Apple produce any documents or data it obtains by using the named Plaintiffs' Apple IDs. Ex. F. Apple declined.

Plaintiffs thus seek a protective order in substantially the form of Exhibit G.

## II. LEGAL STANDARD

Discovery must be relevant and "proportional to the needs of the case, considering," among other things, "the parties' relative access to relevant information, the parties' resources," and "whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "[T]he Court may, for good cause, enter a protective order to protect a party or person from annoyance embarrassment, oppression or undue burden or expense, by, among other things, denying, restricting, or limiting the scope of discovery." *Krishanthi v. Rajaratnam*, 2023 WL 5605565, at *8 (D.N.J. Aug. 30, 2023) (citing Fed. R. Civ. P. 26(c)(1)). "To establish 'good cause,' the proponent must demonstrate that disclosure will work a clearly defined and serious injury," including by showing a lack of relevance. *Id.* at *8-9.

## III. ARGUMENT

### A. Plaintiffs Propose Appropriate Restrictions On Use Of The Named Plaintiffs' Apple IDs.

"The power of courts, . . . to delimit how parties may use information obtained through the court's power of compulsion is of long standing and well-accepted." *Bittaker v. Woodford*, 331 F.3d 715, 726 (9th Cir. 2003). Indeed, a "common kind of order allowing discovery on conditions is an order limiting . . . the use to which [] persons may put the information." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787 (3d Cir. 1994).

Good cause exists to limit Apple's use of the named Plaintiffs' Apple IDs. Plaintiffs agree that Apple may locate the named Plaintiffs in any data Apple produces in this case, and they are prepared to provide their Apple IDs to allow Apple to do so. But Apple should not be permitted to use Rog 2 to circumvent agreements Apple reached with Plaintiffs (or Court orders) on the scope of Apple's other discovery requests to Plaintiffs. For example, the parties agreed to a relevant discovery period of January 1, 2014 to July 30, 2025. But with Apple IDs, Apple can access material outside that agreed period. Similarly, Apple requested the named Plaintiffs produce "[a]ll Documents, data, and Communications relating to [their] complete history of digital software

purchases or acquisitions." *E.g.*, Ex. H at 41 (Apple's RFP 129 to Watch Plaintiffs). The parties reached impasse on the scope of this request and are briefing that dispute separately. Dkt. Nos. 402 & 403. But, with Apple IDs, Apple could view all named Plaintiffs' digital downloads, purchases, and acquisitions through the App Store, irrespective of any court order.[3]

Accordingly, Apple should obtain Plaintiffs' consent for Apple to use the Apple IDs to review information also subject to Apple's RFPs and other Interrogatories. Ex. G at 2 ¶ 2. And, consistent with Plaintiffs' RFPs to Apple, *see*, *e.g.*, Ex. I at 14 (Watch Plaintiffs' RFP 120 to Apple), Apple should produce any documents or data generated using the Apple IDs, Ex. G at 3 ¶ 4. This "prevent[s] trial by surprise." *Prudential Ins. Co. of Am. v. Nelson*, 11 F. Supp. 2d 572, 581 (D.N.J. 1998). If Apple uses the named Plaintiffs' Apple IDs to look up their app downloads, wallet contents, or anything else, it should be required to produce the results.

Additionally, Apple should not use the Apple IDs for purposes Apple has said it cannot use them for — reviewing encrypted iMessage and iCloud data — and for other invasive and potentially harassing purposes, such as reviewing an individual's browsing history or transaction records. Ex. G. at 2-3 ¶ 3. Outside of limited subjects whose scope the parties negotiated extensively and (in one case) are now briefing, Apple has not argued that the named Plaintiffs' — or their family members', *see infra* § III.B — health data, photos, contacts, transaction histories, location information, and the like are relevant and proportional to any claim or defense in this case. Therefore, Apple has no reason to resist this restriction, regardless of whether Apple IDs make it technically feasible for Apple to review those categories of information.

### B. Disclosing Apple IDs Of Non-Parties Or Those Used Only For Business Purposes Is Irrelevant And Disproportional To The Needs Of The Case.

Courts must limit discovery that is irrelevant and not proportional to the needs of the case. Fed. R. Civ. P. 26(b)(2)(C)(iii). Apple's request for Apple IDs of non-parties or those that Plaintiffs use only as part of their jobs is irrelevant and disproportional. Information such as app download histories for purely work-related Apple IDs provides no insight for Apple into any of Apple's alleged justifications and defenses. The information captured by a work-related Apple ID merely identifies what a named Plaintiff may have been required to download or use in the course of their employment, outside their own choices, which is irrelevant, disproportional, and may invoke significant confidentiality issues, none of which Apple has justified.

Rog 2 further requests Apple IDs that the named Plaintiffs may have created for their children or that family members independently created with the same credit card. The named Plaintiffs' family members' use of Apple devices and services is irrelevant to Plaintiffs' claims and does not bear on the named Plaintiffs' suitability as class representatives.

Even if there were some relevance, that relevance cannot outweigh the burden on the named Plaintiffs' non-party family members, including minor children. *See* Fed. R. Civ. P. 26(b)(1). Apple has other avenues to take discovery into Plaintiffs' "lock-in" allegations, including written discovery and deposition testimony. On the other hand, the information linked to Apple

[3] Apple Inc., *See your purchases and subscriptions in the App Store on iPhone*, https://perma.cc/BRG9-YSYA (last visited Nov. 9, 2026).

IDs is substantial. Plaintiffs do not know the extent to which Apple can review that tracked data, despite having asked. Apple admits it can review app downloads and subscription histories, which can contain sensitive and potentially embarrassing material. *See* Ex. J at 3 (app download histories may include "dating apps . . ., fertility trackers, and sobriety calendar apps"). None of this information is relevant or proportional, especially for a named Plaintiff's minor child. Allowing Apple to review named Plaintiffs' family members' app downloads and subscriptions is intrusive and burdens non-parties. Apple cannot make it a condition of suing Apple that a plaintiff submit to Apple combing through his or her family's digital lives. To do so would chill antitrust enforcement by weaponizing the very monopoly power at issue in this litigation — using Apple's unparalleled access to personal data as a deterrent to challenging its market practices.

### C. Apple's Likely Arguments Fail.

None of Apple's arguments against Plaintiffs' proposed use restrictions and in favor of requiring disclosure of non-parties' Apple IDs has merit.

*First*, Apple contends that the Discovery Confidentiality Order protects against Plaintiffs' concerns. But it merely requires that discovery be used "for the conduct of this Action and the Government Action" and not "for any other purpose." Dkt. No. 124 at 24 ¶ 31. It does not limit how Apple can use the named Plaintiffs' Apple IDs to obtain information about them, outside the scope of discovery, that is not publicly available and not otherwise produced in this case.

*Second*, Apple contends that requiring Apple to produce information it reviews using the Apple IDs, Ex. G at 3 ¶ 4, intrudes on its litigation strategy. Plaintiffs do not request Apple's litigation strategy. They merely seek to avoid trial by surprise. If Apple intends to rely on any facts it develops with the Apple IDs, then it should produce those facts. For this reason, Plaintiffs requested the information Apple stores about them. *E.g.*, Ex. I at 14 (RFP 120).

*Third*, Apple contends that Plaintiffs "put family member use of Apple products and services at issue," Dkt. No. 405 at 2, and the Apple IDs of their family members will allow Apple to explore Plaintiffs' allegations of "lock-in" to the Apple ecosystem. This is incorrect. The referenced complaint paragraphs discuss *publicly* available studies about Apple consumer behavior. Dkt. No. 87 at 71 ¶ 225 (alleging first-time purchasers of smartphones are more likely to purchase an iPhone because friends and family are more likely to have one); Dkt. No. 85 at 52-53 ¶ 123 (alleging rival smartphone users feel peer pressure to switch to iPhone). Such allegations do not put the named Plaintiffs' family members at issue. Importantly, Apple has a far less intrusive way to inquire about "lock-in" for named Plaintiffs' families: Apple can ask at the named Plaintiffs' depositions.

*Fourth*, Apple justifies its overbroad Interrogatory by reference to Plaintiffs' requests for data that includes absent class members' Apple IDs. This argument ignores the critical differences between Plaintiffs and Apple. Plaintiffs requested Apple IDs so that they could identify class members and send them any damages recovered in this case. Plaintiffs cannot use the absent class members' Apple IDs to figure out which absent class members downloaded which apps. Apple can.

Plaintiffs ask the Court to enter a protective order in substantially the form of Exhibit G.

Respectfully Submitted,


| | | |
|---|---|---|
| */s/ Thomas R. Curtin* | /*s/Caroline F. Bartlett* | */s/ Stanley O. King* |
| Thomas R. Curtin | Caroline F. Bartlett | Stanley O. King |
| MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP | CARELLA, BYRNE, CECCHI, BRODY & AGNELLO, P.C. | JAVERBAUM WURGAFT HICKS KAHN WIKSTROM & SININS, P.C. |
| 1300 Mount Kemble Avenue | 5 Becker Farm Road | 231 S. Broad Street |
| Morristown, NJ 07962 | Roseland, NJ 07028 | Woodbury, NJ 08096 |
| Tel: (973) 993-8100 | Tel: (973) 994-1700 | Tel: (856) 845-3001 |
| tcurtin@mdmc-law.com | CBartlett@carellabyrne.com | sking@lawjw.com |
| *Counsel for the Direct Apple Watch Purchaser Plaintiffs* | *Counsel for the Direct iPhone Purchaser Plaintiffs* | *Counsel for the Indirect iPhone Purchaser Plaintiffs* |


cc: All counsel (by ECF)