# Exhibit B

GIBSON DUNN

Connor S. Sullivan
Partner
T: +1 212.351.2459
M: +1 216.956.8955
cssullivan@gibsondunn.com

August 28, 2026

VIA EMAIL

Caroline F. Bartlett, Esq.
Carella Byrne Cecchi Brody & Agnello P.C.
cbartlett@carellabyrne.com

Jeffrey L. Spector, Esq.
Spector Caldes & Corrigan PC
jspector@scc.law

Ariela M. Migdal
Rund M. Khayyat
Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C.
amigdal@kellogghansen.com

Re: *In re Apple Inc. Smartphone Antitrust Litigation*, No. 2:24-md-03113

Dear Counsel,

We write in response to Plaintiffs' respective Responses and Objections to Apple's Second Set of Collective Interrogatories ("ROG 2") and the Parties' August 24, 2026 meet and confer regarding ROG 2 (the "M&C").

ROG 2 requests the following: "Identify each and every Apple ID that You have access to, created, have used, or that is authorized to use one of Your payment methods, and provide for each such Apple ID all account details including the associated email address, phone number, first name, last name, date of birth, physical address (if entered), and any other identifying information associated with the Apple ID." Notwithstanding their own requests for substantially identical information, each Plaintiff group refused to answer ROG 2 and interposed various objections, including, among others, that the ROG seeks irrelevant information, invades their privacy by seeking sensitive personal information, and is disproportionate.

As Apple explained at the M&C, there is no basis for Plaintiffs to withhold the information requested in ROG 2. Apple seeks this basic identifying information to identify and locate Apple records concerning the named Plaintiffs that are relevant to this litigation and the allegations in the Complaints, including records relating to Plaintiffs' purchases from Apple and their usage of Apple products and services. *See* DPP Compl. ¶¶ 18–21 (listing Plaintiffs' purchases of devices from Apple); IPP Compl. ¶¶ 43–67 (same); DAWP Compl. ¶ 8 (same); *see also* DPP Compl. ¶ 241 (alleging that Apple IDs are needed to identify class members). This information is critical to verifying whether Plaintiffs have purchased any of the Apple products and services at issue, which

is necessary to establish standing and injury. In short, having made detailed allegations about various Apple products and services, Plaintiffs now cannot hamstring Apple's ability to investigate their claims by withholding the information Apple needs to locate them within Apple's records. *Cf. In re Apple Inc. Device Performance Litig.*, 2019 WL 3973752, at *2 (N.D. Cal. Aug. 22, 2019) ("Plaintiffs actively put their devices at issue when they chose to sue Apple over Apple's alleged intrusion and trespass to the devices through Apple's software updates. It is well-established that a plaintiff cannot bring suit and then limit the defendant's discovery that is targeted at the subject matter of the plaintiff's claims." (collecting cases)); *Marshall v. The Billings Clinic*, 2015 WL 7574758, at *5 (D. Mont. Nov. 25, 2015) ("[Plaintiff] has put her medical condition directly at issue in this case based both on the factual allegations that she asserts and on the nature and scope of damages that she claims. . . . [S]he cannot now rely on individual privacy rights to withhold information relevant either to her claims or to [defendant's] defenses.").

Belying their relevance and privacy objections, Plaintiffs themselves have served several Requests for Production ("RFPs") seeking Apple IDs and related user data for themselves and for millions of putative class members. For example, iPhone Plaintiffs' RFP 105 requests documents sufficient to show, **for each named Plaintiff**: "(1) the user data that Apple has collected for that Plaintiff; (2) the directory services identifier associated with that user data; (3) personally identifying information associated with that directory services identifier; and (4) **the Apple ID** established for that user, along with the associated email address, phone number, first name, last name, date of birth, physical address (if entered), and any other identifying information." Similarly, RFP 61, served by each Plaintiff group, seeks "[e]ach database or data set . . . relating to Apple Smartphones or any Identified Product or Service after January 1, 2009, containing information derived **from users** in the United States, Australia, Canada, [and several other countries] . . . relating to" various categories of individualized user data, including but not limited to data pertaining to "relationships between or among [Apple's] other users (including Family Sharing)" as well as data on the "purchase, activation, deactivation, or usage" of Apple and third-party apps. Watch RFP 61 (emphasis added); iPhone RFP 61 (same). Multiple other RFPs served by Plaintiffs seek similar information, including Apple IDs and related user data, including:

- <u>iPhone RFP 116</u>: Data sufficient to show the monthly number of active iPhone devices for each device model and the number of other Apple devices (e.g., smartwatches, iPads and Apple laptops) linked to each iPhone model (**via Apple ID** or other methodology used by Apple to identify linked devices), broken down by country from January 2011 to present.

- <u>iPhone RFP 125</u>: All data maintained by Apple relating to the identity and contact information of direct iPhone purchasers in the United States, including but not limited to the **Apple ID established for each iPhone user**, any associated International Mobile Equipment Identity (IMEI) numbers, email addresses, phone numbers, first name, last name, date of birth, physical address (if entered), and any other device or personal identifying information.

- <u>iPhone RFP 126</u>: All data maintained by Apple relating to the identity and contact information of indirect iPhone purchasers in the United States, including but not limited to

the **Apple ID established for each iPhone user**, any associated International Mobile Equipment Identity (IMEI) numbers, email addresses, phone numbers, first name, last name, date of birth, physical address (if entered), and any other device or personal identifying information.

- Watch RFP 61.1: Documents sufficient to show the number and dates of downloads of Third-Party Smartwatch Companion Apps from the App Store, the **Apple IDs** associated with such downloads, and whether such **Apple IDs** have ever been associated with an Apple Watch for each year throughout the Period.

- Watch RFP 79: Documents sufficient to show the Smartwatches included as data sources in the iPhone Health App, **the Apple IDs** that listed these Smartwatches as data sources, when these data sources were added or removed for each **Apple ID**, and changes made in priority among the data sources within the Health App.

There can be no question as to the relevance and proportionality of disclosing Apple IDs in discovery. And Plaintiffs' refusal to provide their Apple IDs while requesting the same information for millions of class members suggests that they view their own data as more sensitive and worthy of protection than that of the absent class members they seek to represent. If that is Plaintiffs' position, then they are not adequate class representatives.

In addition, as Apple has explained, providing Apple with Plaintiffs' Apple IDs will not give Apple any additional data—it will simply allow Apple to identify the named Plaintiffs within the massive volumes of user data that Plaintiffs have requested and that Apple has agreed to produce, which Apple is entitled to do (and which Plaintiffs presumably want to be able to do themselves). Thus, Plaintiffs' objections not only contradict their own discovery requests, but fundamentally misunderstand the nature of what Apple seeks.

At the M&C, Plaintiffs asked whether there are any categories of data that Apple collects on users beyond that which is discussed in Apple's privacy policy. Plaintiffs suggested that the answer to that question would be helpful in their continued evaluation of ROG 2. In response, Apple reiterates that the answer to this question does not matter. Apple is entitled to the Apple ID information requested in ROG 2 regardless of the content of Apple's privacy policy. The protective order, including its robust data security protections, is more than sufficient to alleviate any concerns Plaintiffs might have about disclosing their Apple IDs.

Nonetheless, in the spirit of cooperation, Apple confirms that its privacy policy "describes how Apple collects, uses, and shares [Plaintiffs'] personal data," and that it "treat[s] any data that relates to an identified or identifiable individual or that is linked or linkable to them by Apple as 'personal data.'" *Apple Privacy Policy*, Apple, https://www.apple.com/legal/privacy/en-ww/ (last visited Aug. 28, 2026). Apple also provides a detailed overview of its data collection practices with respect to specific apps and services. *See Data and Privacy*, Apple, https://www.apple.com/legal/privacy/data/ (last visited Aug. 28, 2026). Moreover, as Apple explained at the M&C, providing Apple with Plaintiffs' Apple IDs will not give Apple the ability

to access the contents of Plaintiffs' iMessages, which are end-to-end encrypted, nor will it give Apple the ability to access end-to-end encrypted iCloud data, such as health data and passwords stored in iCloud Keychain.

Please confirm by August 31, 2026 that Plaintiffs will respond in full to ROG 2. If Plaintiffs will not do so, then the Parties are at impasse, and Apple requests that Plaintiffs provide any edits they have to the joint notice of impasse it sent with this letter by September 2, 2026.

Sincerely,

*/s/ Connor S. Sullivan*

GIBSON, DUNN & CRUTCHER LLP