# Exhibit D

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.
SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215

(202) 326-7900
FACSIMILE:
(202) 326-7999

September 2, 2026

*Via Electronic Mail*

Connor S. Sullivan
Joseph R. Rose
Gibson, Dunn & Crutcher LLP
jrose@gibsondunn.com
cssullivan@gibsondunn.com

Re: *In re Apple Inc. Smartphone Antitrust Litigation*, No. 2:24-md-03113

Dear Counsel,

We write to address open issues concerning MDL Plaintiffs' Responses and Objections to Apple's Second Set of Interrogatories, including those discussed when we met and conferred on August 24, 2026, and those addressed in your letter of August 28, 2026.

As set forth in MDL Plaintiffs' Responses and Objections served on August 20, 2026 and as discussed when we met and conferred on August 24, 2026, we have significant concerns about the scope, relevance, and potential misuse of this request. However, we have been able to narrow the scope of our dispute by meeting and conferring and in the related correspondence (including your letter of Friday evening August 28, 2026), and it is our view that an impasse notice on your July 21, 2026 interrogatories is premature. This letter sets out MDL Plaintiffs' position and questions in further detail and proposes a way forward.

**<u>Relevance, Overbreadth, and Proportionality</u>**

An Apple ID, standing alone, is an account identifier, whose key utility is to derive *other* information. When we met and conferred, Apple asserted that the named Plaintiffs' Apple IDs are relevant because MDL Plaintiffs seek Apple IDs from Apple in their own document requests. *See also* Apple Letter of August 28, 2026, at 2-3. But the comparison Apple draws is not symmetrical, for several reasons.

First, MDL Plaintiffs only seek Apple IDs for use in defined, limited contexts. Plaintiffs' RFPs, including those cited in your letter, identify the specific, relevant categories of information

that Apple IDs will allow Plaintiffs to collect, such as the names and contact information of people who purchased Apple Watches and the amounts they paid. During negotiations, we explained that this information is necessary to identify and contact class members. *See, e.g.*, Phone Plaintiffs' Letter of May 4, 2026, at 4-5. For example:

- **Watch RFP 61.1** seeks documents sufficient to show the number and dates of downloads of Third-Party Smartwatch Companion Apps from the App Store, the Apple IDs associated with such downloads, and whether such Apple IDs have ever been associated with an Apple Watch. While Apple IDs enable Apple to identify the cards in the users' Apple Wallet and all *other* apps the person has downloaded and subscriptions the person has purchased, ranging from Spotify Premium to a fertility tracker, Watch Plaintiffs will have no such access. Watch Plaintiffs seek Apple IDs to answer a specific, bounded question about smartwatch-related app downloads.

- **Watch RFP 79** seeks documents sufficient to show the smartwatches included as data sources in the iPhone Health App, the Apple IDs that listed these smartwatches as data sources, and related changes. Again, Watch Plaintiffs cannot use those IDs to access a host of private information about individuals – whereas Apple can.

- **Phone RFP 105** seeks sufficient documents to show the user data associated with each named Phone Plaintiff. Phone Plaintiffs have explained previously to Apple that they are seeking the categories of information collected, such as whether Apple collects their location, but not the actual underlying data, like each named Phone Plaintiff's actual location history.

MDL Plaintiffs also asked for Apple IDs in the context of RFPs that seek to identify the information *Apple* has collected about the named Plaintiffs, including: user data, the directory services identifier associated with that user data, the personally identifying information associated with that directory services identifier, and the Apple ID established for that user, along with the associated email address, phone number, first name, last name, date of birth, physical address (if entered), and any other identifying information. *See* Watch RFP 120; Phone RFPs 125 and 126.

MDL Plaintiffs intend to use Apple IDs for purposes of identifying class members, contacting class members, and related litigation functions, and for purposes of discovering what information Apple has collected about the named Plaintiffs. Plaintiffs have no way of using Apple IDs to access health information, location data, financial transactions, communications, or any of the other personal information Apple maintains on users. By contrast, Apple *can* obtain such access, according to its publicly-available Privacy Policy,[1] which you referred to when we met and conferred (discussed further below). The requests are therefore not comparable in kind, scope, or risk.

---

[1] https://www.apple.com/legal/privacy/en-ww/.

Apple's technical ability to access information associated with an Apple ID does not give it license to conduct a fishing expedition through a user's data for use in this litigation. Rather, the parties should agree on the scope of information Apple can gather. For example, if a defendant company in a separate litigation served Apple with a third-party subpoena seeking user data, Apple would not turn over the entirety of that user's browsing history, app usage, purchasing history, or other data associated with an Apple ID; rather, Apple would respect that user's expectation of privacy by demanding a specific set of requests before producing anything.[2] Similarly, here, Apple should only be able to access information that is relevant to the litigation and should not be able to wield its unique position as keeper of the Apple ID "master key" to open the floodgates to all kinds of private user data.

Even if relevance were established, that would not end the inquiry. As set forth in our Responses and Objections, MDL Plaintiffs objected to Interrogatory No. 2 on grounds of overbreadth, undue burden, disproportionality, and oppression. Apple's demand that the named Plaintiffs hand over their own and their family members' Apple IDs, unlocking vast repositories of sensitive personal data without any articulation of what Apple needs or why, or how it will use the information that these IDs enable it to access, fails Federal Rule of Civil Procedure 26's proportionality test. Moreover, it is unreasonable to shift the burden to MDL Plaintiffs to anticipate and enumerate every category of information Apple should be *forbidden* from accessing. The burden should be on Apple to tell MDL Plaintiffs what information it seeks to access.

That said, we may be able to reach agreement about the appropriate uses of Apple IDs in this litigation. In your August 28, 2026 Letter, you stated (at 1) that Apple seeks Apple IDs to "locate Apple records concerning the named Plaintiffs that are relevant to this litigation and the allegations in the Complaints, including records relating to Plaintiffs' purchases from Apple and their usage of Apple products and services." You also wrote (at 3) that "providing Apple with Plaintiffs' Apple IDs will not give Apple any additional data—it will simply allow Apple to identify the named Plaintiffs within the massive volumes of user data that Plaintiffs have requested and that Apple has agreed to produce, which Apple is entitled to do (and which Plaintiffs presumably want to be able to do themselves)."[3] Thank you for providing these clarifications. To the extent Apple agrees to use Plaintiffs' Apple IDs only to identify the named Plaintiffs within the user data *produced in this litigation*, MDL Plaintiffs agree in principle that

---

[2] *See*, *e.g.*, Apple, *Legal Process Guidelines - Government & Law Enforcement within the United States* (Oct. 2025), https://www.apple.com/legal/privacy/law-enforcement-guidelines-us.pdf (governing how Apple handles requests for information from law enforcement agencies and private parties for information about Apple users).

[3] Apple also wrote that it seeks the IDs so that it can locate "Apple records" it needs for "verifying whether Plaintiffs have purchased any of the Apple products and services at issue." Apple Letter of August 28, 2026, at 1-2. MDL Plaintiffs note that Apple has already requested, and Plaintiffs have provided, receipts and other purchase information for the "Apple products and services at issue" that enable Apple to verify purchases. *Id.*

this is an appropriate use of their Apple IDs. MDL Plaintiffs agree to provide those IDs subject to Apple's agreement not to use those IDs to access additional information about the named Plaintiffs beyond that produced in discovery. If Apple wishes to use the IDs to access additional information outside the materials produced in this case, Apple should agree to seek consent from Plaintiffs to access the particular piece of information and should explain its relevance. MDL Plaintiffs are working on a draft stipulated protective order to codify such an agreement about how MDL Plaintiffs' Apple IDs may be used.

If Apple does not agree to limit use of the named Plaintiffs' Apple IDs to locating their records within the data and documents produced in this case, please identify any other specific, relevant information that Apple intends to use Plaintiffs' Apple IDs to collect. Your statement (at 1) that you wish to use the IDs to "locate Apple records" concerning "Plaintiffs' purchases from Apple and their usage of Apple products and services" illustrates the problems MDL Plaintiffs have raised. The parties have been negotiating scope limitations on the purchases and devices that are relevant to the litigation. The parties also have been negotiating the extent of usage data and other data to be produced. It would be inappropriate for Apple to use the named Plaintiffs' Apple IDs to obtain records, data, and usage information more expansive than the parties agree should be produced (or that the Court orders Plaintiffs to produce). The cases you cite (at 2) confirm that Apple is entitled to discovery on the devices Plaintiffs have put at issue (respectively, Apple Watches and iPhones), but they do not stand for the proposition that Apple is entitled to use Plaintiffs' Apple IDs to access records of all *other* purchases of Apple products Plaintiffs have ever made, much less to look up all apps they have ever downloaded, all their subscriptions, or the expanse of other information that an Apple ID makes available to Apple.

**Apple IDs and Apple's Privacy Policy**

As noted, MDL Plaintiffs are provisionally prepared to provide the named Plaintiffs' own Apple IDs, subject to the express conditions that Apple will not use them to access any of the named Plaintiffs' personal information, data, or activity from their associated Apple devices, accounts, or repositories – including, without limitation, iCloud – (beyond data produced in this litigation) for use in this litigation, unless the particular Plaintiff grants access in response to a specific, identified request from Apple.

When we met and conferred, Apple pointed to its Privacy Policy as the source of protection for Plaintiffs' personal information and as a limitation on the information Apple can or will collect using an Apple ID. Apple reiterated some of the terms of its Privacy Policy in the August 28, 2026 Letter. But Apple's Privacy Policy is a unilateral statement of Apple's data practices; it is not a discovery protocol (or agreement) and does not substitute for one.

Moreover, the Privacy Policy does not clearly limit whether and how Apple will share the named Plaintiffs' personal data with litigation counsel. The policy says that Apple may share personal data with "Apple-affiliated companies, service providers who act on our behalf," and others. *See supra* note 1. Does this policy allow Apple to share personal data it collects on the

named Plaintiffs with its litigation counsel in this case? The policy is unclear on that, and Plaintiffs accordingly seek protections. Use of the named Plaintiffs' personal information in litigation is inherently a disclosure, so the privacy policy is ill-suited to address the present situation.

In any event, Apple's Privacy Policy raises more questions than answers about what Apple can (or will) access about the named Plaintiffs. For example, Apple's Privacy Policy states that Apple collects "Transaction Information," which Apple defines as "data about purchases of Apple products and services or transactions facilitated by Apple, including purchases on Apple platforms." *Id.* Does "facilitated by Apple" mean that, if a Plaintiff has a Visa card stored in the Plaintiff's Apple Wallet, Apple can look up everything that Plaintiff has purchased with that card? Or, that Apple can access every purchase the Plaintiff has made through use of the Plaintiff's Apple Wallet?

Apple's Privacy Policy also states that Apple collects usage data, "including browsing history; search history" and "other usage data." *Id.* MDL Plaintiffs have not agreed to provide Apple with Plaintiffs' "browsing history," and such a request would be overly intrusive and irrelevant.[4] A non-exhaustive list of other information Apple collects includes "salary, income, and assets information," "data related to one's physical or mental health or condition," geographical "location," and other sensitive and personal information whose relevance to this litigation has not been established. *Id.* While Apple's Privacy Policy indicates that it "uses your personal data only when we have a valid legal basis to do so," MDL Plaintiffs are concerned that they do not share Apple's view of what would be a valid use of the Plaintiffs' Apple-ID-connected information and personal data in this litigation. *Id.*

The broad scope of information that Apple alone is able to collect, as described in Apple's Privacy Policy, is inconsistent with the scope limitations the parties have been negotiating in discovery. For example, Watch Plaintiffs have agreed to provide (and have already provided, in substantial part) receipts and transactional information related to Mr. Giamanco's purchase of Apple Watches, iPhones, and iPads, but have not agreed to provide such data or receipts for Macs, laptops, or other devices. *See* Watch Plaintiffs' Letter of July 13, 2026, at 3-6. Those painstaking negotiations become meaningless if Apple can simply pull up all of Mr. Giamanco's purchase history through his Apple ID for use in this litigation.

Another example that counsel for Phone Plaintiffs raised when we met and conferred is information about financial transactions. Watch Plaintiffs have agreed to provide limited data sufficient to show the cards in Mr. Giamanco's Apple Wallet and are preparing a production to that effect. *See* Watch Plaintiffs' Letter of June 29, 2026, at 5. In the course of negotiating Apple's RFP 117 to Watch Plaintiffs related to digital wallets, Apple agreed that "it is not

---

[4] The parties previously agreed that browsing and search histories were excluded from preservation, collection, and, ultimately, production in this case. *See* ECF No. 100-2 at Sections III.3.J & IV.2.

seeking financial statements or transaction records, but seeks only documents sufficient to identify which Digital Wallets and payment apps Mr. Giamanco uses or has used." Apple Letter of May 5, 2026, at 5. But the information available to Apple under its Privacy Policy appears to include a broader scope of financial information than what the parties have negotiated. This is a reason MDL Plaintiffs will provide the Apple IDs only on the condition that Apple will seek specific consent to use those IDs to access information for use in this litigation, and will not use them to make an end run around the scope limitations the parties have been negotiating for the past many months. As noted, MDL Plaintiffs are drafting a proposed stipulated protective order to this effect.

If Apple is unwilling to agree to reasonable conditions, as described above, on the use of named Plaintiffs' Apple IDs and the personal data they unlock, MDL Plaintiffs will seek a protective order under Federal Rule of Civil Procedure 26(c). Rule 26(c) provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including by "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c). Good cause exists here: an Apple ID is not merely an identifier, but rather, in the hands of Apple itself, it is a master key to a person's digital life. Production without limitation would expose Plaintiffs to the very annoyance, embarrassment, oppression, and undue burden that Rule 26(c) was designed to prevent. Such a protective order is common in circumstances like this; indeed, "[t]he most common kind of order allowing discovery on conditions is an order limiting the persons who are to have access to the information disclosed *and the use to which these persons may put the information*." 8A Charles Alan Wright, et al., *Federal Practice & Procedure Civil* § 2043 (3d ed. 1994) (emphasis added).

Apple argues (at 3) that the existing protective order "is more than sufficient to alleviate any concerns Plaintiffs might have about disclosing their Apple IDs." But the existing orders and protocols in this case are aimed primarily at protecting the disclosure of confidential information to people outside of the litigation. They do not purport to limit how Apple's counsel and Apple can use Apple IDs to look up information about the named Plaintiffs beyond the scope of what the parties agree to in the normal course of discovery. If you believe existing protective orders (or any other order) places limits on how Apple can use Plaintiffs' Apple IDs to access personal, health, financial, and other sensitive information for use in this litigation, please point us to those provisions. For this reason, MDL Plaintiffs ask Apple to agree to the reasonable limitations described herein on its own use, in this litigation, of the Plaintiffs' Apple IDs and the information those IDs make available and will seek a further protective order (ideally by stipulated agreement) limiting how the Apple IDs may be used if the parties cannot reach that agreement.

Finally, Plaintiffs address the suggestion, which counsel for Apple raised when we met and conferred, that it is somehow improper for Plaintiffs to raise these concerns before providing Plaintiffs' Apple IDs. It is incumbent upon counsel to ensure that their clients' personal information, health data, financial histories, browsing histories, and other information is not

accessed or used in litigation beyond what is relevant and proportional to the needs of the case. An Apple ID, in Apple's own hands and by Apple's own terms, enables a vast collection of information beyond that scope. Counsel for Plaintiffs must therefore ensure reasonable limits on the use of the information whose collection – by Apple – an Apple ID enables.

**Non-Party Apple IDs**

Your August 28, 2026 Letter did not address the issue of non-parties' Apple IDs. Apple has not explained why the needs of the case require the named Plaintiffs to provide Apple IDs belonging to their spouses, minor or adult children, or other non-parties that could be encompassed by Apple's Interrogatory No. 2. It is inappropriate to unilaterally surrender access to purchase history, health data, location history, browsing history, communications, financial information, and more for non-parties who are not before this Court and have not consented to the disclosure of those sensitive and expansive categories of information.

Apple cannot make it a condition of suing Apple that a plaintiff hand over the Apple IDs of his or her family members, thereby giving Apple carte blanche to access the digital lives of people who are not parties to the case. If accepted, this position would chill antitrust enforcement by weaponizing the very monopoly power that is at issue in this litigation – using Apple's unparalleled access to personal data as a deterrent to those who would challenge its market practices.

Apple has not explained the relevance of these individuals' Apple IDs, much less the expansive universe of information about them that their Apple IDs would allow Apple to collect. When we met and conferred, Apple indicated that it seeks information about each named Plaintiff's choices about Apple products, but there are far less intrusive ways to get this information. Watch Plaintiffs are willing to meet and confer, for example, to consider ways for Mr. Giamanco to indicate how many Apple IDs he has set up for other people, how many he pays for using his own or shared payment methods, or some other meaningful metric, without actually revealing those other individuals' Apple IDs.

When we met and conferred, Apple's explanation of the scope of this part of its request changed during the course of the discussion. At one point, Apple indicated that it needed all Apple IDs the named Plaintiffs control and for which they make purchase decisions. Later, Apple indicated that it also includes situations where the named Plaintiff does not make purchase decisions, but the person making purchase decisions with their own Apple ID shares a payment method with the named Plaintiff. Apple characterized these scenarios as "edge cases," but we believe they encompass the common situation of a spouse with his or her own Apple ID and purchase / download choices, who shares a payment method with the named Plaintiff. As written, the scope of Apple's request could even include the Apple IDs of a Plaintiff's adult children who now pay for all of their own products and subscriptions, merely because their parent (the named Plaintiff) set up those Apple IDs in the past.

To the extent Apple suggests a parallel to the data MDL Plaintiffs have requested for purposes of ascertaining class members, Plaintiffs submit, again, that the requests are far from symmetrical. Plaintiffs request the data and identifying information necessary to identify class members and their relevant purchases. They will not know, based on provision of that data, what other items class members have purchased (whether from Apple or otherwise), what class members' health data shows, all other apps class members have downloaded, all subscriptions they have purchased, or their browsing history.

MDL Plaintiffs have not concluded that the parties are at impasse given the parties' shared understanding regarding certain relevant uses of named Plaintiffs' Apple IDs and the potential for an agreed-upon set of protections to ensure only those specific uses of their Apple IDs. We remain willing to meet and confer in good faith to resolve these issues without Court intervention, consistent with Local Rule 37.1(a)(1). We welcome Apple's identification of the specific categories of information it seeks to access through the named Plaintiffs' Apple IDs, so that the parties can negotiate reasonable and proportionate terms of production and limits on the uses of these identifiers.

Sincerely,

/s/ *Ariela M. Migdal*
Ariela M. Migdal
Caroline Shoaibi
KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.
1615 M Street, NW, Suite 400
Washington, D.C. 20036
Tel.: (202) 326-7900

*On behalf of Direct Apple Watch Purchaser Plaintiffs*

/s/*Caroline F. Bartlett*
Caroline F. Bartlett
CARELLA, BYRNE, CECCHI, BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, NJ 07028
Tel: (973) 994-1700

/s/*Theodore DiSalvo*
Theodore DiSalvo
HAUSFELD
1200 17th Street NW, Suite 600
Washington, D.C. 20036
Tel.: (202) 540-7200

*On behalf of the Direct iPhone Purchaser Plaintiffs*

/s/ *Jeffrey L. Spector*
Jeffrey L. Spector
Nicholas J. Alicata
SPECTOR CALDES & CORRIGAN, P.C.
2001 Market Street
Suite 3420
Philadelphia, PA 19103
Tel: (215) 496-0300

*On behalf of Indirect iPhone Purchaser Plaintiffs*