# Exhibit I

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

IN RE: APPLE INC. SMARTPHONE ANTITRUST LITIGATION

*This Document Relates To:*

*Giamanco v. Apple Inc.*,
24-cv-7238-JXN-LDW

Case No. 2:24-md-3113-JXN-LDW

MDL 3113

Hon. Julien X. Neals, U.S.D.J.
Hon. Leda D. Wettre, U.S.M.J.

**DIRECT APPLE WATCH PURCHASER PLAINTIFFS' SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS TO DEFENDANT APPLE INC.**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, the Direct Apple Watch Purchaser Plaintiffs ("Watch Plaintiffs"), by and through their counsel, hereby request that Defendant Apple Inc. produce the Documents described below. As required by Rule 34, Apple Inc.'s responses and Documents shall be served on and produced electronically to counsel for Watch Plaintiffs, and any hard-copy Documents and things shall be produced at the offices of Korein Tillery, 205 N. Michigan Ave., Suite 1950, Chicago, IL 60601, within thirty days of service.

**DEFINITIONS**

1. To the extent a term is not defined below, Watch Plaintiffs incorporate by reference all definitions in Watch Plaintiffs' First Set of Requests for Production of Documents and Things to Defendant Apple Inc. as if set forth fully herein.

2. The term "Background Execution" means the execution of a task, performance of a function, or processing of data by an App on a Smartphone or Smartwatch when the App is operating in the background or in a suspended state, as opposed to operating in the foreground.

3. The term "Communication" means any transmission of information, ideas, facts, data, proposals, or any other matter by one or more persons or between two or more persons by any means, including, but not limited to, telephone conversations, emails, online messages, or other forms of electronic correspondence, letters, written memoranda, and face-to-face conversations.

4. The term "CSA" shall mean the Connectivity Standards Alliance, with a U.S. office at 508 2nd Street, Suite 109B, Davis, California 95616.

5. The term "Document" is to be given the broadest meaning contemplated by Federal Rule of Civil Procedure 34(a)(1)(A) and includes, without limitation, any electronically or physically stored information or Communications, including, but not limited to, written, recorded, printed, or graphic matter, whether produced, reproduced, or stored on paper, cards, film, audio or video tapes, computer storage device, Source Code, software code, and other types of code, or any other media of any kind, whether sent or received or neither, including, but not limited to, originals, copies (with or without notes or changes), drafts, appendices, schedules, exhibits, attachments, and things similar to the foregoing however denominated by You, in the possession, custody or control of You, or of any officer, agent, employee, representative, counsel, or other person acting or purporting to act for or on behalf of You or in concert with You.

6. The term "GSMA" shall mean the mobile communications industry organization headquartered at 1 Angel Lane, London, EC4R 3AB, UK, and with U.S. offices in Atlanta, GA.

7. The term "P&Ls" shall mean detailed annual profit and loss statements or reports and all underlying data for all revenues and costs associated with Apple iPhones, iPads, MacBooks, AirPods, and Apple's business overall from June 9, 2008 (or from the first year a given product was sold for products released after 2008, *e.g.*, iPads), separately for the United States and internationally, and as further described in Watch Request No. 99.

8. The term "Smartwatch" means any wrist-worn device that tells time while extending and improving the capabilities of Smartphones, including, in many instances, by allowing users to collect health and fitness data that is synced to a Smartphone, view and act on messages and notifications received by the Smartphone, track and share location information, exercise control over a Smartphone and Smartphone Apps, access and use a mobile wallet, and take advantage of an App ecosystem for additional functionalities.

9. The term "Third-Party Smartwatch" means any Smartwatch made by a Third-Party Smartwatch Maker other than Apple.

10. The term "Third-Party Smartwatch Maker" means any entity that has developed, produced, manufactured, or sold a Third-Party Smartwatch, including, but not limited to, Pebble, Garmin, Fitbit, Google, and Samsung.

11. The term "This Case" means *In re Apple Inc. Smartphone Antitrust Litigation*, No. 24-md-03113-JXN-LDW (D.N.J.), and all cases centralized or consolidated therewith.

12. The term "Watch P&Ls" shall mean detailed annual profit and loss statements or reports and all underlying data for all revenues and costs associated with Apple Watches by model and year from 2015 to the present, separately for the United States and internationally, and as further described in Watch Request No. 98.

13. The terms "You," "Yours," "Apple Inc.," "Apple," "Company," or "Defendant" mean Apple Inc. and its predecessor and successor entities, officers, directors, parents, subsidiaries (whether direct or indirect), affiliates, employees, agents, attorneys, representatives, independent contractors, or other persons acting or authorized to act on its behalf.

**INSTRUCTIONS**

1. Each Document Request shall be answered pursuant to Federal Rules of Civil Procedure 26 and 34 and any applicable Local Rules and shall be supplemented as required by Federal Rule of Civil Procedure 26(e). Any Documents created or discovered after the date of these Requests are subject to Your continuing obligation to supplement Your production(s) under Federal Rule of Civil Procedure 26(e).

2. Each Request seeks non-privileged Documents, wherever their location, that are in the actual or constructive possession, custody, or control of You or Your present or former employees, attorneys, advisors, accountants, bookkeepers, agents, or representatives. A Document is deemed in Your actual or constructive possession, custody, or control if it is in Your physical custody or if it is in the physical custody of any other person and You (a) own such Documents in whole or in part; (b) have a right, by control, contract, statute, order, or otherwise to use, inspect, examine, or copy such Documents on any terms; (c) have an understanding, express or implied, that You may use, inspect, examine, or copy such Documents upon any terms; or (d) have, as a practical matter, been able to use, inspect, examine, or copy such Documents when You sought to do so.

3. The terms defined above and in the individual Requests for production and inspection are to be construed broadly to the fullest extent of their meaning in a good faith effort to comply with the Federal Rules of Civil Procedure. If, in responding to any of these Requests, You encounter any ambiguity in construing either the Request or a definition or instruction relevant to it, You shall set forth the matter deemed ambiguous and the construction used in responding to the Request.

4. If You contend that the information sought is not in Your control, indicate the entities who have such control.

5. If any Document is withheld, in whole or in part, for any reason, including, but not limited to, any claim of privilege of any kind, work-product protection, trade secret, or confidentiality, You shall provide with respect to each such Document all information required to be furnished by Federal Rule of Civil Procedure 26(b)(5) or any other court order in This Case.

6. If any portion of any Document is responsive to any Request, the entire Document must be produced. If any requested Document cannot be produced in full, produce the Document to the extent possible, specifying each reason for Your inability to produce the remainder, and stating whatever information, knowledge, or belief You have concerning the portion not produced.

7. If any Document requested was formerly in Your possession, custody, or control and has been lost, destroyed, or otherwise disposed of, You shall furnish a list identifying each such Document, setting forth the following information with respect to each Document.

a. The title of the Document and the nature and subject matter of its contents;

b. The identity or identities of the person or persons who prepared or authored the Document; the custodian or custodians of the Document; if applicable, the person or persons to whom the Document was sent or was intended to be sent; and, if applicable, the recipient or recipients, or intended recipient or recipients, of the Document;

c. The date on which the Document was prepared;

d. The date on which the Document was transmitted, if applicable; and

e. The date on which the Document was lost, destroyed, or otherwise disposed of; the manner, conditions of, reasons for, and circumstances surrounding such loss, destruction, or other disposition; and the persons requesting and performing the destruction or other disposition.

8. Unless otherwise specified, the relevant time period is June 9, 2008, until the end of fact discovery (the "Period").

9. Unless otherwise specified, Requests seeking Documents concerning markets, sales, or business operations should be construed as seeking Documents concerning U.S. marketing, sales, or business operations. Requests seeking Documents concerning all other topics—including, but not limited to engineering and design changes—should be construed as seeking Documents from any location without geographic restriction.

10. All productions should be made in compliance with the terms of the Stipulation and Order Governing Electronically Stored Information and Hard Copy Documents and the Discovery Confidentiality Order entered in *In re Apple Inc. Smartphone Antitrust Litigation*, No. 24-md-3113 (D.N.J.).

## REQUESTS FOR PRODUCTION

### WATCH REQUEST NO. 95

Provide all granular, individual transaction-level data to show each direct purchaser (*i.e.*, each putative class member), and each of their purchases, of any model of an Apple Watch in the United States from launch of the Apple Watch in 2015 to the present. Such data shall include all purchases directly from Apple whether from Apple's website, a physical Apple Store, the Apple Store app, or any other means or sales channel (e.g., purchases from Apple with order fulfillment by a third party). Such data further shall include direct purchases by businesses not for resale but rather for use by the business itself, including its employees, contractors, or agents. Such individual transaction-level data shall contain for each transaction:

a. Name (first, middle, and last)

b. Email address

c. Home address

d. Business address

e. Billing address

f. Shipping address

g. Birthdate

h. Telephone number(s)

i. Method of payment

j. Credit card number

k. Sticker price for each Apple Watch;

l. Net purchase price for each Apple Watch, meaning the price after any discounts Apple thinks should apply for each Apple Watch;

m. Type of or basis for discount applied (e.g., trade-in, limited-time sale, loyalty rebate, etc.)

n. Specific model

o. SKU number

p. Sales channel

q. Sales/order date

r. Ship date

s. Order received date

**WATCH REQUEST NO. 96**

All granular, individual transaction-level data to show each direct purchaser (*i.e.*, each putative class member), and each of their purchases, of any add-on service (e.g., AppleCare, Apple Fitness+, iCloud+) or accessory (e.g., watch bands) associated with the Apple Watch in the United States from 2015 to the present. Such data shall include all purchases directly from Apple whether from Apple's website, a physical Apple Store, the Apple Store app, or any other means or sales channel (e.g., purchases from Apple with order fulfillment by a third party). Such data further shall

include direct purchases by businesses not for resale but rather for use by the business itself, including its employees, contractors, or agents. Such individual transaction-level data shall contain for each transaction:

a. Name (first, middle, and last)

b. Email address

c. Home address

d. Business address

e. Billing address

f. Shipping address

g. Birthdate

h. Telephone number(s)

i. Method of payment

j. Credit card number

k. Sticker price for each Apple Watch;

l. Net purchase price for each Apple Watch, meaning the price after any discounts Apple thinks should apply for each Apple Watch;

m. Type of or basis for discount applied (e.g., trade-in, limited-time sale, loyalty rebate, etc.)

n. Specific model

o. SKU number

p. Sales channel

q. Sales/order date

r. Ship date

s. Order received date

**WATCH REQUEST NO. 97**

Data sufficient to show monthly sales—within the United States and, separately, internationally—of any model of Apple Watch, from 2015 to the present. Such data shall include revenue, quantities of units sold, model sold, country of sale, and month and year of sale.

**WATCH REQUEST NO. 98**

Detailed annual profit and loss statements or reports and all underlying data ("Watch P&Ls") for all revenues and costs associated with Apple Watches by model and year from 2015 to the present, separately for the United States and internationally. Such Watch P&Ls (*i.e.*, reports, statements, and data) shall include all revenues and costs of the Apple Watch. Such data further shall include and separately show all costs associated with the development of WatchOS, all costs attributed to Apple Watch software or hardware in the ordinary course of business, and any Apple Watch-derived revenues from, *e.g.*, accessories and app sales.

**WATCH REQUEST NO. 99**

Detailed annual P&Ls for Apple iPhones, iPads, MacBooks, AirPods, and Apple's business overall from June 9, 2008 (or from the first year a given product was sold for products released after 2008, *e.g.*, iPads), separately for the United States and internationally. Such data shall include all revenues and costs of these products. Such data further shall include and separately show all costs associated with the development of each product, all costs attributed to each product's software or hardware in the ordinary course of business, and any revenues derived from these products, *e.g.*, accessories and app sales.

**WATCH REQUEST NO. 100**

All Documents indicating that Apple's leadership, meaning the Board of Directors, CEO (including Steve Jobs, Tim Cook, and any successor) and three levels of reporting below the CEO, received, considered, or relied on the P&Ls and Watch P&Ls requested in request numbers 98 and 99 above, including presentations or discussions of draft or final P&L or Watch P&L data.

**WATCH REQUEST NO. 101**

To the extent not encompassed by Request for Production No. 30, all Documents and data prepared or provided by Kantar, Kantar Group, Kantar Group and Affiliates, or affiliates of those entities that mention the Apple Watch, iPhone, Third-Party Smartwatches or wearables, or Third-Party Smartphones, and all Documents and Communications referencing said Documents or data.

**WATCH REQUEST NO. 102**

To the extent not encompassed by Request for Production No. 30, all Documents and data prepared or provided by International Data Corporation (IDC, see www.idc.com) or affiliates that mention the Apple Watch, iPhone, Third-Party Smartwatches or wearables, or Third-Party Smartphones, and all Documents and Communications referencing said Documents or data.

**WATCH REQUEST NO. 103**

All studies, research, or reports identified internally at Apple or by Apple employees as iPhone Owner Studies, Watch Owner Studies, or Active Devices IBs (Installed Bases), all similar studies, research, or reports however labelled, and all data used in their creation.

**WATCH REQUEST NO. 104**

Documents sufficient to show the identities, titles, and time in service of members of the Watch price committee.

**WATCH REQUEST NO. 105**

All Documents presented to or relied upon by the Watch price committee, including all Watch price committee reviews.

**WATCH REQUEST NO. 106**

All Documents created by or at the instruction of the Watch price committee.

**WATCH REQUEST NO. 107**

All Communications referencing the Watch price committee or Watch price committee reviews.

**WATCH REQUEST NO. 108**

All data used to create Watch price committee reviews.

**WATCH REQUEST NO. 109**

All Apple Software Requirements Specifications (SRS) relevant to communication between Smartwatches and iOS and SRS sufficient to show how these systems operate differently based upon geography.

**WATCH REQUEST NO. 110**

All Apple Software Design Specifications (SDS) relevant to communication between Smartwatches and iOS and SDS sufficient to show how these systems operate differently based upon geography.

**WATCH REQUEST NO. 111**

All Apple software architecture diagrams and policy files relevant to communication between Smartwatches and iOS and software architecture diagrams and policy files sufficient to show how these systems operate differently based upon geography.

**WATCH REQUEST NO. 112**

All Documents concerning Apple's beta-testing programs for iOS, Apple Watch, and communication between iOS and Smartwatches, including but not limited to criteria for selecting beta testers, test coverage goals, test reports, feedback collection mechanisms, number of beta testers per feature or program, and use of beta results in product or policy decisions affecting Background Execution or communication between iOS and Smartwatches.

**WATCH REQUEST NO. 113**

All test documents concerning iOS, Apple Watch, and communication between iOS and Smartwatches, including but not limited to software and hardware test plans, test matrices, test scripts, and use of results in product or policy decisions affecting communication between iOS and Smartwatches and Background Execution.

**WATCH REQUEST NO. 114**

All Documents concerning changes in policy or software affecting Apple Watch or Third-Party Smartwatch connectivity or Background Execution.

**WATCH REQUEST NO. 115**

A full export of project management and tracking software used by Apple to manage changes and modifications to iOS or Apple Watch software, reports of bugs or errors in software, or ongoing software engineering projects, including but not limited to all feature specifications, bug reports, and roadmaps.

**WATCH REQUEST NO. 116**

All Documents related to project management and tracking software used by Apple to manage changes and modifications to iOS or Apple Watch software, reports of bugs or errors in software, or ongoing software engineering projects, including but not limited to all feature specifications, bug reports, and roadmaps.

**WATCH REQUEST NO. 117**

All source code repositories for iOS and WatchOS, with version control history from 2008 to the present.

**WATCH REQUEST NO. 118**

Documents sufficient to show iOS release notes relating to Apple Watch or Third-Party Smartwatches from 2008 to the present.

**WATCH REQUEST NO. 119**

All Documents concerning testing or evaluation of Third-Party Smartwatches.

**WATCH REQUEST NO. 120**

Documents sufficient to show, for each named Plaintiff representing Direct Apple Watch Purchaser Plaintiffs:

a. the user data that Apple has collected for that Plaintiff;

b. the directory services identifier associated with that user data;

c. personally identifying information associated with that directory services identifier; and

d. the Apple ID established for that user, along with the associated email address, phone number, first name, last name, date of birth, physical address (if entered), and any other identifying information.

**WATCH REQUEST NO. 121**

All Documents relating to app developers' requests for interoperability with hardware and software features built into iOS, iPadOS, iPhone, and/or iPad. This includes, but is not limited to, Documents related to requests under Article 6(7) of the EU Digital Markets Act (DMA), Apple's evaluations of such requests, Apple's responses to such requests, developers' appeals, reviews of developers' appeals, and conciliation.

**WATCH REQUEST NO. 122**

All Documents related to interoperability requests, questions, and feedback submitted through Apple's Feedback Assistant.

**WATCH REQUEST NO. 123**

All Documents related to Apple's move from Apple Wireless Direct Link (AWDL) to Wi-Fi Aware. This includes, but is not limited to, Documents related to any impacts the move would or did have on privacy, security, interoperability, or competition.

**WATCH REQUEST NO. 124**

All Documents relating to how Smartwatches or smartwatch apps establish Wi-Fi connections with iPhones/iOS. This includes, but is not limited to, documents concerning: high-bandwidth peer-to-peer Wi-Fi connections; the Apple Wireless Direct Link (AWDL) protocol; the Wi-Fi Alliance's Neighbor Awareness Networking (NAN) protocol; the Wi-Fi Aware protocol; the Wi-Fi Aware Framework.

**WATCH REQUEST NO. 125**

All Documents and Communications concerning, referring, responding, or relating to any efforts, proposals, initiatives, discussions, inquiries, advocacy, or expressions of interest by the GSMA to encourage, request, recommend, propose, or facilitate Apple's adoption, implementation, support, or enhancement of any messaging protocol, standard, or technical specification designed to enable or improve interoperability, feature parity, encryption (including end-to-end encryption), privacy, security, media quality, group messaging functionality, typing indicators, read receipts, or other messaging capabilities between: (a) devices running iOS and devices running Android; or (b) Apple's iMessage service and messaging services utilizing Rich Communication Services (RCS) or any successor protocol.

**WATCH REQUEST NO. 126**

All Documents and Communications concerning, referring, responding, or relating to any efforts, proposals, initiatives, discussions, inquiries, advocacy, or expressions of interest by the CSA to encourage, request, recommend, propose, or facilitate Apple's adoption, implementation, support, or enhancement of any protocol, standard, or technical specification designed to enable or improve interoperability, feature parity, encryption (including end-to-end encryption), privacy, security, media quality, messaging functionality, or other capabilities between: (a) devices running iOS and devices running on an operating system other than iOS; or (b) Apple's iMessage service and messaging services utilizing Rich Communication Services (RCS) or any successor protocol.

**WATCH REQUEST NO. 127**

All slides Apple referenced or relied on for the "Technology Tutorial" it provided on Nov. 6, 2024 in *United States of America, et al. v. Apple Inc.*, Case No. 2:24-cv-04055 (D.N.J. Nov. 6, 2024).

**WATCH REQUEST NO. 128**

All Documents related to app review, rejection, rejection challenges or appeals, and how rejections are communicated to developers.

**WATCH REQUEST NO. 129**

All Documents related to differences in iOS-connected Smartwatch functionality in the European Union versus in the United States. Such Documents include without limit those related to Apple's decisions regarding whether to make functions available in only one, both, or neither of those places.

**WATCH REQUEST NO. 130**

All Documents related to decisions by Apple to provide, create, share, limit, or restrict access to APIs or Siri for third-party devices using Apple's HomeKit, including but not limited to devices using the Matter and Aliro standards and devices with MFi certification.

**WATCH REQUEST NO. 131**

All Documents related to decisions by Apple to provide, create, share, limit, or restrict access to APIs or Siri for use with Apple CarPlay.

**WATCH REQUEST NO. 132**

Documents sufficient to show the requirements for certification under the MFi Program, Matter, Aliro, or any other relevant certification or related program or standard, for third-party devices and/or vehicles to work with Apple HomeKit or Apple CarPlay, and how those requirements have changed over time.

**WATCH REQUEST NO. 133**

All Documents related to privacy or security with respect to the certification requirements under the MFi Program, Matter, Aliro, or any other relevant certification or related program or standard, for third-party devices and/or vehicles to work with Apple HomeKit or Apple CarPlay.

**WATCH REQUEST NO. 134**

All Documents related to Wi-fi, Bluetooth, and any other wireless connection or means of exchanging information between an iPhone and a third-party device and/or vehicle connected to that iPhone through Apple HomeKit (including devices using the Matter and Aliro standards and

devices with MFi certification) or Apple CarPlay, including but not limited documents related to identifying, connecting, and pairing the device and/or vehicle to the iPhone; preserving or severing the connection with the device and/or vehicle when the iPhone Bluetooth is turned off in Settings or toggled off in the Control Panel; and exchanging information between the iPhone and the third-party device and/or vehicle if an Apple app (e.g. Apple Home or Apple Music) or a third-party app (e.g. ecobee or Spotify) is closed or force quit via swiping up in the App Switcher page.

**WATCH REQUEST NO. 135**

All Documents related to connectivity between iPhones and smart devices (including, but not limited to, smart refrigerators, smart thermostats, smart locks, and smart vacuums) outside Apple HomeKit via companion apps or other means, including but not limited to access to APIs, access to Siri, background execution, security risks, and connectivity and pairing via Wi-Fi, Bluetooth, or any other means.

**WATCH REQUEST NO. 136**

All Documents related to connectivity between iPhones and vehicles (including, but not limited to, vehicle entertainment systems) outside Apple CarPlay via companion apps or other means, including but not limited to access to APIs, access to Siri, background execution, security risks, and connectivity and pairing via Wi-Fi, Bluetooth, or any other means.

Dated: February 24, 2026

Respectfully submitted,

By: /s/ *David Walchak*
David Walchak

Thomas R. Curtin
tcurtin@mdmc-law.com
Kathleen N. Fennelly
kfennelly@mdmc-law.com
**MCELROY, DEUTSCH,**
**MULVANEY & CARPENTER, LLP**
1300 Mount Kemble Avenue
Morristown, NJ 07962
Tel.: (973) 993-8100

Steven F. Molo smolo@mololamken.com
Lauren F. Dayton
ldayton@mololamken.com
Eric Posner eposner@mololamken.com
Matthew E. Gold mgold@mololamken.com
**MOLOLAMKEN LLP**
300 North LaSalle Street Chicago, IL 60654
Tel.: (312) 450-6700

Kayvon M. Ghayoumi
kghayoumi@mololamken.com Caroline A.
Veniero cveniero@mololamken.com
**MOLOLAMKEN LLP**
600 New Hampshire Ave, N.W.
Washington, D.C. 20037
Tel.: (202) 556-2000

David C. Frederick
dfrederick@kellogghansen.com
Aaron M. Panner
apanner@kellogghansen.com
Alex A. Parkinson
aparkinson@kellogghansen.com
Scott K. Attaway
sattaway@kellogghansen.com
Ariela M. Migdal
amigdal@kellogghansen.com
Katherine V. Tondrowski
ktondrowski@kellogghansen.com
Rund M. Khayyat
rkhayyat@kellogghansen.com
**KELLOGG, HANSEN, TODD,**
**FIGEL & FREDERICK, P.L.L.C.**
1615 M Street, NW, Suite 400
Washington, D.C. 20036
Tel.: (202) 326-7900

Stephen M. Tillery
stillery@koreintillery.com
Carol O'Keefe
cokeefe@koreintillery.com
**KOREIN TILLERY LLC**
505 N 7th Street, Suite 3600
St. Louis, MO 63101
Tel.: (312) 241-4844

George A. Zelcs
gzelcs@koreintillery.com
Daniel A. Epstein
depstein@koreintillery.com
David Walchak
dwalchak@koreintillery.com
**KOREIN TILLERY LLC**
205 North Michigan, Suite 1950
Chicago, IL 60601
Tel.: (312) 641-9750

**CERTIFICATE OF SERVICE**

I certify that on February 24, 2026, I served the foregoing on counsel of record via email.

By: /s/ *David Walchak*
David Walchak