# Exhibit J

SPECTOR ROSEMAN & KODROFF PC

June 22, 2026

**VIA EMAIL**

Connor S. Sullivan, Esq.
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166
cssullivan@gibsondunn.com

**Re: *In re Apple Inc. Smartphone Antitrust Litigation*, No. 2:24-md-3113**

Dear Connor:

Direct iPhone Purchaser Plaintiffs ("DIPS") and Indirect iPhone Purchaser Plaintiffs ("IIPs"), (collectively "Plaintiffs," or "iPhone Plaintiffs"), write in response to your letter dated May 5, 2026,[1] regarding Apple's written discovery requests directed to Plaintiffs addressed during our March 13, March 19, and March 26, 2026 meet and confers regarding Apple's Requests.

As before, Plaintiffs reiterate our previous objections to the relevance of the vast majority of these requested materials, and ***any*** proposals discussed herein are subject to the parties coming to an agreement regarding the appropriate time period for these Requests, as well as the search term negotiations the parties have begun to undertake, as most recently discussed in Plaintiffs' May 27 email attaching proposed compromise terms. Plaintiffs' search term proposals have been made in the interest of compromise and remain subject to previously articulated general and specific objections, without waiver of any such objections or other rights to seek relief from the overbreadth and irrelevant nature of Apple's Requests. Plaintiffs remain available to meet and confer with Apple regarding specific search terms related to Apple's Requests.

**DIP RFPs 108–110 // IIP RFPs 99–101**

Plaintiffs acknowledge Apple's definitions of "Plaintiffs," "You," "Your," and "data," as discussed in its March 24 and April 14 letters, but continue to stand on our objection to the inclusion of those "acting on behalf of" Plaintiffs in Apple's proposed definition of "You" and "Your," as discussed in Plaintiffs' April 14 letter. *See* April 14, 2026, letter from C. Bartlett, et al., to C. Sullivan, at 1. That portion of Apple's proposed definition remains impermissibly vague, ambiguous, and overbroad.

---

[1] Unless otherwise specified, any references herein to Apple's May 5, 2026, letter will be referring to the letter directed to iPhone Plaintiffs only, and not the letter directed to all MDL Plaintiffs.

With regard to these Requests, subject to their objections and provided that the parties come to an agreement regarding the relevant time period, Plaintiffs will search for and produce non-privileged documents responsive to these Requests to the extent they exist and can be located through a reasonable search of reasonably accessible sources. Plaintiffs refer Apple to Plaintiffs' search terms relayed on May 27, 2026, specifically rows 25, 28, 32 and 37, which were reasonably crafted to search for such responsive materials to this Request (among others). In addition, as discussed in Plaintiffs' May 4, 2026, letter and May 27, 2026, email, Plaintiffs have proposed many other terms directed at identifying documents that discuss or otherwise relate to Apple's Alleged Conduct, and those terms should likewise identify any potentially responsive documents to these Requests.

**DIP RFPs 141, 144, 146 // IIP RFPs 138, 141, 143**

Subject to their objections and provided that the parties come to an agreement regarding the relevant time period, Plaintiffs will search for and produce non-privileged documents in Plaintiffs' possession that are not publicly available and are responsive to these Requests to the extent they exist and can be located through a reasonable search of reasonably accessible sources. Privileged documents and/or communications will be logged as required by and in accordance with the Federal Rules, the Local Rules, and the Court's Orders.

**DIP RFP 132 // IIP RFP 129**

Plaintiffs appreciate Apple's (a) clarification that its request for information related to "subscriptions" is limited to materials relating to the facts and details of subscriptions rather than actions taken within a subscription, and (b) agreement to exclude (i) movie, TV show, and music acquisitions within an app, and (ii) certain acquisitions made on gaming consoles and computers. However, Apple's explanations and purported concessions through "deferral" of plainly irrelevant information accomplishes little to reign in the wildly overbroad, irrelevant, unduly burdensome and disproportionate nature of this Request.

Apple's Request seeks "***<u>All</u>*** Documents … relating to [Plaintiffs'] ***complete history*** of digital software purchases or acquisitions" which encompasses "*…**<u>all</u>** software installed, purchased, or acquired on **<u>any</u>** device **<u>used</u>** by You (including Smartphones, tablets, Wearables, portable media players, smart TVs, gaming consoles).*" (emphases supplied). The staggering overbreadth of this Request is consistent with Apple's 140+ Requests (and its nested subpart-ridden Interrogatory); Apple casts an impermissibly broad net and seeks to appear reasonable by "deferring" certain facially irrelevant fragments. But this Request, even without gaming consoles and computers, is not designed to discover relevant material, nor is it proportional to the needs of this case. Plaintiffs have previously explained why ecosystem and lock-in allegations do not provide Apple a license for unlimited discovery into Plaintiffs' digital lives and stand by that position. *See* March 27, 2026, letter from C. Bartlett, et al., to C. Sullivan, at Sections I.C., II.

Apple's insistence that a "complete history of software purchases or acquisitions," aside from straining credulity vis à vis relevance,[2] discards the inherently private nature of app download histories. For example, dating apps (particularly if a user is not public about their sexuality or gender identity), fertility trackers, and sobriety calendar apps demonstrate the deeply personal nature of the contents of one's devices which can be gleaned by knowing that an app was merely downloaded. The fact that a plaintiff installed such apps would serve no cognizable purpose in bolstering Apple's defense other than to embarrass or harass Plaintiffs for daring to sue Apple and needlessly – not to mention disproportionately – invading their privacy.

Moreover, while Apple has "deferred" aspects of this Request relating to certain types of devices, Apple apparently continues to maintain that ***all*** software installed on other facially irrelevant devices including smart TVs and a non-descript category of "portable media players" is relevant. It is not. Plaintiffs assume the continued inclusion of those devices was an oversight, but to the extent it was not, please explain their relevance to Plaintiffs' allegations, as neither vaguely defined device category is discussed in either of Plaintiffs' complaints (at most, there are passing references to the iPod). More importantly, Apple's Request ignores the foundational requirements that discovery be related to a party's claims or defenses. Whether a Plaintiff installed apps on his or her smart TV does not satisfy that standard. Plaintiffs continue to maintain that plaintiff discovery in this matter should be largely limited to smartphones, smartwatches, and some limited universe of "wearables," with discrete discovery into certain other product types.

More problematic still, even if the specified device categories were appropriate for discovery, Apple's Request would still run afoul of proper discovery bounds. Apple seeks information regarding digital software acquisitions on ***any*** device Plaintiffs "**used**," regardless of whether it was actually a Plaintiffs' device. This may include devices outside of Plaintiffs' custody and control (e.g., a smart TV at a significant other's apartment). The mere fact that Plaintiffs may have downloaded an app on a friend's or family member's device does not permit Apple to take discovery from that friend or family member, and it certainly does not permit Apple to require Plaintiffs to produce discovery from someone else's property. To the extent Plaintiffs agree to search for or produce any materials in response to this Request (and Apple's other Requests), Plaintiffs will do so as to their own devices.

Plaintiffs continue to object to this Request as wholly irrelevant to any claims or defenses in this case and remain available to meet and confer to discuss any meaningful narrowing of this Request.

---

[2] Apple also fails to explain *why* Plaintiffs' "subscriptions purchased through or in connection with 'digital software'" are relevant to any of the parties' claims or defenses. *See* May 5, 2026, letter at 3. Apple claims this information is somehow relevant to lock-in allegations and consumer switching, but it is not apparent *how* a subscription to, for example, the New York Times app, has any relation to those allegations. *Id.*

**DIP RFPs 134–35 // IIP RFP 131–32**

Plaintiffs continue to object to these Requests for detailed usage data as overbroad, irrelevant, unduly burdensome and disproportionate to the needs of the case. How often a particular Plaintiff picks up his or her phone has no bearing on whether they are able to switch devices due to Apple's lock-in strategies; the same is true for screen time, most-used applications, and notifications. That lack of relevance applies with equal or greater force to smartwatches. Apple purportedly needs this information to evaluate the "value…that Plaintiffs derive from their devices" and to test Plaintiffs' allegations regarding lock-in. *See* May 5, 2026 letter, at 4.[3] Time and again, Apple has attempted to elasticize Plaintiffs' allegations about *Apple's own* conduct into a one-size-fits-all justification for the relevance of *every* aspect of Plaintiffs' digital lives. As discussed, both above and in previous correspondence, Apple is wrong. *See supra*, at 2 (citing March 27, 2026, letter, at Sections I.C., II).

As Apple is well aware, people use their smartphones for many purposes, including very personal ones (such as dating, health tracking, and finances), making this overbroad request particularly invasive. Moreover, Plaintiffs do not make any specific allegations about their personal use of their smartphones and/or smartwatches. It is difficult to understand how materials outlining Plaintiffs' use in intricate detail could concern any party's specific "claim[s]" or "defense[s];" in short, the data are not relevant. *See* Fed. R. Civ. P. 26(b)(1); *see also United States ex rel. Customs Fraud Investigations, LLC v. Victaulic Co.*, 839 F.3d 242, 259 (3d Cir. 2016) (citing Fed. R. Civ. P. 26(b)(1)), *cert. denied*, 138 S. Ct. 107 (2017).

Plaintiffs further object to the extent this Request seeks temporary data and analytics, such as screentime. As Apple is aware, Apple devices have two limitations on this issue. First, not all iPhones have screentime enabled, as users must affirmatively opt-in to screentime functions. Second, screentime data are automatically deleted on a rolling basis, such that only the previous 2 weeks of screentime data are available. Apple is aware of these issues because Apple *designed* the screentime tracking function. It also informed Plaintiffs that there is no method to retrieve historical screentime data beyond that two-week rolling window or set up a recurring download of it. Apple's only proposed solution (for a circular problem of its own creation) is to further burden Plaintiffs and have them create new evidence by manually collecting screentime reports via screenshots on a periodic basis. Plaintiffs will not agree to this haphazard and unduly burdensome proposal.

Despite these problems with Apple's Requests, Plaintiffs have investigated the feasibility of providing Apple with the data it seeks. Plaintiffs have been informed that providing this data will require a substantial amount of additional tech time, thereby increasing discovery costs and

---

[3] Without citing Plaintiffs' Complaints, Apple also claims it needs these data to "cross examine" Plaintiffs about "whether they have been restrained, harmed, or impacted … by the Alleged Conduct." *See* May 5, 2026, letter at 4. Plaintiffs claim the Alleged Conduct caused them to pay more for iPhones than they would have but-for Apple's conduct. Apple will glean no insight into the answer to that question by seeing how much a Plaintiff browses on Amazon or surfs the internet.

requiring Plaintiffs to again surrender their devices for a significant amount of time. Given its (at most) *de minimis* relevance, burdening Plaintiffs to provide this data would be plainly disproportionate to the needs of the litigation. Apple can probe Plaintiffs' usage of their smartphones and smartwatches through targeted questions during depositions—without demanding exhaustive, invasive usage data of limited utility. *See In re Front Loading Washing Machine Class Action Litig.*, 2010 WL 3025141, at *4 (D.N.J. July 29, 2010) (denying defendant's motion to compel overbroad discovery from plaintiffs and noting that the information can be obtained "by alternative means, such as through the depositions of individual plaintiffs"); *Bernstein v. Mafcote, Inc.*, 2014 WL 3579494, at *5 (D. Conn. July 21, 2014) (holding that defendant's effort to obtain discovery concerning plaintiff's compensation was "facially overbroad" and explaining "even if this information is relevant, defendant may obtain this information in a less obtrusive manner, for example, by deposing plaintiff").

Given these Requests' (a) significant overbreadth, (b) *de minimis* relevance (at best), (c) invasiveness of Plaintiffs' privacy, (d) substantial burden of producing, and (e) consequently disproportionate nature, Plaintiffs continue to object to these Requests.[4] However, Plaintiffs remain available to meet and confer to discuss any meaningful narrowing of these Requests.

**DIP RFPs 142, 151 // IIP RFP 139, 148**

Plaintiffs continue to object to DIP Request 142 and IIP Request 139 to the extent they call for attorney work-product. As Apple is aware, Interrogatory and RFA responses are commonly prepared by counsel, and reviewed with and verified by their client. Asking for documents, data, and communications that were ***reviewed or relied upon*** in preparation of discovery responses would lead to responses that necessarily reflect counsel's work processes, work-product, and mental impressions. Plaintiffs will not waive such protections. To the extent finalized Interrogatory or RFA responses cite or expressly rely upon documents that were not otherwise produced in the litigation, they will be produced in due course.

With respect to DIP Request 151 and IIP Request 148, subject to their objections and provided that the parties come to an agreement regarding the relevant time period, Plaintiffs will produce non-privileged documents that are responsive to this Request to the extent they exist and can be located through a reasonable search of reasonably accessible sources.

**DIP RFP 152 // IIP RFP 149**

In light of Apple's agreement to limit this request to responsive documents and communications related to the Alleged Conduct, and provided Apple also confirms that it is only seeking either communications between (a) a named Plaintiff and any plaintiff or counsel in the government action, or (b) a third party and any plaintiff or counsel in the government action,

[4] The transient nature of much of the requested data also supports Plaintiffs' continued objection to its production.

provided that a copy of that communication is found in Plaintiffs' possession, Plaintiffs believe the parties are in agreement.[5]

Given those clarifications, and subject to their objections and provided that the parties come to an agreement regarding the relevant time period, Plaintiffs will produce non-privileged documents that are responsive to this Request to the extent they exist and can be located through a reasonable search of reasonably accessible sources. Plaintiffs refer Apple to Plaintiffs' search terms relayed on May 27, 2026, specifically rows 25 and 37, which were reasonably crafted to search for such responsive materials to this Request (among others). In addition, as discussed in Plaintiffs' May 4, 2026, letter and May 27, 2026, email, Plaintiffs have proposed many other terms directed at identifying documents that discuss or otherwise relate to Apple's Alleged Conduct, and those terms should likewise identify any potentially responsive documents to these Requests.

**DIP RFP 153 // IIP RFP 150**

Plaintiffs object to this Request to the extent it seeks premature expert discovery materials. Specifically, Apple seeks "[All Documents] …both for yourself and on behalf of any putative class, …relating to any and all claimed injuries and all damages calculations, estimates, or methodologies (including any calculations, estimates or methodologies regarding the pass-through of alleged overcharges)…" Plaintiffs will adhere to the expert discovery schedule ordered by the Court.

To the extent this Request seeks materials related to Plaintiffs in their individual capacities, and subject to their objections and provided that the parties come to an agreement regarding the relevant time period, Plaintiffs will search for and produce non-privileged documents responsive to this Request to the extent they exist and can be located through a reasonable search of reasonably accessible sources. Plaintiffs direct Apple to Plaintiffs' search terms relayed on May 27, 2026, specifically rows 2, 5, 16, 21, 22, and 36 which were reasonably crafted to search for responsive documents and communications to this Request (among others).

**DIP RFP 140 // IIP RFP 137**

Unfortunately, Apple's letter has made this Request more, not less, vague and ambiguous. Previously, Plaintiffs inquired what Apple meant by "necessary accessories." Apple has now responded with an expanded iteration of this Request, which now includes "the lifecycle cost associated with Plaintiffs' use of an iPhone for the expected duration of ownership of the device. This includes the cost of the device, wireless service, and any other costs that the plaintiff owner needs to operate, upgrade or enhance his or her iPhone." It is still unclear what Apple intends to include in "*any other costs* that the plaintiff owner needs to operate, upgrade or enhance his or her iPhone." *See* May 5, 2026, letter at 6.

---

[5] Plaintiffs do not intend to produce or log communications that are strictly between class counsel and counsel for the government plaintiffs regarding the Alleged Conduct.

Nevertheless, Plaintiffs' understanding of this Request is that it calls for a discrete universe of documents regarding comparisons of total combined costs, likely a null set for most, if not all, Plaintiffs. Consequently, subject to this understanding and Plaintiffs' objections, and provided that the parties come to an agreement regarding the relevant time period, Plaintiffs will search for and produce non-privileged documents responsive to this Request to the extent they exist and can be located through a reasonable search of reasonably accessible sources. Plaintiffs direct Apple to Plaintiffs' search terms relayed on May 27, 2026, specifically rows 21, 22, 24, and 31 which were reasonably crafted to search for responsive documents and communications to this Request (among others).

**DIP RFP 139 // IIP RFP 136**

Subject to their objections and provided that the parties come to an agreement regarding the relevant time period, Plaintiffs will search for and produce non-privileged documents responsive to this Request to the extent they exist and can be located through a reasonable search of reasonably accessible sources. Plaintiffs direct Apple to Plaintiffs' search terms relayed on May 27, 2026, specifically rows 3,4, 6, 7, 8, 9, 10 and 11 which were reasonably crafted to search for responsive documents and communications to this Request (among others).

**DIP RFP 133 // IIP RFP 130**

For the avoidance of doubt, Plaintiffs will apply the same definition of "features" as intended in the DIP and IIP Complaints.

Plaintiffs reject Apple's proposed scope of devices as it, once again, seeks entirely irrelevant and disproportionate discovery. Apple seeks discovery into the privacy concerns related to smart speakers and smart appliances, neither of which are remotely related to any of Plaintiffs' claims. Plaintiffs have previously objected to Apple's attempts to include information pertaining to other irrelevant devices such as game consoles (*See* March 27, 2026, letter, at Section II.A; April 14, 2026, letter, at 5) and maintain the same objection here. Apple's attempts to artificially inflate the scope of "devices" once again falls flat, as Apple has not, and cannot, credibly articulate what conceivable relevance a Plaintiff's hypothetical purchase of an LG smart-dishwasher would have in this case.

Nevertheless, subject to their objections and provided that the parties come to an agreement on the relevant time period, Plaintiffs remain willing to consider ways to narrow this Request and come to an agreement regarding what devices can be reasonably included in Plaintiffs' search.

Plaintiffs remain available to meet and confer regarding the foregoing issues.

Sincerely,

*/s/Caroline F. Bartlett*
Caroline F. Bartlett
CARELLA, BYRNE, CECCHI, BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, NJ 07028
Tel: (973) 994-1700

*On behalf of the Direct iPhone Purchaser Plaintiffs*

*/s/ Jeffrey L. Spector*
Jeffrey L. Spector
SPECTOR ROSEMAN & KODROFF, P.C.
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Tel: (215) 496-0300

*On behalf of Indirect iPhone Purchaser Plaintiffs*