Liza M. Walsh
Douglas E. Arpert
Lauren R. Malakoff
Jessica K. Formichella
WALSH PIZZI O'REILLY LLP
Three Gateway Center
100 Mulberry Street, 15th Floor
Newark, New Jersey 07102
(973) 757-1100

*Attorneys for Defendant Apple Inc.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE: APPLE INC. SMARTPHONE ANTITRUST LITIGATION | Case No. 2:24-md-03113-JXN-LDW<br><br>MDL No. 3113<br><br>**PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION TO SEAL**<br><br>*Filed Electronically* |

Pursuant to Local Civil Rule 5.3(c), Defendant Apple Inc. ("Apple") submits these proposed findings of fact and conclusions of law in support of sealing portions of (1) Watch Plaintiffs' Letter Brief in Support of Additional Watch Custodians, dated August 26, 2026, (Dkt. No. 294); (2) Apple's Response Regarding Watch Plaintiff's Proposed Additional Custodians, dated September 2, 2026, (Dkt. No. 313); (3) Apple's Letter in Response to Watch Plaintiff's Letter Regarding the Timeliness of Motion to Compel Custodians, dated September 29, 2026, (Dkt. No. 378); and (4) Watch Plaintiffs' Reply Letter Brief in Support of Additional Watch Custodians, dated November 3, 2026, (Dkt. No. 423), as well as the exhibits filed at Dkt. Nos.

294-2 through 294-13, 294-16 through 294-48, 294-50, 294-51, 299-2, 313-2, 346-7 through 346-13, 359-8, 378-2, and 423-2 (collectively, "Confidential Information").

Under Local Civil Rule 5.3(c), a motion to seal or otherwise restrict public access may be granted upon a showing of:

(a) the nature of the materials or proceedings at issue;

(b) the legitimate private or public interest which warrants the relief sought;

(c) the clearly defined and serious injury that would result if the relief sought is not granted; and

(d) why a less restrictive alternative to the relief sought is not available.

Local Civ. R. 5.3(c)(3).

Set forth below are the findings of fact and conclusions of law addressing each of the elements of Local Civil Rule 5.3(c). These findings of fact and conclusions of law support granting Apple's Motion to Seal the Confidential Information.

## I. The Nature of the Materials or Proceedings at Issue

### A. Findings of Fact

1. Apple operates in an intensely competitive environment. Therefore, Apple has serious and legitimate concerns that competitors will be quick to capitalize on any release of Apple's highly sensitive information in order to gain competitive advantage. Similarly, bad actors may exploit nonpublic information to harm Apple or its users. As such, Apple takes extensive measures to protect the confidentiality of its information. (Walsh Decl.[1] ¶ 4).

[1] "Walsh Decl." refers to the Declaration of Liza M. Walsh on behalf of Apple in support the Motion to Seal, submitted herewith.

2. The Confidential Information reflects Apple's nonpublic, proprietary, and/or competitively sensitive business information that it maintains in confidence and is of the type that Apple treats as confidential and proprietary generally. Particularly, the Confidential Information contains personally identifiable information of nonparty current and former Apple employees and related nonpublic information concerning their roles, responsibilities, reporting lines, performance evaluations, and team composition; nonpublic information about Apple's internal email listservs, mailboxes, and administrative channels and internal operating procedures, including as to Apple's App Review process; security sensitive information related to Apple's external and internal platforms; nonpublic information concerning Apple's unannounced, unreleased, or cancelled products and services, including internal codenames; nonpublic information concerning Apple's business dealings and communications with nonparties; nonpublic information related to Apple's product development; nonpublic technical information about Apple's products and services; nonpublic information regarding foreign regulatory investigations, including documents that are treated as confidential under foreign law; nonpublic financial information concerning Apple's sales; and nonpublic information related to Apple's business strategy and internal deliberations, including Apple's internal analyses of its products and services, business plans, marketing strategies, strategic considerations, and other nonpublic information relating to Apple's efforts to gain a competitive advantage, all of which Apple does not reveal to the public. (Walsh Decl. ¶¶ 4–5).

3. Additionally, the Confidential Information reflects information that Apple has designated as "Confidential" and/or "Highly Confidential" pursuant to the Discovery Confidentiality Order, entered by this Court on October 7, 2025 (Dkt. No. 124) ("DCO"). (Walsh

Decl. ¶ 6).

**B. Conclusions of Law**

4. There is generally a "presumptive right to public access to all material filed in connection with *nondiscovery* pretrial motions," but there is "no such right as to discovery motions and their supporting documents." *N. Jersey Media Grp. Inc. v. United States*, 836 F.3d 421, 435 (3d Cir. 2016) (quoting *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 165 (3d Cir. 1993)) (emphasis in original); *accord Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984) (explaining that "pretrial depositions and interrogatories are not public components of a civil trial" and that "[s]uch proceedings were not open to the public at common law"). Thus, the "filing of a document does not, on its own, bring that document within the common law right of access." *Id.* (emphasis in original). A contrary holding "would make raw discovery, ordinarily inaccessible to the public, accessible merely because it had to be included in motions precipitated by inadequate discovery responses or overly aggressive discovery demands" and could "make the civil discovery process 'more complicated and burdensome than it already is.'" *Leucadia*, 998 F.2d at 164–65 (quoting *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 12 (1st Cir. 1986)); *see, e.g.*, *City of Sterling Heights Gen. Employees' Ret. Sys. v. Prudential Fin., Inc.*, No. 212CV05275 (MCA) (LDW), 2016 WL 234838, at *1 (D.N.J. Jan. 19, 2016) (recognizing the Third Circuit rule that "discovery materials filed as part of a discovery motion generally are not subject to the common law right of access"); *accord* ECF No. 356 at 2 (noting that there is a "presumptive right to public access to all material filed in connection with *nondiscovery* pretrial motions" (emphasis added)); *Conlon v. BP Lubricants United States*, Civil Action No. 22-6755 (JXN) (LDW), 2025 U.S. Dist. LEXIS 278814, at *3 (D.N.J. Aug. 11, 2025) (same); *Actelion Pharms. Ltd. v. Bristol-Myers Squibb Co.*,

No. CV2118695 (CCC) (LDW), 2023 WL 6542771, at *1 (D.N.J. Apr. 3, 2023) (same).

5. Further, even when the presumption of public access does apply, courts may generally restrict public access to certain documents by allowing them to be sealed where "the material is the kind of information that courts will protect," *In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019) (quoting *Miller v. Indiana Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994)), and there is a showing that "good cause" exists to protect the materials and information at issue, *JJD Elec., LLC v. SunPower Corp.*, *Sys.*, 738 F. Supp. 3d 569, 576 (D.N.J. 2024) (KMW) (MJS) (quoting *Securimetrics, Inc. v. Iridian Techs., Inc.*, Civ. No. 03-4394 (RBK), 2006 WL 827889, at *2 (D.N.J. Mar. 30, 2006)). *See also Alchem USA Inc. v. Cage*, No. 21-2994, 2022 WL 3043153, at *3 (3d Cir. Aug. 2, 2022) (finding that judicial records filed in connection with a motion for summary judgment contained the kind of information courts will protect and that the movant overcame the presumption of access).

6. Fed. R. Civ. P. 26(c)(1)(G) allows the Court to protect materials containing "trade secret[s] or other confidential research, development, or commercial information" to prevent harm to a litigant's competitive standing in the marketplace. *See In re Avandia Mktg.*, 924 F.3d at 679 ("[C]ourts may permissibly seal judicial records 'where they are sources of business information that might harm a litigant's competitive standing.'" (quoting *Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 662 (3d Cir. 1991))); *Pearson Educ., Inc. v. Chegg, Inc.*, No. 21-16866 (EP) (ESK), 2023 WL 1779523, at *3 (D.N.J. Feb. 6, 2023) (granting motion to seal information regarding the structure and function of a party's proprietary database, and trade secret and other information contained in the database); *In re Fosamax (Alendronate Sodium): Prods. Liab. Litig.*, No. 08-08 (JAP), 2013 WL 12174178, at *2–3 (D.N.J. Aug. 16, 2013) (granting

motion to seal party's commercially sensitive internal business practices and databases).

7. Good cause to seal relevant materials "exists when a party makes a particularized showing that disclosure will cause a 'clearly defined and serious injury to the party seeking closure.'" *JJD Elec., LLC*, 738 F. Supp. 3d at 576 (quoting *Securimetrics*, 2006 WL 827889, at *2).

8. Here, the Confidential Information at issue is not subject to the presumption of public access because it is discovery material that was filed in connection with a pretrial discovery brief. *See N. Jersey Media Grp. Inc.*, 836 F.3d at 435; *City of Sterling Heights*, 2016 WL 234838, at *1 (finding that "materials produced in discovery attached to a letter application concerning a discovery dispute" are "precisely the type of materials the Third Circuit referenced when finding no presumptive right of access to materials attached to a discovery motion" (citing *Leucadia*, 998 F.2d at 165)). But even if the presumption applied, the Court finds that the Confidential Information should be sealed for the reasons set out below.

## II. The Legitimate Private or Public Interest Which Warrants the Relief Sought

### A. Findings of Fact

9. The Confidential Information reflects information that Apple considers confidential and proprietary. (Walsh Decl. ¶¶ 4–5).

10. Apple has submitted a Declaration stating that it has an interest in not publicly disclosing this information and relies on such information to advance its business strategies and to maintain a competitive advantage. (*See generally* Walsh Decl.).

11. The public filing of commercially sensitive and proprietary information, including personally identifiable information of nonparty current and former Apple employees and related

nonpublic information concerning their roles, responsibilities, reporting lines, performance evaluations, and team composition; nonpublic information about Apple's internal email listservs, mailboxes, and administrative channels and internal operating procedures, including as to Apple's App Review process; security sensitive information related to Apple's external and internal platforms; nonpublic information concerning Apple's unannounced, unreleased, or cancelled products and services, including internal codenames; nonpublic financial information concerning Apple's sales; nonpublic information concerning Apple's business dealings and communications with nonparties; nonpublic information related to Apple's product development; nonpublic technical information about Apple's products and services; nonpublic information regarding foreign regulatory investigations, including documents that are treated as confidential under foreign law; and nonpublic information related to Apple's business strategy and internal deliberations, including Apple's internal analyses of its products and services, business plans, marketing strategies, strategic considerations, and other nonpublic information relating to Apple's efforts to gain a competitive advantage, all of which Apple does not reveal to the public, would threaten and harm Apple's competitive standing in the marketplace. (Walsh Decl. ¶ 8).

12. Apple has a legitimate interest in ensuring that its confidential, proprietary, nonpublic information remains undisclosed. If this information were to become available, competitors could and would likely use that information against Apple in the highly competitive marketplace. Therefore, to ensure its interests are protected, Apple seeks to seal only limited portions of the documents at issue. (Walsh Decl. ¶¶ 8–9).

**B. Conclusions of Law**

13. Courts may deny access to and seal documents that are discovery materials filed as

part of a discovery motion because there is no public right of access to such materials. *See Leucadia*, 998 F.2d at 165.

14. When the presumption of public access applies, courts have recognized that it is not absolute and may be rebutted. *In re Avandia Mktg.*, 924 F.3d at 672 (citing *Bank of Am. Nat'l Tr. & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 800 F.2d 339, 344 (3d Cir. 1986)). "Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes." *United States v. Janssen Therapeutics*, 795 F. App'x 142, 145–46 (3d Cir. 2019) (quoting *Littlejohn v. BIC Corp.*, 851 F.2d 673, 678 (3d Cir. 1988)). Accordingly, courts may deny access to and seal documents when they encompass business information that might harm a litigant's competitive standing. *See In re Avandia Mktg.*, 924 F.3d at 672, 679; *Littlejohn*, 851 F.2d at 678 (citations omitted); *In re Gabapentin Pat. Litig.*, 312 F. Supp. 2d 653, 664 (D.N.J. 2004) ("The presence of trade secrets or other confidential information weighs against public access and, accordingly, documents containing such information may be protected from disclosure.").

15. Sealable business information includes "non-public business and marketing plans, sales, costs, profit, revenue, and market share data, and proprietary . . . processes," *Immunomedics, Inc. v. Roger Williams Med. Ctr.*, No. CV154526 (JLL) (SCM), 2016 WL 10572644, at *2 (D.N.J. Dec. 22, 2016), as well as "commercially sensitive business information, including research, development, and technical information related to the" moving party's products, *Actelion Pharms.*, 2023 WL 6542771, at *2; *see, e.g.*, *City of Sterling Heights*, 2016 WL 234838, at *2 (granting motion to seal documents that summarized the sealing party's "confidential procedures and policies" because they "could reveal [the sealing party's] proprietary processes to competitors").

16. Courts have also "recognized the need to protect information relating to a company's technology systems and cyber security." *HomeSource, Corp. v. Retailer Web Servs., LLC*, No. 1:18-CV-11970 (CPO-AMD), 2024 WL 5245558, at *3 (D.N.J. Oct. 3, 2024) (quotation marks omitted) (collecting cases).

17. Similarly, courts routinely seal the personally identifiable information of nonparty employees and related employment documents such as performance evaluations based on nonparty employees' privacy interests. *See, e.g.*, *Ivanovs v. Bayada Home Health Care, Inc.*, No. 1:17-cv-01742 (NLH) (AMD), 2023 WL 184118, at *3 (D.N.J. Jan. 13, 2023) (sealing the "identity of [a] non-party employee who was the subject" of an exhibit filed with a discovery motion); *Jorjani v. N.J. Inst. of Tech.*, Nos.: 18-11693 (WJM), 20-1422 (WJM), 2022 WL 1811304, at *6 (D.N.J. June 2, 2022) (granting a motion to seal nonparties' employment information, concluding that "[p]ublic disclosure would likely threaten the privacy interests of such nonparties"); *HomeSource*, 2024 WL 5245558, at *3 ("[P]ersonal identifying information of nonparties is precisely the kind of information that courts will protect."); *Ganoe v. Hegseth*, 2025 WL 2085927, at *8 (M.D. Pa. July 24, 2025) (similar); *see also DesMarteau v. CIT Grp., Inc.*, No. Civ. A. 09-5361 (SRC), 2010 WL 3733014, at *2 (D.N.J. Sept. 17, 2010) (permitting defendants to redact employee names and personal information in interrogatory response).

## III. The Clearly Defined and Serious Injury that Would Result if the Relief Sought Is Not Granted

### A. Findings of Fact

18. The disclosure of the Confidential Information, which includes and/or references personally identifiable information of nonparty current and former Apple employees and related

nonpublic information concerning their roles, responsibilities, reporting lines, performance evaluations, and team composition; nonpublic information about Apple's internal email listservs, mailboxes, and administrative channels and internal operating procedures, including as to Apple's App Review process; security sensitive information related to Apple's external and internal platforms; nonpublic information concerning Apple's unannounced, unreleased, or cancelled products and services, including internal codenames; nonpublic information concerning Apple's business dealings and communications with nonparties; nonpublic information related to Apple's product development; nonpublic financial information concerning Apple's sales; nonpublic technical information about Apple's products and services; nonpublic information regarding foreign regulatory investigations, including documents that are treated as confidential under foreign law; and nonpublic information related to Apple's business strategy and internal deliberations, including Apple's internal analyses of its products and services, business plans, marketing strategies, strategic considerations, and other nonpublic information relating to Apple's efforts to gain a competitive advantage, all of which Apple does not reveal to the public, poses a substantial risk of harm to Apple's legitimate proprietary interests and competitive position. (Walsh Decl. ¶¶ 4, 8).

19. Without having invested the necessary time, money, and resources, competitors would improperly benefit from the disclosure of this information as they would gain insight into nonpublic information concerning Apple's unannounced, unreleased, or cancelled products and services, including internal codenames; nonpublic information concerning Apple's business dealings and communications with nonparties; nonpublic financial information concerning Apple's sales; nonpublic information related to Apple's product development; nonpublic technical

information about Apple's products and services; nonpublic information regarding foreign regulatory investigations, including documents that are treated as confidential under foreign law; and nonpublic information related to Apple's business strategy and internal deliberations, including Apple's internal analyses of its products and services, business plans, marketing strategies, strategic considerations, and other nonpublic information relating to Apple's efforts to gain a competitive advantage. Competitors are likely to use this information to enhance their own business operations, better their market and negotiation positions, and gain an unfair advantage. Specifically, competitors could use this information to duplicate or otherwise learn from Apple's nonpublic product-development and technical work and anticipate and undermine Apple's strategic choices. This would harm Apple by exposing (and thereby weakening) its efforts to gain a competitive advantage, depriving it of the benefits of its investments, and permitting competitors to unfairly undercut, counter, or free-ride on Apple's commercial performance and future development. (Walsh Decl. ¶¶ 4, 8). Moreover, disclosure would reveal the personally identifiable information of nonparty current and former Apple employees and related nonpublic information concerning their roles, responsibilities, reporting lines, performance evaluations, and team composition. In addition to undermining the privacy rights of nonparties, the disclosure of employee names could harm Apple's competitive standing by revealing nonpublic information about Apple's staffing, internal team structures, and resource allocation to competitors and other third parties, which could be used to gain leverage over Apple in negotiations, harm Apple's relationships with third parties, or to circumvent Apple's external-facing processes. Additionally, disclosure would reveal nonpublic information about Apple's internal email listservs, mailboxes, and administrative channels and internal operating procedures, including as to Apple's App

Review process, as well as security sensitive information related to Apple's external and internal platforms. Bad actors could use this information to target, weaken, or circumvent the security of Apple's internal and external platforms, which would both harm Apple's competitive standing and pose a security risk to Apple's customers.

20. Accordingly, Apple would suffer financial damage, damage to business relationships, damage to commercial standing, and/or other irreparable harm should any of the confidential, proprietary, commercial, and competitively sensitive business information reflected in the Confidential Information be publicly disclosed, and used by others, including Apple's competitors, in contravention of the terms of the DCO. (*Id.*).

**B. Conclusions of Law**

21. This Court has discretion to balance the factors for and against access to court documents. *See Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 781 (3d Cir. 1994).

22. Protection of a party's interest in confidential commercial information is a sufficient threat of irreparable harm, and is clearly defined as a serious injury. *See Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984).

**IV. Why a Less Restrictive Alternative to the Relief Sought Is Not Available**

**A. Findings of Fact**

23. Once confidential information is disclosed to the public, it can never again be sealed or maintained as private.

24. The documents that Apple seeks to seal in full or partially redact are not subject to the presumptive right of public access. *See supra* ¶¶ 4, 8. Regardless, disclosure of the Confidential Information would pose a financial and competitive risk to Apple. Apple has made

a good faith effort to identify only the necessary and limited portions of information that should be sealed to protect Apple's interests consistent with governing law. Apple has requested that certain documents be sealed in full because they contain predominantly Confidential Information such that redacting the confidential portions would render the documents as a whole largely unreadable and without meaning or would leave only general provisions publicly disclosed. For those documents, redaction is not a viable alternative to sealing in full. Accordingly, the only way to protect Apple's interests is to seal the Confidential Information. (Walsh Decl. ¶ 9).

**B. Conclusions of Law**

25. Under Local Civil Rule 5.3(c)(3), a party seeking to seal documents must meet the fourth prong that no less restrictive alternative to the relief sought is available. *See Publicker*, 733 F.2d at 1074. Courts will seal documents "in their entirety" when they "contain predominantly confidential information" such that "redacting the confidential portions . . . instead of sealing the complete documents would render the documents as a whole largely unreadable and without meaning" or would "leav[e] only general provisions . . . publicly disclosed." *Fields PAG, Inc. v. CDK Glob., LLC*, No. 16-CV-01876-MCA-MAH, 2016 WL 9185293, at *4 (D.N.J. June 10, 2016); *see also City of Sterling Heights*, 2016 WL 234838, at *2 (finding that there was no less restrictive alternative to sealing documents in full where the "entirety of the[] documents appear[ed] to contain confidential information"); *Reeves v. Trescal, Inc.*, No. 19-CV-00421-WJM-ESK, 2020 WL 13695375, at *3 (D.N.J. Mar. 18, 2020) (similar). Accordingly, while the general rule is that redacting documents is the less restrictive alternative to sealing them in full, courts in this District hold that when documents "as a whole contain sensitive and confidential information," "redaction is not a viable alternative to sealing th[os]e documents in full." *China Falcon Flying*

*Ltd. v. Dassault Falcon Jet Corp.*, No. CV 15-6210 (KM) (MAH), 2017 WL 3718108, at *3 (D.N.J. Aug. 29, 2017).

26. Apple only seeks to seal the specific documents at issue, which if disclosed would cause it harm as described above.

Dated: November 16, 2026

Respectfully submitted,

*s/Liza M. Walsh*
Liza M. Walsh
Douglas E. Arpert
Lauren R. Malakoff
Jessica K. Formichella
WALSH PIZZI O'REILLY LLP
Three Gateway Center
100 Mulberry Street, 15th Floor
Newark, New Jersey 07102
Tel.: (973) 757-1100

*OF COUNSEL* (admitted *pro hac vice*):
Cynthia E. Richman
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036
(202) 955-8500

Daniel G. Swanson
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
(213) 219-7000

Joseph R. Rose
Julian W. Kleinbrodt
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Tel.: (415) 393-8200

Connor S. Sullivan
GIBSON, DUNN & CRUTCHER LLP

200 Park Avenue
New York, NY 10166
Tel.: (415) 351-4000

*Counsel for Defendant Apple Inc.*