McElroy Deutsch

1300 Mount Kemble Avenue
P.O. Box 2075
Morristown, NJ 07962-2075
T: 973.993.8100 | F: 973.425.0161
MDMC-LAW.COM

THOMAS R. CURTIN
Direct Dial: (973) 401-7117
tcurtin@mdmclaw.com

August 26, 2026

**VIA ECF AND EMAIL**

**HIGHLY CONFIDENTIAL – FILED UNDER SEAL**

Honorable Leda Dunn Wettre, U.S.M.J.
U.S. District Court for the District of New Jersey
50 Walnut Street
Newark, New Jersey 07102

Re: *In re Apple Inc. Smartphone Antitrust Litigation*, 2:24-md-03113-JXN-LDW
Watch Plaintiffs' Letter Brief In Support Of Additional Watch Custodians

Dear Judge Wettre,

Direct Apple Watch Purchaser Plaintiffs ("Watch Plaintiffs") respectfully submit this letter brief pursuant to ¶ 5 of the Court's Special Master Appointment Order, Dkt. No. 208, seeking an order compelling Apple Inc. ("Apple") to produce documents from fourteen (14) additional[1] custodians that Watch Plaintiffs have identified who are not custodians in the Government Action. Watch Plaintiffs have more than met their burden of raising a "fair inference" that the proposed custodians possess relevant, non-duplicative material—they have affirmatively demonstrated it—and Apple offers no evidence of undue burden or duplication justifying its refusal to produce. Watch Plaintiffs request oral argument pursuant to Local Rule 78.1(b).

## I. BACKGROUND

Watch Plaintiffs' claims are distinct from those the Government and other MDL Plaintiffs bring, which focus on Apple's monopoly over the smartphone. *See* Op. (Dkt. No. 34) at 5 (recognizing Watch Plaintiffs' "legal theories are distinct"). In support of their distinct claims, Watch Plaintiffs seek 14 case-specific custodians in addition to the Government Action custodians, which MDL Plaintiffs had no role in selecting. Watch Plaintiffs identified these custodians after Apple refused to substantiate its blanket objection to 61 custodians MDL Plaintiffs had jointly proposed. *See* Ex. 2 at 14-15.[2] Watch Plaintiffs supported their proposal with a chart demonstrating that each custodian possesses relevant, non-duplicative materials. Ex. 1.

[1] These 14 additional custodians include two individuals that Apple has agreed to offer "as a compromise" only, while contending that their files are duplicative. Ex. 3 at 2-3. Watch Plaintiffs accept Apple's offer to add [redacted] and [redacted] as custodians, and maintain that the evidence indicates their files are not duplicative.

[2] All exhibits cited herein are attached to the Declaration of Ian Moody, filed with this letter brief.

On July 20, 2026, Apple agreed to two[3] of Watch Plaintiffs' proposed custodians. Ex. 2 at 9. On July 24, 2026, Apple claimed, without evidentiary support, that any relevant documents in the remaining 12 proposed custodians' files "were likely" created for or shared with the 54 Government Action custodians. Ex. 3 at 2-3. Watch Plaintiffs responded on August 3, 2026, detailing documents from these custodians that will go unproduced absent an order from this Court. Ex. 4.

## II. LEGAL STANDARD

A party is entitled to discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). When a party seeks discovery from custodians beyond those initially designated, the requesting party meets its burden by presenting "sufficient information" to raise a "fair inference" that the proposed custodians possess relevant "emails or analyses different from those of the agreed custodians." *City of Sterling Heights Gen. Emps.' Ret. Sys. v. Prudential Fin., Inc.*, 2015 WL 5055241, at *3 (D.N.J. Aug. 21, 2015) (Wettre, J.). Once that showing is made, the burden shifts to the objecting party to demonstrate that production would be unduly burdensome or disproportionate. *See id.* (permitting plaintiff to select 10 additional custodians—on top of 66 already designated—based on a chart raising a "fair inference" of relevance); *Nat'l Lab. Rels. Bd. v. 710 Long Ridge Rd. Operating Co. II, LLC*, 2020 WL 3026523, at *2 (D.N.J. June 5, 2020) (adding custodian where requesting party showed the custodian may possess relevant documents and opposing party "ha[d] not convincingly asserted that production . . . [was] unduly burdensome").

Apple argues the moving party faces a "heavy burden" to overcome a presumption that the producing party selected reasonable and sufficient custodians. *See* Ex. 3 at 2 (quoting *LifeScan, Inc. v. Smith*, 2023 WL 11986899, at *3 (D.N.J. Sept. 27, 2023)). But *Lifescan* is inapposite because the custodians in the Government Action were *not* selected for Watch Plaintiffs—they were selected by different parties for a different case focusing on a different product market (smartphones, not smartwatches). And unlike in *Lifescan*, Watch Plaintiffs have identified the specific custodians likely to possess unique, relevant materials that will go unproduced absent an order from this Court. Regardless, Watch Plaintiffs satisfy any burden, as shown below.

## III. ARGUMENT

Watch Plaintiffs allege a unique product market for iOS-connected smartwatches, Am. Compl. (Dkt. No. 86) ¶¶197-222, unique anticompetitive conduct relating to smartwatches, *id.* ¶¶252-297, a unique class of plaintiffs, *id.* ¶¶244-251, and unique damages, *id.* ¶¶188-194. To prove these distinct claims, Watch Plaintiffs need documents from custodians who work(ed) on the Apple Watch and cannot rely on custodians selected for the Government's smartphone-centric action. Watch Plaintiffs' proposed custodians fill critical gaps in the existing custodial set: software engineers leading smartwatch interoperability, employees analyzing the Apple Watch and its competitors, and relationship managers working with competing smartwatch manufacturers and app developers. These 14 custodians are likely to possess relevant, non-cumulative documents.

[3] Apple also offered three custodians outside of Watch Plaintiffs' list, one of whom is relevant only to the Indirect iPhone Purchaser Plaintiffs.

### A. Relationships With Third Parties

Watch Plaintiffs seek custodians who work with competing smartwatch makers harmed by Apple's anticompetitive conduct and who observed that conduct firsthand. They likely possess unique documents supporting Watch Plaintiffs' core allegations that Apple prevents competing smartwatch makers from interoperating with the iPhone. *See* Am. Compl. ¶¶38-187. Apple asserts, without support, that any relevant documents they possess "were likely created for and shared with" existing custodians. Ex. 3 at 2. But this defies common sense—direct reports elevate only a fraction of their relevant work to their supervisors—and Apple's own documents contradict its assertion. Each proposed custodian was directly involved in the conduct at issue, and serves as a point of contact for parties that were harmed. *See Sandoz, Inc. v. United Therapeutics Corp.*, 2020 WL 13830525, at *4 (D.N.J. Nov. 16, 2020) (adding custodian who was "directly involved in negotiating the agreements" and "serve[d] as a point of contact").

[redacted]. [redacted] is [redacted] described by an Apple employee as the "[redacted]" "[redacted]." Ex. 5 ([redacted] May 27, 2022 CID Dep. Tr. 24:12-25:9). [redacted] works with Watch app developers worldwide, instructing developers to interact with him directly rather than with current custodians. Ex. 6 at -177 ([redacted] is [redacted]); Ex. 7 ([redacted]). Given those close relationships, [redacted] briefs Apple executives on Watch app developer sentiment and challenges concerning "[redacted]." Ex. 6 at -176.

[redacted]. [redacted]. Ex. 11 (listing attendees). He drafted documents [redacted] that are not found in existing files. Ex. 12 at -420 (linking to a missing document). Garmin's productions confirm that [redacted] was Garmin's primary point of contact at Apple. *See, e.g.*, Ex. 13 (Garmin escalations to Apple from November 2021 to February 2022); Ex. 14 (Garmin escalations to Apple from February 2022 to August 2022). Because Apple has not produced [redacted] files, Watch Plaintiffs have not received Apple's side of these exchanges (or internal discussions they prompted). Unless [redacted] is designated as a custodian, such documents will go unproduced.

[redacted] [redacted] is a senior leader at Apple who directs large teams addressing technical issues, including "[redacted]." Ex. 8 at -304. [redacted] was involved in [redacted], *see* Ex. 9, which lie at the heart of Watch Plaintiffs' case, *see* Am. Compl. ¶¶9, 68-80, 85, 97-102, 108-113, 118-163, 183-187. For instance, [redacted] took responsibility for [redacted], Ex. 10—[redacted] Ex. 3 at 3.

### B. APIs and App Review

Watch Plaintiffs challenge Apple's process for reviewing, approving, and rejecting APIs that third-party smartwatch and app developers could use to interoperate with the iPhone. Am. Compl. ¶¶45-67, 81-113. Watch Plaintiffs also challenge Apple's App Review Guidelines governing review, approval, and rejection of apps that would enable third-party smartwatches to interoperate with the iPhone. *Id.* ¶¶38-44, 114-130. Watch Plaintiffs seek two additional custodians with relevant, non-duplicative materials on these topics.

[redacted] is a critical custodian, responsible in part for addressing accusations that Apple used its [redacted] Ex. 43 at -942. [redacted]. Ex. 38 at -990 ([redacted]). [redacted] claims to have written the App Review Guidelines—the specific terms that Watch Plaintiffs allege to be anticompetitive—and he gave the final word on how they were interpreted and enforced. Ex. 39 at -524 [redacted] Ex. 40 at -373, and since leaving Apple, he has publicly criticized how "Apple has struggled with using the App Store as a weapon against competitors." [redacted], *Apple v. Everybody*, Medium (Mar. 29, 2019), https://perma.cc/5GAV-HFPT. Apple undoubtedly has more relevant and non-duplicative documents in [redacted] files, and gives no reason for failing to produce them. Ex. 4 at 4.

[redacted]. [redacted]," thereby conceding that [redacted] possesses documents relevant to Watch Plaintiffs' claims. Ex. 3 at 3. Apple also has confirmed that it can collect documents from the [redacted] mailbox. *Id.* Apple's sole, unsupported objection is that designating the mailbox as a custodian is "inappropriate"[4] and unlikely to yield substantial material. *Id.* at 3-4. But the mailbox offers a targeted, minimally-burdensome means to collect and produce relevant, non-duplicative materials that Apple centrally stores for the API review process. Because Watch Plaintiffs challenge the API review process, and Apple articulates no cognizable burden, the Court should order Apple to collect and produce documents from the [redacted] mailbox.

### C. Software Engineering

Watch Plaintiffs seek software engineering custodians with materials on the smartwatch-specific interoperability issues at the heart of this case. Apple objects that the proposed custodians are "unrelated to the conduct at issue or cumulative" of custodians [redacted] and [redacted]. Ex. 3 at 3. Apple nonetheless agreed to add two custodians: [redacted], who manages [redacted], Ex. 26 at -406, and [redacted], whose team works with developers attempting to interoperate with Apple technology, Ex. 27 ([redacted] Jun. 28, 2013 Dep. Tr. 124:12-125:22). But each proposed, incremental custodian still possess unique, relevant, and important materials on interoperability. *See* Am. Compl. ¶¶ 47-67, 157-163.

[redacted] is an [redacted] Ex. 28 at -069. Colleagues describe him as "[redacted]. Ex. 29 at -955–956. [redacted], *id.*, and

---

[4] Apple cites no authority for this claim. Courts have explicitly held that a "custodian can be a person *or* entity with custody, control, or ownership of ESI." *LKQ Corp. v. Kia Motors Am., Inc.*, 345 F.R.D. 152, 164 (N.D. Ill. 2023) (citing Black's Law Dictionary (11th ed. 2019): "A person or *institution* that has charge or custody (of a child, property, papers, or other valuables)" (emphasis added)). What's more, the parties jointly proposed a protocol for ESI in this case that defines "Custodian" as the "Name of the individual, *or group/department for shared resources*, from whose files the document originated." Dkt. No. 100-2, Appx. A (emphasis added). [redacted] is an entity/group that "[redacted]," Ex. 42, and Apple has already conceded that [redacted] possesses relevant documents, Ex. 3 at 3. Designating [redacted] as a custodian is appropriate.

[redacted], Ex. 30 ([redacted] These issues are central to Watch Plaintiffs' claims. Am. Compl. ¶¶47, 53-67.

[redacted]. [redacted] was [redacted]. He built the team that launched Apple Watch and [redacted] Ex. 41. Apple recognized Mr. [redacted] as an "[redacted]" person who led his own organization within Apple Watch. Ex. 26 at -405–407. [redacted] has deep knowledge of [redacted] Exs. 32-33. [redacted] also [redacted] Ex. 34 ("[redacted]").

[redacted]. [redacted] is [redacted]. He is responsible for [redacted], Ex. 37 ([redacted]). Apple's own employees identified [redacted] as someone likely to have knowledge about APIs for third-party connected devices. Ex. 35 ([redacted]).

[redacted]. [redacted] is [redacted] and "[redacted]" Ex. 31. It is more than fair to infer that he possesses relevant, unique documents related to one of Watch Plaintiffs' key allegations: that Apple made it difficult for third-party watches to pair (and stay connected) to the iPhone. *See* Am. Compl. ¶¶157-163.

**D. Product Marketing, Design, and Strategy**

Watch Plaintiffs seek custodians who work on Apple's strategy for designing and marketing the Apple Watch. Those custodians likely possess relevant information about how Apple cemented its monopoly over the iOS-connected smartwatch market. *See* Am. Compl. ¶¶32-187; *see also Sterling Heights*, 2015 WL 5055241, at *3 (finding it "not surprising" that "more than 66 [] employees may have been heavily involved in the issues relating to this case and may thus have relevant, noncumulative information").

[redacted]. [redacted] is Apple's go-to person for [redacted]. She is the "[redacted]" Ex. 23 at -469. [redacted]. *See, e.g.*, Ex. 24 ([redacted]); Ex. 25 [redacted] Apple claims [redacted] documents are duplicative because she "reports up to or shares her work with" existing custodians. Ex. 3 at 3. Just the opposite: The data she shares and her ability to answer queries indicate that Ms. [redacted] has unique, relevant materials that existing custodians do not already possess.

[redacted]. [redacted] is [redacted] and leads a team responsible for marketing new Apple Watch models. Ex. 19 at -975. He [redacted]. *See* Ex. 20 ([redacted]

[redacted]). Documents indicate that rather than being duplicative, [redacted] participates in [redacted]. *See* Ex. 21 ([redacted]); Ex. 22 at -200 ([redacted]).

[redacted] [redacted] claims responsibility for designing the Apple Watch from its inception, including, in his own words, "developing both the hardware and software to form the foundation for all of the [Apple Watch's] health-based capabilities." Benjamin Clymer, *Apple, Influence, and* [redacted] Hodinkee Mag. (May 2018), https://perma.cc/X4W8-3GEE. [redacted] was the public face for Apple Watch, Ex. 15, and described as the person who managed the "[redacted]" and "[redacted]" when Apple developed the Watch, Ex. 16 ([redacted] Mar. 8, 2021 Dep. Tr. 23:1-9). Apple argues that [redacted] is irrelevant because his work [redacted]." Ex. 3 at 3. But [redacted] broad influence over the direction of the Apple Watch is evident from his self-assessment ("developing . . . [Apple Watch's] health-based capabilities" (Clymer, *Apple, Influence, and* [redacted] and documents produced so far. For instance, [redacted] Ex. 17 at -764. And employees sought information [redacted] for a meeting with [redacted] "[redacted]." Ex. 18 at -479.

### E. Apple Fails to Meet Its Burden as the Objecting Party

Apple has not demonstrated any undue burden or disproportionality. *First*, 14 unique custodians is not disproportionate in a case of this magnitude—a nationwide antitrust class action—where Watch Plaintiffs have a unique case and played no role in selecting the existing custodians. *See Sterling Heights*, 2015 WL 5055241, at *3 (finding 10 additional custodians, on top of 66, was a "moderate number" and not "disproportionate to the size and scale of this action"). Given the importance of the unique issues, the magnitude of this case, and Apple's status as one of the largest corporations on Earth, any burden associated with adding these custodians is outweighed by the benefit of the incremental discovery Watch Plaintiffs seek. Moreover, Apple's technology-assisted review makes the incremental burden even smaller.

*Second*, Apple fails to quantify its burden, such as through hit-count analyses. Apple asserts (without citation) that Watch Plaintiffs' request for hit counts is itself "disproportionate" because it "would require Apple to collect and process the data" of 14 individuals. Ex. 3 at 3. But courts routinely require parties to justify their burden arguments with hit counts. *See Arconic Inc. v. Novelis Inc.*, 2018 WL 5660142, at *3 (W.D. Pa. Aug. 28, 2018) (ordering objecting party to produce hit counts); *Sandoz v. United Therapeutics Corp.*, 2021 WL 287874, at *3 (D.N.J. Jan. 28, 2021) (rejecting a proportionality argument where the objecting party failed to advise "how many 'hits' or documents would have to be reviewed and/or produced if the aforementioned individuals were added as document custodians"). Apple cannot satisfy its burden by arguing that satisfying it would be too burdensome.

## IV. CONCLUSION

For the foregoing reasons, Watch Plaintiffs respectfully request that the Court enter an order compelling Apple to collect and produce documents from the custodians requested.

Respectfully Submitted,

/s/ Thomas R. Curtin
Thomas R. Curtin
MCELROY, DEUTSCH,
MULVANEY & CARPENTER, LLP
1300 Mount Kemble Avenue
Morristown, NJ 07962
Tel: (973) 993-8100
tcurtin@mdmc-law.com

cc: All counsel (by ECF and email)