# EXHIBIT 1

## HIGHLY CONFIDENTIAL

| Name | Basis | Evidence of Relevant, Non-Duplicative Materials |
| --- | --- | --- |

[redacted]

[redacted]

| | | |
|---|---|---|
| | | From [redacted] LinkedIn:<br>Engineering Manager on the Watch team, Apple<br>Apr 2012 to Nov 2021 · 9 yrs 8 mos |

| | | |
|---|---|---|
| | | *Nov 2017 to Nov 2021: Engineering Manager on the Watch team<br>*Jan 2015 to Nov 2017: Engineer on the Watch team |
| [redacted] | | [redacted]<br><br>From [redacted] LinkedIn:<br>Apple 19 years<br>*Vice President, Sensing & Connectivity<br>Sep 2021 to Present · 4 yrs 6 mos<br><br>*Senior Director, Sensing & Connectivity<br>Apr 2018 to Aug 2021 · 3 yrs 5 mos<br>Software Engineering technology group focusing on Location, Motion, Bluetooth, and WiFi across all of our products. For iOS, iPhone, iPad, macOS, Watch, and watchOS, we do: 1) Positioning - GPS/cell/WiFi, U1 ultra-wide band, sensor fusion, map-matching, indoor, geo-fencing, iBeacon, location prediction, CoreLocation; 2) Motion - gyro, accelerometer, compass, context detection, CoreMotion; 3) Fitness & Health - 3 rings (move/exercise/stand), all-day activity, workouts, wheelchair, fall detection, enhanced 911; 4) Bluetooth - AirPods, Classic, BTLE, proximity setup/handoff/discovery, CoreBluetooth; and 5) WiFi - infrastructure, peer-to-peer, ranging, hotspots, Sidecar. |
| [redacted] | | [redacted] claims to have led the development of the Apple Watch from its inception, including "developing both the hardware and software to form the foundation for all of the [Apple Watch's] health-based capabilities." Benjamin Clymer, *Apple, Influence, and Ive*, HODINKEE MAGAZINE, May 2018, https://www.hodinkee.com/magazine/jony-ive-apple. |

[redacted]

| | | |
|---|---|---|
| | | From [redacted] LinkedIn:<br>Director Apple Watch Product Marketing<br>Cupertino, California, United States<br><br>Experience<br>Apple<br>24 years 1 month<br><br>Director Apple Watch Product Marketing<br>September 2022 - Present (3 years 8 months)<br><br>Sr. Product Marketing Manager, Apple Watch<br>October 2012 - September 2022 (10 years) |

[redacted]

[redacted]

| | | |
|---|---|---|
| | | From [redacted] LinkedIn:<br>Market Research and Intelligence Manager<br>Apple<br>Jul 2014 to Present · 11 yrs 7 mos<br>Cupertino, CA |

[redacted]

| | | |
|---|---|---|
| | | From [redacted] LinkedIn:<br>Senior Software Engineering Project Manager at Apple<br>Brooklyn, New York, United States<br><br>Apple<br>17 years 10 months |

| | | |
|---|---|---|
| | | Senior Software Engineering Project Manager<br>November 2019 - Present (6 years 6 months)<br>New York, New York, United States<br>[redacted] |
| | | <u>From [redacted] LinkedIn</u>:<br>Director, Apple Watch Software Engineering<br>Apple · Full-time<br>Aug 2013 to Jan 2020 · 6 yrs 6 mos<br>Cupertino, CA · On-site<br>Built an awesome team to launch Apple Watch and its subsequent generations. Drove architecture and product definition for apps, infrastructure, SDK, health and fitness<br>[redacted] |

[redacted]

| | | |
|---|---|---|
| | | From [redacted] LinkedIn:<br>Sr. Director, App Store Review<br>Apple<br>Mar 2009 to Apr 2016 · 7 yrs 2 mos |

| | | |
|---|---|---|
| | | Cupertino, CA<br>- Built App Store Review team from 4 to over 300 employees, re-organizing as necessary to support international growth<br>- Designed and implemented App Store submissions volume predictions, achieving 95% accuracy on incoming volumes<br>- Testified at numerous hearings with DOJ and FDA, as well as numerous legal depositions for legal proceedings related to the App Store, national and international<br>- Wrote and implemented the App Review Guidelines, taking into account legalities from all supported countries<br>- Designed the policies and methods for automating the App Review process<br>- Built engineering team to create supporting tools for App Review |
| [redacted] | | [redacted]<br><br>[redacted]<br><br>From [redacted] LinkedIn:<br>Director, CoreOS and Developer Tools / Frameworks, Apple<br>Issaquah, Washington, United States<br><br>Summary: High-performing senior leader of product, evangelism and developer teams. Recognized as a creative, positive, strategic thinker with a reputation for achieving high-quality results under time pressure. Accomplished leader of teams driving software development projects on leading edge technologies in short delivery timescales.<br><br>Apple<br>Director, CoreOS and Developer Tools / Frameworks June 2023 - Present (2 years 11 months)<br>Cupertino, California, United States |

[redacted]

[redacted]

# EXHIBIT 2

## Moody, Ian

**From:** Moody, Ian
**Sent:** Thursday, August 6, 2026 5:04 PM
**To:** Suneel Jain; Opendo, Nicole E.; Sullivan, Connor S.; Lo, Jason; Sesia, Jacqueline Liu; Miller, Dana R. Bucy; Tracie Bryant; Brancato, Alexia Renee
**Cc:** Dayton, Lauren; Grueskin, Caroline; Epstein, Daniel; Frazar Thomas; iPhone Antitrust All Plaintiffs – DCO Compliant; ML Apple Watch; KELLOGG-APPLEWATCH-MDL-EXTERNAL; KT-AppleWatch-MDL; Apple-SmartphoneMDL-External@groups.gibsondunn.com; aaron.sheanin@usdoj.gov; pam.cole@usdoj.gov; matthew.viola@usdoj.gov; gauri.kasarla@usdoj.gov; Lwalsh@walsh.law; Lmalakoff@walsh.law
**Subject:** RE: Apple MDL // Custodian M&C

Nicole & Counsel,

To add to Suneel's response, Watch Plaintiffs do not think it makes sense to combine the letters, and do not agree to do so. There is no overlap in disputed custodians and the Plaintiffs have been negotiating separately for additional custodians.

Apple has been in possession of a near-identical copy of Watch Plaintiffs' notice of impasse since July 17. Watch Plaintiffs look forward to receiving your edits Monday and filing shortly thereafter.

Thank you,

Ian Moody
Ext. 4116

---

**From:** Suneel Jain <sjain@schneiderwallace.com>
**Sent:** Thursday, August 6, 2026 5:00 PM
**To:** Opendo, Nicole E. <NOpendo@gibsondunn.com>; Moody, Ian <IMoody@KoreinTillery.com>; Sullivan, Connor S. <CSSullivan@gibsondunn.com>; Lo, Jason <JLo@gibsondunn.com>; Sesia, Jacqueline Liu <JSesia@gibsondunn.com>; Miller, Dana R. Bucy <dana.miller@kirkland.com>; Tracie Bryant <tracie.bryant@kirkland.com>; Brancato, Alexia Renee <alexia.brancato@kirkland.com>
**Cc:** Dayton, Lauren <ldayton@mololamken.com>; Grueskin, Caroline <cgrueskin@mololamken.com>; Epstein, Daniel <DEpstein@KoreinTillery.com>; Frazar Thomas <FThomas@seegerweiss.com>; iPhone Antitrust All Plaintiffs – DCO Compliant <AppleCompliantPlaintiffs@seegerweiss.com>; ML Apple Watch <ml-apple-watch@mololamken.com>; KELLOGG-APPLEWATCH-MDL-EXTERNAL <kellogg-applewatch-mdl-external@lists.kellogghansen.com>; KT-AppleWatch-MDL <KT-AppleWatch-MDL@KoreinTillery.com>; Apple-SmartphoneMDL-External@groups.gibsondunn.com; aaron.sheanin@usdoj.gov; pam.cole@usdoj.gov; matthew.viola@usdoj.gov; gauri.kasarla@usdoj.gov; Lwalsh@walsh.law; Lmalakoff@walsh.law
**Subject:** RE: Apple MDL // Custodian M&C

Nicole and Counsel,

I write on behalf of IIPs. We reject your proposal. To be clear, IIPs are not refusing to coordinate, as suggested in your email below. IIPs are refusing to prematurely declare impasse.

IIPs and Apple have a meet and confer discussion concerning custodians scheduled from 11:00-noon ET tomorrow, August 7. IIPs intend to negotiate in good faith in an effort to reach agreement or clarify areas of dispute. We hope Apple intends to do the same despite its suggestion that IIPs provide a draft notice of impasse on custodians three hours after our meet and confer.

Thanks,
Suneel

SCHNEIDER² WALLACE
COTTRELL KIM LLP

**Suneel Jain**
**Attorney at Law**
2000 Powell Street, Suite 1400
Emeryville, California 94608
Main Line: (415) 421-7100
Toll Free: (800) 689-0024
Direct: (510) 740-2193
Facsimile: (415) 421-7105
www.schneiderwallace.com
***Admitted in California.***

---

**From:** Opendo, Nicole E. <NOpendo@gibsondunn.com>
**Sent:** Thursday, August 6, 2026 2:01 PM
**To:** Moody, Ian <IMoody@KoreinTillery.com>; Sullivan, Connor S. <CSSullivan@gibsondunn.com>; Lo, Jason <JLo@gibsondunn.com>; Sesia, Jacqueline Liu <JSesia@gibsondunn.com>; Miller, Dana R. Bucy <dana.miller@kirkland.com>; Tracie Bryant <tracie.bryant@kirkland.com>; Brancato, Alexia Renee <alexia.brancato@kirkland.com>
**Cc:** ldayton@mololamken.com; Grueskin, Caroline <cgrueskin@mololamken.com>; Epstein, Daniel <DEpstein@KoreinTillery.com>; Suneel Jain <sjain@schneiderwallace.com>; Frazar Thomas <FThomas@seegerweiss.com>; iPhone Antitrust All Plaintiffs – DCO Compliant <AppleCompliantPlaintiffs@seegerweiss.com>; ML Apple Watch <ml-apple-watch@mololamken.com>; KELLOGG-APPLEWATCH-MDL-EXTERNAL <kellogg-applewatch-mdl-external@lists.kellogghansen.com>; KT-AppleWatch-MDL <KT-AppleWatch-MDL@KoreinTillery.com>; Apple-SmartphoneMDL-External@groups.gibsondunn.com; aaron.sheanin@usdoj.gov; pam.cole@usdoj.gov; matthew.viola@usdoj.gov; gauri.kasarla@usdoj.gov; Lwalsh@walsh.law; Lmalakoff@walsh.law
**Subject:** Re: Apple MDL // Custodian M&C

**Notice:** This email originated from outside of the organization. Please use caution before opening any attached file you did not expect from the sender. Contact support@langtech.com if in doubt.

Counsel for MDL Plaintiffs:

Apple believes that it would be most efficient for all remaining custodial disputes to be resolved simultaneously. As such, Apple proposes the following schedule:

August 7 @ noon PT: all MDL Plaintiffs provide a consolidated draft notice of impasse as to any custodian disputes.
August 11 @ noon PT: Apple to provide its edits to the draft notice.

Please let us know if Plaintiffs agree to this exchange. If Plaintiffs refuse to coordinate, then Apple will provide any edits to Watch Plaintiff's letter on Monday at noon PT.

Thank you,
Nicole

**Nicole E. Opendo**
Associate Attorney

T: +1 213.229.7175 | M: +1 213.910.3571
NOpendo@gibsondunn.com

**GIBSON DUNN**
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197

---

**From:** Moody, Ian <IMoody@KoreinTillery.com>
**Date:** Thursday, August 6, 2026 at 9:06 AM
**To:** Opendo, Nicole E. <NOpendo@gibsondunn.com>; Sullivan, Connor S. <CSSullivan@gibsondunn.com>; Lo, Jason <JLo@gibsondunn.com>; Sesia, Jacqueline Liu <JSesia@gibsondunn.com>; Miller, Dana R. Bucy <dana.miller@kirkland.com>; Tracie Bryant <tracie.bryant@kirkland.com>; Brancato, Alexia Renee <alexia.brancato@kirkland.com>
**Cc:** ldayton@mololamken.com <ldayton@mololamken.com>; Grueskin, Caroline <cgrueskin@mololamken.com>; Epstein, Daniel <DEpstein@KoreinTillery.com>; Suneel Jain <sjain@schneiderwallace.com>; Frazar Thomas <FThomas@seegerweiss.com>; iPhone Antitrust All Plaintiffs – DCO Compliant <AppleCompliantPlaintiffs@seegerweiss.com>; ML Apple Watch <ml-apple-watch@mololamken.com>; KELLOGG-APPLEWATCH-MDL-EXTERNAL <kellogg-applewatch-mdl-external@lists.kellogghansen.com>; KT-AppleWatch-MDL <KT-AppleWatch-MDL@KoreinTillery.com>; Apple-SmartphoneMDL-External@groups.gibsondunn.com <Apple-SmartphoneMDL-External@groups.gibsondunn.com>; aaron.sheanin@usdoj.gov <aaron.sheanin@usdoj.gov>; pam.cole@usdoj.gov <pam.cole@usdoj.gov>; matthew.viola@usdoj.gov <matthew.viola@usdoj.gov>; gauri.kasarla@usdoj.gov <gauri.kasarla@usdoj.gov>; Lwalsh@walsh.law <Lwalsh@walsh.law>; Lmalakoff@walsh.law <Lmalakoff@walsh.law>
**Subject:** RE: Apple MDL // Custodian M&C

---

**This Message Is From an External Sender**
This message came from outside your organization.

Counsel,

We requested a response by Wednesday, August 5. We take it from Apple's silence that Apple will not agree to add the additional custodians proposed by Watch Plaintiffs. We believe the parties have reached impasse.

Attached you will find a draft joint notice of impasse regarding custodians. As before, we would prefer to submit a joint letter. We kindly ask that Apple send us any edits by 9a PT Friday, August 7. Otherwise Watch Plaintiffs intend to file a solo letter with the Court.

Thank you,

Ian Moody
**Korein Tillery**
505 North 7th Street
Suite 3600
St. Louis, Missouri 63101
314-241-4844
www.KoreinTillery.com

----------------------------
This message is from a law firm and may contain privileged or confidential information for the sole use of the intended recipient(s). If you believe that you have received this email in error, please notify the sender immediately and delete it from your system. If you have received this email in error, you do not have permission to forward, print, copy or distribute or use the information in this message.
----------------------------

---

**From:** Moody, Ian <IMoody@KoreinTillery.com>
**Sent:** Monday, August 3, 2026 12:52 PM
**To:** Opendo, Nicole E. <NOpendo@gibsondunn.com>; Sullivan, Connor S. <CSSullivan@gibsondunn.com>; Lo, Jason <JLo@gibsondunn.com>; Sesia, Jacqueline Liu <JSesia@gibsondunn.com>; Miller, Dana R. Bucy <dana.miller@kirkland.com>; Tracie Bryant <tracie.bryant@kirkland.com>; Brancato, Alexia Renee <alexia.brancato@kirkland.com>
**Cc:** Dayton, Lauren <ldayton@mololamken.com>; Grueskin, Caroline <cgrueskin@mololamken.com>; Epstein, Daniel <DEpstein@KoreinTillery.com>; Suneel Jain <sjain@schneiderwallace.com>; Frazar Thomas <FThomas@seegerweiss.com>; iPhone Antitrust All Plaintiffs – DCO Compliant <AppleCompliantPlaintiffs@seegerweiss.com>; ML Apple Watch <ml-apple-watch@mololamken.com>; KELLOGG-APPLEWATCH-MDL-EXTERNAL <kellogg-applewatch-mdl-external@lists.kellogghansen.com>; KT-AppleWatch-MDL <KT-AppleWatch-MDL@KoreinTillery.com>; Apple-SmartphoneMDL-External@groups.gibsondunn.com; aaron.sheanin@usdoj.gov; pam.cole@usdoj.gov; matthew.viola@usdoj.gov; gauri.kasarla@usdoj.gov; Lwalsh@walsh.law; Lmalakoff@walsh.law
**Subject:** RE: Apple MDL // Custodian M&C

Counsel,

Please see the attached for Watch Plaintiffs' response to Apple's July 24 letter regarding custodians. To avoid any further delay in resolving this dispute, we ask that Apple explain by Wednesday, August 5, whether it will produce documents from Watch Plaintiffs' proposed custodians. Otherwise, we believe the parties have reached impasse.

Thank you,

Ian Moody
**Korein Tillery**
505 North 7th Street
Suite 3600
St. Louis, Missouri 63101
314-241-4844
www.KoreinTillery.com

----------------------------
This message is from a law firm and may contain privileged or confidential information for the sole use of the intended recipient(s). If you believe that you have received this email in error, please notify the sender immediately and delete it from your system. If you have received this email in error, you do not have permission to forward, print, copy or distribute or use the information in this message.
----------------------------

**From:** Opendo, Nicole E. <NOpendo@gibsondunn.com>
**Sent:** Wednesday, July 29, 2026 5:00 PM
**To:** Moody, Ian <IMoody@KoreinTillery.com>; Sullivan, Connor S. <CSSullivan@gibsondunn.com>; Lo, Jason <JLo@gibsondunn.com>; Sesia, Jacqueline Liu <JSesia@gibsondunn.com>; Miller, Dana R. Bucy <dana.miller@kirkland.com>; Tracie Bryant <tracie.bryant@kirkland.com>; Brancato, Alexia Renee <alexia.brancato@kirkland.com>
**Cc:** Dayton, Lauren <ldayton@mololamken.com>; Grueskin, Caroline <cgrueskin@mololamken.com>; Epstein, Daniel <DEpstein@KoreinTillery.com>; Suneel Jain <sjain@schneiderwallace.com>; Frazar Thomas <FThomas@seegerweiss.com>; iPhone Antitrust All Plaintiffs – DCO Compliant <AppleCompliantPlaintiffs@seegerweiss.com>; ML Apple Watch <ml-apple-watch@mololamken.com>; KELLOGG-APPLEWATCH-MDL-EXTERNAL <kellogg-applewatch-mdl-external@lists.kellogghansen.com>; KT-AppleWatch-MDL <KT-AppleWatch-MDL@KoreinTillery.com>; Apple-SmartphoneMDL-External@groups.gibsondunn.com; aaron.sheanin@usdoj.gov; pam.cole@usdoj.gov; matthew.viola@usdoj.gov; gauri.kasarla@usdoj.gov; Lwalsh@walsh.law; Lmalakoff@walsh.law
**Subject:** Re: Apple MDL // Custodian M&C

Counsel,

Watch Plaintiff conditioned its impasse filing on receiving Apple's written positions, which Apple provided on July 24. Before the parties can represent to Judge Wettre that they are at impasse, Apple requests that Watch Plaintiff respond in writing to the positions set out in that letter, including Apple's explanations of why each remaining proposed custodian is cumulative of agreed custodians, its explanation of why the five custodians Apple has agreed to add address the subject matters underlying the remaining requests, and its position regarding communications with Garmin. Apple also requests that Watch Plaintiff identify each custodian it contends remains in dispute.

Apple remains available to meet and confer once we have received that response.

Best,
Nicole

**Nicole E. Opendo**
Associate Attorney

T: +1 213.229.7175 | M: +1 213.910.3571
NOpendo@gibsondunn.com

**GIBSON DUNN**
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197

---

**From:** Moody, Ian <IMoody@KoreinTillery.com>
**Date:** Tuesday, July 28, 2026 at 10:15 AM
**To:** Opendo, Nicole E. <NOpendo@gibsondunn.com>; Sullivan, Connor S. <CSSullivan@gibsondunn.com>; Lo, Jason <JLo@gibsondunn.com>; Sesia, Jacqueline Liu <JSesia@gibsondunn.com>; Miller, Dana R. Bucy <dana.miller@kirkland.com>; Tracie Bryant

<tracie.bryant@kirkland.com>; Brancato, Alexia Renee <alexia.brancato@kirkland.com>
**Cc:** ldayton@mololamken.com <ldayton@mololamken.com>; Grueskin, Caroline <cgrueskin@mololamken.com>; Epstein, Daniel <DEpstein@KoreinTillery.com>; Suneel Jain <sjain@schneiderwallace.com>; Frazar Thomas <FThomas@seegerweiss.com>; iPhone Antitrust All Plaintiffs – DCO Compliant <AppleCompliantPlaintiffs@seegerweiss.com>; ML Apple Watch <ml-apple-watch@mololamken.com>; KELLOGG-APPLEWATCH-MDL-EXTERNAL <kellogg-applewatch-mdl-external@lists.kellogghansen.com>; KT-AppleWatch-MDL <KT-AppleWatch-MDL@KoreinTillery.com>; Apple-SmartphoneMDL-External@groups.gibsondunn.com <Apple-SmartphoneMDL-External@groups.gibsondunn.com>; aaron.sheanin@usdoj.gov <aaron.sheanin@usdoj.gov>; pam.cole@usdoj.gov <pam.cole@usdoj.gov>; matthew.viola@usdoj.gov <matthew.viola@usdoj.gov>; gauri.kasarla@usdoj.gov <gauri.kasarla@usdoj.gov>; Lwalsh@walsh.law <Lwalsh@walsh.law>; Lmalakoff@walsh.law <Lmalakoff@walsh.law>
**Subject:** RE: Apple MDL // Custodian M&C

**This Message Is From an External Sender**
This message came from outside your organization.

Hi Nicole,

Thank you for your email and letter. We appreciate Apple investigating our questions regarding the email listservs that we identified.

The parties appear to be at impasse regarding additional custodians that Watch Plaintiffs have proposed. Please find attached a draft joint notice of impasse and let us know if you have any edits. We are available to meet and confer.

We kindly request that Apple send edits by Friday at 9am Pacific. We would prefer to submit a joint letter, but if we have not heard from you and finalized a joint letter by then, we will proceed to file a solo letter on Friday.

Thank you,

Ian Moody
**Korein Tillery**
505 North 7th Street
Suite 3600
St. Louis, Missouri 63101
314-241-4844
www.KoreinTillery.com

----------------------------
This message is from a law firm and may contain privileged or confidential information for the sole use of the intended recipient(s). If you believe that you have received this email in error, please notify the sender immediately and delete it from your system. If you have received this email in error, you do not have permission to forward, print, copy or distribute or use the information in this message.
----------------------------

---

**From:** Opendo, Nicole E. <NOpendo@gibsondunn.com>
**Sent:** Friday, July 24, 2026 12:32 PM
**To:** Moody, Ian <IMoody@KoreinTillery.com>; Sullivan, Connor S. <CSSullivan@gibsondunn.com>; Lo, Jason <JLo@gibsondunn.com>; Sesia, Jacqueline Liu <JSesia@gibsondunn.com>; Miller, Dana R. Bucy <dana.miller@kirkland.com>; Tracie Bryant <tracie.bryant@kirkland.com>; Brancato, Alexia Renee <alexia.brancato@kirkland.com>
**Cc:** Dayton, Lauren <ldayton@mololamken.com>; Grueskin, Caroline <cgrueskin@mololamken.com>; Epstein, Daniel <DEpstein@KoreinTillery.com>; Suneel Jain <sjain@schneiderwallace.com>; Frazar Thomas

<FThomas@seegerweiss.com>; iPhone Antitrust All Plaintiffs – DCO Compliant <AppleCompliantPlaintiffs@seegerweiss.com>; ML Apple Watch <ml-apple-watch@mololamken.com>; KELLOGG-APPLEWATCH-MDL-EXTERNAL <kellogg-applewatch-mdl-external@lists.kellogghansen.com>; KT-AppleWatch-MDL <KT-AppleWatch-MDL@KoreinTillery.com>; Apple-SmartphoneMDL-External@groups.gibsondunn.com; aaron.sheanin@usdoj.gov; pam.cole@usdoj.gov; matthew.viola@usdoj.gov; gauri.kasarla@usdoj.gov; Lwalsh@walsh.law; Lmalakoff@walsh.law
**Subject:** Re: RE: Apple MDL // Custodian M&C

Counsel,

Please see Apple's letter regarding the parties' meet-and-confers on June 17, 18, and 25, 2026 attached.

Thank you,
Nicole

**Nicole E. Opendo**
Associate Attorney

T: +1 213.229.7175 | M: +1 213.910.3571
NOpendo@gibsondunn.com

**GIBSON DUNN**
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197

**This Message Is From an External Sender**
This message came from outside your organization.

**From:** Moody, Ian <IMoody@KoreinTillery.com>
**Date:** Thursday, July 23, 2026 at 11:02 AM
**To:** Sullivan, Connor S. <CSSullivan@gibsondunn.com>; Opendo, Nicole E. <NOpendo@gibsondunn.com>; Lo, Jason <JLo@gibsondunn.com>; Sesia, Jacqueline Liu <JSesia@gibsondunn.com>; Miller, Dana R. Bucy <dana.miller@kirkland.com>; Tracie Bryant <tracie.bryant@kirkland.com>; Brancato, Alexia Renee <alexia.brancato@kirkland.com>
**Cc:** Dayton, Lauren <ldayton@mololamken.com>; Grueskin, Caroline <cgrueskin@mololamken.com>; Epstein, Daniel <DEpstein@KoreinTillery.com>; Suneel Jain <sjain@schneiderwallace.com>; Frazar Thomas <FThomas@seegerweiss.com>; iPhone Antitrust All Plaintiffs – DCO Compliant <AppleCompliantPlaintiffs@seegerweiss.com>; ML Apple Watch <ml-apple-watch@mololamken.com>; KELLOGG-APPLEWATCH-MDL-EXTERNAL <kellogg-applewatch-mdl-external@lists.kellogghansen.com>; KT-AppleWatch-MDL <KT-AppleWatch-MDL@KoreinTillery.com>
**Subject:** RE: Apple MDL // Custodian M&C
Connor,

On Monday you said Apple would set out its positions on custodians "in the coming days". A week before that Apple promised to send us its positions "in the following days." Apple has been promising to send these positions since June 25, and continues to ignore our requests for follow-up.

Watch Plaintiffs intend to file the attached notice of impasse by 2:00pm ET on Friday, July 24, unless Apple can provide us with the substantive positions on custodians that Apple has been promising since June 25.

Thank you,

Ian Moody
**Korein Tillery**
505 North 7th Street
Suite 3600
St. Louis, Missouri 63101
314-241-4844
www.KoreinTillery.com

----------------------------
This message is from a law firm and may contain privileged or confidential information for the sole use of the intended recipient(s). If you believe that you have received this email in error, please notify the sender immediately and delete it from your system. If you have received this email in error, you do not have permission to forward, print, copy or distribute or use the information in this message.
----------------------------

---

**From:** Moody, Ian <IMoody@KoreinTillery.com>
**Sent:** Monday, July 20, 2026 3:10 PM
**To:** Sullivan, Connor S. <CSSullivan@gibsondunn.com>; Opendo, Nicole E. <NOpendo@gibsondunn.com>; Lo, Jason <JLo@gibsondunn.com>; Sesia, Jacqueline Liu <JSesia@gibsondunn.com>; Miller, Dana R. Bucy <dana.miller@kirkland.com>; Tracie Bryant <tracie.bryant@kirkland.com>; Brancato, Alexia Renee <alexia.brancato@kirkland.com>
**Cc:** Dayton, Lauren <ldayton@mololamken.com>; Grueskin, Caroline <cgrueskin@mololamken.com>; Epstein, Daniel <DEpstein@KoreinTillery.com>; Suneel Jain <sjain@schneiderwallace.com>; Frazar Thomas <FThomas@seegerweiss.com>; iPhone Antitrust All Plaintiffs – DCO Compliant <AppleCompliantPlaintiffs@seegerweiss.com>; ML Apple Watch <ml-apple-watch@mololamken.com>; KELLOGG-APPLEWATCH-MDL-EXTERNAL <kellogg-applewatch-mdl-external@lists.kellogghansen.com>; KT-AppleWatch-MDL <KT-AppleWatch-MDL@KoreinTillery.com>
**Subject:** RE: Apple MDL // Custodian M&C

Connor,

Thank you for your email. We are glad to hear Apple will collect and produce documents from the below custodians. I'll note that the below list includes just 2 of the 17 names we last gave you. When can we expect to receive Apple's letter on the remaining proposed custodians?

Thank you,

Ian Moody
**Korein Tillery**
505 North 7th Street
Suite 3600
St. Louis, Missouri 63101
314-241-4844
www.KoreinTillery.com

----------------------------
This message is from a law firm and may contain privileged or confidential information for the sole use of the intended recipient(s). If you believe that you have received this email in error, please notify the sender immediately and delete it from your system. If you have received this email in error, you do not have permission

to forward, print, copy or distribute or use the information in this message.
----------------------------

**From:** Sullivan, Connor S. <CSSullivan@gibsondunn.com>
**Sent:** Monday, July 20, 2026 8:36 AM
**To:** Moody, Ian <IMoody@KoreinTillery.com>; Opendo, Nicole E. <NOpendo@gibsondunn.com>; Lo, Jason <JLo@gibsondunn.com>; Sesia, Jacqueline Liu <JSesia@gibsondunn.com>; Miller, Dana R. Bucy <dana.miller@kirkland.com>; Tracie Bryant <tracie.bryant@kirkland.com>; Brancato, Alexia Renee <alexia.brancato@kirkland.com>
**Cc:** Dayton, Lauren <ldayton@mololamken.com>; Grueskin, Caroline <cgrueskin@mololamken.com>; Epstein, Daniel <DEpstein@KoreinTillery.com>; Suneel Jain <sjain@schneiderwallace.com>; Frazar Thomas <FThomas@seegerweiss.com>; iPhone Antitrust All Plaintiffs – DCO Compliant <AppleCompliantPlaintiffs@seegerweiss.com>; ML Apple Watch <ml-apple-watch@mololamken.com>; KELLOGG-APPLEWATCH-MDL-EXTERNAL <kellogg-applewatch-mdl-external@lists.kellogghansen.com>; KT-AppleWatch-MDL <KT-AppleWatch-MDL@KoreinTillery.com>
**Subject:** Re: Apple MDL // Custodian M&C

Counsel,

We write in response to your email regarding MDL Plaintiffs' proposed custodians and Watch Plaintiff's notice of impasse filing. Without waiving its objections, and in the interest of narrowing the parties' disputes, Apple is willing to add the following five custodians:

- [redacted]
- [redacted]
- [redacted]
- [redacted]
- [redacted]

A letter will follow in the coming days setting out Apple's positions on MDL Plaintiffs' remaining proposed custodians and listservs.

Connor

**Connor S. Sullivan**
Partner

T: +1 212.351.2459
CSSullivan@gibsondunn.com

**GIBSON DUNN**
Gibson, Dunn & Crutcher LLP
200 Park Avenue, New York, NY 10166-0193

---

**From:** Moody, Ian <IMoody@KoreinTillery.com>
**Sent:** Friday, 17 July 2026 16:15:51
**To:** Opendo, Nicole E. <NOpendo@gibsondunn.com>; Lo, Jason <JLo@gibsondunn.com>; Sullivan, Connor S. <CSSullivan@gibsondunn.com>; Sesia, Jacqueline Liu <JSesia@gibsondunn.com>; Miller, Dana R. Bucy <dana.miller@kirkland.com>; Tracie Bryant <tracie.bryant@kirkland.com>; Brancato, Alexia Renee <alexia.brancato@kirkland.com>
**Cc:** ldayton@mololamken.com <ldayton@mololamken.com>; Grueskin, Caroline <cgrueskin@mololamken.com>;

Epstein, Daniel <DEpstein@KoreinTillery.com>; Suneel Jain <sjain@schneiderwallace.com>; Frazar Thomas <FThomas@seegerweiss.com>; iPhone Antitrust All Plaintiffs – DCO Compliant <AppleCompliantPlaintiffs@seegerweiss.com>; ML Apple Watch <ml-apple-watch@mololamken.com>; KELLOGG-APPLEWATCH-MDL-EXTERNAL <kellogg-applewatch-mdl-external@lists.kellogghansen.com>; KT-AppleWatch-MDL <KT-AppleWatch-MDL@KoreinTillery.com>
**Subject:** RE: Apple MDL // Custodian M&C

Nicole & counsel,

On Monday it will be four weeks since Apple promised to provide us with its positions on Watch Plaintiffs' proposed custodians. Despite multiple requests, Apple's only response has been that it expects to share its positions "in the following days."

I am writing to request—again—that Apple send us its positions on custodians. If Apple cannot provide those by 10:00am ET on Monday, July 20, Watch Plaintiffs intend to file the attached notice of impasse at noon ET that same day.

We are available to meet and confer.

Thank you,

Ian Moody
**Korein Tillery**
505 North 7th Street
Suite 3600
St. Louis, Missouri 63101
314-241-4844
www.KoreinTillery.com

----------------------------
This message is from a law firm and may contain privileged or confidential information for the sole use of the intended recipient(s). If you believe that you have received this email in error, please notify the sender immediately and delete it from your system. If you have received this email in error, you do not have permission to forward, print, copy or distribute or use the information in this message.
----------------------------

---

**From:** Moody, Ian <IMoody@KoreinTillery.com>
**Sent:** Tuesday, July 14, 2026 5:52 PM
**To:** Opendo, Nicole E. <NOpendo@gibsondunn.com>; Lo, Jason <JLo@gibsondunn.com>; Sullivan, Connor S. <CSSullivan@gibsondunn.com>; Sesia, Jacqueline Liu <JSesia@gibsondunn.com>; Miller, Dana R. Bucy <dana.miller@kirkland.com>; Tracie Bryant <tracie.bryant@kirkland.com>; Brancato, Alexia Renee <alexia.brancato@kirkland.com>
**Cc:** Dayton, Lauren <ldayton@mololamken.com>; Grueskin, Caroline <cgrueskin@mololamken.com>; Epstein, Daniel <DEpstein@KoreinTillery.com>; Suneel Jain <sjain@schneiderwallace.com>; Frazar Thomas <FThomas@seegerweiss.com>; iPhone Antitrust All Plaintiffs – DCO Compliant <AppleCompliantPlaintiffs@seegerweiss.com>; ML Apple Watch <ml-apple-watch@mololamken.com>; KELLOGG-APPLEWATCH-MDL-EXTERNAL <kellogg-applewatch-mdl-external@lists.kellogghansen.com>; KT-AppleWatch-MDL <KT-AppleWatch-MDL@KoreinTillery.com>
**Subject:** RE: Apple MDL // Custodian M&C

Hi Nicole,

Thank you for your response. We are glad to hear that Apple plans to respond to our June 25 proposal in the following days. Given Apple's stated concerns about the burden of overall review volume, and stated desire (as recently as last Friday) for a global resolution of these RFP-related issues, we do not want Apple's delay in responding to our June 25 custodian proposal to affect the resolution of the search terms issue currently pending before Judge Hedges.

Thanks,

Ian Moody
**Korein Tillery**
505 North 7th Street
Suite 3600
St. Louis, Missouri 63101
314-241-4844
www.KoreinTillery.com

----------------------------
This message is from a law firm and may contain privileged or confidential information for the sole use of the intended recipient(s). If you believe that you have received this email in error, please notify the sender immediately and delete it from your system. If you have received this email in error, you do not have permission to forward, print, copy or distribute or use the information in this message.
----------------------------

---

**From:** Opendo, Nicole E. <NOpendo@gibsondunn.com>
**Sent:** Monday, July 13, 2026 8:01 PM
**To:** Moody, Ian <IMoody@KoreinTillery.com>; Lo, Jason <JLo@gibsondunn.com>; Sullivan, Connor S. <CSSullivan@gibsondunn.com>; Sesia, Jacqueline Liu <JSesia@gibsondunn.com>; Miller, Dana R. Bucy <dana.miller@kirkland.com>; Tracie Bryant <tracie.bryant@kirkland.com>; Brancato, Alexia Renee <alexia.brancato@kirkland.com>
**Cc:** Dayton, Lauren <ldayton@mololamken.com>; Grueskin, Caroline <cgrueskin@mololamken.com>; Epstein, Daniel <DEpstein@KoreinTillery.com>; Suneel Jain <sjain@schneiderwallace.com>; Frazar Thomas <FThomas@seegerweiss.com>; iPhone Antitrust All Plaintiffs – DCO Compliant <AppleCompliantPlaintiffs@seegerweiss.com>; ML Apple Watch <ml-apple-watch@mololamken.com>; KELLOGG-APPLEWATCH-MDL-EXTERNAL <kellogg-applewatch-mdl-external@lists.kellogghansen.com>; KT-AppleWatch-MDL <KT-AppleWatch-MDL@KoreinTillery.com>
**Subject:** Re: Apple MDL // Custodian M&C

Ian,

Thank you for your email. We are finalizing Apple's written positions on the additional custodians proposed by MDL Plaintiffs, including a short list of custodians Apple is prepared to offer, and expect to provide them in the following days. We are also continuing to investigate the questions you raised regarding the requested listservs.

We appreciate MDL Plaintiffs' patience and remain committed to working through these issues cooperatively.

Best,
Nicole

**Nicole E. Opendo**
Associate Attorney

T: +1 213.229.7175 | M: +1 213.910.3571
NOpendo@gibsondunn.com

**GIBSON DUNN**
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197

---

**From:** Moody, Ian <IMoody@KoreinTillery.com>
**Date:** Monday, July 13, 2026 at 10:00 AM
**To:** Lo, Jason <JLo@gibsondunn.com>; Sullivan, Connor S. <CSSullivan@gibsondunn.com>; Opendo, Nicole E. <NOpendo@gibsondunn.com>; Sesia, Jacqueline Liu <JSesia@gibsondunn.com>; Miller, Dana R. Bucy <dana.miller@kirkland.com>; Tracie Bryant <tracie.bryant@kirkland.com>; Brancato, Alexia Renee <alexia.brancato@kirkland.com>
**Cc:** ldayton@mololamken.com <ldayton@mololamken.com>; Grueskin, Caroline <cgrueskin@mololamken.com>; Epstein, Daniel <DEpstein@KoreinTillery.com>; Suneel Jain <sjain@schneiderwallace.com>; Frazar Thomas <FThomas@seegerweiss.com>; iPhone Antitrust All Plaintiffs – DCO Compliant <AppleCompliantPlaintiffs@seegerweiss.com>; ML Apple Watch <ml-apple-watch@mololamken.com>; KELLOGG-APPLEWATCH-MDL-EXTERNAL <kellogg-applewatch-mdl-external@lists.kellogghansen.com>; KT-AppleWatch-MDL <KT-AppleWatch-MDL@KoreinTillery.com>
**Subject:** RE: Apple MDL // Custodian M&C

**This Message Is From an External Sender**
This message came from outside your organization.

Hi Jason,

On June 25 you stated that Apple would respond in writing with its positions on custodians. You have had our detailed summaries of custodians for three weeks, and known these names since April. I've asked and not received anything indicating that a response is forthcoming. I do not want—and do not believe the Court wants—custodial negotiations to drag on longer than necessary.

By the end of the day, please provide Apple's substantive positions as to the custodians that Watch Plaintiffs have proposed thus far, or an update as to when we will receive them.

Thanks,

Ian Moody
**Korein Tillery**
505 North 7th Street
Suite 3600
St. Louis, Missouri 63101
314-241-4844
www.KoreinTillery.com

----------------------------
This message is from a law firm and may contain privileged or confidential information for the sole use of the intended recipient(s). If you believe that you have received this email in error, please notify the sender immediately and delete it from your system. If you have received this email in error, you do not have permission

to forward, print, copy or distribute or use the information in this message.
----------------------------

---

**From:** Moody, Ian <IMoody@KoreinTillery.com>
**Sent:** Tuesday, July 7, 2026 2:58 PM
**To:** Lo, Jason <JLo@gibsondunn.com>; Sullivan, Connor S. <CSSullivan@gibsondunn.com>; NOpendo@gibsondunn.com; JSesia@gibsondunn.com; Miller, Dana R. Bucy <dana.miller@kirkland.com>; Tracie Bryant <tracie.bryant@kirkland.com>; Brancato, Alexia Renee <alexia.brancato@kirkland.com>
**Cc:** Dayton, Lauren <ldayton@mololamken.com>; Grueskin, Caroline <cgrueskin@mololamken.com>; Epstein, Daniel <DEpstein@KoreinTillery.com>; Suneel Jain <sjain@schneiderwallace.com>; Frazar Thomas <FThomas@seegerweiss.com>; iPhone Antitrust All Plaintiffs – DCO Compliant <AppleCompliantPlaintiffs@seegerweiss.com>; ML Apple Watch <ml-apple-watch@mololamken.com>; KELLOGG-APPLEWATCH-MDL-EXTERNAL <kellogg-applewatch-mdl-external@lists.kellogghansen.com>; KT-AppleWatch-MDL <KT-AppleWatch-MDL@KoreinTillery.com>
**Subject:** RE: Apple MDL // Custodian M&C

Hi Jason,

During our June 25 call you said Apple would respond in writing with its positions on Watch Plaintiffs' proposed custodians. Do you have an update?

Thanks,

Ian Moody
**Korein Tillery**
505 North 7th Street
Suite 3600
St. Louis, Missouri 63101
314-241-4844
www.KoreinTillery.com

----------------------------
This message is from a law firm and may contain privileged or confidential information for the sole use of the intended recipient(s). If you believe that you have received this email in error, please notify the sender immediately and delete it from your system. If you have received this email in error, you do not have permission to forward, print, copy or distribute or use the information in this message.
----------------------------

---

**From:** Moody, Ian <IMoody@KoreinTillery.com>
**Sent:** Thursday, June 25, 2026 4:58 PM
**To:** Lo, Jason <JLo@gibsondunn.com>; Sullivan, Connor S. <CSSullivan@gibsondunn.com>; NOpendo@gibsondunn.com; JSesia@gibsondunn.com; Miller, Dana R. Bucy <dana.miller@kirkland.com>; Tracie Bryant <tracie.bryant@kirkland.com>; Brancato, Alexia Renee <alexia.brancato@kirkland.com>
**Cc:** Dayton, Lauren <ldayton@mololamken.com>; Grueskin, Caroline <cgrueskin@mololamken.com>; Epstein, Daniel <DEpstein@KoreinTillery.com>; Suneel Jain <sjain@schneiderwallace.com>; Frazar Thomas <FThomas@seegerweiss.com>; iPhone Antitrust All Plaintiffs – DCO Compliant <AppleCompliantPlaintiffs@seegerweiss.com>; ML Apple Watch <ml-apple-watch@mololamken.com>; KELLOGG-APPLEWATCH-MDL-EXTERNAL <kellogg-applewatch-mdl-external@lists.kellogghansen.com>; KT-AppleWatch-MDL <KT-AppleWatch-MDL@KoreinTillery.com>
**Subject:** RE: Apple MDL // Custodian M&C

Hi Jason,

Thanks for meeting and conferring with us today on custodians. To memorialize our conversation:

- Apple will not agree to designate any listserv or email distribution list as a custodian, claiming the listservs are not relevant and Watch Plaintiffs' requests are overbroad. We confirmed that the parties are at impasse on those proposals. We requested that Apple confirm whether or not emails can be collected from those listservs (or, whether the listserv merely directs emails to various inboxes). We also requested that Apple investigate whether any existing custodians are included on the listservs we requested, and if so, over what time period(s).
- Apple will not agree to designate [redacted] as a custodian, claiming [redacted] would not be a relevant custodian. We confirmed that the parties are at impasse as to [redacted]
- For the remaining individuals we proposed, Apple stated that it would respond in writing with views on including them as custodians, or requesting to meet and confer.
- Apple requested that Watch Plaintiffs inform Apple in advance regarding which custodians we may move to compel, should the parties reach impasse.
- Apple confirmed that [redacted] will be included as a custodian in the MDL action.

Best,

Ian Moody
**Korein Tillery**
505 North 7th Street
Suite 3600
St. Louis, Missouri 63101
314-241-4844
www.KoreinTillery.com

----------------------------
This message is from a law firm and may contain privileged or confidential information for the sole use of the intended recipient(s). If you believe that you have received this email in error, please notify the sender immediately and delete it from your system. If you have received this email in error, you do not have permission to forward, print, copy or distribute or use the information in this message.
----------------------------

---

**From:** Moody, Ian <IMoody@KoreinTillery.com>
**Sent:** Wednesday, June 24, 2026 11:12 AM
**To:** Lo, Jason <JLo@gibsondunn.com>; Sullivan, Connor S. <CSSullivan@gibsondunn.com>; NOpendo@gibsondunn.com; JSesia@gibsondunn.com; Miller, Dana R. Bucy <dana.miller@kirkland.com>; Tracie Bryant <tracie.bryant@kirkland.com>; Brancato, Alexia Renee <alexia.brancato@kirkland.com>
**Cc:** Dayton, Lauren <ldayton@mololamken.com>; Grueskin, Caroline <cgrueskin@mololamken.com>; Epstein, Daniel <DEpstein@KoreinTillery.com>; Suneel Jain <sjain@schneiderwallace.com>; Frazar Thomas <FThomas@seegerweiss.com>; iPhone Antitrust All Plaintiffs – DCO Compliant <AppleCompliantPlaintiffs@seegerweiss.com>; ML Apple Watch <ml-apple-watch@mololamken.com>; KELLOGG-APPLEWATCH-MDL-EXTERNAL <kellogg-applewatch-mdl-external@lists.kellogghansen.com>; KT-AppleWatch-MDL <KT-AppleWatch-MDL@KoreinTillery.com>
**Subject:** Apple MDL // Custodian M&C

Counsel,

I'm writing in response to your June 19, 2026 email and in advance of our meet-and-confer this week regarding document custodians.

Attached is a chart identifying Watch Plaintiffs' proposed additional custodians, the basis for our view that those custodians possess relevant, non-duplicative materials, and citations to documents and other evidence supporting that position. I've reduced distribution to DCO-Compliant firms that may view those materials.

In response to the specific requests in your June 19 email:

- We remain concerned that Apple is not meeting its discovery obligations. Apple has not acknowledged that our proposed custodians possess relevant materials, much less provided evidence that those custodians are duplicative, cumulative, or otherwise disproportionate. Because the negotiations to date have been one-sided, Watch Plaintiffs submit this counterproposal while reserving all rights to seek additional custodians or other relief if Apple impedes meaningful discussions.
- Watch Plaintiffs have narrowed our requests for certain custodians who may overlap by topic area. We do so in good faith to reduce Apple's burden and move negotiations forward; we do not concede that any custodians we proposed previously were inappropriate. As MDL Plaintiffs stated in our June 22 email, the mere fact that custodians overlap on a given topic does not render them redundant, and Apple's position that only superiors with "decision-making authority" should be designated as custodians is without justification.
- Given the current state of search term negotiations, Watch Plaintiffs do not believe that proposing specific custodians for subsets of search terms is appropriate. If Apple believes that certain proposed custodians possess relevant materials only for a subset of RFPs and/or search terms, we are willing to consider a proposal from Apple.
- Up to this point, Apple has objected to any proposed custodian as categorically duplicative, claiming that relevant documents will necessarily "percolate up" to the custodians it agreed to in the government action. Apple offers nothing to support this claim, and we do not agree that MDL Plaintiffs must prove a negative by showing the existence of documents that have not "percolated up" to current custodians. (These documents are, by definition, documents we do not possess). But in any event, our review of Apple's productions and the public record confirms that the individuals in the attached chart possess relevant, non-duplicative materials and should be designated as custodians in the MDL action.

During our next meeting, please be prepared to state Apple's position on (1) whether our proposed custodians possess relevant materials; and (2) if Apple objects to designating them as custodians in the MDL action because they are duplicative, cumulative, or otherwise disproportionate to the needs of the case, the evidentiary basis for Apple's position.

Thank you,

Ian Moody
**Korein Tillery**
505 North 7th Street
Suite 3600
St. Louis, Missouri 63101
314-241-4844
www.KoreinTillery.com

----------------------------
This message is from a law firm and may contain privileged or confidential information for the sole use of the intended recipient(s). If you believe that you have received this email in error, please notify the sender immediately and delete it from your system. If you have received this email in error, you do not have permission to forward, print, copy or distribute or use the information in this message.
----------------------------

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

# EXHIBIT 3

## HIGHLY CONFIDENTIAL

GIBSON DUNN

Connor S. Sullivan
Partner
T: +1 212.351.2459
M: +1 216.956.8955
Cssullivan@gibsondunn.com

Jason Lo
Partner
T: +1 213.229.7153
M: +1 213.247.1672
JLo@gibsondunn.com

HIGHLY CONFIDENTIAL

July 24, 2026

VIA EMAIL

Ian Moody
Korein Tillery
IMoody@KoreinTillery.com

Suneel Jain
Schneider Wallace Cottrell Kim LLP
sjain@schneiderwallace.com

Re: *In re Apple Inc. Smartphone Antitrust Litigation*, No. 2:24-md-03113

Dear Counsel,

We write to memorialize in a single location the parties' meet-and-confers on June 17, 18, and 25, 2026 regarding MDL Plaintiffs' list of proposed additional custodians as well as email communications since then. Apple sets forth its positions below. Nothing in this letter waives Apple's objections, all of which are expressly preserved.

With the addition of John Ternus, the parties had previously agreed to fifty-four custodians in the Government Action. On April 16, 2026, MDL Plaintiffs proposed sixty-one additional individuals and five listservs without explaining what unique, relevant information each was expected to possess. Apple asked Plaintiffs to justify those additions in light of the breadth of the existing custodial set, but Plaintiffs delayed and later provided their rationales piecemeal. Watch Plaintiff identified bases for ten custodians on June 12, and iPhone Plaintiffs identified eight more on June 15, including one person not previously requested.

MDL Plaintiffs continued to revise and expand their requests, proposing additional listservs and mailboxes on June 19, serving a revised chart with new documentary support on June 24, and adding two new individuals on July 13. Apple has engaged in good faith in these negotiations. Plaintiffs' proposals, in contrast, have both been unjustifiably broad and continually evolving in a way that defies Rule 26.

**Custodians Apple Will Add as a Compromise**

On July 20, 2026, in the interest of narrowing the disputes and reserving all rights, Apple offered to add five additional custodians:

[redacted]

GIBSON DUNN



[redacted]

[redacted]

[redacted]

[redacted]

**The Remaining Requests Are Unnecessary and Disproportionate**

As the producing party, Apple is presumed best positioned to identify its own custodians, and a party seeking to compel additional custodians bears "a noticeably heavy burden . . . to demonstrate that the custodial choices . . . were deficient or lacking." *LifeScan, Inc. v. Smith*, 2023 WL 11986899, at *3 (D.N.J. Sept. 27, 2023). MDL Plaintiffs must show that each proposed custodian holds information "different from [and] not merely duplicative of" what the agreed custodians already provide. *LifeScan, Inc. v. Smith*, 2022 WL 20853087, at *3 (D.N.J. July 29, 2022); *see* Fed. R. Civ. P. 26(b)(1), (b)(2)(C)(i) (barring discovery that is "unreasonably cumulative or duplicative"). Neither topical involvement, seniority, nor title supplies that showing. *LifeScan*, 2022 WL 20853087, at *11; *LifeScan*, 2023 WL 11986899, at *4.

MDL Plaintiffs cannot make that showing here. Apple negotiated the custodial set with the Government Plaintiffs, whose allegations substantially overlap with MDL Plaintiffs' claims. That set—now supplemented by the five additional custodians Apple has agreed to add—will accordingly provide broad and proportional coverage of the topics relevant to the claims at issue. MDL Plaintiffs' remaining proposed custodians report to Apple's identified custodians or work alongside—and in reporting lines that run through—the agreed custodians. They are unlikely to possess additional unique documents proportional to the needs of the case: any relevant documents in the possession of the additional individuals MDL Plaintiffs seek to add as custodians were likely created for and shared with the custodians Apple has identified. Contrary to Plaintiffs' suggestion, Apple has not limited its custodians to those who have decision-making authority and has never suggested that only individuals with decision-making authority are appropriate custodians. Instead, Apple identified its custodians because their custodial files are likely to provide an appropriate, and proportional, set of relevant documents without unnecessary duplication. The mere fact that other individuals may have participated in relevant communications does not, in and of itself, make them appropriate custodians. *See Sugg v. Virtusa Corp.*, 2020 WL 6585872, at *2 (D.N.J. Nov. 10, 2020); *Sandoz, Inc. v. United Therapeutics Corp.*, 2020 WL 13830525, at *4 (D.N.J. Nov. 16, 2020).

GIBSON DUNN



MDL Plaintiffs' request for document hit counts for all of their proposed custodians is similarly disproportionate. As Apple explained on June 17 and 18, generating hit counts would require Apple to collect and process the data of all the individuals MDL Plaintiffs have demanded but who Apple maintains are not appropriate custodians. Collection from more than sixty custodians would alone be a substantial, time-consuming undertaking, before any processing or search-term application even begins. That would require Apple to shoulder a significant burden for which MDL Plaintiffs have not shown a justification.

Watch Plaintiff provided an additional subset of proposed custodians on June 24, 2026. Those individuals are all either unrelated to the conduct at issue or cumulative of agreed custodians who already cover the same functions. [redacted] work concerned industrial and product design, topics that are not at issue in Watch Plaintiff's Amended Complaint and are unrelated to his claims. The market-research individual Watch Plaintiff proposed, [redacted], reports up to or shares her work with agreed custodians [redacted], [redacted], [redacted] and [redacted]. The marketing and developer-relations personnel Watch Plaintiff proposed report up to agreed custodians, including [redacted], [redacted], [redacted], [redacted], [redacted], [redacted], and [redacted]. The engineers Watch Plaintiff proposed all work in areas already covered by Apple's software-engineering and connectivity custodians, including [redacted] and [redacted]. Communications related to Garmin were generally shared with or visible to agreed custodians in the same reporting lines, including [redacted] (and Watch Plaintiff already possesses the third-party side of those exchanges through its subpoena to Garmin). Watch Plaintiff has not identified a basis to add any of those custodians.

iPhone Plaintiffs also provided a list of proposed custodians on July 13, 2026. That proposal also does not target any gap in Apple's agreed custodians. iPhone Plaintiffs simply point to search terms that returned small hit counts and argue that therefore more custodians are necessary to provide more hits—when the more probable explanation is that there are not many documents related to those topics. The carrier-sales, retailer, marketing, and sales-finance personnel iPhone Plaintiffs proposed all report to, or supported the same work as, agreed custodians including [redacted], [redacted], [redacted], [redacted], and [redacted]. Contrary to iPhone Plaintiffs' suggestion, Apple's agreements to produce documents also cover Apple's negotiations with smaller carriers, including Consumer Cellular and other MVNOs, and no additional custodians are warranted for that topic. In any event, Apple has now offered to add [redacted] as a custodian to provide more (duplicative) coverage for the retailer channel. This is more than sufficient. iPhone Plaintiffs also have not demonstrated that their additional proposed custodians possess non-duplicative material.

**Listservs Are Not Proper Custodians**

MDL Plaintiffs cannot satisfy the required showing to add listservs as custodians. To begin with, listservs are not custodians; they are distribution tools. And adding a listserv as a "custodian" is merely an inappropriate attempt to gather emails from all participants of a listserv, without attempting to justify why such participants are necessary. Moreover, five of the six listservs MDL Plaintiffs identified are distribution lists with no collectible mailbox of their own and cannot be "custodians" at all. The "[redacted]" address is the single exception because "[redacted]" exists in two forms: [redacted] (a listserv with no collectible mail) and [redacted] (a standalone mailbox). However, the [redacted] is an administrative channel used for questions about the API review process, not for the reviews themselves or for decisions about whether an API will be released to third-party developers. It cannot receive external email, is not copied on the reviewer lists where substantive feedback occurs, and contains

no third-party API requests. Collecting the mailbox would therefore yield little if any non-duplicative relevant material.

MDL Plaintiffs also asked whether Apple can identify the current and historical membership of the listservs. Apple can only identify current membership.

Because the agreed and offered custodians capture the relevant communications distributed through these lists, Apple does not agree to designate the requested listservs or either form of the [redacted] address as a custodian.

* * *

We appreciate MDL Plaintiffs' continued engagement and look forward to your response.

Sincerely,

GIBSON, DUNN & CRUTCHER LLP

Jason Lo

# EXHIBIT 4

## HIGHLY CONFIDENTIAL

HIGHLY CONFIDENTIAL

KOREIN TILLERY
*Attorneys at Law*
One U.S. Bank Plaza
505 North 7th Street, Suite 3600
St. Louis, MO 63101-1625
www.KoreinTillery.com

Ian Moody
IMoody@KoreinTillery.com
*p: (314) 241-4844*
*f: (314) 241-3525*

August 3, 2026 Via Email

Connor S. Sullivan
Gibson Dunn
Cssullivan@gibsondunn.com

Jason Lo
Gibson Dunn
JLo@gibsondunn.com

***Re: In re Apple Inc. Smartphone Antitrust Litigation***
**2:24-md-03113-JXN-LDW**

Counsel,

Watch Plaintiffs write in response to your July 24 letter regarding custodian negotiations, and your July 29 email requesting written responses.

First, we disagree with the accusation in your letter that Watch Plaintiffs continued to "expand" custodian proposals or proposed "additional listservs and mailboxes" over the course of negotiations. To the contrary, Watch Plaintiffs have continually narrowed the requests for additional custodians in response to Apple's demands. Apple has MDL Plaintiffs' original proposal for 66 additional custodians, dated April 16, and Watch Plaintiffs' narrowed list of seventeen proposed custodians, dated June 24. Every proposed custodian in Watch Plaintiffs' narrowed list of seventeen was in the original proposal, including listservs/mailboxes. We are unaware of any basis for Apple's claim that Watch Plaintiffs have expanded requests for custodians, much less "in an unjustifiably broad and continually evolving way."

Second, Watch Plaintiffs understand that Apple has investigated the feasibility of producing documents from certain email listservs that Watch Plaintiffs proposed as custodians. Watch Plaintiffs appreciate Apple doing so, and no longer seek to add the listservs for which it is technologically impossible to make a collection. However, Apple's letter states that documents can be collected from the [redacted] listserv/mailbox, and Apple explains that [redacted] is "[redacted][.]" Watch Plaintiffs challenge the process through which Apple reviews, approves, and rejects relevant APIs. Am. Compl., ECF No. 86, ¶¶45-67, 81-113. Thus, [redacted]" is likely to possess relevant documents and Watch Plaintiffs maintain that Apple should produce documents from the "[redacted]" listserv/mailbox.

Third, Watch Plaintiffs diligently narrowed the proposal over the course of negotiations to a focused list of seventeen custodians with non-duplicative materials relevant to Watch Plaintiffs' case. Apple now offers two custodians from that list [redacted] and [redacted] but otherwise fails to respond to the evidence Watch Plaintiffs presented in June. Further, Apple's letter does not explain why the other custodians it now offers[1] address any of Watch Plaintiffs' proposals:

- [redacted] Apple's letter states that Apple believes [redacted]' files are duplicative of existing custodians. If what Apple states is true, then Watch Plaintiffs do not understand how adding [redacted] as a custodian would address any of Watch Plaintiffs' proposals. Watch Plaintiffs proposed specific software engineering custodians with relevant materials about interoperability between the iPhone and smartwatches (*e.g.*, [redacted]); Apple does not explain how [redacted]' files address these proposals, or whether [redacted] has anything to do with smartwatch interoperability.

- [redacted] Apple's letter states that [redacted] would cover "developer partnership subject matter," but it is not clear how this addresses any of Watch Plaintiffs' proposals. Watch Plaintiffs identified specific Apple employees that manage relationships with *smartwatch* manufacturers and *smartwatch* app developers (*e.g.*, [redacted]); Apple does not explain how [redacted] files address these proposals, or whether [redacted] has anything to do with these relationships.

Finally, Watch Plaintiffs already provided Apple with evidence that the remaining proposed custodians are likely to possess relevant, non-cumulative material. The claim made in Apple's letter—that "any relevant documents in the possession of the additional individuals MDL Plaintiffs seek to add as custodians were likely created for and shared with the custodians Apple has identified"—is contradicted by Apple's own documents. Watch Plaintiffs highlighted these documents for Apple on June 24. For example:

- [redacted] is the Partnership Manager for Apple Watch and was described by an Apple employee testifying under oath as the "[redacted]" and "[redacted] CID Dep. 24:12-25:9 (produced as CIDDEPO0000000119). Apple's produced documents reveal that [redacted]," and is responsive "[redacted]" APLDOJLIT02452176. This shows that [redacted] is very likely to possess relevant material, and Apple has

[1] Watch Plaintiffs understand that Apple offers [redacted] as an additional custodian in response to requests from the iPhone plaintiffs, and take no position on [redacted] as a custodian.

offered no comparable custodian working in a similar role. Moreover, [redacted]. APLCIDLIT07851858. ("[redacted]). This contradicts Apple's unsupported claim that any relevant documents in [redacted] files "were likely created for and shared with" existing custodians, and it indicates there are missing, relevant communications that will go unproduced if [redacted] is not designated as a custodian.

- [redacted] claims responsibility for designing the Apple Watch from its inception, including, in his own words, "developing both the hardware and software to form the foundation for all of the [Apple Watch's] health-based capabilities." Benjamin Clymer, *Apple, Influence, and* [redacted], HODINKEE MAGAZINE, May 2018, https://www.hodinkee.com/magazine[redacted]-apple. *See also* Joshua Rothman, *The Man Who Made the Apple Watch*, THE NEW YORKER, Mar. 9, 2015, https://www.newyorker.com/books/double-take/the-man-who-made-the-apple-watch. [redacted] was [redacted] 3/8/2021 Dep. 23:1-9 (produced as APLDOJLIT16638613). Apple's letter claims, without support, that [redacted] work "concerned industrial and product design, topics that are not at issue in Watch Plaintiff's Amended Complaint and are unrelated to his claims." But [redacted] was directly quoted as "developing both the hardware and software" that enables Apple Watch's health-based capabilities, and Watch Plaintiffs directly challenge how Apple's hardware and software interoperate to enable Apple Watch's health-based capabilities, to the exclusion of competitors. *See* Am. Compl., ECF No. 86, ¶¶47-49, 132-144, 153-155.

- [redacted] is the Director of Apple Watch Product Marketing and leads the team responsible for delivering new Apple Watch models, "personally" leading the charge on multiple Apple Watch features. APLDOJLIT03808974. [redacted] is responsible for drafting competitive analyses of smartwatch competitors, APLDOJLIT00115748, and leads global feature stories as spokesperson for the Apple Watch to the press. APLDOJLIT00199104. Apple's letter states *ipse dixit* that [redacted] "report[s] up to" existing custodians, but even if true, this does not mean that [redacted] relevant documents will be duplicative. In fact, [redacted] purportedly reports up to. APLDOJLIT01988049 ([redacted]

[redacted] is therefore likely to possess relevant materials of his own that are not shared with existing custodians.

- [redacted] is listed as the "[redacted]." APLDOJLIT08595468. Apple's letter states without support that [redacted] "reports up to or shares her work with" existing custodians, but again, that does not mean [redacted] files are duplicative. Apple's produced documents show [redacted] possesses relevant materials about market analysis that the current custodians do not have. APLDOJLIT00232526 ([redacted]); APLDOJLIT00958087 ([redacted]).

- [redacted] Apple described [redacted] as personally leading the entire App Review team during the period when the Apple Watch was launched. APLCIDLIT13922958 ("[redacted]). [redacted] claims to have written and implemented the App Review Guidelines—the specific terms that Watch Plaintiffs allege to be anticompetitive—and Apple's produced documents show that [redacted] APLDOJLIT05011524 ("[redacted]"). Apple's letter does not address [redacted], explain why Apple believes [redacted] files are irrelevant, or claim that [redacted] files are duplicative of existing custodians.

- [redacted]. Garmin [redacted] and has produced to Watch Plaintiffs examples of Garmin's side of these communications. GARMIN-CID-00002479 (Garmin escalations to Apple from November 2021 to February 2022). GARMIN-CID-00002490 (Garmin escalations to Apple from February 2022 to August 2022). But these relevant communications are not found within the files of Apple's existing custodians, nor are any internal discussions about these communications from Garmin. There is no doubt that Apple has related, relevant documents, but unless [redacted] (or an alternative appropriate individual) is designated as a custodian, any such relevant documents will go unproduced. Watch Plaintiffs proposed [redacted] because he

also organized and attended relevant meetings with Garmin on interoperability that were not attended by any other existing custodians. APLDOJLIT02363334; APLDOJLIT04890977. [redacted] appears to draft and manage working documents related to Garmin's interoperability requests, APLDOJLIT14720418, and there is no indication these working documents could be identified in the files of any other existing custodians. In short, the claim in Apple's July 24 letter that communications related to Garmin "were generally shared with or visible to agreed custodians in the same reporting lines" appears to be baseless. And Apple's statement that "Watch Plaintiff already possesses the third-party side of those exchanges through its subpoena to Garmin" ignores that Apple's conduct is at issue—not Garmin's.

Watch Plaintiffs provided the above information and more to Apple on June 24. These examples are drawn from a biased set of materials—they come from the documents Watch Plaintiffs already possess and the custodians Apple has already agreed to—and yet they point to the existence of many more relevant, unique documents that Apple has, but thus far refuses to collect and produce. For the avoidance of doubt, Watch Plaintiffs maintain that Apple should collect and produce documents from the following additional custodians, taken from Watch Plaintiffs' June 24 list: [redacted]

Watch Plaintiffs have provided Apple a detailed chart demonstrating that these custodians would provide unique, relevant information different from, and not simply duplicative of, information produced from Apple's current custodians. *See City of Sterling Heights Gen. Emps.' Ret. Sys. v. Prudential Fin., Inc.*, 2015 WL 5055241, at *3-4 (D.N.J. Aug. 21, 2015) (Wettre, J.); *LifeScan, Inc. v. Smith*, 2023 WL 11986899, at *3 (D.N.J. Sept. 27, 2023). Apple has not shown that these custodians are irrelevant, or that including them would be disproportionate to the needs of the case. *Sandoz, Inc. v. United Therapeutics Corp.*, 2021 WL 287874, *1 (D.N.J. Jan. 28, 2021). Apple should add them as custodians.

* * *

Please explain whether you will add these custodians by August 5, 2026**,** or Watch Plaintiffs understand that the parties are at impasse. If the parties cannot resolve the dispute about these custodians imminently, it is time for the Court to resolve it.

Sincerely,

Ian Moody

---

[2] Watch Plaintiffs understand Apple has agreed to designate [redacted] as a custodian.
[3] Watch Plaintiffs understand Apple has agreed to designate [redacted] as a custodian.

# EXHIBITS 5-12

## REDACTED IN FULL

# EXHIBIT 13
# CONFIDENTIAL

**To:** 'James E. Yang'[jeyang@apple.com]
**Cc:** Herve du Penhoat, Jennifer[jennifer.hervedupenhoat@garmin.com]
**From:** Herve du Penhoat, Jennifer
**Sent:** 2022-02-16T17:41:18-07:00
**Importance:** Normal
**Subject:** RE: iOS 15 issue escalation
2 new Garmin issue reports

Hello James

As a follow up to this matter, I understand that the issue with the Focus settings does appear to be fixed in iOS 15.4 beta. Thank you!

HOWEVER, the scheduled summary issue which had been added to this FB9717672 issue on December 1 is not resolved. I advised the team to create a new issue to address this remaining problem, in case it was missed in the previously submitted feedback (seems it was). That is issue # FB9904953 which is noted in the other email I just sent. So for convenience, you can close FB9717672 relative to the Focus settings problem but **there is still an issue with Scheduled Summary reflected in # FB9904953.**

Thank you again for your support,

Kind regards
Jennifer

---

**From:** Herve du Penhoat, Jennifer
**Sent:** Friday, February 4, 2022 2:17 PM
**To:** James E. Yang <jeyang@apple.com>
**Subject:** RE: iOS 15 issue escalation

Thank you James – I let the team know and will let you know what I hear.

I appreciate your follow through on this!
Jennifer

---

**From:** James E. Yang <jeyang@apple.com>
**Sent:** Wednesday, February 2, 2022 8:21 PM
**To:** Herve du Penhoat, Jennifer <jennifer.hervedupenhoat@garmin.com>
**Subject:** Re: iOS 15 issue escalation

Hi Jennifer,

Thanks again for your team's patience with this- I have what I hope will turn out to be positive news to share with you on this front! Our team believes that the fix included in the latest version of the iOS 15.4 beta should address this issue. Would you be able to have your teams try to reproduce the issue with this latest beta, and let me know what I can report back to our engineering teams regarding resolution?

Best,
James

> On Jan 10, 2022, at 9:24 AM, Herve du Penhoat, Jennifer <jennifer.hervedupenhoat@garmin.com> wrote:

Hi James

Thank you so much for your response. Trust me I completely appreciate your position, I am in the same situation myself, as my work depends a lot on others' feedback.

This is a positive update and I look forward to next steps!

Kind regards,
Jennifer

---

**From:** James Yang <jeyang@apple.com>
**Sent:** Monday, January 10, 2022 10:51 AM
**To:** Herve du Penhoat, Jennifer <jennifer.hervedupenhoat@garmin.com>
**Subject:** Re: iOS 15 issue escalation

?Happy New Year to you, as well, Jennifer! Pardon my delay in responding to some of your recent outreach- they all require additional investigation on my end.

On this one- prior to the holiday break, I followed up with Patrick to see if he might be able to share visibility into his discussions with Engineering.

I asked if he wouldn't mind me passing along some of what he shared with me; while we aren't able to share a timeline as requested below, I hope that this at least addresses some of your immediate concerns- I recall from our call one of which was that limited or no feedback might mean limited investigation:

> A few things here for context:
> - The small number of reports they're referring to does not correlate to how many devices or users are affected by this issue — that's driven by how many other issues we've related to this one internally and does not have any indication how important/urgent this issue is for our engineering teams
> - I appreciate their patience for reporting this issue 2.5 months ago as they mention, and thank them for being proactive about it — this window included our last two company-wide holiday periods, and I appreciate their patience working with us through them
> - Although their Feedback doesn't have a meaningful update that they can see, **I can confirm that a fix is being tested internally to confirm it resolves their issue**.
>
> As I hope they can understand, our engineering teams typically do not provide granular updates on Feedbacks while fixing and testing them. I know how frustrating it can be to not hear about progress on an important issue like this, but I hope the above update regarding a fix being actively tested alleviates most of their prioritization concerns here.

That said, Patrick and I also discussed sharing any confirmed updates that we learn of directly from our teams with you:

> Once this testing is complete, and the changes are landed in a build, happy

to share some broad timing details with them

All best,
James

? **James E. Yang** | Partnership Management | Worldwide Developer Relations | Apple Inc.

On Jan 7, 2022, at 2:33 PM, Herve du Penhoat, Jennifer <jennifer.hervedupenhoat@garmin.com> wrote:

?
Hello James

I noticed that on 12/1, something was added to qualify the issue (per screenshot), but I am concerned that the small number of reports may come from the fact many reporting issues are using Apple devices. We continue to receive support calls. We were hopeful that given the few number of issues reported by Garmin we may be successful at garnering your support for a resolution here, but it has been 2.5 months. Can you find out when we may be able to expect a resolution perhaps?

I would much appreciate your feedback.

Again, wishing you a happy new year!

Kind regards,
Jennifer




**From:** Herve du Penhoat, Jennifer
**Sent:** Tuesday, November 30, 2021 2:36 PM
**To:** James Yang <jeyang@apple.com>
**Subject:** RE: iOS 15 issue escalation
**Importance:** High

Hello James

I hope you had a great Thanksgiving! Last time we spoke, we had agreed that we would follow up right about now. This is just a quick note to learn whether Patrick was able to make progress. Could you advise at your earliest opportunity?

There is still no update on the feedback assistant since October 21 (or since we spoke 2 weeks ago).

Thank you in advance for your and Patrick's help!

Kind regards,
Jennifer

---

**From:** James Yang <jeyang@apple.com>
**Sent:** Wednesday, November 17, 2021 10:49 AM
**To:** Herve du Penhoat, Jennifer <jennifer.hervedupenhoat@garmin.com>
**Subject:** Re: iOS 15 issue escalation

Thanks, Jennifer. I've passed this along.

Indeed, I wanted to have my Evangelism colleague with me to ensure we have all the details from your bug submission. If your Engineering colleague could be available to join us for a quick chat at 2:30PM Central, that'd be great. Let me know, and I can include the email address in the Webex invite.

Best,
James

? **James E. Yang** | Partnership Management | Worldwide Developer Relations | Apple Inc.

> On Nov 17, 2021, at 6:29 AM, Herve du Penhoat, Jennifer <jennifer.hervedupenhoat@garmin.com> wrote:
>
> ?
> Hello James,
>
> I just got a response to the question from the engineer who submitted the problem report:
>
> *As far as I know the Do Not Disturb mode worked as we expected in iOS 14, so this is a completely new issue for iOS 15.*
>
> *I just did a quick sanity test on an iPhone with iOS 14.8. I installed the Gmail app and sent myself an email. When DND is off, the notification of the new email appeared on my Garmin wearable as expected, vibrating and notifying me of the notification. I cleared the notification and then turned on DND mode and sent myself another test email. The notification was delivered as silent to my wearable and it did not vibrate on my wrist. I could navigate to the notifications widget and see the notification about the second test email there. This is as all as expected. I'm also not aware of any customer feedback about the DND mode in iOS 14 not working*

*as expected with a paired Garmin device.*

I can be available at 2.30pm CST: is it about this issue or something else? If I should have someone else join me I would need to make sure of their availability.

Thank you and speak soon!

Kind regards,
Jennifer

**From:** James Yang <jeyang@apple.com>
**Sent:** Wednesday, November 17, 2021 1:50 AM
**To:** Herve du Penhoat, Jennifer <jennifer.hervedupenhoat@garmin.com>
**Subject:** Re: iOS 15 issue escalation

Hi Jennifer,

Following up on this (we're still interested in the answer to the below), but also wondering whether you're open to a brief 15 minute chat today at 2:30PM Central Time.

If so, I'll forward you a Webex.

Best,
James

? **James E. Yang** | Partnership Management | Worldwide Developer Relations | Apple Inc.

On Nov 16, 2021, at 8:06 AM, James Yang <jeyang@apple.com> wrote:

?
Hi Jennifer,

I reached out to a colleague of mine in Evangelism on Friday to see if he might have some insight into what the Engineering team is looking at.

He replied asking if I could obtain additional details from you- pardon my delay, as his response got obscured in my inbox:

it would help to get some

information from the developer here to learn more. Was this an issue on iOS 14 when the device was in Do Not Disturb mode, as well? Or a completely new issue as a result of the Focus feature in iOS 15?

? **James E. Yang** | Partnership Management | Worldwide Developer Relations | Apple Inc.

On Nov 16, 2021, at 7:21 AM, Herve du Penhoat, Jennifer <jennifer.hervedupenhoat@garmin.com> wrote:

?
Hello James
Just a quick note – have you been able to make progress? Thank you!

Kind regards

Jennifer

---

**From:** Herve du Penhoat, Jennifer
**Sent:** Friday, November 12, 2021 4:33 PM
**To:** James Yang <jeyang@apple.com>
**Subject:** RE: iOS 15 issue escalation

Hello James

Thank you for your quick noter. Looking at the feedback assistant, I see no indication that this bug was even looked at. When issues are addressed there is usually a statement stipulating that more or less than 10 others have reported an issue, for instance.

Thank you
Jennifer

ANCS delivers notifications to BLE peripheral as silent when in a Focus even though the app is a

Recent Similar Reports: None
Resolution: Open

**From:** James Yang <jeyang@apple.com>
**Sent:** Friday, November 12, 2021 2:49 AM
**To:** Herve du Penhoat, Jennifer <jennifer.hervedupenhoat@garmin.com>
**Subject:** Re: iOS 15 issue escalation

**CAUTION - EXTERNAL EMAIL:** Do not click any links or open any attachments unless you trust the sender and know the content is safe.

Hi Jennifer,

Thanks for raising this bug. I've drawn attention to it with our Evangelism team, who, in turn, is ensuring visibility with our engineering team with respect to urgency.

Did you by any chance receive any indication that the bug you filed was designated as a duplicate (meaning, Garmin wasn't the first to raise the issue)?

Best,
James

? **James E. Yang** | Partnership Management | Worldwide Developer Relations | Apple Inc.

On Nov 10, 2021, at 2:56 PM, Herve du Penhoat, Jennifer <jennifer.hervedupe

nhoat@garmin.com>
wrote:

?
Hello James

Thanks again for your time a few weeks back, I am thankful for your support!

As discussed, we will report issues through the proper channel, such as the feedback assistant. Unfortunately when we do not hear anything back on significant issues within a couple weeks, these get escalated to me... you are the only person who might be able to get some traction within Apple! This issue does not seem to affect Apple users, but as it does Garmin's (and apparently others), we could use your help to escalate this internally. Because of this problem, we have to advise our customers to not use this feature in iOS15, which I am sure you would agree is not ideal.

Could you please request a review of this issue by your technical team? It is

unclear whether anyone has looked at it in the past 2.5 weeks.

Thank you in advance!
Kind regards,
Jennifer

=================
=================
=================
=================
===============
On Oct 21st we opened a bug with Apple where notifications were not working as expected with Garmin wearables after enabling a new feature, “Focus”, on iOS 15. Focus Mode allows the user to configure multiple do not disturb windows and customize what information is able to surface during those time periods (including notifications from apps). Unfortunately, regardless of an app being allowed to post notifications during a focus mode window, iOS sends the notification as silent therefore not alerting the user on their Garmin wearable. We have confirmed that this is not how the Apple

Watch behaves, as it respects the list of allowed apps to post notifications.

Apple has not responded to our bug yet. FWIW, this bug affects other brands such as Fitbit. Both Garmin and Fitbit have advised customers to not use the new Focus feature on iOS 15.

Bug: https://feedbackassistant.apple.com/feedback/9717672
Garmin support article: https://support.garmin.com/en-US/?faq=jusyWiwXtF4512Rb8jnLOA&productID=125677&tab=topics
Fitbit support article: https://help.fitbit.com/articles/en_US/Help_article/1979.htm?Highlight=notifications%20#Troubles

# EXHIBIT 14
# CONFIDENTIAL

**To:** James Yang[jeyang@apple.com]
**Cc:** Herve du Penhoat, Jennifer[jennifer.hervedupenhoat@garmin.com]
**From:** Herve du Penhoat, Jennifer
**Sent:** 2022-08-24T17:02:39-07:00
**Importance:** High
**Subject:** RE: Apple issues - follow up

Hello James

I hope your summer went well. I am awaiting one more update on my end but had noted in my matrix a couple of action items for Patrick and Luke to follow up on. As discussed, I closed FB8789149 as Garmin developed a workaround. I did not see any movement on the issues we discussed 7/7 in the Feedback Assistant so am highlighting the ones that are most pressing in red in the matrix.

Summary:
FB9860679: does Luke have feedback from your engineers? In the meantime, we are checking status with Silabs.
FB9904953: what was the ANCS team's feedback following Patrick's follow up mid-July?
FB9973578: on our call, Patrick had asked if this was a regression from 15.4.1, but the issue was found in 15.4.1 (refer to Feedback assistant detail) and it is STILL in 15.6.1. Note that it also occurs for a single notification: clearing it on the watch does not clear it on the iPhone. What is the resolution status and expectation?
FB9910003: I am still waiting to hear whether Apple wants a sample to reproduce the issue and if so, where we should send it. Can you or Patrick follow up with the proper team? We continue to receive support calls about this issue, notably from BMW motorcycle riders using custom BMW Garmin devices.

Updated:
8/24/2022

| Issue Number | Description |
|---|---|
| FB9717672 | ANCS delivers notifications to BLE peripheral as silent when in a Focus even though the app is allowed in the Focus |
| FB8789149 | Bluetooth Low Energy Peripheral |
| **FB9860679** | Streaming issue between Airpod buds when using specific Silabs chipset |
| **FB9904953** | Notifications on peripherals via ANCS do not mirror Control Center when using Scheduled Summary |
| **FB9910003** | Garmin portable navigation products do not work with new Macbook Pro M1-based machines over USB |
| **FB9960759** | The iAP2 command transmission is stopped when phone calling. |
| FB9970575 | ANCS: Notifications sent to peripheral as silent when from People in Allowed Notifications in a Focus (Messages) |
| **FB9973578** | ANCS: When clearing a missed call notif. from a BLE periph. when there are multiple missed calls, notif. are not rem |
| **FB10015405** | Selected Tab Bar Item title does not display |

I would much appreciate an update in the next week. Is that possible?

Thanks in advance,
Kind regards,
Jennifer

---

**From:** James Yang <jeyang@apple.com>
**Sent:** Wednesday, July 6, 2022 6:05 PM
**To:** Herve du Penhoat, Jennifer <jennifer.hervedupenhoat@garmin.com>
**Subject:** Re: Apple issues - follow up

Hi Jennifer,

Thanks for sending this. I've forwarded this to relevant colleagues to see if there is anything that can be shared ahead of our meeting. Hoping for the best, as well.

Thanks,
James

On Jul 6, 2022, at 3:56 PM, Herve du Penhoat, Jennifer <jennifer.hervedupenhoat@garmin.com> wrote:

Hello James

I am looking forward to our call Friday but have not seen any changes to the current issues recently, including the one where we could send a device to help diagnose the problem (issue FB9910003 for instance?). If there was any update by tomorrow morning on any of these, including ANCS related issues (which get a lot of visibility due to the number of Garmin wearables affected), it would be helpful for an internal meeting tomorrow morning where I will likely be asked for updates.

In any case, I will otherwise hope for the best.
<image001.png>

Thank you for your support, it is very important to Garmin. I would love to show our team that we are making progress.
Jennifer

---

**From:** James Yang <jeyang@apple.com>
**Sent:** Wednesday, June 29, 2022 2:23 PM
**To:** Herve du Penhoat, Jennifer <jennifer.hervedupenhoat@garmin.com>
**Subject:** Re: Apple issues - follow up
**Importance:** High

Hi Jennifer,

Thanks for the reminder on the Calendar. I've just sent you the Webex invite. Thanks for the updated list. I've forwarded it to my Evangelism colleagues to help track.

Best,
James

On Jun 29, 2022, at 12:19 PM, Herve du Penhoat, Jennifer <jennifer.hervedupenhoat@garmin.com> wrote:

Hello James

I do not yet see your meeting maker for July 8: do you still plan on scheduling the call?

Below the status of the issues to date.. Updates in red. One will be resolved when iOS 16 launches (so marled closed). It would be good to know whether Apple wants a device sample to review issue FB99100003 and if so where to send it. There is a new issue (it is more of a question which hopefully can be answered quickly) entered today.

No other movement otherwise. I hope that by next week your colleague will be able to review where things stand.

<image001.png>

Thank you in advance,

Kind regards
Jennifer

---

**From:** James Yang <jeyang@apple.com>
**Sent:** Tuesday, June 21, 2022 7:18 PM
**To:** Herve du Penhoat, Jennifer <jennifer.hervedupenhoat@garmin.com>
**Subject:** Re: Apple issues - follow up

Hi Jennifer,

Thanks for confirming your availability. The purpose of my request to my Evangelism colleagues to connect with us on a call was to request that they look into whatever updates or status they could uncover for each of the Feedback Numbers you've listed. Because each issue is assigned to the relevant Apple Engineering team for each respective issue, they all require individual follow up (and time to investigate). In many cases, Evangelism would need confirmation directly from Engineering, so these do take time.

This is just to say that I'm hoping they'll have at least some updates for all of them- not limited to specific ones. I'd certainly defer to you as to whether it'd be meaningful on a call like this to bring in any individual stakeholders.

I'll be forwarding a Webex.

Best,
James

On Jun 21, 2022, at 4:08 PM, Herve du Penhoat, Jennifer > wrote:

Hello James

Forgive the delay in my response. I can be available at this time on July 8, however I can only confirm once you clarify which specific issues you would plan to discuss? Various parts of the organization are involved whether we discuss some issues or others, and ideally I can bring some of those stakeholders.

I also noted that there was a follow up on a couple of issues, highlighted in red below. I am waiting for the device list to the FB0010003 issue (I should have that shortly) and hopefully we can confirm FB9970575 is closed, but hopefully we would discuss some of the other open issues as well July 8?

Let me know!

Kind regards
Jennifer

<image001.png>

---

**From:** James Yang <jeyang@apple.com>
**Sent:** Tuesday, June 14, 2022 4:08 PM
**To:** Herve du Penhoat, Jennifer <jennifer.hervedupenhoat@garmin.com>
**Subject:** Re: Apple issues - follow up

Hi Jennifer,

Would you be available to meet with my technical colleagues in Evangelism on July 8, 11:30AM-12:00PM Pacific Time to talk through some of these outstanding issues your team has raised?

If so, LMK, and I'll send you a Webex.

Thanks,
James

On May 26, 2022, at 12:58 PM, James Yang <jeyang@apple.com> wrote:

Great- Webex sent. Talk to you in an hour.

Best,
James

On May 26, 2022, at 12:01 PM, Herve du Penhoat, Jennifer <jennifer.hervedupenhoat@garmin.com> wrote:

Hi James
I could speak at 4pm CDT today – please feel free to send a meeting maker!
Kind regards,
Jennifer

---

**From:** James Yang <jeyang@apple.com>
**Sent:** Thursday, May 26, 2022 1:32 PM
**To:** Herve du Penhoat, Jennifer <jennifer.hervedupenhoat@garmin.com>
**Subject:** Re: Apple issues - follow up

Hi Jennifer,

Would you have time for a brief chat? I currently have availability between 1:30-2:00PM Central today, 4:00-4:10PM Central today and 1:30-2:00PM Central on Friday.

Thanks,
James

On May 24, 2022, at 12:55 PM, Herve du Penhoat, Jennifer <jennifer.hervedupe

nhoat@garmin.com>
wrote:

Hello James

I hope you are well – is there any chance I could hear back soon on FB9910003?

Also, issue FB9860679 was entirely removed from the Feedback Assistant: can you help me understand why and where it could be tracked if not there?

I highlighted below in red the changes since my 5/2 email below: one new issue, one issue (FB9860679) which was completely removed from the Feedback Assistant and an ANCS issue which may be fixed in a future OS release (even though there is no information on which one). Nothing on the other ANCS issues, which as you know impact non-Apple devices. I understand why Apple watches would be your primary concern but given your dominance in the phone market, this also creates issues for hundreds of thousands of Garmin (and likely other brands') wearable users.

<image002.png>

Resolutions (or any feedback) are few and far between. Thank you in advance for your help making progress on some of these issues.

Kind regards,
Jennifer

---

**From:** Herve du Penhoat, Jennifer
**Sent:** Tuesday, May 10, 2022 2:01 PM
**To:** 'James Yang' <jeyang@apple.com>
**Subject:** RE: 4 open Garmin issue reports - now 5 open issues

Hello James!

I hope all is well with the WWDC preparations. I bet you are busy. I was wondering if you had heard any update on any of the below issues? It would be great to see progress on those ANCS issues which do not seem to garner any feedback, yet are so frequent. Is that because those issues only affect non Apple branded devices and therefore are not a priority for Apple to resolve?

It would also be good to hear back on FB9910003 concerning some of our devices not working with the new Macbook Pros.

I appreciate your help with these,
Kind regards
Jennifer

**From:** Herve du Penhoat, Jennifer
**Sent:** Monday, May 2, 2022 5:21 PM
**To:** James Yang <jeyang@apple.com>
**Subject:** RE: 4 open Garmin issue reports - now 5 open issues

Hello James

I consolidated the issues into a table as tracking the feedback in the Assistant is suboptimal: there is a total of 6 open issues (the first one from October 2021 was only partially resolved by iOS15.4 so I leave it listed as context for FB9970575 which we opened to reflect the remaining issue).

If you could get back to me with an update to as many of these issues as possible, that would be appreciated.

Kind regards
Jennifer

<image001.png>

**From:** James Yang <jeyang@apple.com>
**Sent:** Friday, April 15, 2022 6:37 PM
**To:** Herve du Penhoat, Jennifer <jennifer.hervedupenhoat@garmin.com>
**Subject:** Re: 4 open Garmin issue reports - now 5 open issues
**Importance:** High

Hi Jennifer,

Just sharing a quick update from the team on FB9860679:
The

unit just arrived today so we will begin running some tests.

I don’t know the precise reason for the long time in transit and may never, but it may have to do with our corporate side officially starting up our return to office across all orgs this week.

Will pass along any feedback I receive.

Thanks,
James

On Apr 9, 2022, at 1:09 AM, James E. Yang <jeyang@apple.com> wrote:

Hi Jennifer,

I hope you’re doing well,

too. We're positively heads down in WWDC preparation activity, so pardon delays in my responses.

Appreciate you consolidating these for ease. I've initiated follow ups on each of these and requested any possible feedback that could be shared externally from relevant teams. Can you

give me
more
informa
tion
on FB9
973578
, FB996
0759,
and FB9
970575
? I
don't
have
access
to the
content
s, so
while
I'm
looking
for
guidanc
e
broadly
, it'd
be
helpful
to me if
I knew
what
the
attache
d issues
were to
focus in
on
more
relevan
t
teams.

Thanks,
James

On Apr 7, 2022, at 9:05 AM, Herve du Penhoat, Jennifer <jennifer.hervedupenhoat@garmin.com> wrote:

Hello James

**FB9973578**: issues submitted 4/4/2022, listing for your awareness.

**FB9860679**: hardware issue for which we sent a Fenix 7 device to Robbie Sardinia 3 weeks ago (~3/18).

Is there any chance we could get an update on the 2 open February issues and the hardware issue? (FB9904953, FB9910003, FB9860679)?

Thank you
Jennifer

**From:** Herve du Penhoat, Jennifer
**Sent:** Thursday, March 31, 2022 3:14 PM
**To:** 'James E. Yang' <jeyang@apple.com>
**Cc:** Herve du Penhoat, Jennifer <jennifer.hervedupenhoat@garmin.com>
**Subject:** 4 open Garmin issue reports

Hello James

I hope you are well! There are currently 4 open Garmin issues (not including hardware issue FB9860679 following which we mailed a Fenix 7 sample device for your team's testing).

**FB9904953**: issue submitted 2/14/22, do you have a status update?

**FB9910003**: initially submitted 2/16/22; we responded on 3/10 to the question asked by Apple engineering 2/17 but have not heard back. Can you advise where this issue stands?

**FB9960759**: issue submitted on 3/18/22, do you have a status update?

**FB9970575**: issue submitted 3/30/22, listing for your awareness (this is a new issue following the resolution of FB9717672 by iOS 15.4)

Thank you for your support!

Kind regards,
Jennifer

**From:** Herve du Penhoat, Jennifer
**Sent:** Thursday, March 10, 2022 11:34 AM
**To:** 'James E. Yang' <jeyang@apple.com>
**Subject:** RE: 2 new Garmin issue reports

Hello James

Might you have an update on FB9904953?

We saw a response on the other matter and are following up!

Kind regards
Jennifer

**From:** Herve du Penhoat, Jennifer
**Sent:** Monday, February 21, 2022 5:28 PM
**To:** James E. Yang <jeyang@apple.com>
**Subject:** RE: 2 new Garmin issue reports

Hello James
To my knowledge (and per the person who reported it to me) no one else at Garmin has reported issue FB9910003 to Apple. Will your team respond with more information to this issue on the Feedback Assistant? Or should we have a short call?

Let me know!
Thank you,
Jennifer

**From:** James E. Yang <jeyang@apple.com>
**Sent:** Monday, February 21, 2022 2:53 PM
**To:** Herve du Penhoat, Jennifer <jennifer.hervedupenhoat@garmin.com>
**Subject:** Re: 2 new Garmin issue reports
**Importance:** High

**CAUTION - EXTERNAL EMAIL:** Do not click any links or open any attachments unless you trust the sender and know the content is safe.

Regarding FB9910003, Evangelism dug into this, and it seems that it's been identified as a

hardware/firmware issue, and that Engineering has replied to the developer for more information on the Radar. Can you verify whether Garmin was that developer or if it's possible another developer (ostensibly due to Garmin not being the first to file) was asked for this clarification. If it was Garmin, we can let our teams know that your team has responded, if you confirm that they have.

Best regards,
James

On Feb 16, 2022, at 4:28 PM, Herve du Penhoat, Jennifer <jennifer.hervedupenhoat@garmin.com> wrote:

Hello James

As agreed, here are references to 2 issues submitted by Garmin over the past few days:

- Issue reference FB9904953, submitted February 14 – title: **Notifications on peripherals via ANCS do not mirror Control Center when using Scheduled Summary**
- Issue reference FB9910003, submitted today February 16 – title: **Garmin portable navigation products do not work with new Macbook Pro M1-based machines over USB**

If you could make sure these get looked at and let me know what the resolution timing might look like, it would be much appreciated,

Kind regards
Jennifer

# EXHIBITS 15-37

## REDACTED IN FULL

# EXHIBIT 38

## HIGHLY CONFIDENTIAL

S. Ashlie Beringer
Direct: +1 650.849.5219
Fax: +1 650.849.5019
ABeringer@gibsondunn

Client: 03290-00041

DRAFT – ATTORNEY WORK PRODUCT
CONFIDENTIAL

August 6, 2012

VIA ELECTRONIC MAIL

Katherine Race Brin, Esq.
Katherine McCarron, Esq.
Division of Privacy and Identity Protection
Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Washington, D.C. 20008

Re: Apple Inc.'s Third Response to May 5, 2012 Civil Investigative Demand

Dear Katie and Katherine:

On behalf of our client Apple Inc. ("Apple"), we are hereby providing a third set of responses to the Civil Investigative Demand issued to Apple on May 15, 2012. Specifically, the information contained herein and the accompanying document production responds to Specifications A.6, A.7, A.8, A.9, A.10, B.6, B.7, B.8, B.9 and B.10.

The material contained in this response constitutes Apple's confidential and proprietary business information, and we ask that it be treated with the highest degree of confidentiality pursuant to 5 U.S.C. § 522(b) & (b)(7); 15 U.S.C § 46(f); and 15 U.S.C. § 57b-2.

**Specification A.6. Describe all policies, procedures, guidelines, software, tools and services that Apple has had in place concerning Third-Party Apps' access to or collection, transmission, use, disclosure, or sharing of Personal Information by or through Apps (both created by Apple and by Third Parties) and whether and how those policies, procedures, guidelines, software, tools and services are communicated to Third-Party App Developers.**

Response:

*Policies, Procedures and Guidelines Regarding The Use of Information By Apps*

Before app developers may collect, use or disclose information from their end users, they are required to provide notice and obtain consent from the user. EveryiOS application developer is required to consent to the iOS Developer Program License Agreement. That agreement contractually limits application developers from collecting, using and disclosing user or device

data without advance user consent, and further specifies that developers may only use such information to provide a function that directly relates to the user's use of the application or to serve advertising. Specifically, the PLA provides:

> 3.3.8 Any form of user or device data collection, or image, picture or voice capture or recording (collectively "Recordings"), and any form of data, content or information collection, processing, maintenance, uploading, syncing, storage, transmission, sharing, disclosure or use performed by, through or in connection with Your Application must comply with all applicable privacy laws and regulations as well as any related Program Requirements, including but not limited to any notice or consent requirements. In particular, a reasonably conspicuous audio, visual or other indicator must be displayed to the user as part of the Application to indicate that a Recording is taking place.
>
> 3.3.9 <u>You and Your Applications may not collect user or device data without prior user consent</u>, and then only to provide a service or function that is directly relevant to the use of the Application, or to serve advertising. You may not use analytics software in Your Application to collect and send device data to a third party.
>
> 3.3.10 <u>You must provide clear and complete information to users regarding Your collection, use and disclosure of user or device data</u>. Furthermore, You must take appropriate steps to protect such data from unauthorized use, disclosure or access by third parties. If a user ceases to consent or affirmatively revokes consent for Your collection, use or disclosure of his or her user or device data, You must promptly cease all such use.
>
> 3.3.11 Applications must comply with all applicable criminal, civil and statutory laws and regulations, including those in any jurisdictions in which Your Applications may be offered or made available. In addition:
>
> You and the Application must comply with all applicable privacy and data collection laws and regulations with respect to any collection, use or disclosure of user or device data. . . .

iOS Program License Agreement, ¶¶3.3.8–3.3.11 (emphasis added).

Apple has produced all responsive versions of the iOS Developer Program License Agreement in the accompanying production as follows:

| **Document** | **Date** | **Bates Number** |
|---|---|---|
| | | APPLEAPPS_XXX |

In addition to the contractual limitations set forth in the iOS Developer Program License Agreement, Apple also provides application developers with its App Store Review Guidelines which outline issues and practices that will cause Apple to reject the submission of an application by an app developer. These guidelines are provided only to application developers through a password-protected developer portal, and they are not made public. Because app developers are aware that Apple will review their app before making it available to end users and are highly motivated to obtain swift approval to distribute their apps through the app store, these guidelines function as an important deterrent to developer misconduct. The following principles in the App Store Review Guidelines are relevant to the access, collection, transmission, use and sharing of personal information by app developers:

> 2.6 Apps that read or write data outside its designated container area will be rejected.
>
> 4.1 Apps that do not notify and obtain user consent before collecting, transmitting, or using location data will be rejected.
>
> 4.4 Location data can only be used when directly relevant to the features and services provided by the app to the user or to support approved advertising uses.
>
> 5.4 Apps that send sensitive personal or confidential information using Push Notifications will be rejected.
>
> 17.1 Apps cannot transmit data about a user without obtaining the user's prior permission and providing the user with access to information about how and where the data will be used.
>
> 17.2 Apps that require users to share personal information, such as email address and date of birth, in order to function, will be rejected.
>
> 17.3 Apps that target minors for data collection will be rejected.

Apple has produced all relevant versions of the App Store Review Guidelines in the accompanying production as follows:

| **Document** | **Date** | **Bates Number** |
|---|---|---|
| | | APPLEAPPS_XXX |

Katherine McCarron, Esq.
Katherine Race Brin, Esq.
August 6, 2012
Page 4

The App Review Guidelines are prominently featured as a link from the main page of the "iOS Dev Center" section of Apple's Developer Portal, as shown in the screenshot below, which highlights the link for emphasis:




Furthermore, as explained in detail below, Apple routinely rejects app submissions that are found to violate these guidelines - and has rejected approximately one in four of apps submitted for review based on one or more such violations. When an app is rejected, the developer receives a message explaining which guideline or guidelines the app violated. Developers are thus encouraged to bring their application into compliance by reviewing the App Store Review Guidelines, and to resubmit their app[1].

[1] Because a rejected app must be modified and resubmitted by an app developer, and any resubmission generally enters the back of the App Review queue, developers are encouraged to ensure that their apps are in compliance with the App Review Guidelines prior to submitting their application. Submitting an app that gets rejected means that an app or app update takes longer to enter the App Store, and for many app

Apple also communicates information about the app review process to developers through the use of newsletters (which are short blasts of relevant information about news related to developers), as well as through the developer web portal. Copies of newsletters sent to developers are included in the accompanying production at APPLEAPPS_XXX. Documents from Apple's developer portal have been included in the accompanying production at APPLEAPPS_XXX. Materials from Apple's developer support and iTunes Connect support websites are included in the accompanying production at APPLEAPPS_XXX.

*Technical Access to Information by Apps Through Tools and Services*

Apple's mobile operating system, iOS, features several built-in applications that make it technically possible for software applications ("apps") installed by the user to interact with the user's device and data stored on the device in order to provide a variety of services and functionality to end users. These iOS features include methods for apps to access and modify address book data, calendar data, e-mail, photographs, and location information. Specifically, through the iOS software development kit ("SDK"), Apple provides application developers various application programming interfaces ("APIs") that can be used to view, modify, and in some cases, delete data stored in these system-wide resources. These APIs enable app developers to offer a broad range of useful functions desired by users.

---

developers, that delay is critical.

For example, third-party app developer OmniGroup has developed a task-management application called OmniFocus. OmniFocus integrates with a user's calendar to help schedule tasks and meetings, as seen in the developer-created screenshot below.



Katherine McCarron, Esq.
Katherine Race Brin, Esq.
August 6, 2012
Page 7

Third-party developer Bump has created an application that allows two users to “bump” their phones together in order to exchange business cards. After the two phones are “bumped” together and both users consent to the exchange, each iPhone’s Address Book is automatically updated with the contact details of the other person, as seen in the screenshot below.



Third-party application developer Mysterious Trousers, LLC has developed a popular application called Calvetica Calendar, which provides users with an attractively designed visual summary of information stored in the user's calendar, as seen in the screenshot below:



Third-party application developer Hyoungnae Oh has developed an application called DeleteQ. DeleteQ allows a user to search their iOS address book to find, for example, duplicate contacts or contacts without a phone number. Once gathered, a user can quickly delete those contacts from the address book. The application is extremely popular in the App store, with an overall rating of four stars. The screenshot below shows the "Easy Select" process, which interfaces with theiOS address book:




Countless other app developers have utilized iOS API's that provide access to calendar, address book, and photo data to provide their customers with useful, well designed and responsible apps.

Information about how to access these API's is made available through Apple's developer portal, http://developer.apple.com, and particularly through Apple's Developer Library. Apple offers programming guides, sample code, videos, and tutorials that explain how to program applications for iOS. The accompanying production includes responsive versions of the following overviews made available to application developers:

- iOS App Programming Guide (APPLEAPPS_XXX)
- iOS Human Interface Guidelines (APPLEAPPS_XXX)
- App Development Overview (APPLEAPPS_XXX)
- iOS Technology Overview (APPLEAPPS_XXX)

**Security**

In addition to the general-purpose guides described above, Apple provides developers with a Security Overview guide that offers tools and information describing how to best implement security features into their applications in order to protect the privacy and security of the application developers' customers. For example, the Security Overview provides developers with an introduction to the concept of cryptographic hashing, and provides links to additional external resources about how to secure private data. The accompanying production contains all responsive historical versions of the Security Overview Guide as follows:

| **Document** | **Date** | **Bates Number** |
|---|---|---|
| | | APPLEAPPS_XXX |

Apple also conducts sessions addressing security matters at its annual Worldwide Developers Conference, which is attended by more than 5,000 developers each year and which is later broadcast to developers through on-demand online video playback. Specifically, during Apple's 2010 Worldwide Developers Conference, the company conducted a session entitled "Creating Secure Applications." A copy of that session is contained in the accompanying production at APPLEAPPS_XXX. The following year, Apple conducted sessions entitled "Securing Application Data," and "Security Overview"." Copies of these sessions are included in the accompanying production at APPLEAPPS_XXX and APPLEAPPS_XXX.[2]

[2] Copies of relevant sessions from Apple's 2012 Worldwide Developers Conference will be produced as part of Apple's response to interrogatory A.5 on October 8, 2012.

**Address Book**

The Address Book Programming Guide is a technical document that explains the protocols for apps to access, modify, add and delete records from a user's address book. The accompanying production contains all responsive historical versions of the iOS Address Book Programming Guide as follows:

| Document | Date | Bates Number |
|---|---|---|
| | | APPLEAPPS_XXX |

In addition, Apple conducted a session at the '2010 Worldwide Developers Conference entitled "Accessing Shared Contact Info"." A copy of the session is included in the accompanying production at APPLEAPPS_XXX.

**Calendar**

The Event Kit Programming Guide is a technical document that explains the protocols through which apps can access, modify, add and delete records from a user's calendar. Apple has included all responsive historical versions of the iOS Event Kit Programming Guide in the accompanying production as follows:

| Document | Date | Bates Number |
|---|---|---|
| | | APPLEAPPS_XXX |

In addition, Apple conducted a session at the '2010 Worldwide Developers Conference entitled "Calendar Integration with Event Kit," a copy of which is included in the accompanying production at APPLEAPPS_XXX.

**Photographs**

The guide Camera Programming Topics for iOS is a technical document that explains the protocols for apps to use the camera built-in to certain iOS devices to take photographs and video, as well as to access previously taken photos and videos. Apple has included all responsive historical versions of documents relating to the accessing of photographs in the accompanying production as follows:

| **Document** | **Date** | **Bates Number** |
|---|---|---|
| | | APPLEAPPS_XXX |

In addition, Apple conducted a session at the '2010 Worldwide Developers Conference entitled "Incorporating the Camera and Photo Library in Your App." A copy of the session is included in the accompanying production at APPLEAPPS_XXX.

**Location**

The Location Awareness Programming Guide is a technical document that explains the protocols for apps to request location information from the iOS device. Accessing location data requires the "Location Services" setting to be "On." Since the release of iOS 4.0 on June 21, 2010, users have also been required to specifically consent to the provision of location information to each application individually, and users have been able to control that consent on an app by app basis through a settings panel in iOS. Beginning with the release of iOS 5.0 on October 12, 2011, users also have been required to affirmatively elect whether they would like Location Services on or off during the initial set up of their device. If a user chooses to turn Location Services off, or has not consented to allow a particular app to obtain location information, iOS blocks the app from accessing location information. The accompanying production contains all responsive historical versions of documents relating to accessing location as follows:

| **Document** | **Date** | **Bates Number** |
|---|---|---|
| | | APPLEAPPS_XXX |

In addition, Apple conducted a session at the 2010 Worldwide Developers Conference entitled "Using Core Location in iOS 4"." The following year, Apple conducted a session entitled "What's New in Core Location." Copies of these sessions are included in the accompanying production at APPLEAPPS_XXX and APPLEAPPS_XXX, respectively.

**Forthcoming Updates to iOS**

On June 11, 2012, Apple began a beta test of the newest version of its iOS operating system, iOS 6, by providing a copy of the operating system to registered developers. New features designed to enhance privacy are built-in to iOS 6, and will be the subject of a future response and document production by Apple scheduled for October 8, 2012.

Beginning with iOS 6, app access to any of the above API's (address book, calendar, photographs) will require certain settings on the phone to be turned on in a manner similar to the functions currently provided for access to location information. Users will have similar granular, app-by-app control over which apps can access this information through a control panel setting on their mobile device.

Apple conducted a session at the 2012 Worldwide Developers Conference entitled "Privacy Support in iOS and OS X." A copy of this session is included in the accompanying production at APPLEAPPS_XXX. Please note that this session involves Apple's iOS 6 beta, the details of which are still being finalized.

**Specification A.7. Describe the process by which a Third Party applies, signs up, or otherwise registers to be an Apple App Developer. The description should include, but not be limited to: a. an explanation of any contracts, agreements or guidelines to which the Third Party must adhere or agree prior to becoming an approved Apple App Developer; b. all requirements and qualifications mandated by Apple for Third-Party App Developers; and c. whether this process has changed over the responsive time period.**

Response

An individual or company that wishes to join Apple's App Developer program may register through Apple's App Developer web page, located at http://developer.apple.com:



Katherine McCarron, Esq.
Katherine Race Brin, Esq.
August 6, 2012
Page 15

Prospective app developers can register for free access to Apple developer tools and resources for creating iOS apps, including software tools, videos, sample code, and more, as shown below:



In order to register for a free account, Apple requires app developers to provide a Personal and Professional Profile:


Developer
Apple Developer Registration

Apple ID · Personal Profile · Professional Profile · Legal Agreement · Email Verification

Complete your personal profile

Important: Your personal profile information should be entered in English and without using diacritical characters (for example: ü, é, ñ)

(All form fields are required)

Apple ID: jakewalker@me.com

Person ID: 293178683

Apple ID
You will use this Apple ID when asked to log in before accessing certain resources on the Apple Developer website.

Manage your Apple ID.

Personal Information

First Name: Jacob

Last Name: Walker

Email Address: jakewalker@me.com

Company / Organization:

Country: United States

Your Contact Information
Your privacy is a priority at Apple, and we go to great lengths to protect it. To learn how Apple safeguards your personal information, please review the Apple Customer Privacy Policy



Developer

Apple Developer Registration

Apple ID — Personal Profile — Professional Profile — Legal Agreement — Email Verification

## Complete your professional profile

(All form fields are required)

**Which Apple platforms do you develop with? Select all that apply.**

- iOS
- Mac OS X
- Safari

**What is your primary market?**

- Business
- Education
- Entertainment
- Finance
- Games
- Health & Fitness
- Lifestyle
- Medical
- Music
- Navigation
- News
- Photography
- Productivity
- Reference
- Social Networking
- Sports
- Travel
- Utilities
- Weather

Check this box if you are currently enrolled in a college or university.

Cancel Continue

To complete registration and before a developer may access any Apple tools, the developer must agree to the Registered Apple Developer Agreement, which is included in the production at APPLEAPPS_XXX:



Katherine McCarron, Esq.
Katherine Race Brin, Esq.
August 6, 2012
Page 19

Once Apple verifies the validity of the developer's e-mail address, the developer is officially registered as an Apple Developer:




Once registered, an application developer can access various software tools, sample code, programming libraries, and training videos that explain how programming for Apple's mobile devices works.

Katherine McCarron, Esq.
Katherine Race Brin, Esq.
August 6, 2012
Page 20

Apple requires a second level of registration before developers are permitted to submit applications to the App Store: Developers wishing to distribute their software in the App Store must have an active iOS Developer Standard or Enterprise Program Membership:



To register for an iOS Developer Standard or Enterprise Program Membership, developers pay a $99 fee. Companies applying for corporate membership are required to provide their D-U-N-S Number, legal entity name, and legal address. Individuals are required to provide their legal name and address:



Once verified, Apple requires individuals or businesses to consent to the iOS Program License Agreement prior to becoming members of the program. Historical copies of the iOS Program License Agreement, reflecting changes in the terms of the agreement, are included in the accompanying production as follows:

| **Document** | **Date** | **Bates Number** |
|---|---|---|
| | | APPLEAPPS_XXX |

**Specification A.8. Describe the process by which Apple reviews, approves, modifies, or denies an App submitted from a Third-Party Developer prior to the App, or any update to the App, being offered or otherwise available for download from the App Store. The description should include, but not be limited to:**

**a. whether the Apple employees reviewing Apps follow written review guidelines or procedures and if so, what those guidelines or procedures require;**

**b. what specific tools Apple employees use for this review;**

**c. whether and how Apple interacts with, and provides guidance and suggestions to, App Developers about issues involving the privacy, security, or confidentiality of Personal Information during the review and approval process;**

**d. if, as part of the review process, Apple determines whether and how an App accesses, collects, transmits, uses, discloses, or shares Personal Information, and, if the App does so, what additional steps Apple takes to ensure the App meets any requirements regarding Personal Information, including:**

**i. obtaining prior permission from the user before accessing or collecting Personal Information; or**

**ii. providing the user information about how and where the Personal Information will be accessed, collected, transmitted, used, disclosed, or shared;**

**e. whether and how the Apple employees reviewing Apps document their review;**

* * *

**g. whether this process has changed over the responsive time period**

Response:

*App Review Process*

The App Store contains over 600,000 mobile applications (or "apps") from third-party developers located throughout the world. In order for an app to be sold and/or distributed in the App Store, an iOS developer must submit it to Apple for review. Developers submit their application in binary form through a web program called iTunes Connect. Information about iTunes Connect is included in the accompanying production at APPLEAPPS_XXX.

Once an app is submitted for review, the app enters a queue where it is eventually assigned to a first-level app review team member. Apps are assigned to particular team members based on numerous factors, including whether or not the app contains foreign language material. Apple strives to have submissions reviewed and approved or rejected within seven days of submission, and publishes on its website statistics about the current pace of the app review team.

App reviewers (and indeed, Apple) do not have access to the raw source code of an application. Instead, the app review process generally consists of a reviewer launching and using an application in the same manner a customer would. App reviewers test the functionality of an application, work through many of the apps menus and dialog boxes, and generally review the overall content and design of the application. In each case, the reviewer is evaluating the design and functionality of the application against over 125 separate rules and guidelines. Given the tremendous volume of apps and app updates submitted, the review process is fairly quick; most apps are reviewed in a half-hour or less.

In certain cases, however, [redacted] Additional information about the escalation process is included in the accompanying production at

APPLEAPPS_XXX.

If a first level app reviewer has sufficient information, they can either approve or reject the app. Once approved, the app is then propagated to the iTunes App Store, and appears for distribution, either shortly after the approval, or at a time specified by the app developer. A first level app reviewer can also reject an application by indicating in [redacted] the reason (or reasons) for the rejection. This process sends a notice to a developer through the iTunes Connect web interface explaining why the application was rejected, affording the app developer the opportunity to rectify the issue and resubmit the application. The App Review Rejection process is explained in a document produced at APPLEAPPS_XXX.

Under certain circumstances, rejections of applications are also communicated to developers over the telephone. In these situations, a member of the App Review Communications group reaches out to the developer and discusses the specific reasons for their app's rejection over the phone. These phone calls are documented in [redacted] Because developers applications and updates cannot be distributed without passing app review, developers tend to be highly responsive to a rejection and to Apple's App Review Guidelines.

Furthermore, app reviewers can access the prior review history of any submitted application. This allows the review team to analyze the reason for prior app rejections, and to be on heightened alert for similar violations in the developer's most recent submission. App developers do not have access to information about an app's download count, ranking, or revenue.

Application developers have the option to appeal rejections of their apps. This appeal process is run through the "ARB" or "App Review Board," and is explained in detail in the documents produced at APPLEAPPS_XXX and APPLEAPPS_XXX.

If an application developer expresses an urgent need to update an application, the developer can request an expedited review. For example, if an app contains a bug or resolves a security weakness, that app reviewer can request that an update remediating the concerns be reviewed as soon as possible. The app review team makes every effort to review expedited requests within 24-48 hours.

From time to time, a new and unique application might raise novel or complex issues that require specific policy determinations to be made. These decisions are made by Apple's "ERB," or "Executive Review Board." The Executive Review Board consists of a confidential panel of various senior management and legal team members of Apple, who meet weekly to evaluate applications with these unique issues. Information about the ERB process is included in the accompanying production at APPLEAPPS_XXX.

Apple has produced copies of the information it provides to developers about the App Store Approval Process in the accompanying production at APPLEAPPS_XXX.

***Tools & Materials Used***

The App Store Guidelines, produced at APPLEAPPS_XXX, set forth the governing principles that guide the app review analysis and are the basis for most application rejections. In addition to this document, [redacted] Relevant sections of the App Review Wiki are included in the accompanying production at APPLEAPPS_XXX. The App Store Guidelines contain more than 125 different rules that can serve as the basis for rejection, and the specific context in which these issues may arise in apps submitted for review is continually changing. All App Store reviewers are required to participate in extensive training with respect to the App Store Guidelines and App Review Wiki, and then are directly supervised for a period of X months before they become a full-fledged reviewer. In addition to the Wiki and Guidelines, the App Review team also receives periodic newsletters outlining emerging issues.

App developers communicate their approval, rejection, or elevation of apps through [redacted] Information about [redacted] is included in the production at APPLEAPPS_XXX.

[redacted] This application is discussed in documents produced at APPLEAPPS_XXX.

***Technical Investigation***

As explained above, under certain circumstances, applications are sent to the "Technical Investigation" team, or "TI".

As discussed previously, applications that are submitted to Apple for inclusion in the iTunes Store as compiled, executable binary files. Apple does not have access to the raw source code written by application developers. Accordingly, it is not possible for Apple to "dive" into an apps code to determine precisely how it operates. However, in certain cases, TI can use tools described below to attempt to discover whether an application is complying with certain terms of Apple's policies and procedures.

As previously discussed with Staff, this response focuses specifically on the tools used to investigate potential violations of Apple's guidelines relating to the collection, use and disclosure

of personal information. Use of these tools requires extensive technical expertise and is time-consuming. Accordingly, this second tier of review is conducted by a specialized TI team in circumstances that merit additional investigation.

As an initial matter, in instances where a technical investigation is warranted, TI may attempt to analyze network traffic flowing from an iOS device to a third-party server in an attempt to determine whether the developer is collecting information from the device or sharing information with third parties. Many developers submit standalone applications, such as a game or tourist guide that is completely self-contained, and does not require Internet access (or communication with the developer's servers) to operate. Other applications, however, require Internet connectivity to operate. For example, an application that allows a user to make restaurant reservations might operate by transferring the user's request over the Internet, and submitting a request to the application developer's server.

The method by which an application communicates back to a developers' server is determined by the application developer. Developers may elect to send all data over a secure "https" protocol communication. Alternatively, developers may elect to separately encrypt all communications on the iOS device prior to sending the information to a remote server.

One tool used by the TI team to examine communications between an app and its developer's servers is [redacted]

In addition to this technology, the TI team can also use tools to analyze the executable binary file submitted by an app developer in an attempt to detect the use of known "private API's". These "private API's" are not part of the software development kit that Apple authorizes application developers to use, and thus are forbidden for use by app developers. When TI detects the use of a private API by an application, it can reject the application from inclusion in the App Store.

None of these techniques are infallible, especially against an application developer with nefarious intent. For example, [redacted]

[3] Further complicating matters, encrypting data prior to sending it over an HTTPS connection is not always a sign of nefarious activity. In fact, many security profiles consider such pre-transmission encryption to constitute industry best practice.

[redacted]

Furthermore, technical investigation is also a time-consuming process, which can take several hours per application. The app review team, as constituted, is not capable of putting every application submitted through a technical analysis review. To put this in perspective, if Apple conducted a TI review of every application submitted to the App Store utilizing current resources, it would take well over a month for applications to be reviewed and approved, a situation which would be intolerable for Apple's developers and for the developer's customers. Apple currently strives to review apps within 5 business days of submission.

Despite these limitations, many apps are sent to TI for a comprehensive audit of their network behavior. By way of example, if an application that contains social networking friend-matching features is detected by an app reviewer and elevated to TI, a member of the TI team will use the app while monitoring its network traffic. If the TI member detects that the application is transmitting the device's address book contents back to the application developer's server, the TI analyst will then analyze the form of consent the application requested prior to this activity occurring. If the consent mechanism is clear and unambiguous to a user (e.g., a pop-up dialog box expressly states that contact data will be uploaded) – and if it provides the user with a choice about whether to accept or deny access to their data (rather than "forcing" consent) -- an application will pass the TI investigation. If the consent is more ambiguous (e.g., fails to disclose that the information will be uploaded to the developer's servers), fails to give the end user a meaningful choice, or does not exist, the application will be rejected by the TI team for a violation of App Review Guideline 17.1. The App Review Wiki entry associated with Guideline 17.1 is included in the production at APPLEAPPS_XXX and contains several detailed examples of the consent that is required before apps may collect or use its customer's contacts.

Similarly, if the TI team detects that the device's unique device identifier (or "UDID") is being sent back to the developer's server or to the server of a third-party, the TI team member will review the application's privacy policy or end user license agreement to ensure that this is disclosed to end users. If there is no disclosure, the application will be rejected.

*Changes over Responsive Period*

The app review process has remained largely unchanged during the responsive period. That

said, the manner in which application developers utilize iOS features constantly changes, and the priorities and experience base of Apple's App Review team likewise evolves continually in response to ongoing changes in the practices and technologies utilized by app developers.

In view of the complex and evolving nature of application technology – and the inherent limitations of the app review process – Apple often learns of practices and techniques used by developers to violate its guidelines when those techniques are surfaced or publicized by a researcher, particularly where these practices are not apparent from a review of the app itself. For example, closer scrutiny of friend-matching features in applications occurred following news reports about the Path application in February 2012. Whenever these issues have come to light, Apple has responded quickly by investigating the source and scope of the problem and educating its app review team about red flags or indications that require a technical analysis or further investigation, so as to increase detection of such issues in the future. Likewise, Apple continually refines and updates its written guidelines (specifically, its App Review Wiki) to provide current examples and training to its reviewers based on emerging trends and real time developer practices, and strives to keep its review team informed about emerging issues in staff meetings and in app review newsletters .

**Specification A.8(f): for those Apps rejected for failure to comply with Apple's policies or guidelines regarding the privacy, security or confidentiality of Personal Information: (1) what percentage of Apps were rejected on this basis; (2) the identity of each App and its App Developer; (3) the date the App was rejected; (4) the reason(s); each App was rejected;**

Response:

Apple received a total of 2,477,322[4] app submittals from app developers between January 1, 2010 and June 30, 2012 in connection with apps designated for U.S.-only or worldwide distribution.[5] Of those submissions, Apple rejected 587,934 (24%) for failure to comply with Apple's policies and guidelines.

Apple began categorizing rejections using rejection codes on December 7, 2010. Between that date and June 30, 2012, Apple rejected a total of 440,644 app submittals, of which, Apple rejected 7,421 (1.7%) for violating policies regarding the privacy, security, or confidentiality of personal information. A chart identifying the rejected apps, their developers, the rejection dates, and the reasons for the rejections accompanies this letter as Exhibit A.

Apple did not categorize or otherwise systematically track the reasons for app rejections prior to December 7, 2010. Accordingly, Apple cannot readily determine which of the 147,290 apps rejected between January 1, 2010 and December 7, 2010 were the result of violations of Apple's policies concerning the privacy, security, or confidentiality of personal information.

**Specification A.9: Describe whether and how Apple ensures that Third-Party Apps comply with Apple's policies regarding the privacy, security, or confidentiality of Personal Information after the Third-Party Apps are approved and are available for download in the App Store. The description should include, but not be limited to:**

**a. whether Apple audits, oversees, or otherwise reviews Apps available in the App Store for issues involving the privacy, security, or confidentiality of Personal Information;**

**b. whether Apple learns of compliance problems from other sources, such as users, competitors, and developers;**

---

[4] This total does not include instances where developers submitted and subsequently withdrew their apps from consideration before their review.

[5] This total exceeds the number of unique apps submitted for app review, as developers may submit an app for review multiple times (for example, to provide a new version or to address a concern that caused the app to previously be rejected).

**c. what Apple does with any information it learns from any audits, oversight, reviews, or other sources, including whether Apple investigates or independently verifies the information it learns from audits, oversight, reviews, or other sources;**

**d. whether or how Apple contacts App Developers about potential compliance violations;**

**e. whether Apple takes any further action, such as to alter the ranking or visibility of the App in the App Store, remove the App from the App Store, remotely disable the App, or deprecate the APIs accessed by the app . . .**

Response:

Generally, once an application has been approved for distribution in the App Store, [redacted] The application binary that was approved by the App Review team cannot be modified or changed by an app developer, and any updates to that application are required to go through the App Review process.

There are a number of ways in which Apple commonly finds out that an application that is live in the App Store may be violating rules regarding privacy, security or confidentiality. The most common way is from other app developers. Frequently, when app developers receive a rejection for operating in a certain manner, those app developers will sometimes include as part of their appeal a list of other applications that are available in the App Store, and that allegedly behave in the same manner.

In addition, Apple also learns about applications that may be violating app store rules from other sources, including e-mails to Apple's customer service department, reports from security researchers (who may focus on detecting obscure or novel violations), e-mails to Apple executives (whose email addresses are often well known), or media and press inquiries.

In all such instances, when an app is alleged to be violating an App Store rule, that application is audited by TI to determine whether or not the complaint is legitimate. This auditing process is documented in the [redacted]

If an application is found to be violating an App Store Guideline , there are numerous potential remedies. Depending on the seriousness of the violation, an app developer may be asked to submit an updated version of the application that complies with the App Store rules. Often times, the app developer is given a limited time to provide the updated application, along with a threat that their application will be "hidden" from (i.e., not appear in) the App Store if no action is taken within a specified time. In other circumstances, an audit may result in an applicationbeing

immediately hidden. Finally, for particularly egregious violations of the App Store Guidelines, an app developer may be suspended or terminated from the developer program. Under these circumstances, all of the developer's applications are permanently removed from sale in the App Store. When a developer is contacted as a result of an application audit, those contacts are captured in the PRAM database.

Apple makes every attempt to keep developers in the Developer Program rather than removing them from the program, not the least of which is because a developer who is kicked out of the program has no incentive to (and indeed cannot) provide an updated version of their app that comes into compliance with Apple's guidelines.

Apple does not have the ability to remotely disable an application from the device of a user who has already downloaded the application. As a result, Apple's preferred method for rectifying problems with applications that are live in the store is to work cooperatively with app developers to generate an update for their applications that resolves Apple's concerns, which is the only way to ensure that a compliant update is made available to users who already are using the application. In these circumstances, the App Store application on customers' iOS devices will display an indicator noting that an update exists, which the customers can then download free-of-charge.. By contrast, if Apple suspended or removed application developers from the program for violations of the app review program, end users would never receive the benefit of the corrected application and versions of the apps that raised concerns would remain on their devices.

Apple does not artificially modify the ratings or rankings of any application as a result of an audit. It is not possible for Apple to remotely restrict the ability for apps to stop using certain API calls; that software is built into the iOS operating system installed on devices, and cannot be remotely modified.

**Specification A.9(g): for those Apps offered on the App Store that have failed to comply with Apple's policies or guidelines regarding the privacy, security, or confidentiality of Personal Information: (1) what percentage of Apps, out of total number of Apps available for download, were found to be out of compliance; (2) the identity of each App and its App Developer; (3) the date Apple determined the App was out of compliance; and (4) the reason(s) why each App was found out of compliance.**

<u>Response</u>

Apple began tracking the audit and removal of applications through the UTB database in June 2011. Prior to this time, tracking of audits of applications was not part of a database, and occurred on an ad-hoc basis. As such, there is no method for systematically tracking the reasons an application was audited prior to the implementation about this database, and statistics about application audits are only available from June 8, 2011 through June 30, 2012. A complete set of records from the UTB database detailing audits of applications for violations of policies or guidelines regarding privacy, security, or confidentiality are included in the accompanying production at APPLEAPPS_XXX.

Out of the over 600,000 apps available for download from the App Store, there have been approximately ___ audits of applications from June 8, 2011 through June 30, 2011 for violations of Apple's guidelines regarding privacy, security, or confidentiality of Personal Information. ___ of those audits resulted in a finding that an app available for sale in the App Store was in violation of a rule. Of those violations, ___ application developers submitted revised applications that fixed a violation, while ___ applications were removed from the App Store permanently.

**Specification A.10: For each year, describe and through graphic representation show how Apple distributes authority and responsibility to its employees for: (a) registering Third-Party App Developers to develop Apps for the App Store; (b) reviewing and approving Third-Party Apps for inclusion in the App Store; and (c) ensuring that Third-Party Apps available in the App Store comply with Apple's privacy and security policies. Identify all employees with such authority and responsibility, and describe their qualifications and how and by whom they are supervised. . . .**

Response

Apple does not maintain organizational charts, and as such, no formal organizational chart is available for production in response to this request.

The chart below illustrates the organizational structure and responsible managers for each unit of the App Review team. The team is led by Phillip Shoemaker, who supervises 85 employees responsible for both reviewing application submissions and auditing applications that are available in the App Store. Mr. Shoemaker's team is responsible for the review of *all* iOS applications worldwide.




Below is an explanation of the various groups and sub-groups pictured above.

| Group | Description |
|---|---|
| Eagle | Acts as a liaison between the App Review team and Apple legal department. |
| Engineering | Provides engineering resources to the app review team, including the programming of databases and the support f the tools used in the App Review process. |
| Operations | The largest group, principally responsible for the actual review of applications. |
| Quality | Focused on ensuring the accuracy of the app review proce app review of applications without foreign language components are also conducted by this group. |
| Foreign Language | Responsible for reviewing applications with foreign language components. The majority of reviewed |

| | |
|---|---|
| | applications are reviewed by the foreign language team. |
| ERB/ARB Support | Support the app review appeal process and provide investigative and technical support to the ARB and ERB boards. |
| Technical Investigations | As discussed above, responsible for conducting full technical audits of the technical inner workings of specific applications. |
| In-App Purchase / Game Center | Reviews apps involving the use of in-app purchase mechanisms and Apple's Game Center feature. |
| Communications | Responsible for communicating with app developers about rejections, appeals, and application audits. |
| Program Management | TBD – Liaison between the app review team and Apple's Worldwide Developer Relations program? |

While the number of employees has changed over time, the structure of the App Review team has remained largely unchanged during the responsive period.

Please do not hesitate to contact me should you have any questions or concerns regarding the information enclosed herein.

Sincerely,

S. Ashlie Beringer

SAB/ln

101339872.4

# EXHIBIT 39
# REDACTED IN FULL

# EXHIBIT 40

## REDACTED IN FULL

# EXHIBIT 41

## Contact

www.linkedin.com/in/grnovick
(LinkedIn)

## Top Skills

Stakeholder Management
Engineering Management
Solution Architecture

## Certifications

BlueDot AI Governance
Tech Executive Leadership Initiative

## Publications

Creating An API Standard For Election Administration Systems To Strengthen U.S. Democracy

## Patents

Portable multifunction device, method, and graphical user interface supporting user navigations of graphical objects on a touch screen display

Touch screen device, method, and graphical user interface for determining commands by applying heuristics

Service compatibility check for messages

Quiet hours for notifications

User interface interaction using various inputs for adding a contact

# Greg Novick

Ex-Apple/Facebook/White House mission-driven software leader
San Francisco Bay Area

## Summary

Ex-Apple/Facebook consumer product engineering leader, now bringing my experience to mission-driven roles.

---

## Experience

### Tech Talent Project
Director, Medicaid Delivery Innovation Initiative
August 2025 - Present (1 year 1 month)

### The Biden-Harris White House
Digital Services Expert, Engineering @ US Digital Service
April 2021 - January 2025 (3 years 10 months)
The White House

Improving services for the American public through technology.

### Airbnb
Consultant, Mobile Strategy
January 2022 - December 2022 (1 year)

### Apple
Consultant, COVID Exposure Notifications
April 2020 - August 2020 (5 months)
Cupertino, California, United States

### Apple
Director, Apple Watch Software Engineering
August 2013 - January 2020 (6 years 6 months)
Cupertino, CA

Built an awesome team to launch Apple Watch and its subsequent generations. Drove architecture and product definition for apps, infrastructure, SDK, health and fitness.

### Facebook
Engineering Manager, iOS

May 2012 - August 2013 (1 year 4 months)
Menlo Park, California, United States

Led a distributed engineering team responsible for the native rewrite of Facebook for iPhone and iPad, and iOS infrastructure for use throughout the company.

### Apple

9 years 5 months

#### Engineering Manager, iOS Apps & Frameworks

June 2009 - May 2012 (3 years)
Cupertino, California, United States

Led a team responsible for the home screen, application/process management, multitasking, notifications, and system-wide user interface components and services.

#### Senior Software Engineer, iPhone Applications & Frameworks

June 2005 - June 2009 (4 years 1 month)
Cupertino, California, United States

Built the first apps for the first iPhone: Mail, Notes, iPod, Calendar, Phone. Defined significant parts of the architecture of what became iOS.

#### Mail Software Engineer

October 2004 - June 2005 (9 months)
Cupertino, California, United States

#### Mac OS X Software Updates Integration Engineer

January 2003 - October 2004 (1 year 10 months)
Cupertino, California, United States

## Education

### Stanford University

BS, Computer Science · (1999 - 2002)

# EXHIBIT 42
# REDACTED IN FULL

# EXHIBIT 43

## REDACTED IN FULL