**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE: APPLE INC. SMARTPHONE ANTITRUST LITIGATION | Case No. 2:24-md-03113 (JXN) (LDW) |

**DECLARATION OF JENNIFER R. SCULLION**

Jennifer R. Scullion, pursuant to 42 U.S.C. § 1746, hereby declares as follows:

1. I am a partner with Seeger Weiss LLP, co-lead counsel for the Direct iPhone Purchaser Plaintiffs in the above-captioned MDL. I submit this declaration on behalf of the Direct iPhone Purchaser Plaintiffs, the Indirect iPhone Purchaser Plaintiffs, and the Direct Apple Watch Plaintiffs (here, collectively, "Plaintiffs") in support of the Plaintiffs' September 15, 2026 letter brief to Special Master Hedges. Unless otherwise stated, I make this declaration based on personal knowledge. In making this declaration, I am not authorized to waive any privilege or work product, nor am I doing so.

2. On August 21, 2026, Apple produced its first TAR sample ("Sample 1") pursuant to the Court's August 7, 2026 TAR Order [ECF 272-1].

3. The August 21 production contained 23,891 documents. The metadata Apple provided in accordance with the TAR Order showed Apple's model scored 2,493 of the documents above the TAR Cutoff, and 21,398 documents below the TAR Cutoff.

4. On August 24, 2026, Apple produced 12 additional documents it originally withheld from Sample 1 based on asserted confidentiality concerns. All 12 had metadata showing the were scored below the TAR Cutoff.

5. On August 28, 2026, Apple produced 30 additional documents it originally withheld from Sample 1. Of those, 29 documents had metadata showing they were scored above the TAR Cutoff, and 1 had metadata showing it was scored below the TAR Cutoff.

6. Apple fully withheld 1,067 documents from Sample 1, which Plaintiffs assume is based on assertions of privilege.

7. In total, Sample 1 consisted of 23,933 documents produced to Plaintiffs, 2,494 of which were identified as scoring above the TAR Cutoff.

8. Plaintiffs began reviewing Sample 1 on August 22. The review teams consisted of 60 lawyers from firms representing all three classes (Direct iPhone Purchasers, Indirect iPhone Purchasers, and Watch Purchasers), including partners.

9. The review teams searched the documents below the Cutoff Score for documents responsive to RFPs ("False Negatives," to use the TAR terminology). False Negatives identified by first level reviewers were reviewed, at a minimum, by other attorneys from leadership firms to confirm responsiveness.

10. The review teams also conducted a full review of all documents scoring above the Cutoff Score for document that were not responsive ("False Positives," in TAR terminology). False Positives identified by first level reviewers were reviewed, at a minimum, by other attorneys from leadership firms to confirm non-responsiveness.

11. On August 27, 2026, Plaintiffs sent Apple an initial list of 11 exemplar False Negative documents that they had identified in their initial review of the TAR Sample. A copy of that email is attached as **Exhibit A**.

12. On August 28, 2026, Plaintiffs met and conferred with Apple to discuss their initial findings from their review of Sample 1. During that meet and confer, Plaintiffs expressed concern that their review to-date suggested that the TAR was not working. Apple did not dispute the responsiveness of the 11 exemplar documents and volunteered to use these documents to "retrain" the model.

13. However, Apple did not specify how many documents were used in the initial training set, and would not agree to re-review or consider re-coding any documents from the initial training. Apple would similarly not commit to using future False Negatives identified by Plaintiffs to retrain the model.

14. Separately, Apple noted that it would refit its TAR model to accommodate Judge Bariso's August 18, 2026 decision, which modified the scope of relevance in several ways.

15. On September 3, 2026, Plaintiffs emailed Apple, attaching a list identifying hundreds of additional examples of False Positives and False Negatives from Sample 1. This list identified that 1,144 of the 2,494 documents scoring above the cutoff in Sample 1 were actually nonresponsive. Plaintiffs noted that these rates of False Positives and False Negatives suggested Apple's TAR Model was not achieving the 75% recall rate required by the TAR Order. A copy of Plaintiffs' September 3 email is attached as **Exhibit B**.

16. In their September 3 email, Plaintiffs also proposed a joint retraining of the TAR model as follows:

a. Apple discloses the set of training documents it used to train the TAR 1.0 model, along with how each document was coded by each reviewer, and how the model scored these documents independent of the review, as well as whether it either (a) confidently predicted the document was responsive, (b) confidently predicted the document was not responsive or (c) was uncertain or the prediction was borderline. Apple would disclose if any documents used to train the model have been withheld/redacted for privilege, UAP, etc.

b. Apple discloses the full distribution of scores for the model and the cutoff score.

c. Apple discloses how the model scored each of the documents in the sample sets, as well as whether it either (a) confidently predicted the document was responsive, (b) confidently predicted the document was not responsive or (c) was uncertain or the prediction was borderline.

d. Apple allows Plaintiffs to recode incorrectly coded training documents (both false negatives and false positives).

e. Apple allows Plaintiffs to add documents to the training set (including documents from prior productions and documents from the TAR training batches).

f. Apple agrees the parties will cooperate to iteratively improve the training set if it contains many near-duplicate documents that threw off the weights.

g. Apple and Plaintiffs continue this process until the model achieves a Recall rate of at least 75% (where the lower bound on the confidence interval is 75%, ensuring a minimum recall of 75%.

h. Apple Agrees that, after the model is trained, Plaintiffs will have a final opportunity to QC the model using a statistically significant sample of documents.

17. On September 4, 2026, Apple agreed to meet and confer on September 9. Apple also asked Plaintiffs to provide a list specifying at least one RFP to which they believed each identified False Negative was responsive.

18. On September 8, 2026, Plaintiffs provided an initial list of 393 False Negatives along with corresponding RFPs. A copy of that email is attached as **Exhibit C**.

19. During the September 9 meet and confer, Apple did not dispute any of the False Negatives or False Positives Plaintiffs had identified. But Apple told Plaintiffs it did not agree to Plaintiffs' proposed joint retraining proposal and would not use any of the False Negatives or False Positives identified on September 3 to retrain the model, despite Plaintiffs again advising that the trend in False Negatives and False Positives in Sample 1 clearly raised a question about the recall rate for Apple's TAR model.

20. Instead of discussing the recall rate or how to ensure compliance with the TAR Order's 75% recall requirement, Apple said the parties should instead focus on a different issue: Conceptual Diversity, and that Plaintiffs should now identify categories of documents that appear in the documents below the TAR Cutoff but do not appear in documents scoring above the cutoff. Apple also said that, if it did any retraining on this basis, it would not provide Plaintiffs with any samples to validate that retraining.

21. On September 14, 2026, Plaintiffs provided Apple with an updated list of examples of False Negatives and False Positives, including 508 additional examples of False Negatives (along with corresponding RFPs). In that same email, Plaintiffs informed Apple that the False Negative and False Positive rates they had identified in Sample 1 indicated that Apple's TAR model was not achieving the required 75% recall rate, and that Plaintiffs would raise the dispute to Judge Hedges. A copy of that email is attached as **Exhibit D**.

22. Plaintiffs' review of the documents from Sample 1 continues. At the time of this writing, Plaintiffs have identified hundreds of additional examples of apparent False Negatives, which Plaintiffs are in the process of verifying.

23. The False Negatives and False Positives Plaintiffs have identified to Apple include the following, copies of which are attached:

a. Bates Number SAMPLE-APLMDL_00069455 (Exhibit E).

b. Bates Number SAMPLE-APLMDL_00031305 (Exhibit F).

c. Bates Number SAMPLE-APLMDL_00037631 (Exhibit G).

d. Bates Number SAMPLE-APLMDL_00039384 (Exhibit H).

e. Bates Number SAMPLE-APLMDL_00203549 (Exhibit I).

f. Bates Number SAMPLE-APLMDL_00171328 (Exhibit J).

g. Bates Number SAMPLE-APLMDL_ 00073162 (Exhibit K).

h. Bates Number SAMPLE-APLMDL_00173088 (Exhibit L).

I declare under penalty of perjury that the foregoing is true and correct.

*/s/ Jennifer R. Scullion* Dated: September 15, 2026

Jennifer R. Scullion
SEEGER WEISS LLP
55 Challenger Rd., 6th Floor
Ridgefield Park, NJ 07660
Tel: 973.639.9100
jscullion@seegerweiss.com