**From:** Frazar Thomas
**To:** "Apple-SmartphoneMDL-External@groups.gibsondunn.com"
**Cc:** "Apple All Plaintiffs"; "Sullivan, Connor S."; "Lo, Jason"; "*jkleinbrodt@gibsondunn.com"; "Rose, Joseph R."; "Rho, Jennifer"; "*banderson@gibsondunn.com"; "KELLOGG-APPLEWATCH-MDL-EXTERNAL"; "ML Apple Watch"; "KT-AppleWatch-MDL"; "Snoddon, Emily M."; "Bryant, Tracie L."; "Johnson, Rachel (ATR)"; "Strong, Curtis (ATR)"; "Mayther, Nolan (ATR)"; "applenjteam@law.njoag.gov"; "*LWalsh@walsh.law"; "*LMalakoff@walsh.law"; "darpert@walsh.law"
**Subject:** iPhone Antitrust Litig. - Plaintiff Review of TAR Samples
**Date:** Thursday, September 3, 2026 9:01:00 PM
**Attachments:** 9.3.2026 List of Miscoded Documents from First TAR Sample.xlsx
image001.png
image002.png

---

Counsel,

This follows on our recent August 28 meet and confer session concerning Apple's TAR 1.0 model.

As you know, prior to the session, we provided Apple with several examples of documents from the first TAR testing sample batch that Apple's model scored below the cutoff for production, but that plainly should have been scored above the cutoff. Apple agreed each of the examples was a responsive document. It also confirmed that the TAR_Responsiveness metadata tag reflected the independent score each document received, and so the scores in the sample set were not impacted by, for example, the responsiveness score of family members, or whether duplicates had already been produced. Apple also stated that the first sample did not take into account changes in the scope of discovery caused by the Court's August 18th order.

Plaintiffs also pointed out that some documents marked as "not responsive" by Apple's TAR model are in conflict with already-produced documents—which would have only been produced because Apple's manual review had deemed those documents as responsive—which suggests either gaps in the training set or issues with the training set. Plaintiffs asked Apple if the training set included any already-produced documents. Apple stated that it did not know the answer to this question.

Apple proposed to "retrain" its model by adding the examples we provided to the training set as responsive documents. Apple also stated it would account for the change in scope caused by this Court's August 18th order, but did not provide details on how it would do so. But Apple said it was not committing to retrain based on any additional documents Plaintiffs may identify from TAR testing batches, even if those documents are responsive. Nor would Apple commit to re-coding any of the documents already used to train its model. And Apple would not tell Plaintiffs what criteria (if any) Apple was using to determine which documents would or would not be used to "retrain" its model. And the proposed "retraining" would be done (as with the original "training" of the model) by Apple without any transparency to Plaintiffs. For example, Plaintiffs still do not know the size or composition of the training sets, let alone whether documents Plaintiffs identify from the TAR testing batches are similar to documents included in the training sets (or, if so, whether Apple's trainers marked such documents as responsive). And while this retraining would occur simultaneously with our meet and confers, Apple could not specify which subsequent sample batches would reflect this retraining. The second sample, produced on August 31, does not reflect any retraining. Without any of this information, it is impossible for Plaintiffs to evaluate Apple's retraining proposal.

Apple's TAR 1.0 model is fatally flawed, but Plaintiffs do not agree to Apple's approach to "retrain" the model (a) without transparency and (b) based on Apple's unilateral decision about whether and when to include documents in any "retraining." Plaintiffs' ongoing review of just the first TAR testing batch is yielding substantial numbers of both False Negatives (documents scored below the cutoff that plainly are actually responsive) and False Positives (documents scored above the cutoff that are plainly are actually not responsive at all).

Specifically, even though Plaintiffs have not yet reviewed the entirety of the first sample, Plaintiffs have identified 1,104 False Negatives from the 21,439 documents in the first TAR testing sample that Apple said were scored below the cutoff that appear to be relevant and 1,144 False Positives from the 2,494 documents in the first TAR testing sample that Apple said were scored above the cutoff that appear to be irrelevant. These are detailed in the attached lists. We are available to meet and confer to discuss any individual responsiveness calls that Apple believes are incorrect.

Our review of the documents coded above the cutoff score was especially concerning. After a full review of the approximately 2,494 documents with TAR_Responsive metadata tags in Apple's initial sample production, 1,144 were nonresponsive—45% of the sample. Many of the documents in the sample were not just nonresponsive, they were completely, obviously irrelevant, like restaurant menus, lunch orders, and irrelevant conversations in foreign languages. *See, e.g.,* SAMPLE-APLMDL_00038868, SAMPLE-APLMDL_00173088, SAMPLE-APLMDL_0010346. As Apple confirmed during our meet and confer, these documents were all scored independently by the TAR model. Coupled with the highly relevant documents we see in the null set, this suggests that Apple's TAR model is fundamentally misaligned, and that if Apple uses it to produce documents, an unacceptable number of relevant documents will be withheld.

These initial findings represent what we have found to date--we expect to find more False Negatives and False Positives. However, even the current findings suggest that Apple's TAR model has a Precision rate below the 90% Apple has represented and a Recall rate below the 75% Apple has represented (and which Apple is required to meet under the August 7 Order). This suggests that the flaws in the TAR model are not ones that can be addressed through the kinds of tweaks that Apple anticipates making. Nor can they be addressed without Plaintiffs' input, given Apple's incredible position that this model was "working well." Instead, the model needs to be fundamentally retrained, with Plaintiffs' active participation, to attain an accuracy rate that will not prejudice Plaintiffs.

What is being revealed from Plaintiffs' review of the TAR testing batches is exactly what Plaintiffs feared—and what the ESI protocol was designed to try to avoid by requiring the parties to negotiate a TAR protocol before a party designed and implemented any TAR model. Plaintiffs maintain their position that Apple could have simply complied with Judge Hedges' original order without unilaterally stacking a black box TAR 1.0 model on top of search terms. Nevertheless, Plaintiffs are willing to continue with a stacked TAR 1.0 model on the following conditions:

- Apple discloses the set of training documents it used to train the TAR 1.0 model,

along with how each document was coded by each reviewer, and how the model scored these documents independent of the review, as well as whether it either (a) confidently predicted the document was responsive, (b) confidently predicted the document was not responsive or (c) was uncertain or the prediction was borderline. Apple would disclose if any documents used to train the model have been withheld/redacted for privilege, UAP, etc.

- Apple discloses the full distribution of scores for the model and the cutoff score.
- Apple discloses how the model scored each of the documents in the sample sets, as well as whether it either (a) confidently predicted the document was responsive, (b) confidently predicted the document was not responsive or (c) was uncertain or the prediction was borderline.
- Apple allows Plaintiffs to recode incorrectly coded training documents (both false negatives and false positives).
- Apple allows Plaintiffs to add documents to the training set (including documents from prior productions and documents from the TAR training batches).
- Apple agrees the parties will cooperate to iteratively improve the training set if it contains many near-duplicate documents that threw off the weights.
- Apple and Plaintiffs continue this process until the model achieves a Recall rate of at least 75% (where the lower bound on the confidence interval is 75%, ensuring a minimum recall of 75%.
- Apple Agrees that, after the model is trained, Plaintiffs will have a final opportunity to QC the model using a statistically significant sample of documents.

Please let us know if Apple is able to meet and confer tomorrow, Friday September 4, at 1pm ET to discuss this proposal. If the parties are unable to come to agreement on the concerns Plaintiffs have about the TAR model and the requested relief, Plaintiffs will submit the dispute to Judge Hedges.

Thank you,
Fraz

SEEGER WEISS LLP

**Frazar Thomas**
Associate
P: 215-553-7990
FThomas@SeegerWeiss.com