# EXHIBIT B

GIBSON DUNN

Cynthia Richman
Partner
T: +1 202.955.8234
M: +1 202.701.3424
crichman@gibsondunn.com

July 13, 2026

Ouraring Inc.
415 Kearny St., FL 2
San Francisco, CA, 94108

Re: *United States v. Apple Inc.*, No. 2:24-cv-04055-JXN-LDW (D.N.J.) and In re: Apple Inc. Smartphone Antitrust Litigation, No. 2:24-md-3113-JXN-LDW (D.N.J.)

Counsel:

Attached please find an amended subpoena issued to Ouraring Inc., in connection with the above-referenced matters. The subpoena must be responded to within thirty days, as specified in the subpoena. For administrative clarity, two subpoena forms—one for *United States v. Apple Inc.*, No. 2:24-cv-04055-JXN-LDW (D.N.J.) ("DOJ Action") and another for *In re: Apple Smartphone Antitrust Litigation*, No. 2:24-md-03113-JXN-LDW (D.N.J.) ("MDL")—are enclosed to indicate that the subpoena is being issued in both actions, but Apple requires only one response. Accompanying the subpoena you will find a Schedule A, which includes document requests as well as applicable definitions and instructions for compliance. As described in the instructions and as directed by the Court's scheduling orders in both matters, you are requested, among other things, to stamp each document with a production number and to produce documents in accordance with the ESI Protocol entered in the DOJ Action and the Discovery Confidentiality Order entered in both matters. *See* DOJ Action Pretrial Scheduling Order, ECF No. 270, at 4; MDL Scheduling and Case Management Order, ECF 142 at 11 (the MDL court has not yet entered a separate ESI order). For your convenience, a copy of the ESI Protocol in the DOJ Action is attached to Schedule A of the subpoena as Exhibit E, and copies of the Discovery Confidentiality Orders in the DOJ Action and MDL are attached as Exhibits F and G, respectively.

Thank you for your prompt attention to this matter.

Sincerely,

*/s/ Cynthia E. Richman*

Cynthia E. Richman

cc: All Counsel of Record

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of New Jersey

| | | |
|---|---|---|
| United States of America, et al. *Plaintiff* | ) | Civil Action No. 2:24-cv-04055 (JXN-LDW) |
| v. | ) | |
| Apple Inc. *Defendant* | ) | |

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION**

To: Ouraring Inc.
415 Kearny St., FL 2, San Francisco, CA, 94108

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Schedule A (attached)

| Place: | Date and Time: |
|---|---|
| Gibson, Dunn & Crutcher LLP<br>One Embarcadero Center<br>San Francisco, CA 94111 | 08/12/2026 11:59 pm |

❒ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 07/13/2026

*CLERK OF COURT*

OR

/s/ Cynthia E. Richman

*Signature of Clerk or Deputy Clerk* — *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Apple Inc. , who issues or requests this subpoena, are:

Cynthia E. Richman, Gibson, Dunn & Crutcher LLP, 1700 M Street, N.W. Washington, DC 20036, crichman@gibsondunn.com, (202) 955-8234

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Civil Action No. 2:24-cv-04055 (JXN-LDW)

**PROOF OF SERVICE**

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)***

I received this subpoena for *(name of individual and title, if any)* ____________________

on *(date)* ____________ .

❒ I served the subpoena by delivering a copy to the named person as follows: ____________________

____________________________________________

____________________________ on *(date)* ____________ ; or

❒ I returned the subpoena unexecuted because: ____________________

____________________________________________ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ ____________ .

My fees are $ ____________ for travel and $ ____________ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: ____________

____________________________________________
*Server's signature*

____________________________________________
*Printed name and title*

____________________________________________
*Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** ***For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
**(i)** is a party or a party's officer; or
**(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** ***For Other Discovery.*** A subpoena may command:
**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** ***Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** ***Command to Produce Materials or Permit Inspection.***
**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
**(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** ***Quashing or Modifying a Subpoena.***
**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
**(i)** fails to allow a reasonable time to comply;
**(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
**(iv)** subjects a person to undue burden.
**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
**(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** ***Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** ***Claiming Privilege or Protection.***
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
**(i)** expressly make the claim; and
**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of New Jersey

In re: Apple Inc. Smartphone Antitrust Litigation
*Plaintiff*
v.

*Defendant*

Civil Action No. 2:24-md-3113 (JXN-LDW)

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: Ouraring Inc.
415 Kearny St., FL 2, San Francisco, CA, 94108

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Schedule A (attached)

| Place: Gibson, Dunn & Crutcher LLP<br>One Embarcadero Center<br>San Francisco, CA 94111 | Date and Time:<br>08/12/2026 11:59 pm |
|---|---|

❐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 07/13/2026

*CLERK OF COURT*

OR

*Signature of Clerk or Deputy Clerk*

/s/ Cynthia E. Richman
*Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Apple Inc., who issues or requests this subpoena, are:

Cynthia E. Richman, Gibson, Dunn & Crutcher LLP, 1700 M Street, N.W. Washington, DC 20036, crichman@gibsondunn.com, (202) 955-8234

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Civil Action No. 2:24-md-3113 (JXN-LDW)

## PROOF OF SERVICE

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)***

I received this subpoena for *(name of individual and title, if any)* ______________________________
on *(date)* ____________ .

❒ I served the subpoena by delivering a copy to the named person as follows: ____________________
______________________________________________________________________
________________________________________ on *(date)* ______________ ; or

❒ I returned the subpoena unexecuted because: ______________________________
______________________________________________________________________ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of
$ ______________ .

My fees are $ ____________ for travel and $ ____________ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: ____________

______________________________
*Server's signature*

______________________________
*Printed name and title*

______________________________
*Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** ***For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
**(i)** is a party or a party's officer; or
**(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** ***For Other Discovery.*** A subpoena may command:
**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** ***Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** ***Command to Produce Materials or Permit Inspection.***
**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
**(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** ***Quashing or Modifying a Subpoena.***
**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
**(i)** fails to allow a reasonable time to comply;
**(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
**(iv)** subjects a person to undue burden.
**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
**(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** ***Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** ***Claiming Privilege or Protection.***
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
**(i)** expressly make the claim; and
**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

## DEFINITIONS

Unless otherwise defined, all words and phrases used herein shall be accorded their usual meaning and shall be interpreted in their common, ordinary sense. As used in the below requests for production of documents ("Requests") and the Definitions and Instructions, the words set forth below shall be defined as follows:

1. "Alleged Conduct" shall mean all (and any component of) the conduct alleged to be unlawful in the Complaints, including any alleged monopolization or attempted monopolization by Apple of the Alleged Markets. Alleged Conduct includes but is not limited to:

   a. Any alleged restrictions that Apple has placed on third-party developers' ability to offer Apps for download in the Apple App Store or in any other App Marketplace;

   b. Any alleged restrictions Apple has placed on third-party developers' access to iPhone features and development tools, including APIs and SDKs;

   c. Any alleged restrictions Apple has placed on third-party access to Apple's In-App Purchase or alternatives to In-App Purchase;

   d. Any alleged restrictions Apple has placed on products, services, Apps, or technology that allegedly facilitate users' ability to switch between iPhone and non-Apple Smartphones, or vice versa, including those described in the Complaints as middleware;

   e. Any alleged restrictions Apple has placed on interoperability concerning Smartphones or policies or practices that allegedly make it harder for consumers to switch between competing Smartphones; and

f. Any alleged restrictions Apple has placed on Super Apps, Cloud Streaming Apps, Messaging Apps, Wearables, and Digital Wallets.

2. "Alleged Markets" shall mean the product markets alleged in the Complaints, including the "Alleged Smartphone Market," the "Alleged Performance Smartphone Market," the "Alleged Smartwatch Markets," and any other product markets alleged in the DOJ Complaint or any of the MDL Complaints. The "Alleged Smartphone Market" shall be defined as Smartphone Market is defined in the Complaints, including without limitation in Paragraphs 172 through 179 of the DOJ Complaint. The "Alleged Performance Smartphone Market" shall be defined as Performance Smartphone Market is defined in the Complaints, including without limitation in Paragraphs 165 through 171 and 176 through 179 of the DOJ Complaint. The "Alleged Smartwatch Markets" shall include the alleged market for Smartwatches as defined in the Smartwatch Complaint, including in Paragraphs 143 and 152, and the alleged iOS-connected Smartwatches market as defined in the Smartwatch Complaint, including in Paragraphs 144 through 151.

3. "API" shall mean an application programming interface and shall have the same meaning as used in the Complaints, including without limitation Paragraphs 158 through 163 of the DOJ Complaint.

4. "Apple" shall mean Apple Inc. and its predecessors, wholly owned or controlled subsidiaries or affiliates, successors, parents, departments, divisions and any organization or entity managed or controlled by Apple Inc.

5. "App" or "Application" shall be defined as in the Complaints, including in Paragraphs 158 through 163 of the DOJ Complaint.

6. "App Marketplace" shall mean any online storefront where Apps are offered for download or purchase, including the Apple App Store, Amazon Appstore, Amazon Underground, Android Market, Aptoide, Blackberry World, Chrome Web Store, Epic Games Store, GetJar, Google Play Store, Microsoft Store, Origin, Samsung Galaxy Store, Steam, Windows Phone Store, Altstore, TutuApp, and online storefronts distributing games and digital content for Xbox, PlayStation, and Nintendo.

7. "App Review" shall mean Apple's or any other Person's processes of reviewing Apps or App updates for potential inclusion on App Marketplaces.

8. "Background Execution" means a software or Application's ability to continue running and updating in the background, without requiring user interaction or after the user has moved it to the background (e.g., by returning to the home screen or switching between Apps).

9. "Business" shall be defined as all actual or potential operations, services, products, technologies, activities, and business opportunities conducted or pursued by or on behalf of Oura.

10. "Cloud Streaming App" shall be defined as in the Complaints, including in Paragraphs 10 and 71 through 79 of the DOJ Complaint.

11. "Communication" shall mean any exchange or transmission of words or ideas to another Person or entity, whether accomplished Person to Person, by telephone, in writing, via electronic mail or text message, via social media, or through any other medium, and shall include discussions, conversations, negotiations, conferences, meetings, speeches, memoranda, letters, correspondence, notes, blogs, postings, statements, and questions.

12. "Companion App" shall mean any App required for the interoperability of a Wearable device, such as Garmin Connect, Wear OS by Google, Samsung Galaxy Fit (Gear Fit), Samsung Galaxy Watch (Gear S), the Withings App (formerly "Health Mate"), and the Oura App.

13. "Complaints" shall mean the DOJ Complaint and any MDL Complaint.

14. "Digital Wallet" shall be defined as in the Complaints, including in Paragraphs 10 and 104 through 118 of the DOJ Complaint.

15. "Document" shall have the full meaning ascribed to it under Rule 34 and Rule 45 of the Federal Rules of Civil Procedure and shall include Communications; memoranda; records; Reports; books; records, and summaries of personal conversations or interviews; diaries; presentations; slide decks; graphs; charts; spreadsheets; diagrams; tables; photographs; recordings; tapes; microfilms; minutes; records and summaries of meetings or conferences; press releases; blog posts; stenographic, handwritten or any other notes; work papers; checks, front and back; check vouchers, check stubs, or receipts; tape data sheets or data processing cards or discs; or any other written, recorded, transcribed, punched, taped, filmed, or graphic matter, however produced or reproduced; and any paper or writing of whatever description, including information contained in any computer although not yet printed out. The term "Document" further includes all copies where the copy is not identical to the original.

16. "DOJ Complaint" shall mean the First Amended Complaint or any future amended complaints against Apple filed by the United States Department of Justice, several states, and the District of Columbia in the United States District Court for the District of New Jersey on June 11, 2024 (Case No. 2:24-cv-04055, Dkt. No. 51), which is attached hereto as Exhibit A.

17. "Government Action" means *United States of America v. Apple, Inc.*, No. 2:24-cv-4055-JXN-LDW (D.N.J.).

18. "Identified Products or Services" means each product or service within one or more of the following categories: Cloud Streaming Apps, Super Apps, Messaging Apps, Digital Wallets, and Wearables.

19. "In-App Purchase" shall mean the purchase of features or functionality within an App, processed through the purchasing framework provided by the App Marketplace provider (e.g., Apple's In-App Purchase, Google Play's Billing System).

20. "Including," "included," "includes," and "include" shall not be construed as limiting any Request, and shall mean the same as "including, but not limited to."

21. "Low Power Mode" shall mean a feature designed to extend battery life by reducing power consumption.

22. "MDL Complaint" shall mean any of the consolidated complaints in any actions coordinated as part of *In re Apple Inc. Smartphone Antitrust Litigation*, No. 24-MD-3113 (D.N.J.), including the Direct iPhone Purchaser Plaintiffs' Consolidated Class Action Complaint (Dkt. No. 87) filed on July 30, 2025, attached hereto as Exhibit B; the Indirect iPhone Purchaser Plaintiffs' Corrected Consolidated Class Action Complaint (Dkt. No. 109) filed on September 11, 2025, attached hereto as Exhibit C; and the Direct Apple Watch Purchaser Plaintiffs' First Amended Class Action Complaint (Dkt. No. 86) ("Smartwatch Complaint") filed on July 30, 2025, attached hereto as Exhibit D.

23. "Messaging App" shall be defined as in the Complaints, including in Paragraphs 10 and 80 through 93 of the DOJ Complaint, and shall include Beeper Mini, BlueChat, Discord, Facebook Messenger, Google Messages, Skype, Microsoft Messaging, Signal, Slack, Snapchat, Teams, Telegram, Texts, Viber, WhatsApp, and Apple's Messages App.

24. "Operating System" or "OS" means the software that coordinates and manages the hardware and software on a computer, mobile, or Wearable device. iOS and Android are examples of mobile operating systems.

25. "Performance Smartphone" shall be defined as in the Complaints, including in Paragraphs 165 through 171 of the DOJ Complaint.

26. "Person" shall mean any natural individual, partnership, corporation, company, association, organization, joint venture, government, agency, or entity.

27. "Premium Subscription Services" shall mean any paid subscription service offered by You in connection with Your Wearables, Your Companion Apps, or Your Sister Apps.

28. "Report" shall mean any reports, research, papers, memoranda, presentations, reviews, statistical compilations, or other analyses.

29. "SDK" shall mean Apple's Software Development Kit.

30. "Sister App" shall be defined as in the Smartwatch Complaint, including in Paragraph 34 of the Smartwatch Complaint, and shall include any App that is designed to communicate with the same or similar App installed on a Wearable device.

31. "Smartphone" shall be defined as in the Complaints, including in Paragraphs 148 through 163 of the DOJ Complaint.

32. "Super App" shall be defined as in the Complaints, including in Paragraphs 10 and 60 through 70 of the DOJ Complaint.

33. "Use Rates" shall be defined as data sufficient to identify number of downloads and total amount paid for such downloads, number of active users, average time per user per day with App in the foreground, average amount spent and number of transactions per user on In-App Purchases, and number and share of users making In-App Purchases.

34. "Wearables" shall include but not be limited to any existing or contemplated "Smartwatch" as that term is defined in the Complaints, including in Paragraphs 10 and 94 through 103 of the DOJ Complaint, fitness trackers, smart rings, and smart glasses. For the avoidance of

doubt, the term "Wearables" includes any smart ring product contemplated, manufactured, sold, or offered for sale by Oura, including the Oura Ring Gen1, Gen2, and Gen3, Oura Ring 4, Oura Ring 4 Ceramic, and Oura Ring 5 smart rings.

35. "Oura," "You," and "Your" shall mean Ouraring Inc. and any of its officers, directors, employees, representatives, consultants, agents, accountants, and any other Person acting on its behalf, as well as Ouraring Inc.'s predecessors, successors, parents, and subsidiaries, and each of their predecessors, successors, parents, and subsidiaries; departments and divisions of Ouraring Inc.; and any Person that Ouraring Inc. manages or controls. For the avoidance of doubt "Oura," "You," and "Your" shall include Oura Health Oy.

36. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these Requests all Documents, Communications, materials, or responses that might otherwise be construed to be outside of its scope.

37. The terms "any," "each," and "all" are mutually interchangeable and are meant to encompass each other.

38. The terms "concerning," "reflecting," "regarding," and "related to" mean in whole or in part, concerning, reflecting, regarding, related to, relating to, in connection with, involving, supporting, addressing, analyzing, constituting, containing, commenting on, discussing, describing, identifying, referring to, reporting on, stating, dealing with, or in any way pertaining or bearing a logical connection to.

39. The use of the singular form of any word includes the plural and vice versa as necessary to bring within the scope of the Request all responses that might otherwise be construed to be outside of its scope.

40. The use of the feminine form of any word includes the masculine form and vice versa as necessary to bring within the scope of the Request all responses that might otherwise be construed to be outside of its scope.

41. The past tense shall be construed to include the present tense and vice versa as necessary to bring within the scope of the Request all responses that might otherwise be construed to be outside of its scope.

## INSTRUCTIONS

1. All Documents should be produced in electronic form in accordance with the Electronically Stored Information ("ESI") Protocol attached hereto as Exhibit E.

2. For purposes of interpreting or construing the scope of these Requests, the terms used shall be given the most expansive and inclusive interpretation, unless specifically limited in the Request.

3. All Documents requested herein must be produced in their entirety, with all attachments and enclosures.

4. In responding to these Requests, You shall produce all Documents in Your possession, custody, or control, and all Documents reasonably available to You, including those in the possession, custody, or control of any Person acting on Your behalf.

5. These Requests shall not be deemed to call for identical hash duplicates (e.g., MD5, SHA-256, or other industry standard) of Documents. "Identical" means precisely the same in all respects; for example, a Document with handwritten notes or editing marks shall not be deemed identical to one without such notes or marks. Additionally, for Documents with attachments, the hash value shall be generated based on the parent/child document grouping. Otherwise identical Documents with unique family members are not identical, and both must be produced. You shall

produce as a separate Document any Document that contains any notation, addition, insertion, or marking of any kind that renders it not entirely identical to a version of that Document without such marks.

6. If there are no Documents responsive to a category in these Requests, You shall so state in writing.

7. If You object to a portion of any Request, You shall state the legal and factual basis for Your objection with specificity and respond to all parts of the Request to which You do not object.

8. If You encounter any ambiguity in the Requests, in a definition, or in an instruction relevant to the Requests, explain what You find to be ambiguous and what construction You used in providing Your response. If You contend that You do not understand the definition of any term or phrase used in a Request, You shall explain in detail what it is that You do not understand about the term or phrase at issue, and You shall respond to that part of the Request that You do understand.

9. If You object to any Request on the grounds that responding is unduly burdensome, describe the undue burden.

10. If You contend that any part of a Request is overbroad, You shall explain in detail why it is that You consider that part of the Request to be overbroad, and You shall produce Documents in response to the remainder of the Request that You do not consider to be overbroad.

11. In producing Documents responsive to these Requests, You must Bates stamp them in a manner that clearly identifies that each such Document has been produced by You.

12. If any requested Document is withheld on the basis of any claim of privilege, You must set forth the information necessary for Apple to ascertain whether the privilege properly

applies, including all information identified in Paragraph IV.1 of the ESI Protocol attached hereto as Exhibit E.

13. All productions shall be governed, as applicable, by the Discovery Confidentiality Orders attached hereto as Exhibits F and G.

14. If any portion of any Document responsive to these Requests is withheld under claim of privilege, all non-privileged portions must be produced with the portion(s) claimed to be privileged redacted and logged in a privilege log pursuant to the preceding instructions.

15. In searching for and producing Documents responsive to these Requests, You shall use a reasonable time period to be agreed upon with Apple in advance of productions.

16. Specified date ranges are inclusive. Unless otherwise stated, a year includes all days of that year from and including January 1 to and including December 31.

17. To the extent required by the Federal Rules of Civil Procedure and applicable case law, these Requests are continuing and require further and supplemental production if additional Documents are received, generated, or discovered after the time of the original production. If after responding to these Requests, You obtain or become aware of any additional Documents that are directly or indirectly responsive to any part of any of these Requests, You shall promptly produce any additional responsive Documents.

18. Apple serves these Requests without prejudice to its right to serve additional requests for production of Documents or other requests or subpoenas.

## **REQUESTS FOR PRODUCTION OF DOCUMENTS**

**REQUEST FOR PRODUCTION NO. 1:** All Documents responsive to Requests for production of Documents served by any party in the Government Action or the MDL.

**REQUEST FOR PRODUCTION NO. 2:** All Documents reflecting or concerning Your Communications with any third party (including any third party's counsel) regarding government antitrust litigation against Apple, or regulation, legislation, or public debate relating to Apple's policies or practices.

**REQUEST FOR PRODUCTION NO. 3:** Documents sufficient to show the features, functionality, and technical specifications of each of Your Wearables, including battery life and power management; product lifespan; health and biometric sensors and related algorithms; artificial intelligence features (such as the Oura Advisor); and methods of connecting to and exchanging data with Smartphones (including through Bluetooth, Wi-Fi, and Apple Wireless Direct Link).

**REQUEST FOR PRODUCTION NO. 4:** Documents sufficient to show any efforts to develop, maintain, or improve functionality of Your Wearables when paired with iPhone or non-Apple Smartphones.

**REQUEST FOR PRODUCTION NO. 5:** Documents sufficient to show for each of Your Wearables from its inception to the present:

a. the launch date;

b. the discontinuation date (if applicable);

c. the total number, on a monthly basis, of each model connected to each Smartphone Operating System;

d. the initial price, any subsequent price changes, and terms of sale (including rebates, fees, promotions, discounts, and financing), with all changes and discounts time-stamped;

e. the annual revenue, sales volume (number of units), profits, variable costs, and associated fixed costs, including annual profit and loss statements;

f. the annual development costs, including presentations or correspondence regarding these costs; and

g. the monthly revenue, by Operating System of the Smartphone to which Your Wearable model is connected.

**REQUEST FOR PRODUCTION NO. 6:** Documents, including profit and loss statements and financial Reports, sufficient to show, by Smartphone Operating System:

a. the annual revenue, profits, variable costs, and fixed costs associated with downloads and In-App Purchases of each of Your Companion Apps, from the inception of each App to the present;

b. the annual revenue, profits, variable costs, and fixed costs associated with subscriptions;

c. the annual development costs associated with each of Your Companion Apps, from the inception of each App to the present; and

d. the annual revenue, profits, variable costs, and fixed costs associated with Your Premium Subscription Services.

**REQUEST FOR PRODUCTION NO. 7:** All Documents concerning Your decision to develop, launch, or discontinue the development or sale of any Wearable or Companion App (including Companion Apps for Wearables), including any market research or competitive intelligence related to those decisions.

**REQUEST FOR PRODUCTION NO. 8:** All Documents concerning any forecast or analysis of demand, pricing, or competition for any Wearable or Companion App.

**REQUEST FOR PRODUCTION NO. 9:** Documents sufficient to identify all Companion Apps for iOS and Android that are compatible with Your Wearables.

**REQUEST FOR PRODUCTION NO. 10:** Documents sufficient to show monthly Use Rates for each of Your Companion Apps (including iOS, Android, and Wearables Companion Apps) by (a) Wearable model; (b) Operating System of the Smartphone to which Your Wearable is connected; (c) App Marketplace; and (d) country.

**REQUEST FOR PRODUCTION NO. 11:** All Documents concerning the interoperability of Your Wearables, Your Wearables' embedded firmware, or Your Companion Apps with iOS and Android, including any differences between iOS and Android interoperability.

**REQUEST FOR PRODUCTION NO. 12:** All Documents concerning the interoperability of Your Wearables, Your Wearables' embedded firmware, or Your Companion Apps with the Apple Health App, Google Health Connect, and other health data aggregation Sister Apps (e.g., Guava, FitnessSyncer, etc.).

**REQUEST FOR PRODUCTION NO. 13:** All Documents concerning Background Execution on Smartphones, including comparisons of Background Execution time on iPhones and Android Smartphones, changes to Background Execution time on iPhone and Android Smartphones, and the impact of Background Execution time or any Smartphone's Low Power Mode on the operation of Your Apps and Your Wearables.

**REQUEST FOR PRODUCTION NO. 14:** All Documents concerning the ability of users of Your Wearables to find Companion Apps and Sister Apps for Your Wearables on the Apple App Store and any non-Apple App Marketplace.

**REQUEST FOR PRODUCTION NO. 15:** Documents sufficient to show price-setting, licensing terms or conditions, pricing plans, and pricing strategies for Your Wearables.

**REQUEST FOR PRODUCTION NO. 16:** All Documents related to competition concerning Wearables offered by You or any Person, including:

a. competition with Apple, including any analysis of product substitution between Apple Watch and other Wearables, or any analysis of the extent to which consumers consider the Apple Watch and other Wearables to be viable alternatives;

b. relative quality or features, including technology, performance, privacy, security, user experience, brand strength, customizability, ability to integrate with or interoperate with other hardware or software, network effects, and cost;

c. entry, expansion, exit, scale, and repositioning;

d. market segmentation by geography, type of consumer, Wearable type, Wearable features, sales channel, compatibility with a certain Smartphone Operating System, or Wearable price or price band;

e. competitive positioning and differentiation;

f. sales volumes, revenue, and profitability;

g. installed base;

h. market shares, segment shares, or relative sales or volume shares; and

i. competitive threats, disintermediation, and commoditization.

**REQUEST FOR PRODUCTION NO. 17:** All Documents concerning any disruption, outage, connectivity failure, or syncing error affecting Your Wearables, Companion Apps, or Sister Apps caused by or following any iOS or Android Operating System update, including any comparison of the frequency or severity of such issues between iOS and Android.

**REQUEST FOR PRODUCTION NO. 18:** All Documents concerning the effect, if any, of "force-quitting" or closing the Oura Companion App on syncing or Background Execution between the Oura Ring and a connected Smartphone.

**REQUEST FOR PRODUCTION NO. 19:** All Documents concerning any impact, including in terms of customer usage, customer engagement, security, privacy, ease of use, distribution, marketing, market growth, consumer interest, or ability to innovate, that iPhone, Apple Watch, Apple Health, HealthKit, the Apple App Store, Apple App Review, or Apple have had on Your Apps, Your Wearables, or Your Business, including any analysis or quantification of any such impact.

**REQUEST FOR PRODUCTION NO. 20:** All Documents concerning any impact, including in terms of customer usage, customer engagement, security, privacy, ease of use, distribution, marketing, market growth, consumer interest, or ability to innovate, that non-Apple Smartphones, Wearables, App Marketplaces, or App Review have had on Your Apps, Your Wearables, or Your Business, including any analysis or quantification of any such impact.

**REQUEST FOR PRODUCTION NO. 21:** All Documents concerning the relationship, if any, between a consumer's choice of Smartphone and that consumer's purchasing behavior as to Wearables and Oura subscriptions, including the extent to which a Wearable's compatibility with different Smartphone Operating Systems impacts consumer purchasing behavior and the extent to which consumers consider Wearables when deciding which Smartphone to purchase, or vice versa.

**REQUEST FOR PRODUCTION NO. 22:** All Documents concerning the relationship between a consumer's ownership or purchase of a Smartwatch and that consumer's ownership or purchase of Your Wearables, including: (a) the rate at which purchasers of Your Wearables also

own a Smartwatch; and (b) whether Your Wearables are purchased as a complement to or a substitute for a Smartwatch.

**REQUEST FOR PRODUCTION NO. 23:** All Documents related to user switching between Wearables or any models thereof (e.g., switching between Your Wearables and the Apple Watch and vice versa, switching between Your Wearables and other non-Apple Wearables and vice versa, switching between models of Your Wearables, or switching from one of Your Wearables to another of Your Wearables, etc.), including Documents related to the following topics as they concern switching between Wearables:

a. the ease or difficulty of switching;

b. the costs of switching;

c. the relationship between the cost or difficulty and likelihood of switching;

d. customer loyalty or churn;

e. tools and support services available for switching;

f. the duration of time between switching (e.g., how long a user has used an Apple Watch before switching to a non-Apple Wearable);

g. consumer views about switching, including the specific reasons for switching;

h. the availability and performance of complementary products and services (such as the Identified Products or Services), including any changes thereto;

i. relative ease or difficulty of switching depending on users' brand of Smartphone; and

j. any products, services, initiatives, or partnerships that facilitate switching (including from Apple Watch to Your Wearables, and vice versa).

**REQUEST FOR PRODUCTION NO. 24:** All Documents concerning switching between iPhone and non-Apple Smartphones among consumers of Your Wearables, including any

Documents discussing the extent to which the Wearables brand selected by consumers impacts their ability to switch between iPhone and non-Apple Smartphones.

**REQUEST FOR PRODUCTION NO. 25:** All Documents concerning the security, privacy, and reliability of Your Wearables and Companion Apps, including:

a. any risks, vulnerabilities, or incidents associated with their use, including any comparisons of such risks when paired with or operating on iPhone versus non-Apple Smartphones;

b. Your efforts to design, implement, maintain, or improve security, privacy, or reliability protections, including encryption of data;

c. policies, guidelines, or agreements governing third-party developers;

d. technical mechanisms or safeguards incorporated into Your Wearables' embedded firmware designed to protect user privacy, device security, or reliability;

e. any analyses or comparisons of the security, privacy, or reliability of other Wearables; and

f. any competitive advantages or disadvantages Your Wearables have due to Your Wearables' embedded firmware or Your Companion Apps.