WALSH
PIZZI
O'REILLY

**THREE GATEWAY CENTER**
100 Mulberry Street, 15th Floor
Newark, NJ 07102
T: 973.757.1100
F: 973.757.1090
**WALSH.LAW**

Liza M. Walsh
Direct Dial: (973) 757-1100
lwalsh@walsh.law

**VIA ECF** November 18, 2026

Honorable Leda Dunn Wettre, U.S.M.J.
U.S. District Court for the District of New Jersey
Martin Luther King Jr. Bldg. & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07102

**Re:** ***In re: Apple Inc. Smartphone Antitrust Litigation***
**Civil Action No. 2:24-md-03113-JXN-LDW (MDL 3113)**

**Apple's Response Regarding Watch Plaintiff's Request for Documents from the Causeway Document Repository**

Dear Judge Wettre:

This firm, together with Gibson, Dunn & Crutcher LLP, represents Defendant Apple Inc. ("Apple"). Apple respectfully submits this letter brief in response to Watch Plaintiff's request for documents from the Causeway Document Repository ("Causeway") (Dkt. 461).

Watch Plaintiff asks the Court to order Apple to collect and produce documents from a repository that belongs to the Connectivity Standards Alliance ("CSA"), not to Apple. But Apple's member access does not authorize Apple to collect and produce these documents. And the request also fails on relevance, burden, and proportionality grounds. The CSA develops standards for smart-home devices—technologies that (as the CSA itself has noted) are not part of the operative complaint, and that Special Master Bariso, in a related context, found to have at most de minimis significance to the claims and defenses here. Ex. 1 at 2; Dkt. 284 at 14. The CSA—best positioned to understand its own repository's limitations—has said Causeway cannot be searched with modern tools or reasonably exported. Ex. 1 at 2. Apple should not be assigned that burden either. Apple will have produced millions of documents from 59 custodians and additional "go-gets" that touch on every facet of this litigation, including the connectivity and interoperability topics Watch Plaintiff invokes here. Watch Plaintiff's subpoena to the CSA, which remains under negotiation, is the proper vehicle for any *relevant* and reasonably accessible CSA documents he needs; requiring Apple to search a non-party's repository is not.

## I. BACKGROUND

The CSA is a standards organization whose members include Apple and many other companies. Watch Plaintiff subpoenaed the CSA on July 24, 2026, and Apple served a follow-on subpoena on

August 26, 2026. Exs. 2, 3. Watch Plaintiff has described Causeway as a 643 GB repository "maintained and controlled by CSA," in which members "create and store files" and the CSA "also creates and stores its own files." Dkt. 428 at 1. On October 6, the CSA told the parties that Causeway "is old software which does not have a sophisticated, modern search capability," and that "there is no reasonable way for the Alliance to perform an en masse export of the Causeway data." Ex. 1 at 2. Watch Plaintiff then asked Apple to produce from Causeway, but Apple explained that the CSA "is the appropriate party to produce materials from the database." Dkt. 406 at 1. The CSA has acknowledged that there are Causeway documents "Apple cannot access," but has taken the position that Apple should produce "documents Apple can access" from Causeway, while reserving its own privilege and confidentiality review. Dkt. 428 at 2; Ex. 1 at 2.

## II. ARGUMENT

Watch Plaintiff bears the burden of showing that the documents are within Apple's "possession, custody, or control," Fed. R. Civ. P. 34(a)(1); *see Microsoft Corp. v. Softicle.com*, 2017 WL 4387376, at *7 (D.N.J. Oct. 2, 2017) (requesting party bears the burden). A party is entitled only to discovery that is relevant and proportional, not to discovery that is "unreasonably cumulative or duplicative." Fed. R. Civ. P. 26(b)(1), (b)(2)(C)(i). Watch Plaintiff fails at each step.

### A. Apple's Agreement with the CSA Does Not Authorize It To Reproduce Documents as Plaintiffs Demand.

Watch Plaintiff does not contest that the documents here are outside Apple's actual possession. But in asking Apple to nevertheless access the documents on a third-party repository and reproduce them, Watch Plaintiff would have Apple violate the Promoter Member Agreement ("PMA") and Bylaws that define Apple's relevant rights and obligations, Exs. 4, 5. The only records-related right the Bylaws confer is specific and narrow: each Promoter Member may, on written demand, inspect and copy the "books of account and minutes of the proceedings of the Board of Directors, and of any committees of the Board of Directors." Ex. 4 § 9.2. While the CSA allows members like Apple to demand certain, defined categories of records, it does not authorize members to demand the entirety of Causeway's contents. As a result, Apple has credentialed access to Causeway materials, and that access carries restrictions: the CSA's Confidentiality Policy limits use of Alliance Confidential Information to "the Alliance purpose for which it was submitted." Ex. 6; *see also* Ex. 4 § 6. Watch Plaintiff does not contend, much less show, that collecting and producing the contents of a repository that the CSA owns is "part of Apple's membership." Dkt. 406 at 1.

*Camden Iron & Metal, Inc. v. Marubeni America Corp.*, 138 F.R.D. 438 (D.N.J. 1991), does not help Watch Plaintiff. That was a case in which a parent was involved in the transaction that gave rise to the dispute and routinely furnished transaction documents to the subsidiary. *Id.* at 442–44. The court concluded that in that specific parent-subsidiary relationship, *id.* at 442—what Watch Plaintiff calls the subsidiary's "demonstrated access to documents in the ordinary course of business," Dkt. 461 at 3, was relevant to its right to obtain those documents from its parent. *Camden Iron* does not hold that credentialed access to an unaffiliated entity's system establishes control. *See In re Novo Nordisk*, 530 F. Supp. 3d 495, 498 (D.N.J. 2021) (distinguishing *Camden Iron* as a case where an "entity has been found to have control over the records of its parent,

subsidiary, or sister corporation"); *cf. Anderson-Barker v. Superior Ct.*, 31 Cal. App. 5th 528 (2019) (ability to access data in third-party databases is not possession or control under California Public Records Act). Nor does the CSA's effort to shift its burden: While Watch Plaintiff says the CSA gave Apple "its permission to reproduce" Causeway documents, Dkt. 461 at 3, the filing he cites says no such thing. To the contrary, the CSA has reserved privilege and confidentiality review of "[a]ny documents collected from Causeway," Ex. 1 at 2—confirming that it, not Apple, controls what leaves the repository. And Apple's "direct access," Dkt. 428 at 2, is just that: access, circumscribed by contractual obligations and bylaws that do not authorize the discovery Watch Plaintiff seeks.

### B. Causeway Documents Are Irrelevant.

Watch Plaintiff says Apple "does not dispute" relevance (Dkt. 461 at 2). Not so. Apple does not dispute that its own conduct toward third-party smartwatches is relevant, and it is producing documents on that subject, but Causeway is another matter. Watch Plaintiff invokes ten requests about Apple's own conduct toward third-party smartwatches. Dkt. 461 at 2; Dkt. 461-1. None mentions the CSA or standards bodies. The CSA develops standards for smart-home technologies, which the operative complaint never mentions, *see generally* Dkt. 86; Ex. 1 at 2–3. Watch Plaintiff has already tried and failed to compel Apple to produce documents related to technical connectivity with smart-home and automotive technologies. Special Master Bariso denied that request, finding that these "additional technologies not pled in the Amended Complaint are not relevant to an antitrust action centered on alleged differences between Apple's treatment of Apple Watch and its treatment of third-party smartwatches." Dkt. 284 at 14. The same reasoning should apply to a repository devoted to smart-home standards. Apple's participation in smart-home standards work does not make the CSA's repository relevant to claims about smartwatches: Watch Plaintiff's request for Causeway documents is a fishing expedition—he identifies no working group, specification, document category, or time period in Causeway that bears on any of the requests he invokes.

### C. Production from Causeway Would Be Unduly Burdensome.

By the CSA's own account, Causeway is old software with no modern search capability, and "there is no reasonable way" to perform "an en masse export of the Causeway data"; processing, hosting, and reviewing that volume "would impose a significant burden," and the universe of potentially responsive files "is not reasonably ascertainable." Ex. 1 at 2; Dkt. 428 at 2. That burden is CSA's; Watch Plaintiff may not shift it to Apple. Fed. R. Civ. P. 45(d)(1). Watch Plaintiff offers no evidence that Apple can export from Causeway more readily than the CSA can; the CSA's suggestion that Apple is "better positioned," Ex. 1 at 2, refers only to Apple's potential knowledge of where its own work resides. Watch Plaintiff cites a vendor webpage saying "Causeway makes it easy to share documents between groups and committees," Dkt. 461 at 3; that describes sharing a document with another workgroup in the ordinary course, not exporting the entire repository in litigation. Nor can Apple simply "apply the search terms and TAR model," *id.*; Watch Plaintiff acknowledged in the impasse notice that Causeway "cannot be subjected to search terms," Dkt. 428 at 1, and the CSA "has not been able to collect or run the parties' proposed search terms against Causeway," Ex. 1 at 2. Even if Apple could collect these documents, the CSA has reserved privilege and confidentiality review of anything collected, so the CSA would have to oversee

Apple's review, Ex. 1 at 2, contrary to Watch Plaintiff's assertion that "no privilege review will be necessary," Dkt. 461 at 3. Moreover, the repository may hold other members' marked confidential submissions, which third parties may obtain only by agreement with the submitting member, PMA § 6, so production could require the CSA to negotiate with those members.

**D. The Request Is Disproportionate to the Needs of the Case.**

Even if Causeway documents had some marginal relevance, compelling production here would be disproportionate to the needs of the case. Fed. R. Civ. P. 26(b)(1); see Dkt. 296 at 8 (Special Master Linares rejecting additional discovery as disproportionate where existing sources covered the same subjects). As Special Master Bariso found when denying Watch Plaintiff's request to compel production of similar smart-home technology documents, "even assuming some marginal relevance, the RFPs are not proportional to the needs of the case." Dkt. 284 at 14. Watch Plaintiff offers only a guess that Causeway documents are "likely to contain" Apple's statements about connectivity. Dkt. 461 at 2. But Apple is already producing millions of documents from 59 custodians and additional "go gets," including on each request he invokes here. Dkt. 313 at 1–2. Whatever statements Apple has made that are relevant to Watch Plaintiff's claims should be found there (and any Causeway-related document in those files that hits on search terms and is marked responsive by TAR, or located through manual review or go-get, will be produced). A separate collection from a non-party repository would be "unreasonably cumulative or duplicative," and the CSA's records can be "obtained from some other source"—the CSA itself. Fed. R. Civ. P. 26(b)(2)(C)(i). Watch Plaintiff's remedy is his pending subpoena (and impasse dispute) with the CSA. Dkt. 428.

## III. REQUESTED RELIEF

Watch Plaintiff's request should be denied. Watch Plaintiff's alternative request for an order against the CSA should be resolved in the separate impasse proceeding, Dkt. 428.

Respectfully submitted,

/s/ *Liza M. Walsh*

Liza M. Walsh

cc: All Counsel of Record (via ECF)