WALSH PIZZI O'REILLY

THREE GATEWAY CENTER
100 Mulberry Street, 15th Floor
Newark, NJ 07102
T: 973.757.1100
F: 973.757.1090
WALSH.LAW

Liza M. Walsh
Direct Dial: (973) 757-1101
LWalsh@walsh.law

**VIA ECF**

November 18, 2026

Honorable Leda Dunn Wettre, U.S.M.J.
U.S. District Court for the District of New Jersey
Martin Luther King Jr. Bldg. & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07102

**Re: *In re: Apple Inc. Smartphone Antitrust Litigation*, No. 24-md-03113-JXN-LDW (MDL 3113) – Apple's Letter Brief Regarding Apple's Second Collective Interrogatory (Dkt. 463)**

Dear Judge Wettre:

This firm, together with Gibson, Dunn & Crutcher LLP, represents Apple in this matter. Apple respectfully submits this letter brief pursuant to the Court's Order declaring impasse (Dkt. 420) on Plaintiffs' request for a protective order regarding Apple Interrogatory No. 2. *See* Dkt. 463 ("Br.").

Interrogatory No. 2 seeks basic information within each Plaintiff's possession: the identity of "each and every Apple ID" he or she has "access to, created, ha[s] used, or that is authorized to use one of [Plaintiff's] payment methods." Dkt. 463-2 at 7. Apple IDs are the individual accounts users create with Apple to access Apple services like the App Store and iCloud. Apple cannot reliably map Apple IDs to individual consumers absent confirmation from the account-holders themselves of their account information. Thus, Apple seeks Plaintiffs' Apple IDs so that it can identify Plaintiffs within existing Apple records related to the purchase and use of Apple products and services, including app downloads, subscriptions to Apple services, and device purchases.

Plaintiffs seek to withhold Apple IDs they used "only as part of their jobs" ("Business Apple IDs") or that they authorized non-parties to use with their payment methods ("Authorized Apple IDs") and impose restrictions on how Apple uses their personal Apple IDs, which they refuse to disclose otherwise. *See* Dkt. 463-8 ("Ex. G"). The Court should overrule their objections, deny their protective order request, and compel them to provide all requested Apple IDs without restriction.

## I. Plaintiffs' Apple IDs Are Relevant and Discoverable

An interrogatory may seek information "relate[d] to any matter that may be inquired into under Rule 26(b)"—that is, information related to the parties' claims and defenses that is proportional to the needs of the case. Fed. R. Civ. P. 33(a)(2); *see Wilson v. Int'l Flavors & Fragrances, Inc.*, 2010 WL 1816238, at *5 (D.N.J. May 4, 2010). Apple's Interrogatory No. 2 meets this standard.

Plaintiffs do not contest that their personal Apple IDs are relevant. Nor could they. Plaintiffs' complaints include broad allegations about switching costs, lock in, market definition, and injury that turn, in part, on how apps, subscriptions, and other digital content affect consumer behavior. *See* Dkts. 457–58. Apple is entitled to test those allegations. *See In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, 325 F.R.D. 551, 558 (E.D. Pa. 2016). Apple IDs are

necessary to do so: without them, Apple cannot reliably identify Plaintiffs in existing Apple data related to their app downloads, subscription purchases, and other relevant conduct. Plaintiffs—who are seeking Apple IDs and data for *millions* of absent class members, *see, e.g.*, Dkt. 458-1, Ex. 3, RFPs 61, 105—do not dispute these points. Instead, they offer to provide their personal Apple IDs subject to the unworkable restrictions discussed below. *See* Br. at 1; *infra* § II.

Plaintiffs object that Business Apple IDs are irrelevant and disproportionate because "information captured by a work-related Apple ID merely identifies what a named Plaintiff may have been required to download or use in the course of their employment, outside their own choices." Br. at 3. But Plaintiffs' claims are not limited to specific account types—none of the proposed classes appear to exclude purchases for business use. Indeed, iPhone purchaser classes expressly include "entities." DPP Compl. ¶ 237; IPP Compl. ¶ 235. Plaintiffs cannot seek to sue on behalf of business purchasers while contending that business-related device usage is irrelevant. Moreover, a Plaintiff may have used a Business Apple ID in connection with a business he or she started or runs, in which case the data associated with that Apple ID would reflect their own choices no less than a personal Apple ID. Or a Plaintiff may have used a Business Apple ID for both work and personal purposes. Ultimately, Plaintiffs seek damages for alleged overpayments on device purchases that, they claim, arose because Apple's alleged conduct restrains consumer purchasing decisions. So, even if a Business Apple ID was only ever used for work, the data associated with it could still be relevant: for instance, a Plaintiff may have used third-party messaging apps for work, which would undermine the allegation that Apple's conduct stifled such apps and makes it hard to switch smartphones. *See, e.g.*, IPP Compl. ¶ 118; DPP Compl. ¶ 113; Watch Compl. ¶ 66.[1]

Plaintiffs also argue that Authorized Apple IDs are irrelevant, disproportionate, and intrude on third-party privacy, including that of "non-party family members" such as their "minor children." Br. at 3–4. Not so. To start, purchases made using Plaintiffs' payment methods are ultimately purchases they authorized. The information associated with Authorized Apple IDs, like Plaintiffs' "personal Apple IDs," Br. at 1, therefore reflects their purchasing decisions as to apps and relevant Apple services, which bears on their allegations. *See* Dkts. 457–58. Further, Plaintiffs (who do not exclude minor children from their own data requests) put their family members' use of apps at issue. They allege that the supposed "social stigma" associated with green bubble text messages is "particularly powerful for certain demographics, like teenagers," which they say "reinforces switching costs and drives users to continue buying iPhones." DPP Compl. ¶ 120; IPP Compl. 123.[2] Likewise, they allege that Apple's messaging conduct prevents "iPhone families [from] giving their kids Android phones." IPP Compl. ¶ 113; DPP Compl. ¶ 108; Watch Compl. ¶ 59. Unless Plaintiffs are willing to withdraw those allegations and others that implicate family device usage, *see, e.g.*, DPP ¶¶ 182, 225; IPP Compl. ¶¶ 114, 162, 182, Apple is entitled to test them no less than any other allegation. Authorized Apple IDs are thus discoverable even if they were used by minor children because they bear on, for example, whether teenagers use third-party messaging apps like WhatsApp and Snapchat—undermining the supposed green bubble "social stigma" and the claim that Apple has crippled third-party messaging apps from operating across platforms.

---

[1] Plaintiffs also mention "confidentiality issues," Br. at 3, but they do not say what those issues are or how they could be implicated given that Apple IDs do not give Apple additional data (rather, they enable Apple to match existing data to the individual Plaintiffs who filed this case).

[2] Apple agrees that Plaintiffs can apply an age limit of 15 and up to the Authorized Apple IDs.

## II. Plaintiffs' Privacy Objections and Request for a Protective Order Are Meritless

Plaintiffs refuse to produce any Apple ID information absent a protective order to "prevent[] Apple from using their Apple IDs" to circumvent the scope of Apple's discovery requests and to "protect against potential privacy invasions." Br. at 1–2. To that end, Plaintiffs request an order that would (1) allow them to satisfy certain discovery obligations by "informing Apple that it may use their Apple IDs to access the requested documents or data," Ex. G ¶ 2; (2) require Apple to "promptly inform MDL Plaintiffs" any time it uses their Apple IDs to "access or review any information or data requested in" Apple's discovery requests, *id.*, and to produce "[a]ny documents or data Apple accesses, generates, or otherwise reviews using MDL Plaintiffs' Apple IDs," *id.* ¶ 4; and (3) restrict Apple's ability to use Plaintiffs' Apple IDs to review certain information, *id.* ¶ 3. Plaintiffs fail to provide any factual or legal basis for these restrictions, which are plainly improper.

Plaintiffs' primary justification—that Apple could use their Apple IDs to "circumvent" agreed-upon or court-ordered limits on discovery (e.g., the time period of Plaintiffs' productions)—is misplaced. *See* Br. at 1–2. Plaintiffs do not provide any authority for the premise that Apple's investigation of data it already possesses should be limited by the scope of its discovery requests to Plaintiffs. Those limits, by definition, apply to *Plaintiffs'* discovery obligations. They are not global restrictions on Apple's ability to investigate relevant issues. Apple, like any party, is entitled to seek out relevant information "by its own investigation strategies and techniques," *Lontex Corp. v. Nike, Inc.*, 2020 WL 6786134, at *6 (E.D. Pa. Nov. 18, 2020), and thereby "develop the factual record" through both "discovery and additional investigation," *Penns Crossing Builders v. Jeld-Wen, Inc.*, 2011 WL 4528384, at *7 (E.D. Pa. Sept. 30, 2011). Plaintiffs cite *Bittaker v. Woodford*, 331 F.3d 715, 726 (9th Cir. 2003), and *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787 (3d Cir. 1994), which merely confirm a court's power to limit the use of discovery—something the Discovery Confidentiality Order ("DCO") already does. Neither restricts a party's investigation of data it already possesses.

Nor do Plaintiffs need the order to "protect against potential privacy invasions" or "invasive and potentially harassing purposes." Br. at 1–3. Plaintiffs identify no privacy invasion they reasonably expect. They offer nothing but naked speculation that Apple or its counsel will misuse their Apple IDs. Apple and its counsel will comply with their ethical obligations and the DCO, including the requirement to use discovery information, such as Plaintiffs' produced Apple IDs, "solely for the conduct of this Action and the Government Action" and for no "other purposes." Dkt. No. 124 ¶ 31; *see also* Local Civil Rules, Appendix R at R3. That is enough to address Plaintiffs' privacy concerns given that they "actively put their devices at issue when they chose to sue Apple" and, as such, "cannot . . . limit [Apple's] discovery . . . targeted at" their claims. *In re Apple Inc. Device Performance Litig.*, 2019 WL 3973752, at *2 (N.D. Cal. Aug. 22, 2019) (collecting cases).

Putting aside Plaintiffs' justifications (or lack thereof), the Court should reject Plaintiffs' provision that would allow them to satisfy certain discovery obligations by "informing Apple that it may use their Apple IDs to access the requested documents or data." Ex. G ¶ 2. Plaintiffs say this would force Apple to "obtain Plaintiffs' consent . . . to use the Apple IDs to review information" requested in Apple's discovery requests. Br. at 3. But Apple has the "right" to "decide for itself its defense strategy." *Costantino v. City of Atl. City*, 152 F. Supp. 3d 311, 335 (D.N.J. 2015). Plaintiffs' proposal would take that right away by giving them the sole power to (a) decide whether Apple can use their Apple IDs to look up information it believes is material to its defense, and (b) avoid their discovery obligations by compelling Apple to collect information responsive to its RFPs.

Likewise, the Court should reject Plaintiffs' demands that Apple "promptly inform MDL Plaintiffs" any time it uses their Apple IDs to "access or review any information or data requested in" Apple's discovery requests, Ex. G ¶ 2, and that it produce "[a]ny documents or data Apple accesses, generates, or otherwise reviews using MDL Plaintiffs' Apple IDs," *id.* ¶ 4. These provisions would require Apple's counsel to provide Plaintiffs' counsel with step-by-step updates on any investigation or attempt to develop the record involving Plaintiffs' Apple IDs, and to produce any documents or data Apple's counsel looks up in connection with those efforts, even if Apple's counsel later decided that the information was irrelevant and that Apple would not rely on it. Plaintiffs argue that this restriction is necessary to prevent "trial by surprise." Br. at 3. But that argument is belied by the one-sided nature of the provision, which would only require Apple to disclose its real-time strategy. Regardless, the federal rules already prevent trial by surprise. *See TreCom Sys. Grp. Inc. v. MJ Freeway, LLC*, 2024 WL 4595575, at *12 (E.D. Pa. Oct. 25, 2024). And Apple, consistent with those rules, will produce materials gathered using Plaintiffs Apple IDs that are responsive to Plaintiffs' discovery requests or that are otherwise required to be produced as expert materials or as evidence that Apple may use in support of its defenses. Plaintiffs' provision, in contrast, would expand Apple's discovery obligation to a duty to produce every document it reviews during the course of its investigation. In doing so, it would also force Apple to reveal its counsel's views on which issues to investigate, prioritize, and review, which constitute attorney work product shielded by Rule 26. *See United States v. Singac Healthcare, LLC*, 2023 WL 9064990, at *8 (D.N.J. June 15, 2023); *see* Fed. R. Civ. P. 26(b)(3)(B). It similarly would inhibit Apple's experts' ability to analyze relevant data by requiring them to reveal (and get permission for) any data request involving Apple IDs months in advance of expert disclosures.

Finally, the Court should reject Plaintiffs' proposed restrictions on how Apple uses their Apple IDs. Plaintiffs seek to prevent Apple from accessing their health data and other sensitive information such as "the contents of" their iMessages. Dkt. 463-8 ¶¶ 3(a), 3(b); *see* Br. at 3. Even with Plaintiffs' Apple IDs, Apple cannot access end-to-end encrypted data like the contents of Plaintiffs' iMessages, Health data, and Safari browsing history (among other things). And Plaintiffs' other proposed restrictions—limits on Apple's use of their Apple IDs to access wallet transaction data and app usage data, *see* Dkt. 463-8 ¶¶ 3(c), 3(d)—should be rejected because they would prevent Apple from using Plaintiffs' Apple IDs to look up relevant information. *See Device Performance Litig.*, 2019 WL 3973752, at *2. The DCO already limits Apple's use of Plaintiffs' Apple IDs for appropriate litigation purposes. Dkt. 124 ¶ 31. That obligation and iOS's built-in protections like end-to-end encryption are sufficient. Plaintiffs must explain why the DCO is inadequate and demonstrate "with specificity" that they would suffer a "clearly defined and serious injury" absent the additional protection they seek. *See Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994). They have not done that.

**III. Requested Relief**

Apple respectfully requests that the Court overrule Plaintiffs' objections, deny their request for a protective order, and order them to respond to Apple's Collective Interrogatory No. 2 as written.

Respectfully submitted,

*/s/Liza M. Walsh*
Liza M. Walsh