LITE DEPALMA GREENBERG & AFANADOR

570 Broad Street / Suite 1201 / Newark, NJ 07102
P: 973.623.3000 / F: 973.623.0858 / litedepalma.com

Newark ▮ Philadelphia ▮ Morristown

November 18, 2026

**VIA ECF**

Honorable Leda Dunn Wettre, U.S.M.J.
U.S. District Court for the District of New Jersey
50 Walnut Street
Newark, New Jersey 07102

**Re:** ***In re Apple Inc. Smartphone Antitrust Litigation***
**Civil Action No. 2:24-md-03113 (JXN) (LDW)**
**Direct and Indirect iPhone Purchaser Plaintiffs' Letter Brief Regarding Apple's Discovery Requests to iPhone Plaintiffs: RFPs 125 and 132 to DIPs // RFPs 117 and 129 to IIPs (Dkt. 403)**

Dear Judge Wettre:

Indirect iPhone Purchaser Plaintiffs ("IIPs") and Direct iPhone Purchaser Plaintiffs ("DIPs") (together, "Plaintiffs") respectfully submit this letter brief regarding the disputes raised in Apple Inc.'s ("Apple") request to compel Plaintiffs to produce discovery in response to Apple's Requests for Production of Documents ("RFP") Nos. 125 and 132 to DIPs[1] (together, the "Requests"), Dkt. 458. Plaintiffs request that the Court deny Apple's request. Alternatively, Plaintiffs request that the Court enter an order: 1) granting Dkt. 463 (allowing Apple to access much of the requested information)[2] and 2) denying the remainder of Apple's Requests as to non-Apple devices.

* * * * *

[1] Apple seeks the same material in DIP RFP No. 125 and IIP RFP No. 117, and DIP RFP No. 132 and IIP RFP No. 129. For convenience, this letter cites only the DIP RFP numbers, but the arguments are equally applicable to both DIPs and IIPs.

[2] Dkt. 463 is Plaintiffs' letter requesting a protective order with respect to certain information to be disclosed by Plaintiffs in response to Apple's Collective Interrogatory No. 2.

LITE DEPALMA GREENBERG & AFANADOR

## I. Introduction

On January 5, 2026, Apple served 151 RFPs on DIPs and 154 RFPs on IIPs. Two of those RFPs are at issue in this dispute. The disputed portion of RFP No. 125 seeks documents about "the [apps] on [Plaintiffs'] Smartwatches, including '[d]ocuments sufficient to identify' all apps Plaintiffs downloaded or used on their smartwatches, … documents related to apps Plaintiffs attempted to download or use but were unable to, and apps Plaintiffs uninstalled (and their reasons for doing so)." Dkt. 458 at 2. Apple has modified RFP No. 132 to request a "complete history" of the "apps, in-app purchases, and subscriptions a plaintiff (1) used or accessed on a smartphone, smartwatch, or tablet and (2) purchased or acquired on either a smartphone, smartwatch, or tablet, or a PC/Mac device through an app marketplace or webstore." *Id.*

Apple claims these Requests test Plaintiffs' allegations, including that Apple has "stifl[ed] 'a broad[] range of third-party apps and services' that would … increase smartphone competition" by reducing lock-in. *Id.*[3] Plaintiffs object and maintain these Requests seek irrelevant information and are disproportionate to the needs of the case. This case is about *Apple's conduct*, not Plaintiffs'; in antitrust litigation, courts recognize that proof is largely in *defendants'* hands. *Mylan Pharms. Inc. v. Sanofi-Aventis U.S. LLC*, 2026 WL 201152, at *8 (W.D. Pa. Jan. 27, 2026) (citation omitted).

Plaintiffs have attempted to meaningfully narrow these Requests, focusing on the apps, subscriptions, and purchases most relevant to the Complaints' allegations. Additionally, as Apple itself acknowledges, Apple can readily access data that will largely resolve this dispute—Plaintiffs' app download histories for Apple devices—by using Plaintiffs' Apple IDs to gather much of the requested information. Dkt. 458 at 4. Though Plaintiffs have expressed a willingness to explore that possibility, Apple has refused to agree to *any* restrictions on its use of Plaintiffs' Apple IDs, leaving the parties at an impasse. *See* Dkt. 463. To be clear, Plaintiffs are willing to resolve this dispute through data Apple already possesses, in a manner significantly less burdensome on the parties, subject to the necessary protections of Plaintiffs' proposed Protective Order. *See* Dkt. 463.

## II. Apple's Requests Seek Irrelevant Information and Are Disproportionate to the Needs of the Case

### a. Plaintiffs' "Complete Histor[ies] of Digital Software Purchase[s]" Are Not Relevant to Apple's Defenses or Plaintiffs' Claims.

Before asking the Court to evaluate the burden and proportionality of its Requests, Apple must make a threshold showing that the discovery the Requests seek is relevant. *LifeScan, Inc. v. Smith*, 2024 WL 4913270, at *8-9 (D.N.J. Feb. 1, 2024). Apple has failed to do so. For example, Apple tries to justify the Requests by claiming that responsive materials from the individual Plaintiffs 1) are necessary to evaluate whether Plaintiffs suffered an antitrust injury; 2) may support Apple's defenses against Plaintiffs' lock-in claims; and 3) bear on Plaintiffs' adequacy and

[3] Plaintiffs disagree that the Complaints, which are focused on Apple's conduct and the resulting market-wide effects, put each Plaintiff's conduct at issue, other than their iPhone purchases during the class period. Nevertheless, to avoid burdening the Court with disputes, Plaintiffs have agreed to provide substantial discovery into their digital lives in response to Apple's more than 150 RFPs.

typicality as proposed class representatives. However, Apple's contention that app purchase history is "plainly relevant" misconstrues the law and the alleged injury. Dkt. 458 at 2-3.

"As a general rule, liability for anticompetitive conduct focuses on the defendants' actions, not the conduct of individual class members." *Vista Healthplan, Inc. v. Cephalon, Inc.*, 2020 WL 1922902, at *11 (E.D. Pa. Apr. 21, 2020) (citing *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 528 (3d Cir. 2004)). Apple's insistence that Plaintiffs put their app and software downloads at issue by initiating this action ignores the fact that "[t]he issues of relevant market, monopoly power, and exclusionary conduct … focus on the defendants' conduct rather than individual class members." *Id.* (quoting *In re Wellbutrin XL Antitrust Litig.*, 282 F.R.D. 126, 140 (E.D. Pa. 2011)).

Moreover, the antitrust injury Plaintiffs allege is that they paid supracompetitive prices for iPhones—not that they could not transfer applications to another smartphone. Significantly, Apple's argument relates to the apps themselves, not Plaintiffs' use of them. Apple likely has records regarding the cross-platform functionality of most, if not all, of the apps in its App Store. Those records are far more probative of Apple's defense than invasive discovery into virtually every aspect of each Plaintiff's app and software use across Apple and non-Apple devices. Likewise, whether a Plaintiff downloaded a "Super App" has no bearing on that Plaintiff's adequacy or typicality as a class representative. What matters is whether that Plaintiff shares the same harm as the class; in this case, the overcharge paid due to Apple's anticompetitive behavior.

Apple's Requests seek each Plaintiff's complete app download history across (1) more than 11 years, and (2) Apple and non-Apple devices. Such complete histories would include patently irrelevant and highly personal material—things like dating apps, sobriety calendars, and fertility trackers—none of which bears on any issue in this litigation, nor has Apple provided any justification for them. Each Plaintiff's app history "can form a revealing montage of the user's life." *Riley v. California*, 573 U.S. 373, 396 (2014). Courts have routinely recognized that "privacy interests can be a consideration in evaluating proportionality, particularly in the context of a request to inspect personal electronic devices." *Henson v. Turn, Inc.*, 2018 WL 5281629, at *5 (N.D. Cal. Oct. 22, 2018) (denying request to inspect or forensically image plaintiffs' mobile devices as irrelevant and disproportional) (citation omitted); *see also Korotki v. Cooper Levenson, April, Niedelman & Wagenheim, P.A.*, 2022 WL 2191519, at *6 (D.N.J. June 17, 2022). Apple's request to fully inspect and dissect each Plaintiff's digital life is untethered to the needs of this case and should be denied.

The nonbinding authority on which Apple relies is distinguishable. Dkt. 458 at 3. *Andino v. Apple Inc.*, 2024 WL 200997, at *1-2 (E.D. Cal. Jan. 17, 2024), and *McTyere v. Apple Inc.*, No. 1:21-cv-01133, Dkt. 60 at 5-9 (W.D.N.Y. Dec. 20, 2023), involved claims based on Apple's alleged misrepresentation about the ownership of digital content that plaintiffs purchased, making the existence and use of the content on the plaintiffs' devices central to their case. But in antitrust litigation proof is largely in *defendants'* hands. *Mylan Pharms. Inc.*, 2026 WL 201152, at *8. In short, Apple has failed to establish how or why Plaintiffs' individual histories would fall within Rule 26's "guardrails" in this case. Dkt. 458 at 2 (citing *LifeScan*, 2024 WL 4913270, at *8).

**b. Apple's Requests Would Disproportionately Burden Plaintiffs.**

"The scope of discovery is not limitless…," and even relevant discovery must be "proportional to the needs of the case," considering, *inter alia*, "the parties' relative access to

relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Druding v. Care Alternatives*, 2017 WL 11461795, at *3 (D.N.J. June 21, 2017) (citation omitted). Because a Plaintiff's software download history has no import in proving Apple's monopolistic conduct and its market-wide effects, any burden in gathering "the proposed discovery outweighs its likely benefit."

First, Apple's relative access to the discovery it seeks weighs heavily in Plaintiffs' favor. Apple admits it can "get the requested information for Apple devices on its own" using Plaintiffs' Apple IDs, *see* Dkt. 458 at 4, which Plaintiffs have agreed to provide with limited restrictions. *See* Dkt. 463. Plaintiffs' App Store download histories are thus duplicative of data in Apple's possession.

Second, Apple's Requests would also unduly burden Plaintiffs to a degree that is highly disproportionate to the, at best, minimally relevant information sought, despite Apple's assertions that Plaintiffs have not "substantiated" their burden. Apple's Requests require Plaintiffs to investigate their digital software purchases on every phone, tablet, smartwatch, or PC/Mac device they have used over more than 11 years, including devices they may no longer possess. Apple's Requests require investigation across more than a dozen app marketplaces, *see, e.g.*, Dkt. 458-1 at 4 (defining "App Marketplace"), and an unspecified number of "webstores." Dkt. 458 at 2. Apple's requests include not just apps on an iPhone, but across a host of digital devices, potentially including things like work-related laptops, raising unnecessary and significant confidentiality and third-party concerns.

Plaintiffs would have to investigate software purchases made on each device, app marketplace, and webstore and determine how to best collect and produce that purchase history—a process that would vary from device-to-device (and app marketplace-to-app marketplace) and may require expensive forensic collection of numerous additional devices. Ex. A (Graham Decl.) ¶¶ 6-7, 10-11. The costs of any expanded collection efforts are acutely amplified in this case given the number of geographically dispersed Plaintiffs (more than 20 across IIPs and DIPs, even without any new IIPs). *Id.* ¶ 11.

Setting considerations of relevance, burden, and proportionality aside for argument's sake, upon reasonable investigation with technical experts it is unclear whether it is even technologically possible for Plaintiffs to provide Apple with all the information it seeks. *Id.* ¶¶ 4-8. That is particularly true with regard to uninstalled apps and software. *Id.* ¶ 5. Further, Plaintiffs understand that it is not practical to forensically collect smartwatches, as collection tools are limited and less standardized, with the digital content spread across multiple devices and cloud accounts. *Id.* ¶ 8.

Ultimately, Apple's Requests have no relevance to the claims and defenses in this litigation but may drastically expand discovery and impact the related case schedule. Gathering the requested information is extremely burdensome, not proportional, and, in some cases, technologically unworkable. Moreover, Apple already possesses almost all this information, suggesting the Requests are nothing but an improper expansion of discovery.

**c. Apple Improperly Mischaracterizes Plaintiffs' Requests for Production.**

Apple's argument that Plaintiffs "requested the same information" from Apple "for millions of

LITE DEPALMA GREENBERG & AFANADOR

absent class members" is misplaced. Indeed, Apple takes the untenable position that suing Apple for monopolization of the smartphone market necessarily means that every app a Plaintiff has ever used or accessed on a phone (or, inexplicably, a watch or tablet) is relevant and discoverable. Dkt. 458 at 4.[4] Failing to refute Plaintiffs' privacy objections, Apple's argument inaptly conflates Plaintiffs' request, for which Plaintiffs accepted anonymized download data for only a subset of agreed-upon apps, with Apple's invasive request for the specific, complete app download histories of each individual Plaintiff, which would reveal irrelevant health, religious, dating, or financial information. Dkt. 458 at 4.

**III. Requested Relief**

Plaintiffs respectfully request that the Court (a) deny Apple's request for an order compelling Plaintiffs to produce the requested material, or, in the alternative, (b) enter a combined order granting Dkt. 463 and denying the remaining aspects of Apple's request as to non-Apple devices.

Respectfully submitted,

Joseph J. DePalma

JJD:cd
Enclosure

---

[4] Significantly, Apple limited the scope of its response to Plaintiffs' RFP 61 to a subset of apps rather than all apps, meaning Apple places a higher burden on Plaintiffs than itself.