**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE: APPLE INC. SMARTPHONE ANTITRUST LITIGATION | Civil Action No. 2:24-md-03113 (JXN) (LDW) |

# DECLARATION OF BRAYDEN GRAHAM

I, Brayden Graham, hereby declare as follows:

1. I am a Digital Forensics Technician with Complete Discovery Source ("CDS"). In that role, I conduct forensic collections, data preservation projects, examinations, and analyses of computers, mobile devices, cloud-based data sources, and other electronically stored information ("ESI"). I have experience collecting and analyzing data from smartphones, tablets, computers, cloud-based accounts, and other digital sources. My work regularly involves the identification, preservation, collection, processing, and analysis of ESI for litigation, regulatory, and investigative matters. I make this declaration based upon my training, experience, and review of the discovery requests described herein.

2. I understand Apple seeks information regarding the Direct iPhone Purchaser Plaintiffs' ("DIPs") and Indirect iPhone Purchaser Plaintiffs ("IIPs") (together "Plaintiffs") complete history of software purchases or acquisitions, including paid and free applications, in-app purchases, subscriptions, and similar digital content obtained during the relevant discovery period. I further understand that part of Apple's request extends to applications a Plaintiff (a) used or accessed on smartphones, tablets, or smartwatches, and (b) purchased or acquired on smartphones, tablets, smartwatches, PCs, or Mac computers, including applications obtained through app marketplaces, webstores, and similar platforms.

3. Based on my training and experience, the information sought by Apple's requests may reside across numerous devices, operating systems, user accounts, cloud services, application marketplaces, and third-party platforms. Such information is

not necessarily maintained on a user's device and may instead reside within account-based systems maintained by third parties (including Apple).

4. A forensic examination of a device may identify artifacts relating to currently installed applications and, in certain circumstances, historical application activity. However, a forensic examination of a device alone does not necessarily provide a complete historical record of all applications, downloads, purchases, subscriptions, or digital content acquired by a user over a multi-year period. Whether such information is available depends upon a variety of factors including device replacement, operating-system updates, user activity, data-retention practices, account settings, and the availability of records maintained by third-party providers.

5. Historical information relating to applications that have been removed or uninstalled presents additional forensic challenges because the availability, completeness, and retention of such information varies depending upon the device platform, operating system, user activity, elapsed time, and the existence of records maintained by third parties.

6. Based on my experience, there is no single forensic collection methodology capable of collecting a complete historical record of application acquisitions, downloads, purchases, subscriptions, and installations across all device types, operating systems, app marketplaces, and webstores. Collection methodologies and available artifacts vary significantly depending on the source being examined.

7. Determining what information may be available from app marketplaces, webstores, and other account providers requires source-specific investigation, testing, and analysis. Different providers maintain information according to their own technical architectures, retention practices, account-management systems, and export capabilities.

8. Smartwatches present additional collection challenges. Unlike traditional computers and many smartphones, smartwatch platforms often rely on paired devices and cloud-service integrations. As a result, potentially relevant information would be distributed across the watch, paired device, cloud accounts, or a combination thereof. Additionally, collection capabilities for smartwatch platforms are generally more limited and less standardized than those commonly available for smartphones and computers. Depending on the device model, operating system, and available tooling, collection of smartwatch-related data requires reliance on

paired-device artifacts, cloud-based data sources, or specialized collection techniques.

9. I understand the relevant discovery period (January 1, 2014 through July 30, 2025) spans more than eleven years and the requests appear to encompass devices owned during that period, including devices that may no longer be available. In my experience, users commonly replace, upgrade, trade in, recycle, or otherwise dispose of electronic devices over time. As a result, identifying the devices used during the discovery period and determining whether data remains available would require substantial effort.

10. Based on my training and experience, requests seeking a complete historical record of application acquisitions, downloads, purchases, and subscriptions across all devices, accounts, app marketplaces, webstores, and third-party platforms over an extended period of time and spanning multiple generations of devices present significant technical, forensic, and logistical considerations beyond those associated with a conventional e-Discovery device-based forensic collection of currently available user devices and the data maintained on those devices. The effort required to identify, collect, validate, and analyze information across numerous devices, user accounts, application marketplaces, webstores, cloud services, and other third-party sources would thus be substantially greater than the effort associated with a traditional e-Discovery forensic collection.

11. The feasibility and methodology of the above-described collections varies depending on device type, operating system version, security features, and available forensic tools. For a population exceeding twenty geographically dispersed Plaintiffs (including both DIPs and IIPs), such collections require significant coordination of forensic personnel, travel and scheduling logistics, allocation of forensic resources, and extended collection timelines. Depending on the devices involved and the collection methodology employed, the effort could require onsite collection activities, resulting in additional costs associated with technician travel, time, and project management.

12. Finally, because Apple has a closed eco-system and most of the devices involved are Apple devices, the overwhelming majority of the apps/software downloaded are likely to have come from the App Store. Apple’s requests, however, would require an investigation of all other marketplaces/webstores.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and professional experience.

Executed on the 18th day of November, 2026.

---

Brayden Graham